## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

**Deloris V. Victoria**                                    **Case No. 06-31225**
**225 Woodland Heights Dr**
**Greenville, AL 36037**
**SSN: xxx-xx-7367**

    **Debtor,**

---

### Designation of Contents for Inclusion in Record on Appeal, and Statement of Issues on Appeal

The appellant herein, Deloris Victoria, files this Designation of Contents for Inclusion in the Record on Appeal, and Statement of Issues on Appeal:

The following shall be included in the record on appeal:

1. Voluntary Petition of September 25, 2006.

2. Reaffirmation Agreement of Brantley Bank of October 30, 2006.

3. Reaffirmation Agreement of Butler County Bank of October 30, 2006.

4. Motion for Relidf from Stay of Greenville Hospital of January 30, 2007

5. Amended Schedules of the Debtor of February 5, 2007.

6. Order for Relief From Stay of February 26, 2007.

7. Motion to Dismiss of April 20, 2007, filed by Greenville Hospital.

8. Amended Schedules of the Debtor of May 8, 2007.

9. Debtor's Response to the Motion to Dismiss of May 8, 2007.

10. Debtor's Response to Supplemental Response to the Motion to dismiss of May 9, 2007.

11. Reply to Debtor's Response and Supplemental Response Filed by Bradley R. Hightower on behalf of Greenvill Hospital Corporation d/b/a LV Stabler Memorial Hospital or May 9, 2007.

12. Order on Motion to Dismiss Case Entered On 6/27/2007.

13. That portion of the transcript of the trial setting forth the Findings of Fact and Conclusions

of Law of the Bankruptcy Court. of June 26, 2007.

14.  Debtor's Notice of Appeal.

15.  The Proofs of Claims Filed in the above styled Bankruptcy Action of Whiteny Bank, The Internal Revenue Service and Camden National Bank.

Statement of Issues

1. The issues involved in this appeal is whether The Bankruptcy Court abused its discretion in ruling that the Debtor's bankruptcy petition should be dismissed under Title 11 U.S.C. Section 707(b), when the Court ruled that the Debtor's debts were primarily consumer in nature, when in fact the majority of the debts were non consumer debts.

2.  Did the Court abuse its discretion in dismissing this action.

3.. The Court's Decision is completely unsupported by the facts of the cause of action..

Designation of Attorneys of interest in the action hereby served with the Designation

Honorable Teresa Jacobs
U. S. Bankruptcy Administrator
One Church Street
Montgomery, AL 36104

Daniel G. Hamm, Trustee
The Law Offices of Daniel G. Hamm
560 South McDonough St., Ste A
Montgomery, AL 36104

Bradley R. Hightower
Attorney for Greenville Memorial Hospital
Christian & Small505 North 20th Street
Birmingham, Al 35203

Dated: July 16, 2007

   /s/ Richard D, Shinbaum
Richard D. Shinbaum
Shinbaum, Abell, McLeod & Campbell
PO Box 201
Montgomery, AL 36101
334-269-4440
Email: rshinbaum@samvpc.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**

**Deloris V. Victoria**                                    **Case No. 06-31225**
**225 Woodland Heights Dr**
**Greenville, AL 36037**
**SSN: xxx-xx-7367**

   **Debtor,**

---

### Designation of Contents for Inclusion in Record on Appeal, and Statement of Issues on Appeal

The appellant herein, Deloris Victoria, files this Designation of Contents for Inclusion in the Record on Appeal, and Statement of Issues on Appeal:

The following shall be included in the record on appeal:

1. Voluntary Petition of September 25, 2006.

2. Reaffirmation Agreement of Brantley Bank of October 30, 2006.

3. Reaffirmation Agreement of Butler County Bank of October 30, 2006.

4. Motion for Relidf from Stay of Greenville Hospital of January 30, 2007

5. Amended Schedules of the Debtor of February 5, 2007.

6. Order for Relief From Stay of February 26, 2007.

7. Motion to Dismiss of April 20, 2007, filed by Greenville Hospital.

8. Amended Schedules of the Debtor of May 8, 2007.

9. Debtor's Response to the Motion to Dismiss of May 8, 2007.

10. Debtor's Response to Supplemental Response to the Motion to dismiss of May 9, 2007.

11. Reply to Debtor's Response and Supplemental Response Filed by Bradley R. Hightower on behalf of Greenvill Hospital Corporation d/b/a LV Stabler Memorial Hospital or May 9, 2007.

12. Order on Motion to Dismiss Case Entered On 6/27/2007.

13. That portion of the transcript of the trial setting forth the Findings of Fact and Conclusions

of Law of the Bankruptcy Court. of June 26, 2007.

14.  Debtor's Notice of Appeal.

15.  The Proofs of Claims Filed in the above styled Bankruptcy Action of Whiteny Bank, The Internal Revenue Service and Camden National Bank.


Statement of Issues

1. The issues involved in this appeal is whether The Bankruptcy Court abused its discretion in ruling that the Debtor's bankruptcy petition should be dismissed under Title 11 U.S.C. Section 707(b), when the Court ruled that the Debtor's debts were primarily consumer in nature, when in fact the majority of the debts were non consumer debts.

2.  Did the Court abuse its discretion in dismissing this action.

3.. The Court's Decision is completely unsupported by the facts of the cause of action..

Designation of Attorneys of interest in the action hereby served with the Designation

Honorable Teresa Jacobs
U. S. Bankruptcy Administrator
One Church Street
Montgomery, AL 36104

Daniel G. Hamm, Trustee
The Law Offices of Daniel G. Hamm
560 South McDonough St., Ste A
Montgomery, AL 36104

Bradley R. Hightower
Attorney for Greenville Memorial Hospital
Christian & Small505 North 20th Street
Birmingham, Al 35203

Dated: July 16, 2007

  /s/ Richard D, Shinbaum
Richard D. Shinbaum
Shinbaum, Abell, McLeod & Campbell
PO Box 201
Montgomery, AL 36101
334-269-4440
Email: rshinbaum@samvpc.com

(Official Form 1) (10/05)

| United States Bankruptcy Court<br>Middle District of Alabama | Voluntary Petition |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**Victoria, Deloris V.** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec./Complete EIN or other Tax ID No. (if more than one, state all)<br>**xxx-xx-7367** | Last four digits of Soc. Sec./Complete EIN or other Tax ID No. (if more than one, state all) |

| Street Address of Debtor (No. & Street, City, and State):<br>**225 Woodland Heights Dr**<br>**Greenville, AL**     ZIP Code **36037** | Street Address of Joint Debtor (No. & Street, City, and State):    ZIP Code |
|---|---|
| County of Residence or of the Principal Place of Business:<br>**Butler** | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):    ZIP Code | Mailing Address of Joint Debtor (if different from street address):    ZIP Code |

Location of Principal Assets of Business Debtor
(if different from street address above):

**Type of Debtor** (Form of Organization)
(Check one box)

- ■ Individual (includes Joint Debtors)
- ☐ Corporation (includes LLC and LLP)
- ☐ Partnership
- ☐ Other (If debtor is not one of the above entities, check this box and provide the information requested below.)
  State type of entity:

**Nature of Business**
(Check all applicable boxes.)

- ☐ Health Care Business
- ☐ Single Asset Real Estate as defined in 11 U.S.C. § 101 (51B)
- ☐ Railroad
- ☐ Stockbroker
- ☐ Commodity Broker
- ☐ Clearing Bank
- ☐ Nonprofit Organization qualified under 26 U.S.C. § 501(c)(3)

**Chapter of Bankruptcy Code Under Which the Petition is Filed** (Check one box)

- ■ Chapter 7
- ☐ Chapter 9
- ☐ Chapter 11
- ☐ Chapter 12
- ☐ Chapter 13
- ☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding
- ☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding

**Nature of Debts** (Check one box)

- ☐ Consumer/Non-Business
- ■ Business

**Filing Fee** (Check one box)

- ■ Full Filing Fee attached
- ☐ Filing Fee to be paid in installments (Applicable to individuals only) Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.
- ☐ Filing Fee waiver requested (Applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B.

**Chapter 11 Debtors**

Check one box:
- ☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).
- ☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).

Check if:
- ☐ Debtor's aggregate noncontingent liquidated debts owed to non-insiders or affiliates are less than $2 million.

**Statistical/Administrative Information**     *** C. Brandon Sellers, III ***     THIS SPACE IS FOR COURT USE ONLY

- ■ Debtor estimates that funds will be available for distribution to unsecured creditors.
- ☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

Estimated Number of Creditors

| 1-49 | 50-99 | 100-199 | 200-999 | 1000-5,000 | 5001-10,000 | 10,001-25,000 | 25,001-50,000 | 50,001-100,000 | OVER 100,000 |
|---|---|---|---|---|---|---|---|---|---|
| ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

Estimated Assets

| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | More than $100 million |
|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ■ | ☐ | ☐ | ☐ | ☐ | ☐ |

Estimated Debts

| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | More than $100 million |
|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ■ | ☐ | ☐ | ☐ | ☐ |

(Official Form 1) (10/05)                                                                                          FORM B1, Page 2

| **Voluntary Petition**<br>*(This page must be completed and filed in every case)* | Name of Debtor(s):<br>**Victoria, Deloris V.** |
|---|---|

| **Prior Bankruptcy Case Filed Within Last 8 Years** (If more than one, attach additional sheet) |||
|---|---|---|
| Location<br>Where Filed:   **- None -** | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet) |||
|---|---|---|
| Name of Debtor:<br>**- None -** | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

<table>
<tr>
<td><b>Exhibit A</b><br><br>(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)<br><br>☐ Exhibit A is attached and made a part of this petition.</td>
<td><b>Exhibit B</b><br>(To be completed if debtor is an individual whose debts are primarily consumer debts.)<br><br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter.<br>I further certify that I delivered to the debtor the notice required by §342(b) of the Bankruptcy Code.<br><br>X _____<br>   Signature of Attorney for Debtor(s)        Date</td>
</tr>
<tr>
<td><b>Exhibit C</b><br><br>Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?<br><br>☐ Yes, and Exhibit C is attached and made a part of this petition.<br><br>■ No</td>
<td><b>Certification Concerning Debt Counseling<br>by Individual/Joint Debtor(s)</b><br><br>■ I/we have received approved budget and credit counseling during the 180-day period preceding the filing of this petition.<br><br>☐ I/we request a waiver of the requirement to obtain budget and credit counseling prior to filing based on exigent circumstances. (Must attach certification describing.)</td>
</tr>
</table>

| **Information Regarding the Debtor (Check the Applicable Boxes)** |
|---|
| **Venue** (Check any applicable box) |

■ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐ Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

| **Statement by a Debtor Who Resides as a Tenant of Residential Property**<br>*Check all applicable boxes.* |
|---|

☐ Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐ Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐ Debtor has included in this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

(Official Form 1) (10/05)                                                                                    FORM B1, Page 3

| **Voluntary Petition** | Name of Debtor(s): |
| *(This page must be completed and filed in every case)* | **Victoria, Deloris V.** |

**Signatures**

| **Signature(s) of Debtor(s) (Individual/Joint)** | **Signature of a Foreign Representative** |

**Signature(s) of Debtor(s) (Individual/Joint)**

I declare under penalty of perjury that the information provided in this petition is true and correct.

[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.

[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by §342(b) of the Bankruptcy Code.

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

**X** **/s/ Deloris V. Victoria**

Signature of Debtor **Deloris V. Victoria**

**X**

Signature of Joint Debtor

Telephone Number (If not represented by attorney)

**September 25, 2006**

Date

**Signature of Attorney**

**X** **/s/ C. Brandon Sellers, III**

Signature of Attorney for Debtor(s)

**C. Brandon Sellers, III**

Printed Name of Attorney for Debtor(s)

**Shinbaum, Abell, McLeod & Vann, P.C.**

Firm Name

**566 South Perry Street**
**Post Office Box 201**
**Montgomery, AL 36101-0201**

Address

**334-269-4440  Fax: 334-263-4440**

Telephone Number

**September 25, 2006**

Date

**Signature of Debtor (Corporation/Partnership)**

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

**X**

Signature of Authorized Individual

Printed Name of Authorized Individual

Title of Authorized Individual

Date

**Signature of a Foreign Representative**

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only one box.)

☐ I request relief in accordance with chapter 15 of title 11. United States Code. Certified copies of the documents required by §1515 of title 11 are attached.

☐ Pursuant to §1511 of title 11, United States Code, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

**X**

Signature of Foreign Representative

Printed Name of Foreign Representative

Date

**Signature of Non-Attorney Bankruptcy Petition Preparer**

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19B is attached.

Printed Name and title, if any, of Bankruptcy Petition Preparer

Social Security number (If the bankrutpcy petition preparer is not an individual, state the Social Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.)(Required by 11 U.S.C. § 110.)

Address

**X**

Date

Signature of Bankruptcy Petition Preparer or officer, principal, responsible person,or partner whose social security number is provided above.

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both 11 U.S.C. §110; 18 U.S.C. §156.*

Form 6-Summary
(10/05)

# United States Bankruptcy Court
## Middle District of Alabama

In re **Deloris V. Victoria** ,

Debtor

Case No. _____

Chapter _____ **7** _____

# SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each.  Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided.  Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors must also complete the "Statistical Summary of Certain Liabilities."

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | AMOUNTS SCHEDULED | | |
|---|---|---|---|---|---|
| | | | ASSETS | LIABILITIES | OTHER |
| A - Real Property | Yes | 1 | 377,800.00 | | |
| B - Personal Property | Yes | 3 | 54,800.00 | | |
| C - Property Claimed as Exempt | Yes | 1 | | | |
| D - Creditors Holding Secured Claims | Yes | 1 | | 309,000.00 | |
| E - Creditors Holding Unsecured Priority Claims | Yes | 3 | | 60,877.74 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 3 | | 273,308.00 | |
| G - Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H - Codebtors | Yes | 1 | | | |
| I - Current Income of Individual Debtor(s) | Yes | 2 | | | 15,400.00 |
| J - Current Expenditures of Individual Debtor(s) | Yes | 1 | | | 13,510.00 |
| Total Number of Sheets of ALL Schedules | | 17 | | | |
| Total Assets | | | 432,600.00 | | |
| Total Liabilities | | | | 643,185.74 | |

Form 6-Summ2
(10/05)

# United States Bankruptcy Court
## Middle District of Alabama

In re   **Deloris V. Victoria**
_____,    Case No. _____

Debtor    Chapter_____**7**_____

# STATISTICAL SUMMARY OF CERTAIN LIABILITIES (28 U.S.C. § 159)
## [Individual Debtors Only]

Summarize the following types of liabilities, as reported in the Schedules, and total them.

| Type of Liability | Amount |
|---|---|
| Domestic Support Obligations (from Schedule E) | 0.00 |
| Taxes and Certain Other Debts Owed to Governmental Units (from Schedule E) | 60,877.74 |
| Claims for Death or Personal Injury While Debtor Was Intoxicated (from Schedule E) | 0.00 |
| Student Loan Obligations (from Schedule F) | 0.00 |
| Domestic Support, Separation Agreement, and Divorce Decree Obligations Not Reported on Schedule E | 0.00 |
| Obligations to Pension or Profit-Sharing, and Other Similar Obligations (from Schedule F) | 0.00 |
| TOTAL | 60,877.74 |

**The foregoing information is for statistical purposes only under 28 U.S.C § 159.**

Form B6A
(10/05)

In re    **Deloris V. Victoria**
_____,    Case No. _____
Debtor

# SCHEDULE A. REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **225 WOODLAND HEIGHTS DR, GREENVILLE AL-- SINGLE FAMILY RESIDENCE VALUE LISTED IS TAX ASSESSED VALUE** | | - | **373,800.00** | **290,000.00** |
| **ISLE OF VALLEY, ORLANDAO FL** | | J | **4,000.00** | **0.00** |

|  |  |  |
|---|---|---|
| Sub-Total > | **377,800.00** | (Total of this page) |
| Total > | **377,800.00** | |

__0__  continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                                    Best Case Bankruptcy

Form B6B
(10/05)

In re   **Deloris V. Victoria** _____ ,   Case No. _____

_____
                        Debtor

# SCHEDULE B. PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule.  List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property." In providing the information requested in this schedule, do not include the name or address of a minor child.  Simply state "a minor child."

| | Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|---|
| 1. | Cash on hand | | CASH | - | 300.00 |
| 2. | Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | CHECKING ACCOUNT - WHITNEY BANK | - | 2,000.00 |
| | | | CHECKING ACCOUNT - BUTLER COUNTY BANK | - | 500.00 |
| 3. | Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. | Household goods and furnishings, including audio, video, and computer equipment. | | HOUSEHOLD GOODS | - | 7,000.00 |
| 5. | Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6. | Wearing apparel. | | WEARING APPAREL | - | 1,000.00 |
| 7. | Furs and jewelry. | | JEWELRY | - | 5,000.00 |
| 8. | Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9. | Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |
| 10. | Annuities. Itemize and name each issuer. | X | | | |

Sub-Total >        **15,800.00**
(Total of this page)

__2__   continuation sheets attached to the Schedule of Personal Property

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

Form B6B
(10/05)

In re    **Deloris V. Victoria**                                           ,        Case No. _____
                                              Debtor

# SCHEDULE B. PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars.  (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c); Rule 1007(b)). | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | SEP | | - | 20,000.00 |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | X | | | |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owing debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | | **POSSIBLE BREECH OF CONTRACT SUIT AGAINST DR. LILITH NAMI. SUIT NOT YET FILED. ATTORNEY RICHARD HARTLEY** | - | Unknown |

Sub-Total >            20,000.00
(Total of this page)

Sheet __1__ of __2__ continuation sheets attached
to the Schedule of Personal Property

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                    Best Case Bankruptcy

Form B6B
(10/05)

In re    **Deloris V. Victoria**                                                                    ,    Case No. _____
                                            Debtor

# SCHEDULE B. PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | X | | | |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | | **COMPUTERS, EKG, TABLES, CHAIRS** | - | 19,000.00 |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |

|  | Sub-Total > | **19,000.00** |
|---|---|---|
|  | (Total of this page) | |
|  | Total > | **54,800.00** |

Sheet __2__ of __2__ continuation sheets attached
to the Schedule of Personal Property

(Report also on Summary of Schedules)

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                                    Best Case Bankruptcy

Form B6C
(10/05)

In re     **Deloris V. Victoria**                                          ,     Case No. _____
                                                     Debtor

# SCHEDULE C. PROPERTY CLAIMED AS EXEMPT

Debtor elects the exemptions to which debtor is entitled under:          ☐ Check if debtor claims a homestead exemption that exceeds
(Check one box)                                                              $125,000.
☐ 11 U.S.C. §522(b)(2)
■ 11 U.S.C. §522(b)(3)

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---:|---:|
| **Real Property** | | | |
| **225 WOODLAND HEIGHTS DR, GREENVILLE AL-- SINGLE FAMILY RESIDENCE VALUE LISTED IS TAX ASSESSED VALUE** | **Ala. Code §§ 6-10-2, 6-10-3, 6-10-4; Const. Art. X, § 205** | **5,000.00** | **373,800.00** |
| **ISLE OF VALLEY, ORLANDAO FL** | **Ala. Code § 6-10-6** | **0.00** | **4,000.00** |
| **Cash on Hand** | | | |
| **CASH** | **Ala. Code § 6-10-6** | **300.00** | **300.00** |
| **Checking, Savings, or Other Financial Accounts, Certificates of Deposit** | | | |
| **CHECKING ACCOUNT - WHITNEY BANK** | **Ala. Code § 6-10-6** | **2,000.00** | **2,000.00** |
| **CHECKING ACCOUNT - BUTLER COUNTY BANK** | **Ala. Code § 6-10-6** | **500.00** | **500.00** |
| **Household Goods and Furnishings** | | | |
| **HOUSEHOLD GOODS** | **Ala. Code § 6-10-6** | **200.00** | **7,000.00** |
| **Wearing Apparel** | | | |
| **WEARING APPAREL** | **Ala. Code §§ 6-10-6, 6-10-126** | **1,000.00** | **1,000.00** |
| **Furs and Jewelry** | | | |
| **JEWELRY** | **Ala. Code § 6-10-6** | **0.00** | **5,000.00** |
| **Interests in IRA, ERISA, Keogh, or Other Pension or Profit Sharing Plans** | | | |
| **SEP** | **Ala. Code § 19-3-1** | **20,000.00** | **20,000.00** |
| **Office Equipment, Furnishings and Supplies** | | | |
| **COMPUTERS, EKG, TABLES, CHAIRS** | **Ala. Code § 6-10-126** | **0.00** | **19,000.00** |

|  | Total: | **29,000.00** | **432,600.00** |
|---|---|---:|---:|

  **0**   continuation sheets attached to Schedule of Property Claimed as Exempt

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                          Best Case Bankruptcy

Form B6D
(10/05)

In re    **Deloris V. Victoria**                                                    ,    Case No. _____
                                        Debtor

# SCHEDULE D. CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C§112; Fed.R.Bankr.P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community." If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

☐   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No.<br><br>**Creditor #: 1<br>BRANTLEY BANK & TRUST<br>P.O. BOX 25<br>BRANTLEY, AL 36009** | | - | **Mortgage<br><br>225 WOODLAND HEIGHTS DR, GREENVILLE AL-- SINGLE FAMILY RESIDENCE<br>VALUE LISTED IS TAX ASSESSED VALUE**<br><br>Value $            **373,800.00** | | | | **290,000.00** | **0.00** |
| Account No. **9481**<br><br>**Creditor #: 2<br>CAMDEN NATIONAL<br>3 WATER STREET<br>Camden, AL 36726** | | - | **03-2006<br><br>SECURITY AGREEMENT<br><br>COMPUTERS, EKG, TABLES, CHAIRS**<br><br>Value $            **19,000.00** | | | | **19,000.00** | **0.00** |
| Account No.<br><br> | | | <br><br><br><br>Value $ | | | | | |
| Account No.<br><br> | | | <br><br><br><br>Value $ | | | | | |

| **0**   continuation sheets attached | | Subtotal<br>(Total of this page) | **309,000.00** | |
|---|---|---|---|---|
| | | Total<br>(Report on Summary of Schedules) | **309,000.00** | |

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                                                Best Case Bankruptcy

Form B6E
(10/05)

In re   **Deloris V. Victoria**
                                                                                                    ,    Case No. _____
                                        Debtor

# SCHEDULE E. CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name, mailing address, including zip code, and last four digits of the account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of the petition. Use a separate continuation sheet for each type of priority and label each with the type of priority.

The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C.§112; Fed.R.Bankr.P. 1007(m).

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether husband, wife, both of them or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community". If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Report the total of claims listed on each sheet in the box labeled "Subtotal" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

Report the total of amounts entitled to priority listed on each sheet in the box labeled "Subtotal" on each sheet. Report the total of all amounts entitled to priority listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. If applicable, also report this total on the Means Test form.

☐ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS** (Check the appropriate box(es) below if claims in that category are listed on the attached sheets.)

☐ **Domestic support obligations**
Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐ **Extensions of credit in an involuntary case**
Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(3).

☐ **Wages, salaries, and commissions**
Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $10,000* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, which ever occurred first, to the extent provided in 11 U.S.C. § 507 (a)(4).

☐ **Contributions to employee benefit plans**
Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

☐ **Certain farmers and fishermen**
Claims of certain farmers and fishermen, up to $4,925* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).

☐ **Deposits by individuals**
Claims of individuals up to $2,225* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided. 11 U.S.C. § 507(a)(7).

■ **Taxes and certain other debts owed to governmental units**
Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C § 507(a)(8).

☐ **Commitments to maintain the capital of an insured depository institution**
Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution. 11 U.S.C. § 507(a)(9).

☐ **Claims for death or personal injury while debtor was intoxicated**
Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance. 11 U.S.C. § 507(a)(10).

\*Amounts are subject to adjustment on April 1, 2007, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

                                        **2**     continuation sheets attached

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                        Best Case Bankruptcy

Form B6E - Cont.
(10/05)

In re __Deloris V. Victoria_____,    Case No. _____
                                    Debtor

# SCHEDULE E. CREDITORS HOLDING UNSECURED PRIORITY CLAIMS
(Continuation Sheet)

**Taxes and Certain Other Debts
Owed to Governmental Units**

TYPE OF PRIORITY

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | Husband, Wife, Joint, or Community | | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM | AMOUNT ENTITLED TO PRIORITY |
| | | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM | | | | | |
|---|---|---|---|---|---|---|---|---|
| Account No. <br><br> **Creditor #: 1** <br> **INTERNAL REVENUE SERVICE** <br> **SPECIAL PROCEDURES FUNCTION** <br> **801 TOM MARTIN DR., ROOM 126** <br> **BIRMINGHAM, AL 35211** | - | | **2003** <br><br> **2003 TAXES** | | | | **5,600.27** | **5,600.27** |
| Account No. <br><br> **Representing:** <br> **INTERNAL REVENUE SERVICE** | | | **HON. PATRICIA CONOVER** <br> **ASSISTANT UNITED STATES ATTY.** <br> **P.O. BOX 197** <br> **MONTGOMERY, AL 36101** | | | | | |
| Account No. <br><br> **Representing:** <br> **INTERNAL REVENUE SERVICE** | | | **INTERNAL REVENUE SERVICE** <br> **P O BOX 21126** <br> **Philadelphia, PA 19114** | | | | | |
| Account No. <br><br> **Creditor #: 2** <br> **INTERNAL REVENUE SERVICE** <br> **SPECIAL PROCEDURES FUNCTION** <br> **801 TOM MARTIN DR., ROOM 126** <br> **BIRMINGHAM, AL 35211** | - | | **2005** <br><br> **2005 TAXES** | | | | **9,147.63** | **9,147.63** |
| Account No. <br><br> **Representing:** <br> **INTERNAL REVENUE SERVICE** | | | **HON. PATRICIA CONOVER** <br> **ASSISTANT UNITED STATES ATTY.** <br> **P.O. BOX 197** <br> **MONTGOMERY, AL 36101** | | | | | |

Sheet __1__ of __2__ continuation sheets attached to
Schedule of Creditors Holding Unsecured Priority Claims

Subtotal
(Total of this page)

| | |
|---|---|
| **14,747.90** | **14,747.90** |

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

Form B6E - Cont.
(10/05)

In re    **Deloris V. Victoria**                                                                    , Case No. _____
                                          Debtor

# SCHEDULE E. CREDITORS HOLDING UNSECURED PRIORITY CLAIMS
(Continuation Sheet)

**Taxes and Certain Other Debts
Owed to Governmental Units**

TYPE OF PRIORITY

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM | AMOUNT ENTITLED TO PRIORITY |
|---|---|---|---|---|---|---|---|---|---|---|
| | | H | W J | C | | | | | | |
| Account No. **Representing: INTERNAL REVENUE SERVICE** | | | | | **INTERNAL REVENUE SERVICE P O BOX 21126 Philadelphia, PA 19114** | | | | | |
| Account No. **Creditor #: 3 INTERNAL REVENUE SERVICE SPECIAL PROCEDURES FUNCTION 801 TOM MARTIN DR., ROOM 126 BIRMINGHAM, AL 35211** | - | | | | **2004 taxes** | | | | 23,892.40 | 23,892.40 |
| Account No. **xx-xxx7031** **Creditor #: 4 INTERNAL REVENUE SERVICE SPECIAL PROCEDURES FUNCTION 801 TOM MARTIN DR., ROOM 126 BIRMINGHAM, AL 35211** | - | | | | **Taxes of Bariatric Medicine** | | | | 17,689.82 | 17,689.82 |
| Account No. **Creditor #: 5 STATE OF ALABAMA DEPARTMENT OF REVENUE P.O. BOX 320001 MONTGOMERY, AL 36132** | - | | | | **2003 Taxes** | | | | 1,547.62 | 1,547.62 |
| Account No. **Creditor #: 6 STATE OF ALABAMA DEPARTMENT OF REVENUE P.O. BOX 320001 MONTGOMERY, AL 36132** | - | | | | **2004 and 2005 Taxes estimated** | | | | 3,000.00 | 3,000.00 |

Sheet __2__ of __2__ continuation sheets attached to
Schedule of Creditors Holding Unsecured Priority Claims

| | | |
|---|---|---|
| Subtotal (Total of this page) | 46,129.84 | 46,129.84 |
| Total (Report on Summary of Schedules) | 60,877.74 | 60,877.74 |

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                      Best Case Bankruptcy

Form B6F
(10/05)

In re    **Deloris V. Victoria** _____ ,    Case No. _____

_Debtor_

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C.§112; Fed.R.Bankr.P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community maybe liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

☐    Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM.  IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| | | H | W J | C | | | | | |
| Account No. 1<br>**Creditor #: 1**<br>**CAMDEN NATIONAL**<br>**3 WATER STREET**<br>**Camden, AL 36726** | - | | | | **09-2005**<br>**LINE OF CREDIT** | | | | **2,545.00** |
| Account No. **x8652**<br>**Creditor #: 2**<br>**CAMDEN NATIONAL**<br>**3 WATER STREET**<br>**Camden, AL 36726** | - | | | | **09-2004**<br>**DISPUTED DEBT** | | | X | **1.00** |
| Account No. **x7851**<br>**Creditor #: 3**<br>**CAMDEN NATIONAL**<br>**3 WATER STREET**<br>**Camden, AL 36726** | - | | | | **06-2004**<br>**LOAN** | | | | **680.00** |
| Account No. **xxxxx2276**<br>**Creditor #: 4**<br>**CENTURYTEL**<br>**PO BOX 6001**<br>**Marion, LA 71260-6001** | - | | | | **03-2005**<br>**COLLECTION ACCOUNT** | | | | **558.00** |
| __2__ continuation sheets attached | | | | | Subtotal<br>(Total of this page) | | | | **3,784.00** |

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037    S/N:34718-060831    Best Case Bankruptcy

Form B6F - Cont.
(10/05)

In re **Deloris V. Victoria** _____,     Case No. _____

Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| | | H | W J C | | | | | | |
| Account No. <br><br>Representing: <br>**CENTURYTEL** | | | | | **BANK OF AMERICA** <br>**PO BOX 41466** <br>**Philadelphia, PA 19101** | | | | |
| Account No. **Creditor #: 5** <br>**GENEZEN HEALTHCARE** <br>**PO BOX 571811** <br>**Houston, TX 77257** | | - | | | **2005** <br>**Pending Suit non consumer debt** <br>**BUTLER COUNTY CV 05-177** <br>**Suit involving patient accounts** | | | | **18,000.00** |
| Account No. <br><br>Representing: <br>**GENEZEN HEALTHCARE** | | | | | **DAVID C. SCHWARTZ, ESQ.** <br>**PO BOX 11366** <br>**Birmingham, AL 35202-1366** | | | | |
| Account No. **Creditor #: 6** <br>**GREENVILLE HOSPITAL** <br>**DBA LV STABLER MEMORIAL** <br>**29 STABLER DR** <br>**Greenville, AL 36037** | | - | | | **2005** <br>**JUDGEMENT NON CONSUMER DEBT** <br>**BUTLER COUNTY CV 05-133** <br>**SUIT ON CONTRACT INVOLVING** <br>**TERMINATION OF DOCTOR** | | | | **168,000.00** |
| Account No. <br><br>Representing: <br>**GREENVILLE HOSPITAL** | | | | | **GREER B. MALLETTE, ESQ** <br>**505 20TH ST N., STE 1800** <br>**Birmingham, AL 35203-2696** | | | | |

Sheet no. __**1**__ of __**2**__ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)     **186,000.00**

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                                                                  Best Case Bankruptcy

Form B6F - Cont.
(10/05)

In re   **Deloris V. Victoria**                                                    ,       Case No. _____
                                    Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No.<br>**Creditor #: 7**<br>**MBNA AMERICA**<br>**PO BOX 17054**<br>**Wilmington, DE 19884** | X | J | **08-1999**<br>**CREDIT CARD** | | | | **9,663.00** |
| Account No.<br>**Creditor #: 8**<br>**MBNA AMERICA**<br>**PO BOX 17054**<br>**Wilmington, DE 19884** | X | J | **10-1995**<br>**CREDIT CARD** | | | | **3,378.00** |
| Account No.<br>**Creditor #: 9**<br>**MBNA AMERICA**<br>**PO BOX 17054**<br>**Wilmington, DE 19884** | X | J | **04-1994**<br>**Non Consumer business accout credit card for purchase of medical equipment and supplies.** | | | | **65,000.00** |
| Account No.<br>**Creditor #: 10**<br>**WHITNEY BANK**<br>**228 ST CHARLES AVE**<br>**New Orleans, LA 70130** | - | | **12-1999**<br>**LINE OF CREDIT** | | | | **5,483.00** |
| Account No. | | | | | | | |

Sheet no. __2__ of __2__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)          **83,524.00**

Total
(Report on Summary of Schedules)          **273,308.00**

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                                    Best Case Bankruptcy

Form B6G
(10/05)

In re    **Deloris V. Victoria**                                                        ,    Case No. _____
                                                 Debtor

# SCHEDULE G. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property.  Include any timeshare interests.  State nature of debtor's interest in contract, i.e., "Purchaser", "Agent", etc.  State whether debtor is the lessor or lessee of a lease.  Provide the names and complete mailing addresses of all other parties to each lease or contract described.  If a minor child is a party to one of the leases or contracts, indicate that by stating "a minor child" and do not disclose the child's name.  See 11 U.S.C. § 112;  Fed.R. Bankr. P. 1007(m).

■ Check this box if debtor has no executory contracts or unexpired leases.

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
|---|---|
|  |  |

___**0**___ continuation sheets attached to Schedule of Executory Contracts and Unexpired Leases

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

Form B6H
(10/05)

In re   **Deloris V. Victoria**                                                                    ,      Case No. _____

Debtor

# SCHEDULE H. CODEBTORS

   Provide the information requested concerning any person or entity, other than a spouse in a joint case, that is also liable on any debts listed by debtor in the schedules of creditors.  Include all guarantors and co-signers.  If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within the eight year period immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state, commonwealth, or territory.  Include all names used by the nondebtor spouse during the eight years immediately preceding the commencement of this case.  If a minor child is a codebtor or a creditor, indicate that by stating "a minor child" and do not disclose the child's name.  See 11 U.S.C. § 112; Fed. Bankr. P. 1007(m).

☐   Check this box if debtor has no codebtors.

