# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

**Deloris V. Victoria**                                          **Case No. 06-31225**
**225 Woodland Heights Dr**
**Greenville, AL 36037**
**SSN: xxx-xx-7367**

   **Debtor,**

_____

### Designation of Contents for Inclusion in Record on Appeal, and Statement of Issues on Appeal

The appellant herein, Deloris Victoria, files this Designation of Contents for Inclusion in the Record on Appeal, and Statement of Issues on Appeal:

The following shall be included in the record on appeal:

1. Voluntary Petition of September 25, 2006.

2. Reaffirmation Agreement of Brantley Bank of October 30, 2006.

3. Reaffirmation Agreement of Butler County Bank of October 30, 2006.

4. Motion for Relidf from Stay of Greenville Hospital of January 30, 2007

5. Amended Schedules of the Debtor of February 5, 2007.

6. Order for Relief From Stay of February 26, 2007.

7. Motion to Dismiss of April 20, 2007, filed by Greenville Hospital.

8. Amended Schedules of the Debtor of May 8, 2007.

9. Debtor's Response to the Motion to Dismiss of May 8, 2007.

10. Debtor's Response to Supplemental Response to the Motion to dismiss of May 9, 2007.

11. Reply to Debtor's Response and Supplemental Response Filed by Bradley R. Hightower on behalf of Greenvill Hospital Corporation d/b/a LV Stabler Memorial Hospital or May 9, 2007.

12. Order on Motion to Dismiss Case Entered On 6/27/2007.

13. That portion of the transcript of the trial setting forth the Findings of Fact and Conclusions

of Law of the Bankruptcy Court. of June 26, 2007.

14.  Debtor's Notice of Appeal.

15.  The Proofs of Claims Filed in the above styled Bankruptcy Action of Whiteny Bank, The Internal Revenue Service and Camden National Bank.


Statement of Issues

1. The issues involved in this appeal is whether The Bankruptcy Court abused its discretion in ruling that the Debtor's bankruptcy petition should be dismissed under Title 11 U.S.C. Section 707(b), when the Court ruled that the Debtor's debts were primarily consumer in nature, when in fact the majority of the debts were non consumer debts.

2.  Did the Court abuse its discretion in dismissing this action.

3.. The Court's Decision is completely unsupported by the facts of the cause of action..

Designation of Attorneys of interest in the action hereby served with the Designation

Honorable Teresa Jacobs
U. S. Bankruptcy Administrator
One Church Street
Montgomery, AL 36104

Daniel G. Hamm, Trustee
The Law Offices of Daniel G. Hamm
560 South McDonough St., Ste A
Montgomery, AL 36104

Bradley R. Hightower
Attorney for Greenville Memorial Hospital
Christian & Small505 North 20th Street
Birmingham, Al 35203

Dated: July 16, 2007

   /s/ Richard D, Shinbaum
Richard D. Shinbaum
Shinbaum, Abell, McLeod & Campbell
PO Box 201
Montgomery, AL 36101
334-269-4440
Email: rshinbaum@samvpc.com

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

IN RE:

    DELORIS V. VICTORIA          Chapter 7 Case No. 06-31225

    Debtor(s)

## AMENDMENT TO CHAPTER 7 PETITION

COMES NOW, Deloris V. Victoria, Debtor in the above referenced bankruptcy and hereby moves this Honorable Court to amend the Chapter 7 petition in reference to this case as follows:

1. Amend **SCHEDULE D, E & F:** to reflect the true amount of debt to Brantley Bank, the Internal Revenue Service, Genezen Healthcare and Greenville Hospital.

WHEREFORE, THESE PREMISES CONSIDERED, the debtor moves this Honorable Court to amend the schedules as stated above.

Respectfully submitted May 8, 2007

/S/ RICHARD D. SHINBAUM
RICHARD D. SHINBAUM
rshinbaum@samvpc.com
VONDA S. MCLEOD
vmcleod@samvpc.com
C. BRANDON SELLERS, III
cbsellers@samvpc.com
Attorneys for the Debtor
SHINBAUM, ABELL, MCLEOD & CAMPBELL
Post Office Box 201
Montgomery, Alabama 36101
(334) 269-4440

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above foregoing Amendment and Schedules on all parties listed below by electronic or postal mail on this May 8, 2007:

Hon. Teresa Jacobs
Bankruptcy Administrator
U.S. Bankruptcy Court
One Church Street
Montgomery, AL 36104

Daniel Gary Hamm
560 S. McDonough St., Ste A
Montgomery, AL 36104

/S/ RICHARD D. SHINBAUM

In re    **Deloris V. Victoria**                                          Case No. ___**06-31225**___
_____
                              Debtor

# SCHEDULE D. CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C§112; Fed.R.Bankr.P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community." If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

☐  Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|---|---|
| | | H | W | J C | | | | | | |
| Account No. | | | | | **Mortgage** | | | | | |
| **Creditor #: 1** **BRANTLEY BANK & TRUST** **P.O. BOX 25** **BRANTLEY, AL 36009** | | | | J | **225 WOODLAND HEIGHTS DR, GREENVILLE AL-- SINGLE FAMILY RESIDENCE** **VALUE LISTED IS TAX ASSESSED VALUE** | | | | | |
| | | | | | Value $              373,800.00 | | | | **285,170.31** | **0.00** |
| Account No. 9481 | | | | | **03-2006** | | | | | |
| **Creditor #: 2** **CAMDEN NATIONAL** **d/b/a Butler County Bank** **3 Water Street** **Camden, AL 36726** | | | | - | **SECURITY AGREEMENT** **COMPUTERS, EKG, TABLES, CHAIRS** | | | | | |
| | | | | | Value $               19,000.00 | | | | **19,029.83** | **29.83** |
| Account No. | | | | | | | | | | |
| | | | | | Value $ | | | | | |
| Account No. | | | | | | | | | | |
| | | | | | Value $ | | | | | |

**0**   continuation sheets attached

|   | Subtotal (Total of this page) | **304,200.14** |
|---|---|---|
|   | Total (Report on Summary of Schedules) | **304,200.14** |

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037                                                                  Best Case Bankruptcy

In re    **Deloris V. Victoria**        Case No.     **06-31225**

                              Debtor

# SCHEDULE E. CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name, mailing address, including zip code, and last four digits of the account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of the petition. Use a separate continuation sheet for each type of priority and label each with the type of priority.

The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C.§112; Fed.R.Bankr.P. 1007(m).

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether husband, wife, both of them or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community". If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Report the total of claims listed on each sheet in the box labeled "Subtotal" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

Report the total of amounts entitled to priority listed on each sheet in the box labeled "Subtotal" on each sheet. Report the total of all amounts entitled to priority listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. If applicable, also report this total on the Means Test form.

☐ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS** (Check the appropriate box(es) below if claims in that category are listed on the attached sheets.)

☐ **Domestic support obligations**
Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐ **Extensions of credit in an involuntary case**
Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(3).

☐ **Wages, salaries, and commissions**
Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $10,000* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, which ever occurred first, to the extent provided in 11 U.S.C. § 507 (a)(4).

☐ **Contributions to employee benefit plans**
Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

☐ **Certain farmers and fishermen**
Claims of certain farmers and fishermen, up to $4,925* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).

☐ **Deposits by individuals**
Claims of individuals up to $2,225* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided. 11 U.S.C. § 507(a)(7).

■ **Taxes and certain other debts owed to governmental units**
Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C § 507(a)(8).

☐ **Commitments to maintain the capital of an insured depository institution**
Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution. 11 U.S.C. § 507(a)(9).

☐ **Claims for death or personal injury while debtor was intoxicated**
Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance. 11 U.S.C. § 507(a)(10).

---

*Amounts are subject to adjustment on April 1, 2007, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

               **1**    continuation sheets attached

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037                                  Best Case Bankruptcy

In re    **Deloris V. Victoria**                                          Case No. ____06-31225____
                                    Debtor

# SCHEDULE E. CREDITORS HOLDING UNSECURED PRIORITY CLAIMS
### (Continuation Sheet)

**Taxes and Certain Other Debts
Owed to Governmental Units**

TYPE OF PRIORITY

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | H W J C | Husband, Wife, Joint, or Community DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM | AMOUNT ENTITLED TO PRIORITY |
|---|---|---|---|---|---|---|---|---|
| Account No. **xx-xxx3639** | | | **940-941 2003-2005** | | | | | |
| **Creditor #: 1**<br>**INTERNAL REVENUE SERVICE**<br>**SPECIAL PROCEDURES FUNCTION**<br>**801 TOM MARTIN DR., ROOM 126**<br>**BIRMINGHAM, AL 35211** | - | | | | | | | |
| | | | | | | | 65,107.26 | 65,107.26 |
| Account No. **xx-xxx7031** | | | **941  1999,2000,2005,2006** | | | | | |
| **Creditor #: 2**<br>**INTERNAL REVENUE SERVICE**<br>**SPECIAL PROCEDURES FUNCTION**<br>**801 TOM MARTIN DR., ROOM 126**<br>**BIRMINGHAM, AL 35211** | - | | | | | | | |
| | | | | | | | 42,096.91 | 42,096.31 |
| Account No. **1040 Tasxes** | | | **2005** | | | | | |
| **Creditor #: 3**<br>**INTERNAL REVENUE SERVICE**<br>**SPECIAL PROCEDURES FUNCTION**<br>**801 TOM MARTIN DR., ROOM 126**<br>**BIRMINGHAM, AL 35211** | - | | | | | | | |
| | | | | | | | 418.65 | 418.65 |
| Account No. | | | **2003 Taxes** | | | | | |
| **Creditor #: 4**<br>**STATE OF ALABAMA**<br>**DEPARTMENT OF REVENUE**<br>**P.O. BOX 320001**<br>**MONTGOMERY, AL 36132** | - | | | | | | | |
| | | | | | | | 1,547.62 | 1,547.62 |
| Account No. | | | | | | | | |
| | | | | | | | | |

Sheet __1__ of __1__ continuation sheets attached to
Schedule of Creditors Holding Unsecured Priority Claims

| | | |
|---|---|---|
| Subtotal<br>(Total of this page) | **109,170.44** | **109,169.84** |
| Total<br>(Report on Summary of Schedules) | **109,170.44** | **109,169.84** |

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

Form B6F
(10/05)

In re  **Deloris V. Victoria**
_____
                    Debtor

Case No. ____**06-31225**____

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C.§112; Fed.R.Bankr.P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community maybe liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

☐  Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H W | J C | | | | | |
| Account No.<br><br>**Creditor #: 1**<br>**CAMDEN NATIONAL**<br>**3 WATER STREET**<br>**Camden, AL 36726** | - | | | **09-2005**<br>**LINE OF CREDIT** | | | | 2,545.00 |
| Account No. **x8652**<br><br>**Creditor #: 2**<br>**CAMDEN NATIONAL**<br>**3 WATER STREET**<br>**Camden, AL 36726** | - | | | **09-2004**<br>**DISPUTED DEBT** | | | X | 1.00 |
| Account No. **x7851**<br><br>**Creditor #: 3**<br>**CAMDEN NATIONAL**<br>**3 WATER STREET**<br>**Camden, AL 36726** | - | | | **06-2004**<br>**LOAN** | | | | 680.00 |
| Account No. **xxxxx2276**<br><br>**Creditor #: 4**<br>**CENTURYTEL**<br>**PO BOX 6001**<br>**Marion, LA 71260-6001** | - | | | **03-2005**<br>**COLLECTION ACCOUNT** | | | | 558.00 |
| **2**   continuation sheets attached | | | | Subtotal<br>(Total of this page) | | | | 3,784.00 |

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037

Form B6F - Cont.
(10/05)

In re    **Deloris V. Victoria**                                    Case No. ___**06-31225**___
                                                Debtor

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H W | J C | | | | | |
| Account No. **Representing: CENTURYTEL** | | | | BANK OF AMERICA PO BOX 41466 Philadelphia, PA 19101 | | | | |
| Account No. **Creditor #: 5 GENEZEN HEALTHCARE PO BOX 571811 Houston, TX 77257** | | - | | 2005 Pending Suit non consumer debt BUTLER COUNTY CV 05-177 Suit involving patient accounts | | | | 17,282.19 |
| Account No. **Representing: GENEZEN HEALTHCARE** | | | | DAVID C. SCHWARTZ, ESQ. PO BOX 11366 Birmingham, AL 35202-1366 | | | | |
| Account No. **Creditor #: 6 GREENVILLE HOSPITAL DBA LV STABLER MEMORIAL 29 STABLER DR Greenville, AL 36037** | | - | | 2005 JUDGEMENT NON CONSUMER DEBT BUTLER COUNTY CV 05-133 SUIT ON CONTRACT INVOLVING TERMINATION OF DOCTOR | | | | 165,140.00 |
| Account No. **Representing: GREENVILLE HOSPITAL** | | | | GREER B. MALLETTE, ESQ 505 20TH ST N., STE 1800 Birmingham, AL 35203-2696 | | | | |

Sheet no. __1__ of __2__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)        **182,422.19**

In re   **Deloris V. Victoria** _____

Debtor

Case No.   **06-31225**

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. | | | 08-1999 | | | | |
| Creditor #: 7 **MBNA AMERICA** **PO BOX 17054** **Wilmington, DE 19884** | X | J | **CREDIT CARD** | | | | 9,663.00 |
| Account No. | | | 10-1995 | | | | |
| Creditor #: 8 **MBNA AMERICA** **PO BOX 17054** **Wilmington, DE 19884** | X | J | **CREDIT CARD** | | | | 3,378.00 |
| Account No. | | | 04-1994 | | | | |
| Creditor #: 9 **MBNA AMERICA** **PO BOX 17054** **Wilmington, DE 19884** | X | J | **Non Consumer business account credit card for primarily used by the Debtor's and Debtor Husband to pay income taxes. Account is in Husbands name. Debtors liability would be contingent, since used to pay taxes.** | | X | | 70,912.00 |
| Account No. | | | 12-1999 | | | | |
| Creditor #: 10 **WHITNEY BANK** **228 ST CHARLES AVE** **New Orleans, LA 70130** | - | | **LINE OF CREDIT** | | | | 5,483.00 |
| Account No. | | | | | | | |

Sheet no. __2__ of __2__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

| | | |
|---|---|---|
| Subtotal (Total of this page) | | 89,436.00 |
| Total (Report on Summary of Schedules) | | 275,642.19 |

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE THE MATTER OF:

Deloris V. Victoria                              CASE NO. 06-31225-WRS

    Debtor,

---

## RESPONSE TO MOTION TO DISMISS

    Comes now the Debtor, by and through attorney, and in response to the motion to dismiss would state as follows:

### Title 11 U.S.C. Section 707(a)

    The Debtor would state that Title 11 U.S.C. Section 707(a) is inapplicable to this case as none of the elements of Title 11 U.S.C. Section 707(a) can be met.

§ 707.  Dismissal of a case or conversion to a case under chapter 11 or 13

(a) The court may dismiss a case under this chapter [11 USCS §§ 701 et seq.] only after notice and a hearing and only for cause, including--
  (1) unreasonable delay by the debtor that is prejudicial to creditors;
  (2) nonpayment of any fees [or] and charges required under chapter 123 of title 28; and
  (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521 [11 USCS § 521], but only on a motion by the United States trustee.

    This is a case filed by a debtor that is severely in debt to both the creditor and the Internal Revenue Service.  The Debtor has surrendered the bulk of her unencumbered assets to the Trustee in Bankruptcy and she has allowed the trustee total inspection of her assets.  The testimony of the Trustee, Daniel Hamm, will be that he has conducted an independent evaluation of the Debtor's assets and he has concluded that the Debtor's values as stated in the petition are fairly accurate and that he has a valid offer from the Debtor's husband to repurchase the assets

and he has received a partial payment of the agreed sum.  The Creditor attacks the Debtor's good

faith in filing the petition and although the Debtor states that she has filed the case in good faith,

good faith is not a basis for denial of the right to file a Chapter 7 case. As held in In re RIS

Investment Group, Inc., 298 B.R. 848, 852(Bankr. S.D. Fla. 2003):

> Chapter 7 makes no mention of a good faith requirement. Further, the relationship
> between debtor and creditor in Chapter 11 and 13 is significantly different than
> their relationship in Chapter 7. Id. Chapter 11 and 13 debtors are allowed to
> continue in possession of their assets and alter their contractual relationships with
> their creditors. Id. Chapter 7, on the other hand, ends the debtor-creditor
> relationship when the debtor metaphorically "throws in the towel." So long as the
> debtor is willing to surrender all of its assets, regardless of whether debtor's
> motive was grounded in good faith, the debtor is entitled to Chapter 7 protection.
> Id. (citing Katie Therin Kimlinger and William P. Wassweiler, The Good Faith
> Fable of 11 U.S.C. § 707(a): How Bankruptcy Courts have Invented a Good Faith
> Filing Requirement for Chapter 7 Debtors, 13 Bankr. Dev. J. 61, 65 (1996).

And In re Farkas, 343 B.R. 336 (Bankr. S.D. Fla. 2006):

> After reviewing the three lines of cases, this Court concluded that if a debtor, by
> way of the filing of a chapter 7 proceeding, was willing to surrender his or her
> non-exempt assets, regardless of the motive for the filing, the debtor nonetheless
> would be entitled to Chapter 7 protection. In re  RIS Inv. Group, Inc., 298
> B.R.848, 852 (Bankr. S.D. Fla. 2003), citing In re Padilla, at 1193. The Court is
> aware that there are numerous cases that have since been published on this issue
> in almost every Circuit. It appears that the Circuits continue to be split on the
> issue of bad faith and whether it constitutes cause to dismiss a chapter 7
> bankruptcy. Compare U.S. v. Pedigo, 329 B.R. 47 (S.D.Ind. 2005) (holding that
> the list contained in 11.U.S.C. § 707(a) is not exhaustive such that bad faith may
> constitute "cause" for dismissal in a chapter 7 bankruptcy) and In re Linehan, 326
> B.R. 474 (Bankr.Mass. 2005) (finding that a debtor's bad faith generally does not
> constitute "cause" for dismissal of a chapter 7 case). This Court continues to find
> the reasoning set forth in RIS Inv. Group, Inc. to be sound:

### Title 11 U.S.C. Section 707(b)

For the purposes of this hearing the Debtor, will file the following documents, the preliminary

proof of claim from the Internal Revenue Service, which the Debtor has been advised will be

received today in the amount of $107,203.87, The tax notices and transcripts from the Internal

Revenue service showing the Debtor' previous schedules showing the debt to the Internal

Revenue Service in the amount of approximately $60,000.00, the Reaffirmation agreement from

Brantley Bank and Trust showing their debt at $19,029.83, the Reaffirmation agreement from

Brantley Bank showing the Home Mortgage to be $285,170.31, the lease from Greenville

Hospital showing the balance on the lease contract at $18,500.00, the Genizen lawsuit , which

when figured with interest to the date of bankruptcy would amount to $ 15,747.08, and the

docket sheet from the Greenville Hospital lawsuit, which when figured with judgment interest

for 48 day would amount to  165,267.53.  The Debtor will testify to the balance of the small

debts to

Camden National Bank and CenturyTel.  The Debtor will introduce the proof of claim of

Whitney Bank, which will show the Debt at $4,715.45.  The testimony will clearly establish that

the Business Debts of the Debtor exceed the Consumer Debts of the Debtor.  The testimony of

the Debtor will be clear that Title 11 U.S.C. 707(b) does not apply to this action.  Further the

testimony will clearly show that the Debtor is not eligible to be a debtor under Chapter 13.

   Title 11 U.S.C. Section 707 (b) states as follows (emphasis supplied):

(b) (1) After notice and a hearing, the court, on its own motion or on a motion by the United
States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss
a case filed by an individual debtor under this chapter ***whose debts are primarily consumer
debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of
this title [11 USCS §§ 1101 et seq. or 1301 et seq.], if it finds that the granting of relief would
be an abuse of the provisions of this chapter [11 USCS §§ 701 et seq.].*** In making a
determination whether to dismiss a case under this section, the court may not take into
consideration whether a debtor has made, or continues to make, charitable contributions (that
meet the definition of "charitable contribution" under section 548(d)(3) [11 USCS § 548(d)(3)])
to any qualified religious or charitable entity or organization (as that term is defined in section
548(d)(4) [11 USCS § 548(d)(4)]).
   (2) (A) (I) In considering under paragraph (1) whether the granting of relief would be an abuse
of the provisions of this chapter [11 USCS §§ 701 et seq.], the court shall presume abuse exists if
the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii),
and (iv), and multiplied by 60 is not less than the lesser of–

(I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $ 6,575, whichever is greater; or

(II) $ 10,950.

(ii) (I) The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. Such expenses shall include reasonably necessary health insurance, disability insurance, and health savings account expenses for the debtor, the spouse of the debtor, or the dependents of the debtor. Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts. In addition, the debtor's monthly expenses shall include the debtor's reasonably necessary expenses incurred to maintain the safety of the debtor and the family of the debtor from family violence as identified under section 309 [320] of the Family Violence Prevention and Services Act [42 USCS § 10421], or other applicable Federal law. The expenses included in the debtor's monthly expenses described in the preceding sentence shall be kept confidential by the court. In addition, if it is demonstrated that it is reasonable and necessary, the debtor's monthly expenses may also include an additional allowance for food and clothing of up to 5 percent of the food and clothing categories as specified by the National Standards issued by the Internal Revenue Service.

(II) In addition, the debtor's monthly expenses may include, if applicable, the continuation of actual expenses paid by the debtor that are reasonable and necessary for care and support of an elderly, chronically ill, or disabled household member or member of the debtor's immediate family (including parents, grandparents, siblings, children, and grandchildren of the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case who is not a dependent) and who is unable to pay for such reasonable and necessary expenses.

(III) In addition, for a debtor eligible for chapter 13 [11 USCS §§ 1301 et seq.], the debtor's monthly expenses may include the actual administrative expenses of administering a chapter 13 [11 USCS §§ 1301 et seq.] plan for the district in which the debtor resides, up to an amount of 10 percent of the projected plan payments, as determined under schedules issued by the Executive Office for United States Trustees.

(IV) In addition, the debtor's monthly expenses may include the actual expenses for each dependent child less than 18 years of age, not to exceed $ 1,650 per year per child, to attend a private or public elementary or secondary school if the debtor provides documentation of such expenses and a detailed explanation of why such expenses are reasonable and necessary, and why such expenses are not already accounted for in the National Standards, Local Standards, or Other Necessary Expenses referred to in subclause (I).

(V) In addition, the debtor's monthly expenses may include an allowance for housing and utilities, in excess of the allowance specified by the Local Standards for housing and utilities issued by the Internal Revenue Service, based on the actual expenses for home energy costs if the debtor provides documentation of such actual expenses and demonstrates that such actual expenses are reasonable and necessary.

(iii) The debtor's average monthly payments on account of secured debts shall be calculated as the sum of--

(I) the total of all amounts scheduled as contractually due to secured creditors in each

month of the 60 months following the date of the petition; and

(II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title [11 USCS §§ 1301 et seq.], to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;

divided by 60.

(iv) The debtor's expenses for payment of all priority claims (including priority child support and alimony claims) shall be calculated as the total amount of debts entitled to priority, divided by 60.

(B) (I) In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

(ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide--

(I) documentation for such expense or adjustment to income; and

(II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.

(iii) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.

(iv) The presumption of abuse may only be rebutted if the additional expenses or adjustments to income referred to in clause (I) cause the product of the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv) of subparagraph (A) when multiplied by 60 to be less than the lesser of--

(I) 25 percent of the debtor's nonpriority unsecured claims, or $ 6,000, whichever is greater; or

(II) $ 10,000.

© As part of the schedule of current income and expenditures required under section 521 [11 USCS § 521], the debtor shall include a statement of the debtor's current monthly income, and the calculations that determine whether a presumption arises under subparagraph (A)(I), that show how each such amount is calculated.

(D) Subparagraphs (A) through © shall not apply, and the court may not dismiss or convert a case based on any form of means testing, if the debtor is a disabled veteran (as defined in section 3741(1) of title 38 [38 USCS § 3741(1)]), and the indebtedness occurred primarily during a period during which he or she was--

(I) on active duty (as defined in section 101(d)(1) of title 10 [10 USCS § 101(d)(1)]); or

(ii) performing a homeland defense activity (as defined in section 901(1) of title 32 [32 USCS § 901(1)]).

(3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter [11 USCS §§ 701 et seq.] in a case in which the presumption in subparagraph (A)(I) of such paragraph does not arise or is rebutted, the court shall consider--

(A) whether the debtor filed the petition in bad faith; or

(B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

(4) (A) The court, on its own initiative or on the motion of a party in interest, in accordance with the procedures described in rule 9011 of the Federal Rules of Bankruptcy Procedure, may order the attorney for the debtor to reimburse the trustee for all reasonable costs in prosecuting a motion filed under section 707(b) [11 USCS § 707(b)], including reasonable attorneys' fees, if--

    (I) a trustee files a motion for dismissal or conversion under this subsection; and

    (ii) the court--

      (I) grants such motion; and

      (II) finds that the action of the attorney for the debtor in filing a case under this chapter [11 USCS §§ 701 et seq.] violated rule 9011 of the Federal Rules of Bankruptcy Procedure.

    (B) If the court finds that the attorney for the debtor violated rule 9011 of the Federal Rules of Bankruptcy Procedure, the court, on its own initiative or on the motion of a party in interest, in accordance with such procedures, may order--

      (I) the assessment of an appropriate civil penalty against the attorney for the debtor; and

      (ii) the payment of such civil penalty to the trustee, the United States trustee (or the bankruptcy administrator, if any).

    © The signature of an attorney on a petition, pleading, or written motion shall constitute a certification that the attorney has--

    (I) performed a reasonable investigation into the circumstances that gave rise to the petition, pleading, or written motion; and

    (ii) determined that the petition, pleading, or written motion--

      (I) is well grounded in fact; and

      (II) is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law and does not constitute an abuse under paragraph (1).

    (D) The signature of an attorney on the petition shall constitute a certification that the attorney has no knowledge after an inquiry that the information in the schedules filed with such petition is incorrect.

(5) (A) Except as provided in subparagraph (B) and subject to paragraph (6), the court, on its own initiative or on the motion of a party in interest, in accordance with the procedures described in rule 9011 of the Federal Rules of Bankruptcy Procedure, may award a debtor all reasonable costs (including reasonable attorneys' fees) in contesting a motion filed by a party in interest (other than a trustee or United States trustee (or bankruptcy administrator, if any)) under this subsection if--

    (I) the court does not grant the motion; and

    (ii) the court finds that--

      (I) the position of the party that filed the motion violated rule 9011 of the Federal Rules of Bankruptcy Procedure; or

      (II) the attorney (if any) who filed the motion did not comply with the requirements of clauses (I) and (ii) of paragraph (4)©, and the motion was made solely for the purpose of coercing a debtor into waiving a right guaranteed to the debtor under this title.

    (B) A small business that has a claim of an aggregate amount less than $ 1,100 shall not be subject to subparagraph (A)(ii)(I).

    © For purposes of this paragraph--

    (I) the term "small business" means an unincorporated business, partnership, corporation, association, or organization that--

      (I) has fewer than 25 full-time employees as determined on the date on which the motion is filed; and

  (II) is engaged in commercial or business activity; and

  (ii) the number of employees of a wholly owned subsidiary of a corporation includes the employees of--

   (I) a parent corporation; and

   (II) any other subsidiary corporation of the parent corporation.

 (6) Only the judge or United States trustee (or bankruptcy administrator, if any) may file a motion under section 707(b) [11 USCS § 707(b)], if the current monthly income of the debtor, or in a joint case, the debtor and the debtor's spouse, as of the date of the order for relief, when multiplied by 12, is equal to or less than--

  (A) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

  (B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or

  © in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $ 575 per month for each individual in excess of 4.

 (7) (A) No judge, United States trustee (or bankruptcy administrator, if any), trustee, or other party in interest may file a motion under paragraph (2) if the current monthly income of the debtor, including a veteran (as that term is defined in section 101 of title 38 [38 USCS § 101]), and the debtor's spouse combined, as of the date of the order for relief when multiplied by 12, is equal to or less than--

  (I) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

  (ii) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or

  (iii) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $ 525 per month for each individual in excess of 4.

  (B) In a case that is not a joint case, current monthly income of the debtor's spouse shall not be considered for purposes of subparagraph (A) if--

  (I) (I) the debtor and the debtor's spouse are separated under applicable nonbankruptcy law; or

  (II) the debtor and the debtor's spouse are living separate and apart, other than for the purpose of evading subparagraph (A); and

  (ii) the debtor files a statement under penalty of perjury--

  (I) specifying that the debtor meets the requirement of subclause (I) or (II) of clause (I); and

  (II) disclosing the aggregate, or best estimate of the aggregate, amount of any cash or money payments received from the debtor's spouse attributed to the debtor's current monthly income.

