**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **Deloris V. Victoria,** | ) | **Case No. 06-31225-WRS-7** |
| | ) | |
| **Debtor.** | ) | |

---

## APPELLEE'S DESIGNATION OF ADDITIONAL ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL

---

Greenville Hospital Corporation, d/b/a LV Stabler Memorial Hospital (the "Appellee" or "Greenville Hospital"), a creditor and party in interest in the chapter 7 bankruptcy case filed by Deloris V. Victoria (the "Debtor" or "Victoria"), files the following designation of additional items to be included in the record on appeal of the Bankruptcy Court's June 27, 2007 Order dismissing the Debtor's case for abuse:

1. Docket No. 16 - Trustee's Motion to Extend Deadline for Filing Objections to Claims of Exemptions and Objections to the Debtor's Discharge by Sixty Days.

2. Docket No. 21 - Motion to Extend Time Deadline for Filing Motion to Dismiss Debtor's Case for Abuse Pursuant to Section 707(b) of the Bankruptcy Code filed by Greenville Hospital.

3. Docket No. 23 - Order Granting Motion to Extend Time to File Complaint And Objections To Claims of Exemptions.

4. Docket No. 27 - Order Granting Motion to Extend The Deadline For Filing Motion To Dismiss Case.

5. Docket No. 28 - Motion for 2004 Examination Filed by Greenville Hospital and attached Exhibit.

6. Docket No. 30 - Order Granting Motion for Examination Of The Debtor.

7. Docket No. 36 - AMENDED Schedules B, F, and G, filed by Deloris V. Victoria.

8.      Docket No. 38 - Second Motion to Extend Time - Extend Deadlines for Sixty Days filed by Greenville Hospital.

9.      Docket No. 41 - Order Finding That Debtor's Lease With Greenville Hospital Is Automatically Rejected And Granting Relief From Stay.

10.     Docket No. 43 - Order Granting Motion to Extend Time To File Complaint.

11.     Docket No. 48 - Motion to Compel Debtor to Produce Documents, or in the alternative, Motion To Dismiss Case for Failure to Produce Documents filed by Greenville Hospital.

12.     Docket No. 49 - Order Setting Hearing Entered on Motion to Compel, Motion to Dismiss Case, filed by Greenville Hospital Corporation.

13.     Docket No. 55 - Trustee's Report of Assets & Request for Notice to Creditors Filed by Trustee Daniel G. Hamm.

14.     Docket No.  57 - Order Setting Evidentiary Hearing on Motion to Dismiss Case, filed by Greenville Hospital Corporation.

15.     Docket No. 58 - Order Denying Motion to Compel.

16.     Docket No. 62 - Trustee's Interim Report - Chapter 7 Asset Case.

17.     Docket No. 63 - AMENDED Schedules D, E, F, Fee Amount $26 filed by Deloris V. Victoria.

18.     Docket No. 67 - Debtor's Response to Creditors Motion to Dismiss, Notification of error in supplemental brief, filed by Deloris V. Victoria.

19.     Docket No. 69 - Order Setting Hearing Entered on Motion to Dismiss case, filed by Greenville Hospital.

20.     Transcript of Section 341 Creditors' Meeting Held on November 29, 2006 (Requested From Bankruptcy Court).

21.     Transcript of Continued Section 341 Creditors' Meeting Held on December 15, 2006 (Requested From Bankruptcy Court).

22.     Transcript of Rule 2004 Examination of Debtor on February 9, 2007 (Attached as Exhibit "A" to Docket No. 53).

23.     Transcript of Hearing on Motion to Compel filed by Greenville Hospital held on April 24, 2007 (Requested From Bankruptcy Court).

24.     Three Ring Binder Submitted Into Evidence by Greenville Hospital at Evidentiary Hearing on Motion to Dismiss held on June 8, 2007.

25.     Transcript of Evidentiary Hearing on Motion to Dismiss held on June 8, 2007 (Requested From Bankruptcy Court).

Respectfully submitted,


/s/ Bradley R. Hightower
Bradley R. Hightower
Attorney for Greenville Memorial Hospital

**OF COUNSEL:**
CHRISTIAN & SMALL LLP
505 North 20th Street, Suite 1800
Birmingham, Alabama 35203
Phone: (205) 795-6588
Fax: (205) 328-7234

**CERTIFICATE OF SERVICE**

Unless otherwise served by the ECF system, I certify that I have served a copy of the above and foregoing Designation on the following by placing a copy in the United States Mail, properly addressed, first-class postage pre-paid on this the 3rd day of August, 2007:

Deloris V. Victoria
225 Woodland Heights Dr.
Greenville, Alabama 36037

C. Brandon Sellers, III
Richard D. Shinbaum
Shinbaum, Abell, McLeod & Vann
P.O. Box 201
Montgomery, Alabama 36101

U.S. Bankruptcy Adminstrator
Attn: Tina Hayes
One Church Street
Montgomery, Alabama 36104

Chapter 7 Trustee, Daniel G. Hamm
560 South McDonough Street, STE A
Montgomery, Alabama 36104

/s/ Bradley R. Hightower
OF COUNSEL

**DISMISSED, ASSET, APPEAL**

# U.S. Bankruptcy Court
# MIDDLE DISTRICT OF ALABAMA (Montgomery)
## Bankruptcy Petition #: 06-31225
### Internal Use Only

*Assigned to:* William R. Sawyer                    *Date Filed:* 09/25/2006
Chapter 7
Voluntary
Asset


*Debtor*                                represented by **C. Brandon Sellers, III**
**Deloris V. Victoria**                             Shinbaum, Abell, McLeod
225 Woodland Heights Dr                             & Vann
Greenville, AL 36037                                PO Box 201
SSN: ███████                                        Montgomery, AL 36101
                                                    334-269-4440
                                                    Email:
                                                    cbsellers@samvpc.com

                                                    **Richard D. Shinbaum**
                                                    Shinbaum, Abell, McLeod
                                                    & Vann
                                                    P.O. Box 201
                                                    Montgomery, AL 36101
                                                    334 269-4440
                                                    Email:
                                                    rshinbaum@samvpc.com


*Bankruptcy Admin.*
**Bankruptcy Administrator**
U. S. Bankruptcy Administrator
One Church Street
Montgomery, AL 36104


*Trustee*
**Daniel G. Hamm**
The Law Offices of Daniel G. Hamm

560 South McDonough St., Ste A
Montgomery, AL 36104
334-269-0269

| Filing Date | # | Docket Text |
|---|---|---|
| 09/25/2006 | 1 | Chapter 7 Voluntary Petition . Fee Amount $299. Filed by C. Brandon Sellers III on behalf of Deloris V. Victoria. (Sellers, C.) (Entered: 09/25/2006) |
| 09/25/2006 | 2 | Certificate of Credit Counseling for Debtor Filed by C. Brandon Sellers III on behalf of Deloris V. Victoria. (Sellers, C.) (Entered: 09/25/2006) |
| 09/25/2006 | 3 | Employee Income Records Filed by C. Brandon Sellers III on behalf of Deloris V. Victoria. (Sellers, C.) (Entered: 09/25/2006) |
| 09/25/2006 | 4 | Declaration re: Electronic Filing Filed by C. Brandon Sellers III on behalf of Deloris V. Victoria. (Sellers, C.) (Entered: 09/25/2006) |
| 09/25/2006 | 5 | Receipt of Voluntary Petition (Chapter 7)(06-31225) [misc,volp7a] ( 299.00) filing fee. Receipt number 1979911, amount $ 299.00. (U.S. Treasury) (Entered: 09/25/2006) |
| 09/26/2006 | 6 | First Meeting of Creditors, Trustee and Deadlines Assigned. Section 341(a) Meeting of Creditors to be held 10/27/2006 at 09:00 AM in FMJ Fed. Courthouse(Lee St. entrance), Sec. 341 Meeting (Rm 105), Montgomery, AL 36104. The Trustee appointed to this case is Daniel G. Hamm. Last day to oppose discharge or dischargeability is 12/26/2006. (Entered: 09/26/2006) |
| 09/26/2006 | 7 | Clerk's Notice on the following Deficiency(s): Statement Of Current Monthly Income And Means Test Calculation Was Filed Incomplete, Refile Complete |

| | | |
|---|---|---|
| | | document. (RE: related document(s)1 Voluntary Petition (Chapter 7)). Incomplete Filings due by 10/11/2006. (JT, ) (Entered: 09/26/2006) |
| 09/26/2006 | | New Case Received and Reviewed for Accuracy. (JT, ) (Entered: 09/26/2006) |
| 09/28/2006 | 8 | BNC Certificate of Service - Meeting of Creditors - (RE: related document(s)6 Auto Assign Meeting of Creditors-Ch 7 Indiv. No Asset, ). No. of Notices: 16. Service Date 09/28/2006. (Admin.) (Entered: 09/29/2006) |
| 09/28/2006 | 9 | BNC Certificate of Service - See Image Attached - (RE: related document(s)7 Clerk's Notice of Deficiency, ). No. of Notices: 1. Service Date 09/28/2006. (Admin.) (Entered: 09/29/2006) |
| 10/11/2006 | | Deadlines Terminated on Incomplete Filings Due RE: 7 Clerk's Notice of Deficiency Due: 10/11/2006. (Debts are primarily non-consumer) Deficient flag(s) removed. (YP, ) (Entered: 10/11/2006) |
| 10/30/2006 | 10 | Reaffirmation Agreement Between Debtor and BRANTLEY BANK & TRUST (Attorney Declaration Signed) Filed by C. Brandon Sellers III on behalf of Deloris V. Victoria. (Sellers, C.) (Entered: 10/30/2006) |
| 10/30/2006 | 11 | Reaffirmation Agreement Between Debtor and BUTLER COUNTY BANK (Attorney Declaration Signed) Filed by C. Brandon Sellers III on behalf of Deloris V. Victoria. (Sellers, C.) (Entered: 10/30/2006) |
| 10/31/2006 | 12 | Notice - Meeting of Creditors Continued on 11/29/2006 at 09:01 AM at FMJ Fed. Courthouse(Lee St. entrance), Sec. 341 Meeting (Rm 105), Montgomery, AL 36104 (Hamm, Daniel) (Entered: 10/31/2006) |

| | | |
|---|---|---|
| 12/01/2006 | 13 | Notice - Meeting of Creditors Continued on 12/15/2006 at 09:01 AM at FMJ Fed. Courthouse(Lee St. entrance), Sec. 341 Meeting (Rm 105), Montgomery, AL 36104 (Hamm, Daniel) (Entered: 12/01/2006) |
| 12/07/2006 | 14 | NOTICE OF SUBMISSION ERROR FILED BY FILER. REFILED AS DOCKET ENTRY 16. Trustee's Motion to Extend Time *Deadline for Filing Objection to Claims of Exemptions and Objections to the Debtor's Discharge by Sixty Days* Filed by Daniel G. Hamm on behalf of Daniel G. Hamm (RE: related document(s)6 Auto Assign Meeting of Creditors-Ch 7 Indiv. No Asset, ). (Hamm, Daniel) Modified text on 12/8/2006 (JT, ). (Entered: 12/07/2006) |
| 12/07/2006 | 15 | Notice of Submission Error *Correct Debtor's Name* (Non-Image Entry) Filed by Daniel G. Hamm on behalf of Daniel G. Hamm (RE: related document(s)14 Motion to Extend Time, filed by Trustee Daniel G. Hamm). (Hamm, Daniel) (Entered: 12/07/2006) |
| 12/07/2006 | 16 | Trustee's Motion to Extend Time *Deadline for Filing Objections to Claims of Exemptions and Objections to the Debtor's Discharge by Sixty Days* Filed by Daniel G. Hamm on behalf of Daniel G. Hamm. (Hamm, Daniel) (Entered: 12/07/2006) |
| 12/08/2006 | | Motion terminated. (RE: related document(s)14 Motion to Extend Time, Notice Of Submission Error Filed, Document Was Refiled As Docket Entry 16). (JT, ) (Entered: 12/08/2006) |
| 12/08/2006 | 17 | Trustee's Application to Employ Professional Person(s) Daniel G. Hamm as Accountant Filed by Daniel G. Hamm on behalf of Daniel G. Hamm. (Attachments: # 1 Affidavit) (Hamm, Daniel) (Entered: 12/08/2006) |
| 12/11/2006 | 18 | Bankruptcy Administrator Response to Application to Employ Professional Person(s) *Recommends Hamm, as* |

|  |  |  |
|---|---|---|
|  |  | *CPA, in accordance with Section 327(d)* Filed by (RE: related document(s)17 Application to Employ Professional Person(s) filed by Trustee Daniel G. Hamm). (Hayes, Tina) (Entered: 12/11/2006) |
| 12/11/2006 | 19 | Notice of Hearing Set (RE: related document(s)16 Trustee's Motion to Extend Time, 17 Application to Employ Professional Person, Daniel G. Hamm, as Accountant for Trustee). Hearing scheduled for 12/19/2006 at 10:00 AM at Courtroom 4D, Judge Sawyer Presiding, U.S. Bankruptcy Court, Montgomery, AL. (JPC, ) (Entered: 12/11/2006) |
| 12/19/2006 | 20 | Trustees Initial Report & First Meeting Held (Hamm, Daniel) (Entered: 12/19/2006) |
| 12/21/2006 | 21 | Motion to Extend Time *Deadline for Filing Motion to Dismiss Debtor's Case for Abuse Pursuant to Section 707(b) of the Bankruptcy Code* Filed by Bradley R. Hightower on behalf of Greenvill Hospital Corporation d/b/a LV Stabler Memorial Hospital. (Hightower, Bradley) (Entered: 12/21/2006) |
| 12/22/2006 | 22 | Notice of Hearing Set (RE: related document(s)21 Motion to Extend Time, ). Hearing scheduled for 1/9/2007 at 10:00 AM at Courtroom 4D, Judge Sawyer Presiding, U.S. Bankruptcy Court, Montgomery, AL. (JPC, ) (Entered: 12/22/2006) |
| 12/28/2006 | 23 | Order Granting Motion to Extend Time To File Complaint And Objections To Claims Of Exemptions (Related Doc # 16) Entered On 12/28/2006. Entry of discharge order is deferred until 2/20/2007. (JT, ) (Entered: 12/28/2006) |
| 12/28/2006 | 24 | Order Granting Application to Employ Professional Person(s) Daniel G. Hamm (Related Doc # 17) Entered On 12/28/2006. (JT, ) (Entered: 12/28/2006) |

| | | |
|---|---|---|
| 12/30/2006 | 25 | BNC Certificate of Service - See Image Attached - (RE: related document(s)23 Order on Motion to Extend Time). No. of Notices: 1. Service Date 12/30/2006. (Admin.) (Entered: 12/30/2006) |
| 12/30/2006 | 26 | BNC Certificate of Service - See Image Attached - (RE: related document(s)24 Order on Application to Employ Professional Person(s)). No. of Notices: 1. Service Date 12/30/2006. (Admin.) (Entered: 12/30/2006) |
| 01/17/2007 | 27 | Order Granting Motion to Extend The Deadline For Filing Motion To Dismiss Case, Deadline is Extended To February 20. 2007 (Related Doc # 21) Entered On 1/17/2007. (JT, ) Modified text on 1/17/2007 (JT, ). (Entered: 01/17/2007) |
| 01/18/2007 | 28 | Motion for 2004 Examination Filed by Bradley R. Hightower on behalf of Greenvill Hospital Corporation d/b/a LV Stabler Memorial Hospital. (Attachments: # 1 Exhibit A) (Hightower, Bradley) (Entered: 01/18/2007) |
| 01/19/2007 | 29 | BNC Certificate of Service - See Image Attached - (RE: related document(s)27 Order on Motion to Extend Time). No. of Notices: 1. Service Date 01/19/2007. (Admin.) (Entered: 01/20/2007) |
| 01/24/2007 | 30 | Order Granting Motion for Examination Of The Debtor (Related Doc # 28) Entered On 1/24/2007. (JT, ) . (Entered: 01/24/2007) |
| 01/26/2007 | 31 | BNC Certificate of Service - See Image Attached - (RE: related document(s)30 Order on Motion for Examination). No. of Notices: 2. Service Date 01/26/2007. (Admin.) (Entered: 01/27/2007) |
| 01/30/2007 | 32 | Motion for Relief from Stay *and for Finding that Debtor's Lease with Greenville Hospital is Automatically Rejected*. Fee Amount $150. Filed by Bradley R. Hightower on behalf of Greenvill Hospital |

| | | |
|---|---|---|
| | | Corporation d/b/a LV Stabler Memorial Hospital. Responses due by 2/22/2007. (Attachments: # 1 Exhibit A) (Hightower, Bradley) (Entered: 01/30/2007) |
| 01/30/2007 | 33 | Receipt of Motion for Relief From Stay(06-31225) [motion,mrlfsty] ( 150.00) filing fee. Receipt number 2137984, amount $ 150.00. (U.S. Treasury) (Entered: 01/30/2007) |
| 01/31/2007 | 34 | Notice is hereby given that the first page of the referenced motion, notice or objection did not contain or feature prominently the notice legend required by the Local Bankruptcy Rules for the Middle District of Alabama. Failure to cure the deficiency within 7 days shall subject the motion, notice or objection to dismissal without further notice. (RE: related document(s)32 Motion for Relief From Stay, ). Incomplete Filings due by 2/7/2007. (JT, ) (Entered: 01/31/2007) |
| 01/31/2007 | 35 | AMENDED Motion for Relief from Stay . Filed by Bradley R. Hightower on behalf of Greenvill Hospital Corporation d/b/a LV Stabler Memorial Hospital (RE: related document(s)32 Motion for Relief From Stay, filed by Creditor Greenvill Hospital Corporation d/b/a LV Stabler Memorial Hospital). Responses due by 2/23/2007. (Attachments: # 1 Exhibit A) (Hightower, Bradley) (Entered: 01/31/2007) |
| 02/01/2007 | | Motion terminated., Deadlines terminated. (RE: related document(s)32 Motion for Relief From Stay,, [34] Clerk's Notice of Language Deficiency. Amended Motion filed as dke 35). (JT, ) (Entered: 02/01/2007) |
| 02/05/2007 | 36 | AMENDED Schedules B, F, G, (Creditor NONE ADDED Added) Fee Amount $26. Filed by C. Brandon Sellers III on behalf of Deloris V. Victoria. (Sellers, C.) (Entered: 02/05/2007) |
| 02/05/2007 | 37 | Receipt of Amended Schedules A-J and Summary of |

| | | |
|---|---|---|
| | | Schedules(06-31225) [misc,amdsca2] ( 26.00) filing fee. Receipt number 2144254, amount $ 26.00. (U.S. Treasury) (Entered: 02/05/2007) |
| 02/05/2007 | | Flags: AwCAact16 flag(s) removed Re: dke 36, Amended schedules-no new creditors added. (JT, ) (Entered: 02/05/2007) |
| 02/13/2007 | 38 | Second Motion to Extend Time - *Extend Deadlines for Sixty Days* Filed by Bradley R. Hightower on behalf of Greenvill Hospital Corporation d/b/a LV Stabler Memorial Hospital (RE: related document(s)27 Order on Motion to Extend Time). (Hightower, Bradley) (Entered: 02/13/2007) |
| 02/16/2007 | 39 | Notice of Hearing Set (RE: related document(s)38 Motion to Extend Time, ). Hearing scheduled for 2/27/2007 at 10:00 AM at Courtroom 4D, Judge Sawyer Presiding, U.S. Bankruptcy Court, Montgomery, AL. (BL, ) (Entered: 02/16/2007) |
| 02/22/2007 | | Deadlines terminated Re: dke 23, Order Granting Motion To Extend Time until 2/20/2007. Second motion dke 38 was filed to Extend Time and is set for hearing 2/27/2006 in dke 39. (JT, ) (Entered: 02/22/2007) |
| 02/26/2007 | 40 | Order Granting Motion For Relief From Stay of Greenville Hospital Corp. (Related Doc # 35) Entered On 2/26/2007. (BL, ) (Entered: 02/26/2007) |
| 02/26/2007 | | Deadline terminated. In Re: #35. (BL, ) (Entered: 02/26/2007) |
| 03/07/2007 | 41 | Order Finding That Debtor's Lease With Greenville Hospital Is Automatically Rejected And Granting Relief From Stay (Related Doc # 35) Entered On 3/7/2007. (JT, ) (Entered: 03/07/2007) |

| | | |
|---|---|---|
| 03/08/2007 | 42 | Clerk's Notice that Discharge will be withheld and the case will be closed if the following documents are not filed within 20 days:. Debtor(s) Certification Regarding Section 522(q) Exemptions due by 3/28/2007.Financial Management Certification for Debtor Due by 3/28/2007. (RLW, ) (Entered: 03/08/2007) |
| 03/08/2007 | 43 | Order Granting Motion to Extend Time To File Complaint (Related Doc # 38) Entered On 3/8/2007. Entry of discharge order is deferred until 2/20/2007. (JT, ) (Entered: 03/08/2007) |
| 03/09/2007 | 44 | BNC Certificate of Service - See Image Attached - (RE: related document(s)41 Order on Motion For Relief From Stay). No. of Notices: 1. Service Date 03/09/2007. (Admin.) (Entered: 03/10/2007) |
| 03/10/2007 | 45 | BNC Certificate of Service - See Image Attached - (RE: related document(s)42 Clerk's Notice of Final Discharge Requirements, ). No. of Notices: 1. Service Date 03/10/2007. (Admin.) (Entered: 03/11/2007) |
| 03/10/2007 | 46 | BNC Certificate of Service - See Image Attached - (RE: related document(s)43 Order on Motion to Extend Time). No. of Notices: 1. Service Date 03/10/2007. (Admin.) (Entered: 03/11/2007) |
| 03/15/2007 | 47 | Order on Entered On 3/15/2007 Time for creditors to file motion to dismiss pursuant to Section 707(b) extended to April 20, 2007. (RE: related document(s)43 Order on Motion to Extend Time). (Sawyer, William) (Entered: 03/15/2007) |
| 03/20/2007 | 48 | Motion to Compel *Debtor to Produce Documents*, or in the alternative Motion to Dismiss Case *for Failure to Produce Documents* Filed by Bradley R. Hightower on behalf of Greenvill Hospital Corporation d/b/a LV Stabler Memorial Hospital. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit |

| | | |
|---|---|---|
| | | E# 6 Exhibit F# 7 Exhibit G# 8 Exhibit H# 9 Exhibit I# 10 Exhibit J) (Hightower, Bradley) (Entered: 03/20/2007) |
| 03/22/2007 | 49 | Order Setting Hearing Entered On 3/22/2007 (RE: related document(s)48 Motion to Compel,, Motion to Dismiss Case, filed by Creditor Greenvill Hospital Corporation d/b/a LV Stabler Memorial Hospital). Hearing scheduled for 4/24/2007 at 10:00 AM at Courtroom 4D, Judge Sawyer Presiding, U.S. Bankruptcy Court, Montgomery, AL. (JPC, ) (Entered: 03/22/2007) |
| 03/26/2007 | 50 | Certificate of Service *of Order Setting Hearing and Motion to Compel* Filed by Bradley R. Hightower on behalf of Greenvill Hospital Corporation d/b/a LV Stabler Memorial Hospital (RE: related document(s)48 Motion to Compel,, Motion to Dismiss Case, filed by Creditor Greenvill Hospital Corporation d/b/a LV Stabler Memorial Hospital). (Attachments: # 1 Appendix Mailing Matrix) (Hightower, Bradley) (Entered: 03/26/2007) |
| 03/29/2007 | 51 | Financial Management Course Certificate Filed by C. Brandon Sellers III on behalf of Deloris V. Victoria. (Sellers, C.) (Entered: 03/29/2007) |
| 03/29/2007 | 52 | Certification Regarding 522(q) Exemptions Filed by C. Brandon Sellers III on behalf of Deloris V. Victoria. (Sellers, C.) (Entered: 03/29/2007) |
| 03/30/2007 | | Deadlines terminated Re: dke's 42, Deficiency Discharge, 43 Entry Of Discharge Deferred Date deadline termed.Deficiencies filed in dke's 51, 52. (JT, ) (Entered: 03/30/2007) |
| 04/20/2007 | 53 | Motion to Dismiss Case for Abuse Under 11 USC 707b Filed by Bradley R. Hightower on behalf of Greenvill Hospital Corporation d/b/a LV Stabler Memorial |

|  |  |  |
|---|---|---|
|  |  | Hospital. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit E# 6 Exhibit F# 7 Exhibit G) (Hightower, Bradley) (Entered: 04/20/2007) |
| 04/23/2007 | 54 | Debtor's Response to *Motion to compel* Filed by Richard D. Shinbaum on behalf of Deloris V. Victoria (RE: related document(s)48 Motion to Compel,, Motion to Dismiss Case, filed by Creditor Greenvill Hospital Corporation d/b/a LV Stabler Memorial Hospital). (Shinbaum, Richard) (Entered: 04/23/2007) |
| 04/25/2007 | 55 | Trustee's Report of Assets & Request for Notice to Creditors Filed by Trustee Daniel G. Hamm. (Hamm, Daniel) (Entered: 04/25/2007) |
| 04/26/2007 | 56 | Order & Notice Fixing Date and to File Claims (Ch 7 Asset) (RE: related document(s)55 Trustee's Report of Assets). Proofs of Claims due by 7/27/2007. (JT, ) (Entered: 04/26/2007) |
| 04/26/2007 | 57 | Order Setting Evidentiary Hearing Entered On 4/26/2007 (RE: related document(s)53 Motion to Dismiss Case, filed by Creditor Greenvill Hospital Corporation d/b/a LV Stabler Memorial Hospital). Hearing scheduled for 5/8/2007 at 02:00 PM at Courtroom 4D, Judge Sawyer Presiding, U.S. Bankruptcy Court, Montgomery, AL. (JT, ) (Entered: 04/26/2007) |
| 04/26/2007 | 58 | Order Denying Motion To Compel (Related Doc # 48) Entered On 4/26/2007. (JT, ) (Entered: 04/26/2007) |
| 04/26/2007 |  | Motion terminated. (RE: related document(s)48 Motion to Compel,, Motion to Dismiss Case, ). Order Entered in dke 58. (JT, ) (Entered: 04/26/2007) |
| 04/28/2007 | 59 | BNC Certificate of Service - Notice to File Claim (Ch 7) - (RE: related document(s)56 Order & Notice Fixing Date and to File Claims (Ch 7 Asset)). No. of Notices: |

| | | |
|---|---|---|
| | | 18. Service Date 04/28/2007. (Admin.) (Entered: 04/29/2007) |
| 04/28/2007 | 60 | BNC Certificate of Service - See Image Attached - (RE: related document(s)57 Order on Motion To Set Hearing, ). No. of Notices: 21. Service Date 04/28/2007. (Admin.) (Entered: 04/29/2007) |
| 04/28/2007 | 61 | BNC Certificate of Service - See Image Attached - (RE: related document(s)58 Order on Motion to Compel). No. of Notices: 1. Service Date 04/28/2007. (Admin.) (Entered: 04/29/2007) |
| 04/30/2007 | 62 | Trustee's Interim Report- Chapter 7 Asset Case . (Hamm, Daniel) (Entered: 04/30/2007) |
| 05/08/2007 | 63 | AMENDED Schedules D, E, F, Fee Amount $26. Filed by Richard D. Shinbaum on behalf of Deloris V. Victoria. (Shinbaum, Richard) (Entered: 05/08/2007) |
| 05/08/2007 | 64 | Receipt of Amended Schedules A-J and Summary of Schedules(06-31225) [misc,amdsca2] ( 26.00) filing fee. Receipt number 2267476, amount $ 26.00. (U.S. Treasury) (Entered: 05/08/2007) |
| 05/08/2007 | 65 | Debtor's Response to *Crdeditors Motion to Dismiss* Filed by Richard D. Shinbaum on behalf of Deloris V. Victoria (RE: related document(s)53 Motion to Dismiss Case, filed by Creditor Greenvill Hospital Corporation d/b/a LV Stabler Memorial Hospital). (Attachments: # 1 Exhibit Exhibits to reply) (Shinbaum, Richard) (Entered: 05/08/2007) |
| 05/08/2007 | | Flags: AwCAact16 flag(s) removed Re: dke 63, filing fee paid, no new creditors added, changed amount of debt. (JT, ) (Entered: 05/08/2007) |
| 05/09/2007 | 66 | Debtor's Response to *Supplemental Response to the Motion to dismiss.* Filed by Richard D. Shinbaum on |

| | | |
|---|---|---|
| | | behalf of Deloris V. Victoria (RE: related document(s)53 Motion to Dismiss Case, filed by Creditor Greenvill Hospital Corporation d/b/a LV Stabler Memorial Hospital). (Attachments: # 1 Exhibit First transmission of documents# 2 Exhibit Victoria transmission of ommitted Documents of same date.) (Shinbaum, Richard) (Entered: 05/09/2007) |
| 05/09/2007 | 67 | Debtor's Response to *Creditors Motion to Dismiss, Notification of error in suppleemtnal brief.* Filed by Richard D. Shinbaum on behalf of Deloris V. Victoria (RE: related document(s)53 Motion to Dismiss Case, filed by Creditor Greenvill Hospital Corporation d/b/a LV Stabler Memorial Hospital). (Shinbaum, Richard) (Entered: 05/09/2007) |
| 05/09/2007 | | Matter Under Advisement Re:. Matter Under Advisement Due by 5/9/2007. (Sawyer, William) (Entered: 05/09/2007) |
| 05/09/2007 | 68 | Reply to *Debtor's Response and Supplemental Response* Filed by Bradley R. Hightower on behalf of Greenvill Hospital Corporation d/b/a LV Stabler Memorial Hospital (RE: related document(s)53, 66, 67 Motion to Dismiss Case, filed by Creditor Greenvill Hospital Corporation d/b/a LV Stabler Memorial Hospital). (Attachments: # 1 Exhibit A# 2 Exhibit B) (Hightower, Bradley) Modified text to add dke's 66, 67 on 5/10/2007 (JT, ). (Entered: 05/09/2007) |
| 06/08/2007 | 69 | Order Setting Hearing Entered On 6/8/2007 (RE: related document(s)53 Motion to Dismiss Case, filed by Creditor Greenvill Hospital Corporation d/b/a LV Stabler Memorial Hospital). Hearing scheduled for 6/26/2007 at 11:00 AM at Telephone Hearing. (Pugh, Rebekah) (Entered: 06/08/2007) |
| 06/27/2007 | | Matter Under Advisement Complete (RE: related document(s) Set Matter Under Advisement Deadline). |

| | | |
|---|---|---|
| | | (Sawyer, William) (Entered: 06/27/2007) |
| 06/27/2007 | 70 | Order on Motion to Dismiss Case Re: related dke 53 Entered On 6/27/2007. (Pugh, Rebekah) Modified text to add related dke on 6/27/2007 (JT, ). (Entered: 06/27/2007) |
| 06/27/2007 | | Motion terminated. (RE: related document(s)53 Motion to Dismiss Case, Order entered in dke 70). (JT, ) (Entered: 06/27/2007) |
| 06/29/2007 | 71 | BNC Certificate of Service - See Image Attached - (RE: related document(s)70 Order). No. of Notices: 1. Service Date 06/29/2007. (Admin.) (Entered: 06/30/2007) |
| 07/06/2007 | 72 | Debtor's Notice of Appeal . Fee Amount $255. Filed by Richard D. Shinbaum on behalf of Deloris V. Victoria (RE: related document(s)53 Motion to Dismiss Case, filed by Creditor Greenvill Hospital Corporation d/b/a LV Stabler Memorial Hospital, 70 Order). Appellant Designation due by 7/16/2007. Transmission of Designation Due by 7/26/2007. (Shinbaum, Richard) (Entered: 07/06/2007) |
| 07/06/2007 | 73 | Receipt of Notice of Appeal(06-31225) [appeal,ntcapl] ( 255.00) filing fee. Receipt number 2345872, amount $ 255.00. (U.S. Treasury) (Entered: 07/06/2007) |
| 07/09/2007 | 74 | Notice Service of Notice of Appeal. Civil Action Number: Filed by (RE: related document(s)72 Notice of Appeal, filed by Debtor Deloris V. Victoria, 70 Order). (Attachments: # 1 Instructions for appellant)(DS, ) (Entered: 07/09/2007) |
| 07/16/2007 | 75 | Appellant Designation of Contents For Inclusion in Record and Issues On Appeal Filed by Richard D. Shinbaum on behalf of Deloris V. Victoria (RE: related document(s)72 Notice of Appeal, filed by Debtor |

| | | |
|---|---|---|
| | | Deloris V. Victoria). Appellee designation due by 7/26/2007. (Shinbaum, Richard) (Entered: 07/16/2007) |
| 07/17/2007 | 76 | Request for Transcript re: Appeal Filed by Richard D. Shinbaum on behalf of Deloris V. Victoria (RE: related document(s)72 Notice of Appeal, filed by Debtor Deloris V. Victoria, 75 Appellant Designation and Issues on Appeal, filed by Debtor Deloris V. Victoria). (Shinbaum, Richard) (Entered: 07/17/2007) |
| 07/24/2007 | | Transcript Filed - will be held from public until Redaction Deadlines have passed. (LB, ) (Entered: 07/24/2007) |
| 07/24/2007 | 77 | A transcript has been filed for the hearing held on June 26th, 2007 (Telephone Hearing). Pursuant to the Judicial Conference Policy on Privacy, access to this transcript is restricted for five business days from the date of filing. All parties have five business days to file a Request for Redaction of any social security numbers, financial account data, names of minor-age children, dates of birth, and home addresses. If redaction is requested, the filing party has 21 calendar days from the date the transcript was filed to file a list of items to be redacted indicating the location of the identifiers within the transcript with the court and to provide the list to the transcriber. If no request is filed, the transcript will be made electronically available to the general public. You may view a copy of the transcript by visiting the Office of the Clerk of Court at One Church Street, Montgomery, AL or you may purchase a copy by calling the Clerk of Court at 334-954-3800.. Request for Redaction must be filed by 7/30/2007. List of Items to be Redacted must be filed by 8/14/2007. (LB, ) Additional attachment(s) added on 8/6/2007 (LB, ). (Entered: 07/24/2007) |
| 07/26/2007 | 78 | BNC Certificate of Service - See Image Attached - (RE: related document(s)77 Notice of Transcript Filed, , , , ). No. of Notices: 2. Service Date 07/26/2007. (Admin.) |

| | | |
|---|---|---|
| | | (Entered: 07/27/2007) |
| 07/27/2007 | 79 | Transmittal of Record on Appeal to U.S. District Court *(emailed to Intake/U.S. District Court.**District Court 2:07-cv-00688-WKW** )* Filed by (RE: related document(s)72 Notice of Appeal, filed by Debtor Deloris V. Victoria, 75 Appellant Designation and Issues on Appeal, filed by Debtor Deloris V. Victoria). (DS, ) Modified to add District Court case number on 7/30/2007 (DS, ). (Entered: 07/27/2007) |
| 07/30/2007 | 80 | Clerk's Notice of Claims/Surplus Bar Date Expiration - The 30/90 day period for filing proof of claims in this case has expired. The trustee should review the CM/ECF claims register for classification purposes and indicate what action will be taken. (RE: related document(s)56 Order & Notice Fixing Date and to File Claims (Ch 7 Asset)). (JT, ) (Entered: 07/30/2007) |
| 08/03/2007 | 81 | Appellee Designation of Contents for Inclusion in Record and Issues On Appeal Filed by Bradley R. Hightower on behalf of Greenvill Hospital Corporation d/b/a LV Stabler Memorial Hospital (RE: related document(s)72 Notice of Appeal, filed by Debtor Deloris V. Victoria, 75 Appellant Designation and Issues on Appeal, filed by Debtor Deloris V. Victoria). (Hightower, Bradley) (Entered: 08/03/2007) |
| 08/06/2007 | | Deadlines terminated. In Re: Docket Entry #77 - No items to be redacted. (LB, ) (Entered: 08/06/2007) |
| 08/06/2007 | 82 | Motion - *Consent Motion to Accept Out of Time Appellee's Designation of Additional Items to be Included in the Record On Appeal* Filed by Bradley R. Hightower on behalf of Greenvill Hospital Corporation d/b/a LV Stabler Memorial Hospital. (Hightower, Bradley) (Entered: 08/06/2007) |
| 08/07/2007 | 83 | Request for Transcript re: Appeal Filed by Bradley R. |

| | | |
|---|---|---|
| | | Hightower on behalf of Greenvill Hospital Corporation d/b/a LV Stabler Memorial Hospital (RE: related document(s)81 Appellee Designation and Issues on Appeal, filed by Creditor Greenvill Hospital Corporation d/b/a LV Stabler Memorial Hospital). Transcript Due by 8/14/2007. (Hightower, Bradley) (Entered: 08/07/2007) |
| 08/07/2007 | 87 | Request for Transcript re: Appeal Filed by Bradley R. Hightower on behalf of Greenvill Hospital Corporation d/b/a LV Stabler Memorial Hospital (RE: related document(s)83 Request for Transcript re: Appeal, filed by Creditor Greenvill Hospital Corporation d/b/a LV Stabler Memorial Hospital). (LB, ) (Entered: 08/16/2007) |
| 08/10/2007 | | Matter Under Advisement Re: (RE: related document(s)82 Motion, ). Matter Under Advisement Due by 8/10/2007. (Sawyer, William) (Entered: 08/10/2007) |
| 08/13/2007 | 88 | Transcript of Proceedings held April 24, 2006 filed - will be held from public until Redaction Deadlines have passed. (LB, ) (Entered: 08/16/2007) |
| 08/13/2007 | 89 | Transcript of Proceedings held May 8, 2006 filed - will be held from public until Redaction Deadlines have passed. (LB, ) (Entered: 08/16/2007) |
| 08/14/2007 | 84 | Trustee's Motion for Instructions Filed by Daniel G. Hamm on behalf of Daniel G. Hamm. (Attachments: # 1 Garnishee's Answer) (Hamm, Daniel) (Entered: 08/14/2007) |
| 08/14/2007 | 85 | Notice of Telephone Hearing Set (RE: related document(s)82 Greenville Hospital Motion to Accept Out of Time Appellee's Designation of Additional Items to be Included in the Record on Appeal. Hearing scheduled for 8/28/2007 at 09:00 AM at Telephone |

| | | |
|---|---|---|
| | | Hearing. (JPC, ) (Entered: 08/14/2007) |
| 08/15/2007 | 86 | Response to *Trustee's Motion for Instructions* Filed by Bradley R. Hightower on behalf of Greenvill Hospital Corporation d/b/a LV Stabler Memorial Hospital (RE: related document(s)84 Motion for Instructions filed by Trustee Daniel G. Hamm). (Attachments: # 1 Exhibit A) (Hightower, Bradley) (Entered: 08/15/2007) |
| 08/16/2007 | 90 | A transcript has been filed for the hearing held on April 24, 2006. Pursuant to the Judicial Conference Policy on Privacy, access to this transcript is restricted for five business days from the date of filing. All parties have five business days to file a Request for Redaction of any social security numbers, financial account data, names of minor-age children, dates of birth, and home addresses. If redaction is requested, the filing party has 21 calendar days from the date the transcript was filed to file a list of items to be redacted indicating the location of the identifiers within the transcript with the court and to provide the list to the transcriber. If no request is filed, the transcript will be made electronically available to the general public. You may view a copy of the transcript by visiting the Office of the Clerk of Court at One Church Street, Montgomery, AL or you may purchase a copy by calling the Clerk of Court at 334-954-3800.. Request for Redaction must be filed by 8/21/2007. List of Items to be Redacted must be filed by 9/6/2007. (LB, ) (Entered: 08/16/2007) |
| 08/16/2007 | 91 | A transcript has been filed for the hearing held on May 8, 2006. Pursuant to the Judicial Conference Policy on Privacy, access to this transcript is restricted for five business days from the date of filing. All parties have five business days to file a Request for Redaction of any social security numbers, financial account data, names of minor-age children, dates of birth, and home addresses. If redaction is requested, the filing party has 21 calendar days from the date the transcript was filed to file a list of items to be redacted indicating the |

| | | |
|---|---|---|
| | | location of the identifiers within the transcript with the court and to provide the list to the transcriber. If no request is filed, the transcript will be made electronically available to the general public. You may view a copy of the transcript by visiting the Office of the Clerk of Court at One Church Street, Montgomery, AL or you may purchase a copy by calling the Clerk of Court at 334-954-3800.. Request for Redaction must be filed by 8/21/2007. List of Items to be Redacted must be filed by 9/6/2007. (LB, ) (Entered: 08/16/2007) |
| 08/16/2007 | | **Appeal Deadlines Updated (RE: related document(s)#82 Motion to Accept Out of Time Appellee's Designation, #81 Appellee Designation and Issues on Appeal, ). Rel doc #82 is set for hearing (rel doc #85). Check for ruling re: Transmission of Appellee Designation to U.S. District Court on 8/29/2007. (DS, )** (Entered: 08/16/2007) |
| 08/18/2007 | 92 | BNC Certificate of Service - See Image Attached - (RE: related document(s)90 Notice of Transcript Filed, , , , ). No. of Notices: 2. Service Date 08/18/2007. (Admin.) (Entered: 08/19/2007) |
| 08/18/2007 | 93 | BNC Certificate of Service - See Image Attached - (RE: related document(s)91 Notice of Transcript Filed, , , , ). No. of Notices: 2. Service Date 08/18/2007. (Admin.) (Entered: 08/19/2007) |
| 08/23/2007 | 94 | Notice of Telephone Hearing Set (RE: related document(s)84 Motion for Instructions). Hearing scheduled for 8/28/2007 at 09:00 AM at Telephone Hearing. (JPC, ) (Entered: 08/23/2007) |
| 08/27/2007 | | Deadlines terminated. In Re: Docket Entries #90 and 91 - No redaction requests filed. (LB, ) (Entered: 08/27/2007) |

| | | |
|---|---|---|
| 08/30/2007 | 95 | Order Granting Motion To Accept Out Of Time Designation Of Record (Related Doc # 82) Entered On 8/30/2007. (DS, ) (Entered: 08/30/2007) |

| IN THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF ALABAMA | CHAPTER SEVEN CASE NUMBER 06-31225<br><br>IN RE: DELORIS V. VICTORIA, DEBTOR. |
|---|---|

# TRUSTEE'S MOTION TO EXTEND DEADLINE FOR FILING OBJECTION TO CLAIMS OF EXEMPTIONS AND OBJECTIONS TO THE DEBTOR'S DISCHARGE BY SIXTY (60) DAYS

**COMES NOW** the Trustee, Daniel G. Hamm, in the above styled matter and pursuant to *Fed.R.Bankr.P.4003, 4004(b)* moves to extend the deadline for filing objections to the Debtor's discharge and objection to the debtor's claim of exemptions by sixty (60) days by stating the following grounds:

1. The Court has set December 26, 2006 as the deadline for filing complaints to determine whether the debtor is entitled to a discharge.

2. The Trustee continued the original § 341 hearing for Debtor to produce records regarding Debtor's real and personal assets.

3. The Debtors § 341 hearing has been continued until December 15, 2006.

4. The evening before the continued § 341 meeting the Debtor provided some documents and records to the Trustee's office and on the morning of the continued § 341 hearing, Debtor's attorney contacted the Trustee and requested a continuance.

5. The Trustee will need additional time to evaluate the documents provided.

**WHEREFORE,** the premises considered, the undersigned moves the Court for an Order extending the time for filing objections to the Debtor's discharge and claims of exemptions by sixty (60) days.

**RESPECTFULLY SUBMITTED** on Thursday the 7th day of December. 2006.

/s/ Daniel G. Hamm

DANIEL G. HAMM, TRUSTEE

560 S. MCDONOUGH ST., STE. A
MONTGOMERY, ALABAMA 36104
TEL. 334-269-0269
FAX 334-323-5669
E-MAIL DHAMM@DGHLEGAL.COM

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of this Trustee's Motion to Extend Deadline for Filing Objection to Claims of Exemptions and Objections to the Debtor's Discharge by Sixty (60) Days by electronic transmission or by placing a copy of same in the United States Mail with sufficient postage for first class delivery to the Debtor's Attorney and the Bankruptcy Administrator.

**DONE** this Thursday the 7th day of December, 2006.

/s/ **Daniel G. Hamm**

DANIEL G. HAMM

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

**In re:** )
)
**Deloris V. Victoria,** ) **Case No. 06-31225-WRS-7**
)
**Debtor.** )

---

**MOTION TO EXTEND DEADLINE FOR FILING**
**MOTION TO DISMISS DEBTOR'S CASE FOR ABUSE**
**PURSUANT TO SECTION 707(b) OF THE BANKRUPTCY CODE**

---

Greenville Hospital Corporation, d/b/a LV Stabler Memorial Hospital ("Greenville Hospital"), a creditor and party of interest in the chapter 7 bankruptcy case filed by Deloris V. Victoria (the "Debtor" or "Victoria"), requests that the Court extend the deadline for Greenville Hospital to file a motion to dismiss the Debtor's case for abuse pursuant to Section 707(b) of the Bankruptcy Code to February 20, 2006. In support of its motion, Greenville Hospital states as follows:

1. Rule 1017 of the Federal Rules of Bankruptcy Procedure requires that a motion to dismiss a case for abuse under Section 707(b) may be filed only within 60 days after the first date set for the meeting of creditors in the Debtor's case, **unless**, on request filed before the time has expired, the Court for cause extends the time for filing the motion to dismiss.

2. The first date set for the meeting of creditors in the Debtor's case was October 27, 2006. This means that the deadline for filing a motion to dismiss for abuse under Section 707(b) is December 26, 2006.

3. On December 7, 2006, the Trustee, Daniel G. Hamm, filed a Motion to Extend Deadline for Filing Objection to Claims Of Exemption and Objections to the Debtor's Discharge by Sixty (60) Days (the "Trustee's Motion to Extend"). The basis for the Trustee's Motion to Extend was that the Debtor's original meeting of creditors had been continued to December 15, 2006 for the Debtor to produce additional records regarding the Debtor's real and personal property. For this reason, the

Trustee requested that the Court extend the December 26, 2006 deadline to object to the Debtor's claims of exemption and discharge by 60 days.

4.    At the continued meeting of creditors on December 15, 2006, the Debtor was examined by the Trustee, the Bankruptcy Administrator and counsel for Greenville Hospital.  Based upon information that was revealed at this examination, the Debtor agreed to produce additional records and revise certain portions of the Debtor's Statement of Financial Affairs.

5.    Upon information and belief, these additional records have not yet been produced and the Trustee's Motion to Extend has granted by consent.  The deadline to file objections to the Debtor's claims of exemption and objections to the Debtor's discharge has now been extended to February 20, 2007.

6.    Greenville Hospital needs to examine the additional records that are going to be produced by the Debtor and the Debtor's revised Statement of Financial Affairs before Greenville Hospital can determine whether it will file a motion to dismiss the Debtor's case for abuse pursuant to Section 707(b).  This constitutes cause to extend the December 26, 2006 deadline to February 20, 2006.

WHEREFORE, Greenville Hospital, d/b/a LV Stabler Memorial Hospital, requests that the Court extend the deadline for Greenville Hospital to file a motion to dismiss the Debtor's case for abuse pursuant to Section 707(b) until February 20, 2007.

Respectfully submitted,


/s/ Bradley R. Hightower
Bradley R. Hightower
Attorneys for Greenville Memorial Hospital

**OF COUNSEL:**
CHRISTIAN & SMALL LLP
505 North 20th Street, Suite 1800
Birmingham, Alabama 35203
Phone: (205) 795-6588
Fax: (205) 328-7234

**CERTIFICATE OF SERVICE**

Unless otherwise served by the ECF system, I certify that I have served a copy of the above and foregoing Motion to Extend on the following by placing a copy in the United States Mail, properly addressed, first-class postage pre-paid on this the 21st day of December, 2006:

C. Brandon Sellers, III
Shinbaum, Abell, McLeod & Vann
P.O. Box 201
Montgomery, Alabama 36101

U.S. Bankruptcy Adminstrator
Attn: Tina Hayes
One Church Street
Montgomery, Alabama 36104

Chapter 7 Trustee, Daniel G. Hamm
560 South McDonough Street, STE A
Montgomery, Alabama 36104

/s/ Bradley R. Hightower
OF COUNSEL

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re

DELORIS V. VICTORIA,

Debtor

Case No. 06-31225-WRS
Chapter 7

**ORDER EXTENDING TIME TO FILE COMPLAINT AND OBJECTIONS TO CLAIMS OF EXEMPTIONS**

The trustee filed a motion to extend the time for filing a complaint under 11 U.S.C. § 727 and filing objections to the debtor's claim of exemptions (Doc. 16).

The motion came on for hearing on December 19, 2006.

The debtor had no objection to the granting of the motion. Accordingly, it is

ORDERED that the motion is GRANTED. All parties in interest may file a complaint in this case under 11 U.S.C. §727 and objection to the debtor's claim of exemptions no later than February 20, 2007.

Done this 28th day of December, 2006.

/s/ William R. Sawyer
United States Bankruptcy Judge

c: Debtor
C. Brandon Sellers, Attorney for Debtor
Daniel G. Hamm, Trustee
Teresa R. Jacobs, Bankruptcy Administrator

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re

Case No. 06-31225-WRS
Chapter 7

DELORIS V. VICTORIA,

Debtor

**ORDER GRANTING MOTION TO EXTEND THE DEADLINE FOR FILING MOTION TO DISMISS CASE**

For the reasons set forth on the record on January 9, 2007, on the motion to extend the time deadline for filing a motion to dismiss the debtor's case filed by Greenville Hospital Corporation (Doc. 21), it is

ORDERED that the motion is GRANTED, and the deadline is extended to February 20, 2007.

Done this 17th day of January, 2007.

/s/ William R. Sawyer
United States Bankruptcy Judge

c: C. Brandon Sellers III, Attorney for Debtor
Bradley R. Hightower, Attorney for Movant
Daniel G. Hamm, Trustee

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **Deloris V. Victoria,** | ) | **Case No. 06-31225-WRS-7** |
| | ) | |
| **Debtor.** | ) | |

---

**MOTION FOR RULE 2004 EXAMINATION**

---

Greenville Hospital Corporation, d/b/a LV Stabler Memorial Hospital ("Greenville Hospital"), requests the entry of an order allowing it to conduct an examination of Deloris V. Victoria (the "Debtor") pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure and as grounds therefore says as follows:

1. The Debtor filed a chapter 7 bankruptcy case in this Court on September 25, 2006 (the "Petition Date"). Shortly before the Petition Date, Greenville Hospital recovered a $162,257.74 judgment against the Debtor.

2. On the face of her petition and schedules, the Debtor states that her gross income is $15,000/month and her husband's gross income is $20,000/month. The Debtor also lists various expenses, including a $4,000/month mortgage and $1,000/month in charitable contributions, that result in a monthly net income of $1,890.00.

3. Based upon the Debtor's testimony at her first meeting of creditors, Greenville Hospital believes that the Debtor's monthly net income may be greater than the amount reflected on her petition and schedules. In addition, the Debtor's testimony indicated that she may have transferred a substantial amount of jewelry to her family members prior to filing bankruptcy. These transfers were not disclosed in the Debtor's petition and schedules.

4.      Section 707 of the Bankruptcy Code requires Greenville Hospital to perform a reasonable investigation into the circumstances that gave rise to the Debtor's bankruptcy filing before requesting that the Debtor's case be dismissed for abuse.

5.      For these reasons, Greenville Hospital requests that the Court enter an order granting its Motion for Rule 2004 Examination.  Greenville Hospital further requests that the Court order the Debtor to **produce copies of the documents described in the attached Exhibit "A" at the time of her examination**.

WHEREFORE, Greenville Hospital Corporation, d/b/a LV Stabler Memorial Hospital, requests that the Court enter an order granting its Motion for Rule 2004 Examination of the Debtor, Deloris V. Victoria, and requiring the Debtor to produce copies of the documents described in the attached Exhibit "A" at the time of her examination.

Respectfully submitted,


/s/ Bradley R. Hightower
Bradley R. Hightower
Attorney for Greenville Memorial Hospital

**OF COUNSEL:**
CHRISTIAN & SMALL LLP
505 North 20th Street, Suite 1800
Birmingham, Alabama 35203
Phone: (205) 795-6588
Fax: (205) 328-7234

**CERTIFICATE OF SERVICE**

Unless otherwise served by the ECF system, I certify that I have served a copy of the above and foregoing Motion for Rule 2004 Examination on the following by placing a copy in the United States Mail, properly addressed, first-class postage pre-paid on this the 18th day of January, 2007:

C. Brandon Sellers, III
Shinbaum, Abell, McLeod & Vann
P.O. Box 201
Montgomery, Alabama 36101

U.S. Bankruptcy Adminstrator
Attn: Tina Hayes
One Church Street
Montgomery, Alabama 36104

Chapter 7 Trustee, Daniel G. Hamm
560 South McDonough Street, STE A
Montgomery, Alabama 36104

/s/ Bradley R. Hightower
OF COUNSEL

**Exhibit "A"**
**to 2004 Examination of Deloris V. Victoria**

**DEFINITIONS**

A. The terms "documents" shall include the original and drafts and copies, including copies with notations or marks not found on the original, of any writing or printed, graphic or electronically produced or stored materials of any nature whatsoever, including, but not limited to, papers, letters, correspondence, records, reports, memoranda, notes, calendar or diary entries, e-mails, envelopes, checks, other written communications, messages, reports of telephone conversations and conferences, agreements, contracts, other official documents and legal instruments, studies, summaries, tabulations, analyses, printed matter, minutes, photographs, financial statements, worksheets, indices, voice recordings, tapes, electronic data, disks, back-up tapes, filmed or graphic matter, journals, manuals, technical releases, orders, statements, bills, receipts, vouchers, notebooks, data sheets, and drafts, revisions or amendments of any of the above, and generally any kind of tangible records that are now or formerly were, in your possession, custody or control, or which were known by you to exist, and which can be located or discovered by reasonably diligent efforts.

B. "You" or "your" refers to the party upon whom these discovery requests have been served and each of her agents, representatives, and unless privileged, their attorneys.

C. The terms "refer to" or "relate to" means having any relationship or connection to, concerning, being connected to, commenting on, responding to, containing, evidencing, showing, memorializing, describing, analyzing, reflecting, pertaining to, compromising, constituting, identifying, discussing or otherwise establishing any reasonable, logical or causal connection.

D. "Communications" includes any oral utterance made, heard, or overheard, whether in person or by telephone or otherwise, as well as every document and other mode of intentionally conveyed meaning.

E. "Concerning" means relating to, referring to, describing, evidencing or constituting.

**SPECIFIC REQUESTS**

1. A copy of your Whitney Bank checking account statement for the months of August 2006 and September 2006.

2. A copy of your Butler County Bank checking account statement for the months of August 2006 and September 2006.

3. A copy of any checking account statement received by your husband for the months of August 2006 and September 2006.

4.      A copy of any credit card account statement received by you for charges made during the months of August 2006 and September 2006.

5.      A copy of any credit card account statement received by your husband for charges made during the months of August 2006 and September 2006.

6.      A copy of any and all documents showing any interest held by you and/or your husband in any automobile, including, but not limited to, payment booklets, invoices and vehicle titles.

7.      A copy of any insurance policy on your home and any other real property in which your and/or your husband have an interest.

8.      A copy of any insurance policy on any automobile in which you and/or your husband have an interest.

9.      A copy of any insurance policy on any other personal property (excluding automobiles) in which you and/or husband have any interest, including, but not limited to, any insurance policy concerning jewelry.

10.     A copy of your federal income tax return for the tax year 2005.

11.     A copy of any written communications that you have made concerning your bankruptcy, including, but not limited to, emails and letters.

**5 1/24/07**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re

Case No. 06-31225-WRS
Chapter 7

DELORIS V. VICTORIA,

Debtor.

**ORDER GRANTING MOTION FOR EXAMINATION OF THE DEBTOR**

The creditor, Greenville Hospital Corporation d/b/a LV Stabler Memorial Hospital, filed a motion on January 18, 2007 to examine the debtor under Fed R. Bankr. Proc. 2004(a). It is hereby

ORDERED that the debtor appear before the creditor on a mutually-agreed time, date and location between the creditor, the debtor and debtor's attorney for examination.

Done this 24th day of January, 2007.

/s/William R. Sawyer
United States Bankruptcy Judge

c: Debtor
Bradley R. Hightower, Attorney for Greenville Memorial Hospital
C. Brandon Sellers, III, Attorney for Debtor
Daniel G. Hamm, Trustee
Bankruptcy Administrator

# United States Bankruptcy Court
## Middle District of Alabama

In re Deloris V. Victoria, Debtor(s)

Case No. 06-31225
Chapter 7

## MOTION TO AMEND BANKRUPTCY PETITION

1. Debtor(s), Deloris V. Victoria, commenced this case on September 25, 2006 by filing a voluntary petition for relief under Chapter 7 of Title 11 of the United States Bankruptcy Code.

2. On or about ________ debtor(s) discovered that the following information had been inadvertently omitted from his/her/their Petition:

| Schedule(s) Affected: | Change(s): |
|---|---|
| Schedule B | Add Accounts Receivable |
| Schedule F | To modify MBNA claim and correct Creditors claims |
| Schedule G | To reflect lease |

WHEREFORE, Debtor(s) pray for an Order to Amend his/her/their Bankruptcy Petition to reflect the above-mentioned changes and for such additional or alternative relief as may be just and proper.

Dated: 2-5-07

/s/ Deloris V. Victoria
Deloris V. Victoria
Debtor

## ORDER

The motion of the above-named debtor(s), Deloris V. Victoria, to amend his/her/their Bankruptcy Petition is sustained.

It is hereby ORDERED and DECREED that the Debtor's(s') Bankruptcy Petition is amended to reflect the following changes:

| Amendment(s) to Petition: |
|---|
| Amendments of Schedule B and F |
| |
| |

Dated: ____________________

____________________
U.S. BANKRUPTCY JUDGE

Form B6B
(10/05)

In re **Deloris V. Victoria**, Debtor Case No. **06-31225**

# SCHEDULE B. PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c); Rule 1007(b)). | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | | **SEP** | - | **20,000.00** |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | | **Business Accounts due and Receivable approximately $20,000.00** | - | **20,000.00** |
| | | **Business Accounts Receivables** | - | **15,000.00** |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owing debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |

Sub-Total > **55,000.00**
(Total of this page)

Sheet **1** of **2** continuation sheets attached to the Schedule of Personal Property

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037

Form B6B
(10/05)

In re **Deloris V. Victoria** Case No. **06-31225**

Debtor

# SCHEDULE B. PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property." In providing the information requested in this schedule, do not include the name or address of a minor child. Simply state "a minor child."

| Type of Property | NONE | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 1. Cash on hand | | CASH | - | 300.00 |
| 2. Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | CHECKING ACCOUNT - WHITNEY BANK | - | 2,000.00 |
| | | CHECKING ACCOUNT - BUTLER COUNTY BANK | - | 500.00 |
| 3. Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. Household goods and furnishings, including audio, video, and computer equipment. | | HOUSEHOLD GOODS | - | 7,000.00 |
| 5. Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6. Wearing apparel. | | WEARING APPAREL | - | 1,000.00 |
| 7. Furs and jewelry. | | JEWELRY | - | 5,000.00 |
| 8. Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9. Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |
| 10. Annuities. Itemize and name each issuer. | X | | | |

Sub-Total > **15,800.00**
(Total of this page)

**2** continuation sheets attached to the Schedule of Personal Property

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037 Best Case Bankruptcy

Form B6B
(10/05)

In re **Deloris V. Victoria** Case No. **06-31225**

Debtor

# SCHEDULE B. PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | | **POSSIBLE BREECH OF CONTRACT SUIT AGAINST DR. LILITH NAMI. SUIT NOT YET FILED. ATTORNEY RICHARD HARTLEY** | - | **Unknown** |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | X | | | |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | | **COMPUTERS, EKG, TABLES, CHAIRS** | - | **19,000.00** |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |

Sub-Total > **19,000.00**
(Total of this page)

Total > **89,800.00**

Sheet 2 of 2 continuation sheets attached to the Schedule of Personal Property

(Report also on Summary of Schedules)

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037

Form B6F
(10/05)

In re Deloris V. Victoria Case No. 06-31225
Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C.§112; Fed.R.Bankr.P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community maybe liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

☐ Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No.<br>**Creditor #: 1**<br>**CAMDEN NATIONAL**<br>**3 WATER STREET**<br>**Camden, AL 36726** | | - | **09-2005**<br>**LINE OF CREDIT** | | | | **2,545.00** |
| Account No. **x8652**<br>**Creditor #: 2**<br>**CAMDEN NATIONAL**<br>**3 WATER STREET**<br>**Camden, AL 36726** | | - | **09-2004**<br>**DISPUTED DEBT** | | | **X** | **1.00** |
| Account No. **x7851**<br>**Creditor #: 3**<br>**CAMDEN NATIONAL**<br>**3 WATER STREET**<br>**Camden, AL 36726** | | - | **06-2004**<br>**LOAN** | | | | **680.00** |
| Account No. **xxxxx2276**<br>**Creditor #: 4**<br>**CENTURYTEL**<br>**PO BOX 6001**<br>**Marion, LA 71260-6001** | | - | **03-2005**<br>**COLLECTION ACCOUNT** | | | | **558.00** |
| | | | | | | Subtotal (Total of this page) | **3,784.00** |

**2** continuation sheets attached

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037 S/N:34718-070103 Best Case Bankruptcy

Form B6F - Cont
(10/05)

In re **Deloris V. Victoria** Case No. 06-31225
Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | CODEBTOR | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No.<br>**Representing:**<br>**CENTURYTEL** | | | **BANK OF AMERICA**<br>**PO BOX 41466**<br>**Philadelphia, PA 19101** | | | | |
| Account No.<br>**Creditor #: 5**<br>**GENEZEN HEALTHCARE**<br>**PO BOX 571811**<br>**Houston, TX 77257** | | - | **2005**<br>**Pending Suit non consumer debt**<br>**BUTLER COUNTY CV 05-177**<br>**Suit involving patient accounts** | | | | **18,000.00** |
| Account No.<br>**Representing:**<br>**GENEZEN HEALTHCARE** | | | **DAVID C. SCHWARTZ, ESQ.**<br>**PO BOX 11366**<br>**Birmingham, AL 35202-1366** | | | | |
| Account No.<br>**Creditor #: 6**<br>**GREENVILLE HOSPITAL**<br>**DBA LV STABLER MEMORIAL**<br>**29 STABLER DR**<br>**Greenville, AL 36037** | | - | **2005**<br>**JUDGEMENT NON CONSUMER DEBT**<br>**BUTLER COUNTY CV 05-133**<br>**SUIT ON CONTRACT INVOLVING**<br>**TERMINATION OF DOCTOR** | | | | **162,700.00** |
| Account No.<br>**Representing:**<br>**GREENVILLE HOSPITAL** | | | **GREER B. MALLETTE, ESQ**<br>**505 20TH ST N., STE 1800**<br>**Birmingham, AL 35203-2696** | | | | |

Sheet no. 1 of 2 sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal (Total of this page) **180,700.00**

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037

Form B6F - Cont.
(10/05)

In re Deloris V. Victoria, Debtor — Case No. 06-31225

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | CODEBTOR | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No.<br>**Creditor #: 7**<br>**MBNA AMERICA**<br>**PO BOX 17054**<br>**Wilmington, DE 19884** | X | J | **08-1999**<br>**CREDIT CARD** | | | | **9,663.00** |
| Account No.<br>**Creditor #: 8**<br>**MBNA AMERICA**<br>**PO BOX 17054**<br>**Wilmington, DE 19884** | X | J | **10-1995**<br>**CREDIT CARD** | | | | **3,378.00** |
| Account No.<br>**Creditor #: 9**<br>**MBNA AMERICA**<br>**PO BOX 17054**<br>**Wilmington, DE 19884** | X | J | **04-1994**<br>**Non Consumer business accout credit card for purchase of medical equipment and supplies. Account in Husbands name used to pay wife's debts. $77K** | X | | | **1.00** |
| Account No.<br>**Creditor #: 10**<br>**WHITNEY BANK**<br>**228 ST CHARLES AVE**<br>**New Orleans, LA 70130** | | - | **12-1999**<br>**LINE OF CREDIT** | | | | **5,483.00** |
| Account No. | | | | | | | |

Sheet no. 2 of 2 sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal (Total of this page): **18,525.00**

Total (Report on Summary of Schedules): **203,009.00**

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL (800) 492-8037

Form B6G
(10/05)

In re **Deloris V. Victoria** Case No. **06-31225**
Debtor

# SCHEDULE G. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests. State nature of debtor's interest in contract, i.e., "Purchaser", "Agent", etc. State whether debtor is the lessor or lessee of a lease. Provide the names and complete mailing addresses of all other parties to each lease or contract described. If a minor child is a party to one of the leases or contracts, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C. § 112; Fed.R. Bankr. P. 1007(m).

☐ Check this box if debtor has no executory contracts or unexpired leases.

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
|---|---|
| **GREENVILLE HOSPITAL**<br>**DBA LV STABLER MEMORIAL**<br>**29 STABLER DR**<br>**Greenville, AL 36037** | **Business lease** |

**0** continuation sheets attached to Schedule of Executory Contracts and Unexpired Leases

Copyright (c) 1996-2005 - Best Case Solutions - Evanston, IL - (800) 492-8037 Best Case Bankruptcy

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **Deloris V. Victoria,** | ) | **Case No. 06-31225-WRS-7** |
| | ) | |
| **Debtor.** | ) | |

---

**SECOND MOTION TO EXTEND DEADLINES FOR SIXTY DAYS**

---

Greenville Hospital Corporation, d/b/a LV Stabler Memorial Hospital ("Greenville Hospital"), a creditor and party of interest in the chapter 7 bankruptcy case filed by Deloris V. Victoria (the "Debtor" or "Victoria"), requests that the Court again extend the deadlines for Greenville Hospital to file a motion to dismiss the Debtor's case for abuse pursuant to Section 707(b) of the Bankruptcy Code, to object to the Debtor's claim of exemptions and to object to the Debtor's discharge by sixty days to April 20, 2006. In support of its motion, Greenville Hospital states as follows:

1. Rule 1017 of the Federal Rules of Bankruptcy Procedure requires that a motion to dismiss a case for abuse under Section 707(b) may be filed only within 60 days after the first date set for the meeting of creditors in the Debtor's case, **unless**, on request filed before the time has expired, the Court for cause extends the time for filing the motion to dismiss.

2. Rule 4003 of the Federal Rules of Bankruptcy Procedure requires that an objection to the Debtor's claim of exemptions may be filed only within 30 days after the first date set for the meeting of creditors in the Debtor's case, **unless**, on request filed before the time has expired, the Court for cause extends the time for filing the objection.

3. Rule 4004 of the Federal Rules of Bankruptcy Procedure requires that a complaint objecting to the Debtor's discharge may be filed only within 60 days after the first date set for the meeting of creditors in the Debtor's case, **unless**, on request filed before the time has expired, the Court for cause extends the time for filing the complaint.

4.      The first date set for the meeting of creditors in the Debtor's case was October 27, 2006. This means that the original deadline for filing a motion to dismiss the Debtor's case for abuse under Section 707(b) was December 26, 2006, the original deadline for objecting to the Debtor's claim of exemptions was November 26, 2006 and the original deadline to file a complaint objecting to the Debtor's discharge was December 26, 2006.

5.      On December 7, 2006, the Trustee, Daniel G. Hamm, filed a Motion to Extend Deadline for Filing Objection to Claims Of Exemption and Objections to the Debtor's Discharge by Sixty (60) Days (the "Trustee's Motion to Extend").  The basis for the Trustee's Motion to Extend was that the Debtor's original meeting of creditors had been continued to December 15, 2006 for the Debtor to produce additional records regarding the Debtor's real and personal property.  For this reason, the Trustee requested that the Court extend the December 26, 2006 deadline to object to the Debtor's claims of exemption and discharge by 60 days.

6.      At the continued meeting of creditors on December 15, 2006, the Debtor was examined by the Trustee, the Bankruptcy Administrator and counsel for Greenville Hospital.  Based upon information that was revealed at this examination, the Debtor agreed to produce additional records and revise certain portions of the Debtor's Statement of Financial Affairs.

7.      These additional records were not timely produced and the Trustee's Motion to Extend was granted by consent.  The deadline to file objections to the Debtor's claims of exemption and objections to the Debtor's discharge was extended to February 20, 2007.

8.      On December 21, 2006, Greenville Hospital filed a Motion to Extend Deadline for Filing Motion to Dismiss Debtor's Case for Abuse Pursuant to Section 707(b) of the Bankruptcy Code (the "First Motion to Extend Deadlines").  In the First Motion to Extend Deadlines, Greenville Hospital stated that it needed to examine the additional records that were going to be produced by the Debtor and the Debtor's revised Statement of Financial Affairs before Greenville Hospital could determine whether it would file a motion to dismiss the Debtor's case for abuse pursuant to Section 707(b).

9.      This Court entered an order granting the First Motion to Extend Deadlines on December 28, 2006.  The deadline to request that the Debtor's case be dismissed for abuse was extended to February 20, 2007.

10.     On January 18, 2007, Greenville Hospital filed a Motion for Rule 2004 Examination in the Debtor's case.  In the Motion for Rule 2004 Examination, Greenville Hospital stated that it needed to take the Debtor's examination in order to perform a reasonable investigation into the circumstances that gave rise to the Debtor's bankruptcy filing before requesting that the Debtor's case be dismissed for abuse.  Attached to the Motion for Rule Examination was a document request in which Greenville Hospital requested that the Debtor produced certain documents at her examination.

11.     The Court entered an order granting the Motion for 2004 Examination on January 24, 2007.  Counsel for Greenville Hospital examined the Debtor on February 9, 2007.  The Debtor produced some documents at her examination but failed to produce many others that were requested by Greenville Hospital.  The Debtor agreed to produce certain documents at a later time and objected to the production of other documents.

12.     Greenville Hospital requests that the Court extend the current February 20, 2007 deadlines for filing a motion to dismiss the Debtor's case for abuse, for objecting to the Debtor's claim of exemptions and for filing a complaint objecting to the Debtor's discharge by sixty days to April 20, 2007.  Cause exists to extend the current deadlines because extending the deadlines will allow the Debtor time to produce certain documents that she failed to produce at her examination and will also give the parties an opportunity to resolve their dispute regarding the production of other documents.

WHEREFORE, Greenville Hospital, d/b/a LV Stabler Memorial Hospital, requests that the Court extend the deadlines for Greenville Hospital to file a motion to dismiss the Debtor's case for abuse pursuant to Section 707(b) of the Bankruptcy Code, to object to the Debtor's claim of exemptions and to object to the Debtor's discharge by sixty days to April 20, 2006.

Respectfully submitted,


/s/ Bradley R. Hightower
Bradley R. Hightower
Attorney for Greenville Memorial Hospital


**OF COUNSEL:**
CHRISTIAN & SMALL LLP
505 North 20th Street, Suite 1800
Birmingham, Alabama 35203
Phone: (205) 795-6588
Fax: (205) 328-7234


**CERTIFICATE OF SERVICE**

Unless otherwise served by the ECF system, I certify that I have served a copy of the above and foregoing Motion to Extend on the following by placing a copy in the United States Mail, properly addressed, first-class postage pre-paid on this the 13th day of February, 2007:

C. Brandon Sellers, III
Shinbaum, Abell, McLeod & Vann
P.O. Box 201
Montgomery, Alabama 36101

U.S. Bankruptcy Adminstrator
Attn: Tina Hayes
One Church Street
Montgomery, Alabama 36104

Chapter 7 Trustee, Daniel G. Hamm
560 South McDonough Street, STE A
Montgomery, Alabama 36104

/s/ Bradley R. Hightower
OF COUNSEL

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **Deloris V. Victoria,** | ) | **Case No. 06-31225-WRS-7** |
| | ) | |
| **Debtor.** | ) | |

---

**ORDER FINDING THAT DEBTOR'S LEASE WITH GREENVILLE HOSPITAL IS AUTOMATICALLY REJECTED AND GRANTING RELIEF FROM STAY**

---

Deloris V. Victoria (the "Debtor" or "Victoria") filed a chapter 7 bankruptcy case in this Court on September 25, 2006. Prior to filing bankruptcy, the Debtor executed a Medical Office Space Lease (the "Lease") with Greenville Hospital Corporation, d/b/a LV Stabler Memorial Hospital ("Greenville Hospital") on June 29, 2006. Under the terms of the Lease, the Debtor agreed to lease certain premises from Greenville Hospital for a period of two (2) years commencing on June 1, 2006.

The Lease was not listed in the Debtor's bankruptcy petition, schedules or statement of intention. The Debtor has not amended her statement of intention to assume or reject the Lease, nor has the Debtor asked the Court for additional time to determine whether she will assume or reject the Lease.

Pursuant to Section 365(d)(4) of the Bankruptcy Code, an unexpired lease of nonresidential real property under which the debtor is the lessee is automatically deemed rejected unless it is assumed within 120 days from the petition date or the date that a confirmation order is entered, whichever is earlier. Although the Debtor may request that the 120 day period be expanded, the Debtor's request must be filed before the 120 day period expires.

Because the time period for the Debtor to assume the Lease under Section 365(d)(4) has

now expired and the Debtor has not asked the Court to extend the 120 day time period, IT IS

ORDERED that the Lease is AUTOMATICALLY REJECTED and RELIEF FROM STAY IS

GRANTED to Greenville Hospital to pursue its contractual remedies under the Lease.

DONE and ORDERED this the 7th day of March, 2007.

/s/  William R. Sawyer
United States Bankruptcy Judge

**This order prepared by:**

Bradley R. Hightower
CHRISTIAN & SMALL LLP
1800 Financial Center
505 North 20th Street
Birmingham, Alabama 35203
(205) 250-6661

**Parties to receive copies:**

Bradley R. Hightower
CHRISTIAN & SMALL LLP
1800 Financial Center
505 North 20th Street
Birmingham, Alabama 35203

C. Brandon Sellers, III
Shinbaum, Abell, McLeod & Vann
P.O. Box 201
Montgomery, Alabama 36101

U.S. Bankruptcy Adminstrator
Attn: Tina Hayes
One Church Street
Montgomery, Alabama 36104

Chapter 7 Trustee, Daniel G. Hamm
560 South McDonough Street, STE A
Montgomery, Alabama 36104

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re                                                   Case No. 06-31225-WRS
                                                        Chapter 7

DELORIS V. VICTORIA,

                   Debtor

**ORDER EXTENDING TIME TO FILE COMPLAINT**

            Greenville Hospital Corporation filed a motion to extend the time for filing a

complaint under 11 U.S.C. §727 (Doc. 38).

            The motion came on for hearing on February 27, 2007.

            The debtor had no objection to the granting of the motion.  Accordingly, it is

            ORDERED that the motion is GRANTED.  All parties in interest may file a

complaint in this case under 11 U.S.C. § 727 no later than April 20, 2007.

            Done this 8th  day of March, 2007.

                                                   /s/ William R. Sawyer
                                                   United States Bankruptcy Judge

c: C. Brandon Sellers III, Attorney for Debtor
   Bradley R. Hightower, Attorney for Greenville Hospital
   Daniel G. Hamm, Trustee

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **Deloris V. Victoria,** | ) | **Case No. 06-31225-WRS-7** |
| | ) | |
| **Debtor.** | ) | |

---

**MOTION TO COMPEL DEBTOR TO PRODUCE DOCUMENTS OR ALTERNATIVELY, TO DISMISS DEBTOR'S CASE**

---

Greenville Hospital Corporation, d/b/a LV Stabler Memorial Hospital ("Greenville Hospital"), a creditor and party of interest in the chapter 7 bankruptcy case filed by Deloris V. Victoria (the "Debtor" or "Victoria"), requests that the Court compel the Debtor to produce documents requested by Greenville Hospital or, <u>preferably</u>, dismiss the Debtor's case for failing to produce documents requested by Greenville Hospital. In support of its motion, Greenville Hospital states as follows:

1. The Debtor filed a chapter 7 bankruptcy case in this Court on September 25, 2006. Although the Debtor had previously entered into a Medical Office Space Lease (the "Lease") with Greenville Hospital, the Debtor did not list the Lease in her Schedules or Statement of Intention.

2. Counsel for Greenville Hospital contacted the Debtor's attorneys regarding the Debtor's failure to list the Lease and requested that the Debtor amend her Schedules and Statement of Intention to state whether the Debtor intended to assume or reject the Lease. The Debtor's attorneys <u>did not respond</u> to this request. On October 23, 2006, counsel for Greenville Hospital emailed the Debtor's attorneys to again request that the Debtor amend her Schedules and Statement of Intention.[1] A true and correct copy of this email is attached as Exhibit "A." The Debtor's attorneys <u>did not respond</u> to this email request either.

---

[1] A copy of the Lease was attached to this email.

3.      On October 27, 2006, counsel for Greenville Hospital appeared at the Debtor's first meeting of creditors.  Without any advance notice, however, the Debtor failed to appear and the meeting was continued to December 15, 2006.  The basis for the continuance was that the Debtor was unable to produce sufficient documentation regarding her assets and liabilities at the time of the meeting.

4.      Due to the continuance of the Debtor's first meeting of creditors, the Trustee filed a Motion to Extend Time Deadline for Filing Objection to Claims of Exemptions and Objections to the Debtor's Discharge by Sixty (60) Days (the "Trustee's Motion to Extend") on December 7, 2006.  In the Trustee's Motion to Extend, the Trustee requested that the deadline to file objections to the Debtor's claims of exemption and to the Debtor's discharge be extended because the Debtor had asked for her first meeting of creditors to be continued on the basis that she was unable to produce documentation requested by the Trustee.  The Court set a hearing on the Trustee's Motion to Extend for December 19, 2007.

5.      On December 15, 2006, counsel for Greenville Hospital appeared at the Debtor's rescheduled first meeting of creditors.  Although the Debtor did attend this meeting, she again failed to produce sufficient documentation regarding her assets and liabilities.  In addition, the Debtor gave testimony indicating that her Schedules and Statement of Financial Affairs were very inaccurate.

6.      The Debtor testified that she had substantial accounts receivable that were not listed in her Schedules.  She also stated that she (or her husband - she was not sure which) held an interest in a townhouse in Atlanta, Georgia.  And finally, the Debtor testified that she had recently transferred away $5,000 in jewelry to various family members for no consideration, although these transfers were not listed.

7.      At the conclusion of this meeting, the Debtor indicated that she would produce documentation requested by the Trustee and counsel for Greenville Hospital.  She also agreed to amend her Schedules to list her accounts receivable and amend her Statement of Financial Affairs to list the jewelry transfers.  Additionally, counsel for the Debtor stated that the Debtor intended to reject the Lease with Greenville Hospital.

8. Despite her stated intentions to do so, the Debtor did not follow through on her promises. For this reason, Greenville Hospital filed a Motion to Extend Deadline for Filing Motion to Dismiss Debtor's Case for Abuse Pursuant to Section 707(b) of the Bankruptcy Code (the "First Motion to Extend Deadlines") on December 21, 2006. In the First Motion to Extend Deadlines, Greenville Hospital stated that it needed to examine the additional records that were going to be produced by the Debtor and to examine the Debtor's revised Statement of Financial Affairs. This was necessary in order for Greenville Hospital to determine whether it would file a motion to dismiss the Debtor's case for abuse pursuant to Section 707(b). The Court set a hearing on Greenville Hospital's First Motion to Extend Deadlines for January 9, 2007.

9. On December 28, 2006, the Court entered an Order granting the Trustee's Motion to Extend. Pursuant to the Court's Order, the deadline to file objections to the Debtor's claims of exemption and to the Debtor's discharge was extended by sixty (60) days to February 20, 2007.

10. On January 2, 2007, counsel for Greenville Hospital emailed the Debtor's attorneys to determine if the Debtor had any objection to the First Motion to Extend Deadlines. A true and correct copy of this email is attached as Exhibit "B." Also on the same date, counsel for Greenville Hospital emailed the Debtors' attorneys again to request that the Debtor amend her Statement of Intention to show that she intended to reject the Lease with Greenville Hospital. A draft consent order rejecting the Lease was attached for the Debtor's attorneys to review. A true and correct and correct copy of this email is attached as Exhibit "C." Again though, the Debtor's attorneys did not respond to these emails.

11. Having received no response from the Debtor's attorneys, counsel for Greenville Hospital emailed them again on January 8, 2007 regarding the same matters. A true and correct copy of this email is attached as Exhibit "D." Still, the Debtor's attorneys did not respond.

12. At the January 9, 2007 hearing on the First Motion to Extend, counsel for the Debtor stated that the Debtor had no opposition to Greenville Hospital's motion. In addition, the Trustee and the Bankruptcy Administrator requested that the First Motion to Extend be granted.

13. On January 17, 2007, the Court entered an Order granting the First Motion to Extend. Pursuant to the Court's Order, the deadline to file a motion to request that the Debtor's case be dismissed for abuse and to object to the Debtor's discharge was extended until February 20, 2007.

14. As of January 18, 2007, the Debtor had still not produced the documentation she had promised to Greenville Hospital. She had not amended her schedules either. Therefore, Greenville Hospital filed a Motion for Rule 2004 Examination (the "Motion for 2004 Examination") in which it requested that the Court allow Greenville Hospital to examine the Debtor regarding her assets and liabilities.

15. The Court entered an Order granting the Motion for 2004 Examination on January 24, 2007. That same day, counsel for Greenville Hospital sent a letter by fax to the Debtor's attorneys regarding the examination. A copy of the Motion for 2004 Examination and its document requests were attached. A true and correct copy of this letter is attached as Exhibit "E."

16. As of January 30, 2007, the Debtor's attorneys had still not responded to Greenville Hospital's request that she amend her Statement of Intention to show that the Debtor was rejecting her Lease. Nor had the Debtor's attorneys ever responded to the request by counsel for Greenville Hospital that the Debtor agree to the entry of a consent order finding that the Lease was rejected. For this reason, Greenville Hospital filed a Motion for Finding that Debtor's Lease with Greenville Hospital is Automatically Rejected and For Relief From Stay (the "Motion for Relief"). In its Motion for Relief, Greenville Hospital requested that the Court find that the time period for the Debtor to assume the Lease under Section 365(d)(4) had expired and therefore, the Lease was automatically rejected.

17. Around the same time, the parties reached an agreement to schedule the Debtor's 2004 examination on February 9, 2007. Counsel for Greenville Hospital confirmed this date in a letter by fax to the Debtor's attorneys on February 5, 2007. Attached to this letter was another copy of the Motion for 2004 Examination and its document requests. A true and correct copy of this letter is attached as Exhibit "F."

18. On the date of her 2004 examination, the Debtor showed up late and failed to bring virtually any of the documents that Greenville Hospital had requested. The documents that the Debtor did bring with her - which were not requested by Greenville Hospital - were in such disarray that they proved to be of little use in the examination. In addition, although the Debtor testified that her husband pays virtually all of her family's expenses, the Debtor intentionally did not produce any documentation regarding these expenses on the basis that the documentation was not in the Debtor's custody, possession or control.

19. Also on the date of the Debtor's 2004 examination, the Debtor filed certain amendments to her Schedules. In her amendments, the Debtor listed as an asset $35,000 in accounts receivable that were not previously disclosed. The Debtor also listed the Lease in Schedule G but still failed to amend her Statement of Intention to state whether she intended to assume or reject it. And finally, the Debtor did not amend her Statement of Financial Affairs to disclose that she had transferred a substantial amount of jewelry (approximately $5,000 worth) to other family members before filing her bankruptcy case.[2]

20. Following the Debtor's examination (and after reviewing the Debtor's amended Schedules), counsel for Greenville Hospital sent a letter by fax to the Debtor's attorneys on February 12, 2007 to request copies of the documents that the Debtor failed to produce. A true and correct copy of this letter is attached as Exhibit "G." In the letter, counsel for Greenville Hospital asked for a response from the Debtor within two (2) weeks but, again, <u>no response was received</u>.

21. Because the Debtor had still not produced the documents requested by Greenville Hospital at the Debtor's first meeting of creditors as well as the documents requested by Greenville Hospital in the document requests attached to the Motion for 2004 Examination, Greenville Hospital filed a Second Motion to Extend Deadlines for Sixty Days (the "Second Motion to Extend") on February

---

[2] The Debtor's failure to disclose her jewelry transfers is especially troubling because she testified that she transferred the jewelry for little or no consideration at both her meeting of creditors and her 2004 examination. After twice testifying regarding these transfers, the Debtor still has not amended her Statement of Financial Affairs to disclosure the transfers.

13, 2007. In the Second Motion to Extend, Greenville Hospital stated that it needed another extension of the deadline to file a motion to request that the Debtor's case be dismissed for abuse. This additional extension was needed because the Debtor had still not produced documents requested by Greenville Hospital nor had the Debtor sufficiently amended her Schedules, Statement of Intention and Statement of Financial Affairs. The Court set a hearing on the Second Motion for Extension for February 27, 2007.

22. On February 26, 2007, the Court entered an Order granting Greenville Hospitals's Motion for Relief. The Court later amended its Order to specifically find that the Debtor's Lease with Greenville Hospital was automatically rejected pursuant to Section 365(d)(4).[3]

23. Also on February 26, 2007, Greenville Hospital issued a subpoena for production of documents to the Debtor's husband. A true and correct copy of the subpoena is attached as Exhibit "H." The subpoena commanded the Debtor's husband to produce copies of documents related to the Debtor's assets, income and family expenses at the office of the Debtor's attorneys on March 9, 2007. The subpoena was served on the Debtor's husband on February 28, 2007.

24. The Court held a hearing on Greenville Hospital's Second Motion to Extend on February 27, 2007. At the hearing, the Court agreed to grant the Second Motion to Extend. The Court also specifically stated to counsel for the Debtor that the Court would dismiss the Debtor's case if the Debtor continued to withhold documents from Greenville Hospital.

25. On March 8, 2007, the day before the documents were to be produced pursuant to the subpoena, counsel for Greenville Hospital left a voicemail for the Debtor's attorneys to request that they let him know whether the documents would in fact be produced on March 9, 2007. Having received no response, counsel for Greenville Hospital sent a letter by fax to the Debtor's attorneys on the same date. A true and correct copy of the letter is attached hereto as Exhibit "I." Despite these efforts by counsel for Greenville Hospital, the Debtor's attorneys did not respond at all.

---

[3] The Debtor never amended her Statement of Intention to state whether she intended to assume or reject the Lease. It was only by operation of law that the Lease was rejected.

26. Because the Debtor's attorneys still had not responded days later, counsel for Greenville Hospital sent another letter by fax to the Debtor's attorneys on March 12, 2007. A true and correct copy of this letter is attached as Exhibit "J." In this letter, counsel for Greenville Hospital specifically stated that if no response was received from the Debtor's attorneys by March 15, 2007, Greenville Hospital would ask this Court to compel production of the documents requested in the subpoena.

27. As of the date of this motion, it has been eleven (11) days since the date when the produced were supposed to be produced pursuant to the subpoena. The documents have not been produced and the Debtor's attorneys have not responded in any way to the numerous requests by counsel for Greenville Hospital that the Debtor and/or her husband produce the documents.

28. Based upon the Debtor's consistent and repeated pattern of failing to properly amend her Schedules, Statement of Intention and Statement of Financial Affairs as well as the failure of the Debtor and her attorneys to even respond to the requests by Greenville Hospital for the production of documents, Greenville Hospital requests that the Court compel the Debtor and/or her husband to immediately produce the documents that have been requested.

29. Alternatively - and preferably - Greenville Hospital requests that the Court dismiss the Debtor's case pursuant to Section 707(a) for failing to comply with her obligations of disclosure under the Bankruptcy Code. And upon the dismissal of the Debtor's case, Greenville Hospital requests that the Court impose a 180 day bar on re-filing pursuant to Section 109(g) for willful failure to abide by orders of this Court.

WHEREFORE, Greenville Hospital, d/b/a LV Stabler Memorial Hospital, requests that the Court compel the Debtor and/or her husband to immediately produce the documents that have been requested. Alternatively (and preferably), Greenville Hospital requests that the Court dismiss the Debtor's case pursuant to Section 707(a) for failing to comply with her obligations of disclosure under the Bankruptcy Code with a 180 day bar on re-filing pursuant to Section 109(g).

Respectfully submitted,

/s/ Bradley R. Hightower
Bradley R. Hightower
Attorney for Greenville Memorial Hospital

**OF COUNSEL:**
CHRISTIAN & SMALL LLP
505 North 20th Street, Suite 1800
Birmingham, Alabama 35203
Phone: (205) 795-6588
Fax: (205) 328-7234

**CERTIFICATE OF SERVICE**

Unless otherwise served by the ECF system, I certify that I have served a copy of the above and foregoing Motion on the following by placing a copy in the United States Mail, properly addressed, first-class postage pre-paid on this the 20th day of March, 2007:

C. Brandon Sellers, III
Shinbaum, Abell, McLeod & Vann
P.O. Box 201
Montgomery, Alabama 36101

U.S. Bankruptcy Adminstrator
Attn: Tina Hayes
One Church Street
Montgomery, Alabama 36104

Chapter 7 Trustee, Daniel G. Hamm
560 South McDonough Street, STE A
Montgomery, Alabama 36104

/s/ Bradley R. Hightower
OF COUNSEL

(Community Health) Greenville Hospital v. Victoria

EXHIBIT A

**From:** Bradley Hightower
**To:** cbsellers@samvpc.com
**Date:** 10/23/2006 6:23:42 PM
**Subject:** Deloris Victoria, Case No. 06-31225-WRS-7, Greenville Hospital Lease

Mr. Sellers:

Attached to this email is a scanned copy of the debtor's lease with Greenville Hospital Corporation. This firm represents the landlord and I recently discussed this lease with Mr. Shinbaum. I told Mr. Shinbaum that I would forward a copy of the lease to him because the debtor's bankruptcy petition and schedules to not propose to assume or reject the lease. In fact, it is not listed at all. I have forwarded the lease to you because I do not have an email address for Mr. Shinbaum.

Please give me a call or write me back if you have any questions.

Brad Hightower
Christian & Small LLP
505 20th Street North
Suite 1800
Birmingham, Alabama 35203
205-250-6661 (Phone)
205-328-7234 (Fax)

NOTICE: This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. There is no intent of the part of the sender to waive any privilege, including the attorney-client privilege, that may attach to this communication. Unless otherwise stated, the content of this message and its attachments are not to be construed as establishing an attorney-client relationship if one does not otherwise exist. If you have received this message in error, please notify the sender immediately by telephone at (205-795-6588) or by electronic mail at (sysmgr@csattorneys.com ), and delete this message and all copies and backups thereof.

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (I) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**CC:** Greer Mallette

Greenville Hospital

EXHIBIT B

**From:** Bradley Hightower
**To:** cbsellers@samvpc.com
**Date:** 1/2/2007 8:41:41 AM
**Subject:** Deloris V. Victoria, Case No. 06-31225-WRS-7, Motion to Extend Time Deadline

Brandon,

I know that Mr. Shinbaum is representing the Debtor in this case but I do not have his email address. I would appreciate it if you will forward this email to him. The Bankruptcy Court has set a hearing next week on the attached motion to extend time deadline and I would like to know if the Debtor has any objection to the motion being granted. Thanks.

Brad Hightower
Christian & Small LLP
505 20th Street North
Suite 1800
Birmingham, Alabama 35203
205-250-6661 (Phone)
205-328-7234 (Fax)

NOTICE: This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. There is no intent of the part of the sender to waive any privilege, including the attorney-client privilege, that may attach to this communication. Unless otherwise stated, the content of this message and its attachments are not to be construed as establishing an attorney-client relationship if one does not otherwise exist. If you have received this message in error, please notify the sender immediately by telephone at (205-795-6588) or by electronic mail at (sysmgr@csattorneys.com ), and delete this message and all copies and backups thereof.

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (I) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

EXHIBIT C

**From:** Bradley Hightower
**To:** cbsellers@samvpc.com
**Date:** 1/2/2007 9:13:38 AM
**Subject:** Deloris V. Victoria, Case No. 06-31225-WRS-7, Consent Order Rejecting Lease

Brandon,

Also in the Dr. Victoria case, Mr. Shinbaum previously told me that the Debtor would agree to reject her medical office space lease with Greenville Hospital. Because the Debtor did not include the lease in statement of intention and she has not filed a notice of rejection with the Bankruptcy Court, I have drafted a consent order rejecting the lease and granting relief from stay to Greenville Hospital. Please let me know if you or Mr. Shinbaum believe that any changes should be made to the consent order before it is submitted to the Court. Thanks.

Brad Hightower
Christian & Small LLP
505 20th Street North
Suite 1800
Birmingham, Alabama 35203
205-250-6661 (Phone)
205-328-7234 (Fax)

NOTICE: This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. There is no intent of the part of the sender to waive any privilege, including the attorney-client privilege, that may attach to this communication. Unless otherwise stated, the content of this message and its attachments are not to be construed as establishing an attorney-client relationship if one does not otherwise exist. If you have received this message in error, please notify the sender immediately by telephone at (205-795-6588) or by electronic mail at (sysmgr@csattorneys.com ), and delete this message and all copies and backups thereof.

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (I) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**CC:** Greer Mallette

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **Deloris V. Victoria,** | ) | **Case No. 06-31225-WRS-7** |
| | ) | |
| **Debtor.** | ) | |

---

**CONSENT ORDER REJECTING LEASE WITH GREENVILLE HOSPITAL AND GRANTING RELIEF FROM STAY**

---

Deloris V. Victoria (the "Debtor" or "Victoria") filed a chapter 7 bankruptcy case in this Court on September 25, 2006. Prior to filing bankruptcy, the Debtor executed a Medical Office Space Lease (the "Lease") with Greenville Hospital Corporation, d/b/a LV Stabler Memorial Hospital ("Greenville Hospital") on June 29, 2006. Under the terms of the Lease, the Debtor agreed to lease certain premises from Greenville Hospital for a period of two (2) years commencing on June 1, 2006.

The Lease was not listed in the Debtor's bankruptcy petition, schedules or statement of intention. The Debtor now intends to reject the lease and grant relief from stay to Greenville Hospital to pursue its contractual remedies under the Lease, including, but not limited to, re-entering and re-letting the leased premises. Based upon the Debtor's stated intention to reject the Lease, IT IS ORDERED that the Lease is REJECTED and RELIEF FROM STAY IS GRANTED to Greenville Hospital to pursue its contractual remedies under the Lease.

DONE and ORDERED this the ____ day of January, 2007.

________________________________
Honorable William R. Sawyer
United States Bankruptcy Judge

**This order prepared by:**

Bradley R. Hightower
CHRISTIAN & SMALL LLP
1800 Financial Center
505 North 20th Street
Birmingham, Alabama 35203
(205) 250-6661

**This order consented to by:**

/s/ Bradley R. Hightower

Bradley R. Hightower
CHRISTIAN & SMALL LLP
1800 Financial Center
505 North 20th Street
Birmingham, Alabama 35203
(205) 250-6661

/s/ Richard D. Shinbaum

Richard R. Shinbaum
Shinbaum, Abell, McLeod & Vann
P.O. Box 201
Montgomery, Alabama 36101

# MEDICAL OFFICE SPACE LEASE

Date: June 29, 2006

Landlord: Greenville Hospital Corporation d/b/a LV Stabler Memorial Hospital
Address:
29 LV Stabler Drive
Greenville, AL 36037

Name and Address of Building:
44 Medical Arts Court, Suite 2
Greenville, AL 36037

Tenant: Dolores Victoria, M.D.

Leased Premises Floor/Suite Description:
Suite 2

Number of Square Feet: 1250

Term of Lease: 2 years
Renewal Terms: 2 year term (up to one renewal terms of two (2) years by written agreement of the parties at least three months before expiration of term).

Commencement Date of Lease Term: June 1, 2006

Security Deposit: -0-

**Termination:** Either party may terminate this lease with or without cause upon thirty (30) days prior to written notice to the other party. However, in the event this lease is terminated for any reason prior to the expiration of one (1) year from the commencement date, the parties shall not enter into another lease until after the expiration of the first year of the initial term.

Annual Rental Rate: $ 11,250
Rent Increase **(check one)** ☐ 3% per year ☐ 4% per year

Monthly Rental Installments: $ 937.50
($ 9.00 /square foot/year)

_____ Check here if Tenant is required to maintain membership in Hospital Medical Staff

**Utilities (check any that apply):**

X_____ Utilities (electricity, water and sewer and janitorial services) are included in the Monthly Rental
X_____ Housekeeping services will be provided by the Landlord including trash removal.
X_____ The following utilities are not included in the Monthly Rental: electricity
_____ Tenant is solely responsible for the payment of separately metered utilities
_____ Tenant shall pay a pro-rata share of all separately metered utilities based on Tenant's proportionate share of the metered square footage.

**Improvements (check any that apply): Not Applicable**

_______ First time Standard Build Out - Base Tenant Build Out Allowance: $_________ per sq. ft.
_______ Existing Space (New Tenant or Renewal) - Tenant Improvement Allowance: $___ per sq. ft. per year
_______ Landlord to build out space per Landlord's Work Letter attached hereto as Exhibit B

This Medical Office Space Lease is a sublease pursuant to that certain (describe underlying lease agreement): not applicable

Attached hereto and incorporated herein for all purposes is "Exhibit A -- Medical Office Space Lease Standard Terms and Conditions" to which reference is made for the balance of the terms of this Medical Office Space Lease, including without limitation adjustments to Rental Rate/Installments.

Attached hereto and incorporated herein for all purposes are the following additional exhibits: Not applicable

**TENANT:**
[signature]
Date: 7-19-06

**REVIEWED AND APPROVED:**
[signature]
Facility Chief Executive Officer
Date: 7-19-06

**LANDLORD:**
By: [signature]
President, Hospital Corporation
Date: 7-5-06

**APPROVED AS TO FORM:**
[signature]
In-house Counsel, Hospital Corporation
Date: 6-30-06

Form No. 0103 Rev. by Legal Dept as of 6/26/06.



**EXHIBIT A**

**MEDICAL OFFICE SPACE LEASE STANDARD TERMS AND CONDITIONS**

In consideration of the mutual covenants and representations set forth in the Medical Office Space Lease (the "Lease") and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties do hereby agree as follows. The capitalized terms used in this Exhibit A shall have the meaning assigned to such terms in the Medical Office Space Lease, unless another meaning is assigned to such terms in this Exhibit A.

1. DEMISE. Upon the terms and conditions hereinafter set forth, Landlord does hereby lease to Tenant, and Tenant does hereby lease from Landlord, the Demised Premises for the Term of the Lease.

2. RENT. The Monthly Rental Installments for the Lease of the Demised Premises shall be payable in advance on the first day of each and every month during the term hereof. During the term of this Lease, the Monthly Rental Installments shall be increased, as of each anniversary date of the Commencement Date, by the percentage amount set forth in the Medical Office Space Lease. It is expressly understood and agreed that Landlord shall apply all payments from Tenant hereunder to the amounts due hereunder by Tenant which have been outstanding for the longest period of time first.

3. RENTAL RATE ADJUSTMENT. Landlord shall adjust the Annual Rental Rate and the monthly Rental Installments to the then fair market rental rate for the Demised Premises, upon the termination of an existing term of the Lease. Landlord will give notice of such adjustment to Tenant 90 days prior to expiration date of current Lease. Without limitation, Landlord's adjustment of Rental Rate and the monthly installments will be based on the fair market rental rate, utility costs and real estate taxes as well as any local, state or federal income taxes, which may become payable by the Landlord. If a rent escalation percentage has been checked on the cover page of this Lease, the adjustment under this section shall not exceed the amount checked on the cover page of this Lease.

4. LANDLORD'S OBLIGATIONS.

A. Utilities:
If utilities are included in the Monthly Rental Installments, then Landlord shall, at Landlord's expense, furnish utilities to the Demised Premises, including electrical, water and sewer, heat, ventilation, and air conditioning, however, Tenant shall be responsible for the payment of telephone and data services.

B. Maintenance
Landlord shall maintain, repair and replace all exterior walls and other features of the exterior including but not limited to the roof and all mechanical systems, including but not limited to air conditioning, heating, plumbing, wiring and piping.

C. Insurance
Landlord shall maintain fire and extended coverage insurance on the building in which the Demised Premises are located, in an amount not less than the full replacement cost of the building.

D. Taxes
Landlord shall be responsible for payment of all real estate taxes assessed against the building or property, as well as all applicable local, state and federal income taxes which are or may be payable by Landlord.

E. Build Out By Landlord
If checked on the cover sheet hereof, Landlord will be responsible for standard build out for office space per Attachment "B" (attached hereto and incorporated herein by reference).

5. TENANT'S OBLIGATIONS. In addition to the said rent to be paid, Tenant also agrees to pay directly during the term of the Lease, commencing on the Commencement Date, the following items of expense as the same become due and payable:

A. Taxes.
All ad valorem or other property taxes, personal and intangible taxes payable in connection with the use, occupancy or conduct of business on any part of the Demised Premises, including but not limited to personal property, business, privilege, license, excise, sales, use

and occupa..n taxes (but excluding local, state and feder.. ..come taxes payable by Landlord). Tenant shall be responsible for all taxes which are assessed against their stock and inventory, tangible personal property or their business and/or business operations.

B. Maintenance and Modifications.
The following charges for maintaining and operating the Demised Premises in good repair and operating condition:

1) Tenant shall, at its own cost and expense, keep the interior clean, maintaining suitable receptacles for trash and refuse, and removing from the interior all accumulations of trash and refuse.

2) Tenant shall service, keep and maintain the interior, including fixtures, doors, interior walls and appurtenances in good condition, repair and working order.

3) Tenant agrees to deliver to Landlord, upon the expiration date or upon earlier termination in accordance with the provisions hereof, physical possession of the Demised Premises in good condition, reasonable wear and tear and damage by fire or other casualty excepted.

4) If the Building is separately metered for certain utilities, such as electricity, gas, water, and sewer, Tenant shall be responsible for the payment of all such separately metered utilities based on Tenant's proportionate share of the metered square-footage.

5) If utilities are not separately metered, Tenant shall be responsible for a pro-rata share of Building utility expense, based upon the ratio of the square footage of the Demised Premises to the square footage of the Building. The utility expense shall be calculated, and the Utility Base Rate shall be adjusted, annually.

6) Tenant shall be responsible for all service costs and installations of all telephone or data services and Landlord shall have no responsibility or liability with respect thereto or the failure of operation of any such services.

6. IMPROVEMENTS. Tenant shall not make any structural changes, alterations, additions or improvements to the Demised Premises without the written consent of Landlord, which shall not be unreasonably withheld. Landlord shall not be responsible for, either in the performance or payment, any improvements to the Demised Premises unless a "Landlord's Work Letter" is attached to the Lease.

7. USE OF DEMISED PREMISES. Tenant shall use the Demised Premises for the purpose of the licensed practice of medicine and the medical treatment of Tenant's patients and business purposes ancillary thereto and for no other purpose. Without limiting the foregoing, unless approved by Landlord in advance and in writing, Tenant shall not use the Demised Premises for the operation of a "commercial ancillary medical care facility" which shall include, without limitation, a clinical laboratory, pharmacy, ambulatory surgery center, birthing center, diagnostic, including radiology, facility, and respiratory, physical, speech, or occupational therapy services. The use of diagnostic equipment (such as x-ray) and the performance of minor surgical procedures under local anesthesia, that is within the scope of Tenant's medical practice and pertaining to the treatment and care of Tenant's own patients, shall not be considered to violate the terms of this paragraph.

8. ASSIGNMENT;SUBLETTING. Tenant shall not, without the prior consent of Landlord, which consent may be withheld in Landlord's sole discretion, sublease, license or assign its interest under the Lease to any other person or entity. Assignment or subletting without the prior consent of Landlord, including assignment by operation of the law, shall constitute an event of default. In no event, whether with or without consent of Landlord, shall an assignment or lease relieve Tenant of liability under the terms, conditions and provisions of this Lease.

9. INSURANCE.

A. The following insurance coverage on the Demised Premises will be maintained by Tenant at all times during the term of the Lease. Comprehensive general liability insurance coverage on the Demised Premises in the sum of One Million Dollars ($1,000,000) for any single claim and Three Million Dollars ($3,000,000) for claims arising out of a single accident or occurrence against liability for bodily injury and death resulting therefrom, and insurance coverage in the sum of One Hundred Thousand Dollars ($100,000.00) per occurrence against liability for damage to property, arising out of the maintenance or use of the Demised Premises by Tenant. Casualty insurance insuring Tenant against loss or damage to its



equipment and other pe. .al property in the Demised Premises by fire a. .ll other casualties usually covered under an "all risk" policy of casualty insurance. The policies described in this section shall name both Tenant and Landlord as named insureds. Annually, Tenant shall furnish Landlord with a certificate of such coverage which shall provided that thirty (30) days' advance written notice be given to Landlord in the event of cancellation or material change in the insurance policy.

B. Tenant shall not do or permit any act which will increase premiums for any casualty, fire, liability or other insurance maintained by Landlord on the Building or any other property therein or which shall render such Insurance void or voidable

10. DAMAGE TO PROPERTY/INJURY TO PERSON. Tenant shall and hereby does indemnify and hold Landlord harmless from and against any and all claims to the extent they arise from (i) Tenant's use of the Demised Premises or the conduct of its business, (ii) any activity, work or thing done, permitted or suffered by the Tenant in or about the Demised Premises, (iii) any breach or default in the performance of any obligation on Tenant's part to be performed under the terms of the Lease, or (iv) any act of negligence of Tenant or his agents or employees.

11. ENVIRONMENTAL PROVISIONS.

A. Following due inquiry, Landlord represents that to the best of its knowledge there are no hazardous substances or hazardous wastes as defined by the Comprehensive Environmental Response and Liability Act or any hazardous wastes as defined by the Resource Conservation and Recovery Act, or any PCB's, radon or asbestos containing materials, located on, In or about the Demised Premises to be occupied by Tenant. Landlord agrees that should any hazardous wastes, hazardous substances, PCB's, radon or asbestos containing materials be determined to be present as a result of the acts or missions or negligence of any person or legal entity, other than Tenant, Landlord shall indemnify, hold harmless and defend Tenant from all claims, damages, expenses or litigation resulting from the presence of such materials.

B. Tenant warrants that its use of the Premises and the materials used in the conduct of its business operations at and on the Premises, or the manner of use, and its waste, effluent and vapors will not violate any laws, ordinances, rules or regulations relating to or affecting the environment or dealing with environmental matters, as hereinafter defined, hazardous substances of any kind or nature, whether imposed or enforced by any state, local or federal agency, and that Tenant shall alter its use of the Premises to comply with such laws, ordinances, rules or regulations if required to do so by any such governmental agency. Tenant shall not use the Premises, maintain them nor allow use of the Premises in any manner constituting a violation of any ordinance, statute, rule, regulation or order of any governmental authority, including, but not limited to, the ADA, zoning ordinances, or environmental rules, regulations and laws, nor will the Tenant maintain or permit any nuisance to occur or to be maintained on the Premises.

12. EARLY TERMINATION AS A RESULT OF THE DEATH OR DISABILITY OF A SOLE PRACTITIONER; OTHER VACATION OR ABANDONMENT. If Tenant is a sole practitioner and dies or becomes disabled (defined for purposes of the Lease as any physical or mental condition that prevents or is reasonably expected to prevent such physician from practicing medicine for more than ninety (90) days), then either party shall have the right to terminate the Lease prior to the expiration date by giving the other party not less than thirty (30) days prior written notice. Except as expressly provided in the preceding sentence, any other vacation of the Demised Premises for more than thirty (30) days or any abandonment of the Demised Premises by Tenant will be considered a material default under the Lease.

13. DEFAULT. Tenant shall be in default of the terms of the Lease if Tenant shall fail to make a payment of any rent or additional rent, and such rent or additional rent is not paid within ten (10) days of written notice by Landlord to Tenant of non-payment of same, or in the event that Tenant shall otherwise commit an act of default under the terms hereof, and shall not cure such default within thirty (30) days of written notice by Landlord to Tenant of such default. In the event of default:

A. Landlord may continue the Lease in full force and effect and shall have the right to collect rent when due. During the term Tenant is in default, Landlord may re-enter the Demised Premises with legal process and relet same, or any part thereof, to third parties for Tenant's account. Tenant shall be liable for all reasonable costs Landlord incurred for reletting the Demised Premises, including without limitation broker's commissions, expenses associated with repairing and / or remodeling the Demised Premises in order to return the Demised Premises to the same condition as when received by Tenant from Landlord and similar costs. Reletting can be done for a period shorter or longer than the remaining term of the Lease. Tenant shall pay to Landlord the rent due under the Lease on the date such rent is due, less the rent Landlord receives from any reletting. Landlord shall make its best efforts to relet the Demised Premises at a reasonable price. Under this paragraph, Tenant's obligations shall not exceed the total rent due for the remainder of the term.

B.  Landlord may terminate the Lease pursuant to the terms of this Section 13. Upon termination, Landlord shall have the right to collect an amount equal to all expenses, if any, including reasonable attorneys' fees, incurred by Landlord in recovering possession of the Demised Premises and all reasonable costs and charges for the care of the Demised Premises while vacated by Tenant.

C.  Should any of these remedies or any portion thereof not be permitted by the laws of the state where the Building is located, then such remedy or portion thereof shall be considered deleted and unenforceable, and the remaining remedies or portions thereof shall be and remain in full force and effect, and Landlord may avail itself of these as well as any other remedies or damages allowed by law.

14.    RIGHT OF ACCESS. Landlord and its agents shall have reasonable access to the Demised Premises during all reasonable business hours for the purpose of examining same to ascertain if they are in good repair and to make reasonable repairs which Landlord may be required to make hereunder.

15.    END OF TERM. At the termination of the Lease, Tenant shall surrender its interest in the Demised Premises to Landlord in as good condition and repair as reasonable use thereof will permit, reasonable wear and tear excepted, and will leave the Demised Premises broom clean. Tenant shall have the right, prior to said termination, to remove any equipment, furniture, trade fixtures or other personal property in the Demised Premises owned by Tenant, provided that Tenant promptly repairs any damage to the Demised Premises caused by such removal. In the event of holding over by Tenant after the expiration or termination of the Lease, Tenant shall pay rent at the then-current rate on a monthly basis. Any holding over with consent of Landlord in writing shall thereafter constitute a Lease for month-to-month.

16.    ATTORNEYS' FEES. In the event that suit is brought by either party against the other for breach or default under the terms of the Lease, the prevailing party shall be entitled to reasonable attorneys' fees, expenses (including expert witness fees) and court costs equal to the sum established by the court.

17.    HEADINGS. The article captions contained in the Lease are for the convenience of the parties only and shall not be considered in the construction or interpretation of any provision hereof.

18.    ENTIRE AGREEMENT. The Lease contains the entire agreement between the parties and supersedes any and all other prior oral and written agreements between the parties regarding the subject matter contained herein and may not be changed or terminated orally but only by agreement in writing and signed by all parties.

19.    DAMAGE OR DESTRUCTION. If the Demised Premises are damaged by fire or other casualty, the damage shall be repaired by and at the expense of Landlord (excluding any equipment which is owned by Tenant), provided that such repairs can, in Landlord's opinion, be made within sixty (60) days after the occurrence of such damage. Landlord shall notify Tenant within fifteen (15) days of the event of casualty of its determination. Until such repairs are completed, the rent shall be abated in proportion to the part of the Demised Premises rendered unusable, but there shall be no abatement of rent for a period equal to one (1) day or less. If such repairs cannot, in Landlord's opinion, be made within sixty (60) days and Landlord nonetheless chooses to repair, then Tenant may, at its option, continue as Tenant under the Lease until such repairs are completed, during which time all rent shall abate, or Tenant may terminate the Lease. A total destruction of the building in which the Demised Premises are located shall automatically terminate the Lease. Total destruction of the building shall be defined as damage greater than fifty percent (50%) of the then replacement value thereof.

20.    EMINENT DOMAIN. If the whole of the Demised Premises or so much thereof as to render the balance unusable by Tenant shall be taken under power of eminent domain, the Lease shall automatically terminate as of the effective date of the taking. In the event of a partial taking which does not result in a termination of the Lease, the rent reserved hereunder shall remain unaffected. Landlord may, without any obligation or liability to Tenant, stipulate with any condemning authority for a judgment of condemnation without the necessity of a formal suit or judgment of condemnation, and the date of taking under this clause shall then be deemed the date agreed to under the terms of said agreement for stipulation and the Lease shall terminate as of the stipulated date.

21.    WAIVER. No waiver by either party shall be deemed to be a waiver of any other provision hereof or of any subsequent breach by either party of the same or any other provision. Landlord 's consent to or approval of any act by Tenant requiring Landlord's consent or approval shall not be deemed to render unnecessary the obtaining of Landlord's consent to or approval of any subsequent act of Tenant, whether or not similar to the act so consented to or approved.



22. NOTICES. Any notice required or permitted to be given hereunder may be given by mail and shall be sufficiently given if personally served or sent by registered or certified mail or by special courier, addressed to the relevant party at the addresses specified in the Lease (notice to Tenant shall be given at the Demised Premises). For any notice given to Landlord, a copy shall be provided to the Landlord's counsel as follows: General Counsel, Legal Department, P.O. Box 217, Brentwood, Tennessee 37024-0217. **From and after December 15, 2006:** Community Health Systems, Attn: Legal Department, 4000 Meridian Blvd., Franklin, TN 37067 or Community Health Systems, Attn: Legal Department, P.O. Box 689020, Franklin, TN 37068.

23. BINDING EFFECT. The Lease shall be binding upon and inure to the benefit of the parties hereto, their heirs, successors, assigns, executors and administrators. Nothing in this article shall be deemed to amend the provisions herein concerning assignment and subletting.

24. APPLICABLE LAW. The laws of the state where the Building is located shall be employed in and govern the interpretation of all of the covenants, terms and conditions of the Lease.

25. NO PARTNERSHIP RELATIONSHIP. Notwithstanding any agreement herein contained, Landlord shall not be construed or held to be a partner or associate of Tenant in the conduct of its business, it being expressly understood and agreed that the relationship between the parties is and at all times shall remain that of Landlord and Tenant.

26. NO REQUIREMENT TO REFER. The parties expressly agree that nothing contained in the Lease shall require Tenant or any physician or other referral source to refer or admit any patients to, or order any goods or services from Landlord or any affiliate. Notwithstanding any unanticipated effect of any provision of this Agreement, neither party will knowingly or intentionally conduct himself in such a manner as to violate the prohibition against fraud and abuse in connection with the Medicare and Medicaid programs (42 USC Section 1320a-7b). Both parties represent to the other that the Rentals provided for in the Lease are at fair market value rates and do not take into account the value or volume of any referrals or other business generated between the parties. Both as a material condition to this Lease and as a continuing representation and warranty for the duration of this Lease, Tenant represents and warrants that neither it nor any of its owners, officers, directors, employees, agents, subcontractors etc have been suspended, excluded, or debarred from any government payor program.

27. QUIET ENJOYMENT. Landlord warrants and shall defend Tenant in the quiet enjoyment and possession of the Demised Premises during the term and any extension or renewal thereof.

28. OPTION TO RENEW. Provided that Tenant is not then in default hereunder, upon the expiration of the term hereof, Tenant shall have the option to renew the Lease for the additional term(s), if any, set forth on the cover page of this Lease, upon the same terms and conditions as this Lease except that the rentals payable during the renewal term shall be adjusted to fair market rental as set forth herein.

29. SUBORDINATION, ATTORNMENT AND NON-DISTURBANCE.

A. Tenant agrees that the Lease and all rights of Tenant hereunder are and shall be subject and subordinate to any ground or underlying lease which may now or hereafter be in effect regarding the Building or any component thereof, to any mortgage now or hereafter encumbering the Demised Premises or the Building or any component thereof, to all advances made or hereafter to be made upon the security of such mortgage, to all amendments, modifications, renewals, consolidations, extensions and restatements of such mortgage, and to any replacements and substitutions for such mortgage. The terms of this provision shall be self-operative and no further instrument of subordination shall be required. Tenant, however, upon request of any party in interest, shall execute promptly such instrument or certificates as may be reasonably required to carry out the intent of this provision.

B. In the event any proceedings are brought for the foreclosure of, or in the event of exercise of the power of sale under, or in the event of a deed in lieu of foreclosure with respect to any mortgage covering the Demised Premises or the Building, or in the event of termination of any Lease under which Landlord may hold title, Tenant shall, at the option of transferee, attorn to such transferee and shall recognize and be bound and obligated hereunder to such person as the Landlord under the Lease. Tenant agrees to execute any attornment agreement not in conflict with this provision.

C. Notwithst. .ng anything contained herein to the contrary, so . . as Tenant is not in default in the payment of Rentals or other charges, or in the performance of any of the other terms, covenants or conditions of the Lease, mortgagee or such person shall not disturb Tenant in its occupancy of the Demised Premises during the original or any renewal term of the Lease notwithstanding any event or proceedings described in this section.

30. MASTER CONTRACT LIST. This contract is identified on a master list of contracts maintained on a Lotus Notes server.

31. ESTOPPEL CERTIFICATE. Within thirty (30) days after written request from Landlord, Tenant shall deliver an executed statement addressed to Landlord certifying (if such be the case) that this Lease is in full force and effect, that Tenant has commenced the payment of rent, and that there are no defenses or offsets to this Lease claimed by Tenant, as well as any other information reasonably requested. If Tenant fails or refuses to give a certificate hereunder within the required time frame, then the information on such certificate as submitted by Landlord shall be deemed correct for all purposes and Landlord shall have the right to treat such failure or refusal as a default by Tenant.

32. FORCE MAJEURE. With the exception of the obligation of Tenant to pay Rent and all other amounts that may be due from time to time under this Lease, if either party shall be delayed or hindered in or prevented from doing or performing any act or thing required hereunder by reason of any matters beyond the reasonable control of such party, then such party shall not be liable or responsible for any such delays and the doing or performing of such act or thing shall be extended for a period equivalent to the period of such delay. In such event, this Lease and the obligations of both parties to perform and comply with all of the other terms and provisions of this Lease shall in no way be affected, impaired, or excused.

33. WAIVER OF JURY TRIAL

LANDLORD AND TENANT HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION, ACTION, PROCEEDING OR COUNTERCLAIM BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS LEASE OR THE OBLIGATIONS EVIDENCED HEREBY, THE RELATIONSHIP OF LANDLORD AND TENANT, TENANT'S USE OF OR OCCUPANCY OF THE PREMISES, ANY CLAIM OF INJURY OR DAMAGE, OR ANY EMERGENCY OR OTHER STATUTORY REMEDY OR ANY OTHER DOCUMENT OR INSTRUMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT TO EACH OF LANDLORD AND TENANT IN ENTERING INTO THIS LEASE.

34. SUBLEASE. In the event the Lease is a sublease to an underlying lease agreement, as described in the Lease, then with respect to the Demised Premises, except for the Term of the Lease and the Rental Rate/Installment, Tenant shall perform all of the obligations of tenant/lessee under the underlying lease agreement.

35. APPROVALS. Neither this Lease nor any amendment or modification hereto shall be effective or legally binding upon Landlord, or any officer, director, employee or agent thereof, unless and until it has been reviewed and approved in writing by a President of Landlord's owner and by Landlord's Legal Counsel.

36. RULES AND REGULATIONS. Tenant shall faithfully observe and comply strictly with the following rules and regulations, adopted for the safety, care and cleanliness of the Building or the preservation of good order therein. Landlord shall not be liable to Tenant for a violation of such rules and regulations, or for the breach of any covenant or condition in a lease by any other tenant in the Building. Landlord may, from time to time and upon notice to Tenant, adopt additional or substitute rules and regulations of the Building.

A. Conduct. Tenant shall not conduct its practice or business, or advertise such business, profession or activities of Tenant conducted in the Premises in any manner which violates local, state or federal laws or regulations.

B. Hallways and Stairways. Tenant shall not obstruct or use for storage, or for any purpose other than ingress and egress, the sidewalks, entrance, passages, courts, corridors, vestibules, halls, elevators and stairways of the Building.

C. Nuisances. Tenant shall not make or permit any noise, odor or act that is objectionable to other occupants of the Building to emanate from the Premises, and shall not create or maintain a nuisance thereon.

D. Musical Instruments, Etc. Tenant shall not install or operate any phonograph, musical instrument, radio receiver or similar device in the Building in such manner as to disturb or annoy other tenants of the Building or the neighborhood. Tenant shall not install any antennae, aerial wires or other equipment outside the Building without the prior written approval of Landlord.

E. Locks. No additional locks or bolts of any kind shall be placed upon any of the doors or windows by Tenant, nor shall any changes be made in existing locks or the mechanism thereof. Tenant must upon the termination of its tenancy restore to Landlord all keys to the Premises and toilet rooms either furnished to or otherwise produced by Tenant, and in the event of loss of any keys so furnished, Tenant shall pay to Lessor the cost thereof.

F. Obstructing Light, Damage. The doors, window glass, lights and skylights that reflect or admit light into the halls or other places of the Building shall not be covered or obstructed. The toilets and urinals shall not be used for any purpose other than those for which they were intended and constructed, and no rubbish, newspapers or other substance of any kind shall be thrown into them. Waste and excessive or unusual use of water shall not be allowed. Tenant shall not mark, drive nails, screw or drill into, paint, nor in any way deface the walls, ceilings, partitions, floors, wood, stone or iron work. The expense of any breakage, stoppage or damage resulting from a violation of this rule by Tenant shall be borne by Tenant. Tenant shall be permitted to hang pictures on office walls, but it must be done in a workmanlike manner and in such a way as not to damage or deface such walls.

G. Wiring. Electrical wiring of every kind shall be introduced and connected only as directed by Landlord, and no boring nor cutting of wires will be allowed except with the consent of Landlord. The location of the telephone, call boxes, etc., shall be subject to the approval of Landlord.

H. Equipment, Moving, Furniture, Etc. Landlord shall approve the weight, size and position of all fixtures, equipment and other property brought into the Building, and the times of moving which must be done under the supervision of Landlord. Landlord will not be responsible for any loss of or damage to any such equipment or property from any cause, and all damage done in the Building by moving or maintaining any such property shall be repaired at the expense of Tenant. All equipment shall be installed as required by law.

I. Requirements of Tenant. The requirements of Tenant will be attended to only upon application at the office of Landlord. Employees shall not perform any work nor do anything outside their regular duties unless under special instructions from Landlord. No employees shall admit any person, Tenant or otherwise, to any other office without instruction from the office of Landlord. All janitorial services personnel, guards or any outside contractors employed by Tenant shall be subject to the regulations and control of Landlord, but shall not act as an agent or servant of Landlord.

J. Medical and Hazardous Wastes. Tenant shall comply with all policies established from time to time by Landlord regarding the storage and disposal of hazardous substances, wastes and materials, and medical, special or infectious wastes.

K. Access to Building. Any person entering or leaving the Building may be questioned by Building security regarding his/her business in the Building and may be required to sign in and out. Anyone who fails to provide a satisfactory reason for being in the Building may be excluded.

L. Vehicles, Animals, Refuse. Tenant shall not allow anything to be placed on the outside window ledges of the Premises or to be thrown out of the windows of the Building. No bicycle or other vehicle, and no animal, except for service animal, shall be brought into the offices, halls, corridors, elevators or any other parts of the Building by Tenant or the agents, employees or invitees of Tenant, and Tenant shall not place or permit to be placed any obstruction or refuse in any public part of the Building.

M. Equipment Defects. Tenant shall give Landlord prompt notice of any accidents to or defects in the water pipes, gas pipes, electric lights and fixtures, heating apparatus, or any other service equipment.

N. Parking. Unless otherwise specified by Landlord, Tenant and its employees may park automobiles only in spaces designated by Landlord for such purpose and shall in no event



park in s, ces reserved for public parking. Tenant agre hat Landlord assumes no responsibility of any kind whatsoever in reference to such automobile parking area or the use thereof by Tenant or its agents or employees.

O. Conservation and Security. Tenant will see that all windows and doors are securely locked, and that all faucets and electric light switches are turned off before leaving the Building.

P. Signage. Tenant shall not place any sign upon the Demised Premises or the Building without Landlord's prior written consent.

Greenville Hosp.

EXHIBIT D

**From:** Bradley Hightower
**To:** cbsellers@samvpc.com
**Date:** 1/8/2007 10:46:11 AM
**Subject:** Fwd: Deloris V. Victoria, Case No. 06-31225-WRS-7, Consent Order Rejecting Lease

Brandon,

I am following up on the attached email that I sent you last week. I would appreciate it if you or Mr. Shinbaum will give me a response. Thanks.

Brad Hightower
Christian & Small LLP
505 20th Street North
Suite 1800
Birmingham, Alabama 35203
205-250-6661 (Phone)
205-328-7234 (Fax)

NOTICE: This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. There is no intent of the part of the sender to waive any privilege, including the attorney-client privilege, that may attach to this communication. Unless otherwise stated, the content of this message and its attachments are not to be construed as establishing an attorney-client relationship if one does not otherwise exist. If you have received this message in error, please notify the sender immediately by telephone at (205-795-6588) or by electronic mail at (sysmgr@csattorneys.com ), and delete this message and all copies and backups thereof.

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (I) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

>>> Bradley Hightower 1/2/2007 9:13 AM >>>
Brandon,

Also in the Dr. Victoria case, Mr. Shinbaum previously told me that the Debtor would agree to reject her medical office space lease with Greenville Hospital. Because the Debtor did not include the lease in statement of intention and she has not filed a notice of rejection with the Bankruptcy Court, I have drafted a consent order rejecting the lease and granting relief from stay to Greenville Hospital. Please let me know if you or Mr. Shinbaum believe that any changes should be made to the consent order before it is submitted to the Court. Thanks.

Brad Hightower
Christian & Small LLP
505 20th Street North
Suite 1800
Birmingham, Alabama 35203
205-250-6661 (Phone)
205-328-7234 (Fax)

NOTICE: This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not

the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. There is no intent of the part of the sender to waive any privilege, including the attorney-client privilege, that may attach to this communication. Unless otherwise stated, the content of this message and its attachments are not to be construed as establishing an attorney-client relationship if one does not otherwise exist. If you have received this message in error, please notify the sender immediately by telephone at (205-795-6588) or by electronic mail at (sysmgr@csattorneys.com ), and delete this message and all copies and backups thereof.

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (I) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

MODE = MEMORY TRANSMISSION START=JAN-24 16:37 END=JAN-24 16:41

FILE NO.=274

| STN NO. | COMM. | STATION NAME/EMAIL ADDRESS/TELEPHONE NO. | PAGES | DURATION |
|---|---|---|---|---|
| 001 | OK | a913342634096 | 008/008 | 00:02:53 |

Community Health v. D. Victoria

-CHRISTIAN SMALL -

***** UF-7000 v2 ****************** -205 328 7234 - ***** - 205 328 7234- *********

EXHIBIT
E

CHRISTIAN SMALL LLP
ATTORNEYS | COUNSELORS
505 20TH STREET NORTH
SUITE NO. 1800
BIRMINGHAM, ALABAMA 35203-2696
205.795.6588 205.328.7234
www.csattorneys.com

# FACSIMILE TRANSMISSION

To: **Richard D. Shinbaum**

Company: **Shinbaum, Abell, McLeod & Vann**

Fax #: **(334) 263-4096**

Date: **January 24, 2007**

From: **Brad Hightower**

Pages: 8, **including this cover sheet**

Re: **Dr. Deloris V. Victoria, Dates for 2004 Examination**

COMMENTS:

ORIGINALS WILL
___ Follow Via Regular Mail
___ Follow Via Overnight Mail
___ Follow Via Hand Delivery
_✓_ Not Be Sent

CONFIDENTIALITY NOTICE: The materials enclosed with this facsimile transmission are private and confidential. The information contained in the material is privileged and is intended only for the use of the individual(s) or entity(ies) named above. If you are not the intended recipient(s), be advised that unauthorized use, disclosure, copying, distribution or the taking of any action in reliance on the contents of this telecopied information is strictly prohibited. If you have received this facsimile transmission in error, please immediately notify us by telephone to arrange for return of the forwarded document(s) to us. Thank you.

CHRISTIAN
SMALL
LLP
ATTORNEYS | COUNSELORS

505 20TH STREET NORTH
SUITE NO. 1800
BIRMINGHAM, ALABAMA 35203-2696
Ⓣ 205.795.6588 Ⓕ 205.328.7234
www.csattorneys.com

Bradley R. Hightower

Direct Dial (205) 250-6661
E-Mail Address: BRHightower@csattorneys.com

January 24, 2007

VIA FAX (334) 263-4096
Richard D. Shinbaum
Shinbaum, Abell, McLeod & Vann
P.O. Box 201
Montgomery, Alabama 36101

Re: Dr. Deloris V. Victoria, Dates for 2004 Examination

Dear Mr. Shinbaum:

The Bankruptcy Court has entered an Order granting the Motion for Rule 2004 Examination filed by Greenville Hospital. The Order requires that the Debtor appear for examination before counsel for Greenville Hospital on a mutually-agreed time, date and location.

Please let me know the location where you would like to have the examination and some dates on which the Debtor will be available. As you recall, Greenville Hospital is taking this examination to determine whether or not to request that the Debtor's case be dismissed for abuse. The current deadline to file such a request is February 20, 2007; therefore, we need to schedule the examination for early February 2007.

I have enclosed a copy of Greenville Hospital's Motion for 2004 Examination and the Bankruptcy Court's Order granting the motion. Please confirm that the Debtor will bring to the examination the documents requested in Exhibit A attached to the motion.

I am inviting Tina Hayes from the Bankruptcy Administrator's Office to attend the examination as well.

Sincerely yours,

Brad Hightower

enclosures

cc: Greer Mallette
Tina Hayes

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **Deloris V. Victoria,** | ) | **Case No. 06-31225-WRS-7** |
| | ) | |
| **Debtor.** | ) | |

---

**MOTION FOR RULE 2004 EXAMINATION**

---

Greenville Hospital Corporation, d/b/a LV Stabler Memorial Hospital ("Greenville Hospital"), requests the entry of an order allowing it to conduct an examination of Deloris V. Victoria (the "Debtor") pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure and as grounds therefore says as follows:

1. The Debtor filed a chapter 7 bankruptcy case in this Court on September 25, 2006 (the "Petition Date"). Shortly before the Petition Date, Greenville Hospital recovered a $162,257.74 judgment against the Debtor.

2. On the face of her petition and schedules, the Debtor states that her gross income is $15,000/month and her husband's gross income is $20,000/month. The Debtor also lists various expenses, including a $4,000/month mortgage and $1,000/month in charitable contributions, that result in a monthly net income of $1,890.00.

3. Based upon the Debtor's testimony at her first meeting of creditors, Greenville Hospital believes that the Debtor's monthly net income may be greater than the amount reflected on her petition and schedules. In addition, the Debtor's testimony indicated that she may have transferred a substantial amount of jewelry to her family members prior to filing bankruptcy. These transfers were not disclosed in the Debtor's petition and schedules.

4.     Section 707 of the Bankruptcy Code requires Greenville Hospital to perform a reasonable investigation into the circumstances that gave rise to the Debtor's bankruptcy filing before requesting that the Debtor's case be dismissed for abuse.

5.     For these reasons, Greenville Hospital requests that the Court enter an order granting its Motion for Rule 2004 Examination.  Greenville Hospital further requests that the Court order the Debtor to **produce copies of the documents described in the attached Exhibit "A" at the time of her examination**.

WHEREFORE, Greenville Hospital Corporation, d/b/a LV Stabler Memorial Hospital, requests that the Court enter an order granting its Motion for Rule 2004 Examination of the Debtor, Deloris V. Victoria, and requiring the Debtor to produce copies of the documents described in the attached Exhibit "A" at the time of her examination.

Respectfully submitted,

/s/ Bradley R. Hightower
Bradley R. Hightower
Attorney for Greenville Memorial Hospital

**OF COUNSEL:**
CHRISTIAN & SMALL LLP
505 North 20th Street, Suite 1800
Birmingham, Alabama 35203
Phone: (205) 795-6588
Fax: (205) 328-7234

**CERTIFICATE OF SERVICE**

Unless otherwise served by the ECF system, I certify that I have served a copy of the above and foregoing Motion for Rule 2004 Examination on the following by placing a copy in the United States Mail, properly addressed, first-class postage pre-paid on this the 18th day of January, 2007:

C. Brandon Sellers, III
Shinbaum, Abell, McLeod & Vann
P.O. Box 201
Montgomery, Alabama 36101

U.S. Bankruptcy Adminstrator
Attn: Tina Hayes
One Church Street
Montgomery, Alabama 36104

Chapter 7 Trustee, Daniel G. Hamm
560 South McDonough Street, STE A
Montgomery, Alabama 36104

/s/ Bradley R. Hightower
OF COUNSEL

**Exhibit "A"**
**to 2004 Examination of Deloris V. Victoria**

**DEFINITIONS**

A. The terms "documents" shall include the original and drafts and copies, including copies with notations or marks not found on the original, of any writing or printed, graphic or electronically produced or stored materials of any nature whatsoever, including, but not limited to, papers, letters, correspondence, records, reports, memoranda, notes, calendar or diary entries, e-mails, envelopes, checks, other written communications, messages, reports of telephone conversations and conferences, agreements, contracts, other official documents and legal instruments, studies, summaries, tabulations, analyses, printed matter, minutes, photographs, financial statements, worksheets, indices, voice recordings, tapes, electronic data, disks, back-up tapes, filmed or graphic matter, journals, manuals, technical releases, orders, statements, bills, receipts, vouchers, notebooks, data sheets, and drafts, revisions or amendments of any of the above, and generally any kind of tangible records that are now or formerly were, in your possession, custody or control, or which were known by you to exist, and which can be located or discovered by reasonably diligent efforts.

B. "You" or "your" refers to the party upon whom these discovery requests have been served and each of her agents, representatives, and unless privileged, their attorneys.

C. The terms "refer to" or "relate to" means having any relationship or connection to, concerning, being connected to, commenting on, responding to, containing, evidencing, showing, memorializing, describing, analyzing, reflecting, pertaining to, compromising, constituting, identifying, discussing or otherwise establishing any reasonable, logical or causal connection.

D. "Communications" includes any oral utterance made, heard, or overheard, whether in person or by telephone or otherwise, as well as every document and other mode of intentionally conveyed meaning.

E. "Concerning" means relating to, referring to, describing, evidencing or constituting.

**SPECIFIC REQUESTS**

1. A copy of your Whitney Bank checking account statement for the months of August 2006 and September 2006.

2. A copy of your Butler County Bank checking account statement for the months of August 2006 and September 2006.

3. A copy of any checking account statement received by your husband for the months of August 2006 and September 2006.

4.     A copy of any credit card account statement received by you for charges made during the months of August 2006 and September 2006.

5.     A copy of any credit card account statement received by your husband for charges made during the months of August 2006 and September 2006.

6.     A copy of any and all documents showing any interest held by you and/or your husband in any automobile, including, but not limited to, payment booklets, invoices and vehicle titles.

7.     A copy of any insurance policy on your home and any other real property in which your and/or your husband have an interest.

8.     A copy of any insurance policy on any automobile in which you and/or your husband have an interest.

9.     A copy of any insurance policy on any other personal property (excluding automobiles) in which you and/or husband have any interest, including, but not limited to, any insurance policy concerning jewelry.

10.    A copy of your federal income tax return for the tax year 2005.

11.    A copy of any written communications that you have made concerning your bankruptcy, including, but not limited to, emails and letters.

**5 1/24/07**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re

Case No. 06-31225-WRS
Chapter 7

DELORIS V. VICTORIA,

Debtor.

**ORDER GRANTING MOTION FOR EXAMINATION OF THE DEBTOR**

The creditor, Greenville Hospital Corporation d/b/a LV Stabler Memorial Hospital, filed a motion on January 18, 2007 to examine the debtor under Fed R. Bankr. Proc. 2004(a). It is hereby

ORDERED that the debtor appear before the creditor on a mutually-agreed time, date and location between the creditor, the debtor and debtor's attorney for examination.

Done this 24th day of January, 2007.

/s/William R. Sawyer
United States Bankruptcy Judge

c: Debtor
Bradley R. Hightower, Attorney for Greenville Memorial Hospital
C. Brandon Sellers, III, Attorney for Debtor
Daniel G. Hamm, Trustee
Bankruptcy Administrator

MODE = MEMORY TRANSMISSION START=FEB-05 10:43 END=FEB-05 10:47

FILE NO.=327

| STN NO. | COMM. | STATION NAME/EMAIL ADDRESS/TELEPHONE NO. | PAGES | DURATION |
|---|---|---|---|---|
| 001 | OK | a913342634096 | 008/008 | 00:02:48 |

-CHRISTIAN SMALL -

***** UF-7000 v2 ****************** -205 328 7234 - ***** - 205 328 7234- *********

EXHIBIT
F

CHRISTIAN SMALL LLP
ATTORNEYS | COUNSELORS
505 20TH STREET NORTH
SUITE NO. 1800
BIRMINGHAM, ALABAMA 35203-2696
205.795.6588 205.328.7234
www.csattorneys.com

# FACSIMILE TRANSMISSION

To: **Richard D. Shinbaum**

Company: **Shinbaum, Abell, McLeod & Vann**

Fax #: **(334) 263-4096**

Date: **February 5, 2007**

From: **Brad Hightower**

Pages: 8, **including this cover sheet**

Re: **Dr. Deloris V. Victoria**

COMMENTS:

ORIGINALS WILL
____ Follow Via Regular Mail
____ Follow Via Overnight Mail
____ Follow Via Hand Delivery
__✓_ Not Be Sent

CONFIDENTIALITY NOTICE: The materials enclosed with this facsimile transmission are private and confidential. The information contained in the material is privileged and is intended only for the use of the individual(s) or entity(ies) named above. If you are not the intended recipient(s), be advised that unauthorized use, disclosure, copying, distribution or the taking of any action in reliance on the contents of this telecopied information is strictly prohibited. If you have received this facsimile transmission in error, please immediately notify us by telephone to arrange for return of the forwarded document(s) to us. Thank you.

CHRISTIAN
SMALL
LLP
ATTORNEYS | COUNSELORS

505 20TH STREET NORTH
SUITE No. 1800
BIRMINGHAM, ALABAMA 35203-2696
Ⓒ 205.795.6588 Ⓕ 205.328.7234
www.csattorneys.com

Bradley R. Hightower

Direct Dial (205) 250-6661
E-Mail Address: BRHightower@csattorneys.com

February 5, 2007

VIA FAX (334) 263-4096
Richard D. Shinbaum
Shinbaum, Abell, McLeod & Vann
P.O. Box 201
Montgomery, Alabama 36101

Re: Dr. Deloris V. Victoria, Date for 2004 Examination

Dear Mr. Shinbaum:

This letter will confirm that we have scheduled the Debtor's Rule 2004 Examination for this Friday, February 9, 2007 at 9:00 a.m.

The examination will take place at the office of Shinbaum, Abell, McLeod & Vann, located at 566 South Perry Street, Montgomery, Alabama 36104. At the time of the examination, the Debtor will bring with her the documents requested in the Exhibit "A" that is attached to the Motion for Rule 2004 Examination filed by Greenville Hospital.

I am inviting Tina Hayes from the Bankruptcy Administrator's Office to attend the examination.

Sincerely yours,

Brad Hightower

enclosures

cc: Greer Mallette
Tina Hayes



**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **Deloris V. Victoria,** | ) | **Case No. 06-31225-WRS-7** |
| | ) | |
| **Debtor.** | ) | |

---

**MOTION FOR RULE 2004 EXAMINATION**

---

Greenville Hospital Corporation, d/b/a LV Stabler Memorial Hospital ("Greenville Hospital"), requests the entry of an order allowing it to conduct an examination of Deloris V. Victoria (the "Debtor") pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure and as grounds therefore says as follows:

1. The Debtor filed a chapter 7 bankruptcy case in this Court on September 25, 2006 (the "Petition Date"). Shortly before the Petition Date, Greenville Hospital recovered a $162,257.74 judgment against the Debtor.

2. On the face of her petition and schedules, the Debtor states that her gross income is $15,000/month and her husband's gross income is $20,000/month. The Debtor also lists various expenses, including a $4,000/month mortgage and $1,000/month in charitable contributions, that result in a monthly net income of $1,890.00.

3. Based upon the Debtor's testimony at her first meeting of creditors, Greenville Hospital believes that the Debtor's monthly net income may be greater than the amount reflected on her petition and schedules. In addition, the Debtor's testimony indicated that she may have transferred a substantial amount of jewelry to her family members prior to filing bankruptcy. These transfers were not disclosed in the Debtor's petition and schedules.

4.    Section 707 of the Bankruptcy Code requires Greenville Hospital to perform a reasonable investigation into the circumstances that gave rise to the Debtor's bankruptcy filing before requesting that the Debtor's case be dismissed for abuse.

5.    For these reasons, Greenville Hospital requests that the Court enter an order granting its Motion for Rule 2004 Examination. Greenville Hospital further requests that the Court order the Debtor to **produce copies of the documents described in the attached Exhibit "A" at the time of her examination**.

WHEREFORE, Greenville Hospital Corporation, d/b/a LV Stabler Memorial Hospital, requests that the Court enter an order granting its Motion for Rule 2004 Examination of the Debtor, Deloris V. Victoria, and requiring the Debtor to produce copies of the documents described in the attached Exhibit "A" at the time of her examination.

Respectfully submitted,


/s/ Bradley R. Hightower
Bradley R. Hightower
Attorney for Greenville Memorial Hospital

**OF COUNSEL:**
CHRISTIAN & SMALL LLP
505 North 20th Street, Suite 1800
Birmingham, Alabama 35203
Phone: (205) 795-6588
Fax: (205) 328-7234

## CERTIFICATE OF SERVICE

Unless otherwise served by the ECF system, I certify that I have served a copy of the above and foregoing Motion for Rule 2004 Examination on the following by placing a copy in the United States Mail, properly addressed, first-class postage pre-paid on this the 18th day of January, 2007:

C. Brandon Sellers, III
Shinbaum, Abell, McLeod & Vann
P.O. Box 201
Montgomery, Alabama 36101

U.S. Bankruptcy Adminstrator
Attn: Tina Hayes
One Church Street
Montgomery, Alabama 36104

Chapter 7 Trustee, Daniel G. Hamm
560 South McDonough Street, STE A
Montgomery, Alabama 36104

/s/ Bradley R. Hightower
OF COUNSEL

**Exhibit "A"**
**to 2004 Examination of Deloris V. Victoria**

## DEFINITIONS

A. The terms "documents" shall include the original and drafts and copies, including copies with notations or marks not found on the original, of any writing or printed, graphic or electronically produced or stored materials of any nature whatsoever, including, but not limited to, papers, letters, correspondence, records, reports, memoranda, notes, calendar or diary entries, e-mails, envelopes, checks, other written communications, messages, reports of telephone conversations and conferences, agreements, contracts, other official documents and legal instruments, studies, summaries, tabulations, analyses, printed matter, minutes, photographs, financial statements, worksheets, indices, voice recordings, tapes, electronic data, disks, back-up tapes, filmed or graphic matter, journals, manuals, technical releases, orders, statements, bills, receipts, vouchers, notebooks, data sheets, and drafts, revisions or amendments of any of the above, and generally any kind of tangible records that are now or formerly were, in your possession, custody or control, or which were known by you to exist, and which can be located or discovered by reasonably diligent efforts.

B. "You" or "your" refers to the party upon whom these discovery requests have been served and each of her agents, representatives, and unless privileged, their attorneys.

C. The terms "refer to" or "relate to" means having any relationship or connection to, concerning, being connected to, commenting on, responding to, containing, evidencing, showing, memorializing, describing, analyzing, reflecting, pertaining to, compromising, constituting, identifying, discussing or otherwise establishing any reasonable, logical or causal connection.

D. "Communications" includes any oral utterance made, heard, or overheard, whether in person or by telephone or otherwise, as well as every document and other mode of intentionally conveyed meaning.

E. "Concerning" means relating to, referring to, describing, evidencing or constituting.

## SPECIFIC REQUESTS

1. A copy of your Whitney Bank checking account statement for the months of August 2006 and September 2006.

2. A copy of your Butler County Bank checking account statement for the months of August 2006 and September 2006.

3. A copy of any checking account statement received by your husband for the months of August 2006 and September 2006.

4.      A copy of any credit card account statement received by you for charges made during the months of August 2006 and September 2006.

5.      A copy of any credit card account statement received by your husband for charges made during the months of August 2006 and September 2006.

6.      A copy of any and all documents showing any interest held by you and/or your husband in any automobile, including, but not limited to, payment booklets, invoices and vehicle titles.

7.      A copy of any insurance policy on your home and any other real property in which your and/or your husband have an interest.

8.      A copy of any insurance policy on any automobile in which you and/or your husband have an interest.

9.      A copy of any insurance policy on any other personal property (excluding automobiles) in which you and/or husband have any interest, including, but not limited to, any insurance policy concerning jewelry.

10.     A copy of your federal income tax return for the tax year 2005.

11.     A copy of any written communications that you have made concerning your bankruptcy, including, but not limited to, emails and letters.

**5 1/24/07**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re

Case No. 06-31225-WRS
Chapter 7

DELORIS V. VICTORIA,

Debtor.

**ORDER GRANTING MOTION FOR EXAMINATION OF THE DEBTOR**

The creditor, Greenville Hospital Corporation d/b/a LV Stabler Memorial Hospital, filed a motion on January 18, 2007 to examine the debtor under Fed R. Bankr. Proc. 2004(a). It is hereby

ORDERED that the debtor appear before the creditor on a mutually-agreed time, date and location between the creditor, the debtor and debtor's attorney for examination.

Done this 24th day of January, 2007.

/s/William R. Sawyer
United States Bankruptcy Judge

c: Debtor
Bradley R. Hightower, Attorney for Greenville Memorial Hospital
C. Brandon Sellers, III, Attorney for Debtor
Daniel G. Hamm, Trustee
Bankruptcy Administrator

************** -COMM. JOURNAL- ****************** DATE FEB-12-2007 ***** TIME 16:55 ********

MODE = MEMORY TRANSMISSION START=FEB-12 16:53 END=FEB-12 16:55

FILE NO.=393

| STN NO. | COMM. | STATION NAME/EMAIL ADDRESS/TELEPHONE NO. | PAGES | DURATION |
|---|---|---|---|---|
| 001 | OK | 913342634096 | 003/003 | 00:01:22 |

-CHRISTIAN SMALL -

***** UF-7000 v2 ****************** -205 328 7234 - ***** - 205 328 7234- *********

EXHIBIT

G

CHRISTIAN SMALL LLP
ATTORNEYS | COUNSELORS
505 20TH STREET NORTH
SUITE No. 1800
BIRMINGHAM, ALABAMA 35203-2696
205.795.6588 205.328.7234
www.csattorneys.com

# FACSIMILE TRANSMISSION

To: Richard D. Shinbaum

Company: Shinbaum, Abell, McLeod & Vann

Fax #: (334) 263-4096

Date: February 12, 2007

From: Brad Hightower

Pages: 3, including this cover sheet

Re: Dr. Deloris V. Victoria

COMMENTS:

ORIGINALS WILL
___ Follow Via Regular Mail
___ Follow Via Overnight Mail
___ Follow Via Hand Delivery
✓ Not Be Sent

CONFIDENTIALITY NOTICE: The materials enclosed with this facsimile transmission are private and confidential. The information contained in the material is privileged and is intended only for the use of the individual(s) or entity(ies) named above. If you are not the intended recipient(s), be advised that unauthorized use, disclosure, copying, distribution or the taking of any action in reliance on the contents of this telecopied information is strictly prohibited. If you have received this facsimile transmission in error, please immediately notify us by telephone to arrange for return of the forwarded document(s) to us. Thank you.

CHRISTIAN
SMALL
LLP
ATTORNEYS | COUNSELORS
505 20TH STREET NORTH
SUITE NO. 1800
BIRMINGHAM, ALABAMA 35203-2696
205.795.6588 205.328.7234
www.csattorneys.com

Bradley R. Hightower

Direct Dial (205) 250-6661
E-Mail Address: BRHightower@csattorneys.com

February 12, 2007

VIA FAX (334) 263-4096
Richard D. Shinbaum
Shinbaum, Abell, McLeod & Vann
P.O. Box 201
Montgomery, Alabama 36101

**Re: Dr. Deloris V. Victoria, Production of Documents**

Dear Mr. Shinbaum:

This letter follows the 2004 examination of the Dr. Victoria on Friday, February 9, 2007. At her examination, Dr. Victoria agreed to produce certain documents that she failed to bring to the examination. These documents included:

- complete banking statements (with cancelled checks) for August and September 2006
- complete credit card statements for August and September 2006
- complete documentation (including insurance policies) on any automobiles in which Dr. Victoria or her husband hold an interest
- insurance policies on Dr. Victoria's home and any other real property in which she or her husband hold an interest
- insurance policies on any personal property (excluding automobiles) in which Dr. Victoria or her husband hold an interest
- the mortgage, promissory note and any other documentation regarding the Atlanta, Georgia townhouse

Dr. Victoria also failed to produce her husband's checking accounts and credit card statements at the examination. You objected to the production of these documents but I think they are relevant based on Dr. Victoria's testimony that her husband pays virtually all of her expenses.

Please let me know within two (2) weeks from the date of this letter if Dr. Victoria will agree to produce these documents; if not, I may need to subpoena them.

Also, I am going to file a motion to extend the deadlines to file a motion to dismiss the Debtor's case for abuse pursuant to Section 707(b) of the Bankruptcy Code, to object to the Debtor's

claim of exemptions and to object to the Debtor's discharge by sixty days to April 20, 2006. Please let me know if you have any objection to this motion.

Sincerely yours,

Brad Hightower by JGB

Brad Hightower

cc: Greer Mallette

Form 256 – Subpoena in a Case under the Bankruptcy Code (12/06)

EXHIBIT H

# United States Bankruptcy Court

Middle District Of Alabama

In re Deloris V. Victoria,
Debtor

**SUBPOENA IN A CASE UNDER THE BANKRUPTCY CODE**

Case No.* 06-31225

Chapter 7

To: Edgar T. Victoria
225 Woodland Heights Dr.
Greenville, AL 36037

☐ YOU ARE COMMANDED to appear in the United States Bankruptcy Court at the place, date and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHED EXHIBIT "A"

| PLACE | DATE AND TIME |
|---|---|
| Shinbaum, Abell, McLeod & Vann<br>566 S. Perry St., Montgomery, AL 36104 | March 9, 2007 10:00 A.M. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this proceeding that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify, Fed. R. Civ. P. 30(b)(6) made applicable in proceedings by Rule 7030, Fed. R. Bankr. P. See Rules 1018 and 9014, Fed. R. Bankr. P.

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| Bradley R. Hightower, Attorney | 02/26/07 |
| ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER | |
| Bradley R. Hightower Christian & Small LLP (205) 795-6588<br>1800 Financial Center, 505 North 20th St., Birmingham, AL 35203 | |

* If the bankruptcy case or the adversary proceeding is pending in a district other than the district in which the subpoena is issued, state the district under the case number or adversary proceeding number.

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| **SERVED** | 2-28-07 | 225 Woodland Heights R., Greenville AL |
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
| X Edgar J Victoria @ 6:11 PM for his Dad : Edgar T. Victoria | | By leaving copy with Edgar Victoria, Jr. |
| SERVED BY (PRINT NAME) | | TITLE |
| William Higgins | | Private Investigator |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on 2-28-07
DATE

[signature]
SIGNATURE OF SERVER

135 1st Street
Prattville, AL 36067
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

**Exhibit "A"**
**to Subpoena to Edgar T. Victoria**

## DEFINITIONS

A. The terms "documents" shall include the original and drafts and copies, including copies with notations or marks not found on the original, of any writing or printed, graphic or electronically produced or stored materials of any nature whatsoever, including, but not limited to, papers, letters, correspondence, records, reports, memoranda, notes, calendar or diary entries, e-mails, envelopes, checks, other written communications, messages, reports of telephone conversations and conferences, agreements, contracts, other official documents and legal instruments, studies, summaries, tabulations, analyses, printed matter, minutes, photographs, financial statements, worksheets, indices, voice recordings, tapes, electronic data, disks, back-up tapes, filmed or graphic matter, journals, manuals, technical releases, orders, statements, bills, receipts, vouchers, notebooks, data sheets, and drafts, revisions or amendments of any of the above, and generally any kind of tangible records that are now or formerly were, in your possession, custody or control, or which were known by you to exist, and which can be located or discovered by reasonably diligent efforts.

B. "You" or "your" refers to the party upon whom these discovery requests have been served and each of her agents, representatives, and unless privileged, their attorneys.

C. The terms "refer to" or "relate to" means having any relationship or connection to, concerning, being connected to, commenting on, responding to, containing, evidencing, showing, memorializing, describing, analyzing, reflecting, pertaining to, compromising, constituting, identifying, discussing or otherwise establishing any reasonable, logical or causal connection.

D. "Concerning" means relating to, referring to, describing, evidencing or constituting.

## SPECIFIC REQUESTS

1. A copy of your checking account statements for the months of August 2006 and September 2006 and all cancelled checks related to these statements.

2. A copy of your credit card account statements for charges made during the months of August 2006 and September 2006.

3. A copy of any and all documents concerning any interest held by you in any automobile, including, but not limited to, payment booklets, invoices, tax notices, and vehicle titles.

4. A copy of any insurance policy on your home and any other real property in which you have an interest.

5. A copy of any insurance policy on any automobile in which you have an interest.

6.    A copy of any insurance policy on any other personal property (excluding automobiles) in which you have any interest, including, but not limited to, any insurance policy concerning jewelry.

7.    A copy of your federal income tax return for the tax year 2006.

8.    A copy of any and all documents concerning any interest that you have in a townhouse or any other real estate located in the Atlanta, Georgia area, including, but not limited to, mortgages, promissory notes, payment booklets, invoices, and tax notices.

************** -COMM. JOURNAL- ****************** DATE MAR-08-2007 ***** TIME 15:32 ********

MODE = MEMORY TRANSMISSION START=MAR-08 15:26 END=MAR-08 15:32

FILE NO.=551

| STN NO. | COMM. | STATION NAME/EMAIL ADDRESS/TELEPHONE NO. | PAGES | DURATION |
|---|---|---|---|---|
| 001 | OK | 913342634096 | 006/006 | 00:02:28 |

-CHRISTIAN SMALL -

***** UF-7000 V2 ****************** -205 328 7234 - ***** - 205 328 7234- *********

EXHIBIT

I

CHRISTIAN SMALL
LLP
ATTORNEYS | COUNSELORS
505 20TH STREET NORTH
SUITE No. 1800
BIRMINGHAM, ALABAMA 35203-2696
205.795.6588 205.328.7234
www.csattorneys.com

# FACSIMILE TRANSMISSION

To: **Richard D. Shinbaum**

Company: **Shinbaum, Abell, McLeod & Vann**

Fax #: **(334) 263-4096**

Date: **March 8, 2007**

From: **Brad Hightower**

Pages: 6 **, including this cover sheet**

Re: **Dr. Deloris V. Victoria**
**Production of Documents by Edgar Victoria Pursuant to Subpoena**

File #:

COMMENTS:

ORIGINALS WILL
____ Follow Via Regular Mail
____ Follow Via Overnight Mail
____ Follow Via Hand Delivery
__✓_ Not Be Sent

CONFIDENTIALITY NOTICE: The materials enclosed with this facsimile transmission are private and confidential. The information contained in the material is privileged and is intended only for the use of the individual(s) or entity(ies) named above. If you are not the intended recipient(s), be advised that unauthorized use, disclosure, copying, distribution or the taking of any action in reliance on the contents of this telecopied information is strictly prohibited. If you have received this facsimile transmission in error, please immediately notify us by telephone to arrange for return of the forwarded document(s) to us. Thank you.

CHRISTIAN
SMALL
LLP
ATTORNEYS | COUNSELORS
505 20TH STREET NORTH
SUITE No. 1800
BIRMINGHAM, ALABAMA 35203-2696
205.795.6588 205.328.7234
www.csattorneys.com

Bradley R. Hightower

Direct Dial (205) 250-6661
E-Mail Address: BRHightower@csattorneys.com

March 8, 2007

VIA FAX (334) 263-4096
Richard D. Shinbaum
Shinbaum, Abell, McLeod & Vann
P.O. Box 201
Montgomery, Alabama 36101

**Re: Dr. Deloris V. Victoria, Production of Documents by Edgar Victoria Pursuant to Subpoena**

Dear Mr. Shinbaum:

This letter follows the voicemail that I left you earlier today regarding this case. Please let me know if Deloris Victoria and/or her husband, Edgar Victoria, are going to produce the documents requested in the attached subpoena at your office tomorrow.

The subpoena has been served on Edgar Victoria and he has contacted our office to request that we fax him an additional copy. The attached copy of the subpoena is a reprint though because we have not received the original back yet from our process server.

I would appreciate it if you will give me a call to let me know whether the produced documents are too voluminous to mail or fax. If so, I will be glad to drive down to your office and pick them up.

Sincerely yours,

Brad Hightower

cc: Greer Mallette

************ COMM. JOURNAL ******************* DATE MAR-05-2007 ***** TIME 10:14 ********

MODE = MEMORY TRANSMISSION START=MAR-05 10:12 END=MAR-05 10:14

FILE NO.=524

| STN NO. | COMM. | STATION NAME/EMAIL ADDRESS/TELEPHONE NO. | PAGES | DURATION |
|---|---|---|---|---|
| 001 | OK | ā918666070598 | 005/005 | 00:01:35 |

-CHRISTIAN SMALL -

***** UF-7000 v2 ****************** -205 328 7234 - ***** - 205 328 7234- *********

CHRISTIAN SMALL LLP
ATTORNEYS | COUNSELORS
505 20TH STREET NORTH
SUITE NO. 1800
BIRMINGHAM, ALABAMA 35203-2696
ⓒ 205.795.6588 ⓕ 205.328.7234
www.csattorneys.com

# FACSIMILE TRANSMISSION

To: **Dr. Edgar T. Victoria**

Fax #: ~~(334) 383-9151~~ (866) 607-0598

Date: **March 5, 2007**

From: **Julie, Secretary to Brad Hightower**

Pages: 5, **including this cover sheet**

Re: **Reprint of Subpoena already served on Dr. Edgar T. Victoria**

File #:

---

COMMENTS:

**Mr. Hightower confirms that Dr. E. Victoria does not need to attend in person on March 9th, but only see that the documents get to that location at the specified time.**

ORIGINALS WILL
___ Follow Via Regular Mail
___ Follow Via Overnight Mail
___ Follow Via Hand Delivery
✓ Not Be Sent

CONFIDENTIALITY NOTICE: The materials enclosed with this facsimile transmission are private and confidential. The information contained in the material is privileged and is intended only for the use of the individual(s) or entity(ies) named above. If you are not the intended recipient(s), be advised that unauthorized use, disclosure, copying, distribution or the taking of any action in reliance on the contents of this telecopied information is strictly prohibited. If you have received this facsimile transmission in error, please immediately notify us by telephone to arrange for return of the forwarded document(s) to us. Thank you.

Form 256 – Subpoena in a Case under the Bankruptcy Code (12/06)

# United States Bankruptcy Court

Middle District Of Alabama

In re Deloris V. Victoria, Debtor

**SUBPOENA IN A CASE UNDER THE BANKRUPTCY CODE**

Case No.* 06-31225

Chapter 7

To: Edgar T. Victoria
225 Woodland Heights Dr.
Greenville, AL 36037

☐ YOU ARE COMMANDED to appear in the United States Bankruptcy Court at the place, date and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHED EXHIBIT "A"

| PLACE | DATE AND TIME |
|---|---|
| Shinbaum, Abell, McLeod & Vann<br>566 S. Perry St., Montgomery, AL 36104 | March 9, 2007 10:00 A.M. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this proceeding that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify, Fed. R. Civ. P. 30(b)(6) made applicable in proceedings by Rule 7030, Fed. R. Bankr. P. See Rules 1018 and 9014, Fed. R. Bankr. P.

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| Bradley R. Hightower, Attorney<br>(Reprint / Copy) | |
| ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER<br>Bradley R. Hightower Christian & Small LLP (205) 795-6588<br>1800 Financial Center, 505 North 20th St., Birmingham, AL 35203 | |

* If the bankruptcy case or the adversary proceeding is pending in a district other than the district in which the subpoena is issued, state the district under the case number or adversary proceeding number.

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |
| SERVED BY (PRINT NAME) | TITLE |
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ______________________________ ______________________________

DATE SIGNATURE OF SERVER

______________________________

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A)

**Exhibit "A"**
**to Subpoena to Edgar T. Victoria**

**DEFINITIONS**

A. The terms "documents" shall include the original and drafts and copies, including copies with notations or marks not found on the original, of any writing or printed, graphic or electronically produced or stored materials of any nature whatsoever, including, but not limited to, papers, letters, correspondence, records, reports, memoranda, notes, calendar or diary entries, e-mails, envelopes, checks, other written communications, messages, reports of telephone conversations and conferences, agreements, contracts, other official documents and legal instruments, studies, summaries, tabulations, analyses, printed matter, minutes, photographs, financial statements, worksheets, indices, voice recordings, tapes, electronic data, disks, back-up tapes, filmed or graphic matter, journals, manuals, technical releases, orders, statements, bills, receipts, vouchers, notebooks, data sheets, and drafts, revisions or amendments of any of the above, and generally any kind of tangible records that are now or formerly were, in your possession, custody or control, or which were known by you to exist, and which can be located or discovered by reasonably diligent efforts.

B. "You" or "your" refers to the party upon whom these discovery requests have been served and each of her agents, representatives, and unless privileged, their attorneys.

C. The terms "refer to" or "relate to" means having any relationship or connection to, concerning, being connected to, commenting on, responding to, containing, evidencing, showing, memorializing, describing, analyzing, reflecting, pertaining to, compromising, constituting, identifying, discussing or otherwise establishing any reasonable, logical or causal connection.

D. "Concerning" means relating to, referring to, describing, evidencing or constituting.

**SPECIFIC REQUESTS**

1. A copy of your checking account statements for the months of August 2006 and September 2006 and all cancelled checks related to these statements.

2. A copy of your credit card account statements for charges made during the months of August 2006 and September 2006.

3. A copy of any and all documents concerning any interest held by you in any automobile, including, but not limited to, payment booklets, invoices, tax notices, and vehicle titles.

4. A copy of any insurance policy on your home and any other real property in which you have an interest.

5. A copy of any insurance policy on any automobile in which you have an interest.

6.      A copy of any insurance policy on any other personal property (excluding automobiles) in which you have any interest, including, but not limited to, any insurance policy concerning jewelry.

7.      A copy of your federal income tax return for the tax year 2006.

8.      A copy of any and all documents concerning any interest that you have in a townhouse or any other real estate located in the Atlanta, Georgia area, including, but not limited to, mortgages, promissory notes, payment booklets, invoices, and tax notices.

*************** -COMM. JOURNAL- ****************** DATE MAR-12-2007 ***** TIME 15:46 ********

MODE = MEMORY TRANSMISSION START=MAR-12 15:44 END=MAR-12 15:47

FILE NO.=574

| STN NO. | COMM. | STATION NAME/EMAIL ADDRESS/TELEPHONE NO. | PAGES | DURATION |
|---|---|---|---|---|
| 001 | OK | a913342634096 | 006/006 | 00:02:28 |

-CHRISTIAN SMALL -

***** UF-7000 v2 ****************** -205 328 7234 - ***** - 205 328 7234- *********

EXHIBIT
J

CHRISTIAN SMALL LLP
ATTORNEYS | COUNSELORS
505 20TH STREET NORTH
SUITE NO. 1500
BIRMINGHAM, ALABAMA 35203-2696
205.795.6588 205.328.7234
www.csattorneys.com

# FACSIMILE TRANSMISSION

To: **Richard D. Shinbaum**

Company: **Shinbaum, Abell, McLeod &Vann**

Fax #: **(334) 263-4096**

Date: **March 12, 2007**

From: **Brad Hightower**

Pages: 6, **including this cover sheet**

Re: **Dr. Deloris V. Victoria**
**Production of Documents by Edgar Victoria Pursuant to Subpoena**

File #:

COMMENTS:

ORIGINALS WILL
✓ Follow Via Regular Mail
___ Follow Via Overnight Mail
___ Follow Via Hand Delivery
___ Not Be Sent

CONFIDENTIALITY NOTICE: The materials enclosed with this facsimile transmission are private and confidential. The information contained in the material is privileged and is intended only for the use of the individual(s) or entity(ies) named above. If you are not the intended recipient(s), be advised that unauthorized use, disclosure, copying, distribution or the taking of any action in reliance on the contents of this telecopied information is strictly prohibited. If you have received this facsimile transmission in error, please immediately notify us by telephone to arrange for return of the forwarded document(s) to us. Thank you.

CHRISTIAN
SMALL
LLP
ATTORNEYS | COUNSELORS
505 20TH STREET NORTH
SUITE No. 1800
BIRMINGHAM, ALABAMA 35203-2696
205.795.6588 205.328.7234
www.csattorneys.com

Bradley R. Hightower

Direct Dial (205) 250-6661
E-Mail Address: BRHightower@csattorneys.com

March 12, 2007

VIA FAX (334) 263-4096
Richard D. Shinbaum
Shinbaum, Abell, McLeod & Vann
P.O. Box 201
Montgomery, Alabama 36101

**Re: Dr. Deloris V. Victoria, Production of Documents**

Dear Mr. Shinbaum:

This letter follows my voicemail and letter to you on March 8, 2007, regarding the production of documents by Edgar Victoria pursuant to the attached subpoena. The subpoena was served on Edgar Victoria on February 28, 2007 and directed him to produce the requested documents at your office on March 9, 2007.

I have now contacted your office multiple times to determine if Deloris Victoria and Edgar Victoria are going to produce the documents that I have requested from them. Despite my efforts to get in touch with you, you have not returned my phone calls or responded to my letters.

Please let me know the date when you expect that all of the documents that I have asked for will be produced.

If I do not hear anything from you by Thursday, March 15, 2007, I may request that the Bankruptcy Court compel production of these documents.

Sincerely yours,

Brad Hightower

cc: Greer Mallette

Form 256 – Subpoena in a Case under the Bankruptcy Code (12/06)

# United States Bankruptcy Court

Middle District Of Alabama

In re Deloris V. Victoria, Debtor

**SUBPOENA IN A CASE UNDER THE BANKRUPTCY CODE**

Case No.* 06-31225

Chapter 7

To: Edgar T. Victoria
225 Woodland Heights Dr.
Greenville, AL 36037

☐ YOU ARE COMMANDED to appear in the United States Bankruptcy Court at the place, date and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHED EXHIBIT "A"

| PLACE | DATE AND TIME |
|---|---|
| Shinbaum, Abell, McLeod & Vann<br>566 S. Perry St., Montgomery, AL 36104 | March 9, 2007 10:00 A.M. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this proceeding that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify, Fed. R. Civ. P. 30(b)(6) made applicable in proceedings by Rule 7030, Fed. R. Bankr. P. See Rules 1018 and 9014, Fed. R. Bankr. P.

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| Bradley R. Hightower, Attorney | 02/26/07 |
| ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER<br>Bradley R. Hightower Christian & Small LLP (205) 795-6588<br>1800 Financial Center, 505 North 20th St., Birmingham, AL 35203 | |

* If the bankruptcy case or the adversary proceeding is pending in a district other than the district in which the subpoena is issued, state the district under the case number or adversary proceeding number.

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| **SERVED** | 2-28-07 | 225 Woodland Heights Dr, Greenville AL 36037 |
| SERVED ON (PRINT NAME) | @ 6:10 Am | MANNER OF SERVICE |
| Edgar J Victoria for his Dad (Edgar T. Victoria) | | By leaving copy with Edgar Victoria, Jr. |
| SERVED BY (PRINT NAME) | | TITLE |
| Wyman Higgins | | Private Investigator |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on 2-28-07
DATE

[signature]
SIGNATURE OF SERVER

135 1st Street
Prattville, AL 36067
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises - or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

**Exhibit "A"**
**to Subpoena to Edgar T. Victoria**

## DEFINITIONS

A. The terms "documents" shall include the original and drafts and copies, including copies with notations or marks not found on the original, of any writing or printed, graphic or electronically produced or stored materials of any nature whatsoever, including, but not limited to, papers, letters, correspondence, records, reports, memoranda, notes, calendar or diary entries, e-mails, envelopes, checks, other written communications, messages, reports of telephone conversations and conferences, agreements, contracts, other official documents and legal instruments, studies, summaries, tabulations, analyses, printed matter, minutes, photographs, financial statements, worksheets, indices, voice recordings, tapes, electronic data, disks, back-up tapes, filmed or graphic matter, journals, manuals, technical releases, orders, statements, bills, receipts, vouchers, notebooks, data sheets, and drafts, revisions or amendments of any of the above, and generally any kind of tangible records that are now or formerly were, in your possession, custody or control, or which were known by you to exist, and which can be located or discovered by reasonably diligent efforts.

B. "You" or "your" refers to the party upon whom these discovery requests have been served and each of her agents, representatives, and unless privileged, their attorneys.

C. The terms "refer to" or "relate to" means having any relationship or connection to, concerning, being connected to, commenting on, responding to, containing, evidencing, showing, memorializing, describing, analyzing, reflecting, pertaining to, compromising, constituting, identifying, discussing or otherwise establishing any reasonable, logical or causal connection.

D. "Concerning" means relating to, referring to, describing, evidencing or constituting.

## SPECIFIC REQUESTS

1. A copy of your checking account statements for the months of August 2006 and September 2006 and all cancelled checks related to these statements.

2. A copy of your credit card account statements for charges made during the months of August 2006 and September 2006.

3. A copy of any and all documents concerning any interest held by you in any automobile, including, but not limited to, payment booklets, invoices, tax notices, and vehicle titles.

4. A copy of any insurance policy on your home and any other real property in which you have an interest.

5. A copy of any insurance policy on any automobile in which you have an interest.

6.      A copy of any insurance policy on any other personal property (excluding automobiles) in which you have any interest, including, but not limited to, any insurance policy concerning jewelry.

7.      A copy of your federal income tax return for the tax year 2006.

8.      A copy of any and all documents concerning any interest that you have in a townhouse or any other real estate located in the Atlanta, Georgia area, including, but not limited to, mortgages, promissory notes, payment booklets, invoices, and tax notices.

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re

Case No. 06-31225-WRS
Chapter 7

DELORIS V. VICTORIA,

Debtor

**ORDER SETTING HEARING**

The motion filed by Greenville Hospital Corporation and designated MOTION TO COMPEL DEBTOR TO PRODUCE DOCUEMENTS, OR IN THE ALTERNATIVE, MOTION TO DISMISS CASE (Doc. 48), is set for hearing at the United States Bankruptcy Court, United States Courthouse, One Church Street, Courtroom 4-D, **Montgomery**, Alabama, on April 24, 2007, at 10 a.m.

Objections to the motion must be made in writing stating the reason for the objection and filed in court on or before April 20, 2007.

***The moving party or counsel shall (1) give timely notice by mail to all parties in interest or to their attorneys of record, as provided by Fed. R. Bankr. Proc. 2002 or other appropriate Rule, by serving a copy of this order and the motion on each no later than MARCH 23, 2007; and (2) file in court prior to the hearing date a certificate of service showing the names and addresses of the parties served. Failure to give such notice and file the certificate as required may result in dismissal of the motion.***

Done this 22nd day of March, 2007.

/s/ William R. Sawyer
United States Bankruptcy Judge

c: Bradley R. Hightower, Attorney for Movant

Bank of America, NA
c/o Charlotte Beene
Mail Code TX1-492-10-02
901 Main, 10th Floor
Dallas, Texas 75202-3714
(877) 757-8233 ext. 53757

# REPORT OF ASSETS

# AUTHORITY TO DEPOSIT FUNDS

| | |
|---|---|
| Account Number: | **06-31225** |
| Daniel G. Hamm, | Trustee in Bankruptcy for |
| Account Name: | **Dr. Dolores Victoria** |
| Amount to be Deposited or other *: | **$20,000.00** |
| Description to be used on Statement: | **Equity in Personal Property** |
| Signature: | **/s/ Daniel Hamm** |
| Date: | **April 25, 2007** |
| *Other: | |

BANK OF AMERICA, N.A.

CHECKING/SAVINGS DEPOSIT

04/25/07

1

Estate Of (Debtor)
VICTORIA, DELORIS V

Case Number 06-31225 WRS

DANIEL G. HAMM
560 South McDonough Street
Suite A
MONTGOMERY, AL
36104

MMA Account #: 4428975920
BofA - Money Market Account

DEPOSIT TOTAL: $******20,000.00

| Dr. Dolores Victoria | 20000.00 |
|---|---|

⑈000001⑈ ⑆540900071⑆ 4428975920⑈

5476

DR. DOLORES VICTORIA
P.O. BOX 810 PH. 334-382-8442
GREENVILLE, AL 36037

DATE 4-23-07

61-411/651

PAY TO THE ORDER OF Mr. Daniel G. Hamm $ 20,000

Twenty thousand dollars 00/100 DOLLARS

WHITNEY Whitney National Bank
Greenville, Alabama 36037

FOR

⑈005476⑈ ⑆065104116⑆ 0042897⑈

Form **W-9** (Rev. November 2005) Department of the Treasury Internal Revenue Service

# Request for Taxpayer Identification Number and Certification

Give form to the requester. Do not send to the IRS.

Print or type See Specific Instructions on page 2.

Name (as shown on your income tax return)
VICTORIA, DELORIS V, DEBTOR, CASE# 06-31225, DANIEL G. HAMM- TRUSTEE

Business name, if different from above.

Check appropriate box: [X] Individual/ Sole proprietor [ ] Corporation [ ] Partnership [ ] Other ▶ ______ [ ] Exempt from backup Withholding

Address (number, street, and apt. or suite no.)
560 South McDonough Street Suite A

Requester's name and address (optional)

City, state, and ZIP Code
MONTGOMERY, AL 36104

List account number(s) here (optional) 4428975920

## Part I Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on Line 1 to avoid **backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part 1 instructions on page 3. For other entities, it is** your employer identification number (EIN). If you do not have a number, see How to get a TIN on page 3.

**Note:** *If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.*

Social security number: ___

or

Employer identification number: 75-6813116

## Part II Certification

Under penalties of perjury, I certify that:

1. **The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and**
2. **I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and**
3. **I am a U.S. person (including a U.S. resident alien).**

**Certification Instructions. You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 4.)**

**Sign Here** Signature of U.S. person ▶ [signature] Date ▶ 04/25/07

## Purpose of form

A person who is required to file an information return with the IRS, must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

**U.S. person.** Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),
2. Certify you are not subject to backup withholding, or
3. Claim exemption from backup withholding if you are a U.S. exempt payee.

In 3 above, if applicable, you are also certifiying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income.

**Note:** If a requester gives you a form other than Form W-9 to request your TIN,, you must use the requester's form if it is substantially similar to this Form W-9.

For federal tax purposes you are considered a person if you are:

- An individual who is a citizen or resident of the United States,
- A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States, or
- Any estate (other than a foreign estate) or trust. See Regulations sections 301.7701-6(a) and 7(a) for additional information.

**Special Rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax on any foreign parners' share of income from such business. Further, in certain cases where a Form W-9 has not been received, a partnership is required to presume that a partner is a foreign person, and pay the withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid withholding on your share of partnership income.

The person who gives Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States is in the following cases:

- The U.S. owner of a disregarded entity and not the entity,

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re

Case No. 06-31225-WRS
Chapter 7

DELORIS V. VICTORIA,

Debtor

**ORDER SETTING EVIDENTIARY HEARING**

An evidentiary hearing on the Greenville Hospital Corporation motion to dismiss this Chapter 7 case (Doc. 53) will be held at the United States Bankruptcy Court, United States Courthouse, One Church Street, Courtroom 4-D, Montgomery, Alabama, on May 8, 2007 at 2:00 p.m.

Done this 26th day of April, 2007.

/s/ William R. Sawyer
United States Bankruptcy Judge

c: Richard Shinbaum, Attorney for Debtor
Bradley R. Hightower, Attorney for Greenville Hospital Corp.
All Creditors
Daniel G. Hamm, Trustee

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re

DELORIS V. VICTORIA,

Debtor

Case No. 06-31225-WRS
Chapter 7

## ORDER ON MOTION TO COMPEL

For the reasons set forth on the record on April 24, 2007, on the Greenville Hospital Corporation motion to compel (Doc. 48), it is

ORDERED that the motion is DENIED.

Done this 26th day of April, 2007.

/s/ William R. Sawyer
United States Bankruptcy Judge

c: Richard Shinbaum, Attorney for Debtor
Bradley R. Hightower, Attorney for Greenville Hospital Corp.
Daniel G. Hamm, Trustee

# FORM 1
## INDIVIDUAL ESTATE PROPERTY RECORD AND REPORT
## ASSET CASES

Case No: 06-31225 WRS Judge: WILLIAM SAWYER
Case Name: VICTORIA, DELORIS V

For Period Ending: 03/31/07

Trustee Name: DANIEL G. HAMM
Date Filed (f) or Converted (c): 09/25/06 (f)
341(a) Meeting Date: 10/27/06
Claims Bar Date: 07/27/07

| 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|
| Asset Description (Scheduled and Unscheduled (u) Property) | Petition/ Unscheduled Values | Estimated Net Value (Value Determined by Trustee, Less Liens, Exemptions, and Other Costs) | Property Abandoned OA=554(a) Abandon DA=554(c) Abandon | Sale/Funds Received by the Estate | Asset Fully Administered (FA)/ Gross Value of Remaining Assets |
| 1. HOUSEHOLD GOODS | 0.00 | 0.00 | | 0.00 | 0.00 |
| 2. RESIDENCE | 0.00 | 0.00 | | 0.00 | 0.00 |
| 3. ACCOUNTS RECEIVABLE | 0.00 | 0.00 | | 0.00 | 0.00 |

| | | | | | Gross Value of Remaining Assets |
|---|---|---|---|---|---|
| TOTALS (Excluding Unknown Values) | $ 0.00 | $ 0.00 | | $ 0.00 | $0.00 |
| | | | | | (Total Dollar Amount in Column 6) |

---

Major activities affecting case closing which are not reflected above, and matters pending, date of hearing or sale, and other action:

Debtor has equity in home, personal ppty and potential lawsuit.
Pictures taken of contents and home
Greenville Hospital filed Motion to Dismiss
Court to set hearing
4-25-07 Report of Assets filed
Additional funds due from Debtor
POC deadline 7-27-07

RE PROP# 1---Debtor has excess equity in personal property
RE PROP# 2---Debtor has excess equity in real property
RE PROP# 3---Accounts receiveable for estate

Initial Projected Date of Final Report (TFR): 12/15/07     Current Projected Date of Final Report (TFR): 12/15/07

/s/ DANIEL G. HAMM

**FORM 1**
**INDIVIDUAL ESTATE PROPERTY RECORD AND REPORT**
**ASSET CASES**

Case No: 06-31225 WRS Judge: WILLIAM SAWYER
Case Name: VICTORIA, DELORIS V

Trustee Name: DANIEL G. HAMM
Date Filed (f) or Converted (c): 09/25/06 (f)
341(a) Meeting Date: 10/27/06
Claims Bar Date: 07/27/07

______________________________ Date: 04/30/07

DANIEL G. HAMM

**FORM 2**

**ESTATE CASH RECEIPTS AND DISBURSEMENTS RECORD**

Case No: 06-31225 -WRS
Case Name: VICTORIA, DELORIS V

Taxpayer ID No: *******3116
For Period Ending: 03/31/07

Trustee Name: DANIEL G. HAMM
Bank Name: BANK OF AMERICA, N.A.
Account Number / CD #: *******5920 BofA - Money Market Account

Blanket Bond (per case limit): $ 200,000.00
Separate Bond (if applicable):

| 1 Transaction Date | 2 Check or Reference | 3 Paid To / Received From | 4 Description Of Transaction | Uniform Tran. Code | 5 Deposits ($) | 6 Disbursements ($) | 7 Account / CD Balance ($) |
|---|---|---|---|---|---|---|---|
| | | | BALANCE FORWARD | | | | 0.00 |

| | Deposits ($) | Disbursements ($) | Balance ($) |
|---|---|---|---|
| COLUMN TOTALS | 0.00 | 0.00 | 0.00 |
| Less: Bank Transfers/CD's | 0.00 | 0.00 | |
| Subtotal | 0.00 | 0.00 | |
| Less: Payments to Debtors | | 0.00 | |
| Net | 0.00 | 0.00 | |

| TOTAL - ALL ACCOUNTS | NET DEPOSITS | NET DISBURSEMENTS | ACCOUNT BALANCE |
|---|---|---|---|
| BofA - Money Market Account - ********5920 | 0.00 | 0.00 | 0.00 |
| | ------------------------ | ------------------------ | ------------------------ |
| | 0.00 | 0.00 | 0.00 |
| | ============== | ============== | ============== |
| | (Excludes Account Transfers) | (Excludes Payments To Debtors) | Total Funds On Hand |

/s/ DANIEL G. HAMM

Trustee's Signature: ________________________________ Date: 04/30/07

DANIEL G. HAMM

| | Deposits | Disbursements |
|---|---|---|
| Page Subtotals | 0.00 | 0.00 |

# FORM IV

## INTERIM REPORT

CHAPTER 07 ASSET CASE

REPORT FOR PERIOD ENDING: 03/31/07

CASE NO: 06-31225 WRS (WILLIAM SAWYER)
CASE NAME: VICTORIA, DELORIS V
ORIGINAL 341 DATE: 10/27/06

1. ASSETS ON HAND ( FROM THE ESTATE CASE RECEIPTS AND DISBURSEMENTS RECORD - FORM II )

AT BANK OF AMERICA, N.A.:

| | | | | | |
|---|---|---|---|---|---|
| CHECKING: | $ | 0.00 | MONEY MKT: | $ | 0.00 |
| SAVINGS: | $ | 0.00 | INVESTMENT: | $ | 0.00 |
| OTHER: | $ | 0.00 | TOTAL: | $ | 0.00 |

THE AMOUNT OF THE TRUSTEE'S BOND IS: BLANKET
WHICH IS SUFFICIENT TO COVER THE ASSETS LISTED ABOVE.

2. TOTAL ASSETS STILL TO BE LIQUIDATED: $0.00
( FROM INDIVIDUAL ESTATE PROPERTY RECORD, FORM I, TOTAL OF COLUMN 6 )
ASSETS FOR WHICH INSURANCE COVERAGE HAS BEEN OBTAINED:

| DESCRIPTION | ESTIMATED VALUE | INSURANCE |
|---|---|---|
| *** None *** | | |

3. PROJECTED TOTAL VALUE TO BE REALIZED: $ 0.00 (TOTAL OF 1 + 2)

4. MAJOR ACTIVITIES DURING THE REPORTING PERIOD NOT REFLECTED IN THE INDIVIDUAL ESTATE PROPERTY RECORD AND THE CASE RECEIPTS AND DISBURSEMENTS RECORD:

**MATTERS PENDING, DATE OF HEARING OR SALE, AND OTHER ACTION:**

Debtor has equity in home, personal ppty and potential lawsuit.
Pictures taken of contents and home
Greenville Hospital filed Motion to Dismiss
Court to set hearing
4-25-07 Report of Assets filed
Additional funds due from Debtor
POC deadline 7-27-07

5. PROJECTED DATE OF FINAL REPORT: 12/15/07

**FORM IV**

**INTERIM REPORT**

SIGNATURE OF TRUSTEE: /s/ DANIEL G. HAMM

DANIEL G. HAMM, TRUSTEE
235 SOUTH MCDONOUGH
MONTGOMERY, AL 36104
(334) 269-0269

DATE: 04/30/07

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

IN RE:
DELORIS V. VICTORIA Chapter 7 Case No. 06-31225

Debtor(s)

**AMENDMENT TO CHAPTER 7 PETITION**

COMES NOW, Deloris V. Victoria, Debtor in the above referenced bankruptcy and hereby moves this Honorable Court to amend the Chapter 7 petition in reference to this case as follows:

1. Amend **SCHEDULE D, E & F:** to reflect the true amount of debt to Brantley Bank, the Internal Revenue Service, Genezen Healthcare and Greenville Hospital.

WHEREFORE, THESE PREMISES CONSIDERED, the debtor moves this Honorable Court to amend the schedules as stated above.

Respectfully submitted May 8, 2007

/S/ RICHARD D. SHINBAUM
RICHARD D. SHINBAUM
rshinbaum@samvpc.com
VONDA S. MCLEOD
vmcleod@samvpc.com
C. BRANDON SELLERS, III
cbsellers@samvpc.com
Attorneys for the Debtor
SHINBAUM, ABELL, MCLEOD & CAMPBELL
Post Office Box 201
Montgomery, Alabama 36101
(334) 269-4440

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above foregoing Amendment and Schedules on all parties listed below by electronic or postal mail on this May 8, 2007:

Hon. Teresa Jacobs
Bankruptcy Administrator
U.S. Bankruptcy Court
One Church Street
Montgomery, AL 36104

Daniel Gary Hamm
560 S. McDonough St., Ste A
Montgomery, AL 36104

/S/ RICHARD D. SHINBAUM

Form B6D
(10/05)

In re **Deloris V. Victoria**, Debtor    Case No. **06-31225**

# SCHEDULE D. CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C§112; Fed.R.Bankr.P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community." If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community (H W J C) | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No.<br>**Creditor #: 1**<br>**BRANTLEY BANK & TRUST**<br>**P.O. BOX 25**<br>**BRANTLEY, AL 36009** | | J | **Mortgage**<br><br>**225 WOODLAND HEIGHTS DR, GREENVILLE AL-- SINGLE FAMILY RESIDENCE**<br>**VALUE LISTED IS TAX ASSESSED VALUE**<br>Value $ **373,800.00** | | | | **285,170.31** | **0.00** |
| Account No. **9481**<br>**Creditor #: 2**<br>**CAMDEN NATIONAL**<br>**d/b/a Butler County Bank**<br>**3 Water Street**<br>**Camden, AL 36726** | | - | **03-2006**<br><br>**SECURITY AGREEMENT**<br><br>**COMPUTERS, EKG, TABLES, CHAIRS**<br>Value $ **19,000.00** | | | | **19,029.83** | **29.83** |
| Account No. | | | Value $ | | | | | |
| Account No. | | | Value $ | | | | | |

**0** continuation sheets attached

| | |
|---|---|
| Subtotal (Total of this page) | **304,200.14** |
| Total (Report on Summary of Schedules) | **304,200.14** |

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037    Best Case Bankruptcy

In re **Deloris V. Victoria**, Debtor

Case No. **06-31225**

# SCHEDULE E. CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name, mailing address, including zip code, and last four digits of the account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of the petition. Use a separate continuation sheet for each type of priority and label each with the type of priority.

The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C.§112; Fed.R.Bankr.P. 1007(m).

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether husband, wife, both of them or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community". If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Report the total of claims listed on each sheet in the box labeled "Subtotal" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

Report the total of amounts entitled to priority listed on each sheet in the box labeled "Subtotal" on each sheet. Report the total of all amounts entitled to priority listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. If applicable, also report this total on the Means Test form.

☐ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS** (Check the appropriate box(es) below if claims in that category are listed on the attached sheets.)

☐ **Domestic support obligations**

Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐ **Extensions of credit in an involuntary case**

Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(3).

☐ **Wages, salaries, and commissions**

Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $10,000* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, which ever occurred first, to the extent provided in 11 U.S.C. § 507 (a)(4).

☐ **Contributions to employee benefit plans**

Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

☐ **Certain farmers and fishermen**

Claims of certain farmers and fishermen, up to $4,925* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).

☐ **Deposits by individuals**

Claims of individuals up to $2,225* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided. 11 U.S.C. § 507(a)(7).

■ **Taxes and certain other debts owed to governmental units**

Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C § 507(a)(8).

☐ **Commitments to maintain the capital of an insured depository institution**

Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution. 11 U.S.C. § 507(a)(9).

☐ **Claims for death or personal injury while debtor was intoxicated**

Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance. 11 U.S.C. § 507(a)(10).

*Amounts are subject to adjustment on April 1, 2007, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

**1** continuation sheets attached

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037

In re **Deloris V. Victoria**, Debtor

Case No. **06-31225**

# SCHEDULE E. CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

(Continuation Sheet)

**Taxes and Certain Other Debts Owed to Governmental Units**

TYPE OF PRIORITY

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | CODEBTOR | Husband, Wife, Joint, or Community (H W J C) | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM | AMOUNT ENTITLED TO PRIORITY |
|---|---|---|---|---|---|---|---|---|
| Account No. **xx-xxx3639**<br>**Creditor #: 1**<br>**INTERNAL REVENUE SERVICE**<br>**SPECIAL PROCEDURES FUNCTION**<br>**801 TOM MARTIN DR., ROOM 126**<br>**BIRMINGHAM, AL 35211** | | - | **940-941 2003-2005** | | | | **65,107.26** | **65,107.26** |
| Account No. **xx-xxx7031**<br>**Creditor #: 2**<br>**INTERNAL REVENUE SERVICE**<br>**SPECIAL PROCEDURES FUNCTION**<br>**801 TOM MARTIN DR., ROOM 126**<br>**BIRMINGHAM, AL 35211** | | - | **941 1999,2000,2005,2006** | | | | **42,096.91** | **42,096.31** |
| Account No. **1040 Tasxes**<br>**Creditor #: 3**<br>**INTERNAL REVENUE SERVICE**<br>**SPECIAL PROCEDURES FUNCTION**<br>**801 TOM MARTIN DR., ROOM 126**<br>**BIRMINGHAM, AL 35211** | | - | **2005** | | | | **418.65** | **418.65** |
| Account No.<br>**Creditor #: 4**<br>**STATE OF ALABAMA**<br>**DEPARTMENT OF REVENUE**<br>**P.O. BOX 320001**<br>**MONTGOMERY, AL 36132** | | - | **2003 Taxes** | | | | **1,547.62** | **1,547.62** |
| Account No. | | | | | | | | |
| Subtotal (Total of this page) | | | | | | | **109,170.44** | **109,169.84** |
| Total (Report on Summary of Schedules) | | | | | | | **109,170.44** | **109,169.84** |

Sheet **1** of **1** continuation sheets attached to Schedule of Creditors Holding Unsecured Priority Claims

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037

Form B6F
(10/05)

In re **Deloris V. Victoria**, Debtor Case No. **06-31225**

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C.§112; Fed.R.Bankr.P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community maybe liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

☐ Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community (H W J C) | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No.<br>**Creditor #: 1**<br>**CAMDEN NATIONAL**<br>**3 WATER STREET**<br>**Camden, AL 36726** | | - | **09-2005**<br>**LINE OF CREDIT** | | | | **2,545.00** |
| Account No. **x8652**<br>**Creditor #: 2**<br>**CAMDEN NATIONAL**<br>**3 WATER STREET**<br>**Camden, AL 36726** | | - | **09-2004**<br>**DISPUTED DEBT** | | | **X** | **1.00** |
| Account No. **x7851**<br>**Creditor #: 3**<br>**CAMDEN NATIONAL**<br>**3 WATER STREET**<br>**Camden, AL 36726** | | - | **06-2004**<br>**LOAN** | | | | **680.00** |
| Account No. **xxxxx2276**<br>**Creditor #: 4**<br>**CENTURYTEL**<br>**PO BOX 6001**<br>**Marion, LA 71260-6001** | | - | **03-2005**<br>**COLLECTION ACCOUNT** | | | | **558.00** |
| | | | | | | Subtotal (Total of this page) | **3,784.00** |

**2** continuation sheets attached

Form B6F - Cont.
(10/05)

In re **Deloris V. Victoria**, Debtor  Case No. **06-31225**

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | CODEBTOR | Husband, Wife, Joint, or Community (H W J C) | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No.<br>**Representing:**<br>**CENTURYTEL** | | | **BANK OF AMERICA**<br>**PO BOX 41466**<br>**Philadelphia, PA 19101** | | | | |
| Account No.<br>**Creditor #: 5**<br>**GENEZEN HEALTHCARE**<br>**PO BOX 571811**<br>**Houston, TX 77257** | | - | **2005**<br>**Pending Suit non consumer debt**<br>**BUTLER COUNTY CV 05-177**<br>**Suit involving patient accounts** | | | | **17,282.19** |
| Account No.<br>**Representing:**<br>**GENEZEN HEALTHCARE** | | | **DAVID C. SCHWARTZ, ESQ.**<br>**PO BOX 11366**<br>**Birmingham, AL 35202-1366** | | | | |
| Account No.<br>**Creditor #: 6**<br>**GREENVILLE HOSPITAL**<br>**DBA LV STABLER MEMORIAL**<br>**29 STABLER DR**<br>**Greenville, AL 36037** | | - | **2005**<br>**JUDGEMENT NON CONSUMER DEBT**<br>**BUTLER COUNTY CV 05-133**<br>**SUIT ON CONTRACT INVOLVING**<br>**TERMINATION OF DOCTOR** | | | | **165,140.00** |
| Account No.<br>**Representing:**<br>**GREENVILLE HOSPITAL** | | | **GREER B. MALLETTE, ESQ**<br>**505 20TH ST N., STE 1800**<br>**Birmingham, AL 35203-2696** | | | | |

Sheet no. 1 of 2 sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal (Total of this page) **182,422.19**

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037

In re **Deloris V. Victoria**, Debtor

Case No. **06-31225**

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | CODEBTOR | H W J C (Husband, Wife, Joint, or Community) | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No.<br>**Creditor #: 7**<br>**MBNA AMERICA**<br>**PO BOX 17054**<br>**Wilmington, DE 19884** | X | J | **08-1999**<br>**CREDIT CARD** | | | | **9,663.00** |
| Account No.<br>**Creditor #: 8**<br>**MBNA AMERICA**<br>**PO BOX 17054**<br>**Wilmington, DE 19884** | X | J | **10-1995**<br>**CREDIT CARD** | | | | **3,378.00** |
| Account No.<br>**Creditor #: 9**<br>**MBNA AMERICA**<br>**PO BOX 17054**<br>**Wilmington, DE 19884** | X | J | **04-1994**<br>**Non Consumer business account credit card for primarily used by the Debtor's and Debtor Husband to pay income taxes. Account is in Husbands name. Debtors liability would be contingent, since used to pay taxes.** | | X | | **70,912.00** |
| Account No.<br>**Creditor #: 10**<br>**WHITNEY BANK**<br>**228 ST CHARLES AVE**<br>**New Orleans, LA 70130** | | - | **12-1999**<br>**LINE OF CREDIT** | | | | **5,483.00** |
| Account No. | | | | | | | |

Sheet no. 2 of 2 sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

| | |
|---|---|
| Subtotal (Total of this page) | **89,436.00** |
| Total (Report on Summary of Schedules) | **275,642.19** |

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE THE MATTER OF:

Deloris V. Victoria CASE NO. 06-31225-WRS

Debtor,

---

NOTIFICATION OF ERROR IN SUPPLEMENTAL RESPONSE TO MOTION TO DISMISS

Comes now the Debtor, and hereby notifies the Court of an error in the supplemental brief.

Near the end of the first part of the Debtor's supplement, the Debtor states:

The Tax debt is clearly what the tax debt is and the tax debt is an unliquidated debt.

This is a mistype by the Debtor's attorney and should read as follows:

The Tax debt is clearly what the tax debt is and the tax debt is a liquidated debt.

Wherefore, the premises considered, the Debtor, by and through Counsel, respectfully request a discharge in this action and a denial of the motion to dismiss,

**/s/ Richard D. Shinbaum______**
Richard Shinbaum, SHI007
Attorney for the Debtor

Of Counsel:
Shinbaum, Abell, McLeod and Campbell, P.C..
Post Office Box 201
Montgomery, Alabama 36101
(334) 269-4440
(334) 263-4096 Fax

**CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the above styled motion was this day served upon the following, by placing the same in the United States Mail, properly addressed and postage prepaid, and/or electronics transmission this the 9th day of May, 2007.

Bradley Richard Hightower
Christian and Small
505 20th Street North Ste 1800
Birmingham. Al 35203-2696

Teresa Jacobs
Bankruptcy Administrator
One Church Street
Montgomery, AL 36104

Hon. Daniel Gary Hamm
560 South McDonough Street, Ste A
Montgomery, AL 36104

/s/ Richard D. Shinbaum
Richard D. Shinbaum
Attorney for the Debtor

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re

DELORIS V. VICTORIA,

Debtor.

Case No. 06-31225-WRS
Chapter 7

**ORDER SETTING HEARING**

The Motion to Dismiss Case for Abuse filed on behalf of Greenville Hospital Corporation (Doc. 53), is set for a telephonic hearing on **Tuesday, June 26, 2007, at 11:00 a.m**.

Each party desiring to be heard must furnish the Courtroom Deputy, Bill Livingston, in advance, a telephone number to be used and keep the line open at least one hour for the hearing. **Mr. Livingston's direct number is 334-954-3846.**

Done this the 8th day of June, 2007.

/s/ William R. Sawyer
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In Re:

Case Number:

Deloris V. Victoria 06-31225WRS-7

S T I P U L A T I O N S

IT IS STIPULATED AND AGREED, by and between the parties, through their respective counsel, that the deposition of:

DELORIS VICTORIA

may be taken before Karen Hinch, Notary Public, State at Large, at the office of McPhilips, Shinbaum & Gill, 566 South Perry Street, Montgomery, Alabama on the 9th day of February, 2007, commencing at approximately 9:00 a.m.

COPY

IT IS FURTHER STIPULATED AND AGREED that the signature to and reading of the deposition by the witness is waived, the deposition to have the same force and effect as if full compliance had been had with all laws and rules of Court relating to the taking of depositions;

IT IS FURTHER STIPULATED AND AGREED that it shall not be necessary for any objections to be made by counsel to any questions, except as to form or leading questions, and that counsel for the parties may make objections and assign grounds at the time of trial, or at the time said deposition is offered in evidence, or prior thereto.

IT IS FURTHER STIPULATED AND AGREED that the notice of filing of the deposition by the Commissioner is waived.

A P P E A R A N C E S

FOR DELORIS VICTORIA:

Richard Shinbaum
Attorney at Law
McPhilips, Shinbaum & Gill
566 South Perry Street
Montgomery, Alabama

Bradley R. Hightower
Attorney at Law
CHRISTIAN & SMALL, LLP
505 20th Street North
Suite 1800
Birmingham, Alabama 35203

Tina Hayes
United States Bankruptcy
Administration
One Church Street
Montgomery, Alabama 36104

# I N D E X

EXAMINATION BY:

Mr. Hightower 6
Ms. Hayes 90

# E X H I B I T S

Exhibit 1 10
Exhibit 2 11
Exhibit 3 13
Exhibit 4 14
Exhibit 5 16
Exhibit 6 16
Exhibit 7 17
Exhibit 8 17
Exhibit 9 20
Exhibit 10 22
Exhibit 11 22
Exhibit 12 28
Exhibit 13 29

| | |
|---|---|
| Exhibit 14 | 32 |
| Exhibit 15 | 33 |
| Exhibit 16 | 38 |
| Exhibit 17 | 52 |

I, Karen Hinch, a Court Reporter of Birmingham, Alabama, and a Notary Public for the State of Alabama at Large, acting as Commissioner, certify that on this date, pursuant to Rule 30 of the Alabama State Rules of Civil Procedure and the foregoing stipulations of counsel, there came before me at McPhilips, Shinbaum & Gill, 566 South Perry Street, Montgomery, Alabama on the 9th day of February, 2007, commencing at 9:00 a.m., DELORIS VICTORIA, witness in the above cause, for oral examination, whereupon the following proceedings were had:

DELORIS VICTORIA,

first being duly sworn, was examined and testified as follows:

EXAMINATION BY MR. HIGHTOWER:

Q Dr. Victoria, my name is Brad Hightower. We've met before and talked to you before about your case. What this is

called, it's called a Motion for 2004 Examination. The rule number is just a provision in the Bankruptcy Code that allows us to take your examination under oath. It's basically the same thing as a deposition.

Have you ever participated in a deposition before?

A No.

Q Okay. Well, I'll ask you questions and the court reporter here will take down the questions that I ask you and your responses. So if I ask you a question and you don't understand it, you can just ask me to repeat it or try to rephrase it to help you understand it. And please answer out loud because if you just nod your head the court reporter can't take that down as a response. So if I ask you for something "yes" or "no," just say "yes" or say "no," don't shake your head or give any kind of other affirmative response.

This is a copy of the motion that we filed to ask you to come today. Have you ever seen this before?

A No.

Q There was attached to it a request for you to bring some documents with you. The documents that we asked you to bring are listed in this section here. Have you ever seen this before?

A No.

Q Were you aware that we had requested that you bring some documents with you today?

A Mr. Richard notified me Tuesday.

Q Do you have some documents with you?

MR. SHINBAUM: That's a lot of them. She did not bring all of them. There's more. There's some we don't have copied.

You have the bank statements from Brantley.

THE WITNESS: Yes.

MR. SHINBAUM: He needs to see those and we will copy those. And the registration on the vehicles. I know you showed me that a second ago but I don't have copies of that yet.

MR. HIGHTOWER: Is that in addition to this?

MR. SHINBAUM: Same thing.

MR. HIGHTOWER: And she's got some more stuff with her?

MR. SHINBAUM: It's just not in the same order unfortunately. I didn't put it through at the same time.

MR. HIGHTOWER: I'll just give her a moment to get whatever it is that she's looking for.

MR. SHINBAUM: There is one registration she's missing. I will get that to you. That's the registrations on the vehicles and that's two statements from Camden and Brantley, Camden and Brantley are one in the same.

Q Dr. Victoria, I've got a stack of documents here that you have produced today. If you wouldn't mind, I'd appreciate if you would just go over with me what you've got here if you could just identify.

MR. SHINBAUM: One thing I'd ask, I haven't had a chance to redact everything yet that has to be redacted before it's submitted to court.

MR. HIGHTOWER: That's fine.

Q Can you go over this stack and tell me what we've got here?

A This is the August statement from Butler Bank and then the September statement from Butler Bank.

MR. HIGHTOWER: Can we mark those up as Exhibit 1.

(Exhibit 1 was marked for identification.)

Q Okay. What is that one?

A This is the registration of the cars my husband owns and I had one more

that is -- I just have to fax it.

Q Which two cars is that?

A It's the Mercedes and then the Porsche.

Q We will mark that as Number 2.

(Exhibit 2 was marked for identification.)

A He's got another Mercedes that he could not find the registration.

Q What type of Mercedes is the other car?

A I do not know.

Q Is it a large, small or large?

A It's a sports car.

Q Sports car. Two door?

A Two door.

Q How old is it?

A Three years old.

Q Do you know how much it cost?

A 90,000.

MR. SHINBAUM: If you don't know, it's okay to say you don't know.

A I don't know because I'm just

guessing.

MR. SHINBAUM: We don't want you to guess. If you know the answer, answer; if you don't, there's no shame in admitting you don't know.

Q So approximately 90 or you just don't know?

A I don't know.

Q What makes you think it was worth 90?

A It was just in the newspaper.

Q I guess you had some basis to come up with 90 for the value?

A Yes.

Q What was that?

A I don't know. As I said, I'm not into cars, things, that's why I do not own a car.

Q I just mean as opposed to saying 50 or 20?

A You can just ask my husband. It's not my business telling him his cars.

Q Can you identify what we've got

here?

(Exhibit 3
was marked for
identification.)

A This is a summary of my MasterCard year-end for 2003.

Q For what year?

A 2003.

Q On that one we just marked, Exhibit 3, Dr. Victoria, do you have anything more recent than 2003?

A No.

Q So your year-end 2003 credit card statement is the most recent credit card statement that you have?

A I'm sorry.

Q Is your 2003 year-end credit card statement that you brought with you today that we just marked as Exhibit 3, is that the most recent credit card statement that you have?

A No.

MR. SHINBAUM: That's the most recent I have in my file. I have -- last

Page 14

I have is 1 of '06.

MR. HIGHTOWER: That's January of 2006? Looks like a 2003 year-end report.

MR. SHINBAUM: I just put them all together. There's one of December '05 and one of January '06.

Q Dr. Victoria, you filed your bankruptcy case in September '06.

MR. SHINBAUM: This is October. That's the same thing.

MR. HIGHTOWER: What is this?

MR. SHINBAUM: That's October.

MR. HIGHTOWER: Of '06?

MR. SHINBAUM: Of '06. I think it's either '05 or '06.

MR. HIGHTOWER: It says '06.

Mark this as 4.

(Exhibit 4 was marked for identification.)

MR. SHINBAUM: That will be a summary of statements between '03 and '06 at various intervals.

Q What's next in the stack you brought with you?

A This is --

MR. SHINBAUM: Do you want to do the business reports all together?

MR. HIGHTOWER: The credit card reports?

MR. SHINBAUM: Business reports.

MR. HIGHTOWER: That's what she's looking at now?

MR. SHINBAUM: I think that's what she's doing.

MR. HIGHTOWER: That's fine.

A Accounts receivable August and September 2006.

MR. SHINBAUM: Looks like her business reports.

MR. HIGHTOWER: This and this are the same?

MR. SHINBAUM: No. That's before that. That would be this, whatever it is.

Q Can you identify what this is?

MR. SHINBAUM: That's something from you. I don't know what it is. He wants to know what it is.

Q Tell me what it is.

A It's the accounts receivable of August and September. And the other documents here are just in the summary. Everything in here are just kind of like these are the summary and it's just telling you what's insurance paid, what the office payments, what are the accounts receivable from the patients.

(Exhibit 5 was marked for identification.)

Q What's next?

A This is charitable contributions.

(Exhibit 6 was marked for identification.)

A This is investment. I don't know if you consider that an IRA.

Q Is it an SEP?

A I think.
Q Roughly, a self employment IRA?
A It is.
(Exhibit 7 was marked for identification.)
Q What's next?
A This is documents that my lawyer did that are terminating my --
MR. SHINBAUM: This is just a letter from her lawyers.
MR. HIGHTOWER: We'll mark that as 8.
(Exhibit 8 was marked for identification.)
MR. SHINBAUM: I don't think it was actually incorporated or finished. I don't know. When she was trying to change her practice.
Q What document are you looking at now?
A This is the summary of the two banks that I have.
Q Checking accounts?

A Checking accounts. And it's the expenses that was made in August and September.

MR. SHINBAUM: I believe that's -- these are all of her business reports for the applicable time if you just want to do them all in one.

MR. HIGHTOWER: Is that checking account, is that her personal checking account?

A No.

Q It's a business checking account?

A Business.

Q This is the same as -- these two are the same thing or they're additional?

A It kind of goes together.

MR. SHINBAUM: It's kind of everything.

I believe this is your practice analysis and reports. And the statements as to income and everything else. It's

just a compilation of everything with the business through September -- looks like from August through November.

THE WITNESS: It's already there.

MR. SHINBAUM: He knows it's there. He needs to know what it is.

Q I'm just asking you to go through this stack of documents with me and tell me what each portion of it is.

MR. SHINBAUM: And of course, before it goes to any court proceeding we will have to redact all the names.

A Just like I said, this is the payments we did in August and September.

Q Is this part of it also that you just handed to me?

A These are the incomes, and I think they are together, income and expenses.

Q These are the income and expenses for your business for the period of August and September 2006?

A Yes.

MR. HIGHTOWER: We will mark that as 9.

(Exhibit 9 was marked for identification.)

MR. SHINBAUM: I think it actually runs through November but it contains what you -- and of course, again, we are submitting this for the deposition today but if it's used in any procedings, it will have to be redacted.

MR. HIGHTOWER: That's fine.

Q What's the next document?

A I think this is a budget for November.

MR. SHINBAUM: That would be November/December budget.

THE WITNESS: I'm not sure about this, Mr. Shibaum.

MR. SHINBAUM: That's the lawsuit from Jemison. Did you ask for that?

MR. HIGHTOWER: I don't think I

did.

MR. SHINBAUM: Did you want it?

MR. HIGHTOWER: I do not want it.

MR. SHINBAUM: I did have the 2006 MBNA statement. I didn't see it before. If you want to add that to the MBNA.

Did you want October practice analysis?

MR. HIGHTOWER: Sure.

MR. SHINBAUM: Let's add that to the October.

Q Can you tell me in which stack this one goes?

A (Witness complied.)

This is insurance payments.

Q I'll take a copy if you just identify what they are.

A They are various private insurances, Blue Cross, Medicare, Medicaid.

Q For what time period?

A Some are August, some are October, some are September.

MR. SHINBAUM: Again, there's a bunch of information on this we will have to redact.

(Exhibit 10 was marked for identification.)

A This is the taxes.

Q What period?

A August 2006.

Q Personal income or business?

A Business.

MR. HIGHTOWER: Mark this as 11.

(Exhibit 11 was marked for identification.)

Q Did you bring any other documents with you?

A Huh-uh.

Q Let me just go through the list of things that I have and you can just tell me if you brought them. Copy of your Whitney Bank checking account statement

for August and September '06. I think you brought that. I think it's already in here.

MR. SHINBAUM: It's Butler and Camden.

Q Did you bring Whitney?

A Whitney is the summary.

MR. SHINBAUM: Get me the statements and the checks and I will get them to him.

Q Butler County checking account statement for August and September '06, you brought that. Copy of any checking account statement received by your husband for the months of August and September '06. I don't know what banks he uses.

MR. SHINBAUM: We have no control over those so we don't have those.

MR. HIGHTOWER: You don't have those?

MR. SHINBAUM: No. He has control of those.

Page 24

Q I think they're relevant to this.

MR. SHINBAUM: We'll have to take that up.

Q Copy of any credit card account statement received by you for charges made during the months of August and September '06.

MR. SHINBAUM: I don't think there is any.

Q Did you make any charges on a credit card during August and September 2006?

A No.

Q How did you pay for any items that you needed to buy during that period of time?

A My husband take care of it.

Q Your husband purchased them?

A (Witness nodding head.)

Q How did he purchase them?

A Check or credit card.

Q Do you understand how it could

be relevant that I asked you to produce a copy of your husband's credit card statements since he apparently purchased everything you needed during those months?

MR. SHINBAUM: We have no control over his accounts.

Q Copy of any credit card account statement received by your husband for charges made during August and September 2006. I assume the same?

MR. SHINBAUM: Same.

Q Copy of any and all documents showing any interest held by you or your husband in any automobile including payment booklets, invoices and vehicle titles. You've produced two titles I believe.

MR. SHINBAUM: Two of the three registrations. We need to get you the other one.

Q Copy of any insurance policy on your home and any other real property in which you and your husband has an

interest?

MR. SHINBAUM: We will have to get that.

Q Copy of any insurance policy on any automobile which you or your husband have any interest?

MR. SHINBAUM: I don't have that. She didn't have that in the stack.

Q Copy of any insurance policy that you have on any personal property other than automobiles, including jewelry.

MR. SHINBAUM: I don't have that in the stack.

Q Do you have an insurance policy on any jewelry that you own?

A No.

Q Or any other personal items?

A No.

MR. SHINBAUM: I imagine -- let me correct that -- most homeowners' policies have a limited coverage on jewelry and everything but not complete coverage on jewelry and everything.

MR. HIGHTOWER: Especially if you're outside the home.

MR. SHINBAUM: It's very limited. Most homeowners' policies -- other than what's in the homeowners' policy.

Q You don't have a policy on any jewelry that you're aware of?

A No.

Q Other than homeowners' potentially?

A No.

Q Copy of your federal income tax return for the tax year 2005.

MR. SHINBAUM: I have a transcript of the joint return showing that -- did you file it yet? You just filed it.

THE WITNESS: This is just mine.

MR. SHINBAUM: I'll have to copy this. And this is just the transcript from the IRS showing that they

Page 28

didn't have it at the time we filed.

Q This document that you've just produced, is this a business tax return or a personal tax return?

MR. SHINBAUM: That's the transcripts.

MR. HIGHTOWER: What is this?

MR. SHINBAUM: Transcripts from --

MR. HIGHTOWER: From tax year '05?

MR. SHINBAUM: '05 and '06.

MR. HIGHTOWER: Personal income tax or business?

MR. SHINBAUM: Both transcripts.

MR. HIGHTOWER: That is going to be Number 12.

(Exhibit 12 was marked for identification.)

Q And other than any communications with your attorney, have you made any written communications by

e-mail or letter to anyone regarding your bankruptcy case?

A No.

Q We will come back to the documents in a little bit. I'm going to ask you some questions about your bankruptcy case.

(Exhibit 13 was marked for identification.)

Q Is that a copy of your bankruptcy petition and schedules?

A Yes.

Q You filed your bankruptcy on September 25, 2006? This may help you. This is a copy of the docket and there's the date.

A Yes.

Q Some of this we may have gone over before and I apologize if I ask you a question that you remember me asking you previously. But let me ask you to turn to Schedule A. If you flip a few pages into it at the top there will be Schedule A.

You have listed on Schedule A that you own or have an interest in property located at 225 Woodland Heights Drive in Greenville, Alabama; is that correct?

A Yes.

Q When you filed bankruptcy, how much do you think your house was worth?

A I do not know.

Q You have a listing -- are you still looking at it? You list here that a value of $373,800. You listed -- you say value listed is tax assessed value. I assume that the house was not in your opinion worth that much; is that correct?

A Say that again.

Q You list the house as being worth $373,800, but you also make a note that says value listed is tax assessed value. Did you do that because you thought the house was actually worth less than the amount listed?

MR. SHINBAUM: That was done because usually in this district if we

don't have an exact appraisal we submit the tax assessed value as at least some value, something that shows the method of ascertaining the value of the home. I believe the trustee sent an appraiser down to get an opinion himself and didn't come up with that much.

MR. HIGHTOWER: I assume the trustee would have taken it and sold it if he thought it was worth substantially more than the debt that was owed on it?

MR. SHINBAUM: Now, he is going to propose an offer to compromise and sell is my understanding from talking to the trustee. He hasn't done it yet, but -- I don't know if he's done it yet.

MS. HAYES: I haven't seen anything.

MR. SHINBAUM: But there are discussions about the sale of the property.

Q Dr. Victoria, do you know how much the trustee's appraiser came back and

said the house is worth?

A I do not know.

MR. HIGHTOWER: Do you know, Richard?

MR. SHINBAUM: I haven't -- he just told me what he wants us to pay if we want to buy it. I don't know how he determined that. But we consider it a fair and reasonable offer.

MR. HIGHTOWER: Are you willing to disclose that amount?

MR. SHINBAUM: Yeah. Between the accounts receivables and the house, I think he has asked us if we would buy them for 55,000. Don't hold me to the exact figure. It's in that range. So he did find some value.

MR. HIGHTOWER: Can you mark this as 14?

(Exhibit 14 was marked for identification.)

Q Your house has a mortgage on it, correct?

A Yes.

Q When was that mortgage entered into?

A (No response.)

MR. HIGHTOWER: Do you have a copy of it?

MR. SHINBAUM: Yeah. I will copy it and submit it. I do have a copy of it. The real estate mortgage is dated January 13, 1998. And the mortgage amount it looks like at that time was $431,062.70.

(Exhibit 15 was marked for identification.)

Q Who was your mortgage with, what bank?

A Brantley Bank.

Q I'm going to show you what's marked as Exhibit Number 14. I'll represent to you that that's a reaffirmation agreement on your home. If you turn to the third page it shows the original amount of the mortgage was

$347,577.39.

MR. SHINBAUM: That may be a different one. Yes, that's what that shows and the actual mortgage shows a different amount. Don't ask me how they got there or what they did, but the actual mortgage shows $431,062.70. This is a different document, different -- there is a different amount on the reaffirmation.

MR. HIGHTOWER: But that's the same mortgage?

MR. SHINBAUM: I believe so. Let me see if it references that date. This doesn't reference the date of the mortgage but the document speaks for itself. I would have to check. There may -- it looks like there -- if these documents are right, there may have been a refinance somewhere.

MR. HIGHTOWER: A refinance?

MR. SHINBAUM: There may have been. I don't know there has been because the payment amounts are even different.

Page 35

MR. HIGHTOWER: I was about to ask her.

Q Dr. Victoria, according to this mortgage, which is identified as Exhibit 15, it shows that you had original mortgage payments of 5,257 per month for a period of 120 months or ten years. Does that sound correct?

A I don't know.

Q Do you recall ever discussing with your husband or ever paying -- discussing how much the mortgage was?

A I don't recall.

Q If you look at the reaffirmation agreement that's marked as Exhibit 14, if you will turn to page three again, at the bottom it says it has a new payment schedule. It says your payment schedule will be 176 payments in the amount of $2,025.05?

A I know about this, yes.

Q And it says it's payable semi-monthly, meaning twice per month.

Are you familiar with that?

A Yes.

Q In your bankruptcy schedules you listed a mortgage debt of approximately $4,000 per month. Is that where you got that number from, by multiplying this twice, you have to pay it twice per month?

A Where is that?

Q If you flip to --

MR. SHINBAUM: He's talking about Schedule J.

Q That's where that number came from?

A Right, uh-huh.

Q Is that the same amount that you were paying before you filed bankruptcy each month for your mortgage?

A Yes.

Q And I just did some rough math, but if you have 176 payments due at the rate listed in Exhibit Number 14, that means the mortgage will be paid off in

roughly seven and a half years. Is that about what you expected it to be paid off in?

A Yes.

Q How large is the home?

A 3,100 square footage.

Q How many bedrooms and baths?

A Four and three baths.

Q How would you describe it in comparison to other houses in the area? Smaller? Larger?

A Same.

Q About the same? How many people live in the house?

A Four.

Q Who are they?

A Me and my husband, my son and granddaughter.

Q How many children do you have?

A I have four.

Q What are their ages?

A 39, 37, 31 and 30.

Q All of them are 18 or older

then?

A Yes.

Q How old is the son that lives with you?

A 30.

Q Could you live in a smaller house at a lesser -- with a smaller mortgage payment if you had to?

A Say that again.

Q If you had to, could you live in a smaller house with a lesser mortgage payment each month considering the number of people that live in the house?

A Yes.

(Exhibit 16 was marked for identification.)

Q Can you identify Exhibit 16 for me?

MR. SHINBAUM: This is the reaffirmation agreement. I think it's the same.

MR. HIGHTOWER: I must have just given her the wrong one.

Q Could you identify that one for me?
A Yes.
Q What is that?
A This is a loan by the corporation we have for weight loss.
Q Is it a loan to you personally or to a business?
A Business.
Q An incorporated business or just a business that you're doing business under that name?
A It's incorporated.
MR. SHINBAUM: I don't believe she actually ever did any business under the corporation. All the income and everything came in personally and everything. She thought she was doing business as a corporation, but I don't believe that it was truly analyzed it would be.
Q Could you turn to page three of that? On page three it lists under where

it says item or type of item, certificate of deposit number 19922. What is that certificate of deposite?

A That's collateral for this loan.

Q Who owns that certificate of deposit?

A It's me and my cousin who put in some interest to the corporation.

Q How much is it?

A It's 3,500 but it's taken out already. And what the bank did is take it out from the nineteen six seven -- 697. So at this point the loan is for 16 something.

Q You had an interest in the certificate of deposit but it has been -- the bank has already cashed it?

A Right, it has to be.

Q At what point --

A It's collateral.

Q It serves as collateral for the loan; is that correct?

A Yes.

Q Did you list it in your bankruptcy petition and schedules? If you will look here, this is Exhibit Number 13. You see item number two here? You see it asks you to list certificates of deposit? I don't see one listed there.

A As I said, that's how I explained to you, that it's a loan.

Q You didn't list it on your bankruptcy petition and schedule as an asset that you owned an interest in; is that correct?

A I don't think it's my asset because, as I said, it's tied up to the loan.

Q Who owns -- but you did say that you owned the certificate of deposit with your cousin?

A My cousin.

Q So it must be an asset of yours, then?

A No, it's not. As I said --

Q I understand that it's serving as collateral, but if you had say a car that was serving as collateral, that would be yours?

A It's her money. I had to sign for her.

Q So the certificate of deposit belongs to your cousin?

A Right.

Q Not to you?

A It is not mine.

Q Is your name on it?

A Yeah. The bank has to make me sign also.

Q On item number four on your personal property list on your bankruptcy schedules here you list household goods valued at $7,000. Where did you come up with that number from?

A It's like TV sets and living room sets, dining room sets.

Q So you think that all the furniture in your house is worth $7,000?

A Yes.
Q All the items in there?
A Yes.
Q You listed jewelry worth $5,000 here.
A Yes.
Q Can you describe to me the pieces of jewelry that you have that add up to that?
A You have the list there, what I told you before.
Q This is just notes I made yesterday. I don't have a list.
A A few rings, few -- three or four rings, three or four necklaces and earrings.
Q Last time we talked you told me that you had given some jewelry away to others. Can you tell me what pieces of jewelry that you gave away?
A Maybe a couple of earrings to my daughter, two or three necklaces.
Q Also to your daughter?

A Yeah.

Q Which one? You gave me a list of the ages of your children. Which one is your daughter?

A The second and the third.

Q Daughters then?

A Daughters.

Q 31 and 30?

A 31 and 30.

Q And the other two are your sons?

A Right.

Q How much do you think the value of the jewelry you gave to your daughters was?

A Probably 3,000.

Q Did you give any jewelry away to any other people?

A No.

Q Have you given any property including jewelry to your daughters or anyone else since you filed your bankruptcy case?

A No.

Q We also talked about a condominium or townhouse, I'm not sure how you described it, in Atlanta. Who owns that?

A My husband.

Q What did you say the value of it was?

A I do not know.

Q Do you have a mortgage on it?

A Yes.

Q Do you have a copy of it?

A No.

Q In your home do you have copy of it?

MR. HIGHTOWER: Is that the same thing we talked about earlier as far as the credit cards?

MR. SHINBAUM: No. Brandon's been trying to get a copy of it from Atlanta. We just haven't gotten it yet.

Q The last time -- do you need to ask your lawyer a question?

The last time we talked you had an idea of what you thought the property in Atlanta was worth. You still do not remember our discussions previously?

A I do not know.

Q You don't know how much you and your husband pay each month for it?

A I do not pay.

Q You do not pay?

A (Witness shakes head.)

Q Your husband pays for it each month?

A Right.

Q Do you know how much he pays?

A I do not know.

Q How did you go about purchasing the condo? When I say "you," how did you and your husband go about purchasing the condo?

A What is the purpose?

Q When did you purchase it?

A 2002 I think. 2002.

Q Who lives in it?

A Nobody.

Q No one lives in it?

A Nobody.

Q What is it used for?

A We just go there on weekends.

Q Who is "we?"

A Just me and my husband.

Q The last time we talked you had told me that your daughter lived there or someone in your family lived there. Has that changed?

A She did when she was in med school.

Q She no longer lives there?

A No.

Q When did she stop living there?

A July of last year, 2006.

Q How did you locate the condo? How did you and your husband locate the condo to purchase it?

A How did I locate it?

Q When you were in Atlanta how did you decide that you wanted to purchase

Page 48

a condo?

A For my daughters.

Q How did you find it?

A I think she found it with a Realtor.

Q How did you decide -- what made you decide to buy it?

A For my daughters to live.

Q Do you remember at all discussing how much the cost was?

A She and my husband.

Q So you don't have any discussions with your husband when you buy a piece of property like that about how much it costs?

A He paid for it.

Q Let me give you an example. If I was going to go buy a house or a condo in Atlanta, and I'm married, I would think my wife would probably be interested in how much I was going to pay for it because we just discuss those type of things. Do you discuss that type of stuff with your

husband?

A No.

Q If you'd turn to Schedule D, you've got listed as secured creditors the mortgage on your home and you've got what we discussed earlier. There's a loan, you said that that was the loan here. The second loan is listed as Camden National. Is that on your -- what type of business did you describe that as?

A Weight loss.

Q Weight loss business. Your home, would you say that you bought it for your personal use?

A Yes.

Q And your debt that you owe to Camden National, that's a business use?

A Yes.

Q If you'd flip to the next page and flip one more time. These are tax debts that you have listed here. Are they for personal income taxes or business income taxes?

Page 50

A Business.

Q If you would turn to Schedule F, it should be two pages. The first creditor you have listed is Camden National line of credit, is that a business debt or a personal debt?

A Business.

Q The second debt, is that the same debt just listed as disputed debt?

A Yes.

Q The third debt, loan to Camden National, is that business or personal?

A Business.

Q The fourth debt is CenturyTel, is that business or personal?

A It's business.

Q Is that for telephone services?

A Yes.

Q The fifth debt, Jenisen Healthcare, is that a business debt?

A Yes.

Q Greenville Hospital also a business debt?

A Yes.

Q Number seven, MBNA America credit card for debt of $9,663, is that a business debt or a personal debt?

A I'm listed as --

MR. SHINBAUM: This isn't the 70,000 one. This is a different one.

A This is also my husband and I'm just a cosigner. I think they list it whenever --

Q The $9,663, is that not an obligation that you owe, you just have access to that card?

A Right. I have access to that card.

Q The next one is --

A And this is my son and I'm also have a use to.

Q Number eight, MBNA America for $3,378, is that the same thing?

A My son and I am also on it.

Q You're on the card but you don't owe the debt?

Page 52

A Yeah.

Q Number nine, MBNA America. On here it's listed for $65,000, but you amended your bankruptcy recently. This is a copy of the amendment you filed in your bankruptcy case. Do you see where you changed that $65,000 debt to a $1 debt.

(Exhibit 17 was marked for identification.)

MR. SHINBAUM: I also have a notation on there that as to the total amount of the debt and that there may be liability on it since it was used to pay taxes.

MR. HIGHTOWER: I don't see where it says it was used to pay taxes. I'm looking at the original schedule. Let me look at what you've got there. Account in husband's name, used to pay wife's taxes.

MR. SHINBAUM: Yeah.

Q As with the two before, that is not a debt that you owe. You think you're

 Page 53

just on the card. You had privilege to make charges with the card?

A Yes.

Q But you don't owe that debt?

A Well, I was the one who used it just like mentioned in here that I used it for to pay expenses.

Q But you weren't on that -- you were not obligated on that account like the first -- like the others that we discussed?

A I have to because I was the one who used it.

Q Well, I thought you told me on the last two MBNAs that you also used that account.

A Yeah. This is the one that I was -- it's noted in here that I used it so I will have to pay it.

Q Let me ask you this: If you look at this here, we just discussed these two credit cards, this one and this one?

A Right.

Page 54

Q The MBNA for $9,663 and the MBNA for $3,378 and you told me that you had access to those accounts but you did not owe the debt for those accounts?

A Yeah.

Q How are these two different from the MBNA debt listed for $65,000?

A Because we used this mostly kind of like a business account.

Q Were you obligated to pay on the MBNA account listed for 65?

A Yes.

Q Then why did you amend your bankruptcy schedule to show that you don't owe the debt anymore?

A Did I say that? I don't know.

Q Did you sign this document?

A Yeah.

Q Did you look at it or review it before you signed it?

A No.

Q You just signed it?

A Yeah.

Q Do you know why the debt was changed from 65,000 to $1?

A I do not know, but that's what I explained that I used it.

Q I understand that. I'm trying to understand why.

A I'm just going to repeat it. I am obligated because I used it and it's all in the documents that it's in there that I used it for the business.

MR. HIGHTOWER: Richard, do you know why you guys changed it?

MR. SHINBAUM: Yes. The trustee asked us to.

MR. HIGHTOWER: On what basis?

MR. SHINBAUM: The trustee asked because the documents we submitted showed the account was the account of Edgar Victoria. The reason I made the notation of the approximately $75,000 was it was used to pay taxes. As such, there could be liability to her on this.

MR. HIGHTOWER: I understand

Page 56

that. But will you stipulate that she was not obligated on the account?

MR. SHINBAUM: No.

MR. HIGHTOWER: What was the basis for changing it from 65,000 to $1?

MR. SHINBAUM: The trustee and the bankruptcy administrator asked us to change it.

MR. HIGHTOWER: Well, you're her lawyer. I assume if he asked you to make other changes that you didn't think were proper you wouldn't have done them.

MR. SHINBAUM: I have made a notation to reflect the nature of the bill. Legally, in terms of a direct suit against her, they might have a problem proving that she owes the debt. Since it was used to pay taxes, it may be a nondischargeable debt. So the notation was made to reflect the way things actually exist today.

Q Creditor ten is listed as Whitney Bank for $5,483?

A It's business.

Q Before we came here today I looked at the debt that was owed on your house which you described as a personal debt. And then I took all the other debts that you owed and subtracted them and I came up with $7,113.26 left over. In other words, the debt you owe on your mortgage is larger than all the other debts that you owe for your businesses. Does that sound accurate to you?

A Say it again.

Q Before I came down here today I looked at your mortgage, which is listed as $290,000, and you describe that as a personal debt. And then I took that number and I subtracted out all the other debts that you had listed and I came up with a little over 7,000, meaning that the debt that you owe on your mortgage, which is a personal debt, is larger than all the business debts that you owe. Does that sound accurate to you?

A I'm not following.
Q Well, you owe $290,000 on your mortgage. Do you agree with that?
A I agree.
Q And then you owe $60,000 in taxes. You had originally listed $83,000 worth of unsecured business debts but now that number's been reduced because you changed the $65,000 debt, you reduced that one down to $1 so that you have roughly $24,000 worth of unsecured debts. And what I'm asking you is if you take the money that you owe for your mortgage and you subtract out all the other debts that you owe, the money that you owe for your mortgage is more than the money that you owe for all your other debts. Does that sound accurate?

MR. SHINBAUM: I don't believe that's a correct statement as to the amount of the unsecured -- of what would be the unsecured debt. I believe that you're leaving out roughly $165,000 debt

if you recalculate what's owing to the hospital. And you're also -- and I believe the true figure on the home mortgage came to about 282,000 if you look at the reaffirmation from what they said was owing.

Q If you'd flip to Schedule I for me. We talked about this before. You list yourself as having gross income of $15,000 a month and your husband as having $20,000 a month; is that correct?

A At that time, yes.

Q Has that changed?

A Yes.

Q How has it changed?

A It's lower.

Q For who?

A Both.

Q What is the current?

A As of today's date?

Q As of today.

MR. SHINBAUM: If you know.

A Well, I mean, both of us are

not working so I cannot really tell you.

Q You said both of you are not working?

A Well, we are on vacation so I cannot tell you.

Q You're on vacation right now?

A Yeah.

Q If you weren't on vacation -- you said your income went down and I assume it's not because you're on vacation. How much is it if you weren't on vacation?

A Mine I know is less than 10,000, but my husband I could not tell you.

Q If you would flip to Schedule J, you brought me a list of your charitable contributions each month; is that right?

A Yes.

Q That's listed at roughly a thousand dollars a month?

A At that time.

Page 61

Q At that time. You've got auto insurance down here listed for $1,200 a month?
A Yes.
Q Is any of the auto insurance listed for cars that are driven by someone other than you or your husband?
A Yes, three of my children's.
Q Which three children?
A Age 39, age 35 and --
Q You mean 37? You told me 39, 37, 31 and 30 earlier. Which three is it?
A First three.
Q You pay their auto insurance?
A Yes.
Q What kind of cars do they drive? You can go by age if you want to just tell me which car for which age.
A One is Nissan, number one.
Q What kind of Nissan?
A I don't know what kind.
Q Is it a sports car or a large car?

A It's a regular car.

Q Did you pay for that? Did you or your husband pay for -- is that car paid for or did you and your husband -- do you make payments on it for them?

A My husband.

Q Makes payments. How about the 37-year-old?

A 37 is Jetta GTI, year 2000.

Q Who makes payments on that?

A He paid for it, but we are paying for the insurance.

Q It's paid for?

A It's paid for.

Q How about the 31-year-old?

A 31 is Mercedes.

Q Is that one paid for?

A No.

Q Who's making payments on it?

A My husband.

Q Do you pay any of the debts at your house?

A No.

Q Your husband pays them all?

A Yes.

Q Where does the money come from that he uses to pay the debts?

A From his business.

Q Does any of the money that you earn go to pay debts?

A I pay for the telephone, the power, medical insurance. That's about it.

Q You make gross 15,000, or when you filed your bankruptcy case you were making $15,000 a month?

A Yes.

Q If all you paid were the things that you just described, where does the rest of the money go to?

A Excuse me. I don't think we are on the same page. Did you say when I filed the bankruptcy?

Q When you filed bankruptcy.

A Yeah, that's what I paid. What was listed is what I pay. But after that

since my income is lower then I have to ask my husband to give me money.

Q When you filed your case you said you were making $15,000 gross and you've just described to me that your husband pays virtually all of your debts, you pay a few of them?

A Yeah.

Q At that time what did you do with the rest of the money that you made?

A It's all business.

Q In other words, I guess what I'm trying to ask you is if your husband just sent a check in each month for your mortgage, did all of the money that was used to pay the money come from his salary or is it that some of your salary would have been used to help pay the mortgage?

A It's all his money.

Q You showed your husband's net take home as $10,000 a month when you filed bankruptcy.

A Yes.

Page 65

Q You show expenses of a little over $13,000 when you filed bankruptcy.

A Yes.

Q Well, if he only made after taxes $10,000 a month, how did he pay $13,000 a month?

A Say it again.

Q Well, you said he's only making $10,000 after taxes per month over here. He makes that after taxes?

A Right.

Q That's what he brings home?

A Yeah, uh-huh.

Q You show expenses of a little over $13,000 each month. How can he pay that much in expenses if he only makes 10,000?

A Well, I told you the power, I pay that. I pay water.

Q How much is the water? Which one's the water?

A 300. I pay all of this and then I pay for the medical expenses.

Page 66

Q Which one's that? A hundred dollars?

A Yeah, uh-huh. I pay a little bit for the charitable contribution.

Q How much?

A Maybe 200. I pay for the health insurance and that's it.

Q Okay. These amounts here, what do they add up to roughly?

A About fifteen, sixteen hundred.

Q So if you're only paying $1,500 worth of expenses and your husband only makes $10,000 a month, that still leaves something left over, doesn't it?

A Probably -- I would have to sit down to tell you exactly.

Q I guess what I'm trying to get at is don't you guys operate like most households in that you both make an income and yet you both pay expenses. And it may be that your husband cuts a check for your mortgage or some other debt or car, for instance, but that some of the money you

make goes towards that?

A I don't know. I cannot tell you exactly how it works.

Q You just don't know?

A I don't know.

Q Are you not privy to the finances at your household?

A Say it again.

Q Are you not part of the decision making at your household about how debts are paid?

A No.

Q Your husband controls that exclusively?

A Yes.

Q I'm through with asking you questions about your bankruptcy petition here. But I would like to take a moment to look over the documents that you brought with you today, since this is the first time I have seen them, and then ask you a couple of questions about those.

MR. HIGHTOWER: If you want to

 take a quick break, Richard.

(Short recess.)

Q Dr. Victoria, this is what's marked as Exhibit 1, which you identified as the bank statement from Camden National Bank. At the top right corner it says page one of three. And then the next page at the top right corner it says page one of five. After that it says page two of five. Do you know where the other pieces are?

A The other pieces are just the explanation of just the copies of the deposit and then copies of the checks.

Q Do you have those?

A I did not bring it with me. I didn't know you needed.

Q Let me see if I can get you to identify some of these things for me. We will have to look together unless you have a copy of it with you. I see for September there were three large deposits, one of $1,300, one of a little over $1,400

and another one of $1,487. What are those for?

A The 1,300 is from my husband.

Q Is what?

A Is from my husband. He gives me money for my business. And then the other two big ones are insurance payments.

Q Why is it that your husband gives you money?

A I don't have that much money to spend.

Q You make --

A For business.

Q You make $15,000 gross?

A Yeah, but it's listed what I have paid and it's listed in your -- the one that I gave you what I have paid for.

Q So this is your bank account solely and your husband gives you money to deposit into it. And then what do you do with the money that your husband gives to you? You said you help pay business expenses?

A He helps me.
Q For your business office expenses?
A Yes.
Q Okay. If you'd look under the check transaction section.
A Uh-huh.
Q There's a check that's dated September 5th for $2,727. Do you know what that's for?
A That's the credit card that I told you I have to pay.
Q Payment to your credit card. On September 11 there's a check transaction for $1,300?
A I'm not hundred percent sure but it's also business.
Q Do you know who it would have been written to?
A No. I'm sorry. I thought that you would not need that. I'm not a hundred percent sure but I can say that maybe it was transferred to our weight

loss. We have a copy of this.

Q Weight loss business?

A Yes.

Q Transferred to the business?

A Right. Because this is the corporation. We just changed the name.

Q Why would you transfer money to the business?

A Because we just don't have any money there.

Q So you're putting your money into the business?

A Right.

Q And what does the business do with the money? What are you doing with the money once it's transferred into the business?

A Pay for supplies. We do buy medications, office supplies.

Q Can I see your binder? Do you mind if I just take a brief look at it?

A No. Just ask me which one you would be asking.

Q Well, it looks like to me that it's additional information that is related to all this stuff we're going over. I'd just like to take a look at it.
A I have this August -- I mean, these are all copies that I gave Richard.
Q Can I take a quick look at it?
A Are you supposed to?
MR. SHINBAUM: Let him look at it.
Q Your attorney can tell you whether that's acceptable unless there's any kind of attorney/client privilege stuff in there.
MR. HIGHTOWER: I just want to see it in the form she's got it in because it seems to be a little more organized than the way it's been produced.
A These are just letters from the lawyers, from him. Letter from him so I have to answer that so I always write a letter.
MR. HIGHTOWER: Do you want to

take a look at it, Richard, to see if there's something in there you don't --

Q If it's just the same stuff I'm sure you don't mind if I look at it.

A Yeah. I just put it in organized.

Q I'd like to see it if you don't mind.

A As I said, like you have a copy of this. You have a copy. He said not to give this to you. August, you have copies of this.

Q May I see it? This register report, what is that? Where it says "Register Report" at the top, what is that, this here where it says "Register Report?" What is that register from. Is that bank?

A This are the insurance payments.

Q This is a business register? Is this your business?

A Right.

Q From Edgar business, what does that refer to?
A The money I get from him.
Q Thank you. I appreciate you letting me look at it.
If you would refer back to this for me. Flip to the next page here. Do you see where it says "tuition?" What's that for?
A My granddaughter's tuition.
Q That's a payment by you for her tuition?
A Yes.
Q When I asked you earlier what you paid as expenses you didn't mention any tuition payments.
A Say again.
Q We talked earlier today about what you paid for each month and you didn't mention that you paid any tuition fees.
A I thought it is not necessary.
Q Is there any other expenses

that you didn't think it was necessary to tell me about?

A No.

Q How much do you pay each month for her tuition?

A 255.

Q Is that a monthly bill?

A Yes.

Q What's that for?

A It's tuition.

Q What school?

A Ft. Dailey Academy.

Q Is that a private school? High school?

MR. SHINBAUM: Complete school, K through 12 in Butler County.

Q Can you tell me what the large deposits listed on this page are from? Do you see anything over a thousand dollars there?

A Yeah. This is the -- I mentioned it is from my husband, the 1,800 and the 1,000. And then 1,500 -- the rest

are insurance payments and office payments.

Q If you'd flip to the next page under check transactions, that first one $1,608, what's that for?

A These is the money I transferred to the corporation.

Q All these are money that you transferred to the corporation?

A Right.

Q How much money do you transfer to the corporation each month?

A About two or three thousand.

Q What's the name of this corporation?

A It's now Medical and Health Services of Alabama.

Q And that's the weight loss one?

A Weight loss.

Q So that business isn't making enough money on its own, you have to put money into it?

A Yes.

Page 77

Q And do you list that money anywhere as an expense in your bankruptcy petition and schedule?

A Did I list what?

Q Well, I'll show you what we're talking about. The bankruptcy schedules you've got your expenditures listed. Is it listed there anywhere?

A No, it's not listed. It could be from this spouse's debts.

Q Is it listed as spouse's debts or are you just guessing?

A Could be from there.

Q But you're not sure?

A I'm not sure.

Q And it's not listed under here, number ten, as a transfer. I don't see anything listed there.

A Say it again.

Q Well, it's not listed as an expense, which you just said a minute ago. It's not listed as a transfer other than that. So it's just not listed at all, the

money that you're putting into the business each month. You say it's an expense but it's not listed; is that correct?

A I'm not following.

Q Well, you understand that when you file bankruptcy you've got to list your income and you've got to list your expenses?

A I thought it was listed already.

Q Where was it listed?

A Under spouse's.

Q You think it's --

A Yeah. I thought it was -- that could be under --

Q So you think it's listed as one of your husband's debts?

A It could be, yeah.

Q So you think that money that you transfer to the business each month is a debt owed by your husband?

A Owed by my husband?

Q Well, let me ask you this: When you say -- when you use the term "spouse's debts," that refers to your husband, correct?

A Okay. I know what you mean.

Q How can it be a debt of your husband's?

A Yeah.

Q It's not -- that's not it.

A No. I probably understood it that it's my, probably. I'm not going to guess. I don't know.

Q It's just not in here. Since it's not listed as a spouse debt and it's not listed anywhere else, then it's just not listed, right?

A I don't know. I don't know.

Q You would agree that it's not listed on this page, Schedule J?

A I'd have to review it and I can't tell you that right now.

Q I'll let you review it.

A Tell me what is the point of

what you are telling that to me.

Q Well, when you file a bankruptcy case you've got to list all expenses that you pay and your husband pays.

A Right.

Q I asked you about your expenses earlier and you didn't tell me that you were paying any money into the business, and I'm just curious why it is that you didn't list it.

A I don't know why I did not list it, but it is an expense that I pay.

Q And it came out to roughly for this particular month of September you said 1,600, 1,000, 1,000, all these are payments into the business?

A I can tell exactly when I see the check but --

Q Which ones were payments?

A This is business, right? You understood that it is business, right?

Q You told me that you were

transferring money into the weight loss business.

A Yes. Because the Camden and Whitney are both business.

Q Business checking accounts?

A Checking accounts.

Q I understand that. They are the accounts that you deposit money that you earn into?

A Right.

Q And that you pay your bills or any expenses from?

A Yeah.

Q And you told me that --

A And it could be that I have transferred this money to Whitney too, but as I said, I can look back and then I can fax it to Mr. Richard. It may not be for the weight loss, it could be from the Whitney Bank.

Q You just told me a minute ago that these went to the weight loss business.

A That's what I said. I'm just going to guess because I usually do that sometimes. I transferred from Camden because the money that my husband gave is already there and I may have to use it for Whitney.

Q Why would you transfer from Camden to Whitney?

A Because my husband's money is in there.

Q In where?

A In Camden.

Q Your husband also has a bank account with Camden?

A No.

Q I'm just not following you.

A Okay. See, for example, I was telling you that the money that he gave me for the expenses is 2,200. So that's what I said, that when I have to put it in Camden Bank and I may need some money to use for Whitney Bank, then I transfer it from there. But I can tell you which one

Page 83

is this one as soon as I get the copy of my checks.

Q You don't have them with you?

A No.

Q What I'm getting at is that you show that you've got that much, $1,890, left over every month after you pay all these expenses. But you just told me that you transferred two or three thousand dollars each month to the weight loss business. How can you do that if you've only got that left over after paying these expenses unless these expenses aren't accurate?

A I don't know. I don't really know.

Q Exhibit Number 2, these are copies of the registration for your two vehicles; is that correct?

A Yes.

Q And they're in your husband's name?

A Yes.

Q How long has it been since there was a car registered in your name, if ever?

A I have not owned a car in a long time.

Q How long has it been?

A Since we moved to Alabama.

Q How long ago was that?

A 14 years ago.

Q Ever since then you've purchased all your cars under your husband's name?

A Yes.

Q Is there any reason for that?

A I don't drive cars.

Q I think I asked you before, you said you did drive the cars on occasion?

A Yeah, to work.

Q Well, your house, did you guys purchase that, you and your husband purchase that in both of your names?

A Yes.

Q But you didn't purchase any

cars in your name?

A No.

Q I'm just trying to understand why you wouldn't purchase a car in your name.

A He just wanted it in his name because he pays for it and he borrows it and he pays for it.

Q This is Exhibit 3. Looks like it's just a 2003 year-end report for your MBNA card. Did you get one of these -- this is a summary for all the credit card charges. Did you get one for '06?

A No.

Q Do you know why not?

A I didn't realize that you have to call the credit company so they can give you this one.

Q They don't just send this to you in the mail, you have to request it?

A No. You have to request it.

Q So you requested this one back in '03?

Page 86

A Right.

Q In Exhibit 4 you've produced some MBNA records for October, September, August, July '06. From just briefly reviewing them it looks like there weren't any purchases being made on these cards. There were some late fees and you were making payments; is that correct?

A Yes.

Q And these are your husband's?

A Yes.

Q You're familiar with these?

A Yes.

Q But you don't know how much money you pay for mortgage on the condo in Atlanta but you're familiar with the credit card records?

A No.

Q If you're not using your charge card to buy things, how have you been purchasing things?

A My husband.

Q What does he purchase -- well,

this is his credit card records, correct?

A He's got a personal credit card.

Q So this is not the one that he's been using to purchase things with?

A No.

Q Do you have copies of the account that he's been using to purchase things with?

A No.

Q Why did you bring this today? This is the same thing I just asked you about.

A You requested it.

Q Actually, I requested an account showing any charges that he had made during this period, and what you told me is that he had not made any charges on this account but he had made charges on another account and you didn't bring those records.

A He made charges.

Q What I asked for was a copy of

Page 88

any credit card statement in your husband's name showing the charges that he made around the time that you filed your bankruptcy case. And what you brought was a copy of the account that he didn't make any charges on and you left or didn't bring the copy of the account where he did make the charges.

A I do not have a copy.

Q I'm asking you why would you bring this one instead of the one that he made charges on?

A Because this is the one that I am using.

Q You use this one?

A Right.

Q This is the one where you have access to charge on?

A Yes.

Q Exhibit 6, it's called -- you've got handwritten at the top "Charitable Contributions." Does that say "Edgar" and that say "Deloris?"

A Yes.
Q So these are his charitable contributions and these are yours?
A Yes.
Q So during November 2006, he made charitable contributions of $6,390?
A This is for one year.
Q That's a year's worth?
A Right.
Q Okay. I just see these dates out by the side and they all say November '06. Is there any reason why they all say November '06?
A We just made a summary.
Q So you say that this is for one year?
A One year.
Q And this down here that says $4,557, that's --
A One year.
Q One year for you?
A Yes.
Q Are these all religious

organizations?

A Religious and -- mostly religious, yeah.

Q Mostly religious, almost all religious?

A Yes.

MR. HIGHTOWER: Richard, I asked Tina to come because she was interested in this stuff today. I don't know if you want -- if she has any questions, if you don't mind, I don't know if she has any or not, but do you mind her asking questions?

MR. SHINBAUM: She has every right to.

EXAMINATION BY MS. HAYES:

Q I just would like to ask some follow-up questions for some testimony that you gave at the 341 hearing a couple of weeks ago. You testified at that time that you were going back and forth to Atlanta to stay in the townhouse every other weekend and that you were paying

rent to stay there. Is that not the case?

A That was a long time ago. That was not during this time.

Q When's the last time you paid rent?

A I quit in 2000 -- early part of -- hang on a minute. I did not do any business in 2006.

Q None whatsoever. So when you go over there every weekend now do you run your clinic on the weekends?

A Not anymore.

Q Is the clinic closed?

A It's closed.

Q I think that's all I have.

END OF DEPOSITION

Page 92

C E R T I F I C A T E

STATE OF ALABAMA

JEFFERSON COUNTY

I hereby certify that the proceedings in the herein matter were taken at the time and place therein stated; that the proceedings were reported by me, a professional court reporter and disinterested person, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete, and true record of said testimony.

I further certify that I am not of counsel or attorney for either or any of the parties in the foregoing proceedings and caption named, or in any way interested in the outcome of the cause named in said caption.

______________________________

Karen Hinch, Commissioner

A

**Academy** 75:12
**acceptable** 72:12
**access** 51:13,14 54:3 88:18
**account** 18:9,10 18:13 22:23 23:11,14 24:5 25:7 52:18 53:9 53:16 54:9,11 55:18,18 56:2 69:18 82:14 87:8,16,19,20 88:5,7
**accounts** 15:15 16:6,12 17:23 18:1 25:6 32:13 54:3,4 81:5,6,8
**accurate** 57:11 57:23 58:18 83:14
**acting** 6:3
**actual** 34:4,6
**add** 21:7,12 43:8 66:9
**addition** 9:8
**additional** 18:17 72:2
**Administration** 3:20
**administrator** 56:7
**admitting** 12:5
**affirmative** 7:23
**age** 61:10,10,17 61:18
**ages** 37:21 44:3
**ago** 9:5 77:21 81:21 84:8,9 90:20 91:2
**agree** 58:3,4 79:18
**AGREED** 1:10 2:2,9,18
**agreement** 33:21 35:15 38:20
**Alabama** 1:2,18 3:8,16,22 6:2,3 6:5,10 30:4 76:17 84:7 92:2
**allows** 7:4
**amend** 54:13
**amended** 52:4
**amendment** 52:5
**America** 51:2,19 52:2
**amount** 30:21 32:11 33:10,23 34:5,9 35:20 36:16 52:12 58:21
**amounts** 34:23 66:8
**analysis** 18:22 21:10
**analyzed** 39:20
**answer** 7:17 12:3 12:4 72:21
**anymore** 54:15 91:12
**apologize** 29:19
**apparently** 25:3
**applicable** 18:6
**appraisal** 31:1
**appraiser** 31:5,23
**appreciate** 10:4 74:4
**approximately** 1:20 12:6 36:5 55:20
**area** 37:10
**ascertaining** 31:4
**asked** 8:7 25:1 32:14 55:14,17 56:7,10 74:14 80:7 84:16 87:12,23 90:8
**asking** 19:8 29:20 58:12 67:16 71:23 88:10 90:13
**asks** 41:6
**assessed** 30:12,18 31:2
**asset** 41:12,14,21
**assign** 2:13
**assume** 25:10 30:13 31:8 56:10 60:10
**Atlanta** 45:4,21 46:3 47:22 48:19 86:16 90:22
**attached** 8:5
**attorney** 3:5,12 28:22 72:11 92:15
**attorney/client** 72:13
**August** 10:14 15:15 16:7 18:2 19:3,15,23 22:1 22:10 23:1,12 23:15 24:7,12 25:9 72:5 73:11 86:4
**auto** 61:1,5,14
**automobile** 25:14 26:5
**automobiles** 26:11
**aware** 8:11 27:8
**a.m** 1:20 6:11

B

**B** 4:9
**back** 29:4 31:23 74:6 81:17 85:22 90:21
**bank** 8:22 10:15 10:16 22:23 33:16,17 40:12 40:18 42:13 56:23 68:5,6 69:18 73:18 81:20 82:13,21 82:22
**bankruptcy** 1:1 3:19 7:3 14:9 29:2,7,11,13 30:6 36:3,18 41:3,11 42:16 44:23 52:4,6 54:14 56:7 63:12,20,21 64:22 65:2 67:17 77:2,6 78:7 80:3 88:4
**banks** 17:22 23:16
**basically** 7:5
**basis** 12:12 55:15 56:5
**baths** 37:7,8
**bedrooms** 37:7
**believe** 18:4,21 25:17 31:5 34:12 39:14,20 58:19,22 59:3
**belongs** 42:8
**big** 69:7
**bill** 56:15 75:7
**bills** 81:11
**binder** 71:20
**Birmingham** 3:16 6:2
**bit** 29:5 66:4
**Blue** 21:21
**booklets** 25:15
**borrows** 85:7
**bottom** 35:17
**bought** 49:13
**Brad** 6:21
**Bradley** 3:11
**Brandon's** 45:19
**Brantley** 8:23 9:22,23 33:17
**break** 68:1
**brief** 71:21
**briefly** 86:4
**bring** 8:6,8,12,19 22:17 23:6 68:16 87:11,20 88:7,11
**brings** 65:12
**brought** 13:17 15:2 22:22 23:2 23:13 60:17 67:20 88:4
**budget** 20:14,17
**bunch** 22:4
**business** 12:22 15:5,8,18 18:5 18:12,14 19:2 19:22 22:11,12 28:3,14 39:8,9 39:10,11,11,15 39:19 49:9,12 49:17,22 50:1,6 50:7,12,13,15 50:16,20,23 51:4 54:9 55:10 57:1,22 58:7 63:5 64:11 69:6 69:13,22 70:2 70:17 71:2,4,8 71:12,14,17 73:21,22 74:1 76:20 78:2,21 80:9,17,21,22 81:2,4,5,23 83:11 91:8
**businesses** 57:10
**Butler** 10:15,16 23:4,11 75:16
**buy** 24:16 32:7 32:14 48:7,13 48:18 71:18 86:20

C

**C** 3:1 92:1,1
**call** 85:17
**called** 7:1,1 88:20
**Camden** 9:22,22 23:5 49:8,17 50:4,11 68:5 81:3 82:3,8,12 82:14,21
**caption** 92:17,19
**car** 11:11,14,15 12:18 42:2 61:18,22,23 62:1,3 66:22 84:2,4 85:4
**card** 13:13,14,17 13:19 15:6 24:5 24:12,22 25:2,7 51:3,13,15,22 53:1,2 70:11,13

29:5 34:18 55:9
55:17 67:19
**doing** 15:13
39:11,18 71:15
**dollars** 60:22
66:2 75:19
83:10
**door** 11:15,16
**Dr** 6:21 10:1 13:9
14:8 31:22 35:3
68:3
**drive** 30:3 61:17
84:15,17
**driven** 61:6
**due** 36:21
**duly** 6:17

**E**

**E** 3:1,1 4:1,9 92:1
92:1
**earlier** 45:17 49:6
61:12 74:14,18
80:8
**early** 91:6
**earn** 63:7 81:9
**earrings** 43:16,21
**Edgar** 55:19 74:1
88:23
**effect** 2:5
**eight** 51:19
**either** 14:16
92:15
**employment** 17:2
**entered** 33:2
**Especially** 27:1
**estate** 33:9
**evidence** 2:16
**exact** 31:1 32:15
**exactly** 66:16
67:3 80:18
**examination** 4:4
6:13,20 7:2,4
90:16
**examined** 6:17
**example** 48:17
82:17
**exclusively** 67:14
**Excuse** 63:18

**Exhibit** 4:11,12
4:13,14,15,16
4:17,18,19,20
4:21,22,23 5:1,2
5:3,4 10:18,19
11:6 13:2,9,18
14:19 16:14,19
17:4,13 20:4
22:6,15 28:19
29:8 32:20
33:13,19 35:5
35:16 36:22
38:15,17 41:4
52:8 68:4 83:17
85:9 86:2 88:20
**exist** 56:21
**expected** 37:2
**expenditures**
77:7
**expense** 77:2,21
78:3 80:13
**expenses** 18:2
19:20,22 53:7
65:1,14,16,23
66:12,20 69:23
70:3 74:15,23
78:9 80:4,7
81:12 82:19
83:8,13,13
**explained** 41:9
55:4
**explanation**
68:13
**e-mail** 29:1

**F**

**F** 50:3 92:1
**fair** 32:9
**familiar** 36:1
86:12,16
**family** 47:10
**far** 45:17
**fax** 11:1 81:18
**February** 1:19
6:11
**federal** 27:13
**fees** 74:21 86:7
**fifteen** 66:10

**fifth** 50:19
**figure** 32:16 59:3
**file** 13:23 27:17
78:7 80:2
**filed** 8:2 14:8
27:18 28:1
29:13 30:6
36:17 44:22
52:5 63:12,20
63:21 64:3,22
65:2 88:3
**filing** 2:18
**finances** 67:7
**find** 11:9 32:17
48:3
**fine** 10:11 15:14
20:12
**finished** 17:16
**first** 6:17 50:3
53:10 61:13
67:21 76:4
**five** 68:9,10
**flip** 29:22 36:10
49:19,20 59:7
60:16 74:7 76:3
**following** 6:14
58:1 78:5 82:16
**follows** 6:18
**follow-up** 90:18
**footage** 37:6
**force** 2:5
**foregoing** 6:7
92:11,16
**form** 2:11 72:16
**forth** 90:21
**found** 48:4
**four** 37:8,15,20
42:15 43:15,15
**fourth** 50:14
**Ft** 75:12
**full** 2:5 92:11
**furniture** 42:23
**further** 2:1,8,17
92:14

**G**

**getting** 83:5
**Gill** 1:17 3:6 6:9

**give** 7:22 9:15
44:17 48:17
64:2 73:11
85:18
**given** 38:23 43:18
44:20
**gives** 69:5,9,19,21
**go** 10:4,12 19:8
22:20 46:16,18
47:5 48:18
61:17 63:7,17
91:10
**goes** 18:18 19:12
21:15 67:1
**going** 28:17 29:5
31:12 33:18
48:18,21 55:7
72:3 79:11 82:2
90:21
**goods** 42:17
**gotten** 45:21
**granddaughter**
37:18
**granddaughter's**
74:10
**Greenville** 30:4
50:22
**gross** 59:9 63:11
64:4 69:14
**grounds** 2:14
**GTI** 62:9
**guess** 12:3,12
64:12 66:17
79:12 82:2
**guessing** 12:1
77:12
**guys** 55:12 66:18
84:19

**H**

**H** 4:9
**half** 37:1
**handed** 19:17
**handwritten**
88:21
**hang** 91:7
**Hayes** 3:18 4:6
31:17 90:16

**head** 7:18,22
24:20 46:10
**health** 66:7 76:16
**Healthcare** 50:20
**hearing** 90:19
**Heights** 30:3
**held** 25:13
**help** 7:16 29:14
64:18 69:22
**helps** 70:1
**High** 75:13
**Hightower** 3:11
4:5 6:20,22 9:7
9:10,15 10:11
10:17 14:2,12
14:14,17 15:6
15:10,14,19
17:11 18:8 20:2
20:12,23 21:3
21:11 22:13
23:20 27:1 28:7
28:10,13,17
31:8 32:3,10,18
33:5 34:10,20
35:1 38:22
45:16 52:15
55:11,15,23
56:4,9 67:23
72:15,23 90:7
**Hinch** 1:15 6:1
92:22
**hold** 32:15
**home** 25:22 27:2
31:4 33:21 37:5
45:14 49:5,13
59:3 64:21
65:12
**homeowners**
26:20 27:4,5,10
**hospital** 50:22
59:2
**house** 30:7,13,16
30:20 32:1,13
32:22 37:14
38:7,11,13
42:23 48:18
57:4 62:22
84:19

22:6,15 28:19
29:8 32:20
33:13,19 35:15
38:15 52:8 68:4
**married** 48:19
**MasterCard** 13:5
**math** 36:20
**matter** 92:5
**MBNA** 21:6,8
51:2,19 52:2
54:1,2,7,11
85:11 86:3
**MBNAs** 53:15
**McPhilips** 1:17
3:6 6:8
**mean** 12:19 59:23
61:11 72:5 79:5
**meaning** 35:23
57:19
**means** 36:23
**med** 47:12
**Medicaid** 21:22
**medical** 63:9
65:23 76:16
**Medicare** 21:21
**medications**
71:19
**mention** 74:15,20
**mentioned** 53:6
75:22
**Mercedes** 11:3,8
11:10 62:16
**met** 6:22
**method** 31:3
**MIDDLE** 1:2
**mind** 10:3 71:21
73:4,8 90:11,12
**mine** 27:20 42:11
60:13
**minute** 77:21
81:21 91:7
**missing** 9:19
**moment** 9:16
67:18
**money** 42:5 58:13
58:15,16 63:3,6
63:17 64:2,10
64:15,16,19

66:23 69:6,9,10
69:19,21 71:7
71:10,11,15,16
74:3 76:6,8,11
76:21,22 77:1
78:1,20 80:9
81:1,8,16 82:4,9
82:18,21 86:15
**Montgomery**
1:18 3:8,22
6:10
**month** 35:6,23
36:5,8,18 38:12
46:7,12 59:10
59:11 60:18,22
61:3 63:13
64:14,21 65:5,6
65:9,15 66:13
74:19 75:4
76:12 78:2,21
80:15 83:7,10
**monthly** 75:7
**months** 23:15
24:7 25:4 35:7
**mortgage** 32:22
33:2,9,10,15,23
34:4,7,11,15
35:4,6,12 36:4
36:18,23 38:8
38:11 45:10
49:5 57:9,14,20
58:3,13,16 59:4
64:15,18 66:22
86:15
**motion** 7:1 8:1
**moved** 84:7
**multiplying** 36:7

**N**

**N** 1:8 3:1 4:1
**name** 6:21 39:12
42:12 52:19
71:6 76:14
83:22 84:2,12
85:1,5,6 88:2
**named** 92:17,19
**names** 19:13
84:21

**National** 49:8,17
50:5,12 68:5
**nature** 56:14
**necessary** 2:9
74:22 75:1
**necklaces** 43:15
43:22
**need** 25:19 45:22
70:21 82:21
**needed** 24:16
25:4 68:17
**needs** 9:2 19:7
**net** 64:20
**new** 35:17
**newspaper** 12:11
**nine** 52:2
**nineteen** 40:13
**Nissan** 61:19,20
**nod** 7:18
**nodding** 24:20
**nondischargea...**
56:19
**North** 3:14
**Notary** 1:15 6:2
**notation** 52:11
55:20 56:14,19
**note** 30:17
**noted** 53:18
**notes** 43:12
**notice** 2:18
**notified** 8:14
**November** 19:3
20:7,15 89:5,12
89:13
**November/Dec...**
20:17
**number** 1:5 7:2
11:5 28:18
33:19 36:6,13
36:22 38:12
40:2 41:4,5
42:15,19 51:2
51:19 52:2
57:17 61:19
77:17 83:17
**number's** 58:8

**O**

**O** 1:8
**oath** 7:5
**objections** 2:10
2:13
**obligated** 53:9
54:10 55:8 56:2
**obligation** 51:12
**occasion** 84:17
**October** 14:10,13
21:9,13 22:2
86:3
**offer** 31:13 32:9
**offered** 2:15
**office** 1:16 16:12
70:2 71:19 76:1
**okay** 7:10 10:21
11:22 66:8 70:5
79:5 82:17
89:10
**old** 11:17,18 38:3
**older** 37:23
**once** 71:16
**ones** 69:7 80:20
**one's** 65:21 66:1
**operate** 66:18
**opinion** 30:14
31:6
**opposed** 12:19
**oral** 6:13
**order** 9:13
**organizations**
90:1
**organized** 72:17
73:6
**original** 33:23
35:5 52:17
**originally** 58:6
**outcome** 92:18
**outside** 27:2
**owe** 49:16 51:12
51:23 52:23
53:4 54:4,15
57:8,10,20,22
58:2,5,13,15,15
58:17
**owed** 31:11 57:3
57:6 78:22,23
**owes** 56:17

**owing** 59:1,6
**owned** 41:12,18
84:4
**owns** 10:23 40:6
41:17 45:4

**P**

**P** 1:8 3:1,1
**page** 33:22 35:16
39:22,23 49:19
63:19 68:7,7,8,9
74:7 75:18 76:3
79:19
**pages** 29:22 50:3
**paid** 16:11 36:23
37:2 48:16 62:4
62:11,13,14,17
63:15,22 67:11
69:16,17 74:15
74:19,20 91:4
**part** 19:16 67:9
91:6
**participated** 7:7
**particular** 80:15
**parties** 1:11 2:13
92:16
**patients** 16:13
**pay** 24:15 32:6
36:7 46:7,8,9
48:21 52:13,16
52:19 53:7,19
54:10 55:21
56:18 61:14
62:2,3,21 63:4,7
63:8,23 64:7,16
64:18 65:5,15
65:19,19,22,23
66:3,6,20 69:22
70:12 71:18
75:4 80:4,13
81:11 83:7
86:15
**payable** 35:22
**paying** 35:11
36:17 62:12
66:11 80:9
83:12 90:23
**payment** 25:15

**school** 47:13
  75:11,13,14,15
**second** 9:5 44:5
  49:8 50:8
**section** 8:8 70:6
**secured** 49:4
**see** 9:2 21:6 34:13
  41:5,5,7 52:6,15
  68:18,21 71:20
  72:16 73:1,7,13
  74:8 75:19
  77:17 80:18
  82:17 89:10
**seen** 8:3,9 31:17
  67:21
**self** 17:2
**sell** 31:13
**semi-monthly**
  35:23
**send** 85:19
**sent** 31:5 64:14
**SEP** 16:23
**September** 10:15
  14:9 15:16 16:7
  18:3 19:2,15,23
  22:2 23:1,12,16
  24:8,13 25:10
  29:14 68:22
  70:9,14 80:15
  86:3
**serves** 40:22
**services** 50:17
  76:17
**serving** 42:1,3
**sets** 42:20,21,21
**seven** 37:1 40:13
  51:2
**shake** 7:21
**shakes** 46:10
**shame** 12:4
**Shibaum** 20:19
**Shinbaum** 1:17
  3:4,6 6:8 8:18
  9:2,9,12,18 10:7
  11:21 12:2
  13:22 14:5,10
  14:13,15,21
  15:4,8,12,17,21

16:2 17:9,15
  18:4,19 19:6,11
  20:6,16,20 21:2
  21:5,12 22:3
  23:4,8,18,22
  24:3,9 25:5,11
  25:18 26:2,7,12
  26:19 27:3,15
  27:21 28:5,8,12
  28:15 30:22
  31:12,19 32:5
  32:12 33:7 34:2
  34:12,21 36:11
  38:19 39:14
  45:19 51:6
  52:10,21 55:13
  55:16 56:3,6,13
  58:19 59:22
  72:9 75:15
  90:14
**Short** 68:2
**show** 33:18 54:14
  65:1,14 77:5
  83:6
**showed** 9:5 55:18
  64:20
**showing** 25:13
  27:16,23 87:16
  88:2
**shows** 31:3 33:22
  34:4,4,7 35:5
**side** 89:11
**sign** 42:5,14
  54:17
**signature** 2:2
**signed** 54:20,22
**sit** 66:15
**six** 40:13
**sixteen** 66:10
**small** 3:13 11:13
**smaller** 37:11
  38:6,7,11
**sold** 31:9
**solely** 69:19
**son** 37:17 38:3
  51:17,21
**sons** 44:11
**soon** 83:1

**sorry** 13:15 70:20
**sound** 35:8 57:11
  57:23 58:18
**South** 1:17 3:7
  6:9
**speaks** 34:15
**spend** 69:11
**sports** 11:14,15
  61:22
**spouse** 79:14
**spouse's** 77:10,11
  78:13 79:3
**square** 37:6
**stack** 10:1,12
  15:1 19:9 21:14
  26:8,13
**State** 1:16 6:3,6
  92:2
**stated** 92:7
**statement** 10:14
  10:16 13:13,14
  13:17,19 21:6
  22:23 23:12,14
  24:6 25:8 58:20
  68:5 88:1
**statements** 8:22
  9:21 14:22
  18:22 23:9 25:3
**States** 1:1 3:19
**stay** 90:22 91:1
**stipulate** 56:1
**STIPULATED**
  1:10 2:1,8,17
**stipulations** 6:7
**stop** 47:16
**Street** 1:18 3:7,14
  3:21 6:9
**stuff** 9:11 48:23
  72:3,14 73:3
  90:9
**submit** 31:1 33:8
**submitted** 10:10
  55:17
**submitting** 20:9
**substantially**
  31:10
**subtract** 58:14
**subtracted** 57:6

57:17
**suit** 56:15
**Suite** 3:15
**summary** 13:4
  14:22 16:8,10
  17:21 23:7
  85:12 89:14
**supplies** 71:18,19
**supposed** 72:8
**sure** 20:18 21:11
  45:3 70:16,22
  73:4 77:14,15
**sworn** 6:17

**T**
**T** 1:8,8 4:9 92:1,1
**take** 7:4,12,19
  21:18 24:4,18
  40:12 58:12
  64:21 67:18
  68:1 71:21 72:4
  72:7 73:1
**taken** 1:15 31:9
  40:11 92:6
**talked** 6:22 43:17
  45:2,17 46:1
  47:8 59:8 74:18
**talking** 31:14
  36:11 77:6
**tax** 27:13,14 28:3
  28:4,10,14
  30:12,18 31:2
  49:20
**taxes** 22:8 49:22
  49:23 52:14,16
  52:20 55:21
  56:18 58:6 65:5
  65:9,10
**telephone** 50:17
  63:8
**tell** 10:13 16:5
  19:10 21:14
  22:22 43:19
  60:1,5,14 61:18
  66:16 67:2
  72:11 75:2,17
  79:21,23 80:8
  80:18 82:23

**telling** 12:22
  16:11 80:1
  82:18
**ten** 35:7 56:22
  77:17
**term** 79:2
**terminating** 17:8
**terms** 56:15
**testified** 6:18
  90:20
**testimony** 90:18
  92:13
**Thank** 74:4
**thereto** 2:16
**thing** 7:5 9:9 10:7
  14:11 18:16
  45:17 51:20
  87:12
**things** 12:17
  22:21 48:22
  56:20 63:15
  68:19 86:20,21
  87:5,9
**think** 12:9 14:15
  15:12 17:1,15
  19:19 20:6,14
  20:23 23:1,2
  24:1,9 30:7
  32:14 38:20
  41:14 42:22
  44:13 46:22
  48:4,19 51:9
  52:23 56:11
  63:18 75:1
  78:14,17,20
  84:16 91:15
**third** 33:22 44:5
  50:11
**thought** 30:20
  31:10 39:18
  46:2 53:14
  70:20 74:22
  78:10,15
**thousand** 60:22
  75:19 76:13
  83:9
**three** 11:18 25:18
  35:16 37:8

**$24,000** 58:11
**$290,000** 57:15
 58:2
**$3,378** 51:20 54:2
**$347,577.39** 34:1
**$373,800** 30:11
 30:17
**$4,000** 36:5
**$4,557** 89:19
**$431,062.70**
 33:12 34:7
**$5,000** 43:4
**$5,483** 56:23
**$6,390** 89:6
**$60,000** 58:5
**$65,000** 52:3,7
 54:7 58:9
**$7,000** 42:18,23
**$7,113.26** 57:7
**$75,000** 55:20
**$83,000** 58:6
**$9,663** 51:3,11
 54:1

**0**

**03** 14:22 85:23
**05** 14:6,16 28:11
 28:12
**06** 14:1,7,9,14,15
 14:16,17,22
 23:1,12,16 24:8
 28:12 85:13
 86:4 89:12,13
**06-31225WRS-7**
 1:6

**1**

**1** 4:11 10:18,19
 14:1 68:4
**1,000** 75:23 80:16
 80:16
**1,300** 69:3
**1,500** 75:23
**1,600** 80:16
**1,800** 75:22
**10** 4:11,20 22:6
**10,000** 60:14
 65:17
**11** 4:12,21 22:14

 22:15 70:14
**12** 4:22 28:18,19
 75:16
**120** 35:7
**13** 4:13,23 29:8
 33:10 41:4
**14** 4:14 5:1 32:19
 32:20 33:19
 35:16 36:22
 84:9
**15** 5:2 33:13 35:5
**15,000** 63:11
**16** 4:15,16 5:3
 38:15,17 40:14
**17** 4:17,18 5:4
 52:8
**176** 35:19 36:21
**18** 37:23
**1800** 3:15
**19922** 40:2
**1998** 33:10

**2**

**2** 4:12 11:5,6
 83:17
**2,200** 82:19
**20** 4:19 12:20
**20th** 3:14
**200** 66:6
**2000** 62:9 91:6
**2002** 46:22,22
**2003** 13:5,7,10,12
 13:16 14:3
 85:10
**2004** 7:1
**2005** 27:14
**2006** 14:3 15:16
 19:23 21:6
 22:10 24:13
 25:10 29:14
 47:17 89:5 91:8
**2007** 1:19 6:11
**22** 4:20,21
**225** 30:3
**25** 29:14
**255** 75:6
**28** 4:22
**282,000** 59:4

**29** 4:23

**3**

**3** 4:13 13:2,9,18
 85:9
**3,000** 44:16
**3,100** 37:6
**3,500** 40:11
**30** 6:5 37:22 38:5
 44:8,9 61:12
**300** 65:22
**31** 37:22 44:8,9
 61:12 62:16
**31-year-old**
 62:15
**32** 5:1
**33** 5:2
**341** 90:19
**35** 61:10
**35203** 3:16
**36104** 3:22
**37** 37:22 61:11,12
 62:9
**37-year-old** 62:8
**38** 5:3
**39** 37:22 61:10,11

**4**

**4** 4:14 14:18,19
 86:2

**5**

**5** 4:15 16:14
**5th** 70:9
**5,257** 35:6
**50** 12:20
**505** 3:14
**52** 5:4
**55,000** 32:15
**566** 1:17 3:7 6:9

**6**

**6** 4:5,16 16:19
 88:20
**65** 54:11
**65,000** 55:2 56:5
**697** 40:13

**7**

**7** 4:17 17:4
**7,000** 57:19
**70,000** 51:7

**8**

**8** 4:18 17:12,13

**9**

**9** 4:19 20:3,4
**9th** 1:19 6:10
**9:00** 1:20 6:11
**90** 4:6 12:6,10,13
**90,000** 11:20

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

---

| In the matter of: | ) |
|---|---|
| | ) |
| Deloris V. Victoria, | ) Case No. 06-31225 |
| | ) Montgomery, AL |
| Debtor. | ) April 24, 2007, 10:11 a.m. |

---

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE WILLIAM R. SAWYER
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor:

Richard D. Shinbaum
Shinbaum, Abell, McLeod & Vann
P.O. Box 201
Montgomery, AL 36101

For Greenville Memorial Hospital:

Bradley R. Hightower
Christian & Small, LLP
505 North 20th Street, Suite 1800
Birmingham, AL 35203

---

Electronic Recorder Operator: Linda Bodden

Transcriber: Patricia Basham
6411 Quail Ridge Drive
Bartlett, TN 38135
901-372-0613

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

COURTROOM DEPUTY: Case number 06-31225, Deloris V. Victoria.

MR. HIGHTOWER: Good morning, Judge.

MR. SHINBAUM: Good morning, Your Honor.

THE COURT: Good morning.

MR. SHINBAUM: Richard Shinbaum for Dr. Victoria.

THE COURT: All right.

MR. HIGHTOWER: Brad Hightower for Greenville Hospital.

THE COURT: Okay.

MR. HIGHTOWER: Are you ready?

THE COURT: Yes, sir.

MR. HIGHTOWER: This is our motion to compel or alternatively to dismiss the debtor's case. As of today, the debtor has substantially complied with our request for documents. There is, I believe, just one more document that the debtor's attorney is going to e-mail to me this afternoon.

THE COURT: Okay.

MR. HIGHTOWER: And there were an additional five documents that were requested today, which I have, that I am going to e-mail this afternoon.

THE COURT: Okay. All right. So do you want to continue your motion or is it okay to overrule it -

MR. HIGHTOWER: Your Honor, you can deny it if you would just consider it along with the motion to dismiss that has now been filed when the court does determine a decision on

that motion.

THE COURT: Okay. Wait a minute.

MR. SHINBAUM: There was a motion to dismiss filed on other grounds late last week that I haven't had a chance to respond to yet.

THE COURT: Okay. On April 20, you filed a motion to dismiss?

MR. HIGHTOWER: That's correct, Your Honor. It is a separate motion.

THE COURT: Okay. And that has not been –

MR. HIGHTOWER: It is based on different grounds but I would just ask the court to consider along with that motion all of the allegations that are in the motion to compel also, just regarding how long it took for the debtor to provide these documents that I think should have been provided in a much shorter period of time without nearly as much effort.

THE COURT: All right. Well, do you want to go ahead and – I guess we are – are we going to need an evidentiary hearing for this, aren't we?

MR. SHINBAUM: We would, Your Honor.

MR. HIGHTOWER: Yes, Your Honor.

THE COURT: Okay. When do you want to do it? I take it pretty much the documents have been produced. There is not going to be any other discovery; is that correct?

MR. SHINBAUM: That's correct. In the motion to

produce – in the motion to dismiss, there is a document that I will have to conduct some discovery of hospital officials on. It raises an issue on –

THE COURT: Wait a minute, wait a minute. We have got a motion to dismiss a bankruptcy case for substantial abuse. Now what are these hospital officials going to have to do with that?

MR. SHINBAUM: Part of it is a discovery of assets by the hospital and a lease agreement that was entered in June of last year. I would like to go into some of these aspects as to what took place in those negotiations, what was revealed in assets, and show what the true asset picture of the debtor is or was at that time.

THE COURT: Well, wait a minute, wait a minute. You want to take a deposition of a hospital official to determine your own client's asset situation?

MR. SHINBAUM: No. They are saying her assets are one thing, which we disagree with.

THE COURT: Okay.

MR. SHINBAUM: Okay. I want to go into the good faith and frivolity of this motion that is now filed and the true knowledge of the hospital as to the accurate facts while they were having arms-length negotiations some two months before the bankruptcy was filed.

MR. HIGHTOWER: Your Honor, I don't have any idea how

that can impact what the debtor's financial condition was on the date that she filed her bankruptcy case. She has got schedules. She has produced documents. Our motion to dismiss is entirely based on the documents that were produced, and her schedules and the testimony that she gave in her 2004 examination.

THE COURT: okay. Well, I guess I will start with Mr. Hightower. What is your best estimate as to how much time we will need to do this?

MR. HIGHTOWER: I don't need any witnesses. I just am relying at this point purely based on what she has produced so far and the testimony that she has already given.

THE COURT: Okay.

MR. SHINBAUM: And I feel sure that I can get with Mr. Hightower and arrange for what I am going to need within the next ten days. I can get with him and schedule that.

THE COURT: Okay. I guess what I am asking is sometimes we will do these at eleven o'clock on a Tuesday, if it is a one hour or less. If you think it is going to be longer than that, maybe we can give you, say, a 1:30 in the afternoon and you could take whatever time in the afternoon you need. I mean, I take it that it would certainly be no more than a half a day.

MR. SHINBAUM: Oh, yes, Your Honor. I wouldn't anticipate more than a half a day. If you could give us a 1:30

setting, it might be more appropriate.

THE COURT: Okay. Well, then, we will do that. All right. Well, we could do it – I guess we could do it as early as, what's next Tuesday? Is that the second?

COURTROOM DEPUTY: We don't have anything next Tuesday. It will be the eighth. But we have telephone hearings that day.

THE COURT: Okay. Well, we could do it as early as next Tuesday if you want, Tuesday, the – I mean, we are here in town. I mean, we are not –

MR. SHINBAUM: Judge, could I ask for maybe the first Tuesday in June? That would give me about three weeks to do my discovery.

THE COURT: No, no, no, we're not going to do discovery. We are going to get this thing – I don't think you are entitled to get any discovery. I mean, you are certainly free to make whatever argument if you think the motion is brought in bad faith. This case was filed in September and the motion is based on substantial abuse. We don't need to make huge federal cases of these 707(b) motions. Certainly your debtors know what their own assets, liabilities, income already is. So, no, I wasn't – I mean, I think it would be a bad idea.

You know, frankly a lot of debtors go into fishing expeditions. I mean, they are always going to say, you know, the creditor claims abuse, the debtor is going to say bad

faith. I mean, that is going to be the standard sort of thing but, I mean, it is really going to center on the debtor's condition and not really so much on the creditor's. I mean, either there is or there is not substantial abuse.

MR. SHINBAUM: Then if we could skip two weeks because I have a case that is on a call docket over in circuit court in Auburn on Monday and Tuesday. If it is, it is going to take two days. I don't know if it is going to go.

THE COURT: Okay.

MR. SHINBAUM: I mean, I hate to say it is going to go and then not go but it is on the call docket over there.

THE COURT: I understand. All right. Is the following Tuesday the eighth or ninth?

COURTROOM DEPUTY: It would be the eighth, but we have telephone hearings at 1:30 on May 8, pretrial.

THE COURT: The pretrial, and those are at 1:30. Okay. Why don't we just set it at two o'clock, then, on May 8, 2:00 p.m.

All right. We will see you then.

MR. HIGHTOWER: Thank you, Your Honor.

(Off the record at 10:19 p.m.)

C E R T I F I C A T E

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

/s/ Patricia Basham

Patricia Basham, Transcriber

Date: August 12, 2007

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

---

| | |
|---|---|
| In the matter of: | ) |
| | ) |
| Deloris V. Victoria, | ) Case No. 06-31225 |
| | ) Montgomery, AL |
| Debtor. | ) May 8, 2007, 2:07 p.m. |

---

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE WILLIAM R. SAWYER
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor:

Richard D. Shinbaum
Shinbaum, Abell, McLeod & Vann
P.O. Box 201
Montgomery, AL 36101

For Greenville Memorial Hospital:

Bradley R. Hightower
Christian & Small, LLP
505 North 20th Street, Suite 1800
Birmingham, AL 35203

---

Electronic Recorder Operator: Linda Bodden

Transcriber: Patricia Basham
6411 Quail Ridge Drive
Bartlett, TN 38135
901-372-0613

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

INDEX

| WITNESSES | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| Dan Hamm | 3 | 11 | -- | -- |

THE COURT: Please be seated.

All right. We have got one matter, 06-31225, Deloris Victoria. Mr. Shinbaum, you are representing the debtor; is that correct?

MR. SHINBAUM: Yes, sir.

THE COURT: And then are you Ms. Victoria?

MR. SHINBAUM: Yes, sir.

THE COURT: Will you please have a seat up at – and Mr. Hightower, this is your motion; is that correct, sir?

MR. HIGHTOWER: Yes, Your Honor.

THE COURT: All right. How do you want to proceed? Do you want to just start with the evidence? Did you want to open? What's your preference?

MR. HIGHTOWER: Your Honor, Mr. Shinbaum had asked me if he could call Mr. Hamm as a witness briefly out of order, so that Mr. Hamm could get back to his office. If that is what you would like to do, that's fine with me.

THE COURT: Oh, okay. Is that correct, Mr. Shinbaum?

MR. SHINBAUM: Yes, sir.

THE COURT: All right. Go ahead.

MR. SHINBAUM: Mr. Hamm.

(DAN HAMM, WITNESS, SWORN)

DIRECT EXAMINATION

BY MR. SHINBAUM:

Q. Mr. Hamm, would you state your name, please?

A. My name is Daniel Hamm, H-A, double M.

Q. And you are the trustee appointed by the court to handle the case of Deloris Victoria?

A. That is correct. I was the panel trustee assigned to this case.

Q. Now, Mr. Hamm, as trustee have you had the opportunity to conduct a thorough examination of Ms. Victoria's assets?

A. I guess thorough is somewhat a subjective term. We have done what we felt was appropriate in the circumstances. We have taken a number of photographs. I think they have been offered to both sides, been provided to Mr. Hightower. You may have seen them earlier. I am not sure, Mr. Shinbaum.

I talked to some real estate agents down in Greenville; reviewed the petition and conducted a rather lengthy, two, I believe, 341s, two or possibly three, 341 hearings.

Q. And did you send representatives to make an inspection of the home of Ms. Victoria?

A. I did, yes.

Q. Okay. And did you send representatives to make an inspection of the home of Ms. Victoria?

A. I did, yes.

Q. Okay. And did your representatives come up with a projected value of the home in Greenville?

A. Well, let me say that we spoke with a real estate agent - two real estate agents in Greenville, Alabama. Our real estate agent that we normally use operates primarily in the Montgomery area and, because she felt somewhat in foreign territory in the Greenville area, she requested that we contact local real estate agents. We did make contact with two local real estate agents in the area. But to answer your question, yes, we did make contact with real estate agents.

Q. Did you make a determination of what you felt was the appropriate value of the home?

A. As I recall the numbers and in reviewing the file before I came on my way over here, the tax assessor's value reflects a value of about three hundred and seventy-three thousand dollars. There is an outstanding first mortgage of approximately three hundred thousand. Our discussion with a real estate agent, two real estate agents in that area, suggested that the selling price of the home would be somewhat in the low, three hundred thousand dollar range.

Dr. Victoria's home, and we learned this on our inspection, it is a three-bedroom home. Most of the homes in that neighborhood are four and five bedrooms. It is a well-built home. There are just not a lot of people in the Greenville area that can afford a home in that range and so, consequently, there is a limited number of sellers there. And homes in that neighborhood had been on the market for quite a

period of time. That was also a comment made to us.

I believe there are some homes across the street or in very close proximity that do sell for higher amounts but this particular home, it is one of the smaller homes in the neighborhood.

We did not establish a value for the home but concluded with the high two hundred thousand dollar mortgage, first mortgage of two hundred and ninety or better, that selling costs and such as that, that we would not be able to sell it and garner much, if anything, from the sale of that home.

Q. So the house did not have near the some seventy thousand dollars equity that Ms. Victoria put in her schedules?

A. We didn't feel like we could realize it with a first mortgage sitting there if the first mortgage were to go unpaid, and I believe the home is jointly owned, bearing that in mind, with Dr. Victoria's husband and, if he were not a willing seller, then we would have to force the sale of the home, considering all those costs.

Q. Now did you send representatives in that looked at her furniture and the contents of the home?

A. Yes. What we did is there is a young man in the office that we use for various activity, and I think he went in and took a hundred and twenty something pictures inside the home, all of the rooms inside the home, the outside of the

home, and we don't do that in every case. Very few of the cases actually. It was just this particular case we felt there was a reason to do such. But he went in and took a good number of pictures and that was the photograph that I spoke of earlier that Mr. Hightower was provided those photos on a CD-ROM and, as I say, I don't recall whether you have looked at them or not, Mr. Shinbaum but, yes, we took photographs in there for the purpose of evaluating what we could yield out of a sale from the inside of the home, from the contents of the home, bearing in mind that property was also jointly owned.

Q. And did you find anything to lead you to believe that the assets inside the home were worth more than the seven thousand dollars that Ms. Victoria listed?

A. I believe – I am relying on what you are saying, seven thousand dollars, because I don't remember what it said. If that is what it said in the schedules, you know, replacement value, yes, they were in excess of that. Could we yield that after we hired an auctioneer and forced the sale of those items? I am not so certain that we could have done such. We would have probably ran into a fight on each and every piece of property in there as to whether we were allowed to sell it with it being jointly owned with a nondebtor. We felt that that was, you know, approximating what we could yield out of it.

There was also an offer in compromise in this case that we looked at very seriously.

Q. Now did you conduct an audit of Ms. Victoria's business records?

A. Well, not an audit. One of the items that we were principally interested in was the accounts receivable. We were provided a listing of those accounts receivable. It looked like about thirty pages printout of the outstanding accounts receivable. I am thinking this was a few days, maybe a printout two weeks after the filing, and this was primarily – well, this was all of the accounts receivable and, according to the testimony at the 341 hearing, I believe that Blue Cross and Blue Shield had about a fourteen to eighteen day pay period. That is, after the services were rendered, fourteen to eighteen days following that, the practice would receive the money from those, and that was ninety percent of the accounts receivable. There were some other smaller healthcare providers, but they were in the ten percent range of the entire listing.

Many of the accounts receivable that we were provided looked as though services were provided after the petition date that we saw. So consequently with those, and the total on those I think was about eighteen thousand dollars, but the total on those, there was some question as to whether we would be entitled to the entire accounts receivable or not in that listing but, yes, we did take a look at those accounts receivable.

Q. And in your actions as trustee, do you believe that

Ms. Victoria has been forthcoming with her assets and allowing you access to the property and inspections?

A. It has been my impression so, yes. We have had no problem. I will make mention of the fact that, when the young man was out there taking photographs that day, there was a person taking pictures of him at the same time, and that is the first time that has happened but, yes, we were granted access to those and documents were produced as we requested such.

Q. Okay. And have you - you said that there has been a compromise as to - a compromise reached as to buying back the assets of Ms. Victoria in this case or an offer, I should say?

A. Yes, there was an offer, a forthcoming offer through your office, Mr. Shinbaum, and I don't know - do you want me to go into that?

Q. Well, it hasn't been approved, but was it difficult to arrive at the figure?

A. No, not really. You and I discussed the facts and circumstances, that there were a lot of questions on both sides. I think there was a townhome in Atlanta that Dr. Victoria possibly had a hand in funding but, at the same time, that townhouse was in Dr. Victoria's daughter's name, I believe, and Dr. Victoria had probably made some mortgage payments on that home, but she also was using that home two or three days during some weeks. There was some practice that she was conducting up there, as I recall. So whether or not there

                              was some equitable interest in that home, there were questions about that on both sides.

And there was an offer made from – I guess you and I kicked around what we felt would be fair, considering the accounts receivable that may or may not have been out there, the equity that may or may not have been there with the home, the equity in the property, the contents of the home, and Dr. Victoria, I believe there are three or four automobiles that are in Dr. Victoria's husband's name and, you know, we find that – we always question situations like that, an automobile not in Dr. Victoria's name, but yet I believe she uses one of those automobiles routinely.

Yes, there was an offer made and we felt that was fair. We felt it was wise to take it, let me say it that way.

Q. Okay. And this is a significant asset bankruptcy? Well, fifty-seven thousand dollars would be a significant asset bankruptcy; wouldn't it?

A. Yes, it is, and it is significant to the estate and it is also significant to me as a trustee. So consequently, you know, you may question what I am saying here based on that. If we were forced to liquidate items, you may or may not come out with something better than that, and it is going to be fifty something – fifty-five thousand dollars cash that is going to be available rather quickly.

Q. So Ms. Victoria is voluntarily surrendering the assets

to the trustee for sale?

A. I gather she would if we come to that point but I think the offer is going to take care of that.

MR. SHINBAUM: Nothing further.

THE COURT: Mr. Hightower.

CROSS-EXAMINATION

BY MR. HIGHTOWER:

Q. Mr. Hamm, who made the offer to purchase the assets from the debtor?

A. Well, it came through Mr. Shinbaum's office. There was a discussion between Mr. Shinbaum and myself. I don't remember who came up with, hey, let's compromise this matter or we have got to do something about it. I don't recall who said what first.

Q. The reply that was filed by the debtor late this afternoon indicates that it would be her husband that would be purchasing the assets. Does that sound correct to you?

A. I think that might be the case, yes.

Q. And are you aware that her husband owns her house or their house, apparently, in Greenville, Alabama?

A. The husband owns it or they both own it?

Q. I believe that one may be jointly.

A. I think it is jointly owned, yes.

Q. And the townhouse in Atlanta?

A. I was thinking that the daughter - the townhouse in

Atlanta was owned in the daughter's name. Now I may be wrong about that but the daughter lived there. I believe she was going to school. That's what I recall from the 341.

Q. And the debtor's cars?

A. Those are owned by the husband, as I mentioned earlier. That was one of the questions that we had about the entire matter.

Q. And is it your understanding that the debtor and her husband have roughly similar income?

A. I don't recall seeing –

Q. Just from reviewing the petition?

A. I don't remember. I could look – well, I don't know whether I have got a copy of the petition in my file or not but, if that is what it says, I wouldn't challenge that. I have never talked with Mr. Victoria, Dr. Victoria.

Q. So the effect of that would roughly be that the debtor's husband would acquire her assets as he has acquired most other assets for the family on their income and she would continue to have use of them? Thank you.

A. Yeah.

MR. HIGHTOWER: That's all.

THE COURT: Any redirect?

MR. SHINBAUM: Nothing further, Your Honor.

THE COURT: Thank you, Mr. Hamm.

MR. HIGHTOWER: Your Honor, what I would like to do,

and you may have read over my motion to dismiss already at length, and you can stop me at any point if that is correct, but I would just like to go over roughly what the motion is based off of.

THE COURT: Okay. Very good.

MR. HIGHTOWER: Are you ready?

THE COURT: Yes, sir.

MR. HIGHTOWER: There are two sections in the bankruptcy code that it is based off of. Those are section 707(a) and 707(b). 707(a) is available to dismiss any debtor's case, whether they have primarily consumer or primarily business debts. 707(b) is available only to dismiss a debtor with primarily consumer debts.

THE COURT: Okay. Let me stop you right there. Now your client is a hospital; is that correct?

MR. HIGHTOWER: Greenville Hospital.

THE COURT: And they have got a money judgment having to do with a breach of contract suit?

MR. HIGHTOWER: Yes, Your Honor. We recovered - I am sorry. I didn't mean to -

THE COURT: My point was that that was - that would not be a consumer debt.

MR. HIGHTOWER: That's correct.

THE COURT: Okay.

MR. HIGHTOWER: We recovered what would be categorized

as a business debt. Greenville Hospital recovered through the circuit court of Butler County, Alabama. The amount of the judgment was one hundred, sixty-two thousand, two hundred and fifty-seven dollars and seventy-four cents. It was a breach of contract action.

During the course of that lawsuit, it was made known to Greenville Hospital that, once the judgment became final, that the debtor would file bankruptcy so as to avoid paying the judgment back, and the debtor was in fact awaiting the final judgment amount because it was a business debt, to put her, at least from her perspective, over the top so that her - I am sorry - so that her business debts would then be greater then her consumer debts, thereby making her no longer subject to the means test in 707(b).

She did, in fact, file bankruptcy shortly after the judgment was entered, about a month and a half, I believe. I have a binder that I have provided to the court and to Mr. Shinbaum. I believe it is right here.

THE COURT: Thank you.

MR. HIGHTOWER: It has got a copy of my motion to dismiss printed out in the front folder when you first open it up. It is in the front cover.

THE COURT: I see it.

MR. HIGHTOWER: And if you would look, and you can track her petition, if you would like - I brought one for your

law clerk, too, also.

THE COURT: Thank you.

MR. HIGHTOWER: You can track her original petition schedules, statement of financial affairs and means test form. It is in tab one, if you want to, along with my motion to dismiss. If you look at her schedule "A," she shows that she has an interest in a home located in Greenville, Alabama. It has got a tax assessed value of three hundred and seventy-three dollars - three hundred and seventy-three thousand dollars, roughly. She has listed personal property including seven thousand in household goods, five thousand dollars worth of jewelry. It doesn't contain any type of breakdown on her personal property by type or by room number or bedroom set, living room set, nothing like that, just a generalization, seven thousand dollars.

She has got in her schedule "D" a listed secured debt on her home of three hundred and nine thousand - I am sorry - two hundred and ninety thousand on the home and nineteen thousand for various office equipment, for a total of three hundred and nine thousand.

In her schedule "E," she has got total tax debts of sixty thousand, eight hundred and seventy-seven dollars and seventy-four cents.

In her schedule "F," she has got total unsecured debts listed as two hundred and seventy-three thousand, three hundred

and eight dollars, including our judgment.

In schedule “G,” she lists no executory contracts or leases. Her occupation is listed as a physician, along with her husband. She lists her husband’s gross income as twenty thousand dollars a month and her gross income as fifteen thousand dollars per month, a total of thirty-five thousand.

She lists various expenses in her schedule “J,” including a four thousand dollar per month mortgage on her home, a three hundred dollar telephone bill, seven hundred dollars in transportation expenses, one thousand per month in charitable contributions, twelve hundred dollars per month for auto insurance, and thirty-five hundred dollars per month to pay her husband’s debts.

If you subtract all of these expenses from her income, she lists disposable income per month of one thousand, eight hundred and ninety dollars.

In her statement of financial affairs, she doesn’t list any gifts made within one year or any transfers made within two years.

Along with her petition, she filed a means test form. It summarily states that she has primarily business debts and therefor is not subject to the means test.

She later amended her schedules for the first time. She has amended her schedules again this afternoon. In fact, at noon today I checked and there was no amendment listed, nor

any response to the motion that I filed to dismiss her case, but sometime later this afternoon, I just looked at it before the hearing today, she filed another set of amended schedules and a response.

I would point out to the court that both sets of amended schedules seem to be sort of a moving target, I guess you could call it. The debtor's debts and schedules, everything on her – the amount of her debt, the categorization of her debt, seem to change according to I guess what she needs them to be.

We have been litigating whether or not the debtor's case should be dismissed or at least we have been moving in that direction from the time that her first meeting of creditors was held, and that was last year. It is now May. And she has known for quite some time that she would have to show, to not be subject to section 707(b), that she had primarily business instead of consumer debts, but it wasn't until late this afternoon that she filed schedules that seemingly show that she has mostly business debts. I haven't had a chance to review them or even look over them other than maybe for a few minutes before the hearing today.

The ones I have had a chance to look over, which is her previous set of amended schedules she filed in February. In that one, she amended her schedule "B." I know Mr. Hamm's testimony was less but, if you will look and compare her

original schedules with her schedules that she filed on February 5, and the first schedules are found in tab one; the amended schedules are found in tab five. If you will look at her schedule "B," you will notice that there are thirty-five thousand dollars in accounts receivable that were not disclosed in her original petition and schedules. They were only disclosed after Mr. Hamm went to the debtor's business and the debtor at that point produced documentation showing that she had an additional thirty-five thousand dollars in accounts receivable that had not been disclosed previously.

She also in her amended schedules reduced a debt listed for a credit card to MBNA from sixty-five thousand dollars down to one dollar. She has, today, reupped it from one dollar back to sixty-five thousand dollars.

She did not file another means test form with the court or provide any breakdown showing how her amended schedules affected whether or not her debts are primarily business debts or primarily consumer debts.

I took the debtor's 2004 examination in February. During the examination, and I provided a transcript to the court that is found in tab six of the three-ring binder. I would categorize it – I think, if the court has interest in reading over the examination, you can see for yourself that in general the debtor's testimony showed that the information contained in her petition, her schedules, her statement of

financial affairs and her means test form was inaccurate and it was misleading.

The debtor testified that her home has four bedrooms and three bathrooms. It is about thirty-one hundred square feet. Other than the debtor and her husband, only the debtor's thirty year-old son and his granddaughter reside in the home. It is quite a large home. The debtor has testified that it wasn't necessary to have a home that large, that they could certainly find a smaller home with a smaller mortgage payment and that would produce some additional income that could be used to repay her creditors if she were forced into another chapter of the bankruptcy code or if her case was dismissed.

She produced a copy of the note and the mortgage on her home. It indicated originally, that the original debt on her home was four hundred and thirty-one thousand dollars and the original mortgage payments were fifty-two hundred dollars or a little over fifty-two hundred dollars per month.

I would say that, based on that, and I haven't done an independent evaluation of the home's value, but if the original mortgage was four hundred and thirty-one thousand dollars, I suspect that the house is worth somewhere in that range, rather than the amount that the debtor will suggest.

In addition, the debtor's installment payments per month have now been reduced to – her four thousand dollar mortgage is composed of bimonthly payments. They are roughly

two thousand dollars each, twice a month. That means that one hundred and seventy-six payments from now, her home will be paid for in full. That is seven and a half years. So if she gets a discharge in this case, seven and a half years from now her home, whether it is worth three hundred thousand or four hundred thousand dollars, will be paid for in full and she will have not paid my client, Greenville Hospital, or any of her other unsecured creditors virtually anything on the debt that she owes to them.

The debtor also testified that her family has an interest in a townhouse in Atlanta. She testified that she was not certain of the value but she later produced copies of invoices showing a debt secured by a first mortgage on the townhouse of two hundred and fifteen thousand dollars and a debt secured by a second mortgage of just under forty thousand dollars. So you have got about a two hundred and sixty thousand dollar condo in Atlanta, in addition to their three to four hundred thousand dollar home in Greenville.

She stated that she purchased or her family purchased this townhome for her daughters to live in while they were, I believe, in medical school or pursuing some other occupation or education in Atlanta. These daughters no longer live in the home. The home is simply used for leisure on the weekends by the debtor and her husband. They have no particular need for it other than that.

The debtor testified that although she drives to work and likely drove to the hearing today, she doesn't own any vehicle. The debtor and her husband have seven vehicles. Four of them are relatively new model Mercedes, including one that I believe is close to a hundred thousand dollars in value. There are vehicle registrations that are provided in the binder that I have produced today. There are four Mercedes, one Porsche, a Volkswagen and a Nissan, none of which are owned by the debtor and the debtor testified that she hasn't owned a vehicle in quite some time. This is despite the fact that, if you look at the income of the debtor and the debtor's husband, they are roughly similar. Twenty thousand gross for the debtor's husband, fifteen thousand gross for the debtor. It seems as if everything in their – all of the debtor's family's assets are acquired by the husband, none of the assets are acquired by the wife. She files bankruptcy, has virtually no assets that she would normally have if she had purchased a car or purchased an interest in some other of the family's assets, like the townhome, which I am sure her income goes towards paying the debt on but, when she files Chapter 7, they are not available for the creditors.

THE COURT: Have you found evidence of transfers in contemplation of filing for bankruptcy or is that just the way that they had lived over a period of time?

MR. HIGHTOWER: They have lived that way for some time

according to her testimony. I haven't found any evidence that they have transferred - that she bought a car and then they transferred it to the husband or she bought the townhome and they transferred it to the husband. I am not sure of the basis for it but, when you have got that many vehicles, you have got two homes that are quite expensive, it leads you to at least an implied conclusion that they may have contemplated one day that this would be a result, that they would file bankruptcy, and I just wanted to bring that to the court's attention.

The debtor also testified that out of these seven vehicles that her and her husband pay the monthly expenses for auto insurance on all of them, even though I believe that - let's see - two of the vehicles - I believe actually three of the vehicles are driven by the debtor's children. One of the debtor's children lives at the home; the others do not; but the debtor's family pays for the auto insurance on all of the vehicles. Again, if they were not paying this money towards the auto insurance each month, which is twelve hundred dollars a month, then they would have additional excess income that could be paid to their creditors.

The debtor testified that she has five thousand dollars worth of jewelry among her personal property. She also testified in both of her meetings of creditors, as well as in her 2004 deposition, that she had given away, transferred certain jewelry to her daughters prior to filing bankruptcy.

In her first meeting of creditors, she testified that the value of this jewelry was approximately five thousand dollars. In her deposition, she testified that it was approximately three thousand dollars. As of today, this afternoon, the debtor’s schedules have never been amended and the statement of financial affairs has never been amended to show that these assets were transferred away, nor have they been listed amongst the debtor’s personal property. I don’t know if the trustee investigated what happened to them or not.

As far as the income and expenses of the debtor, she testified that she transfers approximately two to three thousand dollars per month to a weight-loss business that is incorporated. The reason that she does this is because the weight-loss business is not itself earning money; it is, in fact, losing money and she is propping it up by transferring money to it each month.

Again, that is two to three thousand dollars per month that, if it was not transferred to this corporation, it could be used to repay her debts to her creditors such as Greenville Hospital.

In addition, although the debtor originally testified, as you can track by the motion to dismiss and the transcript of the deposition, she originally testified that the only expenses that she paid were her family’s telephone bill, power bill, medical insurance. If you look at the account records that are

provided in the binder, it seems to me rather obvious that the debtor transfers a substantial portion of her income into an account in which it is held by the debtor's husband, through which the family's bills are paid, including various other bills that were not mentioned by the debtor in her deposition.

In addition, the debtor produced a copy of an invoice, I believe it was a check record, showing that she pays two hundred and fifty-five dollars per month for school tuition for her granddaughter. Again, that is another two hundred and fifty-five dollars that could be paid to her creditors and that she is not responsible for paying.

THE COURT: You keep saying that, you know, they could make adjustments and come up with money, but I guess I have got a threshold question and maybe you can point me in the right direction. I mean, if we were talking about a 707(b) case and we were talking about the presumption, I mean, I think your arguments would be well-taken, but isn't this just a glaring hole that Congress left? When they redid the code to really clamp down on what they thought was this kind of abuse, was they left the door open for those whose debts were not primarily consumer debts.

I mean, you know, maybe I am overlooking something but it seems to me like you are just sort of crying over spilled milk that Congress did a couple of years ago. I mean, everybody knew that. It was in all of the, you know,

magazines. People were talking about why, you know, get so tough. We had a 707 case this morning. I guess Ms. Jacobs is gone, but we had a 707 case this morning with a nurse. Oh, she is still here. With a nurse with a much lower income but a problem with substantial abuse, and the debtor's lawyer there was working real hard to show some good reasons why he thinks they rebutted the presumption, and so I'm thinking about that right now, and I am thinking, well, if you had the same thing to work with here, I think you would have a slamdunk of a case. I can't imagine there would be a problem.

I mean, it looks to me like this whole part of the code doesn't apply and so you're going to have to show me why any of this even matters, given why Congress did what they did. I mean, I think the point is well taken, maybe they - I mean, if I was Congress, I would have written the whole bill completely differently but, you know, I can't do it and you can't do it, we are dealing with what Congress left us. And if we are just - I mean, I don't think 707(b) even applies here, does it?

MR. HIGHTOWER: I have got two responses to that, Your Honor. Do you have a copy of my motion to dismiss?

THE COURT: I do, right here.

MR. HIGHTOWER: If you will turn to paragraph 28. It is about midway through.

THE COURT: Did you say 28?

MR. HIGHTOWER: It is paragraph 28. Above it, it says consumer and business debts. What that is - do you see the graph?

THE COURT: I do.

MR. HIGHTOWER: That is a breakdown based off the original petition and schedules filed by the debtor, as well as her amended petitions, not the ones today but the ones that were filed in February, and her testimony in her 2004 examination. As you can see on the left-hand side, she has got one consumer debt. It is listed as two hundred and ninety thousand dollars in her schedules. It is for her mortgage. On the right-hand side, you have got her business debts.

If you go down, you see the total of the business debts is almost forty thousand dollars less than the total of her consumer debts. If you look in the footnote, footnote three, you can see where she testified at her 2004 examination that she was not obligated to pay a nine thousand, six hundred and sixty-three dollar credit card debt to MBNA and a three thousand, three hundred and seventy-eight dollar credit card debt to MBNA America listed in schedule "F." So those two debts are taken out of that graph.

In addition, she testified that a nineteen thousand dollar secured debt to Camden National was owed by her weight-loss business which is a corporation, rather than her. Those debts total up to thirty-two thousand forty-one dollars, and

they were originally included in the debtor's schedules.

But based on her testimony, her petition and her amended schedules, her business debts are less than her consumer debts. And as her business debts are less than her consumer debts, that means she is a debtor with primarily consumer debts and, therefore, the means test does in fact apply.

I will tell you that this afternoon, as I was explaining earlier, she filed amended schedules and a response to my motion to dismiss this afternoon. We have been litigating this issue since last year. She knows, debtor's counsel knows also, that in order for her to be subject to the means test, she must have primarily consumer debts and, today, just today, they have changed the amounts so that it appears that she now has mostly business debts.

I would say that, although I have not litigated this issue very often, as the code is still pretty new, that the way that the means test is supposed to work is that the court, the Chapter 7 trustee, the bankruptcy administrator and the debtor's creditors should be able, with a reasonable degree of certainty, to look at the debtor's schedules and the debtor's amended schedules and see whether she has got primarily business debt or primarily consumer debt.

If you have a copy of your code with you, if you will look at section 704(b)(1), that section requires the bankruptcy

administrator to review all of the materials filed by the debtor in each case and file a statement within ten days after the first meeting of creditors, and that statement should say whether or not the debtor is subject to the means test. And if the debtor is subject to the means test, then the bankruptcy administrator is supposed to file a motion to dismiss the case or some statement showing why the bankruptcy administrator has not requested that the debtor's case be dismissed.

The timing of that, in that it is just ten days after the meeting of creditors, suggests that there needs to be a mechanism whereby the debtor's schedules have to be reasonably certain. They shouldn't change every time a motion to dismiss comes up. In this case, they have already changed them once, knowing that we have been pursuing this motion to dismiss all this time, and here they are changed again, and I haven't had an opportunity to look at them. They didn't get changed until probably three o'clock this afternoon or shortly before the hearing today.

THE COURT: What if we just go back and take the first set of schedules and use those simply for purposes of making a determination of whether the debtor is a business debtor or a consumer debtor, how does it shake out there? Do you know how it shakes out?

MR. HIGHTOWER: I think I can do it for you. I have got - what I did in my motion was after the debtor's first

amended set the first of February. That chart is based on the debtor's original schedules, first set of amended schedules, and her testimony. And if you look at that footnote at the very bottom, even if you take all of the debt that she testified - if you look at that footnote number three beneath the chart, even if you take all of the debt that she testified she wasn't obligated on and you add it back in, you get total business debts of two hundred and eighty-two thousand, eight hundred and eighty-six dollars and seventy-four cents. That is still below her consumer debts of two hundred and ninety thousand dollars.

So if you are asking whether or not she has primarily consumer debts and the means test applies, based on her original petition and based on her amended set of schedules, it does apply.

THE COURT: Okay. So you are contending that she is a consumer debtor subject to 707(b)?

MR. HIGHTOWER: That's correct. And I agree with you that it is a slamdunk if she is subject to it. She has a tremendous amount of disposable income. I think one hundred and sixty-six dollars and seven cents is the threshold for a debtor categorized as her particular type of debtor. In this case, she has got almost two thousand dollars on the face of her schedules alone, so there is no question that it applies. She cannot be a Chapter 7 debtor.

The other answer to your question earlier about whether or not Congress wrote out business debtors or prevented business debtors from being dismissed from Chapter 7 based on bad faith or failure to file proper schedules, or virtually anything, there was candidly, I will admit to you, when I first - when the act first came out, I thought the same way. I thought that it was likely that Congress had left a big loophole in there for debtors that had primarily business debts and that, even if they filed their petition and they had a tremendous amount of disposable income, that they were not subject to dismissal under 707. And the reason was because, if you look at 707(b), it says only primarily consumer debtors are subject to it.

But if you look at 707(a) and you look at the structure of it, it says that a debtor’s case may be dismissed for cause, including, and the same way under section 362 on the automatic stay you can ask for stay relief for cause, including those enumerated factors and including non-enumerated factors. And case law suggests, strongly suggests, that there are non-enumerated reasons that a business debtor’s case can be dismissed under 707(a).

In addition - if you have a question.

THE COURT: Well, I was just going to say so that you think either substantial abuse or some similar idea fits in under for cause under 707(a)?

MR. HIGHTOWER: I do.

THE COURT: Okay.

MR. HIGHTOWER: And if you will look, and I have got a copy of it. I will give you the cite. The US Supreme Court just recently came out with a decision in the *Marrama* case. I'm not sure if you are familiar with it or have read it.

THE COURT: I am.

MR. HIGHTOWER: Do you want the cite?

THE COURT: I am familiar with the case.

MR. HIGHTOWER: My reading of it, and I am not sure if you will agree with this, but my recollection is that it was a Chapter 7 debtor who filed fraudulent schedules and then he decided, once he was caught, that he was going to convert to Chapter 13. And he said that the conversion statute - I'm not sure which one it is. It is 706(a). That it had an absolute right to conversion because there was no mention in there about good faith or any other particular factor that the court could look at; it simply said you may convert your case to a Chapter 13.

The Supreme Court looked at that statute and they said that it is not proper for someone in that debtor's circumstances to be able to convert a case to Chapter 13, and the basis was because the debtor would have done so under - that debtor filed his case in bad faith and conversion would have been in bad faith.

And the very first line of their opinion says the principal purpose of the bankruptcy code is to grant a fresh start to the honest but unfortunate debtor. I am not certain that this debtor is particularly dishonest but I certainly don't think that she is unfortunate. She is quite well-off. She lives a very nice lifestyle.

And I think that, based on the way that the Supreme Court read the conversion statute, that it would certainly be reasonable for a bankruptcy court to read section 707(a), which is similar in the way that it is set up, to include certain things as consideration for cause, such as bad faith, such as ability to pay, and that would be a mechanism whereby the court could review a debtor with primarily business debts, Chapter 7 petition and schedules, to determine if that person is one of the class of honest but unfortunate debtors who should be able to get relief under the bankruptcy code.

THE COURT: I don't know, it may make you happy to realize that Mr. Shinbaum made just that argument about the absolute right to convert in a case. I ruled against him. He took it up on appeal and Judge Albritton affirmed. So I had already taken the position, but there has already been a lot of criticism of that *Marrama* case about, you know, judges straying too far from the plain language of the statute to get to what they think is or may be an appropriate result. So I am very sensitive to that, as well. I haven't thought that one all the

way through.

MR. HIGHTOWER: I will tell Your Honor, again, as I said candidly about my interpretation of the bankruptcy code when it first came out. Again, this case, I remember hearing about it. I expected that it would be a slamdunk the other direction. I read the statute myself. I thought, well, it seems to suggest that you have a right to convert your case at any time. It seems reasonable to me. The Supreme Court disagreed. The dissent strongly criticizes it. The dissent says the code says what it says, you can't consider this. But the Supreme Court in this case says equity matters in bankruptcy. If you read the dissent, it basically says that the majority has set up a roving commission for equity in bankruptcy court based on that opinion.

So I think that the *Marrama* decision says that bankruptcy courts should always consider equitable principles when deciding a case and when constructing a statute.

THE COURT: Of course, in *Marrama*, I mean basically the debtor claimed this absolute, one-time right to convert out of Chapter 7 but then, for cause, you can always go back. The dissent said something like, well – anyway, they thought there was some benefit about giving them this right to convert and then forcing – I mean, for example, had the decision gone the other way, the case would have converted and then any party-in-interest still could have moved for cause to convert and the

cause may well have been – in *Marrama*, I think it was an undisclosed interest in real estate or maybe under-reported. Anyway, I don't see a lot of – but, here, we have got this very detailed discussion of what is and what is not substantial abuse, and you are saying, well, we can import it into section (a) for cause. I am just – I'm not saying you are wrong necessarily. I am just troubled.

Maybe I shouldn't ask the question but I guess I will. I mean, is there a 523 or 727 action that you will think about? You know, is that your plan-B?

MR. HIGHTOWER: No, Your Honor. I believe the time has already run for us to file that, and I would suggest to you that, although the debtor did testify on three separate occasions that she transferred away five thousand dollars, three thousand dollars, depending on what day she was answering the question, jewelry to her family before she filed and that is fraud. Five thousand dollars is a lot of money to some people, maybe not to her, but we did not file a complaint to ask for her discharge not to be entered based on that transaction.

We would ask that the court should consider it, amongst her ability to pay and amongst her inaccurate schedules, as a basis to find cause under 707(a). And I would tell you that there is case law that I have cited, if you will look at paragraph forty of the motion to dismiss. Actually, I

am sorry, it is paragraph forty-two. There is case law where bankruptcy courts have specifically held that cause exists to dismiss a Chapter 7 case filed by a debtor with primarily business debts if the debtor's case wasn't filed in good faith or constitutes an abuse of the bankruptcy process, showing that 707(a) is available to dismiss a debtor's case for cause and for cause can include various bases.

I would suggest in this case the debtor's ability to pay is a strong basis. That debtor has transferred away property is another basis. That the debtor's schedules have been inaccurate from almost the first day she filed them. Again, she has amended them today but I don't know - I haven't even had a chance to review them to see if I think that they are now more accurate than they used to be.

THE COURT: Okay.

MR. HIGHTOWER: And you can see also in that same section, starting with paragraph forty and going forward, the basis that Greenville Hospital chose to dismiss the debtor's case under 707(a).

THE COURT: All right. Thank you.

MR. HIGHTOWER: Do you have any other questions, Your Honor? I know you were concerned with how the statute was constructed and whether or not the debtor's debts meant that 707(b) was applicable to her case. It is our position that 707(b) is applicable and, if it is applicable, that the

debtor's case must either be dismissed or that the debtor's case must be converted.

I would like to – if you would indulge me, I would like to grab the debtor's reply that I saw just now and see if I could address just a couple of things that she has in there. I believe she said that she is inapplicable, that she is not eligible.

THE COURT: Why don't we do this? Why don't you take five minutes to look at it; we will break; and then we will come back, we will hear the rest of your remarks and then I will hear from Mr. Shinbaum.

MR. HIGHTOWER: Thanks.

(Recess from 2:58 p.m. until 3:14 p.m.)

THE COURT: Be seated. Okay. Mr. Hightower.

MR. HIGHTOWER: I will try to be brief, Judge. If you don't already have one, I believe Mr. Shinbaum has a copy of the response that he filed this afternoon.

THE COURT: Yeah, I have got it here.

MR. HIGHTOWER: If you don't mind, if you could flip to the section, it is about midway through his response, where he has his graph of how he thinks the debts break down.

THE COURT: Okay. All right. I see it.

MR. HIGHTOWER: It starts off with the mortgage amount. The debtor's schedules list it at two ninety. This document lists it at two eighty-five based on a reaffirmation agreement.

I would suggest that I have not had an opportunity to review all of this, but the reaffirmation agreement was entered about a month and a half or two months after the petition date. It may be - it is very likely, I think, that since the debtor's monthly mortgage payment is a little over four thousand dollars, and that is almost the difference between the scheduled amount and this amount listed in the reaffirmation, that it may be that the amount listed there is based on a payment, a mortgage payment that was made post-petition and then the debtor has reaffirmed.

On her business debts, she shows a debt to Greenville Hospital, my client, that is slightly above the amount of the judgment, based on post-judgment interest, I believe. She shows a debt on a Greenville Hospital lease. Your Honor may be somewhat familiar with that issue in that, when the debtor filed her petition and schedules originally, she didn't list the lease. And if you have had an opportunity to review the motion to compel, then you would see that we suggested and requested on numerous occasions for months that that lease debt be listed. It never was. It still until this date never was listed.

And I will also represent to the court that Greenville Hospital is reletting that lease space and has no intention to file a proof of claim for any damages that resulted from the rejection of that lease as was found by this Court in an order

after we filed a motion to request that the lease be found to be rejected pursuant to operation of law.

So that one, I would suggest, should be stricken and listed as zero.

There are a few other debts. There is a debt listed for Genezen in the debtor's response as fifteen, seven-forty seven "o" eight. It is actually less than the amount listed in my breakdown. Apparently the debtor has revised it downward. I am not certain why.

There is at the bottom of the page an MBNA claim that says for payment on taxes charged on husband's credit card. If you will look at the top of the same page and going back one paragraph on the preceding page, it says this was a payment that was made on the debtor's husband's credit card and it says which although technically not a debt of the debtor, it does constitute a nondischargeable debt. I haven't researched that issue, Your Honor, but I would say if it is a credit card payment made by the debtor's husband, it is not the debtor's debt and, therefore, should not be considered to determine whether or not she has mostly primarily consumer or primarily business debts.

And, finally, I made this point before but I would like to emphasize it one more time, the structure of the means test and the new bankruptcy code hasn't been around long enough that I'm sure, I don't think that courts have necessarily

considered exactly how it should work but 704(b)(1) says that the B.A. is supposed to file a statement ten days after the first meeting of creditors to determine whether or not the debtor is subject to the means test. That requires with at least some certainty that the debts listed in the petition and schedules be accurate, at least to some reasonable amount. And in this case, the debts have been amended and amended again, just like you are chasing a moving target. Every time you add them up, a new one pops up. And it seems to me that there should be a date which the bankruptcy code says should be the petition date, where you figure out what the debts are and, if they are primarily business debts, then the debtor is subject to the means test. If they are primarily consumer – I am sorry – if they are primarily consumer debts, the debtor is subject; if they are primarily business debts, the debtor is not subject. And that must be based off of the debtor's schedules because the only way that it can be done under this code section is if the trustee and the B.A. and the creditors are reviewing the debtor's schedules. It can't be based on debts that no one knows about.

And that is the basis for our motion, Your Honor. I may have a few questions for the debtor regarding her assets after Mr. Shinbaum's examination, but that is all I have for now.

THE COURT: All right. Thank you.

MR. SHINBAUM: Your Honor, if I may respond, what I am going to proffer to the court, first, is a proof of claim that I received from the IRS today in this case. I believe the trustee sent out notices to file proofs of claim last month, and the IRS advised me they are filing this proof of claim tomorrow. It is in the process and they send me the copy one day before they file it. But I would like to proffer the proof of claim that I received from Ms. Munford at the IRS today which is for roughly a hundred and nine thousand dollars which is where the tax figure changed.

Now to show the court what I was laboring under in preparing the schedules, I had the transcript - I didn't have the transcript at the time but I had certain documents that indicated it was right at sixty thousand dollars that she owed the IRS and the state of Alabama.

What I am going to proffer to the court is document, Plaintiff's 3 - excuse me - Debtor's 3 and Debtor's 2, which demonstrate how I came up with the sixty thousand dollars that I have listed in the schedules that she owes the IRS and the state of Alabama, Department of Revenue, as priority debts.

Now the hundred and nine thousand dollar figure is what it went to today on taxes to the Internal Revenue Service. In examining the document that the IRS submitted today, the debtor brought me her 2005 return, and I have reason to believe the IRS figure is still twenty-nine thousand dollars under what

is owing on the taxes, and there will be another amendment coming from the IRS as to what is owing on the debtor's taxes. But even though I have listed a hundred and nine, I believe it is going to end up being a debt of close to a hundred and forty thousand dollars in taxes once this is all over with. And I haven't marked the tax return yet, but I will supply it to the court to show what the debtor's true debts are going to be, and that I had adequate reason to believe they were close to sixty thousand dollars when we filed the petition, but they're actually going to be around a hundred and forty before it is all over and all of the claims are in.

Now, Greenville Hospital obtained a judgment against the debtor, and all I have is the docket sheet from the court, but I would submit to you the judgment was submitted – was obtained on August 8, and the petition was filed some forty-eight days later. And when you take post-judgment interest at twelve percent, which is the legal rate on a judgment in Alabama, that's where I got the hundred and sixty-five thousand, two sixty-seven fifty-three figure that was owing on the date of filing the bankruptcy, and I have that listed as Debtor's 6.

Now, in regards to the house, when we filed, we estimated it at two hundred and ninety thousand dollars owing on the mortgage. The reaffirmation agreement reflects that it was two hundred and eighty-five thousand, one seventy, thirty-

one, was the actual figure.

Now I will say to the court, even though I believe the legislative intent was that mortgages not be included in consumer debt, the great majority of courts hold otherwise, okay, so I'm not going to try to argue what it is. And this mortgage was obtained for the purchase of the house. So there is no need to belabor that. I think the great weight of legal authority goes against what Congress said in congressional intent, but that is for another day.

The debts to – there are two documents which I am going to submit that deal with the nineteen thousand dollar Camden Bank – Camden Bank and Butler County National Bank are one and the same, Your Honor. I'm going to submit Exhibit 10 and Exhibit 4, which are the original note on that property and the reaffirmation agreement which reflects that the nineteen thousand, twenty-nine dollars and eighty-three cents owing on that equipment. And there was some testimony that this was the debt of Bariatric Associates. Yes, this equipment was used in Bariatric Associates but the note is signed by Deloris Victoria individually and not by Bariatric Associates.

The next thing is Genezen. Genezen was an accounts receivable company and they sued the debtor and asked for summary judgment in the amount of fifteen thousand, four thirty-eight thirty-five, which is what they have reduced the figure to, on June 30, 2006. Now, they asked for six percent

interest on the judgment even though the judgment rate in Alabama is twelve percent. So I figured the fifteen thousand, seven forty-seven "o" eight as this debt at six percent interest and not at twelve percent judgment interest. And that would be Exhibit No. 8.

Now the lease at the hospital, which they want to forgive today, this is the lease. It is signed by Deloris Victoria and not by any corporation, and the lease had approximately eighteen thousand, five hundred dollars, to run on it at the time of the bankruptcy, and that is Exhibit No. 7.

Now the other debts of Camden National Bank – excuse me. The next debt we are looking at is the debt owed to Whitney Bank on the business line of credit and I think we had it listed originally at around fifty-three, fifty-four hundred dollars, but the proof of claim that has been filed with the court reflects the debt to be four thousand, seven hundred fifteen dollars and seventy-five cents on the date of the filing of the bankruptcy, and we would offer Exhibit No. 9.

Then we had the notes to Butler County Bank again and this is, again, the debt which we had at nineteen thousand, twenty-nine dollars, and it may be a little bit easier to read the larger copy, but that is Exhibit 11, which is still the debt at – that is now nineteen thousand, twenty-nine dollars and eighty-three cents.

The debtor had an unpaid telephone bill at the time of

filing bankruptcy of five hundred and fifty-eight dollars to Century-Tel and another debt to Camden National Bank of three thousand, two hundred and twenty-five dollars, which I haven't received any documentation, per se documentation on. And, again, this is – on Debtor's Exhibit 5, which is the reaffirmation agreement, effective reaffirmation agreement with the bank that is signed on October 5, which the bank signed on October 5 of '06, also reflects the two eighty-five, one seventy figure on the mortgage.

Now the total actual non-consumer debt, if we don't figure in the thirty thousand dollars extra that is owed to the IRS, comes to three hundred and thirty-six thousand, four hundred and sixty-eight dollars and nine cents in reality or in actuality.

Now there is another debt out there that has been referenced, which is the MBNA credit card of Dr. Edgar Victoria, which comes to about seventy-one thousand dollars as the amount of the debt on the credit card. Now, sixty-five thousand dollars of that was used to pay taxes of the debtor and the debtor's husband. I did not list that in my calculations in the three hundred and thirty-six thousand, four hundred and sixty-eight dollars and nine cents but, if we assume that debt is non-dischargeable under 523(a)(14) because it was used to pay priority taxes of the debtor, the total debt of the debtor comes to – business debt – would come to

approximately four hundred thousand dollars. But for the purposes of this hearing, that debt is probably irrelevant for the purposes of this hearing.

So, you know, the court can consider it for whatever it is worth. We are about fifty thousand - if the home mortgage is viewed as consumer debt and the rest of the debt is viewed as nonconsumer debt, we are going to be approximately fifty thousand dollars more consumer debt than nonconsumer debt.

So when we talk about, you know - we have to talk about real figures, what is the real debt. I believe that if we had listed - if it had been the other way, where the debt really wasn't as high as we listed it, the court would be right to reduce it to determine where we actually stand. But, you know, the real figures that are coming in substantiate that we are going to be approximately no less than having sixty thousand dollars more business debt than the amount of the mortgage and probably at least a hundred thousand dollars more than the mortgage once the actual tax debt is figured in, once the IRS amends the claim again, amends the claim to correct the 2005 figures.

The general situation is - one thing I did want to say. We submitted the 2005 return to show what the disposal income - not the disposal income, the total, after business income is. I listed the gross on "I" and "J," the gross

income, and then took the deductions for business debt – not business debt, business expenses out of there.

Now the general situation is, in after-tax dollars, these people are living on approximately twenty – you know, have an income of approximately twenty, twenty-one thousand, a month, but the income is irrelevant because this is a business debt situation. The majority – not the majority but probably sixty percent of the debt – of the income is the husband's. He earns slightly more than the debtor.

THE COURT: Why don't you run down for me again just the big categories, the debts, and whether they are business or consumer.

MR. SHINBAUM: Greenville Hospital would have been one hundred and sixty-five thousand, two hundred sixty-seven – approximately one hundred and sixty-five thousand, two hundred and sixty-seven dollars and fifty-three cents on the date of the bankruptcy.

THE COURT: Okay.

MR. SHINBAUM: The Greenville Hospital lease on the date of the bankruptcy, what would have been owing under the lease at that time, would have been eighteen thousand, five hundred dollars.

THE COURT: Okay.

MR. SHINBAUM: The Camden Bank or Butler County Bank note would have been nineteen thousand, twenty-nine dollars and

eighty-three cents.

THE COURT: Okay.

MR. SHINBAUM: The Internal Revenue Service debt, per the proof of claim, would've been a hundred and nine thousand dollars, four hundred and twenty-five dollars and twenty cents. And I apologize, I omitted the seventeen hundred – when I recalculated that, I think I may have omitted the seventeen hundred dollars owed to the state of Alabama. I am not sure. I will have to look at that figure. But for the purpose of this, let's just leave it at the hundred and nine thousand.

The Whitney Bank business line of credit would have been four thousand, seven hundred and fifteen dollars and forty-five cents per the reaffirmation agreement.

THE COURT: Okay. Whitney Bank was how much, again?

MR. SHINBAUM: Four thousand, seven hundred and fifteen dollars and forty-five cents.

THE COURT: And that is being reaffirmed?

MR. SHINBAUM: Yes.

THE COURT: Do they have collateral?

MR. SHINBAUM: No, no, that is not being reaffirmed. There is no collateral. There is no collateral on that. There is collateral on the – I believe on the Butler County Bank or Camden National Bank note. That is secured, a secured debt.

The Genezen debt would have been fifteen thousand, seven hundred and forty-seven dollars and eight cents. The

Camden National Bank note would have been three thousand, two hundred and twenty-five dollars. And the Century-Tel bill would have been five hundred and fifty-eight dollars. That equals three hundred and thirty-six thousand, four hundred and sixty-eight dollars and nine cents, if my math is right.

THE COURT: Okay.

MR. SHINBAUM: And then there is the other debt that is hanging out there, the nondischargeable debt to MBNA, which is not in those figures, which was approximately sixty-five thousand dollars.

THE COURT: Okay.

MR. SHINBAUM: Which was used to pay on the credit cards. And there is another, in the IRS proof of claim, okay, there is a five thousand dollar debt listed for an estimated debt for the year 2005, but the tax return shows a debt of thirty-four thousand, sixty dollars, but that is not in the proof of claim that's been proffered from the IRS as to the debt, and the IRS was the major debt amendment that was made to the schedules to-date.

Although we did list the sixty-five thousand dollar debt to the MBNA originally, the administrator asked that we remove it and we did, even though we changed it to one dollar but listed it to – there is a potential sixty-five thousand dollar claim backing that up, and then we relisted it because we believe it is a debt of the debtors and a nondischargeable

debt of the debtors. And they could prove what it was used for if they tried hard enough. They could easily prove it.

THE COURT: Okay. But this is that credit card that is in –

MR. SHINBAUM: The credit card is in the name of Dr. Edgar Victoria, okay. It is in his name. There is no evidence that it is not in his name, and there is no evidence that Dr. Doloris Victoria is signing on that credit card account.

THE COURT: Okay.

MR. SHINBAUM: Now we believe that the testimony, if we took the testimony, would be over what would be – that the majority of the debtor's debt is business debt and that 707(b) does not apply to this case. And we believe that 707 – none of the requirements of 707 are met in order to dismiss this case. We are not aware of any case – well, there may be some cases but the majority of the cases in this area of the country, and I cited two cases out of the – bankruptcy court cases out of Florida that would hold that good faith is not an element of 707(a) even though we believe the bankruptcy is filed in good faith and that, you know, we have a debtor that has had – as you will see from the Exhibit 1, has had a tax problem going back to 1999. She has limited assets – well, she has more assets than most debtors that come into this court, and I believe, you know, – I believe it was fifty-five thousand, which is what the trustee and I have agreed on is the value of

the assets, and that is pretty much based on what we listed, and the business income, we believe that is pretty accurate on the schedules.

And this debtor is willing to surrender her assets for sale by this court, and did so by filing her petition and has never hidden the fact this is an asset bankruptcy for the trustee. I mean, the schedules reflect it, the bankruptcy trustee has done his investigation to give us a price on what he believes it is worth, and his valuation comes pretty close to ours as to what the assets are worth in this case.

There are plenty of cases that hold where the debtor comes in, is willing to surrender their assets for payments of the debt, and although the IRS is going to take it all, okay, you know, that's just the ball game. I think if it is dismissed, there are still no assets available for this creditor. The IRS is still going to take it all. You know, they have a tax lien, which I did not know until today they have a tax lien and it is a secured claim on the debtor's property. But since it is all going to the IRS anyway, you know, that's just how the cookies are going to crumble in the bankruptcy.

THE COURT: Okay. Thank you. All right. Mr. Hightower, did you want to offer anything further?

MR. HIGHTOWER: Just a brief response, Your Honor.

THE COURT: Yes, sir.

MR. HIGHTOWER: Your Honor, the debtor suggests that the difference between whether she has primarily consumer or business debt is this claim that came in by the IRS today for, I am not sure, a hundred and nine thousand. I would suggest, or Greenville Hospital would suggest, that the best way to measure whether or not the debtor's debts are primarily business debts or consumer debts is by looking at her original petition and the amended schedules that she filed in February, both sets of which contain signatures by the debtor saying that this is an accurate representation of my financial picture.

The amount seems to keep changing. It may change again. And the only reason seems to be - I doubt that the schedules would have been amended ever if it weren't for Greenville Hospital pursuing to dismiss the debtor's case. I don't think that the way that the means test is supposed to work is that the debtor just puts down whatever numbers she wants to and then later on, as claims filter in, it changes and maybe goes to primarily business debts for a little while and primarily consumer debts and back and forth.

I think that, because of the structure of 704(a), which again says that the bankruptcy administrator is supposed to file a statement to say whether the debtor is subject or not to the means test within ten days of her first meeting of creditors, that means that the means test is based off of the debtor's schedules, and those schedules that are filed within

a reasonable amount of time after the petition date. It shouldn't go on, and on, and on, and the number keep changing every time you look up.

THE COURT: Okay. Going back to your calculation, are you just starting with the proposition that the only consumer debt is approximately two hundred and ninety thousand dollars, the mortgage?

MR. HIGHTOWER: That's true, Your Honor.

THE COURT: And then you have got several business debts that total about two hundred and fifty thousand?

MR. HIGHTOWER: If I could grab my copy of that.

(Pause)

MR. HIGHTOWER: Yes, Your Honor, if the court will take out a copy of the debtor's original petition and schedules and then the February amendments, if you look at all of the debts and if you compare the consumer debts and the business debts, they are charted out for you in that chart on my motion to dismiss, the only ones that aren't included are about thirty-two thousand dollars worth of debts that the debtor herself testified she didn't owe. I think that is pretty good. As far as reliable, she says she doesn't owe them. And it is in the transcript, it is cited in the motion where she said it.

But even if you add those debts in, the ones that she says she doesn't owe, she has still got eight thousand dollars more in consumer debts than she does in business debts, and

that means she is primarily a debtor – she is a debtor with primarily consumer debts and therefore subject to the means test under 707(b).

I would also again emphasize to the court that we take the position that 707(a) is available to dismiss a debtor's case even if that debtor has mostly business debts instead of mostly consumer debts, and all it requires is cause and there is an ample amount of cause in this case.

THE COURT: Okay. Thank you. All right. I guess before I take it under advisement, Ms. Jacobs, did you have anything or are you just observing today?

MS. JACOBS: Judge, this is my file. My office has been very actively involved in trying to determine whether this debtor was a candidate for 707(b). Mr. Hightower filed his motion and so we took a backseat to that.

I first wrote Mr. Shinbaum on November 3 of 2007 asking him to verify the accuracy of the statement that was made on the means test that just simply that – or summarily that the debtor's debts were primarily business debts and, you know, just even today we are still getting some of that information in.

There were, I think Mr. Hightower has adequately pointed out, the significant misstatements and inaccuracies that were in the petition. Some examples are that Schedule "B" didn't disclose accounts receivable. Schedule "B" at number

fourteen did not disclose that the debtor had an interest in an LLC, and I don't know if Bariatric Associates is the same or not. It is not listed, in any event.

Schedule "G" initially didn't list the lease with Greenville Hospital. The statement of financial affairs, question seven, listed "none" as charitable contributions but, in Schedule "J," the debtor reflected that she made charitable contributions as part of her expenses in the amount of a thousand dollars per month.

There has already been some statements regarding some transfers of jewelry to the debtor's daughters. I don't know whether the amendments filed today reflected those transfers that occurred within two years. You know, it is just very frustrating to be in the position we are in without having the records and cooperation to make these determinations. We did not file anything within ten days because the flag that went up showed there was not a presumption because the debtor checked that box on the petition.

There is nothing that Mr. Hightower has represented to the court that I disagree with. Further, on Schedule "H," for co-debtors, at least initially Brantley Bank & Trust, which is the mortgage holder, was not listed with a co-debtor. If you will look at Schedule "A" on the original petition where the debtor listed her real property, it does not indicate whether the property is held jointly or individually by the debtor.

You know, those are the kinds of things that, you know, make it very difficult to make these determinations and see where the debtor stands. I think there is a presumption and I think the debtor has the duty to rebut the presumption of abuse.

THE COURT: All right. Thank you. Well, I will take it under advisement and have a look at it and let you know.

Thank you all.

(Off the record at 3:49 p.m.)

C E R T I F I C A T E

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

/s/ Patricia Basham

Patricia Basham, Transcriber

Date: August 12, 2007

2:07cv668-WKW

Item# 24

Binder submitted into evidence filed Conventionally in Clerk's office for Viewing.