IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE THE MATTER OF:

DELORIS VICTORIA

    Debtor

DELORIS V. VICTORIA

    Appellant

v.                           Case-No.07-CV- 00688-WKW

GREENVILLE HOSPITAL

    Appellee

---

ON APPEAL FROM

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE THE MATTER OF:

Deloris V. Victoria                 CASE NO. 06-31225-WRS

    Debtor,

---

Counsel for the Debtor
Richard D. Shinbaum (SHI007)
Shinbaum, Abell, McLeod & Campbell
P.O. Box 201
Montgomery, Al 36101
(334)269-4440
Fax (334)263-4096
e-mail rshinbaum@samvpc.com

# TABLE OF CONTENTS

Statement of Jurisdiction                                    Page 1

Statement of Argument                                       Page 2

Standard of Review                                          Page 3

Statement of the Case                                       Page 4

Statement of Facts                                         Page 5

Argument of the Debtor-Appellant                           Page 7

Conclusion                                                 Page 15

Certificate of Service                                     Page 16

**Statutes:**                                              Page(s)

Title 28 U.S.C. Section 158                                 1

Title 11 U.S.C. Section 707(b)                             4 ,7,9 ,14,15

Title 11 U.S.C Section 101                                  8

Title 26 USCS Section 6672                                  10

Federal Rules of Bankruptcy Procedure Rule 8013            3

Title 11 U.S.C. Section 523(a)(14)                         12

Title 11 U.S.C. Section 523(a)(1)                          13

**Cases:**

In re Goerg, 930 F.2d 1563, 1566 (11th Circuit.1991)       3

In re Club Associates, 956 F.2d 1065, 1069 (11th Circuit.1992 )    3

In re Cornelison, 901 F.2d 1073, 1075 (11th Cir.1990)      3

In re Sublett, 895 F.2d 1381, 1384 (11th Cir.1990).        3

Stewart v. United States Trustee (In re Stewart), 175 F.3d 796,

( Tenth Circuit 1999)                                                                          8

In re Kelly, 841 F.2d 908 (Ninth Circuit 1988)                                9

Bronson v. United States, 46 F.3d 1573 (Fed Circuit 1995);          10

IRS v. Westberry (In re Westberry), 215 F.3d 589 (Sixth Circuit 2000)    10

In re Packard Properties, Ltd., 118 B.R. 61 (Bankr N.D. Tex 1990)    10

In re Tucker, 345 B.R. 373,(Bankr. M.D. Ala. 2006)                     11

MBNA Am. v. Chrusz (In re Chrusz), 196 B.R. 221(Bankr N.H. 1996)    13

## APPENDIX

Appendix 1                          Bankruptcy Petition of the Debtor

Appendix 2                          Creditor's Motion to Dismiss

Appendix 3                          Order on Motion to Dismiss

Appendix 4                          Notice of Appeal

Appendix 5                          Amendment of February 5, 2007

Appendix 6                          Motion to reject Debtor's Lease

Appendix 7                          Proof of Claim of the IRS

Appendix 8                          Reaffirmation Agreement of Brantley Bank

Appendix 9                          Reaffirmation Agreement of Butler Co. Bank/
                                    Camden National Bank

Appendix 10                         Amendment of May 8, 2007

Appendix 11                         Reply to Motion to Dismiss

Appendix 12                         Title 11 U.S.C. Section 707

Appendix 13                         Title 26 U.S.C Section 6672

Appendix 14                          Title 11 U.S.C. Section 101

Appendix 15                          Debtor's Supplemental Response

Appendix 16                          Creditor's Response and Supplemental
                                     Response

JURISDICTION

The United States District Court for the Middle District of Alabama has Jurisdiction of this

case pursuant to Title 28 USC § 158, which states:

> a) The district courts of the United States shall have jurisdiction to hear
> appeals[--]
>   (1) from final judgments, orders, and decrees;
>   (2) from interlocutory orders and decrees issued under section 1121(d) of title
> 11 increasing or reducing the time periods referred to in section 1121 of such title;
> and
>   (3) with leave of the court, from other interlocutory orders and decrees;
> of bankruptcy judges entered in cases and proceedings referred to the bankruptcy
> judges under section 157 of this title [28 USCS § 157]. An appeal under this
> subsection shall be taken only to the district court for the judicial district in which
> the bankruptcy judge is serving.

ARGUMENT

Did the United States Bankruptcy Court for the Middle District of Alabama abuse it's discretion in ruling that the Debtor-Appellant's consumer debt exceeded the Debtor-Appellant's non consumer debt, arbitrarily ignoring the Debtor's total tax debt, secured business debt and leases, thus dismissing the case.

STANDARD OF REVIEW

In reviewing bankruptcy court judgments, a district court functions as an appellate court.  It reviews the bankruptcy court's legal conclusions de novo, In re Goerg, 930 F.2d 1563, 1566 (11th Cir.1991), but must accept the bankruptcy court's factual findings unless they are clearly erroneous. 11 U.S.C.App., Bankruptcy Rule 8013 (1988).   In turn, this court independently examines the bankruptcy court's factual findings for clear error and reviews de novo the legal determinations of both the bankruptcy and district courts. In re Club Associates, 956 F.2d 1065, 1069 (11th Cir.1992).  Neither the district court nor this court may make independent factual findings.  If the bankruptcy court is silent or ambiguous as to an outcome determinative factual question, the case must be remanded to the bankruptcy court for the necessary factual findings. In re Cornelison, 901 F.2d 1073, 1075 (11th Cir.1990); In re Sublett, 895 F.2d 1381, 1384 (11th Cir.1990).

STATEMENT OF THE CASE

This is an appeal from an order of the United States Bankruptcy Court for the Middle District of Alabama, Northern Division, dismissing the Debtor's Bankruptcy case upon a finding of the Bankruptcy Court of substantial abuse pursuant to Title 11 U.S.C. section 707(b).

On the 25th day of September, 2006, the Debtor-Appellant filed a Chapter 7 Bankruptcy Petition in the United States Bankruptcy Court for the Middle District of Alabama, Case No. 06-31225, said Petition attached as Appendix 1 to this brief.    On April 20, 2007, the Creditor, Appellee filed a Motion to Dismiss Case for Abuse Under 11 USC 707(b), said Motion attached as Appendix B to this brief.    On May 8, 2007, the United States Bankruptcy Court for the Middle District of Alabama, the Honorable William Sawyer, Bankruptcy Judge, presiding.   On June 27, 2007, the Court entered an order of Dismissal of the Bankruptcy Case for substantial Abuse, pursuant to Title 11 U.S.C. Section 707(b), said Order attached as Appendix C to this brief.    From this order the Appellant-Debtor filed a notice of appeal to the United States District Court for the Middle District of Alabama, said notice attached as Exhibit D to this brief.

STATEMENT OF FACTS

On the 26th day of September, 2006, the Appellant filed a bankruptcy Petition in the United States District Court for the Middle District of Alabama.  In the Bankruptcy Petition the Appellant list debts owing to the Brantley Bank and Trust of $290,000.00, Camden National Bank of $19,000.00, the Internal Revenue Service in the amount of $5,600.27, $9,147.63, $23,892.40, and $17,689.92, the State of Alabama in the amounts of $1,547.62, and $3,000.00, Camden National Bank for $2,545.00 and $680.00, Century Tel in the amount of $558.00, Greenville Hospital in the amount of $168,000.00, debts to MBNA in the amounts of $65,000, $3,378.00 and $5,483.00, and Whitney Bank in the amount of $5,483.00.

On February 5, 2007, the Debtor filed an amended schedule F, attached as appendix 5, in part to show that the Appellant-Debtor was not personally liable for the Debt owed to MBNA in the amount of $65,000.00, but that the debt was a contingent debt of the Appellant-Debtor in the amount of $77,000.00 and that the Debt has been used to pay for her taxes.

On the 31st day of January, 2007, the Creditor-Appellee filed a Motion for Relief from the Automatic Stay in Bankruptcy, upon a lease between the Appellee and the Appellant and the in the amount of two years (2) years at the rate of $937.50 per month, said lease attached as appendix 6 to this brief.

On the 8th day of May, 2007, the Internal Revenue Service filed a proof of claim in this case, attached as Appendix 7 to this brief, stating that the Debtor owed to the Internal Revenue Service the sum of $109,425.20, said claim attached as Appendix 7 to this brief.

On the 8th day of May, 2007, the Debtor-Appellant filed an Amended Schedules of Debts to reflect the amounts of the known debts of the Debtor-Appellant, as of the date of the Court's

hearing of the 8th day of May 2007, said amendment attached as Appendix 10 to this brief.

On the 26th day of June, 2007, the Court held a brief hearing and announce the decision of the Court, adopting the statements of debts of the Creditor's brief of May 9th, 2007, said brief attached as Appendix 11 to this brief, as its facts in the case.

On the 27th day of June, 2007, the Bankruptcy Court, the Honorable William Sawyer Presiding issued an order dismissing the Debtor-Appellants case, said order attached as Appendix 3 to this brief.

ARGUMENT OF THE DEBTOR-APPELLANT

**Did the United States Bankruptcy Court for the Middle District of Alabama abuse it's discretion in ruling that the Debtor-Appellant's consumer debt exceeded the Debtor-Appellant's non consumer debt, arbitrarily ignoring the Debtor's total tax debt, secured business debt and leases, thereby dismissing the case.**

The Bankruptcy Court, the Honorable William Sawyer presiding determined that the consumer debts of the Debtor outweighed the non-consumer debts. As the result of this ruling, the Court allowed the Creditor to file a motion for dismissal of the bankruptcy proceeding, pursuant to Title 11 U.S.C. Section 707(b). The Court arbitrarily and without basis failed to take into consideration the debts of the Internal Revenue Service for moneys owed by the Debtor, pursuant to pass through liability of Bariatric Associates, the secured debt owed to Butler County Bank/Camden National Bank and an unexpired lease to Greenville Hospital in making its determination. Had the total tax debt of Bariatric Associates and the Debt to Butler County Bank been taken into consideration, the non consumer debt of the Debtor would have clearly outweighed the consumer debt of the Debtor, and the motion to dismiss filed by Greenville Hospital in the bankruptcy case would have been denied.

The Bankruptcy Court abused it's discretion in determining that the Debtor was a consumer debtor under Title 11 USC Section 707(b) and ruling that the consumer debts was greater than the non consumer debts.

The pertinent statute that applies to this case is:

§ 707. Dismissal of a case or conversion to a case under chapter 11 or 13

(a) The court may dismiss a case under this chapter [11 USCS §§ 701 et seq.] only after notice and a hearing and only for cause, including--
 (1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees [or] and charges required under chapter 123 of title 28; and

(3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521 [11 USCS § 521], but only on a motion by the United States trustee.

**(b) (1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title [11 USCS §§ 1101 et seq. or 1301 et seq.], if it finds that the granting of relief would be an abuse of the provisions of this chapter [11 USCS §§ 701 et seq.].** In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3) [11 USCS § 548(d)(3)]) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4) [11 USCS § 548(d)(4)]).

The law further defines a consumer debt as

**§ 101.  Definitions**

**In this title the following definitions shall apply:**

**(8) The term "consumer debt" means debt incurred by an individual primarily for a  personal, family, or household purpose.**

and debt as:

**(12) The term "debt" means liability on a claim.**

While the Eleventh Circuit has not ruled on the question of what is necessary to determine if debts are primarily consumer or non consumer debts, the majority of the Courts have ruled that where more than half the debts in monetary amounts are non-consumer debts then the Debtor is not a consumer debtor.  In the case of <u>Stewart v. United States Trustee (In re Stewart)</u>, 175 F.3d 796, (Tenth Circuit 1999), the Court stated:

The Bankruptcy Code does not define "primarily," and only a few of our sister circuits have defined "primarily" under § 707(b). Noting the word "primarily" is not an ambiguous or difficult word to understand, and is defined in Webster's Dictionary as "for the most part," the Ninth Circuit determined it to mean consumer debt must exceed more than half the total debt for dismissal under § 707(b). See In re Kelly, 841 F.2d at 913, 916. 11 In a non-bankruptcy context, we similarly defined "primarily" as meaning more than fifty percent. Bohn v. Park City Group, Inc., 94 F.3d 1457, 1461 (10th Cir. 1996) (recognizing the Department of Labor, as a "good rule of thumb," defines "primary duty" to mean the major part, or over fifty percent, of the employee's time). Finding no cases to the contrary, .we therefore define "primarily" in the context of § 707(b) as meaning consumer debt exceeding fifty percent of the total debt.

Applying this definition to the instant case, Dr. Stewart's actual total debt is $ 837,009. Of that amount, $ 633,000 is "consumer debt" ($ 320,000 owed to his former in-laws, at least $ 63,000 of the $ 218,000 in student loan debt, and $ 250,000 in alimony). This amount exceeds fifty percent of the total debt. Hence, we determine Dr. Stewart's debt is "primarily consumer debt" for the purposes of § 707(b), and, therefore, his petition may be dismissed under § 707(b), but only if substantial abuse occurred.

The Debtor's debt as proven and shown to the Court is as follows:

1. The Debtor owed a home Mortgage that she was jointly liable with her husband in the amount of $285,170.31, as shown by the reaffirmation agreement sent to the Court by Brantley Bank and the Debtor, said reaffirmation agreement attached as Appendix 8 to this brief. There is no dispute that this was the amount of the Debt, as of October 30, 2006. The law has long been established that a debt incurred primarily to purchase a home and the mortgaged incurred on the home is a consumer debt. In re Kelly, 841 F.2d 908 (Ninth Circuit 1988) Although the Eleventh Circuit has not specifically addressed this issue, the great weight of authority supports the position that a home mortgage in the nature of the Debtor's is a consumer debt. This debt constitutes the only consumer debt of the Debtor.

2. The next debt that the Debtor owed was a judgment to Greenville Hospital in the amount of $165,140.00 taken approximately Forty-five (45) Days prior to the filing of the bankruptcy action.

There exist no dispute that this debt was incurred in the Debtor's business and that this is not a consumer debt.

3. The next Debt of the Debtor is to the Internal Revenue Service in the amount of $109,425.20. This Debt is reflected by the proof of claim filed by the Internal Revenue Service and attached as Appendix 7.  Although the Eleventh Circuit has not addressed the issue of whether or not tax debt is a consumer or non consumer debt, it is generally held that a tax debt is incurred for a public purpose and not a consumer purpose and therefore is not a consumer debt. see Bronson v. United States, 46 F.3d 1573 (Fed Circuit 1995);  IRS v. Westberry (In re Westberry), 215 F.3d 589 (Sixth Circuit 2000)  Further, the Court ruled that the amount of the tax liability was about $70,457.84, and not the $109,425.20.  In the case of  In re Packard Properties, Ltd., 118 B.R. 61 (Bankr N.D. Tex 1990) stated::

> A proof of claim is prima facie evidence of the nature and amount of the debt and the Trustee has the burden to rebut this prima facie evidence. Rule 3001(f). However, allowance of a claim as an administrative expense is subject to court approval only after notice and a hearing. § 503(a). A very similar situation to the present case was addressed in Matter of Mansfield & Tire Rubber Co., Inc., 73 Bankr. 735 (Bankr. N.D. Ohio 1987). Since this claim is a request for payment of administrative expenses, the association carries the burden of proof throughout the entire proceeding.

In this action the Creditor argued that the Court should disregard the tax debt of Bariatric Associates, which was filed against the  Debtor.  The Debtor is liable for the taxes of Barriatric Associates, pursuant to Title 26 UCS Section 6672, which states:

> § 6672.  Failure to collect and pay over tax, or attempt to evade or defeat tax.
> (a) General rule. Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax

evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 [26 USCS § 6653] or part II of subchapter A of chapter 68 [26 USCS §§ 6662 et seq.] for any offense to which this section is applicable.

As the responsible person of Bariatric Associates, the Debtor is liable for the taxes of Bariatric Associates and the Court could not have arbitrarily ignored this fact.

An issue was raised at the hearing of May 8th, 2007, as to the date of computation of eligibility under various chapters of bankruptcy. The Debtor would call the Courts attention to the case of In re Tucker, 345 B.R. 373, (Bankr. M.D. Ala. 2006) in which Judge Williams addressed the eligibility of a client for the purposes of calculating eligibility under Chapter 13 of the Bankruptcy Code and Section 109(e). In the case cited, Judge Williams addressed as case where the debtor had claimed a rather large income tax debt as unliquidated, in order to gain chapter 13 eligibility and the IRS later filed a liquidated claim. In the Tucker decision, Judge Williams stated

> If all events giving rise to the debtor's liability have occurred prior to the filing of the bankruptcy petition, a debt is noncontingent for purposes of § 109(e). In re Knight, 55 F.3d 231, 236 (7th Cir. 1995); In re Loya, 123 B.R. 338, 340 (B.A.P. 9th Cir. 1991). In the case at bar, the IRS's claim is for tax years 2000, 2001, 2002, and 2004. All events giving rise to the debtor's liability for those years must have occurred prior to his bankruptcy on October 16, 2005.
>
> Therefore, the debt to the IRS is noncontingent for purposes of § 109(e).
>
> The more difficult question is whether a debt which is disputed by the debtor is liquidated for purposes of § 109(e). In United States v. Verdunn, 89 F.3d 799 (11th Cir. 1996) the Court of Appeals explained the term "liquidated debt" by stating: Black's Law Dictionary defines a liquidated debt as one where it is certain what is due and how much is due. Black's Law Dictionary 930 (6th ed. 1990). A liquidated debt is that which has been made certain as to amount due by agreement of the parties or by operation of law. Id. Therefore, the concept of a liquidated debt relates to the amount of liability, not the existence of liability. See In re McGovern, 122 B.R. 712, 715 (Bankr. N.D. Ind. 1989); see also C. McCormick, Handbook on the Law of Damages, § 54 at 213 (1935). If the amount of the debt is dependent,

however, upon a future exercise of discretion, not restricted by specific criteria, the claim is unliquidated. See 1 T. Sedgwick, Measure of Damages, § 300 at 570 (9th ed. 1912).

Additionally

Nevertheless, the court cannot distinguish the case at bar from Verdunn. "The fact that Verdunn contests the Commissioner's claim does not remove it as a claim under section 109(e) or render it unliquidated." Verdunn, 89 F.3d at 802 n.9. (citing Knight, 55 F.3d at 235 (holding that a dispute debt is included in the § 109(e) calculus); In re Jordan, 166 B.R. 201, 202 (Bankr. D. Me. 1994) (holding that a dispute either of the underlying liability or the amount of a debt does not automatically render a debt contingent or unliquidated); and 1 William I. Norton, Jr., Bankruptcy Law & Practice § 18:12 (2d ed. 1994) (commenting that disputed debts are included in the calculation for eligibility purposes)

Under the law, the Debtor clearly has liability for the tax debt of Bariatric Associates, as of the date of the filing of the bankruptcy case and that debt should have been taken into account as the debt of the debtor. The Court's ruling , which did not take into account that debt is clearly error that warrants a reversal.

4. The Creditor further admitted the amounts of other non-consumer debts totaling $26,548.19:

    A. Line of Credit to Camden National Bank of $2,545.00
    B. Loan to Camden National Bank in the amount of $680.00
    C. Telephone Bill to Century Tel in the amount of $558.00
    D. Genezen HealthCare in the amount of $17,282.19
    E. Line of Credit to Whitney Bank of $5,483.00

5. One debt was properly in issue. The Debtor's husband incurred a debt to MBNA in the amount of $77,000.00 from MBNA to pay the taxes of the Debtor. Although the Debtor is not personally liable on that Debt, the Bankruptcy Case, the Bankruptcy Code is clear under Title 11 U.S.C. Section 523(a)(14) that a debt incurred to pay a tax that would be owed to the United States that would otherwise be nondischargeable pursuant to Title 11 U.S.C. Section 523(a)(1) is nondischargeable. There exist no dispute that this money was used to pay the Debtor's taxes;

however, the Debtor is not personally liable for the credit card.  In the case of <u>MBNA Am. v.</u>

<u>Chrusz (In re Chrusz)</u>, 196 B.R. 221(Bankr N.H. 1996) the Court rules that:

> The Defendant does not fare so well under Count IV. The Court finds for the
> Plaintiff on Count IV and excepts from discharge the amount of $ 13,641.60 for
> the following reasons.  Under section 523(a)(14), a debt incurred for the payment
> of a tax to the United States will be nondischargeable to the same extent it would
> be nondischargeable under section 523(a)(1). There is no question that the tax paid
> by the Defendant on April 16, 1995, would have been nondischargeable under
> section 523(a)(1) if not paid to the IRS.

For the purposes of this case, it is not necessary for the Court to rule on whether or not the

Appellant Debtor has liability for the MBNA debt, as the debts otherwise reflect that the Debtors

non-consumer debt is higher than the Debtor's consumer debt.

   6.  At the time of the Filing of the Petition, the Debtor owed Greenville Hospital the sum of 21

remaining months on the lease of the Debtor-Appellant to the Creditor-Appellee.  Although the

remaining balance of the lease, at the time of the filing, was $19,687.50, the Appellee has

represented to the Court that they were not trying to collect the unpaid rent and that the premises

had been released.  The figure owing on the lease as of the date of the filing of the bankruptcy

petition would have been $19,687.50.

   7.  There is a further debt, which has been omitted from the Creditor-Appellees calculations in

the amount of $19,029.83 to the Camden National Bank/Butler County Bank, incurred by the

Debtor-Appellant for Office Equipment and as shown by the reaffirmation agreement, Appendix

9, which is clearly a business debt.  This valid undisputed debt is totally ignored by the Court.

   The only consumer debt is to Brantley Bank and Trust.  The Bankruptcy Court found the

Debt to be for $290,000.00, even though clear evidence showed the Debt to be for $285,170.31

   It is undisputed that the Court found that the Non Consumer Debts were to:

| | |
|---|---|
| Internal Revenue Service | $   70,457.84 |
| Camden National Bank | $     2,545.00 |
| Camden National Bank | $        680.00 |
| Camden National Bank | $            1.00 |
| Century Tel | $        558.00 |
| Genezen Health Care | $   17,282.19 |
| Greenville Hospital | $165,140.00 |
| Whitney Bank | $     5,483.00 |
| Total | $262,147.03 |

Non Consumer Debts Arbitrarily omitted:

| | |
|---|---|
| Butler Co. Bank/Camden Natal | $19,029,83 |
| Internal Revenue Service | $38,967.36 |
| Total | $57,997.19 |

Lease Liability Omitted:

| | |
|---|---|
| Greenville Hospital | $19,687.50 |

   If the Court had not arbitrarily omitted from consideration the Debts of Butler County

Bank/Camden National Bank in the Amount of $19,029.83 and the Debts for taxes owned by the

Debtor's Subchapter "S" corporation, Bariatric Associates, in the amount of $38,967.36, the

unsecured non consumer debt of the Debtor would have been $320,144.22 .  If we add to this total

the Debt to Greenville Hospital for the unpaid portion of the lease, the figure for non-consumer

debt would be $339,831.72.  The Bankruptcy Courts omission of the Debts of Camden National

Bank/Butler County Bank, The Internal Revenue Service and the lease of Greenville Hospital was

clearly erroneous and arbitrary and in any event it is clear that the non consumer debt of the

Debtor is greater than the consumer debt of the Debtor and Title 11 U.S.C. 707(b) does not apply

to this case; therefore, the Motion to Dismiss was due to be denied.

CONCLUSION

The evidence is clear that the Debtor had one consumer debt, in the amount of $285,170.31 and non- consumer Debt of at least $339,831.72.  As the amount of consumer debt is less than the amount of non-consumer debt, Title 11 U.S.A. .Section 707(b) is inapplicable to this case and the Bankruptcy Court abused it's discretion in determining that the Debtor's case should be dismissed pursuant to Title 11 U.S.C. Section 707(b).  The Appellant request a reversal of the decision of the Bankruptcy Court.

/s/   **Richard D. Shinbaum**
Richard Shinbaum, SHI007
Attorney for the Debtor-Appellant

Of Counsel:
Shinbaum, Abell, McLeod and Campbell, P.C..
Post Office Box 201
Montgomery, Alabama 36101
(334) 269-4440
(334) 263-4096 Fax

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above styled motion was this day served upon the following, by placing the same in the United States Mail, properly addressed  and postage prepaid, and/or electronics transmission this the 4th day of September, 2007.

Bradley Richard High tower                    Hon. Daniel Hamm
Christian and Small                           Chapter 7 Trustee
505 20th Street North Ste 1800                560 South McDonough Street, Ste A
Birmingham. Al 35203-2696                     Montgomery, AL 36104

Teresa Jacobs
Bankruptcy Administrator
One Church Street
Montgomery, AL 36104

                               /s/ Richard D. Shinbaum
                               Richard D. Shinbaum
                               Attorney for the Debtor

(Official Form 1) (10/05)

| **United States Bankruptcy Court**<br>**Middle District of Alabama** | **Voluntary Petition** |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**Victoria, Deloris V.** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec./Complete EIN or other Tax ID No. (if more than one, state all)<br>**xxx-xx-7367** | Last four digits of Soc. Sec./Complete EIN or other Tax ID No. (if more than one, state all) |
| Street Address of Debtor (No. & Street, City, and State):<br>**225 Woodland Heights Dr**<br>**Greenville, AL**<br>ZIP Code **36037** | Street Address of Joint Debtor (No. & Street, City, and State):<br>ZIP Code |
| County of Residence or of the Principal Place of Business:<br>**Butler** | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br>ZIP Code | Mailing Address of Joint Debtor (if different from street address):<br>ZIP Code |
| Location of Principal Assets of Business Debtor<br>(if different from street address above): | |

| **Type of Debtor** (Form of Organization)<br>(Check one box) | **Nature of Business**<br>(Check all applicable boxes.) | **Chapter of Bankruptcy Code Under Which<br>the Petition is Filed** (Check one box) |
|---|---|---|

Type of Debtor (Form of Organization) (Check one box)
- ■ Individual (includes Joint Debtors)
- ☐ Corporation (includes LLC and LLP)
- ☐ Partnership
- ☐ Other (If debtor is not one of the above entities, check this box and provide the information requested below.)
  State type of entity:

Nature of Business (Check all applicable boxes.)
- ☐ Health Care Business
- ☐ Single Asset Real Estate as defined in 11 U.S.C. § 101 (51B)
- ☐ Railroad
- ☐ Stockbroker
- ☐ Commodity Broker
- ☐ Clearing Bank
- ☐ Nonprofit Organization qualified under 26 U.S.C. § 501(c)(3)

Chapter of Bankruptcy Code Under Which the Petition is Filed (Check one box)
- ■ Chapter 7
- ☐ Chapter 9
- ☐ Chapter 11
- ☐ Chapter 12
- ☐ Chapter 13
- ☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding
- ☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding

**Nature of Debts** (Check one box)
- ☐ Consumer/Non-Business
- ■ Business

| **Filing Fee** (Check one box) | **Chapter 11 Debtors** |
|---|---|

Filing Fee (Check one box)
- ■ Full Filing Fee attached
- ☐ Filing Fee to be paid in installments (Applicable to individuals only) Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.
- ☐ Filing Fee waiver requested (Applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B.

Chapter 11 Debtors
Check one box:
- ☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).
- ☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).
Check if:
- ☐ Debtor's aggregate noncontingent liquidated debts owed to non-insiders or affiliates are less than $2 million.

**Statistical/Administrative Information**          *** C. Brandon Sellers, III ***          THIS SPACE IS FOR COURT USE ONLY
- ■ Debtor estimates that funds will be available for distribution to unsecured creditors.
- ☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

Estimated Number of Creditors

| 1-<br>49 | 50-<br>99 | 100-<br>199 | 200-<br>999 | 1000-<br>5,000 | 5001-<br>10,000 | 10,001-<br>25,000 | 25,001-<br>50,000 | 50,001-<br>100,000 | OVER<br>100,000 |
|---|---|---|---|---|---|---|---|---|---|
| ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

Estimated Assets

| $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001 to<br>$1 million | $1,000,001 to<br>$10 million | $10,000,001 to<br>$50 million | $50,000,001 to<br>$100 million | More than<br>$100 million |
|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ■ | ☐ | ☐ | ☐ | ☐ | ☐ |

Estimated Debts

| $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001 to<br>$1 million | $1,000,001 to<br>$10 million | $10,000,001 to<br>$50 million | $50,000,001 to<br>$100 million | More than<br>$100 million |
|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ■ | ☐ | ☐ | ☐ | ☐ |

(Official Form 1) (10/05)                                                                                                    FORM B1, Page 2

| **Voluntary Petition**<br>*(This page must be completed and filed in every case)* | Name of Debtor(s):<br>**Victoria, Deloris V.** |
|---|---|

| **Prior Bankruptcy Case Filed Within Last 8 Years** (If more than one, attach additional sheet) | | |
|---|---|---|
| Location<br>Where Filed:  **- None -** | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet) | | |
|---|---|---|
| Name of Debtor:<br>**- None -** | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

<table>
<tr>
<td>
<strong>Exhibit A</strong>
(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)
☐ Exhibit A is attached and made a part of this petition.
</td>
<td>
<strong>Exhibit B</strong><br>(To be completed if debtor is an individual whose debts are primarily consumer debts.)
I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter.<br>I further certify that I delivered to the debtor the notice required by §342(b) of the Bankruptcy Code.
X _____<br>   Signature of Attorney for Debtor(s)       Date
</td>
</tr>
<tr>
<td>
<strong>Exhibit C</strong>
Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?
☐ Yes, and Exhibit C is attached and made a part of this petition.
■ No
</td>
<td>
<strong>Certification Concerning Debt Counseling<br>by Individual/Joint Debtor(s)</strong>
■ I/we have received approved budget and credit counseling during the 180-day period preceding the filing of this petition.
☐ I/we request a waiver of the requirement to obtain budget and credit counseling prior to filing based on exigent circumstances. (Must attach certification describing.)
</td>
</tr>
</table>

**Information Regarding the Debtor (Check the Applicable Boxes)**

**Venue** (Check any applicable box)

■    Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐    There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐    Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Statement by a Debtor Who Resides as a Tenant of Residential Property**
*Check all applicable boxes.*

☐    Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

           _____
           (Name of landlord that obtained judgment)

           _____
           (Address of landlord)

☐    Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐    Debtor has included in this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

(Official Form 1) (10/05)                                                                                    **FORM B1, Page 3**

| **Voluntary Petition** | Name of Debtor(s): |
| --- | --- |
| *(This page must be completed and filed in every case)* | **Victoria, Deloris V.** |

**Signatures**

| **Signature(s) of Debtor(s) (Individual/Joint)** | **Signature of a Foreign Representative** |
| --- | --- |

I declare under penalty of perjury that the information provided in this petition is true and correct.
[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.
[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by §342(b) of the Bankruptcy Code.

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

**X** /s/ Deloris V. Victoria
Signature of Debtor **Deloris V. Victoria**

**X** _____
Signature of Joint Debtor

_____
Telephone Number (If not represented by attorney)

**September 25, 2006**
Date

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only one box.)

☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by §1515 of title 11 are attached.

☐ Pursuant to §1511 of title 11, United States Code, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

**X** _____
Signature of Foreign Representative

_____
Printed Name of Foreign Representative

_____
Date

---

**Signature of Attorney**

**X** /s/ C. Brandon Sellers, III
Signature of Attorney for Debtor(s)

**C. Brandon Sellers, III**
Printed Name of Attorney for Debtor(s)

**Shinbaum, Abell, McLeod & Vann, P.C.**
Firm Name

**566 South Perry Street**
**Post Office Box 201**
**Montgomery, AL 36101-0201**
Address

**334-269-4440  Fax: 334-263-4440**
Telephone Number

**September 25, 2006**
Date

---

**Signature of Non-Attorney Bankruptcy Petition Preparer**

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19B is attached.

_____
Printed Name and title, if any, of Bankruptcy Petition Preparer

_____
Social Security number (If the bankrupcty petition preparer is not an individual, state the Social Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.)(Required by 11 U.S.C. § 110.)

_____
Address

**X** _____

_____
Date

Signature of Bankruptcy Petition Preparer or officer, principal, responsible person,or partner whose social security number is provided above.

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual:

---

**Signature of Debtor (Corporation/Partnership)**

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

**X** _____
Signature of Authorized Individual

_____
Printed Name of Authorized Individual

_____
Title of Authorized Individual

_____
Date

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both 11 U.S.C. §110; 18 U.S.C. §156.*

Form 6-Summary
(10/05)

# United States Bankruptcy Court
## Middle District of Alabama

In re    **Deloris V. Victoria**

                                             ,    Debtor

Case No. _____

Chapter _____ **7** _____

# SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors must also complete the "Statistical Summary of Certain Liabilities."

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | AMOUNTS SCHEDULED | | |
| --- | --- | --- | --- | --- | --- |
| | | | ASSETS | LIABILITIES | OTHER |
| A - Real Property | Yes | 1 | 377,800.00 | | |
| B - Personal Property | Yes | 3 | 54,800.00 | | |
| C - Property Claimed as Exempt | Yes | 1 | | | |
| D - Creditors Holding Secured Claims | Yes | 1 | | 309,000.00 | |
| E - Creditors Holding Unsecured Priority Claims | Yes | 3 | | 60,877.74 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 3 | | 273,308.00 | |
| G - Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H - Codebtors | Yes | 1 | | | |
| I - Current Income of Individual Debtor(s) | Yes | 2 | | | 15,400.00 |
| J - Current Expenditures of Individual Debtor(s) | Yes | 1 | | | 13,510.00 |
| Total Number of Sheets of ALL Schedules | | 17 | | | |
| Total Assets | | | 432,600.00 | | |
| Total Liabilities | | | | 643,185.74 | |

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

Form 6-Summ2
(10/05)

# United States Bankruptcy Court
## Middle District of Alabama

In re    **Deloris V. Victoria**

_____,
                                    Debtor

Case No. _____

Chapter_____**7**_____

# STATISTICAL SUMMARY OF CERTAIN LIABILITIES (28 U.S.C. § 159)
## [Individual Debtors Only]

Summarize the following types of liabilities, as reported in the Schedules, and total them.

| Type of Liability | Amount |
|---|---|
| Domestic Support Obligations (from Schedule E) | 0.00 |
| Taxes and Certain Other Debts Owed to Governmental Units (from Schedule E) | 60,877.74 |
| Claims for Death or Personal Injury While Debtor Was Intoxicated (from Schedule E) | 0.00 |
| Student Loan Obligations (from Schedule F) | 0.00 |
| Domestic Support, Separation Agreement, and Divorce Decree Obligations Not Reported on Schedule E | 0.00 |
| Obligations to Pension or Profit-Sharing, and Other Similar Obligations (from Schedule F) | 0.00 |
| TOTAL | 60,877.74 |

**The foregoing information is for statistical purposes only under 28 U.S.C § 159.**

Form B6A
(10/05)

In re    **Deloris V. Victoria**                                                                                    ,    Case No. _____

                                                                            Debtor

# SCHEDULE A. REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **225 WOODLAND HEIGHTS DR, GREENVILLE AL-- SINGLE FAMILY RESIDENCE VALUE LISTED IS TAX ASSESSED VALUE** | - | | 373,800.00 | 290,000.00 |
| **ISLE OF VALLEY, ORLANDAO FL** | | J | 4,000.00 | 0.00 |

|  | Sub-Total > | **377,800.00** | (Total of this page) |
|---|---|---|---|
|  | Total > | **377,800.00** | |

**0**    continuation sheets attached to the Schedule of Real Property

                                                                            (Report also on Summary of Schedules)

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                        Best Case Bankruptcy

Form B6B
(10/05)

In re    **Deloris V. Victoria**                                                                    ,    Case No. _____
_____
                                         Debtor

# SCHEDULE B. PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property." In providing the information requested in this schedule, do not include the name or address of a minor child.

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 1.  Cash on hand | | **CASH** | - | 300.00 |
| 2.  Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | **CHECKING ACCOUNT - WHITNEY BANK**  **CHECKING ACCOUNT - BUTLER COUNTY BANK** | -  - | 2,000.00  500.00 |
| 3.  Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4.  Household goods and furnishings, including audio, video, and computer equipment. | | **HOUSEHOLD GOODS** | - | 7,000.00 |
| 5.  Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6.  Wearing apparel. | | **WEARING APPAREL** | - | 1,000.00 |
| 7.  Furs and jewelry. | | **JEWELRY** | - | 5,000.00 |
| 8.  Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9.  Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |
| 10. Annuities. Itemize and name each issuer. | X | | | |

Sub-Total >            15,800.00
(Total of this page)

__2__ continuation sheets attached to the Schedule of Personal Property

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                                                    Best Case Bankruptcy

Form B6B
(10/05)

In re    **Deloris V. Victoria**                                                                                    ,    Case No. _____
                                                                   Debtor

# SCHEDULE B. PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c); Rule 1007(b)). | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | **SEP** | | - | **20,000.00** |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | X | | | |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owing debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | | **POSSIBLE BREECH OF CONTRACT SUIT AGAINST DR. LILITH NAMI. SUIT NOT YET FILED. ATTORNEY RICHARD HARTLEY** | - | **Unknown** |

Sub-Total >        **20,000.00**
(Total of this page)

Sheet __1__ of __2__ continuation sheets attached
to the Schedule of Personal Property

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                                                    Best Case Bankruptcy

Form B6B
(10/05)

In re     **Deloris V. Victoria**                                            ,     Case No. _____
                                                    Debtor

## SCHEDULE B. PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | X | | | |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | | COMPUTERS, EKG, TABLES, CHAIRS | - | 19,000.00 |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |

|  | |
|---|---|
| Sub-Total > | 19,000.00 |
| (Total of this page) | |
| Total > | 54,800.00 |

Sheet __2__ of __2__ continuation sheets attached
to the Schedule of Personal Property

(Report also on Summary of Schedules)

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                        Best Case Bankruptcy

Form B6C
(10/05)

In re   **Deloris V. Victoria**                                                                        Case No. _____

_____ ,
                                          Debtor

# SCHEDULE C. PROPERTY CLAIMED AS EXEMPT

Debtor elects the exemptions to which debtor is entitled under:          ☐ Check if debtor claims a homestead exemption that exceeds
(Check one box)                                                              $125,000.
  ☐ 11 U.S.C. §522(b)(2)
  ■ 11 U.S.C. §522(b)(3)

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| **Real Property** | | | |
| 225 WOODLAND HEIGHTS DR, GREENVILLE AL-- SINGLE FAMILY RESIDENCE VALUE LISTED IS TAX ASSESSED VALUE | Ala. Code §§ 6-10-2, 6-10-3, 6-10-4; Const. Art. X, § 205 | 5,000.00 | 373,800.00 |
| ISLE OF VALLEY, ORLANDAO FL | Ala. Code § 6-10-6 | 0.00 | 4,000.00 |
| **Cash on Hand** | | | |
| CASH | Ala. Code § 6-10-6 | 300.00 | 300.00 |
| **Checking, Savings, or Other Financial Accounts, Certificates of Deposit** | | | |
| CHECKING ACCOUNT - WHITNEY BANK | Ala. Code § 6-10-6 | 2,000.00 | 2,000.00 |
| CHECKING ACCOUNT - BUTLER COUNTY BANK | Ala. Code § 6-10-6 | 500.00 | 500.00 |
| **Household Goods and Furnishings** | | | |
| HOUSEHOLD GOODS | Ala. Code § 6-10-6 | 200.00 | 7,000.00 |
| **Wearing Apparel** | | | |
| WEARING APPAREL | Ala. Code §§ 6-10-6, 6-10-126 | 1,000.00 | 1,000.00 |
| **Furs and Jewelry** | | | |
| JEWELRY | Ala. Code § 6-10-6 | 0.00 | 5,000.00 |
| **Interests in IRA, ERISA, Keogh, or Other Pension or Profit Sharing Plans** | | | |
| SEP | Ala. Code § 19-3-1 | 20,000.00 | 20,000.00 |
| **Office Equipment, Furnishings and Supplies** | | | |
| COMPUTERS, EKG, TABLES, CHAIRS | Ala. Code § 6-10-126 | 0.00 | 19,000.00 |

|   | Total: | 29,000.00 | 432,600.00 |
|---|---|---|---|

__0__   continuation sheets attached to Schedule of Property Claimed as Exempt

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                          Best Case Bankruptcy

Form B6D
(10/05)

In re   **Deloris V. Victoria**                                                                          ,    Case No. _____

                                                    Debtor

## SCHEDULE D. CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C.§112; Fed.R.Bankr.P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community." If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

☐   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|---|---|
| | | H | W | J C | | | | | | |
| Account No. | | | | | Mortgage | | | | | |
| Creditor #: 1 **BRANTLEY BANK & TRUST** P.O. BOX 25 BRANTLEY, AL 36009 | | | | | **225 WOODLAND HEIGHTS DR, GREENVILLE AL-- SINGLE FAMILY RESIDENCE VALUE LISTED IS TAX ASSESSED VALUE** | | | | | |
| | | | | | Value $              373,800.00 | | | | 290,000.00 | 0.00 |
| Account No. **9481** | | | | | 03-2006 | | | | | |
| Creditor #: 2 **CAMDEN NATIONAL** 3 WATER STREET Camden, AL 36726 | | | | | **SECURITY AGREEMENT** **COMPUTERS, EKG, TABLES, CHAIRS** | | | | | |
| | | | | | Value $               19,000.00 | | | | 19,000.00 | 0.00 |
| Account No. | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | Value $ | | | | | |
| Account No. | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | Value $ | | | | | |

**0**    continuation sheets attached

|  | Subtotal (Total of this page) | 309,000.00 |
|---|---|---|
|  | Total (Report on Summary of Schedules) | 309,000.00 |

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                                                                    Best Case Bankruptcy

Form B6E
(10-05)

In re    **Deloris V. Victoria**                                        ,    Case No. _____

Debtor

# SCHEDULE E. CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name, mailing address, including zip code, and last four digits of the account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of the petition. Use a separate continuation sheet for each type of priority and label each with the type of priority.

The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C.§112; Fed.R.Bankr.P. 1007(m).

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether husband, wife, both of them or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community". If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Report the total of claims listed on each sheet in the box labeled "Subtotal" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

Report the total of all amounts entitled to priority listed on each sheet in the box labeled "Subtotal" on each sheet. Report the total of all amounts entitled to priority listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. If applicable, also report this total on the Means Test form.

☐ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS** (Check the appropriate box(es) below if claims in that category are listed on the attached sheets.)

☐ **Domestic support obligations**
Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐ **Extensions of credit in an involuntary case**
Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(3).

☐ **Wages, salaries, and commissions**
Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $10,000* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, which ever occurred first, to the extent provided in 11 U.S.C. § 507 (a)(4).

☐ **Contributions to employee benefit plans**
Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

☐ **Certain farmers and fishermen**
Claims of certain farmers and fishermen, up to $4,925* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).

☐ **Deposits by individuals**
Claims of individuals up to $2,225* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided. 11 U.S.C. § 507(a)(7).

■ **Taxes and certain other debts owed to governmental units**
Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C § 507(a)(8).

☐ **Commitments to maintain the capital of an insured depository institution**
Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution. 11 U.S.C. § 507(a)(9).

☐ **Claims for death or personal injury while debtor was intoxicated**
Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance. 11 U.S.C. § 507(a)(10).

*Amounts are subject to adjustment on April 1, 2007, and every three years thereafter with respect to cases commenced on or after the date of adjustment.         **2**     continuation sheets attached

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                        Best Case Bankruptcy

Form B6E - Cont.
(10/05)

In re   **Deloris V. Victoria**                         ,       Case No. _____

                                     Debtor

# SCHEDULE E. CREDITORS HOLDING UNSECURED PRIORITY CLAIMS
(Continuation Sheet)

Taxes and Certain Other Debts
Owed to Governmental Units

TYPE OF PRIORITY

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | Husband, Wife, Joint, or Community | | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM | AMOUNT ENTITLED TO PRIORITY |
| | | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM | | | | | |
|---|---|---|---|---|---|---|---|---|
| Account No.<br>**Creditor #: 1**<br>**INTERNAL REVENUE SERVICE**<br>**SPECIAL PROCEDURES FUNCTION**<br>**801 TOM MARTIN DR., ROOM 126**<br>**BIRMINGHAM, AL 35211** | - | | **2003**<br><br>**2003 TAXES** | | | | **5,600.27** | **5,600.27** |
| Account No.<br><br>Representing:<br>**INTERNAL REVENUE SERVICE** | | | **HON. PATRICIA CONOVER**<br>**ASSISTANT UNITED STATES ATTY.**<br>**P.O. BOX 197**<br>**MONTGOMERY, AL 36101** | | | | | |
| Account No.<br><br>Representing:<br>**INTERNAL REVENUE SERVICE** | | | **INTERNAL REVENUE SERVICE**<br>**P O BOX 21126**<br>**Philadelphia, PA 19114** | | | | | |
| Account No.<br>**Creditor #: 2**<br>**INTERNAL REVENUE SERVICE**<br>**SPECIAL PROCEDURES FUNCTION**<br>**801 TOM MARTIN DR., ROOM 126**<br>**BIRMINGHAM, AL 35211** | - | | **2005**<br><br>**2005 TAXES** | | | | **9,147.63** | **9,147.63** |
| Account No.<br><br>Representing:<br>**INTERNAL REVENUE SERVICE** | | | **HON. PATRICIA CONOVER**<br>**ASSISTANT UNITED STATES ATTY.**<br>**P.O. BOX 197**<br>**MONTGOMERY, AL 36101** | | | | | |

Sheet __1__ of __2__ continuation sheets attached to
Schedule of Creditors Holding Unsecured Priority Claims

Subtotal
(Total of this page)

| | |
|---|---|
| **14,747.90** | **14,747.90** |

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037          Best Case Bankruptcy

Form B6E - Cont.
(10/05)

In re    __Deloris V. Victoria_____,    Case No. _____
                                    Debtor

# SCHEDULE E. CREDITORS HOLDING UNSECURED PRIORITY CLAIMS
(Continuation Sheet)

Taxes and Certain Other Debts
Owed to Governmental Units

TYPE OF PRIORITY

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | CODEBTOR | Husband, Wife, Joint, or Community | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM | AMOUNT ENTITLED TO PRIORITY |
|---|---|---|---|---|---|---|---|---|
| Account No.<br><br>Representing:<br>**INTERNAL REVENUE SERVICE** | | | **INTERNAL REVENUE SERVICE**<br>**P O BOX 21126**<br>**Philadelphia, PA 19114** | | | | | |
| Account No.<br>**Creditor #: 3**<br>**INTERNAL REVENUE SERVICE**<br>**SPECIAL PROCEDURES FUNCTION**<br>**801 TOM MARTIN DR., ROOM 126**<br>**BIRMINGHAM, AL 35211** | | - | **2004 taxes** | | | | 23,892.40 | 23,892.40 |
| Account No. **xx-xxx7031**<br>**Creditor #: 4**<br>**INTERNAL REVENUE SERVICE**<br>**SPECIAL PROCEDURES FUNCTION**<br>**801 TOM MARTIN DR., ROOM 126**<br>**BIRMINGHAM, AL 35211** | | - | **Taxes of Bariatric Medicine** | | | | 17,689.82 | 17,689.82 |
| Account No.<br>**Creditor #: 5**<br>**STATE OF ALABAMA**<br>**DEPARTMENT OF REVENUE**<br>**P.O. BOX 320001**<br>**MONTGOMERY, AL 36132** | | - | **2003 Taxes** | | | | 1,547.62 | 1,547.62 |
| Account No.<br>**Creditor #: 6**<br>**STATE OF ALABAMA**<br>**DEPARTMENT OF REVENUE**<br>**P.O. BOX 320001**<br>**MONTGOMERY, AL 36132** | | - | **2004 and 2005 Taxes estimated** | | | | 3,000.00 | 3,000.00 |
| Sheet __2__ of __2__ continuation sheets attached to Schedule of Creditors Holding Unsecured Priority Claims | | | Subtotal<br>(Total of this page) | | | | 46,129.84 | 46,129.84 |
| | | | Total<br>(Report on Summary of Schedules) | | | | 60,877.74 | 60,877.74 |

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                    Best Case Bankruptcy

Form B6F
(10/05)

In re    **Deloris V. Victoria**                                                                    Case No. _____
                                                                                            ,
                                                        Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C.§112; Fed.R.Bankr.P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community maybe liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

☐    Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
| | | H | W | J | C | | | | | | |
| Account No. | | | | | | | 09-2005 LINE OF CREDIT | | | | |
| Creditor #: 1 CAMDEN NATIONAL 3 WATER STREET Camden, AL 36726 | | - | | | | | | | | | |
| | | | | | | | | | | | 2,545.00 |
| Account No. x8652 | | | | | | | 09-2004 DISPUTED DEBT | | | | |
| Creditor #: 2 CAMDEN NATIONAL 3 WATER STREET Camden, AL 36726 | | - | | | | | | | | X | |
| | | | | | | | | | | | 1.00 |
| Account No. x7851 | | | | | | | 06-2004 LOAN | | | | |
| Creditor #: 3 CAMDEN NATIONAL 3 WATER STREET Camden, AL 36726 | | - | | | | | | | | | |
| | | | | | | | | | | | 680.00 |
| Account No. xxxxx2276 | | | | | | | 03-2005 COLLECTION ACCOUNT | | | | |
| Creditor #: 4 CENTURYTEL PO BOX 6001 Marion, LA 71260-6001 | | | | | | | | | | | |
| | | | | | | | | | | | 558.00 |
| __2__ continuation sheets attached | | | | | | | | Subtotal (Total of this page) | | | 3,784.00 |

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                            S/N:34718-060831    Best Case Bankruptcy

Form B6F - Cont.
(10/05)

In re    **Deloris V. Victoria**                                                                    Case No. _____

_____,
Debtor

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM.  IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| | | H | W J | C | | | | | |
| Account No. | | | | | BANK OF AMERICA PO BOX 41466 Philadelphia, PA 19101 | | | | |
| Representing: CENTURYTEL | | | | | | | | | |
| Account No. Creditor #: 5 GENEZEN HEALTHCARE PO BOX 571811 Houston, TX 77257 | | - | | | 2005 Pending Suit non consumer debt BUTLER COUNTY CV 05-177 Suit involving patient accounts | | | | 18,000.00 |
| Account No. Representing: GENEZEN HEALTHCARE | | | | | DAVID C. SCHWARTZ, ESQ. PO BOX 11366 Birmingham, AL 35202-1366 | | | | |
| Account No. Creditor #: 6 GREENVILLE HOSPITAL DBA LV STABLER MEMORIAL 29 STABLER DR Greenville, AL 36037 | | - | | | 2005 JUDGEMENT NON CONSUMER DEBT BUTLER COUNTY CV 05-133 SUIT ON CONTRACT INVOLVING TERMINATION OF DOCTOR | | | | 168,000.00 |
| Account No. Representing: GREENVILLE HOSPITAL | | | | | GREER B. MALLETTE, ESQ 505 20TH ST N., STE 1800 Birmingham, AL 35203-2696 | | | | |

Sheet no. _1_ of _2_ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)                                          186,000.00

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                          Best Case Bankruptcy

Form B6F - Cont.
(10/05)

In re    **Deloris V. Victoria**                                      ,    Case No. _____
                                    Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| | | H | W J | C | | | | | |
| Account No. | | | | | 08-1999 CREDIT CARD | | | | |
| Creditor #: 7 **MBNA AMERICA** PO BOX 17054 Wilmington, DE 19884 | X | | J | | | | | | 9,663.00 |
| Account No. | | | | | 10-1995 CREDIT CARD | | | | |
| Creditor #: 8 **MBNA AMERICA** PO BOX 17054 Wilmington, DE 19884 | X | | J | | | | | | 3,378.00 |
| Account No. | | | | | 04-1994 **Non Consumer business accout credit card for purchase of medical equipment and supplies.** | | | | |
| Creditor #: 9 **MBNA AMERICA** PO BOX 17054 Wilmington, DE 19884 | X | | J | | | | | | 65,000.00 |
| Account No. | | | | | 12-1999 LINE OF CREDIT | | | | |
| Creditor #: 10 **WHITNEY BANK** 228 ST CHARLES AVE New Orleans, LA 70130 | - | | | | | | | | 5,483.00 |
| Account No. | | | | | | | | | |

Sheet no. __2__ of __2__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

|  | Subtotal (Total of this page) | 83,524.00 |
|---|---|---|
|  | Total (Report on Summary of Schedules) | 273,308.00 |

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

Form B6G
(10/05)

In re     **Deloris V. Victoria**                                                    Case No. _____
                                                                    ,
                                    Debtor

# SCHEDULE G. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property.  Include any timeshare interests.  State nature of debtor's interest in contract, i.e., "Purchaser", "Agent", etc.  State whether debtor is the lessor or lessee of a lease.  Provide the names and complete mailing addresses of all other parties to each lease or contract described.  If a minor child is a party to one of the leases or contracts, indicate that by stating "a minor child" and do not disclose the child's name.  See 11 U.S.C. § 112;  Fed.R. Bankr. P. 1007(m).

■ Check this box if debtor has no executory contracts or unexpired leases.

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
|---|---|
| | |

_0_   continuation sheets attached to Schedule of Executory Contracts and Unexpired Leases

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                               Best Case Bankruptcy

Form B6H
(10/05)

In re   **Deloris V. Victoria**                             ,       Case No. _____

                                       Debtor

# SCHEDULE H. CODEBTORS

    Provide the information requested concerning any person or entity, other than a spouse in a joint case, that is also liable on any debts listed by debtor in the schedules of creditors. Include all guarantors and co-signers. If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within the eight year period immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state, commonwealth, or territory. Include all names used by the nondebtor spouse during the eight years immediately preceding the commencement of this case. If a minor child is a codebtor or a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C. § 112; Fed. Bankr. P. 1007(m).

☐  Check this box if debtor has no codebtors.

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|
| **EDGAR VICTORIA**<br>**225 WOODLAND HEIGHTS DR**<br>**Greenville, AL 36037** | **MBNA AMERICA**<br>**PO BOX 17054**<br>**Wilmington, DE 19884** |
| **EDGAR VICTORIA**<br>**225 WOODLAND HEIGHTS DR**<br>**Greenville, AL 36037** | **MBNA AMERICA**<br>**PO BOX 17054**<br>**Wilmington, DE 19884** |
| **EGAR VICTORIA**<br>**225 WOODLAND HEIGHTS DR**<br>**Greenville, AL 36037** | **MBNA AMERICA**<br>**PO BOX 17054**<br>**Wilmington, DE 19884** |

   __0__   continuation sheets attached to Schedule of Codebtors

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

Form B6I
(10/05)

In re __Deloris V. Victoria_____    Case No. _____
                        Debtor(s)

## SCHEDULE I. CURRENT INCOME OF INDIVIDUAL DEBTOR(S)

The column labeled "Spouse" must be completed in all cases filed by joint debtors and by a married debtor in a chapter 7, 11, 12, or 13 case whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. Do not state the name of any minor child.

| Debtor's Marital Status: | DEPENDENTS OF DEBTOR AND SPOUSE | |
|---|---|---|
| **Married** | RELATIONSHIP: **None.** | AGE: |

| Employment: | DEBTOR | SPOUSE |
|---|---|---|
| Occupation | **PHYSICIAN** | **PHYSICIAN** |
| Name of Employer | **DR. DELORIS VICTORIA** | |
| How long employed | **20 YRS** | **20 YRS** |
| Address of Employer | **250 WOODLAND HEIGHTS DR** **Greenville, AL 36037** | |

| INCOME: (Estimate of average monthly income) | | DEBTOR | | SPOUSE |
|---|---|---|---|---|
| 1. Current monthly gross wages, salary, and commissions (Prorate if not paid monthly.) | $ | **15,000.00** | $ | **20,000.00** |
| 2. Estimate monthly overtime | $ | **0.00** | $ | **0.00** |
| 3. SUBTOTAL | $ | **15,000.00** | $ | **20,000.00** |
| 4. LESS PAYROLL DEDUCTIONS | | | | |
| a. Payroll taxes and social security | $ | **0.00** | $ | **0.00** |
| b. Insurance | $ | **0.00** | $ | **0.00** |
| c. Union dues | $ | **0.00** | $ | **0.00** |
| d. Other (Specify) **See Detailed Income Attachment** | $ | **9,600.00** | $ | **10,000.00** |
| 5. SUBTOTAL OF PAYROLL DEDUCTIONS | $ | **9,600.00** | $ | **10,000.00** |
| 6. TOTAL NET MONTHLY TAKE HOME PAY | $ | **5,400.00** | $ | **10,000.00** |
| 7. Regular income from operation of business or profession or farm. (Attach detailed statement) | $ | **0.00** | $ | **0.00** |
| 8. Income from real property | $ | **0.00** | $ | **0.00** |
| 9. Interest and dividends | $ | **0.00** | $ | **0.00** |
| 10. Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above. | $ | **0.00** | $ | **0.00** |
| 11. Social security or other government assistance (Specify): | $ | **0.00** | $ | **0.00** |
| | $ | **0.00** | $ | **0.00** |
| 12. Pension or retirement income | $ | **0.00** | $ | **0.00** |
| 13. Other monthly income (Specify): | $ | **0.00** | $ | **0.00** |
| | $ | **0.00** | $ | **0.00** |
| 14. SUBTOTAL OF LINES 7 THROUGH 13 | $ | **0.00** | $ | **0.00** |
| 15. TOTAL MONTHLY INCOME (Add amounts shown on lines 6 and 14) | $ | **5,400.00** | $ | **10,000.00** |

16. TOTAL COMBINED MONTHLY INCOME:    $ _____**15,400.00**          (Report also on Summary of Schedules)

17. Describe any increase or decrease in income reasonably anticipated to occur within the year following the filing of this document:

Form B6I
(10/05)

In re __Deloris V. Victoria_____     Case No. _____
                                    Debtor(s)

## SCHEDULE I. CURRENT INCOME OF INDIVIDUAL DEBTOR(S)
### Detailed Income Attachment

**Other Payroll Deductions:**

| | | | |
|---|---|---|---|
| BILLING | $ | 1,200.00 | $ 2,000.00 |
| PAYROLL | $ | 3,500.00 | $ 5,000.00 |
| OFFICE EXPENSES | $ | 3,400.00 | $ 3,000.00 |
| UTILITIES, ETC | $ | 1,500.00 | $ 0.00 |
| **Total Other Payroll Deductions** | $ | 9,600.00 | $ 10,000.00 |

Form B6J
(10/05)

In re __Deloris V. Victoria_____    Case No. _____
                            Debtor(s)

# SCHEDULE J. CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)

Complete this schedule by estimating the average monthly expenses of the debtor and the debtor's family.  Pro rate any payments made bi-weekly, quarterly, semi-annually, or annually to show monthly rate.

☐   Check this box if a joint petition is filed and debtor's spouse maintains a separate household.  Complete a separate schedule of expenditures labeled "Spouse."

| | | | |
|---|---|---|---:|
| 1. Rent or home mortgage payment (include lot rented for mobile home) | | $ | 4,000.00 |
| a. Are real estate taxes included? | Yes ___ | No __X__ | |
| b. Is property insurance included? | Yes ___ | No __X__ | |
| 2. Utilities:   a. Electricity and heating fuel | | $ | 350.00 |
| b. Water and sewer | | $ | 80.00 |
| c. Telephone | | $ | 300.00 |
| d. Other __Cable_____ | | $ | 80.00 |
| 3. Home maintenance (repairs and upkeep) | | $ | 250.00 |
| 4. Food | | $ | 400.00 |
| 5. Clothing | | $ | 150.00 |
| 6. Laundry and dry cleaning | | $ | 100.00 |
| 7. Medical and dental expenses | | $ | 100.00 |
| 8. Transportation (not including car payments) | | $ | 700.00 |
| 9. Recreation, clubs and entertainment, newspapers, magazines, etc. | | $ | 100.00 |
| 10. Charitable contributions | | $ | 1,000.00 |
| 11. Insurance (not deducted from wages or included in home mortgage payments) | | | |
| a. Homeowner's or renter's | | $ | 100.00 |
| b. Life | | $ | 600.00 |
| c. Health | | $ | 400.00 |
| d. Auto | | $ | 1,200.00 |
| e. Other _____ | | $ | 0.00 |
| 12. Taxes (not deducted from wages or included in home mortgage payments) | | | |
| (Specify) _____ | | $ | 0.00 |
| 13. Installment payments: (In chapter 11, 12 and 13 cases, do not list payments to be included in the plan.) | | | |
| a. Auto | | $ | 0.00 |
| b. Other _____ | | $ | 0.00 |
| c. Other _____ | | $ | 0.00 |
| d. Other _____ | | $ | 0.00 |
| 14. Alimony, maintenance, and support paid to others | | $ | 0.00 |
| 15. Payments for support of additional dependents not living at your home | | $ | 0.00 |
| 16. Regular expenses from operation of business, profession, or farm (attach detailed statement) | | $ | 0.00 |
| 17. Other   **SPOUSES DEBTS**_____ | | $ | 3,500.00 |
| Other   **MISCELLANEOUS**_____ | | $ | 100.00 |
| 18. TOTAL MONTHLY EXPENSES (Report also on Summary of Schedules) | | $ | 13,510.00 |

19. Describe any increase or decrease in expenditures reasonably anticipated to occur within the year following the filing of this document:

_____

| | | |
|---|---|---:|
| 20. STATEMENT OF MONTHLY NET INCOME | | |
| a.   Total monthly income from Line 16 of Schedule I | $ | 15,400.00 |
| b.   Total monthly expenses from Line 18 above | $ | 13,510.00 |
| c.   Monthly net income (a. minus b.) | $ | 1,890.00 |

Official Form 6-Decl.
(10/05)

# United States Bankruptcy Court
## Middle District of Alabama

In re  **Deloris V. Victoria**

Debtor(s)

Case No.

Chapter  **7**

# DECLARATION CONCERNING DEBTOR'S SCHEDULES

## DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of ___**19**___ sheets *[total shown on summary page plus 2]*, and that they are true and correct to the best of my knowledge, information, and belief.

Date **September 25, 2006**

Signature  **/s/ Deloris V. Victoria**

**Deloris V. Victoria**
Debtor

*Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§ 152 and 3571.

Software Copyright (c) 1996-2003 Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

Official Form 7
(10/05)

# United States Bankruptcy Court
## Middle District of Alabama

In re **Deloris V. Victoria** _____

Debtor(s)

Case No. _____

Chapter **7**

# STATEMENT OF FINANCIAL AFFAIRS

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs. Do not include the name or address of a minor child in this statement. Indicate payments, transfers and the like to minor children by stating "a minor child." See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

Questions 1 - 18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25. **If the answer to an applicable question is "None," mark the box labeled "None."** If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

*DEFINITIONS*

*"In business."* A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed full-time or part-time. An individual debtor also may be "in business" for the purpose of this form if the debtor engages in a trade, business, or other activity, other than as an employee, to supplement income from the debtor's primary employment.

*"Insider."* The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any owner of 5 percent or more of the voting or equity securities of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; any managing agent of the debtor. 11 U.S.C. § 101.

---

**1. Income from employment or operation of business**

None
☐

State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business, including part-time activities either as an employee or in independent trade or business, from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the **two years** immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE |
|---|---|
| $96,000.00 | YTD-- SELF EMPLOYED/JOINT RETURN |
| $180,000.00 | 2005-- SELF EMPLOYED/JOINT RETURN |
| $180,000.00 | 2004-- SELF EMPLOYED/JOINT RETURN |

**2. Income other than from employment or operation of business**

None
■

State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the **two years** immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

AMOUNT                    SOURCE

2

### 3. Payments to creditors

None
■   *Complete a. or b., as appropriate, and c.*

   a.   *Individual or joint debtor(s) with primarily consumer debts.*  List all payments on loans, installment purchases of goods or services, and other debts to any creditor made within **90 days** immediately preceding the commencement of this case if the aggregate value of all property that constitutes or is affected by such transfer is not less than $600. Indicate with an (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and creditor counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
| --- | --- | --- | --- |

None
☐      b.   *Debtor whose debts are not primarily consumer debts:* List each payment or other transfer to any creditor made within **90 days** immediately preceding the commencement of the case if the aggregate value of all property that constitutes or is affected by such transfer is not less than $5,000.  (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS/ TRANSFERS | AMOUNT PAID OR VALUE OF TRANSFERS | AMOUNT STILL OWING |
| --- | --- | --- | --- |
| **MBNA AMERICA PO BOX 17054 Wilmington, DE 19884** | **MARCH 2006 - JUNE 2006** | **$3,000.00** | **$65,000.00** |

None
■      c.   *All debtors:* List all payments made within **one year** immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATE OF PAYMENT | AMOUNT PAID | AMOUNT STILL OWING |
| --- | --- | --- | --- |

### 4.  Suits and administrative proceedings, executions, garnishments and attachments

None
☐   a. List all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
| --- | --- | --- | --- |
| **GENZEN HEALTHCARE VS DOLORES V VICTORIA CV 05177** | **COLLECTION** | **BUTLER COUNTY** | **ACTIVE** |
| **GREENVILLE HOSPITAL VS DOLORES VICTORIA, MD CV 05-133** | **CONTRACT** | **BUTLER COUNTY** | **ACTIVE** |

None
■   b. Describe all property that has been attached, garnished or seized under any legal or equitable process within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON FOR WHOSE BENEFIT PROPERTY WAS SEIZED | DATE OF SEIZURE | DESCRIPTION AND VALUE OF PROPERTY |
| --- | --- | --- |

3

**5. Repossessions, foreclosures and returns**

None
■

List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR OR SELLER | DATE OF REPOSSESSION, FORECLOSURE SALE, TRANSFER OR RETURN | DESCRIPTION AND VALUE OF PROPERTY |
| --- | --- | --- |

**6. Assignments and receiverships**

None
■

a. Describe any assignment of property for the benefit of creditors made within **120 days** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF ASSIGNEE | DATE OF ASSIGNMENT | TERMS OF ASSIGNMENT OR SETTLEMENT |
| --- | --- | --- |

None
■

b. List all property which has been in the hands of a custodian, receiver, or court-appointed official within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CUSTODIAN | NAME AND LOCATION OF COURT CASE TITLE & NUMBER | DATE OF ORDER | DESCRIPTION AND VALUE OF PROPERTY |
| --- | --- | --- | --- |

**7. Gifts**

None
■

List all gifts or charitable contributions made within **one year** immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON OR ORGANIZATION | RELATIONSHIP TO DEBTOR, IF ANY | DATE OF GIFT | DESCRIPTION AND VALUE OF GIFT |
| --- | --- | --- | --- |

**8. Losses**

None
■

List all losses from fire, theft, other casualty or gambling within **one year** immediately preceding the commencement of this case **or since the commencement of this case.** (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| DESCRIPTION AND VALUE OF PROPERTY | DESCRIPTION OF CIRCUMSTANCES AND, IF LOSS WAS COVERED IN WHOLE OR IN PART BY INSURANCE, GIVE PARTICULARS | DATE OF LOSS |
| --- | --- | --- |

**9. Payments related to debt counseling or bankruptcy**

None
☐

List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of the petition in bankruptcy within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYOR IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
| --- | --- | --- |
| **Shinbaum, Abell, McLeod & Vann, P.C.**<br>**566 South Perry Street**<br>**Post Office Box 201**<br>**Montgomery, AL 36101-0201** | | **$299.00 FILING FEE**<br>**$3000.00 ATTORNEY FEE** |

4

### 10. Other transfers

None
■
a. List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within **two years** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
| --- | --- | --- |

None
■
b. List all property transferred by the debtor within **ten years** immediately preceding the commencement of this case to a self-settled trust or similar device of which the debtor is a beneficiary.

| NAME OF TRUST OR OTHER DEVICE | DATE(S) OF TRANSFER(S) | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY OR DEBTOR'S INTEREST IN PROPERTY |
| --- | --- | --- |

### 11. Closed financial accounts

None
■
List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within **one year** immediately preceding the commencement of this case. Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF INSTITUTION | TYPE OF ACCOUNT, LAST FOUR DIGITS OF ACCOUNT NUMBER, AND AMOUNT OF FINAL BALANCE | AMOUNT AND DATE OF SALE OR CLOSING |
| --- | --- | --- |

### 12. Safe deposit boxes

None
■
List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF BANK OR OTHER DEPOSITORY | NAMES AND ADDRESSES OF THOSE WITH ACCESS TO BOX OR DEPOSITORY | DESCRIPTION OF CONTENTS | DATE OF TRANSFER OR SURRENDER, IF ANY |
| --- | --- | --- | --- |

### 13. Setoffs

None
■
List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within **90 days** preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATE OF SETOFF | AMOUNT OF SETOFF |
| --- | --- | --- |

### 14. Property held for another person

None
■
List all property owned by another person that the debtor holds or controls.

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF PROPERTY |
| --- | --- | --- |

5

**15. Prior address of debtor**

None
■

If the debtor has moved within **three years** immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse.

ADDRESS                                NAME USED                                DATES OF OCCUPANCY

**16. Spouses and Former Spouses**

None
■

If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within **eight years** immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state.

NAME

**17. Environmental Information.**

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state, or local statute or regulation regulating pollution, contamination, releases of hazardous or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to, statutes or regulations regulating the cleanup of these substances, wastes, or material.

"Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly owned or operated by the debtor, including, but not limited to, disposal sites.

"Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, or contaminant or similar term under an Environmental Law

None
■

a. List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable or potentially liable under or in violation of an Environmental Law. Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law:

SITE NAME AND ADDRESS         NAME AND ADDRESS OF         DATE OF         ENVIRONMENTAL
                              GOVERNMENTAL UNIT           NOTICE          LAW

None
■

b. List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous Material. Indicate the governmental unit to which the notice was sent and the date of the notice.

SITE NAME AND ADDRESS         NAME AND ADDRESS OF         DATE OF         ENVIRONMENTAL
                              GOVERNMENTAL UNIT           NOTICE          LAW

None
■

c. List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which the debtor is or was a party. Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number.

NAME AND ADDRESS OF
GOVERNMENTAL UNIT                          DOCKET NUMBER                          STATUS OR DISPOSITION

6

**18 . Nature, location and name of business**

None
☐

a. *If the debtor is an individual*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within **six years** immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

*If the debtor is a partnership*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within **six years** immediately preceding the commencement of this case.

*If the debtor is a corporation*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

| NAME | LAST FOUR DIGITS OF SOC. SEC. NO./ COMPLETE EIN OR OTHER TAXPAYER I.D. NO. | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|---|---|---|---|---|
| **Dr. Deloris Victoria** | 63-1103639 | **41 Medical Arts Court HWY 10 W Greenville, AL 36037** | **Inrernal Medicine** | **1993** |

None
■

b. Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101.

NAME                                                 ADDRESS

7

## DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct.

Date  **September 25, 2006**                    Signature   **/s/ Deloris V. Victoria**
                                                                                   **Deloris V. Victoria**
                                                                                   Debtor

*Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571*

Form 8
(10/05)

# United States Bankruptcy Court
## Middle District of Alabama

In re  __Deloris V. Victoria__

Debtor(s)

Case No. _____

Chapter  __7__ _____

## CHAPTER 7 INDIVIDUAL DEBTOR'S STATEMENT OF INTENTION

■ I have filed a schedule of assets and liabilities which includes debts secured by property of the estate.

☐ I have filed a schedule of executory contracts and unexpired leases which includes personal property subject to an unexpired lease.

■ I intend to do the following with respect to property of the estate which secures those debts or is subject to a lease:

| Description of Secured Property | Creditor's Name | Property will be Surrendered | Property is claimed as exempt | Property will be redeemed pursuant to 11 U.S.C. § 722 | Debt will be reaffirmed pursuant to 11 U.S.C. § 524(c) |
|---|---|---|---|---|---|
| 225 WOODLAND HEIGHTS DR, GREENVILLE AL-- SINGLE FAMILY RESIDENCE VALUE LISTED IS TAX ASSESSED VALUE | BRANTLEY BANK & TRUST | | | | X |
| COMPUTERS, EKG, TABLES, CHAIRS | CAMDEN NATIONAL | | | | X |

| Description of Leased Property | Lessor's Name | Lease will be assumed pursuant to 11 U.S.C. § 362(h)(1)(A) |
|---|---|---|
| -NONE- | | |

Date  __September 25, 2006__

Signature  __/s/ Deloris V. Victoria__

__Deloris V. Victoria__
Debtor

# United States Bankruptcy Court
## Middle District of Alabama

In re    **Deloris V. Victoria**
_____

Case No. _____

Debtor(s)

Chapter    **7**    _____

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)

1.   Pursuant to 11 U.S.C. § 329(a) and Bankruptcy Rule 2016(b), I certify that I am the attorney for the above-named debtor and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

| | | |
|---|---|---|
| For legal services, I have agreed to accept | $ | **3,000.00** |
| Prior to the filing of this statement I have received | $ | **3,000.00** |
| Balance Due | $ | **0.00** |

2.   $  **299.00**   of the filing fee has been paid.

3.   The source of the compensation paid to me was:

■ Debtor    ☐ Other (specify):

4.   The source of compensation to be paid to me is:

■ Debtor    ☐ Other (specify):

5.   ■  I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

☐  I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation is attached.

6.   In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:
a.  Representation of the debtor in adversary proceedings and other contested bankruptcy matters;
b.  [Other provisions as needed]
**Negotiations with secured creditors to reduce to market value; exemption planning; preparation and filing of reaffirmation agreements and applications as needed; preparation and filing of motions pursuant to 11 USC 522(f)(2)(A) for avoidance of liens on household goods.**

7.   By agreement with the debtor(s), the above-disclosed fee does not include the following service:
**Representation of the debtors in any dischargeability actions, judicial lien avoidances, relief from stay actions or any other adversary proceeding.**

---

### CERTIFICATION

I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

Dated:   **September 25, 2006**  _____

**/s/ C. Brandon Sellers, III**  _____
**C. Brandon Sellers, III**
**Shinbaum, Abell, McLeod & Vann, P.C.**
**566 South Perry Street**
**Post Office Box 201**
**Montgomery, AL 36101-0201**
**334-269-4440  Fax: 334-263-4440**

---

B 201 (04/09/06)

UNITED STATES BANKRUPTCY COURT
**MIDDLE DISTRICT OF ALABAMA**

**NOTICE TO INDIVIDUAL CONSUMER DEBTOR UNDER § 342(b)
OF THE BANKRUPTCY CODE**

In accordance with § 342(b) of the Bankruptcy Code, this notice: (1) Describes briefly the services available from credit counseling services; (2) Describes briefly the purposes, benefits and costs of the four types of bankruptcy proceedings you may commence; and (3) Informs you about bankruptcy crimes and notifies you that the Attorney General may examine all information you supply in connection with a bankruptcy case. You are cautioned that bankruptcy law is complicated and not easily described. Thus, you may wish to seek the advice of an attorney to learn of your rights and responsibilities should you decide to file a petition. Court employees cannot give you legal advice.

## 1. Services Available from Credit Counseling Agencies

**With limited exceptions, § 109(h) of the Bankruptcy Code requires that all individual debtors who file for bankruptcy relief on or after October 17, 2005, receive a briefing that outlines the available opportunities for credit counseling and provides assistance in performing a budget analysis.** The briefing must be given within 180 days **before** the bankruptcy filing. The briefing may be provided individually or in a group (including briefings conducted by telephone or on the Internet) and must be provided by a nonprofit budget and credit counseling agency approved by the United States trustee or bankruptcy administrator. The clerk of the bankruptcy court has a list that you may consult of the approved budget and credit counseling agencies.

**In addition, after filing a bankruptcy case, an individual debtor generally must complete a financial management instructional course before he or she can receive a discharge.** The clerk also has a list of approved financial management instructional courses.

## 2. The Four Chapters of the Bankruptcy Code Available to Individual Consumer Debtors

### Chapter 7: Liquidation ($245 filing fee, $39 administrative fee, $15 trustee surcharge: Total Fee $299)

1. Chapter 7 is designed for debtors in financial difficulty who do not have the ability to pay their existing debts. Debtors whose debts are primarily consumer debts are subject to a "means test" designed to determine whether the case should be permitted to proceed under chapter 7. If your income is greater than the median income for your state of residence and family size, in some cases, creditors have the right to file a motion requesting that the court dismiss your case under § 707(b) of the Code. It is up to the court to decide whether the case should be dismissed.

2. Under chapter 7, you may claim certain of your property as exempt under governing law. A trustee may have the right to take possession of and sell the remaining property that is not exempt and use the sale proceeds to pay your creditors.

3. The purpose of filing a chapter 7 case is to obtain a discharge of your existing debts. If, however, you are found to have committed certain kinds of improper conduct described in the Bankruptcy Code, the court may deny your discharge and, if it does, the purpose for which you filed the bankruptcy petition will be defeated.

4. Even if you receive a general discharge, some particular debts are not discharged under the law. Therefore, you may still be responsible for most taxes and student loans; debts incurred to pay nondischargeable taxes; domestic support and property settlement obligations; most fines, penalties, forfeitures, and criminal restitution obligations; certain debts which are not properly listed in your bankruptcy papers; and debts for death or personal injury caused by operating a motor vehicle, vessel, or aircraft while intoxicated from alcohol or drugs. Also, if a creditor can prove that a debt arose from fraud, breach of fiduciary duty, or theft, or from a willful and malicious injury, the bankruptcy court may determine that the debt is not discharged.

### Chapter 13: Repayment of All or Part of the Debts of an Individual with Regular Income ($235 filing fee, $39 administrative fee: Total fee $274)

1. Chapter 13 is designed for individuals with regular income who would like to pay all or part of their debts in installments over a period of time. You are only eligible for chapter 13 if your debts do not exceed certain dollar amounts set forth in the Bankruptcy Code.

2. Under chapter 13, you must file with the court a plan to repay your creditors all or part of the money that you owe them, using your future earnings. The period allowed by the court to repay your debts may be three years or five years, depending upon your income and other factors. The court must approve your plan before it can take effect.

3. After completing the payments under your plan, your debts are generally discharged except for domestic support obligations; most student loans; certain taxes; most criminal fines and restitution obligations; certain debts which are not properly listed in your bankruptcy papers; certain debts for acts that caused death or personal injury; and certain long term secured obligations.

B 201 (04/09/06)

### Chapter 11: Reorganization ($1000 filing fee, $39 administrative fee: Total fee $1039)

Chapter 11 is designed for the reorganization of a business but is also available to consumer debtors. Its provisions are quite complicated, and any decision by an individual to file a chapter 11 petition should be reviewed with an attorney.

### Chapter 12: Family Farmer or Fisherman ($200 filing fee, $39 administrative fee: Total fee $239)

Chapter 12 is designed to permit family farmers and fishermen to repay their debts over a period of time from future earnings and is similar to chapter 13. The eligibility requirements are restrictive, limiting its use to those whose income arises primarily from a family-owned farm or commercial fishing operation.

## 3. Bankruptcy Crimes and Availability of Bankruptcy Papers to Law Enforcement Officials

A person who knowingly and fraudulently conceals assets or makes a false oath or statement under penalty of perjury, either orally or in writing, in connection with a bankruptcy case is subject to a fine, imprisonment, or both. All information supplied by a debtor in connection with a bankruptcy case is subject to examination by the Attorney General acting through the Office of the United States Trustee, the Office of the United States Attorney, and other components and employees of the Department of Justice.

**WARNING:** Section 521(a)(1) of the Bankruptcy Code requires that you promptly file detailed information regarding your creditors, assets, liabilities, income, expenses and general financial condition. Your bankruptcy case may be dismissed if this information is not filed with the court within the time deadlines set by the Bankruptcy Code, the Bankruptcy Rules, and the local rules of the court.

### Certificate of Attorney

I hereby certify that I delivered to the debtor this notice required by § 342(b) of the Bankruptcy Code.

| | | September 25, 2006 |
|---|---|---|
| C. Brandon Sellers, III | X  /s/ C. Brandon Sellers, III | |
| Printed Name of Attorney | Signature of Attorney | Date |
| Address: | | |
| **566 South Perry Street** | | |
| **Post Office Box 201** | | |
| **Montgomery, AL 36101-0201** | | |
| **334-269-4440** | | |

### Certificate of Debtor

I (We), the debtor(s), affirm that I (we) have received and read this notice.

| | | September 25, 2006 |
|---|---|---|
| **Deloris V. Victoria** | X  /s/ Deloris V. Victoria | |
| Printed Name(s) of Debtor(s) | Signature of Debtor | Date |
| Case No. (if known) _____ | X _____ | |
| | Signature of Joint Debtor (if any) | Date |

## United States Bankruptcy Court
### Middle District of Alabama

In re    __Deloris V. Victoria_____    Case No. _____

_____ Debtor(s)    Chapter    __7_____

# VERIFICATION OF CREDITOR MATRIX

The above-named Debtor hereby verifies that the attached list of creditors is true and correct to the best of his/her knowledge.

DELORIS V. VICTORIA
225 WOODLAND HEIGHTS DR
GREENVILLE, AL 36037


BANK OF AMERICA
PO BOX 41466
PHILADELPHIA, PA 19101


BRANTLEY BANK & TRUST
P.O. BOX 25
BRANTLEY, AL 36009


CAMDEN NATIONAL
3 WATER STREET
CAMDEN, AL 36726


CENTURYTEL
PO BOX 6001
MARION, LA 71260-6001


DAVID C. SCHWARTZ, ESQ.
PO BOX 11366
BIRMINGHAM, AL 35202-1366


EDGAR VICTORIA
225 WOODLAND HEIGHTS DR
GREENVILLE, AL 36037


EGAR VICTORIA
225 WOODLAND HEIGHTS DR
GREENVILLE, AL 36037


GENEZEN HEALTHCARE
PO BOX 571811
HOUSTON, TX 77257

GREENVILLE HOSPITAL
DBA LV STABLER MEMORIAL
29 STABLER DR
GREENVILLE, AL 36037


GREER B. MALLETTE, ESQ
505 20TH ST N., STE 1800
BIRMINGHAM, AL 35203-2696


HON. PATRICIA CONOVER
ASSISTANT UNITED STATES ATTY.
P.O. BOX 197
MONTGOMERY, AL 36101


INTERNAL REVENUE SERVICE
SPECIAL PROCEDURES FUNCTION
801 TOM MARTIN DR., ROOM 126
BIRMINGHAM, AL 35211


INTERNAL REVENUE SERVICE
P O BOX 21126
PHILADELPHIA, PA 19114


MBNA AMERICA
PO BOX 17054
WILMINGTON, DE 19884


STATE OF ALABAMA
DEPARTMENT OF REVENUE
P.O. BOX 320001
MONTGOMERY, AL 36132


WHITNEY BANK
228 ST CHARLES AVE
NEW ORLEANS, LA 70130

Form B22A (Chapter 7) (10/05)

In re  **Deloris V. Victoria**
_____
                Debtor(s)

Case Number: _____
                (If known)

According to the calculations required by this statement:
☐ The presumption arises.
■ The presumption does not arise.
(Check the box as directed in Parts I, III, and VI of this statement.)

# STATEMENT OF CURRENT MONTHLY INCOME AND MEANS TEST CALCULATION
## FOR USE IN CHAPTER 7 ONLY

In addition to Schedules I and J, this statement must be completed by every individual Chapter 7 debtor, whether or not filing jointly, whose debts are primarily consumer debts.  Joint debtors may complete one statement only.

Debtor declares under penalty of perjury that debts are primarily non-consumer; therefore, Means Test does not apply per § 707(b)(1).

| | Part VIII. VERIFICATION |
|---|---|
| 57 | I declare under penalty of perjury that the information provided in this statement is true and correct.  *(If this is a joint case, both debtors must sign.)*  Date: **September 25, 2006**      Signature: **/s/ Deloris V. Victoria**<br>**Deloris V. Victoria**<br>(Debtor) |

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re: )
)
Deloris V. Victoria, )     **Case No. 06-31225-WRS-7**
)
      Debtor. )

---

## MOTION TO DISMISS DEBTOR'S CASE FOR ABUSE

---

Greenville Hospital Corporation, d/b/a LV Stabler Memorial Hospital ("Greenville Hospital"), a creditor and party of interest in the chapter 7 bankruptcy case filed by Deloris V. Victoria (the "Debtor" or "Victoria"), requests that the Court dismiss the Debtor's case for abuse pursuant to Sections 707(a) and 707(b) of the Bankruptcy Code. In support of its motion, Greenville Hospital states as follows:

### Debtor's Petition, Schedules, Statement of Financial Affairs and Means Test

1.      On August 3, 2006, Greenville Hospital recovered a $162,257.74 judgment against the Debtor in the Circuit Court of Butler County, Alabama. Shortly thereafter, on September 25, 2006, the Debtor filed a chapter 7 bankruptcy case in this Court.

2.      In Schedule A, the Debtor listed her interest in a home located in Greenville, Alabama with a tax assessed value of $373,800.00 as well as her interest in a piece of real property referred to as the Isle of Valley in Orlando, Florida with a value of $4,000.00.

3.      In Schedule B, the Debtor listed various personal property including $7,000.00 in household goods and $5,000.00 in jewelry. Schedule B does not contain any breakdown of the value assigned to individual items of the Debtor's personal property nor does it even breakdown the value of the Debtor's personal property according to what part of the home it is located in (i.e. living room furniture, dining room table, etc.)

4.      In Schedule D, the Debtor listed total secured debts in the amount of $309,000.00. The Debtor's secured debts are composed of a $290,000 debt to Brantley Bank & Trust that is secured by a

mortgage on her home and a $19,000.00 debt to Camden National that is secured against various office equipment.

5.      In Schedule E, the Debtor listed total tax debts in the amount of $60,877.74. The Debtor's tax debts are composed of year 2003 federal income taxes of $5,600.27, year 2003 state income taxes of $1,547.62, year 2004 federal income taxes of $23,892.40, year 2005 federal income taxes of $9,147.63, years 2004 and 2005 estimated state income taxes of $3,000.00 and taxes owed by Bariatric Medicine (a corporation owned by the Debtor) of $17,689.82.

6.      In Schedule F, the Debtor listed total unsecured debts in the amount of $273,308.00. The Debtor's unsecured debts are composed of a $2,545.00 line of credit to Camden National, a $1.00 disputed debt to Camden National, a $680.00 loan to Camden National, a $558.00 collection account with CenturyTel, a $18,000 debt in a pending suit by Genezen Healthcare, a $168,000.00 judgment in favor of Greenville Hospital, a $9,663.00 credit card debt to MBNA America, a $3,378.00 credit card debt to MBNA America, a $65,000.00 credit card debt to MBNA America and a $5,483.00 line to credit to Whitney Bank.

7.      In Schedule G, the Debtor listed no executory contracts or unexpired leases even though the Debtor had previously entered into a Medical Office Space Lease (the "Lease") with Greenville Hospital.

8.      In Schedule I, the Debtor listed her occupation as a physician. The Debtor's husband is also listed as a physician. The Debtor stated that she has gross monthly income of $15,000.00 per month and her husband has gross monthly income of $20,000.00 per month.

9.      In Schedule J, the Debtor listed various monthly expenses, including a $4,000.00 mortgage on her home, a $300.00 telephone bill, a $700.00 transportation expense, $1,000.00 in charitable contributions, $1,200.00 for auto insurance and $3,500.00 for her husband's debts. After these expenses are subtracted from the Debtor's income, Victoria lists monthly disposable income of $1,890.00.

10.     In her Statement of Financial Affairs, the Debtor did not list any gifts made within 1 year of the petition date or any other transfers of property within 2 years of the petition date.

11.     Along with her Petition, Schedules and Statement of Financial Affairs, the Debtor filed a Form 22A Statement of Current Monthly Income and Means Test Calculation (the "Means Test Form"). On the Means Test Form, the Debtor summarily stated that her debts were primarily non-consumer and therefore, the Means Test found in Section 707(b) of the Bankruptcy Code did not apply to the Debtor. No breakdown or analysis of the Debtor's debts into categories of consumer debts and business debts was attached to the Means Test Form.

12.     On February 5, 2007, the Debtor filed an amended Schedule B, Schedule F and Schedule G. The Debtor amended Schedule B to add $35,000.00 in previously undisclosed accounts receivable; Schedule F to reduce the $168,000.00 judgment to Greenville Hospital down to $162,700.00 and to reduce the $65,000.00 credit card debt to MBNA America down to $1.00; and Schedule G to add the previously undisclosed Lease with Greenville Hospital. The Debtor did not file another Means Test Form with the Court nor did she file any breakdown or analysis of the Debtor's amended debts into categories of consumer debts and business debts.

### Debtor's Rule 2004 Examination

13.     Counsel for Greenville Hospital took the Debtor's 2004 examination on February 9, 2007. During this examination, the Debtor provided additional information regarding her family's assets as well as her family's income and expenses. <u>In general, the Debtor's testimony showed that the information contained in her Petition, Schedules, Statement of Financial Affairs and Means Test was inaccurate and misleading.</u> A true and correct copy of the deposition transcript is attached as Exhibit "A."

### *Home*

14.     The Debtor testified that her current home has 4 bedrooms and 3 bathrooms. *See Deposition Transcript* at p. 37. It has a total size of 3,100 square feet. *Id.* But other than the Debtor and

her husband, only the Debtor's 30 year old son and granddaughter reside in the home. *Id.* at p. 37-38. Due to the small number of individuals residing in the home, the Debtor stated that she and her family could comfortably live in another smaller and less expensive home. *Id.* at p. 38.

15.     The Debtor produced a copy of the note and mortgage on her home, which indicated that the original amount of the debt secured by the mortgage was $431,062.70 and the original monthly payments were $5,257.00 per month. *See Deposition Transcript* at p. 34-35. This indicates that the fair market value of the Debtor's home is likely greater than its $373,800.00 tax assessed value.

16.     In addition, the Debtor's installment payments have now been reduced to $2,025.05 on a semi-monthly basis and 176 payments are due before the note will be paid in full. The Debtor acknowledged that at this rate of payment, her home will be completely paid for in approximately 7.5 years. *See Deposition Transcript* at p. 36-37.

*Townhouse*

17.     The Debtor also testified that her family has a townhouse in Atlanta, Georgia, although it is owned by the Debtor's husband. *See Deposition Transcript* at p. 45-48. She stated that the townhouse was purchased for her adult daughters to live in but that she did not know its approximate value. *Id.* Victoria testified that her 2 adult daughters lived in the townhouse for a period of time but that no one currently lives there. *Id.* Rather, the townhouse is only used on weekends when the Debtor and her husband travel to Atlanta. *Id.*

18.     The Debtor later produced 2 invoices showing a debt secured by a first mortgage on the townhouse in the amount of $215,000.00 and a debt secured by a second mortgage in the amount of $39,911.56. True and correct copies of these invoices are attached collectively as Exhibit "B." The invoices reflect a total combined monthly payment on the townhouse of $2,532.31. It was unclear what portion of this monthly expense is paid by the Debtor and what portion is paid by her husband.

*Vehicles*

19.     The Debtor testified that she does not own any vehicle. *See Deposition Transcript* at p. 10-12. Instead, the Debtor stated that her husband owns all the family's vehicles, including the vehicles driven by the Debtor and the Debtor's 4 adult children. *Id.* Victoria produced copies of vehicle registrations confirming her husband's ownership of 2 recent model year Mercedes and a Porsche. Registrations for other vehicles, however, were not provided.

20.     Counsel for Greenville Hospital later obtained a copy of the Debtor's auto insurance policy, which indicates that the Debtor and her husband own a total of 7 vehicles, including 4 recent model year Mercedes, a Porsche, a Volkswagon and a Nissan. A true and correct copy of this auto insurance policy is attached as Exhibit "C." The policy indicates that the Debtor and her husband have a monthly expense for auto insurance of $1,021.90.

21.     The Debtor testified that her husband makes monthly payments for the Nissan that is driven by one of her adult sons and for a Mercedes that is drive by one of her adult daughters. *See Deposition Transcript* at p. 61-62. In addition, the Debtor stated that her husband pays the auto insurance for 3 of her adult children. *Id.* As with the townhouse, it was unclear what portion of these monthly expenses is paid by the Debtor and what portion is paid by the Debtor's husband.

*Personal Property*

22.     The Debtor testified that the value of all the personal property in her home (excluding jewelry) is $7,000.00 even though her home has a tax assessed value of $373,800.00 and the amount of the original debt on her home was $431,062.70. *See Deposition Transcript* at p. 42-43. She explained that she arrived at this figure after considering the value of the televisions, living room sets and dining room sets in the home. *Id.*

*Jewelry*

23.     The Debtor testified that the value of her jewelry is $5,000.00, which is the amount listed in her Schedules. *See Deposition Transcript* at p. 43. However, the Debtor further testified that she gave

away various pieces of jewelry to her adult daughters prior to filing bankruptcy. *Id.* Although Victoria had previously testified at her first meeting of creditors that the jewelry transferred to her daughters was worth $5,000.00, she now stated that it was worth about $3,000.00. Whatever the value may be, <u>the Debtor did not list these transfers in her Statement of Financial Affairs and she has still not disclosed the transfers as of the date of this motion.</u>

*Income and Expenses*

24.     The Debtor testified that at the time she filed bankruptcy, she had gross earnings of $15,000.00 per month but that she did not pay any of the debts in her household. *See Deposition Transcript* at p. 62-63. Victoria then stated that she did pay some of the family's expenses but these only included the family's telephone bill, power bill and medical insurance. *Id.* at 63. Upon further inquiry regarding what debts she pays and what debts her husband pays, the Debtor finally stated "I don't know. I cannot tell you exactly how it works." *Id.* at 67.[1]

25.     The Debtor's subsequent testimony contradicted these statements. It also indicated that the Debtor was not very forthcoming regarding her knowledge of her family's finances. When the Debtor was shown copies of bank account statements that she produced, the Debtor testified that her husband gives her substantial amounts of money each month. *See Deposition Transcript* at p. 68-72. Some of this money is channeled into the Debtor's weight loss business; other amounts are used to pay expenses that the Debtor failed to disclose when questioned earlier in her examination. *Id.* at 74.

26.     Victoria testified that she transfers approximately $2,000.00 to $3,000.00 per month to her weight loss business (a corporation) because the business is not generating enough revenue to pay its expenses. *See Deposition Transcript* at p. 76-77. The Debtor confirmed that she did not list these expenses/transfers in Schedules or Statement of Financial Affairs. *Id.* at 77-79.

27.     The Debtor also testified that she chose not to disclose certain of her expenses. One of

---

[1] This method of subterfuge was employed by the Debtor at various points throughout her examination when she was pressed for specific information about her income and expenses.

the expenses that the Debtor failed to disclose is an expense of $255.00 per month for her granddaughter's school tuition. *See Deposition Transcript* at p. 74-75. When asked why she failed to mention this expense earlier, Victoria stated "I thought it is not necessary." *Id.*

*Consumer and Business Debts*

28.     The Debtor's Schedules do not indicate whether her debts are consumer (personal) debts or business debts; therefore, the Debtor was asked to identify the consumer debts and business debts in her amended Schedules. The Debtor provided the breakdown contained in the following table:

| Consumer Debts | Business Debts[3] |
|---|---|
| • $290,000.00 secured mortgage debt to Brantley Bank & Trust[2] | • $60,877.74 in priority tax debts<br>• $2,545.00 unsecured debt for line of credit to Camden National<br>• $1.00 unsecured disputed debt to Camden National<br>• $680.00 unsecured loan debt to Camden National<br>• $558.00 unsecured collection account debt with CenturyTel<br>• $18,000 unsecured debt in a pending suit by Genezen Healthcare<br>• $162,700.00 judgment to Greenville Hospital<br>• $1.00 unsecured credit card debt to MBNA America<br>• $5,483.00 unsecured line to credit debt to Whitney Bank |
| Total: $290,000.00 | Total: $250,845.74 |

---

[2] A mortgage on a debtor's home is a consumer debt as that term is defined in Section 101(8) of the Bankruptcy Code. *See In re Price*, 353 F.3d 1135 (9th Cir. 2004).

[3] The Debtor testified that she was not obligated for a $9,663.00 credit card debt to MBNA America and a $3,378.00 credit card debt to MBNA America listed in Schedule F. *See Deposition Transcript* at p. 51. She also testified that a $19,000.00 secured debt to Camden National was owed by her weight loss business (a corporation) rather than herself. *See Deposition Transcript* at p. 39. Even if these debts, which total $32,041.00, were included in the Debtor's business debts, they would only increase the Debtor's total business debts to $282,886.74. This amount is still below the amount of the Debtor's consumer debts, which total $290,000.00.

29.     As the table above indicates, the Debtor testified that she has total consumer debts of $290,000.00 and total business debts of $250,845.74, a difference of $39,154.26. Therefore, the Debtor's consumer debts are substantially greater than her business debts.

## Documents Produced by Debtor in Response to Motion to Compel

30.     The Debtor did not produce most of the documents requested by Greenville Hospital in the document requests attached to Greenville Hospital's Motion for Rule 2004 Examination. However, the Debtor subsequently produced most of the requested documents in response to Greenville Hospital's Motion to Compel Debtor to Produce Documents or Alternatively, to Dismiss Debtor's Case (the "Motion to Compel").[4] These documents include bank account records, credit card account statements, insurance statements and mortgage statements for the townhouse owned by the Debtor's husband.

31.     The August 31, 2006 bank account statement produced by the Debtor indicates that her husband made $26,471.70 in deposits and $31,123.27 in withdrawals from his personal bank account during that particular 1 month period. A true and correct copy of this statement is attached as Exhibit "D." The $26,471.70 in deposits is substantially higher than the $10,000.00 in net take home pay reported for the Debtor's husband on Schedule I. In fact, it is even greater than the combined net take home pay reported for the Debtor and her husband in Schedule I.

32.     There is no indication in the August 31, 2006 bank account statement that any of the funds were deposited by the Debtor. Furthermore, because the Debtor took the position in her examination that she could not produce a copy of her husband's bank account statement because she did not have any control over his bank accounts, the Debtor should be not be able to claim that any of the funds deposited into his account came from her. *See Deposition Transcript* at p. 23-25.

---

[4] Greenville Hospital will not set out the basis for its Motion to Compel again here. Instead, Greenville Hospital will simply state that the Debtor failed to produce almost any of the documents that it requested until the Debtor was under the threat of having her case dismissed. Greenville Hospital requests that the Court take the Debtor's actions into consideration when entering a decision on this motion.

33.    The September 29, 2006 bank account statement produced by the Debtor indicates that her husband made $24,811.41 in deposits and $24,217.53 in withdrawals from his personal bank account during that particular 1 month period.  A true and correct copy of this statement is attached as Exhibit "E."  Like the previous bank account statement, the $24,811.41 in deposits is substantially higher than the combined net take home pay reported for the Debtor and her husband in Schedule I.

34.    Copies of checks attached to the bank accounts statements produced by the Debtor show certain of her family's expenses that should be considered unreasonable for a chapter 7 debtor.  These include checks payable to Wynlakes Golf and County Club in the amounts of $166.31 and $195.46.  True and correct copies of these checks are attached collectively as Exhibit "F."

35.    Credit card statements produced by the Debtor for charges made during August and September 2006 show additional unreasonable expenses for rental cars at Enterprise Rent-A-Car ($609.87), for steaks and wine at Peppertree Steaks in Montgomery ($797.68), for liquor at an ABC store in Greenville, Alabama ($378.00), and for cash advances ($9,500.00).  True and correct copies of these credit card statements are attached collectively as Exhibit "G."  These expenses are unreasonable for a chapter 7 debtor and should be attributed at least in part to the Debtor because she testified in her examination that her husband makes all of her family's purchases.  *See Deposition Transcript* at p. 24-25.

**The Debtor's Case Should be Dismissed for Abuse Pursuant to Section 707(b)**

36.    The Debtor's case should be dismissed for abuse pursuant to Section 707(b) because on the date that Victoria filed her bankruptcy case[5], the Debtor's consumer debts exceeded the Debtor's businesses debts.  And as a result, Victoria is classified as a debtor whose debts are primarily consumer debts, *See In re. Stewart*, 175 F.3d 796, 808 (10th Cir. 1999) and *In re. Kelly*, 841 F.2d 908 (9th Cir. 1988) (both finding that the term "primarily" in Section 108(8) of the Bankruptcy Code means more than ½ of the debtor's scheduled debt), and she is subject to the Means Test in Section 707(b).

---

[5] *See In re. Pier*, 310 B.R. 347, 355 (Bank. N.D. Ohio 2004) (finding that bankruptcy courts should consider the Debtor's financial condition as of the petition date when deciding whether or not to dismiss a debtor's case under Section 707(b)).

37.    The Means Test provides a brightline test that governs the dismissal and/or conversion of a chapter 7 case on the basis of abuse. Although there are numerous factors to consider under Section 707(b), the general rule is that any debtor with primarily consumer debts and disposable income greater than $166.00 per month is presumed to be abusing chapter 7 and therefore, subject to dismissal and/or conversion.

38.    Greenville Hospital will not set out all the calculations available under Section 707(b) to show that the Debtor's filing constitutes a presumed abuse of chapter 7 because the Debtor's Schedules I and J alone show disposable income in the amount of $1,890.00 per month, which is well in excess of the $166.00 minimum specified in the Means Test.

39.    Accordingly, Greenville Hospital requests that the Debtor's chapter 7 case be dismissed for abuse pursuant to Section 707(b) of the Bankruptcy Code.[6]

## The Debtor's Case Should be Dismissed for Abuse Pursuant to Section 707(a)

40.    In the alternative that the Court finds that the Debtor is not subject to the Means Test in Section 707(b), the Debtor's chapter 7 case should dismissed for abuse pursuant to Section 707(a) of the Bankruptcy Code.

41.    Section 707(a) provides an additional means by which a debtor's chapter 7 case may be dismissed for abuse. It gives 3 examples of "cause" that justify dismissal but these examples are non-exclusive. A bankruptcy court may dismiss a case on other grounds when cause is found. *See In re. Simmons*, 200 F.3d 738, 743 (11th Cir. 2000); *In the Matter of Atlas Supply Corp.*, 857 F.2d 1061, 1063 (5th Cir. 1988).

42.    Specifically, courts have held that "cause" exists to dismiss a chapter 7 case filed by a debtor with primarily business debts when the debtor's case was not filed in good faith or constitutes an abuse of the bankruptcy process. *See In re. Stewart*, 215 B.R. 456, 463 (10th Cir. BAP 1997) (finding that bankruptcy courts have an established power "to dismiss a petition under any chapter of the

---

[6] Pursuant to Section 707(b)(1), Greenville Hospital has standing to seek this relief and request that the Debtor's case be dismissed for abuse.

Bankruptcy Code that is filed with a lack of good faith or as an abuse of the process under §§ 105(a) and 707(a) of the Code"); *In re. O'Brien*, 328 B.R. 669, 674-75 (Bank. W.D.N.Y. 2005) (finding that a bad faith filing is cause for dismissal under Section 707(a) and citing to numerous other similar decisions).

43.    While Greenville Hospital acknowledges that there is a split on this issue sd other courts have held that dismissal based on bad faith or ability to pay is improper under Section 707(a), the recent decision of the United States Supreme Court in *Marrama v. Citizens Bank of Massachusetts*, 127 S.Ct. 1105 (2007) bolsters the argument that bankruptcy courts have the power to dismiss a chapter 7 case filed a business debtor.

44.    In *Marrama*, the debtor sought convert his chapter 7 case to a chapter 13 but only after it was discovered that the debtor's schedules were false and misleading.  The chapter 7 trustee and one of the debtor's creditors objected to the conversion of his case on basis that the debtor's motion to convert was made in bad faith and would constitute an abuse of the bankruptcy process.  The bankruptcy court denied the debtor's motion to convert and the court of appeals affirmed the bankruptcy court's decision.

45.    On appeal to the Supreme Court, the debtor argued that he had an absolute right to convert his case notwithstanding his false and misleading schedules.  The Supreme Court rejected the debtor's argument, finding that the debtor's bad faith constituted cause to deny his motion to convert even though the conversion statute, Section 706, does not mention bad faith as a barrier to conversion.

46.    The Supreme Court began its decision by noting that "[t]he principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'"  It then reasoned that the bankruptcy court had the power to deny the debtor's motion to convert because "nothing in the text of [the relevant statutes] limits the authority of the court to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor."

47.    Although the main thrust of Greenville Hospital's argument for dismissal of the Debtor's case is not based on her fraudulent conduct (the Debtor failed to disclose $5,000 worth of jewelry

transferred to her daughters pre-petition), the construction of Section 706(a) advocated by Greenville Hospital is similar to the statutory construction of the conversion statute adopted by the Supreme Court in *Marrama*.

48.    Like the conversion statute considered in *Marrama*, Section 706(a) does not specifically state that a bad faith filing or the debtor's ability to pay her creditors may constitute cause for dismissal. However, nothing in the text of Section 706(a) limits the authority of this Court to dismiss the Debtor's case based on a finding of that she filed her case in bad faith or that she has the ability to repay her creditors.

49.    As with the debtor in *Maramma*, the Debtor here is certainly "not a member of the class of 'honest but unfortunate debtor[s]' that the bankruptcy laws were enacted to protect." *See Marrama*. Rather, the Debtor and her husband are both doctors who make more money in a given month that many debtors make in an entire year. They live a lavish lifestyle, maintaining expensive homes in 2 cities and numerous luxury cars. The Debtor's Schedules and Statement of Financial Affairs are highly inaccurate, failing to properly list the income and expenses of the Debtor and her doctor husband. And the Debtor has still failed to disclose transfers of property to family members even after testifying on multiple occasions regarding the transfers.

50.    Moreover, the timing of the Debtor's bankruptcy filing - shortly after Greenville Hospital recovered its judgment against the Debtor - indicates that the Debtor specifically filed her chapter 7 case to avoid paying Greenville Hospital's judgment. While this sort of conduct is not itself particularly egregious, the Debtor had made it known to Greenville Hospital for some time that she would file bankruptcy if Greenville Hospital ever recovered a judgment against her.

51.    Finally, the Court should consider that because the Debtor's husband owns virtually all of her family's substantial assets, the Debtor likely expected that she could file chapter 7 to wipe out Greenville Hospital's judgment without paying any of her creditors or suffering any other repercussions. And if she receives a discharge, the Debtor will return to her opulent lifestyle, having contributed none of

her substantial monthly income to the repayment of her debts as she would be required to do under other chapters of the Bankruptcy Code.

52.    This Court should not condone the Debtor's chapter 7 filing in the face of her obvious ability to repay her debts and lack of good faith when filing her petition. Instead, the Debtor's chapter 7 case should be dismissed for abuse pursuant to Section 707(a) based upon a finding of bad faith, abuse of the bankruptcy process, ability to repay creditors, failure to file proper schedules, and failure to disclose pre-petition transfers of property. All of these things constitute "cause" under Section 707(a).

WHEREFORE, Greenville Hospital, d/b/a LV Stabler Memorial Hospital, requests that the Court dismiss the Debtor's case for abuse pursuant to Sections 707(a) and 707(b) of the Bankruptcy Code with a 180 day bar on refiling under any chapter of the Bankruptcy Code.

Respectfully submitted,


/s/ Bradley R. Hightower
Bradley R. Hightower
Attorney for Greenville Memorial Hospital

**OF COUNSEL:**
CHRISTIAN & SMALL LLP
505 North 20th Street, Suite 1800
Birmingham, Alabama 35203
Phone: (205) 795-6588
Fax: (205) 328-7234

## CERTIFICATE OF SERVICE

Unless otherwise served by the ECF system, I certify that I have served a copy of the above and foregoing Motion on the following by placing a copy in the United States Mail, properly addressed, first-class postage pre-paid on this the 20th day of April, 2007:

Deloris V. Victoria
225 Woodland Heights Dr.
Greenville, Alabama 36037

C. Brandon Sellers, III
Shinbaum, Abell, McLeod & Vann
P.O. Box 201
Montgomery, Alabama 36101

U.S. Bankruptcy Adminstrator
Attn: Tina Hayes
One Church Street
Montgomery, Alabama 36104

Chapter 7 Trustee, Daniel G. Hamm
560 South McDonough Street, STE A
Montgomery, Alabama 36104

**Parties on the attached mailing matrix**

/s/ Bradley R. Hightower
OF COUNSEL

Label Matrix for local noticing
1127-2
Case 06-31225
Middle District of Alabama
Montgomery
Mon Mar 26 08:47:19 CDT 2007

U.S. Bankruptcy Court
PO Box 1248
Montgomery, AL 36102

BANK OF AMERICA
PO BOX 41466
Philadelphia, PA 19101

BRANTLEY BANK & TRUST
P.O. BOX 25
BRANTLEY, AL 36009

Bankruptcy Administrator
U. S. Bankruptcy Administrator
One Church Street
Montgomery, AL 36104

CAMDEN NATIONAL
3 WATER STREET
Camden, AL 36726

CENTURYTEL
PO BOX 6001
Marion, LA 71260-6001

DAVID C. SCHWARTZ, ESQ.
PO BOX 11366
Birmingham, AL 35202-1366

EDGAR VICTORIA
225 WOODLAND HEIGHTS DR
Greenville, AL 36037

EDGAR VICTORIA
225 WOODLAND HEIGHTS DR
Greenville, AL 36037

GENEZEN HEALTHCARE
PO BOX 571811
Houston, TX 77257

GREENVILLE HOSPITAL
DBA LV STABLER MEMORIAL
29 STABLER DR
Greenville, AL 36037

GREER B. MALLETTE, ESQ
505 20TH ST N., STE 1800
Birmingham, AL 35203-2696

HON. PATRICIA CONOVER
ASSISTANT UNITED STATES ATTY.
P.O. BOX 197
MONTGOMERY, AL 36101

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 21126
PHILADELPHIA PA 19114-0326

MBNA AMERICA
PO BOX 17054
Wilmington, DE 19884

STATE OF ALABAMA
DEPARTMENT OF REVENUE
P.O. BOX 320001
MONTGOMERY, AL 36132

WHITNEY BANK
228 ST CHARLES AVE
New Orleans, LA 70130

C. Brandon Sellers III
Shinbaum, Abell, McLeod & Vann
PO Box 201
Montgomery, AL 36101

Daniel G. Hamm
The Law Offices of Daniel G. Hamm
560 South McDonough St., Ste A
Montgomery, AL 36104

Deloris V. Victoria
225 Woodland Heights Dr
Greenville, AL 36037

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

INTERNAL REVENUE SERVICE
P O BOX 21126
Philadelphia, PA 19114

(d)INTERNAL REVENUE SERVICE
SPECIAL PROCEDURES FUNCTION
801 TOM MARTIN DR., ROOM 126
BIRMINGHAM, AL 35211

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

u}Greenvill Hospital Corporation d/b/a LV St

(d)Daniel G. Hamm
The Law Offices of Daniel G. Hamm
560 South McDonough St., Ste. A
Montgomery, AL 36104

End of Label Matrix
Mailable recipients     20
Bypassed recipients      2
Total                   22

1    IN THE UNITED STATES BANKRUPTCY COURT

2         MIDDLE DISTRICT OF ALABAMA

3

4

5    In Re:

                        Case Number:

6    Deloris V. Victoria      06-31225WRS-7

7

8

         S T I P U L A T I O N S

9

10        IT IS STIPULATED AND AGREED, by

11   and between the parties, through their

12   respective counsel, that the deposition

13   of:

14             DELORIS VICTORIA

15   may be taken before Karen Hinch, Notary

16   Public, State at Large, at the office of

17   McPhilips, Shinbaum & Gill, 566 South

18   Perry Street, Montgomery, Alabama on the

19   9th day of February, 2007, commencing at

20   approximately 9:00 a.m.

21

22

23

1          IT IS FURTHER STIPULATED AND

2   AGREED that the signature to and reading

3   of the deposition by the witness is

4   waived, the deposition to have the same

5   force and effect as if full compliance had

6   been had with all laws and rules of Court

7   relating to the taking of depositions;

8          IT IS FURTHER STIPULATED AND

9   AGREED that it shall not be necessary for

10  any objections to be made by counsel to

11  any questions, except as to form or

12  leading questions, and that counsel for

13  the parties may make objections and assign

14  grounds at the time of trial, or at the

15  time said deposition is offered in

16  evidence, or prior thereto.

17         IT IS FURTHER STIPULATED AND

18  AGREED that the notice of filing of the

19  deposition by the Commissioner is waived.

20

21

22

23

1               A P P E A R A N C E S

2

3   FOR DELORIS VICTORIA:

4           Richard Shinbaum

5           Attorney at Law

6           McPhilips, Shinbaum & Gill

7           566 South Perry Street

8           Montgomery, Alabama

9

10

11          Bradley R. Hightower

12          Attorney at Law

13          CHRISTIAN & SMALL, LLP

14          505 20th Street North

15          Suite 1800

16          Birmingham, Alabama 35203

17

18          Tina Hayes

19          United States Bankruptcy

20          Administration

21          One Church Street

22          Montgomery, Alabama 36104

23

1                          I N D E X

2

3

4   EXAMINATION BY:

5   Mr. Hightower                        6

6   Ms. Hayes                            90

7

8

9                       E X H I B I T S

10

11  Exhibit 1                            10

12  Exhibit 2                            11

13  Exhibit 3                            13

14  Exhibit 4                            14

15  Exhibit 5                            16

16  Exhibit 6                            16

17  Exhibit 7                            17

18  Exhibit 8                            17

19  Exhibit 9                            20

20  Exhibit 10                           22

21  Exhibit 11                           22

22  Exhibit 12                           28

23  Exhibit 13                           29

1   Exhibit 14                          32

2   Exhibit 15                          33

3   Exhibit 16                          38

4   Exhibit 17                          52

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

1      I, Karen Hinch, a Court Reporter of

2 Birmingham, Alabama, and a Notary Public

3 for the State of Alabama at Large, acting

4 as Commissioner, certify that on this

5 date, pursuant to Rule 30 of the Alabama

6 State Rules of Civil Procedure and the

7 foregoing stipulations of counsel, there

8 came before me at McPhilips, Shinbaum &

9 Gill, 566 South Perry Street,

10 Montgomery, Alabama on the 9th day of

11 February, 2007, commencing at 9:00 a.m.,

12 DELORIS VICTORIA, witness in the above

13 cause, for oral examination, whereupon the

14 following proceedings were had:

15

16         DELORIS VICTORIA,

17 first being duly sworn, was examined and

18 testified as follows:

19

20 EXAMINATION BY MR. HIGHTOWER:

21 Q       Dr. Victoria, my name is Brad

22 Hightower.  We've met before and talked to

23 you before about your case.  What this is

1 called, it's called a Motion for 2004

2 Examination.  The rule number is just a

3 provision in the Bankruptcy Code that

4 allows us to take your examination under

5 oath.  It's basically the same thing as a

6 deposition.

7       Have you ever participated in a

8 deposition before?

9 A          No.

10 Q          Okay.  Well, I'll ask you

11 questions and the court reporter here will

12 take down the questions that I ask you and

13 your responses.  So if I ask you a

14 question and you don't understand it, you

15 can just ask me to repeat it or try to

16 rephrase it to help you understand it.

17 And please answer out loud because if you

18 just nod your head the court reporter

19 can't take that down as a response.  So if

20 I ask you for something "yes" or "no,"

21 just say "yes" or say "no," don't shake

22 your head or give any kind of other

23 affirmative response.

1      This is a copy of the motion that we

2  filed to ask you to come today.  Have you

3  ever seen this before?

4  A          No.

5  Q          There was attached to it a

6  request for you to bring some documents

7  with you.  The documents that we asked you

8  to bring are listed in this section here.

9  Have you ever seen this before?

10 A          No.

11 Q          Were you aware that we had

12 requested that you bring some documents

13 with you today?

14 A          Mr. Richard notified me

15 Tuesday.

16 Q          Do you have some documents with

17 you?

18            MR. SHINBAUM:  That's a lot of

19 them.  She did not bring all of them.

20 There's more.  There's some we don't have

21 copied.

22      You have the bank statements from

23 Brantley.

1          THE WITNESS:  Yes.

2          MR. SHINBAUM:  He needs to see

3  those and we will copy those.  And the

4  registration on the vehicles.  I know you

5  showed me that a second ago but I don't

6  have copies of that yet.

7          MR. HIGHTOWER:  Is that in

8  addition to this?

9          MR. SHINBAUM:  Same thing.

10          MR. HIGHTOWER:  And she's got

11  some more stuff with her?

12          MR. SHINBAUM:  It's just not in

13  the same order unfortunately.  I didn't

14  put it through at the same time.

15          MR. HIGHTOWER:  I'll just give

16  her a moment to get whatever it is that

17  she's looking for.

18          MR. SHINBAUM:  There is one

19  registration she's missing.  I will get

20  that to you.  That's the registrations on

21  the vehicles and that's two statements

22  from Camden and Brantley, Camden and

23  Brantley are one in the same.

1  Q        Dr. Victoria, I've got a stack

2  of documents here that you have produced

3  today.  If you wouldn't mind, I'd

4  appreciate if you would just go over with

5  me what you've got here if you could just

6  identify.

7           MR. SHINBAUM:  One thing I'd

8  ask, I haven't had a chance to redact

9  everything yet that has to be redacted

10 before it's submitted to court.

11          MR. HIGHTOWER:  That's fine.

12 Q        Can you go over this stack and

13 tell me what we've got here?

14 A        This is the August statement

15 from Butler Bank and then the September

16 statement from Butler Bank.

17          MR. HIGHTOWER:  Can we mark

18 those up as Exhibit 1.

19          (Exhibit 1

            was marked for

20          identification.)

21 Q        Okay.  What is that one?

22 A        This is the registration of the

23 cars my husband owns and I had one more

```
 1   that is -- I just have to fax it.
 2   Q          Which two cars is that?
 3   A          It's the Mercedes and then the
 4   Porsche.
 5   Q          We will mark that as Number 2.
 6              (Exhibit 2
                was marked for
 7              identification.)
 8   A          He's got another Mercedes that
 9   he could not find the registration.
10   Q          What type of Mercedes is the
11   other car?
12   A          I do not know.
13   Q          Is it a large, small or large?
14   A          It's a sports car.
15   Q          Sports car.  Two door?
16   A          Two door.
17   Q          How old is it?
18   A          Three years old.
19   Q          Do you know how much it cost?
20   A          90,000.
21              MR. SHINBAUM:  If you don't
22   know, it's okay to say you don't know.
23   A          I don't know because I'm just
```

```
 1   guessing.
 2              MR. SHINBAUM:  We don't want
 3   you to guess.  If you know the answer,
 4   answer; if you don't, there's no shame in
 5   admitting you don't know.
 6   Q          So approximately 90 or you just
 7   don't know?
 8   A          I don't know.
 9   Q          What makes you think it was
10   worth 90?
11   A          It was just in the newspaper.
12   Q          I guess you had some basis to
13   come up with 90 for the value?
14   A          Yes.
15   Q          What was that?
16   A          I don't know.  As I said, I'm
17   not into cars, things, that's why I do not
18   own a car.
19   Q          I just mean as opposed to
20   saying 50 or 20?
21   A          You can just ask my husband.
22   It's not my business telling him his cars.
23   Q          Can you identify what we've got
```

```
 1   here?
 2                  (Exhibit 3
                    was marked for
 3                  identification.)
 4   A          This is a summary of my
 5   MasterCard year-end for 2003.
 6   Q          For what year?
 7   A          2003.
 8   Q          On that one we just marked,
 9   Exhibit 3, Dr. Victoria, do you have
10   anything more recent than 2003?
11   A          No.
12   Q          So your year-end 2003 credit
13   card statement is the most recent credit
14   card statement that you have?
15   A          I'm sorry.
16   Q          Is your 2003 year-end credit
17   card statement that you brought with you
18   today that we just marked as Exhibit 3, is
19   that the most recent credit card statement
20   that you have?
21   A          No.
22              MR. SHINBAUM:  That's the most
23   recent I have in my file.  I have -- last
```

1   I have is 1 of '06.

2          MR. HIGHTOWER:  That's January

3   of 2006?  Looks like a 2003 year-end

4   report.

5          MR. SHINBAUM:  I just put them

6   all together.  There's one of December '05

7   and one of January '06.

8   Q          Dr. Victoria, you filed your

9   bankruptcy case in September '06.

10         MR. SHINBAUM:  This is October.

11  That's the same thing.

12         MR. HIGHTOWER:  What is this?

13         MR. SHINBAUM:  That's October.

14         MR. HIGHTOWER:  Of '06?

15         MR. SHINBAUM:  Of '06.  I think

16  it's either '05 or '06.

17         MR. HIGHTOWER:  It says '06.

18      Mark this as 4.

19          (Exhibit 4

                was marked for

20              identification.)

21         MR. SHINBAUM:  That will be a

22  summary of statements between '03 and '06

23  at various intervals.

```
 1   Q            What's next in the stack you
 2   brought with you?
 3   A            This is --
 4                MR. SHINBAUM:  Do you want to
 5   do the business reports all together?
 6                MR. HIGHTOWER:  The credit card
 7   reports?
 8                MR. SHINBAUM:  Business
 9   reports.
10                MR. HIGHTOWER:  That's what
11   she's looking at now?
12                MR. SHINBAUM:  I think that's
13   what she's doing.
14                MR. HIGHTOWER:  That's fine.
15   A            Accounts receivable August and
16   September 2006.
17                MR. SHINBAUM:  Looks like her
18   business reports.
19                MR. HIGHTOWER:  This and this
20   are the same?
21                MR. SHINBAUM:  No.  That's
22   before that.  That would be this, whatever
23   it is.
```

1    Q          Can you identify what this is?

2              MR. SHINBAUM:  That's something

3    from you.  I don't know what it is.  He

4    wants to know what it is.

5    Q          Tell me what it is.

6    A          It's the accounts receivable of

7    August and September.  And the other

8    documents here are just in the summary.

9    Everything in here are just kind of like

10   these are the summary and it's just

11   telling you what's insurance paid, what

12   the office payments, what are the accounts

13   receivable from the patients.

14              (Exhibit 5

                was marked for

15              identification.)

16   Q          What's next?

17   A          This is charitable

18   contributions.

19              (Exhibit 6

                was marked for

20              identification.)

21   A          This is investment.  I don't

22   know if you consider that an IRA.

23   Q          Is it an SEP?

```
 1   A           I think.

 2   Q           Roughly, a self employment IRA?

 3   A           It is.

 4               (Exhibit 7

                 was marked for

 5               identification.)

 6   Q           What's next?

 7   A           This is documents that my

 8   lawyer did that are terminating my --

 9               MR. SHINBAUM:  This is just a

10   letter from her lawyers.

11               MR. HIGHTOWER:  We'll mark that

12   as 8.

13               (Exhibit 8

                 was marked for

14               identification.)

15               MR. SHINBAUM:  I don't think it

16   was actually incorporated or finished.  I

17   don't know.  When she was trying to change

18   her practice.

19   Q           What document are you looking

20   at now?

21   A           This is the summary of the two

22   banks that I have.

23   Q           Checking accounts?
```

```
 1   A          Checking accounts.  And it's

 2   the expenses that was made in August and

 3   September.

 4              MR. SHINBAUM:  I believe

 5   that's -- these are all of her business

 6   reports for the applicable time if you

 7   just want to do them all in one.

 8              MR. HIGHTOWER:  Is that

 9   checking account, is that her personal

10   checking account?

11   A          No.

12   Q          It's a business checking

13   account?

14   A          Business.

15   Q          This is the same as -- these

16   two are the same thing or they're

17   additional?

18   A          It kind of goes together.

19              MR. SHINBAUM:  It's kind of

20   everything.

21        I believe this is your practice

22   analysis and reports.  And the statements

23   as to income and everything else.  It's
```

1    just a compilation of everything with the

2    business through September -- looks like

3    from August through November.

4            THE WITNESS:  It's already

5    there.

6            MR. SHINBAUM:  He knows it's

7    there.  He needs to know what it is.

8    Q        I'm just asking you to go

9    through this stack of documents with me

10   and tell me what each portion of it is.

11           MR. SHINBAUM:  And of course,

12   before it goes to any court proceeding we

13   will have to redact all the names.

14   A        Just like I said, this is the

15   payments we did in August and September.

16   Q        Is this part of it also that

17   you just handed to me?

18   A        These are the incomes, and I

19   think they are together, income and

20   expenses.

21   Q        These are the income and

22   expenses for your business for the period

23   of August and September 2006?

```
 1  A          Yes.
 2             MR. HIGHTOWER:  We will mark
 3  that as 9.
 4             (Exhibit 9
               was marked for
 5             identification.)
 6             MR. SHINBAUM:  I think it
 7  actually runs through November but it
 8  contains what you -- and of course, again,
 9  we are submitting this for the deposition
10  today but if it's used in any procedings,
11  it will have to be redacted.
12             MR. HIGHTOWER:  That's fine.
13  Q          What's the next document?
14  A          I think this is a budget for
15  November.
16             MR. SHINBAUM:  That would be
17  November/December budget.
18             THE WITNESS:  I'm not sure
19  about this, Mr. Shibaum.
20             MR. SHINBAUM:  That's the
21  lawsuit from Jemison.  Did you ask for
22  that?
23             MR. HIGHTOWER:  I don't think I
```

```
 1  did.
 2              MR. SHINBAUM:  Did you want it?
 3              MR. HIGHTOWER:  I do not want
 4  it.
 5              MR. SHINBAUM:  I did have the
 6  2006 MBNA statement.  I didn't see it
 7  before.  If you want to add that to the
 8  MBNA.
 9          Did you want October practice
10  analysis?
11              MR. HIGHTOWER:  Sure.
12              MR. SHINBAUM:  Let's add that
13  to the October.
14  Q          Can you tell me in which stack
15  this one goes?
16  A              (Witness complied.)
17          This is insurance payments.
18  Q          I'll take a copy if you just
19  identify what they are.
20  A              They are various private
21  insurances, Blue Cross, Medicare,
22  Medicaid.
23  Q              For what time period?
```

```
 1   A        Some are August, some are
 2   October, some are September.
 3            MR. SHINBAUM:  Again, there's a
 4   bunch of information on this we will have
 5   to redact.
 6                 (Exhibit 10
                    was marked for
 7                  identification.)
 8   A        This is the taxes.
 9   Q        What period?
10   A        August 2006.
11   Q        Personal income or business?
12   A        Business.
13            MR. HIGHTOWER:  Mark this as
14   11.
15                 (Exhibit 11
                    was marked for
16                  identification.)
17   Q        Did you bring any other
18   documents with you?
19   A        Huh-uh.
20   Q        Let me just go through the list
21   of things that I have and you can just
22   tell me if you brought them.  Copy of your
23   Whitney Bank checking account statement
```

1   for August and September '06.  I think you

2   brought that.  I think it's already in

3   here.

4           MR. SHINBAUM:  It's Butler and

5   Camden.

6   Q           Did you bring Whitney?

7   A           Whitney is the summary.

8           MR. SHINBAUM:  Get me the

9   statements and the checks and I will get

10  them to him.

11  Q           Butler County checking account

12  statement for August and September '06,

13  you brought that.  Copy of any checking

14  account statement received by your husband

15  for the months of August and

16  September '06.  I don't know what banks he

17  uses.

18          MR. SHINBAUM:  We have no

19  control over those so we don't have those.

20          MR. HIGHTOWER:  You don't have

21  those?

22          MR. SHINBAUM:  No.  He has

23  control of those.

```
 1   Q           I think they're relevant to

 2   this.

 3               MR. SHINBAUM:  We'll have to

 4   take that up.

 5   Q           Copy of any credit card account

 6   statement received by you for charges made

 7   during the months of August and

 8   September '06.

 9               MR. SHINBAUM:  I don't think

10   there is any.

11   Q           Did you make any charges on a

12   credit card during August and

13   September 2006?

14   A           No.

15   Q           How did you pay for any items

16   that you needed to buy during that period

17   of time?

18   A           My husband take care of it.

19   Q           Your husband purchased them?

20   A           (Witness nodding head.)

21   Q           How did he purchase them?

22   A           Check or credit card.

23   Q           Do you understand how it could
```

1  be relevant that I asked you to produce a

2  copy of your husband's credit card

3  statements since he apparently purchased

4  everything you needed during those months?

5          MR. SHINBAUM:  We have no

6  control over his accounts.

7  Q        Copy of any credit card account

8  statement received by your husband for

9  charges made during August and

10  September 2006.  I assume the same?

11          MR. SHINBAUM:  Same.

12  Q        Copy of any and all documents

13  showing any interest held by you or your

14  husband in any automobile including

15  payment booklets, invoices and vehicle

16  titles.  You've produced two titles I

17  believe.

18          MR. SHINBAUM:  Two of the three

19  registrations.  We need to get you the

20  other one.

21  Q        Copy of any insurance policy on

22  your home and any other real property in

23  which you and your husband has an

1  interest?

2          MR. SHINBAUM:  We will have to

3  get that.

4  Q         Copy of any insurance policy on

5  any automobile which you or your husband

6  have any interest?

7          MR. SHINBAUM:  I don't have

8  that.  She didn't have that in the stack.

9  Q         Copy of any insurance policy

10  that you have on any personal property

11  other than automobiles, including jewelry.

12          MR. SHINBAUM:  I don't have

13  that in the stack.

14  Q         Do you have an insurance policy

15  on any jewelry that you own?

16  A         No.

17  Q         Or any other personal items?

18  A         No.

19          MR. SHINBAUM:  I imagine -- let

20  me correct that -- most homeowners'

21  policies have a limited coverage on

22  jewelry and everything but not complete

23  coverage on jewelry and everything.

1          MR. HIGHTOWER:  Especially if

2    you're outside the home.

3          MR. SHINBAUM:  It's very

4    limited.  Most homeowners' policies --

5    other than what's in the homeowners'

6    policy.

7    Q          You don't have a policy on any

8    jewelry that you're aware of?

9    A          No.

10   Q          Other than homeowners'

11   potentially?

12   A          No.

13   Q          Copy of your federal income tax

14   return for the tax year 2005.

15          MR. SHINBAUM:  I have a

16   transcript of the joint return showing

17   that -- did you file it yet?  You just

18   filed it.

19          THE WITNESS:  This is just

20   mine.

21          MR. SHINBAUM:  I'll have to

22   copy this.  And this is just the

23   transcript from the IRS showing that they

```
 1   didn't have it at the time we filed.
 2   Q           This document that you've just
 3   produced, is this a business tax return or
 4   a personal tax return?
 5                MR. SHINBAUM:   That's the
 6   transcripts.
 7                MR. HIGHTOWER:   What is this?
 8                MR. SHINBAUM:   Transcripts
 9   from --
10                MR. HIGHTOWER:   From tax year
11   '05?
12                MR. SHINBAUM:   '05 and '06.
13                MR. HIGHTOWER:   Personal income
14   tax or business?
15                MR. SHINBAUM:   Both
16   transcripts.
17                MR. HIGHTOWER:   That is going
18   to be Number 12.
19                     (Exhibit 12
                          was marked for
20                        identification.)
21   Q           And other than any
22   communications with your attorney, have
23   you made any written communications by
```

```
 1  e-mail or letter to anyone regarding your
 2  bankruptcy case?
 3  A          No.
 4  Q          We will come back to the
 5  documents in a little bit.  I'm going to
 6  ask you some questions about your
 7  bankruptcy case.
 8                 (Exhibit 13
                   was marked for
 9                 identification.)
10  Q          Is that a copy of your
11  bankruptcy petition and schedules?
12  A          Yes.
13  Q          You filed your bankruptcy on
14  September 25, 2006?  This may help you.
15  This is a copy of the docket and there's
16  the date.
17  A          Yes.
18  Q          Some of this we may have gone
19  over before and I apologize if I ask you a
20  question that you remember me asking you
21  previously.  But let me ask you to turn to
22  Schedule A.  If you flip a few pages into
23  it at the top there will be Schedule A.
```

1    You have listed on Schedule A that

2 you own or have an interest in property

3 located at 225 Woodland Heights Drive in

4 Greenville, Alabama; is that correct?

5 A        Yes.

6 Q        When you filed bankruptcy, how

7 much do you think your house was worth?

8 A        I do not know.

9 Q        You have a listing -- are you

10 still looking at it?  You list here that a

11 value of $373,800.  You listed -- you say

12 value listed is tax assessed value.  I

13 assume that the house was not in your

14 opinion worth that much; is that correct?

15 A        Say that again.

16 Q        You list the house as being

17 worth $373,800, but you also make a note

18 that says value listed is tax assessed

19 value.  Did you do that because you

20 thought the house was actually worth less

21 than the amount listed?

22        MR. SHINBAUM:  That was done

23 because usually in this district if we

```
 1  don't have an exact appraisal we submit
 2  the tax assessed value as at least some
 3  value, something that shows the method of
 4  ascertaining the value of the home.  I
 5  believe the trustee sent an appraiser down
 6  to get an opinion himself and didn't come
 7  up with that much.
 8              MR. HIGHTOWER:  I assume the
 9  trustee would have taken it and sold it if
10  he thought it was worth substantially more
11  than the debt that was owed on it?
12              MR. SHINBAUM:  Now, he is going
13  to propose an offer to compromise and sell
14  is my understanding from talking to the
15  trustee.  He hasn't done it yet, but -- I
16  don't know if he's done it yet.
17              MS. HAYES:  I haven't seen
18  anything.
19              MR. SHINBAUM:  But there are
20  discussions about the sale of the
21  property.
22  Q           Dr. Victoria, do you know how
23  much the trustee's appraiser came back and
```

```
 1   said the house is worth?
 2   A          I do not know.
 3              MR. HIGHTOWER:  Do you know,
 4   Richard?
 5              MR. SHINBAUM:  I haven't -- he
 6   just told me what he wants us to pay if we
 7   want to buy it.  I don't know how he
 8   determined that.  But we consider it a
 9   fair and reasonable offer.
10              MR. HIGHTOWER:  Are you willing
11   to disclose that amount?
12              MR. SHINBAUM:  Yeah.  Between
13   the accounts receivables and the house, I
14   think he has asked us if we would buy them
15   for 55,000.  Don't hold me to the exact
16   figure.  It's in that range.  So he did
17   find some value.
18              MR. HIGHTOWER:  Can you mark
19   this as 14?
20                   (Exhibit 14
                     was marked for
21                   identification.)
22   Q          Your house has a mortgage on
23   it, correct?
```

1   A           Yes.

2   Q           When was that mortgage entered

3   into?

4   A           (No response.)

5               MR. HIGHTOWER:  Do you have a

6   copy of it?

7               MR. SHINBAUM:  Yeah.  I will

8   copy it and submit it.  I do have a copy

9   of it.  The real estate mortgage is dated

10  January 13, 1998.  And the mortgage amount

11  it looks like at that time was

12  $431,062.70.

13               (Exhibit 15

                 was marked for

14               identification.)

15  Q           Who was your mortgage with,

16  what bank?

17  A           Brantley Bank.

18  Q           I'm going to show you what's

19  marked as Exhibit Number 14.  I'll

20  represent to you that that's a

21  reaffirmation agreement on your home.  If

22  you turn to the third page it shows the

23  original amount of the mortgage was

1   $347,577.39.

2        MR. SHINBAUM:   That may be a

3   different one.   Yes, that's what that

4   shows and the actual mortgage shows a

5   different amount.   Don't ask me how they

6   got there or what they did, but the actual

7   mortgage shows $431,062.70.   This is a

8   different document, different -- there is

9   a different amount on the reaffirmation.

10        MR. HIGHTOWER:   But that's the

11   same mortgage?

12        MR. SHINBAUM:   I believe so.

13   Let me see if it references that date.

14   This doesn't reference the date of the

15   mortgage but the document speaks for

16   itself.   I would have to check.   There may

17   -- it looks like there -- if these

18   documents are right, there may have been a

19   refinance somewhere.

20        MR. HIGHTOWER:   A refinance?

21        MR. SHINBAUM:   There may have

22   been.   I don't know there has been because

23   the payment amounts are even different.

1           MR. HIGHTOWER:  I was about to

2    ask her.

3    Q          Dr. Victoria, according to this

4    mortgage, which is identified as

5    Exhibit 15, it shows that you had original

6    mortgage payments of 5,257 per month for a

7    period of 120 months or ten years.  Does

8    that sound correct?

9    A          I don't know.

10   Q          Do you recall ever discussing

11   with your husband or ever paying --

12   discussing how much the mortgage was?

13   A          I don't recall.

14   Q          If you look at the

15   reaffirmation agreement that's marked as

16   Exhibit 14, if you will turn to page three

17   again, at the bottom it says it has a new

18   payment schedule.  It says your payment

19   schedule will be 176 payments in the

20   amount of $2,025.05?

21   A          I know about this, yes.

22   Q          And it says it's payable

23   semi-monthly, meaning twice per month.

1   Are you familiar with that?

2   A          Yes.

3   Q          In your bankruptcy schedules

4   you listed a mortgage debt of

5   approximately $4,000 per month.  Is that

6   where you got that number from, by

7   multiplying this twice, you have to pay it

8   twice per month?

9   A          Where is that?

10  Q          If you flip to --

11             MR. SHINBAUM:  He's talking

12  about Schedule J.

13  Q          That's where that number came

14  from?

15  A          Right, uh-huh.

16  Q          Is that the same amount that

17  you were paying before you filed

18  bankruptcy each month for your mortgage?

19  A          Yes.

20  Q          And I just did some rough math,

21  but if you have 176 payments due at the

22  rate listed in Exhibit Number 14, that

23  means the mortgage will be paid off in

```
 1   roughly seven and a half years.  Is that
 2   about what you expected it to be paid off
 3   in?
 4   A          Yes.
 5   Q          How large is the home?
 6   A          3,100 square footage.
 7   Q          How many bedrooms and baths?
 8   A          Four and three baths.
 9   Q          How would you describe it in
10   comparison to other houses in the area?
11   Smaller?  Larger?
12   A          Same.
13   Q          About the same?  How many
14   people live in the house?
15   A          Four.
16   Q          Who are they?
17   A          Me and my husband, my son and
18   granddaughter.
19   Q          How many children do you have?
20   A          I have four.
21   Q          What are their ages?
22   A          39, 37, 31 and 30.
23   Q          All of them are 18 or older
```

1  then?

2  A          Yes.

3  Q          How old is the son that lives

4  with you?

5  A          30.

6  Q          Could you live in a smaller

7  house at a lesser -- with a smaller

8  mortgage payment if you had to?

9  A          Say that again.

10  Q          If you had to, could you live

11  in a smaller house with a lesser mortgage

12  payment each month considering the number

13  of people that live in the house?

14  A          Yes.

15            (Exhibit 16

              was marked for

16            identification.)

17  Q          Can you identify Exhibit 16 for

18  me?

19            MR. SHINBAUM:  This is the

20  reaffirmation agreement.  I think it's the

21  same.

22            MR. HIGHTOWER:  I must have

23  just given her the wrong one.

1  Q          Could you identify that one for

2  me?

3  A          Yes.

4  Q          What is that?

5  A          This is a loan by the

6  corporation we have for weight loss.

7  Q          Is it a loan to you personally

8  or to a business?

9  A          Business.

10  Q          An incorporated business or

11  just a business that you're doing business

12  under that name?

13  A          It's incorporated.

14          MR. SHINBAUM:  I don't believe

15  she actually ever did any business under

16  the corporation.  All the income and

17  everything came in personally and

18  everything.  She thought she was doing

19  business as a corporation, but I don't

20  believe that it was truly analyzed it

21  would be.

22  Q          Could you turn to page three of

23  that?  On page three it lists under where

1  it says item or type of item, certificate

2  of deposit number 19922.  What is that

3  certificate of deposite?

4  A          That's collateral for this

5  loan.

6  Q          Who owns that certificate of

7  deposit?

8  A          It's me and my cousin who put

9  in some interest to the corporation.

10 Q          How much is it?

11 A          It's 3,500 but it's taken out

12 already.  And what the bank did is take it

13 out from the nineteen six seven -- 697.

14 So at this point the loan is for 16

15 something.

16 Q          You had an interest in the

17 certificate of deposit but it has been --

18 the bank has already cashed it?

19 A          Right, it has to be.

20 Q          At what point --

21 A          It's collateral.

22 Q          It serves as collateral for the

23 loan; is that correct?

```
 1  A          Yes.
 2  Q            Did you list it in your
 3  bankruptcy petition and schedules?  If you
 4  will look here, this is Exhibit Number 13.
 5  You see item number two here?  You see it
 6  asks you to list certificates of deposit?
 7  I don't see one listed there.
 8  A            As I said, that's how I
 9  explained to you, that it's a loan.
10  Q            You didn't list it on your
11  bankruptcy petition and schedule as an
12  asset that you owned an interest in; is
13  that correct?
14  A            I don't think it's my asset
15  because, as I said, it's tied up to the
16  loan.
17  Q            Who owns -- but you did say
18  that you owned the certificate of deposit
19  with your cousin?
20  A          My cousin.
21  Q            So it must be an asset of
22  yours, then?
23  A            No, it's not.  As I said --
```

1  Q          I understand that it's serving

2  as collateral, but if you had say a car

3  that was serving as collateral, that would

4  be yours?

5  A          It's her money.  I had to sign

6  for her.

7  Q          So the certificate of deposit

8  belongs to your cousin?

9  A          Right.

10  Q          Not to you?

11  A          It is not mine.

12  Q          Is your name on it?

13  A          Yeah.  The bank has to make me

14  sign also.

15  Q          On item number four on your

16  personal property list on your bankruptcy

17  schedules here you list household goods

18  valued at $7,000.  Where did you come up

19  with that number from?

20  A          It's like TV sets and living

21  room sets, dining room sets.

22  Q          So you think that all the

23  furniture in your house is worth $7,000?

1  A          Yes.

2  Q          All the items in there?

3  A          Yes.

4  Q          You listed jewelry worth $5,000

5  here.

6  A          Yes.

7  Q          Can you describe to me the

8  pieces of jewelry that you have that add

9  up to that?

10  A          You have the list there, what I

11  told you before.

12  Q          This is just notes I made

13  yesterday.  I don't have a list.

14  A          A few rings, few -- three or

15  four rings, three or four necklaces and

16  earrings.

17  Q          Last time we talked you told me

18  that you had given some jewelry away to

19  others.  Can you tell me what pieces of

20  jewelry that you gave away?

21  A          Maybe a couple of earrings to

22  my daughter, two or three necklaces.

23  Q          Also to your daughter?

```
 1   A           Yeah.

 2   Q           Which one?  You gave me a list

 3   of the ages of your children.  Which one

 4   is your daughter?

 5   A           The second and the third.

 6   Q           Daughters then?

 7   A           Daughters.

 8   Q           31 and 30?

 9   A           31 and 30.

10   Q           And the other two are your

11   sons?

12   A           Right.

13   Q           How much do you think the value

14   of the jewelry you gave to your daughters

15   was?

16   A           Probably 3,000.

17   Q           Did you give any jewelry away

18   to any other people?

19   A           No.

20   Q           Have you given any property

21   including jewelry to your daughters or

22   anyone else since you filed your

23   bankruptcy case?
```

```
 1   A          No.

 2   Q          We also talked about a

 3   condominium or townhouse, I'm not sure how

 4   you described it, in Atlanta.  Who owns

 5   that?

 6   A          My husband.

 7   Q          What did you say the value of

 8   it was?

 9   A          I do not know.

10   Q          Do you have a mortgage on it?

11   A          Yes.

12   Q          Do you have a copy of it?

13   A          No.

14   Q          In your home do you have copy

15   of it?

16              MR. HIGHTOWER:  Is that the

17   same thing we talked about earlier as far

18   as the credit cards?

19              MR. SHINBAUM:  No.  Brandon's

20   been trying to get a copy of it from

21   Atlanta.  We just haven't gotten it yet.

22   Q          The last time -- do you need to

23   ask your lawyer a question?
```

1          The last time we talked you had an

2    idea of what you thought the property in

3    Atlanta was worth.  You still do not

4    remember our discussions previously?

5    A          I do not know.

6    Q          You don't know how much you and

7    your husband pay each month for it?

8    A          I do not pay.

9    Q          You do not pay?

10   A          (Witness shakes head.)

11   Q          Your husband pays for it each

12   month?

13   A          Right.

14   Q          Do you know how much he pays?

15   A          I do not know.

16   Q          How did you go about purchasing

17   the condo?  When I say "you," how did you

18   and your husband go about purchasing the

19   condo?

20   A          What is the purpose?

21   Q          When did you purchase it?

22   A          2002 I think.  2002.

23   Q          Who lives in it?

| | | |
|---|---|---|
| 1 | A | Nobody. |
| 2 | Q | No one lives in it? |
| 3 | A | Nobody. |
| 4 | Q | What is it used for? |
| 5 | A | We just go there on weekends. |
| 6 | Q | Who is "we?" |
| 7 | A | Just me and my husband. |
| 8 | Q | The last time we talked you had |

9  told me that your daughter lived there or
10 someone in your family lived there.  Has
11 that changed?

12 A        She did when she was in med
13 school.

14 Q        She no longer lives there?

15 A        No.

16 Q        When did she stop living there?

17 A        July of last year, 2006.

18 Q        How did you locate the condo?
19 How did you and your husband locate the
20 condo to purchase it?

21 A        How did I locate it?

22 Q        When you were in Atlanta how
23 did you decide that you wanted to purchase

1    a condo?

2    A              For my daughters.

3    Q              How did you find it?

4    A              I think she found it with a

5    Realtor.

6    Q              How did you decide -- what made

7    you decide to buy it?

8    A              For my daughters to live.

9    Q              Do you remember at all

10   discussing how much the cost was?

11   A              She and my husband.

12   Q              So you don't have any

13   discussions with your husband when you buy

14   a piece of property like that about how

15   much it costs?

16   A              He paid for it.

17   Q              Let me give you an example.  If

18   I was going to go buy a house or a condo

19   in Atlanta, and I'm married, I would think

20   my wife would probably be interested in

21   how much I was going to pay for it because

22   we just discuss those type of things.  Do

23   you discuss that type of stuff with your

1  husband?

2  A          No.

3  Q          If you'd turn to Schedule D,

4  you've got listed as secured creditors the

5  mortgage on your home and you've got what

6  we discussed earlier.  There's a loan, you

7  said that that was the loan here.  The

8  second loan is listed as Camden National.

9  Is that on your -- what type of business

10  did you describe that as?

11 A          Weight loss.

12 Q          Weight loss business.  Your

13 home, would you say that you bought it for

14 your personal use?

15 A          Yes.

16 Q          And your debt that you owe to

17 Camden National, that's a business use?

18 A          Yes.

19 Q          If you'd flip to the next page

20 and flip one more time.  These are tax

21 debts that you have listed here.  Are they

22 for personal income taxes or business

23 income taxes?

1    A         Business.

2    Q         If you would turn to Schedule

3    F, it should be two pages.  The first

4    creditor you have listed is Camden

5    National line of credit, is that a

6    business debt or a personal debt?

7    A         Business.

8    Q         The second debt, is that the

9    same debt just listed as disputed debt?

10    A         Yes.

11    Q         The third debt, loan to Camden

12    National, is that business or personal?

13    A         Business.

14    Q         The fourth debt is CenturyTel,

15    is that business or personal?

16    A         It's business.

17    Q         Is that for telephone services?

18    A         Yes.

19    Q         The fifth debt, Jenisen

20    Healthcare, is that a business debt?

21    A         Yes.

22    Q         Greenville Hospital also a

23    business debt?

1  A          Yes.

2  Q          Number seven, MBNA America

3  credit card for debt of $9,663, is that a

4  business debt or a personal debt?

5  A          I'm listed as --

6          MR. SHINBAUM:  This isn't the

7  70,000 one.  This is a different one.

8  A          This is also my husband and I'm

9  just a cosigner.  I think they list it

10 whenever --

11 Q          The $9,663, is that not an

12 obligation that you owe, you just have

13 access to that card?

14 A          Right.  I have access to that

15 card.

16 Q          The next one is --

17 A          And this is my son and I'm also

18 have a use to.

19 Q          Number eight, MBNA America for

20 $3,378, is that the same thing?

21 A          My son and I am also on it.

22 Q          You're on the card but you

23 don't owe the debt?

1    A            Yeah.

2    Q            Number nine, MBNA America.   On

3    here it's listed for $65,000, but you

4    amended your bankruptcy recently.   This is

5    a copy of the amendment you filed in your

6    bankruptcy case.   Do you see where you

7    changed that $65,000 debt to a $1 debt.

8                 (Exhibit 17

                  was marked for

9                 identification.)

10               MR. SHINBAUM:   I also have a

11   notation on there that as to the total

12   amount of the debt and that there may be

13   liability on it since it was used to pay

14   taxes.

15               MR. HIGHTOWER:   I don't see

16   where it says it was used to pay taxes.

17   I'm looking at the original schedule.   Let

18   me look at what you've got there.   Account

19   in husband's name, used to pay wife's

20   taxes.

21               MR. SHINBAUM:   Yeah.

22   Q            As with the two before, that is

23   not a debt that you owe.   You think you're

1  just on the card.  You had privilege to

2  make charges with the card?

3  A        Yes.

4  Q        But you don't owe that debt?

5  A        Well, I was the one who used it

6  just like mentioned in here that I used it

7  for to pay expenses.

8  Q        But you weren't on that -- you

9  were not obligated on that account like

10  the first -- like the others that we

11  discussed?

12  A        I have to because I was the one

13  who used it.

14  Q        Well, I thought you told me on

15  the last two MBNAs that you also used that

16  account.

17  A        Yeah.  This is the one that I

18  was -- it's noted in here that I used it

19  so I will have to pay it.

20  Q        Let me ask you this:  If you

21  look at this here, we just discussed these

22  two credit cards, this one and this one?

23  A        Right.

1  that.  But will you stipulate that she was

2  not obligated on the account?

3          MR. SHINBAUM:  No.

4          MR. HIGHTOWER:  What was the

5  basis for changing it from 65,000 to $1?

6          MR. SHINBAUM:  The trustee and

7  the bankruptcy administrator asked us to

8  change it.

9          MR. HIGHTOWER:  Well, you're

10  her lawyer.  I assume if he asked you to

11  make other changes that you didn't think

12  were proper you wouldn't have done them.

13          MR. SHINBAUM:  I have made a

14  notation to reflect the nature of the

15  bill.  Legally, in terms of a direct suit

16  against her, they might have a problem

17  proving that she owes the debt.  Since it

18  was used to pay taxes, it may be a

19  nondischargeable debt.  So the notation

20  was made to reflect the way things

21  actually exist today.

22  Q          Creditor ten is listed as

23  Whitney Bank for $5,483?

1    A         It's business.

2    Q         Before we came here today I

3    looked at the debt that was owed on your

4    house which you described as a personal

5    debt.  And then I took all the other debts

6    that you owed and subtracted them and I

7    came up with $7,113.26 left over.  In

8    other words, the debt you owe on your

9    mortgage is larger than all the other

10   debts that you owe for your businesses.

11   Does that sound accurate to you?

12   A         Say it again.

13   Q         Before I came down here today I

14   looked at your mortgage, which is listed

15   as $290,000, and you describe that as a

16   personal debt.  And then I took that

17   number and I subtracted out all the other

18   debts that you had listed and I came up

19   with a little over 7,000, meaning that the

20   debt that you owe on your mortgage, which

21   is a personal debt, is larger than all the

22   business debts that you owe.  Does that

23   sound accurate to you?

1   A          I'm not following.

2   Q          Well, you owe $290,000 on your

3   mortgage.  Do you agree with that?

4   A          I agree.

5   Q          And then you owe $60,000 in

6   taxes.  You had originally listed $83,000

7   worth of unsecured business debts but now

8   that number's been reduced because you

9   changed the $65,000 debt, you reduced that

10  one down to $1 so that you have roughly

11  $24,000 worth of unsecured debts.  And

12  what I'm asking you is if you take the

13  money that you owe for your mortgage and

14  you subtract out all the other debts that

15  you owe, the money that you owe for your

16  mortgage is more than the money that you

17  owe for all your other debts.  Does that

18  sound accurate?

19          MR. SHINBAUM:  I don't believe

20  that's a correct statement as to the

21  amount of the unsecured -- of what would

22  be the unsecured debt.  I believe that

23  you're leaving out roughly $165,000 debt

1  if you recalculate what's owing to the

2  hospital.  And you're also -- and I

3  believe the true figure on the home

4  mortgage came to about 282,000 if you look

5  at the reaffirmation from what they said

6  was owing.

7  Q        If you'd flip to Schedule I for

8  me.  We talked about this before.  You

9  list yourself as having gross income of

10 $15,000 a month and your husband as having

11 $20,000 a month; is that correct?

12 A        At that time, yes.

13 Q        Has that changed?

14 A        Yes.

15 Q        How has it changed?

16 A        It's lower.

17 Q        For who?

18 A        Both.

19 Q        What is the current?

20 A        As of today's date?

21 Q        As of today.

22          MR. SHINBAUM:  If you know.

23 A        Well, I mean, both of us are

1    not working so I cannot really tell you.

2    Q            You said both of you are not

3    working?

4    A            Well, we are on vacation so I

5    cannot tell you.

6    Q            You're on vacation right now?

7    A            Yeah.

8    Q            If you weren't on vacation --

9    you said your income went down and I

10   assume it's not because you're on

11   vacation.  How much is it if you weren't

12   on vacation?

13   A            Mine I know is less than

14   10,000, but my husband I could not tell

15   you.

16   Q            If you would flip to Schedule

17   J, you brought me a list of your

18   charitable contributions each month; is

19   that right?

20   A            Yes.

21   Q            That's listed at roughly a

22   thousand dollars a month?

23   A            At that time.

1    Q          At that time.  You've got auto

2    insurance down here listed for $1,200 a

3    month?

4    A          Yes.

5    Q          Is any of the auto insurance

6    listed for cars that are driven by someone

7    other than you or your husband?

8    A          Yes, three of my children's.

9    Q          Which three children?

10   A          Age 39, age 35 and --

11   Q          You mean 37?  You told me 39,

12   37, 31 and 30 earlier.  Which three is it?

13   A          First three.

14   Q          You pay their auto insurance?

15   A          Yes.

16   Q          What kind of cars do they

17   drive?  You can go by age if you want to

18   just tell me which car for which age.

19   A          One is Nissan, number one.

20   Q          What kind of Nissan?

21   A          I don't know what kind.

22   Q          Is it a sports car or a large

23   car?

```
 1   A         It's a regular car.

 2   Q         Did you pay for that?  Did you

 3   or your husband pay for -- is that car

 4   paid for or did you and your husband -- do

 5   you make payments on it for them?

 6   A         My husband.

 7   Q         Makes payments.  How about the

 8   37-year-old?

 9   A         37 is Jetta GTI, year 2000.

10   Q         Who makes payments on that?

11   A         He paid for it, but we are

12   paying for the insurance.

13   Q         It's paid for?

14   A         It's paid for.

15   Q         How about the 31-year-old?

16   A         31 is Mercedes.

17   Q         Is that one paid for?

18   A         No.

19   Q         Who's making payments on it?

20   A         My husband.

21   Q         Do you pay any of the debts at

22   your house?

23   A         No.
```

| | |
|---|---|
| 1 | Q          Your husband pays them all? |
| 2 | A          Yes. |
| 3 | Q          Where does the money come from |
| 4 | that he uses to pay the debts? |
| 5 | A          From his business. |
| 6 | Q          Does any of the money that you |
| 7 | earn go to pay debts? |
| 8 | A          I pay for the telephone, the |
| 9 | power, medical insurance.  That's about |
| 10 | it. |
| 11 | Q          You make gross 15,000, or when |
| 12 | you filed your bankruptcy case you were |
| 13 | making $15,000 a month? |
| 14 | A          Yes. |
| 15 | Q          If all you paid were the things |
| 16 | that you just described, where does the |
| 17 | rest of the money go to? |
| 18 | A          Excuse me.  I don't think we |
| 19 | are on the same page.  Did you say when I |
| 20 | filed the bankruptcy? |
| 21 | Q          When you filed bankruptcy. |
| 22 | A          Yeah, that's what I paid.  What |
| 23 | was listed is what I pay.  But after that |

1  since my income is lower then I have to

2  ask my husband to give me money.

3  Q        When you filed your case you

4  said you were making $15,000 gross and

5  you've just described to me that your

6  husband pays virtually all of your debts,

7  you pay a few of them?

8  A        Yeah.

9  Q        At that time what did you do

10 with the rest of the money that you made?

11 A        It's all business.

12 Q        In other words, I guess what

13 I'm trying to ask you is if your husband

14 just sent a check in each month for your

15 mortgage, did all of the money that was

16 used to pay the money come from his salary

17 or is it that some of your salary would

18 have been used to help pay the mortgage?

19 A        It's all his money.

20 Q        You showed your husband's net

21 take home as $10,000 a month when you

22 filed bankruptcy.

23 A        Yes.

1  Q         You show expenses of a little

2  over $13,000 when you filed bankruptcy.

3  A         Yes.

4  Q         Well, if he only made after

5  taxes $10,000 a month, how did he pay

6  $13,000 a month?

7  A         Say it again.

8  Q         Well, you said he's only making

9  $10,000 after taxes per month over here.

10  He makes that after taxes?

11  A         Right.

12  Q         That's what he brings home?

13  A         Yeah, uh-huh.

14  Q         You show expenses of a little

15  over $13,000 each month.  How can he pay

16  that much in expenses if he only makes

17  10,000?

18  A         Well, I told you the power, I

19  pay that.  I pay water.

20  Q         How much is the water?  Which

21  one's the water?

22  A         300.  I pay all of this and

23  then I pay for the medical expenses.

1  Q          Which one's that?  A hundred

2  dollars?

3  A          Yeah, uh-huh.  I pay a little

4  bit for the charitable contribution.

5  Q          How much?

6  A          Maybe 200.  I pay for the

7  health insurance and that's it.

8  Q          Okay.  These amounts here, what

9  do they add up to roughly?

10  A          About fifteen, sixteen hundred.

11  Q          So if you're only paying $1,500

12  worth of expenses and your husband only

13  makes $10,000 a month, that still leaves

14  something left over, doesn't it?

15  A          Probably -- I would have to sit

16  down to tell you exactly.

17  Q          I guess what I'm trying to get

18  at is don't you guys operate like most

19  households in that you both make an income

20  and yet you both pay expenses.  And it may

21  be that your husband cuts a check for your

22  mortgage or some other debt or car, for

23  instance, but that some of the money you

Page 67

```
 1  make goes towards that?
 2  A          I don't know.  I cannot tell
 3  you exactly how it works.
 4  Q          You just don't know?
 5  A          I don't know.
 6  Q          Are you not privy to the
 7  finances at your household?
 8  A          Say it again.
 9  Q          Are you not part of the
10  decision making at your household about
11  how debts are paid?
12  A          No.
13  Q          Your husband controls that
14  exclusively?
15  A          Yes.
16  Q          I'm through with asking you
17  questions about your bankruptcy petition
18  here.  But I would like to take a moment
19  to look over the documents that you
20  brought with you today, since this is the
21  first time I have seen them, and then ask
22  you a couple of questions about those.
23             MR. HIGHTOWER:  If you want to
```

1  take a quick break, Richard.

2            (Short recess.)

3  Q         Dr. Victoria, this is what's

4  marked as Exhibit 1, which you identified

5  as the bank statement from Camden National

6  Bank.  At the top right corner it says

7  page one of three.  And then the next page

8  at the top right corner it says page one

9  of five.  After that it says page two of

10 five.  Do you know where the other pieces

11 are?

12 A         The other pieces are just the

13 explanation of just the copies of the

14 deposit and then copies of the checks.

15 Q         Do you have those?

16 A         I did not bring it with me.  I

17 didn't know you needed.

18 Q         Let me see if I can get you to

19 identify some of these things for me.  We

20 will have to look together unless you have

21 a copy of it with you.  I see for

22 September there were three large deposits,

23 one of $1,300, one of a little over $1,400

```
 1   and another one of $1,487.  What are those
 2   for?
 3   A          The 1,300 is from my husband.
 4   Q          Is what?
 5   A          Is from my husband.  He gives
 6   me money for my business.  And then the
 7   other two big ones are insurance payments.
 8   Q          Why is it that your husband
 9   gives you money?
10   A          I don't have that much money to
11   spend.
12   Q          You make --
13   A          For business.
14   Q          You make $15,000 gross?
15   A          Yeah, but it's listed what I
16   have paid and it's listed in your -- the
17   one that I gave you what I have paid for.
18   Q          So this is your bank account
19   solely and your husband gives you money to
20   deposit into it.  And then what do you do
21   with the money that your husband gives to
22   you?  You said you help pay business
23   expenses?
```

1  A          He helps me.

2  Q          For your business office

3  expenses?

4  A          Yes.

5  Q          Okay.  If you'd look under the

6  check transaction section.

7  A          Uh-huh.

8  Q          There's a check that's dated

9  September 5th for $2,727.  Do you know

10  what that's for?

11  A          That's the credit card that I

12  told you I have to pay.

13  Q          Payment to your credit card.

14  On September 11 there's a check

15  transaction for $1,300?

16  A          I'm not hundred percent sure

17  but it's also business.

18  Q          Do you know who it would have

19  been written to?

20  A          No.  I'm sorry.  I thought that

21  you would not need that.  I'm not a

22  hundred percent sure but I can say that

23  maybe it was transferred to our weight

1  loss.   We have a copy of this.

2  Q          Weight loss business?

3  A          Yes.

4  Q          Transferred to the business?

5  A          Right.   Because this is the

6  corporation.   We just changed the name.

7  Q          Why would you transfer money to

8  the business?

9  A          Because we just don't have any

10  money there.

11  Q          So you're putting your money

12  into the business?

13  A          Right.

14  Q          And what does the business do

15  with the money?   What are you doing with

16  the money once it's transferred into the

17  business?

18  A          Pay for supplies.   We do buy

19  medications, office supplies.

20  Q          Can I see your binder?   Do you

21  mind if I just take a brief look at it?

22  A          No. Just ask me which one you

23  would be asking.

1    Q        Well, it looks like to me that

2    it's additional information that is

3    related to all this stuff we're going

4    over.  I'd just like to take a look at it.

5    A        I have this August -- I mean,

6    these are all copies that I gave Richard.

7    Q        Can I take a quick look at it?

8    A        Are you supposed to?

9             MR. SHINBAUM:  Let him look at

10   it.

11   Q        Your attorney can tell you

12   whether that's acceptable unless there's

13   any kind of attorney/client privilege

14   stuff in there.

15             MR. HIGHTOWER:  I just want to

16   see it in the form she's got it in because

17   it seems to be a little more organized

18   than the way it's been produced.

19   A        These are just letters from the

20   lawyers, from him.  Letter from him so I

21   have to answer that so I always write a

22   letter.

23             MR. HIGHTOWER:  Do you want to

1    take a look at it, Richard, to see if

2    there's something in there you don't --

3    Q        If it's just the same stuff I'm

4    sure you don't mind if I look at it.

5    A        Yeah.  I just put it in

6    organized.

7    Q        I'd like to see it if you don't

8    mind.

9    A        As I said, like you have a copy

10   of this.  You have a copy.  He said not to

11   give this to you.  August, you have copies

12   of this.

13   Q        May I see it?  This register

14   report, what is that?  Where it says

15   "Register Report" at the top, what is

16   that, this here where it says "Register

17   Report?"  What is that register from.  Is

18   that bank?

19   A        This are the insurance

20   payments.

21   Q        This is a business register?

22   Is this your business?

23   A        Right.

```
 1   Q          From Edgar business, what does
 2   that refer to?
 3   A          The money I get from him.
 4   Q          Thank you.  I appreciate you
 5   letting me look at it.
 6        If you would refer back to this for
 7   me.  Flip to the next page here.  Do you
 8   see where it says "tuition?"  What's that
 9   for?
10   A          My granddaughter's tuition.
11   Q          That's a payment by you for her
12   tuition?
13   A          Yes.
14   Q          When I asked you earlier what
15   you paid as expenses you didn't mention
16   any tuition payments.
17   A          Say again.
18   Q          We talked earlier today about
19   what you paid for each month and you
20   didn't mention that you paid any tuition
21   fees.
22   A          I thought it is not necessary.
23   Q          Is there any other expenses
```

1    that you didn't think it was necessary to

2    tell me about?

3    A          No.

4    Q          How much do you pay each month

5    for her tuition?

6    A          255.

7    Q          Is that a monthly bill?

8    A          Yes.

9    Q          What's that for?

10   A          It's tuition.

11   Q          What school?

12   A          Ft. Dailey Academy.

13   Q          Is that a private school?  High

14   school?

15              MR. SHINBAUM:  Complete school,

16   K through 12 in Butler County.

17   Q          Can you tell me what the large

18   deposits listed on this page are from?  Do

19   you see anything over a thousand dollars

20   there?

21   A          Yeah.  This is the -- I

22   mentioned it is from my husband, the 1,800

23   and the 1,000.  And then 1,500 -- the rest

Page 76

1  are insurance payments and office

2  payments.

3  Q        If you'd flip to the next page

4  under check transactions, that first one

5  $1,608, what's that for?

6  A        These is the money I

7  transferred to the corporation.

8  Q        All these are money that you

9  transferred to the corporation?

10  A        Right.

11  Q        How much money do you transfer

12  to the corporation each month?

13  A        About two or three thousand.

14  Q        What's the name of this

15  corporation?

16  A        It's now Medical and Health

17  Services of Alabama.

18  Q        And that's the weight loss one?

19  A        Weight loss.

20  Q        So that business isn't making

21  enough money on its own, you have to put

22  money into it?

23  A        Yes.

1    Q          And do you list that money

2    anywhere as an expense in your bankruptcy

3    petition and schedule?

4    A          Did I list what?

5    Q          Well, I'll show you what we're

6    talking about.  The bankruptcy schedules

7    you've got your expenditures listed.  Is

8    it listed there anywhere?

9    A          No, it's not listed.  It could

10   be from this spouse's debts.

11   Q          Is it listed as spouse's debts

12   or are you just guessing?

13   A          Could be from there.

14   Q          But you're not sure?

15   A          I'm not sure.

16   Q          And it's not listed under here,

17   number ten, as a transfer.  I don't see

18   anything listed there.

19   A          Say it again.

20   Q          Well, it's not listed as an

21   expense, which you just said a minute ago.

22   It's not listed as a transfer other than

23   that.  So it's just not listed at all, the

```
 1   money that you're putting into the
 2   business each month.  You say it's an
 3   expense but it's not listed; is that
 4   correct?
 5   A          I'm not following.
 6   Q          Well, you understand that when
 7   you file bankruptcy you've got to list
 8   your income and you've got to list your
 9   expenses?
10   A          I thought it was listed
11   already.
12   Q          Where was it listed?
13   A          Under spouse's.
14   Q          You think it's --
15   A          Yeah.  I thought it was -- that
16   could be under --
17   Q          So you think it's listed as one
18   of your husband's debts?
19   A          It could be, yeah.
20   Q          So you think that money that
21   you transfer to the business each month is
22   a debt owed by your husband?
23   A          Owed by my husband?
```

1  Q          Well, let me ask you this:

2  When you say -- when you use the term

3  "spouse's debts," that refers to your

4  husband, correct?

5  A          Okay.  I know what you mean.

6  Q          How can it be a debt of your

7  husband's?

8  A          Yeah.

9  Q          It's not -- that's not it.

10 A          No.  I probably understood it

11 that it's my, probably.  I'm not going to

12 guess.  I don't know.

13 Q          It's just not in here.  Since

14 it's not listed as a spouse debt and it's

15 not listed anywhere else, then it's just

16 not listed, right?

17 A          I don't know.  I don't know.

18 Q          You would agree that it's not

19 listed on this page, Schedule J?

20 A          I'd have to review it and I

21 can't tell you that right now.

22 Q          I'll let you review it.

23 A          Tell me what is the point of

1  what you are telling that to me.

2  Q        Well, when you file a

3  bankruptcy case you've got to list all

4  expenses that you pay and your husband

5  pays.

6  A        Right.

7  Q        I asked you about your expenses

8  earlier and you didn't tell me that you

9  were paying any money into the business,

10 and I'm just curious why it is that you

11 didn't list it.

12 A        I don't know why I did not list

13 it, but it is an expense that I pay.

14 Q        And it came out to roughly for

15 this particular month of September you

16 said 1,600, 1,000, 1,000, all these are

17 payments into the business?

18 A        I can tell exactly when I see

19 the check but --

20 Q        Which ones were payments?

21 A        This is business, right?  You

22 understood that it is business, right?

23 Q        You told me that you were

1  transferring money into the weight loss

2  business.

3  A          Yes.  Because the Camden and

4  Whitney are both business.

5  Q          Business checking accounts?

6  A          Checking accounts.

7  Q          I understand that.  They are

8  the accounts that you deposit money that

9  you earn into?

10  A          Right.

11  Q          And that you pay your bills or

12  any expenses from?

13  A          Yeah.

14  Q          And you told me that --

15  A          And it could be that I have

16  transferred this money to Whitney too, but

17  as I said, I can look back and then I can

18  fax it to Mr. Richard.  It may not be for

19  the weight loss, it could be from the

20  Whitney Bank.

21  Q          You just told me a minute ago

22  that these went to the weight loss

23  business.

1  A              That's what I said.  I'm just

2  going to guess because I usually do that

3  sometimes.  I transferred from Camden

4  because the money that my husband gave is

5  already there and I may have to use it for

6  Whitney.

7  Q              Why would you transfer from

8  Camden to Whitney?

9  A              Because my husband's money is

10 in there.

11 Q              In where?

12 A              In Camden.

13 Q              Your husband also has a bank

14 account with Camden?

15 A              No.

16 Q              I'm just not following you.

17 A              Okay.  See, for example, I was

18 telling you that the money that he gave me

19 for the expenses is 2,200.  So that's what

20 I said, that when I have to put it in

21 Camden Bank and I may need some money to

22 use for Whitney Bank, then I transfer it

23 from there.  But I can tell you which one

1    is this one as soon as I get the copy of

2    my checks.

3    Q          You don't have them with you?

4    A          No.

5    Q          What I'm getting at is that you

6    show that you've got that much, $1,890,

7    left over every month after you pay all

8    these expenses.  But you just told me that

9    you transferred two or three thousand

10    dollars each month to the weight loss

11    business.  How can you do that if you've

12    only got that left over after paying these

13    expenses unless these expenses aren't

14    accurate?

15    A          I don't know.  I don't really

16    know.

17    Q          Exhibit Number 2, these are

18    copies of the registration for your two

19    vehicles; is that correct?

20    A          Yes.

21    Q          And they're in your husband's

22    name?

23    A          Yes.

```
 1   Q          How long has it been since
 2   there was a car registered in your name,
 3   if ever?
 4   A          I have not owned a car in a
 5   long time.
 6   Q          How long has it been?
 7   A          Since we moved to Alabama.
 8   Q          How long ago was that?
 9   A          14 years ago.
10   Q          Ever since then you've
11   purchased all your cars under your
12   husband's name?
13   A          Yes.
14   Q          Is there any reason for that?
15   A          I don't drive cars.
16   Q          I think I asked you before, you
17   said you did drive the cars on occasion?
18   A          Yeah, to work.
19   Q          Well, your house, did you guys
20   purchase that, you and your husband
21   purchase that in both of your names?
22   A          Yes.
23   Q          But you didn't purchase any
```

1   cars in your name?

2   A          No.

3   Q          I'm just trying to understand

4   why you wouldn't purchase a car in your

5   name.

6   A          He just wanted it in his name

7   because he pays for it and he borrows it

8   and he pays for it.

9   Q          This is Exhibit 3.  Looks like

10  it's just a 2003 year-end report for your

11  MBNA card.  Did you get one of these --

12  this is a summary for all the credit card

13  charges.  Did you get one for '06?

14  A          No.

15  Q          Do you know why not?

16  A          I didn't realize that you have

17  to call the credit company so they can

18  give you this one.

19  Q          They don't just send this to

20  you in the mail, you have to request it?

21  A          No.  You have to request it.

22  Q          So you requested this one back

23  in '03?

1  A          Right.

2  Q          In Exhibit 4 you've produced

3  some MBNA records for October, September,

4  August, July '06.  From just briefly

5  reviewing them it looks like there weren't

6  any purchases being made on these cards.

7  There were some late fees and you were

8  making payments; is that correct?

9  A          Yes.

10  Q          And these are your husband's?

11  A          Yes.

12  Q          You're familiar with these?

13  A          Yes.

14  Q          But you don't know how much

15  money you pay for mortgage on the condo in

16  Atlanta but you're familiar with the

17  credit card records?

18  A          No.

19  Q          If you're not using your charge

20  card to buy things, how have you been

21  purchasing things?

22  A          My husband.

23  Q          What does he purchase -- well,

1    this is his credit card records, correct?

2    A          He's got a personal credit

3    card.

4    Q          So this is not the one that

5    he's been using to purchase things with?

6    A          No.

7    Q          Do you have copies of the

8    account that he's been using to purchase

9    things with?

10   A          No.

11   Q          Why did you bring this today?

12   This is the same thing I just asked you

13   about.

14   A          You requested it.

15   Q          Actually, I requested an

16   account showing any charges that he had

17   made during this period, and what you told

18   me is that he had not made any charges on

19   this account but he had made charges on

20   another account and you didn't bring those

21   records.

22   A          He made charges.

23   Q          What I asked for was a copy of

Page 88

1   any credit card statement in your

2   husband's name showing the charges that he

3   made around the time that you filed your

4   bankruptcy case.  And what you brought was

5   a copy of the account that he didn't make

6   any charges on and you left or didn't

7   bring the copy of the account where he did

8   make the charges.

9   A          I do not have a copy.

10  Q          I'm asking you why would you

11  bring this one instead of the one that he

12  made charges on?

13  A          Because this is the one that I

14  am using.

15  Q          You use this one?

16  A          Right.

17  Q          This is the one where you have

18  access to charge on?

19  A          Yes.

20  Q          Exhibit 6, it's called --

21  you've got handwritten at the top

22  "Charitable Contributions."  Does that say

23  "Edgar" and that say "Deloris?"

Page 89

1  A          Yes.

2  Q          So these are his charitable

3  contributions and these are yours?

4  A          Yes.

5  Q          So during November 2006, he

6  made charitable contributions of $6,390?

7  A          This is for one year.

8  Q          That's a year's worth?

9  A          Right.

10 Q          Okay.  I just see these dates

11 out by the side and they all say

12 November '06.  Is there any reason why

13 they all say November '06?

14 A          We just made a summary.

15 Q          So you say that this is for one

16 year?

17 A          One year.

18 Q          And this down here that says

19 $4,557, that's --

20 A          One year.

21 Q          One year for you?

22 A          Yes.

23 Q          Are these all religious

1  organizations?

2  A          Religious and -- mostly

3  religious, yeah.

4  Q          Mostly religious, almost all

5  religious?

6  A          Yes.

7          MR. HIGHTOWER:  Richard, I

8  asked Tina to come because she was

9  interested in this stuff today.  I don't

10  know if you want -- if she has any

11  questions, if you don't mind, I don't know

12  if she has any or not, but do you mind her

13  asking questions?

14          MR. SHINBAUM:  She has every

15  right to.

16  EXAMINATION BY MS. HAYES:

17  Q          I just would like to ask some

18  follow-up questions for some testimony

19  that you gave at the 341 hearing a couple

20  of weeks ago.  You testified at that time

21  that you were going back and forth to

22  Atlanta to stay in the townhouse every

23  other weekend and that you were paying

```
 1  rent to stay there.   Is that not the case?
 2  A           That was a long time ago.   That
 3  was not during this time.
 4  Q           When's the last time you paid
 5  rent?
 6  A           I quit in 2000 -- early part
 7  of -- hang on a minute.   I did not do any
 8  business in 2006.
 9  Q           None whatsoever.   So when you
10  go over there every weekend now do you run
11  your clinic on the weekends?
12  A           Not anymore.
13  Q           Is the clinic closed?
14  A           It's closed.
15  Q           I think that's all I have.
16
17               END OF DEPOSITION
18
19
20
21
22
23
```

```
 1              C E R T I F I C A T E
 2   STATE OF ALABAMA
 3   JEFFERSON COUNTY
 4         I hereby certify that the
 5   proceedings in the herein matter were
 6   taken at the time and place therein
 7   stated; that the proceedings were reported
 8   by me, a professional court reporter and
 9   disinterested person, and were thereafter
10   transcribed under my direction into
11   typewriting; that the foregoing is a full,
12   complete, and true record of said
13   testimony.
14         I further certify that I am not of
15   counsel or attorney for either or any of
16   the parties in the foregoing proceedings
17   and caption named, or in any way
18   interested in the outcome of the cause
19   named in said caption.
20
21
                    _____
22             Karen Hinch, Commissioner
23
```

**A**

**Academy** 75:12
**acceptable** 72:12
**access** 51:13,14
  54:3 88:18
**account** 18:9,10
  18:13 22:23
  23:11,14 24:5
  25:7 52:18 53:9
  53:16 54:9,11
  55:18,18 56:2
  69:18 82:14
  87:8,16,19,20
  88:5,7
**accounts** 15:15
  16:6,12 17:23
  18:1 25:6 32:13
  54:3,4 81:5,6,8
**accurate** 57:11
  57:23 58:18
  83:14
**acting** 6:3
**actual** 34:4,6
**add** 21:7,12 43:8
  66:9
**addition** 9:8
**additional** 18:17
  72:2
**Administration**
  3:20
**administrator**
  56:7
**admitting** 12:5
**affirmative** 7:23
**age** 61:10,10,17
  61:18
**ages** 37:21 44:3
**ago** 9:5 77:21
  81:21 84:8,9
  90:20 91:2
**agree** 58:3,4
  79:18
**AGREED** 1:10
  2:2,9,18
**agreement** 33:21
  35:15 38:20
**Alabama** 1:2,18
  3:8,16,22 6:2,3

6:5,10 30:4
  76:17 84:7 92:2
**allows** 7:4
**amend** 54:13
**amended** 52:4
**amendment** 52:5
**America** 51:2,19
  52:2
**amount** 30:21
  32:11 33:10,23
  34:5,9 35:20
  36:16 52:12
  58:21
**amounts** 34:23
  66:8
**analysis** 18:22
  21:10
**analyzed** 39:20
**answer** 7:17 12:3
  12:4 72:21
**anymore** 54:15
  91:12
**apologize** 29:19
**apparently** 25:3
**applicable** 18:6
**appraisal** 31:1
**appraiser** 31:5,23
**appreciate** 10:4
  74:4
**approximately**
  1:20 12:6 36:5
  55:20
**area** 37:10
**ascertaining** 31:4
**asked** 8:7 25:1
  32:14 55:14,17
  56:7,10 74:14
  80:7 84:16
  87:12,23 90:8
**asking** 19:8 29:20
  58:12 67:16
  71:23 88:10
  90:13
**asks** 41:6
**assessed** 30:12,18
  31:2
**asset** 41:12,14,21
**assign** 2:13

**assume** 25:10
  30:13 31:8
  56:10 60:10
**Atlanta** 45:4,21
  46:3 47:22
  48:19 86:16
  90:22
**attached** 8:5
**attorney** 3:5,12
  28:22 72:11
  92:15
**attorney/client**
  72:13
**August** 10:14
  15:15 16:7 18:2
  19:3,15,23 22:1
  22:10 23:1,12
  23:15 24:7,12
  25:9 72:5 73:11
  86:4
**auto** 61:1,5,14
**automobile** 25:14
  26:5
**automobiles**
  26:11
**aware** 8:11 27:8
**a.m** 1:20 6:11

**B**

**B** 4:9
**back** 29:4 31:23
  74:6 81:17
  85:22 90:21
**bank** 8:22 10:15
  10:16 22:23
  33:16,17 40:12
  40:18 42:13
  56:23 68:5,6
  69:18 73:18
  81:20 82:13,21
  82:22
**bankruptcy** 1:1
  3:19 7:3 14:9
  29:2,7,11,13
  30:6 36:3,18
  41:3,11 42:16
  44:23 52:4,6
  54:14 56:7

63:12,20,21
  64:22 65:2
  67:17 77:2,6
  78:7 80:3 88:4
**banks** 17:22
  23:16
**basically** 7:5
**basis** 12:12 55:15
  56:5
**baths** 37:7,8
**bedrooms** 37:7
**believe** 18:4,21
  25:17 31:5
  34:12 39:14,20
  58:19,22 59:3
**belongs** 42:8
**big** 69:7
**bill** 56:15 75:7
**bills** 81:11
**binder** 71:20
**Birmingham**
  3:16 6:2
**bit** 29:5 66:4
**Blue** 21:21
**booklets** 25:15
**borrows** 85:7
**bottom** 35:17
**bought** 49:13
**Brad** 6:21
**Bradley** 3:11
**Brandon's** 45:19
**Brantley** 8:23
  9:22,23 33:17
**break** 68:1
**brief** 71:21
**briefly** 86:4
**bring** 8:6,8,12,19
  22:17 23:6
  68:16 87:11,20
  88:7,11
**brings** 65:12
**brought** 13:17
  15:2 22:22 23:2
  23:13 60:17
  67:20 88:4
**budget** 20:14,17
**bunch** 22:4
**business** 12:22

15:5,8,18 18:5
  18:12,14 19:2
  19:22 22:11,12
  28:3,14 39:8,9
  39:10,11,11,15
  39:19 49:9,12
  49:17,22 50:1,6
  50:7,12,13,15
  50:16,20,23
  51:4 54:9 55:10
  57:1,22 58:7
  63:5 64:11 69:6
  69:13,22 70:2
  70:17 71:2,4,8
  71:12,14,17
  73:21,22 74:1
  76:20 78:2,21
  80:9,17,21,22
  81:2,4,5,23
  83:11 91:8
**businesses** 57:10
**Butler** 10:15,16
  23:4,11 75:16
**buy** 24:16 32:7
  32:14 48:7,13
  48:18 71:18
  86:20

**C**

**C** 3:1 92:1,1
**call** 85:17
**called** 7:1,1 88:20
**Camden** 9:22,22
  23:5 49:8,17
  50:4,11 68:5
  81:3 82:3,8,12
  82:14,21
**caption** 92:17,19
**car** 11:11,14,15
  12:18 42:2
  61:18,22,23
  62:1,3 66:22
  84:2,4 85:4
**card** 13:13,14,17
  13:19 15:6 24:5
  24:12,22 25:2,7
  51:3,13,15,22
  53:1,2 70:11,13

29:5 34:18 55:9
  55:17 67:19
**doing** 15:13
  39:11,18 71:15
**dollars** 60:22
  66:2 75:19
  83:10
**door** 11:15,16
**Dr** 6:21 10:1 13:9
  14:8 31:22 35:3
  68:3
**drive** 30:3 61:17
  84:15,17
**driven** 61:6
**due** 36:21
**duly** 6:17

**E**

**E** 3:1,1 4:1,9 92:1
  92:1
**earlier** 45:17 49:6
  61:12 74:14,18
  80:8
**early** 91:6
**earn** 63:7 81:9
**earrings** 43:16,21
**Edgar** 55:19 74:1
  88:23
**effect** 2:5
**eight** 51:19
**either** 14:16
  92:15
**employment** 17:2
**entered** 33:2
**Especially** 27:1
**estate** 33:9
**evidence** 2:16
**exact** 31:1 32:15
**exactly** 66:16
  67:3 80:18
**examination** 4:4
  6:13,20 7:2,4
  90:16
**examined** 6:17
**example** 48:17
  82:17
**exclusively** 67:14
**Excuse** 63:18

**Exhibit** 4:11,12
  4:13,14,15,16
  4:17,18,19,20
  4:21,22,23 5:1,2
  5:3,4 10:18,19
  11:6 13:2,9,18
  14:19 16:14,19
  17:4,13 20:4
  22:6,15 28:19
  29:8 32:20
  33:13,19 35:5
  35:16 36:22
  38:15,17 41:4
  52:8 68:4 83:17
  85:9 86:2 88:20
**exist** 56:21
**expected** 37:2
**expenditures**
  77:7
**expense** 77:2,21
  78:3 80:13
**expenses** 18:2
  19:20,22 53:7
  65:1,14,16,23
  66:12,20 69:23
  70:3 74:15,23
  78:9 80:4,7
  81:12 82:19
  83:8,13,13
**explained** 41:9
  55:4
**explanation**
  68:13
**e-mail** 29:1

**F**

**F** 50:3 92:1
**fair** 32:9
**familiar** 36:1
  86:12,16
**family** 47:10
**far** 45:17
**fax** 11:1 81:18
**February** 1:19
  6:11
**federal** 27:13
**fees** 74:21 86:7
**fifteen** 66:10

**fifth** 50:19
**figure** 32:16 59:3
**file** 13:23 27:17
  78:7 80:2
**filed** 8:2 14:8
  27:18 28:1
  29:13 30:6
  36:17 44:22
  52:5 63:12,20
  63:21 64:3,22
  65:2 88:3
**filing** 2:18
**finances** 67:7
**find** 11:9 32:17
  48:3
**fine** 10:11 15:14
  20:12
**finished** 17:16
**first** 6:17 50:3
  53:10 61:13
  67:21 76:4
**five** 68:9,10
**flip** 29:22 36:10
  49:19,20 59:7
  60:16 74:7 76:3
**following** 6:14
  58:1 78:5 82:16
**follows** 6:18
**follow-up** 90:18
**footage** 37:6
**force** 2:5
**foregoing** 6:7
  92:11,16
**form** 2:11 72:16
**forth** 90:21
**found** 48:4
**four** 37:8,15,20
  42:15 43:15,15
**fourth** 50:14
**Ft** 75:12
**full** 2:5 92:11
**furniture** 42:23
**further** 2:1,8,17
  92:14

**G**

**getting** 83:5
**Gill** 1:17 3:6 6:9

**give** 7:22 9:15
  44:17 48:17
  64:2 73:11
  85:18
**given** 38:23 43:18
  44:20
**gives** 69:5,9,19,21
**go** 10:4,12 19:8
  22:20 46:16,18
  47:5 48:18
  61:17 63:7,17
  91:10
**goes** 18:18 19:12
  21:15 67:1
**going** 28:17 29:5
  31:12 33:18
  48:18,21 55:7
  72:3 79:11 82:2
  90:21
**goods** 42:17
**gotten** 45:21
**granddaughter**
  37:18
**granddaughter's**
  74:10
**Greenville** 30:4
  50:22
**gross** 59:9 63:11
  64:4 69:14
**grounds** 2:14
**GTI** 62:9
**guess** 12:3,12
  64:12 66:17
  79:12 82:2
**guessing** 12:1
  77:12
**guys** 55:12 66:18
  84:19

**H**

**H** 4:9
**half** 37:1
**handed** 19:17
**handwritten**
  88:21
**hang** 91:7
**Hayes** 3:18 4:6
  31:17 90:16

**head** 7:18,22
  24:20 46:10
**health** 66:7 76:16
**Healthcare** 50:20
**hearing** 90:19
**Heights** 30:3
**held** 25:13
**help** 7:16 29:14
  64:18 69:22
**helps** 70:1
**High** 75:13
**Hightower** 3:11
  4:5 6:20,22 9:7
  9:10,15 10:11
  10:17 14:2,12
  14:14,17 15:6
  15:10,14,19
  17:11 18:8 20:2
  20:12,23 21:3
  21:11 22:13
  23:20 27:1 28:7
  28:10,13,17
  31:8 32:3,10,18
  33:5 34:10,20
  35:1 38:22
  45:16 52:15
  55:11,15,23
  56:4,9 67:23
  72:15,23 90:7
**Hinch** 1:15 6:1
  92:22
**hold** 32:15
**home** 25:22 27:2
  31:4 33:21 37:5
  45:14 49:5,13
  59:3 64:21
  65:12
**homeowners**
  26:20 27:4,5,10
**hospital** 50:22
  59:2
**house** 30:7,13,16
  30:20 32:1,13
  32:22 37:14
  38:7,11,13
  42:23 48:18
  57:4 62:22
  84:19

22:6,15 28:19
29:8 32:20
33:13,19 35:15
38:15 52:8 68:4
**married** 48:19
**MasterCard** 13:5
**math** 36:20
**matter** 92:5
**MBNA** 21:6,8
51:2,19 52:2
54:1,2,7,11
85:11 86:3
**MBNAs** 53:15
**McPhilips** 1:17
3:6 6:8
**mean** 12:19 59:23
61:11 72:5 79:5
**meaning** 35:23
57:19
**means** 36:23
**med** 47:12
**Medicaid** 21:22
**medical** 63:9
65:23 76:16
**Medicare** 21:21
**medications**
71:19
**mention** 74:15,20
**mentioned** 53:6
75:22
**Mercedes** 11:3,8
11:10 62:16
**met** 6:22
**method** 31:3
**MIDDLE** 1:2
**mind** 10:3 71:21
73:4,8 90:11,12
**mine** 27:20 42:11
60:13
**minute** 77:21
81:21 91:7
**missing** 9:19
**moment** 9:16
67:18
**money** 42:5 58:13
58:15,16 63:3,6
63:17 64:2,10
64:15,16,19

66:23 69:6,9,10
69:19,21 71:7
71:10,11,15,16
74:3 76:6,8,11
76:21,22 77:1
78:1,20 80:9
81:1,8,16 82:4,9
82:18,21 86:15
**Montgomery**
1:18 3:8,22
6:10
**month** 35:6,23
36:5,8,18 38:12
46:7,12 59:10
59:11 60:18,22
61:3 63:13
64:14,21 65:5,6
65:9,15 66:13
74:19 75:4
76:12 78:2,21
80:15 83:7,10
**monthly** 75:7
**months** 23:15
24:7 25:4 35:7
**mortgage** 32:22
33:2,9,10,15,23
34:4,7,11,15
35:4,6,12 36:4
36:18,23 38:8
38:11 45:10
49:5 57:9,14,20
58:3,13,16 59:4
64:15,18 66:22
86:15
**motion** 7:1 8:1
**moved** 84:7
**multiplying** 36:7

**N**

**N** 1:8 3:1 4:1
**name** 6:21 39:12
42:12 52:19
71:6 76:14
83:22 84:2,12
85:1,5,6 88:2
**named** 92:17,19
**names** 19:13
84:21

**National** 49:8,17
50:5,12 68:5
**nature** 56:14
**necessary** 2:9
74:22 75:1
**necklaces** 43:15
43:22
**need** 25:19 45:22
70:21 82:21
**needed** 24:16
25:4 68:17
**needs** 9:2 19:7
**net** 64:20
**new** 35:17
**newspaper** 12:11
**nine** 52:2
**nineteen** 40:13
**Nissan** 61:19,20
**nod** 7:18
**nodding** 24:20
**nondischargea...**
56:19
**North** 3:14
**Notary** 1:15 6:2
**notation** 52:11
55:20 56:14,19
**note** 30:17
**noted** 53:18
**notes** 43:12
**notice** 2:18
**notified** 8:14
**November** 19:3
20:7,15 89:5,12
89:13
**November/Dec...**
20:17
**number** 1:5 7:2
11:5 28:18
33:19 36:6,13
36:22 38:12
40:2 41:4,5
42:15,19 51:2
51:19 52:2
57:17 61:19
77:17 83:17
**number's** 58:8

**O**

**O** 1:8
**oath** 7:5
**objections** 2:10
2:13
**obligated** 53:9
54:10 55:8 56:2
**obligation** 51:12
**occasion** 84:17
**October** 14:10,13
21:9,13 22:2
86:3
**offer** 31:13 32:9
**offered** 2:15
**office** 1:16 16:12
70:2 71:19 76:1
**okay** 7:10 10:21
11:22 66:8 70:5
79:5 82:17
89:10
**old** 11:17,18 38:3
**older** 37:23
**once** 71:16
**ones** 69:7 80:20
**one's** 65:21 66:1
**operate** 66:18
**opinion** 30:14
31:6
**opposed** 12:19
**oral** 6:13
**order** 9:13
**organizations**
90:1
**organized** 72:17
73:6
**original** 33:23
35:5 52:17
**originally** 58:6
**outcome** 92:18
**outside** 27:2
**owe** 49:16 51:12
51:23 52:23
53:4 54:4,15
57:8,10,20,22
58:2,5,13,15,15
58:17
**owed** 31:11 57:3
57:6 78:22,23
**owes** 56:17

**owing** 59:1,6
**owned** 41:12,18
84:4
**owns** 10:23 40:6
41:17 45:4

**P**

**P** 1:8 3:1,1
**page** 33:22 35:16
39:22,23 49:19
63:19 68:7,7,8,9
74:7 75:18 76:3
79:19
**pages** 29:22 50:3
**paid** 16:11 36:23
37:2 48:16 62:4
62:11,13,14,17
63:15,22 67:11
69:16,17 74:15
74:19,20 91:4
**part** 19:16 67:9
91:6
**participated** 7:7
**particular** 80:15
**parties** 1:11 2:13
92:16
**patients** 16:13
**pay** 24:15 32:6
36:7 46:7,8,9
48:21 52:13,16
52:19 53:7,19
54:10 55:21
56:18 61:14
62:2,3,21 63:4,7
63:8,23 64:7,16
64:18 65:5,15
65:19,19,22,23
66:3,6,20 69:22
70:12 71:18
75:4 80:4,13
81:11 83:7
86:15
**payable** 35:22
**paying** 35:11
36:17 62:12
66:11 80:9
83:12 90:23
**payment** 25:15

school 47:13
  75:11,13,14,15
second 9:5 44:5
  49:8 50:8
section 8:8 70:6
secured 49:4
see 9:2 21:6 34:13
  41:5,5,7 52:6,15
  68:18,21 71:20
  72:16 73:1,7,13
  74:8 75:19
  77:17 80:18
  82:17 89:10
seen 8:3,9 31:17
  67:21
self 17:2
sell 31:13
semi-monthly
  35:23
send 85:19
sent 31:5 64:14
SEP 16:23
September 10:15
  14:9 15:16 16:7
  18:3 19:2,15,23
  22:2 23:1,12,16
  24:8,13 25:10
  29:14 68:22
  70:9,14 80:15
  86:3
serves 40:22
services 50:17
  76:17
serving 42:1,3
sets 42:20,21,21
seven 37:1 40:13
  51:2
shake 7:21
shakes 46:10
shame 12:4
Shibaum 20:19
Shinbaum 1:17
  3:4,6 6:8 8:18
  9:2,9,12,18 10:7
  11:21 12:2
  13:22 14:5,10
  14:13,15,21
  15:4,8,12,17,21

16:2 17:9,15
  18:4,19 19:6,11
  20:6,16,20 21:2
  21:5,12 22:3
  23:4,8,18,22
  24:3,9 25:5,11
  25:18 26:2,7,12
  26:19 27:3,15
  27:21 28:5,8,12
  28:15 30:22
  31:12,19 32:5
  32:12 33:7 34:2
  34:12,21 36:11
  38:19 39:14
  45:19 51:6
  52:10,21 55:13
  55:16 56:3,6,13
  58:19 59:22
  72:9 75:15
  90:14
Short 68:2
show 33:18 54:14
  65:1,14 77:5
  83:6
showed 9:5 55:18
  64:20
showing 25:13
  27:16,23 87:16
  88:2
shows 31:3 33:22
  34:4,4,7 35:5
side 89:11
sign 42:5,14
  54:17
signature 2:2
signed 54:20,22
sit 66:15
six 40:13
sixteen 66:10
small 3:13 11:13
smaller 37:11
  38:6,7,11
sold 31:9
solely 69:19
son 37:17 38:3
  51:17,21
sons 44:11
soon 83:1

sorry 13:15 70:20
sound 35:8 57:11
  57:23 58:18
South 1:17 3:7
  6:9
speaks 34:15
spend 69:11
sports 11:14,15
  61:22
spouse 79:14
spouse's 77:10,11
  78:13 79:3
square 37:6
stack 10:1,12
  15:1 19:9 21:14
  26:8,13
State 1:16 6:3,6
  92:2
stated 92:7
statement 10:14
  10:16 13:13,14
  13:17,19 21:6
  22:23 23:12,14
  24:6 25:8 58:20
  68:5 88:1
statements 8:22
  9:21 14:22
  18:22 23:9 25:3
States 1:1 3:19
stay 90:22 91:1
stipulate 56:1
STIPULATED
  1:10 2:1,8,17
stipulations 6:7
stop 47:16
Street 1:18 3:7,14
  3:21 6:9
stuff 9:11 48:23
  72:3,14 73:3
  90:9
submit 31:1 33:8
submitted 10:10
  55:17
submitting 20:9
substantially
  31:10
subtract 58:14
subtracted 57:6

57:17
suit 56:15
Suite 3:15
summary 13:4
  14:22 16:8,10
  17:21 23:7
  85:12 89:14
supplies 71:18,19
supposed 72:8
sure 20:18 21:11
  45:3 70:16,22
  73:4 77:14,15
sworn 6:17

.........T.........

T 1:8,8 4:9 92:1,1
take 7:4,12,19
  21:18 24:4,18
  40:12 58:12
  64:21 67:18
  68:1 71:21 72:4
  72:7 73:1
taken 1:15 31:9
  40:11 92:6
talked 6:22 43:17
  45:2,17 46:1
  47:8 59:8 74:18
talking 31:14
  36:11 77:6
tax 27:13,14 28:3
  28:4,10,14
  30:12,18 31:2
  49:20
taxes 22:8 49:22
  49:23 52:14,16
  52:20 55:21
  56:18 58:6 65:5
  65:9,10
telephone 50:17
  63:8
tell 10:13 16:5
  19:10 21:14
  22:22 43:19
  60:1,5,14 61:18
  66:16 67:2
  72:11 75:2,17
  79:21,23 80:8
  80:18 82:23

telling 12:22
  16:11 80:1
  82:18
ten 35:7 56:22
  77:17
term 79:2
terminating 17:8
terms 56:15
testified 6:18
  90:20
testimony 90:18
  92:13
Thank 74:4
thereto 2:16
thing 7:5 9:9 10:7
  14:11 18:16
  45:17 51:20
  87:12
things 12:17
  22:21 48:22
  56:20 63:15
  68:19 86:20,21
  87:5,9
think 12:9 14:15
  15:12 17:1,15
  19:19 20:6,14
  20:23 23:1,2
  24:1,9 30:7
  32:14 38:20
  41:14 42:22
  44:13 46:22
  48:4,19 51:9
  52:23 56:11
  63:18 75:1
  78:14,17,20
  84:16 91:15
third 33:22 44:5
  50:11
thought 30:20
  31:10 39:18
  46:2 53:14
  70:20 74:22
  78:10,15
thousand 60:22
  75:19 76:13
  83:9
three 11:18 25:18
  35:16 37:8

**$24,000** 58:11
**$290,000** 57:15 58:2
**$3,378** 51:20 54:2
**$347,577.39** 34:1
**$373,800** 30:11 30:17
**$4,000** 36:5
**$4,557** 89:19
**$431,062.70** 33:12 34:7
**$5,000** 43:4
**$5,483** 56:23
**$6,390** 89:6
**$60,000** 58:5
**$65,000** 52:3,7 54:7 58:9
**$7,000** 42:18,23
**$7,113.26** 57:7
**$75,000** 55:20
**$83,000** 58:6
**$9,663** 51:3,11 54:1

**0**

**03** 14:22 85:23
**05** 14:6,16 28:11 28:12
**06** 14:1,7,9,14,15 14:16,17,22 23:1,12,16 24:8 28:12 85:13 86:4 89:12,13
**06-31225WRS-7** 1:6

**1**

**1** 4:11 10:18,19 14:1 68:4
**1,000** 75:23 80:16 80:16
**1,300** 69:3
**1,500** 75:23
**1,600** 80:16
**1,800** 75:22
**10** 4:11,20 22:6
**10,000** 60:14 65:17
**11** 4:12,21 22:14

22:15 70:14
**12** 4:22 28:18,19 75:16
**120** 35:7
**13** 4:13,23 29:8 33:10 41:4
**14** 4:14 5:1 32:19 32:20 33:19 35:16 36:22 84:9
**15** 5:2 33:13 35:5
**15,000** 63:11
**16** 4:15,16 5:3 38:15,17 40:14
**17** 4:17,18 5:4 52:8
**176** 35:19 36:21
**18** 37:23
**1800** 3:15
**19922** 40:2
**1998** 33:10

**2**

**2** 4:12 11:5,6 83:17
**2,200** 82:19
**20** 4:19 12:20
**20th** 3:14
**200** 66:6
**2000** 62:9 91:6
**2002** 46:22,22
**2003** 13:5,7,10,12 13:16 14:3 85:10
**2004** 7:1
**2005** 27:14
**2006** 14:3 15:16 19:23 21:6 22:10 24:13 25:10 29:14 47:17 89:5 91:8
**2007** 1:19 6:11
**22** 4:20,21
**225** 30:3
**25** 29:14
**255** 75:6
**28** 4:22
**282,000** 59:4

**29** 4:23

**3**

**3** 4:13 13:2,9,18 85:9
**3,000** 44:16
**3,100** 37:6
**3,500** 40:11
**30** 6:5 37:22 38:5 44:8,9 61:12
**300** 65:22
**31** 37:22 44:8,9 61:12 62:16
**31-year-old** 62:15
**32** 5:1
**33** 5:2
**341** 90:19
**35** 61:10
**35203** 3:16
**36104** 3:22
**37** 37:22 61:11,12 62:9
**37-year-old** 62:8
**38** 5:3
**39** 37:22 61:10,11

**4**

**4** 4:14 14:18,19 86:2

**5**

**5** 4:15 16:14
**5th** 70:9
**5,257** 35:6
**50** 12:20
**505** 3:14
**52** 5:4
**55,000** 32:15
**566** 1:17 3:7 6:9

**6**

**6** 4:5,16 16:19 88:20
**65** 54:11
**65,000** 55:2 56:5
**697** 40:13

**7**

**7** 4:17 17:4
**7,000** 57:19
**70,000** 51:7

**8**

**8** 4:18 17:12,13

**9**

**9** 4:19 20:3,4
**9th** 1:19 6:10
**9:00** 1:20 6:11
**90** 4:6 12:6,10,13
**90,000** 11:20

MAY-28-2004 16:45 From:                                    To:913342634096          P.13/14

3 *
CTORIA

**Property Address:** 375 HIGHLAND AVE NE,
ATLANTA, GA 30312

#BWNDXCT               010964 RE
#6682132577001020#

EDGAR T VICTORIA
P.O BOX 810
GREENVILLE AL  36037-0810

| Account Information as of | 02/16/07 |
|---|---|
| Loan Number | 2312 |
| Interest Rate | 12.875% |
| Loan Balance | $39,911.56 |
| Escrow Balance | $ .00 |
| Unapplied Funds | $ .00 |
| Funds Advanced by IMB (1,2) | $ .00 |
| Principal Paid YTD | $ .00 |
| Interest Paid YTD | $30.43 |
| Property Taxes Paid YTD | $1,285.31 |
| Hazard Insurance Paid YTD | $ .00 |
| Primary Phone Number | (334) 383 9151 |
| Secondary Phone Number | (334) 371 5252 |

For statement questions,
please call Customer Service at
1.800.781.7399.

## 04/01/07 Payment Options

| | |
|---|---|
| Principal and/or Interest | $438.58 |
| Escrow | $ .00 |
| Optional Products (2) | $ .00 |
| Other (2) | $ .00 |
| **Payment Amount** | **$438.58** |
| Past Due Payment(s) | $ .00 |
| Total Payment Due | $438.58 |
| Unpaid Late Charges | $ .00 |
| Returned Payment Fees | $ .00 |
| Other Unpaid Charges (2) | $ .00 |
| Funds Advanced by IMB (1,2) | $ .00 |
| **Total Amount Due** | **$438.58** |
| After 04/16/07 please pay: (3) | $460.51 |

**Payment Due:
04/01/07**

1  Unless otherwise agreed upon,
   additional funds may be applied
   to advances prior to being
   applied to fees/charges.

2  Itemized detail available upon
   request.

3  Payment calculation includes
   Late Charge fee.

| Date | Transaction | Total | Principal/Deferred Interest | Interest | Escrow | Fees/Misc. |
|---|---|---|---|---|---|---|
| 02/16/07 | Funds Applied | 438.58 | 10.25 | 428.33 | | |

## TAX SEASON IS JUST AROUND THE CORNER – ARE YOU PREPARED?

If you already know you're getting a refund, you don't have anything to
worry about. But for many of us, tax season means that we'll owe money,
and not a small amount either. Know your options. An Indymac Bank Home
Equity Line is the perfect solution to cover a variety of expenses
including income tax. It's easy to open with no application fees or bank
related closing costs. Use only what you need, when you need it, and the
interest you pay may be up to 100% tax deductible (You may wish to consult
with your financial advisor to see how this loan may benefit you).
Call us toll free at 1.877.307.0178 to find out more.

## AS AN INDYMAC CUSTOMER, YOU GET EXTRA SAVINGS.

For a limited time, we are offering you $500 off our already low closing
costs when you originate a new first mortgage through Indymac Bank Home
Loan Servicing (offer does not apply to home equity loans, Mod Xpress or
Indymac Xpress). To get started, just call us today at 1.866.217.2834.

## ACCESS YOUR 2006 YEAR-END INTEREST STATEMENT ONLINE!

Did you know that by registering your mortgage loan online, not only can
you have convenient, 24/7 access to your mortgage information, but to your
2006 Year-End Interest Statement as well? Read the back of this statement
to find out more.



MAY-28-2004 16:46 From:                                To:913342634096                    P.14/14

**Property Address:** 375 HIGHLAND AVE NE,
ATLANTA, GA 30312

#BWNDXCT          010963  RE
#668867247001020#

EDGAR T VICTORIA
P.O. BOX 810
GREENVILLE  AL  36037-0810

| Account Information as of: | 02/16/07 |
|---|---|
| Loan Number | 2768 |
| Interest Rate | 7.125% |
| Loan Balance | $216,000.00 |
| Escrow Balance | $2,841.27- |
| Unapplied Funds | $ .00 |
| Funds Advanced by IMB (1,2) | $ .00 |
| Principal Paid YTD | $ .00 |
| Interest Paid YTD | $2,565.00 |
| Property Taxes Paid YTD | $ .00 |
| Hazard Insurance Paid YTD | $ .00 |
| Primary Phone Number | (334) 383 9151 |
| Secondary Phone Number | (334) 371 5252 |

For statement questions,
please call Customer Service at
1.800.781.7399.

**03/01/07 Payment Options**

|  | Interest Only |
|---|---|
| Principal and/or Interest | $1,282.50 |
| Escrow | $811.23 |
| Optional Products (2) | $ .00 |
| Other (2) | $ .00 |
| **Payment Amount** | $2,093.73 |
| Past Due Payment(s) | $ .00 |
| Total Payment Due | $2,093.73 |
| Unpaid Late Charges | $ .00 |
| Returned Payment Fees | $ .00 |
| Other Unpaid Charges (2) | $ .00 |
| Funds Advanced by IMB (1,2) | $ .00 |
| **Total Amount Due** | $2,093.73 |
| After 03/16/07 please pay: (3) | $2,157.86 |

**Payment Due:
03/01/07**

1   Unless otherwise agreed upon,
additional funds may be applied
to advances prior to being
applied to fees/charges

2   Itemized detail available upon
request.

3   Payment calculation includes
Late Charge fee.

| Date | Transaction | Total | Principal/Deferred Interest | Interest | Escrow | Fees/Misc. |
|---|---|---|---|---|---|---|
| 02/16/07 | Funds Applied | 2,112.85 | | 1,282.50 | 815.35 | 15.00 |

**TAX SEASON IS JUST AROUND THE CORNER – ARE YOU PREPARED?**
If you already know you're getting a refund, you don't have anything to
worry about. But for many of us, tax season means that we'll owe money,
and not a small amount either. Know your options. An Indymac Bank Home
Equity Line is the perfect solution to cover a variety of expenses
including income tax. It's easy to open with no application fees or bank
related closing costs. Use only what you need, when you need it, and the
interest you pay may be up to 100% tax deductible (You may wish to consult
with your financial advisor to see how this loan may benefit you).
Call us toll free at 1.877.307.0178 to find out more.

**AS AN INDYMAC CUSTOMER, YOU GET EXTRA SAVINGS.**
For a limited time, we are offering you $500 off our already low closing
costs when you originate a new first mortgage through Indymac Bank Home
Loan Servicing (offer does not apply to home equity loans, Mod Xpress or
Indymac Xpress).  To get started, just call us today at 1.866.217.2834.

**ACCESS YOUR 2006 YEAR-END INTEREST STATEMENT ONLINE!**
Did you know that by registering your mortgage loan online, not only can
you have convenient, 24/7 access to your mortgage information, but to your
2006 Year-End Interest Statement as well? Read the back of this statement
to find out more.



STATE FARM INSURANCE COMPANIES
STATE FARM PAYMENT PLAN
PO Box 830854
Birmingham AL 35283-0854

0372-1675-09    008986  2061-F285    01

VICTORIA, EDGAR T DR
PO BOX 510
LUVERNE AL  36049-0510

| ACCOUNT NUMBER | 75-09 | |
|---|---|---|
| Monthly Account | | Page  1 |

| DATE DUE | PLEASE PAY THIS AMOUNT |
|---|---|
| MAR 8, 2007 | $2,046.36 |

## ** BILLING SUMMARY **

| | |
|---|---|
| Last Amount Billed | $1,011.28 |
| Last Amount Paid | 0.00 |
| Difference | 1,011.28 |
| Current Installment | 1,021.90 |
| Policy Changes | 10.18 |
| Service Charge | 3.00 |
| Total Amount Due By MAR 8, 2007 | $2,046.36 |

➡ **READ BEFORE PAYING** ◀

All or part of your last month's bill is past due.
Paying premiums monthly is a service we
provide to help you budget for your insurance.
We will be unable to continue this service if we
do not receive your full payment each month by
the date due.

Changes completed after 2-19-07 will appear on
the next notice.

To pay the policy changes in full, please
submit Total Amount Due of $2,051.80.

## ** POLICIES ON ACCOUNT **

| | |
|---|---|
| 2003 MERCEDES D31 8477-B08-01G | 85.08 |
| 2006 MERCEDES D31 8479-B08-01I | 136.00 |
| 2000 VOLKSWAGEN 004 1761-B01-01D | 101.34 |
| 2001 PORSCHE 007 3222-E07-01A | 91.78 |
| 2002 NISSAN 011 3524-C01-01E | 106.36 |
| 2003 MERCEDES 026 1847-E21-01B | 88.94 |
| 2004 MERCEDES 031 8498-A29-01B | 124.00 |
| PERSONAL UMBRELLA 01-CW-6202-0 | 34.66 |
| HOMEOWNERS | 200.00 |
| PERSONAL ARTICLES POLICY ES-4918-5 | 22.16 |
| BUSINESS - OFFICE 93-BU-2454-7 HWY 331 | 31.58 |
| CURRENT INSTALLMENT | $1,021.90 |

*Thanks for letting us serve you..*

Snellgrove Ins Agency Inc
334-335-3431

Prepared Date  FEB 19 2007

STATE FARM INSURANCE COMPANIES
STATE FARM PAYMENT PLAN

PO Box 830854
Birmingham AL 35283-0854

008986

| ACCOUNT NUMBER | 75-09 | |
|---|---|---|
| Monthly Account | | Page  2 |
| DATE DUE | PLEASE PAY THIS AMOUNT | |
| MAR 8, 2007 | $2,046.36 | |

CONTINUED FROM PAGE   1

## ** CURRENT CHANGES **

2002 NISSAN
011 3624-C01-01E              4.74
  Premium changed.
  Difference in premium from the effective
   date of the change to the current due date
   is included in the total amount due
   on this bill only.

2004 MERCEDES
081 3486-A26-01B              5.44
  Change of vehicle rating group.
  This is the second of three billings to
   include the policy change(s).

TOTAL POLICY CHANGES         $10.18

*thanks for letting us serve you..*

Snellgrove Ins Agency Inc
334-335-3431

Prepared Date  FEB 19 2007

MAY-28-2004 16:41 From:                                    To:913342634096          P.3/14



**BRANTLEY**
*Bank & Trust Co.*
P.O. BOX 25
BRANTLEY, ALABAMA 36009
TELEPHONE (334) 527-3206



STATEMENT 

STATEMENT DATE:          08/31/06

DR EDGAR T VICTORIA JR
P O DRAWER 510
LUVERNE, AL 36049

165 00-49-00030N-00-0    PAGE        1

BUSINESS NOW                        ACCOUNT NO.        6887

SUMMARY OF ACTIVITY SINCE YOUR LAST STATEMENT          INTEREST SUMMARY
     BALANCE FORWARD FROM 07/31/06        2,128.43
  13 DEPOSITS/CREDITS.............      26,471.70       INTEREST EARNED FROM.........08/01/06
  37 WITHDRAWALS/DEBITS...........      31,123.27-      INTEREST EARNED THROUGH......08/31/06
  10 BANK CHARGES.................         85.00-       DAYS IN EARNINGS PERIOD............  31
   1 INTEREST PAID................           .08+       ANNUAL PERCENTAGE YIELD EARNED...  0.78%
     ENDING BALANCE AS OF 08/31/06       2,608.06-
                                                       INTEREST PAID IN 2006.....        8.54

TRANSACTION DETAIL FOR THIS ACCOUNT

| DESCRIPTION | DEBIT | CREDIT | DATE | BALANCE |
|---|---|---|---|---|
| BALANCE FORWARD | | | | |
| Deposit | | | 7/31 | 2,128.43 |
| X- 6000655000 PER DR. E | | 22.00 | 8/01 | 2,150.43 |
| NSF Check Charge | 2,998.47 | | 8/01 | 848.04- |
| Daily overdraft charge | 22.00 | | 8/01 | 870.04- |
| EFFECTIVE INTEREST RATE   0.7500% | 1.00 | | 8/01 | 871.04- |
| Deposit | | | 8/01 | |
|   1 CHECK(S) PRESENTED | | 1,800.00 | 8/02 | 928.96 |
|   1 CHECK(S) PRESENTED | 850.00 | | 8/02 | 78.96 |
| Deposit | 18.00 | | 8/03 | 60.96 |
| Deposit | | 1,880.68 | 8/04 | 1,941.64 |
| LOAN PAY 6000254400 | | 996.03 | 8/07 | 2,937.67 |
|   1 CHECK(S) PRESENTED | 2,025.05 | | 8/07 | 912.62 |
| Deposit | 451.88 | | 8/09 | 460.74 |
| EDS EDS TITLE | | 2,541.65 | 8/10 | 3,002.39 |
| 009923940 | | | | |
| EDS EDS TITLE | | 1,011.00 | 8/10 | 4,013.39 |
| 000046490 | | | | |
|   2 CHECK(S) PRESENTED | | 1,399.50 | 8/10 | 5,412.89 |
|   1 CHECK(S) PRESENTED | 2,650.00 | | 8/10 | 2,762.89 |
| Deposit | 669.80 | | 8/11 | 2,093.09 |
| LOAN PAY 6000323300 | | 4,249.03 | 8/14 | 6,342.12 |
|   1 CHECK(S) PRESENTED | 2,981.36 | | 8/14 | 3,360.76 |
| DMS / MONY INS. PREM | 424.00 | | 8/14 | 2,936.76 |
| NSF Check Charge | 662.48 | | 8/15 | 2,274.28 |
|   1 CHECK(S) PRESENTED | 22.00 | | 8/15 | 2,252.28 |
| Daily overdraft charge | 1,700.00 | | 8/15 | 552.28 |
|   1 CHECK(S) PRESENTED | 1.00 | | 8/16 | 551.28 |
| Daily overdraft charge | 592.02 | | 8/16 | 40.74- |
| Deposit | 1.00 | | 8/17 | 41.74- |
|   2 CHECK(S) PRESENTED | | 2,166.35 | 8/18 | 2,124.61 |
| Deposit | 1,725.02 | | 8/18 | 399.59 |
| NISSAN AUTO LOAN | | 4,997.96 | 8/21 | 5,397.55 |
|   7 CHECK(S) PRESENTED | 454.19 | | 8/21 | 4,943.36 |
| x /laon 6000254400 | 1,177.55 | | 8/21 | 3,765.81 |
|   3 CHECK(S) PRESENTED | 2,025.05 | | 8/22 | 1,740.76 |
|   3 CHECK(S) PRESENTED | 800.00 | | 8/22 | 940.76 |
| EDS EDS-TITLE | 229.20 | | 8/23 | 711.56 |
| 000046490 | | | | |
| Deposit | | 406.00 | 8/24 | 1,117.56 |
|   3 CHECK(S) PRESENTED | | 2,794.67 | 8/25 | 3,912.23 |
| Deposit | 1,597.92 | | 8/25 | 2,314.31 |
| LOAN PAY 6000655000 | | 2,206.83 | 8/28 | 4,521.14 |
| NSF Check Charge | 2,998.47 | | 8/28 | 1,522.67 |

MAY-28-2004 16:42 From:                                    To:913342634096          P.4/14

STATEMENT









BRANTLEY
Bank & Trust Co.

P.O. BOX 25
BRANTLEY, ALABAMA 36009
TELEPHONE (334) 527-3206

A FULL SERVICE BANK

FDIC
FEDERAL DEPOSIT INSURANCE CORPORATION

STATEMENT DATE:          08/31/06

DR EDGAR T VICTORIA JR
P O DRAWER 510
LUVERNE, AL 36049

165-00-49-00030N-00-0    PAGE      2

BUSINESS NOW

ACCOUNT NO.          ████-6887

TRANSACTION DETAIL FOR THIS ACCOUNT

| DESCRIPTION | DEBIT | CREDIT | DATE | BALANCE |
|---|---|---|---|---|
| 2 CHECK(S) PRESENTED |  |  |  |  |
| Daily overdraft charge | 941.31 |  | 8/29 | 559.36 |
| 1 CHECK(S) PRESENTED | 1.00 |  | 8/30 | 558.36 |
| Miscellaneous Club Fee | 3,151.50 |  | 8/30 | 2,593.14- |
| Interest Credit | 2.00 |  | 8/31 | 2,595.14- |
| Daily overdraft charge |  | .08 | 8/31 | 2,595.06- |
| Net Service Charge | 1.00 |  | 8/31 | 2,596.06- |
|  | 12.00 |  | 8/31 | 2,608.06- |

CHECKS   (* - GAP IN SEQUENCE)

| NUMBER | AMOUNT | DATE PAID | NUMBER | AMOUNT | DATE PAID | NUMBER | AMOUNT | DATE PAID |
|---|---|---|---|---|---|---|---|---|
| 0 | 2,600.00 | 8/10 | 5028 | 30.00 | 8/22 | 5038 | 166.31 | 8/21 |
| 0 | 1,700.00 | 8/15 | 5029 | 113.92 | 8/21 | 5039 | 20.00 | 8/23 |
| 5017* | 18.00 | 8/03 | 5030 | 235.92 | 8/21 | 5040 | 27.40 | 8/21 |
| 5020* | 850.00 | 8/02 | 5031 | 20.00 | 8/22 | 5041 | 66.25 | 8/21 |
| 5022* | 50.00 | 8/10 | 5032 | 383.75 | 8/21 | 5042 | 790.12 | 8/25 |
| 5023 | 424.00 | 8/14 | 5033 | 614.99 | 8/18 | 5044* | 78.00 | 8/25 |
| 5024 | 451.88 | 8/09 | 5034 | 187.20 | 8/23 | 5045 | 151.63 | 8/29 |
| 5025 | 592.02 | 8/16 | 5035 | 22.00 | 8/23 | 5046 | 3,151.50 | 8/30 |
| 5026 | 669.80 | 8/11 | 5036 | 1,110.03 | 8/18 | 5047 | 789.68 | 8/29 |
| 5027 | 750.00 | 8/22 | 5037 | 184.00 | 8/21 | 5048 | 729.80 | 8/25 |

MAY-28-2004 16:42 From:                    **STATEMENT**                    To:913342634096        P.5/14



**BRANTLEY**
Bank & Trust Co.
P.O. BOX 25
BRANTLEY, ALABAMA 36009
TELEPHONE (334) 527-3206





STATEMENT DATE:          09/29/06

DR EDGAR T VICTORIA JR
P O DRAWER 510
LUVERNE, AL 36049

165-00-49-00023N-00-0   PAGE      1

BUSINESS NOW                      ACCOUNT NO.        ████-6887

SUMMARY OF ACTIVITY SINCE YOUR LAST STATEMENT
BALANCE FORWARD FROM 08/31/06        2,608.06-           INTEREST SUMMARY
10  DEPOSITS/CREDITS.............     24,811.41+    INTEREST EARNED FROM..........09/01/06
29  WITHDRAWALS/DEBITS...........     24,217.53     INTEREST EARNED THROUGH.......09/30/06
12  BANK CHARGES.................        152.00     DAYS IN EARNINGS PERIOD..........  30
 1  INTEREST PAID................           .58     ANNUAL PERCENTAGE YIELD EARNED... 0.76%
    ENDING BALANCE AS OF 09/29/06     2,165.60-
                                                    INTEREST PAID IN 2006.....        9.12

TRANSACTION DETAIL FOR THIS ACCOUNT

| DESCRIPTION | DEBIT | CREDIT | DATE | BALANCE |
|---|---|---|---|---|
| BALANCE FORWARD | | | | |
| Deposit | | 1,403.05 | 8/31 | 2,608.06- |
| NSF Check Charge | 22.00 | | 9/01 | 1,205.01- |
| Daily overdraft charge | 1.00 | | 9/01 | 1,227.01- |
| EFFECTIVE INTEREST RATE   0.7500% | | | 9/01 | 1,228.01- |
| Deposit | | | 9/01 | |
| LOAN PAY 6000254400 | | 3,805.30 | 9/05 | 2,577.29 |
| NSF Check Charge | 2,025.05 | | 9/05 | 552.24 |
| 1 CHECK(S) PRESENTED | 22.00 | | 9/05 | 530.24 |
| Daily overdraft charge | 50.00 | | 9/06 | 480.24 |
| 1 CHECK(S) PRESENTED | 1.00 | | 9/06 | 479.24 |
| Daily overdraft charge | 850.00 | | 9/07 | 370.76- |
| Deposit | 1.00 | | 9/07 | 371.76- |
| 1 CHECK(S) PRESENTED | | 2,675.39 | 9/08 | 2,303.63 |
| Deposit | 640.86 | | 9/08 | 1,662.77 |
| LOAN PAY 6000254400 | | 2,063.00 | 9/11 | 3,725.77 |
| 1 CHECK(S) PRESENTED | 2,981.36 | | 9/11 | 744.41 |
| EDS EDS-TITLE | 618.57 | | 9/11 | 124.84 |
| 009923940 | | 414.00 | 9/14 | 538.84 |
| EDS EDS-TITLE | | | | |
| 000046490 | | 2,666.00 | 9/14 | 3,204.84 |
| DMS / MONY INS. PREM | | | | |
| loan pay 6000254400 | 662.48 | | 9/15 | 2,542.36 |
| Deposit | 2,025.05 | | 9/18 | 517.31 |
| 1 CHECK(S) PRESENTED | | 5,299.94 | 9/19 | 5,817.25 |
| EDS EDS-TITLE | 2,000.00 | | 9/20 | 3,817.25 |
| 009923940 | | 755.00 | 9/21 | 4,572.25 |
| EDS EDS-TITLE | | | | |
| 000046490 | | 935.00 | 9/21 | 5,507.25 |
| NISSAN AUTO LOAN | | | | |
| 3 CHECK(S) PRESENTED | 454.19 | | 9/21 | 5,053.06 |
| Deposit | 2,258.03 | | 9/22 | 2,795.03 |
| LOAN 6000655000 | | 4,794.73 | 9/25 | 7,589.76 |
| 7 CHECK(S) PRESENTED | 2,998.47 | | 9/25 | 4,591.29 |
| NSF Check Charge | 2,189.91 | | 9/25 | 2,401.38 |
| 4 CHECK(S) PRESENTED | 22.00 | | 9/26 | 2,379.38 |
| NSF Check Charge | 1,254.81 | | 9/26 | 1,124.57 |
| 1 CHECK(S) PRESENTED | 66.00 | | 9/27 | 1,058.57 |
| Daily overdraft charge | 1.00 | | 9/27 | 1,057.57 |
| 3 CHECK(S) PRESENTED | 2,000.00 | | 9/27 | 942.43- |
| Daily overdraft charge | 1.00 | | 9/28 | 943.43- |
| Miscellaneous Club Fee | 1,207.75 | | 9/28 | 2,151.18- |
| Interest Credit | 2.00 | | 9/29 | 2,153.18- |
| Daily overdraft charge | | .58 | 9/29 | 2,152.60- |
| | 1.00 | | 9/29 | 2,153.60- |

MAY-28-2004 16:43 From:                                         To:913342634096              P.6/14



## STATEMENT



**BRANTLEY**
*Bank & Trust Co.*
P.O. BOX 25
BRANTLEY, ALABAMA 36009
TELEPHONE (334) 527-3206





STATEMENT DATE:            09/29/06

DR EDGAR T VICTORIA JR
P O DRAWER 510
LUVERNE, AL 36049

165-00-49-00023N-00-0    PAGE        2

BUSINESS NOW                          ACCOUNT NO.    ████ 6887

TRANSACTION DETAIL FOR THIS ACCOUNT

| DESCRIPTION | DEBIT | CREDIT | DATE | BALANCE |
|---|---|---|---|---|
| Net Service Charge | 12.00 | | 9/29 | 2,165.60- |

CHECKS  (* - GAP IN SEQUENCE)

| NUMBER | AMOUNT | DATE PAID | NUMBER | AMOUNT | DATE PAID | NUMBER | AMOUNT | DATE PAID |
|---|---|---|---|---|---|---|---|---|
| 0 | 2,000.00 | 9/20 | 5057* | 204.75 | 9/28 | 5065 | 184.00 | 9/26 |
| 5049* | 850.00 | 9/06 | 5058 | 750.00 | 9/28 | 5066 | 195.46 | 9/25 |
| 5050 | 50.00 | 9/05 | 5059 | 279.13 | 9/26 | 5067 | 253.00 | 9/28 |
| 5051 | 640.86 | 9/08 | 5060 | 513.32 | 9/25 | 5068 | 861.40 | 9/22 |
| 5052 | 619.57 | 9/11 | 5061 | 1,099.01 | 9/22 | 5069 | 692.62 | 9/25 |
| 5053 | 20.00 | 9/25 | 5062 | 297.62 | 9/22 | 5070 | 690.78 | 9/26 |
| 5054 | 119.92 | 9/25 | 5063 | 389.52 | 9/25 | 5072* | 2,000.00 | 9/27 |
| 5055 | 259.07 | 9/25 | 5064 | 100.90 | 9/26 | | | |

⑦

**EDGAR T. VICTORIA, M.D.**
GENERAL SURGERY
P O DRAWER 177
DOVER, AL 36512

5038

61-572/621

DATE 8-9-06

PAY TO THE ORDER OF   Wyn-Lakes Golf Country Club          $ 166.31

One hundred Sixty-six and 31/100 ———————— DOLLARS

BRANTLEY
BANK AND TRUST CO.
DOVER, ALABAMA

917

⑇0000016631⑇

---

**EDGAR T. VICTORIA, M.D.**
GENERAL SURGERY
P O DRAWER 177
DOVER, AL 36512

5039

61-572/621

DATE 8-9-06

PAY TO THE ORDER OF   Charles & Gary Woodcraft          $ 20.00

Twenty and 00/100 ———————— DOLLARS

BANK AND TRUST CO.

FOR Pistol Permit

⑇000000 2000⑇

---

**EDGAR T. VICTORIA, M.D.**
GENERAL SURGERY
P O DRAWER 177
DOVER, AL 36512

5040

61-572/621

DATE 8-9-06

PAY TO THE ORDER OF   B & B Corp          $ 27.40

Twenty-Seven and 40/100 ———————— DOLLARS

BRANTLEY
BANK AND TRUST CO.

FOR

⑇000000 2740⑇

MAY-29-2004 01:36    To:913342634096    P.15/17

5064

DATE 8-13-06

$ 100.92

DOLLARS

5065

DATE 9-13-06

$ 84.00

DOLLARS

5066

DATE 9-13-06

$ 195.46

DOLLARS

MAY-28-2004 16:43 From:                                    To:913342634096                        P.7/14

| Account Activity | |
|---|---|
| Statement Closing Date | 09/18/06 |
| Previous Balance | $10,123.89 |
| Payments and Credits | $41.00 |
| Purchases and Advances | $8,140.41 |
| Late Fee | $39.00 |
| Overlimit Charge | $0.00 |
| Other Debit Adjustments | $0.00 |
| Finance Charges | $169.43 |
| New Balance | $18,431.73 |

| Account Summary | |
|---|---|
| Account Number | 0045 |
| Total Credit Line | $25,000.00 |
| Available Credit Line | $6,567.00 |
| Past Due Amount | $253.00 |
| Amount Over Credit Line | $0.00 |
| Minimum Payment Due | $714.00 |
| Days in Billing Cycle | 32 |
| Payment Due Date | 10/13/06 |

*For information about your account, contact our Automated Account Inquiry Line
(24 hours/7 days) at 1-800-854-7642*

If you telephone your inquiry, you do not preserve your rights under Federal law. Inquiries should be sent, in writing, to:
1550 N BROWN RD, STE 150, LAWRENCEVILLE, GA 30043

THIS IS A REMINDER-YOUR ACCOUNT IS ONE PAYMENT
PAST DUE. IF YOUR PAYMENT HAS BEEN MAILED
PLEASE DISREGARD THIS NOTICE.

IMPORTANT NOTICE

FIND ENCLOSED YOUR VISA/MASTERCARD AGREEMENT AND DISCLOSURE
STATEMENT WHICH ALSO CONTAINS OUR PRIVACY POLICY. PLEASE
READ CAREFULLY AS IT SETS FORTH THE TERMS AND CONDITIONS
GOVERNING THE USE OF YOUR MASTERCARD/VISA ACCOUNT.

### Transactions

| Trans. Date | Post. Date | Reference Number | Description | Amount |
|---|---|---|---|---|
| **SALES AND DEBITS** | | | | |
| 08/18 | 08/18 | 0541019KN0H4YLPBX | ENTERPRISE RENT-A-CAR MONTGOMERY AL | 609.87 |
| 08/18 | 08/18 | 0541019KPP8AXMTY0 | AMOCO OIL  05726401 LUVERNE AL | 11.50 |
| 08/18 | 08/18 | 0546042KPDQD4LQDB | CHEVRON 0045179 GREENVILLE AL | 40.37 |
| 08/18 | 08/18 | 5554655KRDJ1XLXZ7 | PEPPERTREE STEAKS AND MONTGOMERY AL | 252.68 |
| 08/25 | 08/25 | 0544471KXG71SWJBH | KROGER #420    SL9 NEWMAN GA | 69.07 |
| 08/25 | 08/25 | 0546042KYDQD4JE25 | CHEVRON 0045179 GREENVILLE AL | 36.25 |
| 08/26 | 08/26 | 0546042KZDQD4A1WB | CHEVRON 0041305 OPELIKA AL | 52.49 |
| 08/26 | 08/26 | 5554186KZ03T9NYNQ | RENAISSANCE HOTELS F/B ATLANTA GA | 38.00 |
| 08/27 | 08/27 | 5548382L0AFWX87KS | WM SUPERCENTER GREENVILLE AL | 156.47 |
| 08/28 | 08/28 | 0541601L142QE4PSD | WAL-MART #1462    SE2 GREENVILLE AL | 366.13 |

NOTICE: See reverse side for important information.

5106  0003  SKD       1      7 11  060918          D Page 1 of 2      1  1437  0000  PRAD  01AA5106      2991

MAY-28-2004 16:43 From:                                    To:913342634096          P.8/14




EDGAR T VICTORIA
Account Number                                              0045
Payment Due Date                                        11/10/06
New Balance                                           $24,100.00
Minimum Payment Due                                   $1,064.00

## Transactions

| Trans. Date | Post. Date | Reference Number | Description | Amount |
|---|---|---|---|---|
| **PAYMENTS AND CREDITS** | | | | |
| 09/25 | 09/25 | 8545637LW00N4B603 | PAYMENT - THANK YOU | 253.00 - |
| 10/08 | 10/08 | 0548101M942QEGD6N | WAL-MART #1482    SE2 GREENVILLE CREDIT | 32.48 - |
| **MISCELLANEOUS FEES** | | | | |
| 10/17 | 10/17 | | DELINQUENT CHARGE | 39.00 |

Finance Charges          Monthly Periodic Rate and Annual Percentage Rate (APR) may vary.

| | Average Daily Balance Used for Computing Finance Charge | Monthly Periodic Rate | FINANCE CHARGE | | | Corresponding Annual Percentage Rate | ANNUAL PERCENTAGE RATE |
|---|---|---|---|---|---|---|---|
| | | | at Periodic Rate | Transaction Fees | Total | | |
| Purchases | $4,434.55 | 1.180% | $52.32 | $0.00 | $52.32 | 14.15% | 14.150% |
| Cash Advances | $16,371.30 | 1.180% | $193.18 | $120.00 | $313.18 | 14.15% | * 22.960% |

**\* Cash advance fees may cause the APR for cash advances to appear overstated.**

If the previous balance is zero, a credit amount, or finance charge only, additional finance charge can be avoided on new
purchases (this does not include cash advances) made during the current billing cycle by paying the new balance by the payment due date.

*Internet Access Now Available For Account Information*
*Go To: www.onlinebankcardcenter.com*




EDGAR T VICTORIA
Account Number                          0045
Payment Due Date                      10/13/06
New Balance                         $18,431.73
Minimum Payment Due                    $714.00

---

## Transactions

| Trans. Date | Post. Date | Reference Number | Description | Amount |
|---|---|---|---|---|
| **SALES AND DEBITS** | | | | |
| 09/01 | 09/01 | 0514048L5LM8HPQF7 | MARVIN'S - GREENVILLE GREENVILLE AL | 15.85 |
| 09/01 | 09/01 | 5548330L5BV1HHZLZ | PEEBLES 5374 GREENVILLE AL | 205.68 |
| 09/01 | 09/01 | 5548382L5AG2QK00J | WM SUPERCENTER GREENVILLE AL | 172.09 |
| 09/03 | 09/03 | 0541019L7P8BD9VQE | AMOCO OIL 08175622 AUBURN AL | 54.00 |
| 09/04 | 09/04 | 2553606L9QDKWMD3P | SUMMIT 16 NEWNAN GA | 31.20 |
| 09/05 | 09/05 | 0546042LBDQD4DHBV | CHEVRON 0045175 GREENVILLE AL | 50.05 |
| 09/07 | 09/07 | 5554655LBDJ1XLXJZ | PEPPERTREE STEAKS AND MONTGOMERY AL | 261.36 |
| 09/09 | 09/09 | 0548680LDB0187638 | EXXONMOBIL75 04234373 MONTGOME AL | 48.50 |
| 09/09 | 09/09 | 5554186LD03RD30K8 | DISH NETWORK-ONE TIME 800-333-3474 CO | 95.86 |
| 09/11 | 09/11 | 0541019LFP8BL737D | AMOCO OIL 05726401 LUVERNE AL | 20.00 |
| 09/15 | 09/15 | 0541019LJP8BR0VXF | AMOCO OIL 08823627 VALLEY AL | 26.61 |
| 09/15 | 09/15 | 0541019LKP8BR6MDK | AMOCO OIL 09305096 ANDERSON SC | 26.18 |
| 09/18 | 09/18 | *FINANCE CHARGE* | PURCHASES $32.07 CASH ADVANCE $137.36 | 169.43 |
| **CASH ADVANCES** | | | | |
| 08/22 | 08/22 | F143700KU000LM078 | CONV CK 1004 TO FIRST CITIZENS BANK | 2,500.00 |
| 09/15 | 09/15 | F143700LJ000LM071 | CONV CK 1005 TO FIRST CITIZENS BANK | 3,000.00 |
| **PAYMENTS AND CREDITS** | | | | |
| 08/26 | 08/26 | 5554186KZ09F6YEP7 | THE HOME DEPOT 159 ATLANTA GA  CREDIT | 41.00 - |
| **MISCELLANEOUS FEES** | | | | |
| 09/18 | 09/18 | | DELINQUENT CHARGE | 39.00 |

---

**Finance Charges**     Monthly Periodic Rate and Annual Percentage Rate (APR) may vary.

| | Average Daily Balance Used for Computing Finance Charge | Monthly Periodic Rate | FINANCE CHARGE | | | Corresponding Annual Percentage Rate | ANNUAL PERCENTAGE RATE |
|---|---|---|---|---|---|---|---|
| | | | at Periodic Rate | Transaction Fees | Total | | |
| Purchases | $2,717.92 | 1.180% | $32.07 | $0.00 | $32.07 | 14.15% | 14.150% |
| Cash Advances | $11,640.70 | 1.180% | $137.36 | $0.00 | $137.36 | 14.15% | *    14.150% |

*Cash advance fees may cause the APR for cash advances to appear overstated.*

If the previous balance is zero, a credit amount, or finance charge only, additional finance charge can be avoided on new purchases (this does not include cash advances) made during the current billing cycle by paying the new balance by the payment due date

Internet Access Now Available For Account Information
Go To: www.onlinebankcardcenter.com

| Account Activity | |
| --- | --- |
| Statement Closing Date | 10/17/06 |
| Previous Balance | $18,431.73 |
| Payments and Credits | $285.48 |
| Purchases and Advances | $5,549.25 |
| Late Fee | $39.00 |
| Overlimit Charge | $0.00 |
| Other Debit Adjustments | $0.00 |
| Finance Charges | $365.50 |
| New Balance | $24,100.00 |

| Account Summary | |
| --- | --- |
| Account Number | 5456 3700 7189 0045 |
| Total Credit Line | $25,000.00 |
| Available Credit Line | $900.00 |
| Past Due Amount | $461.00 |
| Amount Over Credit Line | $0.00 |
| Minimum Payment Due | $1,064.00 |
| Days In Billing Cycle | 29 |
| Payment Due Date | 11/10/06 |

*For information about your account, contact our Automated Account Inquiry Line*
*(24 hours/7 days) at:1-800-854-7642*

If you telephone your inquiry, you do not preserve your rights under Federal law. Inquiries should be sent, in writing, to:
1550 N BROWN RD, STE 150, LAWRENCEVILLE, GA 30043

THIS IS A REMINDER-YOUR ACCOUNT IS ONE PAYMENT
PAST DUE. IF YOUR PAYMENT HAS BEEN MAILED
PLEASE DISREGARD THIS NOTICE.

| Transactions | | | | |
| --- | --- | --- | --- | --- |
| Trans. Date | Post. Date | Reference Number | Description | Amount |
| **SALES AND DEBITS** | | | | |
| 09/17 | 09/19 | 054101BLMBK7H33SP | BP OIL    47668041 SPARTANBURG  SC | 39.58 |
| 09/18 | 09/19 | 0546042LNDQD44NMB | CHEVRON 0209586 LAGRANGE  GA | 32.25 |
| 09/20 | 09/20 | 0546042LPDQD45ZYK | CHEVRON 0045179 GREENVILLE  AL | 43.70 |
| 09/26 | 09/26 | 0541601LX42QDZMQA | WAL-MART #1462   SE2 GREENVILLE  AL | 303.92 |
| 09/29 | 09/29 | 5548382M1AG0V6P8M | WM SUPERCENTER GREENVILLE  AL | 193.85 |
| 09/29 | 09/29 | 8518740M2000Q464Q | ABC 142 GREENVILLE  AL | 378.00 |
| 09/30 | 09/30 | 0546042M1DQD4H0VS | CHEVRON 0045179 GREENVILLE  AL | 20.00 |
| 09/30 | 09/30 | 5554655M2DJ1XLXGP | PEPPERTREE STEAKS AND MONTGOMERY  AL | 283.64 |
| 10/03 | 10/03 | 0546042M5DQD45SWA | CHEVRON 0045179 GREENVILLE  AL | 42.15 |
| 10/13 | 10/13 | 0541019MFP8QJZK4T | AMOCO OIL   05726401 LUVERNE  AL | 40.15 |
| 10/13 | 10/13 | 8550059MGS86LAV3G | PIONEER ELECTRONICS US  310-9522923 CA | 172.01 |
| 10/17 | 10/17 | *FINANCE CHARGE* | PURCHASES  $52.32 CASH ADVANCE $193.18 | 245.50 |
| **CASH ADVANCES** | | | | |
| 10/05 | 10/05 | F143700M6000LM032 | CONV CK 1006 TO DOLORES VICTORIA | 4,000.00 |
| 10/05 | 10/05 | | * FINANCE CHARGE * CASH ADVANCE FEE | 120.00 |

NOTICE: See reverse side for important information.

5106  0001  SKD      1      7  11  061017      D Page 1 of 2      1  1437  0000   PRAD  01AA5106      Z982

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re

Case No. 06-31225-WRS
Chapter 7

DELORIS V. VICTORIA,

　　　　　Debtor.


## ORDER ON MOTION TO DISMISS CASE

For the reasons set forth on the record on June 26, 2007, on the Motion to Dismiss Case

for Abuse Under 11 U.S.C. § 707 filed by Greenville Hospital Corporation (Doc. 53), it is

ORDERED that the Motion is GRANTED.


Done this the 27th day of June, 2007.


/s/ William R. Sawyer
United States Bankruptcy Judge

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**

**Deloris V. Victoria**                                    **Case No. 06-31225**
**225 Woodland Heights Dr**
**Greenville, AL 36037**
**SSN: xxx-xx-7367**

   **Debtor,**

---

### NOTICE OF APPEAL

Deloris V. Victoria , the Debtor appeals under 28 U.S.C. § 158(a) or (b) from the judgment, order or decree of the Bankruptcy Judge, The Honorable William R. Sawyer, entered on the Motion of Greenville Memorial Hospital on the 27th day of June, 2007.

The names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their respective attorneys are as follows:

Honorable Teresa Jacobs
U. S. Bankruptcy Administrator
One Church Street
Montgomery, AL 36104

Daniel G. Hamm, Trustee
The Law Offices of Daniel G. Hamm

560 South McDonough St., Ste A
Montgomery, AL 36104

Bradley R. Hightower
Attorney for Greenville Memorial Hospital
Christian & Small505 North 20th Street
Birmingham, Al 35203

Dated: July 6, 2007

  /s/ Richard D, Shinbaum
Richard D. Shinbaum
Shinbaum, Abell, McLeod & Campbell
PO Box 201
Montgomery, AL 36101
334-269-4440
Email: rshinbaum@samvpc.com

# United States Bankruptcy Court
## Middle District of Alabama

In re   **Deloris V. Victoria** _____    Case No.   **06-31225**

_____    Chapter   **7**

Debtor(s)

## MOTION TO AMEND BANKRUPTCY PETITION

1.   Debtor(s), __**Deloris V. Victoria**___, commenced this case on __**September 25, 2006.**__ by filing a voluntary petition for relief under Chapter 7 of Title 11 of the United States Bankruptcy Code.

2.   On or about _____ debtor(s) discovered that the following information had been inadvertently omitted from his/her/their Petition:

| Schedule(s) Affected: | Change(s): |
|---|---|
| Schedule B | Add Accounts Receivable |
| Schedule F | To modify MBNA claim and correct Creditors claims |
| Schedule G | To reflect lease |

WHEREFORE, Debtor(s) pray for an Order to Amend his/her/their Bankruptcy Petition to reflect the above-mentioned changes and for such additional or alternative relief as may be just and proper.

Dated:   **2-5-07**_____    /s/ Deloris V. Victoria    _Deloris Victoria_
                                                                        **Deloris V. Victoria**
                                                                        Debtor

## ORDER

The motion of the above-named debtor(s), __**Deloris V. Victoria**___, to amend his/her/their Bankruptcy Petition is sustained.

It is hereby ORDERED and DECREED that the Debtor's(s') Bankruptcy Petition is amended to reflect the following changes:

| Amendment(s) to Petition: |
|---|
| Amendments of Schedule B and F |
|  |
|  |

Dated:   _____    _____
                                                                    **U.S. BANKRUPTCY JUDGE**

1/16/07 1:40PM

Form B6B
(10/05)

In re  **Deloris V. Victoria**                                              Case No. ___06-31225___
                                        Debtor

## SCHEDULE B. PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c); Rule 1007(b)). | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | SEP | | - | 20,000.00 |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | | **Business Accounts due and Receivable approximately $20,000.00** | - | 20,000.00 |
| | | **Business Accounts Receivables** | - | 15,000.00 |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owing debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |

Sub-Total >          55,000.00
(Total of this page)

Sheet __1__ of __2__ continuation sheets attached
to the Schedule of Personal Property

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

Form B6B
(10/05)

In re  **Deloris V. Victoria**                                        Case No. ___06-31225___

                              Debtor

# SCHEDULE B. PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property." In providing the information requested in this schedule, do not include the name or address of a minor child. Simply state "a minor child."

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 1. Cash on hand | | CASH | - | 300.00 |
| 2. Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | CHECKING ACCOUNT - WHITNEY BANK | - | 2,000.00 |
| | | CHECKING ACCOUNT - BUTLER COUNTY BANK | - | 500.00 |
| 3. Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. Household goods and furnishings, including audio, video, and computer equipment. | | HOUSEHOLD GOODS | - | 7,000.00 |
| 5. Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6. Wearing apparel. | | WEARING APPAREL | - | 1,000.00 |
| 7. Furs and jewelry. | | JEWELRY | - | 5,000.00 |
| 8. Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9. Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |
| 10. Annuities. Itemize and name each issuer. | X | | | |

                                                    Sub-Total >            15,800.00
                                                    (Total of this page)

  __2__  continuation sheets attached to the Schedule of Personal Property

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

1/18/07 1:40PM

Form B6B
(10/05)

In re  **Deloris V. Victoria**                                    Case No. ____**06-31225**____
                                            Debtor

## SCHEDULE B. PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | | POSSIBLE BREECH OF CONTRACT SUIT AGAINST DR. LILITH NAMI. SUIT NOT YET FILED. ATTORNEY RICHARD HARTLEY | - | Unknown |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | X | | | |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | | COMPUTERS, EKG, TABLES, CHAIRS | - | 19,000.00 |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |

|  | Sub-Total > (Total of this page) | 19,000.00 |
|---|---|---|
|  | Total > | 89,800.00 |

Sheet __2__ of __2__  continuation sheets attached
to the Schedule of Personal Property

(Report also on Summary of Schedules)

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

1/16/07 1:40PM

Form B6F
(10/05)

In re   **Deloris V. Victoria**                                         Case No. ___**06-31225**___
                                                                              Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C. §112; Fed.R.Bankr.P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community maybe liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

☐   Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H | W J C | | | | | |
| Account No. | | | | 09-2005 LINE OF CREDIT | | | | |
| Creditor #: 1 CAMDEN NATIONAL 3 WATER STREET Camden, AL 36726 | | - | | | | | | |
| | | | | | | | | 2,545.00 |
| Account No. x8652 | | | | 09-2004 DISPUTED DEBT | | | | |
| Creditor #: 2 CAMDEN NATIONAL 3 WATER STREET Camden, AL 36726 | | - | | | | | X | |
| | | | | | | | | 1.00 |
| Account No. x7851 | | | | 06-2004 LOAN | | | | |
| Creditor #: 3 CAMDEN NATIONAL 3 WATER STREET Camden, AL 36726 | | - | | | | | | |
| | | | | | | | | 680.00 |
| Account No. xxxxx2276 | | | | 03-2005 COLLECTION ACCOUNT | | | | |
| Creditor #: 4 CENTURYTEL PO BOX 6001 Marion, LA 71260-6001 | | | | | | | | |
| | | | | | | | | 558.00 |

__2__   continuation sheets attached

Subtotal
(Total of this page)          **3,784.00**

Copyright (c) 1990-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037                    S/N:34718-070103    Best Case Bankruptcy

Form B6F - Cont
(10/05)

In re    **Deloris V. Victoria**                                                 Case No. ___**06-31225**___
_____
                                  Debtor

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | H W J C | Husband, Wife, Joint, or Community | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| Account No. <br><br>Representing:<br>CENTURYTEL | | | | BANK OF AMERICA<br>PO BOX 41466<br>Philadelphia, PA 19101 | | | | |
| Account No. <br><br>Creditor #: 5<br>GENEZEN HEALTHCARE<br>PO BOX 571811<br>Houston, TX 77257 | | | | 2005<br>Pending Suit non consumer debt<br>BUTLER COUNTY CV 05-177<br>Suit involving patient accounts | | | | 18,000.00 |
| Account No. <br><br>Representing:<br>GENEZEN HEALTHCARE | | | | DAVID C. SCHWARTZ, ESQ.<br>PO BOX 11366<br>Birmingham, AL 35202-1366 | | | | |
| Account No. <br><br>Creditor #: 6<br>GREENVILLE HOSPITAL<br>DBA LV STABLER MEMORIAL<br>29 STABLER DR<br>Greenville, AL 36037 | | | | 2005<br>JUDGEMENT NON CONSUMER DEBT<br>BUTLER COUNTY CV 05-133<br>SUIT ON CONTRACT INVOLVING TERMINATION OF DOCTOR | | | | 162,700.00 |
| Account No. <br><br>Representing:<br>GREENVILLE HOSPITAL | | | | GREER B. MALLETTE, ESQ<br>505 20TH ST N., STE 1800<br>Birmingham, AL 35203-2696 | | | | |

Sheet no. __1__ of __2__   sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)                180,700.00

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037                          Best Case Bankruptcy

1/16/07 1:40PM

Form B6F - Cont.
(10/05)

In re  **Deloris V. Victoria**                                           Case No. __**06-31225**__
_____
                                Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. | | | 08-1999 CREDIT CARD | | | | |
| Creditor #: 7 MBNA AMERICA PO BOX 17054 Wilmington, DE 19884 | X | J | | | | | |
| | | | | | | | 9,663.00 |
| Account No. | | | 10-1995 CREDIT CARD | | | | |
| Creditor #: 8 MBNA AMERICA PO BOX 17054 Wilmington, DE 19884 | X | J | | | | | |
| | | | | | | | 3,378.00 |
| Account No. | | | 04-1994 Non Consumer business accout credit card for purchase of medical equipment and supplies. Account in Husbands name used to pay wife's debts. $77K | | X | | |
| Creditor #: 9 MBNA AMERICA PO BOX 17054 Wilmington, DE 19884 | X | J | | | | | |
| | | | | | | | 1.00 |
| Account No. | | | 12-1999 LINE OF CREDIT | | | | |
| Creditor #: 10 WHITNEY BANK 228 ST CHARLES AVE New Orleans, LA 70130 | | - | | | | | |
| | | | | | | | 5,483.00 |
| Account No. | | | | | | | |

Sheet no. __2__ of __2__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

| | | |
|---|---|---|
| Subtotal (Total of this page) | | 18,525.00 |
| Total (Report on Summary of Schedules) | | 203,009.00 |

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

Form B6G
(10/05)

1/10/07 1:40PM

In re   **Deloris V. Victoria** _____   Case No. ___**06-31225**___
                                          Debtor

# SCHEDULE G. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests. State nature of debtor's interest in contract, i.e., "Purchaser", "Agent", etc. State whether debtor is the lessor or lessee of a lease. Provide the names and complete mailing addresses of all other parties to each lease or contract. If a minor child is a party to one of the leases or contracts, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C. § 112; Fed.R. Bankr. P. 1007(m).

☐ Check this box if debtor has no executory contracts or unexpired leases.

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
|---|---|
| **GREENVILLE HOSPITAL**<br>**DBA LV STABLER MEMORIAL**<br>**29 STABLER DR**<br>**Greenville, AL 36037** | **Business lease** |

__**0**__  continuation sheets attached to Schedule of Executory Contracts and Unexpired Leases

Copyright (c) 1996-2005 - Best Case Solutions - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re:                                    )
                                          )
Deloris V. Victoria,                      )          Case No. 06-31225-WRS-7
                                          )
          Debtor.                         )

---

**MOTION FOR FINDING THAT DEBTOR'S LEASE WITH GREENVILLE HOSPITAL
IS AUTOMATICALLY REJECTED AND FOR RELIEF FROM STAY**

---

Greenville Hospital Corporation, d/b/a LV Stabler Memorial Hospital ("Greenville Hospital"), a creditor and party of interest in the chapter 7 bankruptcy case filed by Deloris V. Victoria (the "Debtor" or "Victoria"), requests that the Court enter an order finding that the Debtor's Medical Office Space Lease (the "Lease") with Greenville Hospital has been automatically rejected. Greenville Hospital further requests relief from stay to pursue its contractual remedies under the Lease. In support of its motion, Greenville Hospital says as follows:

1.      The Debtor filed a chapter 7 bankruptcy case in this Court on September 25, 2006. Prior to filing bankruptcy, the Debtor executed the Lease with Greenville Hospital on June 29, 2006. A true and correct copy of the Lease is attached as Exhibit "A." Under the terms of the Lease, the Debtor agreed to lease certain premises from Greenville Hospital for a period of two (2) years commencing on June 1, 2006.

2.      The Lease was not listed in the Debtor's bankruptcy petition, schedules or statement of intention. The Debtor has not amended her statement of intention to assume or reject the Lease, nor has the Debtor asked the Court for additional time to determine whether she will assume or reject the Lease.

3.      Pursuant to Section 365(d)(4) of the Bankruptcy Code, an unexpired lease of nonresidential real property under which the debtor is the lessee is automatically deemed rejected unless it is assumed within 120 days from the petition date or the date that a confirmation order is entered,

whichever is earlier. Although a debtor may request that the 120 day period be expanded, the debtor's request must be filed before the 120 day period expires.

4.      The time period for the Debtor to assume the Lease under Section 365(d)(4) has now expired and the Debtor has not asked the Court to extend the 120 day time period; therefore, the Lease has been automatically rejected pursuant to Section 365(d)(4).

5.      Greenville Hospital requests that the Court enter a "comfort order" finding that the Lease has been automatically rejected and granting Greenville Hospital relief from stay to pursue its contractual remedies under the Lease.

6.      **Greenville Hospital requests that its counsel be allowed to appear for any hearing on this motion by telephone**.

WHEREFORE, Greenville Hospital Corporation, d/b/a LV Stabler Memorial Hospital, requests that the Court enter an order finding that Deloris V. Victoria's Lease with Greenville Hospital has been automatically rejected pursuant to Section 365(d)(4) of the Bankruptcy Code. Greenville Hospital further requests relief from stay to pursue its contractual remedies under the Lease.

Respectfully submitted,


/s/ Bradley R. Hightower
Bradley R. Hightower
Attorney for Greenville Memorial Hospital

OF COUNSEL:
CHRISTIAN & SMALL LLP
505 North 20th Street, Suite 1800
Birmingham, Alabama 35203
Phone: (205) 795-6588
Fax: (205) 328-7234

## CERTIFICATE OF SERVICE

Unless otherwise served by the ECF system, I certify that I have served a copy of the above and foregoing Motion on the following by placing a copy in the United States Mail, properly addressed, first-class postage pre-paid on this the 30th day of January, 2007:

C. Brandon Sellers, III
Shinbaum, Abell, McLeod & Vann
P.O. Box 201
Montgomery, Alabama 36101

U.S. Bankruptcy Adminstrator
Attn: Tina Hayes
One Church Street
Montgomery, Alabama 36104

Chapter 7 Trustee, Daniel G. Hamm
560 South McDonough Street, STE A
Montgomery, Alabama 36104

_____    /s/ Bradley R. Hightower
                                              OF COUNSEL

Aug.  1, 2006 10:19AM        LV Stabler                                No. 7112   P. 2

## MEDICAL OFFICE SPACE LEASE

Date:  June 29, 2006

Name and Address of Building:
44 Medical Arts Court, Suite 2
Greenville, AL 36037

Tenant:  Dolores Victoria, M.D.

Leased Premises Floor/Suite Description:
Suite 2

Landlord: Greenville Hospital Corporation
d/b/a LV Stabler Memorial Hospital
Address:
29 LV Stabler Drive
Greenville, AL 36037

Number of Square Feet:  1250

> EXHIBIT
>
> A

Term of Lease:  2 years
Renewal Terms:  _____2 year term_____ (up to one renewal terms of two (2) years by written agreement
of the parties at least three months before expiration of term).

Commencement Date of Lease Term: June 1, 2006          Security Deposit: _____-0-

**Termination:**  Either party may terminate this lease with or without cause upon thirty (30) days prior to
written notice to the other party.  However, in the event this lease is terminated for any reason prior to the
expiration of one (1) year from the commencement date, the parties shall not enter into another lease until
after the expiration of the first year of the initial term.

Annual Rental Rate:$  11,250                        Monthly Rental Installments: $ 937.50
Rent Increase (check one) ☐ 3% per year ☐ 4% per year      ($_____9.00_____/square foot/year)

_____ Check here if Tenant is required to maintain membership in Hospital Medical Staff

**Utilities (check any that apply):**
X ___ Utilities (electricity, water and sewer and janitorial services) are included in the Monthly Rental
X ___ Housekeeping services will be provided by the Landlord including trash removal
X ___ The following utilities are not included in the Monthly Rental:  electricity
     ___ Tenant is solely responsible for the payment of separately metered utilities
     ___ Tenant shall pay a pro rata share of separately metered utilities based on Tenant's
          proportionate share of the metered square footage

**Improvements (check any that apply): Not Applicable**
_____ First time Standard Build Out - Base Tenant Build Out Allowance:  $_____ per sq. ft.
_____ Existing Space (New Tenant or Renewal) - Tenant Improvement Allowance: $____ per
          sq. ft. per year
_____ Landlord to build out space per Landlord's Work Letter attached hereto as Exhibit B

This Medical Office Space Lease is a sublease pursuant to that certain (describe underlying lease
agreement):____not applicable

Attached hereto and incorporated herein for all purposes is "Exhibit A -- Medical Office Space Lease
Standard Terms and Conditions" to which reference is made for the balance of the terms of this Medical
Office Space Lease, including without limitation adjustments to Rental Rate/Installments.

Attached hereto and incorporated herein for all purposes are the following additional exhibits:  Not applicable

TENANT:

_____
Date:  7-19-06

REVIEWED AND APPROVED:

_____
Facility Chief Executive Officer
Date:  7-19-06

LANDLORD:

By: _____
President, Hospital Corporation
Date:  7-5-06

APPROVED AS TO FORM:

_____
In-house Counsel, Hospital Corporation
Date:  6.30.06

Form No. 0103 Rev. by Legal Dept as of 6/26/06.

1



*MOB Lease – Hospital-Landlord*

EXHIBIT A
MEDICAL OFFICE SPACE LEASE STANDARD TERMS AND CONDITIONS

In consideration of the mutual covenants and representations set forth in the Medical Office Space Lease (the "Lease") and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties do hereby agree as follows. The capitalized terms used in this Exhibit A shall have the meaning assigned to such terms in the Medical Office Space Lease, unless another meaning is assigned to such terms in this Exhibit A.

1.    DEMISE.  Upon the terms and conditions hereinafter set forth, Landlord does hereby lease to Tenant, and Tenant does hereby lease from Landlord, the Demised Premises for the Term of the Lease.

2.    RENT.  The Monthly Rental Installments for the Lease of the Demised Premises shall be payable in advance on the first day of each and every month during the term hereof.  During the term of this Lease, the Monthly Rental Installments shall be increased, as of each anniversary date of the Commencement Date, by the percentage amount set forth in the Medical Office Space Lease.  It is expressly understood and agreed that Landlord shall apply all payments from Tenant hereunder to the amounts due hereunder by Tenant which have been outstanding for the longest period of time first.

3.    RENTAL RATE ADJUSTMENT. Landlord shall adjust the Annual Rental Rate and the monthly Rental Installments to the then fair market rental rate for the Demised Premises, upon the termination of an existing term of the Lease. Landlord will give notice of such adjustment to Tenant 90 days prior to expiration date of current Lease. Without limitation, Landlord's adjustment of Rental Rate and the monthly installments will be based on the fair market rental rate, utility costs and real estate taxes as well as any local, state or federal income taxes, which may become payable by the Landlord. If a rent escalation percentage has been checked on the cover page of this Lease, the adjustment under this section shall not exceed the amount checked on the cover page of this Lease.

4.    LANDLORD'S OBLIGATIONS.

   A.   Utilities:
        If utilities are included in the Monthly Rental Installments, then Landlord shall, at Landlord's expense, furnish utilities to the Demised Premises, including electrical, water and sewer, heat, ventilation, and air conditioning, however, Tenant shall be responsible for the payment of telephone and data services.

   B.   Maintenance
        Landlord shall maintain, repair and replace all exterior walls and other features of the exterior including but not limited to the roof and all mechanical systems, including but not limited to air conditioning, heating, plumbing, wiring and piping.

   C.   Insurance
        Landlord shall maintain fire and extended coverage insurance on the building in which the Demised Premises are located, in an amount not less than the full replacement cost of the building.

   D.   Taxes
        Landlord shall be responsible for payment of all real estate taxes assessed against the building or property, as well as all applicable local, state and federal income taxes which are or may be payable by Landlord.

   E.   Build Out By Landlord
        If checked on the cover sheet hereof, Landlord will be responsible for standard build out for office space per Attachment "B"    (attached hereto and incorporated herein by reference).

5.    TENANT'S OBLIGATIONS.  In addition to the said rent to be paid, Tenant also agrees to pay directly during the term of the Lease, commencing on the Commencement Date, the following items of expense as the same become due and payable:

   A.   Taxes.
        All ad valorem or other property taxes, personal and intangible taxes payable in connection with the use, occupancy or conduct of business on any part of the Demised Premises, including but not limited to personal property, business, privilege, license, excise, sales, use

Form No. 0103 Rev. by Legal Dept as of 6/26/06.



and occupation taxes (but excluding local, state and federal income taxes payable by Landlord). Tenant shall be responsible for all taxes which are assessed against their stock and inventory, tangible personal property or their business and/or business operations.

B.  Maintenance and Modifications.
The following charges for maintaining and operating the Demised Premises in good repair and operating condition:

    1)  Tenant shall, at its own cost and expense, keep the interior clean, maintaining suitable receptacles for trash and refuse, and removing from the interior all accumulations of trash and refuse.

    2)  Tenant shall service, keep and maintain the interior, including fixtures, doors, interior walls and appurtenances in good condition, repair and working order.

    3)  Tenant agrees to deliver to Landlord, upon the expiration date or upon earlier termination in accordance with the provisions hereof, physical possession of the Demised Premises in good condition, reasonable wear and tear and damage by fire or other casualty excepted.

    4)  If the Building is separately metered for certain utilities, such as electricity, gas, water, and sewer, Tenant shall be responsible for the payment of all such separately metered utilities based on Tenant's proportionate share of the metered square-footage.

    5)  If utilities are not separately metered, Tenant shall be responsible for a pro-rata share of Building utility expense, based upon the ratio of the square footage of the Demised Premises to the square footage of the Building. The utility expense shall be calculated, and the Utility Base Rate shall be adjusted, annually.

    6)  Tenant shall be responsible for all service costs and installations of all telephone or data services and Landlord shall have no responsibility or liability with respect thereto or the failure of operation of any such services.

6.  IMPROVEMENTS. Tenant shall not make any structural changes, alterations, additions or improvements to the Demised Premises without the written consent of Landlord, which shall not be unreasonably withheld. Landlord shall not be responsible for, either in the performance or payment, any improvements to the Demised Premises unless a "Landlord's Work Letter" is attached to the Lease.

7.  USE OF DEMISED PREMISES. Tenant shall use the Demised Premises for the purpose of the licensed practice of medicine and the medical treatment of Tenant's patients and business purposes ancillary thereto and for no other purpose. Without limiting the foregoing, unless approved by Landlord in advance and in writing, Tenant shall not use the Demised Premises for the operation of a "commercial ancillary medical care facility" which shall include, without limitation, a clinical laboratory, pharmacy, ambulatory surgery center, birthing center, diagnostic, including radiology, facility, and respiratory, physical, speech, or occupational therapy services. The use of diagnostic equipment (such as x-ray) and the performance of minor surgical procedures under local anesthesia, that is within the scope of Tenant's medical practice and pertaining to the treatment and care of Tenant's own patients, shall not be considered to violate the terms of this paragraph.

8.  ASSIGNMENT;SUBLETTING. Tenant shall not, without the prior consent of Landlord, which consent may be withheld in Landlord's sole discretion, sublease, license or assign its interest under the Lease to any other person or entity. Assignment or subletting without the prior consent of Landlord, including assignment by operation of the law, shall constitute an event of default. In no event, whether with or without consent of Landlord, shall an assignment or lease relieve Tenant of liability under the terms, conditions and provisions of this Lease.

9.  INSURANCE.

A.  The following insurance coverage on the Demised Premises will be maintained by Tenant at all times during the term of the Lease. Comprehensive general liability insurance coverage on the Demised Premises in the sum of One Million Dollars ($1,000,000) for any single claim and Three Million Dollars ($3,000,000) for claims arising out of a single accident or occurrence against liability for bodily injury and death resulting therefrom, and insurance coverage in the sum of One Hundred Thousand Dollars ($100,000.00) per occurrence against liability for damage to property, arising out of the maintenance or use of the Demised Premises by Tenant. Casualty insurance insuring Tenant against loss or damage to its



AUG. 1. 2006 10:14AM    LV STADLER                                    NO. 7172    P. 5

equipment and other pe...ial property in the Demised Premises by fire a...ll other casualties usually covered under an "all risk" policy of casualty insurance. The policies described in this section shall name both Tenant and Landlord as named insureds. Annually, Tenant shall furnish Landlord with a certificate of such coverage which shall provided that thirty (30) days' advance written notice be given to Landlord in the event of cancellation or material change in the insurance policy.

B.    Tenant shall not do or permit any act which will increase premiums for any casualty, fire, liability or other insurance maintained by Landlord on the Building or any other property therein or which shall render such insurance void or voidable

10.    DAMAGE TO PROPERTY/INJURY TO PERSON. Tenant shall and hereby does indemnify and hold Landlord harmless from and against any and all claims to the extent they arise from (i) Tenant's use of the Demised Premises or the conduct of its business, (ii) any activity, work or thing done, permitted or suffered by the Tenant in or about the Demised Premises, (iii) any breach or default in the performance of any obligation on Tenant's part to be performed under the terms of the Lease, or (iv) any act of negligence of Tenant or his agents or employees.

11.    ENVIRONMENTAL PROVISIONS.
A.    Following due inquiry, Landlord represents that to the best of its knowledge there are no hazardous substances or hazardous wastes as defined by the Comprehensive Environmental Response and Liability Act or any hazardous wastes as defined by the Resource Conservation and Recovery Act, or any PCB's, radon or asbestos containing materials, located on, in or about the Demised Premises to be occupied by Tenant.  Landlord agrees that should any hazardous wastes, hazardous substances, PCB's, radon or asbestos containing materials be determined to be present as a result of the acts or missions or negligence of any person or legal entity, other than Tenant, Landlord shall indemnify, hold harmless and defend Tenant from all claims, damages, expenses or litigation resulting from the presence of such materials.

B    Tenant warrants that its use of the Premises and the materials used in the conduct of its business operations at and on the Premises, or the manner of use, and its waste, effluent and vapors will not violate any laws, ordinances, rules or regulations relating to or affecting the environment or dealing with environmental matters, as hereinafter defined, hazardous substances of any kind or nature, whether imposed or enforced by any state, local or federal agency, and that Tenant shall alter its use of the Premises to comply with such laws, ordinances, rules or regulations if required to do so by any such governmental agency. Tenant shall not use the Premises, maintain them nor allow use of the Premises in any manner constituting a violation of any ordinance, statute, rule, regulation or order of any governmental authority, including, but not limited to, the ADA, zoning ordinances, or environmental rules, regulations and laws, nor will the Tenant maintain or permit any nuisance to occur or to be maintained on the Premises.

12.    EARLY TERMINATION AS A RESULT OF THE DEATH OR DISABILITY OF A SOLE PRACTITIONER; OTHER VACATION OR ABANDONMENT. If Tenant is a sole practitioner and dies or becomes disabled (defined for purposes of the Lease as any physical or mental condition that prevents or is reasonably expected to prevent such physician from practicing medicine for more than ninety (90) days), then either party shall have the right to terminate the Lease prior to the expiration date by giving the other party not less than thirty (30) days prior written notice. Except as expressly provided in the preceding sentence, any other vacation of the Demised Premises for more than thirty (30) days or any abandonment of the Demised Premises by Tenant will be considered a material default under the Lease.

13.    DEFAULT. Tenant shall be in default of the terms of the Lease if Tenant shall fail to make a payment of any rent or additional rent, and such rent or additional rent is not paid within ten (10) days of written notice by Landlord to Tenant of non-payment of same, or in the event that Tenant shall otherwise commit an act of default under the terms hereof, and shall not cure such default within thirty (30) days of written notice by Landlord to Tenant of such default. In the event of default:

    A.    Landlord may continue the Lease in full force and effect and shall have the right to collect rent when due. During the term Tenant is in default, Landlord may re-enter the Demised Premises with legal process and relet same, or any part thereof, to third parties for Tenant's account. Tenant shall be liable for all reasonable costs Landlord incurred for reletting the Demised Premises, including without limitation broker's commissions, expenses associated with repairing and / or remodeling the Demised Premises in order to return the Demised Premises to the same condition as when received by Tenant from Landlord–and similar costs. Reletting can be done for a period shorter or longer than the remaining term of the Lease. Tenant shall pay to Landlord the rent due under the Lease on the date such rent is due, less the rent Landlord receives through any reletting. Landlord shall make its best efforts to relet the Demised Premises at a reasonable price. Under this paragraph, Tenant's obligations shall not exceed the total rent due for the remainder of the term.

Form No. 0103 Rev. by Legal Dept as of 6/26/06.

4



B.  Landlord may terminate the Lease pursuant to the terms of this Section 13. Upon termination, Landlord shall have the right to collect an amount equal to all expenses, if any, including reasonable attorneys' fees, incurred by Landlord in recovering possession of the Demised Premises and all reasonable costs and charges for the care of the Demised Premises while vacated by Tenant.

C.  Should any of these remedies or any portion thereof not be permitted by the laws of the state where the Building is located, then such remedy or portion thereof shall be considered deleted and unenforceable, and the remaining remedies or portions thereof shall be and remain in full force and effect, and Landlord may avail itself of these as well as any other remedies or damages allowed by law.

14.  RIGHT OF ACCESS.  Landlord and its agents shall have reasonable access to the Demised Premises during all reasonable business hours for the purpose of examining same to ascertain if they are in good repair and to make reasonable repairs which Landlord may be required to make hereunder.

15.  END OF TERM.  At the termination of the Lease, Tenant shall surrender its interest in the Demised Premises to Landlord in as good condition and repair as reasonable use thereof will permit, reasonable wear and tear excepted, and will leave the Demised Premises broom clean. Tenant shall have the right, prior to said termination, to remove any equipment, furniture, trade fixtures or other personal property in the Demised Premises owned by Tenant, provided that Tenant promptly repairs any damage to the Demised Premises caused by such removal. In the event of holding over by Tenant after the expiration or termination of the Lease, Tenant shall pay rent at the then-current rate on a monthly basis. Any holding over with consent of Landlord in writing shall thereafter constitute a Lease for month-to-month.

16.  ATTORNEYS' FEES.  In the event that suit is brought by either party against the other for breach or default under the terms of the Lease, the prevailing party shall be entitled to reasonable attorneys' fees, expenses (including expert witness fees) and court costs equal to the sum established by the court.

17.  HEADINGS.  The article captions contained in the Lease are for the convenience of the parties only and shall not be considered in the construction or interpretation of any provision hereof.

18.  ENTIRE AGREEMENT.  The Lease contains the entire agreement between the parties and supersedes any and all other prior oral and written agreements between the parties regarding the subject matter contained herein and may not be changed or terminated orally but only by agreement in writing and signed by all parties.

19.  DAMAGE OR DESTRUCTION.  If the Demised Premises are damaged by fire or other casualty, the damage shall be repaired by and at the expense of Landlord (excluding any equipment which is owned by Tenant), provided that such repairs can, in Landlord's opinion, be made within sixty (60) days after the occurrence of such damage. Landlord shall notify Tenant within fifteen (15) days of the event of casualty of its determination. Until such repairs are completed, the rent shall be abated in proportion to the part of the Demised Premises rendered unusable, but there shall be no abatement of rent for a period equal to one (1) day or less. If such repairs cannot, in Landlord's opinion, be made within sixty (60) days and Landlord nonetheless chooses to repair, then Tenant may, at its option, continue as Tenant under the Lease until such repairs are completed, during which time all rent shall abate, or Tenant may terminate the Lease. A total destruction of the building in which the Demised Premises are located shall automatically terminate the Lease. Total destruction of the building shall be defined as damage greater than fifty percent (50%) of the then replacement value thereof.

20.  EMINENT DOMAIN.  If the whole of the Demised Premises or so much thereof as to render the balance unusable by Tenant shall be taken under power of eminent domain, the Lease shall automatically terminate as of the effective date of the taking. In the event of a partial taking which does not result in a termination of the Lease, the rent reserved hereunder shall remain unaffected. Landlord may, without any obligation or liability to Tenant, stipulate with any condemning authority for a judgment of condemnation without the necessity of a formal suit or judgment of condemnation, and the date of taking under this clause shall then be deemed the date agreed to under the terms of said agreement for stipulation and the Lease shall terminate as of the stipulated date.

21.  WAIVER.  No waiver by either party shall be deemed to be a waiver of any other provision hereof or of any subsequent breach by either party of the same or any other provision. Landlord 's consent to or approval of any act by Tenant requiring Landlord's consent or approval shall not be deemed to render unnecessary the obtaining of Landlord's consent to or approval of any subsequent act of Tenant, whether or not similar to the act so consented to or approved.

Form No. 0103 Rev. by Legal Dept as of 6/26/06.



22.   NOTICES.  Any notice required or permitted to be given hereunder may be given by mail and shall be sufficiently given if personally served or sent by registered or certified mail or by special courier, addressed to the relevant party at the addresses specified in the Lease (notice to Tenant shall be given at the Demised Premises).  For any notice given to Landlord, a copy shall be provided to the Landlord's counsel as follows: General Counsel, Legal Department, P.O. Box 217, Brentwood, Tennessee 37024-0217. **From and after December 15, 2006:** Community Health Systems, Attn: Legal Department, 4000 Meridian Blvd., Franklin, TN  37067 or Community Health Systems, Attn:  Legal Department, P.O. Box 689020, Franklin, TN  37068.

23.   BINDING EFFECT.  The Lease shall be binding upon and inure to the benefit of the parties hereto, their heirs, successors, assigns, executors and administrators.  Nothing in this article shall be deemed to amend the provisions herein concerning assignment and subletting.

24.   APPLICABLE LAW.  The laws of the state where the Building is located shall be employed in and govern the interpretation of all of the covenants, terms and conditions of the Lease.

25.   NO PARTNERSHIP RELATIONSHIP.  Notwithstanding any agreement herein contained, Landlord shall not be construed or held to be a partner or associate of Tenant in the conduct of its business, it being expressly understood and agreed that the relationship between the parties is and at all times shall remain that of Landlord and Tenant.

26.   NO REQUIREMENT TO REFER.  The parties expressly agree that nothing contained in the Lease shall require Tenant or any physician or other referral source to refer or admit any patients to, or order any goods or services from Landlord or any affiliate.  Notwithstanding any unanticipated effect of any provision of this Agreement, neither party will knowingly or intentionally conduct himself in such a manner as to violate the prohibition against fraud and abuse in connection with the Medicare and Medicaid programs (42 USC Section 1320a-7b).  Both parties represent to the other that the Rentals provided for in the Lease are at fair market value rates and do not take into account the value or volume of any referrals or other business generated between the parties.  Both as a material condition to this Lease and as a continuing representation and warranty for the duration of this Lease, Tenant represents and warrants that neither it nor any of its owners, officers, directors, employees, agents, subcontractors etc have been suspended, excluded, or debarred from any government payor program.

27.   QUIET ENJOYMENT.  Landlord warrants and shall defend Tenant in the quiet enjoyment and possession of the Demised Premises during the term and any extension or renewal thereof.

28.   OPTION TO RENEW.  Provided that Tenant is not then in default hereunder, upon the expiration of the term hereof, Tenant shall have the option to renew the Lease for the additional term(s), if any, set forth on the cover page of this Lease, upon the same terms and conditions as this Lease except that the rentals payable during the renewal term shall be adjusted to fair market rental as set forth herein.

29.   SUBORDINATION, ATTORNMENT AND NON-DISTURBANCE.

A.   Tenant agrees that the Lease and all rights of Tenant hereunder are and shall be subject and subordinate to any ground or underlying lease which may now or hereafter be in effect regarding the Building or any component thereof, to any mortgage now or hereafter encumbering the Demised Premises or the Building or any component thereof, to all advances made or hereafter to be made upon the security of such mortgage, to all amendments, modifications, renewals, consolidations, extensions and restatements of such mortgage, and to any replacements and substitutions for such mortgage.  The terms of this provision shall be self-operative and no further instrument of subordination shall be required.  Tenant, however, upon request of any party in interest, shall execute promptly such instrument or certificates as may be reasonably required to carry out the intent of this provision.

B.   In the event any proceedings are brought for the foreclosure of, or in the event of exercise of the power of sale under, or in the event of a deed in lieu of foreclosure with respect to any mortgage covering the Demised Premises or the Building, or in the event of termination of any Lease under which Landlord may hold title, Tenant shall, at the option of transferee, attorn to such transferee and shall recognize and be bound and obligated hereunder to such person as the Landlord under the Lease.  Tenant agrees to execute any attornment agreement not in conflict with this provision.

Form No. 0103 Rev. by Legal Dept as of 6/26/06.

6



C.   Notwithst... ...ng anything contained herein to the contrary, so ... ...as Tenant is not in default in the payment of Rentals or other charges, or in the performance of any of the other terms, covenants or conditions of the Lease, mortgagee or such person shall not disturb Tenant in its occupancy of the Demised Premises during the original or any renewal term of the Lease notwithstanding any event or proceedings described in this section.

30     MASTER CONTRACT LIST. This contract is identified on a master list of contracts maintained on a Lotus Notes server.

31     ESTOPPEL CERTIFICATE.   Within thirty (30) days after written request from Landlord, Tenant shall deliver an executed statement addressed to Landlord certifying (if such be the case) that this Lease is in full force and effect, that Tenant has commenced the payment of rent, and that there are no defenses or offsets to this Lease claimed by Tenant, as well as any other information reasonably requested. If Tenant fails or refuses to give a certificate hereunder within the required time frame, then the information on such certificate as submitted by Landlord shall be deemed correct for all purposes and Landlord shall have the right to treat such failure or refusal as a default by Tenant.

32.    FORCE MAJEURE.   With the exception of the obligation of Tenant to pay Rent and all other amounts that may be due from time to time under this Lease, if either party shall be delayed or hindered in or prevented from doing or performing any act or thing required hereunder by reason of any matters beyond the reasonable control of such party, then such party shall not be liable or responsible for any such delays and the doing or performing of such act or thing shall be extended for a period equivalent to the period of such delay. In such event, this Lease and the obligations of both parties to perform and comply with all of the other terms and provisions of this Lease shall in no way be affected, impaired, or excused.

33.    WAIVER OF JURY TRIAL

LANDLORD AND TENANT HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION, ACTION, PROCEEDING OR COUNTERCLAIM BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS LEASE OR THE OBLIGATIONS EVIDENCED HEREBY, THE RELATIONSHIP OF LANDLORD AND TENANT, TENANT'S USE OF OR OCCUPANCY OF THE PREMISES, ANY CLAIM OF INJURY OR DAMAGE, OR ANY EMERGENCY OR OTHER STATUTORY REMEDY OR ANY OTHER DOCUMENT OR INSTRUMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT TO EACH OF LANDLORD AND TENANT IN ENTERING INTO THIS LEASE.

34.    SUBLEASE. In the event the Lease is a sublease to an underlying lease agreement, as described in the Lease, then with respect to the Demised Premises, except for the Term of the Lease and the Rental Rate/Installment, Tenant shall perform all of the obligations of tenant/lessee under the underlying lease agreement.

35.    APPROVALS. Neither this Lease nor any amendment or modification hereto shall be effective or legally binding upon Landlord, or any officer, director, employee or agent thereof, unless and until it has been reviewed and approved in writing by a President of Landlord's owner and by Landlord's Legal Counsel.

36.    RULES AND REGULATIONS. Tenant shall faithfully observe and comply strictly with the following rules and regulations, adopted for the safety, care and cleanliness of the Building or the preservation of good order therein. Landlord shall not be liable to Tenant for a violation of such rules and regulations, or for the breach of any covenant or condition in a lease by any other tenant in the Building. Landlord may, from time to time and upon notice to Tenant, adopt additional or substitute rules and regulations of the Building.

A.    Conduct. Tenant shall not conduct its practice or business, or advertise such business, profession or activities of Tenant conducted in the Premises in any manner which violates local, state or federal laws or regulations.

B.    Hallways and Stairways. Tenant shall not obstruct or use for storage, or for any purpose other than ingress and egress, the sidewalks, entrance, passages, courts, corridors, vestibules, halls, elevators and stairways of the Building.

C.    Nuisances. Tenant shall not make or permit any noise, odor or act that is objectionable to other occupants of the Building to emanate from the Premises, and shall not create or maintain a nuisance thereon.

Form No. 0103 Rev. by Legal Dept as of 6/26/06.



Aug. 1. 2006 10:10AM    CV STADLER                                    No. 7112   P. 9

D.    Musical Instruments, Etc.  Tenant shall not install or operate any phonograph, musical instrument, radio receiver or similar device in the Building in such manner as to disturb or annoy other tenants of the Building or the neighborhood.  Tenant shall not install any antennae, aerial wires or other equipment outside the Building without the prior written approval of Landlord.

E.    Locks.  No additional locks or bolts of any kind shall be placed upon any of the doors or windows by Tenant, nor shall any changes be made in existing locks or the mechanism thereof.  Tenant must upon the termination of its tenancy restore to Landlord all keys to the Premises and toilet rooms either furnished to or otherwise produced by Tenant, and in the event of loss of any keys so furnished, Tenant shall pay to Lessor the cost thereof.

F.    Obstructing Light, Damage.  The doors, window glass, lights and skylights that reflect or admit light into the halls or other places of the Building shall not be covered or obstructed.  The toilets and urinals shall not be used for any purpose other than those for which they were intended and constructed, and no rubbish, newspapers or other substance of any kind shall be thrown into them.  Waste and excessive or unusual use of water shall not be allowed.  Tenant shall not mark, drive nails, screw or drill into, paint, nor in any way deface the walls, ceilings, partitions, floors, wood, stone or iron work.  The expense of any breakage, stoppage or damage resulting from a violation of this rule by Tenant shall be borne by Tenant.  Tenant shall be permitted to hang pictures on office walls, but it must be done in a workmanlike manner and in such a way as not to damage or deface such walls.

G.    Wiring.  Electrical wiring of every kind shall be introduced and connected only as directed by Landlord, and no boring nor cutting of wires will be allowed except with the consent of Landlord.  The location of the telephone, call boxes, etc., shall be subject to the approval of Landlord.

H.    Equipment, Moving, Furniture, Etc.  Landlord shall approve the weight, size and position of all fixtures, equipment and other property brought into the Building, and the times of moving which must be done under the supervision of Landlord.  Landlord will not be responsible for any loss of or damage to any such equipment or property from any cause, and all damage done in the Building by moving or maintaining any such property shall be repaired at the expense of Tenant.  All equipment shall be installed as required by law.

I.    Requirements of Tenant.  The requirements of Tenant will be attended to only upon application at the office of Landlord.  Employees shall not perform any work nor do anything outside their regular duties unless under special instructions from Landlord.  No employees shall admit any person, Tenant or otherwise, to any other office without instruction from the office of Landlord.  All janitorial services personnel, guards or any outside contractors employed by Tenant shall be subject to the regulations and control of Landlord, but shall not act as an agent or servant of Landlord.

J.    Medical and Hazardous Wastes.  Tenant shall comply with all policies established from time to time by Landlord regarding the storage and disposal of hazardous substances, wastes and materials, and medical, special or infectious wastes.

K.    Access to Building.  Any person entering or leaving the Building may be questioned by Building security regarding his/her business in the Building and may be required to sign in and out.  Anyone who fails to provide a satisfactory reason for being in the Building may be excluded.

L.    Vehicles, Animals, Refuse.  Tenant shall not allow anything to be placed on the outside window ledges of the Premises or to be thrown out of the windows of the Building.  No bicycle or other vehicle, and no animal, except for service animal, shall be brought into the offices, halls, corridors, elevators or any other parts of the Building by Tenant or the agents, employees or invitees of Tenant, and Tenant shall not place or permit to be placed any obstruction or refuse in any public part of the Building.

M.    Equipment Defects.  Tenant shall give Landlord prompt notice of any accidents to or defects in the water pipes, gas pipes, electric lights and fixtures, heating apparatus, or any other service equipment.

N.    Parking.  Unless otherwise specified by Landlord, Tenant and its employees may park automobiles only in spaces designated by Landlord for such purpose and shall in no event

Form No. 0103 Rev. by Legal Dept as of 6/26/06.



park in spaces reserved for public parking. Tenant agrees that Landlord assumes no responsibility of any kind whatsoever in reference to such automobile parking area or the use thereof by Tenant or its agents or employees.

O.     <u>Conservation and Security</u>. Tenant will see that all windows and doors are securely locked, and that all faucets and electric light switches are turned off before leaving the Building.

P.     <u>Signage</u>. Tenant shall not place any sign upon the Demised Premises or the Building without Landlord's prior written consent.

Form No. 0103 Rev. by Legal Dept as of 6/26/06.

9



## MEDICAL OFFICE SPACE LEASE

Date: __June 29, 2006__

Name and Address of Building:
__44 Medical Arts Court, Suite 2__
__Greenville, AL 36037__

Tenant: __Dolores Victoria, M.D.__

Leased Premises Floor/Suite Description:
__Suite 2__

Landlord: __Greenville Hospital Corporation__
__d/b/a LV Stabler Memorial Hospital__
Address:
__29 LV Stabler Drive__
__Greenville, AL 36037__

**EXHIBIT**

__A__

Number of Square Feet: __1250__

Term of Lease: __2 years__
Renewal Terms: _____ __2 year term_____ (up to one renewal terms of two (2) years by written agreement of the parties at least three months before expiration of term).

Commencement Date of Lease Term: June 1, 2006          Security Deposit: _____-0-_____

**Termination:**  Either party may terminate this lease with or without cause upon thirty (30) days prior to written notice to the other party.  However, in the event this lease is terminated for any reason prior to the expiration of one (1) year from the commencement date, the parties shall not enter into another lease until after the expiration of the first year of the initial term.

Annual Rental Rate:$ __11,250__          Monthly Rental Installments: $ __937.50__
Rent Increase **(check one)** ☐ 3% per year ☐ 4% per year          ($_____9.00_____/square foot/year)

_____ Check here if Tenant is required to maintain membership in Hospital Medical Staff

**Utilities (check any that apply):**
X _____ Utilities (electricity, water and sewer and garbage services are included in the Monthly Rental
X _____ Housekeeping services will be provided by the Landlord including trash removal
X _____ The following utilities are not included in the Monthly Rental _____
_____ Tenant is solely responsible for the payment of separately metered utilities
_____ Tenant shall pay to Landlord a share of separately metered utilities based on Tenant's
proportionate share of the metered square footage

**Improvements (check any that apply): Not Applicable**
_____ First time Standard Build Out - Base Tenant Build Out Allowance:  $_____ per sq. ft.
_____ Existing Space (New Tenant or Renewal) - Tenant Improvement Allowance: $___ per
sq. ft. per year
_____ Landlord to build out space per Landlord's Work Letter attached hereto as Exhibit B

This Medical Office Space Lease is a sublease pursuant to that certain (describe underlying lease agreement):_____not applicable_____

Attached hereto and incorporated herein for all purposes is "Exhibit A -- Medical Office Space Lease Standard Terms and Conditions" to which reference is made for the balance of the terms of this Medical Office Space Lease, including without limitation adjustments to Rental Rate/Installments.

Attached hereto and incorporated herein for all purposes are the following additional exhibits:  Not applicable

TENANT:

_____
Date: __7 - 19 - 06__

REVIEWED AND APPROVED:

_____
Facility Chief Executive Officer
Date: __7-19-06__

LANDLORD:

By: _____
President, Hospital Corporation
Date: __7-5-06__

APPROVED AS TO FORM:

_____
In-house Counsel, Hospital Corporation
Date: __6.30.06__

Form No. 0103 Rev. by Legal Dept as of 6/26/06.

1


FINAL

*MOB Lease – Hospital-Landlord*

## EXHIBIT A
## MEDICAL OFFICE SPACE LEASE STANDARD TERMS AND CONDITIONS

In consideration of the mutual covenants and representations set forth in the Medical Office Space Lease (the "Lease") and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties do hereby agree as follows. The capitalized terms used in this Exhibit A shall have the meaning assigned to such terms in the Medical Office Space Lease, unless another meaning is assigned to such terms in this Exhibit A.

1.      DEMISE.  Upon the terms and conditions hereinafter set forth, Landlord does hereby lease to Tenant, and Tenant does hereby lease from Landlord, the Demised Premises for the Term of the Lease.

2.      RENT.  The Monthly Rental Installments for the Lease of the Demised Premises shall be payable in advance on the first day of each and every month during the term hereof. During the term of this Lease, the Monthly Rental Installments shall be increased, as of each anniversary date of the Commencement Date, by the percentage amount set forth in the Medical Office Space Lease.  It is expressly understood and agreed that Landlord shall apply all payments from Tenant hereunder to the amounts due hereunder by Tenant which have been outstanding for the longest period of time first.

3.      RENTAL RATE ADJUSTMENT. Landlord shall adjust the Annual Rental Rate and the monthly Rental Installments to the then fair market rental rate for the Demised Premises, upon the termination of an existing term of the Lease. Landlord will give notice of such adjustment to Tenant 90 days prior to expiration date of current Lease. Without limitation, Landlord's adjustment of Rental Rate and the monthly installments will be based on the fair market rental rate, utility costs and real estate taxes as well as any local, state or federal income taxes, which may become payable by the Landlord. If a rent escalation percentage has been checked on the cover page of this Lease, the adjustment under this section shall not exceed the amount checked on the cover page of this Lease

4.      LANDLORD'S OBLIGATIONS.

    A.  Utilities:
        If utilities are included in the Monthly Rental Installments, then Landlord shall, at Landlord's expense, furnish utilities to the Demised Premises, including electrical, water and sewer, heat, ventilation, and air conditioning, however, Tenant shall be responsible for the payment of telephone and data services.

    B.  Maintenance
        Landlord shall maintain, repair and replace all exterior walls and other features of the exterior including but not limited to the roof and all mechanical systems, including but not limited to air conditioning, heating, plumbing, wiring and piping.

    C.  Insurance
        Landlord shall maintain fire and extended coverage insurance on the building in which the Demised Premises are located, in an amount not less than the full replacement cost of the building.

    D.  Taxes
        Landlord shall be responsible for payment of all real estate taxes assessed against the building or property, as well as all applicable local, state and federal income taxes which are or may be payable by Landlord.

    E.  Build Out By Landlord
        If checked on the cover sheet hereof, Landlord will be responsible for standard build out for office space per Attachment "B"   (attached hereto and incorporated herein by reference).

5.      TENANT'S OBLIGATIONS.  In addition to the said rent to be paid, Tenant also agrees to pay directly during the term of the Lease, commencing on the Commencement Date, the following items of expense as the same become due and payable:

    A.  Taxes.
        All ad valorem or other property taxes, personal and intangible taxes payable in connection with the use, occupancy or conduct of business on any part of the Demised Premises, including but not limited to personal property, business, privilege, license, excise, sales, use

Form No. 0103 Rev. by Legal Dept as of 6/26/06.



and occupation taxes (but excluding local, state and federal income taxes payable by Landlord). Tenant shall be responsible for all taxes which are assessed against their stock and inventory, tangible personal property or their business and/or business operations.

    B.   Maintenance and Modifications.
    The following charges for maintaining and operating the Demised Premises in good repair and operating condition:

        1) Tenant shall, at its own cost and expense, keep the interior clean, maintaining suitable receptacles for trash and refuse, and removing from the interior all accumulations of trash and refuse.

        2) Tenant shall service, keep and maintain the interior, including fixtures, doors, interior walls and appurtenances in good condition, repair and working order.

        3) Tenant agrees to deliver to Landlord, upon the expiration date or upon earlier termination in accordance with the provisions hereof, physical possession of the Demised Premises in good condition, reasonable wear and tear and damage by fire or other casualty excepted.

        4) If the Building is separately metered for certain utilities, such as electricity, gas, water, and sewer, Tenant shall be responsible for the payment of all such separately metered utilities based on Tenant's proportionate share of the metered square-footage.

        5) If utilities are not separately metered, Tenant shall be responsible for a pro-rata share of Building utility expense, based upon the ratio of the square footage of the Demised Premises to the square footage of the Building. The utility expense shall be calculated, and the Utility Base Rate shall be adjusted, annually.

        6) Tenant shall be responsible for all service costs and installations of all telephone or data services and Landlord shall have no responsibility or liability with respect thereto or the failure of operation of any such services.

6.    IMPROVEMENTS.   Tenant shall not make any structural changes, alterations, additions or improvements to the Demised Premises without the written consent of Landlord, which shall not be unreasonably withheld. Landlord shall not be responsible for, either in the performance or payment, any improvements to the Demised Premises unless a "Landlord's Work Letter" is attached to the Lease.

7.    USE OF DEMISED PREMISES. Tenant shall use the Demised Premises for the purpose of the licensed practice of medicine and the medical treatment of Tenant's patients and business purposes ancillary thereto and for no other purpose. Without limiting the foregoing, unless approved by Landlord in advance and in writing, Tenant shall not use the Demised Premises for the operation of a "commercial ancillary medical care facility" which shall include, without limitation, a clinical laboratory, pharmacy, ambulatory surgery center, birthing center, diagnostic, including radiology, facility, and respiratory, physical, speech, or occupational therapy services. The use of diagnostic equipment (such as x-ray) and the performance of minor surgical procedures under local anesthesia, that is within the scope of Tenant's medical practice and pertaining to the treatment and care of Tenant's own patients, shall not be considered to violate the terms of this paragraph.

8.    ASSIGNMENT;SUBLETTING.  Tenant shall not, without the prior consent of Landlord, which consent may be withheld in Landlord's sole discretion, sublease, license or assign its interest under the Lease to any other person or entity. Assignment or subletting without the prior consent of Landlord, including assignment by operation of the law, shall constitute an event of default. In no event, whether with or without consent of Landlord, shall an assignment or lease relieve Tenant of liability under the terms, conditions and provisions of this Lease.

9.    INSURANCE.

A.    The following insurance coverage on the Demised Premises will be maintained by Tenant at all times during the term of the Lease. Comprehensive general liability insurance coverage on the Demised Premises in the sum of One Million Dollars ($1,000,000) for any single claim and Three Million Dollars ($3,000,000) for claims arising out of a single accident or occurrence against liability for bodily injury and death resulting therefrom, and insurance coverage in the sum of One Hundred Thousand Dollars ($100,000.00) per occurrence against liability for damage to property, arising out of the maintenance or use of the Demised Premises by Tenant. Casualty insurance insuring Tenant against loss or damage to its

Form No. 0103 Rev. by Legal Dept as of 6/26/06.



equipment and other pe...nal property in the Demised Premises by fire a...ll other casualties usually covered under an "all risk" policy of casualty insurance. The policies described in this section shall name both Tenant and Landlord as named insureds. Annually, Tenant shall furnish Landlord with a certificate of such coverage which shall provided that thirty (30) days' advance written notice be given to Landlord in the event of cancellation or material change in the insurance policy.

B.      Tenant shall not do or permit any act which will increase premiums for any casualty, fire, liability or other insurance maintained by Landlord on the Building or any other property therein or which shall render such insurance void or voidable

10.     DAMAGE TO PROPERTY/INJURY TO PERSON. Tenant shall and hereby does indemnify and hold Landlord harmless from and against any and all claims to the extent they arise from (i) Tenant's use of the Demised Premises or the conduct of its business, (ii) any activity, work or thing done, permitted or suffered by the Tenant in or about the Demised Premises, (iii) any breach or default in the performance of any obligation on Tenant's part to be performed under the terms of the Lease, or (iv) any act of negligence of Tenant or his agents or employees.

11.     ENVIRONMENTAL PROVISIONS.
A.      Following due inquiry, Landlord represents that to the best of its knowledge there are no hazardous substances or hazardous wastes as defined by the Comprehensive Environmental Response and Liability Act or any hazardous wastes as defined by the Resource Conservation and Recovery Act, or any PCB's, radon or asbestos containing materials, located on, in or about the Demised Premises to be occupied by Tenant. Landlord agrees that should any hazardous wastes, hazardous substances, PCB's, radon or asbestos containing materials be determined to be present as a result of the acts or missions or negligence of any person or legal entity, other than Tenant, Landlord shall indemnify, hold harmless and defend Tenant from all claims, damages, expenses or litigation resulting from the presence of such materials.

B       Tenant warrants that its use of the Premises and the materials used in the conduct of its business operations at and on the Premises, or the manner of use, and its waste, effluent and vapors will not violate any laws, ordinances, rules or regulations relating to or affecting the environment or dealing with environmental matters, as hereinafter defined, hazardous substances of any kind or nature, whether imposed or enforced by any state, local or federal agency, and that Tenant shall alter its use of the Premises to comply with such laws, ordinances, rules or regulations if required to do so by any such governmental agency. Tenant shall not use the Premises, maintain them nor allow use of the Premises in any manner constituting a violation of any ordinance, statute, rule, regulation or order of any governmental authority, including, but not limited to, the ADA, zoning ordinances, or environmental rules, regulations and laws, nor will the Tenant maintain or permit any nuisance to occur or to be maintained on the Premises.

12.     EARLY TERMINATION AS A RESULT OF THE DEATH OR DISABILITY OF A SOLE PRACTITIONER; OTHER VACATION OR ABANDONMENT. If Tenant is a sole practitioner and dies or becomes disabled (defined for purposes of the Lease as any physical or mental condition that prevents or is reasonably expected to prevent such physician from practicing medicine for more than ninety (90) days), then either party shall have the right to terminate the Lease prior to the expiration date by giving the other party not less than thirty (30) days prior written notice. Except as expressly provided in the preceding sentence, any other vacation of the Demised Premises for more than thirty (30) days or any abandonment of the Demised Premises by Tenant will be considered a material default under the Lease.

13.     DEFAULT. Tenant shall be in default of the terms of the Lease if Tenant shall fail to make a payment of any rent or additional rent, and such rent or additional rent is not paid within ten (10) days of written notice by Landlord to Tenant of non-payment of same, or in the event that Tenant shall otherwise commit an act of default under the terms hereof, and shall not cure such default within thirty (30) days of written notice by Landlord to Tenant of such default. In the event of default:

        A.      Landlord may continue the Lease in full force and effect and shall have the right to collect rent when due. During the term Tenant is in default, Landlord may re-enter the Demised Premises with legal process and relet same, or any part thereof, to third parties for Tenant's account. Tenant shall be liable for all reasonable costs Landlord incurred for reletting the Demised Premises, including without limitation broker's commissions, expenses associated with repairing and / or remodeling the Demised Premises in order to return the Demised Premises to the same condition as when received by Tenant from Landlord—and similar costs. Reletting can be done for a period shorter or longer than the remaining term of the Lease. Tenant shall pay to Landlord the rent due under the Lease on the date such rent is due, less the rent Landlord receives during any reletting. Landlord shall make its best efforts to relet the Demised Premises at a reasonable price. Under this paragraph, Tenant's obligations shall not exceed the total rent due for the remainder of the term.

Form No. 0103 Rev. by Legal Dept as of 6/26/06.

4



B.   Landlord may terminate the Lease pursuant to the terms of this Section 13. Upon termination, Landlord shall have the right to collect an amount equal to all expenses, if any, including reasonable attorneys' fees, incurred by Landlord in recovering possession of the Demised Premises and all reasonable costs and charges for the care of the Demised Premises while vacated by Tenant.

C.   Should any of these remedies or any portion thereof not be permitted by the laws of the state where the Building is located, then such remedy or portion thereof shall be considered deleted and unenforceable, and the remaining remedies or portions thereof shall be and remain in full force and effect, and Landlord may avail itself of these as well as any other remedies or damages allowed by law.

14.   RIGHT OF ACCESS.   Landlord and its agents shall have reasonable access to the Demised Premises during all reasonable business hours for the purpose of examining same to ascertain if they are in good repair and to make reasonable repairs which Landlord may be required to make hereunder.

15.   END OF TERM.   At the termination of the Lease, Tenant shall surrender its interest in the Demised Premises to Landlord in as good condition and repair as reasonable use thereof will permit, reasonable wear and tear excepted, and will leave the Demised Premises broom clean. Tenant shall have the right, prior to said termination, to remove any equipment, furniture, trade fixtures or other personal property in the Demised Premises owned by Tenant, provided that Tenant promptly repairs any damage to the Demised Premises caused by such removal. In the event of holding over by Tenant after the expiration or termination of the Lease, Tenant shall pay rent at the then-current rate on a monthly basis. Any holding over with consent of Landlord in writing shall thereafter constitute a Lease for month-to-month.

16.   ATTORNEYS' FEES.   In the event that suit is brought by either party against the other for breach or default under the terms of the Lease, the prevailing party shall be entitled to reasonable attorneys' fees, expenses (including expert witness fees) and court costs equal to the sum established by the court.

17.   HEADINGS.   The article captions contained in the Lease are for the convenience of the parties only and shall not be considered in the construction or interpretation of any provision hereof.

18.   ENTIRE AGREEMENT.   The Lease contains the entire agreement between the parties and supersedes any and all other prior oral and written agreements between the parties regarding the subject matter contained herein and may not be changed or terminated orally but only by agreement in writing and signed by all parties.

19.   DAMAGE OR DESTRUCTION.   If the Demised Premises are damaged by fire or other casualty, the damage shall be repaired by and at the expense of Landlord (excluding any equipment which is owned by Tenant), provided that such repairs can, in Landlord's opinion, be made within sixty (60) days after the occurrence of such damage. Landlord shall notify Tenant within fifteen (15) days of the event of casualty of its determination. Until such repairs are completed, the rent shall be abated in proportion to the part of the Demised Premises rendered unusable, but there shall be no abatement of rent for a period equal to one (1) day or less. If such repairs cannot, in Landlord's opinion, be made within sixty (60) days and Landlord nonetheless chooses to repair, then Tenant may, at its option, continue as Tenant under the Lease until such repairs are completed, during which time all rent shall abate, or Tenant may terminate the Lease. A total destruction of the building in which the Demised Premises are located shall automatically terminate the Lease. Total destruction of the building shall be defined as damage greater than fifty percent (50%) of the then replacement value thereof.

20.   EMINENT DOMAIN.   If the whole of the Demised Premises or so much thereof as to render the balance unusable by Tenant shall be taken under power of eminent domain, the Lease shall automatically terminate as of the effective date of the taking. In the event of a partial taking which does not result in a termination of the Lease, the rent reserved hereunder shall remain unaffected. Landlord may, without any obligation or liability to Tenant, stipulate with any condemning authority for a judgment of condemnation without the necessity of a formal suit or judgment of condemnation, and the date of taking under this clause shall then be deemed the date agreed to under the terms of said agreement for stipulation and the Lease shall terminate as of the stipulated date.

21.   WAIVER.   No waiver by either party shall be deemed to be a waiver of any other provision hereof or of any subsequent breach by either party of the same or any other provision. Landlord 's consent to or approval of any act by Tenant requiring Landlord's consent or approval shall not be deemed to render unnecessary the obtaining of Landlord's consent to or approval of any subsequent act of Tenant, whether or not similar to the act so consented to or approved.

Form No. 0103 Rev. by Legal Dept as of 6/26/06.



22.    NOTICES. Any notice required or permitted to be given hereunder may be given by mail and shall be sufficiently given if personally served or sent by registered or certified mail or by special courier, addressed to the relevant party at the addresses specified in the Lease (notice to Tenant shall be given at the Demised Premises. For any notice given to Landlord, a copy shall be provided to the Landlord's counsel as follows: General Counsel, Legal Department, P.O. Box 217, Brentwood, Tennessee 37024-0217. **From and after December 15, 2006:** Community Health Systems, Attn: Legal Department, 4000 Meridian Blvd., Franklin, TN 37067 or Community Health Systems, Attn: Legal Department, P.O. Box 689020, Franklin, TN 37068.

23.    BINDING EFFECT. The Lease shall be binding upon and inure to the benefit of the parties hereto, their heirs, successors, assigns, executors and administrators. Nothing in this article shall be deemed to amend the provisions herein concerning assignment and subletting.

24.    APPLICABLE LAW. The laws of the state where the Building is located shall be employed in and govern the interpretation of all of the covenants, terms and conditions of the Lease.

25.    NO PARTNERSHIP RELATIONSHIP. Notwithstanding any agreement herein contained, Landlord shall not be construed or held to be a partner or associate of Tenant in the conduct of its business, it being expressly understood and agreed that the relationship between the parties is and at all times shall remain that of Landlord and Tenant.

26.    NO REQUIREMENT TO REFER. The parties expressly agree that nothing contained in the Lease shall require Tenant or any physician or other referral source to refer or admit any patients to, or order any goods or services from Landlord or any affiliate. Notwithstanding any unanticipated effect of any provision of this Agreement, neither party will knowingly or intentionally conduct himself in such a manner as to violate the prohibition against fraud and abuse in connection with the Medicare and Medicaid programs (42 USC Section 1320a-7b). Both parties represent to the other that the Rentals provided for in the Lease are at fair market value rates and do not take into account the value or volume of any referrals or other business generated between the parties.    Both as a material condition to this Lease and as a continuing representation and warranty for the duration of this Lease, Tenant represents and warrants that neither it nor any of its owners, officers, directors, employees, agents, subcontractors etc have been suspended, excluded, or debarred from any government payor program.

27.    QUIET ENJOYMENT. Landlord warrants and shall defend Tenant in the quiet enjoyment and possession of the Demised Premises during the term and any extension or renewal thereof.

28.    OPTION TO RENEW. Provided that Tenant is not then in default hereunder, upon the expiration of the term hereof, Tenant shall have the option to renew the Lease for the additional term(s), if any, set forth on the cover page of this Lease, upon the same terms and conditions as this Lease except that the rentals payable during the renewal term shall be adjusted to fair market rental as set forth herein.

29.    SUBORDINATION, ATTORNMENT AND NON-DISTURBANCE.

A.    Tenant agrees that the Lease and all rights of Tenant hereunder are and shall be subject and subordinate to any ground or underlying lease which may now or hereafter be in effect regarding the Building or any component thereof, to any mortgage now or hereafter encumbering the Demised Premises or the Building or any component thereof, to all advances made or hereafter to be made upon the security of such mortgage, to all amendments, modifications, renewals, consolidations, extensions and restatements of such mortgage, and to any replacements and substitutions for such mortgage. The terms of this provision shall be self-operative and no further instrument of subordination shall be required. Tenant, however, upon request of any party in interest, shall execute promptly such instrument or certificates as may be reasonably required to carry out the intent of this provision.

B.    In the event any proceedings are brought for the foreclosure of, or in the event of exercise of the power of sale under, or in the event of a deed in lieu of foreclosure with respect to any mortgage covering the Demised Premises or the Building, or in the event of termination of any Lease under which Landlord may hold title, Tenant shall, at the option of transferee, attorn to such transferee and shall recognize and be bound and obligated hereunder to such person as the Landlord under the Lease. Tenant agrees to execute any attornment agreement not in conflict with this provision.

Form No. 0103 Rev. by Legal Dept as of 6/26/06.



C.    Notwithst...ng anything contained herein to the contrary, so ... as Tenant is not in default in the payment of Rentals or other charges, or in the performance of any of the other terms, covenants or conditions of the Lease, mortgagee or such person shall not disturb Tenant in its occupancy of the Demised Premises during the original or any renewal term of the Lease notwithstanding any event or proceedings described in this section.

30.    MASTER CONTRACT LIST.  This contract is identified on a master list of contracts maintained on a Lotus Notes server.

31.    ESTOPPEL CERTIFICATE.    Within thirty (30) days after written request from Landlord, Tenant shall deliver an executed statement addressed to Landlord certifying (if such be the case) that this Lease is in full force and effect, that Tenant has commenced the payment of rent, and that there are no defenses or offsets to this Lease claimed by Tenant, as well as any other information reasonably requested.  If Tenant fails or refuses to give a certificate hereunder within the required time frame, then the information on such certificate as submitted by Landlord shall be deemed correct for all purposes and Landlord shall have the right to treat such failure or refusal as a default by Tenant.

32.    FORCE MAJEURE.    With the exception of the obligation of Tenant to pay Rent and all other amounts that may be due from time to time under this Lease, if either party shall be delayed or hindered in or prevented from doing or performing any act or thing required hereunder by reason of any matters beyond the reasonable control of such party, then such party shall not be liable or responsible for any such delays and the doing or performing of such act or thing shall be extended for a period equivalent to the period of such delay.  In such event, this Lease and the obligations of both parties to perform and comply with all of the other terms and provisions of this Lease shall in no way be affected, impaired, or excused.

33.    WAIVER OF JURY TRIAL

LANDLORD AND TENANT HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION, ACTION, PROCEEDING OR COUNTERCLAIM BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS LEASE OR THE OBLIGATIONS EVIDENCED HEREBY, THE RELATIONSHIP OF LANDLORD AND TENANT, TENANT'S USE OF OR OCCUPANCY OF THE PREMISES, ANY CLAIM OF INJURY OR DAMAGE, OR ANY EMERGENCY OR OTHER STATUTORY REMEDY OR ANY OTHER DOCUMENT OR INSTRUMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY.  THIS PROVISION IS A MATERIAL INDUCEMENT TO EACH OF LANDLORD AND TENANT IN ENTERING INTO THIS LEASE.

34.    SUBLEASE.  In the event the Lease is a sublease to an underlying lease agreement, as described in the Lease, then with respect to the Demised Premises, except for the Term of the Lease and the Rental Rate/Installment, Tenant shall perform all of the obligations of tenant/lessee under the underlying lease agreement.

35.    APPROVALS.  Neither this Lease nor any amendment or modification hereto shall be effective or legally binding upon Landlord, or any officer, director, employee or agent thereof, unless and until it has been reviewed and approved in writing by a President of Landlord's owner and by Landlord's Legal Counsel.

36.    RULES AND REGULATIONS.  Tenant shall faithfully observe and comply strictly with the following rules and regulations, adopted for the safety, care and cleanliness of the Building or the preservation of good order therein.  Landlord shall not be liable to Tenant for a violation of such rules and regulations, or for the breach of any covenant or condition in a lease by any other tenant in the Building.  Landlord may, from time to time and upon notice to Tenant, adopt additional or substitute rules and regulations of the Building.

A.    Conduct.  Tenant shall not conduct its practice or business, or advertise such business, profession or activities of Tenant conducted in the Premises in any manner which violates local, state or federal laws or regulations.

B.    Hallways and Stairways.  Tenant shall not obstruct or use for storage, or for any purpose other than ingress and egress, the sidewalks, entrance, passages, courts, corridors, vestibules, halls, elevators and stairways of the Building.

C.    Nuisances.  Tenant shall not make or permit any noise, odor or act that is objectionable to other occupants of the Building to emanate from the Premises, and shall not create or maintain a nuisance thereon.



Aug. 1. 2006 10:15AM    CV STADLER                                              No. 7772   P. 9

D.  Musical . .uments, Etc.  Tenant shall not install or oper.   any phonograph, musical instrument, radio receiver or similar device in the Building in such manner as to disturb or annoy other tenants of the Building or the neighborhood.  Tenant shall not install any antennae, aerial wires or other equipment outside the Building without the prior written approval of Landlord.

E.  Locks.  No additional locks or bolts of any kind shall be placed upon any of the doors or windows by Tenant, nor shall any changes be made in existing locks or the mechanism thereof.  Tenant must upon the termination of its tenancy restore to Landlord all keys to the Premises and toilet rooms either furnished to or otherwise produced by Tenant, and in the event of loss of any keys so furnished, Tenant shall pay to Lessor the cost thereof.

F.  Obstructing Light, Damage.  The doors, window glass, lights and skylights that reflect or admit light into the halls or other places of the Building shall not be covered or obstructed.  The toilets and urinals shall not be used for any purpose other than those for which they were intended and constructed, and no rubbish, newspapers or other substance of any kind shall be thrown into them.  Waste and excessive or unusual use of water shall not be allowed.  Tenant shall not mark, drive nails, screw or drill into, paint, nor in any way deface the walls, ceilings, partitions, floors, wood, stone or iron work.  The expense of any breakage, stoppage or damage resulting from a violation of this rule by Tenant shall be borne by Tenant.  Tenant shall be permitted to hang pictures on office walls, but it must be done in a workmanlike manner and in such a way as not to damage or deface such walls.

G.  Wiring.  Electrical wiring of every kind shall be introduced and connected only as directed by Landlord, and no boring nor cutting of wires will be allowed except with the consent of Landlord.  The location of the telephone, call boxes, etc., shall be subject to the approval of Landlord.

H.  Equipment, Moving, Furniture, Etc.  Landlord shall approve the weight, size and position of all fixtures, equipment and other property brought into the Building, and the times of moving which must be done under the supervision of Landlord.  Landlord will not be responsible for any loss of or damage to any such equipment or property from any cause, and all damage done in the Building by moving or maintaining any such property shall be repaired at the expense of Tenant.  All equipment shall be installed as required by law.

I.  Requirements of Tenant.  The requirements of Tenant will be attended to only upon application at the office of Landlord.  Employees shall not perform any work nor do anything outside their regular duties unless under special instructions from Landlord.  No employees shall admit any person, Tenant or otherwise, to any other office without instruction from the office of Landlord.  All janitorial services personnel, guards or any outside contractors employed by Tenant shall be subject to the regulations and control of Landlord, but shall not act as an agent or servant of Landlord.

J.  Medical and Hazardous Wastes.  Tenant shall comply with all policies established from time to time by Landlord regarding the storage and disposal of hazardous substances, wastes and materials, and medical, special or infectious wastes.

K.  Access to Building.  Any person entering or leaving the Building may be questioned by Building security regarding his/her business in the Building and may be required to sign in and out.  Anyone who fails to provide a satisfactory reason for being in the Building may be excluded.

L.  Vehicles, Animals, Refuse.  Tenant shall not allow anything to be placed on the outside window ledges of the Premises or to be thrown out of the windows of the Building.  No bicycle or other vehicle, and no animal, except for service animal, shall be brought into the offices, halls, corridors, elevators or any other parts of the Building by Tenant or the agents, employees or invitees of Tenant, and Tenant shall not place or permit to be placed any obstruction or refuse in any public part of the Building.

M.  Equipment Defects.  Tenant shall give Landlord prompt notice of any accidents to or defects in the water pipes, gas pipes, electric lights and fixtures, heating apparatus, or any other service equipment.

N.  Parking.  Unless otherwise specified by Landlord, Tenant and its employees may park automobiles only in spaces designated by Landlord for such purpose and shall in no event

Form No. 0103 Rev. by Legal Dept as of 6/26/06.



park in t, ces reserved for public parking. Tenant agree nat Landlord assumes no responsibility of any kind whatsoever in reference to such automobile parking area or the use thereof by Tenant or its agents or employees.

O.    <u>Conservation and Security</u>. Tenant will see that all windows and doors are securely locked, and that all faucets and electric light switches are turned off before leaving the Building.

P.    <u>Signage</u>. Tenant shall not place any sign upon the Demised Premises or the Building without Landlord's prior written consent.

Form No. 0103 Rev. by Legal Dept as of 6/26/06.

FINAL



STATE OF ALABAMA

--VS--

VICTORIA DOLORES V MD
PO BOX 810
GREENVILLE AL  36037-0810



**STATE OF ALABAMA**
# DEPARTMENT OF REVENUE
MONTGOMERY, AL 36132

## NOTICE OF
# FINAL ASSESSMENT

TYPE OF TAX: WITHHOLDING
TAXPAYER IDENTIFICATION #: ███3639
ASSESSMENT #: 0001115044
TAX PERIOD: YEAR 2003

ACCT #:      0000294878
SECTION:     7480
FORM:        W-2

nder provisions of the <u>Code of Alabama 1975</u>, as amended, the Department of Revenue hereby enters final assessment of
e tax liability described:

ADDITIONAL TAX DUE. . . . . . . . . . . . . .$  1,158.45
PENALTY . . . . . . . . . . . . . . . . . . .$    231.66
INTEREST. . . . . . . . . . . . . . . . . . .$    157.51
RETURNED CHECK SERVICE CHARGE . . . . . . . .$       .00
BALANCE NOW DUE . . . . . . . . . . . . . . .$  1,547.62

u have the right to appeal this assessment to either the Administrative Law Division of the Revenue Department or
'cuit Court. The appeal must be made within thirty days of the final assessment date and pursuant to the provisions of
t 92-186. See the reverse side for an additional explanation of your appeal rights.

Entered: ___JUNE 15, 2006___

STATE OF ALABAMA, DEPARTMENT OF REVENUE

By: *Cynthia Underwood*
Assistant Commissioner of Revenue

EP THIS PART FOR YOUR RECORDS
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
TURN THIS PART WITH PAYMENT
TYPE OF TAX: IW
TAX PERIOD ENDING: 12-31-2003
FORM: A-3
SECTION: 7480

ACCT #: 0000294878
TIN: ███3639
ASSESSMENT #: 0001115044
ENTERED: 06-15-2006

TAX, PENALTY, INTEREST. . . . . . . . . . . . . . .$  1,547.62
RETURNED CHECK SERVICE CHARGE . . . . . . . . . . .$       .00

PAY THIS AMOUNT . . . . . . . . . . . . . . . . . .$  1,547.62

VICTORIA DOLORES V MD
PO BOX 810
GREENVILLE AL  36037-0810

MAIL TO: ALABAMA DEPARTMENT OF REVENUE
         WITHHOLDING TAX ASSESSMENT SECTION
         PO BOX 327480
         MONTGOMERY AL  36132-7480

PHONE: (334) 242-1300  FAX: (334) 242-0112

MAY-08-2007  12:02    INTERNAL REVENUE SERVICE

2059125329    P.02

**FORM B10** (Official Form 10)(04/07)

| UNITED STATES BANKRUPTCY COURT    MIDDLE    DISTRICT OF    ALABAMA | **PROOF OF CLAIM** |
|---|---|

| Name of Debtor<br>DELORIS V. VICTORIA | Case Number<br>06-31225 | |
|---|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br><br>Department of the Treasury - Internal Revenue Service | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. | |
|---|---|---|
| Name and address where notices should be sent:<br>Internal Revenue Service<br>INTERNAL REVENUE SERVICE<br>801 TOM MARTIN DRIVE<br>Stop 126<br>BIRMINGHAM, AL 35211<br>Telephone number: (205) 912-5294    Creditor #:1363923 | ☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>☐ Check box if the address differs from the address on the envelope sent to you by the court. | THIS SPACE IS FOR COURT USE ONLY |
| Last four digits of account or other number by which creditor identifies debtor:    see attachment | Check here ☐ replaces<br>if this claim ☐ amends    a previously filed claim, dated: _____ | |

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☒ Taxes
- ☐ Other_____

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Last four digits of your SS #: _____
  Unpaid compensation for services performed
  from _____ to _____
  (date)        (date)

**2. Date debt was incurred:**    see attachment

**3. If court judgment, date obtained:**

**4. Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed. See reverse side for important explanations.

**Unsecured Nonpriority Claim** $    25,448.44
☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**Unsecured Priority Claim.**
☒ Check this box if you have an unsecured claim, all or part of which is entitled to priority.

Amount entitled to priority $  28,440.66

Specify the priority of the claim:
- ☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
- ☐ Wages, salaries, or commissions (up to $10,950,* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
- ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

**Secured Claim.**
☒ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☒ Real Estate    ☒ Motor Vehicle    ☒ Other   see below*

Value of Collateral: $    see below*
* All of debtor(s) right, title and interest to property - 26 U.S.C § 6321.
Amount of arrearage and other charges at time case filed included in secured claim, if any: $    55,536.10

- ☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
- ☒ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
- ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**5. Total Amount of Claim at Time Case Filed:** $

| 25,448.44 | 55,536.10 | 28,440.66 | 109,425.20 |
|---|---|---|---|
| (unsecured) | (secured) | (priority) | (Total) |

☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**6. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

**7. Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. Date-Stamped Copy:** To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

| Date<br>05/08/2007 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br><br>/s/ KENYA L BUFFORD, INSOLVENCY SPECIALIST |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

MAY-08-2007  12:03          INTERNAL REVENUE SERVICE          2059125329     P.03

# Proof of Claim for Internal Revenue Taxes
Department of the Treasury/Internal Revenue Service



**Form 10**
Attachment

| Docket Number |
| 06-31225 |
| Type of Bankruptcy Case |
| Chapter 7A |
| Date of Petition |
| 09/25/2006 |

**In the Matter of:**   DELORIS V. VICTORIA
225 WOODLAND HEIGHTS DR
GREENVILLE, AL 36037

The United States has not identified a right of setoff or counterclaim. However, this determination is based on available data and is not intended to waive any right to setoff against this claim debts owed to this debtor by this or any other federal agency. All rights of setoff are preserved and will be asserted to the extent lawful.

### Secured Claims (Notices of Federal tax lien filed under internal revenue laws before petition date)

| Taxpayer ID Number | Kind of Tax | Tax Period | Date Tax Assessed | Tax Due | Penalty to Petition Date | Interest to Petition Date | Notice of Tax Lien Filed: Date | Office Location |
|---|---|---|---|---|---|---|---|---|
| 72-1357031 | WT-FICA | 12/31/2000 | 12/08/2003 | $9,879.22 | $3,674.49 | $4,287.41 | | |
| 63-1103639 | FUTA | 12/31/2003 | 12/05/2005 | $3,209.29 | $1,908.26 | $539.68 | 04/27/2006 | Butler County |
| 63-1103639 | WT-FICA | 06/30/2004 | 08/22/2005 | $4,500.61 | $3,648.29 | $850.70 | | Right to setoff |
| 63-1103639 | WT-FICA | 09/30/2004 | 08/22/2005 | $4,227.70 | $2,494.78 | $549.33 | 10/28/2005 | Butler County |
| 63-1103639 | WT-FICA | 12/31/2004 | 08/22/2005 | $2,185.67 | $893.70 | $253.12 | 10/28/2005 | Butler County |
| 63-1103639 | FUTA | 12/31/2004 | 12/05/2005 | $2,170.00 | $769.02 | $251.31 | 04/27/2006 | Butler County |
| 63-1103639 | WT-FICA | 03/30/2005 | 12/05/2005 | $4,047.01 | $1,999.04 | $410.30 | | Right to setoff |
| 63-1103639 | WT-FICA | 06/30/2005 | 12/12/2005 | $1,732.41 | $907.33 | $147.43 | 04/27/2006 | Butler County |
| | | | | $31,951.91 | $16,294.91 | $7,289.28 | | |

**Total Amount of Secured Claims:**   $55,536.10

### Unsecured Priority Claims under section 507(a)(8) of the Bankruptcy Code

| Taxpayer ID Number | Kind of Tax | Tax Period | Date Tax Assessed | Tax Due | Interest to Petition Date |
|---|---|---|---|---|---|
| 72-1357031 | WT-FICA | 09/30/1997 | ESTIMATED LIABILITY * | $250.00 | $0.00 |
| 63-1103639 | WT-FICA | 06/30/1999 | 1 UNASSESSED-NO RETURN | $1,454.14 | $860.28 |
| 72-1357031 | MISC. PEN. | 12/31/1999 | 10/28/2002 | $0.00 | $186.24 |
| 72-1357031 | WT-FICA | 06/30/2001 | 1 UNASSESSED-NO RETURN | $1,463.00 | $0.00 |
| 72-1357031 | WT-FICA | 09/30/2001 | 1 UNASSESSED-NO RETURN | $1,463.00 | $0.00 |
| 72-1357031 | WT-FICA | 12/31/2001 | 1 UNASSESSED-NO RETURN | $1,463.00 | $0.00 |
| 72-1357031 | FUTA | 12/31/2001 | 1 UNASSESSED-NO RETURN | $2,500.00 | $0.00 |
| 72-1357031 | FUTA | 12/31/2002 | 1 UNASSESSED-NO RETURN | $2,500.00 | $0.00 |
| 72-1357031 | WT-FICA | 06/30/2003 | 1 UNASSESSED-NO RETURN | $1,463.00 | $0.00 |
| 72-1357031 | FUTA | 12/31/2003 | 1 UNASSESSED-NO RETURN | $2,500.00 | $0.00 |
| 63-1103639 | MISC. PEN. | 12/31/2003 | 10/09/2006 | $0.00 | $0.00 |
| 72-1357031 | FUTA | 12/31/2004 | 1 UNASSESSED-NO RETURN | $2,500.00 | $0.00 |
| XXX-XX-7367 | INCOME | 12/31/2005 | 1 UNASSESSED-NO RETURN | $5,000.00 | $0.00 |

(Continued on Page 2)

1  UNASSESSED TAX LIABILITIES(S) HAVE BEEN LISTED ON THIS CLAIM BECAUSE OUR RECORDS SHOW NO RETURN(S) FILED. WHEN THE DEBTOR(S) FILES THE RETURN OR PROVIDES OTHER INFORMATION AS REQUIRED BY LAW, THE CLAIM WILL BE AMENDED.

# Proof of Claim for
# Internal Revenue Taxes

Department of the Treasury/Internal Revenue Service



**Form 10**
Attachment

**In the Matter of:**  DELORIS V. VICTORIA
225 WOODLAND HEIGHTS DR
GREENVILLE, AL  36037

| Docket Number |
| --- |
| 06-31225 |
| **Type of Bankruptcy Case** |
| Chapter 7A |
| **Date of Petition** |
| 09/25/2006 |

---

**Unsecured Priority Claims** (Continued from Page 1)

| Taxpayer ID Number | Kind of Tax | Tax Period | Date Tax Assessed | Tax Due | Interest to Petition Date |
| --- | --- | --- | --- | --- | --- |
| 72-1357031 | WT-FICA | 06/30/2006 | 1 UNASSESSED-NO RETURN | $2,419.00 | $0.00 |
| 72-1357031 | WT-FICA | 09/30/2006 | 1 UNASSESSED-NO RETURN | $2,419.00 | $0.00 |
| | | | | $27,394.14 | $1,046.52 |

**Total Amount of Unsecured Priority Claims:**  $28,440.66

---

**Unsecured General Claims**

Penalty to date of petition on unsecured priority claims (including interest thereon) . . . . . . . . . $25,448.44

**Total Amount of Unsecured General Claims:**  $25,448.44

---

1 UNASSESSED TAX LIABILITIES(S) HAVE BEEN LISTED ON THIS CLAIM BECAUSE OUR RECORDS SHOW NO RETURN(S) FILED. WHEN THE DEBTOR(S) FILES THE RETURN OR PROVIDES OTHER INFORMATION AS
REQUIRED BY LAW THE CLAIM WILL BE AMENDED.

MAY-08-2007  12:04         INTERNAL REVENUE SERVICE          2059125329     P.05

1872                                              COURT RECORDING DATA

```
-------------------------------------------------+---------------------------------------------
    INTERNAL REVENUE SERVICE          | Lien Recorded    : 10/28/2005 - 11:01AM
FACSIMILE FEDERAL TAX LIEN DOCUMENT   | Recording Number: 49169
                                       | UCC Number       :
                                       | Liber            : 0029
BANKRUPTCY DOCKET: 06-31225@ALM       | Page             : 190
-------------------------------------------------+---------------------------------------------
Area: SMALL BUSINESS/SELF EMPLOYED #5 | IRS Serial Number: 254682005
Lien Unit Phone: (800) 913-6050       |
-------------------------------------------------------------------------------------------------
```

                        This Lien Has Been Filed in Accordance with
                        Internal Revenue Regulation 301.6323(f)-1.

Name of Taxpayer :
  DOLORES V VICTORIA


Residence :
  PO BOX 810
  GREENVILLE, AL 36037-0810

  With respect to each assessment below, unless notice of lien
  is refiled by the date in column(e), this notice shall constitute
  the certificate of release of lien as defined in IRC 6325(a).

| Form (a) | Period (b) | ID Number (c) | Assessed (d) | Refile Deadline (e) | Unpaid Balance (f) |
|----------|------------|---------------|--------------|---------------------|--------------------|
| 941 | 03/31/2004 | 63-1103639 | 08/22/2005 | 09/21/2015 | $5,764.82 |
| 941 | 06/30/2004 | 63-1103639 | 08/22/2005 | 09/21/2015 | $9,048.97 |
| 941 | 09/30/2004 | 63-1103639 | 08/22/2005 | 09/21/2015 | $6,259.20 |
| 941 | 12/31/2004 | 63-1103639 | 08/22/2005 | 09/21/2015 | $2,840.33 |

```
---------------------------------------------------------------------------------
Filed at:    Judge of Probate
             Butler County                        Total |     $23,913.32
             Greenville, AL 36037
---------------------------------------------------------------------------------
This notice was prepared and executed at DALLAS, TX
on this, the 19th day of October, 2005.
---------------------------------------------------------------------------------
Authorizing Official:                  | Title:
  L. F. SANKEY                         | REVENUE OFFICER          28-02-2738
---------------------------------------------------------------------------------
```

MAY-08-2007 12:04    INTERNAL REVENUE SERVICE                2059125329    P.06

| INTERNAL REVENUE SERVICE<br>FACSIMILE FEDERAL TAX LIEN DOCUMENT<br><br>BANKRUPTCY DOCKET: 06-31225@ALM | Lien Recorded  : 04/27/2006 - 12:22PM<br>Recording Number:<br>UCC Number    :<br>Liber         : 29<br>Page          : 511 |
|---|---|
| Area: SMALL BUSINESS/SELF EMPLOYED #5<br>Lien Unit Phone: (800) 913-6050 | IRS Serial Number: 285508506 |

This Lien Has Been Filed in Accordance with
Internal Revenue Regulation 301.6323(f)-1.

Name of Taxpayer :
  DOLORES V VICTORIA


Residence :
  PO BOX 810
  GREENVILLE, AL 36037-0810

With respect to each assessment below, unless notice of lien
is refiled by the date in column(e), this notice shall constitute
the certificate of release of lien as defined in IRC 6325(a).

| Form<br>(a) | Period<br>(b) | ID Number<br>(c) | Assessed<br>(d) | Refile Deadline<br>(e) | Unpaid Balance<br>(f) |
|---|---|---|---|---|---|
| 940 | 12/31/2003 | 63-1103639 | 12/05/2005 | 01/04/2016 | $5,180.87 |
| 940 | 12/31/2004 | 63-1103639 | 12/05/2005 | 01/04/2016 | $2,916.17 |
| 941 | 03/31/2005 | 63-1103639 | 12/05/2005 | 01/04/2016 | $5,917.53 |
| 941 | 06/30/2005 | 63-1103639 | 12/12/2005 | 01/11/2016 | $2,558.85 |

| Filed at:   Judge of Probate<br>Butler County<br>Greenville, AL 36037 | Total | $16,573.42 |
|---|---|---|

This notice was prepared and executed at DALLAS, TX
on this, the 19th day of April, 2006.

| Authorizing Official:<br>  L. F. SANKEY | Title:<br>REVENUE OFFICER         25-02-2738 |
|---|---|

2006/10/16 09:46:12

# Internal Revenue Service
DEPARTMENT OF THE TREASURY ———————— e-services ——————————————————

| This Product Contains Sensitive Taxpayer Data |

## Account Transcript

Request Date: 10-16-2006
Response Date: 10-16-2006
IRS Employee Number: 56LDB
Tracking Number: 100009775164

FORM NUMBER: 1040              TAX PERIOD: Dec. 31, 2002

TAXPAYER IDENTIFICATION NUMBER:              -6110
SPOUSE TAXPAYER IDENTIFICATION NUMBER:       7367

EDGAR T & DELORES V VICTORIA
PO BOX 810
GREENVILLE, AL 36037-0810-101

Any minus sign shown below signifies a credit amount.

ACCOUNT BALANCE:                    0.00
ACCRUED INTEREST:                   0.00    AS OF: Jan. 09, 2006
ACCRUED PENALTY:                    0.00    AS OF: Jan. 09, 2006

ACCOUNT BALANCE
PLUS ACCRUALS:                      0.00

** EXEMPTIONS:                        02    ** FILING
                                            STATUS: Married Filing Joint
** ADJUSTED GROSS INCOME:        244,033.00
** TAXABLE INCOME:               183,449.00
   TAX PER RETURN:                60,730.00
** SE TAXABLE INCOME
TAXPAYER:                         84,900.00
** SE TAXABLE INCOME SPOUSE:          0.00
** TOTAL SELF EMPLOYMENT
TAX:                             14,710.00

** PER RETURN OR AS ADJUSTED

RETURN DUE DATE OR RETURN RECEIVED DATE (WHICHEVER IS LATER): Oct. 31, 2005
PROCESSING DATE: Dec. 26, 2005

| TRANSACTIONS |

2006/10/16 09:46:12

| CODE | EXPLANATION OF TRANSACTION | CYCLE | DATE | AMOUNT |
|------|---------------------------|-------|------|--------|
| 150 | RETURN FILED AND TAX ASSESSED | 20055008 | 12-26-2005 | $60,730.00 |
|  | 09221-330-33536-5 | | | |
| 806 | WITHHOLDING CREDIT | | 04-15-2003 | -$36,567.00 |
| 663 | ESTIMATED TAX/FEDERAL TAX DEPOSIT | | 04-17-2002 | -$25,000.00 |
| 662 | CORRECTION OF ESTIMATED TAX PAYMENT | | 04-17-2002 | $25,000.00 |
|  | 1040 200112 | | | |
| 670 | SUBSEQUENT PAYMENT | | 04-16-2003 | -$25,000.00 |
| 460 | EXTENSION OF TIME TO FILE | | 04-15-2003 | $0.00 |
|  | EXT. DATE 08-15-2003 | | | |
| 460 | EXTENSION OF TIME TO FILE | | 08-15-2003 | $0.00 |
|  | EXT. DATE 10-15-2003 | | | |
| 826 | OVERPAYMENT CREDIT TRANSFERRED | | 04-15-2003 | $535.66 |
|  | 1040 200312 | | | |
| 776 | INTEREST DUE TAXPAYER | | 11-21-2005 | -$1.22 |
| 826 | OVERPAYMENT CREDIT TRANSFERRED | | 04-15-2003 | $301.34 |
|  | 1040 200412 | | | |
| 856 | OVERPAYMENT INTEREST TRANSFERRED | | 11-21-2005 | $1.22 |
|  | 1040 200412 | | | |

This Product Contains Sensitive Taxpayer Data

2006/10/16 09:48:51



# Internal Revenue Service
DEPARTMENT OF THE TREASURY ———————— e-services ————————————————————

| This Product Contains Sensitive Taxpayer Data |
|---|

## Account Transcript

Request Date: 10-16-2006
Response Date: 10-16-2006
IRS Employee Number: 56LDB
Tracking Number: 100009775164

FORM NUMBER: 1040          TAX PERIOD: Dec. 31, 2003

TAXPAYER IDENTIFICATION NUMBER:          -6110
SPOUSE TAXPAYER IDENTIFICATION NUMBER:    -7367

EDGAR T & DELORES V VICTORIA
PO BOX 810
GREENVILLE, AL 36037-0810-101

Any minus sign shown below signifies a credit amount.

ACCOUNT BALANCE:                    0.00
ACCRUED INTEREST:                   0.00    AS OF: May  29, 2006
ACCRUED PENALTY:                    0.00    AS OF: May  29, 2006


ACCOUNT BALANCE
PLUS ACCRUALS:                      0.00


** EXEMPTIONS:                        02      ** FILING
                                              STATUS: Married Filing Joint
** ADJUSTED GROSS INCOME:      188,777.00
** TAXABLE INCOME:             136,343.00
   TAX PER RETURN:              42,043.00
** SE TAXABLE INCOME
TAXPAYER:                       87,000.00
** SE TAXABLE INCOME SPOUSE:         0.00
** TOTAL SELF EMPLOYMENT
TAX:                            16,052.00


** PER RETURN OR AS ADJUSTED


RETURN DUE DATE OR RETURN RECEIVED DATE (WHICHEVER IS LATER): Oct. 18, 2004
PROCESSING DATE: Dec. 06, 2004

| TRANSACTIONS |
|---|

2006/10/16 09:48:51

| CODE | EXPLANATION OF TRANSACTION | CYCLE DATE | AMOUNT |
|------|---------------------------|-----------|--------|
| 150 | RETURN FILED AND TAX ASSESSED | 20044508 12-06-2004 | $42,043.00 |
|  | 07221-298-35027-4 |  |  |
| 460 | EXTENSION OF TIME TO FILE EXT. DATE 10-15-2004 | 08-15-2004 | $0.00 |
| 610 | PAYMENT WITH RETURN | 10-18-2004 | -$17,253.00 |
| 666 | ESTIMATED TAX CREDIT TRANSFERRED IN | 04-15-2004 | -$25,000.00 |
| 276 | FAILURE TO PAY TAX PENALTY | 20044708 12-06-2004 | $426.07 |
| 196 | INTEREST ASSESSED | 20044708 12-06-2004 | $319.59 |
| 706 | OVERPAID CREDIT APPLIED 1040 200212 | 04-15-2003 | -$535.66 |
| 277 | FAILURE TO PAY TAX PENALTY ABATED | 12-26-2005 | -$13.39 |
| 197 | INTEREST ABATED | 12-26-2005 | -$10.05 |
| 846 | REFUND | 12-26-2005 | $25.05 |
| 776 | INTEREST DUE TAXPAYER | 12-26-2005 | -$1.61 |
| 640 | ADVANCE PAYMENT OF DEFICIENCY MISCELLANEOUS PAYMENT | 12-12-2005 | -$2,583.32 |
| 670 | SUBSEQUENT PAYMENT | 12-29-2005 | -$566.82 |
| 300 | ADDITIONAL TAX ASSESSED BY EXAMINATION | 20060508 02-13-2006 | $2,366.00 |
|  | 49247-424-00577-6 |  |  |
| 421 | RENUMBERED RETURN | 02-13-2006 | $0.00 |
|  | 49247-424-00577-6 |  |  |
| 777 | INTEREST DUE TAXPAYER REVERSED | 12-26-2005 | $1.56 |
| 336 | INTEREST ASSESSED | 20060508 02-13-2006 | $183.22 |
| 846 | REFUND | 02-13-2006 | $603.28 |
| 776 | INTEREST DUE TAXPAYER | 02-13-2006 | -$3.92 |

This Product Contains Sensitive Taxpayer Data

2006/10/16 09:51:32



# Internal Revenue Service
DEPARTMENT OF THE TREASURY                    e-services

---

| This Product Contains Sensitive Taxpayer Data |

## Account Transcript

Request Date: 10-16-2006
Response Date: 10-16-2006
IRS Employee Number: 56LDB
Tracking Number: 100009775164

FORM NUMBER: 1040                TAX PERIOD: Dec. 31, 2004

TAXPAYER IDENTIFICATION NUMBER:           5-6110
SPOUSE TAXPAYER IDENTIFICATION NUMBER:    -7367

EDGAR T & DELORES V VICTORIA
PO BOX 810
GREENVILLE, AL 36037-0810-101

Any minus sign shown below signifies a credit amount.

| | | |
|---|---|---|
| ACCOUNT BALANCE: | -267.61 | |
| ACCRUED INTEREST: | 0.00 | AS OF: Oct. 23, 2006 |
| ACCRUED PENALTY: | 0.00 | AS OF: Oct. 23, 2006 |

ACCOUNT BALANCE
PLUS ACCRUALS:                -267.61

** EXEMPTIONS:                        02        ** FILING STATUS: Married Filing Joint

** ADJUSTED GROSS INCOME:    127,900.00
** TAXABLE INCOME:            57,334.00
   TAX PER RETURN:            25,154.00
** SE TAXABLE INCOME
TAXPAYER:                     87,900.00
** SE TAXABLE INCOME SPOUSE:  13,282.00
** TOTAL SELF EMPLOYMENT
TAX:                          17,270.00

** PER RETURN OR AS ADJUSTED

RETURN DUE DATE OR RETURN RECEIVED DATE (WHICHEVER IS LATER): Oct. 19, 2005
                                      PROCESSING DATE: Nov. 21, 2005

| TRANSACTIONS |

2006/10/16 09:51:32

| CODE | EXPLANATION OF TRANSACTION | CYCLE | DATE | AMOUNT |
|---|---|---|---|---|
| 150 | RETURN FILED AND TAX ASSESSED | 20054508 | 11-21-2005 | $25,154.00 |
| | 07211-295-89810-5 | | | |
| 670 | SUBSEQUENT PAYMENT | | 04-22-2005 | -$7,000.00 |
| 610 | PAYMENT WITH RETURN | | 10-19-2005 | -$18,875.00 |
| 176 | ESTIMATED TAX PENALTY | 20054508 | 11-21-2005 | $479.46 |
| 166 | LATE FILING PENALTY | 20054508 | 11-21-2005 | $4,084.65 |
| 276 | FAILURE TO PAY TAX PENALTY | 20054508 | 11-21-2005 | $635.39 |
| ▓▓▓ | ▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓ | ▓▓▓▓▓▓▓ | ▓▓ ▓▓ ▓▓▓▓ | ▓▓▓▓ ▓▓ |
| 196 | INTEREST ASSESSED | 20060408 | 02-06-2006 | $34.95 |
| 520 | LEGAL/BANKRUPTCY SUIT PENDING | | 09-25-2006 | $0.00 |

This Product Contains Sensitive Taxpayer Data



# Internal Revenue Service
DEPARTMENT OF THE TREASURY ———— e-services ———————————————

| This Product Contains Sensitive Taxpayer Data |
| --- |

## Account Transcript

Request Date: 10-16-2006
Response Date: 10-16-2006
IRS Employee Number: 56LDB
Tracking Number: 100009775164

FORM NUMBER: 1040              TAX PERIOD: Dec. 31, 2005

TAXPAYER IDENTIFICATION NUMBER:            6110
SPOUSE TAXPAYER IDENTIFICATION NUMBER:     -7367

EDGAR T & DELORES V VICTORIA
PO BOX 810
GREENVILLE, AL 36037-0810-101

Any minus sign shown below signifies a credit amount.

ACCOUNT BALANCE:                  0.00
ACCRUED INTEREST:                 0.00         AS OF: Oct. 23, 2006
ACCRUED PENALTY:                  0.00         AS OF: Oct. 23, 2006


ACCOUNT BALANCE
PLUS ACCRUALS:                    0.00


** EXEMPTIONS:                    00           ** FILING STATUS: Married Filing Joint
** ADJUSTED GROSS INCOME:
** TAXABLE INCOME:
    TAX PER RETURN:
** SE TAXABLE INCOME
TAXPAYER:
** SE TAXABLE INCOME
SPOUSE:
** TOTAL SELF EMPLOYMENT
TAX:


** PER RETURN OR AS ADJUSTED


| TRANSACTIONS |
| --- |

CODE EXPLANATION OF TRANSACTION              CYCLE DATE              AMOUNT

2006/10/16 09:54:11

460    EXTENSION OF TIME TO FILE
       EXT. DATE 10-15-2006                        04-15-2006              $0.00

This Product Contains Sensitive Taxpayer Data

SEP-06-2006  14:45

P.02/05

Tuesday, August 22, 2006,  2:07pm

ACCRUAL COMPUTATION DATE: 08/22/2006

TIN: 63-1103639        NAME: DOLORES V VICTORIA

| MFT | TAXPD | RESTRICT | MOD BAL | ACCR INT | ACCR FTP | MOD TOTAL |
|-----|-------|----------|---------|----------|----------|-----------|
| 01 | 200406 | | 8955.15 | 656.25 | 657.31 | 10268.71 |
| 01 | 200409 | | 6259.20 | 455.07 | 465.05 | 7179.32 |
| 01 | 200412 | | 2840.33 | 207.10 | 240.42 | 3287.85 |
| 01 | 200503 | | 5917.53 | 310.13 | 161.88 | 6389.54 |
| 01 | 200506 | | 2558.85 | 130.25 | 69.29 | 2758.39 |
| 10 | 200312 | | 5199.87 | 272.03 | 128.37 | 5600.27 |
| 10 | 200412 | | 2916.17 | 153.55 | 86.80 | 3156.52 |

| TOTALS: | 34647.10 | 2184.38 | 1809.12 | 38640.60 |

PAGE  1

SEP-06-2006  14:45

Station Name: MTG001MA2(    )98 Date: 8/22/2006 Time: 2:09    PM    P.03/06

INTST 72-1357031 BARI

01 200012 08222006 BARI

Current EIN

F941

4th qtr
2000

| | |
|---|---|
| 2,506.41 | ASSESSED FTP |
| 1,915.43 | ASSESSED INT |
| 11,028.30 | TAX & PENALTY |
| 15,450.14 | ASSESSED TOTAL |
| .00 | ACCRUED FTP |
| 2,239.68 | ACCRUED INT |
| 2,239.68 | TOTAL ACCRUALS |
| 2,506.41 | TOTAL FTP |
| 4,155.11 | TOTAL INT |
| 17,689.82 | BALANCE DUE |

SEP-06-2006  14:46

Station Name: MTG001MA2(     (398 Date: 8/22/2006 Time: 2:10     ( PM

P.04/06

INTST 72-1357031 BARI
01 200512 08222006 BARI

*F 941*
*4th qtr*
*2005*

| | |
|---|---|
| 5.86 | ASSESSED FTP |
| 3.63 | ASSESSED INT |
| .00 | TAX & PENALTY |
| 9.49 | ASSESSED TOTAL |
| .00 | ACCRUED FTP |
| .29 | ACCRUED INT |
| .29 | TOTAL ACCRUALS |
| 5.86 | TOTAL FTP |
| 3.92 | TOTAL INT |
| 9.78 | BALANCE DUE |

SEP-06-2006  14:46

Station Name: MTG001MA2/   398 Date: 8/22/2006 Time: 2:09    ) PM

F. 05/06

INTST 72-1357031
01 200603 08222006 BARI

*F941*
*1st qtr*
*2006*

| | |
|---|---|
| 7.19 | ASSESSED FTP |
| 5.92 | ASSESSED INT |
| 64.73 | TAX & PENALTY |
| 77.84 | ASSESSED TOTAL |
| .00 | ACCRUED FTP |
| .74 | ACCRUED INT |
| .74 | TOTAL ACCRUALS |
| 7.19 | TOTAL FTP |
| 6.66 | TOTAL INT |
| 78.58 | BALANCE DUE |

COMPUTATION HOLD ON FTP
Employee #2518321900 Page 001 of 002  PAGE  002

SEP-06-2006  14:46

P.05/06

Station Name: MTG001MA2    398 Date: 8/22/2006 Time: 2:05    PM

INTST 72-1357031
13 199912 08222006 BARI

*CIVIL Penalty TY 1999*

```
        .00    ASSESSED FTP
        .00    ASSESSED INT
     769.23    TAX & PENALTY
     769.23    ASSESSED TOTAL
        .00    ACCRUED FTP
     179.15    ACCRUED INT
     179.15    TOTAL ACCRUALS
        .00    TOTAL FTP
     179.15    TOTAL INT
     948.38    BALANCE DUE
```

COMPUTATION HOLD ON FTP
Employee #2518321900 Page 001 of 002   PAGE   002

SEP-08-2006  14:45                                                          P.03/06

Station Name: MTG001MA2( )98 Date: 8/22/2006 Time: 2:09( ) PM

INTST 72-1357031                           *Current EIN*
01 200012 08222006 BARI
              2,506.41    ASSESSED FTP
              1,915.43    ASSESSED INT
             11,028.30    TAX & PENALTY
             15,450.14    ASSESSED TOTAL
                   .00    ACCRUED FTP
              2,239.68    ACCRUED INT
              2,239.68    TOTAL ACCRUALS
              2,506.41    TOTAL FTP
              4,155.11    TOTAL INT
             17,689.82    BALANCE DUE

*F941*
*4th qtr*
*2000*

B 240 - Reaffirmation Agreement
(10/05)

# United States Bankruptcy Court

_____ Middle _____ District of _____ Alabama _____

In re   Deloris V. Victoria          Case No.      06-31225
                                     Chapter

         Debtor(s)

## REAFFIRMATION AGREEMENT

*[Indicate all documents included in this filing by checking each applicable box.]*

☐ Part A: Disclosures, Instructions, and       ☐ Part D: Debtor's Statement in Support of
   Notice to Debtor (Pages 1 - 5)                 Reaffirmation Agreement
☐ Part B: Reaffirmation Agreement              ☐ Part E: Motion for Court Approval
☐ Part C: Certification by Debtor's            ☐ Proposed Order Approving Reaffirmation
   Attorney                                       Agreement

☐ *[Check this box if]* Creditor is a Credit Union as defined in §19(b)(1)(a)(iv) of the
Federal Reserve Act

## PART A: DISCLOSURE STATEMENT, INSTRUCTIONS AND NOTICE TO DEBTOR

**1.    DISCLOSURE STATEMENT**

***Before Agreeing to Reaffirm a Debt, Review These Important Disclosures:***

### SUMMARY OF REAFFIRMATION AGREEMENT

This Summary is made pursuant to the requirements of the Bankruptcy Code.

### AMOUNT REAFFIRMED

a.   The amount of debt you have agreed to reaffirm:          $ 285,170.31

b.   All fees and costs accrued as of the date of this
     disclosure statement, related to the amount of debt
     shown in a., above:                                      $

c.   The total amount you have agreed to reaffirm
     (Debt and fees and costs) (Add lines a. and b.):         $285,170.31 XXXXXX

***Your credit agreement may obligate you to pay additional amounts which may come
due after the date of this disclosure. Consult your credit agreement.***

P. 2

# ANNUAL PERCENTAGE RATE

*[The annual percentage rate can be disclosed in different ways, depending on the type of debt.]*

a.  If the debt is an extension of "credit" under an "open end credit plan," as those terms are defined in § 103 of the Truth in Lending Act, such as a credit card, the creditor may disclose the annual percentage rate shown in (i) below or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

(i)  The Annual Percentage Rate disclosed, or that would have been disclosed, to the debtor in the most recent periodic statement prior to entering into the reaffirmation agreement described in Part B below or, if no such periodic statement was given to the debtor during the prior six months, the annual percentage rate as it would have been so disclosed at the time of the disclosure statement:          %.

*— And/Or ---*

(ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor:          %.  If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:

$          @          %;
$          @          %;
$          @          %.

b.  If the debt is an extension of credit other than under than an open end credit plan, the creditor may disclose the annual percentage rate shown in (i) below, or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

(i)  The Annual Percentage Rate under §128(a)(4) of the Truth in Lending Act, as disclosed to the debtor in the most recent disclosure statement given to the debtor prior to entering into the reaffirmation agreement with respect to the debt or, if no such disclosure statement was given to the debtor, the annual percentage rate as it would have been so disclosed:          %.

*— And/Or ---*

(ii)  The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor:          %.  If different simple interest rates apply to different balances included in the amount reaffirmed,

P. 3

the amount of each balance and the rate applicable to it are:

$          @          %;
$          @          %;
$          @          %.

    c. If the underlying debt transaction was disclosed as a variable rate transaction on the most recent disclosure given under the Truth in Lending Act:

    The interest rate on your loan may be a variable interest rate which changes from time to time, so that the annual percentage rate disclosed here may be higher or lower.

    d. If the reaffirmed debt is secured by a security interest or lien, which has not been waived or determined to be void by a final order of the court, the following items or types of items of the debtor's goods or property remain subject to such security interest or lien in connection with the debt or debts being reaffirmed in the reaffirmation agreement described in Part B.

| Item or Type of Item | Original Purchase Price or Original Amount of Loan |
|---|---|
| Mortgage | $347,577.39 |

*Optional*---*At the election of the creditor, a repayment schedule using one or a combination of the following may be provided:*

**Repayment Schedule:**

Your first payment in the amount of          is due on          (date), but the future payment amount may be different. Consult your reaffirmation agreement or credit agreement, as applicable.

*---Or---*

Your payment schedule will be: 176          (number) payments in the amount of $ 2,025.05 each, payable    Semi-Monthly          on the 18th          (day) of each Month          , unless altered later by mutual agreement in writing.

*---Or---*

Describe repayment obligation with specificity to extent known by creditor or creditor representative

P. 4

## 2. INSTRUCTIONS AND NOTICE TO DEBTOR

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps are not completed, the reaffirmation agreement is not effective, even though you have signed it.

1. Read the disclosures in this Part A carefully. Consider the decision to reaffirm carefully. Then, if you want to reaffirm, sign the reaffirmation agreement in Part B (or you may use a separate agreement you and your creditor agree on).

2. Complete and sign Part D and be sure you can afford to make the payments you are agreeing to make and have received a copy of the disclosure statement and a completed and signed reaffirmation agreement.

3. If you were represented by an attorney during the negotiation of your reaffirmation agreement, the attorney must have signed the certification in Part C.

4. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, you must have completed and signed Part E.

5. The original of this disclosure must be filed with the court by you or your creditor. If a separate reaffirmation agreement (other than the one in Part B) has been signed, it must be attached.

6. If the creditor is not a Credit Union and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship as explained in Part D. If the creditor is a Credit Union and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court.

7. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, it will not be effective unless the court approves it. The court will notify you and the creditor of the hearing on your reaffirmation agreement. You must attend this hearing in bankruptcy court where the judge will review your reaffirmation agreement. The bankruptcy court must approve your reaffirmation agreement as consistent with your best interests, except that no court approval is required if your reaffirmation agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home.

## YOUR RIGHT TO RESCIND (CANCEL) YOUR REAFFIRMATION AGREEMENT

You may rescind (cancel) your reaffirmation agreement at any time before the bankruptcy court enters a discharge order, or before the expiration of the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later. To rescind (cancel) your reaffirmation agreement, you must notify the creditor that your reaffirmation agreement is rescinded (or canceled).

**Frequently Asked Questions:**

What are your obligations if you reaffirm the debt? A reaffirmed debt remains your personal legal obligation. It is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Otherwise, your obligations will be determined by the reaffirmation agreement which may have changed the terms of the original agreement. For example, if you are reaffirming an open end credit agreement, the creditor may be permitted by that agreement or applicable law to change the terms of that agreement in the future under certain conditions.

Are you required to enter into a reaffirmation agreement by any law? No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments you agree to make.

What if your creditor has a security interest or lien? Your bankruptcy discharge does not eliminate any lien on your property. A ''lien'' is often referred to as a security interest, deed of trust, mortgage or security deed. Even if you do not reaffirm and your personal liability on the debt is discharged, because of the lien your creditor may still have the right to take the security property if you do not pay the debt or default on it. If the lien is on an item of personal property that is exempt under your State's law or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the security property, as agreed by the parties or determined by the court.

**NOTE:** When this disclosure refers to what a creditor ''may'' do, it does not use the word ''may'' to give the creditor specific permission. The word ''may'' is used to tell you what might occur if the law permits the creditor to take the action. If you have questions about your reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement reaffirming a debt. If you don't have an attorney helping you, the judge will explain the effect of your reaffirming a debt when the hearing on the reaffirmation agreement is held.

P. 6

## PART B: REAFFIRMATION AGREEMENT.

I (we) agree to reaffirm the debts arising under the credit agreement described below.

1. Brief description of credit agreement:

> Mortgage Loan on residence located at 225 Woodland Heights Drive, Greenville, AL  36037

2. Description of any changes to the credit agreement made as part of this reaffirmation agreement:

SIGNATURE(S):

Borrower:                                    Co-borrower, if also reaffirming these debts:

(Print Name)                                 (Print Name)

(Signature)                                  (Signature)
Date:                                        Date:

Accepted by creditor:

*Brantley Bank + Trust Company*
*James R. Lester, VP + Cashier*
(Print Name)

(Signature)
Date of creditor acceptance: *10-19-06*

P. 7

**PART C: CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY).**

*[Check each applicable box.]*

☐ I hereby certify that (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ *[If applicable and the creditor is not a Credit Union.]* A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

Printed Name of Debtor's Attorney:

Signature of Debtor's Attorney:

Date:

## PART D: DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

1.  I believe this reaffirmation agreement will not impose an undue hardship on my dependents or me. I can afford to make the payments on the reaffirmed debt because my monthly income (take home pay plus any other income received) is $          and my actual current monthly expenses including monthly payments on post-bankruptcy debt and other reaffirmation agreements total $          , leaving $          to make the required payments on this reaffirmed debt. I understand that if my income less my monthly expenses does not leave enough to make the payments, this reaffirmation agreement is presumed to be an undue hardship on me and must be reviewed by the court. However, this presumption may be overcome if I explain to the satisfaction of the court how I can afford to make the payments here:

2.  *Either:*  I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

— *Or* ---

*[If the creditor is a Credit Union and the debtor is represented by an attorney]*  I believe this reaffirmation agreement is in my financial interest. I can afford to make the payments on the reaffirmed debt. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: _____
(Debtor)

.
(Joint Debtor, if any)

Date:  .

# MEDICAL OFFICE SPACE LEASE

Date:    June 29, 2006

Landlord: Greenville Hospital Corporation
d/b/a LV Stabler Memorial Hospital

Name and Address of Building:
44 Medical Arts Court, Suite 2
Greenville, AL 36037

Address:
29 LV Stabler Drive
Greenville, AL 36037

Tenant: Dolores Victoria, M.D.

Leased Premises Floor/Suite Description:
Suite 2

Number of Square Feet:    1250

Term of Lease:    2 years
Renewal Terms:    2 year term    (up to one renewal terms of two (2) years by written agreement of the parties at least three months before expiration of term).

Commencement Date of Lease Term: June 1, 2006          Security Deposit: _____-0-

Termination:  Either party may terminate this lease with or without cause upon thirty (30) days prior to written notice to the other party.  However, in the event this lease is terminated for any reason prior to the expiration of one (1) year from the commencement date, the parties shall not enter into another lease until after the expiration of the first year of the initial term.

Annual Rental Rate:$   11,250          Monthly Rental Installments: $ 937.50
Rent Increase (check one) ☐ 3% per year ☐ 4% per year     ($____9.00____/square foot/year)

_____ Check here if Tenant is required to maintain membership in Hospital Medical Staff

Utilities (check any that apply):
_____ Utilities (electric, gas, water and sewer, and janitorial services) are included in the Monthly Rental.
X _____ Housekeeping services will be furnished by the Landlord, including trash removal.
X _____ The following utilities are not included in the Monthly Rental: _____ electricity _____
          Tenant is solely responsible for the payment of separately metered utilities.
          Tenant shall pay a pro-rata share of separately metered utilities based on Tenant's
          square footage share of the metered space footage.

Improvements (check any that apply): Not Applicable
_____ First time Standard Build Out - Base Tenant Build Out Allowance: $_____ per sq. ft.
_____ Existing Space (Now Tenant or Renewal) - Tenant Improvement Allowance: $____ per
          sq. ft. per year
_____ Landlord to build out space per Landlord's Work Letter attached hereto as Exhibit B

This Medical Office Space Lease is a sublease pursuant to that certain (describe underlying lease agreement):____not applicable

Attached hereto and incorporated herein for all purposes is "Exhibit A -- Medical Office Space Lease Standard Terms and Conditions" to which reference is made for the balance of the terms of this Medical Office Space Lease, including without limitation adjustments to Rental Rate/Installments.

Attached hereto and incorporated herein for all purposes are the following additional exhibits: Not applicable

TENANT:

Date: _____7 - 19 - 06_____

LANDLORD:

By: _____
President, Hospital Corporation
Date: _____7-5-06_____

REVIEWED AND APPROVED:

_____
Facility Chief Executive Officer
Date: _____7-19-06_____

APPROVED AS TO FORM:

_____
In-house Counsel, Hospital Corporation
Date: _____6.30.06_____

Form No. 0103 Rev. by Legal Dept as of 6/26/06.

1



*MOB Lease – Hospital-Landlord*

## EXHIBIT A
## MEDICAL OFFICE SPACE LEASE STANDARD TERMS AND CONDITIONS

In consideration of the mutual covenants and representations set forth in the Medical Office Space Lease (the "Lease") and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties do hereby agree as follows. The capitalized terms used in this Exhibit A shall have the meaning assigned to such terms in the Medical Office Space Lease, unless another meaning is assigned to such terms in this Exhibit A.

1.      DEMISE.  Upon the terms and conditions hereinafter set forth, Landlord does hereby lease to Tenant, and Tenant does hereby lease from Landlord, the Demised Premises for the Term of the Lease.

2.      RENT.  The Monthly Rental Installments for the Lease of the Demised Premises shall be payable in advance on the first day of each and every month during the term hereof. During the term of this Lease, the Monthly Rental Installments shall be increased, as of each anniversary date of the Commencement Date, by the percentage amount set forth in the Medical Office Space Lease.  It is expressly understood and agreed that Landlord shall apply all payments from Tenant hereunder to the amounts due hereunder by Tenant which have been outstanding for the longest period of time first.

3.      RENTAL RATE ADJUSTMENT. Landlord shall adjust the Annual Rental Rate and the monthly Rental Installments to the then fair market rental rate for the Demised Premises, upon the termination of an existing term of the Lease. Landlord will give notice of such adjustment to Tenant 90 days prior to expiration date of current Lease. Without limitation, Landlord's adjustment of Rental Rate and the monthly installments will be based on the fair market rental rate, utility costs and real estate taxes as well as any local, state or federal income taxes, which may become payable by the Landlord. If a rent escalation percentage has been checked on the cover page of this Lease, the adjustment under this section shall not exceed the amount checked on the cover page of this Lease.

4.      LANDLORD'S OBLIGATIONS.

    A.   Utilities:
        If utilities are included in the Monthly Rental Installments, then Landlord shall, at Landlord's expense, furnish utilities to the Demised Premises, including electrical, water and sewer, heat, ventilation, and air conditioning; however, Tenant shall be responsible for the payment of telephone and data services.

    B.   Maintenance
        Landlord shall maintain, repair and replace all exterior walls and other features of the exterior including but not limited to the roof and all mechanical systems, including but not limited to air conditioning, heating, plumbing, wiring and piping.

    C.   Insurance
        Landlord shall maintain fire and extended coverage insurance on the building in which the Demised Premises are located, in an amount not less than the full replacement cost of the building.

    D.   Taxes
        Landlord shall be responsible for payment of all real estate taxes assessed against the building or property, as well as all applicable local, state and federal income taxes which are or may be payable by Landlord.

    E.   Build Out By Landlord
        If checked on the cover sheet hereof, Landlord will be responsible for standard build out for office space per Attachment "B"   (attached hereto and incorporated herein by reference).

5.      TENANT'S OBLIGATIONS.  In addition to the said rent to be paid, Tenant also agrees to pay directly during the term of the Lease, commencing on the Commencement Date, the following items of expense as the same become due and payable:

    A.   Taxes.
        All ad valorem or other property taxes, personal and intangible taxes payable in connection with the use, occupancy or conduct of business on any part of the Demised Premises, including but not limited to personal property, business, privilege, license, excise, sales, use

Form No. 0103 Rev. by Legal Dept as of 6/26/06.



and occupation taxes (but excluding local, state and federal income taxes payable by Landlord). Tenant shall be responsible for all taxes which are assessed against their stock and inventory, tangible personal property or their business and/or business operations.

B.  Maintenance and Modifications.
The following charges for maintaining and operating the Demised Premises in good repair and operating condition:

    1)  Tenant shall, at its own cost and expense, keep the interior clean, maintaining suitable receptacles for trash and refuse, and removing from the interior all accumulations of trash and refuse.

    2)  Tenant shall service, keep and maintain the interior, including fixtures, doors, interior walls and appurtenances in good condition, repair and working order.

    3)  Tenant agrees to deliver to Landlord, upon the expiration date or upon earlier termination in accordance with the provisions hereof, physical possession of the Demised Premises in good condition, reasonable wear and tear and damage by fire or other casualty excepted.

    4)  If the Building is separately metered for certain utilities, such as electricity, gas, water, and sewer, Tenant shall be responsible for the payment of all such separately metered utilities based on Tenant's proportionate share of the metered square-footage.

    5)  If utilities are not separately metered, Tenant shall be responsible for a pro-rata share of Building utility expense, based upon the ratio of the square footage of the Demised Premises to the square footage of the Building. The utility expense shall be calculated, and the Utility Base Rate shall be adjusted, annually.

    6)  Tenant shall be responsible for all service costs and installations of all telephone or data services and Landlord shall have no responsibility or liability with respect thereto or the failure of operation of any such services.

6.  IMPROVEMENTS.  Tenant shall not make any structural changes, alterations, additions or improvements to the Demised Premises without the written consent of Landlord, which shall not be unreasonably withheld. Landlord shall not be responsible for, either in the performance or payment, any improvements to the Demised Premises unless a "Landlord's Work Letter" is attached to the Lease.

7.  USE OF DEMISED PREMISES. Tenant shall use the Demised Premises for the purpose of the licensed practice of medicine and the medical treatment of Tenant's patients and business purposes ancillary thereto and for no other purpose. Without limiting the foregoing, unless approved by Landlord in advance and in writing, Tenant shall not use the Demised Premises for the operation of a "commercial ancillary medical care facility" which shall include, without limitation, a clinical laboratory, pharmacy, ambulatory surgery center, birthing center, diagnostic, including radiology, facility, and respiratory, physical, speech, or occupational therapy services. The use of diagnostic equipment (such as x-ray) and the performance of minor surgical procedures under local anesthesia, that is within the scope of Tenant's medical practice and pertaining to the treatment and care of Tenant's own patients, shall not be considered to violate the terms of this paragraph.

8.  ASSIGNMENT;SUBLETTING.  Tenant shall not, without the prior consent of Landlord, which consent may be withheld in Landlord's sole discretion, sublease, license or assign its interest under the Lease to any other person or entity. Assignment or subletting without the prior consent of Landlord, including assignment by operation of the law, shall constitute an event of default. In no event, whether with or without consent of Landlord, shall an assignment or lease relieve Tenant of liability under the terms, conditions and provisions of this Lease.

9.  INSURANCE.

A.  The following insurance coverage on the Demised Premises will be maintained by Tenant at all times during the term of the Lease. Comprehensive general liability insurance coverage on the Demised Premises in the sum of One Million Dollars ($1,000,000) for any single claim and Three Million Dollars ($3,000,000) for claims arising out of a single accident or occurrence against liability for bodily injury and death resulting therefrom, and insurance coverage in the sum of One Hundred Thousand Dollars ($100,000.00) per occurrence against liability for damage to property, arising out of the maintenance or use of the Demised Premises by Tenant. Casualty insurance insuring Tenant against loss or damage to its



equipment and other personal property in the Demised Premises by fire and all other casualties usually covered under an "all risk" policy of casualty insurance. The policies described in this section shall name both Tenant and Landlord as named insureds. Annually, Tenant shall furnish Landlord with a certificate of such coverage which shall provided that thirty (30) days' advance written notice be given to Landlord in the event of cancellation or material change in the insurance policy.

B.    Tenant shall not do or permit any act which will increase premiums for any casualty, fire, liability or other insurance maintained by Landlord on the Building or any other property therein or which shall render such insurance void or voidable.

10    DAMAGE TO PROPERTY/INJURY TO PERSON. Tenant shall and hereby does indemnify and hold Landlord harmless from and against any and all claims to the extent they arise from (i) Tenant's use of the Demised Premises or the conduct of its business, (ii) any activity, work or thing done, permitted or suffered by the Tenant in or about the Demised Premises, (iii) any breach or default in the performance of any obligation on Tenant's part to be performed under the terms of the Lease, or (iv) any act of negligence of Tenant or his agents or employees.

11.    ENVIRONMENTAL PROVISIONS.
A.    Following due inquiry, Landlord represents that to the best of its knowledge there are no hazardous substances or hazardous wastes as defined by the Comprehensive Environmental Response and Liability Act or any hazardous wastes as defined by the Resource Conservation and Recovery Act, or any PCB's, radon or asbestos containing materials, located on, in or about the Demised Premises to be occupied by Tenant. Landlord agrees that should any hazardous wastes, hazardous substances, PCB's, radon or asbestos containing materials be determined to be present as a result of the acts or missions or negligence of any person or legal entity, other than Tenant, Landlord shall indemnify, hold harmless and defend Tenant from all claims, damages, expenses or litigation resulting from the presence of such materials.

B.    Tenant warrants that its use of the Premises and the materials used in the conduct of its business operations at and on the Premises, or the manner of use, and its waste, effluent and vapors will not violate any laws, ordinances, rules or regulations relating to or affecting the environment or dealing with environmental matters, as hereinafter defined, hazardous substances of any kind or nature, whether imposed or enforced by any state, local or federal agency, and that Tenant shall alter its use of the Premises to comply with such laws, ordinances, rules or regulations if required to do so by any such governmental agency. Tenant shall not use the Premises, maintain them nor allow use of the Premises in any manner constituting a violation of any ordinance, statute, rule, regulation or order of any governmental authority, including, but not limited to, the ADA, zoning ordinances, or environmental rules, regulations and laws, nor will the Tenant maintain or permit any nuisance to occur or to be maintained on the Premises.

12.    EARLY TERMINATION AS A RESULT OF THE DEATH OR DISABILITY OF A SOLE PRACTITIONER; OTHER VACATION OR ABANDONMENT. If Tenant is a sole practitioner and dies or becomes disabled (defined for purposes of the Lease as any physical or mental condition that prevents or is reasonably expected to prevent such physician from practicing medicine for more than ninety (90) days), then either party shall have the right to terminate the Lease prior to the expiration date by giving the other party not less than thirty (30) days prior written notice. Except as expressly provided in the preceding sentence, any other vacation of the Demised Premises for more than thirty (30) days or any abandonment of the Demised Premises by Tenant will be considered a material default under the Lease.

13.    DEFAULT. Tenant shall be in default of the terms of the Lease if Tenant shall fail to make a payment of any rent or additional rent, and such rent or additional rent is not paid within ten (10) days of written notice by Landlord to Tenant of non-payment of same, or in the event that Tenant shall otherwise commit an act of default under the terms hereof, and shall not cure such default within thirty (30) days of written notice by Landlord to Tenant of such default. In the event of default:

A.    Landlord may continue the Lease in full force and effect and shall have the right to collect rent when due. During the term Tenant is in default, Landlord may re-enter the Demised Premises with legal process and relet same, or any part thereof, to third parties for Tenant's account. Tenant shall be liable for all reasonable costs Landlord incurred for reletting the Demised Premises, including without limitation broker's commissions, expenses associated with repairing and / or remodeling the Demised Premises in order to return the Demised Premises to the same condition as when received by Tenant from Landlord and similar costs. Reletting can be done for a period shorter or longer than the remaining term of the Lease. Tenant shall pay to Landlord the rent due under the Lease on the date such rent is due, less the rent Landlord receives from any reletting. Landlord shall make its best efforts to relet the Demised Premises at a reasonable price. Under this paragraph, Tenant's obligations shall not exceed the total rent due for the remainder of the term.

Form No. 0103 Rev. by Legal Dept as of 6/26/06.

4



B.  Landlord may terminate the Lease pursuant to the terms of this Section 13. Upon termination, Landlord shall have the right to collect an amount equal to all expenses, if any, including reasonable attorneys' fees, incurred by Landlord in recovering possession of the Demised Premises and all reasonable costs and charges for the care of the Demised Premises while vacated by Tenant.

C.  Should any of these remedies or any portion thereof not be permitted by the laws of the state where the Building is located, then such remedy or portion thereof shall be considered deleted and unenforceable, and the remaining remedies or portions thereof shall be and remain in full force and effect, and Landlord may avail itself of these as well as any other remedies or damages allowed by law.

14.    RIGHT OF ACCESS    Landlord and its agents shall have reasonable access to the Demised Premises during all reasonable business hours for the purpose of examining same to ascertain if they are in good repair and to make reasonable repairs which Landlord may be required to make hereunder.

15.    END OF TERM.  At the termination of the Lease, Tenant shall surrender its interest in the Demised Premises to Landlord in as good condition and repair as reasonable use thereof will permit, reasonable wear and tear excepted, and will leave the Demised Premises broom clean.  Tenant shall have the right, prior to said termination, to remove any equipment, furniture, trade fixtures or other personal property in the Demised Premises owned by Tenant, provided that Tenant promptly repairs any damage to the Demised Premises caused by such removal. In the event of holding over by Tenant after the expiration or termination of the Lease, Tenant shall pay rent at the then-current rate on a monthly basis.  Any holding over with consent of Landlord in writing shall thereafter constitute a Lease for month-to-month.

16.    ATTORNEYS' FEES.  In the event that suit is brought by either party against the other for breach or default under the terms of the Lease, the prevailing party shall be entitled to reasonable attorneys' fees, expenses (including expert witness fees) and court costs equal to the sum established by the court.

17.    HEADINGS.  The article captions contained in the Lease are for the convenience of the parties only and shall not be considered in the construction or interpretation of any provision hereof.

18.    ENTIRE AGREEMENT.  The Lease contains the entire agreement between the parties and supersedes any and all other prior oral and written agreements between the parties regarding the subject matter contained herein and may not be changed or terminated orally but only by agreement in writing and signed by all parties.

19.    DAMAGE OR DESTRUCTION.  If the Demised Premises are damaged by fire or other casualty, the damage shall be repaired by and at the expense of Landlord (excluding any equipment which is owned by Tenant), provided that such repairs can, in Landlord's opinion, be made within sixty (60) days after the occurrence of such damage.  Landlord shall notify Tenant within fifteen (15) days of the event of casualty of its determination.  Until such repairs are completed, the rent shall be abated in proportion to the part of the Demised Premises rendered unusable, but there shall be no abatement of rent for a period equal to one (1) day or less.  If such repairs cannot, in Landlord's opinion, be made within sixty (60) days and Landlord nonetheless chooses to repair, then Tenant may, at its option, continue as Tenant under the Lease until such repairs are completed, during which time all rent shall abate, or Tenant may terminate the Lease. A total destruction of the building in which the Demised Premises are located shall automatically terminate the Lease.  Total destruction of the building shall be defined as damage greater than fifty percent (50%) of the then replacement value thereof.

20.    EMINENT DOMAIN.  If the whole of the Demised Premises or so much thereof as to render the balance unusable by Tenant shall be taken under power of eminent domain, the Lease shall automatically terminate as of the effective date of the taking.  In the event of a partial taking which does not result in a termination of the Lease, the rent reserved hereunder shall remain unaffected.  Landlord may, without any obligation or liability to Tenant, stipulate with any condemning authority for a judgment of condemnation without the necessity of a formal suit or judgment of condemnation, and the date of taking under this clause shall then be deemed the date agreed to under the terms of said agreement for stipulation and the Lease shall terminate as of the stipulated date.

21.    WAIVER.  No waiver by either party shall be deemed to be a waiver of any other provision hereof or of any subsequent breach by either party of the same or any other provision.  Landlord 's consent to or approval of any act by Tenant requiring Landlord's consent or approval shall not be deemed to render unnecessary the obtaining of Landlord's consent to or approval of any subsequent act of Tenant, whether or not similar to the act so consented to or approved.

Form No. 0103 Rev. by Legal Dept as of 6/26/06.



22.    NOTICES. Any notice required or permitted to be given hereunder may be given by mail and shall be sufficiently given if personally served or sent by registered or certified mail or by special courier, addressed to the relevant party at the addresses specified in the Lease (notice to Tenant shall be given at the Demised Premises). For any notice given to Landlord, a copy shall be provided to the Landlord's counsel as follows: General Counsel, Legal Department, P.O. Box 217, Brentwood, Tennessee 37024-0217. From and after December 15, 2006: Community Health Systems, Attn: Legal Department, 4000 Meridian Blvd., Franklin, TN 37067 or Community Health Systems, Attn: Legal Department, P.O. Box 689020, Franklin, TN 37068.

23.    BINDING EFFECT. The Lease shall be binding upon and inure to the benefit of the parties hereto, their heirs, successors, assigns, executors and administrators. Nothing in this article shall be deemed to amend the provisions herein concerning assignment and subletting.

24.    APPLICABLE LAW. The laws of the state where the Building is located shall be employed in and govern the interpretation of all of the covenants, terms and conditions of the Lease.

25.    NO PARTNERSHIP RELATIONSHIP. Notwithstanding any agreement herein contained, Landlord shall not be construed or held to be a partner or associate of Tenant in the conduct of its business, it being expressly understood and agreed that the relationship between the parties is and at all times shall remain that of Landlord and Tenant.

26.    NO REQUIREMENT TO REFER. The parties expressly agree that nothing contained in the Lease shall require Tenant or any physician or other referral source to refer or admit any patients to, or order any goods or services from Landlord or any affiliate. Notwithstanding any unanticipated effect of any provision of this Agreement, neither party will knowingly or intentionally conduct himself in such a manner as to violate the prohibition against fraud and abuse in connection with the Medicare and Medicaid programs (42 USC Section 1320a-7b). Both parties represent to the other that the Rentals provided for in the Lease are at fair market value rates and do not take into account the value or volume of any referrals or other business generated between the parties. Both as a material condition to this Lease and as a continuing representation and warranty for the duration of this Lease, Tenant represents and warrants that neither it nor any of its owners, officers, directors, employees, agents, subcontractors etc have been suspended, excluded, or debarred from any government payor program.

27.    QUIET ENJOYMENT. Landlord warrants and shall defend Tenant in the quiet enjoyment and possession of the Demised Premises during the term and any extension or renewal thereof.

28.    OPTION TO RENEW. Provided that Tenant is not then in default hereunder, upon the expiration of the term hereof, Tenant shall have the option to renew the Lease for the additional term(s), if any, set forth on the cover page of this Lease, upon the same terms and conditions as this Lease except that the rentals payable during the renewal term shall be adjusted to fair market rental as set forth herein.

29.    SUBORDINATION, ATTORNMENT AND NON-DISTURBANCE.

A.    Tenant agrees that the Lease and all rights of Tenant hereunder are and shall be subject and subordinate to any ground or underlying lease which may now or hereafter be in effect regarding the Building or any component thereof, to any mortgage now or hereafter encumbering the Demised Premises or the Building or any component thereof, to all advances made or hereafter to be made upon the security of such mortgage, to all amendments, modifications, renewals, consolidations, extensions and restatements of such mortgage, and to any replacements and substitutions for such mortgage. The terms of this provision shall be self-operative and no further instrument of subordination shall be required. Tenant, however, upon request of any party in interest, shall execute promptly such instrument or certificates as may be reasonably required to carry out the intent of this provision.

B.    In the event any proceedings are brought for the foreclosure of, or in the event of exercise of the power of sale under, or in the event of a deed in lieu of foreclosure with respect to any mortgage covering the Demised Premises or the Building, or in the event of termination of any Lease under which Landlord may hold title, Tenant shall, at the option of transferee, attorn to such transferee and shall recognize and be bound and obligated hereunder to such person as the Landlord under the Lease. Tenant agrees to execute any attornment agreement not in conflict with this provision.

Form No. 0103 Rev. by Legal Dept as of 6/26/06.



C.    Notwithst. ...ng anything contained herein to the contrary, so ... as Tenant is not in default in the payment of Rentals or other charges, or in the performance of any of the other terms, covenants or conditions of the Lease, mortgagee or such person shall not disturb Tenant in its occupancy of the Demised Premises during the original or any renewal term of the Lease notwithstanding any event or proceedings described in this section.

30.    MASTER CONTRACT LIST. This contract is identified on a master list of contracts maintained on a Lotus Notes server.

31.    ESTOPPEL CERTIFICATE. Within thirty (30) days after written request from Landlord, Tenant shall deliver an executed statement addressed to Landlord certifying (if such be the case) that this Lease is in full force and effect, and that Tenant has commenced the payment of rent, and that there are no defenses or offsets to this Lease claimed by Tenant, as well as any other information reasonably requested. If Tenant fails or refuses to give a certificate hereunder within the required time frame, then the information on such certificate as submitted by Landlord shall be deemed correct for all purposes and Landlord shall have the right to treat such failure or refusal as a default by Tenant.

32.    FORCE MAJEURE. With the exception of the obligation of Tenant to pay Rent and all other amounts that may be due from time to time under this Lease, if either party shall be delayed or hindered in or prevented from doing or performing any act or thing required hereunder by reason of any matters beyond the reasonable control of such party, then such party shall not be liable or responsible for any such delays and the doing or performing of such act or thing shall be extended for a period equivalent to the period of such delay. In such event, this Lease and the obligations of both parties to perform and comply with all of the other terms and provisions of this Lease shall in no way be affected, impaired, or excused.

33.    WAIVER OF JURY TRIAL

LANDLORD AND TENANT HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION, ACTION, PROCEEDING OR COUNTERCLAIM BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS LEASE OR THE OBLIGATIONS EVIDENCED HEREBY, THE RELATIONSHIP OF LANDLORD AND TENANT, TENANT'S USE OF OR OCCUPANCY OF THE PREMISES, ANY CLAIM OF INJURY OR DAMAGE, OR ANY EMERGENCY OR OTHER STATUTORY REMEDY OR ANY OTHER DOCUMENT OR INSTRUMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT TO EACH OF LANDLORD AND TENANT IN ENTERING INTO THIS LEASE.

34.    SUBLEASE. In the event the Lease is a sublease to an underlying lease agreement, as described in the Lease, then with respect to the Demised Premises, except for the Term of the Lease and the Rental Rate/Installment, Tenant shall perform all of the obligations of tenant/lessee under the underlying lease agreement.

35.    APPROVALS. Neither this Lease nor any amendment or modification hereto shall be effective or legally binding upon Landlord, or any officer, director, employee or agent thereof, unless and until it has been reviewed and approved in writing by a President of Landlord's owner and by Landlord's Legal Counsel.

36.    RULES AND REGULATIONS. Tenant shall faithfully observe and comply strictly with the following rules and regulations, adopted for the safety, care and cleanliness of the Building or the preservation of good order therein. Landlord shall not be liable to Tenant for a violation of such rules and regulations, or for the breach of any covenant or condition in a lease by any other tenant in the Building. Landlord may, from time to time and upon notice to Tenant, adopt additional or substitute rules and regulations of the Building.

A.    Conduct. Tenant shall not conduct its practice or business, or advertise such business, profession or activities of Tenant conducted in the Premises in any manner which violates local, state or federal laws or regulations.

B.    Hallways and Stairways. Tenant shall not obstruct or use for storage, or for any purpose other than ingress and egress, the sidewalks, entrance, passages, courts, corridors, vestibules, halls, elevators and stairways of the Building.

C.    Nuisances. Tenant shall not make or permit any noise, odor or act that is objectionable to other occupants of the Building to emanate from the Premises, and shall not create or maintain a nuisance thereon.

Form No. 0103 Rev. by Legal Dept as of 6/26/06.



D.   Musical Instruments, Etc.  Tenant shall not install or oper      any phonograph, musical instrument, radio receiver or similar device in the Building in such manner as to disturb or annoy other tenants of the Building or the neighborhood.  Tenant shall not install any antennae, aerial wires or other equipment outside the Building without the prior written approval of Landlord.

E.   Locks.  No additional locks or bolts of any kind shall be placed upon any of the doors or windows by Tenant, nor shall any changes be made in existing locks or the mechanism thereof.  Tenant must upon the termination of its tenancy restore to Landlord all keys to the Premises and toilet rooms either furnished to or otherwise produced by Tenant, and in the event of loss of any keys so furnished, Tenant shall pay to Lessor the cost thereof.

F.   Obstructing Light, Damage.  The doors, window glass, lights and skylights that reflect or admit light into the halls or other places of the Building shall not be covered or obstructed.  The toilets and urinals shall not be used for any purpose other than those for which they were intended and constructed, and no rubbish, newspapers or other substance of any kind shall be thrown into them.  Waste and excessive or unusual use of water shall not be allowed.  Tenant shall not mark, drive nails, screw or drill into, paint, nor in any way deface the walls, ceilings, partitions, floors, wood, stone or iron work.  The expense of any breakage, stoppage or damage resulting from a violation of this rule by Tenant shall be borne by Tenant.  Tenant shall be permitted to hang pictures on office walls, but it must be done in a workmanlike manner and in such a way as not to damage or deface such walls.

G.   Wiring  Electrical wiring of every kind shall be introduced and connected only as directed by Landlord, and no boring nor cutting of wires will be allowed except with the consent of Landlord.  The location of the telephone, call boxes, etc., shall be subject to the approval of Landlord.

H.   Equipment, Moving, Furniture, Etc.  Landlord shall approve the weight, size and position of all fixtures, equipment and other property brought into the Building, and the times of moving which must be done under the supervision of Landlord.  Landlord will not be responsible for any loss of or damage to any such equipment or property from any cause, and all damage done in the Building by moving or maintaining any such property shall be repaired at the expense of Tenant.  All equipment shall be installed as required by law.

I.   Requirements of Tenant.  The requirements of Tenant will be attended to only upon application at the office of Landlord.  Employees shall not perform any work nor do anything outside their regular duties unless under special instructions from Landlord.  No employees shall admit any person, Tenant or otherwise, to any other office without instruction from the office of Landlord.  All janitorial services personnel, guards or any outside contractors employed by Tenant shall be subject to the regulations and control of Landlord, but shall not act as an agent or servant of Landlord.

J.   Medical and Hazardous Wastes.  Tenant shall comply with all policies established from time to time by Landlord regarding the storage and disposal of hazardous substances, wastes and materials, and medical, special or infectious wastes.

K.   Access to Building.  Any person entering or leaving the Building may be questioned by Building security regarding his/her business in the Building and may be required to sign in and out.  Anyone who fails to provide a satisfactory reason for being in the Building may be excluded.

L.   Vehicles, Animals, Refuse.  Tenant shall not allow anything to be placed on the outside window ledges of the Premises or to be thrown out of the windows of the Building.  No bicycle or other vehicle, and no animal, except for service animal, shall be brought into the offices, halls, corridors, elevators or any other parts of the Building by Tenant or the agents, employees or invitees of Tenant, and Tenant shall not place or permit to be placed any obstruction or refuse in any public part of the Building.

M.   Equipment Defects.  Tenant shall give Landlord prompt notice of any accidents to or defects in the water pipes, gas pipes, electric lights and fixtures, heating apparatus, or any other service equipment.

N.   Parking.  Unless otherwise specified by Landlord, Tenant and its employees may park automobiles only in spaces designated by Landlord for such purpose and shall in no event

Form No. 0103 Rev. by Legal Dept as of 6/26/06.

8



park in ⁙ ⁙es reserved for public parking   Tenant agre⁙ ⁙at Landlord assumes no responsibility of any kind whatsoever in reference to such automobile parking area or the use thereof by Tenant or its agents or employees.

O.   Conservation and Security.  Tenant will see that all windows and doors are securely locked, and that all faucets and electric light switches are turned off before leaving the Building.

P.   Signage.  Tenant shall not place any sign upon the Demised Premises or the Building without Landlord's prior written consent.

Form No. 0103 Rev. by Legal Dept as of 6/26/06.

9



B 240 - Reaffirmation Agreement
(10/05)

# United States Bankruptcy Court

_____Middle_____District of _____Alabama_____

In re

Debtor(s)

Case No.
Chapter

## REAFFIRMATION AGREEMENT

_[Indicate all documents included in this filing by checking each applicable box.]_

☐ Part A: Disclosures, Instructions, and
  Notice to Debtor (Pages 1 - 5)
☒ Part B: Reaffirmation Agreement
☐ Part C: Certification by Debtor's
  Attorney

☐ Part D: Debtor's Statement in Support of
  Reaffirmation Agreement
☐ Part E: Motion for Court Approval
☐ Proposed Order Approving Reaffirmation
  Agreement

☐ _[Check this box if]_ Creditor is a Credit Union as defined in §19(b)(1)(a)(iv) of the
Federal Reserve Act

## PART A: DISCLOSURE STATEMENT, INSTRUCTIONS AND NOTICE TO DEBTOR

1.    **DISCLOSURE STATEMENT**

_Before Agreeing to Reaffirm a Debt, Review These Important Disclosures:_

### SUMMARY OF REAFFIRMATION AGREEMENT
This Summary is made pursuant to the requirements of the Bankruptcy Code.

### AMOUNT REAFFIRMED

a.    The amount of debt you have agreed to reaffirm:                    $ 19,029.83

b.    All fees and costs accrued as of the date of this
      disclosure statement, related to the amount of debt
      shown in a., above:                                               $

c.    The total amount you have agreed to reaffirm
      (Debt and fees and costs) (Add lines a. and b.):                  $ 19,029.83   0.00

_Your credit agreement may obligate you to pay additional amounts which may come
due after the date of this disclosure. Consult your credit agreement._

**ANNUAL PERCENTAGE RATE**

P. 2

*[The annual percentage rate can be disclosed in different ways, depending on the type of debt.]*

a.  If the debt is an extension of "credit" under an "open end credit plan," as those terms are defined in § 103 of the Truth in Lending Act, such as a credit card, the creditor may disclose the annual percentage rate shown in (i) below or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

(i)  The Annual Percentage Rate disclosed, or that would have been disclosed, to the debtor in the most recent periodic statement prior to entering into the reaffirmation agreement described in Part B below or, if no such periodic statement was given to the debtor during the prior six months, the annual percentage rate as it would have been so disclosed at the time of the disclosure statement:            %.

— *And/Or* ---

(ii)  The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor:            %. If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:

$            @            %;
$            @            %;
$            @            %.

b.  If the debt is an extension of credit other than under than an open end credit plan, the creditor may disclose the annual percentage rate shown in (i) below, or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

(i)  The Annual Percentage Rate under §128(a)(4) of the Truth in Lending Act, as disclosed to the debtor in the most recent disclosure statement given to the debtor prior to entering into the reaffirmation agreement with respect to the debt or, if no such disclosure statement was given to the debtor, the annual percentage rate as it would have been so disclosed:            %.

— *And/Or* ---

(ii)  The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor:            %.  If different simple interest rates apply to different balances included in the amount reaffirmed,

the amount of each balance and the rate applicable to it are:

$15,384.75@    9.00   %;
$ 3,645.08@    5.75   %;
$        @           %.

c. If the underlying debt transaction was disclosed as a variable rate transaction on the most recent disclosure given under the Truth in Lending Act:

The interest rate on your loan may be a variable interest rate which changes from time to time, so that the annual percentage rate disclosed here may be higher or lower.

d. If the reaffirmed debt is secured by a security interest or lien, which has not been waived or determined to be void by a final order of the court, the following items or types of items of the debtor's goods or property remain subject to such security interest or lien in connection with the debt or debts being reaffirmed in the reaffirmation agreement described in Part B.

| Item or Type of Item | Original Purchase Price or Original Amount of Loan |
|---|---|
| CERTIFICATE OF DEPOSIT #19922 | $3,565.00 |
| UCC-1 WITH EXHIBIT 'A' AND 'B' | $19,697.16 |

*Optional*---At the election of the creditor, a repayment schedule using one or a combination of the following may be provided:

**Repayment Schedule:**

Your first payment in the amount of                is due on                (date), but the future payment amount may be different. Consult your reaffirmation agreement or credit agreement, as applicable.

---*Or*---

Your payment schedule will be:                (number) payments in the amount of $                each, payable        Monthly                on the                (day) of each Month unless altered later by mutual agreement in writing.

---*Or*---

Describe repayment obligation with specificity to extent known by creditor or creditor representative

BORROWER INTENDS TO PAY BOTH LOANS WITH BUTLER COUNTY BANK, GREENVILLE, ALABAMA AS THEY ARE PRESENTLY STRUCTURED.  SEE COPIES OF NOTES ATTACHED FOR DETAILS.

## 2. INSTRUCTIONS AND NOTICE TO DEBTOR

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps are not completed, the reaffirmation agreement is not effective, even though you have signed it.

1. Read the disclosures in this Part A carefully. Consider the decision to reaffirm carefully. Then, if you want to reaffirm, sign the reaffirmation agreement in Part B (or you may use a separate agreement you and your creditor agree on).

2. Complete and sign Part D and be sure you can afford to make the payments you are agreeing to make and have received a copy of the disclosure statement and a completed and signed reaffirmation agreement.

3. If you were represented by an attorney during the negotiation of your reaffirmation agreement, the attorney must have signed the certification in Part C.

4. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, you must have completed and signed Part E.

5. The original of this disclosure must be filed with the court by you or your creditor. If a separate reaffirmation agreement (other than the one in Part B) has been signed, it must be attached.

6. If the creditor is not a Credit Union and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship as explained in Part D. If the creditor is a Credit Union and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court.

7. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, it will not be effective unless the court approves it. The court will notify you and the creditor of the hearing on your reaffirmation agreement. You must attend this hearing in bankruptcy court where the judge will review your reaffirmation agreement. The bankruptcy court must approve your reaffirmation agreement as consistent with your best interests, except that no court approval is required if your reaffirmation agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home.

# YOUR RIGHT TO RESCIND (CANCEL) YOUR REAFFIRMATION AGREEMENT

You may rescind (cancel) your reaffirmation agreement at any time before the bankruptcy court enters a discharge order, or before the expiration of the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later. To rescind (cancel) your reaffirmation agreement, you must notify the creditor that your reaffirmation agreement is rescinded (or canceled).

**Frequently Asked Questions:**

What are your obligations if you reaffirm the debt? A reaffirmed debt remains your personal legal obligation. It is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Otherwise, your obligations will be determined by the reaffirmation agreement which may have changed the terms of the original agreement. For example, if you are reaffirming an open end credit agreement, the creditor may be permitted by that agreement or applicable law to change the terms of that agreement in the future under certain conditions.

Are you required to enter into a reaffirmation agreement by any law? No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments you agree to make.

What if your creditor has a security interest or lien? Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage or security deed. Even if you do not reaffirm and your personal liability on the debt is discharged, because of the lien your creditor may still have the right to take the security property if you do not pay the debt or default on it. If the lien is on an item of personal property that is exempt under your State's law or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the security property, as agreed by the parties or determined by the court.

**NOTE:** When this disclosure refers to what a creditor "may" do, it does not use the word "may" to give the creditor specific permission. The word "may" is used to tell you what might occur if the law permits the creditor to take the action. If you have questions about your reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement reaffirming a debt. If you don't have an attorney helping you, the judge will explain the effect of your reaffirming a debt when the hearing on the reaffirmation agreement is held.

P. 6

## PART B: REAFFIRMATION AGREEMENT.

I (we) agree to reaffirm the debts arising under the credit agreement described below.

1. Brief description of credit agreement:

LOAN #●581 DATED 03/28/2006 WITH PRESENT BALANCE OF $15,384.75
WITH BUTLER COUNTY BANK, GREENVILLE ALABAMA 36037
LOAN ●095 DATED 09/02/2005 WITH PRESENT BALANCE OF $3645.08
WITH BUTLER COUNTY BANK, GREENVILLE ALABAMA 36037

2. Description of any changes to the credit agreement made as part of this reaffirmation agreement:

SIGNATURE(S):

Borrower:                                    Co-borrower, if also reaffirming these debts:

*DOLORES V. VICTORIA*
(Print Name)                                 (Print Name)

*Delores V. Victoria*
(Signature)                                  (Signature)
Date: 10-24-06                               Date:

Accepted by creditor:

BUTLER COUNTY BANK  WILLIAM S JOHNSON, PRESIDENT

(Print Name)

*William S. Johnson*
(Signature)
Date of creditor acceptance:

P. 7

## PART C: CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY).

*[Check each applicable box.]*

☑ I hereby certify that (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ *[If applicable and the creditor is not a Credit Union.]* A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

Printed Name of Debtor's Attorney: CARL Brandon Sellers II

Signature of Debtor's Attorney: Cal Brandon Sellers.

Date: 10|24|06

P. 8

# PART D: DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

1.  I believe this reaffirmation agreement will not impose an undue hardship on my dependents or me. I can afford to make the payments on the reaffirmed debt because my monthly income (take home pay plus any other income received) is $            and my actual current monthly expenses including monthly payments on post-bankruptcy debt and other reaffirmation agreements total $            , leaving $            to make the required payments on this reaffirmed debt. I understand that if my income less my monthly expenses does not leave enough to make the payments, this reaffirmation agreement is presumed to be an undue hardship on me and must be reviewed by the court. However, this presumption may be overcome if I explain to the satisfaction of the court how I can afford to make the payments here:

2. *Either:*  I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

— *Or* ---

*[If the creditor is a Credit Union and the debtor is represented by an attorney]* I believe this reaffirmation agreement is in my financial interest. I can afford to make the payments on the reaffirmed debt. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: _____
                (Debtor)


                (Joint Debtor, if any)
Date: _10-24-06_

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

IN RE:

      DELORIS V. VICTORIA            Chapter 7 Case No. 06-31225

      Debtor(s)

## <u>AMENDMENT TO CHAPTER 7 PETITION</u>

      COMES NOW, Deloris V. Victoria, Debtor in the above referenced bankruptcy and hereby moves this Honorable Court to amend the Chapter 7 petition in reference to this case as follows:

      1. Amend **SCHEDULE D, E & F:** to reflect the true amount of debt to Brantley Bank, the Internal Revenue Service, Genezen Healthcare and Greenville Hospital.

      WHEREFORE, THESE PREMISES CONSIDERED, the debtor moves this Honorable Court to amend the schedules as stated above.

Respectfully submitted May 8, 2007

                    /S/ RICHARD D. SHINBAUM
                    RICHARD D. SHINBAUM
                    rshinbaum@samvpc.com
                    VONDA S. MCLEOD
                    vmcleod@samvpc.com
                    C. BRANDON SELLERS, III
                    cbsellers@samvpc.com
                    Attorneys for the Debtor
                    SHINBAUM, ABELL, MCLEOD & CAMPBELL
                    Post Office Box 201
                    Montgomery, Alabama 36101
                    (334) 269-4440

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above foregoing Amendment and Schedules on all parties listed below by electronic or postal mail on this May 8, 2007:

Hon. Teresa Jacobs
Bankruptcy Administrator
U.S. Bankruptcy  Court
One Church Street
Montgomery, AL 36104

Daniel Gary Hamm
560 S. McDonough St., Ste A
Montgomery, AL 36104

/S/ RICHARD D. SHINBAUM

Form B6D
(10/05)

In re    **Deloris V. Victoria**                                                    Case No.    **06-31225**
_____
Debtor

## SCHEDULE D. CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C§112; Fed.R.Bankr.P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community." If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

☐    Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | H W J C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. | | | Mortgage | | | | | |
| Creditor #: 1 BRANTLEY BANK & TRUST P.O. BOX 25 BRANTLEY, AL 36009 | | J | 225 WOODLAND HEIGHTS DR, GREENVILLE AL-- SINGLE FAMILY RESIDENCE VALUE LISTED IS TAX ASSESSED VALUE | | | | | |
| | | | Value $            373,800.00 | | | | 285,170.31 | 0.00 |
| Account No. 9481 | | | 03-2006 | | | | | |
| Creditor #: 2 CAMDEN NATIONAL d/b/a Butler County Bank 3 Water Street Camden, AL 36726 | | - | SECURITY AGREEMENT COMPUTERS, EKG, TABLES, CHAIRS | | | | | |
| | | | Value $            19,000.00 | | | | 19,029.83 | 29.83 |
| Account No. | | | | | | | | |
| | | | | | | | | |
| | | | Value $ | | | | | |
| Account No. | | | | | | | | |
| | | | | | | | | |
| | | | Value $ | | | | | |

**0**    continuation sheets attached

| | | |
|---|---|---|
| Subtotal (Total of this page) | 304,200.14 | |
| Total (Report on Summary of Schedules) | 304,200.14 | |

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037

Form B6E
(10/05)

In re    **Deloris V. Victoria**                                              Case No. ___**06-31225**___
                                                 Debtor

# SCHEDULE E. CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name, mailing address, including zip code, and last four digits of the account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of the petition. Use a separate continuation sheet for each type of priority and label each with the type of priority.

The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C.§112; Fed.R.Bankr.P. 1007(m).

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether husband, wife, both of them or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community". If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Report the total of claims listed on each sheet in the box labeled "Subtotal" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

Report the total of amounts entitled to priority listed on each sheet in the box labeled "Subtotal" on each sheet. Report the total of all amounts entitled to priority listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. If applicable, also report this total on the Means Test form.

☐ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS** (Check the appropriate box(es) below if claims in that category are listed on the attached sheets.)

☐ **Domestic support obligations**
Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐ **Extensions of credit in an involuntary case**
Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(3).

☐ **Wages, salaries, and commissions**
Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions to qualifying independent sales representatives up to $10,000* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, which ever occurred first, to the extent provided in 11 U.S.C § 507 (a)(4).

☐ **Contributions to employee benefit plans**
Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

☐ **Certain farmers and fishermen**
Claims of certain farmers and fishermen, up to $4,925* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).

☐ **Deposits by individuals**
Claims of individuals up to $2,225* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided. 11 U.S.C. § 507(a)(7).

■ **Taxes and certain other debts owed to governmental units**
Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C § 507(a)(8).

☐ **Commitments to maintain the capital of an insured depository institution**
Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution. 11 U.S.C. § 507(a)(9).

☐ **Claims for death or personal injury while debtor was intoxicated**
Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance. 11 U.S.C. § 507(a)(10).

* Amounts are subject to adjustment on April 1, 2007, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

_1_    continuation sheets attached

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037

Form B6E - Cont
(10/05)

In re  **Deloris V. Victoria**
_____
                        Debtor

Case No. _____**06-31225**_____

# SCHEDULE E. CREDITORS HOLDING UNSECURED PRIORITY CLAIMS
### (Continuation Sheet)

Taxes and Certain Other Debts
Owed to Governmental Units

TYPE OF PRIORITY

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | Husband, Wife, Joint, or Community H / W / J / C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM | AMOUNT ENTITLED TO PRIORITY |
|---|---|---|---|---|---|---|---|---|
| Account No. **xx-xxx3639** **Creditor #: 1** **INTERNAL REVENUE SERVICE SPECIAL PROCEDURES FUNCTION 801 TOM MARTIN DR., ROOM 126 BIRMINGHAM, AL 35211** | - | | **940-941 2003-2005** | | | | **65,107.26** | **65,107.26** |
| Account No. **xx-xxx7031** **Creditor #: 2** **INTERNAL REVENUE SERVICE SPECIAL PROCEDURES FUNCTION 801 TOM MARTIN DR., ROOM 126 BIRMINGHAM, AL 35211** | | | **941  1999,2000,2005,2006** | | | | **42,096.91** | **42,096.31** |
| Account No. **1040 Tasxes** **Creditor #: 3** **INTERNAL REVENUE SERVICE SPECIAL PROCEDURES FUNCTION 801 TOM MARTIN DR., ROOM 126 BIRMINGHAM, AL 35211** | - | | **2005** | | | | **418.65** | **418.65** |
| Account No. **Creditor #: 4** **STATE OF ALABAMA DEPARTMENT OF REVENUE P.O. BOX 320001 MONTGOMERY, AL 36132** | - | | **2003 Taxes** | | | | **1,547.62** | **1,547.62** |
| Account No. | | | | | | | | |

Sheet __**1**__ of __**1**__ continuation sheets attached to
Schedule of Creditors Holding Unsecured Priority Claims

| | | |
|---|---|---|
| Subtotal (Total of this page) | **109,170.44** | **109,169.84** |
| Total (Report on Summary of Schedules) | **109,170.44** | **109,169.84** |

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

Form B6F
(10/05)

In re    **Deloris V. Victoria**                  Case No.    **06-31225**

                                 Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C.§112; Fed.R.Bankr.P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community maybe liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

☐    Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H W | J C | | | | | |
| **Account No.** | | | | 09-2005 | | | | |
| Creditor #: 1 CAMDEN NATIONAL 3 WATER STREET Camden, AL 36726 | | - | | LINE OF CREDIT | | | | |
| | | | | | | | | 2,545.00 |
| **Account No. x8652** | | | | 09-2004 | | | | |
| Creditor #: 2 CAMDEN NATIONAL 3 WATER STREET Camden, AL 36726 | | - | | DISPUTED DEBT | | | X | |
| | | | | | | | | 1.00 |
| **Account No. x7851** | | | | 06-2004 | | | | |
| Creditor #: 3 CAMDEN NATIONAL 3 WATER STREET Camden, AL 36726 | | - | | LOAN | | | | |
| | | | | | | | | 680.00 |
| **Account No. xxxxx2276** | | | | 03-2005 | | | | |
| Creditor #: 4 CENTURYTEL PO BOX 6001 Marion, LA 71260-6001 | | - | | COLLECTION ACCOUNT | | | | |
| | | | | | | | | 558.00 |

   __2__    continuation sheets attached                      Subtotal (Total of this page)          **3,784.00**

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037                          S/N:34718-070502    Best Case Bankruptcy

Form B6F - Cont.
(10/05)

In re    **Deloris V. Victoria**                                          Case No. _____ **06-31225** _____
                                                    Debtor

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | Husband, Wife, Joint, or Community | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| | | H W J C | | | | | |
| **Account No.** Representing: CENTURYTEL | | | **BANK OF AMERICA** **PO BOX 41466** **Philadelphia, PA 19101** | | | | |
| **Account No.** Creditor #: 5 **GENEZEN HEALTHCARE** **PO BOX 571811** **Houston, TX 77257** | | - | **2005** **Pending Suit non consumer debt** **BUTLER COUNTY CV 05-177** **Suit involving patient accounts** | | | | 17,282.19 |
| **Account No.** Representing: GENEZEN HEALTHCARE | | | **DAVID C. SCHWARTZ, ESQ.** **PO BOX 11366** **Birmingham, AL 35202-1366** | | | | |
| **Account No.** Creditor #: 6 **GREENVILLE HOSPITAL** **DBA LV STABLER MEMORIAL** **29 STABLER DR** **Greenville, AL 36037** | | - | **2005** **JUDGEMENT NON CONSUMER DEBT** **BUTLER COUNTY CV 05-133** **SUIT ON CONTRACT INVOLVING** **TERMINATION OF DOCTOR** | | | | 165,140.00 |
| **Account No.** Representing: GREENVILLE HOSPITAL | | | **GREER B. MALLETTE, ESQ** **505 20TH ST N., STE 1800** **Birmingham, AL 35203-2696** | | | | |

Sheet no. _1_ of _2_ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)    **182,422.19**

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037                                    Best Case Bankruptcy

Form B6F - Cont.
(10/05)

In re    **Deloris V. Victoria**                                                    Case No.    06-31225
                                                    Debtor

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H W J C | | | | | | |
| Account No. | | | | 08-1999 | | | | |
| Creditor #: 7 MBNA AMERICA PO BOX 17054 Wilmington, DE 19884 | X | J | | CREDIT CARD | | | | 9,663.00 |
| Account No. | | | | 10-1995 | | | | |
| Creditor #: 8 MBNA AMERICA PO BOX 17054 Wilmington, DE 19884 | X | J | | CREDIT CARD | | | | 3,378.00 |
| Account No. | | | | 04-1994 | | | | |
| Creditor #: 9 MBNA AMERICA PO BOX 17054 Wilmington, DE 19884 | X | J | | Non Consumer business account credit card for  primarily used by the Debtor's and Debtor Husband to pay income taxes. Account is in Husbands name. Debtors liability would be contingent, since used to pay taxes. | X | | | 70,912.00 |
| Account No. | | | | 12-1999 | | | | |
| Creditor #: 10 WHITNEY BANK 228 ST CHARLES AVE New Orleans, LA 70130 | - | | | LINE OF CREDIT | | | | 5,483.00 |
| Account No. | | | | | | | | |

Sheet no. __2__ of __2__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)    **89,436.00**

Total
(Report on Summary of Schedules)    **275,642.19**

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE THE MATTER OF:

Deloris V. Victoria                                    CASE NO. 06-31225-WRS

    Debtor,

---

### RESPONSE TO MOTION TO DISMISS

    Comes now the Debtor, by and through attorney, and in response to the motion to dismiss

would state as follows:

### Title 11 U.S.C. Section 707(a)

    The Debtor would state that Title 11 U.S.C. Section 707(a) is inapplicable to this case as none

of the elements of Title 11 U.S.C. Section 707(a) can be met.


§ 707.  Dismissal of a case or conversion to a case under chapter 11 or 13

(a) The court may dismiss a case under this chapter [11 USCS §§ 701 et seq.] only after notice
and a hearing and only for cause, including--
  (1) unreasonable delay by the debtor that is prejudicial to creditors;
  (2) nonpayment of any fees [or] and charges required under chapter 123 of title 28; and
  (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time
as the court may allow after the filing of the petition commencing such case, the information
required by paragraph (1) of section 521 [11 USCS § 521], but only on a motion by the United
States trustee.

    This is a case filed by a debtor that is severely in debt to both the creditor and the Internal

Revenue Service.  The Debtor has surrendered the bulk of her unencumbered assets to the

Trustee in Bankruptcy and she has allowed the trustee total inspection of her assets.  The

testimony of the Trustee, Daniel Hamm, will be that he has conducted an independent evaluation

of the Debtor's assets and he has concluded that the Debtor's values as stated in the petition are

fairly accurate and that he has a valid offer from the Debtor's husband to repurchase the assets

and he has received a partial payment of the agreed sum.  The Creditor attacks the Debtor's good

faith in filing the petition and although the Debtor states that she has filed the case in good faith,

good faith is not a basis for denial of the right to file a Chapter 7 case. As held in <u>In re RIS</u>

<u>Investment Group, Inc</u>., 298 B.R. 848, 852(Bankr. S.D. Fla. 2003):

> Chapter 7 makes no mention of a good faith requirement. Further, the relationship
> between debtor and creditor in Chapter 11 and 13 is significantly different than
> their relationship in Chapter 7. Id. Chapter 11 and 13 debtors are allowed to
> continue in possession of their assets and alter their contractual relationships with
> their creditors. Id. Chapter 7, on the other hand, ends the debtor-creditor
> relationship when the debtor metaphorically "throws in the towel." So long as the
> debtor is willing to surrender all of its assets, regardless of whether debtor's
> motive was grounded in good faith, the debtor is entitled to Chapter 7 protection.
> Id. (citing Katie Therin Kimlinger and William P. Wassweiler, The Good Faith
> Fable of 11 U.S.C. § 707(a): How Bankruptcy Courts have Invented a Good Faith
> Filing Requirement for Chapter 7 Debtors, 13 Bankr. Dev. J. 61, 65 (1996).

And <u>In re Farkas,</u> 343 B.R. 336 (Bankr. S.D. Fla. 2006):

> After reviewing the three lines of cases, this Court concluded that if a debtor, by
> way of the filing of a chapter 7 proceeding, was willing to surrender his or her
> non-exempt assets, regardless of the motive for the filing, the debtor nonetheless
> would be entitled to Chapter 7 protection. In re  RIS Inv. Group, Inc., 298
> B.R.848, 852 (Bankr. S.D. Fla. 2003), citing In re Padilla, at 1193. The Court is
> aware that there are numerous cases that have since been published on this issue
> in almost every Circuit. It appears that the Circuits continue to be split on the
> issue of bad faith and whether it constitutes cause to dismiss a chapter 7
> bankruptcy. Compare U.S. v. Pedigo, 329 B.R. 47 (S.D.Ind. 2005) (holding that
> the list contained in 11.U.S.C. § 707(a) is not exhaustive such that bad faith may
> constitute "cause" for dismissal in a chapter 7 bankruptcy) and In re Linehan, 326
> B.R. 474 (Bankr.Mass. 2005) (finding that a debtor's bad faith generally does not
> constitute "cause" for dismissal of a chapter 7 case). This Court continues to find
> the reasoning set forth in RIS Inv. Group, Inc. to be sound:

### Title 11 U.S.C. Section 707(b)

For the purposes of this hearing the Debtor, will file the following documents, the preliminary

proof of claim from the Internal Revenue Service, which the Debtor has been advised will be

received today in the amount of $107,203.87, The tax notices and transcripts from the Internal

Revenue service showing the Debtor' previous schedules showing the debt to the Internal

Revenue Service in the amount of approximately $60,000.00, the Reaffirmation agreement from

Brantley Bank and Trust showing their debt at $19,029.83, the Reaffirmation agreement from

Brantley Bank showing the Home Mortgage to be $285,170.31, the lease from Greenville

Hospital showing the balance on the lease contract at $18,500.00, the Genizen lawsuit , which

when figured with interest to the date of bankruptcy would amount to $ 15,747.08, and the

docket sheet from the Greenville Hospital lawsuit, which when figured with judgment interest

for 48 day would amount to  165,267.53.  The Debtor will testify to the balance of the small

debts to

Camden National Bank and CenturyTel.  The Debtor will introduce the proof of claim of

Whitney Bank, which will show the Debt at $4,715.45.  The testimony will clearly establish that

the Business Debts of the Debtor exceed the Consumer Debts of the Debtor.  The testimony of

the Debtor will be clear that Title 11 U.S.C. 707(b) does not apply to this action.  Further the

testimony will clearly show that the Debtor is not eligible to be a debtor under Chapter 13.

    Title 11 U.S.C. Section 707 (b) states as follows (emphasis supplied):

(b) (1) After notice and a hearing, the court, on its own motion or on a motion by the United
States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss
a case filed by an individual debtor under this chapter *whose debts are primarily consumer
debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of
this title [11 USCS §§ 1101 et seq. or 1301 et seq.], if it finds that the granting of relief would
be an abuse of the provisions of this chapter [11 USCS §§ 701 et seq.].* In making a
determination whether to dismiss a case under this section, the court may not take into
consideration whether a debtor has made, or continues to make, charitable contributions (that
meet the definition of "charitable contribution" under section 548(d)(3) [11 USCS § 548(d)(3)])
to any qualified religious or charitable entity or organization (as that term is defined in section
548(d)(4) [11 USCS § 548(d)(4)]).
  (2) (A) (I) In considering under paragraph (1) whether the granting of relief would be an abuse
of the provisions of this chapter [11 USCS §§ 701 et seq.], the court shall presume abuse exists if
the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii),
and (iv), and multiplied by 60 is not less than the lesser of–

(I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $ 6,575, whichever is greater; or

(II) $ 10,950.

(ii) (I) The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. Such expenses shall include reasonably necessary health insurance, disability insurance, and health savings account expenses for the debtor, the spouse of the debtor, or the dependents of the debtor. Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts. In addition, the debtor's monthly expenses shall include the debtor's reasonably necessary expenses incurred to maintain the safety of the debtor and the family of the debtor from family violence as identified under section 309 [320] of the Family Violence Prevention and Services Act [42 USCS § 10421], or other applicable Federal law. The expenses included in the debtor's monthly expenses described in the preceding sentence shall be kept confidential by the court. In addition, if it is demonstrated that it is reasonable and necessary, the debtor's monthly expenses may also include an additional allowance for food and clothing of up to 5 percent of the food and clothing categories as specified by the National Standards issued by the Internal Revenue Service.

(II) In addition, the debtor's monthly expenses may include, if applicable, the continuation of actual expenses paid by the debtor that are reasonable and necessary for care and support of an elderly, chronically ill, or disabled household member or member of the debtor's immediate family (including parents, grandparents, siblings, children, and grandchildren of the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case who is not a dependent) and who is unable to pay for such reasonable and necessary expenses.

(III) In addition, for a debtor eligible for chapter 13 [11 USCS §§ 1301 et seq.], the debtor's monthly expenses may include the actual administrative expenses of administering a chapter 13 [11 USCS §§ 1301 et seq.] plan for the district in which the debtor resides, up to an amount of 10 percent of the projected plan payments, as determined under schedules issued by the Executive Office for United States Trustees.

(IV) In addition, the debtor's monthly expenses may include the actual expenses for each dependent child less than 18 years of age, not to exceed $ 1,650 per year per child, to attend a private or public elementary or secondary school if the debtor provides documentation of such expenses and a detailed explanation of why such expenses are reasonable and necessary, and why such expenses are not already accounted for in the National Standards, Local Standards, or Other Necessary Expenses referred to in subclause (I).

(V) In addition, the debtor's monthly expenses may include an allowance for housing and utilities, in excess of the allowance specified by the Local Standards for housing and utilities issued by the Internal Revenue Service, based on the actual expenses for home energy costs if the debtor provides documentation of such actual expenses and demonstrates that such actual expenses are reasonable and necessary.

(iii) The debtor's average monthly payments on account of secured debts shall be calculated as the sum of--

(I) the total of all amounts scheduled as contractually due to secured creditors in each

month of the 60 months following the date of the petition; and

(II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title [11 USCS §§ 1301 et seq.], to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;

divided by 60.

(iv) The debtor's expenses for payment of all priority claims (including priority child support and alimony claims) shall be calculated as the total amount of debts entitled to priority, divided by 60.

(B) (I) In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

(ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide--

(I) documentation for such expense or adjustment to income; and

(II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.

(iii) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.

(iv) The presumption of abuse may only be rebutted if the additional expenses or adjustments to income referred to in clause (I) cause the product of the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv) of subparagraph (A) when multiplied by 60 to be less than the lesser of--

(I) 25 percent of the debtor's nonpriority unsecured claims, or $ 6,000, whichever is greater; or

(II) $ 10,000.

© As part of the schedule of current income and expenditures required under section 521 [11 USCS § 521], the debtor shall include a statement of the debtor's current monthly income, and the calculations that determine whether a presumption arises under subparagraph (A)(I), that show how each such amount is calculated.

(D) Subparagraphs (A) through © shall not apply, and the court may not dismiss or convert a case based on any form of means testing, if the debtor is a disabled veteran (as defined in section 3741(1) of title 38 [38 USCS § 3741(1)]), and the indebtedness occurred primarily during a period during which he or she was--

(I) on active duty (as defined in section 101(d)(1) of title 10 [10 USCS § 101(d)(1)]); or

(ii) performing a homeland defense activity (as defined in section 901(1) of title 32 [32 USCS § 901(1)]).

(3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter [11 USCS §§ 701 et seq.] in a case in which the presumption in subparagraph (A)(I) of such paragraph does not arise or is rebutted, the court shall consider--

(A) whether the debtor filed the petition in bad faith; or

(B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

(4) (A) The court, on its own initiative or on the motion of a party in interest, in accordance with the procedures described in rule 9011 of the Federal Rules of Bankruptcy Procedure, may order the attorney for the debtor to reimburse the trustee for all reasonable costs in prosecuting a motion filed under section 707(b) [11 USCS § 707(b)], including reasonable attorneys' fees, if--

(I) a trustee files a motion for dismissal or conversion under this subsection; and

(ii) the court--

(I) grants such motion; and

(II) finds that the action of the attorney for the debtor in filing a case under this chapter [11 USCS §§ 701 et seq.] violated rule 9011 of the Federal Rules of Bankruptcy Procedure.

(B) If the court finds that the attorney for the debtor violated rule 9011 of the Federal Rules of Bankruptcy Procedure, the court, on its own initiative or on the motion of a party in interest, in accordance with such procedures, may order--

(I) the assessment of an appropriate civil penalty against the attorney for the debtor; and

(ii) the payment of such civil penalty to the trustee, the United States trustee (or the bankruptcy administrator, if any).

© The signature of an attorney on a petition, pleading, or written motion shall constitute a certification that the attorney has--

(I) performed a reasonable investigation into the circumstances that gave rise to the petition, pleading, or written motion; and

(ii) determined that the petition, pleading, or written motion--

(I) is well grounded in fact; and

(II) is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law and does not constitute an abuse under paragraph (1).

(D) The signature of an attorney on the petition shall constitute a certification that the attorney has no knowledge after an inquiry that the information in the schedules filed with such petition is incorrect.

(5) (A) Except as provided in subparagraph (B) and subject to paragraph (6), the court, on its own initiative or on the motion of a party in interest, in accordance with the procedures described in rule 9011 of the Federal Rules of Bankruptcy Procedure, may award a debtor all reasonable costs (including reasonable attorneys' fees) in contesting a motion filed by a party in interest (other than a trustee or United States trustee (or bankruptcy administrator, if any)) under this subsection if--

(I) the court does not grant the motion; and

(ii) the court finds that--

(I) the position of the party that filed the motion violated rule 9011 of the Federal Rules of Bankruptcy Procedure; or

(II) the attorney (if any) who filed the motion did not comply with the requirements of clauses (I) and (ii) of paragraph (4)©, and the motion was made solely for the purpose of coercing a debtor into waiving a right guaranteed to the debtor under this title.

(B) A small business that has a claim of an aggregate amount less than $ 1,100 shall not be subject to subparagraph (A)(ii)(I).

© For purposes of this paragraph--

(I) the term "small business" means an unincorporated business, partnership, corporation, association, or organization that--

(I) has fewer than 25 full-time employees as determined on the date on which the motion is filed; and

(II) is engaged in commercial or business activity; and

  (ii) the number of employees of a wholly owned subsidiary of a corporation includes the employees of--

    (I) a parent corporation; and

    (II) any other subsidiary corporation of the parent corporation.

(6) Only the judge or United States trustee (or bankruptcy administrator, if any) may file a motion under section 707(b) [11 USCS § 707(b)], if the current monthly income of the debtor, or in a joint case, the debtor and the debtor's spouse, as of the date of the order for relief, when multiplied by 12, is equal to or less than--

  (A) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

  (B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or

    © in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $ 575 per month for each individual in excess of 4.

(7) (A) No judge, United States trustee (or bankruptcy administrator, if any), trustee, or other party in interest may file a motion under paragraph (2) if the current monthly income of the debtor, including a veteran (as that term is defined in section 101 of title 38 [38 USCS § 101]), and the debtor's spouse combined, as of the date of the order for relief when multiplied by 12, is equal to or less than--

    (I) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

    (ii) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or

    (iii) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $ 525 per month for each individual in excess of 4.

  (B) In a case that is not a joint case, current monthly income of the debtor's spouse shall not be considered for purposes of subparagraph (A) if--

    (I) (I) the debtor and the debtor's spouse are separated under applicable nonbankruptcy law; or

    (II) the debtor and the debtor's spouse are living separate and apart, other than for the purpose of evading subparagraph (A); and

    (ii) the debtor files a statement under penalty of perjury--

    (I) specifying that the debtor meets the requirement of subclause (I) or (II) of clause (I); and

    (II) disclosing the aggregate, or best estimate of the aggregate, amount of any cash or money payments received from the debtor's spouse attributed to the debtor's current monthly income.

The creditor in making its calculations is flawed on two points.  The testimony is

uncontradicted that the Debtor borrowed from MBNA the sum of approximately $65,000 to pay

past due income taxes on her husband's credit card, which although technically not the debt of

the Debtor, for direct liability of the income taxes, this does constitute a non-dischargeable debt

of the Debtor pursuant to Title 11 U.S.C. Section 523a)(14). Although there is a question as to

whether or not this is a debt of the Debtor, for the purposes of this hearing the admission of this

Debt is unnecessary for the pertinent calculations. For the purposes of including this debt, the

Debtor would call the attention fo this court to the case of <u>American Express Centurion Bank v.</u>

<u>Gavin (In re Gavin)</u>, 248 B.R. 464 (Bankr. M.D. Fla. 1999):

> Defendant's argument in response to nondischargeability is that the debt is no
> longer owed to the Internal Revenue Service, but is now an unsecured debt owed
> to American Express. However, Section 523(a)(14) directly counters this
> argument. In MBNA America v. Chrusz (In re Chrusz), 196 B.R. 221, 224
> (Bankr. D. N.H. 1996) funds from a credit card check made to "Cash Deposit"
> were used to pay nondischargeable federal income taxes. The Chrusz Court found
> that the funds traceable to payment of nondischargeable Section 523(a)(1) debt
> were nondischargeable under Section 523(a)(14). Id. See also Arthur B.
> Federman, The Bankruptcy Reform Act of 1994, 51 J. Mo. B. 105, 106 (1995)
> description of this .debtors cannot borrow funds with credit card to pay taxes that
> would be nondischargeable). Defendant postulates various scenarios of
> converting nondischargeable debt to dischargeable debt. However, Section
> 523(a)(14) eliminates potential benefits of substituting nondischargeable tax debt
> under Section 523(a)(1) with dischargeable credit card debt.

The Debtor states that her debt structure is as follows:

| | |
|---|---|
| Home Mortgage Per Reaffirmation Agreement<br>(Debtor is joint Debtor on the Note and Mortgage) | $285,170.31 |
| | |
| Business Debt: | |
| Greenville Hospital | $ 165,267.53 |
| Greenville Hospital Lease | $  18,500.00 |
| Camden National Bank Note | $  19,029.83 |
| Internal Revenue Service | $ 109,425.20 |
| Whitney Bank Line of Credit | $   4,715.45 |
| Genizen | $  15,747.08 |
| Camden National Bank | $   3,225.00 |
| CenturyTel | $     558.00 |
| TOTAL | $336,468.09 |
| | |
| MBNA CLAIM FOR PAYMENTS ON TAXES<br>CHARGED ON HUSBANDS CREDIT CARD | $ 65.000.00 |

In support of the proposition that Title 11 U.S.C. Section 707(b) does not apply to this case

the Debtor would cite the Court to <u>Beacher v. Pena (In re Beacher)</u>, 358 B.R. 917, (Bankr. S.D.

Tex. 2007):

> If the debtor's debts are not primarily consumer debts, § 707(b)(2) does not apply
> and one never gets to § 707(b)(2)©. Therefore, the statute does not require the
> filing of Form B22A unless the debtor's debts are primarily consumer debts.
>
> Although the statute defines "consumer debt," it does not define "primarily." In
> this case, the U.S. Trustee argues that."primarily consumer debt" means that more
> than 50% of the amount of debt is consumer debt, without regard to whether more
> than 50% of the number of debts is consumer debt. Counsel for Debtors agreed
> and the Court so holds.
>
> However, if the debtor's debts are primarily consumer debts, then the information
> in Form B22A must be filed as part of the information regarding income and
> expenditures, in effect the statute "deems" § 707(b)(2)© requirements to be part
> of § 521(a)(1)(B) requirements if the debtor's debts are primarily consumer debts.
> .Section 521(i)(1) provides for automatic dismissal of a case if the debtor has not
> timely filed the information required by § 521(a)(1)(B). Once the 45 day period
> has expired, the Court has no authority to extend the time or to excuse the failure
> to file, whether the failure was negligence or otherwise.

Therefore, individual chapter 7 debtors have three choices: (1) file Form B22A in all cases,

incurring substantial time and expense in some cases to provide data that is not required and that

has no use in the bankruptcy case; (2) obtain a judicial determination during the first 45 days of a

case that the debts are not primarily consumer debts, or (3) refuse to file Form B22A and run the

risk that the court may at some indeterminate future time conclude that debts were primarily

consumer debts and that the case has been automatically dismissed by the explicit terms of the

statute.

Conclusion

The Creditor lacks the standing to bring the Title 11 U.S.C. Section 707(b) motion to dismiss

this action, as this section does not apply to the Debtor and Title 11 U.S.C. 707(a) will not

substantiate a dismissal in this action.

    __/s/ Richard D. Shinbaum_____
    Richard Shinbaum, SHI007
    Attorney for the Debtor

Of Counsel:

Shinbaum, Abell, McLeod and Campbell, P.C..
Post Office Box 201
Montgomery, Alabama 36101
(334) 269-4440
(334) 263-4096 Fax

## CERTIFICATE OF SERVICE

   I hereby certify that a copy of the above styled motion was this day served upon the
following, by placing the same in the United States Mail, properly addressed  and postage
prepaid, and/or electronics transmission this the 8th day of May, 2007.


Bankruptcy Admin.
Bankruptcy Administrator
U. S. Bankruptcy Administrator
One Church Street
Montgomery, AL 36104

Trustee
Daniel G. Hamm
The Law Offices of Daniel G. Hamm
560 South McDonough St., Ste A
Montgomery, AL 36104
334-269-0269

Bradley Richard Hightower
Christian & Small L.L.P.
505 20th St N Ste 1800
Birmingham , AL 35203-2696
brhightower@csattorneys.com

    __/s/ Richard D. Shinbaum_____
    Richard D. Shinbaum
    Attorney for the Debtor

FORM B10 (Official Form 10)(04/07)

| UNITED STATES BANKRUPTCY COURT | MIDDLE | DISTRICT OF | ALABAMA | PROOF OF CLAIM |
|---|---|---|---|---|

| Name of Debtor: DELORIS V. VICTORIA | Case Number 06-31225 |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

**Name of Creditor** (The person or other entity to whom the debtor owes money or property):

Department of the Treasury - Internal Revenue Service

**Name and address where notices should be sent:**

Internal Revenue Service
INTERNAL REVENUE SERVICE
801 TOM MARTIN DRIVE
Stop 126
BIRMINGHAM, AL 35211
Telephone number: (205) 912-5294  Creditor #:1363923

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

Last four digits of account or other number by which creditor identifies debtor:        see attachment

Check here ☐ replaces
if this claim ☐ amends   a previously filed claim, dated: _____

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☒ Taxes
- ☐ Other_____

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Last four digits of your SS #: _____
  Unpaid compensation for services performed
  from _____ to _____
       (date)        (date)

**2. Date debt was incurred:**    see attachment

**3. If court judgment, date obtained:**

**4. Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed.
See reverse side for important explanations.

**Unsecured Nonpriority Claim** $ ____25,448.44____

☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**Unsecured Priority Claim.**

☒ Check this box if you have an unsecured claim, all or part of which is entitled to priority.

Amount entitled to priority $ ___28,440.66___

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

**Secured Claim.**
☒ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☒ Real Estate  ☒ Motor Vehicle  ☒ Other   see below *

Value of Collateral: $   see below*
* All of debtor(s) right, title and interest to property - 26 U.S.C § 6321.
Amount of arrearage and other charges at time case filed included in secured claim, if any: $   55,536.10

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☒ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**5. Total Amount of Claim at Time Case Filed:** $

| 25,448.44 | 55,536.10 | 28,440.66 | 109,425.20 |
|---|---|---|---|
| (unsecured) | (secured) | (priority) | (Total) |

☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**6. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

**7. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. Date-Stamped Copy:** To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

| Date 05/08/2007 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): /s/ KENYA L BUFFORD, INSOLVENCY SPECIALIST |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# Proof of Claim for Internal Revenue Taxes

Department of the Treasury/Internal Revenue Service

**Form 10**
Attachment

| | |
|---|---|
| **Docket Number** | 06-31225 |
| **Type of Bankruptcy Case** | Chapter 7A |
| **Date of Petition** | 09/25/2006 |

**In the Matter of:**

DELORIS V. VICTORIA
225 WOODLAND HEIGHTS DR
GREENVILLE, AL 36037

The United States has not identified a right of setoff or counterclaim. However, this determination is based on available data and is not intended to waive any right to setoff against this claim debts owed to this debtor by this or any other federal agency. All rights of setoff are preserved and will be asserted to the extent lawful.

## Secured Claims (Notices of Federal tax lien filed under internal revenue laws before petition date)

| Taxpayer ID Number | Kind of Tax | Tax Period | Date Tax Assessed | Tax Due | Penalty to Petition Date | Interest to Petition Date | Notice of Tax Lien Filed: Date | Office Location |
|---|---|---|---|---|---|---|---|---|
| 72-1357031 | WT-FICA | 12/31/2000 | 12/08/2003 | $9,879.22 | $3,674.49 | $4,287.41 | | |
| 63-1103639 | FUTA | 12/31/2003 | 12/05/2005 | $3,209.29 | $1,908.26 | $539.68 | 04/27/2006 | Butler County |
| 63-1103639 | WT-FICA | 06/30/2004 | 08/22/2005 | $4,500.61 | $3,648.29 | $850.70 | | Right to setoff |
| 63-1103639 | WT-FICA | 09/30/2004 | 08/22/2005 | $4,227.70 | $2,494.78 | $549.33 | 10/28/2005 | Butler County |
| 63-1103639 | WT-FICA | 12/31/2004 | 08/22/2005 | $2,185.67 | $893.70 | $253.12 | 10/28/2005 | Butler County |
| 63-1103639 | FUTA | 12/31/2004 | 12/05/2005 | $2,170.00 | $769.02 | $251.31 | 04/27/2006 | Butler County |
| 63-1103639 | WT-FICA | 03/30/2005 | 12/05/2005 | $4,047.01 | $1,999.04 | $410.30 | | Right to setoff |
| 63-1103639 | WT-FICA | 06/30/2005 | 12/12/2005 | $1,732.41 | $907.33 | $147.43 | 04/27/2006 | Butler County |
| | | | | $31,951.91 | $16,294.91 | $7,289.28 | | |

**Total Amount of Secured Claims:** $55,536.10

## Unsecured Priority Claims under section 507(a)(8) of the Bankruptcy Code

| Taxpayer ID Number | Kind of Tax | Tax Period | Date Tax Assessed | Tax Due | Interest to Petition Date |
|---|---|---|---|---|---|
| 72-1357031 | WT-FICA | 09/30/1997 | ESTIMATED LIABILITY * | $250.00 | $0.00 |
| 63-1103639 | WT-FICA | 06/30/1999 | 1 UNASSESSED-NO RETURN | $1,454.14 | $860.28 |
| 72-1357031 | MISC. PEN. | 12/31/1999 | 10/28/2002 | $0.00 | $186.24 |
| 72-1357031 | WT-FICA | 06/30/2001 | 1 UNASSESSED-NO RETURN | $1,463.00 | $0.00 |
| 72-1357031 | WT-FICA | 09/30/2001 | 1 UNASSESSED-NO RETURN | $1,463.00 | $0.00 |
| 72-1357031 | WT-FICA | 12/31/2001 | 1 UNASSESSED-NO RETURN | $1,463.00 | $0.00 |
| 72-1357031 | FUTA | 12/31/2001 | 1 UNASSESSED-NO RETURN | $2,500.00 | $0.00 |
| 72-1357031 | FUTA | 12/31/2002 | 1 UNASSESSED-NO RETURN | $2,500.00 | $0.00 |
| 72-1357031 | WT-FICA | 06/30/2003 | 1 UNASSESSED-NO RETURN | $1,463.00 | $0.00 |
| 72-1357031 | FUTA | 12/31/2003 | 1 UNASSESSED-NO RETURN | $2,500.00 | $0.00 |
| 63-1103639 | MISC. PEN. | 12/31/2003 | 10/09/2006 | $0.00 | $0.00 |
| 72-1357031 | FUTA | 12/31/2004 | 1 UNASSESSED-NO RETURN | $2,500.00 | $0.00 |
| XXX-XX-7367 | INCOME | 12/31/2005 | 1 UNASSESSED-NO RETURN | $5,000.00 | $0.00 |

(Continued on Page 2)

1 UNASSESSED TAX LIABILITIE(S) HAVE BEEN LISTED ON THIS CLAIM BECAUSE OUR RECORDS SHOW NO RETURN(S) FILED. WHEN THE DEBTOR(S) FILES THE RETURN OR PROVIDES OTHER INFORMATION AS REQUIRED BY LAW THE CLAIM WILL BE AMENDED.

# Proof of Claim for Internal Revenue Taxes

Department of the Treasury/Internal Revenue Service

**Form 10**
Attachment

**In the Matter of:** DELORIS V. VICTORIA
225 WOODLAND HEIGHTS DR
GREENVILLE, AL 36037

| Docket Number |
|---|
| 06-31225 |
| **Type of Bankruptcy Case** |
| Chapter 7A |
| **Date of Petition** |
| 09/25/2006 |

## Unsecured Priority Claims (Continued from Page 1)

| Taxpayer ID Number | Kind of Tax | Tax Period | Date Tax Assessed | Tax Due | Interest to Petition Date |
|---|---|---|---|---|---|
| 72-1357031 | WT-FICA | 06/30/2006 | 1 UNASSESSED-NO RETURN | $2,419.00 | $0.00 |
| 72-1357031 | WT-FICA | 09/30/2006 | 1 UNASSESSED-NO RETURN | $2,419.00 | $0.00 |
| | | | | $27,394.14 | $1,046.52 |

**Total Amount of Unsecured Priority Claims:** $28,440.66

## Unsecured General Claims

Penalty to date of petition on unsecured priority claims (including interest thereon) . . . . . . . . . $25,448.44

**Total Amount of Unsecured General Claims:** $25,448.44

1 UNASSESSED TAX LIABILITIES(S) HAVE BEEN LISTED ON THIS CLAIM BECAUSE OUR RECORDS SHOW NO RETURN(S) FILED. WHEN THE DEBTOR(S) FILES THE RETURN OR PROVIDES OTHER INFORMATION AS REQUIRED BY LAW THE CLAIM WILL BE AMENDED.

1872                                                            COURT RECORDING DATA

--------------------------------------------+--------------------------------------------

| INTERNAL REVENUE SERVICE | Lien Recorded : 10/28/2005 - 11:01AM |
| FACSIMILE FEDERAL TAX LIEN DOCUMENT | Recording Number: 49169 |
| | UCC Number : |
| | Liber : 0029 |
| BANKRUPTCY DOCKET: 06-31225@ALM | Page : 190 |

--------------------------------------------+--------------------------------------------

| Area: SMALL BUSINESS/SELF EMPLOYED #5 | IRS Serial Number: 254682005 |
| Lien Unit Phone: (800) 913-6050 | |

--------------------------------------------+--------------------------------------------

This Lien Has Been Filed in Accordance with
Internal Revenue Regulation 301.6323(f)-1.

--------------------------------------------------------------------------------

Name of Taxpayer :
  DOLORES V VICTORIA


--------------------------------------------------------------------------------

Residence :
  PO BOX 810
  GREENVILLE, AL 36037-0810

--------------------------------------------------------------------------------

With respect to each assessment below, unless notice of lien
is refiled by the date in column(e), this notice shall constitute
the certificate of release of lien as defined in IRC 6325(a).

| Form (a) | Period (b) | ID Number (c) | Assessed (d) | Refile Deadline (e) | Unpaid Balance (f) |
|---|---|---|---|---|---|
| 941 | 03/31/2004 | 63-1103639 | 08/22/2005 | 09/21/2015 | $5,764.82 |
| 941 | 06/30/2004 | 63-1103639 | 08/22/2005 | 09/21/2015 | $9,048.97 |
| 941 | 09/30/2004 | 63-1103639 | 08/22/2005 | 09/21/2015 | $6,259.20 |
| 941 | 12/31/2004 | 63-1103639 | 08/22/2005 | 09/21/2015 | $2,840.33 |

--------------------------------------------------------------------------------

| Filed at: Judge of Probate Butler County Greenville, AL 36037 | Total | $23,913.32 |

--------------------------------------------------------------------------------

This notice was prepared and executed at DALLAS, TX
on this, the 19th day of October, 2005.

--------------------------------------------------------------------------------

| Authorizing Official: L. F. SANKEY | Title: REVENUE OFFICER    28-02-2738 |

--------------------------------------------------------------------------------

```
INTERNAL REVENUE SERVICE              Lien Recorded   : 04/27/2006 - 12:22PM
FACSIMILE FEDERAL TAX LIEN DOCUMENT   Recording Number:
                                      UCC Number      :
                                      Liber           : 29
BANKRUPTCY DOCKET: 06-31225@ALM       Page            : 511
```

| | |
|---|---|
| Area: SMALL BUSINESS/SELF EMPLOYED #5 | IRS Serial Number: 285508506 |
| Lien Unit Phone: (800) 913-6050 | |

```
              This Lien Has Been Filed in Accordance with
              Internal Revenue Regulation 301.6323(f)-1.
```

Name of Taxpayer :
  DOLORES V VICTORIA


Residence :
  PO BOX 810
  GREENVILLE, AL 36037-0810

With respect to each assessment below, unless notice of lien
is refiled by the date in column(e), this notice shall constitute
the certificate of release of lien as defined in IRC 6325(a).

| Form (a) | Period (b) | ID Number (c) | Assessed (d) | Refile Deadline (e) | Unpaid Balance (f) |
|---|---|---|---|---|---|
| 940 | 12/31/2003 | 63-1103639 | 12/05/2005 | 01/04/2016 | $5,180.87 |
| 940 | 12/31/2004 | 63-1103639 | 12/05/2005 | 01/04/2016 | $2,916.17 |
| 941 | 03/31/2005 | 63-1103639 | 12/05/2005 | 01/04/2016 | $5,917.53 |
| 941 | 06/30/2005 | 63-1103639 | 12/12/2005 | 01/11/2016 | $2,558.85 |

| | | |
|---|---|---|
| Filed at: Judge of Probate Butler County Greenville, AL 36037 | Total | $16,573.42 |

This notice was prepared and executed at DALLAS, TX
on this, the 19th day of April, 2006.

| Authorizing Official: | Title: | |
|---|---|---|
| L. F. SANKEY | REVENUE OFFICER | 25-02-2738 |



STATE OF ALABAMA

--VS--

VICTORIA DOLORES V MD
PO BOX 810
GREENVILLE AL  36037-0810



**STATE OF ALABAMA**
## DEPARTMENT OF REVENUE
MONTGOMERY, AL 36132

NOTICE OF
# FINAL ASSESSMENT

TYPE OF TAX: WITHHOLDING
TAXPAYER IDENTIFICATION #: 631103639
ASSESSMENT #: 0001115044
TAX PERIOD: YEAR 2003

ACCT #:    0000294878
SECTION:   7480
FORM:      W-2

ider provisions of the Code of Alabama 1975, as amended, the Department of Revenue hereby enters final assessment of
: tax liability described:

ADDITIONAL TAX DUE. . . . . . . . . . . . .$ 1,158.45
PENALTY . . . . . . . . . . . . . . . . . .$   231.66
INTEREST. . . . . . . . . . . . . . . . . .$   157.51
RETURNED CHECK SERVICE CHARGE . . . . . . .$      .00
BALANCE NOW DUE . . . . . . . . . . . . . .$ 1,547.62

ı have the right to appeal this assessment to either the Administrative Law Division of the Revenue Department or
cuit Court. The appeal must be made within thirty days of the final assessment date and pursuant to the provisions of
92-186. See the reverse side for an additional explanation of your appeal rights.

Entered: JUNE 15, 2006

STATE OF ALABAMA, DEPARTMENT OF REVENUE

By: *Cynthia Underwood*
Assistant Commissioner of Revenue

:P THIS PART FOR YOUR RECORDS
- - - - - - - - - - - - - - - - - - - - - - - -
'URN THIS PART WITH PAYMENT

TYPE OF TAX: IW
TAX PERIOD ENDING: 12-31-2003
FORM: A-3
SECTION: 7480

ACCT #: 0000294878
TIN: 0631103639
ASSESSMENT #: 0001115044
ENTERED: 06-15-2006

TAX, PENALTY, INTEREST. . . . . . . . . . . . .$ 1,547.62
RETURNED CHECK SERVICE CHARGE . . . . . . . . . .$      .00

PAY THIS AMOUNT . . . . . . . . . . . . . . . .$ 1,547.62

VICTORIA DOLORES V MD
PO BOX 810
GREENVILLE AL  36037-0810

MAIL TO: ALABAMA DEPARTMENT OF REVENUE
         WITHHOLDING TAX ASSESSMENT SECTION
         PO BOX 327480
         MONTGOMERY AL  36132-7480

PHONE: (334) 242-1300  FAX: (334) 242-0112

2006/10/16 09:46:12



# Internal Revenue Service
DEPARTMENT OF THE TREASURY ——————————— e-services ———————————————

| This Product Contains Sensitive Taxpayer Data |
|---|

## Account Transcript

Request Date: 10-16-2006
Response Date: 10-16-2006
IRS Employee Number: 56LDB
Tracking Number: 100009775164

FORM NUMBER: 1040                    TAX PERIOD: Dec. 31, 2002

TAXPAYER IDENTIFICATION NUMBER:              -6110
SPOUSE TAXPAYER IDENTIFICATION NUMBER:        7367

EDGAR T & DELORES V VICTORIA
PO BOX 810
GREENVILLE, AL 36037-0810-101

Any minus sign shown below signifies a credit amount.

ACCOUNT BALANCE:                        0.00
ACCRUED INTEREST:                       0.00    AS OF: Jan. 09, 2006
ACCRUED PENALTY:                        0.00    AS OF: Jan. 09, 2006


ACCOUNT BALANCE
PLUS ACCRUALS:                          0.00


** EXEMPTIONS:                          02       ** FILING
                                                    STATUS: Married Filing Joint
** ADJUSTED GROSS INCOME:          244,033.00
** TAXABLE INCOME:                 183,449.00
   TAX PER RETURN:                  60,730.00
** SE TAXABLE INCOME
TAXPAYER:                           84,900.00
** SE TAXABLE INCOME SPOUSE:             0.00
** TOTAL SELF EMPLOYMENT
TAX:                                14,710.00


** PER RETURN OR AS ADJUSTED


RETURN DUE DATE OR RETURN RECEIVED DATE (WHICHEVER IS LATER): Oct. 31, 2005
PROCESSING DATE: Dec. 26, 2005

| TRANSACTIONS |
|---|

| CODE | EXPLANATION OF TRANSACTION | CYCLE | DATE | AMOUNT |
|------|----------------------------|-------|------|--------|
| 150 | RETURN FILED AND TAX ASSESSED 09221-330-33536-5 | 20055008 | 12-26-2005 | $60,730.00 |
| 806 | WITHHOLDING CREDIT | | 04-15-2003 | -$36,567.00 |
| 663 | ESTIMATED TAX/FEDERAL TAX DEPOSIT | | 04-17-2002 | -$25,000.00 |
| 662 | CORRECTION OF ESTIMATED TAX PAYMENT 1040 200112 | | 04-17-2002 | $25,000.00 |
| 670 | SUBSEQUENT PAYMENT | | 04-16-2003 | -$25,000.00 |
| 460 | EXTENSION OF TIME TO FILE EXT. DATE 08-15-2003 | | 04-15-2003 | $0.00 |
| 460 | EXTENSION OF TIME TO FILE EXT. DATE 10-15-2003 | | 08-15-2003 | $0.00 |
| 826 | OVERPAYMENT CREDIT TRANSFERRED 1040 200312 | | 04-15-2003 | $535.66 |
| 776 | INTEREST DUE TAXPAYER | | 11-21-2005 | -$1.22 |
| 826 | OVERPAYMENT CREDIT TRANSFERRED 1040 200412 | | 04-15-2003 | $301.34 |
| 856 | OVERPAYMENT INTEREST TRANSFERRED 1040 200412 | | 11-21-2005 | $1.22 |

This Product Contains Sensitive Taxpayer Data



# Internal Revenue Service
## DEPARTMENT OF THE TREASURY — e-services —

| This Product Contains Sensitive Taxpayer Data |
| --- |

## Account Transcript

Request Date: 10-16-2006
Response Date: 10-16-2006
IRS Employee Number: 56LDB
Tracking Number: 100009775164

FORM NUMBER: 1040                    TAX PERIOD: Dec. 31, 2003

TAXPAYER IDENTIFICATION NUMBER:                    -6110
SPOUSE TAXPAYER IDENTIFICATION NUMBER:             -7367

EDGAR T & DELORES V VICTORIA
PO BOX 810
GREENVILLE, AL 36037-0810-101

Any minus sign shown below signifies a credit amount.

ACCOUNT BALANCE:                    0.00
ACCRUED INTEREST:                   0.00    AS OF: May  29, 2006
ACCRUED PENALTY:                    0.00    AS OF: May  29, 2006

ACCOUNT BALANCE
PLUS ACCRUALS:                      0.00

** EXEMPTIONS:                        02      ** FILING
                                                 STATUS: Married Filing Joint
** ADJUSTED GROSS INCOME:        188,777.00
** TAXABLE INCOME:               136,343.00
   TAX PER RETURN:                42,043.00
** SE TAXABLE INCOME
TAXPAYER:                         87,000.00
** SE TAXABLE INCOME SPOUSE:          0.00
** TOTAL SELF EMPLOYMENT
TAX:                             16,052.00

** PER RETURN OR AS ADJUSTED

RETURN DUE DATE OR RETURN RECEIVED DATE (WHICHEVER IS LATER): Oct. 18, 2004
                                    PROCESSING DATE: Dec. 06, 2004

| TRANSACTIONS |
| --- |

2006/10/16 09:48:51

Page:3/4

| CODE | EXPLANATION OF TRANSACTION | CYCLE DATE | AMOUNT |
|------|---------------------------|------------|--------|
| 150 | RETURN FILED AND TAX ASSESSED | 20044508 12-06-2004 | $42,043.00 |
|  | 07221-298-35027-4 |  |  |
| 460 | EXTENSION OF TIME TO FILE | 08-15-2004 | $0.00 |
|  | EXT. DATE 10-15-2004 |  |  |
| 610 | PAYMENT WITH RETURN | 10-18-2004 | -$17,253.00 |
| 666 | ESTIMATED TAX CREDIT TRANSFERRED IN | 04-15-2004 | -$25,000.00 |
| 276 | FAILURE TO PAY TAX PENALTY | 20044708 12-06-2004 | $426.07 |
| 196 | INTEREST ASSESSED | 20044708 12-06-2004 | $319.59 |
| 706 | OVERPAID CREDIT APPLIED | 04-15-2003 | -$535.66 |
|  | 1040 200212 |  |  |
| 277 | FAILURE TO PAY TAX PENALTY ABATED | 12-26-2005 | -$13.39 |
| 197 | INTEREST ABATED | 12-26-2005 | -$10.05 |
| 846 | REFUND | 12-26-2005 | $25.05 |
| 776 | INTEREST DUE TAXPAYER | 12-26-2005 | -$1.61 |
| 640 | ADVANCE PAYMENT OF DEFICIENCY MISCELLANEOUS PAYMENT | 12-12-2005 | -$2,583.32 |
| 670 | SUBSEQUENT PAYMENT | 12-29-2005 | -$566.82 |
| 300 | ADDITIONAL TAX ASSESSED BY EXAMINATION | 20060508 02-13-2006 | $2,366.00 |
|  | 49247-424-00577-6 |  |  |
| 421 | RENUMBERED RETURN | 02-13-2006 | $0.00 |
|  | 49247-424-00577-6 |  |  |
| 777 | INTEREST DUE TAXPAYER REVERSED | 12-26-2005 | $1.56 |
| 336 | INTEREST ASSESSED | 20060508 02-13-2006 | $183.22 |
| 846 | REFUND | 02-13-2006 | $603.28 |
| 776 | INTEREST DUE TAXPAYER | 02-13-2006 | -$3.92 |

This Product Contains Sensitive Taxpayer Data



# Internal Revenue Service
DEPARTMENT OF THE TREASURY ──────── e-services ────────────────

| This Product Contains Sensitive Taxpayer Data |

## Account Transcript

Request Date: 10-16-2006
Response Date: 10-16-2006
IRS Employee Number: 56LDB
Tracking Number: 100009775164

FORM NUMBER: 1040                TAX PERIOD: Dec. 31, 2004


TAXPAYER IDENTIFICATION NUMBER:              5-6110
SPOUSE TAXPAYER IDENTIFICATION NUMBER:       -7367

EDGAR T & DELORES V VICTORIA
PO BOX 810
GREENVILLE, AL 36037-0810-101

Any minus sign shown below signifies a credit amount.

ACCOUNT BALANCE:              -267.61
ACCRUED INTEREST:                0.00     AS OF: Oct. 23, 2006
ACCRUED PENALTY:                 0.00     AS OF: Oct. 23, 2006


ACCOUNT BALANCE
PLUS ACCRUALS:                -267.61


** EXEMPTIONS:                      02       ** FILING
                                             STATUS: Married Filing Joint
** ADJUSTED GROSS INCOME:    127,900.00
** TAXABLE INCOME:            57,334.00
   TAX PER RETURN:            25,154.00
** SE TAXABLE INCOME
TAXPAYER:                     87,900.00
** SE TAXABLE INCOME SPOUSE:  13,287.00
** TOTAL SELF EMPLOYMENT
TAX:                          17,270.00


** PER RETURN OR AS ADJUSTED


RETURN DUE DATE OR RETURN RECEIVED DATE (WHICHEVER IS LATER): Oct. 19, 2005
PROCESSING DATE: Nov. 21, 2005

| TRANSACTIONS |

2006/10/16 09:51:32

| CODE | EXPLANATION OF TRANSACTION | CYCLE | DATE | AMOUNT |
|------|---------------------------|-------|------|--------|
| 150 | RETURN FILED AND TAX ASSESSED | 20054508 | 11-21-2005 | $25,154.00 |
|  | 07211-295-89810-5 |  |  |  |
| 670 | SUBSEQUENT PAYMENT |  | 04-22-2005 | -$7,000.00 |
| 610 | PAYMENT WITH RETURN |  | 10-19-2005 | -$18,875.00 |
| 176 | ESTIMATED TAX PENALTY | 20054508 | 11-21-2005 | $479.46 |
| 166 | LATE FILING PENALTY | 20054508 | 11-21-2005 | $4,084.65 |
| 276 | FAILURE TO PAY TAX PENALTY | 20054508 | 11-21-2005 | $635.39 |
| ▓▓▓ | ▓▓▓▓▓▓▓ ▓▓▓▓▓▓ | ▓▓▓▓▓▓▓▓ | ▓▓▓▓▓▓ | ▓▓▓▓ |
| 196 | INTEREST ASSESSED | 20060408 | 02-06-2006 | $34.95 |
| 520 | LEGAL/BANKRUPTCY SUIT PENDING |  | 09-25-2006 | $0.00 |

This Product Contains Sensitive Taxpayer Data

2006/10/16 09:54:11

 **Internal Revenue Service** _e-services_
DEPARTMENT OF THE TREASURY

| This Product Contains Sensitive Taxpayer Data |
| --- |

## Account Transcript

Request Date: 10-16-2006
Response Date: 10-16-2006
IRS Employee Number: 56LDB
Tracking Number: 100009775164

FORM NUMBER: 1040                    TAX PERIOD: Dec. 31, 2005

TAXPAYER IDENTIFICATION NUMBER:            6110
SPOUSE TAXPAYER IDENTIFICATION NUMBER:    -7367

EDGAR T & DELORES V VICTORIA
PO BOX 810
GREENVILLE, AL 36037-0810-101

Any minus sign shown below signifies a credit amount.

ACCOUNT BALANCE:                      0.00
ACCRUED INTEREST:                     0.00        AS OF: Oct. 23, 2006
ACCRUED PENALTY:                      0.00        AS OF: Oct. 23, 2006


ACCOUNT BALANCE
PLUS ACCRUALS:                        0.00


** EXEMPTIONS:                         00         ** FILING STATUS: Married Filing
                                                                    Joint
** ADJUSTED GROSS INCOME:
** TAXABLE INCOME:
   TAX PER RETURN:
** SE TAXABLE INCOME
TAXPAYER:
** SE TAXABLE INCOME
SPOUSE:
** TOTAL SELF EMPLOYMENT
TAX:

** PER RETURN OR AS ADJUSTED


| TRANSACTIONS |
| --- |

CODE EXPLANATION OF TRANSACTION            CYCLE DATE            AMOUNT

2006/10/16 09:54:11

Page:3/4

460  EXTENSION OF TIME TO FILE                    04-15-2006        $0.00
     EXT. DATE 10-15-2006

This Product Contains Sensitive Taxpayer Data

SEP-06-2006  14:45                                                    P.02/06

*old EIN*

Tuesday, August 22, 2006,  2:07pm

ACCRUAL COMPUTATION DATE:  08/22/2006

TIN: 63-1103639       NAME: DOLORES V VICTORIA

| MFT | TAXPD | RESTRICT | MOD BAL | ACCR INT | ACCR FTP | MOD TOTAL |
|-----|-------|----------|---------|----------|----------|-----------|
| 01 | 200406 | *F 941* | 8955.15 | 656.25 | 657.31 | 10268.71 |
| 01 | 200409 | | 6259.20 | 455.07 | 465.05 | 7179.32 |
| 01 | 200412 | | 2840.33 | 207.10 | 240.42 | 3287.85 |
| 01 | 200503 | | 5917.53 | 310.13 | 161.88 | 6389.54 |
| 01 | 200506 | | 2558.85 | 130.25 | 69.29 | 2758.39 |
| 10 | 200312 | *F 940/2003* | 5199.87 | 272.03 | 128.37 | 5600.27 |
| 10 | 200412 | *2004* 2916.17 | | 153.55 | 86.80 | 3156.52 |

| TOTALS: | 34647.10 | 2184.38 | 1809.12 | 38640.60 |

PAGE  1

SEP-06-2006  14:45                                                          P.03/08

Station Name: MTG001MA2(   198 Date: 8/22/2006 Time: 2:09   PM

INTST 72-1357031

01 200012 08222006 BARI

*Current EIN*

*F941*

*4th qtr*
*2000*

| | |
|---|---|
| 2,506.41 | ASSESSED FTP |
| 1,915.43 | ASSESSED INT |
| 11,028.30 | TAX & PENALTY |
| 15,450.14 | ASSESSED TOTAL |
| .00 | ACCRUED FTP |
| 2,239.68 | ACCRUED INT |
| 2,239.68 | TOTAL ACCRUALS |
| 2,506.41 | TOTAL FTP |
| 4,155.11 | TOTAL INT |
| 17,689.82 | BALANCE DUE |

SEP-08-2006  14:48                                                P.04/06

Station Name: MTG001MA2(  /898 Date: 8/22/2006 Time: 2:10  ( PM

INTST 72-1357031
01 200512 08222006 BARI

F941
4th qtr
2005

| | |
|---|---|
| 5.86 | ASSESSED FTP |
| 3.63 | ASSESSED INT |
| .00 | TAX & PENALTY |
| 9.49 | ASSESSED TOTAL |
| .00 | ACCRUED FTP |
| .29 | ACCRUED INT |
| .29 | TOTAL ACCRUALS |
| 5.86 | TOTAL FTP |
| 3.92 | TOTAL INT |
| 9.78 | BALANCE DUE |

SEP-08-2006  14:46                                          P.05/06

Station Name: MTG001MA2/  398 Date: 8/22/2006 Time: 2:0( ) PM

INTST 72-1357031
01 200603 08222006 BARI

*F941*
*1st qtr*
*2006*

|       |                |
|-------|----------------|
| 7.19  | ASSESSED FTP   |
| 5.92  | ASSESSED INT   |
| 64.73 | TAX & PENALTY  |
| 77.84 | ASSESSED TOTAL |
| .00   | ACCRUED FTP    |
| .74   | ACCRUED INT    |
| .74   | TOTAL ACCRUALS |
| 7.19  | TOTAL FTP      |
| 6.66  | TOTAL INT      |
| 78.58 | BALANCE DUE    |

COMPUTATION HOLD ON FTP
Employee #2518321900 Page 001 of 002   PAGE  002

SEP-06-2006  14:46                                                    P.06/06

Station Name: MTG001MA2(  898 Date: 8/22/2006 Time: 2:09  PM

INTST 72-1357031
13 199912 08222006 BARI
```
                    .00    ASSESSED FTP
                    .00    ASSESSED INT
                 769.23    TAX & PENALTY
                 769.23    ASSESSED TOTAL
                    .00    ACCRUED FTP
                 179.15    ACCRUED INT
                 179.15    TOTAL ACCRUALS
                    .00    TOTAL FTP
                 179.15    TOTAL INT
                 948.38    BALANCE DUE
```

*CIVIL Penalty TY 1999*

COMPUTATION HOLD ON FTP
Employee #2518321900 Page 001 of 002  PAGE  002

                                                            TOTAL P.06

Station Name: MTG001MA2 398 Date: 8/22/2006 Time: 2:09 PM

INTST 72-1357031

*Current EIN*

01 200012 08222006 BARI

*F941*

*4th qtr 2000*

| | |
|---|---|
| 2,506.41 | ASSESSED FTP |
| 1,915.43 | ASSESSED INT |
| 11,028.30 | TAX & PENALTY |
| 15,450.14 | ASSESSED TOTAL |
| .00 | ACCRUED FTP |
| 2,239.68 | ACCRUED INT |
| 2,239.68 | TOTAL ACCRUALS |
| 2,506.41 | TOTAL FTP |
| 4,155.11 | TOTAL INT |
| 17,689.82 | BALANCE DUE |

B 240 - Reaffirmation Agreement
(10/05)

## United States Bankruptcy Court

_____Middle_____ District of _____Alabama_____

In re [redacted]

_____ Debtor(s)

Case No. [redacted]
Chapter [redacted]

## REAFFIRMATION AGREEMENT

*[Indicate all documents included in this filing by checking each applicable box.]*

☐ Part A: Disclosures, Instructions, and
　Notice to Debtor (Pages 1 - 5)
☒ Part B: Reaffirmation Agreement
☐ Part C: Certification by Debtor's
　Attorney

☐ Part D: Debtor's Statement in Support of
　Reaffirmation Agreement
☐ Part E: Motion for Court Approval
☐ Proposed Order Approving Reaffirmation
　Agreement

☐ *[Check this box if]* Creditor is a Credit Union as defined in §19(b)(1)(a)(iv) of the
Federal Reserve Act

## PART A: DISCLOSURE STATEMENT, INSTRUCTIONS AND NOTICE TO DEBTOR

### 1.　　DISCLOSURE STATEMENT

*Before Agreeing to Reaffirm a Debt, Review These Important Disclosures*:

### SUMMARY OF REAFFIRMATION AGREEMENT

This Summary is made pursuant to the requirements of the Bankruptcy Code.

### AMOUNT REAFFIRMED

a.　　The amount of debt you have agreed to reaffirm:　　　$ 19,029.83

b.　　All fees and costs accrued as of the date of this
　　　disclosure statement, related to the amount of debt
　　　shown in a., above:　　　$ [blank]

c.　　The total amount you have agreed to reaffirm
　　　(Debt and fees and costs) (Add lines a. and b.):　　　$ 19,029.83　0.00

*Your credit agreement may obligate you to pay additional amounts which may come
due after the date of this disclosure. Consult your credit agreement.*

EXHIBIT
16

P. 2

## ANNUAL PERCENTAGE RATE

*[The annual percentage rate can be disclosed in different ways, depending on the type of debt.]*

a. If the debt is an extension of "credit" under an "open end credit plan," as those terms are defined in § 103 of the Truth in Lending Act, such as a credit card, the creditor may disclose the annual percentage rate shown in (i) below or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

(i) The Annual Percentage Rate disclosed, or that would have been disclosed, to the debtor in the most recent periodic statement prior to entering into the reaffirmation agreement described in Part B below or, if no such periodic statement was given to the debtor during the prior six months, the annual percentage rate as it would have been so disclosed at the time of the disclosure statement: _____%.

*— And/Or ---*

(ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: _____%. If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:

$ _____ @ _____%;
$ _____ @ _____%;
$ _____ @ _____%.

b. If the debt is an extension of credit other than under than an open end credit plan, the creditor may disclose the annual percentage rate shown in (i) below, or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

(i) The Annual Percentage Rate under §128(a)(4) of the Truth in Lending Act, as disclosed to the debtor in the most recent disclosure statement given to the debtor prior to entering into the reaffirmation agreement with respect to the debt or, if no such disclosure statement was given to the debtor, the annual percentage rate as it would have been so disclosed: _____%.

*— And/Or ---*

(ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: _____%. If different simple interest rates apply to different balances included in the amount reaffirmed,

P. 3

the amount of each balance and the rate applicable to it are:
$15,384.75 @   9.00 %;
$ 3,645.08 @   5.75 %;
$         @        %.

c. If the underlying debt transaction was disclosed as a variable rate transaction on the most recent disclosure given under the Truth in Lending Act:

The interest rate on your loan may be a variable interest rate which changes from time to time, so that the annual percentage rate disclosed here may be higher or lower.

d. If the reaffirmed debt is secured by a security interest or lien, which has not been waived or determined to be void by a final order of the court, the following items or types of items of the debtor's goods or property remain subject to such security interest or lien in connection with the debt or debts being reaffirmed in the reaffirmation agreement described in Part B.

| Item or Type of Item | Original Purchase Price or Original Amount of Loan |
|---|---|
| CERTIFICATE OF DEPOSIT #19922 | $3,565.00 |
| UCC-1 WITH EXHIBIT 'A' AND 'B' | $19,697.16 |

*Optional*---*At the election of the creditor, a repayment schedule using one or a combination of the following may be provided:*

**Repayment Schedule:**

Your first payment in the amount of _____ is due on _____ (date), but the future payment amount may be different. Consult your reaffirmation agreement or credit agreement, as applicable.

---*Or*---

Your payment schedule will be: _____ (number) payments in the amount of $_____ each, payable _____ Monthly _____ on the _____ (day) of each Month unless altered later by mutual agreement in writing.

---*Or*---

Describe repayment obligation with specificity to extent known by creditor or creditor representative

BORROWER INTENDS TO PAY BOTH LOANS WITH BUTLER COUNTY BANK, GREENVILLE, ALABAMA AS THEY ARE PRESENTLY STRUCTURED. SEE COPIES OF NOTES ATTACHED FOR DETAILS.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE:  Deloris V. Victoria )
           )   **CHAPTER 7**
           )
           )   **CASE NO. 06-31225**
**DEBTORS**     )

## REAFFIRMATION AGREEMENT

WHEREAS, Deloris V. Victoria, referred to as the Debtor(s), executed and delivered to **BRANTLEY BANK & TRUST CO.**, hereinafter referred to as the Creditor, a promissory note with an approximate principal amount of $ 285,170.31 left owing.

WHEREAS, on the 25th day of September, 2006, Debtor(s) filed a voluntary petition with the Bankruptcy Court under Chapter 7 of the Bankruptcy Code and scheduled the above debt as evidenced by the note for discharge.

NOW THEREFORE, it is mutually agreed as follows:

1. The Debtor(s) are hereby unconditionally promised to pay to the Creditor the balance of total payments this day being approximately $285,170.31, in equal monthly installments due by the 22nd day of each month, with the first payment beginning on October 22, 2006 for the amount of $ 2025.05 each month.

2. The Debtor(s) will execute a promissory note in the amount stated above with the above-stated terms.

3. The Debtor(s) and the Creditor hereby acknowledge and understand that this reaffirmation agreement will become enforceable against the Debtor(s) at the time of the discharge hearing, if they are granted a discharge at that time.

4. The Debtor(s) and the Creditor understand and acknowledge that the Debtor(s) may cancel and rescind this reaffirmation agreement at any time up to sixty (60) days after the granting of any discharge.

1

5.      The Debtor(s) understand and acknowledge that if they do not cancel the the reaffirmation agreement before the end of the sixty (60) day period, they will be bound by this reaffirmation agreement and the terms and conditions of the note or any additional note, or any document to be executed in regards to this agreement.

6.      The Debtor(s) understand and acknowledge that if they default with respect to the obligation under this agreement, or any note, that the Creditor will have the right to proceed immediately to enforce its rights under the note and this agreement, including without limitation, any appropriate legal action.

7.      Any cancellation of this agreement by the Debtor(s) during the sixty (60) day period set forth in paragraphs four and five, shall be in writing and mailed or delivered to the Creditor.

DATED THIS the 11th day of October, 2006.

BRANTLEY BANK & TRUST CO.
CREDITOR
BY: _____Jimmy Lester_____
              (Printed Name)


_____, DEBTOR

_____, DEBTOR

_____

ATTORNEY FOR DEBTOR

# BRANTLEY BANK AND TRUST CO.

Post Office Box 25
BRANTLEY, ALABAMA 36009
Telephone: (334) 527-3206
FAX No.: (334) 527-3635

October 11, 2006

C. Brandon Sellers
Shinbaum, Abell, McLeod & Vann
Post Office Box 201
Montgomery, Alabama  36101-0201

RE:  Deloris V. Victoria   Chapter 7 Case No. 06-31225

Please find enclosed a Reaffirmation Agreement for Dr. Victoria to sign.  I have also enclosed a copy of the original mortgage for this note.

After she has signed and you have filed with the court, would you please provide me with a signed copy of the agreement.

If you have any questions, feel free to contact me at 334/527-3206.

Sincerely,

Jimmy Lester
VP & Cashier



| Settings | Parties | Case Action Summary | Witness List | Financial | Images | Consolidated CAS |

| County | 10 | Case Number | CV 2005 000133 00 | JID | HEM | Trial | J |
| Style | GREENVILLE HOSPITAL CORP. INC, ET AL VS DOLORES VICTORIA, M.D. | | | | | | |
| Code | CONT | Type | CONTRACT/EJMNT/SEIZU | Filed | 08302005 | Track | |
| Amount | | Status | DISPOSED | Plaintiffs | 001 | Defendants | 001 |
| DJID | HEM | Court Action | M (SUMMARY JUDGMT) | | 08032006 | For | C |
| Damages-Comp | | Damages-Pun | | Damages-Gen | | No Damages | |
| Trial Days | | Lien | | | | | |

| Date 1 | | Que 1 | | Time 1 | | Description | |
| Date 2 | | Que 2 | | Time 2 | | Description | |
| Date 3 | | Que 3 | | Time 3 | | Description | |
| Date 4 | | Que 4 | | Time 4 | | Description | |
| Cont Date | | Why | | | | Cont # | |
| RevJmt | | Admin Date | | Why | | | |
| Appeal Date | | CRT | | Case | 0000 000000 00 | | |
| TBNV1 | | TBNV2 | | DSDT | | DTYP | |
| Comment 1 | THIS FILE HAS BEEN SCANNED | | | | | | |
| Comment 2 | | | | | | | |

| Party | C 001 | Name | GREENVILLE HOSPITAL CORP INC D/B/A | Type | BUSINESS |
| INDX | D VICTORIA DOL | ANAM | | JID | HEM |
| SSN | | Address 1 | L V STABLER MEMORIAL HOSP | Sex | |
| DOB | | Address 2 | | Race | |
| Country | US | City | AL 00000 0000 | Phone | 334 000 0000 |
| Atty 1 | MALLETTE GREER BURDI | Atty 2 | | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | M (SUMMARY JUDGMT) | Date | 08032006 | For | C | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

| Party | D 001 | Name | VICTORIA DOLORES MD | Type | INDIVIDUAL |
| INDX | C GREENVILLE H | ANAM | | JID | HEM |
| SSN | | Address 1 | 44 MEDICAL COURT | Sex | |
| DOB | | Address 2 | P O BOX 810 | Race | |
| Country | US | City | GREENVILLEL AL 36037 0000 | Phone | 334 000 0000 |
| Atty 1 | | Atty 2 | | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | 09022005 | Type | C CERTIFIED MAI | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | 09092005 | Type | C CERTIFIED MAI | Serv On | | By | |
| Answer | 10072005 | Type | D COMP DENIED | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | M (SUMMARY JUDGMT) | Date | 08032006 | For | C | Exep | O |
| AMT | 0016225774 | Cost | 0000049600 | Other | | Satisfied | |
| Comment | | | | | | | |

| Date | Time | Code | Comments | | Operator |
| 08302005 | 1505 | TEXT | SUMMONS AND COMPLAINT | | REJ |
| 09022005 | 1502 | FILE | FILED THIS DATE: 08/30/2005 (AV01) | | REJ |

| | | | | |
|---|---|---|---|---|
| 09022005 | 1502 | TDMJ | JURY TRIAL REQUESTED (AV01) | REJ |
| 09022005 | 1502 | ASSJ | ASSIGNED TO JUDGE: H. EDWARD MCFERRIN (AV01) | REJ |
| 09022005 | 1502 | ORIG | ORIGIN: INITIAL FILING (AV01) | REJ |
| 09022005 | 1502 | STAT | CASE ASSIGNED STATUS OF: ACTIVE (AV01) | REJ |
| 09022005 | 1503 | PART | GREENVILLE HOSPITAL CORP INC D/B/A ADDED AS C001 | REJ |
| 09022005 | 1503 | ATTY | LISTED AS ATTORNEY FOR C001: MALLETTE GREER BURDI | REJ |
| 09022005 | 1504 | PART | VICTORIA DOLORES MD ADDED AS D001 (AV02) | REJ |
| 09022005 | 1504 | SUMM | CERTIFIED MAI ISSUED: 09/02/2005 TO D001 (AV02) | REJ |
| 09022005 | 1504 | CASP | CASE ACTION SUMMARY PRINTED (AV02) | REJ |
| 09022005 | 1505 | TEXT | CERT MAIL TO D001 7004 2510 0006 8054 6455 | REJ |
| 09212005 | 0814 | SERC | D001 SERVED CERTIFIED MAIL ON 09/09/2005 | REJ |
| 10072005 | 1458 | ANSW | ANSWER OF COMP DENIED ON 10/07/2005 FOR D001(AV02) | MAG |
| 10172005 | 1054 | C001 | NOTICE TO CLERK OF SERVICE OF DISCOVERY DOCS - | REJ |
| 10172005 | 1054 | C001 | PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCS | REJ |
| 10172005 | 1054 | C001 | TO DEFENDANT DOLORES VICTORIA, M.D. AND; | REJ |
| 10172005 | 1054 | C001 | PLAITNIFF'S FIRST REQUEST FOR ADMISSIONS TO | REJ |
| 10172005 | 1054 | C001 | DEFENDANT DOLORES VOCTORIA, M.D. | REJ |
| 11152005 | 1500 | TEXT | NOTICE OF APPEARANCE FOR D001 | DET |
| 11152005 | 1506 | ATTY | LISTED AS ATTORNEY FOR D001: HARTLEY P RICHARD | DET |
| 12132005 | 0750 | D001 | ANSWER TO COMPLAINT - DENY - BY PRH | REJ |
| 02232006 | 0911 | TEXT | ANSWER TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION | REJ |
| 02232006 | 0911 | TEXT | OF DOCUMENTS | REJ |
| 02232006 | 0911 | TEXT | DEFENDANT'S ANSWERS TO REQUEST FOR ADMISSIONS | REJ |
| 02232006 | 0911 | TEXT | NOTICE OF DISCOVERY DOCUMENTS | REJ |
| 04192006 | 1528 | DAT1 | SET FOR: SCHEDULE CONFERENCE ON 05/04/2006 AT 090 | REJ |
| 04192006 | 2388 | DOCK | NOTICE SENT: 04/19/2006 MALLETTE GREER BURDICK | REJ |
| 05012006 | 1548 | C001 | C001 MOTION FOR SUMMARY JUDGMENT | REJ |
| 05012006 | 1548 | C001 | EVIDENTIARY SUBMISSION IN SUPPORT OF PLAINTIFF | REJ |
| 05012006 | 1548 | C001 | GREENVILLE HOSPITAL CORPORATION, D/B/A L V STABLER | REJ |
| 05012006 | 1548 | C001 | MEMORIAL HOSP, INC. MOTION FOR SUMMARY JUDGMENT | REJ |
| 05082006 | 1323 | ORDR | SCHEDULING ORDER | REJ |
| 05092006 | 1413 | DAT1 | SET FOR: PRETRIAL CONFERENCE ON 08/03/2006 AT 090 | REJ |
| 05092006 | 1413 | DAT4 | SET FOR: TRIAL - JURY ON 09/11/2006 AT 0900A(AV01) | REJ |
| 05092006 | 1414 | TRAN | TRANSMITTAL NOTICE SENT TO ALL ATTORNEYS | REJ |
| 05172006 | 1546 | DAT2 | SET FOR: MOTION ON 06/08/2006 AT 0900A (AV01) | REJ |
| 05172006 | 1546 | MOTN | MOTN BY C001 MOTION FOR SUMMARY JUDGMENT | REJ |
| 05252006 | 2399 | DOCK | NOTICE SENT: 05/25/2006 MALLETTE GREER BURDICK | REJ |
| 06212006 | 1404 | DAT2 | SET FOR: MOTION ON 07/06/2006 AT 0900A (AV01) | REJ |
| 06212006 | 2491 | DOCK | NOTICE SENT: 06/21/2006 MALLETTE GREER BURDICK | REJ |
| 07202006 | 0902 | DAT2 | SET FOR: MOTION ON 08/03/2006 AT 0900A (AV01) | REJ |
| 07202006 | 2402 | DOCK | NOTICE SENT: 07/20/2006 MALLETTE GREER BURDICK | REJ |
| 07202006 | 2402 | DOCK | NOTICE SENT: 07/20/2006 MALLETTE GREER BURDICK | REJ |
| 07262006 | 0759 | D001 | D001 MOTION TO WITHDRAW - E FILED | REJ |
| 07272006 | 0746 | ORDR | ORDER - MOTION TO WITHDRAW FILED BY VICTORIA | REJ |
| 07272006 | 0746 | ORDR | DOLORES V IS HEREBY GRANTED. HEM | REJ |
| 07312006 | 1520 | TRAN | TRANSMITTAL NOTICE SENT TO ALL | REJ |
| 08072006 | 1328 | ORDR | ORDER - IT IS ORDERED THAT PLAINTIFF'S MOTION FOR | REJ |
| 08072006 | 1328 | ORDR | SUMMARY JUDGMENT IS GRANTED AND JUDGMENT IS | REJ |
| 08072006 | 1328 | ORDR | ENTERED IN FAVOR OF PLAINTIFF AND AGAINST | REJ |
| 08072006 | 1328 | ORDR | DEFENDANT IN THE AMOUNT OF $162,257.74 PLUST COSTS | REJ |
| 08082006 | 1329 | TRAN | TRANSMITTAL NOTICE SENT TO ALL ATTORNEYS | REJ |
| 08082006 | 1329 | STAT | CASE ASSIGNED STATUS OF: DISPOSED (AV01) | REJ |
| 08082006 | 1510 | DISP | DISPOSED ON: 08/03/2006 BY (SUMMARY JUDGMT) (AV01) | REJ |
| 08082006 | 1510 | CACJ | COURT ACTION JUDGE: H. EDWARD MCFERRIN (AV01) | REJ |
| 08082006 | 1510 | PDIS | C001 DISPOSED BY (SUMMARY JUDGMT) ON 08/03/2006 | REJ |
| 08082006 | 1510 | PDIS | D001 DISPOSED BY (SUMMARY JUDGMT) ON 08/03/2006 | REJ |
| 08082006 | 1511 | JAMT | JUDGMENT OF: $162257.74 VS. D001 ON 08/03/2006 | REJ |

| | | | | |
|---|---|---|---|---|
| 08082006 | 1511 | JCST | COSTS OF: $496.00 VS. D001 ON 08/03/2006 (AV02) | REJ |
| 08082006 | 1513 | JCER | JUDGEMENT CERTIFICATE PREPARED | REJ |

B 240 - Reaffirmation Agreement
(10/05)

# United States Bankruptcy Court

_____Middle_____District of _____Alabama_____

In re   Deloris V. Victoria                    Case No.    06-31225
                                               Chapter

      Debtor(s)

## REAFFIRMATION AGREEMENT

_[Indicate all documents included in this filing by checking each applicable box.]_

☐ Part A: Disclosures, Instructions, and     ☐ Part D: Debtor's Statement in Support of
    Notice to Debtor (Pages 1 - 5)           Reaffirmation Agreement
☐ Part B: Reaffirmation Agreement        ☐ Part E: Motion for Court Approval
☐ Part C: Certification by Debtor's        ☐ Proposed Order Approving Reaffirmation
    Attorney                          Agreement

☐ _[Check this box if]_ Creditor is a Credit Union as defined in §19(b)(1)(a)(iv) of the
Federal Reserve Act

## PART A: DISCLOSURE STATEMENT, INSTRUCTIONS AND NOTICE TO DEBTOR

**1.    DISCLOSURE STATEMENT**

_**Before Agreeing to Reaffirm a Debt, Review These Important Disclosures:**_

### SUMMARY OF REAFFIRMATION AGREEMENT
This Summary is made pursuant to the requirements of the Bankruptcy Code.

### AMOUNT REAFFIRMED

a.      The amount of debt you have agreed to reaffirm:      $ 285,170.31

b.      All fees and costs accrued as of the date of this
       disclosure statement, related to the amount of debt
       shown in a., above:                        $

c.      The total amount you have agreed to reaffirm
       (Debt and fees and costs) (Add lines a. and b.):     $285,170.31 XX0X.00

_**Your credit agreement may obligate you to pay additional amounts which may come
due after the date of this disclosure. Consult your credit agreement.**_

P. 2

## ANNUAL PERCENTAGE RATE

*[The annual percentage rate can be disclosed in different ways, depending on the type of debt.]*

a. If the debt is an extension of "credit" under an "open end credit plan," as those terms are defined in § 103 of the Truth in Lending Act, such as a credit card, the creditor may disclose the annual percentage rate shown in (i) below or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

(i) The Annual Percentage Rate disclosed, or that would have been disclosed, to the debtor in the most recent periodic statement prior to entering into the reaffirmation agreement described in Part B below or, if no such periodic statement was given to the debtor during the prior six months, the annual percentage rate as it would have been so disclosed at the time of the disclosure statement:          %.

— *And/Or* ---

(ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor:          %. If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:

$          @          %;
$          @          %;
$          @          %.

b. If the debt is an extension of credit other than under than an open end credit plan, the creditor may disclose the annual percentage rate shown in (i) below, or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

(i) The Annual Percentage Rate under §128(a)(4) of the Truth in Lending Act, as disclosed to the debtor in the most recent disclosure statement given to the debtor prior to entering into the reaffirmation agreement with respect to the debt or, if no such disclosure statement was given to the debtor, the annual percentage rate as it would have been so disclosed:          %.

— *And/Or* ---

(ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor:          %. If different simple interest rates apply to different balances included in the amount reaffirmed,

P. 3

the amount of each balance and the rate applicable to it are:

$ @ %;
$ @ %;
$ @ %.

c.  If the underlying debt transaction was disclosed as a variable rate transaction on the most recent disclosure given under the Truth in Lending Act:

The interest rate on your loan may be a variable interest rate which changes from time to time, so that the annual percentage rate disclosed here may be higher or lower.

d.  If the reaffirmed debt is secured by a security interest or lien, which has not been waived or determined to be void by a final order of the court, the following items or types of items of the debtor's goods or property remain subject to such security interest or lien in connection with the debt or debts being reaffirmed in the reaffirmation agreement described in Part B.

| Item or Type of Item | Original Purchase Price or Original Amount of Loan |
|---|---|
| Mortgage | $347,577.39 |

*Optional*---*At the election of the creditor, a repayment schedule using one or a combination of the following may be provided:*

**Repayment Schedule:**

Your first payment in the amount of _____ is due on _____ (date), but the future payment amount may be different. Consult your reaffirmation agreement or credit agreement, as applicable.

*---Or---*

Your payment schedule will be: 176 (number) payments in the amount of $ 2,025.05 each, payable Semi-Monthly on the 18th (day) of each Month , unless altered later by mutual agreement in writing.

*---Or---*

Describe repayment obligation with specificity to extent known by creditor or creditor representative

P. 4

## 2. INSTRUCTIONS AND NOTICE TO DEBTOR

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps are not completed, the reaffirmation agreement is not effective, even though you have signed it.

1. Read the disclosures in this Part A carefully. Consider the decision to reaffirm carefully. Then, if you want to reaffirm, sign the reaffirmation agreement in Part B (or you may use a separate agreement you and your creditor agree on).

2. Complete and sign Part D and be sure you can afford to make the payments you are agreeing to make and have received a copy of the disclosure statement and a completed and signed reaffirmation agreement.

3. If you were represented by an attorney during the negotiation of your reaffirmation agreement, the attorney must have signed the certification in Part C.

4. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, you must have completed and signed Part E.

5. The original of this disclosure must be filed with the court by you or your creditor. If a separate reaffirmation agreement (other than the one in Part B) has been signed, it must be attached.

6. If the creditor is not a Credit Union and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship as explained in Part D. If the creditor is a Credit Union and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court.

7. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, it will not be effective unless the court approves it. The court will notify you and the creditor of the hearing on your reaffirmation agreement. You must attend this hearing in bankruptcy court where the judge will review your reaffirmation agreement. The bankruptcy court must approve your reaffirmation agreement as consistent with your best interests, except that no court approval is required if your reaffirmation agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home.

P. 5

## YOUR RIGHT TO RESCIND (CANCEL) YOUR REAFFIRMATION AGREEMENT

You may rescind (cancel) your reaffirmation agreement at any time before the bankruptcy court enters a discharge order, or before the expiration of the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later. To rescind (cancel) your reaffirmation agreement, you must notify the creditor that your reaffirmation agreement is rescinded (or canceled).

**Frequently Asked Questions:**

What are your obligations if you reaffirm the debt? A reaffirmed debt remains your personal legal obligation. It is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Otherwise, your obligations will be determined by the reaffirmation agreement which may have changed the terms of the original agreement. For example, if you are reaffirming an open end credit agreement, the creditor may be permitted by that agreement or applicable law to change the terms of that agreement in the future under certain conditions.

Are you required to enter into a reaffirmation agreement by any law? No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments you agree to make.

What if your creditor has a security interest or lien? Your bankruptcy discharge does not eliminate any lien on your property. A ''lien'' is often referred to as a security interest, deed of trust, mortgage or security deed. Even if you do not reaffirm and your personal liability on the debt is discharged, because of the lien your creditor may still have the right to take the security property if you do not pay the debt or default on it. If the lien is on an item of personal property that is exempt under your State's law or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the security property, as agreed by the parties or determined by the court.

**NOTE:** When this disclosure refers to what a creditor ''may'' do, it does not use the word ''may'' to give the creditor specific permission. The word ''may'' is used to tell you what might occur if the law permits the creditor to take the action. If you have questions about your reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement reaffirming a debt. If you don't have an attorney helping you, the judge will explain the effect of your reaffirming a debt when the hearing on the reaffirmation agreement is held.

P. 6

## PART B: REAFFIRMATION AGREEMENT.

I (we) agree to reaffirm the debts arising under the credit agreement described below.

1.  Brief description of credit agreement:

    > Mortgage Loan on residence located at 225 Woodland Heights
    > Drive, Greenville, AL  36037

2.  Description of any changes to the credit agreement made as part of this reaffirmation agreement:

SIGNATURE(S):

Borrower:                                    Co-borrower, if also reaffirming these debts:


(Print Name)                                 (Print Name)

(Signature)                                  (Signature)
Date:                                        Date:


Accepted by creditor:

*Brantley Bank + Trust Company*

*James R. Lester, VP + Cashier*

(Print Name)

*[signature]*

(Signature)

Date of creditor acceptance: *10-19-06*

P. 7

## PART C: CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY).

*[Check each applicable box.]*

☐ I hereby certify that (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ *[If applicable and the creditor is not a Credit Union.]* A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.


Printed Name of Debtor's Attorney: .

Signature of Debtor's Attorney:                                              .

Date:

P. 8

## PART D: DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

1.  I believe this reaffirmation agreement will not impose an undue hardship on my dependents or me. I can afford to make the payments on the reaffirmed debt because my monthly income (take home pay plus any other income received) is $             and my actual current monthly expenses including monthly payments on post-bankruptcy debt and other reaffirmation agreements total $             , leaving $             to make the required payments on this reaffirmed debt. I understand that if my income less my monthly expenses does not leave enough to make the payments, this reaffirmation agreement is presumed to be an undue hardship on me and must be reviewed by the court. However, this presumption may be overcome if I explain to the satisfaction of the court how I can afford to make the payments here:

2. *Either:*  I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

*— Or ---*

*[If the creditor is a Credit Union and the debtor is represented by an attorney]*  I believe this reaffirmation agreement is in my financial interest. I can afford to make the payments on the reaffirmed debt. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: _____
        (Debtor)

        (Joint Debtor, if any)

Date:

### MEDICAL OFFICE SPACE LEASE

Date:  June 29, 2006

Landlord: Greenville Hospital Corporation
d/b/a LV Stabler Memorial Hospital
Address:

Name and Address of Building:
44 Medical Arts Court, Suite 2
Greenville, AL 36037

29 LV Stabler Drive
Greenville, AL 36037

Tenant:  Dolores Victoria, M.D.

Leased Premises Floor/Suite Description:
Suite 2

Number of Square Feet:  1250

Term of Lease:  2 years
Renewal Terms:  _____2 year term_____ (up to one renewal terms of two (2) years by written agreement
of the parties at least three months before expiration of term).

Commencement Date of Lease Term:  June 1, 2006        Security Deposit:  _____-0-_____

Termination:  Either party may terminate this lease with or without cause upon thirty (30) days prior to
written notice to the other party.  However, in the event this lease is terminated for any reason prior to the
expiration of one (1) year from the commencement date, the parties shall not enter into another lease until
after the expiration of the first year of the initial term.

Annual Rental Rate:$  11,250
Rent Increase (check one) ☐ 3% per year ☐ 4% per year

Monthly Rental Installments: $ 937.50
($____9.00____/square foot/year)

_____ Check here if Tenant is required to maintain membership in Hospital Medical Staff

Utilities (check any that apply):
X   Utilities (electricity, water, and sewer) and janitorial services are provided in the Monthly Rental.
X   Housekeeping Services will be provided by the Landlord (including trash removal).
X   The following utilities are not included in the Monthly Rental:  electricity.
       Tenant is solely responsible for the payment of electricity and other utilities
       Tenant shall have pro-rata and/or separately metered utilities based on Tenant's
       proportionate share of the leased and square footage.

Improvements (check any that apply): Not Applicable
_____ First time Standard Build Out - Base Tenant Build Out Allowance:  $_____ per sq. ft.
_____ Existing Space (New Tenant or Renewal) - Tenant Improvement Allowance: $____ per
       sq. ft. per year
_____ Landlord to build out space per Landlord's Work Letter attached hereto as Exhibit B

This Medical Office Space Lease is a sublease pursuant to that certain (describe underlying lease
agreement):  ___not applicable

Attached hereto and incorporated herein for all purposes is "Exhibit A -- Medical Office Space Lease
Standard Terms and Conditions" to which reference is made for the balance of the terms of this Medical
Office Space Lease, including without limitation adjustments to Rental Rate/Installments.

Attached hereto and incorporated herein for all purposes are the following additional exhibits:  Not applicable

TENANT:

Date:  7-19-06

REVIEWED AND APPROVED:

Facility Chief Executive Officer
Date:  7-19-06

LANDLORD:

By:
President, Hospital Corporation
Date:  7-5-06

APPROVED AS TO FORM:

In-house Counsel, Hospital Corporation
Date  6-30-06

Form No. 0103 Rev. by Legal Dept as of 6/26/06.

1


FINAL

*MOB Lease – Hospital-Landlord*

## EXHIBIT A
## MEDICAL OFFICE SPACE LEASE STANDARD TERMS AND CONDITIONS

In consideration of the mutual covenants and representations set forth in the Medical Office Space Lease (the "Lease") and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties do hereby agree as follows. The capitalized terms used in this Exhibit A shall have the meaning assigned to such terms in the Medical Office Space Lease, unless another meaning is assigned to such terms in this Exhibit A.

1.    DEMISE.  Upon the terms and conditions hereinafter set forth, Landlord does hereby lease to Tenant, and Tenant does hereby lease from Landlord, the Demised Premises for the Term of the Lease.

2    RENT.  The Monthly Rental Installments for the Lease of the Demised Premises shall be payable in advance on the first day of each and every month during the term hereof.  During the term of this Lease, the Monthly Rental Installments shall be increased, as of each anniversary date of the Commencement Date, by the percentage amount set forth in the Medical Office Space Lease.  It is expressly understood and agreed that Landlord shall apply all payments from Tenant hereunder to the amounts due hereunder by Tenant which have been outstanding for the longest period of time first.

3.    RENTAL RATE ADJUSTMENT.  Landlord shall adjust the Annual Rental Rate and the monthly Rental Installments to the then fair market rental rate for the Demised Premises, upon the termination of an existing term of the Lease. Landlord will give notice of such adjustment to Tenant 90 days prior to expiration date of current Lease. Without limitation, Landlord's adjustment of Rental Rate and the monthly installments will be based on the fair market rental rate, utility costs and real estate taxes as well as any local, state or federal income taxes, which may become payable by the Landlord. If a rent escalation percentage has been checked on the cover page of this Lease, the adjustment under this section shall not exceed the amount checked on the cover page of this Lease

4.    LANDLORD'S OBLIGATIONS.

   A.    Utilities:
   If utilities are included in the Monthly Rental Installments, then Landlord shall, at Landlord's expense, furnish utilities to the Demised Premises, including electrical, water and sewer, heat, ventilation, and air conditioning; however, Tenant shall be responsible for the payment of telephone and data services.

   B.    Maintenance
   Landlord shall maintain, repair and replace all exterior walls and other features of the exterior including but not limited to the roof and all mechanical systems, including but not limited to air conditioning, heating, plumbing, wiring and piping.

   C.    Insurance
   Landlord shall maintain fire and extended coverage insurance on the building in which the Demised Premises are located, in an amount not less than the full replacement cost of the building.

   D.    Taxes
   Landlord shall be responsible for payment of all real estate taxes assessed against the building or property, as well as all applicable local, state and federal income taxes which are or may be payable by Landlord.

   E.    Build Out By Landlord
   If checked on the cover sheet hereof, Landlord will be responsible for standard build out for office space per Attachment "B"   (attached hereto and incorporated herein by reference).

5.    TENANT'S OBLIGATIONS.  In addition to the said rent to be paid, Tenant also agrees to pay directly during the term of the Lease, commencing on the Commencement Date, the following items of expense as the same become due and payable:

   A.    Taxes.
   All ad valorem or other property taxes, personal and intangible taxes payable in connection with the use, occupancy or conduct of business on any part of the Demised Premises, including but not limited to personal property, business, privilege, license, excise, sales, use

Form No. 0103 Rev. by Legal Dept as of 6/26/06.

2



and occupation taxes (but excluding local, state and federal income taxes payable by Landlord). Tenant shall be responsible for all taxes which are assessed against their stock and inventory, tangible personal property or their business and/or business operations.

B.   Maintenance and Modifications.
The following charges for maintaining and operating the Demised Premises in good repair and operating condition:

    1) Tenant shall, at its own cost and expense, keep the interior clean, maintaining suitable receptacles for trash and refuse, and removing from the interior all accumulations of trash and refuse.

    2) Tenant shall service, keep and maintain the interior, including fixtures, doors, interior walls and appurtenances in good condition, repair and working order.

    3) Tenant agrees to deliver to Landlord, upon the expiration date or upon earlier termination in accordance with the provisions hereof, physical possession of the Demised Premises in good condition, reasonable wear and tear and damage by fire or other casualty excepted.

    4) If the Building is separately metered for certain utilities, such as electricity, gas, water, and sewer, Tenant shall be responsible for the payment of all such separately metered utilities based on Tenant's proportionate share of the metered square footage.

    5) If utilities are not separately metered, Tenant shall be responsible for a pro-rata share of Building utility expense, based upon the ratio of the square footage of the Demised Premises to the square footage of the Building. The utility expense shall be calculated, and the Utility Base Rate shall be adjusted, annually.

    6) Tenant shall be responsible for all service costs and installations of all telephone or data services and Landlord shall have no responsibility or liability with respect thereto or the failure of operation of any such services.

6.   IMPROVEMENTS.   Tenant shall not make any structural changes, alterations, additions or improvements to the Demised Premises without the written consent of Landlord, which shall not be unreasonably withheld. Landlord shall not be responsible for, either in the performance or payment, any improvements to the Demised Premises unless a "Landlord's Work Letter" is attached to the Lease.

7.   USE OF DEMISED PREMISES. Tenant shall use the Demised Premises for the purpose of the licensed practice of medicine and the medical treatment of Tenant's patients and business purposes ancillary thereto and for no other purpose. Without limiting the foregoing, unless approved by Landlord in advance and in writing, Tenant shall not use the Demised Premises for the operation of a "commercial ancillary medical care facility" which shall include, without limitation, a clinical laboratory, pharmacy, ambulatory surgery center, birthing center, diagnostic, including radiology, facility, and respiratory, physical, speech, or occupational therapy services. The use of diagnostic equipment (such as x-ray) and the performance of minor surgical procedures under local anesthesia, that is within the scope of Tenant's medical practice and pertaining to the treatment and care of Tenant's own patients, shall not be considered to violate the terms of this paragraph.

8.   ASSIGNMENT;SUBLETTING.   Tenant shall not, without the prior consent of Landlord, which consent may be withheld in Landlord's sole discretion, sublease, license or assign its interest under the Lease to any other person or entity. Assignment or subletting without the prior consent of Landlord, including assignment by operation of the law, shall constitute an event of default. In no event, whether with or without consent of Landlord, shall an assignment or lease relieve Tenant of liability under the terms, conditions and provisions of this Lease.

9.   INSURANCE.

A.   The following insurance coverage on the Demised Premises will be maintained by Tenant at all times during the term of the Lease. Comprehensive general liability insurance coverage on the Demised Premises in the sum of One Million Dollars ($1,000,000) for any single claim and Three Million Dollars ($3,000,000) for claims arising out of a single accident or occurrence against liability for bodily injury and death resulting therefrom, and insurance coverage in the sum of One Hundred Thousand Dollars ($100,000.00) per occurrence against liability for damage to property, arising out of the maintenance or use of the Demised Premises by Tenant. Casualty insurance insuring Tenant against loss or damage to its



22.    NOTICES. Any notice required or permitted to be given hereunder may be given by mail and shall be sufficiently given if personally served or sent by registered or certified mail or by special courier, addressed to the relevant party at the addresses specified in the Lease (notice to Tenant shall be given at the Demised Premises). For any notice given to Landlord, a copy shall be provided to the Landlord's counsel as follows: General Counsel, Legal Department, P.O. Box 217, Brentwood, Tennessee 37024-0217. From and after December 15, 2006: Community Health Systems, Attn: Legal Department, 4000 Meridian Blvd., Franklin, TN 37067 or Community Health Systems, Attn: Legal Department, P.O. Box 689020, Franklin, TN 37068.

23.    BINDING EFFECT. The Lease shall be binding upon and inure to the benefit of the parties hereto, their heirs, successors, assigns, executors and administrators. Nothing in this article shall be deemed to amend the provisions herein concerning assignment and subletting.

24.    APPLICABLE LAW. The laws of the state where the Building is located shall be employed in and govern the interpretation of all of the covenants, terms and conditions of the Lease.

25.    NO PARTNERSHIP RELATIONSHIP. Notwithstanding any agreement herein contained, Landlord shall not be construed or held to be a partner or associate of Tenant in the conduct of its business, it being expressly understood and agreed that the relationship between the parties is and at all times shall remain that of Landlord and Tenant.

26.    NO REQUIREMENT TO REFER. The parties expressly agree that nothing contained in the Lease shall require Tenant or any physician or other referral source to refer or admit any patients to, or order any goods or services from Landlord or any affiliate. Notwithstanding any unanticipated effect of any provision of this Agreement, neither party will knowingly or intentionally conduct himself in such a manner as to violate the prohibition against fraud and abuse in connection with the Medicare and Medicaid programs (42 USC Section 1320a-7b). Both parties represent to the other that the Rentals provided for in the Lease are at fair market value rates and do not take into account the value or volume of any referrals or other business generated between the parties. Both as a material condition to this Lease and as a continuing representation and warranty for the duration of this Lease, Tenant represents and warrants that neither it nor any of its owners, officers, directors, employees, agents, subcontractors etc have been suspended, excluded, or debarred from any government payor program.

27.    QUIET ENJOYMENT. Landlord warrants and shall defend Tenant in the quiet enjoyment and possession of the Demised Premises during the term and any extension or renewal thereof.

28.    OPTION TO RENEW. Provided that Tenant is not then in default hereunder, upon the expiration of the term hereof, Tenant shall have the option to renew the Lease for the additional term(s), if any, set forth on the cover page of this Lease, upon the same terms and conditions as this Lease except that the rentals payable during the renewal term shall be adjusted to fair market rental as set forth herein.

29.    SUBORDINATION, ATTORNMENT AND NON-DISTURBANCE.

A.    Tenant agrees that the Lease and all rights of Tenant hereunder are and shall be subject and subordinate to any ground or underlying lease which may now or hereafter be in effect regarding the Building or any component thereof, to any mortgage now or hereafter encumbering the Demised Premises or the Building or any component thereof, to all advances made or hereafter to be made upon the security of such mortgage, to all amendments, modifications, renewals, consolidations, extensions and restatements of such mortgage, and to any replacements and substitutions for such mortgage. The terms of this provision shall be self-operative and no further instrument of subordination shall be required. Tenant, however, upon request of any party in interest, shall execute promptly such instrument or certificates as may be reasonably required to carry out the intent of this provision.

B.    In the event any proceedings are brought for the foreclosure of, or in the event of exercise of the power of sale under, or in the event of a deed in lieu of foreclosure with respect to any mortgage covering the Demised Premises or the Building, or in the event of termination of any Lease under which Landlord may hold title, Tenant shall, at the option of transferee, attorn to such transferee and shall recognize and be bound and obligated hereunder to such person as the Landlord under the Lease. Tenant agrees to execute any attornment agreement not in conflict with this provision.

Form No. 0103 Rev. by Legal Dept as of 6/26/06.

6



C. Notwithst. ...ng anything contained herein to the contrary, so ... as Tenant is not in default in the payment of Rentals or other charges, or in the performance of any of the other terms, covenants or conditions of the Lease, mortgagee or such person shall not disturb Tenant in its occupancy of the Demised Premises during the original or any renewal term of the Lease notwithstanding any event or proceedings described in this section.

30.    MASTER CONTRACT LIST. This contract is identified on a master list of contracts maintained on a Lotus Notes server.

31.    ESTOPPEL CERTIFICATE.    Within thirty (30) days after written request from Landlord, Tenant shall deliver an executed statement addressed to Landlord certifying (if such be the case) that this Lease is in full force and effect, that Tenant has commenced the payment of rent, and that there are no defenses or offsets to this Lease claimed by Tenant, as well as any other information reasonably requested. If Tenant fails or refuses to give a certificate hereunder within the required time frame, then the information on such certificate as submitted by Landlord shall be deemed correct for all purposes and Landlord shall have the right to treat such failure or refusal as a default by Tenant.

32.    FORCE MAJEURE.   With the exception of the obligation of Tenant to pay Rent and all other amounts that may be due from time to time under this Lease, if either party shall be delayed or hindered in or prevented from doing or performing any act or thing required hereunder by reason of any matters beyond the reasonable control of such party, then such party shall not be liable or responsible for any such delays and the doing or performing of such act or thing shall be extended for a period equivalent to the period of such delay. In such event, this Lease and the obligations of both parties to perform and comply with all of the other terms and provisions of this Lease shall in no way be affected, impaired, or excused.

33.    WAIVER OF JURY TRIAL

LANDLORD AND TENANT HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION, ACTION, PROCEEDING OR COUNTERCLAIM BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS LEASE OR THE OBLIGATIONS EVIDENCED HEREBY, THE RELATIONSHIP OF LANDLORD AND TENANT, TENANT'S USE OF OR OCCUPANCY OF THE PREMISES, ANY CLAIM OF INJURY OR DAMAGE, OR ANY EMERGENCY OR OTHER STATUTORY REMEDY OR ANY OTHER DOCUMENT OR INSTRUMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT TO EACH OF LANDLORD AND TENANT IN ENTERING INTO THIS LEASE.

34.    SUBLEASE. In the event the Lease is a sublease to an underlying lease agreement, as described in the Lease, then with respect to the Demised Premises, except for the Term of the Lease and the Rental Rate/Installment, Tenant shall perform all of the obligations of tenant/lessee under the underlying lease agreement.

35.    APPROVALS. Neither this Lease nor any amendment or modification hereto shall be effective or legally binding upon Landlord, or any officer, director, employee or agent thereof, unless and until it has been reviewed and approved in writing by a President of Landlord's owner and by Landlord's Legal Counsel.

36.    RULES AND REGULATIONS. Tenant shall faithfully observe and comply strictly with the following rules and regulations, adopted for the safety, care and cleanliness of the Building or the preservation of good order therein. Landlord shall not be liable to Tenant for a violation of such rules and regulations, or for the breach of any covenant or condition in a lease by any other tenant in the Building. Landlord may, from time to time and upon notice to Tenant, adopt additional or substitute rules and regulations of the Building.

A.    Conduct. Tenant shall not conduct its practice or business, or advertise such business, profession or activities of Tenant conducted in the Premises in any manner which violates local, state or federal laws or regulations.

B.    Hallways and Stairways. Tenant shall not obstruct or use for storage, or for any purpose other than ingress and egress, the sidewalks, entrance, passages, courts, corridors, vestibules, halls, elevators and stairways of the Building.

C.    Nuisances. Tenant shall not make or permit any noise, odor or act that is objectionable to other occupants of the Building to emanate from the Premises, and shall not create or maintain a nuisance thereon.

Form No. 0103 Rev. by Legal Dept as of 6/26/06.

7




D.  Musical Instruments, Etc.  Tenant shall not install or operate any phonograph, musical instrument, radio receiver or similar device in the Building in such manner as to disturb or annoy other tenants of the Building or the neighborhood.  Tenant shall not install any antennae, aerial wires or other equipment outside the Building without the prior written approval of Landlord.

E.  Locks.  No additional locks or bolts of any kind shall be placed upon any of the doors or windows by Tenant, nor shall any changes be made in existing locks or the mechanism thereof.  Tenant must upon the termination of its tenancy restore to Landlord all keys to the Premises and toilet rooms either furnished to or otherwise produced by Tenant, and in the event of loss of any keys so furnished, Tenant shall pay to Lessor the cost thereof.

F.  Obstructing Light, Damage.  The doors, window glass, lights and skylights that reflect or admit light into the halls or other places of the Building shall not be covered or obstructed.  The toilets and urinals shall not be used for any purpose other than those for which they were intended and constructed, and no rubbish, newspapers or other substance of any kind shall be thrown into them.  Waste and excessive or unusual use of water shall not be allowed.  Tenant shall not mark, drive nails, screw or drill into, paint, nor in any way deface the walls, ceilings, partitions, floors, wood, stone or iron work.  The expense of any breakage, stoppage or damage resulting from a violation of this rule by Tenant shall be borne by Tenant.  Tenant shall be permitted to hang pictures on office walls, but it must be done in a workmanlike manner and in such a way as not to damage or deface such walls.

G.  Wiring.  Electrical wiring of every kind shall be introduced and connected only as directed by Landlord, and no boring nor cutting of wires will be allowed except with the consent of Landlord.  The location of the telephone, call boxes, etc., shall be subject to the approval of Landlord.

H.  Equipment, Moving, Furniture, Etc.  Landlord shall approve the weight, size and position of all fixtures, equipment and other property brought into the Building, and the times of moving which must be done under the supervision of Landlord.  Landlord will not be responsible for any loss of or damage to any such equipment or property from any cause, and all damage done in the Building by moving or maintaining any such property shall be repaired at the expense of Tenant.  All equipment shall be installed as required by law.

I.  Requirements of Tenant.  The requirements of Tenant will be attended to only upon application at the office of Landlord.  Employees shall not perform any work nor do anything outside their regular duties unless under special instructions from Landlord.  No employees shall admit any person, Tenant or otherwise, to any other office without instruction from the office of Landlord.  All janitorial services personnel, guards or any outside contractors employed by Tenant shall be subject to the regulations and control of Landlord, but shall not act as an agent or servant of Landlord.

J.  Medical and Hazardous Wastes.  Tenant shall comply with all policies established from time to time by Landlord regarding the storage and disposal of hazardous substances, wastes and materials, and medical, special or infectious wastes.

K.  Access to Building.  Any person entering or leaving the Building may be questioned by Building security regarding his/her business in the Building and may be required to sign in and out.  Anyone who fails to provide a satisfactory reason for being in the Building may be excluded.

L.  Vehicles, Animals, Refuse.  Tenant shall not allow anything to be placed on the outside window ledges of the Premises or to be thrown out of the windows of the Building.  No bicycle or other vehicle, and no animal, except for service animal, shall be brought into the offices, halls, corridors, elevators or any other parts of the Building by Tenant or the agents, employees or invitees of Tenant, and Tenant shall not place or permit to be placed any obstruction or refuse in any public part of the Building.

M.  Equipment Defects.  Tenant shall give Landlord prompt notice of any accidents to or defects in the water pipes, gas pipes, electric lights and fixtures, heating apparatus, or any other service equipment.

N.  Parking.  Unless otherwise specified by Landlord, Tenant and its employees may park automobiles only in spaces designated by Landlord for such purpose and shall in no event

Form No. 0103 Rev. by Legal Dept as of 6/26/06.



park in spaces reserved for public parking. Tenant agrees that Landlord assumes no responsibility of any kind whatsoever in reference to such automobile parking area or the use thereof by Tenant or its agents or employees.

O.   Conservation and Security. Tenant will see that all windows and doors are securely locked, and that all faucets and electric light switches are turned off before leaving the Building.

P.   Signage. Tenant shall not place any sign upon the Demised Premises or the Building without Landlord's prior written consent.

Form No. 0103 Rev. by Legal Dept as of 6/26/06.

9



11/28/2006  11:12    3343827001

PAGE  03/10

# # 05-42099-0                                      AV1          Case # CV05-177
Date Prepared  December 15, 2005

# STATEMENT OF CLAIM
## In The CIRCUIT COURT of BUTLER, Alabama

| | | | |
|---|---|---|---|
| **Plaintiff** | Genezen Healthcare Inc<br>P.O. Box 571811<br>Houston, TX 77257 | **Defendant Address** | Dolores V Victoria<br>44 Medical Court #3<br>Greenville, Alabama 36037 |
| **Attorney** | Zarzaur & Schwartz, PC<br>Post Office Box 11366<br>Birmingham, AL 35202<br>205/250-8437 | **Additional Defendant Address** | |
| | | **Additional Defendant Address** | |

**NOTICE TO EACH DEFENDANT**
**READ CAREFULLY**
YOU ARE BEING SUED IN THE ABOVE COURT BY THE PLAINTIFF(S) SHOWN ABOVE. THE JUDGE HAS NOT YET MADE ANY DECISION IN THIS CASE, AND YOU HAVE THE RIGHT TO A TRIAL TO TELL YOUR SIDE.
HOWEVER, IF YOU, OR YOUR LAWYER, FAIL TO ANSWER THIS COMPLAINT WITHIN THIRTY (30) DAYS AFTER YOU RECEIVE THESE PAPERS, A JUDGMENT CAN BE TAKEN AGAINST YOU. ONCE A JUDGMENT HAS BEEN ENTERED AGAINST YOU, YOUR PAYCHECK CAN BE GARNISHED AND/OR YOUR HOME OR PROPERTY SOLD TO SATISFY THAT JUDGMENT

## COMPLAINT
### COUNT I

I.  I claim that the defendant Dolores V Victoria owes the plaintiff the sum of $14,875.93 because: VERIFIED ACCOUNT STATED, plus 6.000 % for interest plus $ for lawyer's fees (only if plaintiff is represented by a licensed practicing attorney and if the contract you signed so provides), less remittitur for any payments made and with waiver of exemptions, if the contract you signed so provides.  TOTAL  $ 14,875.93 + INT

### COUNT II

II.  I claim that the defendant    owes the plaintiff the sum of $    because:  , plus $    for interest plus $ for lawyer's fees (only if plaintiff is represented by a licensed practicing attorney and if the contract you signed so provides), less remittitur for any payments made and with waiver of exemptions, if the contract you signed so provides.

**VERIFICATION OF THE DEBT, THE NAME AND ADDRESS OF YOUR ORIGINAL CREDITOR, IF DIFFERENT FROM ABOVE, WILL BE PROVIDED TO YOU IN WRITING IF REQUESTED. THE DEBT WILL OTHERWISE BE CONSIDERED VALID. THE DEBT COLLECTOR IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Plaintiff also claims from each defendant court costs in the sum of $ 251.00. NOTE: the total amount of court costs may be more than this amount when the case is finally settled. The clerk will inform you of any additional costs at the close of the case.

BY:

**Clerk**

**CLERK ADDRESS:**  Circuit Court of BUTLER County
Butler County Courthouse
Butler County Courthouse
Post Office Box 236
Greenville, AL 36037

Plaintiff or Attorney (signature)
David Chip Stewart

Diana Harris
PHONE NO.

FILED IN OFFICE
ALLEN STEPHENSON
Received in office this
DEC 2 0 2005
20
CIRCUIT CLERK
BUTLER COUNTY

05-42099-0

**STATE OF ALABAMA**
Unified Judicial System

_____ Butler _____ County

Revised 3/23/05

Check one (Not for Workers' Comp., PFA, or Small Claims cases):
☐ District Court  ☑ Circuit Court

► Case No.

CV05-177

| Style of case: | Genezen Healthcare, Inc. | **CIVIL MOTION COVER SHEET** |
| v. | Dolores V. Victoria | Name of Filing Party:  Genezen Healthcare, Inc. |

Name, Address, and Telephone No. of Attorney or Party, if Not Represented:
David Chip Schwartz 205-250-8437
P.O. Box 11366, Birmingham, AL 35202
Attorney Alabama State Bar No.:        SCH034

To be filled out by Clerk of Court:
☐ Filing Fee Charged and Collected (Amt $_____
☐ Filing Fee Not Required
☐ Affidavit of Hardship on File or State Agency

## Type of Motion (Check One)

| **Motions Requiring Fee** | **Motions Not Requiring Fee** |
|---|---|
| ☑ Default Judgment ($50.00) | ☐ Add Party |
| ☐ Joinder in Other Party's Dispositive Motion (i.e. Summary Judgment, Judgment on the Pleadings, or other Dispositive Motion not pursuant to Rule 12(b)) ($50.00) | ☐ Amend |
| | ☐ Change of Venue/Transfer |
| | ☐ Compel |
| ☐ Judgment on the Pleadings ($50.00) | ☐ Consolidation |
| ☐ Motion to Dismiss, or in the Alternative Summary Judgment ($50.00) | ☐ Continue |
| | ☐ Deposition |
| ☐ Renewed Dispositive Motion (Summary Judgment, Judgment on the Pleadings, or other Dispositive Motion not pursuant to Rule 12(h)) ($50.00) | ☐ Designate a Mediator |
| | ☐ Judgment as a Matter of Law (during trial) |
| ☑ Summary Judgment Pursuant to Rule 56 ($50.00) | ☐ Disburse Funds |
| ☐ Other_____ | ☐ Extension of Time |
| pursuant to Rule_____ ($50.00) | ☐ In Limine |
| | ☐ Joinder |
| | ☐ More Definite Statement |
| | ☐ Motion to Dismiss pursuant to Rule 12(b) |
| * Motion fees are enumerated in §12-19-71(a). Fees pursuant to Local Act are not included.  Please contact the Clerk of the Court regarding applicable local fees. | ☐ New Trial |
| | ☐ Objection of Exemptions Claimed |
| | ☐ Pendente Lite |
| | ☐ Plaintiff's Motion to Dismiss |
| | ☐ Preliminary Injunction |
| ☐ Local Court Cost $_____ | ☐ Protective Order |
| | ☐ Quash |
| | ☐ Release from Stay of Execution |
| | ☐ Revive Judgment |
| | ☐ Sanctions |
| | ☐ Sever |
| | ☐ Special Practice in Alabama |
| | ☐ Stay |
| | ☐ Strike |
| | ☐ Supplement to Pending Motion |
| | ☐ Vacate or Modify |
| | ☐ Withdraw |
| Hearing Date: | ☐ Other_____ |
| | pursuant to Rule_____ (Subject to filing fee) |

| Check here if you have filed or are filing contemporaneously with this motion an Affidavit of Substantial Hardship or if you are filing on behalf of an agency or department of the State, county, or municipal government.  ☐ | Date:  6-26-06 | Signature of Attorney or Party: |

* This Cover Sheet must be completed, signed by the filing attorney or party, and submitted to the Clerk of Court upon the filing of any motion. Each motion should contain a separate Cover Sheet.
** Motions titled 'Motion to Dismiss' that are not pursuant to Rule 12(b) and are in fact Motions for Summary Judgments are subject to filing fee.

IN THE CIRCUIT COURT OF BUTLER COUNTY, ALABAMA

GENEZEN HEALTHCARE, INC.,  )
                           )
            Plaintiff,     )
                           )
v.                         )          CASE NO. CV-05-177
                           )
DOLORES V. VICTORIA,       )
                           )
            Defendant.     )



## MOTION FOR SUMMARY JUDGMENT

Comes Now, the Plaintiff, GENEZEN HEALTHCARE, INC., by their attorneys Zarzaur & Schwartz, P.C., pursuant to Rule 56 of The Alabama Rules of Civil Procedure moves this Honorable Court for entry of Summary Judgment in Plaintiff's favor and against the Defendant, DOLORES V. VICTORIA, in the sum of  $15,438.35, which consists of the principal amount of $14,875.93 and interest of $562.42 at the rate of 6% from the date of default, November 8, 2005, plus court costs.

Plaintiff states that there is no genuine issue as to any material fact and that Plaintiff is entitled to a Judgment as a matter of law.

This Motion is supported by the Affidavit of Rodney Wright of Genezen Healthcare Inc., copy of Agreement, Itemizations and Statement of Account.

WHEREFORE, Plaintiff prays that this Honorable Court grant its Motion and enter Judgment in its favor and against the Defendant, DOLORES V. VICTORIA, in the

11/28/2006  11:12    3343827001                                    PAGE  06/10

sum of $15,438.35, which consists of the principal amount of $14,875.93 and interest of

$562.42 at the rate of 6% from the date of default, November 8, 2005, plus court costs.


DAVID CHIP SCHWARTZ (SCH034)
Attorney for the Plaintiff

OF COUNSEL:
Zarzaur & Schwartz, P.C.
P. O. Box 11366
Birmingham, AL 35202
(205) 250-8437
ZS File # 05-42099

## NARRATIVE SUMMARY OF FACTS

The Defendant, Dolores V. Victoria, signed an Agreement to be responsible for

the debt incurred as set out in the attached documentation.  Plaintiff provided services

to the Defendant. The Defendant owes the principal of $15,438.35, plus interest and

court costs.

## CERTIFICATE OF SERVICE

I hereby certify that I have on this _____ day of June, 2006 served a copy of

the above and foregoing Motion for Summary Judgment by placing a copy of same in

the United States mail, postage prepaid and properly addressed as follows:

P. Richard Hartley, Esq.
Attorney for Defendant
P.O. Box 583
Greenville, AL 36038


OF COUNSEL

ZS File # 05-42099

Sep 29 05 12:08p                                                                    p.4

## BUSINESS RECORDS AFFIDAVIT

THE STATE OF _Texas_                        §

COUNTY OF _Dallas_                          §

BEFORE ME, the undersigned authority, on this day personally appeared _Rodney Wright_ who being duly sworn, deposed as follows:

"My name is _Rodney Wright_. I have personal knowledge of the facts herein stated. I am a custodian of the records of _Cameron Healthcare, Inc_ ("the Plaintiff"), which is (Complete 1,2 or 3):

1. a corporation duly incorporated and existing under the laws of the State of _Deleware_
2. a partnership consisting of _____; or
3. owned and operated by _____; a sole trader.

I am familiar with the books of said corporation, partnership or sole trader. The attached account against _Delores V. Victoria MD_, constituting this cause of action, is taken from the original books of entry, and such records or books are kept by the Plaintiff in the regular course of business; and it is the regular course of business of the Plaintiff for an employee or representative of the Plaintiff, with knowledge of the act, event, condition or opinion, recorded to made the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are the original or exact duplicates of the original. The attached account is just and true within the knowledge of this affiant. All just and lawful offsets, payments and credits have been allowed and the sum of _fourteen thousand eight hundred_ Dollars ($ _14,875.93_) _seventy five & 93/100_ is due, owing and unpaid.

_____
AFFIANT

SWORN AND SUBSCRIBED TO before me on this the _13th_ of _Oct_, 2005

_M Kristi McInnis_
Notary Public in and for the County and
State first herein before written

My commission expires: _06-08-2008_

_M Kristi McInnis_
Printed name of notary public

M. KRISTI McINNIS
Notary Public, State of Texas
My Commission Expires
June 08, 2008

05-42099

(REV. 1/93)

## United States Bankruptcy Court

_Middle_ District of _Alabama_

### PROOF OF CLAIM

**RECEIVED**

APR 30 2007

U.S. BANKRUPTCY COURT
MONTGOMERY, ALABAMA

In re (Name of Debtor)

_DeLoris V. Victoria_

Case Number

_Ch 7  06-31225_

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor
(The person or other entity to whom the debtor owes money or property)
**WHITNEY NATIONAL BANK**

Name and Address Where Notices Should be Sent
P.O. BOX 61260
NEW ORLEANS, LA 70161
Recovery - Suite 400
Donna L. 8539

Telephone No.

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR:
▓▓▓▓5302

Check box if this claim ☐ replaces ☐ amends a previously filed claim, dated:_____

**1. BASIS FOR CLAIM**
☐ Goods sold
☐ Services performed
☒ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☐ Other (Describe briefly)

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (Fill out below)
Your social security number _____
Unpaid compensation for services performed
from _____ to _____
        (date)                    (date)

**2. DATE DEBT WAS INCURRED**
_12·20·1999_

**3. IF COURT JUDGMENT, DATE OBTAINED:**

**4. CLASSIFICATION OF CLAIM.** Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured nonpriority, (2) Unsecured Priority, (3) Secured. It is possible for part of a claim to be in one category and part in another. CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM AT TIME CASE FILED.

☐ SECURED CLAIM $ _____
Attach evidence of perfection of security interest
Brief Description of Collateral:
☐ Real Estate   ☐ Motor Vehicle   ☐ Other (Describe briefly)

Amount of arrearage and other charges at time case filed included in secured claim above, if any $ _____

☒ UNSECURED NONPRIORITY CLAIM $ _____
A claim is unsecured if there is no collateral or lien on property of the debtor securing the claim or to the extent that the value of such property is less than the amount of the claim.

☐ UNSECURED PRIORITY CLAIM $ _4,715.75_
Specify the priority of the claim.

☐ Wages, salaries, or commissions (up to $4000),* earned not more than 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier—11 U.S.C. § 507(a)(3)

☐ Contributions to an employee benefit plan—11 U.S.C. § 507(a)(4)

☐ Up to $1,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use—11 U.S.C. § 507(a)(6)

☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child—11 U.S.C. § 507(a)(7)

☐ Taxes or penalties of governmental units—11 U.S.C. § 507(a)(8)

☐ Other—Specify applicable paragraph of 11 U.S.C. § 507(a)_____
*Amounts are subject to adjustment on 4/1/98 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**5. TOTAL AMOUNT OF CLAIM AT THE TIME CASE FILED:**
$ _4,715.75_ (Unsecured)   $ _____ (Secured)   $ _____ (Priority)   $ _4,715.75_ (Total)

☐ Check this box if claim includes charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges.

THIS SPACE IS FOR COURT USE ONLY

**6. CREDITS AND SETOFFS:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. In filing this claim, claimant has deducted all amounts that claimant owes to debtor.

**7. SUPPORTING DOCUMENTS:** _Attach copies of supporting documents,_ such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, or evidence of security interests. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. TIME-STAMPED COPY:** To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

Date
_4-17-07_

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)
_Albert L. Lord, Vice President_

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.



# WHITNEY

## PERSONAL LINE OF CREDIT AGREEMENT AND DISCLOSURE

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

**Borrower:** DR DELORES V VICTORIA (SSN: 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)
P O BOX 810
GREENVILLE, AL 36037

**Lender:** WHITNEY NATIONAL BANK
109 GREENVILLE BYPASS
GREENVILLE, AL 36037

**CREDIT LIMIT: $10,000.00**                                                    **Date of Agreement:** December 20, 1999

**Introduction.** This Personal Line of Credit Agreement and Disclosure ("Agreement") governs your line of credit (the "Credit Line" or the "Credit Line Account") issued through WHITNEY NATIONAL BANK. In this Agreement, the words "Borrower," "you," "your," and "Applicant" mean each and every person who signs this Agreement, including all Borrowers named above. The words "we," "us," "our," and "Lender" mean WHITNEY NATIONAL BANK. You agree to the following terms and conditions:

**Promise to Pay.** You promise to pay WHITNEY NATIONAL BANK, or order, on demand the total of all credit advances and FINANCE CHARGES, together with all costs and expenses for which you are responsible under this Agreement. You will pay your Credit Line according to the payment terms set forth below. If there is more than one Borrower, each is jointly and severally liable on this Agreement. This means we can require any one of you to pay all amounts due under this Agreement, including credit advances made to any of you. Each Borrower authorizes any other Borrower, on his or her signature alone, to cancel the Credit Line, to request and receive credit advances, and to do all other things necessary to carry out the terms of this Agreement. We can release any of you from responsibility under this Agreement, and the others will remain responsible.

**Minimum Payment.** Your "Regular Payment" will be monthly payments of $20.00 or 3.00% of the Outstanding Balance on your periodic billing statement, whichever is greater. Your "Minimum Payment" will be your Regular Payment plus all amounts past due, any voluntary credit life and disability insurance premiums, and all other charges. You agree to pay not less than the Minimum Payment on or before the due date indicated on your periodic billing statement. In any event, if your Credit Line balance falls below $20.00, you agree to pay your balance in full.

**Application of Payments.** Unless otherwise agreed or required by applicable laws, payments and other credits will be applied in the following order: to (a) FINANCE CHARGES; (b) unpaid principal; (c) any amounts that exceed your Credit Limit; and (d) late charges and other charges.

**Term.** The term of your Credit Line will begin as of the date of this Agreement ("Opening Date") and will continue until demand is made under this Agreement or until this Credit Line is terminated by any reason. At that time, or any time thereafter, all outstanding principal, accrued interest, any credit life and disability insurance premiums, and any other outstanding charges will be payable on demand.

**Receipt of Payments.** All payments must be made by a check, money order, or other instrument in U.S. dollars and must be received by us at the remittance address shown on your periodic billing statement. Payments received at that address prior to 2:00 P.M. Central Time on any business day will be credited to your Credit Line as of the date received. If we receive payments at other locations, such payments will be credited promptly to your Credit Line, but crediting may be delayed for up to five (5) days after receipt.

**Credit Limit.** This Agreement covers a revolving line of credit for Ten Thousand & 00/100 Dollars ($10,000.00), which will be your "Credit Limit" under this Agreement. You may borrow against the Credit Line, repay any portion of the amount borrowed, and re-borrow up to the amount of the Credit Limit. Your Credit Limit is the maximum amount you may have outstanding at any one time. You agree not to attempt, request, or obtain a credit advance that will make your Credit Line Account balance exceed your Credit Limit. Your Credit Limit will not be increased should you overdraw your Credit Line Account. If you exceed your Credit Limit, you agree to repay immediately the amount by which your Credit Line Account exceeds your Credit Limit, even if we have not yet billed you.

**Charges to Your Credit Line.** We may charge your Credit Line to pay other fees and costs that you are obligated to pay under this Agreement or under any other document related to your Credit Line. Any amount so charged to your Credit Line will be a credit advance and will decrease the funds available, if any, under the Credit Line. However, we have no obligation to provide any of the credit advances referred to in this paragraph.

**Effective Disbursement Date.** The words "Effective Disbursement Date" as used in this Agreement mean a date, after the Opening Date, when the Agreement is accepted by us in the State of Alabama and you have met all of our conditions for the Credit Line. You agree and understand that you may not receive any credit advance under your Credit Line until after the Effective Disbursement Date of this Agreement.

**Credit Advances.** After the Effective Disbursement Date of this Agreement, you may obtain credit advances under your Credit Line as follows:

(a) Writing a preprinted "Special Check" that we will supply to you.

(b) Requesting a credit advance from your Credit Line to be applied to your designated account by telephone. You agree that we do not accept responsibility for the authenticity of telephone instructions and that we will not be liable for any loss, expense, or cost arising out of any telephone request, including any fraudulent or unauthorized telephone request, when acting upon such instructions believed to be genuine.

(c) Requesting a credit advance in person at any of our authorized locations.

If there is more than one person authorized to use this Credit Line Account, you agree not to give us conflicting instructions, such as one of you telling us not to give advances to the other.

**Limitations on the Use of Special Checks.** We reserve the right not to honor Special Checks in the following circumstances:

(a) Your Credit Limit has been or would be exceeded by paying the Special Check.

(b) Your Special Check is post-dated. If a post-dated Special Check is paid and as a result any other check is returned or not paid, we are not responsible.

(c) Your Special Checks have been reported lost or stolen.

(d) Your Special Check is not signed by an "Authorized Signer" as defined below.

(e) You are in default or otherwise are in violation of this Agreement or would be so if we paid the Special Check.

(f) Your Special Check is less than the minimum amount required by this Agreement or you are in violation of any other transaction requirement or would be if we paid the Special Check.

(g) You use a Special Check to make payment on your Credit Line.

If we pay any Special Check under these conditions, you must repay us, subject to applicable laws, for the amount of the Special Check. The Special Check itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of a check is limited to your actual damages. Dishonor for any reason as provided in this Agreement is not wrongful dishonor. We may choose not to return Special Checks along with your periodic billing statements; however, your use of a Special Check will be reflected on your periodic statement as a credit advance. We do not "certify" Special Checks drawn on your Credit Line.

**Transaction Requirements.** The following transaction limitations will apply to accessing your Credit Line by writing a Special Check, requesting an advance by telephone or requesting an advance in person.

**Minimum Advance Amount.** The minimum amount of any credit advance that can be made on your Credit Line is as follows: $100.00. This means your Special Check must be written for at least the minimum advance amount.

**Other Transaction Requirements.** If Credit Advances are obtained under your Credit Line pursuant to paragraphs (a), (b), or (c) in the Credit Advances provision above, i.e. by using a Special Check, requesting an advance by telephone, or requesting an advance in person, then subject to the minimum amount requirement, such advances will be make in the exact amount requested.

**Authorized Signers.** The words "Authorized Signer" on Special Checks as used in this Agreement mean and include each person who (a) signs the application for this Credit Line, (b) signs the Agreement, or (c) has executed a separate signature authorization card for the Credit Line Account.

**Lost Special Checks.** If you lose your Special Checks or someone is using them without your permission, you agree to let us know immediately. The fastest way to notify us is by calling us at (334) 382-6611. You can also notify us at our address shown at the beginning of this Agreement.

12-20-1999    **PERSONAL LINE OF CREDIT AGREEMENT AND DISCLOSURE**    , Page 2
Loan No 720225302              (Continued)

**Future Credit Line Services.** Your application for this Credit Line also serves as a request to receive any new services (such as access devices) which may be available at some future time as one of our services in connection with this Credit Line. You understand that this request is voluntary and that you may refuse any of these new services at the time they are offered. You further understand that the terms and conditions of this Agreement, together with any specific terms covering the new service, will govern any transactions made pursuant to any of these new services.

**Collateral.** Collateral securing other loans with us may also secure this Credit Line Account. To the extent collateral previously has been given to us by any person which may secure this Credit Line Account, whether directly or indirectly, it is specifically agreed that all such collateral consisting of household goods will not secure this Credit Line Account. In addition, if any collateral requires the giving of a right of rescission under Truth in Lending for this Credit Line Account, such collateral also will not secure this Credit Line Account unless all required notices of that right have been given.

**Right of Setoff.** You grant to us a contractual security interest in, and hereby assign, convey, deliver, pledge, and transfer to us all right, title and interest in and to, your accounts with us (whether checking, savings, or some other account), including without limitation all accounts held jointly with someone else and all accounts you may open in the future, excluding however all IRA, Keogh, and trust accounts. You authorize us, to the extent permitted by applicable law, to charge or credit all sums owing on this Agreement against any and all such accounts.

**Periodic Statements.** If you have a balance owing on your Credit Line Account or have any account activity, we will send you a periodic statement. It will show, among other things, credit advances, FINANCE CHARGES, other charges, payments made, other credits, your "Previous Balance," and your "New Balance." Your statement also will identify the Minimum Payment you must make for that billing period and the date it is due.

**When FINANCE CHARGES Begin to Accrue.** Periodic FINANCE CHARGES for credit advances under your Credit Line will begin to accrue on the date credit advances are posted to your Credit Line. There is no "free ride period" which would allow you to avoid a FINANCE CHARGE on your Credit Line credit advances.

**Method Used to Determine the Balance on Which the FINANCE CHARGE Will Be Computed.** A daily FINANCE CHARGE will be imposed on all credit advances made under your Credit Line imposed from the date of each credit advance based on the "average daily balance method." To get the average daily balance for any month in which your Periodic Rate and ANNUAL PERCENTAGE RATE do not change, we take the beginning balance of your Credit Line Account each day, add any new advances and subtract any payments or credits and any unpaid FINANCE CHARGES. This gives us a daily balance. Then, we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle.

In any billing cycle during which there is an adjustment in your Periodic Rate and ANNUAL PERCENTAGE RATE, two average daily balances will be calculated for your Account. In such instances, we will compute the first average daily balance by adding together the daily balances of your Account, calculated as indicated above, for the days when the first Periodic Rate applied and dividing that total by the number of days that the first Periodic Rate was in effect. The average daily balance for the period during which the second Periodic Rate applied will be calculated in the same manner, based on the daily balances for, and the total number of, the days during which the second Periodic Rate was in effect.

In calculating the FINANCE CHARGE for a billing cycle in which there is a rate change, each average daily balance is multiplied by the number of days that the appropriate Periodic Rate was in effect, and that amount is multiplied by the appropriate Periodic Rate. These products are added together to calculate your FINANCE CHARGE.

**Method of Determining the Amount of FINANCE CHARGE.** Any FINANCE CHARGE is determined by applying the "Periodic Rate" to the balance described above. This is your FINANCE CHARGE calculated by applying a Periodic Rate.

**Periodic Rate and Corresponding ANNUAL PERCENTAGE RATE.** The Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE on your Credit Line are subject to change from time to time based on changes in an independent index which is the Prime rate as published in the Wall Street Journal that is effective on the first business day of the calendar month during which this Agreement is executed. When a range of rates has been published, the higher of the rates will be used (the "Index"). The Index is not necessarily the lowest rate charged by us on our loans. If the Index becomes unavailable during the term of this Agreement, we may designate a substitute Index after notice to you. The ANNUAL PERCENTAGE RATE on your Credit Line is based upon the Index and the margin described below ("Margin").

The Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE on your Credit Line will increase or decrease as the Index increases or decreases from time to time. An increase in the ANNUAL PERCENTAGE RATE will affect the minimum periodic payment amount as follows: will take the form of higher payment amounts. We will determine the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE as follows: We start with the current Index and then add a certain Margin as disclosed below. To obtain the periodic rate, we divide that sum by the number of days in a year (daily). To obtain the ANNUAL PERCENTAGE RATE, we multiply the periodic rate by the number of days in a year (daily). This rate is subject, however, to the following minimum and maximum rates. In no event will the corresponding ANNUAL PERCENTAGE RATE be less than 7.000% per annum or more than the lesser of 18.000% per annum or the maximum rate allowed by applicable law. Adjustments to the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE resulting from changes in the Index will take effect monthly, on the first business day of each calendar month (that is, the first day of the calendar month that the Bank is open for all or substantially all business, Monday through Friday, excluding legal holidays), and may result in the application of two Periodic Rates and ANNUAL PERCENTAGE RATES for any billing cycle. Today the Index is 8.500% per annum, and therefore the initial ANNUAL PERCENTAGE RATE and the corresponding Periodic Rate on your Credit Line are as stated below:

| Range of Balance or Conditions | Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|---|
| All Balances | 2.500 % | 11.000 % | 0.03014 % |

Notwithstanding any other provision of this Agreement, we will not charge interest on any undisbursed loan proceeds.

**Forgo Rate Increases.** If we forgo an ANNUAL PERCENTAGE RATE increase, at the time of a later adjustment we may return to the full index value plus margin.

**Conditions Under Which Other Charges May be Imposed.** You agree to pay all the other fees and charges related to your Credit Line as set forth below.

**Annual Fee.** A nonrefundable Annual Fee of $20.00 will be charged to your Credit Line at the following time: On the day the statement is rendered for the month in which your Credit Line Account is established, and the day the statement is rendered for each such month annually thereafter.

**Returned Items.** You may be charged $15.00 if you pay your Credit Line obligations with a check, draft, or other item that is dishonored for any reason, unless applicable law requires a lower charge or prohibits any charge.

**Overlimit Charge.** Your Credit Line Account may be charged $20.00 if you cause your Credit Line Account to go over your Credit Limit. This includes writing a Special Check in excess of your available balance.

**Miscellaneous Photocopying.** If you request a copy of any document, we may charge your Credit Line Account $1.00 Per item for the time it takes us to locate, copy, and mail the document to you. If your request is related to a billing error (see "Your Billing Rights" notice) and an error is found, we will reverse any photocopying charges.

**Late Charges.** In addition to our rights upon default, your payment will be late if it is not received by us within 9 days of the "Payment Due Date" shown on your periodic statement. If your payment is late we may charge you the greater of 5.000% of the payment due or $10.00 but no more than $100.00.

**Right to Credit Advances.** After the Effective Disbursement Date, we will honor your requests for credit advances up to your Credit Limit so long as: (a) you are not in default under the terms of this Agreement; (b) this Agreement has not been terminated or suspended; and (c) your Credit Line has not been cancelled as provided above in the section of this Agreement titled "Term."

**Default.** We may declare you to be in default if any one or more of the following events occur: (a) you fail to pay a Minimum Payment when due; (b) you die; (c) you make any false or misleading statements on your Credit Line application; (d) you violate any provision of this Agreement or any other agreement with us; (e) any garnishment, attachment, or execution is issued against any material asset owned by you; (f) you exceed your Credit Limit; or (g) you file for bankruptcy or other insolvency relief, or an involuntary petition under the provisions of the Federal Bankruptcy Act is filed against you.

**Lender's Rights.** If you are in default, we may terminate or suspend your Credit Line Account without prior notice. However, we will notify you in writing of our action as soon as practicable.

(a) **Suspension.** If we suspend your Credit Line, you will lose the right to obtain further credit advances. However, all other terms of this Agreement will remain in effect and be binding upon you, including your liability for any further unauthorized use of any Credit Line access devices.

(b) **Termination.** If we terminate your Credit Line, your Credit Line will be suspended and the entire unpaid balance of your Credit Line Account will be immediately due and payable, without prior notice except as may be required by law, and you agree to pay that amount plus all FINANCE CHARGES and other amounts due under this Agreement.

(c) **Collection Costs.** Upon default, we may hire or pay someone else to help collect your Credit Line Account if you do not pay. You agree to pay attorneys' fees not exceeding fifteen percent (15%) of the unpaid balance after default and referral to an attorney who is not our salaried employee, if at that time your unpaid balance exceeds $300.

Printer Friendly View                                                                                 Page 1 of 1

12-20-1999    PERSONAL LINE OF CREDIT AGREEMENT AND DISCLOSURE          Page 3
Loan No 720225302                          (Continued)

**(d) Access Devices.** If your Credit Line is suspended or terminated, you must immediately return to us all Special Checks and other access devices. Any use of Special Checks or other access devices following suspension or termination may be considered fraudulent. You will also remain liable for any further use of Special Checks or other Credit Line access devices not returned to us.

**Delay in Enforcement.** We may delay or waive the enforcement of any of our rights under this Agreement without losing that right or any other right. If we delay or waive any of our rights, we may enforce that right at any time in the future without advance notice. For example, not terminating your account for non-payment will not be a waiver of our right to terminate your account in the future if you have not paid.

**Termination by You.** If you terminate this Agreement, you must notify us and return all Special Checks and any other access devices to us. Despite termination, your obligations under this Agreement will remain in full force and effect until you have paid us all amounts due under this Agreement.

**Prepayment.** You may prepay all or any amount owing under this Credit Line at any time without penalty, except we will be entitled to receive all accrued FINANCE CHARGES, and other charges, if any. Payments in excess of your Minimum Payment will not relieve you of your obligation to continue to make your Minimum Payments. Instead, they will reduce the principal balance owed on the Credit Line. If you mark a check, money order, or other instrument sent in payment with "Paid in Full" or with similar language, we may accept the payment, and you will remain obligated to pay any further amount owed to us.

**Notices.** All notices will be sent to your address as shown in your Credit Line application. Notices will be mailed to you at a different address if you give us written notice of a different address. You agree to advise us promptly if you change your mailing address.

**Annual Review.** You agree that you will provide us with a current financial statement, a new credit application, or both, annually, on forms provided by us. Based upon this information we will conduct an annual review of your Credit Line Account. You also agree we may obtain credit reports on you at any time, at our sole option and expense, for any reason, including but not limited to determining whether there has been an adverse change in your financial condition. You authorize us to release information to others (such as credit bureaus, merchants, and other financial institutions) about the nature and history of your Credit Line Account. Based upon a material adverse change in your financial condition (such as termination of employment or loss of income), we may suspend your Credit Line.

**Transfer or Assignment.** Without prior notice or approval from you, we reserve the right to sell or transfer your Credit Line Account to another lender, entity, or person. Your rights under this Agreement belong to you only and may not be transferred or assigned. Your obligations, however, are binding on your heirs and legal representatives.

**Tax Consequences.** You understand that neither WHITNEY NATIONAL BANK, nor any of its employees or agents, makes any representation or warranty whatsoever concerning the tax consequences of your establishing and using your Credit Line, including the deductibility of interest, and that neither WHITNEY NATIONAL BANK nor its employees or agents will be liable in the event interest on your Credit Line is not deductible. You should consult your own tax advisor for guidance on this subject.

**Governing Law.** This Agreement will be governed by federal law and by the laws of the State of Alabama. The Credit Line which is the subject of this Agreement has been applied for, considered, approved, and made in the State of Alabama.

**Interpretation.** The names given to paragraphs or sections in this Agreement are for convenience purposes only. They are not to be used to interpret or define the provisions of this Agreement. You agree that this Agreement is the best evidence of your agreements with us. If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced. Therefore, a court may enforce the rest of this provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable. If we go to court for any reason, we can use a copy, filmed or electronic, of any periodic statement, this Agreement, or any other document to prove what you owe us or that a transaction has taken place. The copy, microfilm, microfiche, or optical image will have the same validity as the original. You agree that, except to the extent you can show there is a billing error, your most current periodic billing statement is the best evidence of your obligation to pay.

**Selection of Payment Due Date.** You have the option of selecting the day of the month that your payment will be due. The date selected will appear on your periodic statement as the Payment Due Date. Please enter in the space below the (numeric) day of each month that you select as your Payment Due Date. If you do not select a date, your Payment Due Date will be the 15th day following each cycle Closing Date.

_____ By initialing here, I am choosing my Payment Due Date to be the _____15____ day of each month. I understand that if I do not select a date, my Payment Due Date will be the 15th day following each cycle Closing Date.

**Power of Attorney/Alternative Accounts.** In the event that any Borrower has named, constituted and/or appointed, or in the future names, constitutes or appoints, any one or more persons or entities as his/her agent and attorney-in-fact with respect to his/her designated account or Credit Line Account by delivering to Lender a written power of attorney or, in the event that Borrower's designated account is currently an alternative account or in the future becomes an alternative account (by the addition of one or more names as authorized signors on the designated account), Borrower acknowledges and agrees that any such agent or alternative account owner shall have the same authority as Borrower to request and receive credit advances under this Agreement, and Borrower hereby authorizes and empowers any such agent or alternative account owner for and on behalf of Borrower to borrow money and contract obligations under this Agreement, to request and receive credit advances under this Agreement, and to bind Borrower for such acts as fully as if the same were the acts of Borrower, and Borrower hereby ratifies and confirms and agrees to ratify and confirm all that is done by such agent or alternative account owner under and by virtue of the power of attorney and the authorization granted therein, as well as the power of attorney and the authorization granted herein.

**Level Payment Option.** You have the option of instructing us to bill you monthly for level payments on your Account in the amount specified below. However, if the amount of your level payment is less that the Minimum Payment required for any month, you must pay at least your Minimum Payment Amount.

_____ By initialing here, I am choosing to make level payments on my Credit Line Account. Please bill me for a monthly payment of $_____ on my Credit Line Account.

**Additional Payments.** At any time, you may make additional payments on your Credit Line, which will be applied as provided in the "Prepayment" and "Application of Payments" sections above. However, if you decide to pay the total amount due on your Credit Line, you must call us for an exact pay-off balance for the day you will make payment since FINANCE CHARGES are imposed each day any principal balance is outstanding. Should any additional payment exceed the total amount due under your Credit Line, we will credit the amount of such overpayment to your designated checking account with us or, if you have not designated a checking account, by forwarding a check to you in the amount of the overpayment.

ADDITIONAL COLLATERAL. _____

**ADDITIONAL PROVISIONS TO CREDIT AGREEMENT.** An exhibit, titled "ADDITIONAL PROVISIONS TO CREDIT AGREEMENT", is attached to this Agreement and by this reference is made a part of this Agreement just as if all the provisions, terms and conditions of the Exhibit had been fully set forth in this Agreement.

**Acknowledgment and Amendments.** You understand and agree to the terms and conditions in this Agreement. You acknowledge that, subject to applicable laws, we have the right to change the terms and conditions of the Credit Line program, including without limitation the Margin, if we change the Periodic Rate and subsequent new credit advances are made under this Agreement, the entire balance will be subject to the new rates. You also understand and agree that you may be subject to other agreements with us regarding transfer instruments or access devices which may access your Credit Line. Any person signing below may request a modification to this Agreement, and, if granted, the modification will be binding upon all signers. By signing this Agreement, you acknowledge that you have read this Agreement. You also acknowledge receipt of a copy of this Agreement, including the Fair Credit Billing Notice.

This Agreement is dated December 20, 1999.

CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

BORROWER:

X _____
DR DELORES V VICTORIA

ACCEPTED: WHITNEY NATIONAL BANK

By: _____    Effective Disbursement Date: 12/21/99

12-20-1999        PERSONAL LINE OF CREDIT AGREEMENT AND DISCLOSURE        · Page 4
Loan No 720225302                        (Continued)

Variable Rate. Line of Credit.                    LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.27a (c) 1998 CFI ProServices, Inc. All rights reserved.

12-20-1999    PERSONAL LINE OF CREDIT AGREEMENT AND DISCLOSURE    Page 5
. Loan No 720225302                              (Continued)

## BILLING ERROR RIGHTS

### YOUR BILLING RIGHTS

### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify us in case of errors or questions about your bill.**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at , 109 GREENVILLE BYPASS, GREENVILLE, AL 36037 or at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than sixty (60) days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

Your name and account number.

The dollar amount of the suspected error.

Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three (3) business days before the automatic payment is scheduled to occur.

**Your rights and our responsibilities after we receive your written notice.**

We must acknowledge your letter within thirty (30) days, unless we have corrected the error by then. Within ninety (90) days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your Credit Limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date on which it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten (10) days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

DOLORES V VICTORIA
P O BOX 810
GREENVILLE AL 36037

BUTLER COUNTY BANK
281 G'VILLE BYPASS-P O BOX 190
GREENVILLE AL 36037

SCANNED

| | |
|---|---|
| Loan Number | 94581 |
| Date | 3/28/06 |
| Maturity Date | 9/15/07 |
| Loan Amount $ | 19,697.16 |
| Renewal Of | |

**BORROWER'S NAME AND ADDRESS**
"I" includes each borrower above, jointly and severally.

**LENDER'S NAME AND ADDRESS**
"You" means the lender, its successors and assigns.

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of
NINETEEN THOUSAND SIX HUNDRED NINETY SEVEN AND 16/100 Dollars $ _____ 19,697.16

☒ **Single Advance:** I will receive all of this principal sum on __3/28/06__. No additional advances are contemplated under this note.

☐ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____ I will receive the amount of $ _____ and future principal advances are contemplated.
Conditions: The conditions for future advances are _____

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on _____.

☒ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from __3/28/06__ at the rate of __9.000__ % per year until __paid in full__.

☐ **Variable Rate:** This rate may then change as stated below.
☐ **Index Rate:** The future rate will be _____ the following index rate: _____

☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.
☐ **Frequency and Timing:** The rate on this note may change as often as _____.
A change in the interest rate will take effect _____.
☐ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than _____ %. The rate may not change more than _____ % each _____.
**Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
☐ The amount of each scheduled payment will change.   ☐ The amount of the final payment will change.
☐ _____

**ACCRUAL METHOD:** Interest will be calculated on a __actual/365__ basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
☒ on the same fixed or variable rate basis in effect before maturity (as indicated above).
☐ at a rate equal to _____

☒ **LATE CHARGE:** If a payment is made more than __10__ days after it is due, I agree to pay a late charge of __5% of late pmt with a min. of $10 and a max. of $100__

☒ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☒ are ☐ are not included in the principal amount above: __PROCESSING FEE OF $100.00__

**PAYMENTS:** I agree to pay this note as follows:
☐ **Interest:** I agree to pay accrued interest _____

☐ **Principal:** I agree to pay the principal _____

☒ **Installments:** I agree to pay this note in __18__ payments. The first payment will be in the amount of $ __1,170.32__ and will be due __April 15, 2006__. A payment of $ __1,170.32__ will be due __on the 15th day of each Month__ thereafter. The final payment of the entire unpaid balance of principal and interest will be due __September 15, 2007__.

**ADDITIONAL TERMS:**

☒ **SECURITY:** This note is separately secured by (describe separate document by type and date):
UCC-1
4/15/04
(This section is for our internal use. Failure to list a separate security document does not mean the agreement will not secure this note.)

**DISPOSITION OF FUNDS**

| Deposited to Account Number | Check Number |
|---|---|

Signature for Lender

_____
WILLIAM S JOHNSON

_____
PRESIDENT

**PURPOSE:** The purpose of this loan is _____
__REFINANCE TO LOWER PAYMENTS__.

**SIGNATURES:** I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2). I have received a copy on today's date.

**CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU SIGN IT.**

_____ 7367
DOLORES V VICTORIA

**UNIVERSAL NOTE**
Experts © 1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN-AL 3/4/2002

(page 1 of 2)

| | | |
|---|---|---|
| DOLORES V VICTORIA<br>P O BOX 810<br>GREENVILLE AL 36037 | <br>GREENVILLE AL 36037 | Loan Number ___ 88988<br>Date ___ 10/15/04<br>Maturity Date ___ 10/15/07<br>Loan Amount $ ___ 33,100.00<br>Renewal Of ___ |
| **BORROWER'S NAME AND ADDRESS**<br>"I" includes each borrower above, jointly and severally. | **LENDER'S NAME AND ADDRESS**<br>"You" means the lender, its successors and assigns. | |

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of ___
THIRTY THREE THOUSAND ONE HUNDRED AND NO/100 _____ Dollars $ ___ 33,100.00

☒ **Single Advance:** I will receive all of this principal sum on __10/15/04__. No additional advances are contemplated under this note.

☐ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On ___
_____ I will receive the amount of $ _____ and future principal advances are contemplated.
**Conditions:** The conditions for future advances are _____

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on _____.

☐ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from __10/15/04__ at the rate of __8.000__ % per year until __paid in full__.

☐ **Variable Rate:** This rate may then change as stated below.

☐ **Index Rate:** The future rate will be _____ the following index rate: _____

☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.

☐ **Frequency and Timing:** The rate on this note may change as often as _____.
A change in the interest rate will take effect _____

☐ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than _____ %. The rate may not change more than _____ % each _____.

**Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
☐ The amount of each scheduled payment will change.      ☐ The amount of the final payment will change.
☐ _____

**ACCRUAL METHOD:** Interest will be calculated on a __actual/365__ basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
☒ on the same fixed or variable rate basis in effect before maturity (as indicated above).
☐ at a rate equal to _____

☒ **LATE CHARGE:** If a payment is made more than __10__ days after it is due, I agree to pay a late charge of __5% of late pmt with a min. of $10 and a max. of $100__

☒ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☒ are ☐ are not included in the principal amount above: __PROCESSING FEE $100.00__

**PAYMENTS:** I agree to pay this note as follows:
☐ **Interest:** I agree to pay accrued interest _____

☐ **Principal:** I agree to pay the principal _____

☒ **Installments:** I agree to pay this note in __36__ payments. The first payment will be in the amount of $ __1,037.12__ and will be due __November 15, 2004__. A payment of $ __1,037.12__ will be due __on the 15th day of each Month__ thereafter. The final payment of the entire unpaid balance of principal and interest will be due __October 15, 2007__.

**ADDITIONAL TERMS:**
EQUIPMENT AS STATED ON EXHIBIT 'A' DR VICTORIA MEDICAL OFFICE AND EXHIBIT
'B' BARIATRIC MEDICINE

☒ **SECURITY:** This note is separately secured by (describe separate document by type and date):
UCC-1
4/15/04
(This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.)

**DISPOSITION OF FUNDS**

| Deposited to Account Number | Check Number |
|---|---|
| | |

Signature for Lender

WSJ

**PURPOSE:** The purpose of this loan is _____
__REN/CONVERTS TO MONTHLY PMTS/ORIG OPERATING__

**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2).** I have received a copy on today's date.

**CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU SIGN IT.**

_(signature)_ 7367
DOLORES V VICTORIA

UNIVERSAL NOTE
Experi © 1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN-AL 3/4/2002

*(page 1 of 2)*

| DOLORES V VICTORIA<br>P O BOX 810<br>GREENVILLE AL 36037 | | Loan Number _____ 87051 |
| | BUTLER COUNTY BANK<br>281 G'VILLE BYPASS-P O BOX 190<br>GREENVILLE AL 36037 | Date _____ 7/15/04<br>Maturity Date _____ 10/15/04<br>Loan Amount $ ____ 33,100.47<br>Renewal Of _____ 87051 |
| **BORROWER'S NAME AND ADDRESS**<br>"I" includes each borrower above, jointly and severally. | **LENDER'S NAME AND ADDRESS**<br>"You" means the lender, its successors and assigns. | |

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of _____
THIRTY THREE THOUSAND ONE HUNDRED AND 47/100 _____ Dollars $ _____ 33,100.47

☒ **Single Advance:** I will receive all of this principal sum on __7/15/04__ . No additional advances are contemplated under this note.

☐ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____
_____ I will receive the amount of $ _____ and future principal advances are contemplated.
**Conditions:** The conditions for future advances are _____
_____

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on _____ .

☐ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from __7/15/04__ at the rate of __8.250__ %
per year until __paid in full__ .

☐ **Variable Rate:** This rate may then change as stated below.

☐ **Index Rate:** The future rate will be _____ the following index rate: _____
_____
_____

☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.

☐ **Frequency and Timing:** The rate on this note may change as often as _____ .
A change in the interest rate will take effect _____ .

☐ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than
_____ %. The rate may not change more than _____ % each _____ .

**Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
☐ The amount of each scheduled payment will change.  ☐ The amount of the final payment will change.
☐ _____

**ACCRUAL METHOD:** Interest will be calculated on a _____ actual/365 _____ basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
☒ on the same fixed or variable rate basis in effect before maturity (as indicated above).
☐ at a rate equal to _____ .

☒ **LATE CHARGE:** If a payment is made more than __10__ days after it is due, I agree to pay a late charge of __5% of late__
__pmt with a min. of $10 and a max. of $100__

☒ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☒ are ☐ are not included in the principal amount
above: __PROCESSING FEE $100.00__

**PAYMENTS:** I agree to pay this note as follows:

☒ **Interest:** I agree to pay accrued interest __with the principal__
_____

☒ **Principal:** I agree to pay the principal __on demand, but if no demand is made then__
__on 10/15/04.__

☐ **Installments:** I agree to pay this note in _____ payments. The first payment will be in the amount of $ _____
and will be due _____ . A payment of $ _____ will be due _____
_____ thereafter. The final payment of the entire
unpaid balance of principal and interest will be due _____ .

**ADDITIONAL TERMS:**

| ☒ **SECURITY:** This note is separately secured by (describe separate document by type and date):<br><br>UCC-1<br>4/15/04<br><br>(This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.) | **PURPOSE:** The purpose of this loan is _____<br>__RENEWAL ORIGINALLY FOR OPERATING CAPITAL__ .<br><br>**SIGNATURES:** I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2). I have received a copy on today's date.<br><br>**CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU <u>SIGN</u> IT.** |
| **DISPOSITION OF FUNDS**<br><br>Deposited to Account Number _____ Check Number _____<br>Signature for Lender<br><br><br>_____ WSJ | _____ -7367<br>DOLORES V VICTORIA<br><br>_____ _____ |

UNIVERSAL NOTE
Expert ©1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN-AL 3/4/2002                    (page 1 of 2)

DOLORES V VICTORIA
P O BOX 810
GREENVILLE AL 36037

BUTLER COUNTY BANK
281 G'VILLE BYPASS-P O BOX 190
GREENVILLE AL 36037

| | |
|---|---|
| Loan Number | 87051 |
| Date | 4/15/04 |
| Maturity Date | 7/15/04 |
| Loan Amount $ | 35,120.00 |
| Renewal Of | |

**PAID BY RENEWAL**

**BORROWER'S NAME AND ADDRESS**
"I" includes each borrower above, jointly and severally.

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of _____
THIRTY FIVE THOUSAND ONE HUNDRED TWENTY AND NO/100 ___ Dollars $ _____ 35,120.00 _____

☒ **Single Advance:** I will receive all of this principal sum on _4/15/04_ . No additional advances are contemplated under this note.

☐ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____
_____ I will receive the amount of $ _____ and future principal advances are contemplated.
Conditions: The conditions for future advances are _____

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to
all other conditions and expires on _____ .
☐ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from _4/15/04_ at the rate of _8.000_ %
per year until _paid in full_ .

☐ **Variable Rate:** This rate may then change as stated below.
  ☐ **Index Rate:** The future rate will be _____ the following index rate: _____

  ☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.
  ☐ **Frequency and Timing:** The rate on this note may change as often as _____ .
    A change in the interest rate will take effect _____
  ☐ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than
    _____ %. The rate may not change more than _____ % each _____ .

**Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
  ☐ The amount of each scheduled payment will change.    ☐ The amount of the final payment will change.

**ACCRUAL METHOD:** Interest will be calculated on a _actual/365_ basis.
**POST MATURITY RATE:** I agree to pay interest on the unpaid principal balance of this note owing after maturity, and until paid in full, as stated below:
  ☒ on the same fixed or variable rate basis in effect before maturity (as indicated above).
  ☐ at a rate equal to _____

☒ **LATE CHARGE:** If a payment is made more than _10_ days after it is due, I agree to pay a late charge of _5% of late_
  _pmt with a min. of $10 and a max. of $100_

☒ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☒ are ☐ are not included in the principal amount
  above: _INTEREST SURCHARGE $100 AND UCC $20_

**PAYMENTS:** I agree to pay this note as follows:
☒ **Interest:** I agree to pay accrued interest _with the principal_

☒ **Principal:** I agree to pay the principal _on demand, but if no demand is made then_
  _on 7/15/04._

☐ **Installments:** I agree to pay this note in _____ payments. The first payment will be in the amount of $ _____
  and will be due _____ . A payment of $ _____ will be due _____
  _____ thereafter. The final payment of the entire
  unpaid balance of principal and interest will be due _____

**ADDITIONAL TERMS:**
TWO MONTHLY PAYMENTS OF $1100 EACH DUE MAY 15, 2004 AND JUNE 15, 2004.
BALANCE OF LOAN TO BE DUE JULY 15, 2004.

☒ **SECURITY:** This note is separately secured by (describe separate
document by type and date):
UCC
4/15/04
(This section is for your internal use. Failure to list a separate security document does not mean the
agreement will not secure this note.)

**PURPOSE:** The purpose of this loan is _____
_OPERATING CAPITAL_ .
**SIGNATURES:** I AGREE TO THE TERMS OF THIS NOTE (INCLUDING
THOSE ON PAGE 2). I have received a copy on today's date.

**CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS
CONTRACT BEFORE YOU SIGN IT.**

**DISPOSITION OF FUNDS**

Deposited to Account Number _____    Check Number _____
Signature for Lender

WSJ

_____ -7367
DOLORES V VICTORIA

UNIVERSAL NOTE
Expert © 1984, 1991 Bankers Systems, Inc., St. Cloud, MN  Form UN-AL 3/4/2002

(page 1 of 2)

SCANNED

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

BUTLER COUNTY BANK
281 G'VILLE BYPASS-P O BOX 190
GREENVILLE AL 36037

Alabama
Sec. Of State
B 04-0323200 FS
Date 4/23/2004
Time 17:00
040427      3 Pg

File    $20.00
ExPg    $2.00
Ackn    $.00
Form    $.00

Total   $22.00
04/029

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| VICTORIA | DOLORES | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| P O BOX 810 | GREENVILLE | AL | 36037 0000 | |

| 1d. TAX ID #:  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| ████ 7367 | | | | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | | | 00000 0000 | |

| 2d. TAX ID #:  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| BUTLER COUNTY BANK | | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 281 G'VILLE BYPASS-P O BOX 190 | Camden | AL | 36726 | USA |

4. This FINANCING STATEMENT covers the following collateral

EQUIPMENT AS STATED ON EXHIBIT 'A' DR VICTORIA MEDICAL OFFICE AND EXHIBIT 'B' BARIATRIC
MEDICINE

Loan # 27051

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum    [if applicable]

7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional]    ☐ All Debtors  ☐ Debtor 1  ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA

ACKNOWLEDGMENT COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)    Bankers Systems, Inc., St. Cloud, MN  Form UCC-1-LA2  5/30/2001

Dr Victoria Medical office
1/ 6/99 Through 1/ 6/99

**E X H I B I T   A**

ALABAMA-2002 Victoria
1/ 2/95

Page

| Date | Num | Description | Memo | Category | Clr | Amount |
|------|-----|-------------|------|----------|-----|--------|

INCOME/EXPENSE
   INCOME
      Income - Other
      ---------------

| Date | Description | Memo | Amount |
|------|-------------|------|--------|
| 1/ 6 | Reception Area | 3 TVs,chairs-t | 3,500.00 |
| 1/ 6 | 7 Exam tables-cabin | Equipments | 10,500.00 |
| 1/ 6 | Business office | 2 copiers,2 Fa | 8,500.00 |
| 1/ 6 | 2 EKG,spirometry | | 7,500.00 |
| 1/ 6 | Microscope,BP steth | Oto-opthalmosc | 3,500.00 |
| 1/ 6 | 2 refrigerators,mic | kitchen equipm | 1,500.00 |
| 1/ 6 | 3 Office desk-chair | credensa | 7,000.00 |
| 1/ 6 | 4 office cabinets | file cabinet | 3,600.00 |
| 1/ 6 | Decors-paintings | | 1,500.00 |

           Total Income - Other       47,100.00

        TOTAL INCOME       47,100.00

     TOTAL INCOME/EXPENSE       47,100.00
                              ==========

SIGNED BY:   DOLORES VICTORIA          DATE

*Submitted by Dolores Victoria*    *4-18-4*

*± may include to collateral*

*Bariatric Medicine Assets*
*1/ 8/99 Through 1/ 8/99*

**E X H I B I T   B**

ALABAMA-2002 Victoria
1/ 2/99

Page

| Date | Num | Description | Memo | Category | Clr | Amount |
|------|-----|-------------|------|----------|-----|--------|
| | | INCOME/EXPENSE | | | | |
| | | INCOME | | | | |
| | | Income - Other | | | | |
| | | --------------- | | | | |
| 1/ 8 | | Furnitures | Reception Rm | | | 3,500.00 |
| 1/ 8 | | Furnitures | Business offic | | | 2,500.00 |
| 1/ 8 | | Copier,Fax etc | 2 computers | | | 2,500.00 |
| 1/ 8 | | 2 Exam room | Equipment/furn | | | 2,100.00 |
| 1/ 8 | | Microdermabrasion | and supplies | | | 17,000.00 |
| 1/ 8 | | Gym and exercise | Equipments | | | 3,500.00 |
| 1/ 8 | | BP machines,etc | Weighing scale | | | 1,500.00 |
| 1/ 8 | | Paintings-decors | | | | 2,100.00 |
| | | | | | | ---------- |
| | | Total Income - Other | | | | 34,700.00 |
| | | | | | | ---------- |
| | | TOTAL INCOME | | | | 34,700.00 |
| | | | | | | ---------- |
| | | TOTAL INCOME/EXPENSE | | | | 34,700.00 |
| | | | | | | ========== |

SIGNED BY:  DOLORES VICTORIA          *4-18-4*

DATE

**11 USCS § 707**

**§ 707. Dismissal of a case or conversion to a case under chapter 11 or 13**

(a) The court may dismiss a case under this chapter [11 USCS §§ 701 et seq.] only after notice and a hearing and only for cause, including--

  (1) unreasonable delay by the debtor that is prejudicial to creditors;

  (2) nonpayment of any fees [or] and charges required under chapter 123 of title 28; and

  (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521 [11 USCS § 521], but only on a motion by the United States trustee.

**(b) (1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title [11 USCS §§ 1101 et seq. or 1301 et seq.], if it finds that the granting of relief would be an abuse of the provisions of this chapter [11 USCS §§ 701 et seq.].** In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3) [11 USCS § 548(d)(3)]) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4) [11 USCS § 548(d)(4)]).

  (2) (A) (i) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter [11 USCS §§ 701 et seq.], the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of--

      (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $ 6,575, whichever is greater; or

      (II) $ 10,950.

    (ii) (I) The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. Such expenses shall include reasonably necessary health insurance, disability insurance, and health savings account expenses for the debtor, the spouse of the debtor, or the dependents of the debtor. Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts. In addition, the debtor's monthly expenses shall include the debtor's reasonably necessary expenses incurred to maintain the safety of the debtor and the family of the debtor from family violence as identified under section 309 [320] of the Family Violence Prevention and Services Act [42 USCS § 10421], or other applicable Federal law. The expenses included in the debtor's monthly expenses described in the preceding sentence shall be kept confidential by the court. In addition, if it is

demonstrated that it is reasonable and necessary, the debtor's monthly expenses may also include an additional allowance for food and clothing of up to 5 percent of the food and clothing categories as specified by the National Standards issued by the Internal Revenue Service.

(II) In addition, the debtor's monthly expenses may include, if applicable, the continuation of actual expenses paid by the debtor that are reasonable and necessary for care and support of an elderly, chronically ill, or disabled household member or member of the debtor's immediate family (including parents, grandparents, siblings, children, and grandchildren of the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case who is not a dependent) and who is unable to pay for such reasonable and necessary expenses.

(III) In addition, for a debtor eligible for chapter 13 [11 USCS §§ 1301 et seq.], the debtor's monthly expenses may include the actual administrative expenses of administering a chapter 13 [11 USCS §§ 1301 et seq.] plan for the district in which the debtor resides, up to an amount of 10 percent of the projected plan payments, as determined under schedules issued by the Executive Office for United States Trustees.

(IV) In addition, the debtor's monthly expenses may include the actual expenses for each dependent child less than 18 years of age, not to exceed $ 1,650 per year per child, to attend a private or public elementary or secondary school if the debtor provides documentation of such expenses and a detailed explanation of why such expenses are reasonable and necessary, and why such expenses are not already accounted for in the National Standards, Local Standards, or Other Necessary Expenses referred to in subclause (I).

(V) In addition, the debtor's monthly expenses may include an allowance for housing and utilities, in excess of the allowance specified by the Local Standards for housing and utilities issued by the Internal Revenue Service, based on the actual expenses for home energy costs if the debtor provides documentation of such actual expenses and demonstrates that such actual expenses are reasonable and necessary.

(iii) The debtor's average monthly payments on account of secured debts shall be calculated as the sum of--

(I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and

(II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title [11 USCS §§ 1301 et seq.], to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;

divided by 60.

(iv) The debtor's expenses for payment of all priority claims (including priority child support and alimony claims) shall be calculated as the total amount of debts entitled to priority, divided by 60.

(B) (i) In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

(ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide--

(I) documentation for such expense or adjustment to income; and

(II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.

(iii) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.

(iv) The presumption of abuse may only be rebutted if the additional expenses or adjustments to income referred to in clause (i) cause the product of the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv) of subparagraph (A) when multiplied by 60 to be less than the lesser of--

(I) 25 percent of the debtor's nonpriority unsecured claims, or $ 6,000, whichever is greater; or

(II) $ 10,000.

(C) As part of the schedule of current income and expenditures required under section 521 [11 USCS § 521], the debtor shall include a statement of the debtor's current monthly income, and the calculations that determine whether a presumption arises under subparagraph (A)(i), that show how each such amount is calculated.

(D) Subparagraphs (A) through (C) shall not apply, and the court may not dismiss or convert a case based on any form of means testing, if the debtor is a disabled veteran (as defined in section 3741(1) of title 38 [38 USCS § 3741(1)]), and the indebtedness occurred primarily during a period during which he or she was--

(i) on active duty (as defined in section 101(d)(1) of title 10 [10 USCS § 101(d)(1)]); or

(ii) performing a homeland defense activity (as defined in section 901(1) of title 32 [32 USCS § 901(1)]).

(3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter [11 USCS §§ 701 et seq.] in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider--

(A) whether the debtor filed the petition in bad faith; or

(B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

(4) (A) The court, on its own initiative or on the motion of a party in interest, in accordance with the procedures described in rule 9011 of the Federal Rules of Bankruptcy Procedure, may order the attorney for the debtor to reimburse the trustee for all reasonable costs in prosecuting a motion filed under section 707(b) [11 USCS § 707(b)], including reasonable attorneys' fees, if--

(i) a trustee files a motion for dismissal or conversion under this subsection; and

(ii) the court--

(I) grants such motion; and

(II) finds that the action of the attorney for the debtor in filing a case under this chapter [11 USCS §§ 701 et seq.] violated rule 9011 of the Federal Rules of Bankruptcy Procedure.

(B) If the court finds that the attorney for the debtor violated rule 9011 of the Federal Rules of Bankruptcy Procedure, the court, on its own initiative or on the motion of a party in interest, in accordance with such procedures, may order--

(i) the assessment of an appropriate civil penalty against the attorney for the debtor; and

(ii) the payment of such civil penalty to the trustee, the United States trustee (or the bankruptcy administrator, if any).

(C) The signature of an attorney on a petition, pleading, or written motion shall constitute a

certification that the attorney has--

(i) performed a reasonable investigation into the circumstances that gave rise to the petition, pleading, or written motion; and

(ii) determined that the petition, pleading, or written motion--

(I) is well grounded in fact; and

(II) is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law and does not constitute an abuse under paragraph (1).

(D) The signature of an attorney on the petition shall constitute a certification that the attorney has no knowledge after an inquiry that the information in the schedules filed with such petition is incorrect.

(5) (A) Except as provided in subparagraph (B) and subject to paragraph (6), the court, on its own initiative or on the motion of a party in interest, in accordance with the procedures described in rule 9011 of the Federal Rules of Bankruptcy Procedure, may award a debtor all reasonable costs (including reasonable attorneys' fees) in contesting a motion filed by a party in interest (other than a trustee or United States trustee (or bankruptcy administrator, if any)) under this subsection if--

(i) the court does not grant the motion; and

(ii) the court finds that--

(I) the position of the party that filed the motion violated rule 9011 of the Federal Rules of Bankruptcy Procedure; or

(II) the attorney (if any) who filed the motion did not comply with the requirements of clauses (i) and (ii) of paragraph (4)(C), and the motion was made solely for the purpose of coercing a debtor into waiving a right guaranteed to the debtor under this title.

(B) A small business that has a claim of an aggregate amount less than $ 1,100 shall not be subject to subparagraph (A)(ii)(I).

(C) For purposes of this paragraph--

(i) the term "small business" means an unincorporated business, partnership, corporation, association, or organization that--

(I) has fewer than 25 full-time employees as determined on the date on which the motion is filed; and

(II) is engaged in commercial or business activity; and

(ii) the number of employees of a wholly owned subsidiary of a corporation includes the employees of--

(I) a parent corporation; and

(II) any other subsidiary corporation of the parent corporation.

(6) Only the judge or United States trustee (or bankruptcy administrator, if any) may file a motion under section 707(b) [11 USCS § 707(b)], if the current monthly income of the debtor, or in a joint case, the debtor and the debtor's spouse, as of the date of the order for relief, when multiplied by 12, is equal to or less than--

(A) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

(B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or

(C) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $ 575 per month for

26 USCS § 6672

**§ 6672.  Failure to collect and pay over tax, or attempt to evade or defeat tax.**

**(a) General rule. Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 [26 USCS § 6653] or part II of subchapter A of chapter 68 [26 USCS §§ 6662 et seq.] for any offense to which this section is applicable.**

(b) Preliminary notice requirement.
   (1) In general. No penalty shall be imposed under subsection (a) unless the Secretary notifies the taxpayer in writing by mail to an address as determined under section 6212(b) [26 USCS § 6212(b)] or in person that the taxpayer shall be subject to an assessment of such penalty.
   (2) Timing of notice. The mailing of the notice described in paragraph (1) (or, in the case of such a notice delivered in person, such delivery) shall precede any notice and demand of any penalty under subsection (a) by at least 60 days.
   (3) Statute of limitations. If a notice described in paragraph (1) with respect to any penalty is mailed or delivered in person before the expiration of the period provided by section 6501 [26 USCS § 6501] for the assessment of such penalty (determined without regard to this paragraph), the period provided by such section for the assessment of such penalty shall not expire before the later of--
      (A) the date 90 days after the date on which such notice was mailed or delivered in person, or
      (B) if there is a timely protest of the proposed assessment, the date 30 days after the Secretary makes a final administrative determination with respect to such protest.
   (4) Exception for jeopardy. This subsection shall not apply if the Secretary finds that the collection of the penalty is in jeopardy.

(c) Extension of period of collection where bond is filed.
   (1) In general. If, within 30 days after the day on which notice and demand of any penalty under subsection (a) is made against any person, such person--
      (A) pays an amount which is not less than the minimum amount required to commence a proceeding in court with respect to his liability for such penalty,
      (B) files a claim for refund of the amount so paid, and
      (C) furnishes a bond which meets the requirements of paragraph (3),
   no levy or proceeding in court for the collection of the remainder of such penalty shall be made, begun, or prosecuted until a final resolution of a proceeding begun as provided in paragraph (2). Notwithstanding the provisions of section 7421(a) [26 USCS § 7421(a)], the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court. Nothing in this paragraph shall be construed to prohibit any counterclaim for the remainder of such penalty in a proceeding begun as provided in paragraph (2).
   (2) Suit must be brought to determine liability for penalty. If, within 30 days after the day on

which his claim for refund with respect to any penalty under subsection (a) is denied, the person described in paragraph (1) fails to begin a proceeding in the appropriate United States district court (or in the Court of Claims) for the determination of his liability for such penalty, paragraph (1) shall cease to apply with respect to such penalty, effective on the day following the close of the 30-day period referred to in this paragraph.

(3) Bond. The bond referred to in paragraph (1) shall be in such form and with such sureties as the Secretary may by regulations prescribe and shall be in an amount equal to 1 1/2 times the amount of excess of the penalty assessed over the payment described in paragraph (1).

(4) Suspension of running of period of limitations on collection. The running of the period of limitations provided in section 6502 [26 USCS § 6502] on the collection by levy or by a proceeding in court in respect of any penalty described in paragraph (1) shall be suspended for the period during which the Secretary is prohibited from collecting by levy or a proceeding in court.

(5) Jeopardy collection. If the Secretary makes a finding that the collection of the penalty is in jeopardy, nothing in this subsection shall prevent the immediate collection of such penalty.

(d) Right of contribution where more than1 person liable for penalty. If more than 1 person is liable for the penalty under subsection (a) with respect to any tax, each person who paid such penalty shall be entitled to recover from other persons who are liable for such penalty an amount equal to the excess of the amount paid by such person over such person's proportionate share of the penalty. Any claim for such a recovery may be made only in a proceeding which is separate from, and is not joined or consolidated with--

(1) an action for collection of such penalty brought by the United States, or

(2) a proceeding in which the United States files a counterclaim or third-party complaint for the collection of such penalty.

(e) Exception for voluntary board members of tax-exempt organizations. No penalty shall be imposed by subsection (a) on any unpaid, volunteer member of any board of trustees or directors of an organization exempt from tax under subtitle A [26 USCS §§ 1 et seq.] if such member--

(1) is solely serving in an honorary capacity,

(2) does not participate in the day-to-day or financial operations of the organization, and

(3) does not have actual knowledge of the failure on which such penalty is imposed.

The preceding sentence shall not apply if it results in no person being liable for the penalty imposed by subsection (a).

## 11 USCS § 101

§ 101.  Definitions

In this title the following definitions shall apply:

  (1) The term "accountant" means accountant authorized under applicable law to practice public accounting, and includes professional accounting association, corporation, or partnership, if so authorized.

  (2) The term "affiliate" means--

    (A) entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, other than an entity that holds such securities--

      (i) in a fiduciary or agency capacity without sole discretionary power to vote such securities; or

      (ii) solely to secure a debt, if such entity has not in fact exercised such power to vote;

    (B) corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, other than an entity that holds such securities--

      (i) in a fiduciary or agency capacity without sole discretionary power to vote such securities; or

      (ii) solely to secure a debt, if such entity has not in fact exercised such power to vote;

    (C) person whose business is operated under a lease or operating agreement by a debtor, or person substantially all of whose property is operated under an operating agreement with the debtor; or

    (D) entity that operates the business or substantially all of the property of the debtor under a lease or operating agreement.

  (3) The term "assisted person" means any person whose debts consist primarily of consumer debts and the value of whose nonexempt property is less than $ 164,250.

  (4) The term "attorney" means attorney, professional law association, corporation, or partnership, authorized under applicable law to practice law.

  (4A) The term "bankruptcy assistance" means any goods or services sold or otherwise provided to an assisted person with the express or implied purpose of providing information, advice, counsel, document preparation, or filing, or attendance at a creditors' meeting or appearing in a case or proceeding on behalf of another or providing legal representation with respect to a case or proceeding under this title.

  (5) The term "claim" means--

    (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

    (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

  (6) The term "commodity broker" means futures commission merchant, foreign futures commission merchant, clearing organization, leverage transaction merchant, or commodity

options dealer, as defined in section 761 of this title [11 USCS § 761], with respect to which there is a customer, as defined in section 761 of this title [11 USCS § 761].

(7) The term "community claim" means claim that arose before the commencement of the case concerning the debtor for which property of the kind specified in section 541(a)(2) of this title [11 USCS § 541(a)(2)] is liable, whether or not there is any such property at the time of the commencement of the case.

(7A) The term "commercial fishing operation" means--

(A) the catching or harvesting of fish, shrimp, lobsters, urchins, seaweed, shellfish, or other aquatic species or products of such species; or

(B) for purposes of section 109 [11 USCS § 109] and chapter 12 [11 USCS §§ 1201 et seq.], aquaculture activities consisting of raising for market any species or product described in subparagraph (A).

(7B) The term "commercial fishing vessel" means a vessel used by a family fisherman to carry out a commercial fishing operation.

**(8) The term "consumer debt" means debt incurred by an individual primarily for a personal, family, or household purpose.**

(9) The term "corporation"--

(A) includes--

(i) association having a power or privilege that a private corporation, but not an individual or a partnership, possesses;

(ii) partnership association organized under a law that makes only the capital subscribed responsible for the debts of such association;

(iii) joint-stock company;

(iv) unincorporated company or association; or

(v) business trust; but

(B) does not include limited partnership.

(10) The term "creditor" means--

(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;

(B) entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(i) of this title [11 USCS § 348(d), 502(f), 502(g), 502(h) or 502(i)]; or

(C) entity that has a community claim.

(10A) The term "current monthly income"--

(A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on--

(i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii) [11 USCS § 521(a)(1)(B)(ii)]; or

(ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii) [11 USCS § 521(a)(1)(B)(ii)]; and

(B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but

excludes benefits received under the Social Security Act [42 USCS §§ 301 et seq.], payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title 18 [18 USCS § 2331]) or domestic terrorism (as defined in section 2331 of title 18 [18 USCS § 2331]) on account of their status as victims of such terrorism.

(11) The term "custodian" means--

(A) receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title;

(B) assignee under a general assignment for the benefit of the debtor's creditors; or

(C) trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors.

**(12) The term "debt" means liability on a claim.**

(12A) The term "debt relief agency" means any person who provides any bankruptcy assistance to an assisted person in return for the payment of money or other valuable consideration, or who is a bankruptcy petition preparer under section 110 [11 USCS § 110], but does not include--

(A) any person who is an officer, director, employee, or agent of a person who provides such assistance or of the bankruptcy petition preparer;

(B) a nonprofit organization that is exempt from taxation under section 501(c)(3) of the Internal Revenue Code of 1986 [26 USCS § 501(c)(3)];

(C) a creditor of such assisted person, to the extent that the creditor is assisting such assisted person to restructure any debt owed by such assisted person to the creditor;

(D) a depository institution (as defined in section 3 of the Federal Deposit Insurance Act [12 USCS § 1813]) or any Federal credit union or State credit union (as those terms are defined in section 101 of the Federal Credit Union Act [12 USCS § 1752]), or any affiliate or subsidiary of such depository institution or credit union; or

(E) an author, publisher, distributor, or seller of works subject to copyright protection under title 17 [17 USCS §§ 101 et seq.], when acting in such capacity.

(13) The term "debtor" means person or municipality concerning which a case under this title has been commenced.

(13A) The term "debtor's principal residence"--

(A) means a residential structure, including incidental property, without regard to whether that structure is attached to real property; and

(B) includes an individual condominium or cooperative unit, a mobile or manufactured home, or trailer.

(14) The term "disinterested person" means a person that--

(A) is not a creditor, an equity security holder, or an insider;

(B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

(C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

(14A) The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as

provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is--

   (A) owed to or recoverable by--

     (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or

     (ii) a governmental unit;

   (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

   (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of--

     (i) a separation agreement, divorce decree, or property settlement agreement;

     (ii) an order of a court of record; or

     (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

   (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

  (15) The term "entity" includes person, estate, trust, governmental unit, and United States trustee.

  (16) The term "equity security" means--

   (A) share in a corporation, whether or not transferable or denominated "stock", or similar security;

   (B) interest of a limited partner in a limited partnership; or

   (C) warrant or right, other than a right to convert, to purchase, sell, or subscribe to a share, security, or interest of a kind specified in subparagraph (A) or (B) of this paragraph.

  (17) The term "equity security holder" means holder of an equity security of the debtor.

  (18) The term "family farmer" means--

   (A) individual or individual and spouse engaged in a farming operation whose aggregate debts do not exceed $ 3,544,525 and not less than 50 percent of whose aggregate noncontingent, liquidated debts (excluding a debt for the principal residence of such individual or such individual and spouse unless such debt arises out of a farming operation), on the date the case is filed, arise out of a farming operation owned or operated by such individual or such individual and spouse, and such individual or such individual and spouse receive from such farming operation more than 50 percent of such individual's or such individual and spouse's gross income for--

     (i) the taxable year preceding; or

     (ii) each of the 2d and 3d taxable years preceding;

  the taxable year in which the case concerning such individual or such individual and spouse was filed; or

   (B) corporation or partnership in which more than 50 percent of the outstanding stock or equity is held by one family, or by one family and the relatives of the members of such family, and such family or such relatives conduct the farming operation, and

     (i) more than 80 percent of the value of its assets consists of assets related to the farming operation;

(ii) its aggregate debts do not exceed $ 3,544,525 and not less than 50 percent of its aggregate noncontingent, liquidated debts (excluding a debt for one dwelling which is owned by such corporation or partnership and which a shareholder or partner maintains as a principal residence, unless such debt arises out of a farming operation), on the date the case is filed, arise out of the farming operation owned or operated by such corporation or such partnership; and

(iii) if such corporation issues stock, such stock is not publicly traded.

(19) The term "family farmer with regular annual income" means family farmer whose annual income is sufficiently stable and regular to enable such family farmer to make payments under a plan under chapter 12 of this title [11 USCS §§ 1201 et seq.].

(19A) The term "family fisherman" means--

(A) an individual or individual and spouse engaged in a commercial fishing operation--

(i) whose aggregate debts do not exceed $ 1,642,500 and not less than 80 percent of whose aggregate noncontingent, liquidated debts (excluding a debt for the principal residence of such individual or such individual and spouse, unless such debt arises out of a commercial fishing operation), on the date the case is filed, arise out of a commercial fishing operation owned or operated by such individual or such individual and spouse; and

(ii) who receive from such commercial fishing operation more than 50 percent of such individual's or such individual's and spouse's gross income for the taxable year preceding the taxable year in which the case concerning such individual or such individual and spouse was filed; or

(B) a corporation or partnership--

(i) in which more than 50 percent of the outstanding stock or equity is held by--

(I) 1 family that conducts the commercial fishing operation; or

(II) 1 family and the relatives of the members of such family, and such family or such relatives conduct the commercial fishing operation; and

(ii)

(I) more than 80 percent of the value of its assets consists of assets related to the commercial fishing operation;

(II) its aggregate debts do not exceed $ 1,642,500 and not less than 80 percent of its aggregate noncontingent, liquidated debts (excluding a debt for 1 dwelling which is owned by such corporation or partnership and which a shareholder or partner maintains as a principal residence, unless such debt arises out of a commercial fishing operation), on the date the case is filed, arise out of a commercial fishing operation owned or operated by such corporation or such partnership; and

(III) if such corporation issues stock, such stock is not publicly traded.

(19B) The term "family fisherman with regular annual income" means a family fisherman whose annual income is sufficiently stable and regular to enable such family fisherman to make payments under a plan under chapter 12 of this title [11 USCS §§ 1201 et seq.].

(20) The term "farmer" means (except when such term appears in the term "family farmer") person that received more than 80 percent of such person's gross income during the taxable year of such person immediately preceding the taxable year of such person during which the case under this title concerning such person was commenced from a farming operation owned or operated by such person.

(21) The term "farming operation" includes farming, tillage of the soil, dairy farming, ranching, production or raising of crops, poultry, or livestock, and production of poultry or livestock

products in an unmanufactured state.

(21A) The term "farmout agreement" means a written agreement in which--

(A) the owner of a right to drill, produce, or operate liquid or gaseous hydrocarbons on property agrees or has agreed to transfer or assign all or a part of such right to another entity; and

(B) such other entity (either directly or through its agents or its assigns), as consideration, agrees to perform drilling, reworking, recompleting, testing, or similar or related operations, to develop or produce liquid or gaseous hydrocarbons on the property.

(21B) The term "Federal depository institutions regulatory agency" means--

(A) with respect to an insured depository institution (as defined in section 3(c)(2) of the Federal Deposit Insurance Act [12 USCS § 1813(c)(2)]) for which no conservator or receiver has been appointed, the appropriate Federal banking agency (as defined in section 3(q) of such Act [12 USCS § 1813(q)]);

(B) with respect to an insured credit union (including an insured credit union for which the National Credit Union Administration has been appointed conservator or liquidating agent), the National Credit Union Administration;

(C) with respect to any insured depository institution for which the Resolution Trust Corporation has been appointed conservator or receiver, the Resolution Trust Corporation; and

(D) with respect to any insured depository institution for which the Federal Deposit Insurance Corporation has been appointed conservator or receiver, the Federal Deposit Insurance Corporation.

(22) The term "financial institution" means--

(A) a Federal reserve bank, or an entity that is a commercial or savings bank, industrial savings bank, savings and loan association, trust company, federally-insured credit union, or receiver, liquidating agent, or conservator for such entity and, when any such Federal reserve bank, receiver, liquidating agent, conservator or entity is acting as agent or custodian for a customer (whether or not a "customer", as defined in section 741 [11 USCS § 741]) in connection with a securities contract (as defined in section 741 [11 USCS § 741]) such customer; or

(B) in connection with a securities contract (as defined in section 741 [11 USCS § 741]) an investment company registered under the Investment Company Act of 1940.

(22A) The term "financial participant" means--

(A) an entity that, at the time it enters into a securities contract, commodity contract, swap agreement, repurchase agreement, or forward contract, or at the time of the date of the filing of the petition, has one or more agreements or transactions described in paragraph (1), (2), (3), (4), (5), or (6) of section 561(a) [11 USCS § 561(a)] with the debtor or any other entity (other than an affiliate) of a total gross dollar value of not less than $ 1,000,000,000 in notional or actual principal amount outstanding (aggregated across counterparties) at such time or on any day during the 15-month period preceding the date of the filing of the petition, or has gross mark-to-market positions of not less than $ 100,000,000 (aggregated across counterparties) in one or more such agreements or transactions with the debtor or any other entity (other than an affiliate) at such time or on any day during the 15-month period preceding the date of the filing of the petition; or

(B) a clearing organization (as defined in section 402 of the Federal Deposit Insurance Corporation Improvement Act of 1991 [12 USCS § 4402]).

(23) The term "foreign proceeding" means a collective judicial or administrative proceeding in

a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

(24) The term "foreign representative" means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

(25) The term "forward contract" means--

(A) a contract (other than a commodity contract, as defined in section 761 [11 USCS § 761]) for the purchase, sale, or transfer of a commodity, as defined in section 761(8) of this title [11 USCS § 761(8)], or any similar good, article, service, right, or interest which is presently or in the future becomes the subject of dealing in the forward contract trade, or product or byproduct thereof, with a maturity date more than two days after the date the contract is entered into, including, but not limited to, a repurchase or reverse repurchase transaction (whether or not such repurchase or reverse repurchase transaction is a "repurchase agreement", as defined in this section)[,] consignment, lease, swap, hedge transaction, deposit, loan, option, allocated transaction, unallocated transaction, or any other similar agreement;

(B) any combination of agreements or transactions referred to in subparagraphs (A) and (C);

(C) any option to enter into an agreement or transaction referred to in subparagraph (A) or (B);

(D) a master agreement that provides for an agreement or transaction referred to in subparagraph (A), (B), or (C), together with all supplements to any such master agreement, without regard to whether such master agreement provides for an agreement or transaction that is not a forward contract under this paragraph, except that such master agreement shall be considered to be a forward contract under this paragraph only with respect to each agreement or transaction under such master agreement that is referred to in subparagraph (A), (B), or (C); or

(E) any security agreement or arrangement, or other credit enhancement related to any agreement or transaction referred to in subparagraph (A), (B), (C), or (D), including any guarantee or reimbursement obligation by or to a forward contract merchant or financial participant in connection with any agreement or transaction referred to in any such subparagraph, but not to exceed the damages in connection with any such agreement or transaction, measured in accordance with section 562 [11 USCS § 562].

(26) The term "forward contract merchant" means a Federal reserve bank, or an entity the business of which consists in whole or in part of entering into forward contracts as or with merchants in a commodity (as defined in section 761 [11 USCS § 761]) or any similar good, article, service, right, or interest which is presently or in the future becomes the subject of dealing in the forward contract trade.

(27) The term "governmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

(27A) The term "health care business"--

(A) means any public or private entity (without regard to whether that entity is organized for profit or not for profit) that is primarily engaged in offering to the general public facilities and

services for--
    (i) the diagnosis or treatment of injury, deformity, or disease; and
    (ii) surgical, drug treatment, psychiatric, or obstetric care; and
  (B) includes--
  (i) any--
    (I) general or specialized hospital;
    (II) ancillary ambulatory, emergency, or surgical treatment facility;
    (III) hospice;
    (IV) home health agency; and
    (V) other health care institution that is similar to an entity referred to in subclause (I), (II), (III), or (IV); and
    (ii) any long-term care facility, including any--
    (I) skilled nursing facility;
    (II) intermediate care facility;
    (III) assisted living facility;
    (IV) home for the aged;
    (V) domiciliary care facility; and
    (VI) health care institution that is related to a facility referred to in subclause (I), (II), (III), (IV), or (V), if that institution is primarily engaged in offering room, board, laundry, or personal assistance with activities of daily living and incidentals to activities of daily living.
  (27B) The term "incidental property" means, with respect to a debtor's principal residence--
   (A) property commonly conveyed with a principal residence in the area where the real property is located;
   (B) all easements, rights, appurtenances, fixtures, rents, royalties, mineral rights, oil or gas rights or profits, water rights, escrow funds, or insurance proceeds; and
   (C) all replacements or additions.
  (28) The term "indenture" means mortgage, deed of trust, or indenture, under which there is outstanding a security, other than a voting-trust certificate, constituting a claim against the debtor, a claim secured by a lien on any of the debtor's property, or an equity security of the debtor.
  (29) The term "indenture trustee" means trustee under an indenture.
  (30) The term "individual with regular income" means individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of this title [11 USCS §§ 1301 et seq.], other than a stockbroker or a commodity broker.
  (31) The term "insider" includes--
  (A) if the debtor is an individual--
    (i) relative of the debtor or of a general partner of the debtor;
    (ii) partnership in which the debtor is a general partner;
    (iii) general partner of the debtor; or
    (iv) corporation of which the debtor is a director, officer, or person in control;
  (B) if the debtor is a corporation--
    (i) director of the debtor;
    (ii) officer of the debtor;
    (iii) person in control of the debtor;
    (iv) partnership in which the debtor is a general partner;

    (v) general partner of the debtor; or

    (vi) relative of a general partner, director, officer, or person in control of the debtor;

  (C) if the debtor is a partnership--

    (i) general partner in the debtor;

    (ii) relative of a general partner in, general partner of, or person in control of the debtor;

    (iii) partnership in which the debtor is a general partner;

    (iv) general partner of the debtor; or

    (v) person in control of the debtor;

  (D) if the debtor is a municipality, elected official of the debtor or relative of an elected official of the debtor;

    (E) affiliate, or insider of an affiliate as if such affiliate were the debtor; and

    (F) managing agent of the debtor.

  (32) The term "insolvent" means--

    (A) with reference to an entity other than a partnership and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of--

     (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and

     (ii) property that may be exempted from property of the estate under section 522 of this title [11 USCS § 522];

    (B) with reference to a partnership, financial condition such that the sum of such partnership's debts is greater than the aggregate of, at a fair valuation--

     (i) all of such partnership's property, exclusive of property of the kind specified in subparagraph (A)(i) of this paragraph; and

     (ii) the sum of the excess of the value of each general partner's nonpartnership property, exclusive of property of the kind specified in subparagraph (A) of this paragraph, over such partner's nonpartnership debts; and

    (C) with reference to a municipality, financial condition such that the municipality is--

     (i) generally not paying its debts as they become due unless such debts are the subject of a bona fide dispute; or

     (ii) unable to pay its debts as they become due.

  (33) The term "institution-affiliated party"--

    (A) with respect to an insured depository institution (as defined in section 3(c)(2) of the Federal Deposit Insurance Act [12 USCS § 1813(c)(2)]), has the meaning given it in section 3(u) of the Federal Deposit Insurance Act [12 USCS § 1813(u)]; and

    (B) with respect to an insured credit union, has the meaning given it in section 206(r) of the Federal Credit Union Act [12 USCS § 1786(r)].

  (34) The term "insured credit union" has the meaning given it in section 101(7) of the Federal Credit Union Act [12 USCS § 1752(7)].

  (35) The term "insured depository institution"--

    (A) has the meaning given it in section 3(c)(2) of the Federal Deposit Insurance Act [12 USCS § 1813(c)(2)]; and

    (B) includes an insured credit union (except in the case of paragraphs (23) and (35) of this subsection).

  (35A) The term "intellectual property" means--

(A) trade secret;

(B) invention, process, design, or plant protected under title 35 [35 USCS §§ 1 et seq.];

(C) patent application;

(D) plant variety;

(E) work of authorship protected under title 17 [17 USCS §§ 101 et seq.]; or

(F) mask work protected under chapter 9 of title 17 [17 USCS §§ 901 et seq.];

to the extent protected by applicable nonbankruptcy law.

(36) The term "judicial lien" means lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding.

(37) The term "lien" means charge against or interest in property to secure payment of a debt or performance of an obligation.

(38) The term "margin payment" means, for purposes of the forward contract provisions of this title, payment or deposit of cash, a security or other property, that is commonly known in the forward contract trade as original margin, initial margin, maintenance margin, or variation margin, including mark-to-market payments, or variation payments.

(38A) "master netting agreement"--

(A) means an agreement providing for the exercise of rights, including rights of netting, setoff, liquidation, termination, acceleration, or close out, under or in connection with one or more contracts that are described in any one or more of paragraphs (1) through (5) of section 561(a) [11 USCS § 561(a)], or any security agreement or arrangement or other credit enhancement related to one or more of the foregoing, including any guarantee or reimbursement obligation related to 1 or more of the foregoing; and

(B) if the agreement contains provisions relating to agreements or transactions that are not contracts described in paragraphs (1) through (5) of section 561(a) [11 USCS § 561(a)], shall be deemed to be a master netting agreement only with respect to those agreements or transactions that are described in any one or more of paragraphs (1) through (5) of section 561(a) [11 USCS § 561(a)].

(38B) The term "master netting agreement participant" means an entity that, at any time before the date of the filing of the petition, is a party to an outstanding master netting agreement with the debtor.

(39) The term "mask work" has the meaning given it in section 901(a)(2) of title 17 [17 USCS § 901(a)(2)].

(39A) The term "median family income" means for any year--

(A) the median family income both calculated and reported by the Bureau of the Census in the then most recent year; and

(B) if not so calculated and reported in the then current year, adjusted annually after such most recent year until the next year in which median family income is both calculated and reported by the Bureau of the Census, to reflect the percentage change in the Consumer Price Index for All Urban Consumers during the period of years occurring after such most recent year and before such current year.

(40) The term "municipality" means political subdivision or public agency or instrumentality of a State.

(40A) The term "patient" means any individual who obtains or receives services from a health care business.

(40B) The term "patient records" means any written document relating to a patient or a record

recorded in a magnetic, optical, or other form of electronic medium.

(41) The term "person" includes individual, partnership, and corporation, but does not include governmental unit, except that a governmental unit that--

(A) acquires an asset from a person--

(i) as a result of the operation of a loan guarantee agreement; or

(ii) as receiver or liquidating agent of a person;

(B) is a guarantor of a pension benefit payable by or on behalf of the debtor or an affiliate of the debtor; or

(C) is the legal or beneficial owner of an asset of--

(i) an employee pension benefit plan that is a governmental plan, as defined in section 414(d) of the Internal Revenue Code of 1986 [26 USCS § 414(d)]; or

(ii) an eligible deferred compensation plan, as defined in section 457(b) of the Internal Revenue Code of 1986 [26 USCS § 457(b)];

shall be considered, for purposes of section 1102 of this title [11 USCS § 1102], to be a person with respect to such asset or such benefit.

(41A) The term "personally identifiable information" means--

(A) if provided by an individual to the debtor in connection with obtaining a product or a service from the debtor primarily for personal, family, or household purposes--

(i) the first name (or initial) and last name of such individual, whether given at birth or time of adoption, or resulting from a lawful change of name;

(ii) the geographical address of a physical place of residence of such individual;

(iii) an electronic address (including an e-mail address) of such individual;

(iv) a telephone number dedicated to contacting such individual at such physical place of residence;

(v) a social security account number issued to such individual; or

(vi) the account number of a credit card issued to such individual; or

(B) if identified in connection with 1 or more of the items of information specified in subparagraph (A)--

(i) a birth date, the number of a certificate of birth or adoption, or a place of birth; or

(ii) any other information concerning an identified individual that, if disclosed, will result in contacting or identifying such individual physically or electronically.

(42) The term "petition" means petition filed under section 301, 302, 303, or 304 of this title [11 USCS § 301, 302, 303], as the case may be, commencing a case under this title.

(42A) The term "production payment" means a term overriding royalty satisfiable in cash or in kind--

(A) contingent on the production of a liquid or gaseous hydrocarbon from particular real property; and

(B) from a specified volume, or a specified value, from the liquid or gaseous hydrocarbon produced from such property, and determined without regard to production costs.

(43) The term "purchaser" means transferee of a voluntary transfer, and includes immediate or immediate transferee of such a transferee.

(44) The term "railroad" means common carrier by railroad engaged in the transportation of individuals or property or owner of trackage facilities leased by such a common carrier.

(45) The term "relative" means individual related by affinity or consanguinity within the third degree as determined by the common law, or individual in a step or adoptive relationship within

such third degree.

(46) The term "repo participant" means an entity that, at any time before the filing of the petition, has an outstanding repurchase agreement with the debtor.

(47) The term "repurchase agreement" (which definition also applies to a reverse repurchase agreement)--

(A) means--

(i) an agreement, including related terms, which provides for the transfer of one or more certificates of deposit, mortgage related securities (as defined in section 3 of the Securities Exchange Act of 1934 [15 USCS § 78c]), mortgage loans, interests in mortgage related securities or mortgage loans, eligible bankers' acceptances, qualified foreign government securities (defined as a security that is a direct obligation of, or that is fully guaranteed by, the central government of a member of the Organization for Economic Cooperation and Development), or securities that are direct obligations of, or that are fully guaranteed by, the United States or any agency of the United States against the transfer of funds by the transferee of such certificates of deposit, eligible bankers' acceptances, securities, mortgage loans, or interests, with a simultaneous agreement by such transferee to transfer to the transferor thereof certificates of deposit, eligible bankers' acceptance, securities, mortgage loans, or interests of the kind described in this clause, at a date certain not later than 1 year after such transfer or on demand, against the transfer of funds;

(ii) any combination of agreements or transactions referred to in clauses (i) and (iii);

(iii) an option to enter into an agreement or transaction referred to in clause (i) or (ii);

(iv) a master agreement that provides for an agreement or transaction referred to in clause (i), (ii), or (iii), together with all supplements to any such master agreement, without regard to whether such master agreement provides for an agreement or transaction that is not a repurchase agreement under this paragraph, except that such master agreement shall be considered to be a repurchase agreement under this paragraph only with respect to each agreement or transaction under the master agreement that is referred to in clause (i), (ii), or (iii); or

(v) any security agreement or arrangement or other credit enhancement related to any agreement or transaction referred to in clause (i), (ii), (iii), or (iv), including any guarantee or reimbursement obligation by or to a repo participant or financial participant in connection with any agreement or transaction referred to in any such clause, but not to exceed the damages in connection with any such agreement or transaction, measured in accordance with section 562 of this title [11 USCS § 562]; and

(B) does not include a repurchase obligation under a participation in a commercial mortgage loan.

(48) The term "securities clearing agency" means person that is registered as a clearing agency under section 17A of the Securities Exchange Act of 1934 [15 USCS § 78q-1], or exempt from such registration under such section pursuant to an order of the Securities and Exchange Commission, or whose business is confined to the performance of functions of a clearing agency with respect to exempted securities, as defined in section 3(a)(12) of such Act [15 USCS § 78c(a)(12)] for the purposes of such section 17A [15 USCS § 78q-1].

(48A) The term "securities self regulatory organization" means either a securities association registered with the Securities and Exchange Commission under section 15A of the Securities Exchange Act of 1934 [15 USCS § 78o-3] or a national securities exchange registered with the Securities and Exchange Commission under section 6 of the Securities Exchange Act of 1934

[15 USCS § 78f].
  (49) The term "security"--
    (A) includes--
      (i) note;
      (ii) stock;
      (iii) treasury stock;
      (iv) bond;
      (v) debenture;
      (vi) collateral trust certificate;
      (vii) pre-organization certificate or subscription;
      (viii) transferable share;
      (ix) voting-trust certificate;
      (x) certificate of deposit;
      (xi) certificate of deposit for security;
      (xii) investment contract or certificate of interest or participation in a profit-sharing agreement or in an oil, gas, or mineral royalty or lease, if such contract or interest is required to be the subject of a registration statement filed with the Securities and Exchange Commission under the provisions of the Securities Act of 1933 [15 USCS §§ 77a et seq.], or is exempt under section 3(b) of such Act [15 USCS § 77c(b)] from the requirement to file such a statement;
      (xiii) interest of a limited partner in a limited partnership;
      (xiv) other claim or interest commonly known as "security"; and
      (xv) certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase or sell, a security; but
    (B) does not include--
      (i) currency, check, draft, bill of exchange, or bank letter of credit;
      (ii) leverage transaction, as defined in section 761 of this title [11 USCS § 761];
      (iii) commodity futures contract or forward contract;
      (iv) option, warrant, or right to subscribe to or purchase or sell a commodity futures contract;
      (v) option to purchase or sell a commodity;
      (vi) contract or certificate of a kind specified in subparagraph (A)(xii) of this paragraph that is not required to be the subject of a registration statement filed with the Securities and Exchange Commission and is not exempt under section 3(b) of the Securities Act of 1933 [15 USCS § 77c(b)] from the requirement to file such a statement; or
      (vii) debt or evidence of indebtedness for goods sold and delivered or services rendered.
  (50) The term "security agreement" means agreement that creates or provides for a security interest.
  (51) The term "security interest" means lien created by an agreement.
  (51A) The term "settlement payment" means, for purposes of the forward contract provisions of this title, a preliminary settlement payment, a partial settlement payment, an interim settlement payment, a settlement payment on account, a final settlement payment, a net settlement payment, or any other similar payment commonly used in the forward contract trade.
  (51B) The term "single asset real estate" means real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no

substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental.

(51C) The term "small business case" means a case filed under chapter 11 of this title in which the debtor is a small business debtor.

(51D) The term "small business debtor"--

(A) subject to subparagraph (B), means a person engaged in commercial or business activities (including any affiliate of such person that is also a debtor under this title and excluding a person whose primary activity is the business of owning or operating real property or activities incidental thereto) that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the petition or the date of the order for relief in an amount not more than $ 2,190,000 (excluding debts owed to 1 or more affiliates or insiders) for a case in which the United States trustee has not appointed under section 1102(a)(1) [11 USCS § 1102(a)(1)] a committee of unsecured creditors or where the court has determined that the committee of unsecured creditors is not sufficiently active and representative to provide effective oversight of the debtor; and

(B) does not include any member of a group of affiliated debtors that has aggregate noncontingent liquidated secured and unsecured debts in an amount greater than $ 2,190,000 (excluding debt owed to 1 or more affiliates or insiders).

(52) The term "State" includes the District of Columbia and Puerto Rico, except for the purpose of defining who may be a debtor under chapter 9 of this title [11 USCS §§ 901 et seq.].

(53) The term "statutory lien" means lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute.

(53A) The term "stockbroker" means person--

(A) with respect to which there is a customer, as defined in section 741 of this title [11 USCS § 741]; and

(B) that is engaged in the business of effecting transactions in securities--

(i) for the account of others; or

(ii) with members of the general public, from or for such person's own account.

(53B) The term "swap agreement"--

(A) means--

(i) any agreement, including the terms and conditions incorporated by reference in such agreement, which is--

(I) an interest rate swap, option, future, or forward agreement, including a rate floor, rate cap, rate collar, cross-currency rate swap, and basis swap;

(II) a spot, same day-tomorrow, tomorrow-next, forward, or other foreign exchange, precious metals, or other commodity agreement;

(III) a currency swap, option, future, or forward agreement;

(IV) an equity index or equity swap, option, future, or forward agreement;

(V) a debt index or debt swap, option, future, or forward agreement;

(VI) a total return, credit spread or credit swap, option, future, or forward agreement;

(VII) a commodity index or a commodity swap, option, future, or forward agreement;

(VIII) a weather swap, option, future, or forward agreement;

(IX) an emissions swap, option, future, or forward agreement; or

(X) an inflation swap, option, future, or forward agreement;

(ii) any agreement or transaction that is similar to any other agreement or transaction referred to in this paragraph and that--

(I) is of a type that has been, is presently, or in the future becomes, the subject of recurrent dealings in the swap or other derivatives markets (including terms and conditions incorporated by reference therein); and

(II) is a forward, swap, future, option, or spot transaction on one or more rates, currencies, commodities, equity securities, or other equity instruments, debt securities or other debt instruments, quantitative measures associated with an occurrence, extent of an occurrence, or contingency associated with a financial, commercial, or economic consequence, or economic or financial indices or measures of economic or financial risk or value;

(iii) any combination of agreements or transactions referred to in this subparagraph;

(iv) any option to enter into an agreement or transaction referred to in this subparagraph;

(v) a master agreement that provides for an agreement or transaction referred to in clause (i), (ii), (iii), or (iv), together with all supplements to any such master agreement, and without regard to whether the master agreement contains an agreement or transaction that is not a swap agreement under this paragraph, except that the master agreement shall be considered to be a swap agreement under this paragraph only with respect to each agreement or transaction under the master agreement that is referred to in clause (i), (ii), (iii), or (iv); or

(vi) any security agreement or arrangement or other credit enhancement related to any agreements or transactions referred to in clause (i) through (v), including any guarantee or reimbursement obligation by or to a swap participant or financial participant in connection with any agreement or transaction referred to in any such clause, but not to exceed the damages in connection with any such agreement or transaction, measured in accordance with section 562 [11 USCS § 562]; and

(B) is applicable for purposes of this title only, and shall not be construed or applied so as to challenge or affect the characterization, definition, or treatment of any swap agreement under any other statute, regulation, or rule, including the Gramm-Leach-Bliley Act, the Legal Certainty for Bank Products Act of 2000 [7 USCS §§ 27 et seq.], the securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934 [15 USCS § 78c(a)(47)]) and the Commodity Exchange Act [7 USCS §§ 1 et seq.].

(53C) The term "swap participant" means an entity that, at any time before the filing of the petition, has an outstanding swap agreement with the debtor.

[(53C.1)] (56A) The term "term overriding royalty" means an interest in liquid or gaseous hydrocarbons in place or to be produced from particular real property that entitles the owner thereof to a share of production, or the value thereof, for a term limited by time, quantity, or value realized.

(53D) The term "timeshare plan" means and shall include that interest purchased in any arrangement, plan, scheme, or similar device, but not including exchange programs, whether by membership, agreement, tenancy in common, sale, lease, deed, rental agreement, license, right to use agreement, or by any other means, whereby a purchaser, in exchange for consideration, receives a right to use accommodations, facilities, or recreational sites, whether improved or unimproved, for a specific period of time less than a full year during any given year, but not necessarily for consecutive years, and which extends for a period of more than three years. A "timeshare interest" is that interest purchased in a timeshare plan which grants the purchaser the right to use and occupy accommodations, facilities, or recreational sites, whether improved or

unimproved, pursuant to a timeshare plan.

(54) The term "transfer" means--

(A) the creation of a lien;

(B) the retention of title as a security interest;

(C) the foreclosure of a debtor's equity of redemption; or

(D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with--

(i) property; or

(ii) an interest in property.

(54A) The term "uninsured State member bank" means a State member bank (as defined in section 3 of the Federal Deposit Insurance Act [12 USCS § 1813]) the deposits of which are not insured by the Federal Deposit Insurance Corporation.

(55) "United States", when used in a geographical sense, includes all locations where the judicial jurisdiction of the United States extends, including territories and possessions of the United States.

each individual in excess of 4.

(7) (A) No judge, United States trustee (or bankruptcy administrator, if any), trustee, or other party in interest may file a motion under paragraph (2) if the current monthly income of the debtor, including a veteran (as that term is defined in section 101 of title 38 [38 USCS § 101]), and the debtor's spouse combined, as of the date of the order for relief when multiplied by 12, is equal to or less than--

(i) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

(ii) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or

(iii) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $ 575 per month for each individual in excess of 4.

(B) In a case that is not a joint case, current monthly income of the debtor's spouse shall not be considered for purposes of subparagraph (A) if--

(i) (I) the debtor and the debtor's spouse are separated under applicable nonbankruptcy law; or

(II) the debtor and the debtor's spouse are living separate and apart, other than for the purpose of evading subparagraph (A); and

(ii) the debtor files a statement under penalty of perjury--

(I) specifying that the debtor meets the requirement of subclause (I) or (II) of clause (i); and

(II) disclosing the aggregate, or best estimate of the aggregate, amount of any cash or money payments received from the debtor's spouse attributed to the debtor's current monthly income.

(c) (1) In this subsection--

(A) the term "crime of violence" has the meaning given such term in section 16 of title 18 [18 USCS § 16]; and

(B) the term "drug trafficking crime" has the meaning given such term in section 924(c)(2) of title 18 [18 USCS § 924(c)(2)].

(2) Except as provided in paragraph (3), after notice and a hearing, the court, on a motion by the victim of a crime of violence or a drug trafficking crime, may when it is in the best interest of the victim dismiss a voluntary case filed under this chapter [11 USCS §§ 701 et seq.] by a debtor who is an individual if such individual was convicted of such crime.

(3) The court may not dismiss a case under paragraph (2) if the debtor establishes by a preponderance of the evidence that the filing of a case under this chapter [11 USCS §§ 701 et seq.] is necessary to satisfy a claim for a domestic support obligation.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE THE MATTER OF:

Deloris V. Victoria                                   CASE NO. 06-31225-WRS

    Debtor,

_____

SUPPLEMENTAL RESPONSE TO MOTION TO DISMISS

Comes now the Debtor, by and through counsel, and for supplemental response to the motion

to dismiss would state as follows:

1. An issue was raised at the hearing of May 8th, 2007, as to the date of computation of

eligibility under various chapters of bankruptcy. Although it is only persuasive authority, the

Debtor would call the Courts attention to the case of In re Tucker, 345 B.R. 373,(Bankr. M.D.

Ala. 2006) in which Judge Williams addressed the eligibility of a client for the purposes of

calculating eligibility under Chapter 13 of the Bankruptcy Code and Section 109(e). In the case

cited, Judge Williams addressed as case where the debtor had claimed a rather large income tax

debt as unliquidated, in order to gain chapter 13 eligibility and the IRS later filed a liquidated

claim. In the Tucker decision, Judge Williams stated:

> If all events giving rise to the debtor's liability have occurred prior to the filing of
> the bankruptcy petition, a debt is noncontingent for purposes of § 109(e). In re
> Knight, 55 F.3d 231, 236 (7th Cir. 1995); In re Loya, 123 B.R. 338, 340 (B.A.P.
> 9th Cir. 1991). In the case at bar, the IRS's claim is for tax years 2000, 2001,
> 2002, and 2004. All events giving rise to the debtor's liability for those years must
> have occurred prior to his bankruptcy on October 16, 2005. Therefore, the debt to
> the IRS is noncontingent for purposes of § 109(e).
>
> The more difficult question is whether a debt which is disputed by the debtor is
> liquidated for purposes of § 109(e). In United States v. Verdunn, 89 F.3d 799
> (11th Cir. 1996) the Court of Appeals explained the term "liquidated debt" by
> stating:

[*376]  Black's Law Dictionary defines a liquidated debt as one where it is certain what is due and how much is due. Black's Law Dictionary 930 (6th ed. 1990). A liquidated debt is that which has been made certain as to amount due by agreement of the parties or by operation of law. Id. Therefore, the concept of a liquidated debt relates to the amount of liability, not the existence of liability. See In re McGovern, 122 B.R. 712, 715 (Bankr. N.D. Ind. 1989); see also C. McCormick, Handbook on the Law of Damages, § 54 at 213 (1935). If the amount of the debt is dependent, however, upon a future exercise of discretion, not restricted by specific criteria, the claim is unliquidated. See 1 T. Sedgwick, Measure of Damages, § 300 at 570 (9th ed. 1912).

Additionally

Nevertheless, the court cannot distinguish the case at bar from Verdunn. "The fact that Verdunn contests the Commissioner's claim does not remove it as a claim under section 109(e) or render it unliquidated." Verdunn, 89 F.3d at 802 n.9. (citing Knight, 55 F.3d at 235 (holding that a dispute debt is included in the § 109(e) calculus); In re Jordan, 166 B.R. 201, 202 (Bankr. D. Me. 1994) (holding that a dispute either of the underlying liability or the amount of a debt does not automatically render a debt contingent or unliquidated); and 1 William I. Norton, Jr., Bankruptcy Law & Practice § 18:12 (2d ed. 1994) (commenting that disputed debts are included in the calculation for eligibility purposes)

Judge Williams then dismissed the case for exceeding the Title 11 U.S.C. Section 109(e) limitations of liability.

The Creditor in this case, further ask this Court to rule against the Debtor under Title 11 U.S.C. Section 707(b).  This in effect ask this Court to find a way around United States v. Verdunn, 89 F.3d 799, 36 Collier Bankr. Cas. 2d (MB) 743, 96-2 U.S. Tax Cas. (CCH) P50455 (11th Cir. Fla. 1996), in which the Eleventh Circuit held that the tax liability of the Debtor was a noncontingent liquidated debt and made the Debtor ineligible for Chapter 13 relief.

Claim 2 (Exhibit 1) of the Internal Revenue Service, which was filed in this Court, May 9, 2007, by the Internal Revenue Service and not the Debtor, establishes an liquidated debt of at least $109,425.20 in favor of the Service.  Exhibit 3 submitted to the Court clearly shows how the Debtor figured the amount of the claim listed on Schedule F of the Bankruptcy Schedules

and why schedule F was not amended until May 8, 2007, as soon as the Debtor received a copy of the proof of claim. The Tax debt is clearly what the tax debt is and the tax debt is an unliquidated debt.

It is clear that the Debtor's debts are primarily nonconsumer in nature.

2. Although, I do not believe the comments of the Bankruptcy Administrator are relevant to the issue presented, a response to the allegations is appropriate. The Bankruptcy Administrator made some statements reflecting that the reason she had not filed a previous objection to the Debtor's standing was the Debtor's non compliance with request of production of Documents. A check of the Debtor's transmissions with the trustee reflects that all documents requested by the Bankruptcy Administrator were supplied to the Trustee and the Administrator by November 28, 2006. (Copy of Transmission attached) Further all documents, entered into evidence by the Creditor, were attached to the transmission of November 28th. The e-mailed volume submitted contained four lengthy volumes of information which the Debtor can make available for production to the Court. No follow-up documents were ever requested by the Bankruptcy Administrator. The documents introduced at the Court hearing of May 8th, 2007, were also provided to the Creditor for inspection on February 9, 2007, with the exception of the transcript of the deposition, one of Dr. Edgar Victoria's March Credit Card Statements, Dr. Edgar Victoria's property Insurance policies, Dr. Edgar Victoria's Brantley Bank Statements with a few checks, and a visa card statement of Dr. Edgar Victoria.

3. The testimony of the Chapter 7 Trustee in this action was to the effect that the Debtor has been forthcoming an cooperative with the Chapter 7 Trustee during the course of the proceeding.

Wherefore, the premises considered, the Debtor, by and through Counsel, respectfully request a discharge in this action and a denial of the motion to dismiss,

/s/  **Richard D. Shinbaum**
Richard Shinbaum, SHI007
Attorney for the Debtor

Of Counsel:
Shinbaum, Abell, McLeod and Campbell, P.C..
Post Office Box 201
Montgomery, Alabama 36101
(334) 269-4440
(334) 263-4096 Fax

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above styled motion was this day served upon the following, by placing the same in the United States Mail, properly addressed  and postage prepaid, and/or electronics transmission this the <u>9th day of May, 2007.</u>

Bradley Richard Hightower
Christian and Small
505 20th Street North Ste 1800
Birmingham. Al 35203-2696

Teresa Jacobs
Bankruptcy Administrator
One Church Street
Montgomery, AL 36104

Hon. Daniel Gary Hamm
560 South McDonough Street, Ste A
Montgomery, AL 36104

/s/ Richard D. Shinbaum
Richard D. Shinbaum
Attorney for the Debtor

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re:                              )
                                    )
Deloris V. Victoria,                )       Case No. 06-31225-WRS-7
                                    )
        Debtor.                     )

REPLY TO DEBTOR'S RESPONSE AND SUPPLEMENTAL RESPONSE

Greenville Hospital Corporation, d/b/a LV Stabler Memorial Hospital ("Greenville Hospital"), a creditor and party of interest in the chapter 7 bankruptcy case filed by Deloris V. Victoria (the "Debtor" or "Victoria"), replies to the Debtor's response and supplemental response to Greenville Hospital's Motion to Dismiss the Debtor's Case for Abuse (the "Motion to Dismiss") as follows:

1.      On May 8, 2007, the Court held a hearing on Greenville Hospital's Motion to Dismiss. Shortly before the time set for the hearing, the Debtor filed a response to the Motion to Dismiss, which was later supplemented by an additional filing on May 9, 2007 (collectively, the "Response").

2.      The Response centers around **(1)** the effect of a $109,425.20 proof of claim (the "IRS Claim") filed by the Internal Revenue Service (the "IRS") in the Debtor's case, a copy of which is attached as Exhibit "A," and **(2)** the Debtor's eligibility to be a chapter 13 debtor.  Greenville Hospital will address each issue separately below.

*The IRS Proof of Claim*

3.      Prior to the filing of the IRS Claim, the Debtor had primarily consumer debts as indicated on the chart in the Motion to Dismiss.  Therefore, the Debtor's case was subject to dismissal for abuse pursuant to Section 707(b) of the Bankruptcy Code.

4.      At first blush, the large IRS Claim appears to now tip the scales toward a finding that the Debtor's debts are primarily business debts rather than consumer debts.  However, a closer examination reveals that the IRS Claim is not an accurate representation of the Debtor's tax debts because many of the

debts that make up the IRS Claim are **(A)** debts owed by the Debtor's weight loss company, Bariatric

Medical & Physical Fitness Associates, Inc. ("Bariatric Associates") instead of the Debtor and **(B)** debts

for unassessed taxes due to the Debtor's failure to file tax returns.

5.      The Debtor's 2005 U.S. Individual Tax Return, a portion of which is attached as Exhibit

"B," states that the tax identification number for Bariatric Associates is 72-1357031 (see the circled entry

on the third page).

6.      The IRS Claim identifies 13 separate debts that are owed by Bariatric Associates

(taxpayer identification number 72-1357031) rather than by the Debtor.  These debts, which total

$38,967.36, should not be counted when determining whether the Debtor has primarily consumer debts

or business debts because they are owed by Bariatric Associates rather than the Debtor.

7.      In addition, a large portion of the debts on the IRS Claim are listed as "UNASSESSED -

NO RETURN;" therefore, the IRS Claim should not be considered an accurate representation of the

Debtor's tax liability.  Instead, as argued by Greenville Hospital at the May 8, 2007 hearing, the Debtor's

original schedules and her February 2007 amendments should be used to determine whether the Debtor

has primarily consumer debts or business debts.

8.      Moreover, even if the IRS Claim and the other amended debts listed in the Debtor's most

recent amended schedules that were filed on May 8, 2007 are considered, the Debtor's debts are still

primarily consumer debts.  This is indicated on the chart below, which is the same chart found in the

Motion to Dismiss, with the only change being revisions to show the amount of the IRS Claim (properly

excluding the $38,967.36 portion of the IRS Claim that is not owed by the Debtor) and the amended

debts listed in the Debtor's most recent amended schedules (properly excluding the $70,912.00 debt to

MBNA America listed in amended Schedule F that is not owed by the Debtor).

| Consumer Debts | Business Debts[2] |
|---|---|
| • $290,000.00 secured mortgage debt to Brantley Bank & Trust[1] | • $70,457.84 in tax debts ($109,425.20 minus $38,967.36)<br>• $2,545.00 unsecured debt for line of credit to Camden National<br>• $1.00 unsecured disputed debt to Camden National<br>• $680.00 unsecured loan debt to Camden National<br>• $558.00 unsecured collection account debt with CenturyTel<br>• $17,282.19 unsecured debt in a pending suit by Genezen Healthcare<br>• $165,140.00 judgment to Greenville Hospital<br>• $5,483.00 unsecured line to credit debt to Whitney Bank |
| Total: $290,000.00 | Total: $262,147.03 |

9.      As the chart indicates, the addition of the IRS Claim and the Debtor's other amended debts does not change the categorization of the Debtor's debts. The Debtor's debts are still primarily consumer debts; therefore, the Debtor is subject to the Means Test and her chapter 7 case should be dismissed for abuse pursuant to Section 707(b).

### *Chapter 13 Eligibility*

10.      In addition to the IRS Claim, the Debtor's Response also alleges that if the Debtor is subject to the Means Test in Section 707(b), the Debtor's chapter 7 case may not be converted to a

---

[1] A mortgage on a debtor's home is a consumer debt as that term is defined in Section 101(8) of the Bankruptcy Code. *See In re Price*, 353 F.3d 1135 (9th Cir. 2004). This debt has not been revised downward to the $285,170.31 amount listed in the Debtor's amended schedules because it appears that the lower amount is the result of a postpetition mortgage payment made on the mortgage prior to the execution of a reaffirmation agreement approximately 1 month after the petition date.

[2] The Debtor testified that she was not obligated for a $9,663.00 credit card debt to MBNA America and a $3,378.00 credit card debt to MBNA America listed in Schedule F. *See Deposition Transcript* at p. 51. She also testified that a $19,029.83 secured debt to Camden National was owed by her weight loss business (a corporation) rather than herself. *See Deposition Transcript* at p. 39.

chapter 13 case because the Debtor is not eligible to be a debtor under that chapter on the basis that she

exceeds the debt limits in Section 109(e).

11.     The Debtor misses the mark on this issue though.  Whether or not the Debtor is eligible

for chapter 13 has no bearing on the Section 707(b) determination because the statute plainly provides

the Court with other options if conversion to chapter 13 is not available.  Specifically, the Court may

simply dismiss the Debtor's case outright or, with the Debtor's consent, convert her chapter 7 case to a

chapter 11 case.

12.     Accordingly, the Court should not consider the Debtor's eligibility to be a chapter 13

debtor when deciding whether to grant to deny the Motion to Dismiss.

WHEREFORE, Greenville Hospital, d/b/a LV Stabler Memorial Hospital, again requests that the

Court dismiss the Debtor's case for abuse pursuant to Sections 707(a) and 707(b) of the Bankruptcy

Code with a 180 day bar on refiling under any chapter of the Bankruptcy Code.

Respectfully submitted,


/s/ Bradley R. Hightower
Bradley R. Hightower
Attorney for Greenville Memorial Hospital

**OF COUNSEL:**
CHRISTIAN & SMALL LLP
505 North 20th Street, Suite 1800
Birmingham, Alabama 35203
Phone: (205) 795-6588
Fax: (205) 328-7234

### CERTIFICATE OF SERVICE

Unless otherwise served by the ECF system, I certify that I have served a copy of the above and foregoing Motion on the following by placing a copy in the United States Mail, properly addressed, first-class postage pre-paid on this the 9th day of May, 2007:

Deloris V. Victoria
225 Woodland Heights Dr.
Greenville, Alabama 36037

C. Brandon Sellers, III
Shinbaum, Abell, McLeod & Vann
P.O. Box 201
Montgomery, Alabama 36101

U.S. Bankruptcy Adminstrator
Attn: Tina Hayes
One Church Street
Montgomery, Alabama 36104

Chapter 7 Trustee, Daniel G. Hamm
560 South McDonough Street, STE A
Montgomery, Alabama 36104

/s/ Bradley R. Hightower_____
OF COUNSEL

FORM B10 (Official Form 10)(04/07)

| UNITED STATES BANKRUPTCY COURT____MIDDLE____ DISTRICT OF ____ALABAMA____ | **PROOF OF CLAIM** |
|---|---|

| Name of Debtor<br>DELORIS V. VICTORIA | Case Number<br>06-31225 |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):

Department of the Treasury - Internal Revenue Service

Name and address where notices should be sent:

Internal Revenue Service
INTERNAL REVENUE SERVICE
801 TOM MARTIN DRIVE
Stop 126
BIRMINGHAM, AL 35211
Telephone number: (205) 912-5294    Creditor #:1363923

Last four digits of account or other number by which creditor identifies debtor:    **see attachment**

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

EXHIBIT
A

THIS SPACE IS FOR COURT USE ONLY

Check here ☐ replaces ☐ amends    a previously filed claim, dated: _____
if this claim

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☒ Taxes
- ☐ Other_____

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☒ Wages, salaries, and compensation (fill out below)
  Last four digits of your SS #: _____
  Unpaid compensation for services performed
  from _____ to _____
       (date)           (date)

**2. Date debt was incurred:**    see attachment

**3. If court judgment, date obtained:**

**4. Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed.
See reverse side for important explanations.

**Unsecured Nonpriority Claim** $_____25,448.44

☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**Unsecured Priority Claim.**
☒ Check this box if you have an unsecured claim, all or part of which is entitled to priority.

Amount entitled to priority $__28,440.66

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

**Secured Claim.**
☒ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☒ Real Estate  ☒ Motor Vehicle  ☒ Other__see below*

Value of Collateral: $___see below*
*All of debtor's right, title and interest to property - 26 U.S.C. § 6321.
Amount of arrearage and other charges at time case filed included in secured claim, if any: $____55,536.10

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☒ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**5. Total Amount of Claim at Time Case Filed:** $    25,448.44        55,536.10        28,440.66        109,425.20
                                                        (unsecured)      (secured)        (priority)        (Total)

☒☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**6. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

**7. Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. Date-Stamped Copy:** To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

| Date<br>05/08/2007 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>/s/ KENYA L. BUFFORD, INSOLVENCY SPECIALIST |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# Proof of Claim for Internal Revenue Taxes

Department of the Treasury/Internal Revenue Service



**Form 10**
Attachment

| Docket Number |
|---|
| 06-31225 |
| Type of Bankruptcy Case |
| Chapter 7A |
| Date of Petition |
| 09/25/2006 |

**In the Matter of:** DELORIS V. VICTORIA
225 WOODLAND HEIGHTS DR
GREENVILLE, AL  36037

The United States has not identified a right of setoff or counterclaim. However, this determination is based on available data and is not intended to waive any right to setoff against this claim debts owed to this debtor by this or any other federal agency. All rights of setoff are preserved and will be asserted to the extent lawful.

### Secured Claims (Notices of Federal tax lien filed under internal revenue laws before petition date)

| Taxpayer ID Number | Kind of Tax | Tax Period | Date Tax Assessed | Tax Due | Penalty to Petition Date | Interest to Petition Date | Notice of Date | Tax Lien Filed: Office Location |
|---|---|---|---|---|---|---|---|---|
| 72-1357031 | WT-FICA | 12/31/2000 | 12/08/2003 | $9,879.22 | $3,674.49 | $4,287.41 | | |
| 63-1103639 | FUTA | 12/31/2003 | 12/05/2005 | $3,209.29 | $1,908.26 | $539.68 | 04/27/2006 | Butler County |
| 63-1103639 | WT-FICA | 06/30/2004 | 08/22/2005 | $4,500.61 | $3,648.29 | $850.70 | Right | to setoff |
| 63-1103639 | WT-FICA | 09/30/2004 | 08/22/2005 | $4,227.70 | $2,494.78 | $549.33 | 10/28/2005 | Butler County |
| 63-1103639 | WT-FICA | 12/31/2004 | 08/22/2005 | $2,185.67 | $893.70 | $253.12 | 10/28/2005 | Butler County |
| 63-1103639 | FUTA | 12/31/2004 | 12/05/2005 | $2,170.00 | $769.02 | $251.31 | 04/27/2006 | Butler County |
| 63-1103639 | WT-FICA | 03/30/2005 | 12/05/2005 | $4,047.01 | $1,999.04 | $410.30 | Right | to setoff |
| 63-1103639 | WT-FICA | 06/30/2005 | 12/12/2005 | $1,732.41 | $907.33 | $147.43 | 04/27/2006 | Butler County |
| | | | | $31,951.91 | $16,294.91 | $7,289.28 | | |

**Total Amount of Secured Claims:**  $55,536.10

### Unsecured Priority Claims under section 507(a)(8) of the Bankruptcy Code

| Taxpayer ID Number | Kind of Tax | Tax Period | Date Tax Assessed | Tax Due | Interest to Petition Date |
|---|---|---|---|---|---|
| 72-1357031 | WT-FICA | 09/30/1997 | ESTIMATED LIABILITY * | $250.00 | $0.00 |
| 63-1103639 | WT-FICA | 06/30/1999 | ‡ UNASSESSED-NO RETURN | $1,454.14 | $860.28 |
| 72-1357031 | MISC. PEN. | 12/31/1999 | 10/28/2002 | $0.00 | $186.24 |
| 72-1357031 | WT-FICA | 06/30/2001 | ‡ UNASSESSED-NO RETURN | $1,463.00 | $0.00 |
| 72-1357031 | WT-FICA | 09/30/2001 | ‡ UNASSESSED-NO RETURN | $1,463.00 | $0.00 |
| 72-1357031 | WT-FICA | 12/31/2001 | ‡ UNASSESSED-NO RETURN | $1,463.00 | $0.00 |
| 72-1357031 | FUTA | 12/31/2001 | ‡ UNASSESSED-NO RETURN | $2,500.00 | $0.00 |
| 72-1357031 | FUTA | 12/31/2002 | ‡ UNASSESSED-NO RETURN | $2,500.00 | $0.00 |
| 72-1357031 | WT-FICA | 06/30/2003 | ‡ UNASSESSED-NO RETURN | $1,463.00 | $0.00 |
| 72-1357031 | FUTA | 12/31/2003 | ‡ UNASSESSED-NO RETURN | $2,500.00 | $0.00 |
| 63-1103639 | MISC. PEN. | 12/31/2003 | 10/09/2006 | $0.00 | $0.00 |
| 72-1357031 | FUTA | 12/31/2004 | ‡ UNASSESSED-NO RETURN | $2,500.00 | $0.00 |
| XXX-XX-7367 | INCOME | 12/31/2005 | ‡ UNASSESSED-NO RETURN | $5,000.00 | $0.00 |

(Continued on Page 2)

‡ UNASSESSED TAX LIABILITIES(S) HAVE BEEN LISTED ON THIS CLAIM BECAUSE OUR RECORDS SHOW NO RETURN(S) FILED. WHEN THE DEBTOR(S) FILES THE RETURN OR PROVIDES OTHER INFORMATION AS REQUIRED BY LAW THE CLAIM WILL BE AMENDED.

# Proof of Claim for Internal Revenue Taxes

Department of the Treasury/Internal Revenue Service



**Form 10**
Attachment

| Docket Number |
| 06-31225 |
| Type of Bankruptcy Case |
| Chapter 7A |
| Date of Petition |
| 09/25/2006 |

In the Matter of:  DELORIS V. VICTORIA
225 WOODLAND HEIGHTS DR
GREENVILLE, AL  36037

---

### Unsecured Priority Claims (Continued from Page 1)

| Taxpayer ID Number | Kind of Tax | Tax Period | Date Tax Assessed | Tax Due | Interest to Petition Date |
|---|---|---|---|---|---|
| 72-1357031 | WT-FICA | 06/30/2006 | # UNASSESSED-NO RETURN | $2,419.00 | $0.00 |
| 72-1357031 | WT-FICA | 09/30/2006 | # UNASSESSED-NO RETURN | $2,419.00 | $0.00 |
| | | | | $27,394.14 | $1,046.52 |

Total Amount of Unsecured Priority Claims: **$28,440.66**

---

### Unsecured General Claims

Penalty to date of petition on unsecured priority claims (including interest thereon) . . . . . . . . . $25,448.44

Total Amount of Unsecured General Claims: **$25,448.44**

---

# UNASSESSED TAX LIABILITIES(S) HAVE BEEN LISTED ON THIS CLAIM BECAUSE OUR RECORDS SHOW NO RETURN(S) FILED. WHEN THE DEBTOR(S) FILES THE RETURN OR PROVIDES OTHER INFORMATION AS REQUIRED BY LAW THE CLAIM WILL BE AMENDED.

```
1872                                                     COURT RECORDING DATA
---------------------------------------------+-----------------------------------------
    INTERNAL REVENUE SERVICE                 | Lien Recorded    : 10/28/2005 - 11:01AM
FACSIMILE FEDERAL TAX LIEN DOCUMENT          | Recording Number: 49169
                                             | UCC Number       :
                                             | Liber            : 0029
BANKRUPTCY DOCKET: 06-31225@ALM              | Page             : 190
---------------------------------------------+-----------------------------------------
Area: SMALL BUSINESS/SELF EMPLOYED #5        | IRS Serial Number: 254682005
Lien Unit Phone: (800) 913-6050              |
------------------------------------------------------------------------------------
             This Lien Has Been Filed in Accordance with
             Internal Revenue Regulation 301.6323(f)-1.
```

```
------------------------------------------------------------------------------------
Name of Taxpayer :
   DOLORES V VICTORIA
```

```
------------------------------------------------------------------------------------
Residence :
   PO BOX 810
   GREENVILLE, AL 36037-0810
------------------------------------------------------------------------------------
   With respect to each assessment below, unless notice of lien
   is refiled by the date in column(e), this notice shall constitute
   the certificate of release of lien as defined in IRC 6325(a).
```

| Form (a) | Period (b) | ID Number (c) | Assessed (d) | Refile Deadline (e) | Unpaid Balance (f) |
|---|---|---|---|---|---|
| 941 | 03/31/2004 | 63-1103639 | 08/22/2005 | 09/21/2015 | $5,764.82 |
| 941 | 06/30/2004 | 63-1103639 | 08/22/2005 | 09/21/2015 | $9,048.97 |
| 941 | 09/30/2004 | 63-1103639 | 08/22/2005 | 09/21/2015 | $6,259.20 |
| 941 | 12/31/2004 | 63-1103639 | 08/22/2005 | 09/21/2015 | $2,840.33 |

```
------------------------------------------------------------------------------------
Filed at:   Judge of Probate
            Butler County                              Total  |   $23,913.32
            Greenville, AL 36037
------------------------------------------------------------------------------------
This notice was prepared and executed at DALLAS, TX
on this, the 19th day of October, 2005.
------------------------------------------------------------------------------------
Authorizing Official:                   | Title:
     L. F. SANKEY                       | REVENUE OFFICER        28-02-2738
------------------------------------------------------------------------------------
```

```
                                                         COURT RECORDING DATA
------------------------------------------------+-----------------------------------------
        INTERNAL REVENUE  SERVICE               | Lien Recorded    : 04/27/2006 - 12:22PM
 FACSIMILE FEDERAL TAX LIEN DOCUMENT            | Recording Number:
                                                | UCC Number      :
                                                | Liber           : 29
 BANKRUPTCY DOCKET: 06-31225@ALM                | Page            : 511
------------------------------------------------+-----------------------------------------
 Area: SMALL BUSINESS/SELF EMPLOYED #5          | IRS Serial Number: 285508506
 Lien Unit Phone: (800) 913-6050                |
-----------------------------------------------------------------------------------------
                 This Lien Has Been Filed in Accordance with
                 Internal Revenue Regulation 301.6323(f)-1.

-----------------------------------------------------------------------------------------
 Name of Taxpayer :
   DOLORES V VICTORIA


-----------------------------------------------------------------------------------------
 Residence :
   PO BOX 810
   GREENVILLE, AL 36037-0810
-----------------------------------------------------------------------------------------
 With respect to each assessment below, unless notice of lien
 is refiled by the date in column(e), this notice shall constitute
 the certificate of release of lien as defined in IRC 6325(a).
```

| Form (a) | Period (b) | ID Number (c) | Assessed (d) | Refile Deadline (e) | Unpaid Balance (f) |
|----------|------------|---------------|--------------|---------------------|--------------------|
| 940 | 12/31/2003 | 63-1103639 | 12/05/2005 | 01/04/2016 | $5,180.87 |
| 940 | 12/31/2004 | 63-1103639 | 12/05/2005 | 01/04/2016 | $2,916.17 |
| 941 | 03/31/2005 | 63-1103639 | 12/05/2005 | 01/04/2016 | $5,917.53 |
| 941 | 06/30/2005 | 63-1103639 | 12/12/2005 | 01/11/2016 | $2,558.85 |

```
-----------------------------------------------------------------------------------------
 Filed at:    Judge of Probate
              Butler County                                Total  |   $16,573.42
              Greenville, AL 36037
-----------------------------------------------------------------------------------------
 This notice was prepared and executed at DALLAS, TX
 on this, the 19th day of April, 2006.
-----------------------------------------------------------------------------------------
 Authorizing Official:                      | Title:
   L. F. SANKEY                             | REVENUE OFFICER          25-02-2738
-----------------------------------------------------------------------------------------
```

6110 01/25/2007 9:35 AM

| SCHEDULE C<br>(Form 1040) | **Profit or Loss From Business**<br>(Sole Proprietorship) | OMB No. 1545-0074 |
|---|---|---|
| Department of the Treasury<br>Internal Revenue Service    (99) | ▶ Partnerships, joint ventures, etc., must file Form 1065 or Form 1065-B.<br>▶ Attach to Form 1040 or 1041.    ▶ See Instructions for Schedule C (Form 1040). | **2005**<br>Attachment<br>Sequence No.    **09** |

Name of proprietor **DOLORES V VICTORIA**                                                                                                                            Social security number (SSN)

EXHIBIT

B

**A** Principal business or profession, including product or service (see page C-2    **PHYSICIAN**

**B** Enter code from pages C-8, 9, & 10 ▶ **621111**

**C** Business name. If no separate business name, leave blank.

**D** Employer ID number (EIN), if any

**E** Business address (including suite or room no.) ▶
City, town or post office, state, and ZIP code    **GREENVILLE          AL 36082**

**F** Accounting method:    (1) ☒ Cash    (2) ☐ Accrual    (3) ☐ Other (specify) ▶

**G** Did you "materially participate" in the operation of this business during 2005? If "No," see page C-3 for limit on losses    ☒ Yes    ☐ No

**H** If you started or acquired this business during 2005, check here    ▶ ☐

## Part I    Income

| | | | |
|---|---|---|---|
| 1 | Gross receipts or sales. **Caution.** If this income was reported to you on Form W-2 and the "Statutory employee" box on that form was checked, see page C-3 and check here    ▶ ☐ | **1** | 95,405 |
| 2 | Returns and allowances | **2** | 2,075 |
| 3 | Subtract line 2 from line 1 | **3** | 93,330 |
| 4 | Cost of goods sold (from line 42 on page 2) | **4** | |
| 5 | **Gross profit.** Subtract line 4 from line 3 | **5** | 93,330 |
| 6 | Other income, including Federal and state gasoline or fuel tax credit or refund (see page C-3) | **6** | |
| 7 | **Gross income.** Add lines 5 and 6    ▶ | **7** | 93,330 |

## Part II    Expenses. Enter expenses for business use of your home **only** on line 30.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 8 | Advertising | **8** | 1,600 | 18 | Office expense | **18** | 11,811 |
| 9 | Car and truck expenses (see page C-3) | **9** | 3,645 | 19 | Pension and profit-sharing plans | **19** | |
| 10 | Commissions and fees | **10** | | 20 | Rent or lease (see page C-5): | | |
| 11 | Contract labor (see page C-4) | **11** | | a | Vehicles, machinery, and equipment | **20a** | |
| 12 | Depletion | **12** | | b | Other business property | **20b** | 4,998 |
| 13 | Depreciation and section 179 expense deduction (not included in Part III) (see page C-4) | **13** | | 21 | Repairs and maintenance | **21** | |
| | | | | 22 | Supplies (not included in Part III) | **22** | 586 |
| | | | | 23 | Taxes and licenses | **23** | 3,013 |
| 14 | Employee benefit programs (other than on line 19) | **14** | | 24 | Travel, meals, and entertainment: | | |
| | | | | a | Travel | **24a** | 3,900 |
| 15 | Insurance (other than health) | **15** | 6,607 | b | Deductible meals and entertainment (see page C-5) | **24b** | 725 |
| 16 | Interest: | | | 25 | Utilities | **25** | 5,885 |
| a | Mortgage (paid to banks, etc.) | **16a** | 1,381 | 26 | Wages (less employment credits) | **26** | 20,237 |
| b | Other | **16b** | 6,050 | 27 | Other expenses (from line 48 on page 2) | **27** | 17,190 |
| 17 | Legal and professional services | **17** | | | | | |

| | | | |
|---|---|---|---|
| 28 | **Total expenses** before expenses for business use of home. Add lines 8 through 27 in columns    ▶ | **28** | 87,628 |
| 29 | Tentative profit (loss). Subtract line 28 from line 7 | **29** | 5,702 |
| 30 | Expenses for business use of your home. Attach Form 8829 | **30** | |
| 31 | **Net profit or (loss).** Subtract line 30 from line 29.<br>● If a profit, enter on Form 1040, line 12, and also on **Schedule SE, line 2** (statutory employees, see page C-6). Estates and trusts, enter on Form 1041, line 3.<br>● If a loss, you **must** go to line 32. | **31** | 5,702 |
| 32 | If you have a loss, check the box that describes your investment in this activity (see page C-6).<br>● If you checked 32a, enter the loss on Form 1040, line 12, and also on **Schedule SE, line 2** (statutory employees, see page C-6). Estates and trusts, enter on Form 1041, line 3.<br>● If you checked 32b, you **must** attach Form 6198. Your loss may be limited. | **32a** ☐ All investment is at risk.<br>**32b** ☐ Some investment is not at risk. | |

For Paperwork Reduction Act Notice, see page C-7 of the instructions.                                                                    Schedule C (Form 1040) 2005

DAA

645466110 01/25/2007 9:35 AM

**DOLORES V VICTORIA**
Schedule C (Form 1040) 2005    **PHYSICIAN**                                                    Page 2

| Part III | Cost of Goods Sold (see page C-6) | | |
|---|---|---|---|

**33** Method(s) used to value closing inventory:  a [X] Cost  b [ ] Lower of cost or market  c [ ] Other (attach explanation)

**34** Was there any change in determining quantities, costs, or valuations between opening and closing inventory? If "Yes," attach explanation ............................................................................ [ ] Yes  [X] No

| | | | |
|---|---|---|---|
| **35** | Inventory at beginning of year. If different from last year's closing inventory, attach explanation | **35** | |
| **36** | Purchases less cost of items withdrawn for personal use | **36** | |
| **37** | Cost of labor. Do not include any amounts paid to yourself | **37** | |
| **38** | Materials and supplies | **38** | |
| **39** | Other costs | **39** | |
| **40** | Add lines 35 through 39 | **40** | |
| **41** | Inventory at end of year | **41** | |
| **42** | Cost of goods sold. Subtract line 41 from line 40. Enter the result here and on page 1, line 4 | **42** | |

| Part IV | Information on Your Vehicle. Complete this part **only** if you are claiming car or truck expenses on line 9 and are not required to file Form 4562 for this business. See the instructions for line 13 on page C-4 to find out if you must file Form 4562. |
|---|---|

**43** When did you place your vehicle in service for business purposes? (month, day, year) ▶ .....................................

**44** Of the total number of miles you drove your vehicle during 2005, enter the number of miles you used your vehicle for:

a  Business ...................................  b  Commuting (see instructions) ...................  c  Other ...................................

**45** Do you (or your spouse) have another vehicle available for personal use? ............................................ [ ] Yes  [ ] No
**46** Was your vehicle available for personal use during off-duty hours? ................................................. [ ] Yes  [ ] No
**47a** Do you have evidence to support your deduction? .................................................................. [ ] Yes  [ ] No
  **b** If "Yes," is the evidence written? ................................................................................. [ ] Yes  [ ] No

| Part V | Other Expenses. List below business expenses not included on lines 8-26 or line 30. | |
|---|---|---|
| OFFICE MEETINGS | | 465 |
| BANK CHARGES | | 535 |
| DUES & SUBSCRIPTIONS | | 685 |
| BOOKS | | 850 |
| MED ASSOC DUES | | 895 |
| LAB EXPENSE | | 1,250 |
| LAUNDRY | | 800 |
| BILLING EXPENSE | | 5,580 |
| MEDICAL SUPPLIES | | 3,500 |
| BANK CHARGES | | 705 |
| TRANSCRIPTION | | 850 |
| OTHER LABOR | | 1,075 |
| | | |

| **48** | Total other expenses. Enter here and on page 1, line 27 | **48** | 17,190 |
|---|---|---|---|

DAA                                                              Schedule C (Form 1040) 2005

345466110 01/25/2007 9:35 AM

| Schedule E (Form 1040) 2005 | Attachment Sequence No. **13** | Page **2** |
|---|---|---|

| Name(s) shown on return. Do not enter name and social security number if shown on other side. | Your social security number |
|---|---|
| EDGAR T & DOLORES V VICTORIA | |

Caution. The IRS compares amounts reported on your tax return with amounts shown on Schedule(s) K-1.

## Part II   Income or Loss From Partnerships and S Corporations   Note. If you report a loss from an at-risk activity for which **any** amount is **not** at risk, you **must** check the box in column (e) on line 28 and attach Form 6198. See page E-1.

27   Are you reporting any loss not allowed in a prior year due to the at-risk or basis limitations, a prior year unallowed
loss from a passive activity (if that loss was not reported on Form 8582), or unreimbursed partnership expenses?     ☐ Yes  ☒ No
If you answered "Yes," see page E-6 before completing this section.

| 28 | (a) Name | (b) Enter P for partnership; S for S corp | (c) Check if foreign partnership | (d) Employer identification number | (e) Check if any amount is not at risk |
|---|---|---|---|---|---|
| A | BARIATRIC MEDICAL AND PHYSICAL FITN | S | | 72-1357031 | |
| B | MONTGOMERY NORTH LTD | P | | 58-1488331 | |
| C | | | | | |
| D | | | | | |

| | Passive Income and Loss | | Nonpassive Income and Loss | | |
|---|---|---|---|---|---|
| | (f) Passive loss allowed (attach Form 8582 if required) | (g) Passive income from Schedule K-1 | (h) Nonpassive loss from Schedule K-1 | (i) Section 179 expense deduction from Form 4562 | (j) Nonpassive income from Schedule K-1 |
| A | 0 | | | | 16,866 |
| B | 0 | 1,813 | | | |
| C | | | | | |
| D | | | | | |
| 29a Totals | | 1,813 | | | 16,866 |
| b Totals | | | | | |

| 30 | Add columns (g) and (j) of line 29a | 30 | 18,679 |
|---|---|---|---|
| 31 | Add columns (f), (h), and (i) of line 29b | 31 ( | 0) |
| 32 | Total partnership and S corporation income or (loss). Combine lines 30 and 31. Enter the result here and include in the total on line 41 below | 32 | 18,679 |

## Part III   Income or Loss From Estates and Trusts

| 33 | (a) Name | (b) Employer identification number |
|---|---|---|
| A | | |
| B | | |

| | Passive Income and Loss | | Nonpassive Income and Loss | |
|---|---|---|---|---|
| | (c) Passive deduction or loss allowed (attach Form 8582 if required) | (d) Passive income from Schedule K-1 | (e) Deduction or loss from Schedule K-1 | (f) Other income from Schedule K-1 |
| A | | | | |
| B | | | | |
| 34a Totals | | | | |
| b Totals | | | | |

| 35 | Add columns (d) and (f) of line 34a | 35 | |
|---|---|---|---|
| 36 | Add columns (c) and (e) of line 34b | 36 ( | ) |
| 37 | Total estate and trust income or (loss). Combine lines 35 and 36. Enter the result here and include in the total on line 41 below | 37 | |

## Part IV   Income or Loss From Real Estate Mortgage Investment Conduits (REMICs)-Residual Holder

| 38 | (a) Name | (b) Employer identification number | (c) Excess inclusion from Schedules Q, line 2c (see page E-6) | (d) Taxable income (net loss) from Schedules Q, line 1b | (e) Income from Schedules Q, line 3b |
|---|---|---|---|---|---|

| 39 | Combine columns (d) and (e) only. Enter the result here and include in the total on line 41 below | 39 | |
|---|---|---|---|

## Part V   Summary

| 40 | Net farm rental income or (loss) from Form 4835. Also, complete line 42 below | 40 | |
|---|---|---|---|
| 41 | Total income or (loss). Combine lines 26, 32, 39, and 40. Enter the result here and on Form 1040, line 17  ▶ | 41 | 18,679 |
| 42 | Reconciliation of farming and fishing income. Enter your **gross** farming and fishing income reported on Form 4835, line 7; Schedule K-1 (Form 1065), box 14, code B; Schedule K-1 (Form 1120S), box 17, code N; and Schedule K-1 (Form 1041), line 14, code F (see page E-7) | 42 | |
| 43 | Reconciliation for real estate professionals. If you were a real estate professional (see page E-1), enter the net income or (loss) you reported anywhere on Form 1040 from all rental real estate activities in which you materially participated under the passive activity loss rules | 43 | |

DAA

Schedule E (Form 1040) 2005

6110 01/25/2007 9:35 AM

SCHEDULE C
(Form 1040)

Department of the Treasury
Internal Revenue Service    (99)

# Profit or Loss From Business
## (Sole Proprietorship)

▶ **Partnerships, joint ventures, etc., must file Form 1065 or Form 1065-B.**

▶ **Attach to Form 1040 or 1041.**    ▶ **See Instructions for Schedule C (Form 1040).**

OMB No. 1545-0074

## 2005

Attachment
Sequence No.    **09**

| | | |
|---|---|---|
| Name of proprietor | | Social security number (SSN) |
| DOLORES V VICTORIA | | |

EXHIBIT
B

**A**  Principal business or profession, including product or service (see page C-2
PHYSICIAN

**B** Enter code from pages C-8, 9, & 10
▶ **621111**

**C**  Business name. If no separate business name, leave blank.

**D** Employer ID number (EIN), if any

**E**  Business address (including suite or room no.)▶

City, town or post office, state, and ZIP code    GREENVILLE        AL 36082

**F**  Accounting method:    (1) [X] Cash    (2) ☐ Accrual    (3) ☐ Other (specify) ▶

**G**  Did you "materially participate" in the operation of this business during 2005? If "No," see page C-3 for limit on losses    [X] Yes    ☐ No

**H**  If you started or acquired this business during 2005, check here    ▶ ☐

## Part I    Income

| | | | |
|---|---|---|---|
| 1 | Gross receipts or sales. **Caution.** If this income was reported to you on Form W-2 and the "Statutory employee" box on that form was checked, see page C-3 and check here  ▶ ☐ | 1 | 95,405 |
| 2 | Returns and allowances | 2 | 2,075 |
| 3 | Subtract line 2 from line 1 | 3 | 93,330 |
| 4 | Cost of goods sold (from line 42 on page 2) | 4 | |
| 5 | **Gross profit.** Subtract line 4 from line 3 | 5 | 93,330 |
| 6 | Other income, including Federal and state gasoline or fuel tax credit or refund (see page C-3) | 6 | |
| 7 | **Gross income.** Add lines 5 and 6  ▶ | 7 | 93,330 |

## Part II    Expenses. Enter expenses for business use of your home **only** on line 30.

| | | | | | | |
|---|---|---|---|---|---|---|
| 8 | Advertising | 8 | 1,600 | 18 | Office expense | 18 | 11,811 |
| 9 | Car and truck expenses (see page C-3) | 9 | 3,645 | 19 | Pension and profit-sharing plans | 19 | |
| | | | | 20 | Rent or lease (see page C-5): | | |
| 10 | Commissions and fees | 10 | | a | Vehicles, machinery, and equipment | 20a | |
| 11 | Contract labor (see page C-4) | 11 | | b | Other business property | 20b | 4,998 |
| 12 | Depletion | 12 | | 21 | Repairs and maintenance | 21 | |
| 13 | Depreciation and section 179 expense deduction (not included in Part III) (see page C-4) | 13 | | 22 | Supplies (not included in Part III) | 22 | 586 |
| | | | | 23 | Taxes and licenses | 23 | 3,013 |
| | | | | 24 | Travel, meals, and entertainment: | | |
| | | | | a | Travel | 24a | 3,900 |
| 14 | Employee benefit programs (other than on line 19) | 14 | | b | Deductible meals and entertainment (see page C-5) | 24b | 725 |
| 15 | Insurance (other than health) | 15 | 6,607 | 25 | Utilities | 25 | 5,885 |
| 16 | Interest: | | | 26 | Wages (less employment credits) | 26 | 20,237 |
| a | Mortgage (paid to banks, etc.) | 16a | 1,381 | 27 | Other expenses (from line 48 on page 2) | 27 | 17,190 |
| b | Other | 16b | 6,050 | | | | |
| 17 | Legal and professional services | 17 | | | | | |

| | | | |
|---|---|---|---|
| 28 | **Total expenses** before expenses for business use of home. Add lines 8 through 27 in columns  ▶ | 28 | 87,628 |
| 29 | Tentative profit (loss). Subtract line 28 from line 7 | 29 | 5,702 |
| 30 | Expenses for business use of your home. Attach Form 8829 | 30 | |
| 31 | **Net profit or (loss).** Subtract line 30 from line 29.  • If a profit, enter on Form 1040, line 12, and also on **Schedule SE, line 2** (statutory employees, see page C-6). Estates and trusts, enter on Form 1041, line 3.  • If a loss, you **must** go to line 32. | 31 | 5,702 |
| 32 | If you have a loss, check the box that describes your investment in this activity (see page C-6).  • If you checked 32a, enter the loss on **Form 1040, line 12,** and **also** on **Schedule SE, line 2** (statutory employees, see page C-6). Estates and trusts, enter on Form 1041, line 3.  • If you checked 32b, you **must** attach **Form 6198.** Your loss may be limited. | 32a ☐  All investment is at risk. 32b ☐  Some investment is not at risk. |

**For Paperwork Reduction Act Notice, see page C-7 of the instructions.**

Schedule C (Form 1040) 2005

DAA

545466110 01/25/2007 9:35 AM

**DOLORES V VICTORIA**
Schedule C (Form 1040) 2005  **PHYSICIAN**                                                                              Page 2

| Part III | Cost of Goods Sold (see page C-6) |
|---|---|

**33** Method(s) used to
value closing inventory:  a ☒ Cost  b ☐ Lower of cost or market  c ☐ Other (attach explanation)

**34** Was there any change in determining quantities, costs, or valuations between opening and closing inventory? If
"Yes," attach explanation .................................................................................................... ☐ Yes  ☒ No

| | | |
|---|---|---|
| **35** | Inventory at beginning of year. If different from last year's closing inventory, attach explanation | **35** |
| **36** | Purchases less cost of items withdrawn for personal use | **36** |
| **37** | Cost of labor. Do not include any amounts paid to yourself | **37** |
| **38** | Materials and supplies | **38** |
| **39** | Other costs | **39** |
| **40** | Add lines 35 through 39 | **40** |
| **41** | Inventory at end of year | **41** |
| **42** | **Cost of goods sold.** Subtract line 41 from line 40. Enter the result here and on page 1, line 4 | **42** |

| Part IV | Information on Your Vehicle. Complete this part **only** if you are claiming car or truck expenses on line 9 and are not required to file Form 4562 for this business. See the instructions for line 13 on page C-4 to find out if you must file Form 4562. |
|---|---|

**43** When did you place your vehicle in service for business purposes? (month, day, year) ▶ ..................................

**44** Of the total number of miles you drove your vehicle during 2005, enter the number of miles you used your vehicle for:

**a** Business .........................  **b** Commuting (see instructions) ...................  **c** Other ...........................

| | | | | |
|---|---|---|---|---|
| **45** | Do you (or your spouse) have another vehicle available for personal use? | | ☐ Yes | ☐ No |
| **46** | Was your vehicle available for personal use during off-duty hours? | | ☐ Yes | ☐ No |
| **47a** | Do you have evidence to support your deduction? | | ☐ Yes | ☐ No |
| **b** | If "Yes," is the evidence written? | | ☐ Yes | ☐ No |

| Part V | Other Expenses. List below business expenses not included on lines 8-26 or line 30. |
|---|---|

| | |
|---|---:|
| OFFICE MEETINGS | 465 |
| BANK CHARGES | 535 |
| DUES & SUBSCRIPTIONS | 685 |
| BOOKS | 850 |
| MED ASSOC DUES | 895 |
| LAB EXPENSE | 1,250 |
| LAUNDRY | 800 |
| BILLING EXPENSE | 5,580 |
| MEDICAL SUPPLIES | 3,500 |
| BANK CHARGES | 705 |
| TRANSCRIPTION | 850 |
| OTHER LABOR | 1,075 |

| | | | |
|---|---|---|---:|
| **48** | Total other expenses. Enter here and on page 1, line 27 | **48** | 17,190 |

DAA                                                                                              Schedule C (Form 1040) 2005

645466110 01/25/2007 9:35 AM

Schedule E (Form 1040) 2005

Attachment Sequence No. **13**    Page **2**

Name(s) shown on return. Do not enter name and social security number if shown on other side.

Your social security number

**EDGAR T & DOLORES V VICTORIA**

Caution. The IRS compares amounts reported on your tax return with amounts shown on Schedule(s) K-1.

**Part II**    **Income or Loss From Partnerships and S Corporations** Note. If you report a loss from an at-risk activity for which **any** amount is **not** at risk, you **must** check the box in column (e) on line 28 and attach **Form 6198.** See page E-1.

27   Are you reporting any loss not allowed in a prior year due to the at-risk or basis limitations, a prior year unallowed loss from a passive activity (if that loss was not reported on Form 8582), or unreimbursed partnership expenses?    ☐ Yes   ☒ No

If you answered "Yes," see page E-6 before completing this section.

| 28 | (a) Name | (b) Enter P for partnership; S for S corp. | (c) Check if foreign partnership | (d) Employer identification number | (e) Check if any amount is not at risk |
|---|---|---|---|---|---|
| A | BARIATRIC MEDICAL AND PHYSICAL FITN | S | | 72-1357031 | |
| B | MONTGOMERY NORTH LTD | P | | 58-1488331 | |
| C | | | | | |
| D | | | | | |

| | Passive Income and Loss | | Nonpassive Income and Loss | | |
|---|---|---|---|---|---|
| | (f) Passive loss allowed (attach Form 8582 if required) | (g) Passive income from Schedule K-1 | (h) Nonpassive loss from Schedule K-1 | (i) Section 179 expense deduction from Form 4562 | (j) Nonpassive income from Schedule K-1 |
| A | 0 | | | | 16,866 |
| B | 0 | 1,813 | | | |
| C | | | | | |
| D | | | | | |
| 29a | Totals | 1,813 | | | 16,866 |
| b | Totals | | | | |

| 30 | Add columns (g) and (j) of line 29a | 30 | 18,679 |
|---|---|---|---|
| 31 | Add columns (f), (h), and (i) of line 29b | 31 | ( 0 ) |
| 32 | Total partnership and S corporation income or (loss). Combine lines 30 and 31. Enter the result here and include in the total on line 41 below | 32 | 18,679 |

**Part III**    **Income or Loss From Estates and Trusts**

| 33 | (a) Name | (b) Employer identification number |
|---|---|---|
| A | | |
| B | | |

| | Passive Income and Loss | | Nonpassive Income and Loss | |
|---|---|---|---|---|
| | (c) Passive deduction or loss allowed (attach Form 8582 if required) | (d) Passive income from Schedule K-1 | (e) Deduction or loss from Schedule K-1 | (f) Other income from Schedule K-1 |
| A | | | | |
| B | | | | |
| 34a | Totals | | | |
| b | Totals | | | |

| 35 | Add columns (d) and (f) of line 34a | 35 | |
|---|---|---|---|
| 36 | Add columns (c) and (e) of line 34b | 36 | ) |
| 37 | Total estate and trust income or (loss). Combine lines 35 and 36. Enter the result here and include in the total on line 41 below | 37 | |

**Part IV**    **Income or Loss From Real Estate Mortgage Investment Conduits (REMICs)-Residual Holder**

| 38 | (a) Name | (b) Employer identification number | (c) Excess inclusion from Schedules Q, line 2c (see page E-6) | (d) Taxable income (net loss) from Schedules Q, line 1b | (e) Income from Schedules Q, line 3b |
|---|---|---|---|---|---|
| | | | | | |

| 39 | Combine columns (d) and (e) only. Enter the result here and include in the total on line 41 below | 39 | |
|---|---|---|---|

**Part V**    **Summary**

| 40 | Net farm rental income or (loss) from Form 4835. Also, complete line 42 below | 40 | |
|---|---|---|---|
| 41 | Total income or (loss). Combine lines 26, 32, 37, 39, and 40. Enter the result here and on Form 1040, line 17 ▶ | 41 | 18,679 |
| 42 | Reconciliation of farming and fishing income. Enter your gross farming and fishing income reported on Form 4835, line 7; Schedule K-1 (Form 1065), box 14, code B; Schedule K-1 (Form 1120S), box 17, code N; and Schedule K-1 (Form 1041), line 14, code F (see page E-7) | 42 | |
| 43 | Reconciliation for real estate professionals. If you were a real estate professional (see page E-1), enter the net income or (loss) you reported anywhere on Form 1040 from all rental real estate activities in which you materially participated under the passive activity loss rules | 43 | |

DAA

Schedule E (Form 1040) 2005