## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Deloris V. Victoria, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | Civil Action No. 2:07-cv-00688-WKW |
| v. | ) | |
| | ) | (Bank. Case No. 06-31225-WRS-7) |
| Greenville Hospital Corporation, | ) | |
| d/b/a LV Stabler Memorial Hospital, | ) | |
| | ) | |
| Appellee. | ) | |

---

### Appellee's Reply Brief on Appeal from Order of the
### United States Bankruptcy Court for the Middle District of Alabama

---

Bradley R. Hightower
Attorney for Greenville Memorial Hospital
CHRISTIAN & SMALL LLP
505 North 20th Street, Suite 1800
Birmingham, Alabama 35203
Phone: (205) 795-6588
Fax: (205) 328-7234

## TABLE OF CONTENTS

**Page**

I.      STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

      A.    Nature of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

      B.    Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

II.     STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

      A.    Victoria's Lack of Honesty and Cooperation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

      B.    Victoria's Ever-Changing Schedules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

            1.    The Original Schedules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

            2.    The First Set of Amended Schedules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

            3.    Reduction of Scheduled Debts Based Upon Victoria's Testimony . . . . . . . . .  11

            4.    Other Discrepancies in the Original and First Set of Amended Schedules . . .  12

            5.    The Second Set of Amended Schedules . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

III.    SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

IV.     APPLICABLE STANDARD OF APPELLATE REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . .  17

V.      ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

      A.    The Bankruptcy Court Did Not Commit Clear Error in Granting the Motion to
            Dismiss Filed by Greenville Hospital . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

            1.    Victoria Was Subject to the Means Test . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

            2.    Victoria Failed the Means Test . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

VI.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

## TABLE OF AUTHORITIES

**page**

<u>**CASES**</u>

<u>Marramma v. Citizens Bank of Massachusetts</u>
     127 S.Ct. 1105 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

<u>In re Brown</u>,
     303 F.3d 1261 (11th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

<u>In re Calvert</u>,
     907 F.2d 1069 (11th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

<u>In re Club Associates</u>,
     956 F.2d 1065 (11th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

<u>In re. Kelly</u>,
     841 F.2d 908 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

<u>Parts & Elec. Motors Inc. v. Sterling Elec. Inc.</u>,
     866 F.2d 228 (7th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

<u>In re Red Carpet Corp. of Panama City Beach</u>,
     902 F.2d 883 (11th Cir.1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

<u>In re. Stewart</u>,
     175 F.3d 796 (10th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

<u>Alabama Dept. of Human Resources v. Lewis</u>,
     279 B.R. 308 (S.D. Ala. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

<u>In re Hatem</u>,
     273 B.R. 900 (S.D. Ala. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

<u>In re. Pier</u>,
     310 B.R. 347 (Bank. N.D. Ohio 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

<u>In re Spiwak</u>,
     285 B.R. 744 (S.D. Fla. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

<u>**STATUTES AND RULES**</u>

11 U.S.C. § 108(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

11 U.S.C. § 365(d)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

### TABLE OF AUTHORITIES (cont'd)

11 U.S.C. § 502(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

11 U.S.C. § 707(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 11, 14, 15, 16, 18, 19, 20, 25, 26

Fed. R. Bank. P. 2004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 11, 12, 13, 14, 23

Fed. R. Bankr. P. 8013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# I.
## STATEMENT OF THE CASE

### A.    Nature of the Case

Greenville Hospital Corporation (the "Appellee" or "Greenville Hospital") is an Alabama corporation that operates a hospital under the name of Stabler Memorial Hospital in Butler County, Alabama.  Dr. Deloris V. Victoria (the "Appellant" or Victoria) is a physician who previously practiced internal medicine in Butler County, Alabama.[1]

Victoria entered into a recruitment agreement (the "Agreement") with Greenville Hospital on May 3, 2000.  The Agreement guaranteed Victoria certain minimum monthly income payments in return for her promise to employ Dr. Lilit Nami ("Nami") and to assure that Nami maintained a medical practice in the Butler County, Alabama community.  The Agreement provided that if Nami left the community or could no longer maintain her hospital privileges prior to the end of the contract term, Victoria would reimburse Greenville Hospital for all monies paid to her.

Nami left the community prior to the end of the contract term and Greenville Hospital brought a breach of contract action against Victoria.  On August 3, 2006, the Circuit Court of Butler County, Alabama entered a $162,257.74 judgment in favor of Greenville Hospital and against Victoria.  Shortly thereafter, on September 25, 2006, Victoria filed a chapter 7 bankruptcy case in the United States Bankruptcy Court for the Middle District of Alabama (the "Bankruptcy Court") in an effort to discharge the judgment.

Greenville Hospital took the position that Victoria's chapter 7 bankruptcy filing was abusive due to her high income and corresponding ability to pay her creditors.  The Bankruptcy Court agreed and entered an order dismissing Victoria's bankruptcy case on June 27, 2007.

---

[1] After her bankruptcy case was dismissed, Victoria relocated her practice to Randolph County, Alabama.

B.     **Procedural History**

_____Greenville Hospital filed a Motion to Dismiss Debtor's Case For Abuse (the "Motion to Dismiss") on April 20, 2007.  A true and correct copy of the Motion to Dismiss is attached as Exhibit "A."  The Bankruptcy Court set an evidentiary hearing on the Motion to Dismiss for May 8, 2007.  A few hours before the evidentiary hearing was set to begin, Victoria filed a Response to the Motion to Dismiss (the "Response").  A true and correct copy of the Response is attached as Exhibit "B." The Bankruptcy Court heard arguments from Greenville Hospital, Victoria and the Bankruptcy Administrator.  The matter was then taken under advisement.

On the day after the hearing - May 9, 2007 - Victoria filed a Supplemental Response to the Motion to Dismiss (the "Supplemental Response").  A true and correct copy of the Supplemental Response is attached as Exhibit "C."  Greenville Hospital filed a Reply to the Response and the Supplemental Response on May 9, 2007.  A true and correct copy of the Reply is attached as Exhibit "D." On June 8, 2007, the Bankruptcy Court entered an order scheduling a telephonic hearing to rule on the Motion to Dismiss for June 26, 2007.

On June 26, 2007, the Bankruptcy Court granted the Motion to Dismiss and read its decision into the record.  A true and correct copy of the transcript of the June 26, 2007 hearing is attached as Exhibit "E."  The Bankruptcy Court specifically adopted the Reply filed by Greenville Hospital as the Bankruptcy Court's findings of fact.  *See the June 26, 2007 Transcript attached as Exhibit "E"* at p. 4 ("In looking at the reply memorandum filed by Greenville Hospital at item sixty-eight, in that filing Greenville does a very technical analysis of the facts, and I am going to adopt that as reasoning of the court").  On June 27, 2007, the Bankruptcy Court entered a one line written order dismissing Victoria's case (the "Dismissal Order") for the reasons stated on the record at the June 26, 2007 hearing.  A true and correct copy of the Dismissal Order is attached as Exhibit "F."

Victoria appealed the Dismissal Order on July 6, 2007 by filing a Notice of Appeal.  On July 16, 2007, Victoria filed her Designation of Contents for Inclusion in Record and Issues on Appeal (the "Appellant Designation").  On August 3, 2007, Greenville Hospital filed its Designation of Contents for Inclusion in Record and Issues on Appeal (the "Appellee Designation").  Greenville Hospital's Appellee Designation was filed out of time because after Victoria appealed the Dismissal Order, one of her attorneys entered into a settlement agreement with Greenville Hospital on Victoria's behalf.

Victoria later backed out of the settlement agreement but agreed to allow Greenville Hospital to file its Appellee Designation out of time.  Based upon this agreement, Greenville Hospital filed a Consent Motion to Accept Out of Time the Appellee Designation (the "Consent Motion") on August 6, 2007.  The Bankruptcy Court entered an order granting the Consent Motion on August 30, 2007.

## II.
## STATEMENT OF FACTS

### A.    Victoria's Lack of Honesty and Cooperation

In its oral ruling dismissing Victoria's chapter 7 bankruptcy case for abuse, the Bankruptcy Court specifically noted that Victoria was uncooperative and less than completely honest with the Bankruptcy Court and other parties regarding the information contained in her bankruptcy petition and schedules. *See the June 26, 2007 Transcript attached as Exhibit "E"* at p. 3.  The Bankruptcy Court stated that "[w]hen a debtor files bankruptcy, it is incumbent on him or her to be forthright and forthcoming with the court, with creditors, with the parties-in-interest.  And I have noticed that we have had multiple amendments to the schedules.  <u>I have gotten a real sense that the debtor is playing hide-the-ball and being uncooperative, and that's certainly a factor in my view</u>." (emphasis added).  *Id.*

Victoria does not dispute or even mention the circumstances that led the Bankruptcy Court to make this finding.  But because Victoria's conduct was a factor in the Bankruptcy Court's decision to dismiss her case for abuse, Greenville Hospital will set out a more detailed procedural history in an effort

to give this Court a sense of the information that the Bankruptcy Court and the other parties in this case had to work with when determining if Victoria's bankruptcy filing was abusive.

Shortly after Victoria filed her chapter 7 bankruptcy case on September 25, 2006, the Bankruptcy Court scheduled her first meeting of creditors for October 27, 2006.  At this meeting, Victoria was questioned about her bankruptcy petition, schedules and statement of financial affairs.  A true and correct copy of Victoria's bankruptcy petition, schedules, and statement of financial affairs is attached as Exhibit "G."  However, because Victoria failed to sufficiently answer the questions and also failed to produce documentation needed to verify the information contained in her bankruptcy pleadings, the chapter 7 trustee (the "Trustee") had to continue the meeting to November 29, 2007.

Counsel for Greenville Hospital appeared at Victoria's rescheduled first meeting of creditors on November 29, 2007.  Without any advance notice though, Victoria failed to appear and the meeting had to be continued again to December 15, 2006.  The basis for the continuance was that Victoria was again unable to produce sufficient documentation regarding her assets and liabilities.

Due to the continuance of Victoria's first meeting of creditors, the Trustee had to file a Motion to Extend Time Deadline for Filing Objection to Claims of Exemptions and Objections to the Debtor's Discharge by Sixty (60) Days (the "Trustee's Motion to Extend") on December 7, 2006.  In the Trustee's Motion to Extend, the Trustee requested that the deadline to file objections to Victoria's claims of exemption and to her discharge be extended because Victoria had asked for her meeting of creditors to be continued on the basis that she was unable to produce certain documentation requested by the Trustee. The Bankruptcy Court set a hearing on the Trustee's Motion to Extend for December 19, 2007.

On December 15, 2006, counsel for Greenville Hospital appeared at Victoria's rescheduled first meeting of creditors.  Although Victoria did attend this meeting, she again failed to produce sufficient documentation regarding her assets and liabilities.  In addition, Victoria gave testimony indicating that

her bankruptcy schedules and statement of financial affairs were very inaccurate.[2]  A true and correct copy of the transcript of the December 15, 2006 meeting of creditors is attached as Exhibit "H."

       At the conclusion of the December 15, 2006 meeting, Victoria indicated that she would produce the documentation requested by the Trustee and counsel for Greenville Hospital.  She also agreed to amend her bankruptcy schedules to list her accounts receivable and amend her statement of financial affairs to list the jewelry transfers.

       Despite her stated intentions to do so, Victoria did not follow through on her promises.  For this reason, Greenville Hospital had to file a Motion to Extend Deadline for Filing Motion to Dismiss Debtor's Case for Abuse Pursuant to Section 707(b) of the Bankruptcy Code (the "First Motion to Extend Deadlines") on December 21, 2006.  In the First Motion to Extend Deadlines, Greenville Hospital stated that it needed to examine the additional records that were going to be produced by Victoria and to examine Victoria's revised statement of financial affairs.  This was necessary in order for Greenville Hospital to determine whether it would file a motion to dismiss Victoria's case for abuse pursuant to Section 707(b) of the Bankruptcy Code.  The Bankruptcy Court set a hearing on Greenville Hospital's First Motion to Extend Deadlines for January 9, 2007.

       On December 28, 2006, the Bankruptcy Court entered an Order granting the Trustee's Motion to Extend.  Pursuant to the Bankruptcy Court's Order, the deadline to file objections to Victoria's claims of exemption and to her discharge was extended by sixty (60) days to February 20, 2007.  On January 17, 2007, the Bankruptcy Court entered an Order granting Greenville Hospital's First Motion to Extend Deadlines.  Pursuant to the Bankruptcy Court's Order, the deadline to file a motion to request that

---

[2] Victoria testified, for example, that she had substantial accounts receivable that were not listed in her bankruptcy schedules.  *See December 15, 2006 Transcript attached as Exhibit "B"* at p. 2-11.  She also gave no answer for why she failed to list a medical office space lease with Greenville Hospital in her statement of intention.  *Id.* at p. 18-19.  And finally, Victoria testified that she had recently transferred away $5,000 in jewelry to various family members for no consideration, although these transfers were not listed in her statement of financial affairs.  *Id.* at p.27-29.

Victoria's case be dismissed for abuse and to object to Victoria's discharge was extended until February 20, 2007.

As of January 18, 2007, Victoria had still not produced the documentation she had promised to Greenville Hospital. She had not amended her schedules either. Therefore, Greenville Hospital filed a Motion for Rule 2004 Examination[3] (the "Motion for 2004 Examination") in which it requested that the Bankruptcy Court allow Greenville Hospital to examine Victoria regarding her assets and liabilities.

Similarly, as of January 30, 2007, Victoria had still not responded to Greenville Hospital's request that she amend her statement of intention to show that she was rejecting her medical office space lease. For this reason, Greenville Hospital filed a Motion for Finding that Debtor's Lease with Greenville Hospital is Automatically Rejected and For Relief From Stay (the "Motion for Relief"). In its Motion for Relief, Greenville Hospital requested that the Bankruptcy Court find that the time period for Victoria to assume the lease under Section 365(d)(4) of the Bankruptcy Code had expired and therefore, the lease was automatically rejected by operation of law.

Around the same date that Greenville Hospital filed its Motion for Relief, the parties reached an agreement to schedule Victoria's Rule 2004 examination for February 9, 2007. Counsel for Greenville Hospital confirmed this date in a letter by fax to Victoria's attorneys on February 5, 2007. Attached to this letter was another copy of the Motion for 2004 Examination and its document requests.

Victoria's Rule 2004 examination was held on February 9, 2007. A true and correct copy of the transcript of the February 9, 2007 Rule 2004 examination is attached as Exhibit "I." On the morning of the examination, Victoria showed up late and failed to bring virtually any of the documents that Greenville Hospital had requested. *See February 9, 2007 transcript attached as Exhibit "I"* at p. 8-9.

---

[3] Rule 2004 of the Federal Rules of Bankruptcy Procedure provides for the examination of an entity, including the debtor, upon order by the Bankruptcy Court.

The documents that the Victoria did bring with her - most of which were not requested by Greenville Hospital - were in such disarray that they proved to be of little use in the examination.

Following Victoria's Rule 2004 examination (and after reviewing Victoria's amended bankruptcy schedules), counsel for Greenville Hospital sent a letter by fax to Victoria's attorneys on February 12, 2007 to request copies of the documents that Victoria failed to produce at the examination. In the letter, counsel for Greenville Hospital asked for a response from Victoria within two (2) weeks but, again, no response was received.

Because Victoria had still not produced the documents requested by Greenville Hospital at her first meeting of creditors as well as the documents requested by Greenville Hospital in the document requests attached to the Motion for 2004 Examination, Greenville Hospital had to file a Second Motion to Extend Deadlines for Sixty Days (the "Second Motion to Extend") on February 13, 2007. In the Second Motion to Extend, Greenville Hospital stated that it needed another extension of the deadline to file a motion to request that Victoria's case be dismissed for abuse. This additional extension was needed because Victoria had still not produced documents requested by Greenville Hospital nor had Victoria amended her bankruptcy schedules, statement of intention and statement of financial affairs as she had agreed to do. The Court set a hearing on the Second Motion for Extension for February 27, 2007.

On February 26, 2007, the Court entered an Order granting Greenville Hospital's Motion for Relief. The Court later amended its Order to specifically find that Victoria's lease with Greenville Hospital was automatically rejected by operation of law pursuant to Section 365(d)(4).[4]

Also on February 26, 2007, Greenville Hospital issued a subpoena for production of documents to Victoria's husband.[5] The subpoena commanded Victoria's husband to produce copies of documents

---

[4] Victoria never amended her statement of intention to state whether she intended to assume or reject the lease.

[5] Victoria testified at her Rule 2004 examination that her husband paid for virtually all of her family's expenses. *See February 9, 2007 transcript attached as Exhibit "I"* at p. 23-25, 62-67. For this

related to her assets, income and family expenses at the office of Victoria's attorneys on March 9, 2007. The subpoena was served on Victoria's husband on February 28, 2007.

The Bankruptcy Court held a hearing on Greenville Hospital's Second Motion to Extend on February 27, 2007. At the hearing, the Bankruptcy Court agreed to grant the Second Motion to Extend. The Bankruptcy Court also specifically stated to counsel for Victoria that the Bankruptcy Court would consider dismissing Victoria's case if she continued to withhold documents from Greenville Hospital.

On March 8, 2007, the day before the documents were to be produced pursuant to the subpoena, counsel for Greenville Hospital left a voicemail for Victoria's attorneys to request that they let him know whether the documents would in fact produced on March 9, 2007. Having received no response, counsel for Greenville Hospital sent a letter by fax to Victoria's attorneys on the same date. Despite these efforts by counsel for Greenville Hospital, Victoria's attorneys did not respond in any way.

Because Victoria's attorneys still had not responded days later, counsel for Greenville Hospital sent another letter by fax to Victoria's attorneys on March 12, 2007. In this letter, counsel for Greenville Hospital specifically stated that if no response was received from Victoria's attorneys by March 15, 2007, Greenville Hospital would ask the Bankruptcy Court to compel production of the documents requested in the subpoena.

Victoria's attorneys did not respond to any of the telephone or written requests by counsel for Greenville Hospital; therefore, on March 20, 2007, Greenville Hospital filed a Motion to Compel Debtor to Produce Documents or in the Alternative Motion to Dismiss Case for Failure to Produce Documents (the "Motion to Compel"). The Bankruptcy Court set a hearing on the Motion to Compel for April 24, 2007. Just before the hearing, Victoria produced most of the documents requested by Greenville

---

reason, it was impossible to accurately determine the amount of Victoria's expenses without reviewing her husband's bank statements and credit card statements. Knowing this, Victoria intentionally did not produce any documentation regarding these expenses on the basis that the documentation was not in her custody, possession or control. *Id.* at p. 23-25.

Hospital and for this reason, Greenville Hospital asked that its Motion to Compel be denied. A true and correct copy of the transcript of the April 24, 2007 hearing is attached as Exhibit "J."

      **B.**      **Victoria's Ever-Changing Schedules**

      The great effort expended by Greenville Hospital to obtain documentation from Victoria and her husband regarding Victoria's income and expenses was required because Victoria's bankruptcy schedules were misleading and inaccurate.  The Bankruptcy Court specifically noted Victoria's numerous amendments to her bankruptcy schedules as a factor in the Bankruptcy Court's decision to dismiss her case for abuse.  *See the June 26, 2007 Transcript attached as Exhibit "E"* at p. 3.

      Victoria does not take issue with or even mention this finding by the Bankruptcy Court in her brief filed with this Court.  However, because Victoria's ever-changing bankruptcy schedules were a factor in the Bankruptcy Court's decision to dismiss her case for abuse, Greenville Hospital will set out in detail the facts surrounding Victoria's bankruptcy schedules and their amendments.  Greenville Hospital will first set out Victoria's original schedules and then her amended schedules.

      **1.**      **The Original Schedules**

      In Schedule A, Victoria listed her interest in a home located in Greenville, Alabama with a tax assessed value of $373,800.00 as well as her interest in a piece of real property referred to as the Isle of Valley in Orlando, Florida with a value of $4,000.00.

      In Schedule B, Victoria listed various personal property including $7,000.00 in household goods and $5,000.00 in jewelry.  Schedule B did not contain any breakdown of the value assigned to individual items of Victoria's personal property nor did it even breakdown the value of her personal property according to what part of the home it was located in (i.e. living room furniture, dining room table, etc.).

      In Schedule D, Victoria listed total secured debts in the amount of $309,000.00.  Victoria's secured debts were composed of a $290,000 debt to Brantley Bank & Trust that was secured by a

mortgage on her home and a $19,000.00 debt to Camden National that was secured against various office equipment.

In Schedule E, Victoria listed total tax debts in the amount of $60,877.74. Her tax debts were composed of year 2003 federal income taxes of $5,600.27, year 2003 state income taxes of $1,547.62, year 2004 federal income taxes of $23,892.40, year 2005 federal income taxes of $9,147.63, years 2004 and 2005 estimated state income taxes of $3,000.00 and taxes owed by Bariatric Medical & Physical Fitness Associates, Inc. (a corporation owned by Victoria) of $17,689.82.

In Schedule F, Victoria listed total unsecured debts in the amount of $273,308.00. Her unsecured debts were composed of a $2,545.00 line of credit to Camden National, a $1.00 disputed debt to Camden National, a $680.00 loan to Camden National, a $558.00 collection account with CenturyTel, a $18,000 debt in a pending suit by Genezen Healthcare, a $168,000.00 judgment in favor of Greenville Hospital, a $9,663.00 credit card debt to MBNA America, a $3,378.00 credit card debt to MBNA America, a $65,000.00 credit card debt to MBNA America and a $5,483.00 line to credit to Whitney Bank.

In Schedule G, Victoria listed no executory contracts or unexpired leases even though she had previously entered into a medical office space lease with Greenville Hospital.

In Schedule I, Victoria listed her occupation as a physician. Her husband's occupation was also listed as a physician. Victoria stated that she had gross monthly income of $15,000.00 per month and her husband had gross monthly income of $20,000.00 per month.

In Schedule J, Victoria listed various monthly expenses, including a $4,000.00 mortgage on her home, a $300.00 telephone bill, a $700.00 transportation expense, $1,000.00 in charitable contributions, $1,200.00 for auto insurance and $3,500.00 for her husband's debts. After these expenses were subtracted from Victoria's income, she listed monthly disposable income of $1,890.00.

Along with her bankruptcy petition, schedules and statement of financial affairs, Victoria filed a Form 22A Statement of Current Monthly Income and Means Test Calculation (the "Means Test Form").

On the Means Test Form, Victoria summarily stated that her debts were primarily non-consumer and therefore, the Means Test found in Section 707(b) of the Bankruptcy Code did not apply to her. No breakdown or analysis of Victoria's debts into categories of consumer debts and business debts was attached to the Means Test Form.

### 2.    The First Set of Amended Schedules

On February 5, 2007, Victoria filed an amended Schedule B, Schedule F and Schedule G. A true and copy of Victoria's first set of amended schedules is attached as Exhibit "K." She amended Schedule B to add $35,000.00 in previously undisclosed accounts receivable; Schedule F to reduce the $168,000.00 judgment to Greenville Hospital down to $162,700.00 and to reduce the $65,000.00 credit card debt to MBNA America down to $1.00; and Schedule G to add the previously undisclosed lease with Greenville Hospital.[6] Victoria did not amend her statement of financial affairs to disclose that she had transferred a substantial amount of jewelry (approximately $5,000.00 worth) to other family members before filing her bankruptcy case.[7]

Based upon the debt amounts listed in Victoria's original bankruptcy schedules filed on September 25, 2006 and her amended bankruptcy schedules filed on February 5, 2007, Victoria had consumer debts totaling $290,000.00 and business debts totaling $282,886.74.

### 3.    Reduction of Scheduled Debts Based Upon Victoria's Testimony

On February 9, 2007, counsel for Greenville Hospital took Victoria's Rule 2004 examination and questioned Victoria about the debts listed in her bankruptcy schedules. Based upon Victoria's testimony at her Rule 2004 examination, certain of the business debts listed in her bankruptcy schedules should not have been considered when determining the total amount of her business debt.

---

[6] Victoria did not file another Means Test Form with the Bankruptcy Court nor did she file any breakdown or analysis of her amended debts into categories of consumer debts and business debts.

[7] Victoria's failure to disclose her jewelry transfers was especially troubling because she testified that she transferred the jewelry for little or no consideration at both her meeting of creditors and her Rule 2004 examination. Although Victoria testified on 2 separate occasions that she had made these transfers to her family members, Victoria never amended her statement of financial affairs to disclose the transfers.

Victoria testified that she was not obligated for a $9,663.00 credit card debt to MBNA America and a $3,378.00 credit card debt to MBNA America listed in Schedule F. *See the February 9, 2007 Transcript attached as Exhibit* "I" at p. 51. She also testified that a $19,000.00 secured debt to Camden National was owed by her weight loss business (a corporation) rather than herself. *See Deposition Transcript* at p. 39. These debts, which total $32,041.00, should have been subtracted from the $282,886.74 total amount of the business debts listed in Victoria's original bankruptcy schedules and her first set of amended bankruptcy schedules to equal a revised amount of $250,845.74.

### 4.    Other Discrepancies in the Original and First Set of Amended Schedules

At Victoria's Rule 2004 examination, she provided testimony indicating that there were also other discrepancies apart from the debts described above that should be considered when determining the veracity of her bankruptcy schedules. Victoria produced a copy of the note and mortgage on her home, which indicated that the original amount of the debt secured by the mortgage was $431,062.70 and the original monthly payments were $5,257.00 per month. *See the February 9, 2007 Transcript attached as Exhibit* "I" at p. 34-35. This indicated that the fair market value of Victoria's home was likely greater than its $373,800.00 scheduled value.

Victoria also testified that her family had a townhouse in Atlanta, Georgia, although it was owned by Victoria's husband. *See the February 9, 2007 Transcript attached as Exhibit* "I" at p. 45-48. Victoria produced 2 invoices showing a debt secured by a first mortgage on the townhouse in the amount of $215,000.00 and a debt secured by a second mortgage in the amount of $39,911.56. The invoices reflected a total combined monthly payment on the townhouse of $2,532.31. Although Victoria's bankruptcy schedules did not list this expense at all, her Rule 2004 examination testimony indicated that part of her income that was syphoned away by her husband was used to help pay for her family's expenses, possibly including the townhouse. *See the February 9, 2007 Transcript attached as Exhibit* "I" at p. 62-67.[8]

---

[8] Victoria ultimately testified that she simply did not know how much of her income went to pay her family's expenses. *See the February 9, 2007 Transcript attached as Exhibit* "I" at p. 66-67. This

Victoria testified that she did not own any vehicle. *See Deposition Transcript* at p. 10-12. Instead, Victoria stated that her husband owned all the family's vehicles, including the vehicles driven by Victoria and her 4 adult children. *Id* at 12, 61. Victoria produced copies of vehicle registrations confirming her husband's ownership of 2 recent model year Mercedes and a Porsche. Registrations for other vehicles, however, were not provided.

Counsel for Greenville Hospital later obtained a copy of an auto insurance policy from Victoria which indicated that Victoria and her husband owned a total of 7 vehicles, including 4 recent model year Mercedes, a Porsche, a Volkswagon and a Nissan.[9] The policy indicated that Victoria and her husband had a monthly expense for auto insurance of $1,021.90. Again though, what portion of this monthly expense was paid by Victoria and what portion was paid by her husband could not be determined due to Victoria's failure to disclose the information necessary to make the determination.

Victoria testified that she owned jewelry worth $5,000.00, which is the amount listed in her bankruptcy schedules. *See the February 9, 2007 Transcript attached as Exhibit* "I" at p. 43. However, Victoria further testified that she gave away various pieces of jewelry to other family prior to filing bankruptcy. *Id.* Although she had previously testified at her first meeting of creditors that the jewelry transferred to her daughters was worth $5,000.00, Victoria stated at her Rule 2004 examination that the transferred jewelry was only worth about $3,000.00. Whatever the value may have been, Victoria did not list the transfers in her statement of financial affairs and she never disclosed the transfers to the Bankruptcy Court.

---

testimony was not sufficient to meet Victoria's obligations under the Bankruptcy Code because Schedules I and J that were filed by Victoria specifically required her to disclose this information.

[9] At first, Victoria claimed that all these vehicles were titled in her husband's name because she did not drive any of them. *See the February 9, 2007 Transcript attached as Exhibit* "I" at p. 84. After being reminded that she had previously admitted to driving the cars, Victoria then stated that the vehicles were titled in her husband's name because he was the one who paid for them. *Id.* It was unclear though if Victoria's husband paid for the vehicles - at least in part - using her money.

Victoria stated during her Rule 2004 examination that she regularly transfered approximately $2,000.00 to $3,000.00 per month to her weight loss business (a corporation) because the business was not generating enough revenue to pay its expenses.  *See the February 9, 2007 Transcript attached as Exhibit* "I" at p. 76-82.  She confirmed that she did not list these expenses/transfers in her bankruptcy schedules or statement of financial affairs.  *Id*

Finally, Victoria testified that she chose not to disclose certain of her expenses.  One of the expenses that Victoria did not disclose was an expense of $255.00 per month for her granddaughter's school tuition.  *See the February 9, 2007 Transcript attached as Exhibit* "I" at p. 74-75.  When asked why she failed to mention this expense earlier in the examination in response to a question regarding her monthly expenses, Victoria stated "I thought it is not necessary."  *Id.*

### 5.    The Second Set of Amended Schedules

The discrepancies between the information listed in Victoria's bankruptcy schedules and the information elicited from her during her Rule 2004 examination highlight the difficulty that the Bankruptcy Court and the other parties in this action had in determining the amounts and validity of Victoria's debts.  Though these discrepancies were difficult to resolve on their own,[10] the problem was compounded when Victoria amended her bankruptcy schedules again on May 8, 2007 - the same day as the evidentiary hearing set by the Bankruptcy Court to consider Greenville Hospital's Motion to Dismiss - and changed the amounts listed for her debts.

Although Greenville Hospital had filed its Motion to Dismiss Victoria's case for abuse on April 20, 2007, Victoria waited until just a few hours before the evidentiary hearing to file her second set of amended bankruptcy schedules.  A true and correct copy of Victoria's second set of amended schedules

---

[10] In its Motion to Dismiss, Greenville Hospital had carefully charted out the total amount of Victoria's consumer debts versus her business debts - taking into account the discrepancies between her schedules and her testimony - to show that Victoria was subject to dismissal for abuse under the Means Test in Section 707(b) of the Bankruptcy Code.  A true and correct of this chart, which has been titled "Motion to Dismiss Chart Showing Breakdown of Debts" for reference, is attached as Exhibit "L."

is attached as Exhibit "M." She amended Schedule D to decrease her mortgage debt (a consumer debt) to Brantley Bank & Trust from $290,000.00 to $285,170.31 and to increase her debt to Camden National (a business debt) from $19,000.00 to $19,029.83; Schedule E to increase her tax debt (a business debt) from $60,877.74 to $109,170.44; and Schedule F to decrease the amount of her debt to Genezen Healthcare (a business debt) from $18,000.00 to $17,282.19, to increase the amount of her debt to Greenville Hospital (a business debt) from $162,700.00 to $165,140.00, and to increase the amount of her debt to MNNA America (a business debt) from $1.00 to $70,912.00.

The major import of Victoria's second set of amended bankruptcy schedules was the addition of a $109,425.20 debt based on a claim that Victoria alleged was going to be filed by the Internal Revenue Service (the "IRS Claim"). Victoria argued at the May 8, 2007 evidentiary hearing that the addition of the IRS Claim to her bankruptcy schedules meant that she was not subject to the Means Test in Section 707(b) of the Bankruptcy Code.

At first blush, her argument appeared to be a good one. The large IRS Claim seemed to tip the scales toward a finding that Victoria's debts were primarily business rather than consumer debts. However, a closer examination revealed that the IRS Claim was not an accurate representation of Victoria's tax debts because many of the debts that made up the IRS Claim were debts owed by Victoria's weight loss company, Bariatric Associates, instead of Victoria herself. Other debts listed in the IRS Claim were for unassessed taxes due to Victoria's failure to file tax returns.

Greenville Hospital took issue with the accuracy of the IRS Claim in its Reply filed with the Bankruptcy Court on May 9, 2007. Greenville Hospital correctly pointed out that due to the discrepancies in the IRS Claim, Victoria still had consumer debts that were larger than her business debts. As it had done in its Motion to Dismiss, Greenville Hospital again carefully charted out the total amount of Victoria's consumer debts versus her business debts to show that even after the addition of the IRS Claim, Victoria was still subject to dismissal for abuse under the Means Test in Section 707(b) of the

-15-

Bankruptcy Code. A true and correct copy of this chart, which has been titled "Reply Chart Showing Breakdown of Debts" for reference, is attached as Exhibit "N."

No other pleadings were filed after Greenville Hospital filed its Reply on May 9, 2007. The Bankruptcy Court considered the evidence presented at the May 8, 2007, along with Victoria's Response and Supplemental Response to the Motion to Dismiss as well as Greenville Hospital's Reply, and set a hearing for June 26, 2007 to read its decision into the record. On June 26, 2007, the Bankruptcy Court adopted the Reply filed by Greenville Hospital as its findings of fact. *See the June 26, 2007 Transcript attached as Exhibit "E"* at p. 4. And based upon these findings of fact, the Bankruptcy Court dismissed Victoria's case for abuse pursuant to Section 707(b) of the Bankruptcy Code.

### III
### SUMMARY OF ARGUMENT

Victoria's only issue on appeal is whether the Bankruptcy Court abused its discretion in finding that she had primarily consumer debts and was therefore subject to dismissal for abuse pursuant to Section 707(b) of the Bankruptcy Code. Victoria does not tailor her argument to the correct standard of review because the Bankruptcy Court's dismissal of her chapter 7 case was based on its findings of fact (reviewed for clear error) rather than on an equitable determination (reviewed for abuse of discretion).

Victoria's case was dismissed for abuse pursuant to Section 707(b). The application of that section to Victoria's case was a very mechanical one. Simply put, after the Bankruptcy Court found that Victoria had primarily consumer debts, she was subject to dismissal if her disposable income was greater than $166.66 per month.[11] On her bankruptcy schedules, Victoria listed monthly disposable income of $1,890.00 per month; therefore, her bankruptcy case was subject to dismissal. No equitable determination was involved other than the Bankruptcy Court's finding that Victoria's lack of cooperation

---

[11] Abuse is presumed under Section 707(b)(2)(A)(i) of the Bankruptcy Code if a debtor's monthly disposable income, multiplied by 60, is not less than $10,000. This calculation translates ($10,000.00 divided by 60 = $166.66) to a presumption of abuse if the debtor has disposable income greater than $166.66 per month.

and honesty with the Bankruptcy Court and the other parties was a factor in its decision to dismiss her case.

Victoria now complains that the Bankruptcy Court dismissed her case because it "arbitrarily and without basis" got its math wrong when adding up her consumer versus business debts. *See Appellant's Brief* at p. 7. This is not the case though. The Bankruptcy Court held a lengthy evidentiary hearing for the parties to present their arguments regarding the nature of Victoria's debts and it received several rounds of briefing. And based upon Victoria's own bankruptcy schedules and testimony, the Bankruptcy Court found that Victoria was subject to the Means Test and that she failed the Means Test.

## IV.
## APPLICABLE STANDARD OF APPELLATE REVIEW

In an appeal of a bankruptcy court decision, the district court sits as an appellate court. In that capacity, the district court cannot make independent factual findings, and must affirm the bankruptcy court's findings of fact unless they are clearly erroneous. *Alabama Dept. of Human Resources v. Lewis*, 279 B.R. 308, 313-14 (S.D. Ala. 2002) (citing *In re Club Associates*, 956 F.2d 1065, 1069 (11th Cir. 1992)); *see also In re Spiwak*, 285 B.R. 744, 747 (S.D. Fla. 2002) ("A district court reviewing a bankruptcy appeal is not authorized to make independent factual findings; that is the function of the bankruptcy court."); Fed. R. Bankr. P. 8013 (on appeal, bankruptcy court's findings of fact "shall not be set aside unless clearly erroneous"). A finding of fact is clearly erroneous when, even if there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *In re Hatem*, 273 B.R. 900, 903 (S.D. Ala. 2001); *see also Parts & Elec. Motors Inc. v. Sterling Elec. Inc.*, 866 F.2d 228 (7th Cir. 1989) ("To be clearly erroneous, a decision must strike [us] as more than just maybe or probably wrong; it must ... strike [us] as wrong with the force of a five week-old unrefrigerated dead fish").

By contrast, a bankruptcy court's conclusions of law are subject to *de novo* review by a district court. *In re Brown*, 303 F.3d 1261, 1265 (11th Cir. 2002); *Club*, 956 F.2d at 1069; *In re Calvert*, 907 F.2d 1069, 1070 (11th Cir. 1990). Finally, a bankruptcy court's equitable determinations are reviewed for

-17-

abuse of discretion. *Spiwak*, 285 B.R. at 748 (citing *In re Red Carpet Corp. of Panama City Beach,* 902 F.2d 883 (11th Cir.1990)).

In this case, the Bankruptcy Court dismissed Victoria's chapter 7 bankruptcy case for abuse because she had primarily consumer debts and enough disposable income that her filing was presumed to be abusive. The dismissal was based almost exclusively upon the Bankruptcy Court's findings of fact; therefore, this Court should review the Bankruptcy Court's decision under the "clearly erroneous" standard.

## V.
## ARGUMENT

### A.    The Bankruptcy Court Did Not Commit Clear Error in Granting the Motion to Dismiss Filed by Greenville Hospital

The United States Supreme Court began its recent decision in *Marramma v. Citizens Bank of Massachusetts* with these words: "The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'" *See Marramma*, 127 S.Ct. 1105, 1107 (2007). The Bankruptcy Court found that the debtor in this case, Victoria, was neither honest nor unfortunate. In dismissing Victoria's chapter 7 bankruptcy case, the Bankruptcy Court took the time to specifically note Victoria's lack of cooperation and honesty. It stated that "[w]hen a debtor files bankruptcy, it is incumbent on him or her to be forthright and forthcoming with the court, with creditors, with the parties-in-interest. And I have noticed that we have had multiple amendments to the schedules. I have gotten a real sense that the debtor is playing hide-the-ball and being uncooperative, and that's certainly a factor in my view." *See the June 26, 2007 Transcript attached as Exhibit "E"* at p. 3.

This finding by the Bankruptcy Court is important because it should give this Court a good framework regarding the information that the Bankruptcy Court and the other parties had to work with when determining if Victoria's case was subject to dismissal for abuse pursuant to Section 707(b) of the Bankruptcy Code. Victoria's bankruptcy schedules were not reliable. They were amended on numerous times and yet still failed to accurately disclose all of her assets and liabilities.

-18-

Greenville Hospital took all the information it had to work with and formed what the Bankruptcy Court found to be the most accurate representation of the amount of Victoria's consumer debts and the amount of her business debts. When these debts were reconciled, it was determined that Victoria had more consumer debts than business debts; therefore, she was subject to the means test.

### 1.     Victoria Was Subject to the Means Test

The Means Test is contained in Section 707(b) of the Bankruptcy Code. In essence, it provides that a debtor's chapter 7 bankruptcy case is subject to dismissal for abuse if the debtor has primarily consumer debts and monthly disposable income over $166.66 per month. *See* 11 U.S.C. § 707(b). The Bankruptcy Code does not define the term "primarily" but most courts have sensibly found it to mean more than half. *See In re. Stewart*, 175 F.3d 796, 808 (10th Cir. 1999) and *In re. Kelly*, 841 F.2d 908 (9th Cir. 1988) (both finding that the term "primarily" in Section 108(8) of the Bankruptcy Code means more than ½ of the debtor's scheduled debt). Greenville Hospital agrees with this definition and so does Victoria. *See Appellant's Brief* at p. 8.

In this case, the Bankruptcy Court found that Victoria's consumer debts were greater than her business debts; therefore, she was subject to the Means Test. Victoria now takes issue with this finding in her appeal. Greenville Hospital will track Victoria's contentions for each of the debts discussed in her appellate brief and try to reconcile Victoria's contentions with the Bankruptcy Court's findings.

In Paragraph 1 of Victoria's brief, she states that the Bankruptcy Court incorrectly determined the amount of the debt on her mortgage to be $290,000.00 instead of $285,170.31. Victoria supports this contention by stating that the $285,170.31 amount is correct because that is the amount listed in a reaffirmation agreement that Victoria executed with her mortgage creditor. She fails to mention, however, that the reaffirmation agreement was executed over a month after she filed bankruptcy and the reduction from the scheduled amount of $290,000.00 to the reaffirmed amount of $285,170.31 was likely due to a postpetition mortgage payment made by Victoria.

-19-

Greenville Hospital made this argument at the May 8, 2007 evidentiary on its Motion to Dismiss and the Bankruptcy Court apparently agreed with Greenville Hospital.  The amount of Victoria's mortgage debt on the date that she filed bankruptcy is the relevant one, not the amount of the reaffirmed mortgage debt.[12]  This makes sense because if the amount of Victoria's reaffirmed mortgage debt was the proper inquiry, Victoria and her physician husband could certainly have paid down a large portion of the mortgage debt postpetition to reduce her consumer debt and thereby manipulate the Means Test calculation.  This is not what Congress intended when it amended the Bankruptcy Code and added the Means Test.

Accordingly, this Court should find that the Bankruptcy Court's finding that the proper amount of Victoria's mortgage debt for purposes of the Means Test calculation was $290,000.00 - the amount scheduled by Victoria herself - was not clearly erroneous.

In Paragraph 2 of Victoria's brief, she states that the amount of her judgment debt to Greenville Hospital was $165,140.00.  Greenville Hospital does not dispute this contention.

In Paragraph 3 of Victoria's brief, she states that the Bankruptcy Court incorrectly determined the amount of her tax debt to the IRS to be $70,457.84 instead of $109,425.20.[13]  This is despite the fact that Victoria's own bankruptcy schedules listed her total tax debt as $60,877.74 from the date that Victoria filed bankruptcy on September 25, 2006 until a few hours before the evidentiary hearing on May 8, 2007 when the number was changed to $109,425.20.

Greenville Hospital reviewed the IRS Claim alleged by Victoria to increase her tax liabilities from $60,877.74 to $109,425.20 and determined that a portion of the tax debts were owed by Victoria's

---

[12] *See In re. Pier*, 310 B.R. 347, 355 (Bank. N.D. Ohio 2004) (finding that bankruptcy courts should consider a debtor's financial condition as of the petition date when deciding whether or not to dismiss a debtor's case under Section 707(b)).

[13] Greenville Hospital does not dispute that Victoria's tax debt, whatever it may be, is classified as a business debt.

corporation, Bariatric Associates, rather than by Victoria herself. Another portion of the tax debts were for  unassessed taxes due to Victoria's failure to file tax returns. Due to these discrepancies in the IRS Claim on which Victoria based the increased amount of her tax debt, Greenville Hospital argued in its Reply filed on May 9, 2007 that the amount of Victoria's tax debt should be reduced to $70,457.84. *See Reply of Greenville Hospital attached as Exhibit "D."*

Victoria never presented any evidence or filed any pleading to rebut the assertions of Greenville Hospital in its Reply. Instead, Victoria now puts forth an argument for the first time that she is liable for the tax debts of her corporation, Bariatric Associates. *See Appellants's Brief* at p. 10-12. This argument is self-serving and is just another example of Victoria's lack of cooperation and honesty with the Bankruptcy Court and the other parties. At no point during her bankruptcy did Victoria ever take the position that she was liable for such a large tax debt until the very day of the evidentiary hearing when her case was subject to dismissal. Only then did Victoria change the amount of her tax debts in an effort to increase the total amount of her business debts and thereby defeat the Motion to Dismiss.

The Bankruptcy Court took Victoria's conduct into consideration when it determined that Greenville Hospital's calculation of Victoria's tax debts ($70,457.84) was correct and more believable than the amount claimed by Victoria. This Court should find that the Bankruptcy Court's findings of fact regarding the amount of Victoria's tax debts were not clearly erroneous.

In Paragraph 4 of Victoria's brief, she states that Greenville Hospital did not dispute her $2,545.00 debt to Camden National Bank, her $680.00 debt to Camden National Bank, her $558.00 debt to Century Tel, her $17,282.19 debt to Genezen HealthCare and her $5,483.00 debt to Whitney Bank. Victoria further states that Greenville Hospital did not dispute the nature of these debts as being business debts rather than consumer debts. Victoria is correct in this instance. Greenville Hospital did not dispute then and does not dispute now the nature or amount of these debts.

-21-

In Paragraph 5 of Victoria's brief, she states that the Bankruptcy Court incorrectly determined the amount of her debt to MBNA based upon credit card charges made by Victoria's husband.  Just as she did before the Bankruptcy Court, Victoria argues that she is personally liable for charges made by her husband on his credit card because Victoria's husband used the credit card to pay her tax debts.  *See Appellant's Brief* at p.12-13.

What is presented to this Court is still just argument though - not evidence - that Victoria is liable for this debt.  At no time did Victoria ever present any actual evidence to the Bankruptcy Court to show that this money was used to pay for her tax debts.  And for this reason, Greenville Hospital argued in its Reply filed on May 9, 2007 that this debt should be excluded from any calculation to determine if Victoria had primarily consumer or business debts.  *See Reply of Greenville Hospital attached as Exhibit "D."*  The Bankruptcy Court agreed with Greenville Hospital and adopted the factual allegations in Greenville Hospital's Reply as the Bankruptcy Court's findings of fact.  *See the June 26, 2007 Transcript attached as Exhibit "E"* at p. 4.  This Court should find that the Bankruptcy Court's findings of fact regarding Victoria's lack of liability on this debt were not clearly erroneous.

In Paragraph 6 of Victoria's brief, she states that the Bankruptcy Court incorrectly determined that she did not owe any debt to Greenville Hospital on a lease that Victoria had with Greenville Hospital.  Victoria now claims that at the time she filed bankruptcy, she owed $19,687.50 on the lease.  She takes issue with the representation made by Greenville Hospital to the Bankruptcy Court that Greenville Hospital did not have any claim against Victoria on the lease because the lease was rejected by operation of law and the premises were re-let by Greenville Hospital.

Victoria's assertions are belied by her own bankruptcy schedules though.  A brief review of Victoria's original bankruptcy schedules, first set of amended bankruptcy schedules and second set of amended bankruptcy schedules reveals that like Greenville Hospital, Victoria took the position that she did not owe any debt to Greenville Hospital on the lease.  Moreover, even if Victoria did have any

liability to Greenville Hospital under the lease after she filed bankruptcy, Greenville Hospital's damages would be capped by Section 502(b)(6) of the Bankruptcy Code at 12 months of rent ($937.50/month x 12 months = $11,250.00) rather than the $19,687.50 amount claimed by Victoria.

The Bankruptcy Court adopted the factual allegations of Greenville Hospital's Reply in determining that Victoria had primarily consumer debt.  *See the June 26, 2007 Transcript attached as Exhibit "E"* at p. 4.  These findings included a calculation of the total amount of Victoria's business debts that did not include any amount owing by Victoria to Greenville Hospital on the lease.  *See Reply of Greenville Hospital attached as Exhibit "D."*  However, even if Victoria is correct that she was liable to Greenville Hospital for damages on the lease, those damages would be capped at $11,250.00 rather than the $19,687.50 claimed by Victoria.

When these damages are added to the amount of total business debt as calculated in the Reply (and adopted by the Bankruptcy Court), Victoria's business debts are increased from $262,147.03 to $273,397.03.  The new amount of Victoria's business debts is still less than the amount of Victoria's consumer debts - $290,000.00 - therefore, Victoria remains subject to dismissal under the Means Test.  For these reasons, Greenville Hospital requests that this Court find that the Bankruptcy Court's findings of fact regarding Victoria's liability to Greenville Hospital on the lease were not clearly erroneous.

In Paragraph 7 of Victoria's brief, she states that the Bankruptcy Court incorrectly determined the amount of her liability to Camden National Bank for a debt that she testified was owed by her corporation, Bariatric Associates, rather than by Victoria personally.  Greenville Hospital argued in its Reply filed with the Bankruptcy Court that this debt should not be included in the calculation to determine the amount of Victoria's consumer debts and her business debts.  *See Reply of Greenville Hospital attached as Exhibit "D."*  The basis for this position was that Victoria herself had testified at her Rule 2004 examination that she did not owe the debt.  *See the February 9, 2007 Transcript attached as Exhibit* "I" at p. 39.

While in her brief, Victoria points to a reaffirmation agreement she executed and filed with the Bankruptcy Court as proof that she did owe the debt personally, the reaffirmation agreement she is referring to only states that she agrees to pay a debt owing to Camden National Bank.  *See Exhibit 3 attached to Appellant's Designation of Contents for Inclusion in Record on Appeal and Statement of Issues on Appeal*.  The reaffirmation agreement does not have attached to it a copy of the original agreement showing that Victoria was liable on that debt.  And though Greenville Hospital will admit that it would be unusual for a debtor to reaffirm a debt owed by a third party, Greenville Hospital cannot speak for Victoria and therefore relied on her testimony regarding her obligations - or lack thereof - on this debt.[14]

The Bankruptcy Court considered the allegations by Victoria and by Greenville Hospital regarding this debt.  It found that the calculation by Greenville Hospital was more accurate and reliable and therefore, adopted the facts set out in Greenville Hospital's Reply as the Bankruptcy Court's findings of fact.  *See the June 26, 2007 Transcript attached as Exhibit "E"* at p. 4.  This Court should find that the Bankruptcy Court's findings of fact regarding Victoria's debt to Camden National Bank were not clearly erroneous.

Despite Victoria's assertions in her brief to this Court that the Bankruptcy Court "arbitrarily and without basis" found that she had primarily consumer debts, *see Appellant's Brief* at p. 7., the evidence presented to the Bankruptcy Court at the time that it made its decision indicated that Victoria had more consumer debts than business debts.  Victoria now complains that the Bankruptcy Court should have

---

[14] After the Bankruptcy Court dismissed Victoria's bankruptcy case, Camden National Bank filed a proof of claim in Victoria's case for this debt in the amount of $12,997.66 (substantially less than the $19,029.83 amount asserted by Victoria).  Attached to that proof of claim are copies of the original note and security agreement.  These documents show that Victoria was personally liable for a debt to Camden National Bank in the amount of $12,997.66 on the date that she filed bankruptcy.  These documents were not made available to Greenville Hospital or the Bankruptcy Court though.  And even if the $12,997.66 debt was added to Victoria's other business debts, her total business debts would be $275,144.69 ($262,147.03 + $12,997.66 = $275,144.69).  That amount is still less than the amount of Victoria's $290,000.00 consumer debts.

considered other debts or determined that her debts were in different amounts than the ones settled on by the Bankruptcy Court. The problem with this assertion is that Victoria's debts were a moving target.

The Bankruptcy Court recognized this conduct and did not approve of it. It stated in its oral ruling dismissing Victoria's case that "[w]hen a debtor files bankruptcy, it is incumbent on him or her to be forthright and forthcoming with the court, with creditors, with the parties-in-interest. <u>And I have noticed that we have had multiple amendments to the schedules. I have gotten a real sense that the debtor is playing hide-the-ball and being uncooperative, and that's certainly a factor in my view</u>." *See the June 26, 2007 Transcript attached as Exhibit "E"* at p. 3 (emphasis added).

Greenville Hospital requests that this Court look through the same lens that the Bankruptcy Court did when reviewing this case. The picture was not perfectly clear because Victoria had muddied it up through the numerous amendments to her bankruptcy schedules and her lack of cooperation and honesty with the Bankruptcy Court. The Bankruptcy Court took the information it was given and determined that the most accurate and believable representation of the amount of Victoria's debts showed that her debts were primarily consumer in nature. The Bankruptcy Court's findings were neither arbitrary nor without basis as suggested by Victoria. Therefore, this Court should find that the Bankruptcy Court's findings were not clearly erroneous.

### 2.    Victoria Failed the Means Test

Once the Bankruptcy Court determined that Victoria had primarily business debts and was therefore subject to the Means Test, there was no question that her case would be dismissed for abuse. The Means Test in Section 707(b) of the Bankruptcy Code presumes that a consumer debtor's chapter 7 filing is abusive if the debtor has monthly disposable income over $166.66 per month. *See* 11 U.S.C. § 707(b).

Victoria is a wealthy physician with a large amount of disposable income. The Bankruptcy Court noted her large amount of income and described her case as "a poster-child case for substantial abuse" in its Dismissal Order. *See the June 26, 2007 Transcript attached as Exhibit "E"* at p. 3.

-25-

Victoria has never argued - nor could she - that her case was not subject to dismissal for abuse upon a finding that she was subject to the Means Test.  Her only contention is that her debts were not primarily consumer in nature and therefore, the Means Test did not apply.  However, as found by the Bankruptcy Court, Victoria's consumer debts were greater than her business debts and therefore, she was subject to the Means Test.

This Court should find that the Bankruptcy Court's decision to dismiss Victoria's case for abuse pursuant to Section 707(b) was not clearly erroneous.  There is no reason to review *de novo* the Bankruptcy Court's legal conclusion that Victoria's case was due to be dismissed for substantial abuse under Section 707(b) because that conclusion was a mechanical one based on the Bankruptcy Court's factual findings.

## VI.
## CONCLUSION

Based upon the foregoing, the Appellee, Greenville Hospital Corporation, d/b/a LV Stabler Memorial Hospital, submits that the Bankruptcy Court's Order Dismissing the chapter 7 bankruptcy case filed by the Appellant, Deloris V. Victoria, should be affirmed.

Respectfully submitted,


/s/ Bradley R. Hightower
Bradley R. Hightower
Attorney for Greenville Memorial Hospital

**OF COUNSEL:**
CHRISTIAN & SMALL LLP
505 North 20th Street, Suite 1800
Birmingham, Alabama 35203
Phone: (205) 795-6588
Fax: (205) 328-7234

**CERTIFICATE OF SERVICE**

Unless otherwise served by the ECF system, I certify that I have served a copy of the above and foregoing Reply Brief on the following by placing a copy in the United States Mail, properly addressed, first-class postage pre-paid on this the 19th day of September, 2007:

Deloris V. Victoria
225 Woodland Heights Dr.
Greenville, Alabama 36037

Richard D. Shinbaum
C. Brandon Sellers, III
Shinbaum, Abell, McLeod & Vann
P.O. Box 201
Montgomery, Alabama 36101

U.S. Bankruptcy Adminstrator
Attn: Tina Hayes
One Church Street
Montgomery, Alabama 36104

Chapter 7 Trustee, Daniel G. Hamm
560 South McDonough Street, STE A
Montgomery, Alabama 36104

/s/ Bradley R. Hightower
OF COUNSEL

-27-

**EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Deloris V. Victoria, | ) | Case No. 06-31225-WRS-7 |
| | ) | |
| Debtor. | ) | |

## MOTION TO DISMISS DEBTOR'S CASE FOR ABUSE

Greenville Hospital Corporation, d/b/a LV Stabler Memorial Hospital ("Greenville Hospital"), a creditor and party of interest in the chapter 7 bankruptcy case filed by Deloris V. Victoria (the "Debtor" or "Victoria"), requests that the Court dismiss the Debtor's case for abuse pursuant to Sections 707(a) and 707(b) of the Bankruptcy Code. In support of its motion, Greenville Hospital states as follows:

### Debtor's Petition, Schedules, Statement of Financial Affairs and Means Test

1.      On August 3, 2006, Greenville Hospital recovered a $162,257.74 judgment against the Debtor in the Circuit Court of Butler County, Alabama. Shortly thereafter, on September 25, 2006, the Debtor filed a chapter 7 bankruptcy case in this Court.

2.      In Schedule A, the Debtor listed her interest in a home located in Greenville, Alabama with a tax assessed value of $373,800.00 as well as her interest in a piece of real property referred to as the Isle of Valley in Orlando, Florida with a value of $4,000.00.

3.      In Schedule B, the Debtor listed various personal property including $7,000.00 in household goods and $5,000.00 in jewelry. Schedule B does not contain any breakdown of the value assigned to individual items of the Debtor's personal property nor does it even breakdown the value of the Debtor's personal property according to what part of the home it is located in (i.e. living room furniture, dining room table, etc.)

4.      In Schedule D, the Debtor listed total secured debts in the amount of $309,000.00. The Debtor's secured debts are composed of a $290,000 debt to Brantley Bank & Trust that is secured by a

mortgage on her home and a $19,000.00 debt to Camden National that is secured against various office equipment.

5.    In Schedule E, the Debtor listed total tax debts in the amount of $60,877.74. The Debtor's tax debts are composed of year 2003 federal income taxes of $5,600.27, year 2003 state income taxes of $1,547.62, year 2004 federal income taxes of $23,892.40, year 2005 federal income taxes of $9,147.63, years 2004 and 2005 estimated state income taxes of $3,000.00 and taxes owed by Bariatric Medicine (a corporation owned by the Debtor) of $17,689.82.

6.    In Schedule F, the Debtor listed total unsecured debts in the amount of $273,308.00. The Debtor's unsecured debts are composed of a $2,545.00 line of credit to Camden National, a $1.00 disputed debt to Camden National, a $680.00 loan to Camden National, a $558.00 collection account with CenturyTel, a $18,000 debt in a pending suit by Genezen Healthcare, a $168,000.00 judgment in favor of Greenville Hospital, a $9,663.00 credit card debt to MBNA America, a $3,378.00 credit card debt to MBNA America, a $65,000.00 credit card debt to MBNA America and a $5,483.00 line to credit to Whitney Bank.

7.    In Schedule G, the Debtor listed no executory contracts or unexpired leases even though the Debtor had previously entered into a Medical Office Space Lease (the "Lease") with Greenville Hospital.

8.    In Schedule I, the Debtor listed her occupation as a physician. The Debtor's husband is also listed as a physician. The Debtor stated that she has gross monthly income of $15,000.00 per month and her husband has gross monthly income of $20,000.00 per month.

9.    In Schedule J, the Debtor listed various monthly expenses, including a $4,000.00 mortgage on her home, a $300.00 telephone bill, a $700.00 transportation expense, $1,000.00 in charitable contributions, $1,200.00 for auto insurance and $3,500.00 for her husband's debts. After these expenses are subtracted from the Debtor's income, Victoria lists monthly disposable income of $1,890.00.

10.    In her Statement of Financial Affairs, the Debtor did not list any gifts made within 1 year of the petition date or any other transfers of property within 2 years of the petition date.

11.    Along with her Petition, Schedules and Statement of Financial Affairs, the Debtor filed a Form 22A Statement of Current Monthly Income and Means Test Calculation (the "Means Test Form"). On the Means Test Form, the Debtor summarily stated that her debts were primarily non-consumer and therefore, the Means Test found in Section 707(b) of the Bankruptcy Code did not apply to the Debtor. No breakdown or analysis of the Debtor's debts into categories of consumer debts and business debts was attached to the Means Test Form.

12.    On February 5, 2007, the Debtor filed an amended Schedule B, Schedule F and Schedule G. The Debtor amended Schedule B to add $35,000.00 in previously undisclosed accounts receivable; Schedule F to reduce the $168,000.00 judgment to Greenville Hospital down to $162,700.00 and to reduce the $65,000.00 credit card debt to MBNA America down to $1.00; and Schedule G to add the previously undisclosed Lease with Greenville Hospital. The Debtor did not file another Means Test Form with the Court nor did she file any breakdown or analysis of the Debtor's amended debts into categories of consumer debts and business debts.

### Debtor's Rule 2004 Examination

13.    Counsel for Greenville Hospital took the Debtor's 2004 examination on February 9, 2007. During this examination, the Debtor provided additional information regarding her family's assets as well as her family's income and expenses. In general, the Debtor's testimony showed that the information contained in her Petition, Schedules, Statement of Financial Affairs and Means Test was inaccurate and misleading. A true and correct copy of the deposition transcript is attached as Exhibit "A."

### Home

14.    The Debtor testified that her current home has 4 bedrooms and 3 bathrooms. *See Deposition Transcript* at p. 37. It has a total size of 3,100 square feet. *Id.* But other than the Debtor and

her husband, only the Debtor's 30 year old son and granddaughter reside in the home. *Id.* at p. 37-38.

Due to the small number of individuals residing in the home, the Debtor stated that she and her family

could comfortably live in another smaller and less expensive home. *Id.* at p. 38.

15.    The Debtor produced a copy of the note and mortgage on her home, which indicated that

the original amount of the debt secured by the mortgage was $431,062.70 and the original monthly

payments were $5,257.00 per month. *See Deposition Transcript* at p. 34-35. This indicates that the fair

market value of the Debtor's home is likely greater than its $373,800.00 tax assessed value.

16.    In addition, the Debtor's installment payments have now been reduced to $2,025.05 on a

semi-monthly basis and 176 payments are due before the note will be paid in full. The Debtor

acknowledged that at this rate of payment, her home will be completely paid for in approximately 7.5

years. *See Deposition Transcript* at p. 36-37.

*Townhouse*

17.    The Debtor also testified that her family has a townhouse in Atlanta, Georgia, although it

is owned by the Debtor's husband. *See Deposition Transcript* at p. 45-48. She stated that the townhouse

was purchased for her adult daughters to live in but that she did not know its approximate value. *Id.*

Victoria testified that her 2 adult daughters lived in the townhouse for a period of time but that no one

currently lives there. *Id.* Rather, the townhouse is only used on weekends when the Debtor and her

husband travel to Atlanta. *Id.*

18.    The Debtor later produced 2 invoices showing a debt secured by a first mortgage on the

townhouse in the amount of $215,000.00 and a debt secured by a second mortgage in the amount of

$39,911.56. True and correct copies of these invoices are attached collectively as Exhibit "B." The

invoices reflect a total combined monthly payment on the townhouse of $2,532.31. It was unclear what

portion of this monthly expense is paid by the Debtor and what portion is paid by her husband.

*Vehicles*

19.    The Debtor testified that she does not own any vehicle. *See Deposition Transcript* at p. 10-12. Instead, the Debtor stated that her husband owns all the family's vehicles, including the vehicles driven by the Debtor and the Debtor's 4 adult children. *Id.* Victoria produced copies of vehicle registrations confirming her husband's ownership of 2 recent model year Mercedes and a Porsche. Registrations for other vehicles, however, were not provided.

20.    Counsel for Greenville Hospital later obtained a copy of the Debtor's auto insurance policy, which indicates that the Debtor and her husband own a total of 7 vehicles, including 4 recent model year Mercedes, a Porsche, a Volkswagon and a Nissan. A true and correct copy of this auto insurance policy is attached as Exhibit "C." The policy indicates that the Debtor and her husband have a monthly expense for auto insurance of $1,021.90.

21.    The Debtor testified that her husband makes monthly payments for the Nissan that is driven by one of her adult sons and for a Mercedes that is drive by one of her adult daughters. *See Deposition Transcript* at p. 61-62. In addition, the Debtor stated that her husband pays the auto insurance for 3 of her adult children. *Id.* As with the townhouse, it was unclear what portion of these monthly expenses is paid by the Debtor and what portion is paid by the Debtor's husband.

*Personal Property*

22.    The Debtor testified that the value of all the personal property in her home (excluding jewelry) is $7,000.00 even though her home has a tax assessed value of $373,800.00 and the amount of the original debt on her home was $431,062.70. *See Deposition Transcript* at p. 42-43. She explained that she arrived at this figure after considering the value of the televisions, living room sets and dining room sets in the home. *Id.*

*Jewelry*

23.    The Debtor testified that the value of her jewelry is $5,000.00, which is the amount listed in her Schedules. *See Deposition Transcript* at p. 43. However, the Debtor further testified that she gave

away various pieces of jewelry to her adult daughters prior to filing bankruptcy. *Id.* Although Victoria had previously testified at her first meeting of creditors that the jewelry transferred to her daughters was worth $5,000.00, she now stated that it was worth about $3,000.00. Whatever the value may be, <u>the Debtor did not list these transfers in her Statement of Financial Affairs and she has still not disclosed the transfers as of the date of this motion.</u>

### *Income and Expenses*

24.     The Debtor testified that at the time she filed bankruptcy, she had gross earnings of $15,000.00 per month but that she did not pay any of the debts in her household. *See Deposition Transcript* at p. 62-63. Victoria then stated that she did pay some of the family's expenses but these only included the family's telephone bill, power bill and medical insurance. *Id.* at 63. Upon further inquiry regarding what debts she pays and what debts her husband pays, the Debtor finally stated "I don't know. I cannot tell you exactly how it works." *Id.* at 67.[1]

25.     The Debtor's subsequent testimony contradicted these statements. It also indicated that the Debtor was not very forthcoming regarding her knowledge of her family's finances. When the Debtor was shown copies of bank account statements that she produced, the Debtor testified that her husband gives her substantial amounts of money each month. *See Deposition Transcript* at p. 68-72. Some of this money is channeled into the Debtor's weight loss business; other amounts are used to pay expenses that the Debtor failed to disclose when questioned earlier in her examination. *Id.* at 74.

26.     Victoria testified that she transfers approximately $2,000.00 to $3,000.00 per month to her weight loss business (a corporation) because the business is not generating enough revenue to pay its expenses. *See Deposition Transcript* at p. 76-77. The Debtor confirmed that she did not list these expenses/transfers in Schedules or Statement of Financial Affairs. *Id.* at 77-79.

27.     The Debtor also testified that she chose not to disclose certain of her expenses. One of

---

[1] This method of subterfuge was employed by the Debtor at various points throughout her examination when she was pressed for specific information about her income and expenses.

the expenses that the Debtor failed to disclose is an expense of $255.00 per month for her granddaughter's school tuition. *See Deposition Transcript* at p. 74-75. When asked why she failed to mention this expense earlier, Victoria stated "I thought it is not necessary." *Id.*

*Consumer and Business Debts*

28.     The Debtor's Schedules do not indicate whether her debts are consumer (personal) debts or business debts; therefore, the Debtor was asked to identify the consumer debts and business debts in her amended Schedules. The Debtor provided the breakdown contained in the following table:

| Consumer Debts | Business Debts[3] |
|---|---|
| • $290,000.00 secured mortgage debt to Brantley Bank & Trust[2] | • $60,877.74 in priority tax debts<br>• $2,545.00 unsecured debt for line of credit to Camden National<br>• $1.00 unsecured disputed debt to Camden National<br>• $680.00 unsecured loan debt to Camden National<br>• $558.00 unsecured collection account debt with CenturyTel<br>• $18,000 unsecured debt in a pending suit by Genezen Healthcare<br>• $162,700.00 judgment to Greenville Hospital<br>• $1.00 unsecured credit card debt to MBNA America<br>• $5,483.00 unsecured line to credit debt to Whitney Bank |
| Total: $290,000.00 | Total: $250,845.74 |

---

[2] A mortgage on a debtor's home is a consumer debt as that term is defined in Section 101(8) of the Bankruptcy Code. *See In re Price*, 353 F.3d 1135 (9th Cir. 2004).

[3] The Debtor testified that she was not obligated for a $9,663.00 credit card debt to MBNA America and a $3,378.00 credit card debt to MBNA America listed in Schedule F. *See Deposition Transcript* at p. 51. She also testified that a $19,000.00 secured debt to Camden National was owed by her weight loss business (a corporation) rather than herself. *See Deposition Transcript* at p. 39. Even if these debts, which total $32,041.00, were included in the Debtor's business debts, they would only increase the Debtor's total business debts to $282,886.74. This amount is still below the amount of the Debtor's consumer debts, which total $290,000.00.

29.     As the table above indicates, the Debtor testified that she has total consumer debts of $290,000.00 and total business debts of $250,845.74, a difference of $39,154.26. Therefore, the Debtor's consumer debts are substantially greater than her business debts.

### Documents Produced by Debtor in Response to Motion to Compel

30.     The Debtor did not produce most of the documents requested by Greenville Hospital in the document requests attached to Greenville Hospital's Motion for Rule 2004 Examination. However, the Debtor subsequently produced most of the requested documents in response to Greenville Hospital's Motion to Compel Debtor to Produce Documents or Alternatively, to Dismiss Debtor's Case (the "Motion to Compel").[4] These documents include bank account records, credit card account statements, insurance statements and mortgage statements for the townhouse owned by the Debtor's husband.

31.     The August 31, 2006 bank account statement produced by the Debtor indicates that her husband made $26,471.70 in deposits and $31,123.27 in withdrawals from his personal bank account during that particular 1 month period. A true and correct copy of this statement is attached as Exhibit "D." The $26,471.70 in deposits is substantially higher than the $10,000.00 in net take home pay reported for the Debtor's husband on Schedule I. In fact, it is even greater than the combined net take home pay reported for the Debtor and her husband in Schedule I.

32.     There is no indication in the August 31, 2006 bank account statement that any of the funds were deposited by the Debtor. Furthermore, because the Debtor took the position in her examination that she could not produce a copy of her husband's bank account statement because she did not have any control over his bank accounts, the Debtor should be not be able to claim that any of the funds deposited into his account came from her. *See Deposition Transcript* at p. 23-25.

---

[4] Greenville Hospital will not set out the basis for its Motion to Compel again here. Instead, Greenville Hospital will simply state that the Debtor failed to produce almost any of the documents that it requested until the Debtor was under the threat of having her case dismissed. Greenville Hospital requests that the Court take the Debtor's actions into consideration when entering a decision on this motion.

33.    The September 29, 2006 bank account statement produced by the Debtor indicates that her husband made $24,811.41 in deposits and $24,217.53 in withdrawals from his personal bank account during that particular 1 month period.  A true and correct copy of this statement is attached as Exhibit "E."  Like the previous bank account statement, the $24,811.41 in deposits is substantially higher than the combined net take home pay reported for the Debtor and her husband in Schedule I.

34.    Copies of checks attached to the bank accounts statements produced by the Debtor show certain of her family's expenses that should be considered unreasonable for a chapter 7 debtor.  These include checks payable to Wynlakes Golf and County Club in the amounts of $166.31 and $195.46.  True and correct copies of these checks are attached collectively as Exhibit "F."

35.    Credit card statements produced by the Debtor for charges made during August and September 2006 show additional unreasonable expenses for rental cars at Enterprise Rent-A-Car ($609.87), for steaks and wine at Peppertree Steaks in Montgomery ($797.68), for liquor at an ABC store in Greenville, Alabama ($378.00), and for cash advances ($9,500.00).  True and correct copies of these credit card statements are attached collectively as Exhibit "G."  These expenses are unreasonable for a chapter 7 debtor and should be attributed at least in part to the Debtor because she testified in her examination that her husband makes all of her family's purchases.  *See Deposition Transcript* at p. 24-25.

### The Debtor's Case Should be Dismissed for Abuse Pursuant to Section 707(b)

36.    The Debtor's case should be dismissed for abuse pursuant to Section 707(b) because on the date that Victoria filed her bankruptcy case[5], the Debtor's consumer debts exceeded the Debtor's businesses debts.  And as a result, Victoria is classified as a debtor whose debts are primarily consumer debts, *See In re. Stewart*, 175 F.3d 796, 808 (10th Cir. 1999) and *In re. Kelly*, 841 F.2d 908 (9th Cir. 1988) (both finding that the term "primarily" in Section 108(8) of the Bankruptcy Code means more than ½ of the debtor's scheduled debt), and she is subject to the Means Test in Section 707(b).

---

[5] *See In re. Pier*, 310 B.R. 347, 355 (Bank. N.D. Ohio 2004) (finding that bankruptcy courts should consider the Debtor's financial condition as of the petition date when deciding whether or not to dismiss a debtor's case under Section 707(b)).

37.    The Means Test provides a brightline test that governs the dismissal and/or conversion of a chapter 7 case on the basis of abuse.  Although there are numerous factors to consider under Section 707(b), the general rule is that any debtor with primarily consumer debts and disposable income greater than $166.00 per month is presumed to be abusing chapter 7 and therefore, subject to dismissal and/or conversion.

38.    Greenville Hospital will not set out all the calculations available under Section 707(b) to show that the Debtor's filing constitutes a presumed abuse of chapter 7 because the Debtor's Schedules I and J alone show disposable income in the amount of $1,890.00 per month, which is well in excess of the $166.00 minimum specified in the Means Test.

39.    Accordingly, Greenville Hospital requests that the Debtor's chapter 7 case be dismissed for abuse pursuant to Section 707(b) of the Bankruptcy Code.[6]

## The Debtor's Case Should be Dismissed for Abuse Pursuant to Section 707(a)

40.    In the alternative that the Court finds that the Debtor is not subject to the Means Test in Section 707(b), the Debtor's chapter 7 case should dismissed for abuse pursuant to Section 707(a) of the Bankruptcy Code.

41.    Section 707(a) provides an additional means by which a debtor's chapter 7 case may be dismissed for abuse.  It gives 3 examples of "cause" that justify dismissal but these examples are non-exclusive.  A bankruptcy court may dismiss a case on other grounds when cause is found. *See In re. Simmons*, 200 F.3d 738, 743 (11th Cir. 2000); *In the Matter of Atlas Supply Corp.*, 857 F.2d 1061, 1063 (5th Cir. 1988).

42.    Specifically, courts have held that "cause" exists to dismiss a chapter 7 case filed by a debtor with primarily business debts when the debtor's case was not filed in good faith or constitutes an abuse of the bankruptcy process. *See In re. Stewart*, 215 B.R. 456, 463 (10th Cir. BAP 1997) (finding that bankruptcy courts have an established power "to dismiss a petition under any chapter of the

---

[6] Pursuant to Section 707(b)(1), Greenville Hospital has standing to seek this relief and request that the Debtor's case be dismissed for abuse.

Bankruptcy Code that is filed with a lack of good faith or as an abuse of the process under §§ 105(a) and 707(a) of the Code"); *In re O'Brien*, 328 B.R. 669, 674-75 (Bank. W.D.N.Y. 2005) (finding that a bad faith filing is cause for dismissal under Section 707(a) and citing to numerous other similar decisions).

43.     While Greenville Hospital acknowledges that there is a split on this issue sd other courts have held that dismissal based on bad faith or ability to pay is improper under Section 707(a), the recent decision of the United States Supreme Court in *Marrama v. Citizens Bank of Massachusetts*, 127 S.Ct. 1105 (2007) bolsters the argument that bankruptcy courts have the power to dismiss a chapter 7 case filed a business debtor.

44.     In *Marrama*, the debtor sought convert his chapter 7 case to a chapter 13 but only after it was discovered that the debtor's schedules were false and misleading. The chapter 7 trustee and one of the debtor's creditors objected to the conversion of his case on basis that the debtor's motion to convert was made in bad faith and would constitute an abuse of the bankruptcy process. The bankruptcy court denied the debtor's motion to convert and the court of appeals affirmed the bankruptcy court's decision.

45.     On appeal to the Supreme Court, the debtor argued that he had an absolute right to convert his case notwithstanding his false and misleading schedules. The Supreme Court rejected the debtor's argument, finding that the debtor's bad faith constituted cause to deny his motion to convert even though the conversion statute, Section 706, does not mention bad faith as a barrier to conversion.

46.     The Supreme Court began its decision by noting that "[t]he principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'" It then reasoned that the bankruptcy court had the power to deny the debtor's motion to convert because "nothing in the text of [the relevant statutes] limits the authority of the court to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor."

47.     Although the main thrust of Greenville Hospital's argument for dismissal of the Debtor's case is not based on her fraudulent conduct (the Debtor failed to disclose $5,000 worth of jewelry

transferred to her daughters pre-petition), the construction of Section 706(a) advocated by Greenville Hospital is similar to the statutory construction of the conversion statute adopted by the Supreme Court in *Marrama*.

48.    Like the conversion statute considered in *Marrama*, Section 706(a) does not specifically state that a bad faith filing or the debtor's ability to pay her creditors may constitute cause for dismissal. However, nothing in the text of Section 706(a) limits the authority of this Court to dismiss the Debtor's case based on a finding of that she filed her case in bad faith or that she has the ability to repay her creditors.

49.    As with the debtor in *Maramma*, the Debtor here is certainly "not a member of the class of 'honest but unfortunate debtor[s]' that the bankruptcy laws were enacted to protect." *See Marrama*. Rather, the Debtor and her husband are both doctors who make more money in a given month that many debtors make in an entire year. They live a lavish lifestyle, maintaining expensive homes in 2 cities and numerous luxury cars. The Debtor's Schedules and Statement of Financial Affairs are highly inaccurate, failing to properly list the income and expenses of the Debtor and her doctor husband. And the Debtor has still failed to disclose transfers of property to family members even after testifying on multiple occasions regarding the transfers.

50.    Moreover, the timing of the Debtor's bankruptcy filing - shortly after Greenville Hospital recovered its judgment against the Debtor - indicates that the Debtor specifically filed her chapter 7 case to avoid paying Greenville Hospital's judgment. While this sort of conduct is not itself particularly egregious, the Debtor had made it known to Greenville Hospital for some time that she would file bankruptcy if Greenville Hospital ever recovered a judgment against her.

51.    Finally, the Court should consider that because the Debtor's husband owns virtually all of her family's substantial assets, the Debtor likely expected that she could file chapter 7 to wipe out Greenville Hospital's judgment without paying any of her creditors or suffering any other repercussions. And if she receives a discharge, the Debtor will return to her opulent lifestyle, having contributed none of

her substantial monthly income to the repayment of her debts as she would be required to do under other chapters of the Bankruptcy Code.

52.     This Court should not condone the Debtor's chapter 7 filing in the face of her obvious ability to repay her debts and lack of good faith when filing her petition. Instead, the Debtor's chapter 7 case should be dismissed for abuse pursuant to Section 707(a) based upon a finding of bad faith, abuse of the bankruptcy process, ability to repay creditors, failure to file proper schedules, and failure to disclose pre-petition transfers of property. All of these things constitute "cause" under Section 707(a).

WHEREFORE, Greenville Hospital, d/b/a LV Stabler Memorial Hospital, requests that the Court dismiss the Debtor's case for abuse pursuant to Sections 707(a) and 707(b) of the Bankruptcy Code with a 180 day bar on refiling under any chapter of the Bankruptcy Code.

Respectfully submitted,


/s/ Bradley R. Hightower
Bradley R. Hightower
Attorney for Greenville Memorial Hospital

**OF COUNSEL:**
CHRISTIAN & SMALL LLP
505 North 20th Street, Suite 1800
Birmingham, Alabama 35203
Phone: (205) 795-6588
Fax: (205) 328-7234

## CERTIFICATE OF SERVICE

Unless otherwise served by the ECF system, I certify that I have served a copy of the above and foregoing Motion on the following by placing a copy in the United States Mail, properly addressed, first-class postage pre-paid on this the 20th day of April, 2007:

Deloris V. Victoria
225 Woodland Heights Dr.
Greenville, Alabama 36037

C. Brandon Sellers, III
Shinbaum, Abell, McLeod & Vann
P.O. Box 201
Montgomery, Alabama 36101

U.S. Bankruptcy Adminstrator
Attn: Tina Hayes
One Church Street
Montgomery, Alabama 36104

Chapter 7 Trustee, Daniel G. Hamm
560 South McDonough Street, STE A
Montgomery, Alabama 36104

**Parties on the attached mailing matrix**

/s/ Bradley R. Hightower
OF COUNSEL

Label Matrix for local noticing
1127-2
Case 06-31225
Middle District of Alabama
Montgomery
Mon Mar 26 08:47:19 CDT 2007

U.S. Bankruptcy Court
PO Box 1248
Montgomery, AL 36102

BANK OF AMERICA
PO BOX 41466
Philadelphia, PA 19101

BRANTLEY BANK & TRUST
P.O. BOX 25
BRANTLEY, AL 36009

Bankruptcy Administrator
U. S. Bankruptcy Administrator
One Church Street
Montgomery, AL 36104

CAMDEN NATIONAL
3 WATER STREET
Camden, AL 36726

CENTURYTEL
PO BOX 6001
Marion, LA 71260-6001

DAVID C. SCHWARTZ, ESQ.
PO BOX 11366
Birmingham, AL 35202-1366

EDGAR VICTORIA
225 WOODLAND HEIGHTS DR
Greenville, AL 36037

EDGAR VICTORIA
225 WOODLAND HEIGHTS DR
Greenville, AL 36037

GENEZEN HEALTHCARE
PO BOX 571811
Houston, TX 77257

GREENVILLE HOSPITAL
DBA LV STABLER MEMORIAL
29 STABLER DR
Greenville, AL 36037

GREER B. MALLETTE, ESQ
505 20TH ST N., STE 1800
Birmingham, AL 35203-2696

HON. PATRICIA CONOVER
ASSISTANT UNITED STATES ATTY.
P.O. BOX 197
MONTGOMERY, AL 36101

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 21126
PHILADELPHIA PA 19114-0326

MBNA AMERICA
PO BOX 17054
Wilmington, DE 19884

STATE OF ALABAMA
DEPARTMENT OF REVENUE
P.O. BOX 320001
MONTGOMERY, AL 36132

WHITNEY BANK
228 ST CHARLES AVE
New Orleans, LA 70130

C. Brandon Sellers III
Shinbaum, Abell, McLeod & Vann
PO Box 201
Montgomery, AL 36101

Daniel G. Hamm
The Law Offices of Daniel G. Hamm
560 South McDonough St., Ste A
Montgomery, AL 36104

Deloris V. Victoria
225 Woodland Heights Dr
Greenville, AL 36037

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

INTERNAL REVENUE SERVICE
P O BOX 21126
Philadelphia, PA 19114

(d)INTERNAL REVENUE SERVICE
SPECIAL PROCEDURES FUNCTION
801 TOM MARTIN DR., ROOM 126
BIRMINGHAM, AL 35211

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

**EXHIBIT B**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE THE MATTER OF:

Deloris V. Victoria                                    CASE NO. 06-31225-WRS

    Debtor,

---

### RESPONSE TO MOTION TO DISMISS

    Comes now the Debtor, by and through attorney, and in response to the motion to dismiss would state as follows:

### Title 11 U.S.C. Section 707(a)

    The Debtor would state that Title 11 U.S.C. Section 707(a) is inapplicable to this case as none of the elements of Title 11 U.S.C. Section 707(a) can be met.

§ 707.  Dismissal of a case or conversion to a case under chapter 11 or 13

(a) The court may dismiss a case under this chapter [11 USCS §§ 701 et seq.] only after notice and a hearing and only for cause, including--
   (1) unreasonable delay by the debtor that is prejudicial to creditors;
   (2) nonpayment of any fees [or] and charges required under chapter 123 of title 28; and
   (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521 [11 USCS § 521], but only on a motion by the United States trustee.

    This is a case filed by a debtor that is severely in debt to both the creditor and the Internal Revenue Service.  The Debtor has surrendered the bulk of her unencumbered assets to the Trustee in Bankruptcy and she has allowed the trustee total inspection of her assets.  The testimony of the Trustee, Daniel Hamm, will be that he has conducted an independent evaluation of the Debtor's assets and he has concluded that the Debtor's values as stated in the petition are fairly accurate and that he has a valid offer from the Debtor's husband to repurchase the assets

and he has received a partial payment of the agreed sum. The Creditor attacks the Debtor's good

faith in filing the petition and although the Debtor states that she has filed the case in good faith,

good faith is not a basis for denial of the right to file a Chapter 7 case. As held in In re RIS

Investment Group, Inc., 298 B.R. 848, 852(Bankr. S.D. Fla. 2003):

> Chapter 7 makes no mention of a good faith requirement. Further, the relationship
> between debtor and creditor in Chapter 11 and 13 is significantly different than
> their relationship in Chapter 7. Id. Chapter 11 and 13 debtors are allowed to
> continue in possession of their assets and alter their contractual relationships with
> their creditors. Id. Chapter 7, on the other hand, ends the debtor-creditor
> relationship when the debtor metaphorically "throws in the towel." So long as the
> debtor is willing to surrender all of its assets, regardless of whether debtor's
> motive was grounded in good faith, the debtor is entitled to Chapter 7 protection.
> Id. (citing Katie Therin Kimlinger and William P. Wassweiler, The Good Faith
> Fable of 11 U.S.C. § 707(a): How Bankruptcy Courts have Invented a Good Faith
> Filing Requirement for Chapter 7 Debtors, 13 Bankr. Dev. J. 61, 65 (1996).

And In re Farkas, 343 B.R. 336 (Bankr. S.D. Fla. 2006):

> After reviewing the three lines of cases, this Court concluded that if a debtor, by
> way of the filing of a chapter 7 proceeding, was willing to surrender his or her
> non-exempt assets, regardless of the motive for the filing, the debtor nonetheless
> would be entitled to Chapter 7 protection. In re  RIS Inv. Group, Inc., 298
> B.R.848, 852 (Bankr. S.D. Fla. 2003), citing In re Padilla, at 1193. The Court is
> aware that there are numerous cases that have since been published on this issue
> in almost every Circuit. It appears that the Circuits continue to be split on the
> issue of bad faith and whether it constitutes cause to dismiss a chapter 7
> bankruptcy. Compare U.S. v. Pedigo, 329 B.R. 47 (S.D.Ind. 2005) (holding that
> the list contained in 11.U.S.C. § 707(a) is not exhaustive such that bad faith may
> constitute "cause" for dismissal in a chapter 7 bankruptcy) and In re Linehan, 326
> B.R. 474 (Bankr.Mass. 2005) (finding that a debtor's bad faith generally does not
> constitute "cause" for dismissal of a chapter 7 case). This Court continues to find
> the reasoning set forth in RIS Inv. Group, Inc. to be sound:

### Title 11 U.S.C. Section 707(b)

For the purposes of this hearing the Debtor, will file the following documents, the preliminary

proof of claim from the Internal Revenue Service, which the Debtor has been advised will be

received today in the amount of $107,203.87, The tax notices and transcripts from the Internal

Revenue service showing the Debtor' previous schedules showing the debt to the Internal

Revenue Service in the amount of approximately $60,000.00, the Reaffirmation agreement from

Brantley Bank and Trust showing their debt at $19,029.83, the Reaffirmation agreement from

Brantley Bank showing the Home Mortgage to be $285,170.31, the lease from Greenville

Hospital showing the balance on the lease contract at $18,500.00, the Genizen lawsuit , which

when figured with interest to the date of bankruptcy would amount to $ 15,747.08, and the

docket sheet from the Greenville Hospital lawsuit, which when figured with judgment interest

for 48 day would amount to  165,267.53.  The Debtor will testify to the balance of the small

debts to

Camden National Bank and CenturyTel.  The Debtor will introduce the proof of claim of

Whitney Bank, which will show the Debt at $4,715.45.  The testimony will clearly establish that

the Business Debts of the Debtor exceed the Consumer Debts of the Debtor.  The testimony of

the Debtor will be clear that Title 11 U.S.C. 707(b) does not apply to this action.  Further the

testimony will clearly show that the Debtor is not eligible to be a debtor under Chapter 13.


   Title 11 U.S.C. Section 707 (b) states as follows (emphasis supplied):

(b) (1) After notice and a hearing, the court, on its own motion or on a motion by the United
States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss
a case filed by an individual debtor under this chapter *whose debts are primarily consumer
debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of
this title [11 USCS §§ 1101 et seq. or 1301 et seq.], if it finds that the granting of relief would
be an abuse of the provisions of this chapter [11 USCS §§ 701 et seq.].* In making a
determination whether to dismiss a case under this section, the court may not take into
consideration whether a debtor has made, or continues to make, charitable contributions (that
meet the definition of "charitable contribution" under section 548(d)(3) [11 USCS § 548(d)(3)])
to any qualified religious or charitable entity or organization (as that term is defined in section
548(d)(4) [11 USCS § 548(d)(4)]).
  (2) (A) (I) In considering under paragraph (1) whether the granting of relief would be an abuse
of the provisions of this chapter [11 USCS §§ 701 et seq.], the court shall presume abuse exists if
the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii),
and (iv), and multiplied by 60 is not less than the lesser of–

(I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $ 6,575, whichever is greater; or

(II) $ 10,950.

(ii) (I) The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. Such expenses shall include reasonably necessary health insurance, disability insurance, and health savings account expenses for the debtor, the spouse of the debtor, or the dependents of the debtor. Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts. In addition, the debtor's monthly expenses shall include the debtor's reasonably necessary expenses incurred to maintain the safety of the debtor and the family of the debtor from family violence as identified under section 309 [320] of the Family Violence Prevention and Services Act [42 USCS § 10421], or other applicable Federal law. The expenses included in the debtor's monthly expenses described in the preceding sentence shall be kept confidential by the court. In addition, if it is demonstrated that it is reasonable and necessary, the debtor's monthly expenses may also include an additional allowance for food and clothing of up to 5 percent of the food and clothing categories as specified by the National Standards issued by the Internal Revenue Service.

(II) In addition, the debtor's monthly expenses may include, if applicable, the continuation of actual expenses paid by the debtor that are reasonable and necessary for care and support of an elderly, chronically ill, or disabled household member or member of the debtor's immediate family (including parents, grandparents, siblings, children, and grandchildren of the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case who is not a dependent) and who is unable to pay for such reasonable and necessary expenses.

(III) In addition, for a debtor eligible for chapter 13 [11 USCS §§ 1301 et seq.], the debtor's monthly expenses may include the actual administrative expenses of administering a chapter 13 [11 USCS §§ 1301 et seq.] plan for the district in which the debtor resides, up to an amount of 10 percent of the projected plan payments, as determined under schedules issued by the Executive Office for United States Trustees.

(IV) In addition, the debtor's monthly expenses may include the actual expenses for each dependent child less than 18 years of age, not to exceed $ 1,650 per year per child, to attend a private or public elementary or secondary school if the debtor provides documentation of such expenses and a detailed explanation of why such expenses are reasonable and necessary, and why such expenses are not already accounted for in the National Standards, Local Standards, or Other Necessary Expenses referred to in subclause (I).

(V) In addition, the debtor's monthly expenses may include an allowance for housing and utilities, in excess of the allowance specified by the Local Standards for housing and utilities issued by the Internal Revenue Service, based on the actual expenses for home energy costs if the debtor provides documentation of such actual expenses and demonstrates that such actual expenses are reasonable and necessary.

(iii) The debtor's average monthly payments on account of secured debts shall be calculated as the sum of--

(I) the total of all amounts scheduled as contractually due to secured creditors in each

month of the 60 months following the date of the petition; and

(II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title [11 USCS §§ 1301 et seq.], to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;

divided by 60.

(iv) The debtor's expenses for payment of all priority claims (including priority child support and alimony claims) shall be calculated as the total amount of debts entitled to priority, divided by 60.

(B) (I) In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

(ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide--

(I) documentation for such expense or adjustment to income; and

(II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.

(iii) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.

(iv) The presumption of abuse may only be rebutted if the additional expenses or adjustments to income referred to in clause (I) cause the product of the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv) of subparagraph (A) when multiplied by 60 to be less than the lesser of--

(I) 25 percent of the debtor's nonpriority unsecured claims, or $ 6,000, whichever is greater; or

(II) $ 10,000.

© As part of the schedule of current income and expenditures required under section 521 [11 USCS § 521], the debtor shall include a statement of the debtor's current monthly income, and the calculations that determine whether a presumption arises under subparagraph (A)(I), that show how each such amount is calculated.

(D) Subparagraphs (A) through © shall not apply, and the court may not dismiss or convert a case based on any form of means testing, if the debtor is a disabled veteran (as defined in section 3741(1) of title 38 [38 USCS § 3741(1)]), and the indebtedness occurred primarily during a period during which he or she was--

(I) on active duty (as defined in section 101(d)(1) of title 10 [10 USCS § 101(d)(1)]); or

(ii) performing a homeland defense activity (as defined in section 901(1) of title 32 [32 USCS § 901(1)]).

(3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter [11 USCS §§ 701 et seq.] in a case in which the presumption in subparagraph (A)(I) of such paragraph does not arise or is rebutted, the court shall consider--

(A) whether the debtor filed the petition in bad faith; or

(B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

(4) (A) The court, on its own initiative or on the motion of a party in interest, in accordance with the procedures described in rule 9011 of the Federal Rules of Bankruptcy Procedure, may order the attorney for the debtor to reimburse the trustee for all reasonable costs in prosecuting a motion filed under section 707(b) [11 USCS § 707(b)], including reasonable attorneys' fees, if--

    (I) a trustee files a motion for dismissal or conversion under this subsection; and

    (ii) the court--

      (I) grants such motion; and

      (II) finds that the action of the attorney for the debtor in filing a case under this chapter [11 USCS §§ 701 et seq.] violated rule 9011 of the Federal Rules of Bankruptcy Procedure.

    (B) If the court finds that the attorney for the debtor violated rule 9011 of the Federal Rules of Bankruptcy Procedure, the court, on its own initiative or on the motion of a party in interest, in accordance with such procedures, may order--

      (I) the assessment of an appropriate civil penalty against the attorney for the debtor; and

      (ii) the payment of such civil penalty to the trustee, the United States trustee (or the bankruptcy administrator, if any).

    © The signature of an attorney on a petition, pleading, or written motion shall constitute a certification that the attorney has--

      (I) performed a reasonable investigation into the circumstances that gave rise to the petition, pleading, or written motion; and

      (ii) determined that the petition, pleading, or written motion--

        (I) is well grounded in fact; and

        (II) is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law and does not constitute an abuse under paragraph (1).

    (D) The signature of an attorney on the petition shall constitute a certification that the attorney has no knowledge after an inquiry that the information in the schedules filed with such petition is incorrect.

  (5) (A) Except as provided in subparagraph (B) and subject to paragraph (6), the court, on its own initiative or on the motion of a party in interest, in accordance with the procedures described in rule 9011 of the Federal Rules of Bankruptcy Procedure, may award a debtor all reasonable costs (including reasonable attorneys' fees) in contesting a motion filed by a party in interest (other than a trustee or United States trustee (or bankruptcy administrator, if any)) under this subsection if--

    (I) the court does not grant the motion; and

    (ii) the court finds that--

      (I) the position of the party that filed the motion violated rule 9011 of the Federal Rules of Bankruptcy Procedure; or

      (II) the attorney (if any) who filed the motion did not comply with the requirements of clauses (I) and (ii) of paragraph (4)©, and the motion was made solely for the purpose of coercing a debtor into waiving a right guaranteed to the debtor under this title.

    (B) A small business that has a claim of an aggregate amount less than $ 1,100 shall not be subject to subparagraph (A)(ii)(I).

    © For purposes of this paragraph--

      (I) the term "small business" means an unincorporated business, partnership, corporation, association, or organization that--

        (I) has fewer than 25 full-time employees as determined on the date on which the motion is filed; and

(II) is engaged in commercial or business activity; and

(ii) the number of employees of a wholly owned subsidiary of a corporation includes the employees of--

(I) a parent corporation; and

(II) any other subsidiary corporation of the parent corporation.

(6) Only the judge or United States trustee (or bankruptcy administrator, if any) may file a motion under section 707(b) [11 USCS § 707(b)], if the current monthly income of the debtor, or in a joint case, the debtor and the debtor's spouse, as of the date of the order for relief, when multiplied by 12, is equal to or less than--

(A) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

(B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or

© in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $ 575 per month for each individual in excess of 4.

(7) (A) No judge, United States trustee (or bankruptcy administrator, if any), trustee, or other party in interest may file a motion under paragraph (2) if the current monthly income of the debtor, including a veteran (as that term is defined in section 101 of title 38 [38 USCS § 101]), and the debtor's spouse combined, as of the date of the order for relief when multiplied by 12, is equal to or less than--

(I) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

(ii) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or

(iii) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $ 525 per month for each individual in excess of 4.

(B) In a case that is not a joint case, current monthly income of the debtor's spouse shall not be considered for purposes of subparagraph (A) if--

(I) (I) the debtor and the debtor's spouse are separated under applicable nonbankruptcy law; or

(II) the debtor and the debtor's spouse are living separate and apart, other than for the purpose of evading subparagraph (A); and

(ii) the debtor files a statement under penalty of perjury--

(I) specifying that the debtor meets the requirement of subclause (I) or (II) of clause (I); and

(II) disclosing the aggregate, or best estimate of the aggregate, amount of any cash or money payments received from the debtor's spouse attributed to the debtor's current monthly income.

The creditor in making its calculations is flawed on two points.  The testimony is

uncontradicted that the Debtor borrowed from MBNA the sum of approximately $65,000 to pay

past due income taxes on her husband's credit card, which although technically not the debt of

the Debtor, for direct liability of the income taxes, this does constitute a non-dischargeable debt

of the Debtor pursuant to Title 11 U.S.C. Section 523a)(14).  Although there is a question as to

whether or not this is a debt of the Debtor, for the purposes of this hearing the admission of this

Debt is unnecessary for the pertinent calculations.  For the purposes of including this debt, the

Debtor would call the attention fo this court to the case of American Express Centurion Bank v.

Gavin (In re Gavin), 248 B.R. 464 (Bankr. M.D. Fla. 1999):

> Defendant's argument in response to nondischargeability is that the debt is no
> longer owed to the Internal Revenue Service, but is now an unsecured debt owed
> to American Express. However, Section 523(a)(14) directly counters this
> argument. In MBNA America v. Chrusz (In re Chrusz), 196 B.R. 221, 224
> (Bankr. D. N.H. 1996) funds from a credit card check made to "Cash Deposit"
> were used to pay nondischargeable federal income taxes. The Chrusz Court found
> that the funds traceable to payment of nondischargeable Section 523(a)(1) debt
> were nondischargeable under Section 523(a)(14). Id. See also Arthur B.
> Federman, The Bankruptcy Reform Act of 1994, 51 J. Mo. B. 105, 106 (1995)
> description of this .debtors cannot borrow funds with credit card to pay taxes that
> would be nondischargeable). Defendant postulates various scenarios of
> converting nondischargeable debt to dischargeable debt. However, Section
> 523(a)(14) eliminates potential benefits of substituting nondischargeable tax debt
> under Section 523(a)(1) with dischargeable credit card debt.

The Debtor states that her debt structure is as follows:

Home Mortgage Per Reaffirmation Agreement          $285,170.31
(Debtor is joint Debtor on the Note and Mortgage)

Business Debt:
Greenville Hospital                                $ 165,267.53
Greenville Hospital Lease                          $  18,500.00
Camden National Bank Note                          $  19,029.83
Internal Revenue Service                           $ 109,425.20
Whitney Bank Line of Credit                        $   4,715.45
Genizen                                            $  15,747.08
Camden National Bank                               $   3,225.00
CenturyTel                                         $     558.00
TOTAL                                              $336,468.09

MBNA CLAIM FOR PAYMENTS ON TAXES
CHARGED ON HUSBANDS CREDIT CARD                    $ 65.000.00

In support of the proposition that Title 11 U.S.C. Section 707(b) does not apply to this case the Debtor would cite the Court to <u>Beacher v. Pena (In re Beacher)</u>, 358 B.R. 917, (Bankr. S.D. Tex. 2007):

> If the debtor's debts are not primarily consumer debts, § 707(b)(2) does not apply and one never gets to § 707(b)(2)©. Therefore, the statute does not require the filing of Form B22A unless the debtor's debts are primarily consumer debts.
>
> Although the statute defines "consumer debt," it does not define "primarily." In this case, the U.S. Trustee argues that."primarily consumer debt" means that more than 50% of the amount of debt is consumer debt, without regard to whether more than 50% of the number of debts is consumer debt. Counsel for Debtors agreed and the Court so holds.
>
> However, if the debtor's debts are primarily consumer debts, then the information in Form B22A must be filed as part of the information regarding income and expenditures, in effect the statute "deems" § 707(b)(2)© requirements to be part of § 521(a)(1)(B) requirements if the debtor's debts are primarily consumer debts. .Section 521(i)(1) provides for automatic dismissal of a case if the debtor has not timely filed the information required by § 521(a)(1)(B). Once the 45 day period has expired, the Court has no authority to extend the time or to excuse the failure to file, whether the failure was negligence or otherwise.

Therefore, individual chapter 7 debtors have three choices: (1) file Form B22A in all cases, incurring substantial time and expense in some cases to provide data that is not required and that has no use in the bankruptcy case; (2) obtain a judicial determination during the first 45 days of a case that the debts are not primarily consumer debts, or (3) refuse to file Form B22A and run the risk that the court may at some indeterminate future time conclude that debts were primarily consumer debts and that the case has been automatically dismissed by the explicit terms of the statute.

## Conclusion

The Creditor lacks the standing to bring the Title 11 U.S.C. Section 707(b) motion to dismiss this action, as this section does not apply to the Debtor and Title 11 U.S.C. 707(a) will not substantiate a dismissal in this action.

**__/s/ Richard D. Shinbaum_____**
Richard Shinbaum, SHI007
Attorney for the Debtor

Of Counsel:

Shinbaum, Abell, McLeod and Campbell, P.C..
Post Office Box 201
Montgomery, Alabama 36101
(334) 269-4440
(334) 263-4096 Fax

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above styled motion was this day served upon the following, by placing the same in the United States Mail, properly addressed and postage prepaid, and/or electronics transmission this the 8th day of May, 2007.

Bankruptcy Admin.
Bankruptcy Administrator
U. S. Bankruptcy Administrator
One Church Street
Montgomery, AL 36104

Trustee
Daniel G. Hamm
The Law Offices of Daniel G. Hamm
560 South McDonough St., Ste A
Montgomery, AL 36104
334-269-0269

Bradley Richard Hightower
Christian & Small L.L.P.
505 20th St N Ste 1800
Birmingham , AL 35203-2696
brhightower@csattorneys.com

__/s/ Richard D. Shinbaum_____
Richard D. Shinbaum
Attorney for the Debtor

**EXHIBIT C**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE THE MATTER OF:

Deloris V. Victoria                                    CASE NO. 06-31225-WRS

    Debtor,

---

## SUPPLEMENTAL RESPONSE TO MOTION TO DISMISS

Comes now the Debtor, by and through counsel, and for supplemental response to the motion to dismiss would state as follows:

1.  An issue was raised at the hearing of May 8th, 2007, as to the date of computation of eligibility under various chapters of bankruptcy.  Although it is only persuasive authority, the Debtor would call the Courts attention to the case of In re Tucker, 345 B.R. 373,(Bankr. M.D. Ala. 2006) in which Judge Williams addressed the eligibility of a client for the purposes of calculating eligibility under Chapter 13 of the Bankruptcy Code and Section 109(e).  In the case cited, Judge Williams addressed as case where the debtor had claimed a rather large income tax debt as unliquidated, in order to gain chapter 13 eligibility and the IRS later filed a liquidated claim.  In the Tucker decision, Judge Williams stated:

> If all events giving rise to the debtor's liability have occurred prior to the filing of the bankruptcy petition, a debt is noncontingent for purposes of § 109(e). In re Knight, 55 F.3d 231, 236 (7th Cir. 1995); In re Loya, 123 B.R. 338, 340 (B.A.P. 9th Cir. 1991). In the case at bar, the IRS's claim is for tax years 2000, 2001, 2002, and 2004. All events giving rise to the debtor's liability for those years must have occurred prior to his bankruptcy on October 16, 2005. Therefore, the debt to the IRS is noncontingent for purposes of § 109(e).

> The more difficult question is whether a debt which is disputed by the debtor is liquidated for purposes of § 109(e). In United States v. Verdunn, 89 F.3d 799 (11th Cir. 1996) the Court of Appeals explained the term "liquidated debt" by stating:

[*376]  Black's Law Dictionary defines a liquidated debt as one where it is certain what is due and how much is due. Black's Law Dictionary 930 (6th ed. 1990). A liquidated debt is that which has been made certain as to amount due by agreement of the parties or by operation of law. Id. Therefore, the concept of a liquidated debt relates to the amount of liability, not the existence of liability. See In re McGovern, 122 B.R. 712, 715 (Bankr. N.D. Ind. 1989); see also C. McCormick, Handbook on the Law of Damages, § 54 at 213 (1935). If the amount of the debt is dependent, however, upon a future exercise of discretion, not restricted by specific criteria, the claim is unliquidated. See 1 T. Sedgwick, Measure of Damages, § 300 at 570 (9th ed. 1912).

Additionally

Nevertheless, the court cannot distinguish the case at bar from Verdunn. "The fact that Verdunn contests the Commissioner's claim does not remove it as a claim under section 109(e) or render it unliquidated." Verdunn, 89 F.3d at 802 n.9. (citing Knight, 55 F.3d at 235 (holding that a dispute debt is included in the § 109(e) calculus); In re Jordan, 166 B.R. 201, 202 (Bankr. D. Me. 1994) (holding that a dispute either of the underlying liability or the amount of a debt does not automatically render a debt contingent or unliquidated); and 1 William I. Norton, Jr., Bankruptcy Law & Practice § 18:12 (2d ed. 1994) (commenting that disputed debts are included in the calculation for eligibility purposes)

Judge Williams then dismissed the case for exceeding the Title 11 U.S.C. Section 109(e) limitations of liability.

The Creditor in this case, further ask this Court to rule against the Debtor under Title 11 U.S.C. Section 707(b).  This in effect ask this Court to find a way around United States v. Verdunn, 89 F.3d 799, 36 Collier Bankr. Cas. 2d (MB) 743, 96-2 U.S. Tax Cas. (CCH) P50455 (11th Cir. Fla. 1996), in which the Eleventh Circuit held that the tax liability of the Debtor was a noncontingent liquidated debt and made the Debtor ineligible for Chapter 13 relief.

Claim 2 (Exhibit 1) of the Internal Revenue Service, which was filed in this Court, May 9, 2007, by the Internal Revenue Service and not the Debtor, establishes an liquidated debt of at least $109,425.20 in favor of the Service.  Exhibit 3 submitted to the Court clearly shows how the Debtor figured the amount of the claim listed on Schedule F of the Bankruptcy Schedules

and why schedule F was not amended until May 8, 2007, as soon as the Debtor received a copy of the proof of claim.  The Tax debt is clearly what the tax debt is and the tax debt is an unliquidated debt.

It is clear that the Debtor's debts are primarily nonconsumer in nature.

2.  Although, I do not believe the comments of the Bankruptcy Administrator are relevant to the issue presented, a response to the allegations is appropriate.   The Bankruptcy Administrator made some statements reflecting that the reason she had not filed a previous objection to the Debtor's standing was the Debtor's non compliance with request of production of Documents.  A check of the Debtor's transmissions with the trustee reflects that all documents requested by the Bankruptcy Administrator were supplied to the Trustee and the Administrator by November 28, 2006.  (Copy of Transmission attached) Further all documents, entered into evidence by the Creditor, were attached to the transmission of November 28th.  The e-mailed volume submitted contained four lengthy volumes of information which the Debtor can make available for production to the Court.  No follow-up documents were ever requested by the Bankruptcy Administrator.  The documents introduced at the Court hearing of May 8th, 2007, were also provided to the Creditor for inspection on February 9, 2007, with the exception of the transcript of the deposition, one of  Dr. Edgar Victoria's March Credit Card Statements, Dr. Edgar Victoria's property Insurance policies, Dr. Edgar Victoria's Brantley Bank Statements with a few checks, and a visa card statement of Dr. Edgar Victoria.

3.  The testimony of the Chapter 7 Trustee in this action was to the effect that the Debtor has been forthcoming an cooperative with the Chapter 7 Trustee during the course of the proceeding.

Wherefore, the premises considered, the Debtor, by and through Counsel, respectfully request a discharge in this action and a denial of the motion to dismiss,

**/s/  Richard D. Shinbaum_____**
Richard Shinbaum, SHI007
Attorney for the Debtor

Of Counsel:
Shinbaum, Abell, McLeod and Campbell, P.C..
Post Office Box 201
Montgomery, Alabama 36101
(334) 269-4440
(334) 263-4096 Fax

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above styled motion was this day served upon the following, by placing the same in the United States Mail, properly addressed  and postage prepaid, and/or electronics transmission this the 9th day of May, 2007.

Bradley Richard Hightower
Christian and Small
505 20th Street North Ste 1800
Birmingham. Al 35203-2696

Teresa Jacobs
Bankruptcy Administrator
One Church Street
Montgomery, AL 36104

Hon. Daniel Gary Hamm
560 South McDonough Street, Ste A
Montgomery, AL 36104

___/s/ Richard D. Shinbaum_____
Richard D. Shinbaum
Attorney for the Debtor

**EXHIBIT D**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re:                                   )
                                         )
Deloris V. Victoria,                     )        Case No. 06-31225-WRS-7
                                         )
        Debtor.                          )

---

### REPLY TO DEBTOR'S RESPONSE AND SUPPLEMENTAL RESPONSE

---

Greenville Hospital Corporation, d/b/a LV Stabler Memorial Hospital ("Greenville Hospital"), a creditor and party of interest in the chapter 7 bankruptcy case filed by Deloris V. Victoria (the "Debtor" or "Victoria"), replies to the Debtor's response and supplemental response to Greenville Hospital's Motion to Dismiss the Debtor's Case for Abuse (the "Motion to Dismiss") as follows:

1.      On May 8, 2007, the Court held a hearing on Greenville Hospital's Motion to Dismiss. Shortly before the time set for the hearing, the Debtor filed a response to the Motion to Dismiss, which was later supplemented by an additional filing on May 9, 2007 (collectively, the "Response").

2.      The Response centers around **(1)** the effect of a $109,425.20 proof of claim (the "IRS Claim") filed by the Internal Revenue Service (the "IRS") in the Debtor's case, a copy of which is attached as Exhibit "A," and **(2)** the Debtor's eligibility to be a chapter 13 debtor. Greenville Hospital will address each issue separately below.

<u>*The IRS Proof of Claim*</u>

3.      Prior to the filing of the IRS Claim, the Debtor had primarily consumer debts as indicated on the chart in the Motion to Dismiss. Therefore, the Debtor's case was subject to dismissal for abuse pursuant to Section 707(b) of the Bankruptcy Code.

4.      At first blush, the large IRS Claim appears to now tip the scales toward a finding that the Debtor's debts are primarily business debts rather than consumer debts. However, a closer examination reveals that the IRS Claim is not an accurate representation of the Debtor's tax debts because many of the

debts that make up the IRS Claim are **(A)** debts owed by the Debtor's weight loss company, Bariatric Medical & Physical Fitness Associates, Inc. ("Bariatric Associates") instead of the Debtor and **(B)** debts for unassessed taxes due to the Debtor's failure to file tax returns.

5.     The Debtor's 2005 U.S. Individual Tax Return, a portion of which is attached as Exhibit "B," states that the tax identification number for Bariatric Associates is <u>72-1357031</u> (see the circled entry on the third page).

6.     The IRS Claim identifies 13 separate debts that are owed by Bariatric Associates (taxpayer identification number 72-1357031) rather than by the Debtor.  These debts, which total $38,967.36, should not be counted when determining whether the Debtor has primarily consumer debts or business debts because they are owed by Bariatric Associates rather than the Debtor.

7.     In addition, a large portion of the debts on the IRS Claim are listed as "UNASSESSED - NO RETURN;" therefore, the IRS Claim should not be considered an accurate representation of the Debtor's tax liability.  Instead, as argued by Greenville Hospital at the May 8, 2007 hearing, the Debtor's original schedules and her February 2007 amendments should be used to determine whether the Debtor has primarily consumer debts or business debts.

8.     Moreover, even if the IRS Claim and the other amended debts listed in the Debtor's most recent amended schedules that were filed on May 8, 2007 are considered, the Debtor's debts are still primarily consumer debts.  This is indicated on the chart below, which is the same chart found in the Motion to Dismiss, with the only change being revisions to show the amount of the IRS Claim (properly excluding the $38,967.36 portion of the IRS Claim that is not owed by the Debtor) and the amended debts listed in the Debtor's most recent amended schedules (properly excluding the $70,912.00 debt to MBNA America listed in amended Schedule F that is not owed by the Debtor).

| Consumer Debts | Business Debts[2] |
|---|---|
| • $290,000.00 secured mortgage debt to Brantley Bank & Trust[1] | • $70,457.84 in tax debts ($109,425.20 minus $38,967.36)<br>• $2,545.00 unsecured debt for line of credit to Camden National<br>• $1.00 unsecured disputed debt to Camden National<br>• $680.00 unsecured loan debt to Camden National<br>• $558.00 unsecured collection account debt with CenturyTel<br>• $17,282.19 unsecured debt in a pending suit by Genezen Healthcare<br>• $165,140.00 judgment to Greenville Hospital<br>• $5,483.00 unsecured line to credit debt to Whitney Bank |
| Total: $290,000.00 | Total: $262,147.03 |

9.      As the chart indicates, the addition of the IRS Claim and the Debtor's other amended debts does not change the categorization of the Debtor's debts.  The Debtor's debts are still primarily consumer debts; therefore, the Debtor is subject to the Means Test and her chapter 7 case should be dismissed for abuse pursuant to Section 707(b).

### *Chapter 13 Eligibility*

10.      In addition to the IRS Claim, the Debtor's Response also alleges that if the Debtor is subject to the Means Test in Section 707(b), the Debtor's chapter 7 case may not be converted to a

---

[1] A mortgage on a debtor's home is a consumer debt as that term is defined in Section 101(8) of the Bankruptcy Code.  *See In re Price*, 353 F.3d 1135 (9th Cir. 2004).  This debt has not been revised downward to the $285,170.31 amount listed in the Debtor's amended schedules because it appears that the lower amount is the result of a postpetition mortgage payment made on the mortgage prior to the execution of a reaffirmation agreement approximately 1 month after the petition date.

[2] The Debtor testified that she was not obligated for a $9,663.00 credit card debt to MBNA America and a $3,378.00 credit card debt to MBNA America listed in Schedule F.  *See Deposition Transcript* at p. 51.  She also testified that a $19,029.83 secured debt to Camden National was owed by her weight loss business (a corporation) rather than herself.  *See Deposition Transcript* at p. 39.

chapter 13 case because the Debtor is not eligible to be a debtor under that chapter on the basis that she exceeds the debt limits in Section 109(e).

11.    The Debtor misses the mark on this issue though.  Whether or not the Debtor is eligible for chapter 13 has no bearing on the Section 707(b) determination because the statute plainly provides the Court with other options if conversion to chapter 13 is not available.  Specifically, the Court may simply dismiss the Debtor's case outright or, with the Debtor's consent, convert her chapter 7 case to a chapter 11 case.

12.    Accordingly, the Court should not consider the Debtor's eligibility to be a chapter 13 debtor when deciding whether to grant to deny the Motion to Dismiss.

WHEREFORE, Greenville Hospital, d/b/a LV Stabler Memorial Hospital, again requests that the Court dismiss the Debtor's case for abuse pursuant to Sections 707(a) and 707(b) of the Bankruptcy Code with a 180 day bar on refiling under any chapter of the Bankruptcy Code.

Respectfully submitted,


/s/ Bradley R. Hightower
Bradley R. Hightower
Attorney for Greenville Memorial Hospital

**OF COUNSEL:**
CHRISTIAN & SMALL LLP
505 North 20th Street, Suite 1800
Birmingham, Alabama 35203
Phone: (205) 795-6588
Fax: (205) 328-7234

**<u>CERTIFICATE OF SERVICE</u>**

Unless otherwise served by the ECF system, I certify that I have served a copy of the above and foregoing Motion on the following by placing a copy in the United States Mail, properly addressed, first-class postage pre-paid on this the 9th day of May, 2007:

Deloris V. Victoria
225 Woodland Heights Dr.
Greenville, Alabama 36037

C. Brandon Sellers, III
Shinbaum, Abell, McLeod & Vann
P.O. Box 201
Montgomery, Alabama 36101

U.S. Bankruptcy Adminstrator
Attn: Tina Hayes
One Church Street
Montgomery, Alabama 36104

Chapter 7 Trustee, Daniel G. Hamm
560 South McDonough Street, STE A
Montgomery, Alabama 36104

/s/ Bradley R. Hightower
OF COUNSEL

**EXHIBIT E**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

---

In the matter of:            )
                             )
Deloris V. Victoria,         ) Case No. 06-31225
                             ) Montgomery, AL
      Debtor.                ) June 26, 2007

---

TRANSCRIPT OF TELEPHONIC PROCEEDINGS
BEFORE THE HONORABLE WILLIAM R. SAWYER
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor:

Richard D. Shinbaum
Shinbaum, Abell, McLeod & Vann
P.O. Box 201
Montgomery, AL 36101

For Greenville Memorial Hospital:

Bradley R. Hightower
Christian & Small, LLP
505 North 20th Street, Suite 1800
Birmingham, AL 35203

---

Electronic Recorder
Operator:                    Linda Bodden

Transcriber:                 Patricia Basham
                             6411 Quail Ridge Drive
                             Bartlett, TN  38135
                             9O1-372-O613

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

2

1          COURTROOM DEPUTY: In reference to Chapter 7 case

2     number 06-31225, Deloris V. Victoria, the parties are on the

3     line.

4          THE COURT:   Okay.  Good morning.  Let's take

5     appearances.  We will start for the debtor.  Have we have got

6     Mr. Shinbaum?

7          MR. SHINBAUM: Yes, sir.

8          THE COURT:   Okay.  Good morning, Mr. Shinbaum.

9          MR. SHINBAUM: Good morning.

10         THE COURT:   We have got Mr. Hightower?  Who do we

11    have for Greenville Hospital?

12         MR. HIGHTOWER: Brad Hightower for Greenville Hospital,

13    Your Honor.

14          Okay, Mr. Hightower.  Do we have any other

15    appearances to note for the record.

16         MR. HIGHTOWER: No, Your Honor.

17         MR. SHINBAUM: Did you call Mr. Hamm?  He had told me

18    earlier that he might want to be present.

19         THE COURT: Well, he didn't call in.  Well, gentlemen,

20    what we are going to do, we have had a hearing on this, we have

21    had several rounds of briefing, so I am going to rule orally on

22    this.

23          We have got a motion to dismiss under 11 USC, Section

24    707(b)  filed  by  Greenville  Hospital,  which  707(b)  was

25    substantially amended in the 2005 amendments and creditors are

3

1  now permitted to file motions for abuse under section 707(b).

2  So that's what it is I am considering.

3      I would note, sort of initially, we have got the

4  debtor who is a doctor, who has income of nearly two hundred

5  thousand a year, who is married, who shares a home and a

6  household with her husband who is also a doctor who also makes

7  approximately two hundred thousand dollars per year.  So we

8  have got a debtor household here with household annual income

9  of between three hundred and fifty and four hundred thousand

10  dollars per year.  It would appear to be a poster-child case

11  for substantial abuse.

12      What I think the case turns on, in looking through

13  everything, it seems to turn on the question of whether or not

14  the debtor's debts are primarily consumer or not.  If they are

15  not consumer debts, if they are not primarily personal and

16  consumer debts, then section 707(b) doesn't apply.  In which

17  case, the moving party would be limited to 707(a) or some other

18  grounds.

19      I am going to note a couple of things.  When a debtor

20  files bankruptcy, it is incumbent on him or her to be

21  forthright and forthcoming with the court, with creditors, with

22  the parties-in-interest.  And I have noticed that we have had

23  multiple amendments to the schedules.  I have gotten a real

24  sense that the debtor is playing hide-the-ball and being

25  uncooperative, and that's certainly a factor in my view.

4

1            In looking at the reply memorandum filed by Greenville

2     Hospital at item sixty-eight, in that filing Greenville does a

3     very technical analysis of the facts, and I am going to adopt

4     that as reasoning of the court.   I think Greenville Hospital

5     has it right.  I believe the debtor's income – I am sorry – the

6     debtor's debts are primarily personal, and I am going to make

7     that finding.   Then based upon that finding, there is no

8     dispute that the presumption of abuse then arises under 707(b),

9     and nothing that I saw in the evidence would seem that there

10    has even been an attempt to rebut the presumption.  That is,

11    the debtor's defense was simply that the presumption doesn't

12    come into play because of the nature of the debts.   The

13    debtor's contention being that the debts were not primarily

14    personal and consumer but were rather business in nature.  So

15    I have rejected that finding.

16            So for those reasons, I am going to grant the motion

17    to dismiss.

18            Thank you, gentlemen.

19            MR. SHINBAUM: Your Honor, when are you going to

20    publish the opinion?

21            THE COURT:   Weren't you listening?  I just did it.

22            MR. SHINBAUM: I meant is there going to be a written

23    opinion?

24            THE COURT:   No, it is just going to be just an order

25    for the reasons set forth on the record.  It has been recorded.

5

1    You can call Ms. Bodden.  She can give you a CD for a fairly

2    nominal charge or you can order a written transcript which

3    would cost a little bit more, but I wasn't going to write a

4    memorandum decision on this one.

5            Thank you all.

6            MR. HIGHTOWER: Thank you, Judge.

7            (Off the record at 11:06 a.m.)

6

C E R T I F I C A T E

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

 /s/ Patricia Basham

Patricia Basham, Transcriber

Date:  July 18, 2007

**EXHIBIT F**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**


In re                                                    Case No. 06-31225-WRS
                                                         Chapter 7
DELORIS V. VICTORIA,

       Debtor.


### <u>ORDER ON MOTION TO DISMISS CASE</u>

       For the reasons set forth on the record on June 26, 2007, on the Motion to Dismiss Case

for Abuse Under 11 U.S.C. § 707 filed by Greenville Hospital Corporation (Doc. 53), it is

       ORDERED that the Motion is GRANTED.


       Done this the 27th day of June, 2007.


                                         /s/ William R. Sawyer
                                         United States Bankruptcy Judge

# EXHIBIT G

(Official Form 1) (10/05)

| United States Bankruptcy Court<br>**Middle District of Alabama** | **Voluntary Petition** |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**Victoria, Deloris V.** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec./Complete EIN or other Tax ID No. (if more than one, state all)<br>**xxx-xx-7367** | Last four digits of Soc. Sec./Complete EIN or other Tax ID No. (if more than one, state all) |
| Street Address of Debtor (No. & Street, City, and State):<br>**225 Woodland Heights Dr<br>Greenville, AL**<br>ZIP Code **36037** | Street Address of Joint Debtor (No. & Street, City, and State):<br>ZIP Code |
| County of Residence or of the Principal Place of Business:<br>**Butler** | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br>ZIP Code | Mailing Address of Joint Debtor (if different from street address):<br>ZIP Code |
| Location of Principal Assets of Business Debtor<br>(if different from street address above): | |

**Type of Debtor** (Form of Organization)
(Check one box)

- ■ Individual (includes Joint Debtors)
- ☐ Corporation (includes LLC and LLP)
- ☐ Partnership
- ☐ Other (If debtor is not one of the above entities, check this box and provide the information requested below.)
  State type of entity:

**Nature of Business**
(Check all applicable boxes.)

- ☐ Health Care Business
- ☐ Single Asset Real Estate as defined in 11 U.S.C. § 101 (51B)
- ☐ Railroad
- ☐ Stockbroker
- ☐ Commodity Broker
- ☐ Clearing Bank
- ☐ Nonprofit Organization qualified under 26 U.S.C. § 501(c)(3)

**Chapter of Bankruptcy Code Under Which the Petition is Filed** (Check one box)

- ■ Chapter 7
- ☐ Chapter 9
- ☐ Chapter 11
- ☐ Chapter 12
- ☐ Chapter 13
- ☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding
- ☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding

**Nature of Debts** (Check one box)

- ☐ Consumer/Non-Business
- ■ Business

**Filing Fee** (Check one box)

- ■ Full Filing Fee attached
- ☐ Filing Fee to be paid in installments (Applicable to individuals only) Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.
- ☐ Filing Fee waiver requested (Applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B.

**Chapter 11 Debtors**

Check one box:
- ☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).
- ☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).

Check if:
- ☐ Debtor's aggregate noncontingent liquidated debts owed to non-insiders or affiliates are less than $2 million.

**Statistical/Administrative Information**    *** C. Brandon Sellers, III ***    THIS SPACE IS FOR COURT USE ONLY

- ■ Debtor estimates that funds will be available for distribution to unsecured creditors.
- ☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

Estimated Number of Creditors

| 1-<br>49 | 50-<br>99 | 100-<br>199 | 200-<br>999 | 1000-<br>5,000 | 5001-<br>10,000 | 10,001-<br>25,000 | 25,001-<br>50,000 | 50,001-<br>100,000 | OVER<br>100,000 |
|---|---|---|---|---|---|---|---|---|---|
| ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

Estimated Assets

| $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001 to<br>$1 million | $1,000,001 to<br>$10 million | $10,000,001 to<br>$50 million | $50,000,001 to<br>$100 million | More than<br>$100 million |
|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ■ | ☐ | ☐ | ☐ | ☐ | ☐ |

Estimated Debts

| $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001 to<br>$1 million | $1,000,001 to<br>$10 million | $10,000,001 to<br>$50 million | $50,000,001 to<br>$100 million | More than<br>$100 million |
|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ■ | ☐ | ☐ | ☐ | ☐ |

(Official Form 1) (10/05)                                                                                                FORM B1, Page 2

| **Voluntary Petition**<br>*(This page must be completed and filed in every case)* | Name of Debtor(s):<br>**Victoria, Deloris V.** |
|---|---|

| **Prior Bankruptcy Case Filed Within Last 8 Years** (If more than one, attach additional sheet) | | |
|---|---|---|
| Location<br>Where Filed:  **- None -** | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet) | | |
|---|---|---|
| Name of Debtor:<br>**- None -** | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

<table>
<tr>
<td colspan="2">

**Exhibit A**

(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)

☐ Exhibit A is attached and made a part of this petition.

</td>
<td colspan="2">

**Exhibit B**
(To be completed if debtor is an individual whose debts are primarily consumer debts.)

I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter.
I further certify that I delivered to the debtor the notice required by §342(b) of the Bankruptcy Code.

X _____
    Signature of Attorney for Debtor(s)        Date

</td>
</tr>
<tr>
<td colspan="2">

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and Exhibit C is attached and made a part of this petition.

■ No

</td>
<td colspan="2">

**Certification Concerning Debt Counseling**
**by Individual/Joint Debtor(s)**

■ I/we have received approved budget and credit counseling during the 180-day period preceding the filing of this petition.

☐ I/we request a waiver of the requirement to obtain budget and credit counseling prior to filing based on exigent circumstances. (Must attach certification describing.)

</td>
</tr>
</table>

**Information Regarding the Debtor (Check the Applicable Boxes)**

**Venue** (Check any applicable box)

■    Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐    There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐    Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Statement by a Debtor Who Resides as a Tenant of Residential Property**
*Check all applicable boxes.*

☐    Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

        _____
        (Name of landlord that obtained judgment)

        _____
        (Address of landlord)

☐    Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐    Debtor has included in this petition with the court of any rent that would become due during the 30-day period after the filing of the petition.

(Official Form 1) (10/05)                                                                                    FORM B1, Page 3

| **Voluntary Petition** | Name of Debtor(s): |
|---|---|
| *(This page must be completed and filed in every case)* | **Victoria, Deloris V.** |

**Signatures**

| **Signature(s) of Debtor(s) (Individual/Joint)** | **Signature of a Foreign Representative** |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct. | I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition. |

I declare under penalty of perjury that the information provided in this petition is true and correct.

[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.

[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by §342(b) of the Bankruptcy Code.

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

**X  /s/ Deloris V. Victoria**
Signature of Debtor  **Deloris V. Victoria**

**X** _____
Signature of Joint Debtor

_____
Telephone Number (If not represented by attorney)

**September 25, 2006**
Date

---

**Signature of Attorney**

**X  /s/ C. Brandon Sellers, III**
Signature of Attorney for Debtor(s)

**C. Brandon Sellers, III**
Printed Name of Attorney for Debtor(s)

**Shinbaum, Abell, McLeod & Vann, P.C.**
Firm Name

**566 South Perry Street
Post Office Box 201
Montgomery, AL 36101-0201**

Address

**334-269-4440  Fax: 334-263-4440**
Telephone Number

**September 25, 2006**
Date

---

**Signature of Debtor (Corporation/Partnership)**

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

**X** _____
Signature of Authorized Individual

_____
Printed Name of Authorized Individual

_____
Title of Authorized Individual

_____
Date

---

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only one box.)

☐ I request relief in accordance with chapter 15 of title 11. United States Code. Certified copies of the documents required by §1515 of title 11 are attached.

☐ Pursuant to §1511 of title 11, United States Code, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

**X** _____
Signature of Foreign Representative

_____
Printed Name of Foreign Representative

_____
Date

---

**Signature of Non-Attorney Bankruptcy Petition Preparer**

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19B is attached.

_____
Printed Name and title, if any, of Bankruptcy Petition Preparer

_____
Social Security number (If the bankrutpcy petition preparer is not an individual, state the Social Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.)(Required by 11 U.S.C. § 110.)

_____
Address

**X** _____

_____
Date

Signature of Bankruptcy Petition Preparer or officer, principal, responsible person,or partner whose social security number is provided above.

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both 11 U.S.C. §110; 18 U.S.C. §156.*

Form 6-Summary
(10/05)

# United States Bankruptcy Court
## Middle District of Alabama

In re    **Deloris V. Victoria**

_____,    Case No. _____
                                    Debtor

                                                        Chapter_____**7**_____

# SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each.  Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided.  Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors must also complete the "Statistical Summary of Certain Liabilities."

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | AMOUNTS SCHEDULED | | |
| | | | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | Yes | 1 | 377,800.00 | | |
| B - Personal Property | Yes | 3 | 54,800.00 | | |
| C - Property Claimed as Exempt | Yes | 1 | | | |
| D - Creditors Holding Secured Claims | Yes | 1 | | 309,000.00 | |
| E - Creditors Holding Unsecured Priority Claims | Yes | 3 | | 60,877.74 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 3 | | 273,308.00 | |
| G - Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H - Codebtors | Yes | 1 | | | |
| I - Current Income of Individual Debtor(s) | Yes | 2 | | | 15,400.00 |
| J - Current Expenditures of Individual Debtor(s) | Yes | 1 | | | 13,510.00 |
| Total Number of Sheets of ALL Schedules | | 17 | | | |
| Total Assets | | | 432,600.00 | | |
| Total Liabilities | | | | 643,185.74 | |

Form 6-Summ2
(10/05)

# United States Bankruptcy Court
## Middle District of Alabama

In re    **Deloris V. Victoria**                                                        ,        Case No. _____

Debtor                                                        Chapter_____**7**_____

# STATISTICAL SUMMARY OF CERTAIN LIABILITIES (28 U.S.C. § 159)
## [Individual Debtors Only]

Summarize the following types of liabilities, as reported in the Schedules, and total them.

| Type of Liability | Amount |
|---|---|
| Domestic Support Obligations (from Schedule E) | **0.00** |
| Taxes and Certain Other Debts Owed to Governmental Units (from Schedule E) | **60,877.74** |
| Claims for Death or Personal Injury While Debtor Was Intoxicated (from Schedule E) | **0.00** |
| Student Loan Obligations (from Schedule F) | **0.00** |
| Domestic Support, Separation Agreement, and Divorce Decree Obligations Not Reported on Schedule E | **0.00** |
| Obligations to Pension or Profit-Sharing, and Other Similar Obligations (from Schedule F) | **0.00** |
| TOTAL | **60,877.74** |

**The foregoing information is for statistical purposes only under 28 U.S.C § 159.**

Form B6A
(10/05)

In re  **Deloris V. Victoria**                                        ,     Case No. _____
                                          Debtor

# SCHEDULE A. REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **225 WOODLAND HEIGHTS DR, GREENVILLE AL-- SINGLE FAMILY RESIDENCE VALUE LISTED IS TAX ASSESSED VALUE** | - | | 373,800.00 | 290,000.00 |
| **ISLE OF VALLEY, ORLANDAO FL** | | J | 4,000.00 | 0.00 |

|  |  |  |
|---|---|---|
| Sub-Total > | 377,800.00 | (Total of this page) |
| Total > | 377,800.00 | |

__0__   continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                        Best Case Bankruptcy

Form B6B
(10/05)

In re   **Deloris V. Victoria**                                          ,     Case No. _____

                                        Debtor

## SCHEDULE B. PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule.  List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property."
In providing the information requested in this schedule, do not include the name or address of a minor child.  Simply state "a minor child."

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 1.  Cash on hand | | CASH | - | 300.00 |
| 2.  Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | CHECKING ACCOUNT - WHITNEY BANK | - | 2,000.00 |
| | | CHECKING ACCOUNT - BUTLER COUNTY BANK | - | 500.00 |
| 3.  Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4.  Household goods and furnishings, including audio, video, and computer equipment. | | HOUSEHOLD GOODS | - | 7,000.00 |
| 5.  Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6.  Wearing apparel. | | WEARING APPAREL | - | 1,000.00 |
| 7.  Furs and jewelry. | | JEWELRY | - | 5,000.00 |
| 8.  Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9.  Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |
| 10.  Annuities. Itemize and name each issuer. | X | | | |

Sub-Total >        **15,800.00**
(Total of this page)

___2___  continuation sheets attached to the Schedule of Personal Property

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                            Best Case Bankruptcy

Form B6B
(10/05)

In re    **Deloris V. Victoria**                                                    ,    Case No. _____

Debtor

# SCHEDULE B. PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c); Rule 1007(b)). | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | SEP | | - | 20,000.00 |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | X | | | |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owing debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | | **POSSIBLE BREECH OF CONTRACT SUIT AGAINST DR. LILITH NAMI. SUIT NOT YET FILED. ATTORNEY RICHARD HARTLEY** | - | Unknown |

Sub-Total >    **20,000.00**
(Total of this page)

Sheet __**1**__ of __**2**__ continuation sheets attached
to the Schedule of Personal Property

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                                 Best Case Bankruptcy

Form B6B
(10/05)

In re   **Deloris V. Victoria**
_____, Case No. _____
                                      Debtor

# SCHEDULE B. PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | X | | | |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | | **COMPUTERS, EKG, TABLES, CHAIRS** | - | 19,000.00 |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |

|  | Sub-Total > | **19,000.00** |
|---|---|---|
|  | (Total of this page) | |
|  | Total > | **54,800.00** |

Sheet __2__ of __2__ continuation sheets attached
to the Schedule of Personal Property

(Report also on Summary of Schedules)

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                        Best Case Bankruptcy

Form B6C
(10/05)

In re   **Deloris V. Victoria**                       ,     Case No. _____
                                        Debtor

# SCHEDULE C. PROPERTY CLAIMED AS EXEMPT

Debtor elects the exemptions to which debtor is entitled under:     ☐ Check if debtor claims a homestead exemption that exceeds
(Check one box)                                               $125,000.
☐ 11 U.S.C. §522(b)(2)
■ 11 U.S.C. §522(b)(3)

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| **Real Property** | | | |
| **225 WOODLAND HEIGHTS DR, GREENVILLE AL-- SINGLE FAMILY RESIDENCE VALUE LISTED IS TAX ASSESSED VALUE** | **Ala. Code §§ 6-10-2, 6-10-3, 6-10-4; Const. Art. X, § 205** | **5,000.00** | **373,800.00** |
| **ISLE OF VALLEY, ORLANDAO FL** | **Ala. Code § 6-10-6** | **0.00** | **4,000.00** |
| **Cash on Hand** | | | |
| **CASH** | **Ala. Code § 6-10-6** | **300.00** | **300.00** |
| **Checking, Savings, or Other Financial Accounts, Certificates of Deposit** | | | |
| **CHECKING ACCOUNT - WHITNEY BANK** | **Ala. Code § 6-10-6** | **2,000.00** | **2,000.00** |
| **CHECKING ACCOUNT - BUTLER COUNTY BANK** | **Ala. Code § 6-10-6** | **500.00** | **500.00** |
| **Household Goods and Furnishings** | | | |
| **HOUSEHOLD GOODS** | **Ala. Code § 6-10-6** | **200.00** | **7,000.00** |
| **Wearing Apparel** | | | |
| **WEARING APPAREL** | **Ala. Code §§ 6-10-6, 6-10-126** | **1,000.00** | **1,000.00** |
| **Furs and Jewelry** | | | |
| **JEWELRY** | **Ala. Code § 6-10-6** | **0.00** | **5,000.00** |
| **Interests in IRA, ERISA, Keogh, or Other Pension or Profit Sharing Plans** | | | |
| **SEP** | **Ala. Code § 19-3-1** | **20,000.00** | **20,000.00** |
| **Office Equipment, Furnishings and Supplies** | | | |
| **COMPUTERS, EKG, TABLES, CHAIRS** | **Ala. Code § 6-10-126** | **0.00** | **19,000.00** |
| | | Total: **29,000.00** | **432,600.00** |

  **0**  continuation sheets attached to Schedule of Property Claimed as Exempt

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                              Best Case Bankruptcy

Form B6D
(10/05)

In re   **Deloris V. Victoria** _____,   Case No. _____

_____
Debtor

# SCHEDULE D. CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C§112; Fed.R.Bankr.P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community." If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

☐   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J / C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. <br><br>**Creditor #: 1** <br>**BRANTLEY BANK & TRUST** <br>**P.O. BOX 25** <br>**BRANTLEY, AL 36009** | | - | **Mortgage** <br><br>**225 WOODLAND HEIGHTS DR, GREENVILLE AL-- SINGLE FAMILY RESIDENCE** <br>**VALUE LISTED IS TAX ASSESSED VALUE** <br> Value $          **373,800.00** | | | | **290,000.00** | **0.00** |
| Account No. **9481** <br><br>**Creditor #: 2** <br>**CAMDEN NATIONAL** <br>**3 WATER STREET** <br>**Camden, AL 36726** | | - | **03-2006** <br><br>**SECURITY AGREEMENT** <br><br>**COMPUTERS, EKG, TABLES, CHAIRS** <br><br> Value $          **19,000.00** | | | | **19,000.00** | **0.00** |
| Account No. | | | <br><br><br><br> Value $ | | | | | |
| Account No. | | | <br><br><br><br> Value $ | | | | | |
| **0**  continuation sheets attached | | | | | | Subtotal <br>(Total of this page) | **309,000.00** | |
| | | | | | | Total <br>(Report on Summary of Schedules) | **309,000.00** | |

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                                                                        Best Case Bankruptcy

Form B6E
(10/05)

In re   **Deloris V. Victoria**
_____,    Case No. _____
                                    Debtor

# SCHEDULE E. CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name, mailing address, including zip code, and last four digits of the account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of the petition. Use a separate continuation sheet for each type of priority and label each with the type of priority.

The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C.§112; Fed.R.Bankr.P. 1007(m).

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether husband, wife, both of them or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community". If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Report the total of claims listed on each sheet in the box labeled "Subtotal" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

Report the total of amounts entitled to priority listed on each sheet in the box labeled "Subtotal" on each sheet. Report the total of all amounts entitled to priority listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. If applicable, also report this total on the Means Test form.

☐ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS** (Check the appropriate box(es) below if claims in that category are listed on the attached sheets.)

☐ **Domestic support obligations**
Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐ **Extensions of credit in an involuntary case**
Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(3).

☐ **Wages, salaries, and commissions**
Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $10,000* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, which ever occurred first, to the extent provided in 11 U.S.C. § 507 (a)(4).

☐ **Contributions to employee benefit plans**
Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

☐ **Certain farmers and fishermen**
Claims of certain farmers and fishermen, up to $4,925* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).

☐ **Deposits by individuals**
Claims of individuals up to $2,225* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided. 11 U.S.C. § 507(a)(7).

■ **Taxes and certain other debts owed to governmental units**
Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C § 507(a)(8).

☐ **Commitments to maintain the capital of an insured depository institution**
Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution. 11 U.S.C. § 507(a)(9).

☐ **Claims for death or personal injury while debtor was intoxicated**
Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance. 11 U.S.C. § 507(a)(10).

*Amounts are subject to adjustment on April 1, 2007, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

_____2_____ continuation sheets attached

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                    Best Case Bankruptcy

Form B6E - Cont.
(10/05)

In re      **Deloris V. Victoria**                                                    ,      Case No. _____
                                                    Debtor

# SCHEDULE E. CREDITORS HOLDING UNSECURED PRIORITY CLAIMS
(Continuation Sheet)

**Taxes and Certain Other Debts
Owed to Governmental Units**

TYPE OF PRIORITY

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | Husband, Wife, Joint, or Community | | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM | AMOUNT ENTITLED TO PRIORITY |
| | | H W | J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Account No. **2003** | | | | | | | | | |
| **Creditor #: 1** **INTERNAL REVENUE SERVICE** **SPECIAL PROCEDURES FUNCTION** **801 TOM MARTIN DR., ROOM 126** **BIRMINGHAM, AL 35211** | - | | **2003 TAXES** | | | | | | |
| | | | | | | | | **5,600.27** | **5,600.27** |
| Account No. | | | **HON. PATRICIA CONOVER** **ASSISTANT UNITED STATES ATTY.** **P.O. BOX 197** **MONTGOMERY, AL 36101** | | | | | | |
| Representing: **INTERNAL REVENUE SERVICE** | | | | | | | | | |
| Account No. | | | **INTERNAL REVENUE SERVICE** **P O BOX 21126** **Philadelphia, PA 19114** | | | | | | |
| Representing: **INTERNAL REVENUE SERVICE** | | | | | | | | | |
| Account No. **2005** | | | | | | | | | |
| **Creditor #: 2** **INTERNAL REVENUE SERVICE** **SPECIAL PROCEDURES FUNCTION** **801 TOM MARTIN DR., ROOM 126** **BIRMINGHAM, AL 35211** | - | | **2005 TAXES** | | | | | | |
| | | | | | | | | **9,147.63** | **9,147.63** |
| Account No. | | | **HON. PATRICIA CONOVER** **ASSISTANT UNITED STATES ATTY.** **P.O. BOX 197** **MONTGOMERY, AL 36101** | | | | | | |
| Representing: **INTERNAL REVENUE SERVICE** | | | | | | | | | |

Sheet __1__ of __2__ continuation sheets attached to
Schedule of Creditors Holding Unsecured Priority Claims

Subtotal
(Total of this page)

| **14,747.90** | **14,747.90** |

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                                    Best Case Bankruptcy

Form B6E - Cont.
(10/05)

In re    **Deloris V. Victoria**_____,    Case No. _____

                                          Debtor

# SCHEDULE E. CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

(Continuation Sheet)

**Taxes and Certain Other Debts
Owed to Governmental Units**

TYPE OF PRIORITY

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM | AMOUNT ENTITLED TO PRIORITY |
|---|---|---|---|---|---|---|---|---|---|
| | | H | W J | C | | | | | |
| Account No. | | | | | | | | | |
| **Representing:** **INTERNAL REVENUE SERVICE** | | **INTERNAL REVENUE SERVICE P O BOX 21126 Philadelphia, PA 19114** | | | | | | | |
| Account No. | | **2004 taxes** | | | | | | | |
| **Creditor #: 3** **INTERNAL REVENUE SERVICE SPECIAL PROCEDURES FUNCTION 801 TOM MARTIN DR., ROOM 126 BIRMINGHAM, AL 35211** | - | | | | | | | 23,892.40 | 23,892.40 |
| Account No. **xx-xxx7031** | | **Taxes of Bariatric Medicine** | | | | | | | |
| **Creditor #: 4** **INTERNAL REVENUE SERVICE SPECIAL PROCEDURES FUNCTION 801 TOM MARTIN DR., ROOM 126 BIRMINGHAM, AL 35211** | - | | | | | | | 17,689.82 | 17,689.82 |
| Account No. | | **2003 Taxes** | | | | | | | |
| **Creditor #: 5** **STATE OF ALABAMA DEPARTMENT OF REVENUE P.O. BOX 320001 MONTGOMERY, AL 36132** | - | | | | | | | 1,547.62 | 1,547.62 |
| Account No. | | **2004 and 2005 Taxes estimated** | | | | | | | |
| **Creditor #: 6** **STATE OF ALABAMA DEPARTMENT OF REVENUE P.O. BOX 320001 MONTGOMERY, AL 36132** | - | | | | | | | 3,000.00 | 3,000.00 |

Sheet __2__ of __2__ continuation sheets attached to
Schedule of Creditors Holding Unsecured Priority Claims

| | | |
|---|---|---|
| Subtotal (Total of this page) | 46,129.84 | 46,129.84 |
| Total (Report on Summary of Schedules) | 60,877.74 | 60,877.74 |

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                    Best Case Bankruptcy

Form B6F
(10/05)

In re   **Deloris V. Victoria** _____,   Case No. _____
                         Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C.§112; Fed.R.Bankr.P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community maybe liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

☐   Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No.<br><br>**Creditor #: 1**<br>**CAMDEN NATIONAL**<br>**3 WATER STREET**<br>**Camden, AL 36726** | | - | **09-2005**<br>**LINE OF CREDIT** | | | | **2,545.00** |
| Account No. **x8652**<br><br>**Creditor #: 2**<br>**CAMDEN NATIONAL**<br>**3 WATER STREET**<br>**Camden, AL 36726** | | - | **09-2004**<br>**DISPUTED DEBT** | | | X | **1.00** |
| Account No. **x7851**<br><br>**Creditor #: 3**<br>**CAMDEN NATIONAL**<br>**3 WATER STREET**<br>**Camden, AL 36726** | | - | **06-2004**<br>**LOAN** | | | | **680.00** |
| Account No. **xxxxx2276**<br><br>**Creditor #: 4**<br>**CENTURYTEL**<br>**PO BOX 6001**<br>**Marion, LA 71260-6001** | | - | **03-2005**<br>**COLLECTION ACCOUNT** | | | | **558.00** |

  **2**   continuation sheets attached

Subtotal
(Total of this page)     **3,784.00**

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037          S/N:34718-060831   Best Case Bankruptcy

Form B6F - Cont.
(10/05)

In re  __**Deloris V. Victoria**_____,   Case No. _____
                                              Debtor

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM.  IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
| | | H | W J C | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Account No.<br><br>**Representing:**<br>**CENTURYTEL** | | | | | **BANK OF AMERICA**<br>**PO BOX 41466**<br>**Philadelphia, PA 19101** | | | | |
| Account No.: **5**<br>**GENEZEN HEALTHCARE**<br>**PO BOX 571811**<br>**Houston, TX 77257** | | - | | | **2005**<br>**Pending Suit non consumer debt**<br>**BUTLER COUNTY CV 05-177**<br>**Suit involving patient accounts** | | | | **18,000.00** |
| Account No.<br><br>**Representing:**<br>**GENEZEN HEALTHCARE** | | | | | **DAVID C. SCHWARTZ, ESQ.**<br>**PO BOX 11366**<br>**Birmingham, AL 35202-1366** | | | | |
| Account No.: **6**<br>**GREENVILLE HOSPITAL**<br>**DBA LV STABLER MEMORIAL**<br>**29 STABLER DR**<br>**Greenville, AL 36037** | | - | | | **2005**<br>**JUDGEMENT NON CONSUMER DEBT**<br>**BUTLER COUNTY CV 05-133**<br>**SUIT ON CONTRACT INVOLVING**<br>**TERMINATION OF DOCTOR** | | | | **168,000.00** |
| Account No.<br><br>**Representing:**<br>**GREENVILLE HOSPITAL** | | | | | **GREER B. MALLETTE, ESQ**<br>**505 20TH ST N., STE 1800**<br>**Birmingham, AL 35203-2696** | | | | |

Sheet no. __**1**___ of __**2**___ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)

**186,000.00**

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

Form B6F - Cont.
(10/05)

In re    **Deloris V. Victoria**                                                                    ,    Case No. _____
                                    Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM.  IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H | W J C | | | | | |
| Account No. **Creditor #: 7 MBNA AMERICA PO BOX 17054 Wilmington, DE 19884** | X | J | | 08-1999 **CREDIT CARD** | | | | 9,663.00 |
| Account No. **Creditor #: 8 MBNA AMERICA PO BOX 17054 Wilmington, DE 19884** | X | J | | 10-1995 **CREDIT CARD** | | | | 3,378.00 |
| Account No. **Creditor #: 9 MBNA AMERICA PO BOX 17054 Wilmington, DE 19884** | X | J | | 04-1994 **Non Consumer business accout credit card for purchase of medical equipment and supplies.** | | | | 65,000.00 |
| Account No. **Creditor #: 10 WHITNEY BANK 228 ST CHARLES AVE New Orleans, LA 70130** | - | | | 12-1999 **LINE OF CREDIT** | | | | 5,483.00 |
| Account No. | | | | | | | | |

Sheet no. __2__ of __2__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)                83,524.00

Total
(Report on Summary of Schedules)                273,308.00

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                    Best Case Bankruptcy

Form B6G
(10/05)

In re  **Deloris V. Victoria**_____,     Case No. _____
                                    Debtor

# SCHEDULE G. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property.  Include any timeshare interests.  State nature of debtor's interest in contract, i.e., "Purchaser", "Agent", etc.  State whether debtor is the lessor or lessee of a lease.  Provide the names and complete mailing addresses of all other parties to each lease or contract described.  If a minor child is a party to one of the leases or contracts, indicate that by stating "a minor child" and do not disclose the child's name.  See 11 U.S.C. § 112;  Fed.R. Bankr. P. 1007(m).

■ Check this box if debtor has no executory contracts or unexpired leases.

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
| --- | --- |
| | |

__0___ continuation sheets attached to Schedule of Executory Contracts and Unexpired Leases

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                                    Best Case Bankruptcy

Form B6H
(10/05)

In re   **Deloris V. Victoria**                                 ,      Case No. _____

Debtor

# SCHEDULE H. CODEBTORS

Provide the information requested concerning any person or entity, other than a spouse in a joint case, that is also liable on any debts listed by debtor in the schedules of creditors. Include all guarantors and co-signers. If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within the eight year period immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state, commonwealth, or territory. Include all names used by the nondebtor spouse during the eight years immediately preceding the commencement of this case. If a minor child is a codebtor or a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C. § 112; Fed. Bankr. P. 1007(m).

☐  Check this box if debtor has no codebtors.

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|
| **EDGAR VICTORIA**<br>**225 WOODLAND HEIGHTS DR**<br>**Greenville, AL 36037** | **MBNA AMERICA**<br>**PO BOX 17054**<br>**Wilmington, DE 19884** |
| **EDGAR VICTORIA**<br>**225 WOODLAND HEIGHTS DR**<br>**Greenville, AL 36037** | **MBNA AMERICA**<br>**PO BOX 17054**<br>**Wilmington, DE 19884** |
| **EGAR VICTORIA**<br>**225 WOODLAND HEIGHTS DR**<br>**Greenville, AL 36037** | **MBNA AMERICA**<br>**PO BOX 17054**<br>**Wilmington, DE 19884** |

    **0**   continuation sheets attached to Schedule of Codebtors

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                             Best Case Bankruptcy

Form B6I
(10/05)

In re  **Deloris V. Victoria**                                          Case No. _____
_____
Debtor(s)

## SCHEDULE I. CURRENT INCOME OF INDIVIDUAL DEBTOR(S)

The column labeled "Spouse" must be completed in all cases filed by joint debtors and by a married debtor in a chapter 7, 11, 12, or 13 case whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. Do not state the name of any minor child.

| Debtor's Marital Status: | DEPENDENTS OF DEBTOR AND SPOUSE | |
|---|---|---|
| **Married** | RELATIONSHIP: **None.** | AGE: |

| Employment: | DEBTOR | SPOUSE |
|---|---|---|
| Occupation | **PHYSICIAN** | **PHYSICIAN** |
| Name of Employer | **DR. DELORIS VICTORIA** | |
| How long employed | **20 YRS** | **20 YRS** |
| Address of Employer | **250 WOODLAND HEIGHTS DR Greenville, AL 36037** | |

| INCOME: (Estimate of average monthly income) | | DEBTOR | | SPOUSE |
|---|---|---|---|---|
| 1. Current monthly gross wages, salary, and commissions  (Prorate if not paid monthly.) | $ | **15,000.00** | $ | **20,000.00** |
| 2. Estimate monthly overtime | $ | **0.00** | $ | **0.00** |
| 3. SUBTOTAL | $ | **15,000.00** | $ | **20,000.00** |
| 4. LESS PAYROLL DEDUCTIONS | | | | |
|     a.  Payroll taxes and social security | $ | **0.00** | $ | **0.00** |
|     b.  Insurance | $ | **0.00** | $ | **0.00** |
|     c.  Union dues | $ | **0.00** | $ | **0.00** |
|     d.  Other (Specify)    **See Detailed Income Attachment** | $ | **9,600.00** | $ | **10,000.00** |
| 5. SUBTOTAL OF PAYROLL DEDUCTIONS | $ | **9,600.00** | $ | **10,000.00** |
| 6. TOTAL NET MONTHLY TAKE HOME PAY | $ | **5,400.00** | $ | **10,000.00** |
| 7. Regular income from operation of business or profession or farm. (Attach detailed statement) | $ | **0.00** | $ | **0.00** |
| 8. Income from real property | $ | **0.00** | $ | **0.00** |
| 9. Interest and dividends | $ | **0.00** | $ | **0.00** |
| 10. Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above. | $ | **0.00** | $ | **0.00** |
| 11. Social security or other government assistance (Specify): _____ | $ | **0.00** | $ | **0.00** |
| | $ | **0.00** | $ | **0.00** |
| 12. Pension or retirement income | $ | **0.00** | $ | **0.00** |
| 13. Other monthly income (Specify): _____ | $ | **0.00** | $ | **0.00** |
| | $ | **0.00** | $ | **0.00** |
| 14. SUBTOTAL OF LINES 7 THROUGH 13 | $ | **0.00** | $ | **0.00** |
| 15. TOTAL MONTHLY INCOME (Add amounts shown on lines 6 and 14) | $ | **5,400.00** | $ | **10,000.00** |

16. TOTAL COMBINED MONTHLY INCOME:     $ _____**15,400.00**_____     (Report also on Summary of Schedules)

17. Describe any increase or decrease in income reasonably anticipated to occur within the year following the filing of this document:

Form B6I
(10/05)

In re  **Deloris V. Victoria**_____          Case No. _____
                    Debtor(s)

## SCHEDULE I. CURRENT INCOME OF INDIVIDUAL DEBTOR(S)
### Detailed Income Attachment

**Other Payroll Deductions:**

| | | |
|---|---:|---:|
| **BILLING** | $   1,200.00 | $   2,000.00 |
| **PAYROLL** | $   3,500.00 | $   5,000.00 |
| **OFFICE EXPENSES** | $   3,400.00 | $   3,000.00 |
| **UTILITIES, ETC** | $   1,500.00 | $   0.00 |
| **Total Other Payroll Deductions** | $   9,600.00 | $   10,000.00 |

Form B6J
(10/05)

In re   **Deloris V. Victoria**                                                  Case No. _____
                          Debtor(s)

# SCHEDULE J. CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)

Complete this schedule by estimating the average monthly expenses of the debtor and the debtor's family.  Pro rate any payments made bi-weekly, quarterly, semi-annually, or annually to show monthly rate.

☐   Check this box if a joint petition is filed and debtor's spouse maintains a separate household.  Complete a separate schedule of expenditures labeled "Spouse."

| | | |
|---|---|---|
| 1. Rent or home mortgage payment (include lot rented for mobile home) | $ | 4,000.00 |
|    a. Are real estate taxes included?          Yes ___          No **X** | | |
|    b. Is property insurance included?          Yes ___          No **X** | | |
| 2. Utilities:      a. Electricity and heating fuel | $ | 350.00 |
|           b. Water and sewer | $ | 80.00 |
|           c. Telephone | $ | 300.00 |
|           d. Other   **Cable** | $ | 80.00 |
| 3. Home maintenance (repairs and upkeep) | $ | 250.00 |
| 4. Food | $ | 400.00 |
| 5. Clothing | $ | 150.00 |
| 6. Laundry and dry cleaning | $ | 100.00 |
| 7. Medical and dental expenses | $ | 100.00 |
| 8. Transportation (not including car payments) | $ | 700.00 |
| 9. Recreation, clubs and entertainment, newspapers, magazines, etc. | $ | 100.00 |
| 10. Charitable contributions | $ | 1,000.00 |
| 11. Insurance (not deducted from wages or included in home mortgage payments) | | |
|           a. Homeowner's or renter's | $ | 100.00 |
|           b. Life | $ | 600.00 |
|           c. Health | $ | 400.00 |
|           d. Auto | $ | 1,200.00 |
|           e. Other | $ | 0.00 |
| 12. Taxes (not deducted from wages or included in home mortgage payments) | | |
|       (Specify) | $ | 0.00 |
| 13. Installment payments: (In chapter 11, 12 and 13 cases, do not list payments to be included in the plan.) | | |
|           a. Auto | $ | 0.00 |
|           b. Other | $ | 0.00 |
|           c. Other | $ | 0.00 |
|           d. Other | $ | 0.00 |
| 14. Alimony, maintenance, and support paid to others | $ | 0.00 |
| 15. Payments for support of additional dependents not living at your home | $ | 0.00 |
| 16. Regular expenses from operation of business, profession, or farm (attach detailed statement) | $ | 0.00 |
| 17. Other   **SPOUSES DEBTS** | $ | 3,500.00 |
|    Other   **MISCELLANEOUS** | $ | 100.00 |
| 18. TOTAL MONTHLY EXPENSES (Report also on Summary of Schedules) | $ | 13,510.00 |

19. Describe any increase or decrease in expenditures reasonably anticipated to occur within the year following the filing of this document:

_____

20. STATEMENT OF MONTHLY NET INCOME

| | | |
|---|---|---|
| a.    Total monthly income from Line 16 of Schedule I | $ | 15,400.00 |
| b.    Total monthly expenses from Line 18 above | $ | 13,510.00 |
| c.    Monthly net income (a. minus b.) | $ | 1,890.00 |

Official Form 6-Decl.
(10/05)

# United States Bankruptcy Court
## Middle District of Alabama

In re    **Deloris V. Victoria**                          Case No. _____

                                      Debtor(s)           Chapter     **7** _____

## DECLARATION CONCERNING DEBTOR'S SCHEDULES

### DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of ___ **19** ___ sheets *[total shown on summary page plus 2]*, and that they are true and correct to the best of my knowledge, information, and belief.

Date   **September 25, 2006**                    Signature    **/s/ Deloris V. Victoria** _____

                                                          **Deloris V. Victoria**
                                                          Debtor

*Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C. §§ 152 and 3571.

Official Form 7
(10/05)

# United States Bankruptcy Court
## Middle District of Alabama

In re   __Deloris V. Victoria__                                               Case No.   _____
                                             Debtor(s)         Chapter    __7__   _____

# STATEMENT OF FINANCIAL AFFAIRS

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs. Do not include the name or address of a minor child in this statement. Indicate payments, transfers and the like to minor children by stating "a minor child." See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

Questions 1 - 18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25. **If the answer to an applicable question is "None," mark the box labeled "None."** If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

*DEFINITIONS*

*"In business."* A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed full-time or part-time. An individual debtor also may be "in business" for the purpose of this form if the debtor engages in a trade, business, or other activity, other than as an employee, to supplement income from the debtor's primary employment.

*"Insider."* The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any owner of 5 percent or more of the voting or equity securities of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; any managing agent of the debtor. 11 U.S.C. § 101.

_____

**1. Income from employment or operation of business**

None
☐       State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business, including part-time activities either as an employee or in independent trade or business, from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the **two years** immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE |
|---|---|
| **$96,000.00** | **YTD-- SELF EMPLOYED/JOINT RETURN** |
| **$180,000.00** | **2005-- SELF EMPLOYED/JOINT RETURN** |
| **$180,000.00** | **2004-- SELF EMPLOYED/JOINT RETURN** |

**2. Income other than from employment or operation of business**

None
■       State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the **two years** immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE |
|---|---|

2

**3. Payments to creditors**

None
■    ***Complete a. or b., as appropriate, and c.***

    a.   *Individual or joint debtor(s) with primarily consumer debts.*  List all payments on loans, installment purchases of goods or services, and other debts to any creditor made within **90 days** immediately preceding the commencement of this case if the aggregate value of all property that constitutes or is affected by such transfer is not less than $600. Indicate with an (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and creditor counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS<br>OF CREDITOR | DATES OF<br>PAYMENTS | AMOUNT PAID | AMOUNT STILL<br>OWING |
|---|---|---|---|

None
☐        b.   *Debtor whose debts are not primarily consumer debts:* List each payment or other transfer to any creditor made within **90 days** immediately preceding the commencement of the case if the aggregate value of all property that constitutes or is affected by such transfer is not less than $5,000.  (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF<br>PAYMENTS/<br>TRANSFERS | AMOUNT<br>PAID OR<br>VALUE OF<br>TRANSFERS | AMOUNT STILL<br>OWING |
|---|---|---|---|
| **MBNA AMERICA<br>PO BOX 17054<br>Wilmington, DE 19884** | **MARCH 2006 - JUNE 2006** | **$3,000.00** | **$65,000.00** |

None
■        c.   *All debtors:* List all payments made within **one year** immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR AND<br>RELATIONSHIP TO DEBTOR | DATE OF PAYMENT | AMOUNT PAID | AMOUNT STILL<br>OWING |
|---|---|---|---|

**4.  Suits and administrative proceedings, executions, garnishments and attachments**

None
☐    a. List all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT<br>AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY<br>AND LOCATION | STATUS OR<br>DISPOSITION |
|---|---|---|---|
| **GENZEN HEALTHCARE VS<br>DOLORES V VICTORIA<br>CV 05177** | **COLLECTION** | **BUTLER COUNTY** | **ACTIVE** |
| **GREENVILLE HOSPITAL VS<br>DOLORES VICTORIA, MD<br>CV 05-133** | **CONTRACT** | **BUTLER COUNTY** | **ACTIVE** |

None
■    b. Describe all property that has been attached, garnished or seized under any legal or equitable process within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON FOR WHOSE<br>BENEFIT PROPERTY WAS SEIZED | DATE OF SEIZURE | DESCRIPTION AND VALUE OF<br>PROPERTY |
|---|---|---|

3

**5. Repossessions, foreclosures and returns**

None
■

List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR OR SELLER | DATE OF REPOSSESSION, FORECLOSURE SALE, TRANSFER OR RETURN | DESCRIPTION AND VALUE OF PROPERTY |
| --- | --- | --- |

**6. Assignments and receiverships**

None
■

a. Describe any assignment of property for the benefit of creditors made within **120 days** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF ASSIGNEE | DATE OF ASSIGNMENT | TERMS OF ASSIGNMENT OR SETTLEMENT |
| --- | --- | --- |

None
■

b. List all property which has been in the hands of a custodian, receiver, or court-appointed official within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CUSTODIAN | NAME AND LOCATION OF COURT CASE TITLE & NUMBER | DATE OF ORDER | DESCRIPTION AND VALUE OF PROPERTY |
| --- | --- | --- | --- |

**7. Gifts**

None
■

List all gifts or charitable contributions made within **one year** immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON OR ORGANIZATION | RELATIONSHIP TO DEBTOR, IF ANY | DATE OF GIFT | DESCRIPTION AND VALUE OF GIFT |
| --- | --- | --- | --- |

**8. Losses**

None
■

List all losses from fire, theft, other casualty or gambling within **one year** immediately preceding the commencement of this case **or since the commencement of this case.** (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| DESCRIPTION AND VALUE OF PROPERTY | DESCRIPTION OF CIRCUMSTANCES AND, IF LOSS WAS COVERED IN WHOLE OR IN PART BY INSURANCE, GIVE PARTICULARS | DATE OF LOSS |
| --- | --- | --- |

**9. Payments related to debt counseling or bankruptcy**

None
☐

List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of the petition in bankruptcy within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYOR IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
| --- | --- | --- |
| **Shinbaum, Abell, McLeod & Vann, P.C.**<br>**566 South Perry Street**<br>**Post Office Box 201**<br>**Montgomery, AL 36101-0201** | | **$299.00 FILING FEE**<br>**$3000.00 ATTORNEY FEE** |

4

**10. Other transfers**

None
■

a.  List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within **two years** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
|---|---|---|

None
■

b.  List all property transferred by the debtor within **ten years** immediately preceding the commencement of this case to a self-settled trust or similar device of which the debtor is a beneficiary.

| NAME OF TRUST OR OTHER DEVICE | DATE(S) OF TRANSFER(S) | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY OR DEBTOR'S INTEREST IN PROPERTY |
|---|---|---|

**11. Closed financial accounts**

None
■

List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within **one year** immediately preceding the commencement of this case. Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF INSTITUTION | TYPE OF ACCOUNT, LAST FOUR DIGITS OF ACCOUNT NUMBER, AND AMOUNT OF FINAL BALANCE | AMOUNT AND DATE OF SALE OR CLOSING |
|---|---|---|

**12. Safe deposit boxes**

None
■

List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF BANK OR OTHER DEPOSITORY | NAMES AND ADDRESSES OF THOSE WITH ACCESS TO BOX OR DEPOSITORY | DESCRIPTION OF CONTENTS | DATE OF TRANSFER OR SURRENDER, IF ANY |
|---|---|---|---|

**13. Setoffs**

None
■

List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within **90 days** preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATE OF SETOFF | AMOUNT OF SETOFF |
|---|---|---|

**14. Property held for another person**

None
■

List all property owned by another person that the debtor holds or controls.

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF PROPERTY |
|---|---|---|

5

**15.  Prior address of debtor**

None
■

If the debtor has moved within **three years** immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse.

ADDRESS                                     NAME USED                                     DATES OF OCCUPANCY

**16. Spouses and Former Spouses**

None
■

If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within **eight years** immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state.

NAME

**17. Environmental Information.**

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state, or local statute or regulation regulating pollution, contamination, releases of hazardous or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to, statutes or regulations regulating the cleanup of these substances, wastes, or material.

"Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly owned or operated by the debtor, including, but not limited to, disposal sites.

"Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, or contaminant or similar term under an Environmental Law

None
■

a. List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable or potentially liable under or in violation of an Environmental Law. Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law:

SITE NAME AND ADDRESS          NAME AND ADDRESS OF          DATE OF          ENVIRONMENTAL
                               GOVERNMENTAL UNIT             NOTICE           LAW

None
■

b. List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous Material. Indicate the governmental unit to which the notice was sent and the date of the notice.

SITE NAME AND ADDRESS          NAME AND ADDRESS OF          DATE OF          ENVIRONMENTAL
                               GOVERNMENTAL UNIT             NOTICE           LAW

None
■

c. List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which the debtor is or was a party. Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number.

NAME AND ADDRESS OF
GOVERNMENTAL UNIT                              DOCKET NUMBER                              STATUS OR DISPOSITION

6

**18 . Nature, location and name of business**

None
☐

a. *If the debtor is an individual*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within **six years** immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

*If the debtor is a partnership*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within **six years** immediately preceding the commencement of this case.

*If the debtor is a corporation*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

| NAME | LAST FOUR DIGITS OF SOC. SEC. NO./ COMPLETE EIN OR OTHER TAXPAYER I.D. NO. | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|---|---|---|---|---|
| **Dr. Deloris Victoria** | **63-1103639** | **41 Medical Arts Court HWY 10 W Greenville, AL 36037** | **Inrernal Medicine** | **1993** |

None
■

b. Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101.

NAME                                                    ADDRESS

7

## DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct.

Date **September 25, 2006**          Signature  **/s/ Deloris V. Victoria**

**Deloris V. Victoria**

Debtor

*Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571*

Form 8
(10/05)

# United States Bankruptcy Court
## Middle District of Alabama

In re   **Deloris V. Victoria**                                        Case No. _____

                                              Debtor(s)               Chapter      **7**

## CHAPTER 7 INDIVIDUAL DEBTOR'S STATEMENT OF INTENTION

■    I have filed a schedule of assets and liabilities which includes debts secured by property of the estate.

☐    I have filed a schedule of executory contracts and unexpired leases which includes personal property subject to an unexpired lease.

■    I intend to do the following with respect to property of the estate which secures those debts or is subject to a lease:

| Description of Secured Property | Creditor's Name | Property will be Surrendered | Property is claimed as exempt | Property will be redeemed pursuant to 11 U.S.C. § 722 | Debt will be reaffirmed pursuant to 11 U.S.C. § 524(c) |
|---|---|---|---|---|---|
| **225 WOODLAND HEIGHTS DR, GREENVILLE AL-- SINGLE FAMILY RESIDENCE**<br>**VALUE LISTED IS TAX ASSESSED VALUE** | **BRANTLEY BANK & TRUST** | | | | **X** |
| **COMPUTERS, EKG, TABLES, CHAIRS** | **CAMDEN NATIONAL** | | | | **X** |

| Description of Leased Property | Lessor's Name | Lease will be assumed pursuant to 11 U.S.C. § 362(h)(1)(A) |
|---|---|---|
| **-NONE-** | | |

Date   **September 25, 2006**                    Signature    **/s/ Deloris V. Victoria** _____
                                                           **Deloris V. Victoria**
                                                           Debtor

# United States Bankruptcy Court
## Middle District of Alabama

In re  **Deloris V. Victoria**

Case No. _____

_____
Debtor(s)

Chapter  **7**

# DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)

1.  Pursuant to 11 U.S.C. § 329(a) and Bankruptcy Rule 2016(b), I certify that I am the attorney for the above-named debtor and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

| | | |
|---|---|---|
| For legal services, I have agreed to accept | $ | 3,000.00 |
| Prior to the filing of this statement I have received | $ | 3,000.00 |
| Balance Due | $ | 0.00 |

2.  $__**299.00**__ of the filing fee has been paid.

3.  The source of the compensation paid to me was:

   ■ Debtor      ☐ Other (specify):

4.  The source of compensation to be paid to me is:

   ■ Debtor      ☐ Other (specify):

5.  ■ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

   ☐ I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation is attached.

6.  In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:
   a.  Representation of the debtor in adversary proceedings and other contested bankruptcy matters;
   b.  [Other provisions as needed]
      **Negotiations with secured creditors to reduce to market value; exemption planning; preparation and filing of reaffirmation agreements and applications as needed; preparation and filing of motions pursuant to 11 USC 522(f)(2)(A) for avoidance of liens on household goods.**

7.  By agreement with the debtor(s), the above-disclosed fee does not include the following service:
   **Representation of the debtors in any dischargeability actions, judicial lien avoidances, relief from stay actions or any other adversary proceeding.**

---

### CERTIFICATION

   I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

Dated:  **September 25, 2006**

**/s/ C. Brandon Sellers, III**
**C. Brandon Sellers, III**
**Shinbaum, Abell, McLeod & Vann, P.C.**
**566 South Perry Street**
**Post Office Box 201**
**Montgomery, AL 36101-0201**
**334-269-4440  Fax: 334-263-4440**

---

B 201 (04/09/06)

UNITED STATES BANKRUPTCY COURT
**MIDDLE DISTRICT OF ALABAMA**

## NOTICE TO INDIVIDUAL CONSUMER DEBTOR UNDER § 342(b) OF THE BANKRUPTCY CODE

In accordance with § 342(b) of the Bankruptcy Code, this notice: (1) Describes briefly the services available from credit counseling services; (2) Describes briefly the purposes, benefits and costs of the four types of bankruptcy proceedings you may commence; and (3) Informs you about bankruptcy crimes and notifies you that the Attorney General may examine all information you supply in connection with a bankruptcy case. You are cautioned that bankruptcy law is complicated and not easily described. Thus, you may wish to seek the advice of an attorney to learn of your rights and responsibilities should you decide to file a petition. Court employees cannot give you legal advice.

## 1. Services Available from Credit Counseling Agencies

**With limited exceptions, § 109(h) of the Bankruptcy Code requires that all individual debtors who file for bankruptcy relief on or after October 17, 2005, receive a briefing that outlines the available opportunities for credit counseling and provides assistance in performing a budget analysis.** The briefing must be given within 180 days **before** the bankruptcy filing. The briefing may be provided individually or in a group (including briefings conducted by telephone or on the Internet) and must be provided by a nonprofit budget and credit counseling agency approved by the United States trustee or bankruptcy administrator. The clerk of the bankruptcy court has a list that you may consult of the approved budget and credit counseling agencies.

**In addition, after filing a bankruptcy case, an individual debtor generally must complete a financial management instructional course before he or she can receive a discharge.** The clerk also has a list of approved financial management instructional courses.

## 2. The Four Chapters of the Bankruptcy Code Available to Individual Consumer Debtors

**Chapter 7: Liquidation ($245 filing fee, $39 administrative fee, $15 trustee surcharge: Total Fee $299)**
1.  Chapter 7 is designed for debtors in financial difficulty who do not have the ability to pay their existing debts. Debtors whose debts are primarily consumer debts are subject to a "means test" designed to determine whether the case should be permitted to proceed under chapter 7. If your income is greater than the median income for your state of residence and family size, in some cases, creditors have the right to file a motion requesting that the court dismiss your case under § 707(b) of the Code. It is up to the court to decide whether the case should be dismissed.
2.  Under chapter 7, you may claim certain of your property as exempt under governing law. A trustee may have the right to take possession of and sell the remaining property that is not exempt and use the sale proceeds to pay your creditors.
3.  The purpose of filing a chapter 7 case is to obtain a discharge of your existing debts. If, however, you are found to have committed certain kinds of improper conduct described in the Bankruptcy Code, the court may deny your discharge and, if it does, the purpose for which you filed the bankruptcy petition will be defeated.
4.  Even if you receive a general discharge, some particular debts are not discharged under the law. Therefore, you may still be responsible for most taxes and student loans; debts incurred to pay nondischargeable taxes; domestic support and property settlement obligations; most fines, penalties, forfeitures, and criminal restitution obligations; certain debts which are not properly listed in your bankruptcy papers; and debts for death or personal injury caused by operating a motor vehicle, vessel, or aircraft while intoxicated from alcohol or drugs. Also, if a creditor can prove that a debt arose from fraud, breach of fiduciary duty, or theft, or from a willful and malicious injury, the bankruptcy court may determine that the debt is not discharged.

**Chapter 13: Repayment of All or Part of the Debts of an Individual with Regular Income ($235 filing fee, $39 administrative fee: Total fee $274)**
1.  Chapter 13 is designed for individuals with regular income who would like to pay all or part of their debts in installments over a period of time. You are only eligible for chapter 13 if your debts do not exceed certain dollar amounts set forth in the Bankruptcy Code.
2.  Under chapter 13, you must file with the court a plan to repay your creditors all or part of the money that you owe them, using your future earnings. The period allowed by the court to repay your debts may be three years or five years, depending upon your income and other factors. The court must approve your plan before it can take effect.
3.  After completing the payments under your plan, your debts are generally discharged except for domestic support obligations; most student loans; certain taxes; most criminal fines and restitution obligations; certain debts which are not properly listed in your bankruptcy papers; certain debts for acts that caused death or personal injury; and certain long term secured obligations.

**Chapter 11**: Reorganization ($1000 filing fee, $39 administrative fee: Total fee $1039)

Chapter 11 is designed for the reorganization of a business but is also available to consumer debtors. Its provisions are quite complicated, and any decision by an individual to file a chapter 11 petition should be reviewed with an attorney.

**Chapter 12**: Family Farmer or Fisherman ($200 filing fee, $39 administrative fee: Total fee $239)

Chapter 12 is designed to permit family farmers and fishermen to repay their debts over a period of time from future earnings and is similar to chapter 13. The eligibility requirements are restrictive, limiting its use to those whose income arises primarily from a family-owned farm or commercial fishing operation.

## 3. Bankruptcy Crimes and Availability of Bankruptcy Papers to Law Enforcement Officials

A person who knowingly and fraudulently conceals assets or makes a false oath or statement under penalty of perjury, either orally or in writing, in connection with a bankruptcy case is subject to a fine, imprisonment, or both. All information supplied by a debtor in connection with a bankruptcy case is subject to examination by the Attorney General acting through the Office of the United States Trustee, the Office of the United States Attorney, and other components and employees of the Department of Justice.

**WARNING:** Section 521(a)(1) of the Bankruptcy Code requires that you promptly file detailed information regarding your creditors, assets, liabilities, income, expenses and general financial condition. Your bankruptcy case may be dismissed if this information is not filed with the court within the time deadlines set by the Bankruptcy Code, the Bankruptcy Rules, and the local rules of the court.

### Certificate of Attorney

I hereby certify that I delivered to the debtor this notice required by § 342(b) of the Bankruptcy Code.

| | | September 25, 2006 |
|---|---|---|
| C. Brandon Sellers, III | X  /s/ C. Brandon Sellers, III | |
| Printed Name of Attorney | Signature of Attorney | Date |

Address:
**566 South Perry Street**
**Post Office Box 201**
**Montgomery, AL 36101-0201**
**334-269-4440**

### Certificate of Debtor

I (We), the debtor(s), affirm that I (we) have received and read this notice.

| | | September 25, 2006 |
|---|---|---|
| Deloris V. Victoria | X  /s/ Deloris V. Victoria | |
| Printed Name(s) of Debtor(s) | Signature of Debtor | Date |
| Case No. (if known) | X | |
| | Signature of Joint Debtor (if any) | Date |

## United States Bankruptcy Court
### Middle District of Alabama

In re    **Deloris V. Victoria** _____    Case No. _____

                                              Debtor(s)       Chapter    **7** _____

# VERIFICATION OF CREDITOR MATRIX

The above-named Debtor hereby verifies that the attached list of creditors is true and correct to the best of his/her knowledge.

DELORIS V. VICTORIA
225 WOODLAND HEIGHTS DR
GREENVILLE, AL 36037


BANK OF AMERICA
PO BOX 41466
PHILADELPHIA, PA 19101


BRANTLEY BANK & TRUST
P.O. BOX 25
BRANTLEY, AL 36009


CAMDEN NATIONAL
3 WATER STREET
CAMDEN, AL 36726


CENTURYTEL
PO BOX 6001
MARION, LA 71260-6001


DAVID C. SCHWARTZ, ESQ.
PO BOX 11366
BIRMINGHAM, AL 35202-1366


EDGAR VICTORIA
225 WOODLAND HEIGHTS DR
GREENVILLE, AL 36037


EGAR VICTORIA
225 WOODLAND HEIGHTS DR
GREENVILLE, AL 36037


GENEZEN HEALTHCARE
PO BOX 571811
HOUSTON, TX 77257

GREENVILLE  HOSPITAL
DBA LV STABLER MEMORIAL
29 STABLER DR
GREENVILLE, AL 36037


GREER  B.  MALLETTE,  ESQ
505 20TH ST N., STE 1800
BIRMINGHAM, AL 35203-2696


HON.  PATRICIA  CONOVER
ASSISTANT UNITED STATES ATTY.
P.O. BOX 197
MONTGOMERY, AL 36101


INTERNAL  REVENUE  SERVICE
SPECIAL PROCEDURES FUNCTION
801 TOM MARTIN DR., ROOM 126
BIRMINGHAM, AL 35211


INTERNAL  REVENUE  SERVICE
P  O  BOX 21126
PHILADELPHIA, PA 19114


MBNA  AMERICA
PO BOX 17054
WILMINGTON, DE 19884


STATE  OF  ALABAMA
DEPARTMENT OF REVENUE
P.O. BOX 320001
MONTGOMERY, AL 36132


WHITNEY  BANK
228 ST CHARLES AVE
NEW ORLEANS, LA 70130

Form B22A (Chapter 7) (10/05)

In re **Deloris V. Victoria**

_____
Debtor(s)

Case Number: _____
(If known)

| | According to the calculations required by this statement: |
| | ☐ The presumption arises. |
| | ■ The presumption does not arise. |
| | (Check the box as directed in Parts I, III, and VI of this statement.) |

# STATEMENT OF CURRENT MONTHLY INCOME AND MEANS TEST CALCULATION
## FOR USE IN CHAPTER 7 ONLY

In addition to Schedules I and J, this statement must be completed by every individual Chapter 7 debtor, whether or not filing jointly, whose debts are primarily consumer debts.  Joint debtors may complete one statement only.

Debtor declares under penalty of perjury that debts are primarily non-consumer; therefore, Means Test does not apply per § 707(b)(1).

| | Part VIII. VERIFICATION | |
|---|---|---|
| 57 | I declare under penalty of perjury that the information provided in this statement is true and correct.  *(If this is a joint case, both debtors must sign.)*   Date:  **September 25, 2006** | Signature:  **/s/ Deloris V. Victoria** |
| | | **Deloris V. Victoria** |
| | | (Debtor) |

**EXHIBIT H**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

---

In the matter of:            )
                             )
Deloris V. Victoria,         ) Case No. 06-31225
                             ) Montgomery, AL
     Debtor.                 ) December 15, 2006

---

TRANSCRIPT OF 341 MEETING OF CREDITORS

APPEARANCES:

Daniel G. Hamm, Trustee
The Law Offices of Daniel G. Hamm
560 South McDonough St., Ste A
Montgomery, AL 36104

Richard D. Shinbaum
Shinbaum, Abell, McLeod & Vann
P.O. Box 201
Montgomery, AL 36101

Tina Hayes
Bankruptcy Administrator's Office
One Church Street
Montgomery, AL 36104

Brad Hightower
Christian & Small LLP
1800 Financial Center
505 North 20th Street
Birmingham, Alabama 35203

---

Transcriber:                    Patricia Basham
                                6411 Quail Ridge Drive
                                Bartlett, TN  38135
                                901-372-0613

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

2

1    MR. HAMM: Dr. Victoria, my name is Dan Hamm.  I happen

2    to be the trustee assigned to your case on the docket.  First

3    of all, let's begin by raising your right hand.

4              (DELORIS V. VICTORIA, DEBTOR, PREVIOUSLY SWORN)

5    MR. HAMM: This hearing was continued for a variety of

6    reasons.  Let me get your name, please.

7              MR. HIGHTOWER: Brad Hightower on behalf of Greenville

8    Hospital.

9    MR. HAMM: Okay.  And we have Tina Hayes with the

10   bankruptcy administrator's office here and your attorney, Mr.

11   Shinbaum.

12                         EXAMINATION

13   BY MR. HAMM:

14   Q.       I have got some documents that were provided to our

15   office with respect to your accounts receivable that were owed

16   to the business, and I don't have the petition date with me

17   right here.

18             MR. SHINBAUM: 25 of September.

19             MR. HAMM: 9-25, okay.

20   Q.       We asked for some information regarding some accounts

21   receivable and we received some documents.  I assume or presume

22   that you provided these to Mr. Shinbaum's office.  Let me show

23   you a document that the first page, it looks like about a – I

24   think it is a thirty-four page document or thirty-four pages.

25             MR. HAMM: First of all, Ms. Hayes, did you receive a

3

1    copy of this?

2              MS. HAYES: I got a copy this morning.

3    Q.        Can you tell me what – and this has got – is that

4    Nexium?  Is that what that says?

5    A.        Yeah.  It is probably just –

6    Q.        It appears to be some type of sticky note on the

7    front that says Nexium.  Can you tell me what that document is,

8    what all of that is?

9    A.        It's not from me.

10   Q.        I am sorry.

11   A.        It's not from me.

12   Q.        Who is that from?

13   A.        It's not from me, this first page.

14   Q.        Can you tell me what the next page is?

15   A.        These are the taxes.

16   Q.        I am sorry?

17   A.        These are the taxes.

18   Q.        Okay.

19   A.        They are all of the taxes. Some of this stuff, not

20   all – they are all taxes.

21   Q.        It's all information related to taxes, okay.  The

22   next item that I have is I think about a four to six page

23   document that has in the upper, left-hand corner, Cahaba GBH-

24   AL.  Can you tell me what this document is?

25   A.        Medicare payments.

4

1    Q.      I am sorry?

2    A.      Medicare payments.  Medicare and Blue Cross.

3    Q.      If you will look at the top of the first page of that

4    document, does it start off page two of two?  Is page one in

5    there?

6            (Pause)

7            (Inaudible conversation between counsel.)

8            MR. HAMM:  That is correct.  Mr. Shinbaum is correct

9    about that.  I am sorry.  Why don't you request them of Mr.

10   Shinbaum.  That might be the best thing to do.

11           MR. SHINBAUM: I would have to (inaudible) but it can

12   be done.  I would have to redact the patients' names.

13           MR. HAMM: You are right about that.

14           (Inaudible)

15   Q.      Could I take a look at that?  What is this?  What

16   does this document reflect?  Is this a remittance advice from

17   Cahaba?

18   A.      Medicare.

19   Q.      I am looking at the bottom of page two of two, bottom

20   left, and it says billed amount, sixteen hundred and twenty-

21   three dollars; is that correct?

22   A.      Uh-huh.

23   Q.      And over to the right, it says check amount, one

24   thousand and forty-one dollars?

25   A.      Uh-huh.

5

1    Q.       How often do you receive –

2    A.       Medicare is every week.

3    Q.       Every what?

4    A.       Every week.

5    Q.       Okay.  Would this reflect the activity for one week?

6    A.       One week.

7           MR. SHINBAUM: Let me help you, Dan.  I don't think it

8    reflects the activity for one week; it reflects what was paid

9    for one week.

10    Q.       Yes.  That would be the payment activity for one

11    week; is that correct?  You only received a thousand and forty-

12    one dollars from Cahaba for that week?

13    A.       Uh-huh.

14    Q.       Can you tell me when you would have received that

15    amount of money; what date you would have received that amount

16    of money?

17    A.       It is usually ten days after –

18    Q.       Well, I don't have that first page.  That was part of

19    my question.  I don't see where I have the first page.  What

20    date have you got reflected on your documents?

21    A.       On 10-28.

22    Q.       You received those monies on 10-28?

23    A.       10-28.

24    Q.       Do you have – if you receive this each week, they pay

25    each week, then you would have received some money prior to

6

1    October 28; right?

2    A.        Yeah.

3    Q.        Do you have any idea how much you would have received

4    prior to October 28?

5              MR. SHINBAUM: Is that the Blue Cross?

6              MR. HAMM: No, this is Cahaba.

7              MR. SHINBAUM: Blue Cross handles Medicare and

8    Medicaid.

9              (Inaudible)

10             MR. SHINBAUM: Date of service is referenced here in

11   this column.  Referenced in this column over here is date of

12   service.  (Inaudible) It is like this should have from 10-2,

13   okay.  It has been service from 9-6, 9-7, 8-11, 8-31, 8-23, 9-

14   6, 9-7, 8-31, 8-11, 8-23, 9-4, 9-6 and 9-20.  So that entire

15   check of six fifty-five seventy-three should have come to you.

16             MR. HAMM: Right.

17             MR. SHINBAUM: Because all of the service was done pre

18   bankruptcy but paid after bankruptcy.  And then if you go to –

19             MR. HAMM: What date are you looking at right now?

20             MR. SHINBAUM: 10-2.

21             MR. HAMM: Have these been provided to our office?

22             MR. SHINBAUM: Yes, these were all provided.  There

23   were four stacks on faxes.

24             MR. HAMM: I have got three and a four.

25             MR. SHINBAUM: I will go back and re-fax again.

7

1             MR. HAMM: How many items did you get, Ms. Hayes?

2             MR. HAYES: I will look at these.

3             MR. HAMM: But there were four separate attachments?

4             MR. SHINBAUM: Four separate attachments.

5             MR. HAMM: I only received three.

6             MR. SHINBAUM: Okay.  I will go back and redo it, then.

7             MR. HAMM: Because these are the three items that I

8    received.

9             MR. SHINBAUM: There were four because it took me four

10   groups to do it.

11            MR. HAMM: Okay.

12   Q.        Dr. Victoria, other than from Cahaba - that check

13   comes from Cahaba; is that correct?

14   A.        Uh-huh.

15   Q.        Other than Cahaba, who else would you receive money

16   from?

17   A.        Blue Cross.

18   Q.        Blue Cross Blue Shield.

19            MR. SHINBAUM: Also there would be Medicaid.

20            MR. HAMM: Right.

21            MR. SHINBAUM: Alabama Medicaid.  This is Medicare.

22   Then there would be Medicaid payments and then there would be

23   the Blue Cross Blue Shield William Berkley's, which are these.

24   Q.        Dr. Victoria, how do you determine how much money is

25   owed to your practice?

8

1    A.        We have in our office, we have this.

2    Q.        Could I look at that?

3    A.        Yes.

4    Q.        Is it broken down into how this amount is determined?

5    A.        No, that's the charges and the payments to the

6    office.  (Inaudible)

7    Q.        How do you determine which patient owes you what sum

8    of money?

9    A.        Basically about ninety-nine percent is insurance, so

10   -

11   Q.        But how do you tell what patient owes you what money

12   so it can be accounted?

13   A.        Yeah, we do have the number.  I gave you that.

14   (Inaudible)

15   Q.        Do you have a ledger for each patient that shows when

16   services were rendered to that patient and what was billed to

17   that patient?

18   A.        It is in the report but it's, as I said, after the

19   insurance payment, that's with our ledger for them.

20   Q.        Do you have the actual ledgers?  I want a copy of the

21   actual ledgers, that listing that would reflect how much you

22   were owed at any particular time.

23   A.        Yeah, because, as I said, once we have the payment,

24   then she does whatever payment of that, the co-pay they owe us,

25   that's the list of the patients.

9

1    Q.        Can I come down to your office this afternoon?

2    A.        Oh, I am on my way to Atlanta.

3    Q.        When are you going to be back?

4    A.        I will be back Monday.

5    Q.        You are going to be in the office Monday?

6    A.        Yeah, sure.

7    Q.        I want to come by your office Monday, okay, and I

8    want to see – if I walked in the door, I want to know how I am

9    billed, okay, how you bill Blue Cross, everything.  I want to

10   know the entire procedure.

11        MR. SHINBAUM: Well, could we coordinate that visit

12   where I could attend also?

13        MR. HAMM: Okay.

14        MR. SHINBAUM: It might short-cut some of this.

15        MR. HAMM: Okay.

16        MS. HAYES: Do you do your billing by hand or is it in

17   a software program?

18        DR. VICTORIA: It is in a software, yes.

19   Q.        What kind of program do you use?

20   A.        We have (inaudible) System of Florida that's used as

21   the summary report.

22        MR. SHINBAUM:  I need to know the programming you are

23   using.  I need a copy of the program, okay, to give to Dan.  I

24   need a copy of the program and I need all data for my office so

25   I can show him and I can transcribe it.

10

```
 1              MR. HAMM: Right.

 2              MS. HAYES: It will show postings.

 3              (Inaudible)

 4              MR. SHINBAUM: She is about seven or eight thousand a

 5      month is her income.

 6              MR. HAMM: Net or hers?

 7              MS. HAYES: Net, I think.

 8      Q.       Dr. Victoria, we are reflecting an income of about

 9      fifteen thousand dollars a month.  Where did you come up with

10      that figure?

11      A.       As I said, this is the listing of –

12      Q.       Can I look at this?

13      A.       Uh-huh.  Yes.

14      Q.       This is the total of your insurance payments?

15      A.       September.

16      Q.       I am sorry?

17      A.       September payments.

18      Q.       Right.  Who prepares this?

19      A.       We have it in the office.

20      Q.       My question is who prepares this?

21      A.       We have a lady that does it.

22      Q.       Okay.  Where is this lady?

23      A.       She is in my office.

24      Q.       Okay.  Do you deposit this money into your bank

25      account?
```

11

1    A.        Uh-huh.

2    Q.        Every money that comes into your office is deposited

3    into your bank account?

4    A.        Bank account.

5    Q.        Now does your husband practice with you?

6    A.        No.

7    Q.        He does not.  Where is his office located?

8    A.        It's in Luverne.

9    Q.        And none of his patients come to your office?

10   A.        No.

11   Q.        Okay.  Do you all have a joint checking account?

12   A.        (Inaudible)

13   Q.        I am sorry?

14   A.        No, uh-uh.

15   Q.        Tell me about how you, from your business standpoint

16   and your personal standpoint, tell me how you do your banking.

17   A.        It is all deposited in my bank and then we pay out

18   our expenses through that account.

19   Q.        From this account?

20   A.        Right.  And I have supplied them with whatever

21   expenses we have every month.

22   Q.        Okay.  I am not worried about the expenses right now.

23   I am trying to figure out income.

24   A.        (Inaudible)

25   Q.        And what bank account is this money deposited into?

12

1    A.        It's Whitney Bank.

2    Q.        Whitney Bank?

3    A.        Yes.

4    Q.        Is it deposited into an account – what name is on

5    that account?

6    A.        It's Deloris Victoria.

7    Q.        Deloris Victoria?

8    A.        Uh-huh.

9    Q.        P.C. or just Deloris Victoria?

10   A.        Just Deloris Victoria.

11   Q.        Let me ask how much is in that account today?

12   A.        It's about three thousand.

13   Q.        I am sorry?

14   A.        About three thousand.

15   Q.        Have you made any deposits into that account

16   recently?

17   A.        We have Medicaid.  It's automatic.  So yesterday it

18   was deposited.

19   Q.        Okay.  Does this include the Medicaid deposit?

20   A.        Medicaid, yeah.

21   Q.        Okay.  So of course you aren't making that deposit;

22   that is wired into the account, right?

23   A.        Uh-huh.

24   Q.        It comes into the account automatically.  Does

25   anybody else pay you automatically into that account?

13

```
 1    A.        That's the only one.

 2    Q.        Medicaid in the only one?

 3    A.        Yes.

 4    Q.        How about Blue Cross Blue Shield?

 5    A.        That's like a check.

 6    Q.        It is a separate check?

 7    A.        Yes.

 8    Q.        Okay.   Is this a fairly average month, twelve

 9    thousand, that you receive into that account?

10    A.        (Inaudible)

11              MR. SHINBAUM: That is October.

12    Q.        And this is all of the money coming into your

13    practice?

14    A.        Uh-huh.

15    Q.        And you pay your expenses how?   Do you write a

16    personal check?

17    A.        We just write it from the bank.

18    Q.        From the same bank account?

19    A.        Uh-huh.

20    Q.        And you pay the office expenses from that?

21    A.        Right, uh-huh.

22    Q.        How long does it take these companies to pay you?

23    Let's say Blue Cross Blue Shield, if somebody comes in for

24    service today, how long will it take before that check -

25    A.        Seven to fourteen days.
```

14

```
 1    Q.        How about Tricare?

 2    A.        Tricare is two months, three months.

 3    Q.        I notice you have got somebody labeled just Care, C-

 4    A-R-E.

 5    A.        Care is Medicaid.

 6    Q.        How long does it take there?

 7    A.        It is seven to fourteen days.

 8    Q.        Blue Cross Blue Shield, seven to fourteen days?

 9    A.        Uh-huh.

10    Q.        Care, seven to fourteen days.

11    A.        (Inaudible)

12    Q.        I notice you are receiving a check from the

13    Department of Treasury.  What would that be for?

14    A.        We have patients that are - I guess that works for

15    the government.

16    Q.        Okay.  But the government wouldn't be paying their

17    medical expenses; would they?

18    A.        (Inaudible)

19    Q.        How about Life Investors, how long does it take them

20    to pay?

21    A.        Two to three months also.  If you notice in there, my

22    private insurance are around the ninety-five percent and then

23    Blue Cross is thirty, Medicare is thirty, and Medicaid is

24    thirty.  So those are the major players.

25    Q.        Blue Cross -
```

15

1    A.        Medicare, Medicaid, which is thirty/thirty percent.

2    Q.        Okay.  (Inaudible), how long does it take them?

3    A.        Three months.  As I said, most of the private

4    insurance are two to three months.

5    Q.        I notice we have got office payment.  Is that where

6    people came in and actually paid you out of their pocket?

7    A.        That's the one that I was showing to him that we log

8    it in.

9    Q.        Okay.

10   A.        The co-pays and whatever they – the twenty percent

11   (inaudible).

12   Q.        Okay.  I see.  So the total charges would be the

13   total charges to the patient as a whole.  The payment may be

14   from the individual, this column right here that reflects

15   payment?

16   A.        This column is our co-pays and the twenty percent

17   that's from whatever they have, and then – that's the reason

18   why we can only go how much, you know, they allow us.  That's

19   the explanation of services.

20   Q.        Okay.  But you have one bank account?

21   A.        One bank account.

22   Q.        Do you have an automobile?

23   A.        We have (inaudible).

24   Q.        I am sorry.

25   A.        I don't have my own.

16

| | | |
|---|---|---|
| 1 | Q. | Okay.  How did you get here today? |
| 2 | A. | (Inaudible) |
| 3 | Q. | How many automobiles does your husband have? |
| 4 | A. | He's got three. |
| 5 | Q. | What kind of cars are they? |
| 6 | A. | I drive it, too, but it's just my kids' cars. |
| 7 | Q. | What kind of cars are they? |
| 8 | A. | He has got some Mercedes and a Porsche. |
| 9 | Q. | Do you know the numbers on the back of the Mercedes? |
| 10 | A. | (No response.) |
| 11 | Q. | Do you know if they are paid for? |
| 12 | A. | One is paid for. |
| 13 | Q. | One is? |
| 14 | A. | Uh-huh. |
| 15 | Q. | Tell me about any real estate you may have owned in |
| 16 | | the last four or five years.  Have you – |
| 17 | A. | Just our home. |
| 18 | Q. | The home in Greenville? |
| 19 | A. | Yes. |
| 20 | Q. | Anything else? |
| 21 | A. | We have a townhouse in Atlanta that's my husband's |
| 22 | | and we got it for my daughters. |
| 23 | Q. | Okay.  Has your name ever been on the deed? |
| 24 | A. | No, sir. |
| 25 | Q. | It has not? |

17

```
 1    A.       No, uh-uh.

 2    Q.       And you are pretty certain of that?

 3    A.       (No audible response.)

 4    Q.       Anything else?

 5    A.       (No audible response.)

 6    Q.       Do you know the address of the townhouse in Atlanta?

 7    A.       375 Highland Avenue.

 8    Q.       Okay.  And is that an Atlanta address?

 9    A.       Uh-huh.

10    Q.       Any other real estate?

11    A.       Did we say the townhome –

12             MR. SHINBAUM: You said the townhome and the house in

13    Greenville.

14    A.       We have a timeshare.

15    Q.       Right.  Anything else?

16    A.       No, sir.

17    Q.       Would that be the Isle of the Valley?

18    A.       Yes.

19    Q.       What's the nature of your husband's practice?

20    A.       He's a surgeon.

21    Q.       Do you use an accountant in your practice?

22    A.       We do.

23    Q.       Who do you use?

24    A.       We have Kathy Purdue for Luverne.

25    Q.       Kathy Purdue?
```

18

1    A.        Uh-huh.

2    Q.        And she is from Luverne, Alabama?

3    A.        Yes.

4    Q.        How many employees do you have that work with you?

5    A.        I have two and one part-time.

6    Q.        You have two full-time employees?

7    A.        Yes.

8    Q.        Have all of the monies that you have received in your

9    practice, have they been deposited into your account, your

10   Deloris Victoria account?

11   A.        Correct.

12           MR. HAMM: Have you all got anything?

13           MR. HIGHTOWER: I have some questions for her.

14   BY MR. HIGHTOWER:

15   Q.        Dr. Victoria, my name is Brad Hightower.

16   A.        How are you doing today?

17   Q.        I represent Greenville Hospital. There was a

18   gentleman here named Greer Mallette the last time that you came

19   and asked you some questions, and I am not certain what all he

20   asked you. But if I ask you the same question again, I

21   apologize.

22           MR. HIGHTOWER: Do you have a copy of her petition and

23   schedules that she could look at?

24           (Pause)

25   Q.        Before I get to that, you have a medical office space

19

1    leased with Greenville Hospital; is that correct?

2    A.        (Inaudible)

3    Q.        Are you aware it is not – you didn't list it in your

4    bankruptcy petition and schedules.  There is a space – in what

5    you have got in your hand, there is a space in there for

6    listing of any leases and there is nothing in there, it is not

7    listed.  Are you aware that it is not listed in there?

8    A.        (No response.)

9    Q.        What is your intention regarding that lease?  Do you

10   plan on staying in the lease or do you plan on breaching that

11   lease?

12   A.        I personally heard that we had to get out of there.

13            MR. HIGHTOWER: Are you saying that it is her intention

14   to reject the lease?

15            MR. SHINBAUM: Right, unless you all want to

16   renegotiate.

17            MR. HIGHTOWER: Can she go ahead and file some sort of

18   statement of intention saying that she rejects the lease?

19            MR. SHINBAUM: Okay.  He wants to know if you want to

20   reject the lease.  Okay.  I will talk to you in a second.

21   Q.        Have you been subleasing the space to anyone else?

22   A.        No.

23   Q.        It was my understanding that the lease may have been

24   – the space may have been subleased to a Dr. Prayer and a Dr.

25   Tomkins.

20

1    A.        Yeah, he comes to my office maybe once in two months

2    but it is nothing that's his.    (Inaudible) with my practice.

3    Q.        So you allow others to use the space?

4    A.        Right.    It's for courtesy because he sees our

5    patients.  I am not concerned about the business part; I am

6    concerned about my patients.

7    Q.        Do you charge these doctors any amount of money?

8    A.        No.

9    Q.        You said that your husband owns a townhouse in

10   Atlanta that was purchased for your –

11   A.        Yeah, and I didn't have anything to do with it.  It

12   is my husband's.  It is not mine.

13   Q.        Let me ask you a few questions about it, if you don't

14   mind.  How much was the purchase price of the townhouse?

15   A.        Well, I didn't think it is your business but –

16             MR. HAMM: Go ahead and answer it if you know.  If you

17   don't know, you don't know.

18   A.        I think about two hundred and something.

19   Q.        When was it purchased?

20   A.        My daughter was in school and that's why he bought

21   it, for my daughter.

22   Q.        Do you know about what dates it was purchased?

23   A.        2002, I think.

24   Q.        And I know you said that it was purchased by your

25   husband but how was it paid for?

21

1    A.        I am paying the rent because I do have an office also

2    in Atlanta at the time, so I pay the rent, so, in turn, I pay

3    the mortgage.

4    Q.        It has a mortgage on it?

5    A.        Right.

6    Q.        What's the amount of the mortgage?

7    A.        About sixteen hundred.

8    Q.        The total debt on the mortgage.  Is it financed

9    entirely?  Did you make a down-payment on this townhouse?

10   A.        He did.

11   Q.        Do you know about how much?

12   A.        I think about fifty thousand.

13   Q.        So there is approximately a hundred and fifty

14   thousand dollar mortgage after that payment?

15   A.        (No response.)

16   Q.        How much is owed on the mortgage today?

17   A.        About a hundred thirty, a hundred forty.

18   Q.        And you said that you helped to pay the mortgage or

19   is your husband paying the mortgage?

20   A.        Yes, I am renting it because I use it when I go to

21   Atlanta for the other office.

22   Q.        You rent the space, you rent the townhouse?

23   A.        Right.

24   Q.        From your daughter?

25   A.        Yes.

22

1    Q.         And you pay your daughter how much?

2    A.         About –

3              MR. HAMM: Wait a second.  Do you rent it from your

4    husband or your daughter?

5              DR. VICTORIA: Well, it is kind of like both.

6              MR. HAMM: Your husband owns the property?

7              DR. VICTORIA: Right.

8              MR. HAMM: But the rent is received by whom?

9              DR. VICTORIA: I guess it is received by him because I

10   pay directly to the mortgage company .

11             MR. HAMM: The rent is how much again?

12             DR. VICTORIA: About sixteen hundred.

13             MR. HAMM: So when you make out a check for that rent,

14   who does the check go to?

15             DR. VICTORIA: The checks goes to the mortgage company.

16   BY MR. HIGHTOWER:

17   Q.         But you said you are renting it from who?

18   A.         Huh?

19   Q.         Who are you renting it from?  Is there a written

20   agreement or is it just an oral agreement?

21   A.         Verbal, yes.

22   Q.         Verbal agreement.  And who is the agreement made

23   with?

24   A.         My husband and my daughter.

25   Q.         Look at that stack of paper your lawyer handed you.

23

1    You can just hold onto it, if you don't mind.  If you would

2    flip a couple of pages until you see at the top "Schedule-A,

3    Real Property."  Your home where it says in the column listed

4    husband and wife, joint or community, it should be over towards

5    the right-hand side of the page, there is just a dash there.

6    It doesn't say anything.  It doesn't indicate how it is owned.

7    How is the home owned?

8    A.        How much we owe?

9    Q.        You own the home with your husband?

10   A.        Right.

11             MR. SHINBAUM: They own it jointly.

12   Q.        Have you always owned it jointly?

13   A.        That house, yes.

14   Q.        Do you own any property that is located outside of

15   the U.S.?

16   A.        No, I don't.

17   Q.        Do you have family, extended family, outside of the

18   country?

19   A.        Yes.

20   Q.        Have you transferred any money or property to any of

21   your family members in the last two years?

22   A.        No.

23   Q.        None?  Have you given any gifts to them?

24   A.        (No audible response.)

25   Q.        On your mortgage and on your home that is listed in

24

1    Schedule-A, you have a four thousand dollar a month mortgage

2    listed as an expense.  What is the term, the number of years

3    over which you have to pay your mortgage back?

4    A.        I think it has been like about ten years.

5    Q.        Is it a fifteen-year mortgage?

6    A.        It must be.

7    Q.        If you are paying four thousand dollars a month on a

8    fifteen-year mortgage, it seems a little bit high for a

9    fifteen-year mortgage when the mortgage debt is only two

10    hundred and ninety thousand dollars.

11    A.        I don't know.

12    Q.        Are you paying extra on it each month or is that the

13    regular monthly payment?

14    A.        It is the regular one.  My husband has been paying

15    it.

16    Q.        Your husband pays it.  Your husband pays four

17    thousand dollars a month on the mortgage and he has, you think,

18    about ten years left on the mortgage?

19    A.        Yes, I think.

20    Q.        If you would flip to Schedule-B which is titled

21    "Personal Property," do you see listing number five where it

22    says books, pictures, other art objects, antiques, et cetera?

23    A.        Okay.  Books, pictures.

24    Q.        Do you see that listing?

25    A.        Uh-huh.

25

1    Q.      You marked none.  Do you have anything that falls

2    under that category that's your property?

3    A.      Not really to mention.

4    Q.      Do you have any art work?

5    A.      No.

6    Q.      Do you have any collectibles that are worth any

7    value?  None?

8    A.      None.

9    Q.      If you would flip to the next page, number thirteen

10    says stock and interest in incorporated and unincorporated

11    businesses.  You checked none.  Is that correct?

12    A.      None.

13    Q.      Is your business incorporated?  What type of

14    business?  Do you have a corporation or any legal entity that

15    your business operates under?

16    A.      It was incorporated and then they switched it to a

17    limited partnership.

18    Q.      What is it?

19    A.      It is a limited partnership now.

20    Q.      Do you have any stock in it?

21    A.      No.

22    Q.      Number fourteen says interest in partnerships or

23    joint ventures.  You checked none.  You said that your business

24    is a partnership; is that correct?

25    A.      It is an LLC.

26

1    Q.      Your business is a limited liability company?

2    A.      Uh-huh.

3    Q.      What is the name of it?

4    A.      Medical Health Services of Alabama.

5    Q.      Number twenty-five is automobiles, trucks, trailers,

6   and then you previously said that your husband has two Mercedes

7   and a Porsche.  Which one of those do you drive?

8    A.      Sometimes I drive – I drive (inaudible).

9    Q.      You drive which one?

10   A.      Everything I drive.

11   Q.      Do you have a primary one that you drive the most?

12   A.      I just catch a ride from everybody.  I just work too

13  much.

14   Q.      There is not one of the three that you primarily use?

15   A.      No.

16   Q.      Why is it that all of the cars that are owned in your

17  family are all owned by your husband instead of you?

18   A.      I don't know.  He just wanted to have his name on

19  those.

20   Q.      Why is that?

21   A.      I just don't have any money to buy it.

22   Q.      You don't have any money to purchase a car?

23   A.      No.

24   Q.      Later in the paper work that you filed, you show that

25  you have income – you show you have gross income of fifteen

27

1    thousand dollars a month and after you pay all of your bills,

2    that you have left over one thousand, eight hundred and ninety

3    dollars a month.  Is that correct?

4    A.        (No response.)

5    Q.        Certainly that's money to pay for a car; isn't it?

6    A.        (No response.)

7    Q.        You don't think so?

8    A.        (Inaudible)

9             MR. HIGHTOWER: Did she provide a list of all of her

10   jewelry?  Was that previously requested?

11            MR. HAMM: I have not requested such.  I am not aware

12   of requesting such.  I will tell you for your information we

13   have taken some pictures of the outside of the home and the

14   stuff on the inside.  We are going to have that evaluated.  We

15   will make a decision whether to have an appraiser in to

16   evaluate.

17            MR. HIGHTOWER: Are you going to look into her jewelry

18   that she owns other than her –

19            MR. HAMM: That would be part of the items that – yes,

20   that is going to be items that –

21            MR.  HIGHTOWER: Let  me  see  if  I  have  any  other

22   questions.

23   BY MR. HIGHTOWER:

24   Q.        Would you turn to Schedule-F?

25            MR. HAMM: I recall the jewelry coming up and I think

28

1    that you had given the jewelry away; is that correct?

2              DR. VICTORIA: Correct.

3              MR. HAMM: Tell me – well, we will go into that in a

4    second.  I will let you go ahead with your questions.

5              DR. VICTORIA: The reason why we did it is because

6    like, when we went to the Philippines, we just figure out that

7    they should get it.  If something happened to us, it –

8    BY MR. HAMM:

9    Q.        When did you give it away?

10   A.        Probably like a couple of earrings.

11             MR. SHINBAUM: No, no.  When?

12             DR. VICTORIA: when we went to the Philippines in

13   December of last year.

14   Q.        What all did you give away?

15   A.        Maybe a couple of earrings, a couple of rings.  It

16   was not a lot.

17   Q.        And who did you give it to?

18   A.        To my daughters.

19   Q.        And have you got two daughters or one?

20   A.        Two daughters.

21   Q.        Two?

22   A.        Uh-huh.

23             MR. HAMM: Go ahead.

24   BY MR. HIGHTOWER:

25   Q.        Exactly what jewelry was it that you – I asked you

29

1    earlier if you had given any property or money to your family

2    members in the last two years, and you just said that you gave

3    them some jewelry last year.

4    A.        Let me explain to you.  I do not have a recent

5    appraisal, so I would not know exactly if it is still the same

6    amount or if it is higher or whatever.

7    Q.        I didn't ask you how much it was valued.  I just

8    asked you earlier if you had given anything at all to your

9    family members.

10   A.        I am sorry.  But, as I said, (inaudible).

11   Q.        So the correct answer to that question is that you

12   have given them some jewelry?

13   A.        Yeah.

14   Q.        Do you have in your mind an approximate value of the

15   jewelry that you gave them?

16   A.        Less than five thousand.

17   Q.        Now that you have told me that you gave your family

18   some jewelry, is there anything else, money, that you have

19   given them in the last two years?

20   A.        No.

21   Q.        Do you see Schedule-F on your bankruptcy paper work?

22    The first listing is for a creditor named Camden National.  It

23   says it is a line of credit.  Is that a business line of credit

24   or was that for personal purchases?

25   A.        Business.

30

1    Q.        Business?

2    A.        Business.

3              MR. HAMM: Let me interrupt you.  Are you planning a

4    2004 examination?

5              MR. HIGHTOWER: No.  If I can get everything – I assume

6    I can get everything in this –

7              MR. HAMM: Well, generally we don't go with a – a

8    meeting of creditors –

9              MR. HIGHTOWER: Is this a little bit much for you guys?

10             MR. HAMM: Yeah, far more than what we normally do.  I

11   don't want to go through this and then a 2004 examination.  If

12   you are going to do a 2004 –

13             MR. HIGHTOWER: I don't expect to do one unless some

14   information just seems capooie and inaccurate at this point.

15   I can't tell.  I am trying to just get a basis for determining

16   if I need to do one or not.

17             MR. HAMM: Okay.  Generally we limit – okay.  And I

18   know you are asking questions about the assets and liabilities

19   in the 341, but go ahead and let's see where we go.

20             MR. HIGHTOWER: I don't normally do this in most cases.

21             MR. HAMM: I know, and we don't normally do it.  In

22   this case, since Dr. Victoria is up here, and we put it at the

23   end, but I don't want to go through this and then you come

24   forward and ask for a 2004 examination.  I think that is a

25   little unfair for the way we do it down here.  I will say that.

31

1          MR. HIGHTOWER: The judge may find that that is not

2     appropriate?

3          MR. HAMM: No.  You are going to be entitled to a 2004

4     exam.

5          MR. SHINBAUM: If you ask for one, he is going to give

6     you one.

7          MR. HAMM: He is going to give you one, but I just

8     don't – I think it is wrong for us to sit here and take her

9     time or take Mr. Shinbaum's time and her time, and I appreciate

10    you coming down, and then coming along and ask for a 2004

11    examination.

12         MR. HIGHTOWER: I understand.  I came the last time,

13    drove down here from Birmingham and no one showed up and no one

14    calling to let me know that no one was coming, and I didn't

15    come down here again, so I would appreciate it if I could just

16    –

17         MR. HAMM: Sure.  Go ahead.

18         MR. HIGHTOWER: I will try to move along a little

19    faster.

20         MR. HAMM: Okay.

21         DR. VICTORIA: Am I allowed to say something?

22         MR. HAMM: When it gets back to your turn.

23         MR. SHINBAUM: Just answer the questions.

24         DR. VICTORIA: Okay.

25    BY MR. HIGHTOWER:

32

1    Q.        Can you look at Schedule-J for me?  These are the

2    listing of your expenditures.

3    A.        Uh-huh.

4    Q.        You list for transportation, not including car

5    payment, seven hundred dollars a month.    How much

6    transportation do you – do you travel a lot for your practice?

7    A.        I travel to Atlanta.

8    Q.        Is this for gas mostly?

9    A.        Yes, and my husband drives from and to hospitals, two

10   hospitals.

11   Q.        Okay.   How about charitable contributions of a

12   thousand dollars.

13   A.        Oh, yeah.

14   Q.        Who do you make charitable contributions to?

15   A.        My church and then (inaudible) church that we give

16   money to, and we have my daughter's church that we are giving

17   to her.   That's it.

18   Q.        Okay.

19   A.        And my son's church.

20   Q.        You list your spouse's debts as three thousand, five

21   hundred dollars.  Just roughly what is that for?

22   A.        I think it is more than that.  I think they under

23   estimated it.  I forgot to ask you if this is – what's this, a

24   business one or –

25            MR. SHINBAUM:  If you will recall, that was after – it

33

1    was thirty-five thousand combined income estimate and then you

2    gave us the estimate of business expenses –

3              DR. VICTORIA: Okay, okay.

4              MR. SHINBAUM: With a total income of about fifteen

5    four a month.

6              DR. VICTORIA:  (Inaudible)

7    BY MR. HIGHTOWER:

8    Q.        So that three thousand, five hundred dollars is for

9    all of your husband's expenses?

10   A.        I think – I can't figure out because I know that he

11   pays the bank (inaudible).  I am trying to figure out what all

12   is included in there.  I think the home is included, plus the

13   cars is included.  These are like insurance for the car,

14   insurance for the house.

15   Q.        You list separately a twelve hundred dollar month

16   payment for auto insurance.  I assume that means it is not

17   included in the thirty-five hundred dollars.

18   A.        Okay.  (Inaudible)

19   Q.        One last question for you.  You list, after all of

20   your income and expenses are considered, you listed at the end

21   of the month that you have net income of one thousand – it's at

22   the very bottom of that page – one thousand, eight hundred and

23   ninety dollars a month.  Is that what you see at the bottom of

24   that page in the right-hand side?  Is that number accurate?

25   A.        Approximate.

34

1              MR. HIGHTOWER: Thank you.

2    BY MS. HAYES:

3    Q.        I just have a few.  My name is Tina Hayes and I am

4    with the bankruptcy administrator's office.  I just have some

5    follow-up questions.  I was not here during your initial

6    testimony.

7              MS. HAYES: Richard, I do think some of these schedules

8    are going to have to be amended.

9    Q.        The firearms, are those in your name or your – do

10   those belong to you or your husband?

11   A.        My husband.

12   Q.        And do you know approximately how many he owns?

13   A.        No.

14   Q.        And do you have life insurance?

15   A.        Uh-huh.

16   Q.        Is that term or whole life?

17   A.        It is term.

18   Q.         Now  those  weren't  listed  originally  in  your

19   schedules.  How much approximately at the time you filed your

20   bankruptcy was owed to you in accounts receivable?

21   A.        I would say twelve thousand because that's monthly

22   income.

23   Q.        That's not including the outstanding amounts, the

24   twenty percent of what insurance doesn't cover?

25   A.        (Inaudible)

35

1    Q.      Okay.  The notes from last time said you had accounts

2    receivable from about thirty to forty thousand dollars a month.

3    A.      I don't think so.

4        MR. SHINBAUM: We used that, Tina, because the accounts

5    receivables, the way they were figured is she may be billing a

6    client of Medicaid twenty thousand dollars and they may only

7    allow eight thousand in payments.

8        MS. HAYES: Right.

9        MR. SHINBAUM: And you can't get anything else on that.

10       MS. HAYES: If you will just clarify that.

11       MR. SHINBAUM: Okay.

12       MS.  HAYES:  And  also  in  Schedules  D,E,  and  F,

13    particularly Schedules E, where all the taxes are, they don't

14    seem to match up with the documents that you provided to me,

15    and if you could break those down, what is personal and what is

16    business.

17       MR. SHINBAUM: Break it down, okay.

18       MS. HAYES: And Mr. Hightower is going to go through

19    Schedule "F."  What we had put down as consumer, she testified

20    at least one of them is a business debt.  So if you could go

21    through with her and let us know.

22       MR. SHINBAUM: Which one is that?

23       MS. HAYES: On the first one, the only one we got to

24    was Camden National.  It is a line of credit.

25       MR. SHINBAUM: It is line of credit, yeah.

36

1          MS. HAYES: And we had it as a consumer and it is a

2     business debt.

3          MR. SHINBAUM: I have the note for you.  Did I give you

4     the note?

5          MS. HAYES: No.

6          MR. SHINBAUM: Okay.

7          MS. HAYES: And then you were going to talk with her

8     about the credit card debts.

9          MR. SHINBAUM: Yes.

10    BY MS. HAYES:

11    Q.       And you testified you had charitable contributions

12    each month with some churches?

13    A.       Uh-huh.

14    Q.        Is that a monthly tithe that you give to those

15    churches?

16    A.       Sometimes it is six hundred and sometimes it is five

17    hundred.

18         MS. HAYES: Richard, I think on the statement of

19    information that needs to be disclosed under her gifts.

20         MR. SHINBAUM: Okay.  Got you.  Get me copies of your

21    checks for the last three months.

22         MS. HAYES: And all of the jewelry that went to the

23    Philippines back in December needs to –

24         MR. SHINBAUM: It wasn't the Philippines.

25         MS. HAYES: Okay.  Wherever her daughters are.

37

1          MR. SHINBAUM: He asked if there was anything given to

2     the family in Philippines and the answer is no.  Her daughters

3     are not in the Philippines.

4          MS. HAYES: Your daughters are stateside?

5          MR. SHINBAUM: Yes.

6          MR. HIGHTOWER: If I can ask her if she has given

7     anything to her family at all.

8          MR. SHINBAUM: Okay.  Well, you asked a second time.

9          MR. HIGHTOWER: Her answer was that she had not other

10    than the jewelry.

11         MR. SHINBAUM: Yes.

12         MS. HAYES: That's all I have.

13    BY MR. HAMM:

14    Q.        Dr. Victoria, let me ask a couple of quick questions.

15    You rent part of the townhouse in Atlanta from your daughter?

16    A.        Yes.

17    Q.        That is essentially what you are saying.  What do you

18    use the townhouse for there?

19    A.        I stay there because I work on Friday and Saturday,

20    so I stay at the townhouse.

21    Q.        Oh, you work in Atlanta on Friday and Saturday.

22    Where do you work in Atlanta?

23    A.        Right now we are in the process of getting another

24    place but (inaudible.)

25    Q.        What did you do there?

38

1    A.        Weight loss.

2    Q.        How long have you been doing that?

3    A.        I have been doing it – it's all incorporated in my

4    business because we have income there and I –

5              MR. SHINBAUM:  No, that wasn't the question.  How long

6    have you been doing this at Newman?  That's what he asked.

7    A.        In Newman, it is maybe like three years.

8    Q.        Now where is your daughter's townhouse located?

9    A.        Downtown Atlanta.

10   Q.        And you drive from downtown Atlanta to Newman?

11   A.        Yeah, thirty minutes.

12   Q.        Every?

13   A.        Friday and Saturday.

14   Q.        Does she have a separate room for you?

15   A.        (Inaudible)

16   Q.        How many people are in her family?

17   A.        I am sorry?

18   Q.        How many people are in her family?

19   A.        Oh, she is single.

20   Q.        And what size townhouse is it?

21   A.        It is a three bedroom townhouse.

22   Q.        And how often do you go?

23   A.        I go there every Friday and every other Saturday.

24   Q.        Okay.  Let me ask you, let's be candid, you are

25   making the mortgage payment on that home in Atlanta; is that

39

```
 1    correct?
 2    A.        Yeah, it's kind of like the rent.  That's how we put
 3    it in –
 4    Q.        Your daughter doesn't – does she pay you?
 5    A.        She pays for her – for the utilities.
 6    Q.        And is she in school there?
 7    A.        She graduated.
 8    Q.        Okay.  Is she getting her medical practice up and
 9    going?
10    A.        She is being trained.
11    Q.        Okay.  And no one else lives with her?
12    A.        Not right now.  (Inaudible)
13    Q.        Does your daughter have a vehicle?
14    A.        Yes.
15    Q.        Does she own that vehicle?
16    A.        Yeah.  It's under my husband's name but she pays for
17    it.
18    Q.        It is not one of those three vehicles, then –
19    A.        Sir?
20    Q.        It is not one of the three vehicles that your husband
21    owns then?
22    A.        (Inaudible)
23    Q.        So there is actually four vehicles.  Is there only
24    four vehicles in your husband's name?
25    A.        He has got (inaudible).
```

40

1    Q.        So there are five vehicles?

2    A.        (Inaudible)

3              (Off the record)

41

C E R T I F I C A T E


      I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____

Patricia Basham, Transcriber

Date:  August 23, 2007

**EXHIBIT I**

```
 1      IN THE UNITED STATES BANKRUPTCY COURT

 2           MIDDLE DISTRICT OF ALABAMA

 3

 4

 5   In Re:

                         Case Number:

 6   Deloris V. Victoria     06-31225WRS-7

 7

 8

              S T I P U L A T I O N S

 9

10           IT IS STIPULATED AND AGREED, by

11   and between the parties, through their

12   respective counsel, that the deposition

13   of:

14                DELORIS VICTORIA

15   may be taken before Karen Hinch, Notary

16   Public, State at Large, at the office of

17   McPhilips, Shinbaum & Gill, 566 South

18   Perry Street, Montgomery, Alabama on the

19   9th day of February, 2007, commencing at

20   approximately 9:00 a.m.

21

22

23
```

1           IT IS FURTHER STIPULATED AND

2  AGREED that the signature to and reading

3  of the deposition by the witness is

4  waived, the deposition to have the same

5  force and effect as if full compliance had

6  been had with all laws and rules of Court

7  relating to the taking of depositions;

8           IT IS FURTHER STIPULATED AND

9  AGREED that it shall not be necessary for

10 any objections to be made by counsel to

11 any questions, except as to form or

12 leading questions, and that counsel for

13 the parties may make objections and assign

14 grounds at the time of trial, or at the

15 time said deposition is offered in

16 evidence, or prior thereto.

17          IT IS FURTHER STIPULATED AND

18 AGREED that the notice of filing of the

19 deposition by the Commissioner is waived.

20

21

22

23

```
 1          A P P E A R A N C E S

 2

 3   FOR DELORIS VICTORIA:

 4          Richard Shinbaum

 5          Attorney at Law

 6          McPhilips, Shinbaum & Gill

 7          566 South Perry Street

 8          Montgomery, Alabama

 9

10

11          Bradley R. Hightower

12          Attorney at Law

13          CHRISTIAN & SMALL, LLP

14          505 20th Street North

15          Suite 1800

16          Birmingham, Alabama 35203

17

18          Tina Hayes

19          United States Bankruptcy

20          Administration

21          One Church Street

22          Montgomery, Alabama 36104

23
```

```
 1                    I N D E X
 2
 3
 4    EXAMINATION BY:
 5    Mr. Hightower                    6
 6    Ms. Hayes                        90
 7
 8
 9                  E X H I B I T S
10
11    Exhibit 1                       10
12    Exhibit 2                       11
13    Exhibit 3                       13
14    Exhibit 4                       14
15    Exhibit 5                       16
16    Exhibit 6                       16
17    Exhibit 7                       17
18    Exhibit 8                       17
19    Exhibit 9                       20
20    Exhibit 10                      22
21    Exhibit 11                      22
22    Exhibit 12                      28
23    Exhibit 13                      29
```

| | | |
|---|---|---|
| 1 | Exhibit 14 | 32 |
| 2 | Exhibit 15 | 33 |
| 3 | Exhibit 16 | 38 |
| 4 | Exhibit 17 | 52 |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |

```
 1              I, Karen Hinch, a Court Reporter of
 2   Birmingham, Alabama, and a Notary Public
 3   for the State of Alabama at Large, acting
 4   as Commissioner, certify that on this
 5   date, pursuant to Rule 30 of the Alabama
 6   State Rules of Civil Procedure and the
 7   foregoing stipulations of counsel, there
 8   came before me at McPhilips, Shinbaum &
 9   Gill, 566 South Perry Street,
10   Montgomery, Alabama on the 9th day of
11   February, 2007, commencing at 9:00 a.m.,
12   DELORIS VICTORIA, witness in the above
13   cause, for oral examination, whereupon the
14   following proceedings were had:
15
16              DELORIS VICTORIA,
17   first being duly sworn, was examined and
18   testified as follows:
19
20   EXAMINATION BY MR. HIGHTOWER:
21   Q          Dr. Victoria, my name is Brad
22   Hightower.  We've met before and talked to
23   you before about your case.  What this is
```

1  called, it's called a Motion for 2004

2  Examination.  The rule number is just a

3  provision in the Bankruptcy Code that

4  allows us to take your examination under

5  oath.  It's basically the same thing as a

6  deposition.

7       Have you ever participated in a

8  deposition before?

9  A        No.

10 Q        Okay.  Well, I'll ask you

11 questions and the court reporter here will

12 take down the questions that I ask you and

13 your responses.  So if I ask you a

14 question and you don't understand it, you

15 can just ask me to repeat it or try to

16 rephrase it to help you understand it.

17 And please answer out loud because if you

18 just nod your head the court reporter

19 can't take that down as a response.  So if

20 I ask you for something "yes" or "no,"

21 just say "yes" or say "no," don't shake

22 your head or give any kind of other

23 affirmative response.

1    This is a copy of the motion that we

2  filed to ask you to come today.  Have you

3  ever seen this before?

4  A       No.

5  Q       There was attached to it a

6  request for you to bring some documents

7  with you.  The documents that we asked you

8  to bring are listed in this section here.

9  Have you ever seen this before?

10  A       No.

11  Q       Were you aware that we had

12  requested that you bring some documents

13  with you today?

14  A       Mr. Richard notified me

15  Tuesday.

16  Q       Do you have some documents with

17  you?

18       MR. SHINBAUM:  That's a lot of

19  them.  She did not bring all of them.

20  There's more.  There's some we don't have

21  copied.

22       You have the bank statements from

23  Brantley.

1              THE WITNESS:  Yes.

2              MR. SHINBAUM:  He needs to see

3  those and we will copy those.  And the

4  registration on the vehicles.  I know you

5  showed me that a second ago but I don't

6  have copies of that yet.

7              MR. HIGHTOWER:  Is that in

8  addition to this?

9              MR. SHINBAUM:  Same thing.

10             MR. HIGHTOWER:  And she's got

11  some more stuff with her?

12             MR. SHINBAUM:  It's just not in

13  the same order unfortunately.  I didn't

14  put it through at the same time.

15             MR. HIGHTOWER:  I'll just give

16  her a moment to get whatever it is that

17  she's looking for.

18             MR. SHINBAUM:  There is one

19  registration she's missing.  I will get

20  that to you.  That's the registrations on

21  the vehicles and that's two statements

22  from Camden and Brantley, Camden and

23  Brantley are one in the same.

```
 1  Q        Dr. Victoria, I've got a stack
 2  of documents here that you have produced
 3  today.  If you wouldn't mind, I'd
 4  appreciate if you would just go over with
 5  me what you've got here if you could just
 6  identify.
 7           MR. SHINBAUM:  One thing I'd
 8  ask, I haven't had a chance to redact
 9  everything yet that has to be redacted
10  before it's submitted to court.
11           MR. HIGHTOWER:  That's fine.
12  Q        Can you go over this stack and
13  tell me what we've got here?
14  A        This is the August statement
15  from Butler Bank and then the September
16  statement from Butler Bank.
17           MR. HIGHTOWER:  Can we mark
18  those up as Exhibit 1.
19              (Exhibit 1
                was marked for
20              identification.)
21  Q        Okay.  What is that one?
22  A        This is the registration of the
23  cars my husband owns and I had one more
```

```
 1  that is -- I just have to fax it.
 2  Q          Which two cars is that?
 3  A          It's the Mercedes and then the
 4  Porsche.
 5  Q          We will mark that as Number 2.
 6              (Exhibit 2
                 was marked for
 7               identification.)
 8  A          He's got another Mercedes that
 9  he could not find the registration.
10  Q          What type of Mercedes is the
11  other car?
12  A          I do not know.
13  Q          Is it a large, small or large?
14  A          It's a sports car.
15  Q          Sports car.  Two door?
16  A          Two door.
17  Q          How old is it?
18  A          Three years old.
19  Q          Do you know how much it cost?
20  A          90,000.
21              MR. SHINBAUM:  If you don't
22  know, it's okay to say you don't know.
23  A          I don't know because I'm just
```

1  guessing.

2          MR. SHINBAUM:  We don't want

3  you to guess.  If you know the answer,

4  answer; if you don't, there's no shame in

5  admitting you don't know.

6  Q          So approximately 90 or you just

7  don't know?

8  A          I don't know.

9  Q          What makes you think it was

10 worth 90?

11 A          It was just in the newspaper.

12 Q          I guess you had some basis to

13 come up with 90 for the value?

14 A          Yes.

15 Q          What was that?

16 A          I don't know.  As I said, I'm

17 not into cars, things, that's why I do not

18 own a car.

19 Q          I just mean as opposed to

20 saying 50 or 20?

21 A          You can just ask my husband.

22 It's not my business telling him his cars.

23 Q          Can you identify what we've got

1    here?

2                    (Exhibit 3

                     was marked for

3                    identification.)

4    A         This is a summary of my

5    MasterCard year-end for 2003.

6    Q         For what year?

7    A         2003.

8    Q         On that one we just marked,

9    Exhibit 3, Dr. Victoria, do you have

10   anything more recent than 2003?

11   A         No.

12   Q         So your year-end 2003 credit

13   card statement is the most recent credit

14   card statement that you have?

15   A         I'm sorry.

16   Q         Is your 2003 year-end credit

17   card statement that you brought with you

18   today that we just marked as Exhibit 3, is

19   that the most recent credit card statement

20   that you have?

21   A         No.

22             MR. SHINBAUM:   That's the most

23   recent I have in my file.  I have -- last

1  I have is 1 of '06.
2            MR. HIGHTOWER:  That's January
3  of 2006?  Looks like a 2003 year-end
4  report.
5            MR. SHINBAUM:  I just put them
6  all together.  There's one of December '05
7  and one of January '06.
8  Q          Dr. Victoria, you filed your
9  bankruptcy case in September '06.
10           MR. SHINBAUM:  This is October.
11 That's the same thing.
12           MR. HIGHTOWER:  What is this?
13           MR. SHINBAUM:  That's October.
14           MR. HIGHTOWER:  Of '06?
15           MR. SHINBAUM:  Of '06.  I think
16 it's either '05 or '06.
17           MR. HIGHTOWER:  It says '06.
18       Mark this as 4.
19              (Exhibit 4
                  was marked for
20                identification.)
21           MR. SHINBAUM:  That will be a
22 summary of statements between '03 and '06
23 at various intervals.

1  Q            What's next in the stack you

2  brought with you?

3  A            This is --

4             MR. SHINBAUM:  Do you want to

5  do the business reports all together?

6             MR. HIGHTOWER:  The credit card

7  reports?

8             MR. SHINBAUM:  Business

9  reports.

10             MR. HIGHTOWER:  That's what

11  she's looking at now?

12             MR. SHINBAUM:  I think that's

13  what she's doing.

14             MR. HIGHTOWER:  That's fine.

15  A            Accounts receivable August and

16  September 2006.

17             MR. SHINBAUM:  Looks like her

18  business reports.

19             MR. HIGHTOWER:  This and this

20  are the same?

21             MR. SHINBAUM:  No.  That's

22  before that.  That would be this, whatever

23  it is.

```
 1  Q           Can you identify what this is?
 2              MR. SHINBAUM:  That's something
 3  from you.  I don't know what it is.  He
 4  wants to know what it is.
 5  Q           Tell me what it is.
 6  A           It's the accounts receivable of
 7  August and September.  And the other
 8  documents here are just in the summary.
 9  Everything in here are just kind of like
10  these are the summary and it's just
11  telling you what's insurance paid, what
12  the office payments, what are the accounts
13  receivable from the patients.
14              (Exhibit 5
                  was marked for
15                identification.)
16  Q           What's next?
17  A           This is charitable
18  contributions.
19              (Exhibit 6
                  was marked for
20                identification.)
21  A           This is investment.  I don't
22  know if you consider that an IRA.
23  Q           Is it an SEP?
```

```
 1   A          I think.
 2   Q          Roughly, a self employment IRA?
 3   A          It is.
 4               (Exhibit 7
                  was marked for
 5                 identification.)
 6   Q          What's next?
 7   A          This is documents that my
 8   lawyer did that are terminating my --
 9               MR. SHINBAUM:  This is just a
10   letter from her lawyers.
11               MR. HIGHTOWER:  We'll mark that
12   as 8.
13               (Exhibit 8
                  was marked for
14                 identification.)
15               MR. SHINBAUM:  I don't think it
16   was actually incorporated or finished.  I
17   don't know.  When she was trying to change
18   her practice.
19   Q          What document are you looking
20   at now?
21   A          This is the summary of the two
22   banks that I have.
23   Q          Checking accounts?
```

1   A          Checking accounts.  And it's

2   the expenses that was made in August and

3   September.

4           MR. SHINBAUM:  I believe

5   that's -- these are all of her business

6   reports for the applicable time if you

7   just want to do them all in one.

8           MR. HIGHTOWER:  Is that

9   checking account, is that her personal

10  checking account?

11  A          No.

12  Q          It's a business checking

13  account?

14  A          Business.

15  Q          This is the same as -- these

16  two are the same thing or they're

17  additional?

18  A          It kind of goes together.

19          MR. SHINBAUM:  It's kind of

20  everything.

21      I believe this is your practice

22  analysis and reports.  And the statements

23  as to income and everything else.  It's

1  just a compilation of everything with the

2  business through September -- looks like

3  from August through November.

4          THE WITNESS:  It's already

5  there.

6          MR. SHINBAUM:  He knows it's

7  there.  He needs to know what it is.

8  Q          I'm just asking you to go

9  through this stack of documents with me

10  and tell me what each portion of it is.

11          MR. SHINBAUM:  And of course,

12  before it goes to any court proceeding we

13  will have to redact all the names.

14  A          Just like I said, this is the

15  payments we did in August and September.

16  Q          Is this part of it also that

17  you just handed to me?

18  A          These are the incomes, and I

19  think they are together, income and

20  expenses.

21  Q          These are the income and

22  expenses for your business for the period

23  of August and September 2006?

```
 1  A          Yes.
 2              MR. HIGHTOWER:  We will mark
 3  that as 9.
 4              (Exhibit 9
                  was marked for
 5                  identification.)
 6              MR. SHINBAUM:  I think it
 7  actually runs through November but it
 8  contains what you -- and of course, again,
 9  we are submitting this for the deposition
10  today but if it's used in any procedings,
11  it will have to be redacted.
12              MR. HIGHTOWER:  That's fine.
13  Q          What's the next document?
14  A          I think this is a budget for
15  November.
16              MR. SHINBAUM:  That would be
17  November/December budget.
18              THE WITNESS:  I'm not sure
19  about this, Mr. Shibaum.
20              MR. SHINBAUM:  That's the
21  lawsuit from Jemison.  Did you ask for
22  that?
23              MR. HIGHTOWER:  I don't think I
```

1    did.

2         MR. SHINBAUM: Did you want it?

3         MR. HIGHTOWER: I do not want

4    it.

5         MR. SHINBAUM: I did have the

6    2006 MBNA statement. I didn't see it

7    before. If you want to add that to the

8    MBNA.

9         Did you want October practice

10   analysis?

11        MR. HIGHTOWER: Sure.

12        MR. SHINBAUM: Let's add that

13   to the October.

14   Q         Can you tell me in which stack

15   this one goes?

16   A         (Witness complied.)

17        This is insurance payments.

18   Q         I'll take a copy if you just

19   identify what they are.

20   A         They are various private

21   insurances, Blue Cross, Medicare,

22   Medicaid.

23   Q         For what time period?

```
 1  A           Some are August, some are
 2  October, some are September.
 3              MR. SHINBAUM:  Again, there's a
 4  bunch of information on this we will have
 5  to redact.
 6                  (Exhibit 10
                        was marked for
 7                      identification.)
 8  A           This is the taxes.
 9  Q           What period?
10  A           August 2006.
11  Q           Personal income or business?
12  A           Business.
13              MR. HIGHTOWER:  Mark this as
14  11.
15                  (Exhibit 11
                        was marked for
16                      identification.)
17  Q           Did you bring any other
18  documents with you?
19  A           Huh-uh.
20  Q           Let me just go through the list
21  of things that I have and you can just
22  tell me if you brought them.  Copy of your
23  Whitney Bank checking account statement
```

1  for August and September '06. I think you

2  brought that. I think it's already in

3  here.

4          MR. SHINBAUM: It's Butler and

5  Camden.

6  Q       Did you bring Whitney?

7  A       Whitney is the summary.

8          MR. SHINBAUM: Get me the

9  statements and the checks and I will get

10 them to him.

11 Q       Butler County checking account

12 statement for August and September '06,

13 you brought that. Copy of any checking

14 account statement received by your husband

15 for the months of August and

16 September '06. I don't know what banks he

17 uses.

18         MR. SHINBAUM: We have no

19 control over those so we don't have those.

20         MR. HIGHTOWER: You don't have

21 those?

22         MR. SHINBAUM: No. He has

23 control of those.

```
 1  Q         I think they're relevant to
 2  this.
 3            MR. SHINBAUM:  We'll have to
 4  take that up.
 5  Q         Copy of any credit card account
 6  statement received by you for charges made
 7  during the months of August and
 8  September '06.
 9            MR. SHINBAUM:  I don't think
10  there is any.
11  Q         Did you make any charges on a
12  credit card during August and
13  September 2006?
14  A         No.
15  Q         How did you pay for any items
16  that you needed to buy during that period
17  of time?
18  A         My husband take care of it.
19  Q         Your husband purchased them?
20  A         (Witness nodding head.)
21  Q         How did he purchase them?
22  A         Check or credit card.
23  Q         Do you understand how it could
```

1  be relevant that I asked you to produce a

2  copy of your husband's credit card

3  statements since he apparently purchased

4  everything you needed during those months?

5          MR. SHINBAUM:  We have no

6  control over his accounts.

7  Q          Copy of any credit card account

8  statement received by your husband for

9  charges made during August and

10  September 2006.  I assume the same?

11          MR. SHINBAUM:  Same.

12  Q          Copy of any and all documents

13  showing any interest held by you or your

14  husband in any automobile including

15  payment booklets, invoices and vehicle

16  titles.  You've produced two titles I

17  believe.

18          MR. SHINBAUM:  Two of the three

19  registrations.  We need to get you the

20  other one.

21  Q          Copy of any insurance policy on

22  your home and any other real property in

23  which you and your husband has an

```
 1  interest?

 2            MR. SHINBAUM:  We will have to

 3  get that.

 4  Q         Copy of any insurance policy on

 5  any automobile which you or your husband

 6  have any interest?

 7            MR. SHINBAUM:  I don't have

 8  that.  She didn't have that in the stack.

 9  Q         Copy of any insurance policy

10  that you have on any personal property

11  other than automobiles, including jewelry.

12            MR. SHINBAUM:  I don't have

13  that in the stack.

14  Q         Do you have an insurance policy

15  on any jewelry that you own?

16  A         No.

17  Q         Or any other personal items?

18  A         No.

19            MR. SHINBAUM:  I imagine -- let

20  me correct that -- most homeowners'

21  policies have a limited coverage on

22  jewelry and everything but not complete

23  coverage on jewelry and everything.
```

```
 1              MR. HIGHTOWER:  Especially if
 2  you're outside the home.
 3              MR. SHINBAUM:  It's very
 4  limited.  Most homeowners' policies --
 5  other than what's in the homeowners'
 6  policy.
 7  Q          You don't have a policy on any
 8  jewelry that you're aware of?
 9  A          No.
10  Q          Other than homeowners'
11  potentially?
12  A          No.
13  Q          Copy of your federal income tax
14  return for the tax year 2005.
15              MR. SHINBAUM:  I have a
16  transcript of the joint return showing
17  that -- did you file it yet?  You just
18  filed it.
19              THE WITNESS:  This is just
20  mine.
21              MR. SHINBAUM:  I'll have to
22  copy this.  And this is just the
23  transcript from the IRS showing that they
```

 1  didn't have it at the time we filed.

 2  Q        This document that you've just

 3  produced, is this a business tax return or

 4  a personal tax return?

 5            MR. SHINBAUM:  That's the

 6  transcripts.

 7            MR. HIGHTOWER:  What is this?

 8            MR. SHINBAUM:  Transcripts

 9  from --

10            MR. HIGHTOWER:  From tax year

11  '05?

12            MR. SHINBAUM:  '05 and '06.

13            MR. HIGHTOWER:  Personal income

14  tax or business?

15            MR. SHINBAUM:  Both

16  transcripts.

17            MR. HIGHTOWER:  That is going

18  to be Number 12.

19               (Exhibit 12

                    was marked for

20                  identification.)

21  Q        And other than any

22  communications with your attorney, have

23  you made any written communications by

```
 1  e-mail or letter to anyone regarding your
 2  bankruptcy case?
 3  A        No.
 4  Q            We will come back to the
 5  documents in a little bit.  I'm going to
 6  ask you some questions about your
 7  bankruptcy case.
 8               (Exhibit 13
                  was marked for
 9                identification.)
10  Q            Is that a copy of your
11  bankruptcy petition and schedules?
12  A        Yes.
13  Q            You filed your bankruptcy on
14  September 25, 2006?  This may help you.
15  This is a copy of the docket and there's
16  the date.
17  A        Yes.
18  Q            Some of this we may have gone
19  over before and I apologize if I ask you a
20  question that you remember me asking you
21  previously.  But let me ask you to turn to
22  Schedule A.  If you flip a few pages into
23  it at the top there will be Schedule A.
```

1    You have listed on Schedule A that
2  you own or have an interest in property
3  located at 225 Woodland Heights Drive in
4  Greenville, Alabama; is that correct?
5  A       Yes.
6  Q       When you filed bankruptcy, how
7  much do you think your house was worth?
8  A       I do not know.
9  Q       You have a listing -- are you
10 still looking at it?  You list here that a
11 value of $373,800.  You listed -- you say
12 value listed is tax assessed value.  I
13 assume that the house was not in your
14 opinion worth that much; is that correct?
15 A       Say that again.
16 Q       You list the house as being
17 worth $373,800, but you also make a note
18 that says value listed is tax assessed
19 value.  Did you do that because you
20 thought the house was actually worth less
21 than the amount listed?
22         MR. SHINBAUM:  That was done
23 because usually in this district if we

1  don't have an exact appraisal we submit
2  the tax assessed value as at least some
3  value, something that shows the method of
4  ascertaining the value of the home.  I
5  believe the trustee sent an appraiser down
6  to get an opinion himself and didn't come
7  up with that much.
8          MR. HIGHTOWER:  I assume the
9  trustee would have taken it and sold it if
10  he thought it was worth substantially more
11  than the debt that was owed on it?
12          MR. SHINBAUM:  Now, he is going
13  to propose an offer to compromise and sell
14  is my understanding from talking to the
15  trustee.  He hasn't done it yet, but -- I
16  don't know if he's done it yet.
17          MS. HAYES:  I haven't seen
18  anything.
19          MR. SHINBAUM:  But there are
20  discussions about the sale of the
21  property.
22  Q          Dr. Victoria, do you know how
23  much the trustee's appraiser came back and

1  said the house is worth?

2  A          I do not know.

3          MR. HIGHTOWER:  Do you know,

4  Richard?

5          MR. SHINBAUM:  I haven't -- he

6  just told me what he wants us to pay if we

7  want to buy it.  I don't know how he

8  determined that.  But we consider it a

9  fair and reasonable offer.

10          MR. HIGHTOWER:  Are you willing

11  to disclose that amount?

12          MR. SHINBAUM:  Yeah.  Between

13  the accounts receivables and the house, I

14  think he has asked us if we would buy them

15  for 55,000.  Don't hold me to the exact

16  figure.  It's in that range.  So he did

17  find some value.

18          MR. HIGHTOWER:  Can you mark

19  this as 14?

20              (Exhibit 14

                 was marked for

21              identification.)

22  Q          Your house has a mortgage on

23  it, correct?

```
 1  A          Yes.

 2  Q          When was that mortgage entered

 3  into?

 4  A          (No response.)

 5             MR. HIGHTOWER:  Do you have a

 6  copy of it?

 7             MR. SHINBAUM:  Yeah.  I will

 8  copy it and submit it.  I do have a copy

 9  of it.  The real estate mortgage is dated

10  January 13, 1998.  And the mortgage amount

11  it looks like at that time was

12  $431,062.70.

13                  (Exhibit 15

                     was marked for

14                   identification.)

15  Q          Who was your mortgage with,

16  what bank?

17  A          Brantley Bank.

18  Q          I'm going to show you what's

19  marked as Exhibit Number 14.  I'll

20  represent to you that that's a

21  reaffirmation agreement on your home.  If

22  you turn to the third page it shows the

23  original amount of the mortgage was
```

1  $347,577.39.

2          MR. SHINBAUM:  That may be a

3  different one.  Yes, that's what that

4  shows and the actual mortgage shows a

5  different amount.  Don't ask me how they

6  got there or what they did, but the actual

7  mortgage shows $431,062.70.  This is a

8  different document, different -- there is

9  a different amount on the reaffirmation.

10          MR. HIGHTOWER:  But that's the

11  same mortgage?

12          MR. SHINBAUM:  I believe so.

13  Let me see if it references that date.

14  This doesn't reference the date of the

15  mortgage but the document speaks for

16  itself.  I would have to check.  There may

17  -- it looks like there -- if these

18  documents are right, there may have been a

19  refinance somewhere.

20          MR. HIGHTOWER:  A refinance?

21          MR. SHINBAUM:  There may have

22  been.  I don't know there has been because

23  the payment amounts are even different.

```
 1            MR. HIGHTOWER:  I was about to
 2  ask her.
 3  Q            Dr. Victoria, according to this
 4  mortgage, which is identified as
 5  Exhibit 15, it shows that you had original
 6  mortgage payments of 5,257 per month for a
 7  period of 120 months or ten years.  Does
 8  that sound correct?
 9  A            I don't know.
10  Q            Do you recall ever discussing
11  with your husband or ever paying --
12  discussing how much the mortgage was?
13  A            I don't recall.
14  Q            If you look at the
15  reaffirmation agreement that's marked as
16  Exhibit 14, if you will turn to page three
17  again, at the bottom it says it has a new
18  payment schedule.  It says your payment
19  schedule will be 176 payments in the
20  amount of $2,025.05?
21  A            I know about this, yes.
22  Q            And it says it's payable
23  semi-monthly, meaning twice per month.
```

1  Are you familiar with that?

2  A         Yes.

3  Q         In your bankruptcy schedules

4  you listed a mortgage debt of

5  approximately $4,000 per month.  Is that

6  where you got that number from, by

7  multiplying this twice, you have to pay it

8  twice per month?

9  A         Where is that?

10 Q         If you flip to --

11            MR. SHINBAUM:  He's talking

12 about Schedule J.

13 Q         That's where that number came

14 from?

15 A         Right, uh-huh.

16 Q         Is that the same amount that

17 you were paying before you filed

18 bankruptcy each month for your mortgage?

19 A         Yes.

20 Q         And I just did some rough math,

21 but if you have 176 payments due at the

22 rate listed in Exhibit Number 14, that

23 means the mortgage will be paid off in

1  roughly seven and a half years.  Is that

2  about what you expected it to be paid off

3  in?

4  A          Yes.

5  Q          How large is the home?

6  A          3,100 square footage.

7  Q          How many bedrooms and baths?

8  A          Four and three baths.

9  Q          How would you describe it in

10  comparison to other houses in the area?

11  Smaller?  Larger?

12  A          Same.

13  Q          About the same?  How many

14  people live in the house?

15  A          Four.

16  Q          Who are they?

17  A          Me and my husband, my son and

18  granddaughter.

19  Q          How many children do you have?

20  A          I have four.

21  Q          What are their ages?

22  A          39, 37, 31 and 30.

23  Q          All of them are 18 or older

1  then?

2  A          Yes.

3  Q          How old is the son that lives

4  with you?

5  A          30.

6  Q          Could you live in a smaller

7  house at a lesser -- with a smaller

8  mortgage payment if you had to?

9  A          Say that again.

10 Q          If you had to, could you live

11 in a smaller house with a lesser mortgage

12 payment each month considering the number

13 of people that live in the house?

14 A          Yes.

15             (Exhibit 16

                was marked for

16              identification.)

17 Q          Can you identify Exhibit 16 for

18 me?

19             MR. SHINBAUM:   This is the

20 reaffirmation agreement.   I think it's the

21 same.

22             MR. HIGHTOWER:   I must have

23 just given her the wrong one.

```
 1   Q          Could you identify that one for
 2   me?
 3   A          Yes.
 4   Q          What is that?
 5   A          This is a loan by the
 6   corporation we have for weight loss.
 7   Q          Is it a loan to you personally
 8   or to a business?
 9   A          Business.
10   Q          An incorporated business or
11   just a business that you're doing business
12   under that name?
13   A          It's incorporated.
14              MR. SHINBAUM:  I don't believe
15   she actually ever did any business under
16   the corporation.  All the income and
17   everything came in personally and
18   everything.  She thought she was doing
19   business as a corporation, but I don't
20   believe that it was truly analyzed it
21   would be.
22   Q          Could you turn to page three of
23   that?  On page three it lists under where
```

1  it says item or type of item, certificate
2  of deposit number 19922.  What is that
3  certificate of deposite?
4  A          That's collateral for this
5  loan.
6  Q          Who owns that certificate of
7  deposit?
8  A          It's me and my cousin who put
9  in some interest to the corporation.
10 Q          How much is it?
11 A          It's 3,500 but it's taken out
12 already.  And what the bank did is take it
13 out from the nineteen six seven -- 697.
14 So at this point the loan is for 16
15 something.
16 Q          You had an interest in the
17 certificate of deposit but it has been --
18 the bank has already cashed it?
19 A          Right, it has to be.
20 Q          At what point --
21 A          It's collateral.
22 Q          It serves as collateral for the
23 loan; is that correct?

```
 1  A          Yes.
 2  Q          Did you list it in your
 3  bankruptcy petition and schedules?  If you
 4  will look here, this is Exhibit Number 13.
 5  You see item number two here?  You see it
 6  asks you to list certificates of deposit?
 7  I don't see one listed there.
 8  A          As I said, that's how I
 9  explained to you, that it's a loan.
10  Q          You didn't list it on your
11  bankruptcy petition and schedule as an
12  asset that you owned an interest in; is
13  that correct?
14  A          I don't think it's my asset
15  because, as I said, it's tied up to the
16  loan.
17  Q          Who owns -- but you did say
18  that you owned the certificate of deposit
19  with your cousin?
20  A          My cousin.
21  Q          So it must be an asset of
22  yours, then?
23  A          No, it's not.  As I said --
```

```
 1  Q          I understand that it's serving
 2  as collateral, but if you had say a car
 3  that was serving as collateral, that would
 4  be yours?
 5  A          It's her money.  I had to sign
 6  for her.
 7  Q          So the certificate of deposit
 8  belongs to your cousin?
 9  A          Right.
10  Q          Not to you?
11  A          It is not mine.
12  Q          Is your name on it?
13  A          Yeah.  The bank has to make me
14  sign also.
15  Q          On item number four on your
16  personal property list on your bankruptcy
17  schedules here you list household goods
18  valued at $7,000.  Where did you come up
19  with that number from?
20  A          It's like TV sets and living
21  room sets, dining room sets.
22  Q          So you think that all the
23  furniture in your house is worth $7,000?
```

```
 1  A          Yes.

 2  Q          All the items in there?

 3  A          Yes.

 4  Q          You listed jewelry worth $5,000

 5  here.

 6  A          Yes.

 7  Q          Can you describe to me the

 8  pieces of jewelry that you have that add

 9  up to that?

10  A          You have the list there, what I

11  told you before.

12  Q          This is just notes I made

13  yesterday.  I don't have a list.

14  A          A few rings, few -- three or

15  four rings, three or four necklaces and

16  earrings.

17  Q          Last time we talked you told me

18  that you had given some jewelry away to

19  others.  Can you tell me what pieces of

20  jewelry that you gave away?

21  A          Maybe a couple of earrings to

22  my daughter, two or three necklaces.

23  Q          Also to your daughter?
```

```
 1  A           Yeah.

 2  Q           Which one?  You gave me a list

 3  of the ages of your children.  Which one

 4  is your daughter?

 5  A           The second and the third.

 6  Q           Daughters then?

 7  A           Daughters.

 8  Q           31 and 30?

 9  A           31 and 30.

10  Q           And the other two are your

11  sons?

12  A           Right.

13  Q           How much do you think the value

14  of the jewelry you gave to your daughters

15  was?

16  A           Probably 3,000.

17  Q           Did you give any jewelry away

18  to any other people?

19  A           No.

20  Q           Have you given any property

21  including jewelry to your daughters or

22  anyone else since you filed your

23  bankruptcy case?
```

1  A         No.

2  Q         We also talked about a

3  condominium or townhouse, I'm not sure how

4  you described it, in Atlanta.  Who owns

5  that?

6  A         My husband.

7  Q         What did you say the value of

8  it was?

9  A         I do not know.

10  Q         Do you have a mortgage on it?

11  A         Yes.

12  Q         Do you have a copy of it?

13  A         No.

14  Q         In your home do you have copy

15  of it?

16         MR. HIGHTOWER:  Is that the

17  same thing we talked about earlier as far

18  as the credit cards?

19         MR. SHINBAUM:  No.  Brandon's

20  been trying to get a copy of it from

21  Atlanta.  We just haven't gotten it yet.

22  Q         The last time -- do you need to

23  ask your lawyer a question?

```
 1            The last time we talked you had an
 2  idea of what you thought the property in
 3  Atlanta was worth.  You still do not
 4  remember our discussions previously?
 5  A          I do not know.
 6  Q          You don't know how much you and
 7  your husband pay each month for it?
 8  A          I do not pay.
 9  Q          You do not pay?
10  A          (Witness shakes head.)
11  Q          Your husband pays for it each
12  month?
13  A          Right.
14  Q          Do you know how much he pays?
15  A          I do not know.
16  Q          How did you go about purchasing
17  the condo?  When I say "you," how did you
18  and your husband go about purchasing the
19  condo?
20  A          What is the purpose?
21  Q          When did you purchase it?
22  A          2002 I think.  2002.
23  Q          Who lives in it?
```

```
 1   A          Nobody.

 2   Q          No one lives in it?

 3   A          Nobody.

 4   Q          What is it used for?

 5   A          We just go there on weekends.

 6   Q          Who is "we?"

 7   A          Just me and my husband.

 8   Q          The last time we talked you had

 9   told me that your daughter lived there or

10   someone in your family lived there.  Has

11   that changed?

12   A          She did when she was in med

13   school.

14   Q          She no longer lives there?

15   A          No.

16   Q          When did she stop living there?

17   A          July of last year, 2006.

18   Q          How did you locate the condo?

19   How did you and your husband locate the

20   condo to purchase it?

21   A          How did I locate it?

22   Q          When you were in Atlanta how

23   did you decide that you wanted to purchase
```

```
 1  a condo?

 2  A          For my daughters.

 3  Q          How did you find it?

 4  A          I think she found it with a

 5  Realtor.

 6  Q          How did you decide -- what made

 7  you decide to buy it?

 8  A          For my daughters to live.

 9  Q          Do you remember at all

10  discussing how much the cost was?

11  A          She and my husband.

12  Q          So you don't have any

13  discussions with your husband when you buy

14  a piece of property like that about how

15  much it costs?

16  A          He paid for it.

17  Q          Let me give you an example.  If

18  I was going to go buy a house or a condo

19  in Atlanta, and I'm married, I would think

20  my wife would probably be interested in

21  how much I was going to pay for it because

22  we just discuss those type of things.  Do

23  you discuss that type of stuff with your
```

1  husband?

2  A        No.

3  Q        If you'd turn to Schedule D,

4  you've got listed as secured creditors the

5  mortgage on your home and you've got what

6  we discussed earlier.  There's a loan, you

7  said that that was the loan here.  The

8  second loan is listed as Camden National.

9  Is that on your -- what type of business

10 did you describe that as?

11 A        Weight loss.

12 Q        Weight loss business.  Your

13 home, would you say that you bought it for

14 your personal use?

15 A        Yes.

16 Q        And your debt that you owe to

17 Camden National, that's a business use?

18 A        Yes.

19 Q        If you'd flip to the next page

20 and flip one more time.  These are tax

21 debts that you have listed here.  Are they

22 for personal income taxes or business

23 income taxes?

1  A         Business.

2  Q         If you would turn to Schedule

3  F, it should be two pages.  The first

4  creditor you have listed is Camden

5  National line of credit, is that a

6  business debt or a personal debt?

7  A         Business.

8  Q         The second debt, is that the

9  same debt just listed as disputed debt?

10 A         Yes.

11 Q         The third debt, loan to Camden

12 National, is that business or personal?

13 A         Business.

14 Q         The fourth debt is CenturyTel,

15 is that business or personal?

16 A         It's business.

17 Q         Is that for telephone services?

18 A         Yes.

19 Q         The fifth debt, Jenisen

20 Healthcare, is that a business debt?

21 A         Yes.

22 Q         Greenville Hospital also a

23 business debt?

```
 1   A          Yes.

 2   Q          Number seven, MBNA America

 3   credit card for debt of $9,663, is that a

 4   business debt or a personal debt?

 5   A          I'm listed as --

 6              MR. SHINBAUM:  This isn't the

 7   70,000 one.  This is a different one.

 8   A          This is also my husband and I'm

 9   just a cosigner.  I think they list it

10   whenever --

11   Q          The $9,663, is that not an

12   obligation that you owe, you just have

13   access to that card?

14   A          Right.  I have access to that

15   card.

16   Q          The next one is --

17   A          And this is my son and I'm also

18   have a use to.

19   Q          Number eight, MBNA America for

20   $3,378, is that the same thing?

21   A          My son and I am also on it.

22   Q          You're on the card but you

23   don't owe the debt?
```

```
 1  A          Yeah.

 2  Q          Number nine, MBNA America.  On

 3  here it's listed for $65,000, but you

 4  amended your bankruptcy recently.  This is

 5  a copy of the amendment you filed in your

 6  bankruptcy case.  Do you see where you

 7  changed that $65,000 debt to a $1 debt.

 8                  (Exhibit 17

                     was marked for

 9                   identification.)

10              MR. SHINBAUM:  I also have a

11  notation on there that as to the total

12  amount of the debt and that there may be

13  liability on it since it was used to pay

14  taxes.

15              MR. HIGHTOWER:  I don't see

16  where it says it was used to pay taxes.

17  I'm looking at the original schedule.  Let

18  me look at what you've got there.  Account

19  in husband's name, used to pay wife's

20  taxes.

21              MR. SHINBAUM:  Yeah.

22  Q          As with the two before, that is

23  not a debt that you owe.  You think you're
```

1  just on the card.  You had privilege to
2  make charges with the card?
3  A        Yes.
4  Q        But you don't owe that debt?
5  A        Well, I was the one who used it
6  just like mentioned in here that I used it
7  for to pay expenses.
8  Q        But you weren't on that -- you
9  were not obligated on that account like
10 the first -- like the others that we
11 discussed?
12 A        I have to because I was the one
13 who used it.
14 Q        Well, I thought you told me on
15 the last two MBNAs that you also used that
16 account.
17 A        Yeah.  This is the one that I
18 was -- it's noted in here that I used it
19 so I will have to pay it.
20 Q        Let me ask you this:  If you
21 look at this here, we just discussed these
22 two credit cards, this one and this one?
23 A        Right.

1   Q          The MBNA for $9,663 and the

2  MBNA for $3,378 and you told me that you

3  had access to those accounts but you did

4  not owe the debt for those accounts?

5  A       Yeah.

6  Q       How are these two different

7  from the MBNA debt listed for $65,000?

8  A       Because we used this mostly

9  kind of like a business account.

10  Q       Were you obligated to pay on

11  the MBNA account listed for 65?

12  A       Yes.

13  Q       Then why did you amend your

14  bankruptcy schedule to show that you don't

15  owe the debt anymore?

16  A       Did I say that?  I don't know.

17  Q       Did you sign this document?

18  A       Yeah.

19  Q       Did you look at it or review it

20  before you signed it?

21  A       No.

22  Q       You just signed it?

23  A       Yeah.

1  Q          Do you know why the debt was
2  changed from 65,000 to $1?
3  A          I do not know, but that's what
4  I explained that I used it.
5  Q          I understand that.  I'm trying
6  to understand why.
7  A          I'm just going to repeat it.  I
8  am obligated because I used it and it's
9  all in the documents that it's in there
10 that I used it for the business.
11         MR. HIGHTOWER:  Richard, do you
12 know why you guys changed it?
13         MR. SHINBAUM:  Yes.  The
14 trustee asked us to.
15         MR. HIGHTOWER:  On what basis?
16         MR. SHINBAUM:  The trustee
17 asked because the documents we submitted
18 showed the account was the account of
19 Edgar Victoria.  The reason I made the
20 notation of the approximately $75,000 was
21 it was used to pay taxes.  As such, there
22 could be liability to her on this.
23         MR. HIGHTOWER:  I understand

1  that.   But will you stipulate that she was

2  not obligated on the account?

3            MR. SHINBAUM:  No.

4            MR. HIGHTOWER:   What was the

5  basis for changing it from 65,000 to $1?

6            MR. SHINBAUM:   The trustee and

7  the bankruptcy administrator asked us to

8  change it.

9            MR. HIGHTOWER:  Well, you're

10  her lawyer.  I assume if he asked you to

11  make other changes that you didn't think

12  were proper you wouldn't have done them.

13            MR. SHINBAUM:   I have made a

14  notation to reflect the nature of the

15  bill.  Legally, in terms of a direct suit

16  against her, they might have a problem

17  proving that she owes the debt.  Since it

18  was used to pay taxes, it may be a

19  nondischargeable debt.  So the notation

20  was made to reflect the way things

21  actually exist today.

22  Q            Creditor ten is listed as

23  Whitney Bank for $5,483?

1  A          It's business.

2  Q          Before we came here today I

3  looked at the debt that was owed on your

4  house which you described as a personal

5  debt.  And then I took all the other debts

6  that you owed and subtracted them and I

7  came up with $7,113.26 left over.  In

8  other words, the debt you owe on your

9  mortgage is larger than all the other

10 debts that you owe for your businesses.

11 Does that sound accurate to you?

12 A          Say it again.

13 Q          Before I came down here today I

14 looked at your mortgage, which is listed

15 as $290,000, and you describe that as a

16 personal debt.  And then I took that

17 number and I subtracted out all the other

18 debts that you had listed and I came up

19 with a little over 7,000, meaning that the

20 debt that you owe on your mortgage, which

21 is a personal debt, is larger than all the

22 business debts that you owe.  Does that

23 sound accurate to you?

1    A          I'm not following.

2    Q          Well, you owe $290,000 on your

3    mortgage.  Do you agree with that?

4    A          I agree.

5    Q          And then you owe $60,000 in

6    taxes.  You had originally listed $83,000

7    worth of unsecured business debts but now

8    that number's been reduced because you

9    changed the $65,000 debt, you reduced that

10   one down to $1 so that you have roughly

11   $24,000 worth of unsecured debts.  And

12   what I'm asking you is if you take the

13   money that you owe for your mortgage and

14   you subtract out all the other debts that

15   you owe, the money that you owe for your

16   mortgage is more than the money that you

17   owe for all your other debts.  Does that

18   sound accurate?

19              MR. SHINBAUM:  I don't believe

20   that's a correct statement as to the

21   amount of the unsecured -- of what would

22   be the unsecured debt.  I believe that

23   you're leaving out roughly $165,000 debt

1  if you recalculate what's owing to the

2  hospital.  And you're also -- and I

3  believe the true figure on the home

4  mortgage came to about 282,000 if you look

5  at the reaffirmation from what they said

6  was owing.

7  Q        If you'd flip to Schedule I for

8  me.  We talked about this before.  You

9  list yourself as having gross income of

10  $15,000 a month and your husband as having

11  $20,000 a month; is that correct?

12  A        At that time, yes.

13  Q        Has that changed?

14  A        Yes.

15  Q        How has it changed?

16  A        It's lower.

17  Q        For who?

18  A        Both.

19  Q        What is the current?

20  A        As of today's date?

21  Q        As of today.

22          MR. SHINBAUM:  If you know.

23  A        Well, I mean, both of us are

1  not working so I cannot really tell you.

2  Q         You said both of you are not

3  working?

4  A         Well, we are on vacation so I

5  cannot tell you.

6  Q         You're on vacation right now?

7  A         Yeah.

8  Q         If you weren't on vacation --

9  you said your income went down and I

10 assume it's not because you're on

11 vacation.  How much is it if you weren't

12 on vacation?

13 A         Mine I know is less than

14 10,000, but my husband I could not tell

15 you.

16 Q         If you would flip to Schedule

17 J, you brought me a list of your

18 charitable contributions each month; is

19 that right?

20 A         Yes.

21 Q         That's listed at roughly a

22 thousand dollars a month?

23 A         At that time.

```
 1   Q            At that time.  You've got auto
 2   insurance down here listed for $1,200 a
 3   month?
 4   A            Yes.
 5   Q            Is any of the auto insurance
 6   listed for cars that are driven by someone
 7   other than you or your husband?
 8   A            Yes, three of my children's.
 9   Q            Which three children?
10   A            Age 39, age 35 and --
11   Q            You mean 37?  You told me 39,
12   37, 31 and 30 earlier.  Which three is it?
13   A            First three.
14   Q            You pay their auto insurance?
15   A            Yes.
16   Q            What kind of cars do they
17   drive?  You can go by age if you want to
18   just tell me which car for which age.
19   A            One is Nissan, number one.
20   Q            What kind of Nissan?
21   A            I don't know what kind.
22   Q            Is it a sports car or a large
23   car?
```

```
 1  A           It's a regular car.

 2  Q           Did you pay for that?  Did you

 3  or your husband pay for -- is that car

 4  paid for or did you and your husband -- do

 5  you make payments on it for them?

 6  A           My husband.

 7  Q           Makes payments.  How about the

 8  37-year-old?

 9  A           37 is Jetta GTI, year 2000.

10  Q           Who makes payments on that?

11  A           He paid for it, but we are

12  paying for the insurance.

13  Q           It's paid for?

14  A           It's paid for.

15  Q           How about the 31-year-old?

16  A           31 is Mercedes.

17  Q           Is that one paid for?

18  A           No.

19  Q           Who's making payments on it?

20  A           My husband.

21  Q           Do you pay any of the debts at

22  your house?

23  A           No.
```

1    Q          Your husband pays them all?

2    A          Yes.

3    Q          Where does the money come from

4    that he uses to pay the debts?

5    A          From his business.

6    Q          Does any of the money that you

7    earn go to pay debts?

8    A          I pay for the telephone, the

9    power, medical insurance.  That's about

10   it.

11   Q          You make gross 15,000, or when

12   you filed your bankruptcy case you were

13   making $15,000 a month?

14   A          Yes.

15   Q          If all you paid were the things

16   that you just described, where does the

17   rest of the money go to?

18   A          Excuse me.  I don't think we

19   are on the same page.  Did you say when I

20   filed the bankruptcy?

21   Q          When you filed bankruptcy.

22   A          Yeah, that's what I paid.  What

23   was listed is what I pay.  But after that

```
 1  since my income is lower then I have to
 2  ask my husband to give me money.
 3  Q          When you filed your case you
 4  said you were making $15,000 gross and
 5  you've just described to me that your
 6  husband pays virtually all of your debts,
 7  you pay a few of them?
 8  A          Yeah.
 9  Q          At that time what did you do
10  with the rest of the money that you made?
11  A          It's all business.
12  Q          In other words, I guess what
13  I'm trying to ask you is if your husband
14  just sent a check in each month for your
15  mortgage, did all of the money that was
16  used to pay the money come from his salary
17  or is it that some of your salary would
18  have been used to help pay the mortgage?
19  A          It's all his money.
20  Q          You showed your husband's net
21  take home as $10,000 a month when you
22  filed bankruptcy.
23  A          Yes.
```

1  Q          You show expenses of a little

2  over $13,000 when you filed bankruptcy.

3  A          Yes.

4  Q          Well, if he only made after

5  taxes $10,000 a month, how did he pay

6  $13,000 a month?

7  A          Say it again.

8  Q          Well, you said he's only making

9  $10,000 after taxes per month over here.

10 He makes that after taxes?

11 A          Right.

12 Q          That's what he brings home?

13 A          Yeah, uh-huh.

14 Q          You show expenses of a little

15 over $13,000 each month.  How can he pay

16 that much in expenses if he only makes

17 10,000?

18 A          Well, I told you the power, I

19 pay that.  I pay water.

20 Q          How much is the water?  Which

21 one's the water?

22 A          300.  I pay all of this and

23 then I pay for the medical expenses.

1   Q           Which one's that?  A hundred
2   dollars?
3   A           Yeah, uh-huh.  I pay a little
4   bit for the charitable contribution.
5   Q           How much?
6   A           Maybe 200.  I pay for the
7   health insurance and that's it.
8   Q           Okay.  These amounts here, what
9   do they add up to roughly?
10  A           About fifteen, sixteen hundred.
11  Q           So if you're only paying $1,500
12  worth of expenses and your husband only
13  makes $10,000 a month, that still leaves
14  something left over, doesn't it?
15  A           Probably -- I would have to sit
16  down to tell you exactly.
17  Q           I guess what I'm trying to get
18  at is don't you guys operate like most
19  households in that you both make an income
20  and yet you both pay expenses.  And it may
21  be that your husband cuts a check for your
22  mortgage or some other debt or car, for
23  instance, but that some of the money you

```
 1  make goes towards that?
 2  A          I don't know.  I cannot tell
 3  you exactly how it works.
 4  Q          You just don't know?
 5  A          I don't know.
 6  Q          Are you not privy to the
 7  finances at your household?
 8  A          Say it again.
 9  Q          Are you not part of the
10  decision making at your household about
11  how debts are paid?
12  A          No.
13  Q          Your husband controls that
14  exclusively?
15  A          Yes.
16  Q          I'm through with asking you
17  questions about your bankruptcy petition
18  here.  But I would like to take a moment
19  to look over the documents that you
20  brought with you today, since this is the
21  first time I have seen them, and then ask
22  you a couple of questions about those.
23             MR. HIGHTOWER:  If you want to
```

1  take a quick break, Richard.

2            (Short recess.)

3  Q        Dr. Victoria, this is what's

4  marked as Exhibit 1, which you identified

5  as the bank statement from Camden National

6  Bank.  At the top right corner it says

7  page one of three.  And then the next page

8  at the top right corner it says page one

9  of five.  After that it says page two of

10 five.  Do you know where the other pieces

11 are?

12 A        The other pieces are just the

13 explanation of just the copies of the

14 deposit and then copies of the checks.

15 Q        Do you have those?

16 A        I did not bring it with me.  I

17 didn't know you needed.

18 Q        Let me see if I can get you to

19 identify some of these things for me.  We

20 will have to look together unless you have

21 a copy of it with you.  I see for

22 September there were three large deposits,

23 one of $1,300, one of a little over $1,400

```
 1  and another one of $1,487.  What are those

 2  for?

 3  A          The 1,300 is from my husband.

 4  Q          Is what?

 5  A          Is from my husband.  He gives

 6  me money for my business.  And then the

 7  other two big ones are insurance payments.

 8  Q          Why is it that your husband

 9  gives you money?

10  A          I don't have that much money to

11  spend.

12  Q          You make --

13  A          For business.

14  Q          You make $15,000 gross?

15  A          Yeah, but it's listed what I

16  have paid and it's listed in your -- the

17  one that I gave you what I have paid for.

18  Q          So this is your bank account

19  solely and your husband gives you money to

20  deposit into it.  And then what do you do

21  with the money that your husband gives to

22  you?  You said you help pay business

23  expenses?
```

```
 1  A           He helps me.

 2  Q           For your business office

 3  expenses?

 4  A           Yes.

 5  Q           Okay.  If you'd look under the

 6  check transaction section.

 7  A           Uh-huh.

 8  Q           There's a check that's dated

 9  September 5th for $2,727.  Do you know

10  what that's for?

11  A           That's the credit card that I

12  told you I have to pay.

13  Q           Payment to your credit card.

14  On September 11 there's a check

15  transaction for $1,300?

16  A           I'm not hundred percent sure

17  but it's also business.

18  Q           Do you know who it would have

19  been written to?

20  A           No.  I'm sorry.  I thought that

21  you would not need that.  I'm not a

22  hundred percent sure but I can say that

23  maybe it was transferred to our weight
```

```
 1  loss.  We have a copy of this.
 2  Q           Weight loss business?
 3  A           Yes.
 4  Q           Transferred to the business?
 5  A           Right.  Because this is the
 6  corporation.  We just changed the name.
 7  Q           Why would you transfer money to
 8  the business?
 9  A           Because we just don't have any
10  money there.
11  Q           So you're putting your money
12  into the business?
13  A           Right.
14  Q           And what does the business do
15  with the money?  What are you doing with
16  the money once it's transferred into the
17  business?
18  A           Pay for supplies.  We do buy
19  medications, office supplies.
20  Q           Can I see your binder?  Do you
21  mind if I just take a brief look at it?
22  A           No.  Just ask me which one you
23  would be asking.
```

1  Q        Well, it looks like to me that
2  it's additional information that is
3  related to all this stuff we're going
4  over.  I'd just like to take a look at it.
5  A        I have this August -- I mean,
6  these are all copies that I gave Richard.
7  Q        Can I take a quick look at it?
8  A        Are you supposed to?
9            MR. SHINBAUM:  Let him look at
10 it.
11 Q        Your attorney can tell you
12 whether that's acceptable unless there's
13 any kind of attorney/client privilege
14 stuff in there.
15           MR. HIGHTOWER:  I just want to
16 see it in the form she's got it in because
17 it seems to be a little more organized
18 than the way it's been produced.
19 A        These are just letters from the
20 lawyers, from him.  Letter from him so I
21 have to answer that so I always write a
22 letter.
23           MR. HIGHTOWER:  Do you want to

```
 1  take a look at it, Richard, to see if
 2  there's something in there you don't --
 3  Q        If it's just the same stuff I'm
 4  sure you don't mind if I look at it.
 5  A        Yeah.  I just put it in
 6  organized.
 7  Q        I'd like to see it if you don't
 8  mind.
 9  A        As I said, like you have a copy
10  of this.  You have a copy.  He said not to
11  give this to you.  August, you have copies
12  of this.
13  Q        May I see it?  This register
14  report, what is that?  Where it says
15  "Register Report" at the top, what is
16  that, this here where it says "Register
17  Report?"  What is that register from.  Is
18  that bank?
19  A        This are the insurance
20  payments.
21  Q        This is a business register?
22  Is this your business?
23  A        Right.
```

1  Q          From Edgar business, what does

2  that refer to?

3  A          The money I get from him.

4  Q          Thank you.  I appreciate you

5  letting me look at it.

6      If you would refer back to this for

7  me.  Flip to the next page here.  Do you

8  see where it says "tuition?"  What's that

9  for?

10 A          My granddaughter's tuition.

11 Q          That's a payment by you for her

12 tuition?

13 A          Yes.

14 Q          When I asked you earlier what

15 you paid as expenses you didn't mention

16 any tuition payments.

17 A          Say again.

18 Q          We talked earlier today about

19 what you paid for each month and you

20 didn't mention that you paid any tuition

21 fees.

22 A          I thought it is not necessary.

23 Q          Is there any other expenses

```
 1  that you didn't think it was necessary to

 2  tell me about?

 3  A          No.

 4  Q          How much do you pay each month

 5  for her tuition?

 6  A          255.

 7  Q          Is that a monthly bill?

 8  A          Yes.

 9  Q          What's that for?

10  A          It's tuition.

11  Q          What school?

12  A          Ft. Dailey Academy.

13  Q          Is that a private school?  High

14  school?

15             MR. SHINBAUM:  Complete school,

16  K through 12 in Butler County.

17  Q          Can you tell me what the large

18  deposits listed on this page are from?  Do

19  you see anything over a thousand dollars

20  there?

21  A          Yeah.  This is the -- I

22  mentioned it is from my husband, the 1,800

23  and the 1,000.  And then 1,500 -- the rest
```

1  are insurance payments and office

2  payments.

3  Q        If you'd flip to the next page

4  under check transactions, that first one

5  $1,608, what's that for?

6  A        These is the money I

7  transferred to the corporation.

8  Q        All these are money that you

9  transferred to the corporation?

10  A        Right.

11  Q        How much money do you transfer

12  to the corporation each month?

13  A        About two or three thousand.

14  Q        What's the name of this

15  corporation?

16  A        It's now Medical and Health

17  Services of Alabama.

18  Q        And that's the weight loss one?

19  A        Weight loss.

20  Q        So that business isn't making

21  enough money on its own, you have to put

22  money into it?

23  A        Yes.

```
 1  Q          And do you list that money
 2  anywhere as an expense in your bankruptcy
 3  petition and schedule?
 4  A          Did I list what?
 5  Q          Well, I'll show you what we're
 6  talking about.  The bankruptcy schedules
 7  you've got your expenditures listed.  Is
 8  it listed there anywhere?
 9  A          No, it's not listed.  It could
10  be from this spouse's debts.
11  Q          Is it listed as spouse's debts
12  or are you just guessing?
13  A          Could be from there.
14  Q          But you're not sure?
15  A          I'm not sure.
16  Q          And it's not listed under here,
17  number ten, as a transfer.  I don't see
18  anything listed there.
19  A          Say it again.
20  Q          Well, it's not listed as an
21  expense, which you just said a minute ago.
22  It's not listed as a transfer other than
23  that.  So it's just not listed at all, the
```

```
 1  money that you're putting into the
 2  business each month.  You say it's an
 3  expense but it's not listed; is that
 4  correct?
 5  A          I'm not following.
 6  Q          Well, you understand that when
 7  you file bankruptcy you've got to list
 8  your income and you've got to list your
 9  expenses?
10  A          I thought it was listed
11  already.
12  Q          Where was it listed?
13  A          Under spouse's.
14  Q          You think it's --
15  A          Yeah.  I thought it was -- that
16  could be under --
17  Q          So you think it's listed as one
18  of your husband's debts?
19  A          It could be, yeah.
20  Q          So you think that money that
21  you transfer to the business each month is
22  a debt owed by your husband?
23  A          Owed by my husband?
```

```
 1  Q          Well, let me ask you this:
 2  When you say -- when you use the term
 3  "spouse's debts," that refers to your
 4  husband, correct?
 5  A          Okay.  I know what you mean.
 6  Q          How can it be a debt of your
 7  husband's?
 8  A          Yeah.
 9  Q          It's not -- that's not it.
10  A          No.  I probably understood it
11  that it's my, probably.  I'm not going to
12  guess.  I don't know.
13  Q          It's just not in here.  Since
14  it's not listed as a spouse debt and it's
15  not listed anywhere else, then it's just
16  not listed, right?
17  A          I don't know.  I don't know.
18  Q          You would agree that it's not
19  listed on this page, Schedule J?
20  A          I'd have to review it and I
21  can't tell you that right now.
22  Q          I'll let you review it.
23  A          Tell me what is the point of
```

1  what you are telling that to me.

2  Q          Well, when you file a

3  bankruptcy case you've got to list all

4  expenses that you pay and your husband

5  pays.

6  A          Right.

7  Q          I asked you about your expenses

8  earlier and you didn't tell me that you

9  were paying any money into the business,

10 and I'm just curious why it is that you

11 didn't list it.

12 A          I don't know why I did not list

13 it, but it is an expense that I pay.

14 Q          And it came out to roughly for

15 this particular month of September you

16 said 1,600, 1,000, 1,000, all these are

17 payments into the business?

18 A          I can tell exactly when I see

19 the check but --

20 Q          Which ones were payments?

21 A          This is business, right?  You

22 understood that it is business, right?

23 Q          You told me that you were

1  transferring money into the weight loss

2  business.

3  A          Yes.  Because the Camden and

4  Whitney are both business.

5  Q          Business checking accounts?

6  A          Checking accounts.

7  Q          I understand that.  They are

8  the accounts that you deposit money that

9  you earn into?

10  A          Right.

11  Q          And that you pay your bills or

12  any expenses from?

13  A          Yeah.

14  Q          And you told me that --

15  A          And it could be that I have

16  transferred this money to Whitney too, but

17  as I said, I can look back and then I can

18  fax it to Mr. Richard.  It may not be for

19  the weight loss, it could be from the

20  Whitney Bank.

21  Q          You just told me a minute ago

22  that these went to the weight loss

23  business.

```
 1  A         That's what I said.  I'm just
 2  going to guess because I usually do that
 3  sometimes.  I transferred from Camden
 4  because the money that my husband gave is
 5  already there and I may have to use it for
 6  Whitney.
 7  Q         Why would you transfer from
 8  Camden to Whitney?
 9  A         Because my husband's money is
10  in there.
11  Q         In where?
12  A         In Camden.
13  Q         Your husband also has a bank
14  account with Camden?
15  A         No.
16  Q         I'm just not following you.
17  A         Okay.  See, for example, I was
18  telling you that the money that he gave me
19  for the expenses is 2,200.  So that's what
20  I said, that when I have to put it in
21  Camden Bank and I may need some money to
22  use for Whitney Bank, then I transfer it
23  from there.  But I can tell you which one
```

1  is this one as soon as I get the copy of

2  my checks.

3  Q        You don't have them with you?

4  A        No.

5  Q        What I'm getting at is that you

6  show that you've got that much, $1,890,

7  left over every month after you pay all

8  these expenses.  But you just told me that

9  you transferred two or three thousand

10  dollars each month to the weight loss

11  business.  How can you do that if you've

12  only got that left over after paying these

13  expenses unless these expenses aren't

14  accurate?

15  A        I don't know.  I don't really

16  know.

17  Q        Exhibit Number 2, these are

18  copies of the registration for your two

19  vehicles; is that correct?

20  A        Yes.

21  Q        And they're in your husband's

22  name?

23  A        Yes.

```
 1  Q          How long has it been since
 2  there was a car registered in your name,
 3  if ever?
 4  A          I have not owned a car in a
 5  long time.
 6  Q          How long has it been?
 7  A          Since we moved to Alabama.
 8  Q          How long ago was that?
 9  A          14 years ago.
10  Q          Ever since then you've
11  purchased all your cars under your
12  husband's name?
13  A          Yes.
14  Q          Is there any reason for that?
15  A          I don't drive cars.
16  Q          I think I asked you before, you
17  said you did drive the cars on occasion?
18  A          Yeah, to work.
19  Q          Well, your house, did you guys
20  purchase that, you and your husband
21  purchase that in both of your names?
22  A          Yes.
23  Q          But you didn't purchase any
```

1  cars in your name?

2  A         No.

3  Q         I'm just trying to understand

4  why you wouldn't purchase a car in your

5  name.

6  A         He just wanted it in his name

7  because he pays for it and he borrows it

8  and he pays for it.

9  Q         This is Exhibit 3.  Looks like

10 it's just a 2003 year-end report for your

11 MBNA card.  Did you get one of these --

12 this is a summary for all the credit card

13 charges.  Did you get one for '06?

14 A         No.

15 Q         Do you know why not?

16 A         I didn't realize that you have

17 to call the credit company so they can

18 give you this one.

19 Q         They don't just send this to

20 you in the mail, you have to request it?

21 A         No.  You have to request it.

22 Q         So you requested this one back

23 in '03?

```
 1  A          Right.

 2  Q          In Exhibit 4 you've produced

 3  some MBNA records for October, September,

 4  August, July '06.  From just briefly

 5  reviewing them it looks like there weren't

 6  any purchases being made on these cards.

 7  There were some late fees and you were

 8  making payments; is that correct?

 9  A          Yes.

10  Q          And these are your husband's?

11  A          Yes.

12  Q          You're familiar with these?

13  A          Yes.

14  Q          But you don't know how much

15  money you pay for mortgage on the condo in

16  Atlanta but you're familiar with the

17  credit card records?

18  A          No.

19  Q          If you're not using your charge

20  card to buy things, how have you been

21  purchasing things?

22  A          My husband.

23  Q          What does he purchase -- well,
```

1  this is his credit card records, correct?

2  A        He's got a personal credit

3  card.

4  Q        So this is not the one that

5  he's been using to purchase things with?

6  A        No.

7  Q        Do you have copies of the

8  account that he's been using to purchase

9  things with?

10 A        No.

11 Q        Why did you bring this today?

12 This is the same thing I just asked you

13 about.

14 A        You requested it.

15 Q        Actually, I requested an

16 account showing any charges that he had

17 made during this period, and what you told

18 me is that he had not made any charges on

19 this account but he had made charges on

20 another account and you didn't bring those

21 records.

22 A        He made charges.

23 Q        What I asked for was a copy of

1  any credit card statement in your
2  husband's name showing the charges that he
3  made around the time that you filed your
4  bankruptcy case.  And what you brought was
5  a copy of the account that he didn't make
6  any charges on and you left or didn't
7  bring the copy of the account where he did
8  make the charges.
9  A          I do not have a copy.
10 Q          I'm asking you why would you
11 bring this one instead of the one that he
12 made charges on?
13 A          Because this is the one that I
14 am using.
15 Q          You use this one?
16 A          Right.
17 Q          This is the one where you have
18 access to charge on?
19 A          Yes.
20 Q          Exhibit 6, it's called --
21 you've got handwritten at the top
22 "Charitable Contributions."  Does that say
23 "Edgar" and that say "Deloris?"

```
 1   A        Yes.

 2   Q        So these are his charitable

 3   contributions and these are yours?

 4   A        Yes.

 5   Q        So during November 2006, he

 6   made charitable contributions of $6,390?

 7   A        This is for one year.

 8   Q        That's a year's worth?

 9   A        Right.

10   Q        Okay.  I just see these dates

11   out by the side and they all say

12   November '06.  Is there any reason why

13   they all say November '06?

14   A        We just made a summary.

15   Q        So you say that this is for one

16   year?

17   A        One year.

18   Q        And this down here that says

19   $4,557, that's --

20   A        One year.

21   Q        One year for you?

22   A        Yes.

23   Q        Are these all religious
```

1  organizations?

2  A          Religious and -- mostly

3  religious, yeah.

4  Q          Mostly religious, almost all

5  religious?

6  A          Yes.

7          MR. HIGHTOWER:  Richard, I

8  asked Tina to come because she was

9  interested in this stuff today.  I don't

10  know if you want -- if she has any

11  questions, if you don't mind, I don't know

12  if she has any or not, but do you mind her

13  asking questions?

14          MR. SHINBAUM:  She has every

15  right to.

16  EXAMINATION BY MS. HAYES:

17  Q          I just would like to ask some

18  follow-up questions for some testimony

19  that you gave at the 341 hearing a couple

20  of weeks ago.  You testified at that time

21  that you were going back and forth to

22  Atlanta to stay in the townhouse every

23  other weekend and that you were paying

1  rent to stay there.  Is that not the case?

2  A         That was a long time ago.  That

3  was not during this time.

4  Q         When's the last time you paid

5  rent?

6  A         I quit in 2000 -- early part

7  of -- hang on a minute.  I did not do any

8  business in 2006.

9  Q         None whatsoever.  So when you

10 go over there every weekend now do you run

11 your clinic on the weekends?

12 A         Not anymore.

13 Q         Is the clinic closed?

14 A         It's closed.

15 Q         I think that's all I have.

16

17             END OF DEPOSITION

18

19

20

21

22

23

```
1              C E R T I F I C A T E
2    STATE OF ALABAMA
3    JEFFERSON COUNTY
4          I hereby certify that the
5    proceedings in the herein matter were
6    taken at the time and place therein
7    stated; that the proceedings were reported
8    by me, a professional court reporter and
9    disinterested person, and were thereafter
10   transcribed under my direction into
11   typewriting; that the foregoing is a full,
12   complete, and true record of said
13   testimony.
14          I further certify that I am not of
15   counsel or attorney for either or any of
16   the parties in the foregoing proceedings
17   and caption named, or in any way
18   interested in the outcome of the cause
19   named in said caption.
20
21
                  _____
22             Karen Hinch, Commissioner
23
```

**A**
**Academy** 75:12
**acceptable** 72:12
**access** 51:13,14
54:3 88:18
**account** 18:9,10
18:13 22:23
23:11,14 24:5
25:7 52:18 53:9
53:16 54:9,11
55:18,18 56:2
69:18 82:14
87:8,16,19,20
88:5,7
**accounts** 15:15
16:6,12 17:23
18:1 25:6 32:13
54:3,4 81:5,6,8
**accurate** 57:11
57:23 58:18
83:14
**acting** 6:3
**actual** 34:4,6
**add** 21:7,12 43:8
66:9
**addition** 9:8
**additional** 18:17
72:2
**Administration**
3:20
**administrator**
56:7
**admitting** 12:5
**affirmative** 7:23
**age** 61:10,10,17
61:18
**ages** 37:21 44:3
**ago** 9:5 77:21
81:21 84:8,9
90:20 91:2
**agree** 58:3,4
79:18
**AGREED** 1:10
2:2,9,18
**agreement** 33:21
35:15 38:20
**Alabama** 1:2,18
3:8,16,22 6:2,3

6:5,10 30:4
76:17 84:7 92:2
**allows** 7:4
**amend** 54:13
**amended** 52:4
**amendment** 52:5
**America** 51:2,19
52:2
**amount** 30:21
32:11 33:10,23
34:5,9 35:20
36:16 52:12
58:21
**amounts** 34:23
66:8
**analysis** 18:22
21:10
**analyzed** 39:20
**answer** 7:17 12:3
12:4 72:21
**anymore** 54:15
91:12
**apologize** 29:19
**apparently** 25:3
**applicable** 18:6
**appraisal** 31:1
**appraiser** 31:5,23
**appreciate** 10:4
74:4
**approximately**
1:20 12:6 36:5
55:20
**area** 37:10
**ascertaining** 31:4
**asked** 8:7 25:1
32:14 55:14,17
56:7,10 74:14
80:7 84:16
87:12,23 90:8
**asking** 19:8 29:20
58:12 67:16
71:23 88:10
90:13
**asks** 41:6
**assessed** 30:12,18
31:2
**asset** 41:12,14,21
**assign** 2:13

**assume** 25:10
30:13 31:8
56:10 60:10
**Atlanta** 45:4,21
46:3 47:22
48:19 86:16
90:22
**attached** 8:5
**attorney** 3:5,12
28:22 72:11
92:15
**attorney/client**
72:13
**August** 10:14
15:15 16:7 18:2
19:3,15,23 22:1
22:10 23:1,12
23:15 24:7,12
25:9 72:5 73:11
86:4
**auto** 61:1,5,14
**automobile** 25:14
26:5
**automobiles**
26:11
**aware** 8:11 27:8
**a.m** 1:20 6:11

**B**
**B** 4:9
**back** 29:4 31:23
74:6 81:17
85:22 90:21
**bank** 8:22 10:15
10:16 22:23
33:16,17 40:12
40:18 42:13
56:23 68:5,6
69:18 73:18
81:20 82:13,21
82:22
**bankruptcy** 1:1
3:19 7:3 14:9
29:2,7,11,13
30:6 36:3,18
41:3,11 42:16
44:23 52:4,6
54:14 56:7

63:12,20,21
64:22 65:2
67:17 77:2,6
78:7 80:3 88:4
**banks** 17:22
23:16
**basically** 7:5
**basis** 12:12 55:15
56:5
**baths** 37:7,8
**bedrooms** 37:7
**believe** 18:4,21
25:17 31:5
34:12 39:14,20
58:19,22 59:3
**belongs** 42:8
**big** 69:7
**bill** 56:15 75:7
**bills** 81:11
**binder** 71:20
**Birmingham**
3:16 6:2
**bit** 29:5 66:4
**Blue** 21:21
**booklets** 25:15
**borrows** 85:7
**bottom** 35:17
**bought** 49:13
**Brad** 6:21
**Bradley** 3:11
**Brandon's** 45:19
**Brantley** 8:23
9:22,23 33:17
**break** 68:1
**brief** 71:21
**briefly** 86:4
**bring** 8:6,8,12,19
22:17 23:6
68:16 87:11,20
88:7,11
**brings** 65:12
**brought** 13:17
15:2 22:22 23:2
23:13 60:17
67:20 88:4
**budget** 20:14,17
**bunch** 22:4
**business** 12:22

15:5,8,18 18:5
18:12,14 19:2
19:22 22:11,12
28:3,14 39:8,9
39:10,11,11,15
39:19 49:9,12
49:17,22 50:1,6
50:7,12,13,15
50:16,20,23
51:4 54:9 55:10
57:1,22 58:7
63:5 64:11 69:6
69:13,22 70:2
70:17 71:2,4,8
71:12,14,17
73:21,22 74:1
76:20 78:2,21
80:9,17,21,22
81:2,4,5,23
83:11 91:8
**businesses** 57:10
**Butler** 10:15,16
23:4,11 75:16
**buy** 24:16 32:7
32:14 48:7,13
48:18 71:18
86:20

**C**
**C** 3:1 92:1,1
**call** 85:17
**called** 7:1,1 88:20
**Camden** 9:22,22
23:5 49:8,17
50:4,11 68:5
81:3 82:3,8,12
82:14,21
**caption** 92:17,19
**car** 11:11,14,15
12:18 42:2
61:18,22,23
62:1,3 66:22
84:2,4 85:4
**card** 13:13,14,17
13:19 15:6 24:5
24:12,22 25:2,7
51:3,13,15,22
53:1,2 70:11,13

29:5 34:18 55:9
55:17 67:19
**doing** 15:13
39:11,18 71:15
**dollars** 60:22
66:2 75:19
83:10
**door** 11:15,16
**Dr** 6:21 10:1 13:9
14:8 31:22 35:3
68:3
**drive** 30:3 61:17
84:15,17
**driven** 61:6
**due** 36:21
**duly** 6:17

**E**

**E** 3:1,1 4:1,9 92:1
92:1
**earlier** 45:17 49:6
61:12 74:14,18
80:8
**early** 91:6
**earn** 63:7 81:9
**earrings** 43:16,21
**Edgar** 55:19 74:1
88:23
**effect** 2:5
**eight** 51:19
**either** 14:16
92:15
**employment** 17:2
**entered** 33:2
**Especially** 27:1
**estate** 33:9
**evidence** 2:16
**exact** 31:1 32:15
**exactly** 66:16
67:3 80:18
**examination** 4:4
6:13,20 7:2,4
90:16
**examined** 6:17
**example** 48:17
82:17
**exclusively** 67:14
**Excuse** 63:18

**Exhibit** 4:11,12
4:13,14,15,16
4:17,18,19,20
4:21,22,23 5:1,2
5:3,4 10:18,19
11:6 13:2,9,18
14:19 16:14,19
17:4,13 20:4
22:6,15 28:19
29:8 32:20
33:13,19 35:5
35:16 36:22
38:15,17 41:4
52:8 68:4 83:17
85:9 86:2 88:20
**exist** 56:21
**expected** 37:2
**expenditures**
77:7
**expense** 77:2,21
78:3 80:13
**expenses** 18:2
19:20,22 53:7
65:1,14,16,23
66:12,20 69:23
70:3 74:15,23
78:9 80:4,7
81:12 82:19
83:8,13,13
**explained** 41:9
55:4
**explanation**
68:13
**e-mail** 29:1

**F**

**F** 50:3 92:1
**fair** 32:9
**familiar** 36:1
86:12,16
**family** 47:10
**far** 45:17
**fax** 11:1 81:18
**February** 1:19
6:11
**federal** 27:13
**fees** 74:21 86:7
**fifteen** 66:10

**fifth** 50:19
**figure** 32:16 59:3
**file** 13:23 27:17
78:7 80:2
**filed** 8:2 14:8
27:18 28:1
29:13 30:6
36:17 44:22
52:5 63:12,20
63:21 64:3,22
65:2 88:3
**filing** 2:18
**finances** 67:7
**find** 11:9 32:17
48:3
**fine** 10:11 15:14
20:12
**finished** 17:16
**first** 6:17 50:3
53:10 61:13
67:21 76:4
**five** 68:9,10
**flip** 29:22 36:10
49:19,20 59:7
60:16 74:7 76:3
**following** 6:14
58:1 78:5 82:16
**follows** 6:18
**follow-up** 90:18
**footage** 37:6
**force** 2:5
**foregoing** 6:7
92:11,16
**form** 2:11 72:16
**forth** 90:21
**found** 48:4
**four** 37:8,15,20
42:15 43:15,15
**fourth** 50:14
**Ft** 75:12
**full** 2:5 92:11
**furniture** 42:23
**further** 2:1,8,17
92:14

**G**

**getting** 83:5
**Gill** 1:17 3:6 6:9

**give** 7:22 9:15
44:17 48:17
64:2 73:11
85:18
**given** 38:23 43:18
44:20
**gives** 69:5,9,19,21
**go** 10:4,12 19:8
22:20 46:16,18
47:5 48:18
61:17 63:7,17
91:10
**goes** 18:18 19:12
21:15 67:1
**going** 28:17 29:5
31:12 33:18
48:18,21 55:7
72:3 79:11 82:2
90:21
**goods** 42:17
**gotten** 45:21
**granddaughter**
37:18
**granddaughter's**
74:10
**Greenville** 30:4
50:22
**gross** 59:9 63:11
64:4 69:14
**grounds** 2:14
**GTI** 62:9
**guess** 12:3,12
64:12 66:17
79:12 82:2
**guessing** 12:1
77:12
**guys** 55:12 66:18
84:19

**H**

**H** 4:9
**half** 37:1
**handed** 19:17
**handwritten**
88:21
**hang** 91:7
**Hayes** 3:18 4:6
31:17 90:16

**head** 7:18,22
24:20 46:10
**health** 66:7 76:16
**Healthcare** 50:20
**hearing** 90:19
**Heights** 30:3
**held** 25:13
**help** 7:16 29:14
64:18 69:22
**helps** 70:1
**High** 75:13
**Hightower** 3:11
4:5 6:20,22 9:7
9:10,15 10:11
10:17 14:2,12
14:14,17 15:6
15:10,14,19
17:11 18:8 20:2
20:12,23 21:3
21:11 22:13
23:20 27:1 28:7
28:10,13,17
31:8 32:3,10,18
33:5 34:10,20
35:1 38:22
45:16 52:15
55:11,15,23
56:4,9 67:23
72:15,23 90:7
**Hinch** 1:15 6:1
92:22
**hold** 32:15
**home** 25:22 27:2
31:4 33:21 37:5
45:14 49:5,13
59:3 64:21
65:12
**homeowners**
26:20 27:4,5,10
**hospital** 50:22
59:2
**house** 30:7,13,16
30:20 32:1,13
32:22 37:14
38:7,11,13
42:23 48:18
57:4 62:22
84:19

22:6,15 28:19
29:8 32:20
33:13,19 35:15
38:15 52:8 68:4
**married** 48:19
**MasterCard** 13:5
**math** 36:20
**matter** 92:5
**MBNA** 21:6,8
51:2,19 52:2
54:1,2,7,11
85:11 86:3
**MBNAs** 53:15
**McPhilips** 1:17
3:6 6:8
**mean** 12:19 59:23
61:11 72:5 79:5
**meaning** 35:23
57:19
**means** 36:23
**med** 47:12
**Medicaid** 21:22
**medical** 63:9
65:23 76:16
**Medicare** 21:21
**medications**
71:19
**mention** 74:15,20
**mentioned** 53:6
75:22
**Mercedes** 11:3,8
11:10 62:16
**met** 6:22
**method** 31:3
**MIDDLE** 1:2
**mind** 10:3 71:21
73:4,8 90:11,12
**mine** 27:20 42:11
60:13
**minute** 77:21
81:21 91:7
**missing** 9:19
**moment** 9:16
67:18
**money** 42:5 58:13
58:15,16 63:3,6
63:17 64:2,10
64:15,16,19

66:23 69:6,9,10
69:19,21 71:7
71:10,11,15,16
74:3 76:6,8,11
76:21,22 77:1
78:1,20 80:9
81:1,8,16 82:4,9
82:18,21 86:15
**Montgomery**
1:18 3:8,22
6:10
**month** 35:6,23
36:5,8,18 38:12
46:7,12 59:10
59:11 60:18,22
61:3 63:13
64:14,21 65:5,6
65:9,15 66:13
74:19 75:4
76:12 78:2,21
80:15 83:7,10
**monthly** 75:7
**months** 23:15
24:7 25:4 35:7
**mortgage** 32:22
33:2,9,10,15,23
34:4,7,11,15
35:4,6,12 36:4
36:18,23 38:8
38:11 45:10
49:5 57:9,14,20
58:3,13,16 59:4
64:15,18 66:22
86:15
**motion** 7:1 8:1
**moved** 84:7
**multiplying** 36:7

**N**

**N** 1:8 3:1 4:1
**name** 6:21 39:12
42:12 52:19
71:6 76:14
83:22 84:2,12
85:1,5,6 88:2
**named** 92:17,19
**names** 19:13
84:21

**National** 49:8,17
50:5,12 68:5
**nature** 56:14
**necessary** 2:9
74:22 75:1
**necklaces** 43:15
43:22
**need** 25:19 45:22
70:21 82:21
**needed** 24:16
25:4 68:17
**needs** 9:2 19:7
**net** 64:20
**new** 35:17
**newspaper** 12:11
**nine** 52:2
**nineteen** 40:13
**Nissan** 61:19,20
**nod** 7:18
**nodding** 24:20
**nondischargea...**
56:19
**North** 3:14
**Notary** 1:15 6:2
**notation** 52:11
55:20 56:14,19
**note** 30:17
**noted** 53:18
**notes** 43:12
**notice** 2:18
**notified** 8:14
**November** 19:3
20:7,15 89:5,12
89:13
**November/Dec...**
20:17
**number** 1:5 7:2
11:5 28:18
33:19 36:6,13
36:22 38:12
40:2 41:4,5
42:15,19 51:2
51:19 52:2
57:17 61:19
77:17 83:17
**number's** 58:8

**O**

**O** 1:8
**oath** 7:5
**objections** 2:10
2:13
**obligated** 53:9
54:10 55:8 56:2
**obligation** 51:12
**occasion** 84:17
**October** 14:10,13
21:9,13 22:2
86:3
**offer** 31:13 32:9
**offered** 2:15
**office** 1:16 16:12
70:2 71:19 76:1
**okay** 7:10 10:21
11:22 66:8 70:5
79:5 82:17
89:10
**old** 11:17,18 38:3
**older** 37:23
**once** 71:16
**ones** 69:7 80:20
**one's** 65:21 66:1
**operate** 66:18
**opinion** 30:14
31:6
**opposed** 12:19
**oral** 6:13
**order** 9:13
**organizations**
90:1
**organized** 72:17
73:6
**original** 33:23
35:5 52:17
**originally** 58:6
**outcome** 92:18
**outside** 27:2
**owe** 49:16 51:12
51:23 52:23
53:4 54:4,15
57:8,10,20,22
58:2,5,13,15,15
58:17
**owed** 31:11 57:3
57:6 78:22,23
**owes** 56:17

**O** 1:8
**owing** 59:1,6
**owned** 41:12,18
84:4
**owns** 10:23 40:6
41:17 45:4

**P**

**P** 1:8 3:1,1
**page** 33:22 35:16
39:22,23 49:19
63:19 68:7,7,8,9
74:7 75:18 76:3
79:19
**pages** 29:22 50:3
**paid** 16:11 36:23
37:2 48:16 62:4
62:11,13,14,17
63:15,22 67:11
69:16,17 74:15
74:19,20 91:4
**part** 19:16 67:9
91:6
**participated** 7:7
**particular** 80:15
**parties** 1:11 2:13
92:16
**patients** 16:13
**pay** 24:15 32:6
36:7 46:7,8,9
48:21 52:13,16
52:19 53:7,19
54:10 55:21
56:18 61:14
62:2,3,21 63:4,7
63:8,23 64:7,16
64:18 65:5,15
65:19,19,22,23
66:3,6,20 69:22
70:12 71:18
75:4 80:4,13
81:11 83:7
86:15
**payable** 35:22
**paying** 35:11
36:17 62:12
66:11 80:9
83:12 90:23
**payment** 25:15

**school** 47:13
  75:11,13,14,15
**second** 9:5 44:5
  49:8 50:8
**section** 8:8 70:6
**secured** 49:4
**see** 9:2 21:6 34:13
  41:5,5,7 52:6,15
  68:18,21 71:20
  72:16 73:1,7,13
  74:8 75:19
  77:17 80:18
  82:17 89:10
**seen** 8:3,9 31:17
  67:21
**self** 17:2
**sell** 31:13
**semi-monthly**
  35:23
**send** 85:19
**sent** 31:5 64:14
**SEP** 16:23
**September** 10:15
  14:9 15:16 16:7
  18:3 19:2,15,23
  22:2 23:1,12,16
  24:8,13 25:10
  29:14 68:22
  70:9,14 80:15
  86:3
**serves** 40:22
**services** 50:17
  76:17
**serving** 42:1,3
**sets** 42:20,21,21
**seven** 37:1 40:13
  51:2
**shake** 7:21
**shakes** 46:10
**shame** 12:4
**Shibaum** 20:19
**Shinbaum** 1:17
  3:4,6 6:8 8:18
  9:2,9,12,18 10:7
  11:21 12:2
  13:22 14:5,10
  14:13,15,21
  15:4,8,12,17,21

16:2 17:9,15
  18:4,19 19:6,11
  20:6,16,20 21:2
  21:5,12 22:3
  23:4,8,18,22
  24:3,9 25:5,11
  25:18 26:2,7,12
  26:19 27:3,15
  27:21 28:5,8,12
  28:15 30:22
  31:12,19 32:5
  32:12 33:7 34:2
  34:12,21 36:11
  38:19 39:14
  45:19 51:6
  52:10,21 55:13
  55:16 56:3,6,13
  58:19 59:22
  72:9 75:15
  90:14
**Short** 68:2
**show** 33:18 54:14
  65:1,14 77:5
  83:6
**showed** 9:5 55:18
  64:20
**showing** 25:13
  27:16,23 87:16
  88:2
**shows** 31:3 33:22
  34:4,4,7 35:5
**side** 89:11
**sign** 42:5,14
  54:17
**signature** 2:2
**signed** 54:20,22
**sit** 66:15
**six** 40:13
**sixteen** 66:10
**small** 3:13 11:13
**smaller** 37:11
  38:6,7,11
**sold** 31:9
**solely** 69:19
**son** 37:17 38:3
  51:17,21
**sons** 44:11
**soon** 83:1

**sorry** 13:15 70:20
**sound** 35:8 57:11
  57:23 58:18
**South** 1:17 3:7
  6:9
**speaks** 34:15
**spend** 69:11
**sports** 11:14,15
  61:22
**spouse** 79:14
**spouse's** 77:10,11
  78:13 79:3
**square** 37:6
**stack** 10:1,12
  15:1 19:9 21:14
  26:8,13
**State** 1:16 6:3,6
  92:2
**stated** 92:7
**statement** 10:14
  10:16 13:13,14
  13:17,19 21:6
  22:23 23:12,14
  24:6 25:8 58:20
  68:5 88:1
**statements** 8:22
  9:21 14:22
  18:22 23:9 25:3
**States** 1:1 3:19
**stay** 90:22 91:1
**stipulate** 56:1
**STIPULATED**
  1:10 2:1,8,17
**stipulations** 6:7
**stop** 47:16
**Street** 1:18 3:7,14
  3:21 6:9
**stuff** 9:11 48:23
  72:3,14 73:3
  90:9
**submit** 31:1 33:8
**submitted** 10:10
  55:17
**submitting** 20:9
**substantially**
  31:10
**subtract** 58:14
**subtracted** 57:6

57:17
**suit** 56:15
**Suite** 3:15
**summary** 13:4
  14:22 16:8,10
  17:21 23:7
  85:12 89:14
**supplies** 71:18,19
**supposed** 72:8
**sure** 20:18 21:11
  45:3 70:16,22
  73:4 77:14,15
**sworn** 6:17

**T**
**T** 1:8,8 4:9 92:1,1
**take** 7:4,12,19
  21:18 24:4,18
  40:12 58:12
  64:21 67:18
  68:1 71:21 72:4
  72:7 73:1
**taken** 1:15 31:9
  40:11 92:6
**talked** 6:22 43:17
  45:2,17 46:1
  47:8 59:8 74:18
**talking** 31:14
  36:11 77:6
**tax** 27:13,14 28:3
  28:4,10,14
  30:12,18 31:2
  49:20
**taxes** 22:8 49:22
  49:23 52:14,16
  52:20 55:21
  56:18 58:6 65:5
  65:9,10
**telephone** 50:17
  63:8
**tell** 10:13 16:5
  19:10 21:14
  22:22 43:19
  60:1,5,14 61:18
  66:16 67:2
  72:11 75:2,17
  79:21,23 80:8
  80:18 82:23

**telling** 12:22
  16:11 80:1
  82:18
**ten** 35:7 56:22
  77:17
**term** 79:2
**terminating** 17:8
**terms** 56:15
**testified** 6:18
  90:20
**testimony** 90:18
  92:13
**Thank** 74:4
**thereto** 2:16
**thing** 7:5 9:9 10:7
  14:11 18:16
  45:17 51:20
  87:12
**things** 12:17
  22:21 48:22
  56:20 63:15
  68:19 86:20,21
  87:5,9
**think** 12:9 14:15
  15:12 17:1,15
  19:19 20:6,14
  20:23 23:1,2
  24:1,9 30:7
  32:14 38:20
  41:14 42:22
  44:13 46:22
  48:4,19 51:9
  52:23 56:11
  63:18 75:1
  78:14,17,20
  84:16 91:15
**third** 33:22 44:5
  50:11
**thought** 30:20
  31:10 39:18
  46:2 53:14
  70:20 74:22
  78:10,15
**thousand** 60:22
  75:19 76:13
  83:9
**three** 11:18 25:18
  35:16 37:8

**$24,000** 58:11
**$290,000** 57:15
  58:2
**$3,378** 51:20 54:2
**$347,577.39** 34:1
**$373,800** 30:11
  30:17
**$4,000** 36:5
**$4,557** 89:19
**$431,062.70**
  33:12 34:7
**$5,000** 43:4
**$5,483** 56:23
**$6,390** 89:6
**$60,000** 58:5
**$65,000** 52:3,7
  54:7 58:9
**$7,000** 42:18,23
**$7,113.26** 57:7
**$75,000** 55:20
**$83,000** 58:6
**$9,663** 51:3,11
  54:1

**0**
**03** 14:22 85:23
**05** 14:6,16 28:11
  28:12
**06** 14:1,7,9,14,15
  14:16,17,22
  23:1,12,16 24:8
  28:12 85:13
  86:4 89:12,13
**06-31225WRS-7**
  1:6

**1**
**1** 4:11 10:18,19
  14:1 68:4
**1,000** 75:23 80:16
  80:16
**1,300** 69:3
**1,500** 75:23
**1,600** 80:16
**1,800** 75:22
**10** 4:11,20 22:6
**10,000** 60:14
  65:17
**11** 4:12,21 22:14

  22:15 70:14
**12** 4:22 28:18,19
  75:16
**120** 35:7
**13** 4:13,23 29:8
  33:10 41:4
**14** 4:14 5:1 32:19
  32:20 33:19
  35:16 36:22
  84:9
**15** 5:2 33:13 35:5
**15,000** 63:11
**16** 4:15,16 5:3
  38:15,17 40:14
**17** 4:17,18 5:4
  52:8
**176** 35:19 36:21
**18** 37:23
**1800** 3:15
**19922** 40:2
**1998** 33:10

**2**
**2** 4:12 11:5,6
  83:17
**2,200** 82:19
**20** 4:19 12:20
**20th** 3:14
**200** 66:6
**2000** 62:9 91:6
**2002** 46:22,22
**2003** 13:5,7,10,12
  13:16 14:3
  85:10
**2004** 7:1
**2005** 27:14
**2006** 14:3 15:16
  19:23 21:6
  22:10 24:13
  25:10 29:14
  47:17 89:5 91:8
**2007** 1:19 6:11
**22** 4:20,21
**225** 30:3
**25** 29:14
**255** 75:6
**28** 4:22
**282,000** 59:4

**29** 4:23

**3**
**3** 4:13 13:2,9,18
  85:9
**3,000** 44:16
**3,100** 37:6
**3,500** 40:11
**30** 6:5 37:22 38:5
  44:8,9 61:12
**300** 65:22
**31** 37:22 44:8,9
  61:12 62:16
**31-year-old**
  62:15
**32** 5:1
**33** 5:2
**341** 90:19
**35** 61:10
**35203** 3:16
**36104** 3:22
**37** 37:22 61:11,12
  62:9
**37-year-old** 62:8
**38** 5:3
**39** 37:22 61:10,11

**4**
**4** 4:14 14:18,19
  86:2

**5**
**5** 4:15 16:14
**5th** 70:9
**5,257** 35:6
**50** 12:20
**505** 3:14
**52** 5:4
**55,000** 32:15
**566** 1:17 3:7 6:9

**6**
**6** 4:5,16 16:19
  88:20
**65** 54:11
**65,000** 55:2 56:5
**697** 40:13

**7**

**7** 4:17 17:4
**7,000** 57:19
**70,000** 51:7

**8**
**8** 4:18 17:12,13

**9**
**9** 4:19 20:3,4
**9th** 1:19 6:10
**9:00** 1:20 6:11
**90** 4:6 12:6,10,13
**90,000** 11:20

**EXHIBIT J**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

---

In the matter of:            )
                             )
Deloris V. Victoria,         ) Case No. 06-31225
                             ) Montgomery, AL
     Debtor.                 ) April 24, 2007, 10:11 a.m.

---

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE WILLIAM R. SAWYER
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor:

Richard D. Shinbaum
Shinbaum, Abell, McLeod & Vann
P.O. Box 201
Montgomery, AL 36101

For Greenville Memorial Hospital:

Bradley R. Hightower
Christian & Small, LLP
505 North 20th Street, Suite 1800
Birmingham, AL 35203

---

Electronic Recorder
Operator:                    Linda Bodden

Transcriber:                 Patricia Basham
                             6411 Quail Ridge Drive
                             Bartlett, TN 38135
                             901-372-0613

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

2

1          COURTROOM DEPUTY: Case number 06-31225, Deloris V.

2     Victoria.

3          MR. HIGHTOWER: Good morning, Judge.

4          MR. SHINBAUM: Good morning, Your Honor.

5          THE COURT:  Good morning.

6          MR. SHINBAUM: Richard Shinbaum for Dr. Victoria.

7          THE COURT:  All right.

8          MR. HIGHTOWER: Brad Hightower for Greenville Hospital.

9          THE COURT:  Okay.

10          MR. HIGHTOWER: Are you ready?

11          THE COURT:  Yes, sir.

12          MR. HIGHTOWER: This is our motion to compel or

13     alternatively to dismiss the debtor's case.  As of today, the

14     debtor has substantially complied with our request for

15     documents.  There is, I believe, just one more document that

16     the debtor's attorney is going to e-mail to me this afternoon.

17          THE COURT: Okay.

18          MR. HIGHTOWER: And there were an additional five

19     documents that were requested today, which I have, that I am

20     going to e-mail this afternoon.

21          THE COURT: Okay.  All right.  So do you want to

22     continue your motion or is it okay to overrule it –

23          MR. HIGHTOWER: Your Honor, you can deny it if you

24     would just consider it along with the motion to dismiss that

25     has now been filed when the court does determine a decision on

3

1      that motion.

2              THE COURT: Okay.  Wait a minute.

3              MR. SHINBAUM: There was a motion to dismiss filed on

4      other grounds late last week that I haven't had a chance to

5      respond to yet.

6              THE COURT: Okay.  On April 20, you filed a motion to

7      dismiss?

8              MR. HIGHTOWER: That's correct, Your Honor. It is a

9      separate motion.

10             THE COURT:  Okay.  And that has not been –

11             MR. HIGHTOWER: It is based on different grounds but I

12     would just ask the court to consider along with that motion all

13     of the allegations that are in the motion to compel also, just

14     regarding how long it took for the debtor to provide these

15     documents that I think should have been provided in a much

16     shorter period of time without nearly as much effort.

17             THE COURT: All right.  Well, do you want to go ahead

18     and – I guess we are – are we going to need an evidentiary

19     hearing for this, aren't we?

20             MR. SHINBAUM: We would, Your Honor.

21             MR. HIGHTOWER: Yes, Your Honor.

22             THE COURT:  Okay.  When do you want to do it?  I take

23     it pretty much the documents have been produced.  There is not

24     going to be any other discovery; is that correct?

25             MR. SHINBAUM:  That's correct.  In the motion to

4

1    produce – in the motion to dismiss, there is a document that I

2    will have to conduct some discovery of hospital officials on.

3    It raises an issue on –

4            THE COURT:  Wait a minute, wait a minute.  We have

5    got a motion to dismiss a bankruptcy case for substantial

6    abuse.  Now what are these hospital officials going to have to

7    do with that?

8            MR. SHINBAUM: Part of it is a discovery of assets by

9    the hospital and a lease agreement that was entered in June of

10   last year.  I would like to go into some of these aspects as to

11   what took place in those negotiations, what was revealed in

12   assets, and show what the true asset picture of the debtor is

13   or was at that time.

14           THE COURT: Well, wait a minute, wait a minute.  You

15   want to take a deposition of a hospital official to determine

16   your own client's asset situation?

17           MR. SHINBAUM: No.  They are saying her assets are one

18   thing, which we disagree with.

19           THE COURT: Okay.

20           MR. SHINBAUM: Okay.  I want to go into the good faith

21   and frivolity of this motion that is now filed and the true

22   knowledge of the hospital as to the accurate facts while they

23   were having arms-length negotiations some two months before the

24   bankruptcy was filed.

25           MR. HIGHTOWER: Your Honor, I don't have any idea how

5

1    that can impact what the debtor's financial condition was on

2    the date that she filed her bankruptcy case.  She has got

3    schedules.  She has produced documents.  Our motion to dismiss

4    is entirely based on the documents that were produced, and her

5    schedules and the testimony that she gave in her 2004

6    examination.

7         THE COURT: okay.  Well, I guess I will start with Mr.

8    Hightower.  What is your best estimate as to how much time we

9    will need to do this?

10        MR. HIGHTOWER: I don't need any witnesses.  I just am

11   relying at this point purely based on what she has produced so

12   far and the testimony that she has already given.

13        THE COURT: Okay.

14        MR. SHINBAUM: And I feel sure that I can get with Mr.

15   Hightower and arrange for what I am going to need within the

16   next ten days.  I can get with him and schedule that.

17        THE COURT: Okay.  I guess what I am asking is

18   sometimes we will do these at eleven o'clock on a Tuesday, if

19   it is a one hour or less.  If you think it is going to be

20   longer than that, maybe we can give you, say, a 1:30 in the

21   afternoon and you could take whatever time in the afternoon you

22   need.  I mean, I take it that it would certainly be no more

23   than a half a day.

24        MR. SHINBAUM: Oh, yes, Your Honor.  I wouldn't

25   anticipate more than a half a day.  If you could give us a 1:30

6

1  setting, it might be more appropriate.

2        THE COURT: Okay. Well, then, we will do that. All

3  right. Well, we could do it – I guess we could do it as early

4  as, what's next Tuesday? Is that the second?

5        COURTROOM DEPUTY: We don't have anything next Tuesday.

6  It will be the eighth. But we have telephone hearings that

7  day.

8        THE COURT: Okay. Well, we could do it as early as

9  next Tuesday if you want, Tuesday, the – I mean, we are here in

10  town. I mean, we are not –

11        MR. SHINBAUM: Judge, could I ask for maybe the first

12  Tuesday in June? That would give me about three weeks to do my

13  discovery.

14        THE COURT: No, no, no, we're not going to do

15  discovery. We are going to get this thing – I don't think you

16  are entitled to get any discovery. I mean, you are certainly

17  free to make whatever argument if you think the motion is

18  brought in bad faith. This case was filed in September and the

19  motion is based on substantial abuse. We don't need to make

20  huge federal cases of these 707(b) motions. Certainly your

21  debtors know what their own assets, liabilities, income already

22  is. So, no, I wasn't – I mean, I think it would be a bad idea.

23        You know, frankly a lot of debtors go into fishing

24  expeditions. I mean, they are always going to say, you know,

25  the creditor claims abuse, the debtor is going to say bad

7

1  faith.  I mean, that is going to be the standard sort of thing

2  but, I mean, it is really going to center on the debtor's

3  condition and not really so much on the creditor's.  I mean,

4  either there is or there is not substantial abuse.

5          MR. SHINBAUM: Then if we could skip two weeks because

6  I have a case that is on a call docket over in circuit court in

7  Auburn on Monday and Tuesday.  If it is, it is going to take

8  two days.  I don't know if it is going to go.

9          THE COURT: Okay.

10         MR. SHINBAUM: I mean, I hate to say it is going to go

11  and then not go but it is on the call docket over there.

12         THE COURT: I understand.  All right.  Is the following

13  Tuesday the eighth or ninth?

14         COURTROOM DEPUTY: It would be the eighth, but we have

15  telephone hearings at 1:30 on May 8, pretrial.

16         THE COURT:   The pretrial, and those are at 1:30.

17  Okay.  Why don't we just set it at two o'clock, then, on May 8,

18  2:00 p.m.

19         All right.  We will see you then.

20         MR. HIGHTOWER: Thank you, Your Honor.

21         (Off the record at 10:19 p.m.)

8

C E R T I F I C A T E

      I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


                    /s/ Patricia Basham

                    Patricia Basham, Transcriber

                    Date:  August 12, 2007

**EXHIBIT K**

## United States Bankruptcy Court
### Middle District of Alabama

In re   **Deloris V. Victoria**                                     Case No.   **06-31225**
                                       Debtor(s)          Chapter   **7**

## MOTION TO AMEND BANKRUPTCY PETITION

1.    Debtor(s), __**Deloris V. Victoria**__, commenced this case on __**September 25, 2006**__ by filing a voluntary petition for relief under Chapter 7 of Title 11 of the United States Bankruptcy Code.

2.    On or about _____ debtor(s) discovered that the following information had been inadvertently omitted from his/her/their Petition:

| Schedule(s) Affected: | Change(s): |
|---|---|
| Schedule B | Add Accounts Receivable |
| Schedule F | To modify MBNA claim and correct Creditors claims |
| Schedule G | To reflect lease |

WHEREFORE, Debtor(s) pray for an Order to Amend his/her/their Bankruptcy Petition to reflect the above-mentioned changes and for such additional or alternative relief as may be just and proper.

Dated: __2-5-07__                            /s/ Deloris V. Victoria
                                              **Deloris V. Victoria**
                                              Debtor

## ORDER

The motion of the above-named debtor(s), __**Deloris V. Victoria**__, to amend his/her/their Bankruptcy Petition is sustained.

It is hereby ORDERED and DECREED that the Debtor's(s') Bankruptcy Petition is amended to reflect the following changes:

| Amendment(s) to Petition: |
|---|
| Amendments of Schedule B and F |
| |
| |

Dated: _____               _____

                                   **U.S. BANKRUPTCY JUDGE**

Form B6B
(10/05)

In re    **Deloris V. Victoria**                                                          Case No. ____06-31225____
                                          Debtor

## SCHEDULE B. PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c); Rule 1007(b)). | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | | SEP | - | 20,000.00 |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | | **Business Accounts due and Receivable approximately $20,000.00** | - | 20,000.00 |
| | | **Business Accounts Receivables** | - | 15,000.00 |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owing debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |

                                                          Sub-Total >          55,000.00
                                                      (Total of this page)

Sheet __1__ of __2__ continuation sheets attached
to the Schedule of Personal Property

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

Form B6B
(10/05)

In re    **Deloris V. Victoria**                                    Case No.____**06-31225**____

                                    Debtor

# SCHEDULE B. PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property." In providing the information requested in this schedule, do not include the name or address of a minor child. Simply state "a minor child."

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 1. Cash on hand | | **CASH** | - | 300.00 |
| 2. Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | **CHECKING ACCOUNT - WHITNEY BANK** | - | 2,000.00 |
| | | **CHECKING ACCOUNT - BUTLER COUNTY BANK** | - | 500.00 |
| 3. Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. Household goods and furnishings, including audio, video, and computer equipment. | | **HOUSEHOLD GOODS** | - | 7,000.00 |
| 5. Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6. Wearing apparel. | | **WEARING APPAREL** | - | 1,000.00 |
| 7. Furs and jewelry. | | **JEWELRY** | - | 5,000.00 |
| 8. Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9. Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |
| 10. Annuities. Itemize and name each issuer. | X | | | |

                                    Sub-Total >        **15,800.00**
                                    (Total of this page)

__**2**__   continuation sheets attached to the Schedule of Personal Property

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

Form B6H
(10/05)

In re    **Deloris V. Victoria**                              Case No.    **06-31225**
_____
                        Debtor

## SCHEDULE B. PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | | **POSSIBLE BREECH OF CONTRACT SUIT AGAINST DR. LILITH NAML SUIT NOT YET FILED. ATTORNEY RICHARD HARTLEY** | - | **Unknown** |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | X | | | |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | | **COMPUTERS, EKG, TABLES, CHAIRS** | - | **19,000.00** |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |

                                                Sub-Total >         **19,000.00**
                                                (Total of this page)
                                                        Total >      **89,800.00**

Sheet  **2**  of  **2**   continuation sheets attached
to the Schedule of Personal Property                        (Report also on Summary of Schedules)

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037                        Best Case Bankruptcy

Form B6F
(10/05)

In re    **Deloris V. Victoria**                                         Case No.    **06-31225**
_____                      _____
                              Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C.§112; Fed.R.Bankr.P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community maybe liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

☐   Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H W | J C | | | | | |
| Account No. | | | | 09-2005 | | | | |
| Creditor #: 1 CAMDEN NATIONAL 3 WATER STREET Camden, AL 36726 | | - | | LINE OF CREDIT | | | | |
| | | | | | | | | 2,545.00 |
| Account No. x8652 | | | | 09-2004 | | | | |
| Creditor #: 2 CAMDEN NATIONAL 3 WATER STREET Camden, AL 36726 | | - | | DISPUTED DEBT | | | X | |
| | | | | | | | | 1.00 |
| Account No. x7851 | | | | 06-2004 | | | | |
| Creditor #: 3 CAMDEN NATIONAL 3 WATER STREET Camden, AL 36726 | | - | | LOAN | | | | |
| | | | | | | | | 680.00 |
| Account No. xxxxx2276 | | | | 03-2005 | | | | |
| Creditor #: 4 CENTURYTEL PO BOX 6001 Marion, LA 71260-6001 | | | | COLLECTION ACCOUNT | | | | |
| | | | | | | | | 558.00 |
| **2**   continuation sheets attached | | | | Subtotal (Total of this page) | | | | 3,784.00 |

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL - (800) 492-8037                              S/N:34718-070103   Best Case Bankruptcy

Form D6F - Cont
(10/05)

In re     **Deloris V. Victoria**                                Case No.    **06-31225**

                                  Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | CODEBTOR | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H W | J C | | | | | |
| Account No. <br> Representing: <br> **CENTURYTEL** | | | | **BANK OF AMERICA** <br> **PO BOX 41466** <br> **Philadelphia, PA 19101** | | | | |
| Account No. <br> Creditor #: 5 <br> **GENEZEN HEALTHCARE** <br> **PO BOX 571811** <br> **Houston, TX 77257** | | | | **2005** <br> **Pending Suit non consumer debt** <br> **BUTLER COUNTY CV 05-177** <br> **Suit involving patient accounts** | | | | 18,000.00 |
| Account No. <br> Representing: <br> **GENEZEN HEALTHCARE** | | | | **DAVID C. SCHWARTZ, ESQ.** <br> **PO BOX 11366** <br> **Birmingham, AL 35202-1366** | | | | |
| Account No. <br> Creditor #: 6 <br> **GREENVILLE HOSPITAL** <br> **DBA LV STABLER MEMORIAL** <br> **29 STABLER DR** <br> **Greenville, AL 36037** | | | | **2005** <br> **JUDGEMENT NON CONSUMER DEBT** <br> **BUTLER COUNTY CV 05-133** <br> **SUIT ON CONTRACT INVOLVING** <br> **TERMINATION OF DOCTOR** | | | | 162,700.00 |
| Account No. <br> Representing: <br> **GREENVILLE HOSPITAL** | | | | **GREER B. MALLETTE, ESQ** <br> **505 20TH ST N., STE 1800** <br> **Birmingham, AL 35203-2696** | | | | |

Sheet no. **1** of **2** sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

                                      Subtotal
                           (Total of this page)      **180,700.00**

Form B6F - Cont.
(10/05)

In re    **Deloris V. Victoria**                        Case No. ___06-31225___
                                    Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | H W J C | Husband, Wife, Joint, or Community — DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. <br> **Creditor #: 7** <br> **MBNA AMERICA** <br> **PO BOX 17054** <br> **Wilmington, DE 19884** | X | J | 08-1999 <br> **CREDIT CARD** | | | | 9,663.00 |
| Account No. <br> **Creditor #: 8** <br> **MBNA AMERICA** <br> **PO BOX 17054** <br> **Wilmington, DE 19884** | X | J | 10-1995 <br> **CREDIT CARD** | | | | 3,378.00 |
| Account No. <br> **Creditor #: 9** <br> **MBNA AMERICA** <br> **PO BOX 17054** <br> **Wilmington, DE 19884** | X | J | 04-1994 <br> **Non Consumer business accout credit card for purchase of medical equipment and supplies. Account in Husbands name used to pay wife's debts. $77K** | X | | | 1.00 |
| Account No. <br> **Creditor #: 10** <br> **WHITNEY BANK** <br> **228 ST CHARLES AVE** <br> **New Orleans, LA 70130** | - | | 12-1999 <br> **LINE OF CREDIT** | | | | 5,483.00 |
| Account No. | | | | | | | |

Sheet no. __2__ of __2__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

| | |
|---|---|
| Subtotal (Total of this page) | 18,525.00 |
| Total (Report on Summary of Schedules) | 203,009.00 |

Copyright (c) 1996-2006 - Best Case Solutions - Evanston, IL  (800) 492-8037          Best Case Bankruptcy

Form B6G
(10/05)

In re    **Deloris V. Victoria**                         Case No.    **06-31225**

Debtor

# SCHEDULE G. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests. State nature of debtor's interest in contract, i.e., "Purchaser", "Agent", etc. State whether debtor is the lessor or lessee of a lease. Provide the names and complete mailing addresses of all other parties to each lease or contract described. If a minor child is a party to one of the leases or contracts, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C. § 112; Fed.R. Bankr. P. 1007(m).

☐ Check this box if debtor has no executory contracts or unexpired leases.

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
|---|---|
| **GREENVILLE HOSPITAL DBA LV STABLER MEMORIAL 29 STABLER DR Greenville, AL 36037** | **Business lease** |

 

**0**   continuation sheets attached to Schedule of Executory Contracts and Unexpired Leases

Copyright (c) 1996-2005 - Best Case Solutions - Evanston, IL - (800) 492-8037                Best Case Bankruptcy

# EXHIBIT L

**MOTION TO DISMISS CHART SHOWING BREAKDOWN OF DEBTS**

| Consumer Debts | Business Debts[2] |
|---|---|
| • $290,000.00 secured mortgage debt to Brantley Bank & Trust[1] | • $60,877.74 in priority tax debts<br>• $2,545.00 unsecured debt for line of credit to Camden National<br>• $1.00 unsecured disputed debt to Camden National<br>• $680.00 unsecured loan debt to Camden National<br>• $558.00 unsecured collection account debt with CenturyTel<br>• $18,000 unsecured debt in a pending suit by Genezen Healthcare<br>• $162,700.00 judgment to Greenville Hospital<br>• $1.00 unsecured credit card debt to MBNA America<br>• $5,483.00 unsecured line to credit debt to Whitney Bank |
| **Total: $290,000.00** | **Total: $250,845.74** |

---

[1] A mortgage on a debtor's home is a consumer debt as that term is defined in Section 101(8) of the Bankruptcy Code. *See In re Price*, 353 F.3d 1135 (9th Cir. 2004).

[2] The Debtor testified that she was not obligated for a $9,663.00 credit card debt to MBNA America and a $3,378.00 credit card debt to MBNA America listed in Schedule F. *See Deposition Transcript* at p. 51. She also testified that a $19,000.00 secured debt to Camden National was owed by her weight loss business (a corporation) rather than herself. *See Deposition Transcript* at p. 39. Even if these debts, which total $32,041.00, were included in the Debtor's business debts, they would only increase the Debtor's total business debts to $282,886.74. This amount is still below the amount of the Debtor's consumer debts, which total $290,000.00.

# EXHIBIT M

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

IN RE:

    DELORIS V. VICTORIA           Chapter 7 Case No. 06-31225

      Debtor(s)

## AMENDMENT TO CHAPTER 7 PETITION

COMES NOW, Deloris V. Victoria, Debtor in the above referenced bankruptcy and hereby moves this Honorable Court to amend the Chapter 7 petition in reference to this case as follows:

1. Amend **SCHEDULE D, E & F:** to reflect the true amount of debt to Brantley Bank, the Internal Revenue Service, Genezen Healthcare and Greenville Hospital.

WHEREFORE, THESE PREMISES CONSIDERED, the debtor moves this Honorable Court to amend the schedules as stated above.

Respectfully submitted May 8, 2007

/S/ RICHARD D. SHINBAUM
RICHARD D. SHINBAUM
rshinbaum@samvpc.com
VONDA S. MCLEOD
vmcleod@samvpc.com
C. BRANDON SELLERS, III
cbsellers@samvpc.com
Attorneys for the Debtor
SHINBAUM, ABELL, MCLEOD & CAMPBELL
Post Office Box 201
Montgomery, Alabama 36101
(334) 269-4440

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above foregoing Amendment and Schedules on all parties listed below by electronic or postal mail on this May 8, 2007:

Hon. Teresa Jacobs
Bankruptcy Administrator
U.S. Bankruptcy Court
One Church Street
Montgomery, AL 36104

Daniel Gary Hamm
560 S. McDonough St., Ste A
Montgomery, AL 36104

/S/ RICHARD D. SHINBAUM

Form B6D
(10/05)

In re    **Deloris V. Victoria**                                                              Case No. _____ **06-31225** _____

Debtor

# SCHEDULE D. CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C§112; Fed.R.Bankr.P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community." If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

☐    Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|---|---|
| | | H W | J | C | | | | | | |
| Account No. | | | | | Mortgage | | | | | |
| Creditor #: 1 **BRANTLEY BANK & TRUST** P.O. BOX 25 BRANTLEY, AL 36009 | | | J | | **225 WOODLAND HEIGHTS DR, GREENVILLE AL-- SINGLE FAMILY RESIDENCE VALUE LISTED IS TAX ASSESSED VALUE** | | | | | |
| | | | | | Value $              373,800.00 | | | | 285,170.31 | 0.00 |
| Account No. **9481** | | | | | 03-2006 | | | | | |
| Creditor #: 2 **CAMDEN NATIONAL d/b/a Butler County Bank 3 Water Street Camden, AL 36726** | | | - | | **SECURITY AGREEMENT** **COMPUTERS, EKG, TABLES, CHAIRS** | | | | | |
| | | | | | Value $               19,000.00 | | | | 19,029.83 | 29.83 |
| Account No. | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | Value $ | | | | | |
| Account No. | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | Value $ | | | | | |

**0**    continuation sheets attached

|  | | |
|---|---|---|
| Subtotal (Total of this page) | 304,200.14 | |
| Total (Report on Summary of Schedules) | 304,200.14 | |

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037                                              Best Case Bankruptcy

In re    **Deloris V. Victoria**                                        Case No. ____**06-31225**____
                                                                                Debtor

# SCHEDULE E. CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name, mailing address, including zip code, and last four digits of the account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of the petition. Use a separate continuation sheet for each type of priority and label each with the type of priority.

The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C. §112; Fed.R.Bankr.P. 1007(m).

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether husband, wife, both of them or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community". If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Report the total of claims listed on each sheet in the box labeled "Subtotal". Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

Report the total of amounts entitled to priority listed on each sheet in the box labeled "Subtotal" on each sheet. Report the total of all amounts entitled to priority listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. If applicable, also report this total on the Means Test form.

☐ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS** (Check the appropriate box(es) below if claims in that category are listed on the attached sheets.)

☐ **Domestic support obligations**
Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐ **Extensions of credit in an involuntary case**
Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(3).

☐ **Wages, salaries, and commissions**
Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $10,000* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, which ever occurred first, to the extent provided in 11 U.S.C. § 507 (a)(4).

☐ **Contributions to employee benefit plans**
Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

☐ **Certain farmers and fishermen**
Claims of certain farmers and fishermen, up to $4,925* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).

☐ **Deposits by individuals**
Claims of individuals up to $2,225* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided. 11 U.S.C. § 507(a)(7).

■ **Taxes and certain other debts owed to governmental units**
Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C § 507(a)(8).

☐ **Commitments to maintain the capital of an insured depository institution**
Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution. 11 U.S.C. § 507(a)(9).

☐ **Claims for death or personal injury while debtor was intoxicated**
Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance. 11 U.S.C. § 507(a)(10).

*Amounts are subject to adjustment on April 1, 2007, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

_____1_____ continuation sheets attached

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

In re    **Deloris V. Victoria**                                              Case No. ____**06-31225**____
                                        Debtor

# SCHEDULE E. CREDITORS HOLDING UNSECURED PRIORITY CLAIMS
### (Continuation Sheet)

**Taxes and Certain Other Debts
Owed to Governmental Units**

TYPE OF PRIORITY

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM | AMOUNT ENTITLED TO PRIORITY |
|---|---|---|---|---|---|---|---|---|---|---|
| | | H W | J | C | | | | | | |
| Account No. **xx-xxx3639** | | | | | 940-941 2003-2005 | | | | | |
| **Creditor #: 1** **INTERNAL REVENUE SERVICE** **SPECIAL PROCEDURES FUNCTION** **801 TOM MARTIN DR., ROOM 126** **BIRMINGHAM, AL 35211** | - | | | | | | | | 65,107.26 | 65,107.26 |
| Account No. **xx-xxx7031** | | | | | 941  1999,2000,2005,2006 | | | | | |
| **Creditor #: 2** **INTERNAL REVENUE SERVICE** **SPECIAL PROCEDURES FUNCTION** **801 TOM MARTIN DR., ROOM 126** **BIRMINGHAM, AL 35211** | - | | | | | | | | 42,096.91 | 42,096.31 |
| Account No. **1040 Tasxes** | | | | | 2005 | | | | | |
| **Creditor #: 3** **INTERNAL REVENUE SERVICE** **SPECIAL PROCEDURES FUNCTION** **801 TOM MARTIN DR., ROOM 126** **BIRMINGHAM, AL 35211** | - | | | | | | | | 418.65 | 418.65 |
| Account No. | | | | | 2003 Taxes | | | | | |
| **Creditor #: 4** **STATE OF ALABAMA** **DEPARTMENT OF REVENUE** **P.O. BOX 320001** **MONTGOMERY, AL 36132** | - | | | | | | | | 1,547.62 | 1,547.62 |
| Account No. | | | | | | | | | | |

Sheet **1** of **1** continuation sheets attached to
Schedule of Creditors Holding Unsecured Priority Claims

| | | |
|---|---|---|
| Subtotal (Total of this page) | 109,170.44 | 109,169.84 |
| Total (Report on Summary of Schedules) | 109,170.44 | 109,169.84 |

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037

Form B6F
(10/05)

In re    **Deloris V. Victoria**                                              Case No. ____**06-31225**____
_____
                                    Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a claim is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C.§112; Fed.R.Bankr.P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community maybe liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

☐    Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H W J C | | | | | | |
| Account No. | | | | 09-2005 **LINE OF CREDIT** | | | | |
| **Creditor #: 1** **CAMDEN NATIONAL** **3 WATER STREET** **Camden, AL 36726** | - | | | | | | | 2,545.00 |
| Account No. **x8652** | | | | 09-2004 **DISPUTED DEBT** | | | | |
| **Creditor #: 2** **CAMDEN NATIONAL** **3 WATER STREET** **Camden, AL 36726** | - | | | | | | X | 1.00 |
| Account No. **x7851** | | | | 06-2004 **LOAN** | | | | |
| **Creditor #: 3** **CAMDEN NATIONAL** **3 WATER STREET** **Camden, AL 36726** | - | | | | | | | 680.00 |
| Account No. **xxxxx2276** | | | | 03-2005 **COLLECTION ACCOUNT** | | | | |
| **Creditor #: 4** **CENTURYTEL** **PO BOX 6001** **Marion, LA 71260-6001** | - | | | | | | | 558.00 |

__**2**__    continuation sheets attached

Subtotal
(Total of this page)                                                                    3,784.00

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037

In re    **Deloris V. Victoria**                                          Case No. ____**06-31225**____
_____
                              Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H W | J C | | | | | |
| Account No. <br> **Representing:** <br> **CENTURYTEL** | | | | **BANK OF AMERICA** <br> **PO BOX 41466** <br> **Philadelphia, PA 19101** | | | | |
| Account No. <br> **Creditor #: 5** <br> **GENEZEN HEALTHCARE** <br> **PO BOX 571811** <br> **Houston, TX 77257** | | - | | **2005** <br> **Pending Suit non consumer debt** <br> **BUTLER COUNTY CV 05-177** <br> **Suit involving patient accounts** | | | | **17,282.19** |
| Account No. <br> **Representing:** <br> **GENEZEN HEALTHCARE** | | | | **DAVID C. SCHWARTZ, ESQ.** <br> **PO BOX 11366** <br> **Birmingham, AL 35202-1366** | | | | |
| Account No. <br> **Creditor #: 6** <br> **GREENVILLE HOSPITAL** <br> **DBA LV STABLER MEMORIAL** <br> **29 STABLER DR** <br> **Greenville, AL 36037** | | - | | **2005** <br> **JUDGEMENT NON CONSUMER DEBT** <br> **BUTLER COUNTY CV 05-133** <br> **SUIT ON CONTRACT INVOLVING** <br> **TERMINATION OF DOCTOR** | | | | **165,140.00** |
| Account No. <br> **Representing:** <br> **GREENVILLE HOSPITAL** | | | | **GREER B. MALLETTE, ESQ** <br> **505 20TH ST N., STE 1800** <br> **Birmingham, AL 35203-2696** | | | | |

Sheet no. __1__ of __2__ sheets attached to Schedule of                     Subtotal
Creditors Holding Unsecured Nonpriority Claims                         (Total of this page)    **182,422.19**

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037                                          Best Case Bankruptcy

In re **Deloris V. Victoria**                                    Case No. __06-31225__

_____
Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No.<br>**Creditor #: 7**<br>**MBNA AMERICA**<br>**PO BOX 17054**<br>**Wilmington, DE 19884** | X | J | **08-1999**<br>**CREDIT CARD** | | | | **9,663.00** |
| Account No.<br>**Creditor #: 8**<br>**MBNA AMERICA**<br>**PO BOX 17054**<br>**Wilmington, DE 19884** | X | J | **10-1995**<br>**CREDIT CARD** | | | | **3,378.00** |
| Account No.<br>**Creditor #: 9**<br>**MBNA AMERICA**<br>**PO BOX 17054**<br>**Wilmington, DE 19884** | X | J | **04-1994**<br>**Non Consumer business account credit card for primarily used by the Debtor's and Debtor Husband to pay income taxes. Account is in Husbands name. Debtors liability would be contingent, since used to pay taxes.** | | X | | **70,912.00** |
| Account No.<br>**Creditor #: 10**<br>**WHITNEY BANK**<br>**228 ST CHARLES AVE**<br>**New Orleans, LA 70130** | - | | **12-1999**<br>**LINE OF CREDIT** | | | | **5,483.00** |
| Account No. | | | | | | | |

Sheet no. _2_ of _2_ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

| | |
|---|---|
| Subtotal<br>(Total of this page) | **89,436.00** |
| Total<br>(Report on Summary of Schedules) | **275,642.19** |

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

**EXHIBIT N**

**REPLY CHART SHOWING BREAKDOWN OF DEBTS**

| Consumer Debts | Business Debts[2] |
|---|---|
| • $290,000.00 secured mortgage debt to Brantley Bank & Trust[1] | • $70,457.84 in tax debts ($109,425.20 minus $38,967.36) |
| | • $2,545.00 unsecured debt for line of credit to Camden National |
| | • $1.00 unsecured disputed debt to Camden National |
| | • $680.00 unsecured loan debt to Camden National |
| | • $558.00 unsecured collection account debt with CenturyTel |
| Total: $290,000.00 | • $17,282.19 unsecured debt in a pending suit by Genezen Healthcare |
| | • $165,140.00 judgment to Greenville Hospital |
| | • $5,483.00 unsecured line to credit debt to Whitney Bank |
| | Total: $262,147.03 |

---

[1] A mortgage on a debtor's home is a consumer debt as that term is defined in Section 101(8) of the Bankruptcy Code. *See In re Price*, 353 F.3d 1135 (9th Cir. 2004). This debt has not been revised downward to the $285,170.31 amount listed in the Debtor's amended schedules because it appears that the lower amount is the result of a postpetition mortgage payment made on the mortgage prior to the execution of a reaffirmation agreement approximately 1 month after the petition date.

[2] The Debtor testified that she was not obligated for a $9,663.00 credit card debt to MBNA America and a $3,378.00 credit card debt to MBNA America listed with Schedule F. *See Deposition Transcript* at p. 51. She also testified that a $19,029.83 secured debt to Camden National was owed by her weight loss business (a corporation) rather than herself. *See Deposition Transcript* at p. 39.