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|
| **EDGAR VICTORIA**<br>**225 WOODLAND HEIGHTS DR**<br>**Greenville, AL 36037** | **MBNA AMERICA**<br>**PO BOX 17054**<br>**Wilmington, DE 19884** |
| **EDGAR VICTORIA**<br>**225 WOODLAND HEIGHTS DR**<br>**Greenville, AL 36037** | **MBNA AMERICA**<br>**PO BOX 17054**<br>**Wilmington, DE 19884** |
| **EGAR VICTORIA**<br>**225 WOODLAND HEIGHTS DR**<br>**Greenville, AL 36037** | **MBNA AMERICA**<br>**PO BOX 17054**<br>**Wilmington, DE 19884** |

___0___   continuation sheets attached to Schedule of Codebtors

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                                                                            Best Case Bankruptcy

Form B6I
(10/05)

In re  **Deloris V. Victoria**                                              Case No. _____
                                    Debtor(s)

## SCHEDULE I. CURRENT INCOME OF INDIVIDUAL DEBTOR(S)

The column labeled "Spouse" must be completed in all cases filed by joint debtors and by a married debtor in a chapter 7, 11, 12, or 13 case whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. Do not state the name of any minor child.

| Debtor's Marital Status: | DEPENDENTS OF DEBTOR AND SPOUSE | |
|---|---|---|
| **Married** | RELATIONSHIP:<br>**None.** | AGE: |

| Employment: | DEBTOR | SPOUSE |
|---|---|---|
| Occupation | **PHYSICIAN** | **PHYSICIAN** |
| Name of Employer | **DR. DELORIS VICTORIA** | |
| How long employed | **20 YRS** | **20 YRS** |
| Address of Employer | **250 WOODLAND HEIGHTS DR**<br>**Greenville, AL 36037** | |

| INCOME: (Estimate of average monthly income) | | DEBTOR | | SPOUSE |
|---|---|---|---|---|
| 1. Current monthly gross wages, salary, and commissions  (Prorate if not paid monthly.) | $ | **15,000.00** | $ | **20,000.00** |
| 2. Estimate monthly overtime | $ | **0.00** | $ | **0.00** |
| 3. SUBTOTAL | $ | **15,000.00** | $ | **20,000.00** |
| 4. LESS PAYROLL DEDUCTIONS | | | | |
|    a.  Payroll taxes and social security | $ | **0.00** | $ | **0.00** |
|    b.  Insurance | $ | **0.00** | $ | **0.00** |
|    c.  Union dues | $ | **0.00** | $ | **0.00** |
|    d.  Other (Specify)   **See Detailed Income Attachment** | $ | **9,600.00** | $ | **10,000.00** |
| 5. SUBTOTAL OF PAYROLL DEDUCTIONS | $ | **9,600.00** | $ | **10,000.00** |
| 6. TOTAL NET MONTHLY TAKE HOME PAY | $ | **5,400.00** | $ | **10,000.00** |
| 7. Regular income from operation of business or profession or farm. (Attach detailed statement) | $ | **0.00** | $ | **0.00** |
| 8. Income from real property | $ | **0.00** | $ | **0.00** |
| 9. Interest and dividends | $ | **0.00** | $ | **0.00** |
| 10. Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above. | $ | **0.00** | $ | **0.00** |
| 11. Social security or other government assistance | | | | |
| (Specify): _____ | $ | **0.00** | $ | **0.00** |
| | $ | **0.00** | $ | **0.00** |
| 12. Pension or retirement income | $ | **0.00** | $ | **0.00** |
| 13. Other monthly income | | | | |
| (Specify): _____ | $ | **0.00** | $ | **0.00** |
| | $ | **0.00** | $ | **0.00** |
| 14. SUBTOTAL OF LINES 7 THROUGH 13 | $ | **0.00** | $ | **0.00** |
| 15. TOTAL MONTHLY INCOME (Add amounts shown on lines 6 and 14) | $ | **5,400.00** | $ | **10,000.00** |

16. TOTAL COMBINED MONTHLY INCOME:     $ _____ **15,400.00**          (Report also on Summary of Schedules)

17. Describe any increase or decrease in income reasonably anticipated to occur within the year following the filing of this document:

Form B6I
(10/05)

In re    **Deloris V. Victoria**                                                Case No. _____
                                   Debtor(s)

## SCHEDULE I. CURRENT INCOME OF INDIVIDUAL DEBTOR(S)
### Detailed Income Attachment

**Other Payroll Deductions:**

| | | |
|---|---:|---:|
| **BILLING** | $ **1,200.00** | $ **2,000.00** |
| **PAYROLL** | $ **3,500.00** | $ **5,000.00** |
| **OFFICE EXPENSES** | $ **3,400.00** | $ **3,000.00** |
| **UTILITIES, ETC** | $ **1,500.00** | $ **0.00** |
| **Total Other Payroll Deductions** | $ **9,600.00** | $ **10,000.00** |

Form B6J
(10/05)

In re   **Deloris V. Victoria**_____   Case No. _____
                          Debtor(s)

# SCHEDULE J. CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)

Complete this schedule by estimating the average monthly expenses of the debtor and the debtor's family.  Pro rate any payments made bi-weekly, quarterly, semi-annually, or annually to show monthly rate.

☐   Check this box if a joint petition is filed and debtor's spouse maintains a separate household.  Complete a separate schedule of expenditures labeled "Spouse."

| | | | |
|---|---|---|---|
| 1. Rent or home mortgage payment (include lot rented for mobile home) | | $ | 4,000.00 |
|    a. Are real estate taxes included?  Yes ___  No **X**_ | | | |
|    b. Is property insurance included?  Yes ___  No **X**_ | | | |
| 2. Utilities:  a. Electricity and heating fuel | | $ | 350.00 |
|     b. Water and sewer | | $ | 80.00 |
|     c. Telephone | | $ | 300.00 |
|     d. Other  **Cable** | | $ | 80.00 |
| 3. Home maintenance (repairs and upkeep) | | $ | 250.00 |
| 4. Food | | $ | 400.00 |
| 5. Clothing | | $ | 150.00 |
| 6. Laundry and dry cleaning | | $ | 100.00 |
| 7. Medical and dental expenses | | $ | 100.00 |
| 8. Transportation (not including car payments) | | $ | 700.00 |
| 9. Recreation, clubs and entertainment, newspapers, magazines, etc. | | $ | 100.00 |
| 10. Charitable contributions | | $ | 1,000.00 |
| 11. Insurance (not deducted from wages or included in home mortgage payments) | | | |
|     a. Homeowner's or renter's | | $ | 100.00 |
|     b. Life | | $ | 600.00 |
|     c. Health | | $ | 400.00 |
|     d. Auto | | $ | 1,200.00 |
|     e. Other | | $ | 0.00 |
| 12. Taxes (not deducted from wages or included in home mortgage payments) | | | |
|     (Specify) | | $ | 0.00 |
| 13. Installment payments: (In chapter 11, 12 and 13 cases, do not list payments to be included in the plan.) | | | |
|     a. Auto | | $ | 0.00 |
|     b. Other | | $ | 0.00 |
|     c. Other | | $ | 0.00 |
|     d. Other | | $ | 0.00 |
| 14. Alimony, maintenance, and support paid to others | | $ | 0.00 |
| 15. Payments for support of additional dependents not living at your home | | $ | 0.00 |
| 16. Regular expenses from operation of business, profession, or farm (attach detailed statement) | | $ | 0.00 |
| 17. Other  **SPOUSES DEBTS** | | $ | 3,500.00 |
|    Other  **MISCELLANEOUS** | | $ | 100.00 |
| 18. TOTAL MONTHLY EXPENSES (Report also on Summary of Schedules) | | $ | 13,510.00 |

19. Describe any increase or decrease in expenditures reasonably anticipated to occur within the year following the filing of this document:

_____

20. STATEMENT OF MONTHLY NET INCOME

| | | |
|---|---|---|
| a.   Total monthly income from Line 16 of Schedule I | $ | 15,400.00 |
| b.   Total monthly expenses from Line 18 above | $ | 13,510.00 |
| c.   Monthly net income (a. minus b.) | $ | 1,890.00 |

Official Form 6-Decl.
(10/05)

# United States Bankruptcy Court
## Middle District of Alabama

In re    **Deloris V. Victoria**
_____    Case No. _____
                                    Debtor(s)    Chapter    **7** _____

## DECLARATION CONCERNING DEBTOR'S SCHEDULES

### DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

    I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of
___**19**___ sheets *[total shown on summary page plus 2]*, and that they are true and correct to the best of my
knowledge, information, and belief.

Date    **September 25, 2006**_____    Signature    **/s/ Deloris V. Victoria**_____
                                    **Deloris V. Victoria**
                                    Debtor

*Penalty for making a false statement or concealing property:*  Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§  152 and 3571.

Official Form 7
(10/05)

# United States Bankruptcy Court
## Middle District of Alabama

In re  **Deloris V. Victoria**

Debtor(s)

Case No.

Chapter  **7**

# STATEMENT OF FINANCIAL AFFAIRS

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs. Do not include the name or address of a minor child in this statement. Indicate payments, transfers and the like to minor children by stating "a minor child." See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

Questions 1 - 18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25. **If the answer to an applicable question is "None," mark the box labeled "None."** If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

### *DEFINITIONS*

*"In business."* A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed full-time or part-time. An individual debtor also may be "in business" for the purpose of this form if the debtor engages in a trade, business, or other activity, other than as an employee, to supplement income from the debtor's primary employment.

*"Insider."* The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any owner of 5 percent or more of the voting or equity securities of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; any managing agent of the debtor. 11 U.S.C. § 101.

---

#### 1. Income from employment or operation of business

None
☐

State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business, including part-time activities either as an employee or in independent trade or business, from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the **two years** immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE |
|---|---|
| **$96,000.00** | **YTD-- SELF EMPLOYED/JOINT RETURN** |
| **$180,000.00** | **2005-- SELF EMPLOYED/JOINT RETURN** |
| **$180,000.00** | **2004-- SELF EMPLOYED/JOINT RETURN** |

#### 2. Income other than from employment or operation of business

None
■

State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the **two years** immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

AMOUNT                    SOURCE

2

**3. Payments to creditors**

None
■    *Complete a. or b., as appropriate, and c.*

   a.   *Individual or joint debtor(s) with primarily consumer debts.*  List all payments on loans, installment purchases of goods or services, and other debts to any creditor made within **90 days** immediately preceding the commencement of this case if the aggregate value of all property that constitutes or is affected by such transfer is not less than $600. Indicate with an (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and creditor counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS<br>OF CREDITOR | DATES OF<br>PAYMENTS | AMOUNT PAID | AMOUNT STILL<br>OWING |
|---|---|---|---|

None
☐    b.   *Debtor whose debts are not primarily consumer debts:* List each payment or other transfer to any creditor made within **90 days** immediately preceding the commencement of the case if the aggregate value of all property that constitutes or is affected by such transfer is not less than $5,000.  (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF<br>PAYMENTS/<br>TRANSFERS | AMOUNT<br>PAID OR<br>VALUE OF<br>TRANSFERS | AMOUNT STILL<br>OWING |
|---|---|---|---|
| **MBNA AMERICA<br>PO BOX 17054<br>Wilmington, DE 19884** | **MARCH 2006 - JUNE 2006** | **$3,000.00** | **$65,000.00** |

None
■    c.   *All debtors:* List all payments made within **one year** immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR AND<br>RELATIONSHIP TO DEBTOR | DATE OF PAYMENT | AMOUNT PAID | AMOUNT STILL<br>OWING |
|---|---|---|---|

**4.  Suits and administrative proceedings, executions, garnishments and attachments**

None
☐    a. List all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT<br>AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY<br>AND LOCATION | STATUS OR<br>DISPOSITION |
|---|---|---|---|
| **GENZEN HEALTHCARE VS<br>DOLORES V VICTORIA<br>CV 05177** | **COLLECTION** | **BUTLER COUNTY** | **ACTIVE** |
| **GREENVILLE HOSPITAL VS<br>DOLORES VICTORIA, MD<br>CV 05-133** | **CONTRACT** | **BUTLER COUNTY** | **ACTIVE** |

None
■    b. Describe all property that has been attached, garnished or seized under any legal or equitable process within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON FOR WHOSE<br>BENEFIT PROPERTY WAS SEIZED | DATE OF SEIZURE | DESCRIPTION AND VALUE OF<br>PROPERTY |
|---|---|---|

3

**5.  Repossessions, foreclosures and returns**

None
■

List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR OR SELLER | DATE OF REPOSSESSION, FORECLOSURE SALE, TRANSFER OR RETURN | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

**6.  Assignments and receiverships**

None
■

a. Describe any assignment of property for the benefit of creditors made within **120 days** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF ASSIGNEE | DATE OF ASSIGNMENT | TERMS OF ASSIGNMENT OR SETTLEMENT |
|---|---|---|

None
■

b. List all property which has been in the hands of a custodian, receiver, or court-appointed official within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CUSTODIAN | NAME AND LOCATION OF COURT CASE TITLE & NUMBER | DATE OF ORDER | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|---|

**7.  Gifts**

None
■

List all gifts or charitable contributions made within **one year** immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON OR ORGANIZATION | RELATIONSHIP TO DEBTOR, IF ANY | DATE OF GIFT | DESCRIPTION AND VALUE OF GIFT |
|---|---|---|---|

**8.  Losses**

None
■

List all losses from fire, theft, other casualty or gambling within **one year** immediately preceding the commencement of this case **or since the commencement of this case.** (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| DESCRIPTION AND VALUE OF PROPERTY | DESCRIPTION OF CIRCUMSTANCES AND, IF LOSS WAS COVERED IN WHOLE OR IN PART BY INSURANCE, GIVE PARTICULARS | DATE OF LOSS |
|---|---|---|

**9.  Payments related to debt counseling or bankruptcy**

None
☐

List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of the petition in bankruptcy within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYOR IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| **Shinbaum, Abell, McLeod & Vann, P.C.**<br>**566 South Perry Street**<br>**Post Office Box 201**<br>**Montgomery, AL 36101-0201** | | **$299.00 FILING FEE**<br>**$3000.00 ATTORNEY FEE** |

4

**10. Other transfers**

None
■

a. List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within **two years** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
| --- | --- | --- |

None
■

b. List all property transferred by the debtor within **ten years** immediately preceding the commencement of this case to a self-settled trust or similar device of which the debtor is a beneficiary.

| NAME OF TRUST OR OTHER DEVICE | DATE(S) OF TRANSFER(S) | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY OR DEBTOR'S INTEREST IN PROPERTY |
| --- | --- | --- |

**11. Closed financial accounts**

None
■

List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within **one year** immediately preceding the commencement of this case. Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF INSTITUTION | TYPE OF ACCOUNT, LAST FOUR DIGITS OF ACCOUNT NUMBER, AND AMOUNT OF FINAL BALANCE | AMOUNT AND DATE OF SALE OR CLOSING |
| --- | --- | --- |

**12. Safe deposit boxes**

None
■

List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF BANK OR OTHER DEPOSITORY | NAMES AND ADDRESSES OF THOSE WITH ACCESS TO BOX OR DEPOSITORY | DESCRIPTION OF CONTENTS | DATE OF TRANSFER OR SURRENDER, IF ANY |
| --- | --- | --- | --- |

**13. Setoffs**

None
■

List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within **90 days** preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATE OF SETOFF | AMOUNT OF SETOFF |
| --- | --- | --- |

**14. Property held for another person**

None
■

List all property owned by another person that the debtor holds or controls.

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF PROPERTY |
| --- | --- | --- |

5

**15. Prior address of debtor**

None ■    If the debtor has moved within **three years** immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse.

ADDRESS                              NAME USED                              DATES OF OCCUPANCY

**16. Spouses and Former Spouses**

None ■    If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within **eight years** immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state.

NAME

**17. Environmental Information.**

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state, or local statute or regulation regulating pollution, contamination, releases of hazardous or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to, statutes or regulations regulating the cleanup of these substances, wastes, or material.

"Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly owned or operated by the debtor, including, but not limited to, disposal sites.

"Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, or contaminant or similar term under an Environmental Law

None ■    a. List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable or potentially liable under or in violation of an Environmental Law. Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law:

|  | NAME AND ADDRESS OF | DATE OF | ENVIRONMENTAL |
| SITE NAME AND ADDRESS | GOVERNMENTAL UNIT | NOTICE | LAW |

None ■    b. List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous Material. Indicate the governmental unit to which the notice was sent and the date of the notice.

|  | NAME AND ADDRESS OF | DATE OF | ENVIRONMENTAL |
| SITE NAME AND ADDRESS | GOVERNMENTAL UNIT | NOTICE | LAW |

None ■    c. List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which the debtor is or was a party. Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number.

NAME AND ADDRESS OF
GOVERNMENTAL UNIT                              DOCKET NUMBER                              STATUS OR DISPOSITION

6

**18 . Nature, location and name of business**

None
☐

a. *If the debtor is an individual*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within **six years** immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

*If the debtor is a partnership*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within **six years** immediately preceding the commencement of this case.

*If the debtor is a corporation*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

| NAME | LAST FOUR DIGITS OF SOC. SEC. NO./ COMPLETE EIN OR OTHER TAXPAYER I.D. NO. | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|---|---|---|---|---|
| **Dr. Deloris Victoria** | **63-1103639** | **41 Medical Arts Court HWY 10 W Greenville, AL 36037** | **Inrernal Medicine** | **1993** |

None
■

b. Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101.

NAME                                                                ADDRESS

7

## DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct.

Date **September 25, 2006**          Signature     **/s/ Deloris V. Victoria**

                                                      **Deloris V. Victoria**

                                                      Debtor

*Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571*

Form 8
(10/05)

# United States Bankruptcy Court
## Middle District of Alabama

In re **Deloris V. Victoria**

Debtor(s)

Case No. _____

Chapter **7**

## CHAPTER 7 INDIVIDUAL DEBTOR'S STATEMENT OF INTENTION

■   I have filed a schedule of assets and liabilities which includes debts secured by property of the estate.

☐   I have filed a schedule of executory contracts and unexpired leases which includes personal property subject to an unexpired lease.

■   I intend to do the following with respect to property of the estate which secures those debts or is subject to a lease:

| Description of Secured Property | Creditor's Name | Property will be Surrendered | Property is claimed as exempt | Property will be redeemed pursuant to 11 U.S.C. § 722 | Debt will be reaffirmed pursuant to 11 U.S.C. § 524(c) |
|---|---|---|---|---|---|
| **225 WOODLAND HEIGHTS DR, GREENVILLE AL-- SINGLE FAMILY RESIDENCE VALUE LISTED IS TAX ASSESSED VALUE** | **BRANTLEY BANK & TRUST** | | | | **X** |
| **COMPUTERS, EKG, TABLES, CHAIRS** | **CAMDEN NATIONAL** | | | | **X** |

| Description of Leased Property | Lessor's Name | Lease will be assumed pursuant to 11 U.S.C. § 362(h)(1)(A) |
|---|---|---|
| **-NONE-** | | |

Date **September 25, 2006**

Signature **/s/ Deloris V. Victoria**

**Deloris V. Victoria**
Debtor

# United States Bankruptcy Court
## Middle District of Alabama

In re   **Deloris V. Victoria** _____   Case No. _____
_____
                                    Debtor(s)          Chapter   **7**

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)

1. Pursuant to 11 U.S.C. § 329(a) and Bankruptcy Rule 2016(b), I certify that I am the attorney for the above-named debtor and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

   For legal services, I have agreed to accept.................................................   $ _____**3,000.00**

   Prior to the filing of this statement I have received.................................   $ _____**3,000.00**

   Balance Due.............................................................................................   $ _____**0.00**

2. $__**299.00**__ of the filing fee has been paid.

3. The source of the compensation paid to me was:

   ■ Debtor       ☐ Other (specify):

4. The source of compensation to be paid to me is:

   ■ Debtor       ☐ Other (specify):

5. ■ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

   ☐ I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation is attached.

6. In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:
   a. Representation of the debtor in adversary proceedings and other contested bankruptcy matters;
   b. [Other provisions as needed]
      **Negotiations with secured creditors to reduce to market value; exemption planning; preparation and filing of reaffirmation agreements and applications as needed; preparation and filing of motions pursuant to 11 USC 522(f)(2)(A) for avoidance of liens on household goods.**

7. By agreement with the debtor(s), the above-disclosed fee does not include the following service:
   **Representation of the debtors in any dischargeability actions, judicial lien avoidances, relief from stay actions or any other adversary proceeding.**

---

### CERTIFICATION

   I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

Dated:   **September 25, 2006** _____        **/s/ C. Brandon Sellers, III**
                                                    **C. Brandon Sellers, III**
                                                    **Shinbaum, Abell, McLeod & Vann, P.C.**
                                                    **566 South Perry Street**
                                                    **Post Office Box 201**
                                                    **Montgomery, AL 36101-0201**
                                                    **334-269-4440   Fax: 334-263-4440**

---

B 201 (04/09/06)

UNITED STATES BANKRUPTCY COURT
**MIDDLE DISTRICT OF ALABAMA**

**NOTICE TO INDIVIDUAL CONSUMER DEBTOR UNDER § 342(b)
OF THE BANKRUPTCY CODE**

In accordance with § 342(b) of the Bankruptcy Code, this notice: (1) Describes briefly the services available from credit counseling services; (2) Describes briefly the purposes, benefits and costs of the four types of bankruptcy proceedings you may commence; and (3) Informs you about bankruptcy crimes and notifies you that the Attorney General may examine all information you supply in connection with a bankruptcy case. You are cautioned that bankruptcy law is complicated and not easily described. Thus, you may wish to seek the advice of an attorney to learn of your rights and responsibilities should you decide to file a petition. Court employees cannot give you legal advice.

## 1. Services Available from Credit Counseling Agencies

**With limited exceptions, § 109(h) of the Bankruptcy Code requires that all individual debtors who file for bankruptcy relief on or after October 17, 2005, receive a briefing that outlines the available opportunities for credit counseling and provides assistance in performing a budget analysis.** The briefing must be given within 180 days **before** the bankruptcy filing. The briefing may be provided individually or in a group (including briefings conducted by telephone or on the Internet) and must be provided by a nonprofit budget and credit counseling agency approved by the United States trustee or bankruptcy administrator. The clerk of the bankruptcy court has a list that you may consult of the approved budget and credit counseling agencies.

**In addition, after filing a bankruptcy case, an individual debtor generally must complete a financial management instructional course before he or she can receive a discharge.** The clerk also has a list of approved financial management instructional courses.

## 2. The Four Chapters of the Bankruptcy Code Available to Individual Consumer Debtors

**Chapter 7: Liquidation ($245 filing fee, $39 administrative fee, $15 trustee surcharge: Total Fee $299)**
1. Chapter 7 is designed for debtors in financial difficulty who do not have the ability to pay their existing debts. Debtors whose debts are primarily consumer debts are subject to a "means test" designed to determine whether the case should be permitted to proceed under chapter 7. If your income is greater than the median income for your state of residence and family size, in some cases, creditors have the right to file a motion requesting that the court dismiss your case under § 707(b) of the Code. It is up to the court to decide whether the case should be dismissed.
2. Under chapter 7, you may claim certain of your property as exempt under governing law. A trustee may have the right to take possession of and sell the remaining property that is not exempt and use the sale proceeds to pay your creditors.
3. The purpose of filing a chapter 7 case is to obtain a discharge of your existing debts. If, however, you are found to have committed certain kinds of improper conduct described in the Bankruptcy Code, the court may deny your discharge and, if it does, the purpose for which you filed the bankruptcy petition will be defeated.
4. Even if you receive a general discharge, some particular debts are not discharged under the law. Therefore, you may still be responsible for most taxes and student loans; debts incurred to pay nondischargeable taxes; domestic support and property settlement obligations; most fines, penalties, forfeitures, and criminal restitution obligations; certain debts which are not properly listed in your bankruptcy papers; and debts for death or personal injury caused by operating a motor vehicle, vessel, or aircraft while intoxicated from alcohol or drugs. Also, if a creditor can prove that a debt arose from fraud, breach of fiduciary duty, or theft, or from a willful and malicious injury, the bankruptcy court may determine that the debt is not discharged.

**Chapter 13: Repayment of All or Part of the Debts of an Individual with Regular Income ($235 filing fee, $39 administrative fee: Total fee $274)**
1. Chapter 13 is designed for individuals with regular income who would like to pay all or part of their debts in installments over a period of time. You are only eligible for chapter 13 if your debts do not exceed certain dollar amounts set forth in the Bankruptcy Code.
2. Under chapter 13, you must file with the court a plan to repay your creditors all or part of the money that you owe them, using your future earnings. The period allowed by the court to repay your debts may be three years or five years, depending upon your income and other factors. The court must approve your plan before it can take effect.
3. After completing the payments under your plan, your debts are generally discharged except for domestic support obligations; most student loans; certain taxes; most criminal fines and restitution obligations; certain debts which are not properly listed in your bankruptcy papers; certain debts for acts that caused death or personal injury; and certain long term secured obligations.

B 201 (04/09/06)

### Chapter 11: Reorganization ($1000 filing fee, $39 administrative fee: Total fee $1039)

Chapter 11 is designed for the reorganization of a business but is also available to consumer debtors. Its provisions are quite complicated, and any decision by an individual to file a chapter 11 petition should be reviewed with an attorney.

### Chapter 12: Family Farmer or Fisherman ($200 filing fee, $39 administrative fee: Total fee $239)

Chapter 12 is designed to permit family farmers and fishermen to repay their debts over a period of time from future earnings and is similar to chapter 13. The eligibility requirements are restrictive, limiting its use to those whose income arises primarily from a family-owned farm or commercial fishing operation.

## 3. Bankruptcy Crimes and Availability of Bankruptcy Papers to Law Enforcement Officials

A person who knowingly and fraudulently conceals assets or makes a false oath or statement under penalty of perjury, either orally or in writing, in connection with a bankruptcy case is subject to a fine, imprisonment, or both. All information supplied by a debtor in connection with a bankruptcy case is subject to examination by the Attorney General acting through the Office of the United States Trustee, the Office of the United States Attorney, and other components and employees of the Department of Justice.

**WARNING:** Section 521(a)(1) of the Bankruptcy Code requires that you promptly file detailed information regarding your creditors, assets, liabilities, income, expenses and general financial condition. Your bankruptcy case may be dismissed if this information is not filed with the court within the time deadlines set by the Bankruptcy Code, the Bankruptcy Rules, and the local rules of the court.

### Certificate of Attorney

I hereby certify that I delivered to the debtor this notice required by § 342(b) of the Bankruptcy Code.

| | | |
|---|---|---|
| C. Brandon Sellers, III | X /s/ C. Brandon Sellers, III | September 25, 2006 |
| Printed Name of Attorney | Signature of Attorney | Date |

Address:
**566 South Perry Street
Post Office Box 201
Montgomery, AL 36101-0201
334-269-4440**

### Certificate of Debtor

I (We), the debtor(s), affirm that I (we) have received and read this notice.

| | | |
|---|---|---|
| Deloris V. Victoria | X /s/ Deloris V. Victoria | September 25, 2006 |
| Printed Name(s) of Debtor(s) | Signature of Debtor | Date |
| Case No. (if known) | X | |
| | Signature of Joint Debtor (if any) | Date |

Software Copyright (c) 1996-2006 Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                    Best Case Bankruptcy

# United States Bankruptcy Court
## Middle District of Alabama

In re    __Deloris V. Victoria_____    Case No. _____
                                                Debtor(s)    Chapter    __7_____

# VERIFICATION OF CREDITOR MATRIX

The above-named Debtor hereby verifies that the attached list of creditors is true and correct to the best of his/her knowledge.

DELORIS V. VICTORIA
225 WOODLAND HEIGHTS DR
GREENVILLE, AL 36037


BANK OF AMERICA
PO BOX 41466
PHILADELPHIA, PA 19101


BRANTLEY BANK & TRUST
P.O. BOX 25
BRANTLEY, AL 36009


CAMDEN NATIONAL
3 WATER STREET
CAMDEN, AL 36726


CENTURYTEL
PO BOX 6001
MARION, LA 71260-6001


DAVID C. SCHWARTZ, ESQ.
PO BOX 11366
BIRMINGHAM, AL 35202-1366


EDGAR VICTORIA
225 WOODLAND HEIGHTS DR
GREENVILLE, AL 36037


EGAR VICTORIA
225 WOODLAND HEIGHTS DR
GREENVILLE, AL 36037


GENEZEN HEALTHCARE
PO BOX 571811
HOUSTON, TX 77257

GREENVILLE  HOSPITAL
DBA LV STABLER MEMORIAL
29 STABLER DR
GREENVILLE, AL 36037


GREER  B.  MALLETTE,  ESQ
505 20TH ST N., STE 1800
BIRMINGHAM, AL 35203-2696


HON.  PATRICIA  CONOVER
ASSISTANT UNITED STATES ATTY.
P.O. BOX 197
MONTGOMERY, AL 36101


INTERNAL  REVENUE  SERVICE
SPECIAL PROCEDURES FUNCTION
801 TOM MARTIN DR., ROOM 126
BIRMINGHAM, AL 35211


INTERNAL  REVENUE  SERVICE
P O BOX 21126
PHILADELPHIA, PA 19114


MBNA  AMERICA
PO BOX 17054
WILMINGTON, DE 19884


STATE  OF  ALABAMA
DEPARTMENT OF REVENUE
P.O. BOX 320001
MONTGOMERY, AL 36132


WHITNEY  BANK
228 ST CHARLES AVE
NEW ORLEANS, LA 70130

Form B22A (Chapter 7) (10/05)

In re    **Deloris V. Victoria**
_____
                    Debtor(s)

Case Number: _____
                    (If known)

According to the calculations required by this statement:

☐ The presumption arises.

■ The presumption does not arise.

(Check the box as directed in Parts I, III, and VI of this statement.)

# STATEMENT OF CURRENT MONTHLY INCOME AND MEANS TEST CALCULATION
## FOR USE IN CHAPTER 7 ONLY

In addition to Schedules I and J, this statement must be completed by every individual Chapter 7 debtor, whether or not filing jointly, whose debts are primarily consumer debts.  Joint debtors may complete one statement only.

Debtor declares under penalty of perjury that debts are primarily non-consumer; therefore, Means Test does not apply per § 707(b)(1).

| | Part VIII. VERIFICATION |
|---|---|
| 57 | I declare under penalty of perjury that the information provided in this statement is true and correct.  *(If this is a joint case, both debtors must sign.)*  Date:   **September 25, 2006**          Signature:  **/s/ Deloris V. Victoria**          **Deloris V. Victoria**                    (Debtor) |

B 240 - Reaffirmation Agreement
(10/05)

# United States Bankruptcy Court
## <u>Middle</u> District of <u>Alabama</u>

In re   Deloris V. Victoria

Case No.   06-31225
Chapter

Debtor(s)

## REAFFIRMATION AGREEMENT

*[Indicate all documents included in this filing by checking each applicable box.]*

☐ Part A: Disclosures, Instructions, and Notice to Debtor (Pages 1 - 5)
☐ Part B: Reaffirmation Agreement
☐ Part C: Certification by Debtor's Attorney

☐ Part D: Debtor's Statement in Support of Reaffirmation Agreement
☐ Part E: Motion for Court Approval
☐ Proposed Order Approving Reaffirmation Agreement

☐ *[Check this box if]* Creditor is a Credit Union as defined in §19(b)(1)(a)(iv) of the Federal Reserve Act

## PART A: DISCLOSURE STATEMENT, INSTRUCTIONS AND NOTICE TO DEBTOR

### 1.   DISCLOSURE STATEMENT

*Before Agreeing to Reaffirm a Debt, Review These Important Disclosures:*

#### SUMMARY OF REAFFIRMATION AGREEMENT
This Summary is made pursuant to the requirements of the Bankruptcy Code.

#### AMOUNT REAFFIRMED

a.   The amount of debt you have agreed to reaffirm:                          $ 285,170.31

b.   All fees and costs accrued as of the date of this disclosure statement, related to the amount of debt shown in a., above:                          $

c.   The total amount you have agreed to reaffirm (Debt and fees and costs) (Add lines a. and b.):     $285,170.31 XXXXX

*Your credit agreement may obligate you to pay additional amounts which may come due after the date of this disclosure. Consult your credit agreement.*

## ANNUAL PERCENTAGE RATE

*[The annual percentage rate can be disclosed in different ways, depending on the type of debt.]*

a.  If the debt is an extension of "credit" under an "open end credit plan," as those terms are defined in § 103 of the Truth in Lending Act, such as a credit card, the creditor may disclose the annual percentage rate shown in (i) below or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

(i)  The Annual Percentage Rate disclosed, or that would have been disclosed, to the debtor in the most recent periodic statement prior to entering into the reaffirmation agreement described in Part B below or, if no such periodic statement was given to the debtor during the prior six months, the annual percentage rate as it would have been so disclosed at the time of the disclosure statement: %.

— *And/Or* —

(ii)  The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: %.  If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:

$             @             %;
$             @             %;
$             @             %.

b.  If the debt is an extension of credit other than under than an open end credit plan, the creditor may disclose the annual percentage rate shown in (i) below, or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

(i)  The Annual Percentage Rate under §128(a)(4) of the Truth in Lending Act, as disclosed to the debtor in the most recent disclosure statement given to the debtor prior to entering into the reaffirmation agreement with respect to the debt or, if no such disclosure statement was given to the debtor, the annual percentage rate as it would have been so disclosed: %.

— *And/Or* —

(ii)  The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: %.  If different simple interest rates apply to different balances included in the amount reaffirmed,

P. 3

the amount of each balance and the rate applicable to it are:

$        @        %;
$        @        %;
$        @        %.

c.  If the underlying debt transaction was disclosed as a variable rate transaction on the most recent disclosure given under the Truth in Lending Act:

The interest rate on your loan may be a variable interest rate which changes from time to time, so that the annual percentage rate disclosed here may be higher or lower.

d.  If the reaffirmed debt is secured by a security interest or lien, which has not been waived or determined to be void by a final order of the court, the following items or types of items of the debtor's goods or property remain subject to such security interest or lien in connection with the debt or debts being reaffirmed in the reaffirmation agreement described in Part B.

<u>Item or Type of Item</u>                <u>Original Purchase Price or Original Amount of Loan</u>

Mortgage                                    $347,577.39

*Optional---At the election of the creditor, a repayment schedule using one or a combination of the following may be provided:*

**Repayment Schedule:**

Your first payment in the amount of                is due on            (date), but the future payment amount may be different. Consult your reaffirmation agreement or credit agreement, as applicable.

*---Or---*

Your payment schedule will be:  176        (number) payments in the amount of $ 2,025.05 each, payable  Semi-Monthly              on the 18th        (day) of each Month            , unless altered later by mutual agreement in writing.

*---Or---*

Describe repayment obligation with specificity to extent known by creditor or creditor representative

P. 4

## 2. INSTRUCTIONS AND NOTICE TO DEBTOR

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps are not completed, the reaffirmation agreement is not effective, even though you have signed it.

1. Read the disclosures in this Part A carefully. Consider the decision to reaffirm carefully. Then, if you want to reaffirm, sign the reaffirmation agreement in Part B (or you may use a separate agreement you and your creditor agree on).

2. Complete and sign Part D and be sure you can afford to make the payments you are agreeing to make and have received a copy of the disclosure statement and a completed and signed reaffirmation agreement.

3. If you were represented by an attorney during the negotiation of your reaffirmation agreement, the attorney must have signed the certification in Part C.

4. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, you must have completed and signed Part E.

5. The original of this disclosure must be filed with the court by you or your creditor. If a separate reaffirmation agreement (other than the one in Part B) has been signed, it must be attached.