 The creditor in making its calculations is flawed on two points.  The testimony is

uncontradicted that the Debtor borrowed from MBNA the sum of approximately $65,000 to pay

past due income taxes on her husband's credit card, which although technically not the debt of

the Debtor, for direct liability of the income taxes, this does constitute a non-dischargeable debt

of the Debtor pursuant to Title 11 U.S.C. Section 523a)(14).  Although there is a question as to

whether or not this is a debt of the Debtor, for the purposes of this hearing the admission of this

Debt is unnecessary for the pertinent calculations.  For the purposes of including this debt, the

Debtor would call the attention fo this court to the case of <u>American Express Centurion Bank v.</u>

<u>Gavin (In re Gavin)</u>, 248 B.R. 464 (Bankr. M.D. Fla. 1999):

> Defendant's argument in response to nondischargeability is that the debt is no
> longer owed to the Internal Revenue Service, but is now an unsecured debt owed
> to American Express. However, Section 523(a)(14) directly counters this
> argument. In MBNA America v. Chrusz (In re Chrusz), 196 B.R. 221, 224
> (Bankr. D. N.H. 1996) funds from a credit card check made to "Cash Deposit"
> were used to pay nondischargeable federal income taxes. The Chrusz Court found
> that the funds traceable to payment of nondischargeable Section 523(a)(1) debt
> were nondischargeable under Section 523(a)(14). Id. See also Arthur B.
> Federman, The Bankruptcy Reform Act of 1994, 51 J. Mo. B. 105, 106 (1995)
> description of this .debtors cannot borrow funds with credit card to pay taxes that
> would be nondischargeable). Defendant postulates various scenarios of
> converting nondischargeable debt to dischargeable debt. However, Section
> 523(a)(14) eliminates potential benefits of substituting nondischargeable tax debt
> under Section 523(a)(1) with dischargeable credit card debt.

The Debtor states that her debt structure is as follows:

| | |
|---|---|
| Home Mortgage Per Reaffirmation Agreement<br>(Debtor is joint Debtor on the Note and Mortgage) | $285,170.31 |
| | |
| Business Debt: | |
| Greenville Hospital | $ 165,267.53 |
| Greenville Hospital Lease | $  18,500.00 |
| Camden National Bank Note | $  19,029.83 |
| Internal Revenue Service | $ 109,425.20 |
| Whitney Bank Line of Credit | $   4,715.45 |
| Genizen | $  15,747.08 |
| Camden National Bank | $   3,225.00 |
| CenturyTel | $     558.00 |
| TOTAL | $336,468.09 |
| | |
| MBNA CLAIM FOR PAYMENTS ON TAXES<br>CHARGED ON HUSBANDS CREDIT CARD | $ 65.000.00 |

In support of the proposition that Title 11 U.S.C. Section 707(b) does not apply to this case the Debtor would cite the Court to <u>Beacher v. Pena (In re Beacher)</u>, 358 B.R. 917, (Bankr. S.D. Tex. 2007):

> If the debtor's debts are not primarily consumer debts, § 707(b)(2) does not apply and one never gets to § 707(b)(2)©. Therefore, the statute does not require the filing of Form B22A unless the debtor's debts are primarily consumer debts.
>
> Although the statute defines "consumer debt," it does not define "primarily." In this case, the U.S. Trustee argues that."primarily consumer debt" means that more than 50% of the amount of debt is consumer debt, without regard to whether more than 50% of the number of debts is consumer debt. Counsel for Debtors agreed and the Court so holds.
>
> However, if the debtor's debts are primarily consumer debts, then the information in Form B22A must be filed as part of the information regarding income and expenditures, in effect the statute "deems" § 707(b)(2)© requirements to be part of § 521(a)(1)(B) requirements if the debtor's debts are primarily consumer debts. .Section 521(i)(1) provides for automatic dismissal of a case if the debtor has not timely filed the information required by § 521(a)(1)(B). Once the 45 day period has expired, the Court has no authority to extend the time or to excuse the failure to file, whether the failure was negligence or otherwise.

Therefore, individual chapter 7 debtors have three choices: (1) file Form B22A in all cases, incurring substantial time and expense in some cases to provide data that is not required and that has no use in the bankruptcy case; (2) obtain a judicial determination during the first 45 days of a case that the debts are not primarily consumer debts, or (3) refuse to file Form B22A and run the risk that the court may at some indeterminate future time conclude that debts were primarily consumer debts and that the case has been automatically dismissed by the explicit terms of the statute.

Conclusion

The Creditor lacks the standing to bring the Title 11 U.S.C. Section 707(b) motion to dismiss this action, as this section does not apply to the Debtor and Title 11 U.S.C. 707(a) will not substantiate a dismissal in this action.

__/s/ Richard D. Shinbaum_____
Richard Shinbaum, SHI007
Attorney for the Debtor

Of Counsel:

Shinbaum, Abell, McLeod and Campbell, P.C..
Post Office Box 201
Montgomery, Alabama 36101
(334) 269-4440
(334) 263-4096 Fax

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above styled motion was this day served upon the following, by placing the same in the United States Mail, properly addressed and postage prepaid, and/or electronics transmission this the 8th day of May, 2007.

Bankruptcy Admin.
Bankruptcy Administrator
U. S. Bankruptcy Administrator
One Church Street
Montgomery, AL 36104

Trustee
Daniel G. Hamm
The Law Offices of Daniel G. Hamm
560 South McDonough St., Ste A
Montgomery, AL 36104
334-269-0269

Bradley Richard Hightower
Christian & Small L.L.P.
505 20th St N Ste 1800
Birmingham , AL 35203-2696
brhightower@csattorneys.com

__/s/ Richard D. Shinbaum_____
Richard D. Shinbaum
Attorney for the Debtor

FORM B10 (Official Form 10)(04/07)

| UNITED STATES BANKRUPTCY COURT    MIDDLE    DISTRICT OF    ALABAMA | PROOF OF CLAIM |
|---|---|

| Name of Debtor    DELORIS V. VICTORIA | Case Number    06-31225 |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):

Department of the Treasury - Internal Revenue Service

Name and address where notices should be sent:

Internal Revenue Service
INTERNAL REVENUE SERVICE
801 TOM MARTIN DRIVE
Stop 126
BIRMINGHAM, AL 35211
Telephone number: (205) 912-5294   Creditor #:1363923

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

Last four digits of account or other number by which creditor identifies debtor:    see attachment

Check here ☐ replaces
if this claim ☐ amends   a previously filed claim, dated: _____

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☒ Taxes
- ☐ Other_____

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (fill out below)
Last four digits of your SS #:_____
Unpaid compensation for services performed
from _____ to _____
(date)         (date)

**2. Date debt was incurred:**    see attachment

**3. If court judgment, date obtained:**

**4. Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed.
See reverse side for important explanations.

**Unsecured Nonpriority Claim** $    25,448.44
☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**Unsecured Priority Claim.**
☒ Check this box if you have an unsecured claim, all or part of which is entitled to priority.

Amount entitled to priority $    28,440.66

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

**Secured Claim.**
☒ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☒ Real Estate   ☒ Motor Vehicle   ☒ Other_ see below*

Value of Collateral: $    see below*
*All of debtor(s) right, title and interest to property - 26 U.S.C § 6321.
Amount of arrearage and other charges at time case filed included in secured claim, if any: $    55,536.10

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☒ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**5. Total Amount of Claim at Time Case Filed:** $    25,448.44    55,536.10    28,440.66    109,425.20
(unsecured)    (secured)    (priority)    (Total)

☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**6. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

**7. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. Date-Stamped Copy:** To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

| Date    05/08/2007 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):    /s/ KENYA L BUFFORD, INSOLVENCY SPECIALIST |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# Proof of Claim for Internal Revenue Taxes

Department of the Treasury/Internal Revenue Service

**Form 10**
Attachment

**In the Matter of:** DELORIS V. VICTORIA
225 WOODLAND HEIGHTS DR
GREENVILLE, AL 36037

| Docket Number |
| --- |
| 06-31225 |
| **Type of Bankruptcy Case** |
| Chapter 7A |
| **Date of Petition** |
| 09/25/2006 |

The United States has not identified a right of setoff or counterclaim. However, this determination is based on available data and is not intended to waive any right to setoff against this claim debts owed to this debtor by this or any other federal agency. All rights of setoff are preserved and will be asserted to the extent lawful.

## Secured Claims (Notices of Federal tax lien filed under Internal revenue laws before petition date)

| Taxpayer ID Number | Kind of Tax | Tax Period | Date Tax Assessed | Tax Due | Penalty to Petition Date | Interest to Petition Date | Notice of Tax Lien Filed: Date | Office Location |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 72-1357031 | WT-FICA | 12/31/2000 | 12/08/2003 | $9,879.22 | $3,674.49 | $4,287.41 | | |
| 63-1103639 | FUTA | 12/31/2003 | 12/05/2005 | $3,209.29 | $1,908.26 | $539.68 | 04/27/2006 | Butler County |
| 63-1103639 | WT-FICA | 06/30/2004 | 08/22/2005 | $4,500.61 | $3,648.29 | $850.70 | | Right to setoff |
| 63-1103639 | WT-FICA | 09/30/2004 | 08/22/2005 | $4,227.70 | $2,494.78 | $549.33 | 10/28/2005 | Butler County |
| 63-1103639 | WT-FICA | 12/31/2004 | 08/22/2005 | $2,185.67 | $893.70 | $253.12 | 10/28/2005 | Butler County |
| 63-1103639 | FUTA | 12/31/2004 | 12/05/2005 | $2,170.00 | $769.02 | $251.31 | 04/27/2006 | Butler County |
| 63-1103639 | WT-FICA | 03/30/2005 | 12/05/2005 | $4,047.01 | $1,999.04 | $410.30 | | Right to setoff |
| 63-1103639 | WT-FICA | 06/30/2005 | 12/12/2005 | $1,732.41 | $907.33 | $147.43 | 04/27/2006 | Butler County |
| | | | | $31,951.91 | $16,294.91 | $7,289.28 | | |

**Total Amount of Secured Claims:** $55,536.10

## Unsecured Priority Claims under section 507(a)(8) of the Bankruptcy Code

| Taxpayer ID Number | Kind of Tax | Tax Period | Date Tax Assessed | Tax Due | Interest to Petition Date |
| --- | --- | --- | --- | --- | --- |
| 72-1357031 | WT-FICA | 09/30/1997 | ESTIMATED LIABILITY * | $250.00 | $0.00 |
| 63-1103639 | WT-FICA | 06/30/1999 | 1 UNASSESSED-NO RETURN | $1,454.14 | $860.28 |
| 72-1357031 | MISC. PEN. | 12/31/1999 | 10/28/2002 | $0.00 | $186.24 |
| 72-1357031 | WT-FICA | 06/30/2001 | 1 UNASSESSED-NO RETURN | $1,463.00 | $0.00 |
| 72-1357031 | WT-FICA | 09/30/2001 | 1 UNASSESSED-NO RETURN | $1,463.00 | $0.00 |
| 72-1357031 | WT-FICA | 12/31/2001 | 1 UNASSESSED-NO RETURN | $1,463.00 | $0.00 |
| 72-1357031 | FUTA | 12/31/2001 | 1 UNASSESSED-NO RETURN | $2,500.00 | $0.00 |
| 72-1357031 | FUTA | 12/31/2002 | 1 UNASSESSED-NO RETURN | $2,500.00 | $0.00 |
| 72-1357031 | WT-FICA | 06/30/2003 | 1 UNASSESSED-NO RETURN | $1,463.00 | $0.00 |
| 63-1103639 | MISC. PEN. | 12/31/2003 | 10/09/2006 | $0.00 | $0.00 |
| 72-1357031 | FUTA | 12/31/2004 | 1 UNASSESSED-NO RETURN | $2,500.00 | $0.00 |
| XXX-XX-7367 | INCOME | 12/31/2005 | 1 UNASSESSED-NO RETURN | $5,000.00 | $0.00 |

(Continued on Page 2)

1 UNASSESSED TAX LIABILITIES(S) HAVE BEEN LISTED ON THIS CLAIM BECAUSE OUR RECORDS SHOW NO RETURN(S) FILED. WHEN THE DEBTOR(S) FILES THE RETURN OR PROVIDES OTHER INFORMATION AS REQUIRED BY LAW, THE CLAIM WILL BE AMENDED.

# Proof of Claim for
# Internal Revenue Taxes

Department of the Treasury/Internal Revenue Service



**Form 10**
Attachment

**In the Matter of:**    DELORIS V. VICTORIA
225 WOODLAND HEIGHTS DR
GREENVILLE, AL 36037

| Docket Number |
|---|
| 06-31225 |
| **Type of Bankruptcy Case** |
| Chapter 7A |
| **Date of Petition** |
| 09/25/2006 |

---

**Unsecured Priority Claims** (Continued from Page 1)

| Taxpayer ID Number | Kind of Tax | Tax Period | Date Tax Assessed | Tax Due | Interest to Petition Date |
|---|---|---|---|---|---|
| 72-1357031 | WT-FICA | 06/30/2006 | 1 UNASSESSED-NO RETURN | $2,419.00 | $0.00 |
| 72-1357031 | WT-FICA | 09/30/2006 | 1 UNASSESSED-NO RETURN | $2,419.00 | $0.00 |
| | | | | $27,394.14 | $1,046.52 |

**Total Amount of Unsecured Priority Claims:**    $28,440.66

---

**Unsecured General Claims**

Penalty to date of petition on unsecured priority claims (including interest thereon) . . . . . . . . . $25,448.44

**Total Amount of Unsecured General Claims:**    $25,448.44

1 UNASSESSED TAX LIABILITIES(S) HAVE BEEN LISTED ON THIS CLAIM BECAUSE OUR RECORDS SHOW NO RETURN(S) FILED. WHEN THE DEBTOR(S) FILES THE RETURN OR PROVIDES OTHER INFORMATION AS REQUIRED BY LAW THE CLAIM WILL BE AMENDED.

1872                                                          COURT RECORDING DATA
--------------------------------------------+-------------------------------------------------------
       INTERNAL REVENUE SERVICE            | Lien Recorded    : 10/28/2005 - 11:01AM
  FACSIMILE FEDERAL TAX LIEN DOCUMENT      | Recording Number: 49169
                                           | UCC Number       :
                                           | Liber            : 0029
  BANKRUPTCY DOCKET: 06-31225@ALM          | Page             : 190
--------------------------------------------+-------------------------------------------------------
Area: SMALL BUSINESS/SELF EMPLOYED #5      | IRS Serial Number: 254682005
Lien Unit Phone: (800) 913-6050            |
--------------------------------------------+-------------------------------------------------------
                    This Lien Has Been Filed in Accordance with
                    Internal Revenue Regulation 301.6323(f)-1.

-------------------------------------------------------------------------------------------------
Name of Taxpayer :
  DOLORES V VICTORIA


-------------------------------------------------------------------------------------------------
Residence :
  PO BOX 810
  GREENVILLE, AL 36037-0810
-------------------------------------------------------------------------------------------------
With respect to each assessment below, unless notice of lien
is refiled by the date in column(e), this notice shall constitute
the certificate of release of lien as defined in IRC 6325(a).

| Form (a) | Period (b) | ID Number (c) | Assessed (d) | Refile Deadline (e) | Unpaid Balance (f) |
|------|------------|------------|------------|----------------|----------------|
| 941  | 03/31/2004 | 63-1103639 | 08/22/2005 | 09/21/2015     | $5,764.82      |
| 941  | 06/30/2004 | 63-1103639 | 08/22/2005 | 09/21/2015     | $9,048.97      |
| 941  | 09/30/2004 | 63-1103639 | 08/22/2005 | 09/21/2015     | $6,259.20      |
| 941  | 12/31/2004 | 63-1103639 | 08/22/2005 | 09/21/2015     | $2,840.33      |

-------------------------------------------------------------------------------------------------
Filed at:    Judge of Probate
             Butler County                                   Total  |   $23,913.32
             Greenville, AL 36037
-------------------------------------------------------------------------------------------------
This notice was prepared and executed at DALLAS, TX
on this, the 19th day of October, 2005.
-------------------------------------------------------------------------------------------------
Authorizing Official:              | Title:
   L. F. SANKEY                    | REVENUE OFFICER              28-02-2738
-------------------------------------------------------------------------------------------------

| INTERNAL REVENUE SERVICE<br>FACSIMILE FEDERAL TAX LIEN DOCUMENT | Lien Recorded : 04/27/2006 - 12:22PM<br>Recording Number:<br>UCC Number : |
|---|---|
| BANKRUPTCY DOCKET: 06-31225@ALM | Liber : 29<br>Page : 511 |

| Area: SMALL BUSINESS/SELF EMPLOYED #5<br>Lien Unit Phone: (800) 913-6050 | IRS Serial Number: 285508506 |
|---|---|

This Lien Has Been Filed in Accordance with
Internal Revenue Regulation 301.6323(f)-1.

Name of Taxpayer :
  DOLORES V VICTORIA

Residence :
  PO BOX 810
  GREENVILLE, AL 36037-0810

With respect to each assessment below, unless notice of lien
is refiled by the date in column(e), this notice shall constitute
the certificate of release of lien as defined in IRC 6325(a).

| Form<br>(a) | Period<br>(b) | ID Number<br>(c) | Assessed<br>(d) | Refile Deadline<br>(e) | Unpaid Balance<br>(f) |
|---|---|---|---|---|---|
| 940 | 12/31/2003 | 63-1103639 | 12/05/2005 | 01/04/2016 | $5,180.87 |
| 940 | 12/31/2004 | 63-1103639 | 12/05/2005 | 01/04/2016 | $2,915.17 |
| 941 | 03/31/2005 | 63-1103639 | 12/05/2005 | 01/04/2016 | $5,917.53 |
| 941 | 06/30/2005 | 63-1103639 | 12/12/2005 | 01/11/2016 | $2,558.85 |

| Filed at: | Judge of Probate<br>Butler County<br>Greenville, AL 36037 | Total | $16,573.42 |
|---|---|---|---|

This notice was prepared and executed at DALLAS, TX
on this, the 19th day of April, 2006.

| Authorizing Official:<br>  L. F. SANKEY | Title:<br>REVENUE OFFICER | 25-02-2738 |
|---|---|---|



STATE OF ALABAMA

--VS--

VICTORIA DOLORES V MD
PO BOX 810
GREENVILLE AL   36037-0810



**STATE OF ALABAMA**
# DEPARTMENT OF REVENUE
### MONTGOMERY, AL 36132

## NOTICE OF
# FINAL ASSESSMENT

TYPE OF TAX: WITHHOLDING
TAXPAYER IDENTIFICATION #: 631103639
ASSESSMENT #: 0001115044
TAX PERIOD: YEAR 2003

ACCT #:     0000294878
SECTION:    7480
FORM:       W-2

nder provisions of the Code of Alabama 1975, as amended, the Department of Revenue hereby enters final assessment of
e tax liability described:

```
ADDITIONAL TAX DUE. . . . . . . . . . . . . .$ 1,158.45
PENALTY . . . . . . . . . . . . . . . . . . .$   231.66
INTEREST. . . . . . . . . . . . . . . . . . .$   157.51
RETURNED CHECK SERVICE CHARGE . . . . . . . .$      .00
BALANCE NOW DUE . . . . . . . . . . . . . . .$ 1,547.62
```

u have the right to appeal this assessment to either the Administrative Law Division of the Revenue Department or
cuit Court. The appeal must be made within thirty days of the final assessment date and pursuant to the provisions of
t 92-186. See the reverse side for an additional explanation of your appeal rights.

Entered: ___JUNE 15, 2006___

STATE OF ALABAMA, DEPARTMENT OF REVENUE

By: _Cynthia Underwood_
Assistant Commissioner of Revenue

EP THIS PART FOR YOUR RECORDS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TURN THIS PART WITH PAYMENT

TYPE OF TAX: IW
TAX PERIOD ENDING: 12-31-2003
FORM: A-3
SECTION: 7480

ACCT #: 0000294878
TIN: 0631103639
ASSESSMENT #: 0001115044
ENTERED: 06-15-2006

```
TAX, PENALTY, INTEREST. . . . . . . . . . . . . . . .$ 1,547.62
RETURNED CHECK SERVICE CHARGE . . . . . . . . . . . .$      .00

PAY THIS AMOUNT . . . . . . . . . . . . . . . . . . .$ 1,547.62
```

VICTORIA DOLORES V MD
PO BOX 810
GREENVILLE AL   36037-0810

MAIL TO: ALABAMA DEPARTMENT OF REVENUE
         WITHHOLDING TAX ASSESSMENT SECTION
         PO BOX 327480
         MONTGOMERY AL   36132-7480

PHONE: (334) 242-1300   FAX: (334) 242-0112



# Internal Revenue Service
DEPARTMENT OF THE TREASURY ——— e-services ——————————————

| This Product Contains Sensitive Taxpayer Data |
|---|

## Account Transcript

Request Date: 10-16-2006
Response Date: 10-16-2006
IRS Employee Number: 56LDB
Tracking Number: 100009775164

FORM NUMBER: 1040              TAX PERIOD: Dec. 31, 2002

TAXPAYER IDENTIFICATION NUMBER:            )-6110
SPOUSE TAXPAYER IDENTIFICATION NUMBER:     7367

EDGAR T & DELORES V VICTORIA
PO BOX 810
GREENVILLE, AL 36037-0810-101

Any minus sign shown below signifies a credit amount.

ACCOUNT BALANCE:                 0.00
ACCRUED INTEREST:                0.00    AS OF: Jan. 09, 2006
ACCRUED PENALTY:                 0.00    AS OF: Jan. 09, 2006


ACCOUNT BALANCE
PLUS ACCRUALS:                   0.00


** EXEMPTIONS:                     02      ** FILING STATUS: Married Filing Joint

** ADJUSTED GROSS INCOME:      244,033.00
** TAXABLE INCOME:             183,449.00
   TAX PER RETURN:              60,730.00
** SE TAXABLE INCOME TAXPAYER:  84,900.00
** SE TAXABLE INCOME SPOUSE:        0.00
** TOTAL SELF EMPLOYMENT TAX:   14,710.00


** PER RETURN OR AS ADJUSTED


RETURN DUE DATE OR RETURN RECEIVED DATE (WHICHEVER IS LATER): Oct. 31, 2005
PROCESSING DATE: Dec. 26, 2005

| TRANSACTIONS |
|---|

| CODE | EXPLANATION OF TRANSACTION | CYCLE DATE | AMOUNT |
|------|----------------------------|------------|--------|
| 150 | RETURN FILED AND TAX ASSESSED | 20055008 12-26-2005 | $60,730.00 |
|  | 09221-330-33536-5 | | |
| 806 | WITHHOLDING CREDIT | 04-15-2003 | -$36,567.00 |
| 663 | ESTIMATED TAX/FEDERAL TAX DEPOSIT | 04-17-2002 | -$25,000.00 |
| 662 | CORRECTION OF ESTIMATED TAX PAYMENT | 04-17-2002 | $25,000.00 |
|  | 1040 200112 | | |
| 670 | SUBSEQUENT PAYMENT | 04-16-2003 | -$25,000.00 |
| 460 | EXTENSION OF TIME TO FILE | 04-15-2003 | $0.00 |
|  | EXT. DATE 08-15-2003 | | |
| 460 | EXTENSION OF TIME TO FILE | 08-15-2003 | $0.00 |
|  | EXT. DATE 10-15-2003 | | |
| 826 | OVERPAYMENT CREDIT TRANSFERRED | 04-15-2003 | $535.66 |
|  | 1040 200312 | | |
| 776 | INTEREST DUE TAXPAYER | 11-21-2005 | -$1.22 |
| 826 | OVERPAYMENT CREDIT TRANSFERRED | 04-15-2003 | $301.34 |
|  | 1040 200412 | | |
| 856 | OVERPAYMENT INTEREST TRANSFERRED | 11-21-2005 | $1.22 |
|  | 1040 200412 | | |

This Product Contains Sensitive Taxpayer Data



# Internal Revenue Service
DEPARTMENT OF THE TREASURY — e-services ————————————

| This Product Contains Sensitive Taxpayer Data |
| --- |

## Account Transcript

Request Date: 10-16-2006
Response Date: 10-16-2006
IRS Employee Number: 56LDB
Tracking Number: 100009775164

FORM NUMBER: 1040                     TAX PERIOD: Dec. 31, 2003

TAXPAYER IDENTIFICATION NUMBER:              -6110

SPOUSE TAXPAYER IDENTIFICATION NUMBER:       -7367

EDGAR T & DELORES V VICTORIA

PO BOX 810

GREENVILLE, AL 36037-0810-101

Any minus sign shown below signifies a credit amount.

ACCOUNT BALANCE:                    0.00
ACCRUED INTEREST:                   0.00    AS OF: May  29, 2006
ACCRUED PENALTY:                    0.00    AS OF: May  29, 2006

ACCOUNT BALANCE
PLUS ACCRUALS:                      0.00

** EXEMPTIONS:                        02     ** FILING
                                             STATUS: Married Filing Joint
** ADJUSTED GROSS INCOME:      188,777.00
** TAXABLE INCOME:             136,343.00
   TAX PER RETURN:              42,043.00
** SE TAXABLE INCOME
TAXPAYER:                       87,000.00
** SE TAXABLE INCOME SPOUSE:         0.00
** TOTAL SELF EMPLOYMENT
TAX:                            16,052.00

** PER RETURN OR AS ADJUSTED

RETURN DUE DATE OR RETURN RECEIVED DATE (WHICHEVER IS LATER): Oct. 18, 2004
PROCESSING DATE: Dec. 06, 2004

| TRANSACTIONS |
| --- |

| CODE | EXPLANATION OF TRANSACTION | CYCLE | DATE | AMOUNT |
|------|---------------------------|-------|------|--------|
| 150 | RETURN FILED AND TAX ASSESSED | 20044508 | 12-06-2004 | $42,043.00 |
|  | 07221-298-35027-4 |  |  |  |
| 460 | EXTENSION OF TIME TO FILE |  | 08-15-2004 | $0.00 |
|  | EXT. DATE 10-15-2004 |  |  |  |
| 610 | PAYMENT WITH RETURN |  | 10-18-2004 | -$17,253.00 |
| 666 | ESTIMATED TAX CREDIT TRANSFERRED IN |  | 04-15-2004 | -$25,000.00 |
| 276 | FAILURE TO PAY TAX PENALTY | 20044708 | 12-06-2004 | $426.07 |
| 196 | INTEREST ASSESSED | 20044708 | 12-06-2004 | $319.59 |
| 706 | OVERPAID CREDIT APPLIED |  | 04-15-2003 | -$535.66 |
|  | 1040 200212 |  |  |  |
| 277 | FAILURE TO PAY TAX PENALTY ABATED |  | 12-26-2005 | -$13.39 |
| 197 | INTEREST ABATED |  | 12-26-2005 | -$10.05 |
| 846 | REFUND |  | 12-26-2005 | $25.05 |
| 776 | INTEREST DUE TAXPAYER |  | 12-26-2005 | -$1.61 |
| 640 | ADVANCE PAYMENT OF DEFICIENCY MISCELLANEOUS PAYMENT |  | 12-12-2005 | -$2,583.32 |
| 670 | SUBSEQUENT PAYMENT |  | 12-29-2005 | -$566.82 |
| 300 | ADDITIONAL TAX ASSESSED BY EXAMINATION | 20060508 | 02-13-2006 | $2,366.00 |
|  | 49247-424-00577-6 |  |  |  |
| 421 | RENUMBERED RETURN |  | 02-13-2006 | $0.00 |
|  | 49247-424-00577-6 |  |  |  |
| 777 | INTEREST DUE TAXPAYER REVERSED |  | 12-26-2005 | $1.56 |
| 336 | INTEREST ASSESSED | 20060508 | 02-13-2006 | $183.22 |
| 846 | REFUND |  | 02-13-2006 | $603.28 |
| 776 | INTEREST DUE TAXPAYER |  | 02-13-2006 | -$3.92 |

This Product Contains Sensitive Taxpayer Data



# Internal Revenue Service — e-services —
DEPARTMENT OF THE TREASURY

| This Product Contains Sensitive Taxpayer Data |
| --- |

## Account Transcript

Request Date: 10-16-2006
Response Date: 10-16-2006
IRS Employee Number: 56LDB
Tracking Number: 100009775164

FORM NUMBER: 1040                TAX PERIOD: Dec. 31, 2004

TAXPAYER IDENTIFICATION NUMBER:          5-6110
SPOUSE TAXPAYER IDENTIFICATION NUMBER:   -7367

EDGAR T & DELORES V VICTORIA
PO BOX 810
GREENVILLE, AL 36037-0810-101

Any minus sign shown below signifies a credit amount.