6. If the creditor is not a Credit Union and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship as explained in Part D. If the creditor is a Credit Union and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court.

7. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, it will not be effective unless the court approves it. The court will notify you and the creditor of the hearing on your reaffirmation agreement. You must attend this hearing in bankruptcy court where the judge will review your reaffirmation agreement. The bankruptcy court must approve your reaffirmation agreement as consistent with your best interests, except that no court approval is required if your reaffirmation agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home.

# YOUR RIGHT TO RESCIND (CANCEL) YOUR REAFFIRMATION AGREEMENT

You may rescind (cancel) your reaffirmation agreement at any time before the bankruptcy court enters a discharge order, or before the expiration of the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later. To rescind (cancel) your reaffirmation agreement, you must notify the creditor that your reaffirmation agreement is rescinded (or canceled).

## Frequently Asked Questions:

What are your obligations if you reaffirm the debt? A reaffirmed debt remains your personal legal obligation. It is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Otherwise, your obligations will be determined by the reaffirmation agreement which may have changed the terms of the original agreement. For example, if you are reaffirming an open end credit agreement, the creditor may be permitted by that agreement or applicable law to change the terms of that agreement in the future under certain conditions.

Are you required to enter into a reaffirmation agreement by any law? No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments you agree to make.

What if your creditor has a security interest or lien? Your bankruptcy discharge does not eliminate any lien on your property. A ''lien'' is often referred to as a security interest, deed of trust, mortgage or security deed. Even if you do not reaffirm and your personal liability on the debt is discharged, because of the lien your creditor may still have the right to take the security property if you do not pay the debt or default on it. If the lien is on an item of personal property that is exempt under your State's law or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the security property, as agreed by the parties or determined by the court.

> NOTE: When this disclosure refers to what a creditor ''may'' do, it does not use the word ''may'' to give the creditor specific permission. The word ''may'' is used to tell you what might occur if the law permits the creditor to take the action. If you have questions about your reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement reaffirming a debt. If you don't have an attorney helping you, the judge will explain the effect of your reaffirming a debt when the hearing on the reaffirmation agreement is held.

P. 6

**PART B: REAFFIRMATION AGREEMENT.**

I (we) agree to reaffirm the debts arising under the credit agreement described below.

1. Brief description of credit agreement:

> Mortgage Loan on residence located at 225 Woodland Heights
> Drive, Greenville, AL  36037

2. Description of any changes to the credit agreement made as part of this reaffirmation agreement:

SIGNATURE(S):

Borrower:

DOLORES V. VICTORIA
(Print Name)

*Dolores V. Victoria*
(Signature)
Date: 10-24-06

Co-borrower, if also reaffirming these debts:

(Print Name)

(Signature)
Date:

Accepted by creditor:

Brantley Bank + Trust Company
Jimmie R. Lester, VP + Cashier
(Print Name)

(Signature)

Date of creditor acceptance: 10-19-06

P. 7

## PART C: CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY).

*[Check each applicable box.]*

☑ I hereby certify that (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ *[If applicable and the creditor is not a Credit Union.]* A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

Printed Name of Debtor's Attorney: Cal Brandon Sell III

Signature of Debtor's Attorney: Carl Brandon Sellers III

Date: 10·24·06

P. 8

## PART D: DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

1.  I believe this reaffirmation agreement will not impose an undue hardship on my dependents or me. I can afford to make the payments on the reaffirmed debt because my monthly income (take home pay plus any other income received) is $            and my actual current monthly expenses including monthly payments on post-bankruptcy debt and other reaffirmation agreements total $            , leaving $            to make the required payments on this reaffirmed debt. I understand that if my income less my monthly expenses does not leave enough to make the payments, this reaffirmation agreement is presumed to be an undue hardship on me and must be reviewed by the court. However, this presumption may be overcome if I explain to the satisfaction of the court how I can afford to make the payments here:

2.  *Either:* I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

— *Or* —

*[If the creditor is a Credit Union and the debtor is represented by an attorney]* I believe this reaffirmation agreement is in my financial interest. I can afford to make the payments on the reaffirmed debt. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: _____
        (Debtor)

        (Joint Debtor, if any)

Date: 10·24·06

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re:                                        )
                                              )
Deloris V. Victoria,                          )        Case No. 06-31225-WRS-7
                                              )
      Debtor.                             )

---

### MOTION FOR FINDING THAT DEBTOR'S LEASE WITH GREENVILLE HOSPITAL
### IS AUTOMATICALLY REJECTED AND FOR RELIEF FROM STAY

---

Greenville Hospital Corporation, d/b/a LV Stabler Memorial Hospital ("Greenville Hospital"), a creditor and party of interest in the chapter 7 bankruptcy case filed by Deloris V. Victoria (the "Debtor" or "Victoria"), requests that the Court enter an order finding that the Debtor's Medical Office Space Lease (the "Lease") with Greenville Hospital has been automatically rejected. Greenville Hospital further requests relief from stay to pursue its contractual remedies under the Lease. In support of its motion, Greenville Hospital says as follows:

1.      The Debtor filed a chapter 7 bankruptcy case in this Court on September 25, 2006. Prior to filing bankruptcy, the Debtor executed the Lease with Greenville Hospital on June 29, 2006. A true and correct copy of the Lease is attached as Exhibit "A." Under the terms of the Lease, the Debtor agreed to lease certain premises from Greenville Hospital for a period of two (2) years commencing on June 1, 2006.

2.      The Lease was not listed in the Debtor's bankruptcy petition, schedules or statement of intention. The Debtor has not amended her statement of intention to assume or reject the Lease, nor has the Debtor asked the Court for additional time to determine whether she will assume or reject the Lease.

3.      Pursuant to Section 365(d)(4) of the Bankruptcy Code, an unexpired lease of nonresidential real property under which the debtor is the lessee is automatically deemed rejected unless it is assumed within 120 days from the petition date or the date that a confirmation order is entered,

whichever is earlier.  Although a debtor may request that the 120 day period be expanded, the debtor's

request must be filed before the 120 day period expires.

4.    The time period for the Debtor to assume the Lease under Section 365(d)(4) has now

expired and the Debtor has not asked the Court to extend the 120 day time period; therefore, the Lease

has been automatically rejected pursuant to Section 365(d)(4).

5.    Greenville Hospital requests that the Court enter a "comfort order" finding that the Lease

has been automatically rejected and granting Greenville Hospital relief from stay to pursue its contractual

remedies under the Lease.

6.    **Greenville Hospital requests that its counsel be allowed to appear for any hearing**

**on this motion by telephone**.

WHEREFORE, Greenville Hospital Corporation, d/b/a LV Stabler Memorial Hospital, requests

that the Court enter an order finding that Deloris V. Victoria's Lease with Greenville Hospital has been

automatically rejected pursuant to Section 365(d)(4) of the Bankruptcy Code.  Greenville Hospital

further requests relief from stay to pursue its contractual remedies under the Lease.

Respectfully submitted,


/s/ Bradley R. Hightower
Bradley R. Hightower
Attorney for Greenville Memorial Hospital

**OF COUNSEL:**
CHRISTIAN & SMALL LLP
505 North 20th Street, Suite 1800
Birmingham, Alabama 35203
Phone: (205) 795-6588
Fax: (205) 328-7234

**<u>CERTIFICATE OF SERVICE</u>**

Unless otherwise served by the ECF system, I certify that I have served a copy of the above and foregoing Motion on the following by placing a copy in the United States Mail, properly addressed, first-class postage pre-paid on this the 30th day of January, 2007:

C. Brandon Sellers, III
Shinbaum, Abell, McLeod & Vann
P.O. Box 201
Montgomery, Alabama 36101

U.S. Bankruptcy Adminstrator
Attn: Tina Hayes
One Church Street
Montgomery, Alabama 36104

Chapter 7 Trustee, Daniel G. Hamm
560 South McDonough Street, STE A
Montgomery, Alabama 36104

/s/ Bradley R. Hightower
OF COUNSEL

## MEDICAL OFFICE SPACE LEASE

Date: ___June 29, 2006___

Name and Address of Building:
__44 Medical Arts Court, Suite 2__
__Greenville, AL 36037__

Tenant: __Dolores Victoria, M.D.__

Leased Premises Floor/Suite Description:
__Suite 2__

Landlord: __Greenville Hospital Corporation__
__d/b/a LV Stabler Memorial Hospital__
Address:
__29 LV Stabler Drive__
__Greenville, AL 36037__

**EXHIBIT**

A

Number of Square Feet: __1250__

Term of Lease: __2 years__
Renewal Terms: _____2 year term_____ (up to one renewal terms of two (2) years by written agreement
of the parties at least three months before expiration of term).

Commencement Date of Lease Term: June 1, 2006         Security Deposit: _____-0-_____

**Termination:** Either party may terminate this lease with or without cause upon thirty (30) days prior to
written notice to the other party. However, in the event this lease is terminated for any reason prior to the
expiration of one (1) year from the commencement date, the parties shall not enter into another lease until
after the expiration of the first year of the initial term.

Annual Rental Rate:$__11,250__          Monthly Rental Installments: $ 937.50
Rent Increase **(check one)** ☐ 3% per year ☐ 4% per year          ($____9.00____/square foot/year)

_____ Check here if Tenant is required to maintain membership in Hospital Medical Staff

**Utilities (check any that apply):**
X ____ Utilities (electricity, water and sewer and janitorial services) are included in the Monthly Rental.
X ____ Housekeeping services will be provided by the Landlord including trash removal.
X ____ The following utilities are not included in the Monthly Rental: electricity.
          Tenant is solely responsible for the payment of separately metered utilities.
          Tenant shall pay a pro-rata share of separately metered utilities based on Tenant's
          proportionate share of the metered square footage.

**Improvements (check any that apply): Not Applicable**
_____ First time Standard Build Out - Base Tenant Build Out Allowance: $_____ per sq. ft.
_____ Existing Space (New Tenant or Renewal) - Tenant Improvement Allowance: $____ per
          sq. ft. per year
_____ Landlord to build out space per Landlord's Work Letter attached hereto as Exhibit B

This Medical Office Space Lease is a sublease pursuant to that certain (describe underlying lease
agreement):____not applicable____

Attached hereto and incorporated herein for all purposes is "Exhibit A -- Medical Office Space Lease
Standard Terms and Conditions" to which reference is made for the balance of the terms of this Medical
Office Space Lease, including without limitation adjustments to Rental Rate/Installments.

Attached hereto and incorporated herein for all purposes are the following additional exhibits: Not applicable

**TENANT:**

Date: ___7-19-06___

**REVIEWED AND APPROVED:**

Facility Chief Executive Officer
Date: ___7-19-06___

**LANDLORD:**

By: _____
President, Hospital Corporation
Date: ___7-5-06___

**APPROVED AS TO FORM:**

In-house Counsel, Hospital Corporation
Date: ___6-30-06___

Form No. 0103 Rev. by Legal Dept as of 6/26/06.

1



*MOB Lease – Hospital-Landlord*

## EXHIBIT A
## MEDICAL OFFICE SPACE LEASE STANDARD TERMS AND CONDITIONS

    In consideration of the mutual covenants and representations set forth in the Medical Office Space Lease (the "Lease") and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties do hereby agree as follows. The capitalized terms used in this Exhibit A shall have the meaning assigned to such terms in the Medical Office Space Lease, unless another meaning is assigned to such terms in this Exhibit A.

1.    DEMISE.  Upon the terms and conditions hereinafter set forth, Landlord does hereby lease to Tenant, and Tenant does hereby lease from Landlord, the Demised Premises for the Term of the Lease.

2.    RENT.  The Monthly Rental Installments for the Lease of the Demised Premises shall be payable in advance on the first day of each and every month during the term hereof.  During the term of this Lease, the Monthly Rental Installments shall be increased, as of each anniversary date of the Commencement Date, by the percentage amount set forth in the Medical Office Space Lease.  It is expressly understood and agreed that Landlord shall apply all payments from Tenant hereunder to the amounts due hereunder by Tenant which have been outstanding for the longest period of time first.

3.    RENTAL RATE ADJUSTMENT.  Landlord shall adjust the Annual Rental Rate and the monthly Rental Installments to the then fair market rental rate for the Demised Premises, upon the termination of an existing term of the Lease. Landlord will give notice of such adjustment to Tenant 90 days prior to expiration date of current Lease. Without limitation, Landlord's adjustment of Rental Rate and the monthly installments will be based on the fair market rental rate, utility costs and real estate taxes as well as any local, state or federal income taxes, which may become payable by the Landlord. If a rent escalation percentage has been checked on the cover page of this Lease, the adjustment under this section shall not exceed the amount checked on the cover page of this Lease.

4.    LANDLORD'S OBLIGATIONS.

    A.  <u>Utilities:</u>
    If utilities are included in the Monthly Rental Installments, then Landlord shall, at Landlord's expense, furnish utilities to the Demised Premises, including electrical, water and sewer, heat, ventilation, and air conditioning, however, Tenant shall be responsible for the payment of telephone and data services.

    B.  <u>Maintenance</u>
    Landlord shall maintain, repair and replace all exterior walls and other features of the exterior including but not limited to the roof and all mechanical systems, including but not limited to air conditioning, heating, plumbing, wiring and piping.

    C.  <u>Insurance</u>
    Landlord shall maintain fire and extended coverage insurance on the building in which the Demised Premises are located, in an amount not less than the full replacement cost of the building.

    D.  <u>Taxes</u>
    Landlord shall be responsible for payment of all real estate taxes assessed against the building or property, as well as all applicable local, state and federal income taxes which are or may be payable by Landlord.

    E.  <u>Build Out By Landlord</u>
    If checked on the cover sheet hereof, Landlord will be responsible for standard build out for office space per Attachment "B"    (attached hereto and incorporated herein by reference).

5.    TENANT'S OBLIGATIONS.  In addition to the said rent to be paid, Tenant also agrees to pay directly during the term of the Lease, commencing on the Commencement Date, the following items of expense as the same become due and payable:

    A.  <u>Taxes.</u>
    All ad valorem or other property taxes, personal and intangible taxes payable in connection with the use, occupancy or conduct of business on any part of the Demised Premises, including but not limited to personal property, business, privilege, license, excise, sales, use

Form No. 0103 Rev. by Legal Dept as of 6/26/06.

2



and occupa___n taxes (but excluding local, state and feder__ __come taxes payable by Landlord). Tenant shall be responsible for all taxes which are assessed against their stock and inventory, tangible personal property or their business and/or business operations.

B.   Maintenance and Modifications.
The following charges for maintaining and operating the Demised Premises in good repair and operating condition:

1) Tenant shall, at its own cost and expense, keep the interior clean, maintaining suitable receptacles for trash and refuse, and removing from the interior all accumulations of trash and refuse.

2) Tenant shall service, keep and maintain the interior, including fixtures, doors, interior walls and appurtenances in good condition, repair and working order.

3) Tenant agrees to deliver to Landlord, upon the expiration date or upon earlier termination in accordance with the provisions hereof, physical possession of the Demised Premises in good condition, reasonable wear and tear and damage by fire or other casualty excepted.

4) If the Building is separately metered for certain utilities, such as electricity, gas, water, and sewer, Tenant shall be responsible for the payment of all such separately metered utilities based on Tenant's proportionate share of the metered square-footage.

5) If utilities are not separately metered, Tenant shall be responsible for a pro-rata share of Building utility expense, based upon the ratio of the square footage of the Demised Premises to the square footage of the Building. The utility expense shall be calculated, and the Utility Base Rate shall be adjusted, annually.

6) Tenant shall be responsible for all service costs and installations of all telephone or data services and Landlord shall have no responsibility or liability with respect thereto or the failure of operation of any such services.

6.      IMPROVEMENTS.   Tenant shall not make any structural changes, alterations, additions or improvements to the Demised Premises without the written consent of Landlord, which shall not be unreasonably withheld.  Landlord shall not be responsible for, either in the performance or payment, any improvements to the Demised Premises unless a "Landlord's Work Letter" is attached to the Lease.

7.      USE OF DEMISED PREMISES. Tenant shall use the Demised Premises for the purpose of the licensed practice of medicine and the medical treatment of Tenant's patients and business purposes ancillary thereto and for no other purpose.  Without limiting the foregoing, unless approved by Landlord in advance and in writing, Tenant shall not use the Demised Premises for the operation of a "commercial ancillary medical care facility" which shall include, without limitation, a clinical laboratory, pharmacy, ambulatory surgery center, birthing center, diagnostic, including radiology, facility, and respiratory, physical, speech, or occupational therapy services.  The use of diagnostic equipment (such as x-ray) and the performance of minor surgical procedures under local anesthesia, that is within the scope of Tenant's medical practice and pertaining to the treatment and care of Tenant's own patients, shall not be considered to violate the terms of this paragraph.

8.      ASSIGNMENT;SUBLETTING.   Tenant shall not, without the prior consent of Landlord, which consent may be withheld in Landlord's sole discretion, sublease, license or assign its interest under the Lease to any other person or entity.   Assignment or subletting without the prior consent of Landlord, including assignment by operation of the law, shall constitute an event of default.  In no event, whether with or without consent of Landlord, shall an assignment or lease relieve Tenant of liability under the terms, conditions and provisions of this Lease.

9.      INSURANCE.

A.      The following insurance coverage on the Demised Premises will be maintained by Tenant at all times during the term of the Lease.  Comprehensive general liability insurance coverage on the Demised Premises in the sum of One Million Dollars ($1,000,000) for any single claim and Three Million Dollars ($3,000,000) for claims arising out of a single accident or occurrence against liability for bodily injury and death resulting therefrom, and insurance coverage in the sum of One Hundred Thousand Dollars ($100,000.00) per occurrence against liability for damage to property, arising out of the maintenance or use of the Demised Premises by Tenant.  Casualty insurance insuring Tenant against loss or damage to its

Form No. 0103 Rev. by Legal Dept as of 6/26/06.

3



equipment and other pe.    .al property in the Demised Premises by fire a.    .ll other casualties usually covered under an "all risk" policy of casualty insurance. The policies described in this section shall name both Tenant and Landlord as named insureds. Annually, Tenant shall furnish Landlord with a certificate of such coverage which shall provided that thirty (30) days' advance written notice be given to Landlord in the event of cancellation or material change in the insurance policy.

B.      Tenant shall not do or permit any act which will increase premiums for any casualty, fire, liability or other insurance maintained by Landlord on the Building or any other property therein or which shall render such insurance void or voidable

10.     DAMAGE TO PROPERTY/INJURY TO PERSON. Tenant shall and hereby does indemnify and hold Landlord harmless from and against any and all claims to the extent they arise from (i) Tenant's use of the Demised Premises or the conduct of its business, (ii) any activity, work or thing done, permitted or suffered by the Tenant in or about the Demised Premises, (iii) any breach or default in the performance of any obligation on Tenant's part to be performed under the terms of the Lease, or (iv) any act of negligence of Tenant or his agents or employees.

11.     ENVIRONMENTAL PROVISIONS.

A.      Following due inquiry, Landlord represents that to the best of its knowledge there are no hazardous substances or hazardous wastes as defined by the Comprehensive Environmental Response and Liability Act or any hazardous wastes as defined by the Resource Conservation and Recovery Act, or any PCB's, radon or asbestos containing materials, located on, in or about the Demised Premises to be occupied by Tenant. Landlord agrees that should any hazardous wastes, hazardous substances, PCB's, radon or asbestos containing materials be determined to be present as a result of the acts or missions or negligence of any person or legal entity, other than Tenant, Landlord shall indemnify, hold harmless and defend Tenant from all claims, damages, expenses or litigation resulting from the presence of such materials.

B.      Tenant warrants that its use of the Premises and the materials used in the conduct of its business operations at and on the Premises, or the manner of use, and its waste, effluent and vapors will not violate any laws, ordinances, rules or regulations relating to or affecting the environment or dealing with environmental matters, as hereinafter defined, hazardous substances of any kind or nature, whether imposed or enforced by any state, local or federal agency, and that Tenant shall alter its use of the Premises to comply with such laws, ordinances, rules or regulations if required to do so by any such governmental agency. Tenant shall not use the Premises, maintain them nor allow use of the Premises in any manner constituting a violation of any ordinance, statute, rule, regulation or order of any governmental authority, including, but not limited to, the ADA, zoning ordinances, or environmental rules, regulations and laws, nor will the Tenant maintain or permit any nuisance to occur or to be maintained on the Premises.

12.     EARLY TERMINATION AS A RESULT OF THE DEATH OR DISABILITY OF A SOLE PRACTITIONER; OTHER VACATION OR ABANDONMENT. If Tenant is a sole practitioner and dies or becomes disabled (defined for purposes of the Lease as any physical or mental condition that prevents or is reasonably expected to prevent such physician from practicing medicine for more than ninety (90) days), then either party shall have the right to terminate the Lease prior to the expiration date by giving the other party not less than thirty (30) days prior written notice. Except as expressly provided in the preceding sentence, any other vacation of the Demised Premises for more than thirty (30) days or any abandonment of the Demised Premises by Tenant will be considered a material default under the Lease.

13.     DEFAULT. Tenant shall be in default of the terms of the Lease if Tenant shall fail to make a payment of any rent or additional rent, and such rent or additional rent is not paid within ten (10) days of written notice by Landlord to Tenant of non-payment of same, or in the event that Tenant shall otherwise commit an act of default under the terms hereof, and shall not cure such default within thirty (30) days of written notice by Landlord to Tenant of such default. In the event of default:

A.      Landlord may continue the Lease in full force and effect and shall have the right to collect rent when due. During the term Tenant is in default, Landlord may re-enter the Demised Premises with legal process and relet same, or any part thereof, to third parties for Tenant's account. Tenant shall be liable for all reasonable costs Landlord incurred for reletting the Demised Premises, including without limitation broker's commissions, expenses associated with repairing and / or remodeling the Demised Premises in order to return the Demised Premises to the same condition as when received by Tenant from Landlord–and similar costs. Reletting can be done for a period shorter or longer than the remaining term of the Lease. Tenant shall pay to Landlord the rent due under the Lease on the date such rent is due, less the rent Landlord receives from any reletting. Landlord shall make its best efforts to relet the Demised Premises at a reasonable price. Under this paragraph, Tenant's obligations shall not exceed the total rent due for the remainder of the term.

Form No. 0103 Rev. by Legal Dept as of 6/26/06.



4

B.   Landlord may terminate the Lease pursuant to the terms of this Section 13. Upon termination, Landlord shall have the right to collect an amount equal to all expenses, if any, including reasonable attorneys' fees, incurred by Landlord in recovering possession of the Demised Premises and all reasonable costs and charges for the care of the Demised Premises while vacated by Tenant.

C.   Should any of these remedies or any portion thereof not be permitted by the laws of the state where the Building is located, then such remedy or portion thereof shall be considered deleted and unenforceable, and the remaining remedies or portions thereof shall be and remain in full force and effect, and Landlord may avail itself of these as well as any other remedies or damages allowed by law.

14.    RIGHT OF ACCESS. Landlord and its agents shall have reasonable access to the Demised Premises during all reasonable business hours for the purpose of examining same to ascertain if they are in good repair and to make reasonable repairs which Landlord may be required to make hereunder.

15.    END OF TERM. At the termination of the Lease, Tenant shall surrender its interest in the Demised Premises to Landlord in as good condition and repair as reasonable use thereof will permit, reasonable wear and tear excepted, and will leave the Demised Premises broom clean. Tenant shall have the right, prior to said termination, to remove any equipment, furniture, trade fixtures or other personal property in the Demised Premises owned by Tenant, provided that Tenant promptly repairs any damage to the Demised Premises caused by such removal. In the event of holding over by Tenant after the expiration or termination of the Lease, Tenant shall pay rent at the then-current rate on a monthly basis. Any holding over with consent of Landlord in writing shall thereafter constitute a Lease for month-to-month.

16.    ATTORNEYS' FEES. In the event that suit is brought by either party against the other for breach or default under the terms of the Lease, the prevailing party shall be entitled to reasonable attorneys' fees, expenses (including expert witness fees) and court costs equal to the sum established by the court.

17.    HEADINGS. The article captions contained in the Lease are for the convenience of the parties only and shall not be considered in the construction or interpretation of any provision hereof.

18.    ENTIRE AGREEMENT. The Lease contains the entire agreement between the parties and supersedes any and all other prior oral and written agreements between the parties regarding the subject matter contained herein and may not be changed or terminated orally but only by agreement in writing and signed by all parties.

19.    DAMAGE OR DESTRUCTION. If the Demised Premises are damaged by fire or other casualty, the damage shall be repaired by and at the expense of Landlord (excluding any equipment which is owned by Tenant), provided that such repairs can, in Landlord's opinion, be made within sixty (60) days after the occurrence of such damage. Landlord shall notify Tenant within fifteen (15) days of the event of casualty of its determination. Until such repairs are completed, the rent shall be abated in proportion to the part of the Demised Premises rendered unusable, but there shall be no abatement of rent for a period equal to one (1) day or less. If such repairs cannot, in Landlord's opinion, be made within sixty (60) days and Landlord nonetheless chooses to repair, then Tenant may, at its option, continue as Tenant under the Lease until such repairs are completed, during which time all rent shall abate, or Tenant may terminate the Lease. A total destruction of the building in which the Demised Premises are located shall automatically terminate the Lease. Total destruction of the building shall be defined as damage greater than fifty percent (50%) of the then replacement value thereof.

20.    EMINENT DOMAIN. If the whole of the Demised Premises or so much thereof as to render the balance unusable by Tenant shall be taken under power of eminent domain, the Lease shall automatically terminate as of the effective date of the taking. In the event of a partial taking which does not result in a termination of the Lease, the rent reserved hereunder shall remain unaffected. Landlord may, without any obligation or liability to Tenant, stipulate with any condemning authority for a judgment of condemnation without the necessity of a formal suit or judgment of condemnation, and the date of taking under this clause shall then be deemed the date agreed to under the terms of said agreement for stipulation and the Lease shall terminate as of the stipulated date.

21.    WAIVER. No waiver by either party shall be deemed to be a waiver of any other provision hereof or of any subsequent breach by either party of the same or any other provision. Landlord 's consent to or approval of any act by Tenant requiring Landlord's consent or approval shall not be deemed to render unnecessary the obtaining of Landlord's consent to or approval of any subsequent act of Tenant, whether or not similar to the act so consented to or approved.

Form No. 0103 Rev. by Legal Dept as of 6/26/06.

5



22.    NOTICES. Any notice required or permitted to be given hereunder may be given by mail and shall be sufficiently given if personally served or sent by registered or certified mail or by special courier, addressed to the relevant party at the addresses specified in the Lease (notice to Tenant shall be given at the Demised Premises). For any notice given to Landlord, a copy shall be provided to the Landlord's counsel as follows: General Counsel, Legal Department, P.O. Box 217, Brentwood, Tennessee 37024-0217. **From and after December 15, 2006:** Community Health Systems, Attn: Legal Department, 4000 Meridian Blvd., Franklin, TN 37067 or Community Health Systems, Attn: Legal Department, P.O. Box 689020, Franklin, TN 37068.

23.    BINDING EFFECT. The Lease shall be binding upon and inure to the benefit of the parties hereto, their heirs, successors, assigns, executors and administrators. Nothing in this article shall be deemed to amend the provisions herein concerning assignment and subletting.

24.    APPLICABLE LAW. The laws of the state where the Building is located shall be employed in and govern the interpretation of all of the covenants, terms and conditions of the Lease.

25.    NO PARTNERSHIP RELATIONSHIP. Notwithstanding any agreement herein contained, Landlord shall not be construed or held to be a partner or associate of Tenant in the conduct of its business, it being expressly understood and agreed that the relationship between the parties is and at all times shall remain that of Landlord and Tenant.

26.    NO REQUIREMENT TO REFER. The parties expressly agree that nothing contained in the Lease shall require Tenant or any physician or other referral source to refer or admit any patients to, or order any goods or services from Landlord or any affiliate. Notwithstanding any unanticipated effect of any provision of this Agreement, neither party will knowingly or intentionally conduct himself in such a manner as to violate the prohibition against fraud and abuse in connection with the Medicare and Medicaid programs (42 USC Section 1320a-7b). Both parties represent to the other that the Rentals provided for in the Lease are at fair market value rates and do not take into account the value or volume of any referrals or other business generated between the parties. Both as a material condition to this Lease and as a continuing representation and warranty for the duration of this Lease, Tenant represents and warrants that neither it nor any of its owners, officers, directors, employees, agents, subcontractors etc have been suspended, excluded, or debarred from any government payor program.

27.    QUIET ENJOYMENT. Landlord warrants and shall defend Tenant in the quiet enjoyment and possession of the Demised Premises during the term and any extension or renewal thereof.

28.    OPTION TO RENEW. Provided that Tenant is not then in default hereunder, upon the expiration of the term hereof, Tenant shall have the option to renew the Lease for the additional term(s), if any, set forth on the cover page of this Lease, upon the same terms and conditions as this Lease except that the rentals payable during the renewal term shall be adjusted to fair market rental as set forth herein.

29.    SUBORDINATION, ATTORNMENT AND NON-DISTURBANCE.

A.    Tenant agrees that the Lease and all rights of Tenant hereunder are and shall be subject and subordinate to any ground or underlying lease which may now or hereafter be in effect regarding the Building or any component thereof, to any mortgage now or hereafter encumbering the Demised Premises or the Building or any component thereof, to all advances made or hereafter to be made upon the security of such mortgage, to all amendments, modifications, renewals, consolidations, extensions and restatements of such mortgage, and to any replacements and substitutions for such mortgage. The terms of this provision shall be self-operative and no further instrument of subordination shall be required. Tenant, however, upon request of any party in interest, shall execute promptly such instrument or certificates as may be reasonably required to carry out the intent of this provision.

B.    In the event any proceedings are brought for the foreclosure of, or in the event of exercise of the power of sale under, or in the event of a deed in lieu of foreclosure with respect to any mortgage covering the Demised Premises or the Building, or in the event of termination of any Lease under which Landlord may hold title, Tenant shall, at the option of transferee, attorn to such transferee and shall recognize and be bound and obligated hereunder to such person as the Landlord under the Lease. Tenant agrees to execute any attornment agreement not in conflict with this provision.

Form No. 0103 Rev. by Legal Dept as of 6/26/06.



C.  Notwithst.  .ng anything contained herein to the contrary, so .  . as Tenant is not in default in the payment of Rentals or other charges, or in the performance of any of the other terms, covenants or conditions of the Lease, mortgagee or such person shall not disturb Tenant in its occupancy of the Demised Premises during the original or any renewal term of the Lease notwithstanding any event or proceedings described in this section.

30.  MASTER CONTRACT LIST.  This contract is identified on a master list of contracts maintained on a Lotus Notes server.

31.  ESTOPPEL CERTIFICATE.  Within thirty (30) days after written request from Landlord, Tenant shall deliver an executed statement addressed to Landlord certifying (if such be the case) that this Lease is in full force and effect, that Tenant has commenced the payment of rent, and that there are no defenses or offsets to this Lease claimed by Tenant, as well as any other information reasonably requested.  If Tenant fails or refuses to give a certificate hereunder within the required time frame, then the information on such certificate as submitted by Landlord shall be deemed correct for all purposes and Landlord shall have the right to treat such failure or refusal as a default by Tenant.

32.  FORCE MAJEURE.  With the exception of the obligation of Tenant to pay Rent and all other amounts that may be due from time to time under this Lease, if either party shall be delayed or hindered in or prevented from doing or performing any act or thing required hereunder by reason of any matters beyond the reasonable control of such party, then such party shall not be liable or responsible for any such delays and the doing or performing of such act or thing shall be extended for a period equivalent to the period of such delay.  In such event, this Lease and the obligations of both parties to perform and comply with all of the other terms and provisions of this Lease shall in no way be affected, impaired, or excused.

33.  WAIVER OF JURY TRIAL

LANDLORD AND TENANT HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION, ACTION, PROCEEDING OR COUNTERCLAIM BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS LEASE OR THE OBLIGATIONS EVIDENCED HEREBY, THE RELATIONSHIP OF LANDLORD AND TENANT, TENANT'S USE OF OR OCCUPANCY OF THE PREMISES, ANY CLAIM OF INJURY OR DAMAGE, OR ANY EMERGENCY OR OTHER STATUTORY REMEDY OR ANY OTHER DOCUMENT OR INSTRUMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY.  THIS PROVISION IS A MATERIAL INDUCEMENT TO EACH OF LANDLORD AND TENANT IN ENTERING INTO THIS LEASE.

34.  SUBLEASE.  In the event the Lease is a sublease to an underlying lease agreement, as described in the Lease, then with respect to the Demised Premises, except for the Term of the Lease and the Rental Rate/Installment, Tenant shall perform all of the obligations of tenant/lessee under the underlying lease agreement.

35.  APPROVALS.  Neither this Lease nor any amendment or modification hereto shall be effective or legally binding upon Landlord, or any officer, director, employee or agent thereof, unless and until it has been reviewed and approved in writing by a President of Landlord's owner and by Landlord's Legal Counsel.

36.  RULES AND REGULATIONS.  Tenant shall faithfully observe and comply strictly with the following rules and regulations, adopted for the safety, care and cleanliness of the Building or the preservation of good order therein.  Landlord shall not be liable to Tenant for a violation of such rules and regulations, or for the breach of any covenant or condition in a lease by any other tenant in the Building.  Landlord may, from time to time and upon notice to Tenant, adopt additional or substitute rules and regulations of the Building.

A.  Conduct.  Tenant shall not conduct its practice or business, or advertise such business, profession or activities of Tenant conducted in the Premises in any manner which violates local, state or federal laws or regulations.

B.  Hallways and Stairways.  Tenant shall not obstruct or use for storage, or for any purpose other than ingress and egress, the sidewalks, entrance, passages, courts, corridors, vestibules, halls, elevators and stairways of the Building.

C.  Nuisances.  Tenant shall not make or permit any noise, odor or act that is objectionable to other occupants of the Building to emanate from the Premises, and shall not create or maintain a nuisance thereon.

Form No. 0103 Rev. by Legal Dept as of 6/26/06.



7

Aug. 1. 2000 10:15AM    LV STADLER    No. 7112    P. 9

D.  Musical, Instruments, Etc.  Tenant shall not install or oper... any phonograph, musical instrument, radio receiver or similar device in the Building in such manner as to disturb or annoy other tenants of the Building or the neighborhood.  Tenant shall not install any antennae, aerial wires or other equipment outside the Building without the prior written approval of Landlord.

E.  Locks.  No additional locks or bolts of any kind shall be placed upon any of the doors or windows by Tenant, nor shall any changes be made in existing locks or the mechanism thereof.  Tenant must upon the termination of its tenancy restore to Landlord all keys to the Premises and toilet rooms either furnished to or otherwise produced by Tenant, and in the event of loss of any keys so furnished, Tenant shall pay to Lessor the cost thereof.