ACCOUNT BALANCE:              -267.61
ACCRUED INTEREST:                0.00    AS OF: Oct. 23, 2006
ACCRUED PENALTY:                 0.00    AS OF: Oct. 23, 2006

ACCOUNT BALANCE
PLUS ACCRUALS:                -267.61

** EXEMPTIONS:                     02    ** FILING
                                         STATUS: Married Filing Joint
** ADJUSTED GROSS INCOME:    127,900.00
** TAXABLE INCOME:            57,334.00
   TAX PER RETURN:            25,154.00
** SE TAXABLE INCOME
TAXPAYER:                     87,900.00
** SE TAXABLE INCOME SPOUSE:  13,287.00
** TOTAL SELF EMPLOYMENT
TAX:                          17,270.00

** PER RETURN OR AS ADJUSTED

RETURN DUE DATE OR RETURN RECEIVED DATE (WHICHEVER IS LATER): Oct. 19, 2005
PROCESSING DATE: Nov. 21, 2005

| TRANSACTIONS |
| --- |

2006/10/16 09:51:32

| CODE | EXPLANATION OF TRANSACTION | CYCLE | DATE | AMOUNT |
|------|---------------------------|-------|------|--------|
| 150 | RETURN FILED AND TAX ASSESSED | 20054508 | 11-21-2005 | $25,154.00 |
|  | 07211-295-89810-5 |  |  |  |
| 670 | SUBSEQUENT PAYMENT |  | 04-22-2005 | -$7,000.00 |
| 610 | PAYMENT WITH RETURN |  | 10-19-2005 | -$18,875.00 |
| 176 | ESTIMATED TAX PENALTY | 20054508 | 11-21-2005 | $479.46 |
| 166 | LATE FILING PENALTY | 20054508 | 11-21-2005 | $4,084.65 |
| 276 | FAILURE TO PAY TAX PENALTY | 20054508 | 11-21-2005 | $635.39 |
| ▊▊▊ | ▊▊▊▊▊▊▊▊ ▊▊▊▊▊▊▊ | ▊▊▊▊▊▊▊▊ | ▊▊ ▊▊ ▊▊▊▊ | ▊▊▊▊ ▊▊ |
| 196 | INTEREST ASSESSED | 20060408 | 02-06-2006 | $34.95 |
| 520 | LEGAL/BANKRUPTCY SUIT PENDING |  | 09-25-2006 | $0.00 |

This Product Contains Sensitive Taxpayer Data



# Internal Revenue Service
DEPARTMENT OF THE TREASURY ——— e-services ———

| This Product Contains Sensitive Taxpayer Data |
|---|

## Account Transcript

Request Date: 10-16-2006
Response Date: 10-16-2006
IRS Employee Number: 56LDB
Tracking Number: 100009775164

FORM NUMBER: 1040                    TAX PERIOD: Dec. 31, 2005

TAXPAYER IDENTIFICATION NUMBER:                6110
SPOUSE TAXPAYER IDENTIFICATION NUMBER:        -7367

EDGAR T & DELORES V VICTORIA
PO BOX 810
GREENVILLE, AL 36037-0810-101

Any minus sign shown below signifies a credit amount.

ACCOUNT BALANCE:                    0.00
ACCRUED INTEREST:                   0.00        AS OF: Oct. 23, 2006
ACCRUED PENALTY:                    0.00        AS OF: Oct. 23, 2006

ACCOUNT BALANCE
PLUS ACCRUALS:                      0.00

** EXEMPTIONS:                        00        ** FILING STATUS: Married Filing Joint
** ADJUSTED GROSS INCOME:
** TAXABLE INCOME:
   TAX PER RETURN:
** SE TAXABLE INCOME
TAXPAYER:
** SE TAXABLE INCOME
SPOUSE:
** TOTAL SELF EMPLOYMENT
TAX:

** PER RETURN OR AS ADJUSTED

| TRANSACTIONS |
|---|

CODE EXPLANATION OF TRANSACTION              CYCLE DATE              AMOUNT

460    EXTENSION OF TIME TO FILE                    04-15-2006        $0.00
       EXT. DATE 10-15-2006

This Product Contains Sensitive Taxpayer Data

SEP-06-2006  14:45                                                      P.02/05

*old EIN*

Tuesday, August 22, 2006,  2:07pm

ACCRUAL COMPUTATION DATE:  08/22/2006

TIN: 63-1103639        NAME: DOLORES V VICTORIA

| MFT | TAXPD | RESTRICT | MOD BAL | ACCR INT | ACCR FTP | MOD TOTAL |
|-----|-------|----------|---------|----------|----------|-----------|
| 01 | 200406 | *F 941* | 8955.15 | 656.25 | 657.31 | 10268.71 |
| 01 | 200409 | | 6259.20 | 455.07 | 465.05 | 7179.32 |
| 01 | 200412 | | 2840.33 | 207.10 | 240.42 | 3287.85 |
| 01 | 200503 | | 5917.53 | 310.13 | 161.88 | 6389.54 |
| 01 | 200506 | | 2558.85 | 130.25 | 69.29 | 2758.39 |
| 10 | 200312 | *F 940/2003* | 5199.87 | 272.03 | 128.37 | 5600.27 |
| 10 | 200412 | *2004* | 2916.17 | 153.55 | 86.80 | 3156.52 |

| | TOTALS: | 34647.10 | 2184.38 | 1809.12 | 38640.60 |
|--|---------|----------|---------|---------|----------|

PAGE   1

SEP-05-2006  14:45                                                        P.03/08

Station Name: MTG001MA2(    )98 Date: 8/22/2006 Time: 2:09   PM

INTST 72-1357031

01 200012 08222006 BARI

*Current EIN*

*F941*

*4th qtr*

*2000*

|  |  |
|---|---|
| 2,506.41 | ASSESSED FTP |
| 1,915.43 | ASSESSED INT |
| 11,028.30 | TAX & PENALTY |
| 15,450.14 | ASSESSED TOTAL |
| .00 | ACCRUED FTP |
| 2,239.68 | ACCRUED INT |
| 2,239.68 | TOTAL ACCRUALS |
| 2,506.41 | TOTAL FTP |
| 4,155.11 | TOTAL INT |
| 17,689.82 | BALANCE DUE |

SEP-06-2006  14:46

P.04/06

Station Name: MTG001MA2(  /398 Date: 8/22/2006 Time: 2:10    PM

INTST 72-1357031
01 200512 08222006 BARI

F 941
4th qtr
2005

| | |
|---|---|
| 5.86 | ASSESSED FTP |
| 3.63 | ASSESSED INT |
| .00 | TAX & PENALTY |
| 9.49 | ASSESSED TOTAL |
| .00 | ACCRUED FTP |
| .29 | ACCRUED INT |
| .29 | TOTAL ACCRUALS |
| 5.86 | TOTAL FTP |
| 3.92 | TOTAL INT |
| 9.78 | BALANCE DUE |

SEP-06-2006  14:46

Station Name: MTG001MA2   398 Date: 8/22/2006 Time: 2:05   PM

INTST  72-1357031
01 200603 08222006 BARI

F941
1st qtr
2006

| | |
|---|---|
| 7.19 | ASSESSED FTP |
| 5.92 | ASSESSED INT |
| 64.73 | TAX & PENALTY |
| 77.84 | ASSESSED TOTAL |
| .00 | ACCRUED FTP |
| .74 | ACCRUED INT |
| .74 | TOTAL ACCRUALS |
| 7.19 | TOTAL FTP |
| 6.66 | TOTAL INT |
| 78.58 | BALANCE DUE |

COMPUTATION HOLD ON FTP
Employee #2518321900 Page 001 of 002  PAGE  002

SEP-06-2006  14:46                                                      P.05/06

Station Name: MTG001MA2    898 Date: 8/22/2006 Time: 2:09  PM

INTST 72-1357031
13 199912 08222006 BARI

CIVIL
penalty
TY 1999

| | |
|---|---|
| .00 | ASSESSED FTP |
| .00 | ASSESSED INT |
| 769.23 | TAX & PENALTY |
| 769.23 | ASSESSED TOTAL |
| .00 | ACCRUED FTP |
| 179.15 | ACCRUED INT |
| 179.15 | TOTAL ACCRUALS |
| .00 | TOTAL FTP |
| 179.15 | TOTAL INT |
| 948.38 | BALANCE DUE |

COMPUTATION HOLD ON FTP
Employee #2518321900 Page 001 of 002  PAGE  002

TOTAL P.06

SEP-06-2006 14:45

Station Name: WTC001MR2 WKW Case 2:07-cv-00688-WKW Document 3-4 Date: 8/22/2006 Filed 07/27/2007 Time: 2:09 PM Page 20 of 64

P.03/06

INTST 72-1357031

Current EIN

01 200012 08222006 BARI

F941

4th qtr

2000

| | |
|---|---|
| 2,506.41 | ASSESSED FTP |
| 1,915.43 | ASSESSED INT |
| 11,028.30 | TAX & PENALTY |
| 15,450.14 | ASSESSED TOTAL |
| .00 | ACCRUED FTP |
| 2,239.68 | ACCRUED INT |
| 2,239.68 | TOTAL ACCRUALS |
| 2,506.41 | TOTAL FTP |
| 4,155.11 | TOTAL INT |
| 17,689.82 | BALANCE DUE |

B 240 - Reaffirmation Agreement
(10/05)

# United States Bankruptcy Court

_____Middle_____District of _____Alabama_____

In re

Debtor(s)

Case No.

Chapter

## REAFFIRMATION AGREEMENT

_[Indicate all documents included in this filing by checking each applicable box.]_

☐ Part A: Disclosures, Instructions, and
   Notice to Debtor (Pages 1 - 5)
☒ Part B: Reaffirmation Agreement
☐ Part C: Certification by Debtor's
   Attorney

☐ Part D: Debtor's Statement in Support of
   Reaffirmation Agreement
☐ Part E: Motion for Court Approval
☐ Proposed Order Approving Reaffirmation
   Agreement

☐ _[Check this box if]_ Creditor is a Credit Union as defined in §19(b)(1)(a)(iv) of the
Federal Reserve Act

## PART A: DISCLOSURE STATEMENT, INSTRUCTIONS AND NOTICE TO DEBTOR

### 1.    DISCLOSURE STATEMENT

_Before Agreeing to Reaffirm a Debt, Review These Important Disclosures_:

### SUMMARY OF REAFFIRMATION AGREEMENT

This Summary is made pursuant to the requirements of the Bankruptcy Code.

### AMOUNT REAFFIRMED

a.    The amount of debt you have agreed to reaffirm:    $ 19,029.83

b.    All fees and costs accrued as of the date of this
disclosure statement, related to the amount of debt
shown in a., above:    $

c.    The total amount you have agreed to reaffirm
(Debt and fees and costs) (Add lines a. and b.):    $ 19,029.83   0.00

_Your credit agreement may obligate you to pay additional amounts which may come
due after the date of this disclosure. Consult your credit agreement._

EXHIBIT
16

P. 2

## ANNUAL PERCENTAGE RATE

*[The annual percentage rate can be disclosed in different ways, depending on the type of debt.]*

a.  If the debt is an extension of "credit" under an "open end credit plan," as those terms are defined in § 103 of the Truth in Lending Act, such as a credit card, the creditor may disclose the annual percentage rate shown in (i) below or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

(i)  The Annual Percentage Rate disclosed, or that would have been disclosed, to the debtor in the most recent periodic statement prior to entering into the reaffirmation agreement described in Part B below or, if no such periodic statement was given to the debtor during the prior six months, the annual percentage rate as it would have been so disclosed at the time of the disclosure statement:             %.

*— And/Or ---*

(ii)  The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor:             %.  If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:

$           @           %;
$           @           %;
$           @           %.

b.  If the debt is an extension of credit other than under than an open end credit plan, the creditor may disclose the annual percentage rate shown in (i) below, or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

(i)  The Annual Percentage Rate under §128(a)(4) of the Truth in Lending Act, as disclosed to the debtor in the most recent disclosure statement given to the debtor prior to entering into the reaffirmation agreement with respect to the debt or, if no such disclosure statement was given to the debtor, the annual percentage rate as it would have been so disclosed:             %.

*— And/Or ---*

(ii)  The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor:             %.  If different simple interest rates apply to different balances included in the amount reaffirmed,

P. 3

the amount of each balance and the rate applicable to it are:

$15,384.75 @    9.00  %;
$ 3,645.08 @    5.75  %;
$          @          %.

    c. If the underlying debt transaction was disclosed as a variable rate transaction on the most recent disclosure given under the Truth in Lending Act:

    The interest rate on your loan may be a variable interest rate which changes from time to time, so that the annual percentage rate disclosed here may be higher or lower.

    d. If the reaffirmed debt is secured by a security interest or lien, which has not been waived or determined to be void by a final order of the court, the following items or types of items of the debtor's goods or property remain subject to such security interest or lien in connection with the debt or debts being reaffirmed in the reaffirmation agreement described in Part B.

| Item or Type of Item | Original Purchase Price or Original Amount of Loan |
|---|---|
| CERTIFICATE OF DEPOSIT #19922 | $3,565.00 |
| UCC-1 WITH EXHIBIT 'A' AND 'B' | $19,697.16 |

*Optional*---At the election of the creditor, a repayment schedule using one or a combination of the following may be provided:

**Repayment Schedule:**

Your first payment in the amount of _____ is due on _____ (date), but the future payment amount may be different. Consult your reaffirmation agreement or credit agreement, as applicable.

---Or---

Your payment schedule will be: _____ (number) payments in the amount of $ _____ each, payable _____ Monthly _____ on the _____ (day) of each Month unless altered later by mutual agreement in writing.

---Or---

Describe repayment obligation with specificity to extent known by creditor or creditor representative

BORROWER INTENDS TO PAY BOTH LOANS WITH BUTLER COUNTY BANK, GREENVILLE, ALABAMA AS THEY ARE PRESENTLY STRUCTURED.  SEE COPIES OF NOTES ATTACHED FOR DETAILS.

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **IN RE:** | **Deloris V. Victoria** ) | |
| | ) | **CHAPTER 7** |
| | ) | |
| | ) | **CASE NO. 06-31225** |
| **DEBTORS** | ) | |

### REAFFIRMATION AGREEMENT

WHEREAS, Deloris V. Victoria, referred to as the Debtor(s), executed and delivered to **BRANTLEY BANK & TRUST CO.**, hereinafter referred to as the Creditor, a promissory note with an approximate principal amount of $ 285,170.31 left owing.

WHEREAS, on the 25th day of September, 2006, Debtor(s) filed a voluntary petition with the Bankruptcy Court under Chapter 7 of the Bankruptcy Code and scheduled the above debt as evidenced by the note for discharge.

NOW THEREFORE, it is mutually agreed as follows:

1.      The Debtor(s) are hereby unconditionally promised to pay to the Creditor the balance of total payments this day being approximately $285,170.31, in equal monthly installments due by the 22nd day of each month, with the first payment beginning on October 22, 2006 for the amount of $ 2025.05 each month.

2.      The Debtor(s) will execute a promissory note in the amount stated above with the above-stated terms.

3.      The Debtor(s) and the Creditor hereby acknowledge and understand that this reaffirmation agreement will become enforceable against the Debtor(s) at the time of the discharge hearing, if they are granted a discharge at that time.

4.      The Debtor(s) and the Creditor understand and acknowledge that the Debtor(s) may cancel and rescind this reaffirmation agreement at any time up to sixty (60) days after the granting of any discharge.

1

5.      The Debtor(s) understand and acknowledge that if they do not cancel the the reaffirmation agreement before the end of the sixty (60) day period, they will be bound by this reaffirmation agreement and the terms and conditions of the note or any additional note, or any document to be executed in regards to this agreement.

6.      The Debtor(s) understand and acknowledge that if they default with respect to the obligation under this agreement, or any note, that the Creditor will have the right to proceed immediately to enforce its rights under the note and this agreement, including without limitation, any appropriate legal action.

7.      Any cancellation of this agreement by the Debtor(s) during the sixty (60) day period set forth in paragraphs four and five, shall be in writing and mailed or delivered to the Creditor.

DATED THIS the 11th day of October, 2006.

_____

BRANTLEY BANK & TRUST CO.
CREDITOR
BY: _____ *Jimmy Lester* _____
            (Printed Name)


_____
                                , DEBTOR

_____
                                , DEBTOR

_____

ATTORNEY FOR DEBTOR

# BRANTLEY BANK AND TRUST CO.

Post Office Box 25
BRANTLEY, ALABAMA 36009
Telephone: (334) 527-3206
FAX No.: (334) 527-3635

October 11, 2006

C. Brandon Sellers
Shinbaum, Abell, McLeod & Vann
Post Office Box 201
Montgomery, Alabama  36101-0201

RE:  Deloris V. Victoria   Chapter 7 Case No. 06-31225

Please find enclosed a Reaffirmation Agreement for Dr. Victoria to sign.  I have also enclosed a copy of the original mortgage for this note.

After she has signed and you have filed with the court, would you please provide me with a signed copy of the agreement.

If you have any questions, feel free to contact me at 334/527-3206.

Sincerely,

Jimmy Lester
VP & Cashier



*Alacourt.com*

*Alabama SJIS Case Detail*

| Settings | Parties | Case Action Summary | Witness List | Financial | Images | Consolidated CAS |

| County | 10 | Case Number | ⊙CV 2005 000133 00 | JID | HEM | Trial | J |
|---|---|---|---|---|---|---|---|
| Style | **GREENVILLE HOSPITAL CORP. INC, ET AL VS DOLORES VICTORIA, M.D.** | | | | | | |
| Code | CONT | Type | CONTRACT/EJMNT/SEIZU | Filed | 08302005 | Track | |
| Amount | | Status | **DISPOSED** | Plaintiffs | 001 | Defendants | 001 |
| DJID | HEM | Court Action | **M (SUMMARY JUDGMT) 08032006** | | | For | C |
| Damages-Comp | | Damages-Pun | | Damages-Gen | | No Damages | |
| Trial Days | | Lien | | | | | |

| Date 1 | | Que 1 | | Time 1 | | Description | |
|---|---|---|---|---|---|---|---|
| Date 2 | | Que 2 | | Time 2 | | Description | |
| Date 3 | | Que 3 | | Time 3 | | Description | |
| Date 4 | | Que 4 | | Time 4 | | Description | |
| Cont Date | | Why | | | | Cont # | |
| RevJmt | | Admin Date | | Why | | | |
| Appeal Date | | CRT | | Case | | | |
| TBNV1 | | TBNV2 | | DSDT | 0000 000000 00 | DTYP | |
| Comment 1 | THIS FILE HAS BEEN SCANNED | | | | | | |
| Comment 2 | | | | | | | |

| Party | C 001 | Name | GREENVILLE HOSPITAL CORP INC D/B/A | | Type | BUSINESS |
|---|---|---|---|---|---|---|
| INDX | D VICTORIA DOL | ANAM | | | JID | HEM |
| SSN | | Address 1 | L V STABLER MEMORIAL HOSP | | Sex | |
| DOB | | Address 2 | | | Race | |
| Country | US | City | AL 00000 0000 | | Phone | 334 000 0000 |
| Atty 1 | MALLETTE GREER BURDI | Atty 2 | | Atty 3 | Atty 4 | |
| Atty 5 | | Atty 6 | | | | |
| Issued | | Type | | Reissue | Type | |
| Return | | Type | | Return | Type | |
| Service | | Type | | Serv On | By | |
| Answer | | Type | | NS Not | NA Not | |
| Warrant | | Type | | Arrest | | |
| CACT | M (SUMMARY JUDGMT) | Date | 08032006 | For | C | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | |

| Party | D 001 | Name | VICTORIA DOLORES MD | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|
| INDX | C GREENVILLE H | ANAM | | | JID | HEM |
| SSN | | Address 1 | 44 MEDICAL COURT | | Sex | |
| DOB | | Address 2 | P O BOX 810 | | Race | |
| Country | US | City | GREENVILLEL AL 36037 0000 | | Phone | 334 000 0000 |
| Atty 1 | | Atty 2 | | Atty 3 | Atty 4 | |
| Atty 5 | | Atty 6 | | | | |
| Issued | 09022005 | Type | C CERTIFIED MAI | Reissue | Type | |
| Return | | Type | | Return | Type | |
| Service | 09092005 | Type | C CERTIFIED MAI | Serv On | By | |
| Answer | 10072005 | Type | D COMP DENIED | NS Not | NA Not | |
| Warrant | | Type | | Arrest | | |
| CACT | M (SUMMARY JUDGMT) | Date | 08032006 | For | C | Exep | O |
| AMT | 0016225774 | Cost | 0000049600 | Other | | Satisfied | |
| Comment | | | | | | |

| Date | Time | Code | Comments | Operator |
|---|---|---|---|---|
| 08302005 | 1505 | TEXT | SUMMONS AND COMPLAINT | REJ |
| 09022005 | 1502 | FILE | FILED THIS DATE: 08/30/2005 (AV01) | REJ |

| 09022005 1502 | TDMJ | JURY TRIAL REQUESTED (AV01) | REJ |
|---|---|---|---|
| 09022005 1502 | ASSJ | ASSIGNED TO JUDGE: H. EDWARD MCFERRIN (AV01) | REJ |
| 09022005 1502 | ORIG | ORIGIN: INITIAL FILING (AV01) | REJ |
| 09022005 1502 | STAT | CASE ASSIGNED STATUS OF: ACTIVE (AV01) | REJ |
| 09022005 1503 | PART | GREENVILLE HOSPITAL CORP INC D/B/A ADDED AS C001 | REJ |
| 09022005 1503 | ATTY | LISTED AS ATTORNEY FOR C001: MALLETTE GREER BURDI | REJ |
| 09022005 1504 | PART | VICTORIA DOLORES MD ADDED AS D001 (AV02) | REJ |
| 09022005 1504 | SUMM | CERTIFIED MAI ISSUED: 09/02/2005 TO D001 (AV02) | REJ |
| 09022005 1505 | CASP | CASE ACTION SUMMARY PRINTED (AV02) | REJ |
| 09022005 1505 | TEXT | CERT MAIL TO D001 7004 2510 0006 8054 6455 | REJ |
| 09212005 0814 | SERC | D001 SERVED CERTIFIED MAIL ON 09/09/2005 | REJ |
| 10072005 1458 | ANSW | ANSWER OF COMP DENIED ON 10/07/2005 FOR D001(AV02) | MAG |
| 10172005 1054 | C001 | NOTICE TO CLERK OF SERVICE OF DISCOVERY DOCS - | REJ |
| 10172005 1054 | C001 | PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCS | REJ |
| 10172005 1054 | C001 | TO DEFENDANT DOLORES VICTORIA, M.D. AND; | REJ |
| 10172005 1054 | C001 | PLAITNIFF'S FIRST REQUEST FOR ADMISSIONS TO | REJ |
| 10172005 1054 | C001 | DEFENDANT DOLORES VOCTORIA, M.D. | REJ |
| 11152005 1500 | TEXT | NOTICE OF APPEARANCE FOR D001 | DET |
| 11152005 1506 | ATTY | LISTED AS ATTORNEY FOR D001: HARTLEY P RICHARD | DET |
| 12132005 0750 | D001 | ANSWER TO COMPLAINT - DENY - BY PRH | REJ |
| 02232006 0911 | TEXT | ANSWER TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION | REJ |
| 02232006 0911 | TEXT | OF DOCUMENTS | REJ |
| 02232006 0911 | TEXT | DEFENDANT'S ANSWERS TO REQUEST FOR ADMISSIONS | REJ |
| 02232006 0911 | TEXT | NOTICE OF DISCOVERY DOCUMENTS | REJ |
| 04192006 1528 | DAT1 | SET FOR: SCHEDULE CONFERENCE ON 05/04/2006 AT 090 | REJ |
| 04192006 2388 | DOCK | NOTICE SENT: 04/19/2006 MALLETTE GREER BURDICK | REJ |
| 05012006 1548 | C001 | C001 MOTION FOR SUMMARY JUDGMENT | REJ |
| 05012006 1548 | C001 | EVIDENTIARY SUBMISSION IN SUPPORT OF PLAINTIFF | REJ |
| 05012006 1548 | C001 | GREENVILLE HOSPITAL CORPORATION, D/B/A L V STABLER | REJ |
| 05012006 1548 | C001 | MEMORIAL HOSP, INC. MOTION FOR SUMMARY JUDGMENT | REJ |
| 05082006 1323 | ORDR | SCHEDULING ORDER | REJ |
| 05092006 1413 | DAT1 | SET FOR: PRETRIAL CONFERENCE ON 08/03/2006 AT 090 | REJ |
| 05092006 1413 | DAT4 | SET FOR: TRIAL - JURY ON 09/11/2006 AT 0900A(AV01) | REJ |
| 05092006 1414 | TRAN | TRANSMITTAL NOTICE SENT TO ALL ATTORNEYS | REJ |
| 05172006 1546 | DAT2 | SET FOR: MOTION ON 06/08/2006 AT 0900A (AV01) | REJ |
| 05172006 1546 | MOTN | BY C001 MOTION FOR SUMMARY JUDGMENT | REJ |
| 05252006 2399 | DOCK | NOTICE SENT: 05/25/2006 MALLETTE GREER BURDICK | REJ |
| 06212006 1404 | DAT2 | SET FOR: MOTION ON 07/06/2006 AT 0900A (AV01) | REJ |
| 06212006 2491 | DOCK | NOTICE SENT: 06/21/2006 MALLETTE GREER BURDICK | REJ |
| 07202006 0902 | DAT2 | SET FOR: MOTION ON 08/03/2006 AT 0900A (AV01) | REJ |
| 07202006 2402 | DOCK | NOTICE SENT: 07/20/2006 MALLETTE GREER BURDICK | REJ |
| 07202006 2402 | DOCK | NOTICE SENT: 07/20/2006 MALLETTE GREER BURDICK | REJ |
| 07262006 0759 | D001 | D001 MOTION TO WITHDRAW - E FILED | REJ |
| 07272006 0746 | ORDR | ORDER - MOTION TO WITHDRAW FILED BY VICTORIA | REJ |
| 07272006 0746 | ORDR | DOLORES V IS HEREBY GRANTED. HEM | REJ |
| 07312006 1520 | TRAN | TRANSMITTAL NOTICE SENT TO ALL | REJ |
| 08072006 1328 | ORDR | ORDER - IT IS ORDERED THAT PLAINTIFF'S MOTION FOR | REJ |
| 08072006 1328 | ORDR | SUMMARY JUDGMENT IS GRANTED AND JUDGMENT IS | REJ |
| 08072006 1328 | ORDR | ENTERED IN FAVOR OF PLAINTIFF AND AGAINST | REJ |
| 08072006 1328 | ORDR | DEFENDANT IN THE AMOUNT OF $162,257.74 PLUST COSTS | REJ |
| 08082006 1329 | TRAN | TRANSMITTAL NOTICE SENT TO ALL ATTORNEYS | REJ |
| 08082006 1329 | STAT | CASE ASSIGNED STATUS OF: DISPOSED (AV01) | REJ |
| 08082006 1510 | DISP | DISPOSED ON: 08/03/2006 BY (SUMMARY JUDGMT) (AV01) | REJ |
| 08082006 1510 | CACJ | COURT ACTION JUDGE: H. EDWARD MCFERRIN (AV01) | REJ |
| 08082006 1510 | PDIS | C001 DISPOSED BY (SUMMARY JUDGMT) ON 08/03/2006 | REJ |
| 08082006 1510 | PDIS | D001 DISPOSED BY (SUMMARY JUDGMT) ON 08/03/2006 | REJ |
| 08082006 1511 | JAMT | JUDGMENT OF: $162257.74 VS. D001 ON 08/03/2006 | REJ |

| 08082006 1511 | JCST | COSTS OF: $496.00 VS. D001 ON 08/03/2006 (AV02) | REJ |
| 08082006 1513 | JCER | JUDGEMENT CERTIFICATE PREPARED | REJ |

B 240 - Reaffirmation Agreement
(10/05)

# United States Bankruptcy Court
_____ Middle _____ District of _____ Alabama _____

In re   Deloris V. Victoria                    Case No.      06-31225
                                              Chapter

        Debtor(s)

## REAFFIRMATION AGREEMENT

_[Indicate all documents included in this filing by checking each applicable box.]_

☐ Part A: Disclosures, Instructions, and
   Notice to Debtor (Pages 1 - 5)
☐ Part B: Reaffirmation Agreement
☐ Part C: Certification by Debtor's
   Attorney

☐ Part D: Debtor's Statement in Support of
   Reaffirmation Agreement
☐ Part E: Motion for Court Approval
☐ Proposed Order Approving Reaffirmation
   Agreement

☐ _[Check this box if]_ Creditor is a Credit Union as defined in §19(b)(1)(a)(iv) of the
Federal Reserve Act

## PART A: DISCLOSURE STATEMENT, INSTRUCTIONS AND NOTICE TO DEBTOR

### 1.    DISCLOSURE STATEMENT

_Before Agreeing to Reaffirm a Debt, Review These Important Disclosures:_

### SUMMARY OF REAFFIRMATION AGREEMENT

This Summary is made pursuant to the requirements of the Bankruptcy Code.