F.  Obstructing Light, Damage.  The doors, window glass, lights and skylights that reflect or admit light into the halls or other places of the Building shall not be covered or obstructed.  The toilets and urinals shall not be used for any purpose other than those for which they were intended and constructed, and no rubbish, newspapers or other substance of any kind shall be thrown into them.  Waste and excessive or unusual use of water shall not be allowed.  Tenant shall not mark, drive nails, screw or drill into, paint, nor in any way deface the walls, ceilings, partitions, floors, wood, stone or iron work.  The expense of any breakage, stoppage or damage resulting from a violation of this rule by Tenant shall be borne by Tenant.  Tenant shall be permitted to hang pictures on office walls, but it must be done in a workmanlike manner and in such a way as not to damage or deface such walls.

G.  Wiring.  Electrical wiring of every kind shall be introduced and connected only as directed by Landlord, and no boring nor cutting of wires will be allowed except with the consent of Landlord.  The location of the telephone, call boxes, etc., shall be subject to the approval of Landlord.

H.  Equipment, Moving, Furniture, Etc.  Landlord shall approve the weight, size and position of all fixtures, equipment and other property brought into the Building, and the times of moving which must be done under the supervision of Landlord.  Landlord will not be responsible for any loss of or damage to any such equipment or property from any cause, and all damage done in the Building by moving or maintaining any such property shall be repaired at the expense of Tenant.  All equipment shall be installed as required by law.

I.  Requirements of Tenant.  The requirements of Tenant will be attended to only upon application at the office of Landlord.  Employees shall not perform any work nor do anything outside their regular duties unless under special instructions from Landlord.  No employees shall admit any person, Tenant or otherwise, to any other office without instruction from the office of Landlord.  All janitorial services personnel, guards or any outside contractors employed by Tenant shall be subject to the regulations and control of Landlord, but shall not act as an agent or servant of Landlord.

J.  Medical and Hazardous Wastes.  Tenant shall comply with all policies established from time to time by Landlord regarding the storage and disposal of hazardous substances, wastes and materials, and medical, special or infectious wastes.

K.  Access to Building.  Any person entering or leaving the Building may be questioned by Building security regarding his/her business in the Building and may be required to sign in and out.  Anyone who fails to provide a satisfactory reason for being in the Building may be excluded.

L.  Vehicles, Animals, Refuse.  Tenant shall not allow anything to be placed on the outside window ledges of the Premises or to be thrown out of the windows of the Building.  No bicycle or other vehicle, and no animal, except for service animal, shall be brought into the offices, halls, corridors, elevators or any other parts of the Building by Tenant or the agents, employees or invitees of Tenant, and Tenant shall not place or permit to be placed any obstruction or refuse in any public part of the Building.

M.  Equipment Defects.  Tenant shall give Landlord prompt notice of any accidents to or defects in the water pipes, gas pipes, electric lights and fixtures, heating apparatus, or any other service equipment.

N.  Parking.  Unless otherwise specified by Landlord, Tenant and its employees may park automobiles only in spaces designated by Landlord for such purpose and shall in no event

Form No. 0103 Rev. by Legal Dept as of 6/26/06.



park in s, ses reserved for public parking. Tenant agre⸱ ⸱at Landlord assumes no responsibility of any kind whatsoever in reference to such automobile parking area or the use thereof by Tenant or its agents or employees.

O.    Conservation and Security. Tenant will see that all windows and doors are securely locked, and that all faucets and electric light switches are turned off before leaving the Building.

P.    Signage. Tenant shall not place any sign upon the Demised Premises or the Building without Landlord's prior written consent.

Form No. 0103 Rev. by Legal Dept as of 6/26/06.

9



# United States Bankruptcy Court
## Middle District of Alabama

In re ___Deloris V. Victoria___

Debtor(s)

Case No. ___06-31225___

Chapter ___7___

## MOTION TO AMEND BANKRUPTCY PETITION

1.  Debtor(s), ___Deloris V. Victoria___, commenced this case on ___September 25, 2006___ by filing a voluntary petition for relief under Chapter 7 of Title 11 of the United States Bankruptcy Code.

2.  On or about _____ debtor(s) discovered that the following information had been inadvertently omitted from his/her/their Petition:

| Schedule(s) Affected: | Change(s): |
|---|---|
| Schedule B | Add Accounts Receivable |
| Schedule F | To modify MBNA claim and correct Creditors claims |
| Schedule G | To reflect lease |

WHEREFORE, Debtor(s) pray for an Order to Amend his/her/their Bankruptcy Petition to reflect the above-mentioned changes and for such additional or alternative relief as may be just and proper.

Dated: ___2-5-07___

/s/ Deloris V. Victoria

**Deloris V. Victoria**
Debtor

## ORDER

The motion of the above-named debtor(s), ___Deloris V. Victoria___, to amend his/her/their Bankruptcy Petition is sustained.

It is hereby ORDERED and DECREED that the Debtor's(s') Bankruptcy Petition is amended to reflect the following changes:

| Amendment(s) to Petition: |
|---|
| Amendments of Schedule B and F |
| |
| |

Dated: _____

**U.S. BANKRUPTCY JUDGE**

Form B6B
(10/05)

In re    **Deloris V. Victoria**                               Case No.    **06-31225**

                                        Debtor

# SCHEDULE B. PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c); Rule 1007(b)). | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | | SEP | - | 20,000.00 |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | | **Business Accounts due and Receivable approximately $20,000.00** | - | 20,000.00 |
| | | **Business Accounts Receivables** | - | 15,000.00 |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owing debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |

                                               Sub-Total >      **55,000.00**
                                               (Total of this page)

Sheet  **1**  of  **2**  continuation sheets attached
to the Schedule of Personal Property

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037                                   Best Case Bankruptcy

Form B6B
(10/05)

In re   **Deloris V. Victoria**                  Case No.   **06-31225**

Debtor

# SCHEDULE B. PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property." In providing the information requested in this schedule, do not include the name or address of a minor child. Simply state "a minor child."

| | Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|---|
| 1. | Cash on hand | | **CASH** | - | 300.00 |
| 2. | Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | **CHECKING ACCOUNT - WHITNEY BANK** | - | 2,000.00 |
| | | | **CHECKING ACCOUNT - BUTLER COUNTY BANK** | - | 500.00 |
| 3. | Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. | Household goods and furnishings, including audio, video, and computer equipment. | | **HOUSEHOLD GOODS** | - | 7,000.00 |
| 5. | Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6. | Wearing apparel. | | **WEARING APPAREL** | - | 1,000.00 |
| 7. | Furs and jewelry. | | **JEWELRY** | - | 5,000.00 |
| 8. | Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9. | Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |
| 10. | Annuities. Itemize and name each issuer. | X | | | |

<table>
<tr><td></td><td>Sub-Total &gt;<br>(Total of this page)</td><td>15,800.00</td></tr>
</table>

   **2**   continuation sheets attached to the Schedule of Personal Property

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037                Best Case Bankruptcy

Form B6B
(10/05)

In re    **Deloris V. Victoria**                                    Case No.    **06-31225**
                                    Debtor

## SCHEDULE B. PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | | **POSSIBLE BREECH OF CONTRACT SUIT AGAINST DR. LILITH NAML SUIT NOT YET FILED. ATTORNEY RICHARD HARTLEY** | - | **Unknown** |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | X | | | |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | | **COMPUTERS, EKG, TABLES, CHAIRS** | - | **19,000.00** |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |

|  | Sub-Total > | **19,000.00** |
|---|---|---|
|  | (Total of this page) | |
|  | Total > | **89,800.00** |

Sheet __2__ of __2__ continuation sheets attached
to the Schedule of Personal Property

(Report also on Summary of Schedules)

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037                     Best Case Bankruptcy

Form B6F
(10/05)

In re    **Deloris V. Victoria**          Case No.   **06-31225**

                           Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

     State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C.§112; Fed.R.Bankr.P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

     If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community maybe liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

     If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

     Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

☐    Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. <br> **Creditor #: 1** <br> **CAMDEN NATIONAL** <br> **3 WATER STREET** <br> **Camden, AL 36726** | - | | **09-2005** <br> **LINE OF CREDIT** | | | | **2,545.00** |
| Account No. x8652 <br> **Creditor #: 2** <br> **CAMDEN NATIONAL** <br> **3 WATER STREET** <br> **Camden, AL 36726** | - | | **09-2004** <br> **DISPUTED DEBT** | | | X | **1.00** |
| Account No. x7851 <br> **Creditor #: 3** <br> **CAMDEN NATIONAL** <br> **3 WATER STREET** <br> **Camden, AL 36726** | - | | **06-2004** <br> **LOAN** | | | | **680.00** |
| Account No. xxxxx2276 <br> **Creditor #: 4** <br> **CENTURYTEL** <br> **PO BOX 6001** <br> **Marion, LA 71260-6001** | | | **03-2005** <br> **COLLECTION ACCOUNT** | | | | **558.00** |

   **2**    continuation sheets attached                                  Subtotal <br> (Total of this page)      **3,784.00**

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037             S/N:34718-070103   Best Case Bankruptcy

Form B6F - Cont
(10/05)

In re   **Deloris V. Victoria**              Case No.   **06-31225**

                          Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | CODEBTOR | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. <br> Representing: <br> **CENTURYTEL** | | | **BANK OF AMERICA** <br> **PO BOX 41466** <br> **Philadelphia, PA 19101** | | | | |
| Account No. <br> Creditor #: 5 <br> **GENEZEN HEALTHCARE** <br> **PO BOX 571811** <br> **Houston, TX 77257** | | | **2005** <br> **Pending Suit non consumer debt** <br> **BUTLER COUNTY CV 05-177** <br> **Suit involving patient accounts** | | | | **18,000.00** |
| Account No. <br> Representing: <br> **GENEZEN HEALTHCARE** | | | **DAVID C. SCHWARTZ, ESQ.** <br> **PO BOX 11366** <br> **Birmingham, AL 35202-1366** | | | | |
| Account No. <br> Creditor #: 6 <br> **GREENVILLE HOSPITAL** <br> **DBA LV STABLER MEMORIAL** <br> **29 STABLER DR** <br> **Greenville, AL 36037** | | | **2005** <br> **JUDGEMENT NON CONSUMER DEBT** <br> **BUTLER COUNTY CV 05-133** <br> **SUIT ON CONTRACT INVOLVING** <br> **TERMINATION OF DOCTOR** | | | | **162,700.00** |
| Account No. <br> Representing: <br> **GREENVILLE HOSPITAL** | | | **GREER B. MALLETTE, ESQ** <br> **505 20TH ST N., STE 1800** <br> **Birmingham, AL 35203-2696** | | | | |

Sheet no. **1** of **2** sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

                              Subtotal
                      (Total of this page)     **180,700.00**

Form B6F - Cont.
(10/05)

In re    **Deloris V. Victoria**                                    Case No. ___**06-31225**___
                                          Debtor

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No.<br>**Creditor #: 7**<br>**MBNA AMERICA**<br>**PO BOX 17054**<br>**Wilmington, DE 19884** | X | J | 08-1999<br>**CREDIT CARD** | | | | 9,663.00 |
| Account No.<br>**Creditor #: 8**<br>**MBNA AMERICA**<br>**PO BOX 17054**<br>**Wilmington, DE 19884** | X | J | 10-1995<br>**CREDIT CARD** | | | | 3,378.00 |
| Account No.<br>**Creditor #: 9**<br>**MBNA AMERICA**<br>**PO BOX 17054**<br>**Wilmington, DE 19884** | X | J | 04-1994<br>**Non Consumer business accout credit card for purchase of medical equipment and supplies. Account in Husbands name used to pay wife's debts. $77K** | X | | | 1.00 |
| Account No.<br>**Creditor #: 10**<br>**WHITNEY BANK**<br>**228 ST CHARLES AVE**<br>**New Orleans, LA 70130** | - | | 12-1999<br>**LINE OF CREDIT** | | | | 5,483.00 |
| Account No. | | | | | | | |

Sheet no. __2__ of __2__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

| | |
|---|---|
| Subtotal (Total of this page) | 18,525.00 |
| Total (Report on Summary of Schedules) | 203,009.00 |

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL  (800) 492-8037                    Best Case Bankruptcy

Form B6G
(10/05)

In re     **Deloris V. Victoria**                        Case No.    **06-31225**

                                   Debtor

# SCHEDULE G. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests. State nature of debtor's interest in contract, i.e., "Purchaser", "Agent", etc. State whether debtor is the lessor or lessee of a lease. Provide the names and complete mailing addresses of all other parties to each lease or contract described. If a minor child is a party to one of the leases or contracts, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C. § 112; Fed.R. Bankr. P. 1007(m).

☐ Check this box if debtor has no executory contracts or unexpired leases.

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
|---|---|
| **GREENVILLE HOSPITAL**<br>**DBA LV STABLER MEMORIAL**<br>**29 STABLER DR**<br>**Greenville, AL 36037** | **Business lease** |

   **0**    continuation sheets attached to Schedule of Executory Contracts and Unexpired Leases

Copyright (c) 1996-2005 - Best Case Solutions - Evanston, IL - (800) 492-8037                         Best Case Bankruptcy

## UNITED STATES BANKRUPTCY COURT

### Middle District of Alabama

---

In re:                                              Case No.: 06−31225
**Deloris V. Victoria**                             Chapter: 7
    Debtor

---

### ORDER TERMINATING STAY

Upon consideration of the motion of the creditor, *Greenville Hospital Corporation* , for relief from the stay imposed by 11 U.S.C. § 362(a) the court concludes that no response to the motion has been filed within the time allowed by M.D. AL L.B.R. 4001−1 or a response was filed consenting to the motion and therefore the motion should be **GRANTED** . Accordingly, it is

**ORDERED** that the stay in this case with respect to this creditor, to permit enforcement of a lien against the property of the estate or of the debtor described in the motion, is TERMINATED.

Dated:  2/26/07

                                   William R. Sawyer
                               United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re:                                    )
                                          )
Deloris V. Victoria,                      )        Case No. 06-31225-WRS-7
                                          )
        Debtor.                           )

## MOTION TO DISMISS DEBTOR'S CASE FOR ABUSE

Greenville Hospital Corporation, d/b/a LV Stabler Memorial Hospital ("Greenville Hospital"), a creditor and party of interest in the chapter 7 bankruptcy case filed by Deloris V. Victoria (the "Debtor" or "Victoria"), requests that the Court dismiss the Debtor's case for abuse pursuant to Sections 707(a) and 707(b) of the Bankruptcy Code. In support of its motion, Greenville Hospital states as follows:

### Debtor's Petition, Schedules, Statement of Financial Affairs and Means Test

1.     On August 3, 2006, Greenville Hospital recovered a $162,257.74 judgment against the Debtor in the Circuit Court of Butler County, Alabama. Shortly thereafter, on September 25, 2006, the Debtor filed a chapter 7 bankruptcy case in this Court.

2.     In Schedule A, the Debtor listed her interest in a home located in Greenville, Alabama with a tax assessed value of $373,800.00 as well as her interest in a piece of real property referred to as the Isle of Valley in Orlando, Florida with a value of $4,000.00.

3.     In Schedule B, the Debtor listed various personal property including $7,000.00 in household goods and $5,000.00 in jewelry. Schedule B does not contain any breakdown of the value assigned to individual items of the Debtor's personal property nor does it even breakdown the value of the Debtor's personal property according to what part of the home it is located in (i.e. living room furniture, dining room table, etc.)

4.     In Schedule D, the Debtor listed total secured debts in the amount of $309,000.00. The Debtor's secured debts are composed of a $290,000 debt to Brantley Bank & Trust that is secured by a

mortgage on her home and a $19,000.00 debt to Camden National that is secured against various office equipment.

5.      In Schedule E, the Debtor listed total tax debts in the amount of $60,877.74. The Debtor's tax debts are composed of year 2003 federal income taxes of $5,600.27, year 2003 state income taxes of $1,547.62, year 2004 federal income taxes of $23,892.40, year 2005 federal income taxes of $9,147.63, years 2004 and 2005 estimated state income taxes of $3,000.00 and taxes owed by Bariatric Medicine (a corporation owned by the Debtor) of $17,689.82.

6.      In Schedule F, the Debtor listed total unsecured debts in the amount of $273,308.00. The Debtor's unsecured debts are composed of a $2,545.00 line of credit to Camden National, a $1.00 disputed debt to Camden National, a $680.00 loan to Camden National, a $558.00 collection account with CenturyTel, a $18,000 debt in a pending suit by Genezen Healthcare, a $168,000.00 judgment in favor of Greenville Hospital, a $9,663.00 credit card debt to MBNA America, a $3,378.00 credit card debt to MBNA America, a $65,000.00 credit card debt to MBNA America and a $5,483.00 line to credit to Whitney Bank.

7.      In Schedule G, the Debtor listed no executory contracts or unexpired leases even though the Debtor had previously entered into a Medical Office Space Lease (the "Lease") with Greenville Hospital.

8.      In Schedule I, the Debtor listed her occupation as a physician. The Debtor's husband is also listed as a physician. The Debtor stated that she has gross monthly income of $15,000.00 per month and her husband has gross monthly income of $20,000.00 per month.

9.      In Schedule J, the Debtor listed various monthly expenses, including a $4,000.00 mortgage on her home, a $300.00 telephone bill, a $700.00 transportation expense, $1,000.00 in charitable contributions, $1,200.00 for auto insurance and $3,500.00 for her husband's debts. After these expenses are subtracted from the Debtor's income, Victoria lists monthly disposable income of $1,890.00.

10.     In her Statement of Financial Affairs, the Debtor did not list any gifts made within 1 year of the petition date or any other transfers of property within 2 years of the petition date.

11.     Along with her Petition, Schedules and Statement of Financial Affairs, the Debtor filed a Form 22A Statement of Current Monthly Income and Means Test Calculation (the "Means Test Form"). On the Means Test Form, the Debtor summarily stated that her debts were primarily non-consumer and therefore, the Means Test found in Section 707(b) of the Bankruptcy Code did not apply to the Debtor. No breakdown or analysis of the Debtor's debts into categories of consumer debts and business debts was attached to the Means Test Form.

12.     On February 5, 2007, the Debtor filed an amended Schedule B, Schedule F and Schedule G. The Debtor amended Schedule B to add $35,000.00 in previously undisclosed accounts receivable; Schedule F to reduce the $168,000.00 judgment to Greenville Hospital down to $162,700.00 and to reduce the $65,000.00 credit card debt to MBNA America down to $1.00; and Schedule G to add the previously undisclosed Lease with Greenville Hospital. The Debtor did not file another Means Test Form with the Court nor did she file any breakdown or analysis of the Debtor's amended debts into categories of consumer debts and business debts.

### Debtor's Rule 2004 Examination

13.     Counsel for Greenville Hospital took the Debtor's 2004 examination on February 9, 2007. During this examination, the Debtor provided additional information regarding her family's assets as well as her family's income and expenses. In general, the Debtor's testimony showed that the information contained in her Petition, Schedules, Statement of Financial Affairs and Means Test was inaccurate and misleading. A true and correct copy of the deposition transcript is attached as Exhibit "A."

#### *Home*

14.     The Debtor testified that her current home has 4 bedrooms and 3 bathrooms. *See Deposition Transcript* at p. 37. It has a total size of 3,100 square feet. *Id.* But other than the Debtor and

her husband, only the Debtor's 30 year old son and granddaughter reside in the home. *Id.* at p. 37-38. Due to the small number of individuals residing in the home, the Debtor stated that she and her family could comfortably live in another smaller and less expensive home. *Id.* at p. 38.

15.     The Debtor produced a copy of the note and mortgage on her home, which indicated that the original amount of the debt secured by the mortgage was $431,062.70 and the original monthly payments were $5,257.00 per month. *See Deposition Transcript* at p. 34-35. This indicates that the fair market value of the Debtor's home is likely greater than its $373,800.00 tax assessed value.

16.     In addition, the Debtor's installment payments have now been reduced to $2,025.05 on a semi-monthly basis and 176 payments are due before the note will be paid in full. The Debtor acknowledged that at this rate of payment, her home will be completely paid for in approximately 7.5 years. *See Deposition Transcript* at p. 36-37.

*Townhouse*

17.     The Debtor also testified that her family has a townhouse in Atlanta, Georgia, although it is owned by the Debtor's husband. *See Deposition Transcript* at p. 45-48. She stated that the townhouse was purchased for her adult daughters to live in but that she did not know its approximate value. *Id.* Victoria testified that her 2 adult daughters lived in the townhouse for a period of time but that no one currently lives there. *Id.* Rather, the townhouse is only used on weekends when the Debtor and her husband travel to Atlanta. *Id.*

18.     The Debtor later produced 2 invoices showing a debt secured by a first mortgage on the townhouse in the amount of $215,000.00 and a debt secured by a second mortgage in the amount of $39,911.56. True and correct copies of these invoices are attached collectively as Exhibit "B." The invoices reflect a total combined monthly payment on the townhouse of $2,532.31. It was unclear what portion of this monthly expense is paid by the Debtor and what portion is paid by her husband.

### *Vehicles*

19.    The Debtor testified that she does not own any vehicle. *See Deposition Transcript* at p. 10-12. Instead, the Debtor stated that her husband owns all the family's vehicles, including the vehicles driven by the Debtor and the Debtor's 4 adult children. *Id.* Victoria produced copies of vehicle registrations confirming her husband's ownership of 2 recent model year Mercedes and a Porsche. Registrations for other vehicles, however, were not provided.

20.    Counsel for Greenville Hospital later obtained a copy of the Debtor's auto insurance policy, which indicates that the Debtor and her husband own a total of 7 vehicles, including 4 recent model year Mercedes, a Porsche, a Volkswagon and a Nissan. A true and correct copy of this auto insurance policy is attached as Exhibit "C." The policy indicates that the Debtor and her husband have a monthly expense for auto insurance of $1,021.90.

21.    The Debtor testified that her husband makes monthly payments for the Nissan that is driven by one of her adult sons and for a Mercedes that is drive by one of her adult daughters. *See Deposition Transcript* at p. 61-62. In addition, the Debtor stated that her husband pays the auto insurance for 3 of her adult children. *Id.* As with the townhouse, it was unclear what portion of these monthly expenses is paid by the Debtor and what portion is paid by the Debtor's husband.

### *Personal Property*

22.    The Debtor testified that the value of all the personal property in her home (excluding jewelry) is $7,000.00 even though her home has a tax assessed value of $373,800.00 and the amount of the original debt on her home was $431,062.70. *See Deposition Transcript* at p. 42-43. She explained that she arrived at this figure after considering the value of the televisions, living room sets and dining room sets in the home. *Id.*

### *Jewelry*

23.    The Debtor testified that the value of her jewelry is $5,000.00, which is the amount listed in her Schedules. *See Deposition Transcript* at p. 43. However, the Debtor further testified that she gave

away various pieces of jewelry to her adult daughters prior to filing bankruptcy. *Id.* Although Victoria

had previously testified at her first meeting of creditors that the jewelry transferred to her daughters was

worth $5,000.00, she now stated that it was worth about $3,000.00. Whatever the value may be, the

Debtor did not list these transfers in her Statement of Financial Affairs and she has still not disclosed the

transfers as of the date of this motion.

*Income and Expenses*

24.     The Debtor testified that at the time she filed bankruptcy, she had gross earnings of

$15,000.00 per month but that she did not pay any of the debts in her household. *See Deposition*

*Transcript* at p. 62-63. Victoria then stated that she did pay some of the family's expenses but these only

included the family's telephone bill, power bill and medical insurance. *Id.* at 63. Upon further inquiry

regarding what debts she pays and what debts her husband pays, the Debtor finally stated "I don't know.

I cannot tell you exactly how it works." *Id.* at 67.[1]

25.     The Debtor's subsequent testimony contradicted these statements. It also indicated that

the Debtor was not very forthcoming regarding her knowledge of her family's finances. When the

Debtor was shown copies of bank account statements that she produced, the Debtor testified that her

husband gives her substantial amounts of money each month. *See Deposition Transcript* at p. 68-72.

Some of this money is channeled into the Debtor's weight loss business; other amounts are used to pay

expenses that the Debtor failed to disclose when questioned earlier in her examination. *Id.* at 74.

26.     Victoria testified that she transfers approximately $2,000.00 to $3,000.00 per month to

her weight loss business (a corporation) because the business is not generating enough revenue to pay its

expenses. *See Deposition Transcript* at p. 76-77. The Debtor confirmed that she did not list these

expenses/transfers in Schedules or Statement of Financial Affairs. *Id.* at 77-79.

27.     The Debtor also testified that she chose not to disclose certain of her expenses. One of

---

[1] This method of subterfuge was employed by the Debtor at various points throughout her
examination when she was pressed for specific information about her income and expenses.

the expenses that the Debtor failed to disclose is an expense of $255.00 per month for her

granddaughter's school tuition.  *See Deposition Transcript* at p. 74-75.  When asked why she failed to

mention this expense earlier, Victoria stated "I thought it is not necessary."  *Id.*

*Consumer and Business Debts*

28.     The Debtor's Schedules do not indicate whether her debts are consumer (personal) debts

or business debts; therefore, the Debtor was asked to identify the consumer debts and business debts in

her amended Schedules.  The Debtor provided the breakdown contained in the following table:

| **Consumer Debts** | **Business Debts**[3] |
|---|---|
| •      $290,000.00 secured mortgage debt to Brantley Bank & Trust[2] | •      $60,877.74 in priority tax debts<br>•      $2,545.00 unsecured debt for line of credit to Camden National<br>•      $1.00 unsecured disputed debt to Camden National<br>•      $680.00 unsecured loan debt to Camden National<br>•      $558.00 unsecured collection account debt with CenturyTel<br>•      $18,000 unsecured debt in a pending suit by Genezen Healthcare<br>•      $162,700.00 judgment to Greenville Hospital<br>•      $1.00 unsecured credit card debt to MBNA America<br>•      $5,483.00 unsecured line to credit debt to Whitney Bank |
| **Total: $290,000.00** | **Total: $250,845.74** |

---

[2] A mortgage on a debtor's home is a consumer debt as that term is defined in Section 101(8) of the Bankruptcy Code.  *See In re Price*, 353 F.3d 1135 (9th Cir. 2004).

[3] The Debtor testified that she was not obligated for a $9,663.00 credit card debt to MBNA America and a $3,378.00 credit card debt to MBNA America listed in Schedule F.  *See Deposition Transcript* at p. 51.  She also testified that a $19,000.00 secured debt to Camden National was owed by her weight loss business (a corporation) rather than herself.  *See Deposition Transcript* at p. 39.  Even if these debts, which total $32,041.00, were included in the Debtor's business debts, they would only increase the Debtor's total business debts to $282,886.74.  This amount is still below the amount of the Debtor's consumer debts, which total $290,000.00.

29.    As the table above indicates, the Debtor testified that she has total consumer debts of $290,000.00 and total business debts of $250,845.74, a difference of $39,154.26. Therefore, the Debtor's consumer debts are substantially greater than her business debts.

**Documents Produced by Debtor in Response to Motion to Compel**

30.    The Debtor did not produce most of the documents requested by Greenville Hospital in the document requests attached to Greenville Hospital's Motion for Rule 2004 Examination. However, the Debtor subsequently produced most of the requested documents in response to Greenville Hospital's Motion to Compel Debtor to Produce Documents or Alternatively, to Dismiss Debtor's Case (the "Motion to Compel").[4] These documents include bank account records, credit card account statements, insurance statements and mortgage statements for the townhouse owned by the Debtor's husband.

31.    The August 31, 2006 bank account statement produced by the Debtor indicates that her husband made $26,471.70 in deposits and $31,123.27 in withdrawals from his personal bank account during that particular 1 month period. A true and correct copy of this statement is attached as Exhibit "D." The $26,471.70 in deposits is substantially higher than the $10,000.00 in net take home pay reported for the Debtor's husband on Schedule I. In fact, it is even greater than the combined net take home pay reported for the Debtor and her husband in Schedule I.

32.    There is no indication in the August 31, 2006 bank account statement that any of the funds were deposited by the Debtor. Furthermore, because the Debtor took the position in her examination that she could not produce a copy of her husband's bank account statement because she did not have any control over his bank accounts, the Debtor should be not be able to claim that any of the funds deposited into his account came from her. *See Deposition Transcript* at p. 23-25.

---

[4] Greenville Hospital will not set out the basis for its Motion to Compel again here. Instead, Greenville Hospital will simply state that the Debtor failed to produce almost any of the documents that it requested until the Debtor was under the threat of having her case dismissed. Greenville Hospital requests that the Court take the Debtor's actions into consideration when entering a decision on this motion.

33.     The September 29, 2006 bank account statement produced by the Debtor indicates that her husband made $24,811.41 in deposits and $24,217.53 in withdrawals from his personal bank account during that particular 1 month period.  A true and correct copy of this statement is attached as Exhibit "E."  Like the previous bank account statement, the $24,811.41 in deposits is substantially higher than the combined net take home pay reported for the Debtor and her husband in Schedule I.

34.     Copies of checks attached to the bank accounts statements produced by the Debtor show certain of her family's expenses that should be considered unreasonable for a chapter 7 debtor.  These include checks payable to Wynlakes Golf and County Club in the amounts of $166.31 and $195.46.  True and correct copies of these checks are attached collectively as Exhibit "F."

35.     Credit card statements produced by the Debtor for charges made during August and September 2006 show additional unreasonable expenses for rental cars at Enterprise Rent-A-Car ($609.87), for steaks and wine at Peppertree Steaks in Montgomery ($797.68), for liquor at an ABC store in Greenville, Alabama ($378.00), and for cash advances ($9,500.00).  True and correct copies of these credit card statements are attached collectively as Exhibit "G."  These expenses are unreasonable for a chapter 7 debtor and should be attributed at least in part to the Debtor because she testified in her examination that her husband makes all of her family's purchases.  *See Deposition Transcript* at p. 24-25.

### The Debtor's Case Should be Dismissed for Abuse Pursuant to Section 707(b)

36.     The Debtor's case should be dismissed for abuse pursuant to Section 707(b) because on the date that Victoria filed her bankruptcy case[5], the Debtor's consumer debts exceeded the Debtor's businesses debts.  And as a result, Victoria is classified as a debtor whose debts are primarily consumer debts, *See In re. Stewart*, 175 F.3d 796, 808 (10th Cir. 1999) and *In re. Kelly*, 841 F.2d 908 (9th Cir. 1988) (both finding that the term "primarily" in Section 108(8) of the Bankruptcy Code means more than ½ of the debtor's scheduled debt), and she is subject to the Means Test in Section 707(b).

---

[5] *See In re. Pier*, 310 B.R. 347, 355 (Bank. N.D. Ohio 2004) (finding that bankruptcy courts should consider the Debtor's financial condition as of the petition date when deciding whether or not to dismiss a debtor's case under Section 707(b)).

37.    The Means Test provides a brightline test that governs the dismissal and/or conversion of a chapter 7 case on the basis of abuse. Although there are numerous factors to consider under Section 707(b), the general rule is that any debtor with primarily consumer debts and disposable income greater than $166.00 per month is presumed to be abusing chapter 7 and therefore, subject to dismissal and/or conversion.

38.    Greenville Hospital will not set out all the calculations available under Section 707(b) to show that the Debtor's filing constitutes a presumed abuse of chapter 7 because the Debtor's Schedules I and J alone show disposable income in the amount of $1,890.00 per month, which is well in excess of the $166.00 minimum specified in the Means Test.

39.    Accordingly, Greenville Hospital requests that the Debtor's chapter 7 case be dismissed for abuse pursuant to Section 707(b) of the Bankruptcy Code.[6]

### The Debtor's Case Should be Dismissed for Abuse Pursuant to Section 707(a)

40.    In the alternative that the Court finds that the Debtor is not subject to the Means Test in Section 707(b), the Debtor's chapter 7 case should dismissed for abuse pursuant to Section 707(a) of the Bankruptcy Code.

41.    Section 707(a) provides an additional means by which a debtor's chapter 7 case may be dismissed for abuse. It gives 3 examples of "cause" that justify dismissal but these examples are non-exclusive. A bankruptcy court may dismiss a case on other grounds when cause is found. *See In re. Simmons*, 200 F.3d 738, 743 (11th Cir. 2000); *In the Matter of Atlas Supply Corp.*, 857 F.2d 1061, 1063 (5th Cir. 1988).

42.    Specifically, courts have held that "cause" exists to dismiss a chapter 7 case filed by a debtor with primarily business debts when the debtor's case was not filed in good faith or constitutes an abuse of the bankruptcy process. *See In re. Stewart*, 215 B.R. 456, 463 (10th Cir. BAP 1997) (finding that bankruptcy courts have an established power "to dismiss a petition under any chapter of the

---

[6] Pursuant to Section 707(b)(1), Greenville Hospital has standing to seek this relief and request that the Debtor's case be dismissed for abuse.

Bankruptcy Code that is filed with a lack of good faith or as an abuse of the process under §§ 105(a) and 707(a) of the Code"); *In re. O'Brien*, 328 B.R. 669, 674-75 (Bank. W.D.N.Y. 2005) (finding that a bad faith filing is cause for dismissal under Section 707(a) and citing to numerous other similar decisions).

43.    While Greenville Hospital acknowledges that there is a split on this issue sd other courts have held that dismissal based on bad faith or ability to pay is improper under Section 707(a), the recent decision of the United States Supreme Court in *Marrama v. Citizens Bank of Massachusetts*, 127 S.Ct. 1105 (2007) bolsters the argument that bankruptcy courts have the power to dismiss a chapter 7 case filed a business debtor.

44.    In *Marrama*, the debtor sought convert his chapter 7 case to a chapter 13 but only after it was discovered that the debtor's schedules were false and misleading. The chapter 7 trustee and one of the debtor's creditors objected to the conversion of his case on basis that the debtor's motion to convert was made in bad faith and would constitute an abuse of the bankruptcy process. The bankruptcy court denied the debtor's motion to convert and the court of appeals affirmed the bankruptcy court's decision.

45.    On appeal to the Supreme Court, the debtor argued that he had an absolute right to convert his case notwithstanding his false and misleading schedules. The Supreme Court rejected the debtor's argument, finding that the debtor's bad faith constituted cause to deny his motion to convert even though the conversion statute, Section 706, does not mention bad faith as a barrier to conversion.

46.    The Supreme Court began its decision by noting that "[t]he principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'" It then reasoned that the bankruptcy court had the power to deny the debtor's motion to convert because "nothing in the text of [the relevant statutes] limits the authority of the court to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor."

47.    Although the main thrust of Greenville Hospital's argument for dismissal of the Debtor's case is not based on her fraudulent conduct (the Debtor failed to disclose $5,000 worth of jewelry

transferred to her daughters pre-petition), the construction of Section 706(a) advocated by Greenville

Hospital is similar to the statutory construction of the conversion statute adopted by the Supreme Court

in *Marrama*.

48.    Like the conversion statute considered in *Marrama*, Section 706(a) does not specifically

state that a bad faith filing or the debtor's ability to pay her creditors may constitute cause for dismissal.

However, nothing in the text of Section 706(a) limits the authority of this Court to dismiss the Debtor's

case based on a finding of that she filed her case in bad faith or that she has the ability to repay her

creditors.