### AMOUNT REAFFIRMED

a.    The amount of debt you have agreed to reaffirm:    $ 285,170.31

b.    All fees and costs accrued as of the date of this
    disclosure statement, related to the amount of debt
    shown in a., above:    $

c.    The total amount you have agreed to reaffirm
    (Debt and fees and costs) (Add lines a. and b.):    $285,170.31 XXXX.00

_Your credit agreement may obligate you to pay additional amounts which may come due after the date of this disclosure. Consult your credit agreement._

P. 2

### ANNUAL PERCENTAGE RATE

*[The annual percentage rate can be disclosed in different ways, depending on the type of debt.]*

a.  If the debt is an extension of "credit" under an "open end credit plan," as those terms are defined in § 103 of the Truth in Lending Act, such as a credit card, the creditor may disclose the annual percentage rate shown in (i) below or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

(i) The Annual Percentage Rate disclosed, or that would have been disclosed, to the debtor in the most recent periodic statement prior to entering into the reaffirmation agreement described in Part B below or, if no such periodic statement was given to the debtor during the prior six months, the annual percentage rate as it would have been so disclosed at the time of the disclosure statement:      %.

*— And/Or ---*

(ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor:      %.  If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:

$       @        %;
$       @        %;
$       @        %.

b.  If the debt is an extension of credit other than under than an open end credit plan, the creditor may disclose the annual percentage rate shown in (i) below, or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

(i) The Annual Percentage Rate under §128(a)(4) of the Truth in Lending Act, as disclosed to the debtor in the most recent disclosure statement given to the debtor prior to entering into the reaffirmation agreement with respect to the debt or, if no such disclosure statement was given to the debtor, the annual percentage rate as it would have been so disclosed:      %.

*— And/Or ---*

(ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor:      %.  If different simple interest rates apply to different balances included in the amount reaffirmed,

P. 3

the amount of each balance and the rate applicable to it are:

$      @      %;
$      @      %;
$      @      %.

    c. If the underlying debt transaction was disclosed as a variable rate transaction on the most recent disclosure given under the Truth in Lending Act:

    The interest rate on your loan may be a variable interest rate which changes from time to time, so that the annual percentage rate disclosed here may be higher or lower.

    d. If the reaffirmed debt is secured by a security interest or lien, which has not been waived or determined to be void by a final order of the court, the following items or types of items of the debtor's goods or property remain subject to such security interest or lien in connection with the debt or debts being reaffirmed in the reaffirmation agreement described in Part B.

| Item or Type of Item | Original Purchase Price or Original Amount of Loan |
|---|---|
| Mortgage | $347,577.39 |

*Optional*---At the election of the creditor, a repayment schedule using one or a combination of the following may be provided:

**Repayment Schedule:**

Your first payment in the amount of      is due on      (date), but the future payment amount may be different. Consult your reaffirmation agreement or credit agreement, as applicable.

---*Or*---

Your payment schedule will be: 176      (number) payments in the amount of $ 2,025.05 each, payable    Semi-Monthly      on the 18th      (day) of each Month     , unless altered later by mutual agreement in writing.

---*Or*---

Describe repayment obligation with specificity to extent known by creditor or creditor representative

P. 4

## 2. INSTRUCTIONS AND NOTICE TO DEBTOR

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps are not completed, the reaffirmation agreement is not effective, even though you have signed it.

1. Read the disclosures in this Part A carefully. Consider the decision to reaffirm carefully. Then, if you want to reaffirm, sign the reaffirmation agreement in Part B (or you may use a separate agreement you and your creditor agree on).

2. Complete and sign Part D and be sure you can afford to make the payments you are agreeing to make and have received a copy of the disclosure statement and a completed and signed reaffirmation agreement.

3. If you were represented by an attorney during the negotiation of your reaffirmation agreement, the attorney must have signed the certification in Part C.

4. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, you must have completed and signed Part E.

5. The original of this disclosure must be filed with the court by you or your creditor. If a separate reaffirmation agreement (other than the one in Part B) has been signed, it must be attached.

6. <u>If the creditor is not a Credit Union</u> and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship as explained in Part D. <u>If the creditor is a Credit Union</u> and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court.

7. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, it will not be effective unless the court approves it. The court will notify you and the creditor of the hearing on your reaffirmation agreement. You must attend this hearing in bankruptcy court where the judge will review your reaffirmation agreement. The bankruptcy court must approve your reaffirmation agreement as consistent with your best interests, except that no court approval is required if your reaffirmation agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home.

P. 5

# YOUR RIGHT TO RESCIND (CANCEL) YOUR REAFFIRMATION AGREEMENT

You may rescind (cancel) your reaffirmation agreement at any time before the bankruptcy court enters a discharge order, or before the expiration of the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later. To rescind (cancel) your reaffirmation agreement, you must notify the creditor that your reaffirmation agreement is rescinded (or canceled).

## Frequently Asked Questions:

What are your obligations if you reaffirm the debt? A reaffirmed debt remains your personal legal obligation. It is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Otherwise, your obligations will be determined by the reaffirmation agreement which may have changed the terms of the original agreement. For example, if you are reaffirming an open end credit agreement, the creditor may be permitted by that agreement or applicable law to change the terms of that agreement in the future under certain conditions.

Are you required to enter into a reaffirmation agreement by any law? No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments you agree to make.

What if your creditor has a security interest or lien? Your bankruptcy discharge does not eliminate any lien on your property. A ''lien'' is often referred to as a security interest, deed of trust, mortgage or security deed. Even if you do not reaffirm and your personal liability on the debt is discharged, because of the lien your creditor may still have the right to take the security property if you do not pay the debt or default on it. If the lien is on an item of personal property that is exempt under your State's law or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the security property, as agreed by the parties or determined by the court.

> **NOTE:** When this disclosure refers to what a creditor ''may'' do, it does not use the word "may" to give the creditor specific permission. The word ''may'' is used to tell you what might occur if the law permits the creditor to take the action. If you have questions about your reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement reaffirming a debt. If you don't have an attorney helping you, the judge will explain the effect of your reaffirming a debt when the hearing on the reaffirmation agreement is held.

P. 6

**PART B: REAFFIRMATION AGREEMENT.**

I (we) agree to reaffirm the debts arising under the credit agreement described below.

1. Brief description of credit agreement:

```
Mortgage Loan on residence located at 225 Woodland Heights
Drive, Greenville, AL  36037
```

2. Description of any changes to the credit agreement made as part of this reaffirmation agreement:

SIGNATURE(S):

Borrower:                                          Co-borrower, if also reaffirming these debts:

(Print Name)                                       (Print Name)

(Signature)                                        (Signature)
Date:                                              Date:

Accepted by creditor:
*Brantley Bank + Trust Company*
*James R. Lester, VP + Cashier*
(Print Name)

*(signature)*
(Signature)
Date of creditor acceptance: *10-19-06*

P. 7

## PART C: CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY).

*[Check each applicable box.]*

☐ I hereby certify that (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ *[If applicable and the creditor is not a Credit Union.]* A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

Printed Name of Debtor's Attorney:

Signature of Debtor's Attorney:

Date:

P. 8

## PART D: DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

    1. I believe this reaffirmation agreement will not impose an undue hardship on my dependents or me. I can afford to make the payments on the reaffirmed debt because my monthly income (take home pay plus any other income received) is $    and my actual current monthly expenses including monthly payments on post-bankruptcy debt and other reaffirmation agreements total $    , leaving $    to make the required payments on this reaffirmed debt. I understand that if my income less my monthly expenses does not leave enough to make the payments, this reaffirmation agreement is presumed to be an undue hardship on me and must be reviewed by the court. However, this presumption may be overcome if I explain to the satisfaction of the court how I can afford to make the payments here:

    2. *Either:* I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

*— Or ---*

    *[If the creditor is a Credit Union and the debtor is represented by an attorney]* I believe this reaffirmation agreement is in my financial interest. I can afford to make the payments on the reaffirmed debt. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: _____
      (Debtor)

      (Joint Debtor, if any)
Date:

MEDICAL OFFICE SPACE LEASE

Date:  June 29, 2006

Landlord: Greenville Hospital Corporation
d/b/a LV Stabler Memorial Hospital

Name and Address of Building:
44 Medical Arts Court, Suite 2
Greenville, AL 36037

Address:
29 LV Stabler Drive
Greenville, AL 36037

Tenant:  Dolores Victoria, M.D.

Leased Premises Floor/Suite Description:
Suite 2

Number of Square Feet:   1250

Term of Lease:   2 years
Renewal Terms:        2 year term        (up to one renewal terms of two (2) years by written agreement
of the parties at least three months before expiration of term)

Commencement Date of Lease Term:  June 1, 2006      Security Deposit:        -0-

Termination:  Either party may terminate this lease with or without cause upon thirty (30) days prior to
written notice to the other party.  However, in the event this lease is terminated for any reason prior to the
expiration of one (1) year from the commencement date, the parties shall not enter into another lease until
after the expiration of the first year of the initial term.

Annual Rental Rate:$  11,250
Rent Increase (check one) ☐ 3% per year ☐ 4% per year

Monthly Rental Installments: $ 937.50
($____ 9.00 ____/square foot/year)

_____  Check here if Tenant is required to maintain membership in Hospital Medical Staff

Utilities (check any that apply):
X        Utilities (electricity, water and sewer and janitorial services) are included in the Monthly Rental
X        Housekeeping services will be performed by the Landlord including trash removal.
X        The following utilities are not included in the Monthly Rental:    electricity
         Tenant is solely responsible for the payment of separately metered utilities.
         Tenant shall pay a pro-rata share of separately metered utilities based on Tenant's
         proportionate share of the metered square footage.

Improvements (check any that apply): Not Applicable
_____  First time Standard Build Out - Base Tenant Build Out Allowance: $_____ per sq. ft.
_____  Existing Space (New Tenant or Renewal) - Tenant Improvement Allowance: $____ per
          sq. ft. per year
_____  Landlord to build out space per Landlord's Work Letter attached hereto as Exhibit B

This Medical Office Space Lease is a sublease pursuant to that certain (describe underlying lease
agreement):      not applicable

Attached hereto and incorporated herein for all purposes is "Exhibit A -- Medical Office Space Lease
Standard Terms and Conditions" to which reference is made for the balance of the terms of this Medical
Office Space Lease, including without limitation adjustments to Rental Rate/Installments.

Attached hereto and incorporated herein for all purposes are the following additional exhibits:  Not applicable

TENANT:
_____
Date:        7 - 19 - 06

REVIEWED AND APPROVED:
_____
Facility Chief Executive Officer
Date:        7 - 19 - 06

LANDLORD:
By: _____
President, Hospital Corporation
Date: _____ 7-5-06

APPROVED AS TO FORM:
_____
In-house Counsel, Hospital Corporation
Date:        6·30·06

Form No. 0103 Rev. by Legal Dept as of 6/26/06.

1



*MOB Lease – Hospital-Landlord*

**EXHIBIT A**
**MEDICAL OFFICE SPACE LEASE STANDARD TERMS AND CONDITIONS**

In consideration of the mutual covenants and representations set forth in the Medical Office Space Lease (the "Lease") and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties do hereby agree as follows. The capitalized terms used in this Exhibit A shall have the meaning assigned to such terms in the Medical Office Space Lease, unless another meaning is assigned to such terms in this Exhibit A.

1.     DEMISE.  Upon the terms and conditions hereinafter set forth, Landlord does hereby lease to Tenant, and Tenant does hereby lease from Landlord, the Demised Premises for the Term of the Lease.

2     RENT.  The Monthly Rental Installments for the Lease of the Demised Premises shall be payable in advance on the first day of each and every month during the term hereof.  During the term of this Lease, the Monthly Rental Installments shall be increased, as of each anniversary date of the Commencement Date, by the percentage amount set forth in the Medical Office Space Lease.  It is expressly understood and agreed that Landlord shall apply all payments from Tenant hereunder to the amounts due hereunder by Tenant which have been outstanding for the longest period of time first.

3.     RENTAL RATE ADJUSTMENT. Landlord shall adjust the Annual Rental Rate and the monthly Rental Installments to the then fair market rental rate for the Demised Premises, upon the termination of an existing term of the Lease. Landlord will give notice of such adjustment to Tenant 90 days prior to expiration date of current Lease. Without limitation, Landlord's adjustment of Rental Rate and the monthly installments will be based on the fair market rental rate, utility costs and real estate taxes as well as any local, state or federal income taxes, which may become payable by the Landlord. If a rent escalation percentage has been checked on the cover page of this Lease, the adjustment under this section shall not exceed the amount checked on the cover page of this Lease.

4.     LANDLORD'S OBLIGATIONS.

    A.   Utilities:
    If utilities are included in the Monthly Rental Installments, then Landlord shall, at Landlord's expense, furnish utilities to the Demised Premises, including electrical, water and sewer, heat, ventilation, and air conditioning, however, Tenant shall be responsible for the payment of telephone and data services.

    B.   Maintenance
    Landlord shall maintain, repair and replace all exterior walls and other features of the exterior including but not limited to the roof and all mechanical systems, including but not limited to air conditioning, heating, plumbing, wiring and piping.

    C.   Insurance
    Landlord shall maintain fire and extended coverage insurance on the building in which the Demised Premises are located, in an amount not less than the full replacement cost of the building.

    D.   Taxes
    Landlord shall be responsible for payment of all real estate taxes assessed against the building or property, as well as all applicable local, state and federal income taxes which are or may be payable by Landlord.

    E.   Build Out By Landlord
    If checked on the cover sheet hereof, Landlord will be responsible for standard build out for office space per Attachment "B"   (attached hereto and incorporated herein by reference).

5.     TENANT'S OBLIGATIONS.  In addition to the said rent to be paid, Tenant also agrees to pay directly during the term of the Lease, commencing on the Commencement Date, the following items of expense as the same become due and payable:

    A.   Taxes.
    All ad valorem or other property taxes, personal and intangible taxes payable in connection with the use, occupancy or conduct of business on any part of the Demised Premises, including but not limited to personal property, business, privilege, license, excise, sales, use

Form No. 0103 Rev. by Legal Dept as of 6/26/06.

2



and occupa...n taxes (but excluding local, state and feder... income taxes payable by Landlord). Tenant shall be responsible for all taxes which are assessed against their stock and inventory, tangible personal property or their business and/or business operations.

B.  Maintenance and Modifications.
The following charges for maintaining and operating the Demised Premises in good repair and operating condition:

1)  Tenant shall, at its own cost and expense, keep the interior clean, maintaining suitable receptacles for trash and refuse, and removing from the interior all accumulations of trash and refuse.

2)  Tenant shall service, keep and maintain the interior, including fixtures, doors, interior walls and appurtenances in good condition, repair and working order.

3)  Tenant agrees to deliver to Landlord, upon the expiration date or upon earlier termination in accordance with the provisions hereof, physical possession of the Demised Premises in good condition, reasonable wear and tear and damage by fire or other casualty excepted.

4)  If the Building is separately metered for certain utilities, such as electricity, gas, water, and sewer, Tenant shall be responsible for the payment of all such separately metered utilities based on Tenant's proportionate share of the metered square-footage.

5)  If utilities are not separately metered, Tenant shall be responsible for a pro-rata share of Building utility expense, based upon the ratio of the square footage of the Demised Premises to the square footage of the Building. The utility expense shall be calculated, and the Utility Base Rate shall be adjusted, annually.

6)  Tenant shall be responsible for all service costs and installations of all telephone or data services and Landlord shall have no responsibility or liability with respect thereto or the failure of operation of any such services.

6.  IMPROVEMENTS.  Tenant shall not make any structural changes, alterations, additions or improvements to the Demised Premises without the written consent of Landlord, which shall not be unreasonably withheld.  Landlord shall not be responsible for, either in the performance or payment, any improvements to the Demised Premises unless a "Landlord's Work Letter" is attached to the Lease.

7.  USE OF DEMISED PREMISES.  Tenant shall use the Demised Premises for the purpose of the licensed practice of medicine and the medical treatment of Tenant's patients and business purposes ancillary thereto and for no other purpose. Without limiting the foregoing, unless approved by Landlord in advance and in writing, Tenant shall not use the Demised Premises for the operation of a "commercial ancillary medical care facility" which shall include, without limitation, a clinical laboratory, pharmacy, ambulatory surgery center, birthing center, diagnostic, including radiology, facility, and respiratory, physical, speech, or occupational therapy services. The use of diagnostic equipment (such as x-ray) and the performance of minor surgical procedures under local anesthesia, that is within the scope of Tenant's medical practice and pertaining to the treatment and care of Tenant's own patients, shall not be considered to violate the terms of this paragraph.

8.  ASSIGNMENT;SUBLETTING.  Tenant shall not, without the prior consent of Landlord, which consent may be withheld in Landlord's sole discretion, sublease, license or assign its interest under the Lease to any other person or entity.  Assignment or subletting without the prior consent of Landlord, including assignment by operation of the law, shall constitute an event of default.  In no event, whether with or without consent of Landlord, shall an assignment or lease relieve Tenant of liability under the terms, conditions and provisions of this Lease.

9.  INSURANCE.

A.  The following insurance coverage on the Demised Premises will be maintained by Tenant at all times during the term of the Lease. Comprehensive general liability insurance coverage on the Demised Premises in the sum of One Million Dollars ($1,000,000) for any single claim and Three Million Dollars ($3,000,000) for claims arising out of a single accident or occurrence against liability for bodily injury and death resulting therefrom, and insurance coverage in the sum of One Hundred Thousand Dollars ($100,000.00) per occurrence against liability for damage to property, arising out of the maintenance or use of the Demised Premises by Tenant. Casualty insurance insuring Tenant against loss or damage to its

equipment and other pe... nal property in the Demised Premises by fire a... all other casualties usually covered under an "all risk" policy of casualty insurance. The policies described in this section shall name both Tenant and Landlord as named insureds. Annually, Tenant shall provide Landlord with a certificate of such coverage which shall provided that thirty (30) days' advance written notice be given to Landlord in the event of cancellation or material change in the insurance policy.

B. Tenant shall not do or permit any act which will increase premiums for any casualty, fire, liability or other insurance maintained by Landlord on the Building or any other property therein or which shall render such insurance void or voidable

10. DAMAGE TO PROPERTY/INJURY TO PERSON. Tenant shall and hereby does indemnify and hold Landlord harmless from and against any and all claims to the extent they arise from (i) Tenant's use of the Demised Premises or the conduct of its business, (ii) any activity, work or thing done, permitted or suffered by the Tenant in or about the Demised Premises, (iii) any breach or default in the performance of any obligation on Tenant's part to be performed under the terms of the Lease, or (iv) any act of negligence of Tenant or his agents or employees.

11. ENVIRONMENTAL PROVISIONS.
A. Following due inquiry, Landlord represents that to the best of its knowledge there are no hazardous substances or hazardous wastes as defined by the Comprehensive Environmental Response and Liability Act or any hazardous wastes as defined by the Resource Conservation and Recovery Act, or any PCB's, radon or asbestos containing materials, located on, in or about the Demised Premises to be occupied by Tenant. Landlord agrees that should any hazardous wastes, hazardous substances, PCB's, radon or asbestos containing materials be determined to be present as a result of the acts or missions or negligence of any person or legal entity, other than Tenant, Landlord shall indemnify, hold harmless and defend Tenant from all claims, damages, expenses or litigation resulting from the presence of such materials.

B Tenant warrants that its use of the Premises and the materials used in the conduct of its business operations at and on the Premises, or the manner of use, and its waste, effluent and vapors will not violate any laws, ordinances, rules or regulations relating to or affecting the environment or dealing with environmental matters, as hereinafter defined, hazardous substances of any kind or nature, whether imposed or enforced by any state, local or federal agency, and that Tenant shall alter its use of the Premises to comply with such laws, ordinances, rules or regulations if required to do so by any such governmental agency. Tenant shall not use the Premises, maintain them nor allow use of the Premises in any manner constituting a violation of any ordinance, statute, rule, regulation or order of any governmental authority, including, but not limited to, the ADA, zoning ordinances, or environmental rules, regulations and laws, nor will the Tenant maintain or permit any nuisance to occur or to be maintained on the Premises.

12. EARLY TERMINATION AS A RESULT OF THE DEATH OR DISABILITY OF A SOLE PRACTITIONER; OTHER VACATION OR ABANDONMENT. If Tenant is a sole practitioner and dies or becomes disabled (defined for purposes of the Lease as any physical or mental condition that prevents or is reasonably expected to prevent such physician from practicing medicine for more than ninety (90) days), then either party shall have the right to terminate the Lease prior to the expiration date by giving the other party not less than thirty (30) days prior written notice. Except as expressly provided in the preceding sentence, any other vacation of the Demised Premises for more than thirty (30) days or any abandonment of the Demised Premises by Tenant will be considered a material default under the Lease.

13. DEFAULT. Tenant shall be in default of the terms of the Lease if Tenant shall fail to make a payment of any rent or additional rent, and such rent or additional rent is not paid within ten (10) days of written notice by Landlord to Tenant of non-payment of same, or in the event that Tenant shall otherwise commit an act of default under the terms hereof, and shall not cure such default within thirty (30) days of written notice by Landlord to Tenant of such default. In the event of default:

A. Landlord may continue the Lease in full force and effect and shall have the right to collect rent when due. During the term Tenant is in default, Landlord may re-enter the Demised Premises with legal process and relet same, or any part thereof, to third parties for Tenant's account. Tenant shall be liable for all reasonable costs Landlord incurred for reletting the Demised Premises, including without limitation broker's commissions, expenses associated with repairing and / or remodeling the Demised Premises in order to return the Demised Premises to the same condition as when received by Tenant from Landlord and similar costs. Reletting can be done for a period shorter or longer than the remaining term of the Lease. Tenant shall pay to Landlord the rent due under the Lease on the date such rent is due, less the rent Landlord receives from any reletting. Landlord shall make its best efforts to relet the Demised Premises at a reasonable price. Under this paragraph, Tenant's obligations shall not exceed the total rent due for the remainder of the term.

Form No. 0103 Rev. by Legal Dept as of 6/26/06.

4



B.   Landlord may terminate the Lease pursuant to the terms of this Section 13. Upon termination, Landlord shall have the right to collect an amount equal to all expenses, if any, including reasonable attorneys' fees, incurred by Landlord in recovering possession of the Demised Premises and all reasonable costs and charges for the care of the Demised Premises while vacated by Tenant.

C.   Should any of these remedies or any portion thereof not be permitted by the laws of the state where the Building is located, then such remedy or portion thereof shall be considered deleted and unenforceable, and the remaining remedies or portions thereof shall be and remain in full force and effect, and Landlord may avail itself of these as well as any other remedies or damages allowed by law.

14.   RIGHT OF ACCESS   Landlord and its agents shall have reasonable access to the Demised Premises during all reasonable business hours for the purpose of examining same to ascertain if they are in good repair and to make reasonable repairs which Landlord may be required to make hereunder.

15.   END OF TERM.   At the termination of the Lease, Tenant shall surrender its interest in the Demised Premises to Landlord in as good condition and repair as reasonable use thereof will permit, reasonable wear and tear excepted, and will leave the Demised Premises broom clean. Tenant shall have the right, prior to said termination, to remove any equipment, furniture, trade fixtures or other personal property in the Demised Premises owned by Tenant, provided that Tenant promptly repairs any damage to the Demised Premises caused by such removal. In the event of holding over by Tenant after the expiration or termination of the Lease, Tenant shall pay rent at the then-current rate on a monthly basis.  Any holding over with consent of Landlord in writing shall thereafter constitute a Lease for month-to-month.

16.   ATTORNEYS' FEES.   In the event that suit is brought by either party against the other for breach or default under the terms of the Lease, the prevailing party shall be entitled to reasonable attorneys' fees, expenses (including expert witness fees) and court costs equal to the sum established by the court.

17.   HEADINGS.   The article captions contained in the Lease are for the convenience of the parties only and shall not be considered in the construction or interpretation of any provision hereof.

18.   ENTIRE AGREEMENT.   The Lease contains the entire agreement between the parties and supersedes any and all other prior oral and written agreements between the parties regarding the subject matter contained herein and may not be changed or terminated orally but only by agreement in writing and signed by all parties.

19.   DAMAGE OR DESTRUCTION.   If the Demised Premises are damaged by fire or other casualty, the damage shall be repaired by and at the expense of Landlord (excluding any equipment which is owned by Tenant), provided that such repairs can, in Landlord's opinion, be made within sixty (60) days after the occurrence of such damage. Landlord shall notify Tenant within fifteen (15) days of the event of casualty of its determination. Until such repairs are completed, the rent shall be abated in proportion to the part of the Demised Premises rendered unusable, but there shall be no abatement of rent for a period equal to one (1) day or less.  If such repairs cannot, in Landlord's opinion, be made within sixty (60) days and Landlord nonetheless chooses to repair, then Tenant may, at its option, continue as Tenant under the Lease until such repairs are completed, during which time all rent shall abate, or Tenant may terminate the Lease. A total destruction of the building in which the Demised Premises are located shall automatically terminate the Lease. Total destruction of the building shall be defined as damage greater than fifty percent (50%) of the then replacement value thereof.

20.   EMINENT DOMAIN.   If the whole of the Demised Premises or so much thereof as to render the balance unusable by Tenant shall be taken under power of eminent domain, the Lease shall automatically terminate as of the effective date of the taking.  In the event of a partial taking which does not result in a termination of the Lease, the rent reserved hereunder shall remain unaffected. Landlord may, without any obligation or liability to Tenant, stipulate with any condemning authority for a judgment of condemnation without the necessity of a formal suit or judgment of condemnation, and the date of taking under this clause shall then be deemed the date agreed to under the terms of said agreement for stipulation and the Lease shall terminate as of the stipulated date.

21.   WAIVER.   No waiver by either party shall be deemed to be a waiver of any other provision hereof or of any subsequent breach by either party of the same or any other provision.  Landlord 's consent to or approval of any act by Tenant requiring Landlord's consent or approval shall not be deemed to render unnecessary the obtaining of Landlord's consent to or approval of any subsequent act of Tenant, whether or not similar to the act so consented to or approved.

Form No. 0103 Rev. by Legal Dept as of 6/26/06.

5



22.    NOTICES. Any notice required or permitted to be given hereunder may be given by mail and shall be sufficiently given if personally served or sent by registered or certified mail or by special courier, addressed to the relevant party at the addresses specified in the Lease (notice to Tenant shall be given at the Demised Premises). For any notice given to Landlord, a copy shall be provided to the Landlord's counsel as follows: General Counsel, Legal Department, P.O. Box 217, Brentwood, Tennessee 37024-0217. From and after December 15, 2006: Community Health Systems, Attn: Legal Department, 4000 Meridian Blvd., Franklin, TN 37067 or Community Health Systems, Attn: Legal Department, P.O. Box 689020, Franklin, TN 37068.

23.    BINDING EFFECT. The Lease shall be binding upon and inure to the benefit of the parties hereto, their heirs, successors, assigns, executors and administrators. Nothing in this article shall be deemed to amend the provisions herein concerning assignment and subletting.

24.    APPLICABLE LAW. The laws of the state where the Building is located shall be employed in and govern the interpretation of all of the covenants, terms and conditions of the Lease.

25.    NO PARTNERSHIP RELATIONSHIP. Notwithstanding any agreement herein contained, Landlord shall not be construed or held to be a partner or associate of Tenant in the conduct of its business, it being expressly understood and agreed that the relationship between the parties is and at all times shall remain that of Landlord and Tenant.