49.    As with the debtor in *Maramma*, the Debtor here is certainly "not a member of the class

of 'honest but unfortunate debtor[s]' that the bankruptcy laws were enacted to protect." *See Marrama*.

Rather, the Debtor and her husband are both doctors who make more money in a given month that many

debtors make in an entire year.  They live a lavish lifestyle, maintaining expensive homes in 2 cities and

numerous luxury cars.  The Debtor's Schedules and Statement of Financial Affairs are highly inaccurate,

failing to properly list the income and expenses of the Debtor and her doctor husband.  And the Debtor

has still failed to disclose transfers of property to family members even after testifying on multiple

occasions regarding the transfers.

50.    Moreover, the timing of the Debtor's bankruptcy filing - shortly after Greenville Hospital

recovered its judgment against the Debtor - indicates that the Debtor specifically filed her chapter 7 case

to avoid paying Greenville Hospital's judgment.  While this sort of conduct is not itself particularly

egregious, the Debtor had made it known to Greenville Hospital for some time that she would file

bankruptcy if Greenville Hospital ever recovered a judgment against her.

51.    Finally, the Court should consider that because the Debtor's husband owns virtually all

of her family's substantial assets, the Debtor likely expected that she could file chapter 7 to wipe out

Greenville Hospital's judgment without paying any of her creditors or suffering any other repercussions.

And if she receives a discharge, the Debtor will return to her opulent lifestyle, having contributed none of

her substantial monthly income to the repayment of her debts as she would be required to do under other chapters of the Bankruptcy Code.

52.     This Court should not condone the Debtor's chapter 7 filing in the face of her obvious ability to repay her debts and lack of good faith when filing her petition. Instead, the Debtor's chapter 7 case should be dismissed for abuse pursuant to Section 707(a) based upon a finding of bad faith, abuse of the bankruptcy process, ability to repay creditors, failure to file proper schedules, and failure to disclose pre-petition transfers of property. All of these things constitute "cause" under Section 707(a).

WHEREFORE, Greenville Hospital, d/b/a LV Stabler Memorial Hospital, requests that the Court dismiss the Debtor's case for abuse pursuant to Sections 707(a) and 707(b) of the Bankruptcy Code with a 180 day bar on refiling under any chapter of the Bankruptcy Code.

Respectfully submitted,


/s/ Bradley R. Hightower
Bradley R. Hightower
Attorney for Greenville Memorial Hospital

**OF COUNSEL:**
CHRISTIAN & SMALL LLP
505 North 20th Street, Suite 1800
Birmingham, Alabama 35203
Phone: (205) 795-6588
Fax: (205) 328-7234

## CERTIFICATE OF SERVICE

Unless otherwise served by the ECF system, I certify that I have served a copy of the above and foregoing Motion on the following by placing a copy in the United States Mail, properly addressed, first-class postage pre-paid on this the 20th day of April, 2007:

Deloris V. Victoria
225 Woodland Heights Dr.
Greenville, Alabama 36037

C. Brandon Sellers, III
Shinbaum, Abell, McLeod & Vann
P.O. Box 201
Montgomery, Alabama 36101

U.S. Bankruptcy Adminstrator
Attn: Tina Hayes
One Church Street
Montgomery, Alabama 36104

Chapter 7 Trustee, Daniel G. Hamm
560 South McDonough Street, STE A
Montgomery, Alabama 36104

**Parties on the attached mailing matrix**

/s/ Bradley R. Hightower
OF COUNSEL

Label Matrix for local noticing
1127-2
Case 06-31225
Middle District of Alabama
Montgomery
Mon Mar 26 08:47:19 CDT 2007

U.S. Bankruptcy Court
PO Box 1248
Montgomery, AL 36102

BANK OF AMERICA
PO BOX 41466
Philadelphia, PA 19101

BRANTLEY BANK & TRUST
P.O. BOX 25
BRANTLEY, AL 36009

Bankruptcy Administrator
U. S. Bankruptcy Administrator
One Church Street
Montgomery, AL 36104

CAMDEN NATIONAL
3 WATER STREET
Camden, AL 36726

CENTURYTEL
PO BOX 6001
Marion, LA 71260-6001

DAVID C. SCHWARTZ, ESQ.
PO BOX 11366
Birmingham, AL 35202-1366

EDGAR VICTORIA
225 WOODLAND HEIGHTS DR
Greenville, AL 36037

EDGAR VICTORIA
225 WOODLAND HEIGHTS DR
Greenville, AL 36037

GENEZEN HEALTHCARE
PO BOX 571811
Houston, TX 77257

GREENVILLE HOSPITAL
DBA LV STABLER MEMORIAL
29 STABLER DR
Greenville, AL 36037

GREER B. MALLETTE, ESQ
505 20TH ST N., STE 1800
Birmingham, AL 35203-2696

HON. PATRICIA CONOVER
ASSISTANT UNITED STATES ATTY.
P.O. BOX 197
MONTGOMERY, AL 36101

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 21126
PHILADELPHIA PA 19114-0326

MBNA AMERICA
PO BOX 17054
Wilmington, DE 19884

STATE OF ALABAMA
DEPARTMENT OF REVENUE
P.O. BOX 320001
MONTGOMERY, AL 36132

WHITNEY BANK
228 ST CHARLES AVE
New Orleans, LA 70130

C. Brandon Sellers III
Shinbaum, Abell, McLeod & Vann
PO Box 201
Montgomery, AL 36101

Daniel G. Hamm
The Law Offices of Daniel G. Hamm
560 South McDonough St., Ste A
Montgomery, AL 36104

Deloris V. Victoria
225 Woodland Heights Dr
Greenville, AL 36037

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

INTERNAL REVENUE SERVICE
P O BOX 21126
Philadelphia, PA 19114

(d)INTERNAL REVENUE SERVICE
SPECIAL PROCEDURES FUNCTION
801 TOM MARTIN DR., ROOM 126
BIRMINGHAM, AL 35211

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

u)Greenvill Hospital Corporation d/b/a LV St        (d)Daniel G. Hamm

The Law Offices of Daniel G. Hamm
560 South McDonough St., Ste. A
Montgomery, AL 36104

End of Label Matrix
Mailable recipients    20
Bypassed recipients     2
Total                  22

```
 1      IN THE UNITED STATES BANKRUPTCY COURT
 2            MIDDLE DISTRICT OF ALABAMA
 3
 4
 5   In Re:
                          Case Number:
 6   Deloris V. Victoria     06-31225WRS-7
 7
 8
          S T I P U L A T I O N S
 9
10        IT IS STIPULATED AND AGREED, by
11   and between the parties, through their
12   respective counsel, that the deposition
13   of:
14            DELORIS VICTORIA
15   may be taken before Karen Hinch, Notary
16   Public, State at Large, at the office of
17   McPhilips, Shinbaum & Gill, 566 South
18   Perry Street, Montgomery, Alabama on the
19   9th day of February, 2007, commencing at
20   approximately 9:00 a.m.
21
22
23
```

1           IT IS FURTHER STIPULATED AND

2    AGREED that the signature to and reading

3    of the deposition by the witness is

4    waived, the deposition to have the same

5    force and effect as if full compliance had

6    been had with all laws and rules of Court

7    relating to the taking of depositions;

8           IT IS FURTHER STIPULATED AND

9    AGREED that it shall not be necessary for

10   any objections to be made by counsel to

11   any questions, except as to form or

12   leading questions, and that counsel for

13   the parties may make objections and assign

14   grounds at the time of trial, or at the

15   time said deposition is offered in

16   evidence, or prior thereto.

17          IT IS FURTHER STIPULATED AND

18   AGREED that the notice of filing of the

19   deposition by the Commissioner is waived.

20

21

22

23

```
 1            A P P E A R A N C E S

 2

 3   FOR DELORIS VICTORIA:

 4          Richard Shinbaum

 5          Attorney at Law

 6          McPhilips, Shinbaum & Gill

 7          566 South Perry Street

 8          Montgomery, Alabama

 9

10

11          Bradley R. Hightower

12          Attorney at Law

13          CHRISTIAN & SMALL, LLP

14          505 20th Street North

15          Suite 1800

16          Birmingham, Alabama 35203

17

18          Tina Hayes

19          United States Bankruptcy

20          Administration

21          One Church Street

22          Montgomery, Alabama 36104

23
```

1              I N D E X

2

3

4  EXAMINATION BY:

5  Mr. Hightower                 6

6  Ms. Hayes                     90

7

8

9              E X H I B I T S

10

11  Exhibit 1                    10

12  Exhibit 2                    11

13  Exhibit 3                    13

14  Exhibit 4                    14

15  Exhibit 5                    16

16  Exhibit 6                    16

17  Exhibit 7                    17

18  Exhibit 8                    17

19  Exhibit 9                    20

20  Exhibit 10                   22

21  Exhibit 11                   22

22  Exhibit 12                   28

23  Exhibit 13                   29

| 1 | Exhibit 14 | 32 |
| 2 | Exhibit 15 | 33 |
| 3 | Exhibit 16 | 38 |
| 4 | Exhibit 17 | 52 |

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

```
 1            I, Karen Hinch, a Court Reporter of

 2    Birmingham, Alabama, and a Notary Public

 3    for the State of Alabama at Large, acting

 4    as Commissioner, certify that on this

 5    date, pursuant to Rule 30 of the Alabama

 6    State Rules of Civil Procedure and the

 7    foregoing stipulations of counsel, there

 8    came before me at McPhilips, Shinbaum &

 9    Gill, 566 South Perry Street,

10    Montgomery, Alabama on the 9th day of

11    February, 2007, commencing at 9:00 a.m.,

12    DELORIS VICTORIA, witness in the above

13    cause, for oral examination, whereupon the

14    following proceedings were had:

15

16            DELORIS VICTORIA,

17    first being duly sworn, was examined and

18    testified as follows:

19

20    EXAMINATION BY MR. HIGHTOWER:

21    Q        Dr. Victoria, my name is Brad

22    Hightower.  We've met before and talked to

23    you before about your case.  What this is
```

1  called, it's called a Motion for 2004

2  Examination.  The rule number is just a

3  provision in the Bankruptcy Code that

4  allows us to take your examination under

5  oath.  It's basically the same thing as a

6  deposition.

7       Have you ever participated in a

8  deposition before?

9  A       No.

10 Q       Okay.  Well, I'll ask you

11 questions and the court reporter here will

12 take down the questions that I ask you and

13 your responses.  So if I ask you a

14 question and you don't understand it, you

15 can just ask me to repeat it or try to

16 rephrase it to help you understand it.

17 And please answer out loud because if you

18 just nod your head the court reporter

19 can't take that down as a response.  So if

20 I ask you for something "yes" or "no,"

21 just say "yes" or say "no," don't shake

22 your head or give any kind of other

23 affirmative response.

```
 1          This is a copy of the motion that we
 2   filed to ask you to come today.  Have you
 3   ever seen this before?
 4   A         No.
 5   Q          There was attached to it a
 6   request for you to bring some documents
 7   with you.  The documents that we asked you
 8   to bring are listed in this section here.
 9   Have you ever seen this before?
10   A         No.
11   Q          Were you aware that we had
12   requested that you bring some documents
13   with you today?
14   A          Mr. Richard notified me
15   Tuesday.
16   Q          Do you have some documents with
17   you?
18            MR. SHINBAUM:  That's a lot of
19   them.  She did not bring all of them.
20   There's more.  There's some we don't have
21   copied.
22        You have the bank statements from
23   Brantley.
```

1           THE WITNESS:  Yes.

2           MR. SHINBAUM:  He needs to see

3  those and we will copy those.  And the

4  registration on the vehicles.  I know you

5  showed me that a second ago but I don't

6  have copies of that yet.

7           MR. HIGHTOWER:  Is that in

8  addition to this?

9           MR. SHINBAUM:  Same thing.

10          MR. HIGHTOWER:  And she's got

11 some more stuff with her?

12          MR. SHINBAUM:  It's just not in

13 the same order unfortunately.  I didn't

14 put it through at the same time.

15          MR. HIGHTOWER:  I'll just give

16 her a moment to get whatever it is that

17 she's looking for.

18          MR. SHINBAUM:  There is one

19 registration she's missing.  I will get

20 that to you.  That's the registrations on

21 the vehicles and that's two statements

22 from Camden and Brantley, Camden and

23 Brantley are one in the same.

1  Q          Dr. Victoria, I've got a stack

2  of documents here that you have produced

3  today.  If you wouldn't mind, I'd

4  appreciate if you would just go over with

5  me what you've got here if you could just

6  identify.

7          MR. SHINBAUM:  One thing I'd

8  ask, I haven't had a chance to redact

9  everything yet that has to be redacted

10 before it's submitted to court.

11          MR. HIGHTOWER:  That's fine.

12 Q          Can you go over this stack and

13 tell me what we've got here?

14 A          This is the August statement

15 from Butler Bank and then the September

16 statement from Butler Bank.

17          MR. HIGHTOWER:  Can we mark

18 those up as Exhibit 1.

19              (Exhibit 1

                was marked for

20              identification.)

21 Q          Okay.  What is that one?

22 A          This is the registration of the

23 cars my husband owns and I had one more

1  that is -- I just have to fax it.

2  Q          Which two cars is that?

3  A          It's the Mercedes and then the

4  Porsche.

5  Q          We will mark that as Number 2.

6             (Exhibit 2

               was marked for

7              identification.)

8  A          He's got another Mercedes that

9  he could not find the registration.

10 Q          What type of Mercedes is the

11 other car?

12 A          I do not know.

13 Q          Is it a large, small or large?

14 A          It's a sports car.

15 Q          Sports car.  Two door?

16 A          Two door.

17 Q          How old is it?

18 A          Three years old.

19 Q          Do you know how much it cost?

20 A          90,000.

21            MR. SHINBAUM:  If you don't

22 know, it's okay to say you don't know.

23 A          I don't know because I'm just

1  guessing.

2          MR. SHINBAUM:  We don't want

3  you to guess.  If you know the answer,

4  answer; if you don't, there's no shame in

5  admitting you don't know.

6  Q          So approximately 90 or you just

7  don't know?

8  A          I don't know.

9  Q          What makes you think it was

10 worth 90?

11 A          It was just in the newspaper.

12 Q          I guess you had some basis to

13 come up with 90 for the value?

14 A          Yes.

15 Q          What was that?

16 A          I don't know.  As I said, I'm

17 not into cars, things, that's why I do not

18 own a car.

19 Q          I just mean as opposed to

20 saying 50 or 20?

21 A          You can just ask my husband.

22 It's not my business telling him his cars.

23 Q          Can you identify what we've got

```
 1   here?
 2                  (Exhibit 3
                     was marked for
 3                   identification.)
 4   A           This is a summary of my
 5   MasterCard year-end for 2003.
 6   Q           For what year?
 7   A           2003.
 8   Q           On that one we just marked,
 9   Exhibit 3, Dr. Victoria, do you have
10   anything more recent than 2003?
11   A           No.
12   Q           So your year-end 2003 credit
13   card statement is the most recent credit
14   card statement that you have?
15   A           I'm sorry.
16   Q           Is your 2003 year-end credit
17   card statement that you brought with you
18   today that we just marked as Exhibit 3, is
19   that the most recent credit card statement
20   that you have?
21   A           No.
22               MR. SHINBAUM:  That's the most
23   recent I have in my file.  I have -- last
```

1   I have is 1 of '06.

2            MR. HIGHTOWER:  That's January

3   of 2006?  Looks like a 2003 year-end

4   report.

5            MR. SHINBAUM:  I just put them

6   all together.  There's one of December '05

7   and one of January '06.

8   Q        Dr. Victoria, you filed your

9   bankruptcy case in September '06.

10            MR. SHINBAUM:  This is October.

11   That's the same thing.

12            MR. HIGHTOWER:  What is this?

13            MR. SHINBAUM:  That's October.

14            MR. HIGHTOWER:  Of '06?

15            MR. SHINBAUM:  Of '06.  I think

16   it's either '05 or '06.

17            MR. HIGHTOWER:  It says '06.

18        Mark this as 4.

19                (Exhibit 4

                    was marked for

20                    identification.)

21            MR. SHINBAUM:  That will be a

22   summary of statements between '03 and '06

23   at various intervals.

```
 1  Q            What's next in the stack you
 2  brought with you?
 3  A            This is --
 4            MR. SHINBAUM:  Do you want to
 5  do the business reports all together?
 6            MR. HIGHTOWER:  The credit card
 7  reports?
 8            MR. SHINBAUM:  Business
 9  reports.
10            MR. HIGHTOWER:  That's what
11  she's looking at now?
12            MR. SHINBAUM:  I think that's
13  what she's doing.
14            MR. HIGHTOWER:  That's fine.
15  A            Accounts receivable August and
16  September 2006.
17            MR. SHINBAUM:  Looks like her
18  business reports.
19            MR. HIGHTOWER:  This and this
20  are the same?
21            MR. SHINBAUM:  No.  That's
22  before that.  That would be this, whatever
23  it is.
```

1  Q          Can you identify what this is?

2             MR. SHINBAUM:   That's something

3  from you.  I don't know what it is.   He

4  wants to know what it is.

5  Q          Tell me what it is.

6  A          It's the accounts receivable of

7  August and September.  And the other

8  documents here are just in the summary.

9  Everything in here are just kind of like

10 these are the summary and it's just

11 telling you what's insurance paid, what

12 the office payments, what are the accounts

13 receivable from the patients.

14             (Exhibit 5

                was marked for

15              identification.)

16 Q          What's next?

17 A          This is charitable

18 contributions.

19             (Exhibit 6

                was marked for

20              identification.)

21 A          This is investment.  I don't

22 know if you consider that an IRA.

23 Q          Is it an SEP?

```
 1  A          I think.
 2  Q          Roughly, a self employment IRA?
 3  A          It is.
 4             (Exhibit 7
                was marked for
 5              identification.)
 6  Q          What's next?
 7  A          This is documents that my
 8  lawyer did that are terminating my --
 9             MR. SHINBAUM:  This is just a
10  letter from her lawyers.
11             MR. HIGHTOWER:  We'll mark that
12  as 8.
13             (Exhibit 8
                was marked for
14              identification.)
15             MR. SHINBAUM:  I don't think it
16  was actually incorporated or finished.  I
17  don't know.  When she was trying to change
18  her practice.
19  Q          What document are you looking
20  at now?
21  A          This is the summary of the two
22  banks that I have.
23  Q          Checking accounts?
```

```
 1  A          Checking accounts.  And it's
 2  the expenses that was made in August and
 3  September.
 4          MR. SHINBAUM:  I believe
 5  that's -- these are all of her business
 6  reports for the applicable time if you
 7  just want to do them all in one.
 8          MR. HIGHTOWER:  Is that
 9  checking account, is that her personal
10  checking account?
11  A          No.
12  Q          It's a business checking
13  account?
14  A          Business.
15  Q          This is the same as -- these
16  two are the same thing or they're
17  additional?
18  A          It kind of goes together.
19          MR. SHINBAUM:  It's kind of
20  everything.
21      I believe this is your practice
22  analysis and reports.  And the statements
23  as to income and everything else.  It's
```

1  just a compilation of everything with the

2  business through September -- looks like

3  from August through November.

4         THE WITNESS:  It's already

5  there.

6         MR. SHINBAUM:  He knows it's

7  there.  He needs to know what it is.

8  Q         I'm just asking you to go

9  through this stack of documents with me

10  and tell me what each portion of it is.

11         MR. SHINBAUM:  And of course,

12  before it goes to any court proceeding we

13  will have to redact all the names.

14  A         Just like I said, this is the

15  payments we did in August and September.

16  Q         Is this part of it also that

17  you just handed to me?

18  A         These are the incomes, and I

19  think they are together, income and

20  expenses.

21  Q         These are the income and

22  expenses for your business for the period

23  of August and September 2006?

```
 1  A           Yes.
 2              MR. HIGHTOWER:  We will mark
 3  that as 9.
 4              (Exhibit 9
                  was marked for
 5                  identification.)
 6              MR. SHINBAUM:  I think it
 7  actually runs through November but it
 8  contains what you -- and of course, again,
 9  we are submitting this for the deposition
10  today but if it's used in any procedings,
11  it will have to be redacted.
12              MR. HIGHTOWER:  That's fine.
13  Q           What's the next document?
14  A           I think this is a budget for
15  November.
16              MR. SHINBAUM:  That would be
17  November/December budget.
18              THE WITNESS:  I'm not sure
19  about this, Mr. Shibaum.
20              MR. SHINBAUM:  That's the
21  lawsuit from Jemison.  Did you ask for
22  that?
23              MR. HIGHTOWER:  I don't think I
```

1  did.

2           MR. SHINBAUM:  Did you want it?

3           MR. HIGHTOWER:  I do not want

4  it.

5           MR. SHINBAUM:  I did have the

6  2006 MBNA statement.  I didn't see it

7  before.  If you want to add that to the

8  MBNA.

9      Did you want October practice

10 analysis?

11          MR. HIGHTOWER:  Sure.

12          MR. SHINBAUM:  Let's add that

13 to the October.

14 Q          Can you tell me in which stack

15 this one goes?

16 A          (Witness complied.)

17     This is insurance payments.

18 Q          I'll take a copy if you just

19 identify what they are.

20 A          They are various private

21 insurances, Blue Cross, Medicare,

22 Medicaid.

23 Q          For what time period?

```
 1  A           Some are August, some are
 2  October, some are September.
 3              MR. SHINBAUM:  Again, there's a
 4  bunch of information on this we will have
 5  to redact.
 6                   (Exhibit 10
                        was marked for
 7                      identification.)
 8  A           This is the taxes.
 9  Q           What period?
10  A           August 2006.
11  Q           Personal income or business?
12  A           Business.
13              MR. HIGHTOWER:  Mark this as
14  11.
15                   (Exhibit 11
                        was marked for
16                      identification.)
17  Q           Did you bring any other
18  documents with you?
19  A           Huh-uh.
20  Q           Let me just go through the list
21  of things that I have and you can just
22  tell me if you brought them.  Copy of your
23  Whitney Bank checking account statement
```

1  for August and September '06.  I think you

2  brought that.  I think it's already in

3  here.

4           MR. SHINBAUM:  It's Butler and

5  Camden.

6  Q           Did you bring Whitney?

7  A           Whitney is the summary.

8           MR. SHINBAUM:  Get me the

9  statements and the checks and I will get

10 them to him.

11 Q           Butler County checking account

12 statement for August and September '06,

13 you brought that.  Copy of any checking

14 account statement received by your husband

15 for the months of August and

16 September '06.  I don't know what banks he

17 uses.

18           MR. SHINBAUM:  We have no

19 control over those so we don't have those.

20           MR. HIGHTOWER:  You don't have

21 those?

22           MR. SHINBAUM:  No.  He has

23 control of those.

```
 1   Q          I think they're relevant to
 2   this.
 3              MR. SHINBAUM:  We'll have to
 4   take that up.
 5   Q          Copy of any credit card account
 6   statement received by you for charges made
 7   during the months of August and
 8   September '06.
 9              MR. SHINBAUM:  I don't think
10   there is any.
11   Q          Did you make any charges on a
12   credit card during August and
13   September 2006?
14   A          No.
15   Q          How did you pay for any items
16   that you needed to buy during that period
17   of time?
18   A          My husband take care of it.
19   Q          Your husband purchased them?
20   A          (Witness nodding head.)
21   Q          How did he purchase them?
22   A          Check or credit card.
23   Q          Do you understand how it could
```

1  be relevant that I asked you to produce a

2  copy of your husband's credit card

3  statements since he apparently purchased

4  everything you needed during those months?

5           MR. SHINBAUM:  We have no

6  control over his accounts.

7  Q          Copy of any credit card account

8  statement received by your husband for

9  charges made during August and

10 September 2006.  I assume the same?

11          MR. SHINBAUM:  Same.

12 Q          Copy of any and all documents

13 showing any interest held by you or your

14 husband in any automobile including

15 payment booklets, invoices and vehicle

16 titles.  You've produced two titles I

17 believe.

18          MR. SHINBAUM:  Two of the three

19 registrations.  We need to get you the

20 other one.

21 Q          Copy of any insurance policy on

22 your home and any other real property in

23 which you and your husband has an

1  interest?

2           MR. SHINBAUM:  We will have to

3  get that.

4  Q           Copy of any insurance policy on

5  any automobile which you or your husband

6  have any interest?

7           MR. SHINBAUM:  I don't have

8  that.  She didn't have that in the stack.

9  Q           Copy of any insurance policy

10 that you have on any personal property

11 other than automobiles, including jewelry.

12          MR. SHINBAUM:  I don't have

13 that in the stack.

14 Q           Do you have an insurance policy

15 on any jewelry that you own?

16 A           No.

17 Q           Or any other personal items?

18 A           No.

19          MR. SHINBAUM:  I imagine -- let

20 me correct that -- most homeowners'

21 policies have a limited coverage on

22 jewelry and everything but not complete

23 coverage on jewelry and everything.

```
 1            MR. HIGHTOWER:  Especially if
 2  you're outside the home.
 3            MR. SHINBAUM:  It's very
 4  limited.  Most homeowners' policies --
 5  other than what's in the homeowners'
 6  policy.
 7  Q         You don't have a policy on any
 8  jewelry that you're aware of?
 9  A         No.
10  Q         Other than homeowners'
11  potentially?
12  A         No.
13  Q         Copy of your federal income tax
14  return for the tax year 2005.
15            MR. SHINBAUM:  I have a
16  transcript of the joint return showing
17  that -- did you file it yet?  You just
18  filed it.
19            THE WITNESS:  This is just
20  mine.
21            MR. SHINBAUM:  I'll have to
22  copy this.  And this is just the
23  transcript from the IRS showing that they
```

1 didn't have it at the time we filed.

2 Q          This document that you've just

3 produced, is this a business tax return or

4 a personal tax return?

5          MR. SHINBAUM:  That's the

6 transcripts.

7          MR. HIGHTOWER:  What is this?

8          MR. SHINBAUM:  Transcripts

9 from --

10          MR. HIGHTOWER:  From tax year

11 '05?

12          MR. SHINBAUM:  '05 and '06.

13          MR. HIGHTOWER:  Personal income

14 tax or business?

15          MR. SHINBAUM:  Both

16 transcripts.

17          MR. HIGHTOWER:  That is going

18 to be Number 12.

19               (Exhibit 12

                    was marked for

20                    identification.)

21 Q          And other than any

22 communications with your attorney, have

23 you made any written communications by

1  e-mail or letter to anyone regarding your

2  bankruptcy case?

3  A        No.

4  Q           We will come back to the

5  documents in a little bit.  I'm going to

6  ask you some questions about your

7  bankruptcy case.

8              (Exhibit 13

               was marked for

9              identification.)

10 Q           Is that a copy of your

11 bankruptcy petition and schedules?

12 A        Yes.

13 Q           You filed your bankruptcy on

14 September 25, 2006?  This may help you.

15 This is a copy of the docket and there's

16 the date.

17 A        Yes.

18 Q           Some of this we may have gone

19 over before and I apologize if I ask you a

20 question that you remember me asking you

21 previously.  But let me ask you to turn to

22 Schedule A.  If you flip a few pages into

23 it at the top there will be Schedule A.

```
 1        You have listed on Schedule A that
 2  you own or have an interest in property
 3  located at 225 Woodland Heights Drive in
 4  Greenville, Alabama; is that correct?
 5  A        Yes.
 6  Q        When you filed bankruptcy, how
 7  much do you think your house was worth?
 8  A        I do not know.
 9  Q        You have a listing -- are you
10  still looking at it?  You list here that a
11  value of $373,800.  You listed -- you say
12  value listed is tax assessed value.  I
13  assume that the house was not in your
14  opinion worth that much; is that correct?
15  A        Say that again.
16  Q        You list the house as being
17  worth $373,800, but you also make a note
18  that says value listed is tax assessed
19  value.  Did you do that because you
20  thought the house was actually worth less
21  than the amount listed?
22            MR. SHINBAUM:  That was done
23  because usually in this district if we
```

1 don't have an exact appraisal we submit

2 the tax assessed value as at least some

3 value, something that shows the method of

4 ascertaining the value of the home.  I

5 believe the trustee sent an appraiser down

6 to get an opinion himself and didn't come

7 up with that much.

8         MR. HIGHTOWER:  I assume the

9 trustee would have taken it and sold it if

10 he thought it was worth substantially more

11 than the debt that was owed on it?

12         MR. SHINBAUM:  Now, he is going

13 to propose an offer to compromise and sell

14 is my understanding from talking to the

15 trustee.  He hasn't done it yet, but -- I

16 don't know if he's done it yet.

17         MS. HAYES:  I haven't seen

18 anything.

19         MR. SHINBAUM:  But there are

20 discussions about the sale of the

21 property.

22 Q         Dr. Victoria, do you know how

23 much the trustee's appraiser came back and

1  said the house is worth?

2  A         I do not know.

3         MR. HIGHTOWER:  Do you know,

4  Richard?

5         MR. SHINBAUM:  I haven't -- he

6  just told me what he wants us to pay if we

7  want to buy it.  I don't know how he

8  determined that.  But we consider it a

9  fair and reasonable offer.

10        MR. HIGHTOWER:  Are you willing

11 to disclose that amount?

12        MR. SHINBAUM:  Yeah.  Between

13 the accounts receivables and the house, I

14 think he has asked us if we would buy them

15 for 55,000.  Don't hold me to the exact

16 figure.  It's in that range.  So he did

17 find some value.

18        MR. HIGHTOWER:  Can you mark

19 this as 14?

20             (Exhibit 14

                 was marked for

21               identification.)

22 Q         Your house has a mortgage on

23 it, correct?

```
 1  A          Yes.
 2  Q          When was that mortgage entered
 3  into?
 4  A          (No response.)
 5             MR. HIGHTOWER:  Do you have a
 6  copy of it?
 7             MR. SHINBAUM:  Yeah.  I will
 8  copy it and submit it.  I do have a copy
 9  of it.  The real estate mortgage is dated
10  January 13, 1998.  And the mortgage amount
11  it looks like at that time was
12  $431,062.70.
13             (Exhibit 15
               was marked for
14             identification.)
15  Q          Who was your mortgage with,
16  what bank?
17  A          Brantley Bank.
18  Q          I'm going to show you what's
19  marked as Exhibit Number 14.  I'll
20  represent to you that that's a
21  reaffirmation agreement on your home.  If
22  you turn to the third page it shows the
23  original amount of the mortgage was
```

1  $347,577.39.

2         MR. SHINBAUM:  That may be a

3  different one.  Yes, that's what that

4  shows and the actual mortgage shows a

5  different amount.  Don't ask me how they

6  got there or what they did, but the actual

7  mortgage shows $431,062.70.  This is a

8  different document, different -- there is

9  a different amount on the reaffirmation.

10        MR. HIGHTOWER:  But that's the

11 same mortgage?

12        MR. SHINBAUM:  I believe so.

13 Let me see if it references that date.

14 This doesn't reference the date of the

15 mortgage but the document speaks for

16 itself.  I would have to check.  There may

17 -- it looks like there -- if these

18 documents are right, there may have been a

19 refinance somewhere.

20        MR. HIGHTOWER:  A refinance?

21        MR. SHINBAUM:  There may have

22 been.  I don't know there has been because

23 the payment amounts are even different.

1            MR. HIGHTOWER:  I was about to

2  ask her.

3  Q          Dr. Victoria, according to this

4  mortgage, which is identified as

5  Exhibit 15, it shows that you had original

6  mortgage payments of 5,257 per month for a

7  period of 120 months or ten years.  Does

8  that sound correct?

9  A          I don't know.

10 Q          Do you recall ever discussing

11 with your husband or ever paying --

12 discussing how much the mortgage was?

13 A          I don't recall.

14 Q          If you look at the

15 reaffirmation agreement that's marked as

16 Exhibit 14, if you will turn to page three

17 again, at the bottom it says it has a new

18 payment schedule.  It says your payment

19 schedule will be 176 payments in the

20 amount of $2,025.05?

21 A          I know about this, yes.

22 Q          And it says it's payable

23 semi-monthly, meaning twice per month.

1  Are you familiar with that?

2  A       Yes.

3  Q       In your bankruptcy schedules

4  you listed a mortgage debt of

5  approximately $4,000 per month.  Is that

6  where you got that number from, by

7  multiplying this twice, you have to pay it

8  twice per month?

9  A       Where is that?

10 Q       If you flip to --

11         MR. SHINBAUM:  He's talking

12 about Schedule J.

13 Q       That's where that number came

14 from?

15 A       Right, uh-huh.

16 Q       Is that the same amount that

17 you were paying before you filed

18 bankruptcy each month for your mortgage?

19 A       Yes.

20 Q       And I just did some rough math,

21 but if you have 176 payments due at the

22 rate listed in Exhibit Number 14, that

23 means the mortgage will be paid off in

1  roughly seven and a half years.  Is that

2  about what you expected it to be paid off

3  in?

4  A          Yes.

5  Q          How large is the home?

6  A          3,100 square footage.

7  Q          How many bedrooms and baths?

8  A          Four and three baths.

9  Q          How would you describe it in

10 comparison to other houses in the area?

11 Smaller?  Larger?

12 A          Same.

13 Q          About the same?  How many

14 people live in the house?

15 A          Four.

16 Q          Who are they?

17 A          Me and my husband, my son and

18 granddaughter.

19 Q          How many children do you have?

20 A          I have four.

21 Q          What are their ages?

22 A          39, 37, 31 and 30.

23 Q          All of them are 18 or older

1  then?

2  A        Yes.

3  Q        How old is the son that lives

4  with you?

5  A        30.

6  Q        Could you live in a smaller

7  house at a lesser -- with a smaller

8  mortgage payment if you had to?

9  A        Say that again.

10 Q        If you had to, could you live

11 in a smaller house with a lesser mortgage

12 payment each month considering the number

13 of people that live in the house?

14 A        Yes.

15           (Exhibit 16

             was marked for

16           identification.)

17 Q        Can you identify Exhibit 16 for

18 me?

19           MR. SHINBAUM:   This is the

20 reaffirmation agreement.   I think it's the

21 same.

22           MR. HIGHTOWER:   I must have

23 just given her the wrong one.

1    Q           Could you identify that one for

2   me?

3   A           Yes.

4    Q           What is that?

5   A           This is a loan by the

6   corporation we have for weight loss.

7    Q           Is it a loan to you personally

8   or to a business?

9   A           Business.

10   Q           An incorporated business or

11  just a business that you're doing business

12  under that name?

13  A           It's incorporated.

14              MR. SHINBAUM:  I don't believe

15  she actually ever did any business under

16  the corporation.  All the income and

17  everything came in personally and

18  everything.  She thought she was doing

19  business as a corporation, but I don't

20  believe that it was truly analyzed it

21  would be.