26.    NO REQUIREMENT TO REFER. The parties expressly agree that nothing contained in the Lease shall require Tenant or any physician or other referral source to refer or admit any patients to, or order any goods or services from Landlord or any affiliate. Notwithstanding any unanticipated effect of any provision of this Agreement, neither party will knowingly or intentionally conduct himself in such a manner as to violate the prohibition against fraud and abuse in connection with the Medicare and Medicaid programs (42 USC Section 1320a-7b). Both parties represent to the other that the Rentals provided for in the Lease are at fair market value rates and do not take into account the value or volume of any referrals or other business generated between the parties. Both as a material condition to this Lease and as a continuing representation and warranty for the duration of this Lease, Tenant represents and warrants that neither it nor any of its owners, officers, directors, employees, agents, subcontractors etc. have been suspended, excluded, or debarred from any government payor program.

27.    QUIET ENJOYMENT. Landlord warrants and shall defend Tenant in the quiet enjoyment and possession of the Demised Premises during the term and any extension or renewal thereof.

28.    OPTION TO RENEW. Provided that Tenant is not then in default hereunder, upon the expiration of the term hereof, Tenant shall have the option to renew the Lease for the additional term(s), if any, set forth on the cover page of this Lease, upon the same terms and conditions as this Lease except that the rentals payable during the renewal term shall be adjusted to fair market rental as set forth herein.

29.    SUBORDINATION, ATTORNMENT AND NON-DISTURBANCE.

    A.    Tenant agrees that the Lease and all rights of Tenant hereunder are and shall be subject and subordinate to any ground or underlying lease which may now or hereafter be in effect regarding the Building or any component thereof, to any mortgage now or hereafter encumbering the Demised Premises or the Building or any component thereof, to all advances made or hereafter to be made upon the security of such mortgage, to all amendments, modifications, renewals, consolidations, extensions and restatements of such mortgage, and to any replacements and substitutions for such mortgage. The terms of this provision shall be self-operative and no further instrument of subordination shall be required. Tenant, however, upon request of any party in interest, shall execute promptly such instrument or certificates as may be reasonably required to carry out the intent of this provision.

    B.    In the event any proceedings are brought for the foreclosure of, or in the event of exercise of the power of sale under, or in the event of a deed in lieu of foreclosure with respect to any mortgage covering the Demised Premises or the Building, or in the event of termination of any Lease under which Landlord may hold title, Tenant shall, at the option of transferee, attorn to such transferee and shall recognize and be bound and obligated hereunder to such person as the Landlord under the Lease. Tenant agrees to execute any attornment agreement not in conflict with this provision.

Form No. 0103 Rev. by Legal Dept as of 6/26/06.



C.  Notwithstanding anything contained herein to the contrary, so long as Tenant is not in default in the payment of Rentals or other charges, or in the performance of any of the other terms, covenants or conditions of the Lease, mortgagee or such person shall not disturb Tenant in its occupancy of the Demised Premises during the original or any renewal term of the Lease notwithstanding any event or proceedings described in this section.

30.  MASTER CONTRACT LIST.  This contract is identified on a master list of contracts maintained on a Lotus Notes server.

31.  ESTOPPEL CERTIFICATE.  Within thirty (30) days after written request from Landlord, Tenant shall deliver an executed statement addressed to Landlord certifying (if such be the case) that this Lease is in full force and effect, that Tenant has commenced the payment of rent, and that there are no defenses or offsets to this Lease claimed by Tenant, as well as any other information reasonably requested.  If Tenant fails or refuses to give a certificate hereunder within the required time frame, then the information on such certificate as submitted by Landlord shall be deemed correct for all purposes and Landlord shall have the right to treat such failure or refusal as a default by Tenant.

32.  FORCE MAJEURE.  With the exception of the obligation of Tenant to pay Rent and all other amounts that may be due from time to time under this Lease, if either party shall be delayed or hindered in or prevented from doing or performing any act or thing required hereunder by reason of any matters beyond the reasonable control of such party, then such party shall not be liable or responsible for any such delays and the doing or performing of such act or thing shall be extended for a period equivalent to the period of such delay.  In such event, this Lease and the obligations of both parties to perform and comply with all of the other terms and provisions of this Lease shall in no way be affected, impaired, or excused.

33.  WAIVER OF JURY TRIAL

LANDLORD AND TENANT HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION, ACTION, PROCEEDING OR COUNTERCLAIM BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS LEASE OR THE OBLIGATIONS EVIDENCED HEREBY, THE RELATIONSHIP OF LANDLORD AND TENANT, TENANT'S USE OF OR OCCUPANCY OF THE PREMISES, ANY CLAIM OF INJURY OR DAMAGE, OR ANY EMERGENCY OR OTHER STATUTORY REMEDY OR ANY OTHER DOCUMENT OR INSTRUMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT TO EACH OF LANDLORD AND TENANT IN ENTERING INTO THIS LEASE.

34.  SUBLEASE.  In the event the Lease is a sublease to an underlying lease agreement, as described in the Lease, then with respect to the Demised Premises, except for the Term of the Lease and the Rental Rate/Installment, Tenant shall perform all of the obligations of tenant/lessee under the underlying lease agreement.

35.  APPROVALS.  Neither this Lease nor any amendment or modification hereto shall be effective or legally binding upon Landlord, or any officer, director, employee or agent thereof, unless and until it has been reviewed and approved in writing by a President of Landlord's owner and by Landlord's Legal Counsel.

36.  RULES AND REGULATIONS.  Tenant shall faithfully observe and comply strictly with the following rules and regulations, adopted for the safety, care and cleanliness of the Building or the preservation of good order therein.  Landlord shall not be liable to Tenant for a violation of such rules and regulations, or for the breach of any covenant or condition in a lease by any other tenant in the Building.  Landlord may, from time to time and upon notice to Tenant, adopt additional or substitute rules and regulations of the Building.

A.  Conduct.  Tenant shall not conduct its practice or business, or advertise such business, profession or activities of Tenant conducted in the Premises in any manner which violates local, state or federal laws or regulations.

B.  Hallways and Stairways.  Tenant shall not obstruct or use for storage, or for any purpose other than ingress and egress, the sidewalks, entrance, passages, courts, corridors, vestibules, halls, elevators and stairways of the Building.

C.  Nuisances.  Tenant shall not make or permit any noise, odor or act that is objectionable to other occupants of the Building to emanate from the Premises, and shall not create or maintain a nuisance thereon.

Form No. 0103 Rev. by Legal Dept as of 6/26/06.

7



D.  Musical Instruments, Etc.  Tenant shall not install or operate any phonograph, musical instrument, radio receiver or similar device in the Building in such manner as to disturb or annoy other tenants of the Building or the neighborhood.  Tenant shall not install any antennae, aerial wires or other equipment outside the Building without the prior written approval of Landlord.

E.  Locks  No additional locks or bolts of any kind shall be placed upon any of the doors or windows by Tenant, nor shall any changes be made in existing locks or the mechanism thereof.  Tenant must upon the termination of its tenancy restore to Landlord all keys to the Premises and toilet rooms either furnished to or otherwise produced by Tenant, and in the event of loss of any keys so furnished, Tenant shall pay to Lessor the cost thereof.

F.  Obstructing Light, Damage.  The doors, window glass, lights and skylights that reflect or admit light into the halls or other places of the Building shall not be covered or obstructed.  The toilets and urinals shall not be used for any purpose other than those for which they were intended and constructed, and no rubbish, newspapers or other substance of any kind shall be thrown into them.  Waste and excessive or unusual use of water shall not be allowed.  Tenant shall not mark, drive nails, screw or drill into, paint, nor in any way deface the walls, ceilings, partitions, floors, wood, stone or iron work.  The expense of any breakage, stoppage or damage resulting from a violation of this rule by Tenant shall be borne by Tenant.  Tenant shall be permitted to hang pictures on office walls, but it must be done in a workmanlike manner and in such a way as not to damage or deface such walls.

G.  Wiring  Electrical wiring of every kind shall be introduced and connected only as directed by Landlord, and no boring nor cutting of wires will be allowed except with the consent of Landlord.  The location of the telephone, call boxes, etc., shall be subject to the approval of Landlord.

H.  Equipment, Moving, Furniture, Etc.  Landlord shall approve the weight, size and position of all fixtures, equipment and other property brought into the Building, and the times of moving which must be done under the supervision of Landlord.  Landlord will not be responsible for any loss of or damage to any such equipment or property from any cause, and all damage done in the Building by moving or maintaining any such property shall be repaired at the expense of Tenant.  All equipment shall be installed as required by law.

I.  Requirements of Tenant.  The requirements of Tenant will be attended to only upon application at the office of Landlord.  Employees shall not perform any work nor do anything outside their regular duties unless under special instructions from Landlord.  No employees shall admit any person, Tenant or otherwise, to any other office without instruction from the office of Landlord.  All janitorial services personnel, guards or any outside contractors employed by Tenant shall be subject to the regulations and control of Landlord, but shall not act as an agent or servant of Landlord.

J.  Medical and Hazardous Wastes.  Tenant shall comply with all policies established from time to time by Landlord regarding the storage and disposal of hazardous substances, wastes and materials, and medical, special or infectious wastes.

K.  Access to Building.  Any person entering or leaving the Building may be questioned by Building security regarding his/her business in the Building and may be required to sign in and out.  Anyone who fails to provide a satisfactory reason for being in the Building may be excluded.

L.  Vehicles, Animals, Refuse.  Tenant shall not allow anything to be placed on the outside window ledges of the Premises or to be thrown out of the windows of the Building.  No bicycle or other vehicle, and no animal, except for service animal, shall be brought into the offices, halls, corridors, elevators or any other parts of the Building by Tenant or the agents, employees or invitees of Tenant, and Tenant shall not place or permit to be placed any obstruction or refuse in any public part of the Building.

M.  Equipment Defects.  Tenant shall give Landlord prompt notice of any accidents to or defects in the water pipes, gas pipes, electric lights and fixtures, heating apparatus, or any other service equipment.

N.  Parking.  Unless otherwise specified by Landlord, Tenant and its employees may park automobiles only in spaces designated by Landlord for such purpose and shall in no event

Form No. 0103 Rev. by Legal Dept as of 6/26/06.

8



park in spaces reserved for public parking. Tenant agrees that Landlord assumes no responsibility of any kind whatsoever in reference to such automobile parking area or the use thereof by Tenant or its agents or employees.

O.    Conservation and Security. Tenant will see that all windows and doors are securely locked, and that all faucets and electric light switches are turned off before leaving the Building.

P.    Signage. Tenant shall not place any sign upon the Demised Premises or the Building without Landlord's prior written consent.

Form No. 0103 Rev. by Legal Dept as of 6/26/06.

FINAL

11/28/2005  11:12    3343827001                                      PAGE   03/10

# # 05-42099-0
Date Prepared  December 15, 2005                    AV1          Case # CU05-177

# STATEMENT OF CLAIM
## In The CIRCUIT COURT of BUTLER, Alabama

| | | |
|---|---|---|
| **Plaintiff** | Genezen Healthcare Inc<br>P.O. Box 571811<br>Houston, TX 77257 | **Defendant Address** Dolores V Victoria<br>44 Medical Court #3<br>Greenville, Alabama 36037 |
| **Address** | | |
| **Attorney** | Zarzaur & Schwartz, PC<br>Post Office Box 11366<br>Birmingham, AL 35202<br>205/250-8437 | **Additional Defendant Address** |
| | | **Additional Defendant Address** |

### NOTICE TO EACH DEFENDANT
#### READ CAREFULLY
YOU ARE BEING SUED IN THE ABOVE COURT BY THE PLAINTIFF(S) SHOWN ABOVE.  THE JUDGE HAS NOT YET MADE ANY DECISION IN THIS CASE, AND YOU HAVE THE RIGHT TO A TRIAL TO TELL YOUR SIDE.
HOWEVER, IF YOU, OR YOUR LAWYER, FAIL TO ANSWER THIS COMPLAINT WITHIN THIRTY (30) DAYS AFTER YOU RECEIVE THESE PAPERS, A JUDGMENT CAN BE TAKEN AGAINST YOU.  ONCE A JUDGMENT HAS BEEN ENTERED AGAINST YOU, YOUR PAYCHECK CAN BE GARNISHED AND/OR YOUR HOME OR PROPERTY SOLD TO SATISFY THAT JUDGMENT

## COMPLAINT
### COUNT I
I.   I claim that the defendant Dolores V Victoria owes the plaintiff the sum of $14,875.93 because: VERIFIED ACCOUNT STATED, plus 6.000 % for interest plus $       for lawyer's fees (only if plaintiff is represented by a licensed practicing attorney and if the contract you signed so provides), less remittitur for any payments made and with waiver of exemptions, if the contract you signed so provides.  TOTAL  $ 14,875.93 + INT

### COUNT II
II.  I claim that the defendant      owes the plaintiff the sum of $       because:  , plus $       for interest plus $ for lawyer's fees (only if plaintiff is represented by a licensed practicing attorney and if the contract you signed so provides), less remittitur for any payments made and with waiver of exemptions, if the contract you signed so provides.

**VERIFICATION OF THE DEBT, THE NAME AND ADDRESS OF YOUR ORIGINAL CREDITOR, IF DIFFERENT FROM ABOVE, WILL BE PROVIDED TO YOU IN WRITING IF REQUESTED.  THE DEBT WILL OTHERWISE BE CONSIDERED VALID.  THE DEBT COLLECTOR IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Plaintiff also claims from each defendant court costs in the sum of $ 251.00.  NOTE:  the total amount of court costs may be more than this amount when the case is finally settled.  The clerk will inform you of any additional costs at the close of the case.

| | | |
|---|---|---|
| _Allen Stephenson_      BY: _____ | _____ | FILED IN OFFICE<br>ALLEN STEPHENSON |
| **Clerk** | Plaintiff or Attorney (signature) | DEC 2 05 2005 |
| **CLERK ADDRESS:** Circuit Court of BUTLER County<br>Butler County Courthouse<br>Butler County Courthouse<br>Post Office Box 236<br>Greenville, AL 36037 | David Chip Stewart<br>Diana Harris   PHONE NO. | CIRCUIT CLERK<br>BUTLER COUNTY |

05-42099-0

**STATE OF ALABAMA**
Unified Judicial System
_____Butler_____ County

Revised 3/23/05

Check one (Not for Workers' Comp., FFA, or Small Claims cases):
☐ District Court  ☒ Circuit Court

▶**Case No.**
CV05-177

| Style of case: | |
|---|---|
| Genezen Healthcare, Inc. | **CIVIL MOTION COVER SHEET** |
| v. | |
| Dolores V. Victoria | Name of Filing Party:   Genezen Healthcare, Inc. |

Name, Address, and Telephone No. of Attorney or Party, if Not Represented:
David Chip Schwartz 205-250-8437
P.O. Box 11366, Birmingham, AL 35202
Attorney Alabama State Bar No.:          SCH034

To be filled out by Clerk of Court:
☐ Filing Fee Charged and Collected (Amt $_____)
☐ Filing Fee Not Required
☐ Affidavit of Hardship on File or State Agency

## Type of Motion (Check One)

| **Motions Requiring Fee** | **Motions Not Requiring Fee** |
|---|---|

**Motions Requiring Fee**

☐ Default Judgment ($50.00)
☐ Joinder in Other Party's Dispositive Motion (i.e. Summary Judgment, Judgment on the Pleadings, or other Dispositive Motion not pursuant to Rule 12(b)) ($50.00)
☐ Judgment on the Pleadings ($50.00)
☐ Motion to Dismiss, or in the Alternative Summary Judgment ($50.00)
☐ Renewed Dispositive Motion (Summary Judgment, Judgment on the Pleadings, or other Dispositive Motion not pursuant to Rule 12(b)) ($50.00)
☑ Summary Judgment Pursuant to Rule 56 ($50.00)
☐ Other _____
   pursuant to Rule_____ ($50.00)

* Motion fees are enumerated in §12-19-71(a). Fees pursuant to Local Act are not included. Please contact the Clerk of the Court regarding applicable local fees.

☐ Local Court Cost $_____

**Motions Not Requiring Fee**

☐ Add Party
☐ Amend
☐ Change of Venue/Transfer
☐ Compel
☐ Consolidation
☐ Continue
☐ Deposition
☐ Designate a Mediator
☐ Judgment as a Matter of Law (during trial)
☐ Disburse Funds
☐ Extension of Time
☐ In Limine
☐ Joinder
☐ More Definite Statement
☐ Motion to Dismiss pursuant to Rule 12(b)
☐ New Trial
☐ Objection of Exemptions Claimed
☐ Pendente Lite
☐ Plaintiff's Motion to Dismiss
☐ Preliminary Injunction
☐ Protective Order
☐ Quash
☐ Release from Stay of Execution
☐ Revive Judgment
☐ Sanctions
☐ Sever
☐ Special Practice in Alabama
☐ Stay
☐ Strike
☐ Supplement to Pending Motion
☐ Vacate or Modify
☐ Withdraw
☐ Other_____
   pursuant to Rule_____ (Subject to filing fee)

Hearing Date:

| Check here if you have filed or are filing contemporaneously with this motion an Affidavit of Substantial Hardship or if you are filing on behalf of an agency or department of the State, county, or municipal government. ☐ | Date:   6-26-06 | Signature of Attorney or Party: |
|---|---|---|

* This Cover Sheet must be completed, signed by the filing attorney or party, and submitted to the Clerk of Court upon the filing of any motion. Each motion should contain a separate Cover Sheet.
** Motions titled 'Motion to Dismiss' that are not pursuant to Rule 12(b) and are in fact Motions for Summary Judgments are subject to filing fee.



## IN THE CIRCUIT COURT OF BUTLER COUNTY, ALABAMA

GENEZEN HEALTHCARE, INC.,                    )

           **Plaintiff,**                              )

                                                  )

**v.**                                            )          **CASE NO. CV-05-177**

DOLORES V. VICTORIA,                         )

           **Defendant.**                             )

### MOTION FOR SUMMARY JUDGMENT

    Comes Now, the Plaintiff, GENEZEN HEALTHCARE, INC., by their attorneys Zarzaur & Schwartz, P.C., pursuant to Rule 56 of The Alabama Rules of Civil Procedure moves this Honorable Court for entry of Summary Judgment in Plaintiff's favor and against the Defendant, DOLORES V. VICTORIA, in the sum of  $15,438.35, which consists of the principal amount of $14,875.93 and interest of $562.42 at the rate of 6% from the date of default, November 8, 2005, plus court costs.

    Plaintiff states that there is no genuine issue as to any material fact and that Plaintiff is entitled to a Judgment as a matter of law.

    This Motion is supported by the Affidavit of Rodney Wright of Genezen Healthcare Inc., copy of Agreement, Itemizations and Statement of Account.

    WHEREFORE, Plaintiff prays that this Honorable Court grant its Motion and enter Judgment in its favor and against the Defendant, DOLORES V. VICTORIA, in the



sum of $15,438.35, which consists of the principal amount of $14,875.93 and interest of $562.42 at the rate of 6% from the date of default, November 8, 2005, plus court costs.

DAVID CHIP SCHWARTZ (SCH034)
Attorney for the Plaintiff

OF COUNSEL:
Zarzaur & Schwartz, P.C.
P. O. Box 11366
Birmingham, AL 35202
(205) 250-8437
ZS File # 05-42099

## NARRATIVE SUMMARY OF FACTS

The Defendant, Dolores V. Victoria, signed an Agreement to be responsible for the debt incurred as set out in the attached documentation. Plaintiff provided services to the Defendant. The Defendant owes the principal of $15,438.35, plus interest and court costs.

## CERTIFICATE OF SERVICE

I hereby certify that I have on this ___ day of June, 2006 served a copy of the above and foregoing Motion for Summary Judgment by placing a copy of same in the United States mail, postage prepaid and properly addressed as follows:

P. Richard Hartley, Esq.
Attorney for Defendant
P.O. Box 583
Greenville, AL 36038

OF COUNSEL

ZS File # 05-42099

Sep 29 05 12:08p                                                                    p.4

## BUSINESS RECORDS AFFIDAVIT

THE STATE OF _Texas_ §

COUNTY OF _Dallas_ §

BEFORE ME, the undersigned authority, on this day personally appeared _Rodney Wright_, who being duly sworn, deposed as follows:

"My name is _Rodney Wright_. I have personal knowledge of the facts herein stated. I am a custodian of the records of _Genesen Healthcare, Inc_ ("the Plaintiff"), which is (Complete 1,2 or 3)

1. a corporation duly incorporated and existing under the laws of the State of _Deleware_
2. a partnership consisting of _____
3. owned and operated by _____; or _____, a sole trader.

I am familiar with the books of said corporation, partnership or sole trader. The attached account against _Delores V. Victoria MD_, constituting this cause of action, is taken from the original books of entry, and such records or books are kept by the Plaintiff in the regular course of business, and it is the regular course of business of the Plaintiff for an employee or representative of the Plaintiff, with knowledge of the act, event, condition or opinion, recorded to made the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are the original or exact duplicates of the original. The attached account is just and true within the knowledge of this affiant. All just and lawful offsets, payments and credits have been allowed and the sum of _fourteen thousand eight hundred_ Dollars ($ _14,875.93_ ) _seventy five & 93/100_ is due, owing and unpaid.

_____
AFFIANT

SWORN AND SUBSCRIBED TO before me on this the _13th_ of _Oct_, 2005

_____
Notary Public in and for the County and
State first herein before written

My commission expires: _06-08-2008_

_M. Kristi McInnis_
Printed name of notary public

M. KRISTI MCINNIS
Notary Public, State of Texas
My Commission Expires
June 08, 2008

05-42099

(REV. 1/93)

**United States Bankruptcy Court**

_Middle_ District of _Alabama_

**PROOF OF CLAIM**

**RECEIVED**

APR 30 2007

U.S. BANKRUPTCY COURT
MONTGOMERY, ALABAMA

In re (Name of Debtor)

_Deloris V. Victoria_

Case Number

_Ch7  06-31225_

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor
(The person or other entity to whom the debtor owes money or property)

WHITNEY NATIONAL BANK

Name and Address Where Notices Should be Sent
P.O. BOX 61260
NEW ORLEANS, LA 70161
Recovery - Suite 400
Donna Castle

Telephone No.

☐ Check box if you are aware that any-one else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR:

_720 225 302_

Check box if this claim  ☐ replaces
                        ☐ amends   a previously filed claim, dated: _____

**1. BASIS FOR CLAIM**
- ☐ Goods sold
- ☐ Services performed
- ☒ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☐ Other (Describe briefly)

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (Fill out below)
  Your social security number _____
  Unpaid compensation for services performed
  from _____ to _____
       (date)                (date)

**2. DATE DEBT WAS INCURRED**

_12-20-1999_

**3. IF COURT JUDGMENT, DATE OBTAINED:**

**4. CLASSIFICATION OF CLAIM.** Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured nonpriority, (2) Unsecured Priority, (3) Secured. It is possible for part of a claim to be in one category and part in another. CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM AT TIME CASE FILED.

☐ **SECURED CLAIM $ _____**
Attach evidence of perfection of security interest
Brief Description of Collateral:
☐ Real Estate   ☐ Motor Vehicle   ☐ Other (Describe briefly)

Amount of arrearage and other charges at time case filed included in secured claim above, if any $ _____

☒ **UNSECURED NONPRIORITY CLAIM $ _____**
A claim is unsecured if there is no collateral or lien on property of the debtor securing the claim or to the extent that the value of such property is less than the amount of the claim.

☐ **UNSECURED PRIORITY CLAIM $ _4,715.75_**
Specify the priority of the claim.

☐ Wages, salaries, or commissions (up to $4000),* earned not more than 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier—11 U.S.C. § 507(a)(3)

☐ Contributions to an employee benefit plan—11 U.S.C. § 507(a)(4)

☐ Up to $1,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use—11 U.S.C. § 507(a)(6)

☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child—11 U.S.C. § 507(a)(7)

☐ Taxes or penalties of governmental units—11 U.S.C. § 507(a)(8)

☐ Other—Specify applicable paragraph of 11 U.S.C. § 507(a)_____
*Amounts are subject to adjustment on 4/1/98 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**5. TOTAL AMOUNT OF CLAIM AT THE TIME CASE FILED:**
$ _4,715.75_ (Unsecured)   $ _____ (Secured)   $ _____ (Priority)   $ _4,715.75_ (Total)

☐ Check this box if claim includes charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges.

**6. CREDITS AND SETOFFS:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. In filing this claim, claimant has deducted all amounts that claimant owes to debtor.

**7. SUPPORTING DOCUMENTS:** _Attach copies of supporting documents,_ such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, or evidence of security interests. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. TIME-STAMPED COPY:** To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

Date
_4-17-07_

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)

_Albert L. Lord, Vice President_

_Penalty for presenting fraudulent claim:_ Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Printer Friendly View                                                                 Page 1 of 1



## PERSONAL LINE OF CREDIT AGREEMENT AND DISCLOSURE

| Principal | Loan Date | Maturity | Loan No | Call | Collateral | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|---|
| $10,000.00 | 12-20-1999 | | | | | 7202258 | | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

**Borrower:** DR DELORES V VICTORIA (SSN: 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)
P O BOX 810
GREENVILLE, AL 36037

**Lender:** WHITNEY NATIONAL BANK
109 GREENVILLE BYPASS
GREENVILLE, AL 36037

---

**CREDIT LIMIT: $10,000.00**                                      **Date of Agreement: December 20, 1999**

**Introduction.** This Personal Line of Credit Agreement and Disclosure ("Agreement") governs your line of credit (the "Credit Line" or the "Credit Line Account") issued through WHITNEY NATIONAL BANK. In this Agreement, the words "Borrower," "you," "your," and "Applicant" mean each and every person who signs this Agreement, including all Borrowers named above. The words "we," "us," "our," and "Lender" mean WHITNEY NATIONAL BANK. You agree to the following terms and conditions:

**Promise to Pay.** You promise to pay WHITNEY NATIONAL BANK, or order, on demand the total of all credit advances and FINANCE CHARGES, together with all costs and expenses for which you are responsible under this Agreement. You will pay your Credit Line according to the payment terms set forth below. If there is more than one Borrower, each is jointly and severally liable on this Agreement. This means we can require any one of you to pay all amounts due under this Agreement, including credit advances made to any of you. Each Borrower authorizes any other Borrower, on his or her signature alone, to cancel the Credit Line, to request and receive credit advances, and to do all other things necessary to carry out the terms of this Agreement. We can release any of you from responsibility under this Agreement, and the others will remain responsible.

**Minimum Payment.** Your "Regular Payment" will be monthly payments of $20.00 or 3.00% of the Outstanding Balance on your periodic billing statement, whichever is greater. Your "Minimum Payment" will be your Regular Payment plus all amounts past due, any voluntary credit life and disability insurance premiums, and all other charges. You agree to pay not less than the Minimum Payment on or before the due date indicated on your periodic billing statement. In any event, if your Credit Line balance falls below $20.00, you agree to pay your balance in full.

**Application of Payments.** Unless otherwise agreed or required by applicable law, payments and other credits will be applied in the following order: to: (a) FINANCE CHARGES; (b) unpaid principal; (c) any amounts that exceed your Credit Limit; and (d) late charges and other charges.

**Term.** The term of your Credit Line will begin as of the date of this Agreement ("Opening Date") and will continue until demand is made under this Agreement or until this Credit Line is terminated for any reason. At that time, or any time thereafter, all outstanding principal, accrued interest, any credit life and disability insurance premiums, and any other outstanding charges will be payable on demand.

**Receipt of Payments.** All payments must be made by a check, money order, or other instrument in U.S. dollars and must be received by us at the remittance address shown on your periodic billing statement. Payments received at that address prior to 2:00 P.M. Central Time on any business day will be credited to your Credit Line as of the date received. If we receive payments at other locations, such payments will be credited promptly to your Credit Line, but crediting may be delayed for up to five (5) days after receipt.

**Credit Limit.** This Agreement covers a revolving line of credit for Ten Thousand & 00/100 Dollars ($10,000.00), which will be your "Credit Limit" under this Agreement. You may borrow against the Credit Line, repay any portion of the amount borrowed, and re-borrow up to the amount of the Credit Limit. Your Credit Limit is the maximum amount you may have outstanding at any one time. You agree not to attempt, request, or obtain a credit advance that will make your Credit Line Account balance exceed your Credit Limit. Your Credit Limit will not be increased should you overdraw your Credit Line Account. If you exceed your Credit Limit, you agree to repay immediately the amount by which your Credit Line Account exceeds your Credit Limit, even if we have not yet billed you.

**Charges to Your Credit Line.** We may charge your Credit Line to pay other fees and costs that you are obligated to pay under this Agreement or under any other document related to your Credit Line. Any amount so charged to your Credit Line will be a credit advance and will decrease the funds available, if any, under the Credit Line. However, we have no obligation to provide any of the credit advances referred to in this paragraph.