22   Q           Could you turn to page three of

23  that?  On page three it lists under where

1  it says item or type of item, certificate
2  of deposit number 19922.  What is that
3  certificate of deposite?
4  A          That's collateral for this
5  loan.
6  Q          Who owns that certificate of
7  deposit?
8  A          It's me and my cousin who put
9  in some interest to the corporation.
10 Q          How much is it?
11 A          It's 3,500 but it's taken out
12 already.  And what the bank did is take it
13 out from the nineteen six seven -- 697.
14 So at this point the loan is for 16
15 something.
16 Q          You had an interest in the
17 certificate of deposit but it has been --
18 the bank has already cashed it?
19 A          Right, it has to be.
20 Q          At what point --
21 A          It's collateral.
22 Q          It serves as collateral for the
23 loan; is that correct?

1  A          Yes.

2  Q          Did you list it in your

3  bankruptcy petition and schedules?  If you

4  will look here, this is Exhibit Number 13.

5  You see item number two here?  You see it

6  asks you to list certificates of deposit?

7  I don't see one listed there.

8  A          As I said, that's how I

9  explained to you, that it's a loan.

10 Q          You didn't list it on your

11 bankruptcy petition and schedule as an

12 asset that you owned an interest in; is

13 that correct?

14 A          I don't think it's my asset

15 because, as I said, it's tied up to the

16 loan.

17 Q          Who owns -- but you did say

18 that you owned the certificate of deposit

19 with your cousin?

20 A          My cousin.

21 Q          So it must be an asset of

22 yours, then?

23 A          No, it's not.  As I said --

```
 1  Q          I understand that it's serving
 2  as collateral, but if you had say a car
 3  that was serving as collateral, that would
 4  be yours?
 5  A          It's her money.  I had to sign
 6  for her.
 7  Q          So the certificate of deposit
 8  belongs to your cousin?
 9  A          Right.
10  Q          Not to you?
11  A          It is not mine.
12  Q          Is your name on it?
13  A          Yeah.  The bank has to make me
14  sign also.
15  Q          On item number four on your
16  personal property list on your bankruptcy
17  schedules here you list household goods
18  valued at $7,000.  Where did you come up
19  with that number from?
20  A          It's like TV sets and living
21  room sets, dining room sets.
22  Q          So you think that all the
23  furniture in your house is worth $7,000?
```

```
 1  A           Yes.

 2  Q           All the items in there?

 3  A           Yes.

 4  Q           You listed jewelry worth $5,000

 5  here.

 6  A           Yes.

 7  Q           Can you describe to me the

 8  pieces of jewelry that you have that add

 9  up to that?

10  A           You have the list there, what I

11  told you before.

12  Q           This is just notes I made

13  yesterday.  I don't have a list.

14  A           A few rings, few -- three or

15  four rings, three or four necklaces and

16  earrings.

17  Q           Last time we talked you told me

18  that you had given some jewelry away to

19  others.  Can you tell me what pieces of

20  jewelry that you gave away?

21  A           Maybe a couple of earrings to

22  my daughter, two or three necklaces.

23  Q           Also to your daughter?
```

```
 1  A           Yeah.
 2  Q           Which one?  You gave me a list
 3  of the ages of your children.  Which one
 4  is your daughter?
 5  A           The second and the third.
 6  Q           Daughters then?
 7  A           Daughters.
 8  Q           31 and 30?
 9  A           31 and 30.
10  Q           And the other two are your
11  sons?
12  A           Right.
13  Q           How much do you think the value
14  of the jewelry you gave to your daughters
15  was?
16  A           Probably 3,000.
17  Q           Did you give any jewelry away
18  to any other people?
19  A           No.
20  Q           Have you given any property
21  including jewelry to your daughters or
22  anyone else since you filed your
23  bankruptcy case?
```

```
 1  A          No.
 2  Q          We also talked about a
 3  condominium or townhouse, I'm not sure how
 4  you described it, in Atlanta.  Who owns
 5  that?
 6  A          My husband.
 7  Q          What did you say the value of
 8  it was?
 9  A          I do not know.
10  Q          Do you have a mortgage on it?
11  A          Yes.
12  Q          Do you have a copy of it?
13  A          No.
14  Q          In your home do you have copy
15  of it?
16             MR. HIGHTOWER:  Is that the
17  same thing we talked about earlier as far
18  as the credit cards?
19             MR. SHINBAUM:  No.  Brandon's
20  been trying to get a copy of it from
21  Atlanta.  We just haven't gotten it yet.
22  Q          The last time -- do you need to
23  ask your lawyer a question?
```

```
 1          The last time we talked you had an
 2  idea of what you thought the property in
 3  Atlanta was worth.  You still do not
 4  remember our discussions previously?
 5  A          I do not know.
 6  Q          You don't know how much you and
 7  your husband pay each month for it?
 8  A          I do not pay.
 9  Q          You do not pay?
10  A          (Witness shakes head.)
11  Q          Your husband pays for it each
12  month?
13  A          Right.
14  Q          Do you know how much he pays?
15  A          I do not know.
16  Q          How did you go about purchasing
17  the condo?  When I say "you," how did you
18  and your husband go about purchasing the
19  condo?
20  A          What is the purpose?
21  Q          When did you purchase it?
22  A          2002 I think.  2002.
23  Q          Who lives in it?
```

```
 1   A          Nobody.

 2   Q          No one lives in it?

 3   A          Nobody.

 4   Q          What is it used for?

 5   A          We just go there on weekends.

 6   Q          Who is "we?"

 7   A          Just me and my husband.

 8   Q          The last time we talked you had

 9   told me that your daughter lived there or

10   someone in your family lived there.  Has

11   that changed?

12   A          She did when she was in med

13   school.

14   Q          She no longer lives there?

15   A          No.

16   Q          When did she stop living there?

17   A          July of last year, 2006.

18   Q          How did you locate the condo?

19   How did you and your husband locate the

20   condo to purchase it?

21   A          How did I locate it?

22   Q          When you were in Atlanta how

23   did you decide that you wanted to purchase
```

1  a condo?

2  A          For my daughters.

3  Q          How did you find it?

4  A          I think she found it with a

5  Realtor.

6  Q          How did you decide -- what made

7  you decide to buy it?

8  A          For my daughters to live.

9  Q          Do you remember at all

10 discussing how much the cost was?

11 A          She and my husband.

12 Q          So you don't have any

13 discussions with your husband when you buy

14 a piece of property like that about how

15 much it costs?

16 A          He paid for it.

17 Q          Let me give you an example.  If

18 I was going to go buy a house or a condo

19 in Atlanta, and I'm married, I would think

20 my wife would probably be interested in

21 how much I was going to pay for it because

22 we just discuss those type of things.  Do

23 you discuss that type of stuff with your

1  husband?

2  A         No.

3  Q         If you'd turn to Schedule D,

4  you've got listed as secured creditors the

5  mortgage on your home and you've got what

6  we discussed earlier.  There's a loan, you

7  said that that was the loan here.  The

8  second loan is listed as Camden National.

9  Is that on your -- what type of business

10 did you describe that as?

11 A         Weight loss.

12 Q         Weight loss business.  Your

13 home, would you say that you bought it for

14 your personal use?

15 A         Yes.

16 Q         And your debt that you owe to

17 Camden National, that's a business use?

18 A         Yes.

19 Q         If you'd flip to the next page

20 and flip one more time.  These are tax

21 debts that you have listed here.  Are they

22 for personal income taxes or business

23 income taxes?

1  A          Business.

2  Q          If you would turn to Schedule

3  F, it should be two pages.  The first

4  creditor you have listed is Camden

5  National line of credit, is that a

6  business debt or a personal debt?

7  A          Business.

8  Q          The second debt, is that the

9  same debt just listed as disputed debt?

10  A          Yes.

11  Q          The third debt, loan to Camden

12  National, is that business or personal?

13  A          Business.

14  Q          The fourth debt is CenturyTel,

15  is that business or personal?

16  A          It's business.

17  Q          Is that for telephone services?

18  A          Yes.

19  Q          The fifth debt, Jenisen

20  Healthcare, is that a business debt?

21  A          Yes.

22  Q          Greenville Hospital also a

23  business debt?

```
 1  A          Yes.

 2  Q          Number seven, MBNA America

 3  credit card for debt of $9,663, is that a

 4  business debt or a personal debt?

 5  A          I'm listed as --

 6             MR. SHINBAUM:  This isn't the

 7  70,000 one.  This is a different one.

 8  A          This is also my husband and I'm

 9  just a cosigner.  I think they list it

10  whenever --

11  Q          The $9,663, is that not an

12  obligation that you owe, you just have

13  access to that card?

14  A          Right.  I have access to that

15  card.

16  Q          The next one is --

17  A          And this is my son and I'm also

18  have a use to.

19  Q          Number eight, MBNA America for

20  $3,378, is that the same thing?

21  A          My son and I am also on it.

22  Q          You're on the card but you

23  don't owe the debt?
```

1  A          Yeah.

2  Q          Number nine, MBNA America.  On

3  here it's listed for $65,000, but you

4  amended your bankruptcy recently.  This is

5  a copy of the amendment you filed in your

6  bankruptcy case.  Do you see where you

7  changed that $65,000 debt to a $1 debt.

8                (Exhibit 17

                  was marked for

9                  identification.)

10            MR. SHINBAUM:  I also have a

11  notation on there that as to the total

12  amount of the debt and that there may be

13  liability on it since it was used to pay

14  taxes.

15            MR. HIGHTOWER:  I don't see

16  where it says it was used to pay taxes.

17  I'm looking at the original schedule.  Let

18  me look at what you've got there.  Account

19  in husband's name, used to pay wife's

20  taxes.

21            MR. SHINBAUM:  Yeah.

22  Q          As with the two before, that is

23  not a debt that you owe.  You think you're

1  just on the card.  You had privilege to

2  make charges with the card?

3  A        Yes.

4  Q        But you don't owe that debt?

5  A        Well, I was the one who used it

6  just like mentioned in here that I used it

7  for to pay expenses.

8  Q        But you weren't on that -- you

9  were not obligated on that account like

10  the first -- like the others that we

11  discussed?

12  A        I have to because I was the one

13  who used it.

14  Q        Well, I thought you told me on

15  the last two MBNAs that you also used that

16  account.

17  A        Yeah.  This is the one that I

18  was -- it's noted in here that I used it

19  so I will have to pay it.

20  Q        Let me ask you this:  If you

21  look at this here, we just discussed these

22  two credit cards, this one and this one?

23  A        Right.

```
 1  Q          The MBNA for $9,663 and the
 2  MBNA for $3,378 and you told me that you
 3  had access to those accounts but you did
 4  not owe the debt for those accounts?
 5  A          Yeah.
 6  Q          How are these two different
 7  from the MBNA debt listed for $65,000?
 8  A          Because we used this mostly
 9  kind of like a business account.
10  Q          Were you obligated to pay on
11  the MBNA account listed for 65?
12  A          Yes.
13  Q          Then why did you amend your
14  bankruptcy schedule to show that you don't
15  owe the debt anymore?
16  A          Did I say that?  I don't know.
17  Q          Did you sign this document?
18  A          Yeah.
19  Q          Did you look at it or review it
20  before you signed it?
21  A          No.
22  Q          You just signed it?
23  A          Yeah.
```

```
 1  Q           Do you know why the debt was
 2  changed from 65,000 to $1?
 3  A           I do not know, but that's what
 4  I explained that I used it.
 5  Q           I understand that.  I'm trying
 6  to understand why.
 7  A           I'm just going to repeat it.  I
 8  am obligated because I used it and it's
 9  all in the documents that it's in there
10  that I used it for the business.
11              MR. HIGHTOWER:  Richard, do you
12  know why you guys changed it?
13              MR. SHINBAUM:  Yes.  The
14  trustee asked us to.
15              MR. HIGHTOWER:  On what basis?
16              MR. SHINBAUM:  The trustee
17  asked because the documents we submitted
18  showed the account was the account of
19  Edgar Victoria.  The reason I made the
20  notation of the approximately $75,000 was
21  it was used to pay taxes.  As such, there
22  could be liability to her on this.
23              MR. HIGHTOWER:  I understand
```

1  that.  But will you stipulate that she was

2  not obligated on the account?

3           MR. SHINBAUM:  No.

4           MR. HIGHTOWER:  What was the

5  basis for changing it from 65,000 to $1?

6           MR. SHINBAUM:  The trustee and

7  the bankruptcy administrator asked us to

8  change it.

9           MR. HIGHTOWER:  Well, you're

10 her lawyer.  I assume if he asked you to

11 make other changes that you didn't think

12 were proper you wouldn't have done them.

13           MR. SHINBAUM:  I have made a

14 notation to reflect the nature of the

15 bill.  Legally, in terms of a direct suit

16 against her, they might have a problem

17 proving that she owes the debt.  Since it

18 was used to pay taxes, it may be a

19 nondischargeable debt.  So the notation

20 was made to reflect the way things

21 actually exist today.

22 Q           Creditor ten is listed as

23 Whitney Bank for $5,483?

1   A            It's business.

2   Q            Before we came here today I
3   looked at the debt that was owed on your
4   house which you described as a personal
5   debt.  And then I took all the other debts
6   that you owed and subtracted them and I
7   came up with $7,113.26 left over.  In
8   other words, the debt you owe on your
9   mortgage is larger than all the other
10  debts that you owe for your businesses.
11  Does that sound accurate to you?

12  A            Say it again.

13  Q            Before I came down here today I
14  looked at your mortgage, which is listed
15  as $290,000, and you describe that as a
16  personal debt.  And then I took that
17  number and I subtracted out all the other
18  debts that you had listed and I came up
19  with a little over 7,000, meaning that the
20  debt that you owe on your mortgage, which
21  is a personal debt, is larger than all the
22  business debts that you owe.  Does that
23  sound accurate to you?

1  A         I'm not following.

2  Q         Well, you owe $290,000 on your

3  mortgage.  Do you agree with that?

4  A         I agree.

5  Q         And then you owe $60,000 in

6  taxes.  You had originally listed $83,000

7  worth of unsecured business debts but now

8  that number's been reduced because you

9  changed the $65,000 debt, you reduced that

10  one down to $1 so that you have roughly

11  $24,000 worth of unsecured debts.  And

12  what I'm asking you is if you take the

13  money that you owe for your mortgage and

14  you subtract out all the other debts that

15  you owe, the money that you owe for your

16  mortgage is more than the money that you

17  owe for all your other debts.  Does that

18  sound accurate?

19            MR. SHINBAUM:  I don't believe

20  that's a correct statement as to the

21  amount of the unsecured -- of what would

22  be the unsecured debt.  I believe that

23  you're leaving out roughly $165,000 debt

```
 1  if you recalculate what's owing to the
 2  hospital.  And you're also -- and I
 3  believe the true figure on the home
 4  mortgage came to about 282,000 if you look
 5  at the reaffirmation from what they said
 6  was owing.
 7  Q         If you'd flip to Schedule I for
 8  me.  We talked about this before.  You
 9  list yourself as having gross income of
10  $15,000 a month and your husband as having
11  $20,000 a month; is that correct?
12  A         At that time, yes.
13  Q         Has that changed?
14  A         Yes.
15  Q         How has it changed?
16  A         It's lower.
17  Q         For who?
18  A         Both.
19  Q         What is the current?
20  A         As of today's date?
21  Q         As of today.
22            MR. SHINBAUM:  If you know.
23  A         Well, I mean, both of us are
```

1  not working so I cannot really tell you.

2  Q          You said both of you are not

3  working?

4  A          Well, we are on vacation so I

5  cannot tell you.

6  Q          You're on vacation right now?

7  A          Yeah.

8  Q          If you weren't on vacation --

9  you said your income went down and I

10 assume it's not because you're on

11 vacation.  How much is it if you weren't

12 on vacation?

13 A          Mine I know is less than

14 10,000, but my husband I could not tell

15 you.

16 Q          If you would flip to Schedule

17 J, you brought me a list of your

18 charitable contributions each month; is

19 that right?

20 A          Yes.

21 Q          That's listed at roughly a

22 thousand dollars a month?

23 A          At that time.

```
 1  Q          At that time.  You've got auto

 2  insurance down here listed for $1,200 a

 3  month?

 4  A          Yes.

 5  Q          Is any of the auto insurance

 6  listed for cars that are driven by someone

 7  other than you or your husband?

 8  A          Yes, three of my children's.

 9  Q          Which three children?

10  A          Age 39, age 35 and --

11  Q          You mean 37?  You told me 39,

12  37, 31 and 30 earlier.  Which three is it?

13  A          First three.

14  Q          You pay their auto insurance?

15  A          Yes.

16  Q          What kind of cars do they

17  drive?  You can go by age if you want to

18  just tell me which car for which age.

19  A          One is Nissan, number one.

20  Q          What kind of Nissan?

21  A          I don't know what kind.

22  Q          Is it a sports car or a large

23  car?
```

```
 1  A           It's a regular car.
 2  Q           Did you pay for that?  Did you
 3  or your husband pay for -- is that car
 4  paid for or did you and your husband -- do
 5  you make payments on it for them?
 6  A           My husband.
 7  Q           Makes payments.  How about the
 8  37-year-old?
 9  A           37 is Jetta GTI, year 2000.
10  Q           Who makes payments on that?
11  A           He paid for it, but we are
12  paying for the insurance.
13  Q           It's paid for?
14  A           It's paid for.
15  Q           How about the 31-year-old?
16  A           31 is Mercedes.
17  Q           Is that one paid for?
18  A           No.
19  Q           Who's making payments on it?
20  A           My husband.
21  Q           Do you pay any of the debts at
22  your house?
23  A           No.
```

1   Q        Your husband pays them all?

2   A        Yes.

3   Q        Where does the money come from

4   that he uses to pay the debts?

5   A        From his business.

6   Q        Does any of the money that you

7   earn go to pay debts?

8   A        I pay for the telephone, the

9   power, medical insurance.  That's about

10  it.

11  Q        You make gross 15,000, or when

12  you filed your bankruptcy case you were

13  making $15,000 a month?

14  A        Yes.

15  Q        If all you paid were the things

16  that you just described, where does the

17  rest of the money go to?

18  A        Excuse me.  I don't think we

19  are on the same page.  Did you say when I

20  filed the bankruptcy?

21  Q        When you filed bankruptcy.

22  A        Yeah, that's what I paid.  What

23  was listed is what I pay.  But after that

1  since my income is lower then I have to

2  ask my husband to give me money.

3  Q        When you filed your case you

4  said you were making $15,000 gross and

5  you've just described to me that your

6  husband pays virtually all of your debts,

7  you pay a few of them?

8  A        Yeah.

9  Q        At that time what did you do

10 with the rest of the money that you made?

11 A        It's all business.

12 Q        In other words, I guess what

13 I'm trying to ask you is if your husband

14 just sent a check in each month for your

15 mortgage, did all of the money that was

16 used to pay the money come from his salary

17 or is it that some of your salary would

18 have been used to help pay the mortgage?

19 A        It's all his money.

20 Q        You showed your husband's net

21 take home as $10,000 a month when you

22 filed bankruptcy.

23 A        Yes.

```
 1  Q           You show expenses of a little
 2  over $13,000 when you filed bankruptcy.
 3  A           Yes.
 4  Q           Well, if he only made after
 5  taxes $10,000 a month, how did he pay
 6  $13,000 a month?
 7  A           Say it again.
 8  Q           Well, you said he's only making
 9  $10,000 after taxes per month over here.
10  He makes that after taxes?
11  A           Right.
12  Q           That's what he brings home?
13  A           Yeah, uh-huh.
14  Q           You show expenses of a little
15  over $13,000 each month.  How can he pay
16  that much in expenses if he only makes
17  10,000?
18  A           Well, I told you the power, I
19  pay that.  I pay water.
20  Q           How much is the water?  Which
21  one's the water?
22  A           300.  I pay all of this and
23  then I pay for the medical expenses.
```

```
 1   Q              Which one's that?  A hundred
 2   dollars?
 3   A              Yeah, uh-huh.  I pay a little
 4   bit for the charitable contribution.
 5   Q              How much?
 6   A              Maybe 200.  I pay for the
 7   health insurance and that's it.
 8   Q              Okay.  These amounts here, what
 9   do they add up to roughly?
10   A              About fifteen, sixteen hundred.
11   Q              So if you're only paying $1,500
12   worth of expenses and your husband only
13   makes $10,000 a month, that still leaves
14   something left over, doesn't it?
15   A              Probably -- I would have to sit
16   down to tell you exactly.
17   Q              I guess what I'm trying to get
18   at is don't you guys operate like most
19   households in that you both make an income
20   and yet you both pay expenses.  And it may
21   be that your husband cuts a check for your
22   mortgage or some other debt or car, for
23   instance, but that some of the money you
```

1    make goes towards that?

2    A           I don't know.  I cannot tell

3    you exactly how it works.

4    Q           You just don't know?

5    A           I don't know.

6    Q           Are you not privy to the

7    finances at your household?

8    A           Say it again.

9    Q           Are you not part of the

10   decision making at your household about

11   how debts are paid?

12   A           No.

13   Q           Your husband controls that

14   exclusively?

15   A           Yes.

16   Q           I'm through with asking you

17   questions about your bankruptcy petition

18   here.  But I would like to take a moment

19   to look over the documents that you

20   brought with you today, since this is the

21   first time I have seen them, and then ask

22   you a couple of questions about those.

23               MR. HIGHTOWER:  If you want to

1  take a quick break, Richard.

2              (Short recess.)

3  Q          Dr. Victoria, this is what's

4  marked as Exhibit 1, which you identified

5  as the bank statement from Camden National

6  Bank.  At the top right corner it says

7  page one of three.  And then the next page

8  at the top right corner it says page one

9  of five.  After that it says page two of

10 five.  Do you know where the other pieces

11 are?

12 A          The other pieces are just the

13 explanation of just the copies of the

14 deposit and then copies of the checks.

15 Q          Do you have those?

16 A          I did not bring it with me.  I

17 didn't know you needed.

18 Q          Let me see if I can get you to

19 identify some of these things for me.  We

20 will have to look together unless you have

21 a copy of it with you.  I see for

22 September there were three large deposits,

23 one of $1,300, one of a little over $1,400

1  and another one of $1,487.  What are those

2  for?

3  A          The 1,300 is from my husband.

4  Q          Is what?

5  A          Is from my husband.  He gives

6  me money for my business.  And then the

7  other two big ones are insurance payments.

8  Q          Why is it that your husband

9  gives you money?

10 A          I don't have that much money to

11 spend.

12 Q          You make --

13 A          For business.

14 Q          You make $15,000 gross?

15 A          Yeah, but it's listed what I

16 have paid and it's listed in your -- the

17 one that I gave you what I have paid for.

18 Q          So this is your bank account

19 solely and your husband gives you money to

20 deposit into it.  And then what do you do

21 with the money that your husband gives to

22 you?  You said you help pay business

23 expenses?

```
 1  A           He helps me.
 2  Q           For your business office
 3  expenses?
 4  A           Yes.
 5  Q           Okay.  If you'd look under the
 6  check transaction section.
 7  A           Uh-huh.
 8  Q           There's a check that's dated
 9  September 5th for $2,727.  Do you know
10  what that's for?
11  A           That's the credit card that I
12  told you I have to pay.
13  Q           Payment to your credit card.
14  On September 11 there's a check
15  transaction for $1,300?
16  A           I'm not hundred percent sure
17  but it's also business.
18  Q           Do you know who it would have
19  been written to?
20  A           No.  I'm sorry.  I thought that
21  you would not need that.  I'm not a
22  hundred percent sure but I can say that
23  maybe it was transferred to our weight
```

1  loss.  We have a copy of this.

2  Q          Weight loss business?

3  A          Yes.

4  Q          Transferred to the business?

5  A          Right.  Because this is the

6  corporation.  We just changed the name.

7  Q          Why would you transfer money to

8  the business?

9  A          Because we just don't have any

10  money there.

11  Q          So you're putting your money

12  into the business?

13  A          Right.

14  Q          And what does the business do

15  with the money?  What are you doing with

16  the money once it's transferred into the

17  business?

18  A          Pay for supplies.  We do buy

19  medications, office supplies.

20  Q          Can I see your binder?  Do you

21  mind if I just take a brief look at it?

22  A          No.  Just ask me which one you

23  would be asking.

1  Q          Well, it looks like to me that

2  it's additional information that is

3  related to all this stuff we're going

4  over.  I'd just like to take a look at it.

5  A          I have this August -- I mean,

6  these are all copies that I gave Richard.

7  Q          Can I take a quick look at it?

8  A          Are you supposed to?

9              MR. SHINBAUM:  Let him look at

10 it.

11 Q          Your attorney can tell you

12 whether that's acceptable unless there's

13 any kind of attorney/client privilege

14 stuff in there.

15             MR. HIGHTOWER:  I just want to

16 see it in the form she's got it in because

17 it seems to be a little more organized

18 than the way it's been produced.

19 A          These are just letters from the

20 lawyers, from him.  Letter from him so I

21 have to answer that so I always write a

22 letter.

23             MR. HIGHTOWER:  Do you want to

1  take a look at it, Richard, to see if

2  there's something in there you don't --

3  Q        If it's just the same stuff I'm

4  sure you don't mind if I look at it.

5  A        Yeah.  I just put it in

6  organized.

7  Q        I'd like to see it if you don't

8  mind.

9  A        As I said, like you have a copy

10  of this.  You have a copy.  He said not to

11  give this to you.  August, you have copies

12  of this.

13  Q        May I see it?  This register

14  report, what is that?  Where it says

15  "Register Report" at the top, what is

16  that, this here where it says "Register

17  Report?"  What is that register from.  Is

18  that bank?

19  A        This are the insurance

20  payments.

21  Q        This is a business register?

22  Is this your business?

23  A        Right.

1  Q          From Edgar business, what does

2  that refer to?

3  A          The money I get from him.

4  Q          Thank you.  I appreciate you

5  letting me look at it.

6        If you would refer back to this for

7  me.  Flip to the next page here.  Do you

8  see where it says "tuition?"  What's that

9  for?

10  A          My granddaughter's tuition.

11  Q          That's a payment by you for her

12  tuition?

13  A          Yes.

14  Q          When I asked you earlier what

15  you paid as expenses you didn't mention

16  any tuition payments.

17  A          Say again.

18  Q          We talked earlier today about

19  what you paid for each month and you

20  didn't mention that you paid any tuition

21  fees.

22  A          I thought it is not necessary.

23  Q          Is there any other expenses

```
 1  that you didn't think it was necessary to
 2  tell me about?
 3  A          No.
 4  Q          How much do you pay each month
 5  for her tuition?
 6  A          255.
 7  Q          Is that a monthly bill?
 8  A          Yes.
 9  Q          What's that for?
10  A          It's tuition.
11  Q          What school?
12  A          Ft. Dailey Academy.
13  Q          Is that a private school?  High
14  school?
15             MR. SHINBAUM:  Complete school,
16  K through 12 in Butler County.
17  Q          Can you tell me what the large
18  deposits listed on this page are from?  Do
19  you see anything over a thousand dollars
20  there?
21  A          Yeah.  This is the -- I
22  mentioned it is from my husband, the 1,800
23  and the 1,000.  And then 1,500 -- the rest
```

```
 1  are insurance payments and office

 2  payments.

 3  Q          If you'd flip to the next page

 4  under check transactions, that first one

 5  $1,608, what's that for?

 6  A          These is the money I

 7  transferred to the corporation.

 8  Q          All these are money that you

 9  transferred to the corporation?

10  A          Right.

11  Q          How much money do you transfer

12  to the corporation each month?

13  A          About two or three thousand.

14  Q          What's the name of this

15  corporation?

16  A          It's now Medical and Health

17  Services of Alabama.

18  Q          And that's the weight loss one?

19  A          Weight loss.

20  Q          So that business isn't making

21  enough money on its own, you have to put

22  money into it?

23  A          Yes.
```

1  Q          And do you list that money
2  anywhere as an expense in your bankruptcy
3  petition and schedule?
4  A          Did I list what?
5  Q          Well, I'll show you what we're
6  talking about.  The bankruptcy schedules
7  you've got your expenditures listed.  Is
8  it listed there anywhere?
9  A          No, it's not listed.  It could
10 be from this spouse's debts.
11 Q          Is it listed as spouse's debts
12 or are you just guessing?
13 A          Could be from there.
14 Q          But you're not sure?
15 A          I'm not sure.
16 Q          And it's not listed under here,
17 number ten, as a transfer.  I don't see
18 anything listed there.
19 A          Say it again.
20 Q          Well, it's not listed as an
21 expense, which you just said a minute ago.
22 It's not listed as a transfer other than
23 that.  So it's just not listed at all, the

```
 1  money that you're putting into the
 2  business each month.  You say it's an
 3  expense but it's not listed; is that
 4  correct?
 5  A          I'm not following.
 6  Q          Well, you understand that when
 7  you file bankruptcy you've got to list
 8  your income and you've got to list your
 9  expenses?
10  A          I thought it was listed
11  already.
12  Q          Where was it listed?
13  A          Under spouse's.
14  Q          You think it's --
15  A          Yeah.  I thought it was -- that
16  could be under --
17  Q          So you think it's listed as one
18  of your husband's debts?
19  A          It could be, yeah.
20  Q          So you think that money that
21  you transfer to the business each month is
22  a debt owed by your husband?
23  A          Owed by my husband?
```

```
 1  Q          Well, let me ask you this:
 2  When you say -- when you use the term
 3  "spouse's debts," that refers to your
 4  husband, correct?
 5  A          Okay.  I know what you mean.
 6  Q          How can it be a debt of your
 7  husband's?
 8  A          Yeah.
 9  Q          It's not -- that's not it.
10  A          No.  I probably understood it
11  that it's my, probably.  I'm not going to
12  guess.  I don't know.
13  Q          It's just not in here.  Since
14  it's not listed as a spouse debt and it's
15  not listed anywhere else, then it's just
16  not listed, right?
17  A          I don't know.  I don't know.
18  Q          You would agree that it's not
19  listed on this page, Schedule J?
20  A          I'd have to review it and I
21  can't tell you that right now.
22  Q          I'll let you review it.
23  A          Tell me what is the point of
```

```
 1  what you are telling that to me.
 2  Q          Well, when you file a
 3  bankruptcy case you've got to list all
 4  expenses that you pay and your husband
 5  pays.
 6  A          Right.
 7  Q          I asked you about your expenses
 8  earlier and you didn't tell me that you
 9  were paying any money into the business,
10  and I'm just curious why it is that you
11  didn't list it.
12  A          I don't know why I did not list
13  it, but it is an expense that I pay.
14  Q          And it came out to roughly for
15  this particular month of September you
16  said 1,600, 1,000, 1,000, all these are
17  payments into the business?
18  A          I can tell exactly when I see
19  the check but --
20  Q          Which ones were payments?
21  A          This is business, right?  You
22  understood that it is business, right?
23  Q          You told me that you were
```

1  transferring money into the weight loss

2  business.

3  A          Yes.  Because the Camden and

4  Whitney are both business.

5  Q          Business checking accounts?

6  A          Checking accounts.

7  Q          I understand that.  They are

8  the accounts that you deposit money that

9  you earn into?

10  A          Right.

11  Q          And that you pay your bills or

12  any expenses from?

13  A          Yeah.

14  Q          And you told me that --

15  A          And it could be that I have

16  transferred this money to Whitney too, but

17  as I said, I can look back and then I can

18  fax it to Mr. Richard.  It may not be for

19  the weight loss, it could be from the

20  Whitney Bank.

21  Q          You just told me a minute ago

22  that these went to the weight loss

23  business.

```
 1  A           That's what I said.  I'm just
 2  going to guess because I usually do that
 3  sometimes.  I transferred from Camden
 4  because the money that my husband gave is
 5  already there and I may have to use it for
 6  Whitney.
 7  Q           Why would you transfer from
 8  Camden to Whitney?
 9  A           Because my husband's money is
10  in there.
11  Q           In where?
12  A           In Camden.
13  Q           Your husband also has a bank
14  account with Camden?
15  A           No.
16  Q           I'm just not following you.
17  A           Okay.  See, for example, I was
18  telling you that the money that he gave me
19  for the expenses is 2,200.  So that's what
20  I said, that when I have to put it in
21  Camden Bank and I may need some money to
22  use for Whitney Bank, then I transfer it
23  from there.  But I can tell you which one
```

1  is this one as soon as I get the copy of
2  my checks.
3  Q        You don't have them with you?
4  A        No.
5  Q        What I'm getting at is that you
6  show that you've got that much, $1,890,
7  left over every month after you pay all
8  these expenses.  But you just told me that
9  you transferred two or three thousand
10 dollars each month to the weight loss
11 business.  How can you do that if you've
12 only got that left over after paying these
13 expenses unless these expenses aren't
14 accurate?
15 A        I don't know.  I don't really
16 know.
17 Q        Exhibit Number 2, these are
18 copies of the registration for your two
19 vehicles; is that correct?
20 A        Yes.
21 Q        And they're in your husband's
22 name?
23 A        Yes.

```
 1  Q          How long has it been since
 2  there was a car registered in your name,
 3  if ever?
 4  A          I have not owned a car in a
 5  long time.
 6  Q          How long has it been?
 7  A          Since we moved to Alabama.
 8  Q          How long ago was that?
 9  A          14 years ago.
10  Q          Ever since then you've
11  purchased all your cars under your
12  husband's name?
13  A          Yes.
14  Q          Is there any reason for that?
15  A          I don't drive cars.
16  Q          I think I asked you before, you
17  said you did drive the cars on occasion?
18  A          Yeah, to work.
19  Q          Well, your house, did you guys
20  purchase that, you and your husband
21  purchase that in both of your names?
22  A          Yes.
23  Q          But you didn't purchase any
```

1  cars in your name?

2  A        No.

3  Q        I'm just trying to understand

4  why you wouldn't purchase a car in your

5  name.

6  A        He just wanted it in his name

7  because he pays for it and he borrows it

8  and he pays for it.

9  Q        This is Exhibit 3.  Looks like

10 it's just a 2003 year-end report for your

11 MBNA card.  Did you get one of these --

12 this is a summary for all the credit card

13 charges.  Did you get one for '06?

14 A        No.

15 Q        Do you know why not?

16 A        I didn't realize that you have

17 to call the credit company so they can

18 give you this one.

19 Q        They don't just send this to

20 you in the mail, you have to request it?

21 A        No.  You have to request it.

22 Q        So you requested this one back

23 in '03?

1  A         Right.

2  Q         In Exhibit 4 you've produced

3  some MBNA records for October, September,

4  August, July '06.  From just briefly

5  reviewing them it looks like there weren't

6  any purchases being made on these cards.

7  There were some late fees and you were

8  making payments; is that correct?

9  A         Yes.

10  Q         And these are your husband's?

11  A         Yes.

12  Q         You're familiar with these?

13  A         Yes.

14  Q         But you don't know how much

15  money you pay for mortgage on the condo in

16  Atlanta but you're familiar with the

17  credit card records?

18  A         No.

19  Q         If you're not using your charge

20  card to buy things, how have you been

21  purchasing things?

22  A         My husband.

23  Q         What does he purchase -- well,

1  this is his credit card records, correct?

2  A        He's got a personal credit

3  card.