**Effective Disbursement Date.** The words "Effective Disbursement Date" as used in this Agreement mean a date, after the Opening Date, when the Agreement is accepted by us in the State of Alabama and you have met all of our conditions for the Credit Line. You agree and understand that you may not receive any credit advance under your Credit Line until after the Effective Disbursement Date of this Agreement.

**Credit Advances.** After the Effective Disbursement Date of this Agreement, you may obtain credit advances under your Credit Line as follows:

(a) Writing a preprinted "Special Check" that we will supply to you.

(b) Requesting a credit advance from your Credit Line to be applied to your designated account by telephone. You agree that we do not accept responsibility for the authenticity of telephone instructions and that we will not be liable for any loss, expense, or cost arising out of any telephone request, including any fraudulent or unauthorized telephone request, when acting upon such instructions believed to be genuine.

(c) Requesting a credit advance in person at any of our authorized locations.

If there is more than one person authorized to use this Credit Line Account, you agree not to give us conflicting instructions, such as one of you telling us not to give advances to the other.

**Limitations on the Use of Special Checks.** We reserve the right not to honor Special Checks in the following circumstances:

(a) Your Credit Limit has been or would be exceeded by paying the Special Check.

(b) Your Special Check is post-dated. If a post-dated Special Check is paid and as a result any other check is returned or not paid, we are not responsible.

(c) Your Special Checks have been reported lost or stolen.

(d) Your Special Check is not signed by an "Authorized Signer" as defined below.

(e) You are in default or otherwise are in violation of this Agreement or would be so if we paid the Special Check.

(f) Your Special Check is less than the minimum amount required by this Agreement or you are in violation of any other transaction requirement or would be if we paid the Special Check.

(g) You use a Special Check to make payment on your Credit Line.

If we pay any Special Check under these conditions, you must repay us, subject to applicable laws, for the amount of the Special Check. The Special Check itself will be evidence of your debt to us, together with this Agreement. Our liability, if any, for wrongful dishonor of a check is limited to your actual damages. Dishonor for any reason as provided in this Agreement is not wrongful dishonor. We may choose not to return Special Checks along with your periodic billing statements; however, your use of a Special Check will be reflected on your periodic statement as a credit advance. We do not "certify" Special Checks drawn on your Credit Line.

**Transaction Requirements.** The following transaction limitations will apply to accessing your Credit Line by writing a Special Check, requesting an advance by telephone or requesting an advance in person.

**Minimum Advance Amount.** The minimum amount of any credit advance that can be made on your Credit Line is as follows: $100.00. This means any Special Check must be written for at least the minimum advance amount.

**Other Transaction Requirements.** If Credit Advances are obtained under your Credit Line pursuant to paragraphs (a), (b), or (c) in the Credit Advances provision above, i.e. by using a Special Check, requesting an advance by telephone, or requesting an advance in person, then subject to the minimum amount requirement, such advances will be made in the exact amount requested.

**Authorized Signers.** If you exceed your Credit Limit, the words "Authorized Signer" on Special Checks as used in this Agreement mean and include each person who (a) signs the application for this Credit Line, (b) signs this Agreement, or (c) has executed a separate signature authorization card for this Credit Line Account.

**Lost Special Checks.** If you lose your Special Checks or someone is using them without your permission, you agree to let us know immediately. The fastest way to notify us is by calling us at (334) 382-6511. You also can notify us at our address shown at the beginning of this Agreement.

12-20-1999    **PERSONAL LINE OF CREDIT AGREEMENT AND DISCLOSURE**    , Page 2
Loan No 720225302                              (Continued)

**Future Credit Line Services.** Your application for this Credit Line also serves as a request to receive any new services (such as access devices) which may be available at some future time as one of our services in connection with this Credit Line. You understand that this request is voluntary and that you may refuse any of these new services at the time they are offered. You further understand that the terms and conditions of this Agreement, together with any specific terms covering the new service, will govern any transactions made pursuant to any of these new services.

**Collateral.** Collateral securing other loans with us may also secure this Credit Line Account. To the extent collateral previously has been given to us by any person which may secure this Credit Line Account, whether directly or indirectly, it is specifically agreed that all such collateral consisting of household goods will not secure this Credit Line Account. In addition, if any collateral requires the giving of a right of rescission under Truth in Lending for this Credit Line Account, such collateral also will not secure this Credit Line Account unless all required notices of that right have been given.

**Right of Setoff.** You grant to us a contractual security interest in, and hereby assign, convey, deliver, pledge, and transfer to us all right, title and interest in and to, your accounts with us (whether checking, savings, or some other account), including without limitation all accounts held jointly with someone else and all accounts you may open in the future, excluding however all IRA, Keogh, and trust accounts. You authorize us, to the extent permitted by applicable law, to charge or setoff all sums owing on this Agreement against any and all such accounts.

**Periodic Statements.** If you have a balance owing on your Credit Line Account or have any account activity, we will send you a periodic statement. It will show, among other things, credit advances, FINANCE CHARGES, other charges, payments made, credits, your "Previous Balance," and your "New Balance." Your statement also will identify the Minimum Payment you must make for that billing period and the date it is due.

**When FINANCE CHARGES Begin to Accrue.** Periodic FINANCE CHARGES for credit advances under your Credit Line will begin to accrue on the date credit advances are posted to your Credit Line. There is no "free ride period" which would allow you to avoid a FINANCE CHARGE on your Credit Line credit advances.

**Method Used to Determine the Balance on Which the FINANCE CHARGE Will Be Computed.** A daily FINANCE CHARGE will be imposed on all credit advances made under your Credit Line imposed from the date of each credit advance based on the "average daily balance method." To get the average daily balance for any month in which your Periodic Rate and ANNUAL PERCENTAGE RATE do not change, we take the beginning balance of your Credit Line Account each day, add any new advances and subtract any payments or credits and any unpaid FINANCE CHARGES. This gives us a daily balance. Then, we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle.

In any billing cycle during which there is an adjustment in your Periodic Rate and ANNUAL PERCENTAGE RATE, two average daily balances will be calculated for your Account. In such instances, we will compute the first average daily balance by adding together the daily balances of your Account, calculated as indicated above, for the days when the first Periodic Rate applied and dividing that total by the number of days that the first Periodic Rate was in effect. The average daily balance for the period during which the second Periodic Rate applied will be calculated in the same manner, based on the daily balances for, and the total number of, the days during which the second Periodic Rate was in effect.

In calculating the FINANCE CHARGE for a billing cycle in which there is a rate change, each average daily balance is multiplied by the number of days that the appropriate Periodic Rate was in effect, and that amount is multiplied by the appropriate Periodic Rate. These products are added together to calculate your FINANCE CHARGE.

**Method of Determining the Amount of FINANCE CHARGE.** Any FINANCE CHARGE is determined by applying the "Periodic Rate" to the balance described above. This is your FINANCE CHARGE calculated by applying a Periodic Rate.

**Periodic Rate and Corresponding ANNUAL PERCENTAGE RATE.** The Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE on your Credit Line are subject to change from time to time based on changes in an independent index which is the Prime rate as published in the Wall Street Journal that is effective on the first business day of the calendar month during which this Agreement is executed. When a range of rates have been published, the higher of the rates will be used (the "Index"). The Index is not necessarily the lowest rate charged by us on our loans. If the Index becomes unavailable during the term of this Agreement, we may designate a substitute Index after notice to you. The ANNUAL PERCENTAGE RATE on your Credit Line is based upon the Index and the margin described below ("Margin").

The Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE on your Credit Line will increase or decrease as the Index increases or decreases from time to time. An increase in the ANNUAL PERCENTAGE RATE will affect the minimum periodic payment amount as follows: will take the form of higher payment amounts. We will determine the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE as follows: We start with the current Index and then add a certain Margin as disclosed below. To obtain the periodic rate, we divide that sum by the number of days in a year (daily). To obtain the ANNUAL PERCENTAGE RATE we multiply the periodic rate by the number of days in a year (daily). This rate is subject, however, to the following minimum and maximum rates. In no event will the corresponding ANNUAL PERCENTAGE RATE be less than 7.000% per annum or more than the lesser of 18.000% per annum or the maximum rate allowed by applicable law. Adjustments to the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE resulting from changes in the Index will take effect monthly, on the first business day of each calendar month (that is, the first day of the calendar month that the Bank is open for all or substantially all services, Monday through Friday, excluding legal holidays), and may result in the application of two Periodic Rates and ANNUAL PERCENTAGE RATES for any billing cycle. Today the Index is 8.500% per annum, and therefore the initial ANNUAL PERCENTAGE RATE and the corresponding Periodic Rate on your Credit Line are as stated below:

| Range of Balance or Conditions | Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|---|
| All Balances | 2.500 % | 11.000 % | 0.03014 % |

Notwithstanding any other provision of this Agreement, we will not charge interest on any undisbursed loan proceeds.

**Forgo Rate Increases.** If we forgo an ANNUAL PERCENTAGE RATE increase, at the time of a later adjustment we may return to the full Index value plus margin.

**Conditions Under Which Other Charges May be Imposed.** You agree to pay all the other fees and charges related to your Credit Line as set forth below.

    **Annual Fee.** A nonrefundable Annual Fee of $20.00 will be charged to your Credit Line at the following time: On the day the statement is rendered for the month in which your Credit Line Account is established, and the day the statement is rendered for each such month annually thereafter.

    **Returned Items.** You may be charged $15.00 if you pay your Credit Line obligations with a check, draft, or other item that is dishonored for any reason, unless applicable law requires a lower charge or prohibits any charge.

    **Overlimit Charge.** Your Credit Line Account may be charged $20.00 if you cause your Credit Line Account to go over your Credit Limit. This includes writing a Special Check in excess of your available balance.

    **Miscellaneous Photocopying.** If you request a copy of any document, we may charge your Credit Line Account $1.00 Per item for the time it takes us to locate, copy, and mail the document to you. If your request is related to a billing error (see "Your Billing Rights" notice) and an error is found, we will reverse any photocopying charges.

    **Late Charges.** In addition to our rights upon default, your payment will be late if it is not received by us within 9 days of the "Payment Due Date" shown on your periodic statement. If your payment is late we may charge you the greater of 5.000% of the payment due or $10.00 but no more than $100.00.

**Right to Credit Advances.** After the Effective Disbursement Date, we will honor your requests for credit advances up to your Credit Limit so long as: (a) you are not in default under the terms of this Agreement; (b) this Agreement has not been terminated or suspended; and (c) your Credit Line has not been cancelled as provided above in the section of this Agreement titled "Term."

**Default.** We may declare you to be in default if any one or more of the following events occur: (a) you fail to pay a Minimum Payment when due; (b) you die; (c) you make any false or misleading statements on your Credit Line application; (d) you violate any provision of this Agreement or any other agreement with us; (e) any garnishment, attachment, or execution is issued against any material asset owned by you; (f) you exceed your Credit Limit; or (g) you file for bankruptcy or other insolvency relief, or an involuntary petition under the provisions of the Federal Bankruptcy Act is filed against you.

**Lender's Rights.** If you are in default, we may terminate or suspend your Credit Line Account without prior notice. However, we will notify you in writing of our action as soon as practicable.

    **(a) Suspension.** If we suspend your Credit Line, you will lose the right to obtain further credit advances. However, all other terms of this Agreement will remain in effect and be binding upon you, including your liability for any further unauthorized use of any Credit Line access devices.

    **(b) Termination.** If we terminate your Credit Line, your Credit Line will be suspended and the entire unpaid balance of your Credit Line Account will be immediately due and payable, without prior notice except as may be required by law, and you agree to pay that amount plus all FINANCE CHARGES and other amounts due under this Agreement.

    **(c) Collection Costs.** Upon default, we may hire or pay someone else to help collect your Credit Line Account if you do not pay. You agree to pay attorneys' fees not exceeding fifteen percent (15%) of the unpaid debt after default and referral to an attorney who is not our salaried employee, if at that time your unpaid balance exceeds $300.

12-20-1999    **PERSONAL LINE OF CREDIT AGREEMENT AND DISCLOSURE**    Page 3
Loan No 720225302                    (Continued)

**(d) Access Devices.** If your Credit Line is suspended or terminated, you must immediately return to us all Special Checks and any other access devices. Any use of Special Checks or other access devices following suspension or termination may be considered fraudulent. You will also remain liable for any further use of Special Checks or other Credit Line access devices not returned to us.

**Delay in Enforcement.** We may delay or waive the enforcement of any of our rights under this Agreement without losing that right or any other right. If we delay or waive any of our rights, we may enforce that right at any time in the future without advance notice. For example, not terminating your account for non-payment will not be a waiver of our right to terminate your account in the future if you have not paid.

**Termination by You.** If you terminate this Agreement, you must notify us and return all Special Checks and any other access devices to us. Despite termination, your obligations under this Agreement will remain in full force and effect until you have paid us all amounts due under this Agreement.

**Prepayment.** You may prepay all or any amount owing under this Credit Line at any time without penalty, except we will be entitled to receive all accrued FINANCE CHARGES, and other charges, if any. Payments in excess of your Minimum Payment will not relieve you of your obligation to continue to make your Minimum Payment. Instead, they will reduce the principal balance owed on the Credit Line. If you mark a check, money order, or other instrument sent in payment with "Paid in Full" or with similar language, we may accept the payment, and you will remain obligated to pay any further amount owed to us.

**Notices.** All notices will be sent to your address as shown in your Credit Line application. Notices will be mailed to you at a different address if you give us written notice of a different address. You agree to advise us promptly if you change your mailing address.

**Annual Review.** You agree that you will provide us with a current financial statement, a new credit application, or both, annually, on forms provided by us. Based upon this information we will conduct an annual review of your Credit Line Account. You also agree we may obtain credit reports on you at any time, at our sole option and expense, for any reason, including but not limited to determining whether there has been an adverse change in your financial condition. You authorize us to release information to others (such as credit bureaus, merchants, and other financial institutions) about the status and history of your Credit Line Account. Based upon a material adverse change in your financial condition (such as termination of employment or loss of income), we may suspend your Credit Line.

**Transfer or Assignment.** Without prior notice or approval from you, we reserve the right to sell or transfer your Credit Line Account to another lender, entity, or person. Your rights under this Agreement belong to you only and may not be transferred or assigned. Your obligations, however, are binding on your heirs and legal representatives.

**Tax Consequences.** You understand that neither WHITNEY NATIONAL BANK, nor any of its employees or agents, makes any representation or warranty whatsoever concerning the tax consequences of your establishing and using your Credit Line, including the deductibility of interest, and that neither WHITNEY NATIONAL BANK nor its employees or agents will be liable in the event interest on your Credit Line is not deductible. You should consult your own tax advisor for guidance on this subject.

**Governing Law.** This Agreement will be governed by federal law and by the laws of the State of Alabama. The Credit Line which is the subject of this Agreement has been applied for, considered, approved, and made in the State of Alabama.

**Interpretation.** The names given to paragraphs or sections in this Agreement are for convenience purposes only. They are not to be used to interpret or define the provisions of this Agreement. You agree that this Agreement is the best evidence of your agreements with us. If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced. Therefore, a court may enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable. If we go to court for any reason, we can use a copy, filmed or electronic, of any periodic statement, this Agreement, or any other document to prove what you owe us or that a transaction has taken place. The copy, microfilm, microfiche, or optical image will have the same validity as the original. You agree that, except to the extent you can show there is a billing error, your most current periodic billing statement is the best evidence of your obligation to pay.

**Selection of Payment Due Date.** You have the option of selecting the day of the month that your payment will be due. The date selected will appear on your periodic statement as the Payment Due Date. Please enter in the space below the (number) day of each month that you select as your Payment Due Date. If you do not select a date, your Payment Due Date will be the 15th day following each cycle Closing Date.

_____ By initialing here, I am choosing my Payment Due Date to be the _____15_____ day of each month. I understand that if I do not select a date, my Payment Due Date will be the 15th day following each cycle Closing Date.

**Power of Attorney/Alternative Accounts.** In the event that any Borrower has named, constituted and/or appointed, or in the future names, constitutes or appoints, any one or more persons or entities as his/her agent and attorney-in-fact with respect to his/her designated account or Credit Line Account by delivering to Lender a written power of attorney or, in the event that Borrower's designated account is currently an alternative account or in the future becomes an alternative account by the addition of one or more names as authorized signers on the designated account, Borrower acknowledges and agrees that any such agent or alternative account owner shall have the same authority as Borrower to request and receive credit advances under this Agreement, and Borrower hereby authorizes and empowers any such agent or alternative account owner for and on behalf of Borrower to borrow money and contract obligations under this Agreement, to request and receive credit advances under this Agreement, and to bind Borrower for such acts as fully as if the same were the acts of Borrower, and Borrower hereby ratifies and confirms and agrees to ratify and confirm all that is done by such agent or alternative account owner under and by virtue of the power of attorney and the authorization granted herein, as well as the power of attorney and the authorization granted herein.

**Level Payment Option.** You have the option of instructing us to bill you monthly for level payments on your Account in the amount specified below. However, if the amount of your level payment is less than the Minimum Payment required for any month, you must pay at least your Minimum Payment Amount.

_____ By initialing here, I am choosing to make level payments on my Credit Line Account. Please bill me for a monthly payment of $_____ on my Credit Line Account.

**Additional Payments.** At any time, you may make additional payments on your Credit Line, which will be applied as provided in the "Prepayment" and "Application of Payments" sections above. However, if you decide to pay the total amount due on your Credit Line, you must call us for an exact pay-off balance for the day you will make payment since FINANCE CHARGES are imposed each day any principal balance is outstanding. Should any additional payment exceed the total amount due under your Credit Line, we will credit the amount of such overpayment to your designated checking account with us or, if you have not designated a checking account, by forwarding a check to you in the amount of the overpayment.

**ADDITIONAL COLLATERAL.** _____

**ADDITIONAL PROVISIONS TO CREDIT AGREEMENT.** An exhibit, titled "ADDITIONAL PROVISIONS TO CREDIT AGREEMENT," is attached to this Agreement and by this reference is made a part of this Agreement just as if all the provisions, terms and conditions of the Exhibit had been fully set forth in this Agreement.

**Acknowledgment and Amendments.** You understand and agree to the terms and conditions in this Agreement. You acknowledge that, subject to applicable laws, we have the right to change the terms and conditions of the Credit Line program, including without limitation the Margin. If we change the Periodic Rate and subsequent new credit advances are made under this Agreement, the entire balance will be subject to the new rates. You also understand and agree that you may be subject to other agreements with us regarding transfer instruments or access devices which may access your Credit Line. Any person signing below may request a modification to the Agreement, and, if granted, the modification will be binding upon all signers. By signing this Agreement, you acknowledge that you have read this Agreement. You also acknowledge receipt of a copy of this Agreement, including the Fair Credit Billing Notice.

This Agreement is dated December 20, 1999.

**CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

BORROWER:

X_____
   DR DELORES V VICTORIA

ACCEPTED BY WHITNEY NATIONAL BANK

By: _____    Effective Disbursement Date: _12/21/99_

12-20-1999    **PERSONAL LINE OF CREDIT AGREEMENT AND DISCLOSURE**    · Page 4
Loan No 720225302    (Continued)

Variable Rate. Line of Credit.    LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.27a (c) 1999 CFI ProServices, Inc. All rights reserved. [AL-G03 L29FP3.27a.27b 20-225P1 G0011.ovl]

12-26-1999          PERSONAL LINE OF CREDIT AGREEMENT AND DISCLOSURE          Page 5
. Loan No 720225302                    (Continued)

## BILLING ERROR RIGHTS

### YOUR BILLING RIGHTS

### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify us in case of errors or questions about your bill.**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at , 109 GREENVILLE BYPASS, GREENVILLE, AL 36037 or at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than sixty (60) days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

Your name and account number.

The dollar amount of the suspected error.

Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three (3) business days before the automatic payment is scheduled to occur.

**Your rights and our responsibilities after we receive your written notice.**

We must acknowledge your letter within thirty (30) days, unless we have corrected the error by then. Within ninety (90) days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your Credit Limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date on which it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten (10) days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

| | |
|---|---|
| DOLORES V VICTORIA<br>P O BOX 810<br>GREENVILLE AL 36037 | |
| | BUTLER COUNTY BANK<br>281 G'VILLE BYPASS-P O BOX 190<br>GREENVILLE AL 36037 |

SCANNED

| | |
|---|---|
| Loan Number | 9458I |
| Date | 3/28/06 |
| Maturity Date | 9/15/07 |
| Loan Amount $ | 19,697.16 |
| Renewal Of | |

**BORROWER'S NAME AND ADDRESS**
"I" includes each borrower above, jointly and severally.

**LENDER'S NAME AND ADDRESS**
"You" means the lender, its successors and assigns.

For value received, I promise to pay to you, or your order, at your address listed above the **PRINCIPAL** sum of
NINETEEN THOUSAND SIX HUNDRED NINETY SEVEN AND 16/100 Dollars $ __19,697.16__

☒ **Single Advance:** I will receive all of this principal sum on __3/28/06__. No additional advances are contemplated under this note.

☐ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____
_____ I will receive the amount of $ _____ and future principal advances are contemplated.

**Conditions:** The conditions for future advances are _____

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on _____

☒ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from __3/28/06__ at the rate of __9.000__ %
per year until __paid in full__

☐ **Variable Rate:** This rate may then change as stated below.

  ☐ **Index Rate:** The future rate will be _____ the following index rate: _____

  ☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.

  ☐ **Frequency and Timing:** The rate on this note may change as often as _____
  A change in the interest rate will take effect _____

  ☐ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than
_____ %. The rate may not change more than _____ % each _____

**Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
☐ The amount of each scheduled payment will change.   ☐ The amount of the final payment will change.
☐ _____

**ACCRUAL METHOD:** Interest will be calculated on a __actual/365__ basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
☒ on the same fixed or variable rate basis in effect before maturity (as indicated above).
☐ at a rate equal to _____

☒ **LATE CHARGE:** If a payment is made more than __10__ days after it is due, I agree to pay a late charge of __5% of late__
__pmt with a min. of $10 and a max. of $100__

☒ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☒ are ☐ are not included in the principal amount
above: __PROCESSING FEE OF $100.00__

**PAYMENTS:** I agree to pay this note as follows:
☐ **Interest:** I agree to pay accrued interest _____

☐ **Principal:** I agree to pay the principal _____

☒ **Installments:** I agree to pay this note in __18__ payments. The first payment will be in the amount of $ __1,170.32__
and will be due __April 15, 2006__. A payment of $ __1,170.32__ will be due __on the 15th__
__day of each Month__ thereafter. The final payment of the entire
unpaid balance of principal and interest will be due __September 15, 2007__

**ADDITIONAL TERMS:**

☒ **SECURITY:** This note is separately secured by (describe separate document by type and date):
UCC-1
4/15/04
(This section is for our internal use. Failure to list a separate security document does not mean the agreement will not secure this note.)

**DISPOSITION OF FUNDS**

Deposited to Account Number _____ Check Number _____
Signature for Lender

_____
WILLIAM S JOHNSON

_____
PRESIDENT

**PURPOSE:** The purpose of this loan is _____
__REFINANCE TO LOWER PAYMENTS__
**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2).** I have received a copy on today's date.

CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU SIGN IT.

_(signature)_ 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
DOLORES V VICTORIA

UNIVERSAL NOTE
ExperI© 1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN-AL 3/4/2002

DOLORES V VICTORIA
P O BOX 810
GREENVILLE AL 36037



GREENVILLE AL 36037

**BORROWER'S NAME AND ADDRESS**
"I" includes each borrower above, jointly and severally.

**LENDER'S NAME AND ADDRESS**
"You" means the lender, its successors and assigns.

| | |
|---|---|
| Loan Number | 88988 |
| Date | 10/15/04 |
| Maturity Date | 10/15/07 |
| Loan Amount $ | 33,100.00 |
| Renewal Of | |

For value received, I promise to pay to you, or your order, at your address listed above the **PRINCIPAL** sum of _____
THIRTY THREE THOUSAND ONE HUNDRED AND NO/100 _____ Dollars $ ____33,100.00____

[X] **Single Advance:** I will receive all of this principal sum on ___10/15/04___ . No additional advances are contemplated under this note.

[ ] **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____
_____ I will receive the amount of $ _____ and future principal advances are contemplated.
**Conditions:** The conditions for future advances are _____

[ ] **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on _____

[ ] **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from ___10/15/04___ at the rate of ___8.000___ %
per year until __paid in full__ .

[ ] **Variable Rate:** This rate may then change as stated below.

[ ] **Index Rate:** The future rate will be _____ the following index rate: _____

[ ] **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.

[ ] **Frequency and Timing:** The rate on this note may change as often as _____
A change in the interest rate will take effect _____

[ ] **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than _____ %. The rate may not change more than _____ % each _____ .

**Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
[ ] The amount of each scheduled payment will change.    [ ] The amount of the final payment will change.
[ ] _____

**ACCRUAL METHOD:** Interest will be calculated on a ___actual/365___ basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
[X] on the same fixed or variable rate basis in effect before maturity (as indicated above).
[ ] at a rate equal to _____

[X] **LATE CHARGE:** If a payment is made more than ___10___ days after it is due, I agree to pay a late charge of ___5% of late pmt with a min. of $10 and a max. of $100___

[X] **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which [X] are [ ] are not included in the principal amount above: ___PROCESSING FEE $100.00___

**PAYMENTS:** I agree to pay this note as follows:
[ ] **Interest:** I agree to pay accrued interest _____

[ ] **Principal:** I agree to pay the principal _____

[X] **Installments:** I agree to pay this note in ___36___ payments. The first payment will be in the amount of $ ___1,037.12___
and will be due ___November 15, 2004___ . A payment of $ ___1,037.12___ will be due __on the 15th day of each Month__ thereafter. The final payment of the entire unpaid balance of principal and interest will be due ___October 15, 2007___

**ADDITIONAL TERMS:**
EQUIPMENT AS STATED ON EXHIBIT 'A' DR VICTORIA MEDICAL OFFICE AND EXHIBIT
'B' BARIATRIC MEDICINE

[X] **SECURITY:** This note is separately secured by (describe separate document by type and date):
UCC-1
4/15/04
(This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.)

**DISPOSITION OF FUNDS**

Deposited to Account Number _____    Check Number _____

Signature for Lender

WSJ

_____

_____

**PURPOSE:** The purpose of this loan is _____
___REN/CONVERTS TO MONTHLY PMTS/ORIG OPERATING___

**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2).** I have received a copy on today's date.

**CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU SIGN IT.**

_____ 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
DOLORES V VICTORIA

_____

| | | |
|---|---|---|
| DOLORES V VICTORIA<br>P O BOX 810<br>GREENVILLE AL 36037 | BUTLER COUNTY BANK<br>281 G'VILLE BYPASS-P O BOX 190<br>GREENVILLE AL 36037 | Loan Number _____ 87051<br>Date _____ 7/15/04<br>Maturity Date _____ 10/15/04<br>Loan Amount $ _____ 33,100.47<br>Renewal Of _____ 87051 |
| **BORROWER'S NAME AND ADDRESS**<br>"I" includes each borrower above, jointly and severally. | **LENDER'S NAME AND ADDRESS**<br>"You" means the lender, its successors and assigns. | |

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of _____
THIRTY THREE THOUSAND ONE HUNDRED AND 47/100 _____ Dollars $ _____ 33,100.47

☒ **Single Advance:** I will receive all of this principal sum on _____ 7/15/04 _____ . No additional advances are contemplated under this note.

☐ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____
_____ I will receive the amount of $ _____ and future principal advances are contemplated.
**Conditions:** The conditions for future advances are _____
_____

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to
   all other conditions and expires on _____ .

☐ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from _____ 7/15/04 _____ at the rate of _____ 8.250 %
per year until _____ paid in full _____ .

☐ **Variable Rate:** This rate may then change as stated below.
   ☐ **Index Rate:** The future rate will be _____ the following index rate: _____
   _____

   ☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.
   ☐ **Frequency and Timing:** The rate on this note may change as often as _____ .
      A change in the interest rate will take effect _____ .
   ☐ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than
      _____ %. The rate may not change more than _____ % each _____ .
   **Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
   ☐ The amount of each scheduled payment will change.    ☐ The amount of the final payment will change.
   ☐ _____

**ACCRUAL METHOD:** Interest will be calculated on a _____ actual/365 _____ basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
☒ on the same fixed or variable rate basis in effect before maturity (as indicated above).
☐ at a rate equal to _____

☒ **LATE CHARGE:** If a payment is made more than _____ 10 _____ days after it is due, I agree to pay a late charge of _____ 5% of late
pmt with a min. of $10 and a max. of $100

☒ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☒ are  ☐ are not  included in the principal amount
above: _____ PROCESSING FEE $100.00

**PAYMENTS:** I agree to pay this note as follows:
☒ **Interest:** I agree to pay accrued interest _____ with the principal

☒ **Principal:** I agree to pay the principal _____ on demand, but if no demand is made then
on 10/15/04.