4  Q        So this is not the one that

5  he's been using to purchase things with?

6  A        No.

7  Q        Do you have copies of the

8  account that he's been using to purchase

9  things with?

10 A        No.

11 Q        Why did you bring this today?

12 This is the same thing I just asked you

13 about.

14 A        You requested it.

15 Q        Actually, I requested an

16 account showing any charges that he had

17 made during this period, and what you told

18 me is that he had not made any charges on

19 this account but he had made charges on

20 another account and you didn't bring those

21 records.

22 A        He made charges.

23 Q        What I asked for was a copy of

1  any credit card statement in your

2  husband's name showing the charges that he

3  made around the time that you filed your

4  bankruptcy case.  And what you brought was

5  a copy of the account that he didn't make

6  any charges on and you left or didn't

7  bring the copy of the account where he did

8  make the charges.

9  A        I do not have a copy.

10 Q        I'm asking you why would you

11 bring this one instead of the one that he

12 made charges on?

13 A        Because this is the one that I

14 am using.

15 Q        You use this one?

16 A        Right.

17 Q        This is the one where you have

18 access to charge on?

19 A        Yes.

20 Q        Exhibit 6, it's called --

21 you've got handwritten at the top

22 "Charitable Contributions."  Does that say

23 "Edgar" and that say "Deloris?"

1    A          Yes.

2    Q          So these are his charitable

3    contributions and these are yours?

4    A          Yes.

5    Q          So during November 2006, he

6    made charitable contributions of $6,390?

7    A          This is for one year.

8    Q          That's a year's worth?

9    A          Right.

10   Q          Okay.  I just see these dates

11   out by the side and they all say

12   November '06.  Is there any reason why

13   they all say November '06?

14   A          We just made a summary.

15   Q          So you say that this is for one

16   year?

17   A          One year.

18   Q          And this down here that says

19   $4,557, that's --

20   A          One year.

21   Q          One year for you?

22   A          Yes.

23   Q          Are these all religious

1   organizations?

2   A          Religious and -- mostly

3   religious, yeah.

4   Q          Mostly religious, almost all

5   religious?

6   A          Yes.

7              MR. HIGHTOWER:  Richard, I

8   asked Tina to come because she was

9   interested in this stuff today.  I don't

10  know if you want -- if she has any

11  questions, if you don't mind, I don't know

12  if she has any or not, but do you mind her

13  asking questions?

14             MR. SHINBAUM:  She has every

15  right to.

16  EXAMINATION BY MS. HAYES:

17  Q          I just would like to ask some

18  follow-up questions for some testimony

19  that you gave at the 341 hearing a couple

20  of weeks ago.  You testified at that time

21  that you were going back and forth to

22  Atlanta to stay in the townhouse every

23  other weekend and that you were paying

1 rent to stay there.  Is that not the case?

2 A          That was a long time ago.  That

3 was not during this time.

4 Q          When's the last time you paid

5 rent?

6 A          I quit in 2000 -- early part

7 of -- hang on a minute.  I did not do any

8 business in 2006.

9 Q          None whatsoever.  So when you

10 go over there every weekend now do you run

11 your clinic on the weekends?

12 A          Not anymore.

13 Q          Is the clinic closed?

14 A          It's closed.

15 Q          I think that's all I have.

16

17          END OF DEPOSITION

18

19

20

21

22

23

```
 1          C E R T I F I C A T E

 2  STATE OF ALABAMA

 3  JEFFERSON COUNTY

 4        I hereby certify that the

 5  proceedings in the herein matter were

 6  taken at the time and place therein

 7  stated; that the proceedings were reported

 8  by me, a professional court reporter and

 9  disinterested person, and were thereafter

10  transcribed under my direction into

11  typewriting; that the foregoing is a full,

12  complete, and true record of said

13  testimony.

14        I further certify that I am not of

15  counsel or attorney for either or any of

16  the parties in the foregoing proceedings

17  and caption named, or in any way

18  interested in the outcome of the cause

19  named in said caption.

20

21
                  _____
22              Karen Hinch, Commissioner

23
```

**A**
Academy 75:12
acceptable 72:12
access 51:13,14
  54:3 88:18
account 18:9,10
  18:13 22:23
  23:11,14 24:5
  25:7 52:18 53:9
  53:16 54:9,11
  55:18,18 56:2
  69:18 82:14
  87:8,16,19,20
  88:5,7
accounts 15:15
  16:6,12 17:23
  18:1 25:6 32:13
  54:3,4 81:5,6,8
accurate 57:11
  57:23 58:18
  83:14
acting 6:3
actual 34:4,6
add 21:7,12 43:8
  66:9
addition 9:8
additional 18:17
  72:2
Administration
  3:20
administrator
  56:7
admitting 12:5
affirmative 7:23
age 61:10,10,17
  61:18
ages 37:21 44:3
ago 9:5 77:21
  81:21 84:8,9
  90:20 91:2
agree 58:3,4
  79:18
AGREED 1:10
  2:2,9,18
agreement 33:21
  35:15 38:20
Alabama 1:2,18
  3:8,16,22 6:2,3

6:5,10 30:4
  76:17 84:7 92:2
allows 7:4
amend 54:13
amended 52:4
amendment 52:5
America 51:2,19
  52:2
amount 30:21
  32:11 33:10,23
  34:5,9 35:20
  36:16 52:12
  58:21
amounts 34:23
  66:8
analysis 18:22
  21:10
analyzed 39:20
answer 7:17 12:3
  12:4 72:21
anymore 54:15
  91:12
apologize 29:19
apparently 25:3
applicable 18:6
appraisal 31:1
appraiser 31:5,23
appreciate 10:4
  74:4
approximately
  1:20 12:6 36:5
  55:20
area 37:10
ascertaining 31:4
asked 8:7 25:1
  32:14 55:14,17
  56:7,10 74:14
  80:7 84:16
  87:12,23 90:8
asking 19:8 29:20
  58:12 67:16
  71:23 88:10
  90:13
asks 41:6
assessed 30:12,18
  31:2
asset 41:12,14,21
assign 2:13

assume 25:10
  30:13 31:8
  56:10 60:10
Atlanta 45:4,21
  46:3 47:22
  48:19 86:16
  90:22
attached 8:5
attorney 3:5,12
  28:22 72:11
  92:15
attorney/client
  72:13
August 10:14
  15:15 16:7 18:2
  19:3,15,23 22:1
  22:10 23:1,12
  23:15 24:7,12
  25:9 72:5 73:11
  86:4
auto 61:1,5,14
automobile 25:14
  26:5
automobiles
  26:11
aware 8:11 27:8
a.m 1:20 6:11

**B**
B 4:9
back 29:4 31:23
  74:6 81:17
  85:22 90:21
bank 8:22 10:15
  10:16 22:23
  33:16,17 40:12
  40:18 42:13
  56:23 68:5,6
  69:18 73:18
  81:20 82:13,21
  82:22
bankruptcy 1:1
  3:19 7:3 14:9
  29:2,7,11,13
  30:6 36:3,18
  41:3,11 42:16
  44:23 52:4,6
  54:14 56:7

63:12,20,21
  64:22 65:2
  67:17 77:2,6
  78:7 80:3 88:4
banks 17:22
  23:16
basically 7:5
basis 12:12 55:15
  56:5
baths 37:7,8
bedrooms 37:7
believe 18:4,21
  25:17 31:5
  34:12 39:14,20
  58:19,22 59:3
belongs 42:8
big 69:7
bill 56:15 75:7
bills 81:11
binder 71:20
Birmingham
  3:16 6:2
bit 29:5 66:4
Blue 21:21
booklets 25:15
borrows 85:7
bottom 35:17
bought 49:13
Brad 6:21
Bradley 3:11
Brandon's 45:19
Brantley 8:23
  9:22,23 33:17
break 68:1
brief 71:21
briefly 86:4
bring 8:6,8,12,19
  22:17 23:6
  68:16 87:11,20
  88:7,11
brings 65:12
brought 13:17
  15:2 22:22 23:2
  23:13 60:17
  67:20 88:4
budget 20:14,17
bunch 22:4
business 12:22

15:5,8,18 18:5
  18:12,14 19:2
  19:22 22:11,12
  28:3,14 39:8,9
  39:10,11,11,15
  39:19 49:9,12
  49:17,22 50:1,6
  50:7,12,13,15
  50:16,20,23
  51:4 54:9 55:10
  57:1,22 58:7
  63:5 64:11 69:6
  69:13,22 70:2
  70:17 71:2,4,8
  71:12,14,17
  73:21,22 74:1
  76:20 78:2,21
  80:9,17,21,22
  81:2,4,5,23
  83:11 91:8
businesses 57:10
Butler 10:15,16
  23:4,11 75:16
buy 24:16 32:7
  32:14 48:7,13
  48:18 71:18
  86:20

**C**
C 3:1 92:1,1
call 85:17
called 7:1,1 88:20
Camden 9:22,22
  23:5 49:8,17
  50:4,11 68:5
  81:3 82:3,8,12
  82:14,21
caption 92:17,19
car 11:11,14,15
  12:18 42:2
  61:18,22,23
  62:1,3 66:22
  84:2,4 85:4
card 13:13,14,17
  13:19 15:6 24:5
  24:12,22 25:2,7
  51:3,13,15,22
  53:1,2 70:11,13

29:5 34:18 55:9
  55:17 67:19
doing 15:13
  39:11,18 71:15
dollars 60:22
  66:2 75:19
  83:10
door 11:15,16
Dr 6:21 10:1 13:9
  14:8 31:22 35:3
  68:3
drive 30:3 61:17
  84:15,17
driven 61:6
due 36:21
duly 6:17

        E
E 3:1,1 4:1,9 92:1
  92:1
earlier 45:17 49:6
  61:12 74:14,18
  80:8
early 91:6
earn 63:7 81:9
earrings 43:16,21
Edgar 55:19 74:1
  88:23
effect 2:5
eight 51:19
either 14:16
  92:15
employment 17:2
entered 33:2
Especially 27:1
estate 33:9
evidence 2:16
exact 31:1 32:15
exactly 66:16
  67:3 80:18
examination 4:4
  6:13,20 7:2,4
  90:16
examined 6:17
example 48:17
  82:17
exclusively 67:14
Excuse 63:18

Exhibit 4:11,12
  4:13,14,15,16
  4:17,18,19,20
  4:21,22,23 5:1,2
  5:3,4 10:18,19
  11:6 13:2,9,18
  14:19 16:14,19
  17:4,13 20:4
  22:6,15 28:19
  29:8 32:20
  33:13,19 35:5
  35:16 36:22
  38:15,17 41:4
  52:8 68:4 83:17
  85:9 86:2 88:20
exist 56:21
expected 37:2
expenditures
  77:7
expense 77:2,21
  78:3 80:13
expenses 18:2
  19:20,22 53:7
  65:1,14,16,23
  66:12,20 69:23
  70:3 74:15,23
  78:9 80:4,7
  81:12 82:19
  83:8,13,13
explained 41:9
  55:4
explanation
  68:13
e-mail 29:1

        F
F 50:3 92:1
fair 32:9
familiar 36:1
  86:12,16
family 47:10
far 45:17
fax 11:1 81:18
February 1:19
  6:11
federal 27:13
fees 74:21 86:7
fifteen 66:10

fifth 50:19
figure 32:16 59:3
file 13:23 27:17
  78:7 80:2
filed 8:2 14:8
  27:18 28:1
  29:13 30:6
  36:17 44:22
  52:5 63:12,20
  63:21 64:3,22
  65:2 88:3
filing 2:18
finances 67:7
find 11:9 32:17
  48:3
fine 10:11 15:14
  20:12
finished 17:16
first 6:17 50:3
  53:10 61:13
  67:21 76:4
five 68:9,10
flip 29:22 36:10
  49:19,20 59:7
  60:16 74:7 76:3
following 6:14
  58:1 78:5 82:16
follows 6:18
follow-up 90:18
footage 37:6
force 2:5
foregoing 6:7
  92:11,16
form 2:11 72:16
forth 90:21
found 48:4
four 37:8,15,20
  42:15 43:15,15
fourth 50:14
Ft 75:12
full 2:5 92:11
furniture 42:23
further 2:1,8,17
  92:14

        G
getting 83:5
Gill 1:17 3:6 6:9

give 7:22 9:15
  44:17 48:17
  64:2 73:11
  85:18
given 38:23 43:18
  44:20
gives 69:5,9,19,21
go 10:4,12 19:8
  22:20 46:16,18
  47:5 48:18
  61:17 63:7,17
  91:10
goes 18:18 19:12
  21:15 67:1
going 28:17 29:5
  31:12 33:18
  48:18,21 55:7
  72:3 79:11 82:2
  90:21
goods 42:17
gotten 45:21
granddaughter
  37:18
granddaughter's
  74:10
Greenville 30:4
  50:22
gross 59:9 63:11
  64:4 69:14
grounds 2:14
GTI 62:9
guess 12:3,12
  64:12 66:17
  79:12 82:2
guessing 12:1
  77:12
guys 55:12 66:18
  84:19

        H
H 4:9
half 37:1
handed 19:17
handwritten
  88:21
hang 91:7
Hayes 3:18 4:6
  31:17 90:16

head 7:18,22
  24:20 46:10
health 66:7 76:16
Healthcare 50:20
hearing 90:19
Heights 30:3
held 25:13
help 7:16 29:14
  64:18 69:22
helps 70:1
High 75:13
Hightower 3:11
  4:5 6:20,22 9:7
  9:10,15 10:11
  10:17 14:2,12
  14:14,17 15:6
  15:10,14,19
  17:11 18:8 20:2
  20:12,23 21:3
  21:11 22:13
  23:20 27:1 28:7
  28:10,13,17
  31:8 32:3,10,18
  33:5 34:10,20
  35:1 38:22
  45:16 52:15
  55:11,15,23
  56:4,9 67:23
  72:15,23 90:7
Hinch 1:15 6:1
  92:22
hold 32:15
home 25:22 27:2
  31:4 33:21 37:5
  45:14 49:5,13
  59:3 64:21
  65:12
homeowners
  26:20 27:4,5,10
hospital 50:22
  59:2
house 30:7,13,16
  30:20 32:1,13
  32:22 37:14
  38:7,11,13
  42:23 48:18
  57:4 62:22
  84:19

22:6,15 28:19
29:8 32:20
33:13,19 35:15
38:15 52:8 68:4
**married** 48:19
**MasterCard** 13:5
**math** 36:20
**matter** 92:5
**MBNA** 21:6,8
51:2,19 52:2
54:1,2,7,11
85:11 86:3
**MBNAs** 53:15
**McPhilips** 1:17
3:6 6:8
**mean** 12:19 59:21
61:11 72:5 79:5
**meaning** 35:23
57:19
**means** 36:23
**med** 47:12
**Medicaid** 21:22
**medical** 63:9
65:23 76:16
**Medicare** 21:21
**medications**
71:19
**mention** 74:15,20
**mentioned** 53:6
75:22
**Mercedes** 11:3,8
11:10 62:16
**met** 6:22
**method** 31:3
**MIDDLE** 1:2
**mind** 10:3 71:21
73:4,8 90:11,12
**mine** 27:20 42:11
60:13
**minute** 77:21
81:21 91:7
**missing** 9:19
**moment** 9:16
67:18
**money** 42:5 58:13
58:15,16 63:3,6
63:17 64:2,10
64:15,16,19

66:23 69:6,9,10
69:19,21 71:7
71:10,11,15,16
74:3 76:6,8,11
76:21,22 77:1
78:1,20 80:9
81:1,8,16 82:4,9
82:18,21 86:15
**Montgomery**
1:18 3:8,22
6:10
**month** 35:6,23
36:5,8,18 38:12
46:7,12 59:10
59:11 60:18,22
61:3 63:13
64:14,21 65:5,6
65:9,15 66:13
74:19 75:4
76:12 78:2,21
80:15 83:7,10
**monthly** 75:7
**months** 23:15
24:7 25:4 35:7
**mortgage** 32:22
33:2,9,10,15,23
34:4,7,11,15
35:4,6,12 36:4
36:18,23 38:8
38:11 45:10
49:5 57:9,14,20
58:3,13,16 59:4
64:15,18 66:22
86:15
**motion** 7:1 8:1
**moved** 84:7
**multiplying** 36:7

**N**

**N** 1:8 3:1 4:1
**name** 6:21 39:12
42:12 52:19
71:6 76:14
83:22 84:2,12
85:1,5,6 88:2
**named** 92:17,19
**names** 19:13
84:21

**National** 49:8,17
50:5,12 68:5
**nature** 56:14
**necessary** 2:9
74:22 75:1
**necklaces** 43:15
43:22
**need** 25:19 45:22
70:21 82:21
**needed** 24:16
25:4 68:17
**needs** 9:2 19:7
**net** 64:20
**new** 35:17
**newspaper** 12:11
**nine** 52:2
**nineteen** 40:13
**Nissan** 61:19,20
**nod** 7:18
**nodding** 24:20
**nondischargea...**
56:19
**North** 3:14
**Notary** 1:15 6:2
**notation** 52:11
55:20 56:14,19
**note** 30:17
**noted** 53:18
**notes** 43:12
**notice** 2:18
**notified** 8:14
**November** 19:3
20:7,15 89:5,12
89:13
**November/Dec...**
20:17
**number** 1:5 7:2
11:5 28:18
33:19 36:6,13
36:22 38:12
40:2 41:4,5
42:15,19 51:2
51:19 52:2
57:17 61:19
77:17 83:17
**number's** 58:8

**O**

**O** 1:8
**oath** 7:5
**objections** 2:10
2:13
**obligated** 53:9
54:10 55:8 56:2
**obligation** 51:12
**occasion** 84:17
**October** 14:10,13
21:9,13 22:2
86:3
**offer** 31:13 32:9
**offered** 2:15
**office** 1:16 16:12
70:2 71:19 76:1
**okay** 7:10 10:21
11:22 66:8 70:5
79:5 82:17
89:10
**old** 11:17,18 38:3
**older** 37:23
**once** 71:16
**ones** 69:7 80:20
**one's** 65:21 66:1
**operate** 66:18
**opinion** 30:14
31:6
**opposed** 12:19
**oral** 6:13
**order** 9:13
**organizations**
90:1
**organized** 72:17
73:6
**original** 33:23
35:5 52:17
**originally** 58:6
**outcome** 92:18
**outside** 27:2
**owe** 49:16 51:12
51:23 52:23
53:4 54:4,15
57:8,10,20,22
58:2,5,13,15,15
58:17
**owed** 31:11 57:3
57:6 78:22,23
**owes** 56:17

**O** 1:8
**owing** 59:1,6
**owned** 41:12,18
84:4
**owns** 10:23 40:6
41:17 45:4

**P**

**P** 1:8 3:1,1
**page** 33:22 35:16
39:22,23 49:19
63:19 68:7,7,8,9
74:7 75:18 76:3
79:19
**pages** 29:22 50:3
**paid** 16:11 36:23
37:2 48:16 62:4
62:11,13,14,17
63:15,22 67:11
69:16,17 74:15
74:19,20 91:4
**part** 19:16 67:9
91:6
**participated** 7:7
**particular** 80:15
**parties** 1:11 2:13
92:16
**patients** 16:13
**pay** 24:15 32:6
36:7 46:7,8,9
48:21 52:13,16
52:19 53:7,19
54:10 55:21
56:18 61:14
62:2,3,21 63:4,7
63:8,23 64:7,16
64:18 65:5,15
65:19,19,22,23
66:3,6,20 69:22
70:12 71:18
75:4 80:4,13
81:11 83:7
86:15
**payable** 35:22
**paying** 35:11
36:17 62:12
66:11 80:9
83:12 90:23
**payment** 25:15

**school** 47:13
  75:11,13,14,15
**second** 9:5 44:5
  49:8 50:8
**section** 8:8 70:6
**secured** 49:4
**see** 9:2 21:6 34:13
  41:5,5,7 52:6,15
  68:18,21 71:20
  72:16 73:1,7,13
  74:8 75:19
  77:17 80:18
  82:17 89:10
**seen** 8:3,9 31:17
  67:21
**self** 17:2
**sell** 31:13
**semi-monthly**
  35:23
**send** 85:19
**sent** 31:5 64:14
**SEP** 16:23
**September** 10:15
  14:9 15:16 16:7
  18:3 19:2,15,23
  22:2 23:1,12,16
  24:8,13 25:10
  29:14 68:22
  70:9,14 80:15
  86:3
**serves** 40:22
**services** 50:17
  76:17
**serving** 42:1,3
**sets** 42:20,21,21
**seven** 37:1 40:13
  51:2
**shake** 7:21
**shakes** 46:10
**shame** 12:4
**Shibaum** 20:19
**Shinbaum** 1:17
  3:4,6 6:8 8:18
  9:2,9,12,18 10:7
  11:21 12:2
  13:22 14:5,10
  14:13,15,21
  15:4,8,12,17,21

16:2 17:9,15
  18:4,19 19:6,11
  20:6,16,20 21:2
  21:5,12 22:3
  23:4,8,18,22
  24:3,9 25:5,11
  25:18 26:2,7,12
  26:19 27:3,15
  27:21 28:5,8,12
  28:15 30:22
  31:12,19 32:5
  32:12 33:7 34:2
  34:12,21 36:11
  38:19 39:14
  45:19 51:6
  52:10,21 55:13
  55:16 56:3,6,13
  58:19 59:22
  72:9 75:15
  90:14
**Short** 68:2
**show** 33:18 54:14
  65:1,14 77:5
  83:6
**showed** 9:5 55:18
  64:20
**showing** 25:13
  27:16,23 87:16
  88:2
**shows** 31:3 33:22
  34:4,4,7 35:5
**side** 89:11
**sign** 42:5,14
  54:17
**signature** 2:2
**signed** 54:20,22
**sit** 66:15
**six** 40:13
**sixteen** 66:10
**small** 3:13 11:13
**smaller** 37:11
  38:6,7,11
**sold** 31:9
**solely** 69:19
**son** 37:17 38:3
  51:17,21
**sons** 44:11
**soon** 83:1

**sorry** 13:15 70:20
**sound** 35:8 57:11
  57:23 58:18
**South** 1:17 3:7
  6:9
**speaks** 34:15
**spend** 69:11
**sports** 11:14,15
  61:22
**spouse** 79:14
**spouse's** 77:10,11
  87:10,17
  78:13 79:3
**square** 37:6
**stack** 10:1,12
  15:1 19:9 21:14
  26:8,13
**State** 1:16 6:3,6
  92:2
**stated** 92:7
**statement** 10:14
  10:16 13:13,14
  13:17,19 21:6
  22:23 23:12,14
  24:6 25:8 58:20
  68:5 88:1
**statements** 8:22
  9:21 14:22
  18:22 23:9 25:3
**States** 1:1 3:19
**stay** 90:22 91:1
**stipulate** 56:1
**STIPULATED**
  1:10 2:1,8,17
**stipulations** 6:7
**stop** 47:16
**Street** 1:18 3:7,14
  3:21 6:9
**stuff** 9:11 48:23
  72:3,14 73:3
  90:9
**submit** 31:1 33:8
**submitted** 10:10
  55:17
**submitting** 20:9
**substantially**
  31:10
**subtract** 58:14
**subtracted** 57:6

57:17
**suit** 56:15
**Suite** 3:15
**summary** 13:4
  14:22 16:8,10
  17:21 23:7
  85:12 89:14
**supplies** 71:18,19
**supposed** 72:8
**sure** 20:18 21:11
  45:3 70:16,22
  73:4 77:14,15
**sworn** 6:17

**T**

**T** 1:8,8 4:9 92:1,1
**take** 7:4,12,19
  21:18 24:4,18
  40:12 58:12
  64:21 67:18
  68:1 71:21 72:4
  72:7 73:1
**taken** 1:15 31:9
  40:11 92:6
**talked** 6:22 43:17
  45:2,17 46:1
  47:8 59:8 74:18
**talking** 31:14
  36:11 77:6
**tax** 27:13,14 28:3
  28:4,10,14
  30:12,18 31:2
  49:20
**taxes** 22:8 49:22
  49:23 52:14,16
  52:20 55:21
  56:18 58:6 65:5
  65:9,10
**telephone** 50:17
  63:8
**tell** 10:13 16:5
  19:10 21:14
  22:22 43:19
  60:1,5,14 61:18
  66:16 67:2
  72:11 75:2,17
  79:21,23 80:8
  80:18 82:23

**telling** 12:22
  16:11 80:1
  82:18
**ten** 35:7 56:22
  77:17
**term** 79:2
**terminating** 17:8
**terms** 56:15
**testified** 6:18
  90:20
**testimony** 90:18
  92:13
**Thank** 74:4
**thereto** 2:16
**thing** 7:5 9:9 10:7
  14:11 18:16
  45:17 51:20
  87:12
**things** 12:17
  22:21 48:22
  56:20 63:15
  68:19 86:20,21
  87:5,9
**think** 12:9 14:15
  15:12 17:1,15
  19:19 20:6,14
  20:23 23:1,2
  24:1,9 30:7
  32:14 38:20
  41:14 42:22
  44:13 46:22
  48:4,19 51:9
  52:23 56:11
  63:18 75:1
  78:14,17,20
  84:16 91:15
**third** 33:22 44:5
  50:11
**thought** 30:20
  31:10 39:18
  46:2 53:14
  70:20 74:22
  78:10,15
**thousand** 60:22
  75:19 76:13
  83:9
**three** 11:18 25:18
  35:16 37:8

**$24,000** 58:11
**$290,000** 57:15
  58:2
**$3,378** 51:20 54:2
**$347,577.39** 34:1
**$373,800** 30:11
  30:17
**$4,000** 36:5
**$4,557** 89:19
**$431,062.70**
  33:12 34:7
**$5,000** 43:4
**$5,483** 56:23
**$6,390** 89:6
**$60,000** 58:5
**$65,000** 52:3,7
  54:7 58:9
**$7,000** 42:18,23
**$7,113.26** 57:7
**$75,000** 55:20
**$83,000** 58:6
**$9,663** 51:3,11
  54:1

**0**
**03** 14:22 85:23
**05** 14:6,16 28:11
  28:12
**06** 14:1,7,9,14,15
  14:16,17,22
  23:1,12,16 24:8
  28:12 85:13
  86:4 89:12,13
**06-31225WRS-7**
  1:6

**1**
**1** 4:11 10:18,19
  14:1 68:4
**1,000** 75:23 80:16
  80:16
**1,300** 69:3
**1,500** 75:23
**1,600** 80:16
**1,800** 75:22
**10** 4:11,20 22:6
**10,000** 60:14
  65:17
**11** 4:12,21 22:14

**12** 4:22 28:18,19
  75:16
**120** 35:7
**13** 4:13,23 29:8
  33:10 41:4
**14** 4:14 5:1 32:19
  32:20 33:19
  35:16 36:22
  84:9
**15** 5:2 33:13 35:5
**15,000** 63:11
**16** 4:15,16 5:3
  38:15,17 40:14
**17** 4:17,18 5:4
  52:8
**176** 35:19 36:21
**18** 37:23
**1800** 3:15
**19922** 40:2
**1998** 33:10

**2**
**2** 4:12 11:5,6
  83:17
**2,200** 82:19
**20** 4:19 12:20
**20th** 3:14
**200** 66:6
**2000** 62:9 91:6
**2002** 46:22,22
**2003** 13:5,7,10,12
  13:16 14:3
  85:10
**2004** 7:1
**2005** 27:14
**2006** 14:3 15:16
  19:23 21:6
  22:10 24:13
  25:10 29:14
  47:17 89:5 91:8
**2007** 1:19 6:11
**22** 4:20,21
**225** 30:3
**25** 29:14
**255** 75:6
**28** 4:22
**282,000** 59:4

**29** 4:23

**3**
**3** 4:13 13:2,9,18
  85:9
**3,000** 44:16
**3,100** 37:6
**3,500** 40:11
**30** 6:5 37:22 38:5
  44:8,9 61:12
**300** 65:22
**31** 37:22 44:8,9
  61:12 62:16
**31-year-old**
  62:15
**32** 5:1
**33** 5:2
**341** 90:19
**35** 61:10
**35203** 3:16
**36104** 3:22
**37** 37:22 61:11,12
  62:9
**37-year-old** 62:8
**38** 5:3
**39** 37:22 61:10,11

**4**
**4** 4:14 14:18,19
  86:2

**5**
**5** 4:15 16:14
**5th** 70:9
**5,257** 35:6
**50** 12:20
**505** 3:14
**52** 5:4
**55,000** 32:15
**566** 1:17 3:7 6:9

**6**
**6** 4:5,16 16:19
  88:20
**65** 54:11
**65,000** 55:2 56:5
**697** 40:13

**7**

**7** 4:17 17:4
**7,000** 57:19
**70,000** 51:7

**8**
**8** 4:18 17:12,13

**9**
**9** 4:19 20:3,4
**9th** 1:19 6:10
**9:00** 1:20 6:11
**90** 4:6 12:6,10,13
**90,000** 11:20

**Property Address:** 375 HIGHLAND AVE NE,
ATLANTA, GA 30312

010964 RE

#BWNDXCT
#66B2132577001020#

EDGAR T VICTORIA
P.O BOX 810
GREENVILLE AL 36037-0810

| Account information as of | 02/16/07 |
|---|---|
| Loan Number | 1007752312 |
| Interest Rate | 12.875% |
| Loan Balance | $39,911.56 |
| Escrow Balance | $ .00 |
| Unapplied Funds | $ .00 |
| Funds Advanced by IMB (1,2) | $ .00 |
| Principal Paid YTD | $30.43 |
| Interest Paid YTD | $1,285.31 |
| Property Taxes Paid YTD | $ .00 |
| Hazard Insurance Paid YTD | $ .00 |
| Primary Phone Number | (334) 383 9151 |
| Secondary Phone Number | (334) 371 5252 |

For statement questions,
please call Customer Service at
1.800.781.7399.

### 04/01/07 Payment Options

| | |
|---|---|
| Principal and/or Interest | $438.58 |
| Escrow | $ .00 |
| Optional Products (2) | $ .00 |
| Other (2) | $ .00 |
| **Payment Amount** | **$438.58** |
| Past Due Payment(s) | $ .00 |
| Total Payment Due | $438.58 |
| Unpaid Late Charges | $ .00 |
| Returned Payment Fees | $ .00 |
| Other Unpaid Charges (2) | $ .00 |
| Funds Advanced by IMB (1,2) | $ .00 |
| **Total Amount Due** | **$438.58** |
| After 04/16/07 please pay: (3) | $460.51 |

### Payment Due:
### 04/01/07

1 Unless otherwise agreed upon, additional funds may be applied to advances prior to being applied to fees/charges.

2 Itemized detail available upon request.

3 Payment calculation includes Late Charge fee.

| Date | Transaction | Total | Principal/Deferred Interest | Interest | Escrow | Fees/Misc. |
|---|---|---|---|---|---|---|
| 02/16/07 | Funds Applied | 438.58 | 10.25 | 428.33 | | |

**TAX SEASON IS JUST AROUND THE CORNER – ARE YOU PREPARED?**
If you already know you're getting a refund, you don't have anything to worry about. But for many of us, tax season means that we'll owe money, and not a small amount either. Know your options. An Indymac Bank Home Equity Line is the perfect solution to cover a variety of expenses including income tax. It's easy to open with no application fees or bank related closing costs. Use only what you need, when you need it, and the interest you pay may be up to 100% tax deductible (You may wish to consult with your financial advisor to see how this loan may benefit you). Call us toll free at 1.877.307.0178 to find out more.

**AS AN INDYMAC CUSTOMER, YOU GET EXTRA SAVINGS.**
For a limited time, we are offering you $500 off our already low closing costs when you originate a new first mortgage through Indymac Bank Home Loan Servicing (offer does not apply to home equity loans, Mod Xpress or Indymac Xpress). To get started, just call us today at 1.866.217.2834.

**ACCESS YOUR 2006 YEAR-END INTEREST STATEMENT ONLINE!**
Did you know that by registering your mortgage loan online, not only can you have convenient, 24/7 access to your mortgage information, but to your 2006 Year-End Interest Statement as well? Read the back of this statement to find out more.



COPY

**Property Address:** 375 HIGHLAND AVE NE,
ATLANTA, GA 30312

010963 RE
#BWNDXCT
#6688672477001020#

EDGAR T VICTORIA
P.O. BOX 810
GREENVILLE  AL  36037-0810

| | |
|---|---|
| Account Information as of | 02/16/07 |
| Loan Number | 1007742768 |
| Interest Rate | 7.125% |
| Loan Balance | $216,000.00 |
| Escrow Balance | $2,841.27 |
| Unapplied Funds | $ .00 |
| Funds Advanced by IMB (1,2) | $ .00 |
| Principal Paid YTD | $ .00 |
| Interest Paid YTD | $2,565.00 |
| Property Taxes Paid YTD | $ .00 |
| Hazard Insurance Paid YTD | $ .00 |
| | |
| Primary Phone Number | (334) 383 9151 |
| Secondary Phone Number | (334) 371 5252 |

For statement questions,
please call Customer Service at
1.800.781.7399.

### 03/01/07 Payment Options

| | Interest Only |
|---|---|
| Principal and/or Interest | $1,282.50 |
| Escrow | $811.23 |
| Optional Products (2) | $ .00 |
| Other (2) | $ .00 |
| **Payment Amount** | **$2,093.73** |
| Past Due Payment(s) | $ .00 |
| Total Payment Due | $2,093.73 |
| Unpaid Late Charges | $ .00 |
| Returned Payment Fees | $ .00 |
| Other Unpaid Charges (2) | $ .00 |
| Funds Advanced by IMB (1,2) | $ .00 |
| **Total Amount Due** | **$2,093.73** |
| After 03/16/07 please pay: (3) | $2,157.86 |

**Payment Due:**
**03/01/07**

1. Unless otherwise agreed upon,
additional funds may be applied
to advances prior to being
applied to fees/charges

2. Itemized detail available upon
request.

3. Payment calculation includes
Late Charge fee.

| Date | Transaction | Total | Principal/Deferred Interest | Interest | Escrow | Fees/Misc. |
|---|---|---|---|---|---|---|
| 02/16/07 | Funds Applied | 2,112.85 | | 1,282.50 | 815.35 | 15.00 |

**TAX SEASON IS JUST AROUND THE CORNER – ARE YOU PREPARED?**
If you already know you're getting a refund, you don't have anything to
worry about. But for many of us, tax season means that we'll owe money,
and not a small amount either. Know your options. An Indymac Bank Home
Equity Line is the perfect solution to cover a variety of expenses
including income tax. It's easy to open with no application fees or bank
related closing costs. Use only what you need, when you need it, and the
interest you pay may be up to 100% tax deductible (You may wish to consult
with your financial advisor to see how this loan may benefit you).
Call us toll free at 1.877.307.0178 to find out more.

**AS AN INDYMAC CUSTOMER, YOU GET EXTRA SAVINGS.**
For a limited time, we are offering you $500 off our already low closing
costs when you originate a new first mortgage through Indymac Bank Home
Loan Servicing (offer does not apply to home equity loans, Mod Xpress or
Indymac Xpress). To get started, just call us today at 1.866.217.2834.