☐ **Installments:** I agree to pay this note in _____ payments. The first payment will be in the amount of $ _____
and will be due _____ . A payment of $_____ will be due _____
_____ thereafter. The final payment of the entire
unpaid balance of principal and interest will be due _____

**ADDITIONAL TERMS:**


| | |
|---|---|
| ☒ **SECURITY:** This note is separately secured by (describe separate document by type and date):<br><br>UCC-1<br>4/15/04<br><br>(This section is for your internal use. Failure to list a security document does not mean the agreement will not secure this note.) | **PURPOSE:** The purpose of this loan is _____<br>_____ RENEWAL ORIGINALLY FOR OPERATING CAPITAL _____<br>**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2).** I have received a copy on today's date.<br><br>CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU <u>SIGN</u> IT. |

| |
|---|
| **DISPOSITION OF FUNDS** |
| Deposited to Account Number _____   Check Number _____ |
| Signature for Lender |
| |
| WSJ |

_(signature)_ 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
DOLORES V VICTORIA

**UNIVERSAL NOTE**
Exper̃es © 1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN-AL 3/4/2002

*(page 1 of 2)*

| | | |
|---|---|---|
| DOLORES V VICTORIA<br>P O BOX 810<br>GREENVILLE AL 36037 | BUTLER COUNTY BANK<br>281 G'VILLE BYPASS-P O BOX 190<br>GREENVILLE AL 36037 | Loan Number _____ 87051<br>Date _____ 4/15/04<br>Maturity Date _____ 7/15/04<br>Loan Amount $ _____ 35,120.00<br>Renewal Of _____ |

**PAID BY RENEWAL**

**BORROWER'S NAME AND ADDRESS**
"I" includes each borrower above, jointly and severally.

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of _____
THIRTY FIVE THOUSAND ONE HUNDRED TWENTY AND NO/100 Dollars $ _____ 35,120.00

☒ **Single Advance:** I will receive all of this principal sum on  4/15/04 . No additional advances are contemplated under this note.

☐ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____
_____ I will receive the amount of $ _____ and future principal advances are contemplated.
**Conditions:** The conditions for future advances are _____

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on _____

☐ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from  4/15/04  at the rate of  8.000 % per year until   paid in full

☐ **Variable Rate:** This rate may then change as stated below.

   ☐ **Index Rate:** The future rate will be _____ the following index rate: _____

   ☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.

   ☐ **Frequency and Timing:** The rate on this note may change as often as _____
   A change in the interest rate will take effect _____

   ☐ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than _____ %. The rate may not change more than _____ % each _____

   **Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
   ☐ The amount of each scheduled payment will change.    ☐ The amount of the final payment will change.
   ☐ _____

**ACCRUAL METHOD:** Interest will be calculated on a  actual/365  basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
☒ on the same fixed or variable rate basis in effect before maturity (as indicated above).
☐ at a rate equal to _____

☒ **LATE CHARGE:** If a payment is made more than  10  days after it is due, I agree to pay a late charge of  5% of late pmt with a min. of $10 and a max. of $100

☒ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☒ are  ☐ are not  included in the principal amount above:  INTEREST SURCHARGE $100 AND UCC $20

**PAYMENTS:** I agree to pay this note as follows:
☒ **Interest:** I agree to pay accrued interest  with the principal

☒ **Principal:** I agree to pay the principal  on demand, but if no demand is made then on 7/15/04.

☐ **Installments:** I agree to pay this note in _____ payments. The first payment will be in the amount of $ _____ and will be due _____ . A payment of $ _____ will be due _____ thereafter. The final payment of the entire unpaid balance of principal and interest will be due _____

**ADDITIONAL TERMS:**
TWO MONTHLY PAYMENTS OF $1100 EACH DUE MAY 15, 2004 AND JUNE 15, 2004.
BALANCE OF LOAN TO BE DUE JULY 15, 2004.

| | |
|---|---|
| ☒ **SECURITY:** This note is separately secured by (describe separate document by type and date):<br>UCC<br>4/15/04<br>(This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.) | **PURPOSE:** The purpose of this loan is _____<br>  OPERATING CAPITAL<br>**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2).** I have received a copy on today's date.<br><br>**CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU <u>SIGN</u> IT.** |

**DISPOSITION OF FUNDS**

Deposited to Account Number _____  Check Number _____

Signature for Lender

_____ 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

_____
DOLORES V VICTORIA

_____ WSJ

_____

Experi ® 1984, 1991 Bankers Systems, Inc., St. Cloud, MN  Form UN-AL 3/4/2002

*(page 1 of 2)*

SCANNED

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

> BUTLER COUNTY BANK
> 281 G'VILLE BYPASS-P O BOX 190
> GREENVILLE AL 36037

Alabama
Sec. Of State
B 04-0323200 FS
Date 4/23/2004
Time 17:00
040427     3 Pg
File      $20.00
ExPg       $2.00
Adm         $.00
Form        $.00
04/029   Total $22.00

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| VICTORIA | DOLORES | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P O BOX 810 | GREENVILLE | AL | 36037 0000 | |

| 1d. TAX ID #:  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| 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 | | | | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

2a. ORGANIZATION'S NAME

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | 00000 0000 | |

| 2d. TAX ID #:  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

3a. ORGANIZATION'S NAME
BUTLER COUNTY BANK

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 281 G'VILLE BYPASS-P O BOX 190 | Camden | AL | 36726 | USA |

4. This FINANCING STATEMENT covers the following collateral:

EQUIPMENT AS STATED ON EXHIBIT 'A' DR VICTORIA MEDICAL OFFICE AND EXHIBIT 'B' BARIATRIC
MEDICINE

Loan# 87051

| 5. ALTERNATIVE DESIGNATION (if applicable): | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum    (if applicable)    |    7. Check to REQUEST SEARCH REPORT(S) on Debtor(s)    [ADDITIONAL FEE]    [optional]    ☐ All Debtors    ☐ Debtor 1    ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA

ACKNOWLEDGMENT COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)    Bankers Systems, Inc., St. Cloud, MN  Form UCC-1-LAZ 5/30/2001

Dr Victoria Medical office
1/ 6/99 Through 1/ 6/99

**E X H I B I T   A**

ALABAMA-2002 Victoria
1/ 2/95

Page

*May include to exhibit's*

| Date | Num | Description | Memo | Category | Clr | Amount |
|------|-----|-------------|------|----------|-----|--------|
| | | INCOME/EXPENSE | | | | |
| | | INCOME | | | | |
| | | Income - Other | | | | |
| | | --------------- | | | | |
| 1/ 6 | | Reception Area | 3 TVs,chairs-t | | | 3,500.00 |
| 1/ 6 | | 7 Exam tables-cabin | Equipments | | | 10,500.00 |
| 1/ 6 | | Business office | 2 copiers,2 Fa | | | 8,500.00 |
| 1/ 6 | | 2 EKG,spirometry | | | | 7,500.00 |
| 1/ 6 | | Microscope,BP steth | Oto-opthalmosc | | | 3,500.00 |
| 1/ 6 | | 2 refrigerators,mic | kitchen equipm | | | 1,500.00 |
| 1/ 6 | | 3 Office desk-chair | credensa | | | 7,000.00 |
| 1/ 6 | | 4 office cabinets | file cabinet | | | 3,600.00 |
| 1/ 6 | | Decors-paintings | | | | 1,500.00 |
| | | | | | | ----------- |
| | | Total Income - Other | | | | 47,100.00 |
| | | | | | | ----------- |
| | | TOTAL INCOME | | | | 47,100.00 |
| | | | | | | ----------- |
| | | TOTAL INCOME/EXPENSE | | | | 47,100.00 |
| | | | | | | ========== |

SIGNED BY:  DOLORES VICTORIA

DATE

*Submitted by Dolores Virtin · 4-11-4*

*± may include to collateral*

Bariatric Medicine Assets
1/ 8/99 Through 1/ 8/99

E X H I B I T   B

ALABAMA-2002 Victoria
1/ 2/95

Page

| Date | Num | Description | Memo | Category | Clr | Amount |
|------|-----|-------------|------|----------|-----|--------|
| | | INCOME/EXPENSE | | | | |
| | | INCOME | | | | |
| | | Income - Other | | | | |
| | | ————————————— | | | | |
| 1/ 8 | | Furnitures | Reception Rm | | | 3,500.00 |
| 1/ 8 | | Furnitures | Business offic | | | 2,500.00 |
| 1/ 8 | | Copier,Fax etc | 2 computers | | | 2,500.00 |
| 1/ 8 | | 2 Exam room | Equipment/furn | | | 2,100.00 |
| 1/ 8 | | Microdermabrasion | and supplies | | | 17,000.00 |
| 1/ 8 | | Gym and exercise | Equipments | | | 3,500.00 |
| 1/ 8 | | BP machines,etc | Weighing scale | | | 1,500.00 |
| 1/ 8 | | Paintings-decors | | | | 2,100.00 |
| | | | | | | ——————————— |
| | | Total Income - Other | | | | 34,700.00 |
| | | | | | | ——————————— |
| | | TOTAL INCOME | | | | 34,700.00 |
| | | | | | | ——————————— |
| | | TOTAL INCOME/EXPENSE | | | | 34,700.00 |
| | | | | | | =========== |

SIGNED BY:  **DOLORES VICTORIA**

*4-15-4*

DATE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE THE MATTER OF:

Deloris V. Victoria                           CASE NO. 06-31225-WRS

    Debtor,

---

SUPPLEMENTAL RESPONSE TO MOTION TO DISMISS

Comes now the Debtor, by and through counsel, and for supplemental response to the motion to dismiss would state as follows:

1.  An issue was raised at the hearing of May 8th, 2007, as to the date of computation of eligibility under various chapters of bankruptcy.  Although it is only persuasive authority, the Debtor would call the Courts attention to the case of In re Tucker, 345 B.R. 373,(Bankr. M.D. Ala. 2006) in which Judge Williams addressed the eligibility of a client for the purposes of calculating eligibility under Chapter 13 of the Bankruptcy Code and Section 109(e).  In the case cited, Judge Williams addressed as case where the debtor had claimed a rather large income tax debt as unliquidated, in order to gain chapter 13 eligibility and the IRS later filed a liquidated claim.  In the Tucker decision, Judge Williams stated:

> If all events giving rise to the debtor's liability have occurred prior to the filing of the bankruptcy petition, a debt is noncontingent for purposes of § 109(e). In re Knight, 55 F.3d 231, 236 (7th Cir. 1995); In re Loya, 123 B.R. 338, 340 (B.A.P. 9th Cir. 1991). In the case at bar, the IRS's claim is for tax years 2000, 2001, 2002, and 2004. All events giving rise to the debtor's liability for those years must have occurred prior to his bankruptcy on October 16, 2005. Therefore, the debt to the IRS is noncontingent for purposes of § 109(e).
>
> The more difficult question is whether a debt which is disputed by the debtor is liquidated for purposes of § 109(e). In United States v. Verdunn, 89 F.3d 799 (11th Cir. 1996) the Court of Appeals explained the term "liquidated debt" by stating:

[*376]  Black's Law Dictionary defines a liquidated debt as one where it is certain what is due and how much is due. Black's Law Dictionary 930 (6th ed. 1990). A liquidated debt is that which has been made certain as to amount due by agreement of the parties or by operation of law. Id. Therefore, the concept of a liquidated debt relates to the amount of liability, not the existence of liability. See In re McGovern, 122 B.R. 712, 715 (Bankr. N.D. Ind. 1989); see also C. McCormick, Handbook on the Law of Damages, § 54 at 213 (1935). If the amount of the debt is dependent, however, upon a future exercise of discretion, not restricted by specific criteria, the claim is unliquidated. See 1 T. Sedgwick, Measure of Damages, § 300 at 570 (9th ed. 1912).

Additionally

Nevertheless, the court cannot distinguish the case at bar from Verdunn. "The fact that Verdunn contests the Commissioner's claim does not remove it as a claim under section 109(e) or render it unliquidated." Verdunn, 89 F.3d at 802 n.9. (citing Knight, 55 F.3d at 235 (holding that a dispute debt is included in the § 109(e) calculus); In re Jordan, 166 B.R. 201, 202 (Bankr. D. Me. 1994) (holding that a dispute either of the underlying liability or the amount of a debt does not automatically render a debt contingent or unliquidated); and 1 William I. Norton, Jr., Bankruptcy Law & Practice § 18:12 (2d ed. 1994) (commenting that disputed debts are included in the calculation for eligibility purposes)

Judge Williams then dismissed the case for exceeding the Title 11 U.S.C. Section 109(e) limitations of liability.

The Creditor in this case, further ask this Court to rule against the Debtor under Title 11 U.S.C. Section 707(b).  This in effect ask this Court to find a way around United States v. Verdunn, 89 F.3d 799, 36 Collier Bankr. Cas. 2d (MB) 743, 96-2 U.S. Tax Cas. (CCH) P50455 (11th Cir. Fla. 1996), in which the Eleventh Circuit held that the tax liability of the Debtor was a noncontingent liquidated debt and made the Debtor ineligible for Chapter 13 relief.

Claim 2 (Exhibit 1) of the Internal Revenue Service, which was filed in this Court, May 9, 2007, by the Internal Revenue Service and not the Debtor, establishes an liquidated debt of at least $109,425.20 in favor of the Service.  Exhibit 3 submitted to the Court clearly shows how the Debtor figured the amount of the claim listed on Schedule F of the Bankruptcy Schedules

and why schedule F was not amended until May 8, 2007, as soon as the Debtor received a copy of the proof of claim. The Tax debt is clearly what the tax debt is and the tax debt is an unliquidated debt.

It is clear that the Debtor's debts are primarily nonconsumer in nature.

2. Although, I do not believe the comments of the Bankruptcy Administrator are relevant to the issue presented, a response to the allegations is appropriate. The Bankruptcy Administrator made some statements reflecting that the reason she had not filed a previous objection to the Debtor's standing was the Debtor's non compliance with request of production of Documents. A check of the Debtor's transmissions with the trustee reflects that all documents requested by the Bankruptcy Administrator were supplied to the Trustee and the Administrator by November 28, 2006. (Copy of Transmission attached) Further all documents, entered into evidence by the Creditor, were attached to the transmission of November 28th. The e-mailed volume submitted contained four lengthy volumes of information which the Debtor can make available for production to the Court. No follow-up documents were ever requested by the Bankruptcy Administrator. The documents introduced at the Court hearing of May 8th, 2007, were also provided to the Creditor for inspection on February 9, 2007, with the exception of the transcript of the deposition, one of Dr. Edgar Victoria's March Credit Card Statements, Dr. Edgar Victoria's property Insurance policies, Dr. Edgar Victoria's Brantley Bank Statements with a few checks, and a visa card statement of Dr. Edgar Victoria.

3. The testimony of the Chapter 7 Trustee in this action was to the effect that the Debtor has been forthcoming an cooperative with the Chapter 7 Trustee during the course of the proceeding.

Wherefore, the premises considered, the Debtor, by and through Counsel, respectfully request a discharge in this action and a denial of the motion to dismiss,

**/s/   Richard D. Shinbaum_____**
Richard Shinbaum, SHI007
Attorney for the Debtor

Of Counsel:
Shinbaum, Abell, McLeod and Campbell, P.C..
Post Office Box 201
Montgomery, Alabama 36101
(334) 269-4440
(334) 263-4096 Fax

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above styled motion was this day served upon the following, by placing the same in the United States Mail, properly addressed  and postage prepaid, and/or electronics transmission this the 9th day of May, 2007.

Bradley Richard Hightower
Christian and Small
505 20th Street North Ste 1800
Birmingham. Al 35203-2696

Teresa Jacobs
Bankruptcy Administrator
One Church Street
Montgomery, AL 36104

Hon. Daniel Gary Hamm
560 South McDonough Street, Ste A
Montgomery, AL 36104

   /s/ Richard D. Shinbaum_____
Richard D. Shinbaum
Attorney for the Debtor

---

```
    From: rshinbaum@samvpc.com <rshinbaum@samvpc.com>
      To: dhamm@dghlegal.com <dhamm@dghlegal.com>
    Date: Tuesday, November 28, 2006 6:03:01 PM
 Subject: Deloris Victoria Documents
  Folder: Sent Mail/rshinbaum@samvpc.com
```

---

Hello Dan,

   Please fined the business records on A/R's, MBNA records, tax
   records, the Genizen suit, and the other records.  Sorry but I just
   got most of them.
--
Best regards,
 rshinbaum                            mailto:rshinbaum@samvpc.com

---

```
 From: rshinbaum@samvpc.com <rshinbaum@samvpc.com>
   To: dhamm@dghlegal.com <dhamm@dghlegal.com>
 Date: Tuesday, November 28, 2006 6:05:11 PM
Subject: Victorio Documents
 Folder: Sent Mail/rshinbaum@samvpc.com
```

Hello Dan,
      I left out the first set.


--
Best regards,
 rshinbaum                          mailto:rshinbaum@samvpc.com

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **Deloris V. Victoria,** | ) | **Case No. 06-31225-WRS-7** |
| | ) | |
| **Debtor.** | ) | |

---

### REPLY TO DEBTOR'S RESPONSE AND SUPPLEMENTAL RESPONSE

---

Greenville Hospital Corporation, d/b/a LV Stabler Memorial Hospital ("Greenville Hospital"), a creditor and party of interest in the chapter 7 bankruptcy case filed by Deloris V. Victoria (the "Debtor" or "Victoria"), replies to the Debtor's response and supplemental response to Greenville Hospital's Motion to Dismiss the Debtor's Case for Abuse (the "Motion to Dismiss") as follows:

1.      On May 8, 2007, the Court held a hearing on Greenville Hospital's Motion to Dismiss. Shortly before the time set for the hearing, the Debtor filed a response to the Motion to Dismiss, which was later supplemented by an additional filing on May 9, 2007 (collectively, the "Response").

2.      The Response centers around **(1)** the effect of a $109,425.20 proof of claim (the "IRS Claim") filed by the Internal Revenue Service (the "IRS") in the Debtor's case, a copy of which is attached as Exhibit "A," and **(2)** the Debtor's eligibility to be a chapter 13 debtor. Greenville Hospital will address each issue separately below.

*The IRS Proof of Claim*

3.      Prior to the filing of the IRS Claim, the Debtor had primarily consumer debts as indicated on the chart in the Motion to Dismiss. Therefore, the Debtor's case was subject to dismissal for abuse pursuant to Section 707(b) of the Bankruptcy Code.

4.      At first blush, the large IRS Claim appears to now tip the scales toward a finding that the Debtor's debts are primarily business debts rather than consumer debts. However, a closer examination reveals that the IRS Claim is not an accurate representation of the Debtor's tax debts because many of the

debts that make up the IRS Claim are **(A)** debts owed by the Debtor's weight loss company, Bariatric

Medical & Physical Fitness Associates, Inc. ("Bariatric Associates") instead of the Debtor and **(B)** debts

for unassessed taxes due to the Debtor's failure to file tax returns.

5.      The Debtor's 2005 U.S. Individual Tax Return, a portion of which is attached as Exhibit

"B," states that the tax identification number for Bariatric Associates is <u>72-1357031</u> (see the circled entry

on the third page).

6.      The IRS Claim identifies 13 separate debts that are owed by Bariatric Associates

(taxpayer identification number 72-1357031) rather than by the Debtor.  These debts, which total

$38,967.36, should not be counted when determining whether the Debtor has primarily consumer debts

or business debts because they are owed by Bariatric Associates rather than the Debtor.

7.      In addition, a large portion of the debts on the IRS Claim are listed as "UNASSESSED -

NO RETURN;" therefore, the IRS Claim should not be considered an accurate representation of the

Debtor's tax liability.  Instead, as argued by Greenville Hospital at the May 8, 2007 hearing, the Debtor's

original schedules and her February 2007 amendments should be used to determine whether the Debtor

has primarily consumer debts or business debts.

8.      Moreover, even if the IRS Claim and the other amended debts listed in the Debtor's most

recent amended schedules that were filed on May 8, 2007 are considered, the Debtor's debts are still

primarily consumer debts.  This is indicated on the chart below, which is the same chart found in the

Motion to Dismiss, with the only change being revisions to show the amount of the IRS Claim (properly

excluding the $38,967.36 portion of the IRS Claim that is not owed by the Debtor) and the amended

debts listed in the Debtor's most recent amended schedules (properly excluding the $70,912.00 debt to

MBNA America listed in amended Schedule F that is not owed by the Debtor).

| Consumer Debts | Business Debts[2] |
|---|---|
| •     $290,000.00 secured mortgage debt to Brantley Bank & Trust[1] | •     $70,457.84 in tax debts ($109,425.20 minus $38,967.36)<br>•     $2,545.00 unsecured debt for line of credit to Camden National<br>•     $1.00 unsecured disputed debt to Camden National<br>•     $680.00 unsecured loan debt to Camden National<br>•     $558.00 unsecured collection account debt with CenturyTel<br>•     $17,282.19 unsecured debt in a pending suit by Genezen Healthcare<br>•     $165,140.00 judgment to Greenville Hospital<br>•     $5,483.00 unsecured line to credit debt to Whitney Bank |
| Total: $290,000.00 | Total: $262,147.03 |

9.      As the chart indicates, the addition of the IRS Claim and the Debtor's other amended debts does not change the categorization of the Debtor's debts.  The Debtor's debts are still primarily consumer debts; therefore, the Debtor is subject to the Means Test and her chapter 7 case should be dismissed for abuse pursuant to Section 707(b).

*Chapter 13 Eligibility*

10.      In addition to the IRS Claim, the Debtor's Response also alleges that if the Debtor is subject to the Means Test in Section 707(b), the Debtor's chapter 7 case may not be converted to a

---

[1] A mortgage on a debtor's home is a consumer debt as that term is defined in Section 101(8) of the Bankruptcy Code.  *See In re Price*, 353 F.3d 1135 (9th Cir. 2004).  This debt has not been revised downward to the $285,170.31 amount listed in the Debtor's amended schedules because it appears that the lower amount is the result of a postpetition mortgage payment made on the mortgage prior to the execution of a reaffirmation agreement approximately 1 month after the petition date.

[2] The Debtor testified that she was not obligated for a $9,663.00 credit card debt to MBNA America and a $3,378.00 credit card debt to MBNA America listed in Schedule F.  *See Deposition Transcript* at p. 51.  She also testified that a $19,029.83 secured debt to Camden National was owed by her weight loss business (a corporation) rather than herself.  *See Deposition Transcript* at p. 39.

chapter 13 case because the Debtor is not eligible to be a debtor under that chapter on the basis that she exceeds the debt limits in Section 109(e).

11.     The Debtor misses the mark on this issue though.  Whether or not the Debtor is eligible for chapter 13 has no bearing on the Section 707(b) determination because the statute plainly provides the Court with other options if conversion to chapter 13 is not available.  Specifically, the Court may simply dismiss the Debtor's case outright or, with the Debtor's consent, convert her chapter 7 case to a chapter 11 case.

12.     Accordingly, the Court should not consider the Debtor's eligibility to be a chapter 13 debtor when deciding whether to grant to deny the Motion to Dismiss.

WHEREFORE, Greenville Hospital, d/b/a LV Stabler Memorial Hospital, again requests that the Court dismiss the Debtor's case for abuse pursuant to Sections 707(a) and 707(b) of the Bankruptcy Code with a 180 day bar on refiling under any chapter of the Bankruptcy Code.

Respectfully submitted,


/s/ Bradley R. Hightower
Bradley R. Hightower
Attorney for Greenville Memorial Hospital

**OF COUNSEL:**
CHRISTIAN & SMALL LLP
505 North 20th Street, Suite 1800
Birmingham, Alabama 35203
Phone: (205) 795-6588
Fax: (205) 328-7234

## **CERTIFICATE OF SERVICE**

Unless otherwise served by the ECF system, I certify that I have served a copy of the above and foregoing Motion on the following by placing a copy in the United States Mail, properly addressed, first-class postage pre-paid on this the 9th day of May, 2007:

Deloris V. Victoria
225 Woodland Heights Dr.
Greenville, Alabama 36037

C. Brandon Sellers, III
Shinbaum, Abell, McLeod & Vann
P.O. Box 201
Montgomery, Alabama 36101

U.S. Bankruptcy Adminstrator
Attn: Tina Hayes
One Church Street
Montgomery, Alabama 36104

Chapter 7 Trustee, Daniel G. Hamm
560 South McDonough Street, STE A
Montgomery, Alabama 36104

/s/ Bradley R. Hightower
OF COUNSEL

FORM B10 (Official Form 10)(04/07)

| UNITED STATES BANKRUPTCY COURT____MIDDLE____ | DISTRICT OF __ALABAMA__ | **PROOF OF CLAIM** |
|---|---|---|

| Name of Debtor | Case Number |
|---|---|
| DELORIS V. VICTORIA | 06-31225 |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br><br>Department of the Treasury - Internal Revenue Service | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. | **EXHIBIT**<br><br>A |
|---|---|---|
| Name and address where notices should be sent:<br><br>Internal Revenue Service<br>INTERNAL REVENUE SERVICE<br>801 TOM MARTIN DRIVE<br>Stop 126<br>BIRMINGHAM, AL 35211<br>Telephone number: (205) 912-5294   Creditor #:1363923 | ☐ Check box if you have never received any notices from the bankruptcy court in this case.<br><br>☐ Check box if the address differs from the address on the envelope sent to you by the court. | THIS SPACE IS FOR COURT USE ONLY |

| Last four digits of account or other number by which creditor identifies debtor: **see attachment** | Check here ☐ replaces  a previously filed claim, dated: _____<br>if this claim ☐ amends |
|---|---|

**1. Basis for Claim**

- ☐ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☒ Taxes
- ☐ Other_____

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (fill out below)
Last four digits of your SS #: _____
Unpaid compensation for services performed
from _____ to _____
   (date)         (date)

| **2. Date debt was incurred:**   see attachment | **3. If court judgment, date obtained:** |
|---|---|

**4. Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed.
See reverse side for important explanations.

Unsecured Nonpriority Claim $_____25,448.44

☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**Unsecured Priority Claim.**
☒ Check this box if you have an unsecured claim, all or part of which is entitled to priority.

Amount entitled to priority $___28,440.66

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

**Secured Claim.**
☒ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:

☒ Real Estate   ☒ Motor Vehicle   ☒ Other__see below*__

Value of Collateral: $___see below*__
*All of debtor's right, title and interest to property - 26 U.S.C § 6321.
Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____55,536.10

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☒ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

| **5. Total Amount of Claim at Time Case Filed: $** | 25,448.44 | 55,536.10 | 28,440.66 | 109,425.20 |
|---|---|---|---|---|
| | (unsecured) | (secured) | (priority) | (Total) |

☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

| **6. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. | THIS SPACE IS FOR COURT USE ONLY |
|---|---|

**7. Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. Date-Stamped Copy:** To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

| Date<br><br>05/08/2007 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br><br>____/s/ KENYA L BUFFORD, INSOLVENCY SPECIALIST_____ | |
|---|---|---|

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

# Proof of Claim for
# Internal Revenue Taxes

Department of the Treasury/Internal Revenue Service



**Form 10**
Attachment

| Docket Number |
| --- |
| 06-31225 |
| Type of Bankruptcy Case |
| Chapter 7A |
| Date of Petition |
| 09/25/2006 |

**In the Matter of:**   DELORIS V. VICTORIA
225 WOODLAND HEIGHTS DR
GREENVILLE, AL  36037

The United States has not identified a right of setoff or counterclaim. However, this determination is based on available data and is not intended to waive any right to setoff against this claim debts owed to this debtor by this or any other federal agency. All rights of setoff are preserved and will be asserted to the extent lawful.