**ACCESS YOUR 2006 YEAR-END INTEREST STATEMENT ONLINE!**
Did you know that by registering your mortgage loan online, not only can
you have convenient, 24/7 access to your mortgage information, but to your
2006 Year-End Interest Statement as well? Read the back of this statement
to find out more.



STATE FARM PAYMENT PLAN

PO Box 830854
Birmingham AL 35283-0854

0372-1675-09        008986  2061-F285    01

VICTORIA, EDGAR T DR
PO BOX 510
LUVERNE AL  36049-0510

lııllıılldılııılıılltldlılııtlıılllıııılltlılıılll

| ACCOUNT NUMBER | 0372-1675-09 |
|---|---|
| Monthly Account | Page  1 |

| DATE DUE | PLEASE PAY THIS AMOUNT |
|---|---|
| MAR 8, 2007 | $2,046.36 |

## ** BILLING SUMMARY **

| | |
|---|---|
| Last Amount Billed | $1,011.28 |
| Last Amount Paid | 0.00 |
| Difference | 1,011.28 |
| Current Installment | 1,021.90 |
| Policy Changes | 10.18 |
| Service Charge | 3.00 |
| Total Amount Due By MAR 8, 2007 | $2,046.36 |

## ➡ READ BEFORE PAYING ◄

**All or part of your last month's bill is past due.
Paying premiums monthly is a service we
provide to help you budget for your insurance.
We will be unable to continue this service if we
do not receive your full payment each month by
the date due.**

Changes completed after 2-19-07 will appear on
the next notice.

To pay the policy changes in full, please
submit Total Amount Due of $2,051.80.

### ** POLICIES ON ACCOUNT **

| | |
|---|---|
| 2003 MERCEDES<br>D31 8477-B08-01G | 85.08 |
| 2006 MERCEDES<br>D31 8479-B08-01I | 136.00 |
| 2000 VOLKSWAGEN<br>004 1761-B01-01D | 101.34 |
| 2001 PORSCHE<br>007 3222-E07-01A | 91.78 |
| 2002 NISSAN<br>011 3524-C01-01E | 106.36 |
| 2002 MERCEDES<br>D31 8527-E21-01B | 88.94 |
| 2014 MERCEDES<br>D31 8458-A25-01B | 124.00 |
| PERSONAL UMBRELLA<br>01-CW-6202-0 | 34.66 |
| HOMEOWNERS<br>11 0 N-8805-2 | 200.00 |
| PERSONAL ARTICLES POLICY<br>11 ES-4619-5 | 22.16 |
| BUSINESS - OFFICE<br>93-BU-2494-7<br>HWY 331 | 31.58 |
| CURRENT INSTALLMENT | $1,021.90 |

*Thanks for letting us serve you..*

Snellgrove Ins Agency Inc
334-335-3431

Prepared Date FEB 19 2007

STATE FARM INSURANCE COMPANIES
STATE FARM PAYMENT PLAN

PO Box 830854
Birmingham AL 35283-0854

008986

| ACCOUNT NUMBER | 0372-1675-09 |
|---|---|
| Monthly Account | Page 2 |

| DATE DUE | PLEASE PAY THIS AMOUNT |
|---|---|
| MAR 8, 2007 | $2,046.36 |

CONTINUED FROM PAGE 1

## ** CURRENT CHANGES **

2002 NISSAN
011 3624-C01-01E         4.74
  Premium changed.
  Difference in premium from the effective
   date of the change to the current due date
   is included in the total amount due
   on this bill only.

2004 MERCEDES
081 3486-A26-01B         5.44
  Change of vehicle rating group.
  This is the second of three billings to
   include the policy change(s).

TOTAL POLICY CHANGES       $10.18

Thanks for letting us serve you...

Shellgrove Ins Agency Inc
334-335-3431

Prepared Date FEB 19 2007

STATEMENT



 BRANTLEY
Bank & Trust Co.

P.O. BOX 25
BRANTLEY, ALABAMA 36009
TELEPHONE (334) 527-3206



DR EDGAR T VICTORIA JR
P O DRAWER 510
LUVERNE, AL 36049

STATEMENT DATE:         08/31/06

165 00-49-00030N-00-0   PAGE      1

BUSINESS NOW                    ACCOUNT NO.    330-6887

| SUMMARY OF ACTIVITY SINCE YOUR LAST STATEMENT | | INTEREST SUMMARY | |
|---|---|---|---|
| BALANCE FORWARD FROM 07/31/06 | 2,128.43 | | |
| 13 DEPOSITS/CREDITS | 26,471.70+ | INTEREST EARNED FROM 08/01/06 | |
| 37 WITHDRAWALS/DEBITS | 31,123.27- | INTEREST EARNED THROUGH 08/31/06 | |
| 10 BANK CHARGES | 85.00- | DAYS IN EARNINGS PERIOD 31 | |
| 1 INTEREST PAID | .08+ | ANNUAL PERCENTAGE YIELD EARNED... 0.78% | |
| ENDING BALANCE AS OF 08/31/06 | 2,608.06- | | |
| | | INTEREST PAID IN 2006..... 8.54 | |

TRANSACTION DETAIL FOR THIS ACCOUNT

| DESCRIPTION | DEBIT | CREDIT | DATE | BALANCE |
|---|---|---|---|---|
| BALANCE FORWARD | | | 7/31 | 2,128.43 |
| Deposit | | 22.00 | 8/01 | 2,150.43 |
| X- 6000655000 PER DR. E | | | 8/01 | |
| NSF Check Charge | 2,998.47 | | 8/01 | 848.04- |
| Daily overdraft charge | 22.00 | | 8/01 | 870.04- |
| EFFECTIVE INTEREST RATE  0.7500% | 1.00 | | 8/01 | 871.04- |
| Deposit | | | 8/01 | |
| 1 CHECK(S) PRESENTED | | 1,800.00 | 8/02 | 928.96 |
| 1 CHECK(S) PRESENTED | 850.00 | | 8/02 | 78.96 |
| Deposit | 18.00 | | 8/03 | 60.96 |
| Deposit | | 1,880.68 | 8/04 | 1,941.64 |
| LOAN PAY 6000254400 | | 996.03 | 8/07 | 2,937.67 |
| 1 CHECK(S) PRESENTED | 2,025.05 | | 8/07 | 912.62 |
| Deposit | 451.88 | | 8/09 | 460.74 |
| EDS EDS TITLE | | 2,541.65 | 8/10 | 3,002.39 |
| 009923940 | | 1,011.00 | 8/10 | 4,013.39 |
| EDS EDS TITLE | | | | |
| 000046490 | | 1,399.50 | 8/10 | 5,412.89 |
| 2 CHECK(S) PRESENTED | 2,650.00 | | 8/10 | 2,762.89 |
| 1 CHECK(S) PRESENTED | 669.80 | | 8/10 | 2,093.09 |
| Deposit | | 4,249.03 | 8/11 | 6,342.12 |
| LOAN PAY 6000323300 | | | 8/14 | |
| 1 CHECK(S) PRESENTED | 2,981.36 | | 8/14 | 3,360.76 |
| DMS / MONY INS. PREM | 424.00 | | 8/14 | 2,936.76 |
| NSF Check Charge | 662.48 | | 8/15 | 2,274.28 |
| 1 CHECK(S) PRESENTED | 22.00 | | 8/15 | 2,252.28 |
| Daily overdraft charge | 1,700.00 | | 8/15 | 552.28 |
| 1 CHECK(S) PRESENTED | 1.00 | | 8/16 | 551.28 |
| Daily overdraft charge | 592.02 | | 8/16 | 40.74- |
| Deposit | 1.00 | | 8/17 | 41.74- |
| 2 CHECK(S) PRESENTED | | 2,166.35 | 8/18 | 2,124.61 |
| Deposit | 1,725.02 | | 8/18 | 399.59 |
| NISSAN AUTO LOAN | | 4,997.96 | 8/21 | 5,397.55 |
| 7 CHECK(S) PRESENTED | 454.19 | | 8/21 | 4,943.36 |
| X / laon 6000254400 | 1,177.55 | | 8/21 | 3,765.81 |
| 3 CHECK(S) PRESENTED | 2,025.05 | | 8/22 | 1,740.76 |
| 3 CHECK(S) PRESENTED | 800.00 | | 8/22 | 940.76 |
| EDS EDS-TITLE | 229.20 | | 8/23 | 711.56 |
| 000046490 | | 406.00 | 8/24 | 1,117.56 |
| Deposit | | | | |
| 3 CHECK(S) PRESENTED | | 2,794.67 | 8/25 | 3,912.23 |
| Deposit | 1,597.92 | | 8/25 | 2,314.31 |
| LOAN PAY 6000655000 | | 2,206.83 | 8/28 | 4,521.14 |
| NSF Check Charge | 2,998.47 | | 8/28 | 1,522.67 |

STATEMENT



# BRANTLEY
## Bank & Trust Co.

P.O. BOX 25
BRANTLEY, ALABAMA 36009
TELEPHONE (334) 527-3206





STATEMENT DATE:        08/31/06

DR EDGAR T VICTORIA JR
P O DRAWER 510
LUVERNE, AL 36049

165-00-49-00030N-00-0   PAGE    2

BUSINESS NOW                          ACCOUNT NO.    330-6887

TRANSACTION DETAIL FOR THIS ACCOUNT

| DESCRIPTION | DEBIT | CREDIT | DATE | BALANCE |
|---|---|---|---|---|
| 2 CHECK(S) PRESENTED | 941.31 | | 8/29 | 559.36 |
| Daily overdraft charge | 1.00 | | 8/30 | 558.36 |
| 1 CHECK(S) PRESENTED | 3,151.50 | | 8/30 | 2,593.14- |
| Miscellaneous Club Fee | 2.00 | | 8/31 | 2,595.14- |
| Interest Credit | | .08 | 8/31 | 2,595.06- |
| Daily overdraft charge | 1.00 | | 8/31 | 2,596.06- |
| Net Service Charge | 12.00 | | 8/31 | 2,608.06- |

CHECKS   (* - GAP IN SEQUENCE)

| NUMBER | AMOUNT | DATE PAID | NUMBER | AMOUNT | DATE PAID | NUMBER | AMOUNT | DATE PAID |
|---|---|---|---|---|---|---|---|---|
| 0 | 2,600.00 | 8/10 | 5028 | 30.00 | 8/22 | 5038 | 166.31 | 8/21 |
| 0 | 1,700.00 | 8/15 | 5029 | 113.92 | 8/21 | 5039 | 20.00 | 8/23 |
| 5017* | 18.00 | 8/03 | 5030 | 235.92 | 8/21 | 5040 | 27.40 | 8/21 |
| 5020* | 850.00 | 8/02 | 5031 | 20.00 | 8/22 | 5041 | 66.25 | 8/21 |
| 5022* | 50.00 | 8/10 | 5032 | 383.75 | 8/21 | 5042 | 790.12 | 8/25 |
| 5023 | 424.00 | 8/14 | 5033 | 614.99 | 8/18 | 5044* | 78.00 | 8/25 |
| 5024 | 451.88 | 8/09 | 5034 | 187.20 | 8/23 | 5045 | 151.63 | 8/29 |
| 5025 | 592.02 | 8/16 | 5035 | 22.00 | 8/23 | 5046 | 3,151.50 | 8/30 |
| 5026 | 669.80 | 8/11 | 5036 | 1,110.03 | 8/18 | 5047 | 789.68 | 8/29 |
| 5027 | 750.00 | 8/22 | 5037 | 184.00 | 8/21 | 5048 | 729.80 | 8/25 |

**STATEMENT**





BRANTLEY
Bank & Trust Co.

P.O. BOX 25
BRANTLEY, ALABAMA 36009
TELEPHONE (334) 527-3206





STATEMENT DATE:          09/29/06

DR EDGAR T VICTORIA JR
P O DRAWER 510
LUVERNE, AL 36049

165-00-49-00023N-00-0   PAGE      1

BUSINESS NOW                    ACCOUNT NO.    330-6887

SUMMARY OF ACTIVITY SINCE YOUR LAST STATEMENT
   BALANCE FORWARD FROM 08/31/06          2,608.06-
10  DEPOSITS/CREDITS..............      24,811.41+
29  WITHDRAWALS/DEBITS............      24,217.53
12  BANK CHARGES..................         152.00-
 1  INTEREST PAID.................            .58+
    ENDING BALANCE AS OF 09/29/06          2,165.60-

INTEREST SUMMARY
INTEREST EARNED FROM...........09/01/06
INTEREST EARNED THROUGH........09/30/06
DAYS IN EARNINGS PERIOD............    30
ANNUAL PERCENTAGE YIELD EARNED... 0.76%

INTEREST PAID IN 2006.....          9.12

### TRANSACTION DETAIL FOR THIS ACCOUNT

| DESCRIPTION | DEBIT | CREDIT | DATE | BALANCE |
|---|---|---|---|---|
| BALANCE FORWARD | | | | |
| Deposit | | 1,403.05 | 8/31 | 2,608.06- |
| NSF Check Charge | | | 9/01 | 1,205.01- |
| Daily overdraft charge | 22.00 | | 9/01 | 1,227.01- |
| EFFECTIVE INTEREST RATE 0.7500% | 1.00 | | 9/01 | 1,228.01- |
| Deposit | | | 9/01 | |
| | | 3,805.30 | 9/05 | 2,577.29 |
| (LOAN PAY)6000254400 | 2,025.05 | | 9/05 | 552.24 |
| NSF Check Charge | 22.00 | | 9/05 | 530.24 |
| 1 CHECK(S) PRESENTED | 50.00 | | 9/05 | 480.24 |
| Daily overdraft charge | 1.00 | | 9/06 | 479.24 |
| 1 CHECK(S) PRESENTED | 850.00 | | 9/06 | 370.76- |
| Daily overdraft charge | 1.00 | | 9/07 | 371.76- |
| Deposit | | 2,675.39 | 9/08 | 2,303.63 |
| 1 CHECK(S) PRESENTED | 640.86 | | 9/08 | 1,662.77 |
| Deposit | | 2,063.00 | 9/11 | 3,725.77 |
| LOAN PAY 6000254400 | 2,981.36 | | 9/11 | 744.41 |
| 1 CHECK(S) PRESENTED | 618.57 | | 9/11 | 124.84 |
| EDS EDS-TITLE | | 414.00 | 9/14 | 538.84 |
| 009923940 | | | | |
| EDS EDS-TITLE | | 2,666.00 | 9/14 | 3,204.84 |
| 000046490 | | | | |
| DMS / MONY INS. PREM | 662.48 | | 9/15 | 2,542.36 |
| loan pay 6000254400 | 2,025.05 | | 9/18 | 517.31 |
| Deposit | | 5,299.94 | 9/19 | 5,817.25 |
| 1 CHECK(S) PRESENTED | 2,000.00 | | 9/20 | 3,817.25 |
| EDS EDS-TITLE | | 755.00 | 9/21 | 4,572.25 |
| 009923940 | | | | |
| EDS EDS-TITLE | | 935.00 | 9/21 | 5,507.25 |
| 000046490 | | | | |
| NISSAN AUTO LOAN | 454.19 | | 9/21 | 5,053.06 |
| 3 CHECK(S) PRESENTED | 2,258.03 | | 9/22 | 2,795.03 |
| Deposit | | 4,794.73 | 9/25 | 7,589.76 |
| LOAN 6000655000 | 2,998.47 | | 9/25 | 4,591.29 |
| 7 CHECK(S) PRESENTED | 2,189.91 | | 9/25 | 2,401.38 |
| 4 CHECK(S) PRESENTED | 22.00 | | 9/26 | 2,379.38 |
| NSF Check Charge | 1,254.81 | | 9/26 | 1,124.57 |
| Daily overdraft charge | 66.00 | | 9/27 | 1,058.57 |
| 1 CHECK(S) PRESENTED | 1.00 | | 9/27 | 1,057.57 |
| Daily overdraft charge | 2,000.00 | | 9/27 | 942.43- |
| 3 CHECK(S) PRESENTED | 1.00 | | 9/28 | 943.43- |
| Miscellaneous Club Fee | 1,207.75 | | 9/28 | 2,151.18- |
| Interest Credit | 2.00 | | 9/29 | 2,153.18- |
| Daily overdraft charge | | .58 | 9/29 | 2,152.60- |
| | 1.00 | | 9/29 | 2,153.60- |







**BRANTLEY Bank & Trust Co.**
P.O. BOX 25
BRANTLEY, ALABAMA 36009
TELEPHONE (334) 527-3206

STATEMENT DATE:    09/29/06

DR EDGAR T VICTORIA JR
P O DRAWER 510
LUVERNE, AL 36049

165-00-49-00023N-00-0  PAGE    2

BUSINESS NOW

ACCOUNT NO.  330-6887

TRANSACTION DETAIL FOR THIS ACCOUNT

| DESCRIPTION | DEBIT | CREDIT | DATE | BALANCE |
|---|---|---|---|---|
| Net Service Charge | 12.00 | | 9/29 | 2,165.60- |

CHECKS  (* - GAP IN SEQUENCE)

| NUMBER | AMOUNT | DATE PAID | NUMBER | AMOUNT | DATE PAID | NUMBER | AMOUNT | DATE PAID |
|---|---|---|---|---|---|---|---|---|
| 0 | 2,000.00 | 9/20 | 5057* | 204.75 | 9/28 | 5065 | 184.00 | 9/26 |
| 5049* | 850.00 | 9/06 | 5058 | 750.00 | 9/28 | 5066 | 195.46 | 9/25 |
| 5050 | 50.00 | 9/05 | 5059 | 279.13 | 9/26 | 5067 | 253.00 | 9/20 |
| 5051 | 640.86 | 9/08 | 5060 | 513.32 | 9/25 | 5068 | 861.40 | 9/22 |
| 5052 | 619.57 | 9/11 | 5061 | 1,099.01 | 9/22 | 5069 | 692.62 | 9/25 |
| 5053 | 20.00 | 9/25 | 5062 | 297.62 | 9/22 | 5070 | 690.78 | 9/26 |
| 5054 | 119.92 | 9/25 | 5063 | 389.52 | 9/25 | 5072* | 2,000.00 | 9/27 |
| 5055 | 259.07 | 9/25 | 5064 | 100.90 | 9/26 | | | |



EDGAR T. VICTORIA, M.D.
GENERAL SURGERY
P. O. DRAWER

5038

DATE 8-9-06

PAY TO THE ORDER OF Wyndham Golf Country Club    $ 166.31

One hundred Sixty-six and 31/100    DOLLARS

917

⑆005138⑆ ⑆062 ⑆ 330688 7⑈    ⑆000001663⑆

---

EDGAR T. VICTORIA, M.D.
GENERAL SURGERY
P. O. DRAWER

5039

DATE 8-9-06

PAY TO THE ORDER OF Chadha & Cox, M.D.'s    $ 20.00

Twenty and 00/100    DOLLARS

Pistol Permit

⑆005139⑆ ⑆062 ⑆ 330688 7⑈    ⑆000002000⑆

---

EDGAR T. VICTORIA, M.D.
GENERAL SURGERY
P. O. DRAWER

5040

DATE 8-9-06

PAY TO THE ORDER OF    $ 27.40

DOLLARS

⑆005140⑆ ⑆062 ⑆ 330688 7⑈    ⑆000002740⑆

EDGAR T. [illegible] M.D.

5064

DATE 09-13-06    91-572/731

[illegible] ORDER OF [illegible]

$ 100.92

DOLLARS

⑂005064⑂ ⼝06-⼝⼝⼝⼝⼝⼝⼝ 3306887⑂    ⼝000000100902⑂

---

EDGAR T. [illegible] M.D.

5065

DATE 09-13-06    91-572/731

[illegible] ORDER OF [illegible]

$ 184.00

DOLLARS

⑂005065⑂ ⼝06⼝⼝⼝⼝⼝⼝⼝ 3306887⑂    ⼝000000184002⑂

---

[illegible]

5066

DATE 9-13-06    91-572/731

[illegible]

$ 195.46

DOLLARS

⑂005066⑂ ⼝06⼝⼝⼝⼝⼝⼝⼝ 3306887⑂    ⼝000000195462⑂

| Account Activity | |
|---|---|
| Statement Closing Date | 09/18/06 |
| Previous Balance | $10,123.89 |
| Payments and Credits | $41.00 |
| Purchases and Advances | $8,140.41 |
| Late Fee | $39.00 |
| Overlimit Charge | $0.00 |
| Other Debit Adjustments | $0.00 |
| Finance Charges | $169.43 |
| New Balance | $18,431.73 |

| Account Summary | |
|---|---|
| Account Number | 5456 3700 7169 0045 |
| Total Credit Line | $25,000.00 |
| Available Credit Line | $6,567.00 |
| Past Due Amount | $253.00 |
| Amount Over Credit Line | $0.00 |
| Minimum Payment Due | $714.00 |
| Days in Billing Cycle | 32 |
| Payment Due Date | 10/13/06 |

*For information about your account, contact our Automated Account Inquiry Line (24 hours/7 days) at: 1-800-854-7642*

If you telephone your inquiry, you do not preserve your rights under Federal law. Inquiries should be sent, in writing, to:
1550 N BROWN RD, STE 150, LAWRENCEVILLE, GA 30043

THIS IS A REMINDER-YOUR ACCOUNT IS ONE PAYMENT
PAST DUE. IF YOUR PAYMENT HAS BEEN MAILED
PLEASE DISREGARD THIS NOTICE.
IMPORTANT NOTICE

FIND ENCLOSED YOUR VISA/MASTERCARD AGREEMENT AND DISCLOSURE
STATEMENT WHICH ALSO CONTAINS OUR PRIVACY POLICY. PLEASE
READ CAREFULLY AS IT SETS FORTH THE TERMS AND CONDITIONS
GOVERNING THE USE OF YOUR MASTERCARD/VISA ACCOUNT.

| Transactions | | | | |
|---|---|---|---|---|
| Trans. Date | Post. Date | Reference Number | Description | Amount |
| **SALES AND DEBITS** | | | | |
| 08/18 | 08/18 | 0541019KN0H4YLPBX | ENTERPRISE RENT-A-CAR MONTGOMERY AL | 609.87 |
| 08/18 | 08/18 | 0541019KPP8AXMTYD | AMOCO OIL 05726401 LUVERNE AL | 11.50 |
| 08/18 | 08/18 | 0546042KPDQD4LQDB | CHEVRON 0045179 GREENVILLE AL | 40.37 |
| 08/18 | 08/18 | 5554655KRDJ1XLXZ7 | PEPPERTREE STEAKS AND MONTGOMERY AL | 252.68 |
| 08/25 | 08/25 | 0544471KXG71SWJBH | KROGER #420 SL9 NEWMAN GA | 69.07 |
| 08/25 | 08/25 | 0546042KYDQD4JE25 | CHEVRON 0045179 GREENVILLE AL | 36.25 |
| 08/26 | 08/26 | 0546042KZDQD4A1WB | CHEVRON 0041305 OPELIKA AL | 52.49 |
| 08/26 | 08/26 | 5554186KZ03T9NYNQ | RENAISSANCE HOTELS F/B ATLANTA GA | 38.00 |
| 08/27 | 08/27 | 5546382L0AFWX87KS | WM SUPERCENTER GREENVILLE AL | 156.47 |
| 08/28 | 08/28 | 0541601L142QE4PSD | WAL-MART #1462 SE2 GREENVILLE AL | 366.13 |

NOTICE: See reverse side for important information.

5106 0003 SKD 1 7 11 060918 D Page 1 of 2 1 1457 0000 PRAD 01AA5106 2991




| EDGAR T VICTORIA | |
|---|---|
| Account Number | 5456 3700 7189 0045 |
| Payment Due Date | 11/10/06 |
| New Balance | $24,100.00 |
| Minimum Payment Due | $1,064.00 |

## Transactions

| Trans. Date | Post Date | Reference Number | Description | Amount |
|---|---|---|---|---|
| **PAYMENTS AND CREDITS** | | | | |
| 09/25 | 09/25 | 8545637LW00N48603 | PAYMENT - THANK YOU | 253.00 - |
| 10/08 | 10/08 | 0548101M942QEGD6N | WAL-MART #1462    SE2 GREENVILLE CREDIT | 32.48 - |
| **MISCELLANEOUS FEES** | | | | |
| 10/17 | 10/17 | | DELINQUENT CHARGE | 39.00 |

**Finance Charges**    Monthly Periodic Rate and Annual Percentage Rate (APR) may vary.

| | Average Daily Balance Used for Computing Finance Charge | Monthly Periodic Rate | FINANCE CHARGE | | | Corresponding Annual Percentage Rate | ANNUAL PERCENTAGE RATE |
|---|---|---|---|---|---|---|---|
| | | | at Periodic Rate | Transaction Fees | Total | | |
| Purchases | $4,434.55 | 1.180% | $52.32 | $0.00 | $52.32 | 14.15% | 14.150% |
| Cash Advances | $16,371.30 | 1.180% | $193.18 | $120.00 | $313.18 | 14.15% | * 22.960% |

**\* Cash advance fees may cause the APR for cash advances to appear overstated.**

If the previous balance is zero, a credit amount, or finance charge only, additional finance charge can be avoided on new
purchases (this does not include cash advances) made during the current billing cycle by paying the new balance by the payment due date.

**Internet Access Now Available For Account Information**
**Go To: www.onlinebankcardcenter.com**

Large




**VISA**

**MasterCard**

EDGAR T VICTORIA
Account Number          5456 3700 7189 0045
Payment Due Date                    10/13/06
New Balance                        $18,431.73
Minimum Payment Due                   $714.00

## Transactions

| Trans. Date | Post. Date | Reference Number | Description | Amount |
|---|---|---|---|---|
| **SALES AND DEBITS** | | | | |
| 09/01 | 09/01 | 0514048L5LM8HPQF7 | MARVIN'S - GREENVILLE GREENVILLE  AL | 15.85 |
| 09/01 | 09/01 | 5548330L5BV1HHZLZ | PEEBLES 5374 GREENVILLE  AL | 205.68 |
| 09/01 | 09/01 | 5548382L5AG2QK00J | WM SUPERCENTER GREENVILLE  AL | 172.09 |
| 09/03 | 09/03 | 0541019L7P8BD9VQE | AMOCO OIL    08175622 AUBURN  AL | 54.00 |
| 09/04 | 09/04 | 2553606L9ODKWMD3P | SUMMIT 16 NEWNAN  GA | 31.20 |
| 09/05 | 09/05 | 0546042L8DQD4DH8V | CHEVRON 0045179 GREENVILLE  AL | 50.05 |
| 09/07 | 09/07 | 5554655LBDJ1XLXJZ | PEPPERTREE STEAKS AND MONTGOMERY  AL | 261.36 |
| 09/09 | 09/09 | 0548680LDB0182G38 | EXXONMOBIL75  04234373 MONTGOME  AL | 48.50 |
| 09/09 | 09/09 | 5554188LD03RD30K8 | DISH NETWORK-ONE TIME   800-333-3474 CO | 95.86 |
| 09/11 | 09/11 | 0541019LFP8BL737D | AMOCO OIL    05726401 LUVERNE  AL | 20.00 |
| 09/15 | 09/15 | 0541019LJP8BR0VXF | AMOCO OIL    08823627 VALLEY  AL | 26.81 |
| 09/15 | 09/15 | 0541019LKP8BR6MDK | AMOCO OIL    09306096 ANDERSON  SC | 25.18 |
| 09/18 | 09/18 | *FINANCE CHARGE* | PURCHASES $32.07 CASH ADVANCE $137.36 | 169.43 |
| **CASH ADVANCES** | | | | |
| 08/22 | 08/22 | F143700KU000LM078 | CONV CK 1004 TO FIRST CITIZENS BANK | 2,500.00 |
| 09/15 | 09/15 | F143700LJ000LM071 | CONV CK 1005 TO FIRST CITIZENS BANK | 3,000.00 |
| **PAYMENTS AND CREDITS** | | | | |
| 08/26 | 08/26 | 5554186KZ09F6YEP7 | THE HOME DEPOT 159 ATLANTA  GA   CREDIT | 41.00 - |
| **MISCELLANEOUS FEES** | | | | |
| 09/18 | 09/18 | | DELINQUENT CHARGE | 39.00 |

---

**Finance Charges**          Monthly Periodic Rate and Annual Percentage Rate (APR) may vary.

| | Average Daily Balance Used for Computing Finance Charge | Monthly Periodic Rate | FINANCE CHARGE | | | Corresponding Annual Percentage Rate | ANNUAL PERCENTAGE RATE |
|---|---|---|---|---|---|---|---|
| | | | at Periodic Rate | Transaction Fees | Total | | |
| Purchases | $2,717.92 | 1.180% | $32.07 | $0.00 | $32.07 | 14.15% | 14.150% |
| Cash Advances | $11,640.70 | 1.180% | $137.36 | $0.00 | $137.36 | 14.15% | * 14.150% |

*Cash advance fees may cause the APR for cash advances to appear overstated.*

If the previous balance is zero, a credit amount, or finance charge only, additional finance charge can be avoided on new
purchases (this does not include cash advances) made during the current billing cycle by paying the new balance by the payment due date.

Internet Access Now Available For Account Information
Go To: www.onlinebankcardcenter.com

| Account Activity | |
| --- | --- |
| Statement Closing Date | 10/17/06 |
| Previous Balance | $18,431.73 |
| Payments and Credits | $285.48 |
| Purchases and Advances | $5,549.25 |
| Late Fee | $39.00 |
| Overlimit Charge | $0.00 |
| Other Debit Adjustments | $0.00 |
| Finance Charges | $365.50 |
| New Balance | $24,100.00 |

| Account Summary | |
| --- | --- |
| Account Number | 5456 3700 7189 0045 |
| Total Credit Line | $25,000.00 |
| Available Credit Line | $900.00 |
| Past Due Amount | $461.00 |
| Amount Over Credit Line | $0.00 |
| Minimum Payment Due | $1,064.00 |
| Days In Billing Cycle | 29 |
| Payment Due Date | 11/10/06 |

*For Information about your account, contact our Automated Account Inquiry Line
(24 hours/7 days) at:1-800-854-7642*

If you telephone your inquiry, you do not preserve your rights under Federal law. Inquiries should be sent, in writing, to:
1550 N BROWN RD, STE 150, LAWRENCEVILLE, GA 30043

THIS IS A REMINDER-YOUR ACCOUNT IS ONE PAYMENT
PAST DUE. IF YOUR PAYMENT HAS BEEN MAILED
PLEASE DISREGARD THIS NOTICE.

| | | | Transactions | |
| --- | --- | --- | --- | --- |
| Trans. Date | Post. Date | Reference Number | Description | Amount |
| **SALES AND DEBITS** | | | | |
| 09/17 | 09/19 | 054101BLMBK7H33SP | BP OIL    47658041 SPARTANBURG SC | 39.58 |
| 09/18 | 09/19 | 0546042LNDQD44NMB | CHEVRON 0209586 LAGRANGE GA | 32.25 |
| 09/20 | 09/20 | 0546042LPDQD452YK | CHEVRON 0045179 GREENVILLE AL | 43.70 |
| 09/26 | 09/26 | 0541601LX42QDZMQA | WAL-MART #1462   SE2 GREENVILLE AL | 303.92 |
| 09/29 | 09/29 | 6548382M1AG0V6P8M | WM SUPERCENTER GREENVILLE AL | 193.85 |
| 09/29 | 09/29 | 8518740M2000Q464Q | ABC 142 GREENVILLE AL | 378.00 |
| 09/30 | 09/30 | 0546042M1DQD4H0VS | CHEVRON 0045179 GREENVILLE AL | 20.00 |
| 09/30 | 09/30 | 5554655M2DJ1XLXGP | PEPPERTREE STEAKS AND MONTGOMERY AL | 283.64 |
| 10/03 | 10/03 | 0546042M5DQD45SWA | CHEVRON 0045179 GREENVILLE AL | 42.15 |
| 10/13 | 10/13 | 0541019MFP8QJZK4T | AMOCO OIL   05726401 LUVERNE AL | 40.15 |
| 10/13 | 10/13 | 8550059MGS86LAV3G | PIONEER ELECTRONICS US 310-9522923 CA | 172.01 |
| 10/17 | 10/17 | *FINANCE CHARGE* | PURCHASES $52.32 CASH ADVANCE $193.18 | 245.50 |
| **CASH ADVANCES** | | | | |
| 10/05 | 10/05 | F143700M6000LM032 | CONV CK 1006 TO DOLORES VICTORIA | 4,000.00 |
| 10/05 | 10/05 | | * FINANCE CHARGE * CASH ADVANCE FEE | 120.00 |

NOTICE: See reverse side for important information.

5106   0001   SKD     1     7  11    061017          D Page 1 of 2      1   1437   0000   PRAD   01AA5106       Z982



5038

EDGAR T. VICTORIA, M.D.
GENERAL SURGERY
P. O. DRAWER
DOVER, AL.

DATE 8-9-06
61-572/621

PAY TO THE ORDER OF   Wyn-lakes Golf Country Club    | $ 166.31

One hundred Sixty Six and 31/100    DOLLARS

BRANTLEY
BANK AND TRUST CO.

OR 917

⑈005138⑈ ⑈06 21597184⑈ 330688 7⑈    ⑈000001663 1⑈

---

5039

EDGAR T. VICTORIA, M.D.
GENERAL SURGERY
P. O. DRAWER
DOVER, AL.

DATE 8-9-06
61-572/621

PAY TO THE ORDER OF   Chacha & Coal Kraufs    | $ 20.00

DOLLARS

BRANTLEY
BANK AND TRUST CO.

OR Pistol Permit

⑈005039⑈ ⑈06 21597184⑈ 330688 7⑈    ⑈000002000⑈

---

5040

EDGAR T. VICTORIA, M.D.
GENERAL SURGERY
P. O. DRAWER
DOVER, AL.

DATE 8-9-06
61-572/621

PAY TO THE ORDER OF   Za 2 Drug    | $ 27.40

DOLLARS

BRANTLEY
BANK AND TRUST CO.

FOR

⑈005040⑈ ⑈06 21597184⑈ 330688 7⑈    ⑈000002740⑈

EDGAR T. [illegible] M.D.

5064

DATE 9-13-06    91-577/701

[illegible] THE ORDER OF [illegible]

$ 100.92

[illegible] DOLLARS

[illegible]

⑆005050⑆ 005-001700: 330688 7⑈    ⑆00000010090⑆

---

EDGAR T. [illegible] M.D.

5065

DATE 9-13-06    91-577/701

[illegible] ORDER OF [illegible]

$ 184.67

[illegible] DOLLARS

[illegible]

⑆005051⑆ 005-00170: 330688 7⑈    ⑆000001846006⑆

---

[illegible]

5066

DATE 9-13-06    91-577/701

[illegible]

$ 195.46

[illegible] DOLLARS

⑆005052⑆ 005-00170: 330688 7⑈    ⑆00000195466⑈