## Secured Claims (Notices of Federal tax lien filed under internal revenue laws before petition date)

| Taxpayer ID Number | Kind of Tax | Tax Period | Date Tax Assessed | Tax Due | Penalty to Petition Date | Interest to Petition Date | Notice of Tax Lien Filed: Date | Office Location |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 72-1357031 | WT-FICA | 12/31/2000 | 12/08/2003 | $9,879.22 | $3,674.49 | $4,287.41 | | |
| 63-1103639 | FUTA | 12/31/2003 | 12/05/2005 | $3,209.29 | $1,908.26 | $539.68 | 04/27/2006 | Butler County |
| 63-1103639 | WT-FICA | 06/30/2004 | 08/22/2005 | $4,500.61 | $3,648.29 | $850.70 | Right | to setoff |
| 63-1103639 | WT-FICA | 09/30/2004 | 08/22/2005 | $4,227.70 | $2,494.78 | $549.33 | 10/28/2005 | Butler County |
| 63-1103639 | WT-FICA | 12/31/2004 | 08/22/2005 | $2,185.67 | $893.70 | $253.12 | 10/28/2005 | Butler County |
| 63-1103639 | FUTA | 12/31/2004 | 12/05/2005 | $2,170.00 | $769.02 | $251.31 | 04/27/2006 | Butler County |
| 63-1103639 | WT-FICA | 03/30/2005 | 12/05/2005 | $4,047.01 | $1,999.04 | $410.30 | Right | to setoff |
| 63-1103639 | WT-FICA | 06/30/2005 | 12/12/2005 | $1,732.41 | $907.33 | $147.43 | 04/27/2006 | Butler County |
| | | | | $31,951.91 | $16,294.91 | $7,289.28 | | |

**Total Amount of Secured Claims:**     **$55,536.10**

## Unsecured Priority Claims under section 507(a)(8) of the Bankruptcy Code

| Taxpayer ID Number | Kind of Tax | Tax Period | Date Tax Assessed | Tax Due | Interest to Petition Date |
| --- | --- | --- | --- | --- | --- |
| 72-1357031 | WT-FICA | 09/30/1997 | ESTIMATED LIABILITY * | $250.00 | $0.00 |
| 63-1103639 | WT-FICA | 06/30/1999 | ‡ UNASSESSED-NO RETURN | $1,454.14 | $860.28 |
| 72-1357031 | MISC. PEN. | 12/31/1999 | 10/28/2002 | $0.00 | $186.24 |
| 72-1357031 | WT-FICA | 06/30/2001 | ‡ UNASSESSED-NO RETURN | $1,463.00 | $0.00 |
| 72-1357031 | WT-FICA | 09/30/2001 | ‡ UNASSESSED-NO RETURN | $1,463.00 | $0.00 |
| 72-1357031 | WT-FICA | 12/31/2001 | ‡ UNASSESSED-NO RETURN | $1,463.00 | $0.00 |
| 72-1357031 | FUTA | 12/31/2001 | ‡ UNASSESSED-NO RETURN | $2,500.00 | $0.00 |
| 72-1357031 | FUTA | 12/31/2002 | ‡ UNASSESSED-NO RETURN | $2,500.00 | $0.00 |
| 72-1357031 | WT-FICA | 06/30/2003 | ‡ UNASSESSED-NO RETURN | $1,463.00 | $0.00 |
| 72-1357031 | FUTA | 12/31/2003 | ‡ UNASSESSED-NO RETURN | $2,500.00 | $0.00 |
| 63-1103639 | MISC. PEN. | 12/31/2003 | 10/09/2006 | $0.00 | $0.00 |
| 72-1357031 | FUTA | 12/31/2004 | ‡ UNASSESSED-NO RETURN | $2,500.00 | $0.00 |
| XXX-XX-7367 | INCOME | 12/31/2005 | ‡ UNASSESSED-NO RETURN | $5,000.00 | $0.00 |

(Continued on Page 2)

‡  UNASSESSED TAX LIABILITIES(S) HAVE BEEN LISTED ON THIS CLAIM BECAUSE OUR RECORDS SHOW NO RETURN(S) FILED. WHEN THE DEBTOR(S) FILES THE RETURN OR PROVIDES OTHER INFORMATION AS REQUIRED BY LAW THE CLAIM WILL BE AMENDED.

# Proof of Claim for
# Internal Revenue Taxes

Department of the Treasury/Internal Revenue Service



**Form 10**
Attachment

| Docket Number |
| --- |
| 06-31225 |
| **Type of Bankruptcy Case** |
| Chapter 7A |
| **Date of Petition** |
| 09/25/2006 |

In the Matter of:  DELORIS V. VICTORIA
225 WOODLAND HEIGHTS DR
GREENVILLE, AL  36037

---

### Unsecured Priority Claims (Continued from Page 1)

| Taxpayer ID Number | Kind of Tax | Tax Period | Date Tax Assessed | Tax Due | Interest to Petition Date |
| --- | --- | --- | --- | --- | --- |
| 72-1357031 | WT-FICA | 06/30/2006 | ¦ UNASSESSED-NO RETURN | $2,419.00 | $0.00 |
| 72-1357031 | WT-FICA | 09/30/2006 | ¦ UNASSESSED-NO RETURN | $2,419.00 | $0.00 |
| | | | | $27,394.14 | $1,046.52 |

Total Amount of Unsecured Priority Claims:  **$28,440.66**

---

### Unsecured General Claims

Penalty to date of petition on unsecured priority claims (including interest thereon)  . . . . . . . . .  $25,448.44

Total Amount of Unsecured General Claims:  **$25,448.44**

---

¦  UNASSESSED TAX LIABILITIES(S) HAVE BEEN LISTED ON THIS CLAIM BECAUSE OUR RECORDS SHOW NO RETURN(S) FILED. WHEN THE DEBTOR(S) FILES THE RETURN OR PROVIDES OTHER INFORMATION AS REQUIRED BY LAW, THE CLAIM WILL BE AMENDED.

```
1872                                                    COURT RECORDING DATA
-----------------------------------------------+-----------------------------------------------
      INTERNAL REVENUE SERVICE                  | Lien Recorded   : 10/28/2005 - 11:01AM
   FACSIMILE FEDERAL TAX LIEN DOCUMENT          | Recording Number: 49169
                                                | UCC Number      :
                                                | Liber           : 0029
 BANKRUPTCY DOCKET: 06-31225@ALM                | Page            : 190
-----------------------------------------------+-----------------------------------------------
 Area: SMALL BUSINESS/SELF EMPLOYED #5          | IRS Serial Number: 254682005
 Lien Unit Phone: (800) 913-6050                |
-----------------------------------------------------------------------------------------------
               This Lien Has Been Filed in Accordance with
               Internal Revenue Regulation 301.6323(f)-1.
-----------------------------------------------------------------------------------------------
Name of Taxpayer :
  DOLORES V VICTORIA


-----------------------------------------------------------------------------------------------
Residence :
  PO BOX 810
  GREENVILLE, AL 36037-0810
-----------------------------------------------------------------------------------------------
  With respect to each assessment below, unless notice of lien
  is refiled by the date in column(e), this notice shall constitute
  the certificate of release of lien as defined in IRC 6325(a).
-------+----------+-------------+------------+------------------+----------------
 Form  | Period   | ID Number   | Assessed   | Refile Deadline  | Unpaid Balance
 (a)   | (b)      | (c)         | (d)        | (e)              | (f)
-------+----------+-------------+------------+------------------+----------------
 941   | 03/31/2004 63-1103639   08/22/2005   09/21/2015          $5,764.82
 941   | 06/30/2004 63-1103639   08/22/2005   09/21/2015          $9,048.97
 941   | 09/30/2004 63-1103639   08/22/2005   09/21/2015          $6,259.20
 941   | 12/31/2004 63-1103639   08/22/2005   09/21/2015          $2,840.33
```

```
-----------------------------------------------------------------------------------------------
Filed at:   Judge of Probate
            Butler County                                  Total  | $23,913.32
            Greenville, AL 36037
-----------------------------------------------------------------------------------------------
This notice was prepared and executed at DALLAS, TX
on this, the 19th day of October, 2005.
-----------------------------------------------------------------------------------------------
Authorizing Official:                    | Title:
   L. F. SANKEY                          | REVENUE OFFICER              28-02-2738
-----------------------------------------------------------------------------------------------
```

```
          INTERNAL REVENUE SERVICE              Lien Recorded   : 04/27/2006 - 12:22PM
     FACSIMILE FEDERAL TAX LIEN DOCUMENT        Recording Number:
                                                UCC Number      :
                                                Liber           : 29
BANKRUPTCY DOCKET: 06-31225@ALM                 Page            : 511
-------------------------------------------------------------------------------------
Area: SMALL BUSINESS/SELF EMPLOYED #5       |   IRS Serial Number: 285508506
Lien Unit Phone: (800) 913-6050
-------------------------------------------------------------------------------------

                       This Lien Has Been Filed in Accordance with
                       Internal Revenue Regulation 301.6323(f)-1.

-------------------------------------------------------------------------------------
Name of Taxpayer :
  DOLORES V VICTORIA


-------------------------------------------------------------------------------------
Residence :
  PO BOX 810
  GREENVILLE, AL 36037-0810
-------------------------------------------------------------------------------------
   With respect to each assessment below, unless notice of lien
   is refiled by the date in column(e), this notice shall constitute
   the certificate of release of lien as defined in IRC 6325(a).
```

| Form (a) | Period (b) | ID Number (c) | Assessed (d) | Refile Deadline (e) | Unpaid Balance (f) |
|------|------------|---------------|--------------|---------------------|--------------------|
| 940 | 12/31/2003 | 63-1103639 | 12/05/2005 | 01/04/2016 | $5,180.87 |
| 940 | 12/31/2004 | 63-1103639 | 12/05/2005 | 01/04/2016 | $2,916.17 |
| 941 | 03/31/2005 | 63-1103639 | 12/05/2005 | 01/04/2016 | $5,917.53 |
| 941 | 06/30/2005 | 63-1103639 | 12/12/2005 | 01/11/2016 | $2,558.85 |

```
-------------------------------------------------------------------------------------
Filed at:   Judge of Probate
            Butler County                                Total   |   $16,573.42
            Greenville, AL 36037
-------------------------------------------------------------------------------------
This notice was prepared and executed at DALLAS, TX
on this, the 19th day of April, 2006.
-------------------------------------------------------------------------------------
Authorizing Official:                       Title:
    L. F. SANKEY                             REVENUE OFFICER              25-02-2738
-------------------------------------------------------------------------------------
```

6110 01/25/2007 9:35 AM

**SCHEDULE C**
**(Form 1040)**

Department of the Treasury
Internal Revenue Service    (99)

**Profit or Loss From Business**
(Sole Proprietorship)

▶ Partnerships, joint ventures, etc., must file Form 1065 or Form 1065-B.
▶ Attach to Form 1040 or 1041.    ▶ See Instructions for Schedule C (Form 1040).

OMB No. 1545-0074

**2005**

Attachment
Sequence No.  **09**

| | |
|---|---|
| Name of proprietor | Social security number (SSN) |
| DOLORES V VICTORIA | |

A  Principal business or profession, including product or service (see page C-2)
PHYSICIAN

EXHIBIT
**B**

B  Enter code from pages C-8, 9, & 10
▶ 621111

C  Business name. If no separate business name, leave blank.

D  Employer ID number (EIN), if any

E  Business address (including suite or room no.) ▶
City, town or post office, state, and ZIP code    GREENVILLE    AL 36082

F  Accounting method:    (1) **X** Cash    (2) ☐ Accrual    (3) ☐ Other (specify) ▶

G  Did you "materially participate" in the operation of this business during 2005? If "No," see page C-3 for limit on losses    **X** Yes    ☐ No

H  If you started or acquired this business during 2005, check here    ▶ ☐

## Part I    Income

| | | |
|---|---|---:|
| 1 | Gross receipts or sales. Caution. If this income was reported to you on Form W-2 and the "Statutory employee" box on that form was checked, see page C-3 and check here ▶ ☐    **1** | 95,405 |
| 2 | Returns and allowances    **2** | 2,075 |
| 3 | Subtract line 2 from line 1    **3** | 93,330 |
| 4 | Cost of goods sold (from line 42 on page 2)    **4** | |
| 5 | **Gross profit.** Subtract line 4 from line 3    **5** | 93,330 |
| 6 | Other income, including Federal and state gasoline or fuel tax credit or refund (see page C-3)    **6** | |
| 7 | **Gross income.** Add lines 5 and 6    ▶    **7** | 93,330 |

## Part II    Expenses. Enter expenses for business use of your home only on line 30.

| | | | | | | |
|---|---|---:|---|---|---|---:|
| 8 | Advertising | 1,600 | 18 | Office expense | 18 | 11,811 |
| 9 | Car and truck expenses (see page C-3) | 3,645 | 19 | Pension and profit-sharing plans | 19 | |
| 10 | Commissions and fees | | 20 | Rent or lease (see page C-5): | | |
| 11 | Contract labor (see page C-4) | | a | Vehicles, machinery, and equipment | 20a | |
| 12 | Depletion | | b | Other business property | 20b | 4,998 |
| 13 | Depreciation and section 179 expense deduction (not included in Part III) (see page C-4) | | 21 | Repairs and maintenance | 21 | |
| | | | 22 | Supplies (not included in Part III) | 22 | 586 |
| | | | 23 | Taxes and licenses | 23 | 3,013 |
| | | | 24 | Travel, meals, and entertainment: | | |
| 14 | Employee benefit programs (other than on line 19) | | a | Travel | 24a | 3,900 |
| 15 | Insurance (other than health) | 6,607 | b | Deductible meals and entertainment (see page C-5) | 24b | 725 |
| 16 | Interest: | | 25 | Utilities | 25 | 5,885 |
| a | Mortgage (paid to banks, etc.) | 1,381 | 26 | Wages (less employment credits) | 26 | 20,237 |
| b | Other | 6,050 | 27 | Other expenses (from line 48 on page 2) | 27 | 17,190 |
| 17 | Legal and professional services | | | | | |

| | | | |
|---|---|---|---:|
| 28 | Total expenses before expenses for business use of home. Add lines 8 through 27 in columns ▶ | 28 | 87,628 |
| 29 | Tentative profit (loss). Subtract line 28 from line 7 | 29 | 5,702 |
| 30 | Expenses for business use of your home. Attach Form 8829 | 30 | |
| 31 | **Net profit or (loss).** Subtract line 30 from line 29. | | |
| | • If a profit, enter on Form 1040, line 12, and also on Schedule SE, line 2 (statutory employees, see page C-6). Estates and trusts, enter on Form 1041, line 3. | | |
| | • If a loss, you **must** go to line 32. | 31 | 5,702 |
| 32 | If you have a loss, check the box that describes your investment in this activity (see page C-6). | | |
| | • If you checked 32a, enter the loss on **Form 1040, line 12,** and also on **Schedule SE, line 2** (statutory employees, see page C-6). Estates and trusts, enter on **Form 1041, line 3.** | 32a ☐ | All investment is at risk. |
| | • If you checked 32b, you **must** attach **Form 6198.** Your loss may be limited. | 32b ☐ | Some investment is not at risk. |

For Paperwork Reduction Act Notice, see page C-7 of the instructions.    Schedule C (Form 1040) 2005

DAA

645466110 01/25/2007 9:35 AM

**DOLORES V VICTORIA**

Schedule C (Form 1040) 2005 **PHYSICIAN**                                                                        Page 2

| Part III | Cost of Goods Sold (see page C-6) | |

33  Method(s) used to value closing inventory:  a [X] Cost   b [ ] Lower of cost or market   c [ ] Other (attach explanation)

34  Was there any change in determining quantities, costs, or valuations between opening and closing inventory? If "Yes," attach explanation .......................................................................................  [ ] Yes  [X] No

| | | | |
|---|---|---|---|
| 35 | Inventory at beginning of year. If different from last year's closing inventory, attach explanation | 35 | |
| 36 | Purchases less cost of items withdrawn for personal use | 36 | |
| 37 | Cost of labor. Do not include any amounts paid to yourself | 37 | |
| 38 | Materials and supplies | 38 | |
| 39 | Other costs | 39 | |
| 40 | Add lines 35 through 39 | 40 | |
| 41 | Inventory at end of year | 41 | |
| 42 | **Cost of goods sold.** Subtract line 41 from line 40. Enter the result here and on page 1, line 4 | 42 | |

| Part IV | Information on Your Vehicle. Complete this part **only** if you are claiming car or truck expenses on line 9 and are not required to file Form 4562 for this business. See the instructions for line 13 on page C-4 to find out if you must file Form 4562. |

43  When did you place your vehicle in service for business purposes? (month, day, year) ▶ ...........................

44  Of the total number of miles you drove your vehicle during 2005, enter the number of miles you used your vehicle for:

a  Business ...................  b  Commuting (see instructions) ...................  c  Other ...................

| | | | |
|---|---|---|---|
| 45 | Do you (or your spouse) have another vehicle available for personal use? | [ ] Yes | [ ] No |
| 46 | Was your vehicle available for personal use during off-duty hours? | [ ] Yes | [ ] No |
| 47a | Do you have evidence to support your deduction? | [ ] Yes | [ ] No |
| b | If "Yes," is the evidence written? | [ ] Yes | [ ] No |

| Part V | Other Expenses. List below business expenses not included on lines 8-26 or line 30. | |
|---|---|---|
| OFFICE MEETINGS | | 465 |
| BANK CHARGES | | 535 |
| DUES & SUBSCRIPTIONS | | 685 |
| BOOKS | | 850 |
| MED ASSOC DUES | | 895 |
| LAB EXPENSE | | 1,250 |
| LAUNDRY | | 800 |
| BILLING EXPENSE | | 5,580 |
| MEDICAL SUPPLIES | | 3,500 |
| BANK CHARGES | | 705 |
| TRANSCRIPTION | | 850 |
| OTHER LABOR | | 1,075 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| 48   Total other expenses. Enter here and on page 1, line 27 | 48 | 17,190 |

DAA

645466110 01/25/2007 9:35 AM

| Schedule E (Form 1040) 2005 | Attachment Sequence No. **13** | Page **2** |
| --- | --- | --- |

Name(s) shown on return. Do not enter name and social security number if shown on other side. | **Your social security number**

## EDGAR T & DOLORES V VICTORIA

**Caution.** The IRS compares amounts reported on your tax return with amounts shown on Schedule(s) K-1.

### Part II    Income or Loss From Partnerships and S Corporations
**Note.** If you report a loss from an at-risk activity for which **any** amount is **not** at risk, you **must** check the box in column (e) on line 28 and attach Form 6198. See page E-1.

27  Are you reporting any loss not allowed in a prior year due to the at-risk or basis limitations, a prior year unallowed loss from a passive activity (if that loss was not reported on Form 8582), or unreimbursed partnership expenses?  ☐ Yes  ☒ No
If you answered "Yes," see page E-6 before completing this section.

| 28 | (a) Name | (b) Enter P for partnership; S for S corp. | (c) Check if foreign partnership | (d) Employer identification number | (e) Check if any amount is not at risk |
| --- | --- | --- | --- | --- | --- |
| A | BARIATRIC MEDICAL AND PHYSICAL FITN | S | | 72-1357031 | |
| B | MONTGOMERY NORTH LTD | P | | 58-1488331 | |
| C | | | | | |
| D | | | | | |

| | Passive Income and Loss | | Nonpassive Income and Loss | | |
| --- | --- | --- | --- | --- | --- |
| | (f) Passive loss allowed (attach Form 8582 if required) | (g) Passive income from Schedule K-1 | (h) Nonpassive loss from Schedule K-1 | (i) Section 179 expense deduction from Form 4562 | (j) Nonpassive income from Schedule K-1 |
| A | 0 | | | | 16,866 |
| B | 0 | 1,813 | | | |
| C | | | | | |
| D | | | | | |
| 29a Totals | | 1,813 | | | 16,866 |
| b Totals | | | | | |

| 30 | Add columns (g) and (j) of line 29a | | 30 | 18,679 |
| --- | --- | --- | --- | --- |
| 31 | Add columns (f), (h), and (i) of line 29b | | 31 | ( 0) |
| 32 | Total partnership and S corporation income or (loss). Combine lines 30 and 31. Enter the result here and include in the total on line 41 below | | 32 | 18,679 |

### Part III    Income or Loss From Estates and Trusts

| 33 | (a) Name | (b) Employer identification number |
| --- | --- | --- |
| A | | |
| B | | |

| | Passive Income and Loss | | Nonpassive Income and Loss | |
| --- | --- | --- | --- | --- |
| | (c) Passive deduction or loss allowed (attach Form 8582 if required) | (d) Passive income from Schedule K-1 | (e) Deduction or loss from Schedule K-1 | (f) Other income from Schedule K-1 |
| A | | | | |
| B | | | | |
| 34a Totals | | | | |
| b Totals | | | | |

| 35 | Add columns (d) and (f) of line 34a | | 35 | |
| --- | --- | --- | --- | --- |
| 36 | Add columns (c) and (e) of line 34b | | 36 | ( ) |
| 37 | Total estate and trust income or (loss). Combine lines 35 and 36. Enter the result here and include in the total on line 41 below | | 37 | |

### Part IV    Income or Loss From Real Estate Mortgage Investment Conduits (REMICs)-Residual Holder

| 38 | (a) Name | (b) Employer identification number | (c) Excess inclusion from Schedules Q, line 2c (see page E-6) | (d) Taxable income (net loss) from Schedules Q, line 1b | (e) Income from Schedules Q, line 3b |
| --- | --- | --- | --- | --- | --- |
| | | | | | |

| 39 | Combine columns (d) and (e) only. Enter the result here and include in the total on line 41 below | | 39 | |
| --- | --- | --- | --- | --- |

### Part V    Summary

| 40 | Net farm rental income or (loss) from Form 4835. Also, complete line 42 below | | 40 | |
| --- | --- | --- | --- | --- |
| 41 | Total income or (loss). Combine lines 26, 32, 37, 39, and 40. Enter the result here and on Form 1040, line 17 ▶ | | 41 | 18,679 |
| 42 | Reconciliation of farming and fishing income. Enter your **gross** farming and fishing income reported on Form 4835, line 7; Schedule K-1 (Form 1065), box 14, code B; Schedule K-1 (Form 1120S), box 17, code N; and Schedule K-1 (Form 1041), line 14, code F (see page E-7) | 42 | | |
| 43 | **Reconciliation for real estate professionals.** If you were a real estate professional (see page E-1), enter the net income or (loss) you reported anywhere on Form 1040 from all rental real estate activities in which you materially participated under the passive activity loss rules | 43 | | |

DAA    Schedule E (Form 1040) 2005

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re                                                              Case No. 06-31225-WRS
                                                                   Chapter 7
DELORIS V. VICTORIA,

            Debtor.


**<u>ORDER ON MOTION TO DISMISS CASE</u>**

For the reasons set forth on the record on June 26, 2007, on the Motion to Dismiss Case

for Abuse Under 11 U.S.C. § 707 filed by Greenville Hospital Corporation (Doc. 53), it is

        ORDERED that the Motion is GRANTED.


Done this the 27th day of June, 2007.


                                        /s/ William R. Sawyer
                                        United States Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

**Deloris V. Victoria**                                   **Case No. 06-31225**
**225 Woodland Heights Dr**
**Greenville, AL 36037**
**SSN: xxx-xx-7367**

   **Debtor,**

_____

### NOTICE OF APPEAL

Deloris V. Victoria , the Debtor appeals under 28 U.S.C. § 158(a) or (b) from the judgment, order or decree of the Bankruptcy Judge, The Honorable William R. Sawyer, entered on the Motion of Greenville Memorial Hospital on the 27th day of June, 2007.

The names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their respective attorneys are as follows:

Honorable Teresa Jacobs
U. S. Bankruptcy Administrator
One Church Street
Montgomery, AL 36104

Daniel G. Hamm, Trustee
The Law Offices of Daniel G. Hamm

560 South McDonough St., Ste A
Montgomery, AL 36104

Bradley R. Hightower
Attorney for Greenville Memorial Hospital
Christian & Small505 North 20th Street
Birmingham, Al 35203

Dated: July 6, 2007

   /s/ Richard D, Shinbaum
Richard D. Shinbaum
Shinbaum, Abell, McLeod & Campbell
PO Box 201
Montgomery, AL 36101
334-269-4440
Email: rshinbaum@samvpc.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

---

In the matter of:          )
                           )
Deloris V. Victoria,       ) Case No. 06-31225
                           ) Montgomery, AL
    Debtor.                ) June 26, 2007

---

TRANSCRIPT OF TELEPHONIC PROCEEDINGS
BEFORE THE HONORABLE WILLIAM R. SAWYER
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor:

Richard D. Shinbaum
Shinbaum, Abell, McLeod & Vann
P.O. Box 201
Montgomery, AL 36101

For Greenville Memorial Hospital:

Bradley R. Hightower
Christian & Small, LLP
505 North 20th Street, Suite 1800
Birmingham, AL 35203

---

Electronic Recorder
Operator:                      Linda Bodden

Transcriber:                   Patricia Basham
                               6411 Quail Ridge Drive
                               Bartlett, TN  38135
                               9O1-372-O613

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

2

1          COURTROOM DEPUTY: In reference to Chapter 7 case

2     number 06-31225, Deloris V. Victoria, the parties are on the

3     line.

4          THE COURT:   Okay.   Good morning.   Let's take

5     appearances.  We will start for the debtor.  Have we have got

6     Mr. Shinbaum?

7          MR. SHINBAUM: Yes, sir.

8          THE COURT:   Okay.  Good morning, Mr. Shinbaum.

9          MR. SHINBAUM: Good morning.

10          THE COURT:   We have got Mr. Hightower?  Who do we

11     have for Greenville Hospital?

12          MR. HIGHTOWER: Brad Hightower for Greenville Hospital,

13     Your Honor.

14          Okay, Mr. Hightower.   Do we have any other

15     appearances to note for the record.

16          MR. HIGHTOWER: No, Your Honor.

17          MR. SHINBAUM: Did you call Mr. Hamm?  He had told me

18     earlier that he might want to be present.

19          THE COURT: Well, he didn't call in.  Well, gentlemen,

20     what we are going to do, we have had a hearing on this, we have

21     had several rounds of briefing, so I am going to rule orally on

22     this.

23          We have got a motion to dismiss under 11 USC, Section

24     707(b)  filed  by  Greenville  Hospital,  which  707(b)  was

25     substantially amended in the 2005 amendments and creditors are

3

1    now permitted to file motions for abuse under section 707(b).

2    So that's what it is I am considering.

3         I would note, sort of initially, we have got the

4    debtor who is a doctor, who has income of nearly two hundred

5    thousand a year, who is married, who shares a home and a

6    household with her husband who is also a doctor who also makes

7    approximately two hundred thousand dollars per year.  So we

8    have got a debtor household here with household annual income

9    of between three hundred and fifty and four hundred thousand

10   dollars per year.  It would appear to be a poster-child case

11   for substantial abuse.

12        What I think the case turns on, in looking through

13   everything, it seems to turn on the question of whether or not

14   the debtor's debts are primarily consumer or not.  If they are

15   not consumer debts, if they are not primarily personal and

16   consumer debts, then section 707(b) doesn't apply.  In which

17   case, the moving party would be limited to 707(a) or some other

18   grounds.

19        I am going to note a couple of things.  When a debtor

20   files bankruptcy, it is incumbent on him or her to be

21   forthright and forthcoming with the court, with creditors, with

22   the parties-in-interest.  And I have noticed that we have had

23   multiple amendments to the schedules.  I have gotten a real

24   sense that the debtor is playing hide-the-ball and being

25   uncooperative, and that's certainly a factor in my view.

4

1          In looking at the reply memorandum filed by Greenville

2     Hospital at item sixty-eight, in that filing Greenville does a

3     very technical analysis of the facts, and I am going to adopt

4     that as reasoning of the court.   I think Greenville Hospital

5     has it right.  I believe the debtor's income – I am sorry – the

6     debtor's debts are primarily personal, and I am going to make

7     that finding.   Then based upon that finding, there is no

8     dispute that the presumption of abuse then arises under 707(b),

9     and nothing that I saw in the evidence would seem that there

10    has even been an attempt to rebut the presumption.  That is,

11    the debtor's defense was simply that the presumption doesn't

12    come into play because of the nature of the debts.   The

13    debtor's contention being that the debts were not primarily

14    personal and consumer but were rather business in nature.  So

15    I have rejected that finding.

16          So for those reasons, I am going to grant the motion

17    to dismiss.

18          Thank you, gentlemen.

19          MR. SHINBAUM: Your Honor, when are you going to

20    publish the opinion?

21          THE COURT:   Weren't you listening?  I just did it.

22          MR. SHINBAUM: I meant is there going to be a written

23    opinion?

24          THE COURT:   No, it is just going to be just an order

25    for the reasons set forth on the record.  It has been recorded.

5

1    You can call Ms. Bodden.  She can give you a CD for a fairly

2    nominal charge or you can order a written transcript which

3    would cost a little bit more, but I wasn't going to write a

4    memorandum decision on this one.

5         Thank you all.

6         MR. HIGHTOWER: Thank you, Judge.

7         (Off the record at 11:06 a.m.)

6

C E R T I F I C A T E

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

 /s/ Patricia Basham
Patricia Basham, Transcriber
Date:  July 18, 2007