IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE THE MATTER OF:

DELORIS VICTORIA

   Debtor

DELORIS V. VICTORIA

   Appellant

v.                                          Case-No.07-CV- 00688-WKW

GREENVILLE HOSPITAL

   Appellee

---

REPLY BRIEF
ON APPEAL FROM


IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE THE MATTER OF:

Deloris V. Victoria                        CASE NO. 06-31225-WRS

   Debtor,

---

Counsel for the Debtor
Richard D. Shinbaum (SHI007)
Shinbaum, Abell, McLeod & Campbell
P.O. Box 201
Montgomery, Al 36101
(334)269-4440
Fax (334)263-4096
e-mail rshinbaum@samvpc.com

TABLE OF CONTENTS

Statement of Jurisdiction                                    Page 1

Argument                                                          Page 2

Standard of Review                                              Page 3

Statement of Case                                              Page 4

Statement of Facts                                             Page 5

Argument of Debtor-Appellant                         Page 6

Conclusion                                                        Page 16

Certificate of Service                                         Page 17

Appendices                                                         1-6

Table of Authorities

Statutes

11 U.S.C. Section 362                                      Page 9

11 U.S.C. Section 521                                      Page 9

11 U.S.C. Section 707(b)                                   Page 11

Title 26 U.S.C. Section 6672                               Page 8

Table of Cases

General Trading v. Yale Materials Handling Corp., 119 F.3d 1485
(Eleventh Circuit 1997)                                    Page 14

Marks v. Shell Oil Co., 830 F.2d 68 (Sixth Circuit 1987)  Page 7

In re Packard Properties, Ltd., 118 B.R. 61 (Bankr N.D. Tex 1990)  Page 8

In re Pier  310 B.R. 347,355 (Bank. N.D. Ohio 2004)       Page 13

Table of Rules

Rule 7015 of the Federal Rules of Bankruptcy Procedure    Page 6

JURISDICTION

The Debtor-Appellant realleges the statement of Jurisdiction.

ARGUMENT

Did the United States Bankruptcy Court for the Middle District of Alabama abuse it's

discretion in ruling that the Debtor-Appellant's consumer debt exceeded the Debtor-Appellant's

non consumer debt and thus dismissing the case.

STANDARD OF REVIEW

The Debtor-Appellant realleges the Stantdard of Review.

STATEMENT OF THE CASE

The Debtor-Appellant  restates the previously submitted statement of the case.

STATEMENT OF FACTS

The Debtor-Appellant realleges the previously stated Statement of the Facts.

ARGUMENT OF THE DEBTOR-APPELLANT

**Did the United States Bankruptcy Court for the Middle District of Alabama abuse it's discretion in ruling that the Debtor-Appellant's consumer debt exceeded the Debtor-Appellant's non consumer debt and thus dismissing the case**.

The Creditor-Appellee attaches a large significance, as does the Court, to the two amendments of the Bankruptcy Petition.  The first amendment of the bankruptcy schedules, it is undisputed, was at the request of the Bankruptcy Trustee and the second amendment was to conform with the facts of the case and with the proof of claim filed by the IRS on the 8th day of May, 2007.  The Debtor would submit that pursuant Rule 7015 of the Federal Rules of Bankruptcy Procedure (the equivalent of Rule 15 of the Federal Rules of Civil Procedure) amendments are liberally provided.  Rule 7015 states:

Rule 15.  Amended and Supplemental Pleadings

(a) Amendments. A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

(b) Amendments to Conform to the Evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

© Relation Back of Amendments. An amendment of a pleading relates back to the date of the original pleading when
  (1) relation back is permitted by the law that provides the statute of limitations

applicable to the action, or

  (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

  (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

The delivery or mailing of process to the United States Attorney, or United States Attorney's designee, or the Attorney General of the United States, or an agency or officer who would have been a proper defendant if named, satisfies the requirement of subparagraphs (A) and (B) of this paragraph (3) with respect to the United States or any agency or officer thereof to be brought into the action as a defendant.

(d) Supplemental Pleadings. Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statements of a claim for relief or defense. If the court deems it advisable that the adverse party plead to the supplemental pleading, it shall so order, specifying the time therefor.

  As stated by the Sixth Circuit in the case of <u>Marks v. Shell Oil Co.</u>, 830 F.2d 68 (Sixth Circuit

1987)

  Given the policy of liberality behind Rule 15(a), it is apparent that when a motion to amend is not even considered, much less not granted, an abuse of discretion has occurred. The court in Espy determined that HN2Go to the description of this unless the district court's reasons for dismissing the motions to amend were "readily apparent" the dismissal could not be sustained. 734 F.2d at 750. Because the district court did not consider the motion, we can discern no such "readily apparent" reasons here. The appellee argues that the court did assess the motion to amend by treating Marks' amended complaint as an affidavit in opposition. We cannot make that inference from the record before us. The court did not make any reference to an affidavit, except to say that Marks had failed to come forward with an affidavit to support her claims of retaliatory  or discriminatory non-renewal.

The creditor attacks the Internal Revenue Service proof of claim, which is presumed to be prima facie correct, In the case of  In re Packard Properties, Ltd., 118 B.R. 61 (Bankr N.D. Tex 1990) stated::

> A proof of claim is prima facie evidence of the nature and amount of the debt and the Trustee has the burden to rebut this prima facie evidence. Rule 3001(f). However, allowance of a claim as an administrative expense is subject to court approval only after notice and a hearing. § 503(a). A very similar situation to the present case was addressed in Matter of Mansfield & Tire Rubber Co., Inc., 73 Bankr. 735 (Bankr. N.D. Ohio 1987). Since this claim is a request for payment of administrative expenses, the association carries the burden of proof throughout the entire proceeding.

The Internal Revenue Service (Appendix 1) proof of claim is filed in the amount of $55,536.10, secured, $28,440.66, unsecured priority, and $25,448.44 as unsecured general for penalty.  As part of Appendix "1" the documents have been submitted showing the basis of the original scheduled amount for the Internal Revenue Service Claim.  There is no evidence before the Court to show that the claim is anything, except what the Internal Revenue Service claims of the Debtor/Appellant.  It is also clear that as the principal of Bariatric Associates, the Debtor is liable for the tax debt of Bariatric Associates and the Appellee does not dispute the application of Title 26 U.S.C. Section 6672 to this case.  The Creditor/Appellant attacks the amendment of May 8, 2007, to change the amount of the Debt to the Internal Revenue Service, even though the Creditor/Appellant is fully aware that the Debtor could not have known the exact amount of the Internal Revenue Service Claim before the claim was filed with the Bankruptcy Court.  The Creditor states that the amount of $70,457.84 is more believable than the amount claimed by the Debtor.  The fact is that the amount claimed is not the amount claimed by the Debtor, it is the amount claimed by the Internal Revenue Service, and although I personally do not like the Internal Revenue Service, I am not a party with the power to make the Internal Revenue Service

8

do anything and there is no evidence to indicate that the Internal Revenue Service is untruthful.

The Creditor/Appellee then argues regarding the Home Mortgage that the amount of the Debt should be $290,000.00 rather than $285,170.31, as stated in the reaffirmation agreement. The Reaffirmation Agreement is attached as Appendix 2. There was no evidence presented to the Court that the Mortgage balance was anything other than $285,170.31 on the date of the bankruptcy. Upon the filing of a bankruptcy petition, a creditor is prohibited from taking any actions to collect a debt, pursuant to Title 11 U.S.C. Section 362, except under limited circumstances, as set out in that Section, none of which apply to this case. There is no evidence that the Home Mortgage Company violated this section of the law. Pursuant to Title 11 U.S.C. Section 521, the debtor has a limited period of time to either reaffirm, redeem or surrender the property or the automatic stay of bankruptcy protecting the property expires. The evidence submitted to the Court clearly shows the balance of $285,170.31 and there is no evidence of non-compliance with the law by the Mortgage Company. Further the mortgage is clearly a consumer debt.

As for the lease to Greenville Hospital, the Creditor does not assert that the lease does not exist and although we contend the amount is $19,687.50, the Creditor/Appellant admits that this debt was not included in the Court's calculations and should be $11,250.00. The Lease is attached as Appendix 3.

Then there is the Debt owing to Camden National Bank in the amount of $19,029.83, which the Creditor/Appellant acknowledges was the liability of the Debtor. The Reaffirmation Agreement is attached as Appendix 4, and clearly reflects the amount owing at the time of the reaffirmation agreement. The Creditor then asserts that after the Court hearing from which this

9

appeal is taken the Creditor filed a proof of claim of $12,997.26. Said Claim attached as

Appendix 5 to this reply brief.   The Creditor/Appellant wants the amount of the Debt for

calculation purposes reduced to $12,997.26 from $19,029.83, where the debt stood on October

24, 2006, but does not want to take into account what was paid on the Debt between October 24,

2006, and July 2007, even though the debt may have been reduced by post petition payments,

repossessions and/or setoffs.   I know this is merely an oversight by the Appellee/Creditor, but

the creditor has neglected to attach the proof of claim in the amount of $3,639.49 of the same

date filed by Camden National Bank, which is the second part of the reaffirmed debt.  Said claim

attached as Appendix 6 to this reply brief.

In short, what do the figures show:

| Debt | Creditors Statement Of Debt | Debtors Statement Of Debt | Evidentiary Amount Of Debt |
|---|---|---|---|
| Home Mtg. | $290,000.00 | $285,170.31 | $285,170.31 |
| Consumer Debt | $290,000.00 | $285,170.31 | $285,170.31 |
| Undisputed Non-consumer Debt | | | |
| Greenville Hosp | $165,140.00 | $165,140.00 | $165,140.00 |
| Camden Nat'l | 2,545.00 | 2,545.00 | 2,545.00 |
| Camden Nat'l | 680.00 | 680.00 | 680.00 |
| Century Tel | 558.00 | 558.00 | 558.00 |
| Genizen Health | 17,282.19 | 17,282,19 | 17,282.17 |
| Whitney Bank | 5,483.00 | 5,483.00 | 5,483.00 |
| | $191,688.19 | $191,688.19 | $191,688.19 |
| Undisputed Contested Debt | | | |
| IRS | $ 70,457.84 | $ 70,457.84 | $ 70,457.84 |
| Greenville Hosp | 11,250.00 | 11,250.00 | 11,250.00 |
| Camden Nat'l | 16,637.15 | 16,637.15 | 16,637.15 |
| | $ 98,335.99 | $ 98,335.99 | $ 98,335.99 |

Total Uncontested

| Non-Consumer | | | |
|---|---|---|---|
| Debt | $290,024.18 | $290,024.18 | $290,024.18 |
| Difference | ($ 24.18) | ($ 4,853.87) | ($ 4,853.87) |

It is clear that if we take into account the  undisputed evidence in a light most favorable to the Creditor/Appellee, then the Debtor/Appellant is a Non Consumer Debtor.   Regardless of the amount of the secured debt on the home mortgage, the Debtor's non consumer debt is greater than the consumer debt and Title 11 U.S.C. Section 707(b) is inapplicable to this case. Regardless of the amount of the home mortgage, there is no need for this Court to go further; however, should the Court wish to go further, I will analyze the remaining    Now we need to go back and recalculate the numbers based upon the evidence in this case.

The Debts in question are the Internal Revenue Service Debt, the Lease to Greenville Hospital, the Camden National Bank Debt, and MBNA.  As we stated earlier, there is no reason for the Court to consider the contingent liability on the MBNA Debt, as this one will not affect the outcome of the case, once the others are considered.  The Internal Revenue Service Claim is Prima Facie of the Debt.  The Reaffirmation agreement of Camden National Bank states the amount of the Debt at the time of filing and the creditor request this Court to ignore the amount of the debt reaffirmed and to accept the amount of a proof of claim filed a year after the case is filed (not before the Bankruptcy Court at the hearing) and to reject the proof of claim filed by the Internal Revenue Service and the Reaffirmation agreement of Camden National Bank.  This change of position by the Creditor/Appellee makes no sense, unless you consider the fact that the $5,000.00 difference means that the Debtor/Appellant was clearly a Non Consumer Debtor.  The figures with the Debt to Camden National Bank as proven are:

11

| Debt | Creditors Statement Of Debt | Debtors Statement Of Debt | Evidentiary Amount Of Debt |
|---|---|---|---|
| Home Mtg. | $290,000.00 | $285,170.31 | $285,170.31 |
| Consumer Debt | $290,000.00 | $285,170.31 | $285,170.31 |
| Undisputed Non-consumer Debt | | | |
| Greenville Hosp | $165,140.00 | $165,140.00 | $165,140.00 |
| Camden Nat'l | 2,545.00 | 2,545.00 | 2,545.00 |
| Camden Nat'l | 680.00 | 680.00 | 680.00 |
| Century Tel | 558.00 | 558.00 | 558.00 |
| Genizen Health | 17,282,19 | 17,282,19 | 17,282.17 |
| Whitney Bank | 5,483.00 | 5,483.00 | 5,483.00 |
| | $191,688.19 | $191,688.19 | $191,688.19 |
| Undisputed Contested Debt | | | |
| IRS | $ 70,457.84 | $ 70,457.84 | $ 70,457.84 |
| Greenville Hosp | 11,250.00 | 11,250.00 | 11,250.00 |
| Camden Nat'l | 19,029.83 | 19,029.83 | 19,029.83 |
| | $100,737.67 | $100,737.67 | $100,737.67 |
| Total Uncontested Non-Consumer Debt | $292,425.86 | $292,425.86 | $292,425.86 |
| Difference | ($    2,545.00) | ($    7,255.55) | ($  7,255.55) |

So, if you use the amount of the reaffirmed Debt to Camden National Bank, as shown in the reaffirmation agreement and not as filed in the proof of claim of July, 2007, the Debtor/Appellant is a Non Consumer Debtor and we go no further, as the ruling of the Bankruptcy Court would be in clear error and the Debtor would be entitled to a discharge.

It is truly amazing that the Creditor/Appellant wants to consider the debt to Camden National as of the claim date, the Tax Debt as to an unknown date even though the proof of claim is filed reflects that all of the taxes were due prior to the filing date, except for the September 30, 2006,

12

FICA deposit of $2,419.00.  The Creditor/Appellant admits that the appropriate standard for the

date of the review of the financial condition is the financial condition as of the petition date. In re

Pier  310 B.R. 347,355 (Bank. N.D. Ohio 2004)  If we use these figures we now make the

following adjustments to the chart:

| Debt | Creditors Statement Of Debt | Debtors Statement Of Debt | Evidentiary Amount Of Debt |
|---|---|---|---|
| Home Mtg. | $290,000.00 | $285,170.31 | $285,170.31 |
| | | | |
| Consumer Debt | $290,000.00 | $285,170.31 | $285,170.31 |
| | | | |
| Undisputed Non-consumer Debt | | | |
| Greenville Hosp | $165,140.00 | $165,140.00 | $165,140.00 |
| Camden Nat'l | 2,545.00 | 2,545.00 | 2,545.00 |
| Camden Nat'l | 680.00 | 680.00 | 680.00 |
| Century Tel | 558.00 | 558.00 | 558.00 |
| Genizen Health | 17,282.19 | 17,282,19 | 17,282.17 |
| Whitney Bank | 5,483.00 | 5,483.00 | 5,483.00 |
| | $191,688.19 | $191,688.19 | $191,688.19 |
| | | | |
| Contested Debts | | | |
| IRS | $107,006.20 | $107,006.20 | $107,006.20 |
| Greenville Hosp | 19,687.50 | 19,687.50 | 19,687.50 |
| Camden Nat'l | 19,029.83 | 19,029.83 | 19,029.83 |
| | $145,723.53 | $145,723.53 | $145,723.53 |
| Total Uncontested Non-Consumer Debt | $337,411.72 | $337,411.72 | $337,411.72 |
| | | | |
| Difference | ($ 47,411.72) | ($ 52,241.41) | ($ 52,241.41) |

In short using all evidentiary figures submitted, by whatever name called there was only one set

of figures that did not place the Debtor's Non Consumer Debt above the Debtor/w consumer

debt and in order to make the debtor's consumer debt exceed her consumer debt, you must find

13

that the Debtor's home debt on the date of the filing of the bankruptcy was $290,000.00, that the

Debtor only owed Camden National Bank on the secured debt for office equipment $12,997.66,

for which there is no basis in this case.

The Appellee/Creditor has correctly stated a proposition of law that can be agreed upon in the

case of General Trading v. Yale Materials Handling Corp., 119 F.3d 1485 (Eleventh Circuit

1997)

> With respect to the proceedings in the district court, this court reviews factual
> findings for clear error, and reviews application of law to those facts de novo.
> Lykes Bros., Inc. v. U.S. Army Corps of Engineers, 64 F.3d 630, 634 (11th
> Cir.1995). For a factual finding to be clearly erroneous, this court, after reviewing
> all of the evidence, must be "left with the definite and firm conviction that a
> mistake has been committed." Id. (quoting United States v. Gypsum Co., 333 U.S.
> 364, 395,  68 S. Ct. 525, 542, 92 L. Ed. 746 (1948)).
>
> With respect to the bankruptcy proceedings, this court conducts a de novo review
> of determinations of law, whether from the bankruptcy court or the district court.
> In re Bilzerian, 100 F.3d 886, 889 (11th Cir.1996). We review the bankruptcy
> court's factual findings, however, under the clearly erroneous standard. Id.

In summary, there is only one factual scenerio under which the decision of the Bankruptcy

Court could have been proper and that scenerio would have been, if the Court found that the

Debt to Camden National Bank on the equipment on the date of filing of the Bankruptcy Petition

was $12,997.66 and the $3,639.49 debt did not exist, as the Creditor-Appellee now ask this

Court to determine.  The Bankruptcy Court did not have these claims on the date of the Courts

decision, as they were both filed on July 9, 2007.  If the Bankruptcy Court had these proofs of

claims, the evidence would still have been that the debt to Camden National Bank was 19,029.83

on the date of October 24, 2007.  The irony is that the Creditor-Appellee, inspite of the lack of

evidence ask this Court to find that the Debtor may have paid down the Home Mortgage in the

month between the filing of the petition and the reaffirmation, but wants the Court to disregard

14

the payments on the Camden National Bank loan between September of 2006 and July of 2007.

When reviewing the evidence in this action, it is clear that the Bankruptcy Court made a misapplication of the facts and therefore the decision of the Bankruptcy Court is clearly erroneous under all factual scenarios.  The Decision of the Bankruptcy Court is due to be reversed.

The Debtor/Appellant further reasserts the argument previously presented to the Court.

CONCLUSION

The evidence is clear that the Debtor had one consumer debt, in the amount of  $285,170.31 and non- consumer Debt of at least $339,831.72.  As the amount of consumer debt is less than the amount of non-consumer debt, Title 11 USC Section 707(b) is inapplicable to this case and the Bankruptcy Court abused it's discretion in determining that the Debtor's case should be dismissed pursuant to Title 11 USC Section 707(b).  The Appellant request a reversal of the decision of the Bankruptcy Court.

**/s/   Richard D. Shinbaum_____**

15

Richard Shinbaum, SHI007
Attorney for the Debtor

Of Counsel:
Shinbaum, Abell, McLeod and Campbell, P.C..
Post Office Box 201
Montgomery, Alabama 36101
(334) 269-4440
(334) 263-4096 Fax

## CERTIFICATE OF SERVICE

   I hereby certify that a copy of the above styled motion was this day served upon the

following, by placing the same in the United States Mail, properly addressed  and postage

prepaid, and/or electronics transmission this the 26th day of September, 2007.

Bradley Richard Hightower
Christian and Small
505 20th Street North Ste 1800
Birmingham. Al 35203-2696

Teresa Jacobs

16

Bankruptcy Administrator
One Church Street
Montgomery, AL 36104

Hon. Daniel Gary Hamm
560 South McDonough Street, Ste A
Montgomery, AL 36104

   /s/ Richard D. Shinbaum
Richard D. Shinbaum
Attorney for the Debtor

MAY-08-2007  12:02        INTERNAL REVENUE SERVICE              2059125329      P.02

**FORM B10** (Official Form 10)(04/07)

| UNITED STATES BANKRUPTCY COURT ___MIDDLE___ DISTRICT OF ___ALABAMA___ | | **PROOF OF CLAIM** |
|---|---|---|

| Name of Debtor | Case Number |
|---|---|
| DELORIS V. VICTORIA | 06-31225 |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property): <br><br> Department of the Treasury - Internal Revenue Service | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
|---|---|
| Name and address where notices should be sent: <br><br> Internal Revenue Service <br> INTERNAL REVENUE SERVICE <br> 801 TOM MARTIN DRIVE <br> Stop 126 <br> BIRMINGHAM, AL 35211 <br> Telephone number: (205) 912-5294   Creditor #:1363923 | ☐ Check box if you have never received any notices from the bankruptcy court in this case. <br><br> ☐ Check box if the address differs from the address on the envelope sent to you by the court. |

THIS SPACE IS FOR COURT USE ONLY

| Last four digits of account or other number by which creditor identifies debtor:        see attachment | Check here ☐ replaces a previously filed claim, dated: _____ <br> if this claim ☐ amends |
|---|---|

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☒ Taxes
- ☐ Other_____

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Last four digits of your SS #: _____
  Unpaid compensation for services performed
  from _____ to _____
       (date)              (date)

| **2. Date debt was incurred:**        see attachment | **3. If court judgment, date obtained:** |
|---|---|

**4. Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed.
See reverse side for important explanations.

**Unsecured Nonpriority Claim** $_____25,448.44

☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**Unsecured Priority Claim.**

☒ Check this box if you have an unsecured claim, all or part of which is entitled to priority.

Amount entitled to priority $ _28,440.86

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

**Secured Claim.**

☒ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:

☒ Real Estate  ☒ Motor Vehicle  ☒ Other _see below*_

Value of Collateral: $ __see below*__
* All of debtor(s) right, title and interest to property - 26 U.S.C § 6321.
Amount of arrearage and other charges at time case filed included in secured claim, if any: $ __55,536.10__

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☒ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**5. Total Amount of Claim at Time Case Filed:** $ ___25,448.44___ ___55,536.10___ ___28,440.66___ ___109,425.20___
                                                    (unsecured)      (secured)      (priority)      (Total)

☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**6. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

**7. Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. Date-Stamped Copy:** To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

| Date <br><br> 05/08/2007 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): <br><br> /s/ KENYA L BUFFORD, INSOLVENCY SPECIALIST |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

MAY-08-2007  12:03   INTERNAL REVENUE SERVICE   2059125329   P.03

# Proof of Claim for Internal Revenue Taxes

Department of the Treasury/Internal Revenue Service



**Form 10**
Attachment

| Docket Number |
| --- |
| 06-31225 |

| Type of Bankruptcy Case |
| --- |
| Chapter 7A |

| Date of Petition |
| --- |
| 09/25/2006 |

**In the Matter of:** DELORIS V. VICTORIA
225 WOODLAND HEIGHTS DR
GREENVILLE, AL 36037

The United States has not identified a right of setoff or counterclaim. However, this determination is based on available data and is not intended to waive any right to setoff against this claim debts owed to this debtor by this or any other federal agency. All rights of setoff are preserved and will be asserted to the extent lawful.

### Secured Claims (Notices of Federal tax lien filed under internal revenue laws before petition date)

| Taxpayer ID Number | Kind of Tax | Tax Period | Date Tax Assessed | Tax Due | Penalty to Petition Date | Interest to Petition Date | Notice of Tax Lien Filed: Date | Office Location |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 72-1357031 | WT-FICA | 12/31/2000 | 12/08/2003 | $9,879.22 | $3,674.49 | $4,287.41 | | |
| 63-1103639 | FUTA | 12/31/2003 | 12/05/2005 | $3,209.29 | $1,908.26 | $539.68 | 04/27/2006 | Butler County |
| 63-1103639 | WT-FICA | 06/30/2004 | 08/22/2005 | $4,500.61 | $3,648.29 | $850.70 | | Right to setoff |
| 63-1103639 | WT-FICA | 09/30/2004 | 08/22/2005 | $4,227.70 | $2,494.78 | $549.33 | 10/28/2005 | Butler County |
| 63-1103639 | WT-FICA | 12/31/2004 | 08/22/2005 | $2,185.67 | $893.70 | $253.12 | 10/28/2005 | Butler County |
| 63-1103639 | FUTA | 12/31/2004 | 12/05/2005 | $2,170.00 | $769.02 | $251.31 | 04/27/2006 | Butler County |
| 63-1103639 | WT-FICA | 03/30/2005 | 12/05/2005 | $4,047.01 | $1,999.04 | $410.30 | | Right to setoff |
| 63-1103639 | WT-FICA | 06/30/2005 | 12/12/2005 | $1,732.41 | $907.33 | $147.43 | 04/27/2006 | Butler County |
| | | | | $31,951.91 | $16,294.91 | $7,289.28 | | |

**Total Amount of Secured Claims:**   $55,536.10

### Unsecured Priority Claims under section 507(a)(8) of the Bankruptcy Code

| Taxpayer ID Number | Kind of Tax | Tax Period | Date Tax Assessed | Tax Due | Interest to Petition Date |
| --- | --- | --- | --- | --- | --- |
| 72-1357031 | WT-FICA | 09/30/1997 | ESTIMATED LIABILITY * | $250.00 | $0.00 |
| 63-1103639 | WT-FICA | 06/30/1999 | 1 UNASSESSED-NO RETURN | $1,454.14 | $860.28 |
| 72-1357031 | MISC. PEN. | 12/31/1999 | 10/28/2002 | $0.00 | $186.24 |
| 72-1357031 | WT-FICA | 06/30/2001 | 1 UNASSESSED-NO RETURN | $1,463.00 | $0.00 |
| 72-1357031 | WT-FICA | 09/30/2001 | 1 UNASSESSED-NO RETURN | $1,463.00 | $0.00 |
| 72-1357031 | WT-FICA | 12/31/2001 | 1 UNASSESSED-NO RETURN | $1,463.00 | $0.00 |
| 72-1357031 | FUTA | 12/31/2001 | 1 UNASSESSED-NO RETURN | $2,500.00 | $0.00 |
| 72-1357031 | FUTA | 12/31/2002 | 1 UNASSESSED-NO RETURN | $2,500.00 | $0.00 |
| 72-1357031 | WT-FICA | 06/30/2003 | 1 UNASSESSED-NO RETURN | $1,463.00 | $0.00 |
| 72-1357031 | FUTA | 12/31/2003 | 1 UNASSESSED-NO RETURN | $2,500.00 | $0.00 |
| 63-1103639 | MISC. PEN. | 12/31/2003 | 10/09/2006 | $0.00 | $0.00 |
| 72-1357031 | FUTA | 12/31/2004 | 1 UNASSESSED-NO RETURN | $2,500.00 | $0.00 |
| XXX-XX-7367 | INCOME | 12/31/2005 | 1 UNASSESSED-NO RETURN | $5,000.00 | $0.00 |

(Continued on Page 2)

1 UNASSESSED TAX LIABILITIES(S) HAVE BEEN LISTED ON THIS CLAIM BECAUSE OUR RECORDS SHOW NO RETURN(S) FILED. WHEN THE DEBTOR(S) FILES THE RETURN OR PROVIDES OTHER INFORMATION AS REQUIRED BY LAW, THE CLAIM WILL BE AMENDED.

# Proof of Claim for Internal Revenue Taxes

Department of the Treasury/Internal Revenue Service



**Form 10**
Attachment

In the Matter of:    DELORIS V. VICTORIA
225 WOODLAND HEIGHTS DR
GREENVILLE, AL 36037

| Docket Number |
| --- |
| 06-31225 |
| Type of Bankruptcy Case |
| Chapter 7A |
| Date of Petition |
| 09/25/2006 |

---

## Unsecured Priority Claims (Continued from Page 1)

| Taxpayer ID Number | Kind of Tax | Tax Period | Date Tax Assessed | Tax Due | Interest to Petition Date |
| --- | --- | --- | --- | --- | --- |
| 72-1357031 | WT-FICA | 06/30/2006 | *1* UNASSESSED-NO RETURN | $2,419.00 | $0.00 |
| 72-1357031 | WT-FICA | 09/30/2006 | *1* UNASSESSED-NO RETURN | $2,419.00 | $0.00 |
| | | | | $27,394.14 | $1,046.52 |

**Total Amount of Unsecured Priority Claims:** $28,440.66

## Unsecured General Claims

Penalty to date of petition on unsecured priority claims (including interest thereon) . . . . . . . . . $25,448.44

**Total Amount of Unsecured General Claims:** $25,448.44

*1* UNASSESSED TAX LIABILITIES(S) HAVE BEEN LISTED ON THIS CLAIM BECAUSE OUR RECORDS SHOW NO RETURN(S) FILED. WHEN THE DEBTOR(S) FILES THE RETURN OR PROVIDES OTHER INFORMATION AS REQUIRED BY LAW THE CLAIM WILL BE AMENDED.

1872                                                    COURT RECORDING DATA

| INTERNAL REVENUE SERVICE<br>FACSIMILE FEDERAL TAX LIEN DOCUMENT<br><br>BANKRUPTCY DOCKET: 06-31225@ALM | Lien Recorded   : 10/28/2005 - 11:01AM<br>Recording Number: 49169<br>UCC Number       :<br>Liber            : 0029<br>Page             : 190 |
|---|---|
| Area: SMALL BUSINESS/SELF EMPLOYED #5<br>Lien Unit Phone: (800) 913-6050 | IRS Serial Number: 254682005 |

This Lien Has Been Filed in Accordance with
Internal Revenue Regulation 301.6323(f)-1.

Name of Taxpayer :
   DOLORES V VICTORIA

Residence :
   PO BOX 810
   GREENVILLE, AL 36037-0810

With respect to each assessment below, unless notice of lien
is refiled by the date in column(e), this notice shall constitute
the certificate of release of lien as defined in IRC 6325(a).

| Form<br>(a) | Period<br>(b) | ID Number<br>(c) | Assessed<br>(d) | Refile Deadline<br>(e) | Unpaid Balance<br>(f) |
|---|---|---|---|---|---|
| 941 | 03/31/2004 | 63-1103639 | 08/22/2005 | 09/21/2015 | $5,764.82 |
| 941 | 06/30/2004 | 63-1103639 | 08/22/2005 | 09/21/2015 | $9,048.97 |
| 941 | 09/30/2004 | 63-1103639 | 08/22/2005 | 09/21/2015 | $6,259.20 |
| 941 | 12/31/2004 | 63-1103639 | 08/22/2005 | 09/21/2015 | $2,840.33 |

| Filed at:   Judge of Probate<br>             Butler County<br>             Greenville, AL 36037 | Total | $23,913.32 |
|---|---|---|

This notice was prepared and executed at DALLAS, TX
on this, the 19th day of October, 2005.

| Authorizing Official:<br>   L. F. SANKEY | Title:<br>REVENUE OFFICER          28-02-2738 |
|---|---|

MAY-08-2007  12:04        INTERNAL REVENUE SERVICE                    2059125329      P.06

```
+-------------------------------------------+--------------------------------------
|     INTERNAL REVENUE SERVICE              | Lien Recorded   : 04/27/2006 - 12:22PM
| FACSIMILE FEDERAL TAX LIEN DOCUMENT       | Recording Number:
|                                           | UCC Number      :
|                                           | Liber           : 29
| BANKRUPTCY DOCKET: 06-31225@ALM           | Page            : 511
+-------------------------------------------+--------------------------------------
| Area: SMALL BUSINESS/SELF EMPLOYED #5     | IRS Serial Number: 285508506
| Lien Unit Phone: (800) 913-6050           |
+-------------------------------------------+--------------------------------------
```

This Lien Has Been Filed in Accordance with
Internal Revenue Regulation 301.6323(f)-1.

Name of Taxpayer :
  DOLORES V VICTORIA

Residence :
  PO BOX 810
  GREENVILLE, AL 36037-0810

With respect to each assessment below, unless notice of lien
is refiled by the date in column(e), this notice shall constitute
the certificate of release of lien as defined in IRC 6325(a).

| Form (a) | Period (b) | ID Number (c) | Assessed (d) | Refile Deadline (e) | Unpaid Balance (f) |
|----------|------------|---------------|--------------|---------------------|--------------------|
| 940 | 12/31/2003 | 63-1103639 | 12/05/2005 | 01/04/2016 | $5,180.87 |
| 940 | 12/31/2004 | 63-1103639 | 12/05/2005 | 01/04/2016 | $2,916.17 |
| 941 | 03/31/2005 | 63-1103639 | 12/05/2005 | 01/04/2016 | $5,917.53 |
| 941 | 06/30/2005 | 63-1103639 | 12/12/2005 | 01/11/2016 | $2,558.85 |

Filed at:   Judge of Probate
            Butler County                          Total      $16,573.42
            Greenville, AL 36037

This notice was prepared and executed at DALLAS, TX
on this, the 19th day of April, 2006.

Authorizing Official:                  | Title:
  L. F. SANKEY                         | REVENUE OFFICER          25-02-2738

. 2006/10/16 09:46:12



# Internal Revenue Service
DEPARTMENT OF THE TREASURY ─── e-services ──────────────────

---

This Product Contains Sensitive Taxpayer Data

## Account Transcript

Request Date: 10-16-2006
Response Date: 10-16-2006
IRS Employee Number: 56LDB
Tracking Number: 100009775164

FORM NUMBER: 1040                TAX PERIOD: Dec. 31, 2002

TAXPAYER IDENTIFICATION NUMBER:              1-6110
SPOUSE TAXPAYER IDENTIFICATION NUMBER:         7367

EDGAR T & DELORES V VICTORIA
PO BOX 810
GREENVILLE, AL 36037-0810-101

Any minus sign shown below signifies a credit amount.

ACCOUNT BALANCE:                    0.00
ACCRUED INTEREST:                   0.00    AS OF: Jan. 09, 2006
ACCRUED PENALTY:                    0.00    AS OF: Jan. 09, 2006

ACCOUNT BALANCE
PLUS ACCRUALS:                      0.00

** EXEMPTIONS:                        02      ** FILING
                                              STATUS: Married Filing Joint
** ADJUSTED GROSS INCOME:       244,033.00
** TAXABLE INCOME:              183,449.00
   TAX PER RETURN:               60,730.00
** SE TAXABLE INCOME
TAXPAYER:                        84,900.00
** SE TAXABLE INCOME SPOUSE:         0.00
** TOTAL SELF EMPLOYMENT
TAX:                             14,710.00

** PER RETURN OR AS ADJUSTED

RETURN DUE DATE OR RETURN RECEIVED DATE (WHICHEVER IS LATER): Oct. 31, 2005
PROCESSING DATE: Dec. 26, 2005

---

TRANSACTIONS

2006/10/16 09:46:12

| CODE | EXPLANATION OF TRANSACTION | CYCLE | DATE | AMOUNT |
|------|----------------------------|-------|------|--------|
| 150 | RETURN FILED AND TAX ASSESSED 09221-330-33536-5 | 20055008 | 12-26-2005 | $60,730.00 |
| 806 | WITHHOLDING CREDIT | | 04-15-2003 | -$36,567.00 |
| 663 | ESTIMATED TAX/FEDERAL TAX DEPOSIT | | 04-17-2002 | -$25,000.00 |
| 662 | CORRECTION OF ESTIMATED TAX PAYMENT 1040 200112 | | 04-17-2002 | $25,000.00 |
| 670 | SUBSEQUENT PAYMENT | | 04-16-2003 | -$25,000.00 |
| 460 | EXTENSION OF TIME TO FILE EXT. DATE 08-15-2003 | | 04-15-2003 | $0.00 |
| 460 | EXTENSION OF TIME TO FILE EXT. DATE 10-15-2003 | | 08-15-2003 | $0.00 |
| 826 | OVERPAYMENT CREDIT TRANSFERRED 1040 200312 | | 04-15-2003 | $535.66 |
| 776 | INTEREST DUE TAXPAYER | | 11-21-2005 | -$1.22 |
| 826 | OVERPAYMENT CREDIT TRANSFERRED 1040 200412 | | 04-15-2003 | $301.34 |
| 856 | OVERPAYMENT INTEREST TRANSFERRED 1040 200412 | | 11-21-2005 | $1.22 |

This Product Contains Sensitive Taxpayer Data

2006/10/16 09:48:51

# Internal Revenue Service
DEPARTMENT OF THE TREASURY ———— e-services ———————————————

| This Product Contains Sensitive Taxpayer Data |

## Account Transcript

Request Date: 10-16-2006
Response Date: 10-16-2006
IRS Employee Number: 56LDB
Tracking Number: 100009775164

FORM NUMBER: 1040              TAX PERIOD: Dec. 31, 2003

TAXPAYER IDENTIFICATION NUMBER:            -6110
SPOUSE TAXPAYER IDENTIFICATION NUMBER:     -7367

EDGAR T & DELORES V VICTORIA
PO BOX 810
GREENVILLE, AL 36037-0810-101

Any minus sign shown below signifies a credit amount.

ACCOUNT BALANCE:                    0.00
ACCRUED INTEREST:                   0.00    AS OF: May  29, 2006
ACCRUED PENALTY:                    0.00    AS OF: May  29, 2006


ACCOUNT BALANCE
PLUS ACCRUALS:                      0.00


** EXEMPTIONS:                        02    ** FILING
                                             STATUS: Married Filing Joint

** ADJUSTED GROSS INCOME:       188,777.00

** TAXABLE INCOME:              136,343.00

   TAX PER RETURN:               42,043.00

** SE TAXABLE INCOME
TAXPAYER:                        87,000.00

** SE TAXABLE INCOME SPOUSE:          0.00

** TOTAL SELF EMPLOYMENT
TAX:                             16,052.00


** PER RETURN OR AS ADJUSTED


RETURN DUE DATE OR RETURN RECEIVED DATE (WHICHEVER IS LATER): Oct. 18, 2004
                                    PROCESSING DATE: Dec. 06, 2004

| TRANSACTIONS |

2006/10/16 09:48:51

| CODE | EXPLANATION OF TRANSACTION | CYCLE | DATE | AMOUNT |
|------|---------------------------|-------|------|--------|
| 150 | RETURN FILED AND TAX ASSESSED | 20044508 | 12-06-2004 | $42,043.00 |
|  | 07221-298-35027-4 |  |  |  |
| 460 | EXTENSION OF TIME TO FILE EXT. DATE 10-15-2004 |  | 08-15-2004 | $0.00 |
| 610 | PAYMENT WITH RETURN |  | 10-18-2004 | -$17,253.00 |
| 666 | ESTIMATED TAX CREDIT TRANSFERRED IN |  | 04-15-2004 | -$25,000.00 |
| 276 | FAILURE TO PAY TAX PENALTY | 20044708 | 12-06-2004 | $426.07 |
| 196 | INTEREST ASSESSED | 20044708 | 12-06-2004 | $319.59 |
| 706 | OVERPAID CREDIT APPLIED 1040 200212 |  | 04-15-2003 | -$535.66 |
| 277 | FAILURE TO PAY TAX PENALTY ABATED |  | 12-26-2005 | -$13.39 |
| 197 | INTEREST ABATED |  | 12-26-2005 | -$10.05 |
| 846 | REFUND |  | 12-26-2005 | $25.05 |
| 776 | INTEREST DUE TAXPAYER |  | 12-26-2005 | -$1.61 |
| 640 | ADVANCE PAYMENT OF DEFICIENCY MISCELLANEOUS PAYMENT |  | 12-12-2005 | -$2,583.32 |
| 670 | SUBSEQUENT PAYMENT |  | 12-29-2005 | -$566.82 |
| 300 | ADDITIONAL TAX ASSESSED BY EXAMINATION | 20060508 | 02-13-2006 | $2,366.00 |
|  | 49247-424-00577-6 |  |  |  |
| 421 | RENUMBERED RETURN |  | 02-13-2006 | $0.00 |
|  | 49247-424-00577-6 |  |  |  |
| 777 | INTEREST DUE TAXPAYER REVERSED |  | 12-26-2005 | $1.56 |
| 336 | INTEREST ASSESSED | 20060508 | 02-13-2006 | $183.22 |
| 846 | REFUND |  | 02-13-2006 | $603.28 |
| 776 | INTEREST DUE TAXPAYER |  | 02-13-2006 | -$3.92 |

This Product Contains Sensitive Taxpayer Data

2006/10/16 09:51:32


# Internal Revenue Service
### DEPARTMENT OF THE TREASURY — e-services

| This Product Contains Sensitive Taxpayer Data |
| --- |

## Account Transcript

Request Date: 10-16-2006
Response Date: 10-16-2006
IRS Employee Number: 56LDB
Tracking Number: 100009775164

FORM NUMBER: 1040                    TAX PERIOD: Dec. 31, 2004

TAXPAYER IDENTIFICATION NUMBER:            5-6110
SPOUSE TAXPAYER IDENTIFICATION NUMBER:        -7367

EDGAR T & DELORES V VICTORIA
PO BOX 810
GREENVILLE, AL 36037-0810-101

Any minus sign shown below signifies a credit amount.

ACCOUNT BALANCE:                -267.61
ACCRUED INTEREST:                  0.00    AS OF: Oct. 23, 2006
ACCRUED PENALTY:                   0.00    AS OF: Oct. 23, 2006

ACCOUNT BALANCE
PLUS ACCRUALS:                  -267.61

** EXEMPTIONS:                       02      ** FILING STATUS: Married Filing Joint
** ADJUSTED GROSS INCOME:       127,900.00
** TAXABLE INCOME:               57,334.00
   TAX PER RETURN:               25,154.00
** SE TAXABLE INCOME
   TAXPAYER:                     87,900.00
** SE TAXABLE INCOME SPOUSE:     13,287.00
** TOTAL SELF EMPLOYMENT
   TAX:                          17,270.00

** PER RETURN OR AS ADJUSTED

RETURN DUE DATE OR RETURN RECEIVED DATE (WHICHEVER IS LATER): Oct. 19, 2005
PROCESSING DATE: Nov. 21, 2005

| TRANSACTIONS |
| --- |

2006/10/16 09:51:32

| CODE | EXPLANATION OF TRANSACTION | CYCLE | DATE | AMOUNT |
|------|---------------------------|-------|------|--------|
| 150 | RETURN FILED AND TAX ASSESSED | 20054508 | 11-21-2005 | $25,154.00 |
|  | 07211-295-89810-5 |  |  |  |
| 670 | SUBSEQUENT PAYMENT |  | 04-22-2005 | -$7,000.00 |
| 610 | PAYMENT WITH RETURN |  | 10-19-2005 | -$18,875.00 |
| 176 | ESTIMATED TAX PENALTY | 20054508 | 11-21-2005 | $479.46 |
| 166 | LATE FILING PENALTY | 20054508 | 11-21-2005 | $4,084.65 |
| 276 | FAILURE TO PAY TAX PENALTY | 20054508 | 11-21-2005 | $635.39 |
| 196 | INTEREST ASSESSED | 20060408 | 02-06-2006 | $34.95 |
| 520 | LEGAL/BANKRUPTCY SUIT PENDING |  | 09-25-2006 | $0.00 |

This Product Contains Sensitive Taxpayer Data


# Internal Revenue Service
## DEPARTMENT OF THE TREASURY

e-services

| This Product Contains Sensitive Taxpayer Data |
| --- |

## Account Transcript

Request Date: 10-16-2006
Response Date: 10-16-2006
IRS Employee Number: 56LDB
Tracking Number: 100009775164

FORM NUMBER: 1040              TAX PERIOD: Dec. 31, 2005

TAXPAYER IDENTIFICATION NUMBER:                    6110
SPOUSE TAXPAYER IDENTIFICATION NUMBER:            -7367

EDGAR T & DELORES V VICTORIA
PO BOX 810
GREENVILLE, AL 36037-0810-101

Any minus sign shown below signifies a credit amount.

ACCOUNT BALANCE:              0.00
ACCRUED INTEREST:             0.00         AS OF: Oct. 23, 2006
ACCRUED PENALTY:              0.00         AS OF: Oct. 23, 2006

ACCOUNT BALANCE
PLUS ACCRUALS:                0.00

** EXEMPTIONS:                 00          ** FILING STATUS: Married Filing
                                                             Joint
** ADJUSTED GROSS INCOME:

** TAXABLE INCOME:

   TAX PER RETURN:

** SE TAXABLE INCOME
TAXPAYER:

** SE TAXABLE INCOME
SPOUSE:

** TOTAL SELF EMPLOYMENT
TAX:

** PER RETURN OR AS ADJUSTED

| TRANSACTIONS |
| --- |

CODE EXPLANATION OF TRANSACTION              CYCLE DATE              AMOUNT

460    EXTENSION OF TIME TO FILE                    04-15-2006         $0.00
       EXT. DATE 10-15-2006

This Product Contains Sensitive Taxpayer Data

SEP-06-2006  14:45                                                              P.02/05

*oldEIN*

Tuesday, August 22, 2006,  2:07pm

ACCRUAL COMPUTATION DATE:  08/22/2006

TIN: 63-1103639      NAME: DOLORES V VICTORIA

| MFT | TAXPD | RESTRICT | MOD BAL | ACCR INT | ACCR FTP | MOD TOTAL |
|-----|-------|----------|---------|----------|----------|-----------|
| 01 | 200406 | *F 941* | 8955.15 | 656.25 | 657.31 | 10268.71 |
| 01 | 200409 | | 6259.20 | 455.07 | 465.05 | 7179.32 |
| 01 | 200412 | | 2840.33 | 207.10 | 240.42 | 3287.85 |
| 01 | 200503 | | 5917.53 | 310.13 | 161.88 | 6389.54 |
| 01 | 200506 | | 2558.85 | 130.25 | 69.29 | 2758.39 |
| 10 | 200312 | *F 940/2003* | 5199.87 | 272.03 | 128.37 | 5600.27 |
| 10 | 200412 | *2004* | 2916.17 | 153.55 | 86.80 | 3156.52 |

TOTALS:         34647.10       2184.38       1809.12       38640.60

PAGE  1

SEP-06-2006  14:45

Station Name: MTG001MA2    198 Date: 8/22/2006 Time: 2:09   PM

INTST 72-1357031    *Current EIN*

01 200012 08222006 BARI

| | |
|---|---|
| 2,506.41 | ASSESSED FTP |
| 1,915.43 | ASSESSED INT |
| 11,028.30 | TAX & PENALTY |
| 15,450.14 | ASSESSED TOTAL |
| .00 | ACCRUED FTP |
| 2,239.68 | ACCRUED INT |
| 2,239.68 | TOTAL ACCRUALS |
| 2,506.41 | TOTAL FTP |
| 4,155.11 | TOTAL INT |
| 17,689.82 | BALANCE DUE |

*F941*

*4th qtr*

*2000*

SEP-06-2006  14:45

Station Name: MTG001MA2(    /998 Date: 8/22/2006 Time: 2:10    ( PM

P.04/06

INTST 72-1357031
01 200512 08222006 BARI

*F941*
*4th qtr*
*2005*

| | |
|---|---|
| 5.86 | ASSESSED FTP |
| 3.63 | ASSESSED INT |
| .00 | TAX & PENALTY |
| 9.49 | ASSESSED TOTAL |
| .00 | ACCRUED FTP |
| .29 | ACCRUED INT |
| .29 | TOTAL ACCRUALS |
| 5.86 | TOTAL FTP |
| 3.92 | TOTAL INT |
| 9.78 | BALANCE DUE |

SEP-06-2006  14:46                                                    P.05/06

Station Name: MTG001MA2  398 Date: 8/22/2006 Time: 2:05  PM

INTST 72-1357031
01 200603 08222006 BARI

*F941*
*1st qtr*
*2006*

    7.19   ASSESSED FTP
    5.92   ASSESSED INT
   64.73   TAX & PENALTY
   77.84   ASSESSED TOTAL
    .00   ACCRUED FTP
    .74   ACCRUED INT
    .74   TOTAL ACCRUALS
    7.19   TOTAL FTP
    6.66   TOTAL INT
   78.58   BALANCE DUE

COMPUTATION HOLD ON FTP
Employee #2518321900 Page 001 of 002  PAGE  002

SEP-06-2006  14:46                                                P.05/06

Station Name: MTG001MA2/   398 Date: 8/22/2006 Time: 2:09   PM

INTST 72-1357031
13 199912 08222006 BARI

CIVIL
penAlty
TY 1999

| | |
|---|---|
| .00 | ASSESSED FTP |
| .00 | ASSESSED INT |
| 769.23 | TAX & PENALTY |
| 769.23 | ASSESSED TOTAL |
| .00 | ACCRUED FTP |
| 179.15 | ACCRUED INT |
| 179.15 | TOTAL ACCRUALS |
| .00 | TOTAL FTP |
| 179.15 | TOTAL INT |
| 948.38 | BALANCE DUE |

COMPUTATION HOLD ON FTP
Employee #2518321900 Page 001 of 002  PAGE  002

SEP-06-2006  14:45

Station Name: MTG001MA26   98 Date: 8/22/2006 Time: 2:09  PM

*Current EIN*

INTST 72-1357031

01 200012 08222006 BARI

*F941*

*4th qtr*

*2000*

| | |
|---|---|
| 2,506.41 | ASSESSED FTP |
| 1,915.43 | ASSESSED INT |
| 11,028.30 | TAX & PENALTY |
| 15,450.14 | ASSESSED TOTAL |
| .00 | ACCRUED FTP |
| 2,239.68 | ACCRUED INT |
| 2,239.68 | TOTAL ACCRUALS |
| 2,506.41 | TOTAL FTP |
| 4,155.11 | TOTAL INT |
| 17,689.82 | BALANCE DUE |

B 240 - Reaffirmation Agreement
(10/05)

# United States Bankruptcy Court

_____ Middle _____ District of _____ Alabama _____

In re  Deloris V. Victoria                    Case No.      06-31225
                                              Chapter

     Debtor(s)

## REAFFIRMATION AGREEMENT

_[Indicate all documents included in this filing by checking each applicable box.]_

☐ Part A: Disclosures, Instructions, and          ☐ Part D: Debtor's Statement in Support of
   Notice to Debtor (Pages 1 - 5)                    Reaffirmation Agreement
☐ Part B: Reaffirmation Agreement                 ☐ Part E: Motion for Court Approval
☐ Part C: Certification by Debtor's               ☐ Proposed Order Approving Reaffirmation
   Attorney                                          Agreement

☐ _[Check this box if]_ Creditor is a Credit Union as defined in §19(b)(1)(a)(iv) of the
Federal Reserve Act

## PART A: DISCLOSURE STATEMENT, INSTRUCTIONS AND NOTICE TO DEBTOR

### 1.     DISCLOSURE STATEMENT

_Before Agreeing to Reaffirm a Debt, Review These Important Disclosures:_

#### SUMMARY OF REAFFIRMATION AGREEMENT

This Summary is made pursuant to the requirements of the Bankruptcy Code.

#### AMOUNT REAFFIRMED

a.     The amount of debt you have agreed to reaffirm:          $ 285,170.31

b.     All fees and costs accrued as of the date of this
       disclosure statement, related to the amount of debt
       shown in a., above:                                     $

c.     The total amount you have agreed to reaffirm
       (Debt and fees and costs) (Add lines a. and b.):        $285,170.31 XXXXXX

_Your credit agreement may obligate you to pay additional amounts which may come
due after the date of this disclosure. Consult your credit agreement._

P. 2

## ANNUAL PERCENTAGE RATE

*[The annual percentage rate can be disclosed in different ways, depending on the type of debt.]*

a.  If the debt is an extension of "credit" under an "open end credit plan," as those terms are defined in § 103 of the Truth in Lending Act, such as a credit card, the creditor may disclose the annual percentage rate shown in (i) below or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

(i)  The Annual Percentage Rate disclosed, or that would have been disclosed, to the debtor in the most recent periodic statement prior to entering into the reaffirmation agreement described in Part B below or, if no such periodic statement was given to the debtor during the prior six months, the annual percentage rate as it would have been so disclosed at the time of the disclosure statement:          %.

*— And/Or ---*

(ii)  The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor:              %.  If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:

$          @          %;
$          @          %;
$          @          %.

b.  If the debt is an extension of credit other than under than an open end credit plan, the creditor may disclose the annual percentage rate shown in (i) below, or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

(i)  The Annual Percentage Rate under §128(a)(4) of the Truth in Lending Act, as disclosed to the debtor in the most recent disclosure statement given to the debtor prior to entering into the reaffirmation agreement with respect to the debt or, if no such disclosure statement was given to the debtor, the annual percentage rate as it would have been so disclosed:              %.

*— And/Or ---*

(ii)   The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor:              %.  If different simple interest rates apply to different balances included in the amount reaffirmed,

P. 3

the amount of each balance and the rate applicable to it are:

$      @      %;
$      @      %;
$      @      %.

     c.  If the underlying debt transaction was disclosed as a variable rate transaction on the most recent disclosure given under the Truth in Lending Act:

     The interest rate on your loan may be a variable interest rate which changes from time to time, so that the annual percentage rate disclosed here may be higher or lower.

     d.  If the reaffirmed debt is secured by a security interest or lien, which has not been waived or determined to be void by a final order of the court, the following items or types of items of the debtor's goods or property remain subject to such security interest or lien in connection with the debt or debts being reaffirmed in the reaffirmation agreement described in Part B.

| Item or Type of Item | Original Purchase Price or Original Amount of Loan |
| --- | --- |
| Mortgage | $347,577.39 |

*Optional*---At the election of the creditor, a repayment schedule using one or a combination of the following may be provided:

**Repayment Schedule:**

Your first payment in the amount of      is due on      (date), but the future payment amount may be different. Consult your reaffirmation agreement or credit agreement, as applicable.

*---Or---*

Your payment schedule will be: 176      (number) payments in the amount of $ 2,025.05 each, payable  Semi-Monthly  on the 18th      (day) of each Month   , unless altered later by mutual agreement in writing.

*---Or---*

Describe repayment obligation with specificity to extent known by creditor or creditor representative

## 2. INSTRUCTIONS AND NOTICE TO DEBTOR

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps are not completed, the reaffirmation agreement is not effective, even though you have signed it.

1. Read the disclosures in this Part A carefully. Consider the decision to reaffirm carefully. Then, if you want to reaffirm, sign the reaffirmation agreement in Part B (or you may use a separate agreement you and your creditor agree on).

2. Complete and sign Part D and be sure you can afford to make the payments you are agreeing to make and have received a copy of the disclosure statement and a completed and signed reaffirmation agreement.

3. If you were represented by an attorney during the negotiation of your reaffirmation agreement, the attorney must have signed the certification in Part C.

4. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, you must have completed and signed Part E.

5. The original of this disclosure must be filed with the court by you or your creditor. If a separate reaffirmation agreement (other than the one in Part B) has been signed, it must be attached.

6. <u>If the creditor is not a Credit Union</u> and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship as explained in Part D. <u>If the creditor is a Credit Union</u> and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court.

7. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, it will not be effective unless the court approves it. The court will notify you and the creditor of the hearing on your reaffirmation agreement. You must attend this hearing in bankruptcy court where the judge will review your reaffirmation agreement. The bankruptcy court must approve your reaffirmation agreement as consistent with your best interests, except that no court approval is required if your reaffirmation agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home.

# YOUR RIGHT TO RESCIND (CANCEL) YOUR REAFFIRMATION AGREEMENT

You may rescind (cancel) your reaffirmation agreement at any time before the bankruptcy court enters a discharge order, or before the expiration of the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later. To rescind (cancel) your reaffirmation agreement, you must notify the creditor that your reaffirmation agreement is rescinded (or canceled).

**Frequently Asked Questions:**

What are your obligations if you reaffirm the debt? A reaffirmed debt remains your personal legal obligation. It is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Otherwise, your obligations will be determined by the reaffirmation agreement which may have changed the terms of the original agreement. For example, if you are reaffirming an open end credit agreement, the creditor may be permitted by that agreement or applicable law to change the terms of that agreement in the future under certain conditions.

Are you required to enter into a reaffirmation agreement by any law? No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments you agree to make.

What if your creditor has a security interest or lien? Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage or security deed. Even if you do not reaffirm and your personal liability on the debt is discharged, because of the lien your creditor may still have the right to take the security property if you do not pay the debt or default on it. If the lien is on an item of personal property that is exempt under your State's law or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the security property, as agreed by the parties or determined by the court.

**NOTE:** When this disclosure refers to what a creditor "may" do, it does not use the word "may" to give the creditor specific permission. The word "may" is used to tell you what might occur if the law permits the creditor to take the action. If you have questions about your reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement reaffirming a debt. If you don't have an attorney helping you, the judge will explain the effect of your reaffirming a debt when the hearing on the reaffirmation agreement is held.

P. 6

## PART B: REAFFIRMATION AGREEMENT.

I (we) agree to reaffirm the debts arising under the credit agreement described below.

1. Brief description of credit agreement:

> Mortgage Loan on residence located at 225 Woodland Heights
> Drive, Greenville, AL  36037

2. Description of any changes to the credit agreement made as part of this reaffirmation agreement:

SIGNATURE(S):

Borrower:                              Co-borrower, if also reaffirming these debts:


(Print Name)                           (Print Name)

(Signature)                            (Signature)
Date:                                  Date:


Accepted by creditor:

*Brantley Bank + Trust Company*
*James R. Lester, VP + Cashier*
(Print Name)

(Signature)
Date of creditor acceptance: *10-19-06*

**PART C: CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY).**

*[Check each applicable box.]*

☐ I hereby certify that (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ *[If applicable and the creditor is not a Credit Union.]* A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

Printed Name of Debtor's Attorney:

Signature of Debtor's Attorney:

Date:

P. 8

## PART D: DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

1.  I believe this reaffirmation agreement will not impose an undue hardship on my dependents or me. I can afford to make the payments on the reaffirmed debt because my monthly income (take home pay plus any other income received) is $          and my actual current monthly expenses including monthly payments on post-bankruptcy debt and other reaffirmation agreements total $          , leaving $          to make the required payments on this reaffirmed debt. I understand that if my income less my monthly expenses does not leave enough to make the payments, this reaffirmation agreement is presumed to be an undue hardship on me and must be reviewed by the court. However, this presumption may be overcome if I explain to the satisfaction of the court how I can afford to make the payments here:

2. *Either:*  I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

*— Or ---*

*[If the creditor is a Credit Union and the debtor is represented by an attorney]*  I believe this reaffirmation agreement is in my financial interest. I can afford to make the payments on the reaffirmed debt. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: _____
  (Debtor)

  (Joint Debtor, if any)
Date:  .

### MEDICAL OFFICE SPACE LEASE

Date:     June 29, 2006

Name and Address of Building:
44 Medical Arts Court, Suite 2
Greenville, AL 36037

Landlord: Greenville Hospital Corporation
d/b/a LV Stabler Memorial Hospital
Address:
29 LV Stabler Drive
Greenville, AL 36037

Tenant:  Dolores Victoria, M.D.

Leased Premises Floor/Suite Description:
Suite 2

Number of Square Feet:   1250

Term of Lease:   2 years
Renewal Terms:          2 year term        (up to one renewal terms of two (2) years by written agreement of the parties at least three months before expiration of term).

Commencement Date of Lease Term: June 1, 2006          Security Deposit:        -0-

Termination:  Either party may terminate this lease with or without cause upon thirty (30) days prior to written notice to the other party.  However, in the event this lease is terminated for any reason prior to the expiration of one (1) year from the commencement date, the parties shall not enter into another lease until after the expiration of the first year of the initial term.

Annual Rental Rate:$   11,250                          Monthly Rental Installments: $ 937.50
Rent Increase (check one) ☐ 3% per year ☐ 4% per year          ($     9.00    /square foot/year)

_____  Check here if Tenant is required to maintain membership in Hospital Medical Staff

Utilities (check any that apply):
_____  Utilities (electric, water and sewer and janitorial services) are provided in the Monthly Rental.
_____  House keeping services will be paid monthly by the Landlord including trash removal.
_____  The following utilities are not included in the Monthly Rental:  electricity
_____  Tenant is solely responsible for the payment of separately metered utilities
_____  Tenant shall pay a pro-rata share of separately metered utilities based on Tenant's proportionate share of the metered space to total

Improvements (check any that apply): Not Applicable
_____  First time Standard Build Out - Base Tenant Build Out Allowance: $ _____ per sq. ft.
_____  Existing Space (New Tenant or Renewal) - Tenant Improvement Allowance: $ ___ per
          sq. ft. per year
_____  Landlord to build out space per Landlord's Work Letter attached hereto as Exhibit B

This Medical Office Space Lease is a sublease pursuant to that certain (describe underlying lease agreement): _____ not applicable

Attached hereto and incorporated herein for all purposes is "Exhibit A -- Medical Office Space Lease Standard Terms and Conditions" to which reference is made for the balance of the terms of this Medical Office Space Lease, including without limitation adjustments to Rental Rate/Installments.

Attached hereto and incorporated herein for all purposes are the following additional exhibits: Not applicable

TENANT:

Date:     7-19-06

REVIEWED AND APPROVED:

Facility Chief Executive Officer
Date:     7-19-06

LANDLORD:

By:
President, Hospital Corporation
Date:     7-5-06

APPROVED AS TO FORM:

In-house Counsel, Hospital Corporation
Date:     6-30-06

Form No. 0103 Rev. by Legal Dept as of 6/26/06.



08/01/2006 TUE 10:01  [TX/RX NO 9884]  ☑002

*MOB Lease – Hospital-Landlord*

## EXHIBIT A
## MEDICAL OFFICE SPACE LEASE STANDARD TERMS AND CONDITIONS

In consideration of the mutual covenants and representations set forth in the Medical Office Space Lease (the "Lease") and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties do hereby agree as follows. The capitalized terms used in this Exhibit A shall have the meaning assigned to such terms in the Medical Office Space Lease, unless another meaning is assigned to such terms in this Exhibit A.

1.      DEMISE.  Upon the terms and conditions hereinafter set forth, Landlord does hereby lease to Tenant, and Tenant does hereby lease from Landlord, the Demised Premises for the Term of the Lease.

2      RENT.  The Monthly Rental Installments for the Lease of the Demised Premises shall be payable in advance on the first day of each and every month during the term hereof.  During the term of this Lease, the Monthly Rental Installments shall be increased, as of each anniversary date of the Commencement Date, by the percentage amount set forth in the Medical Office Space Lease.  It is expressly understood and agreed that Landlord shall apply all payments from Tenant hereunder to the amounts due hereunder by Tenant which have been outstanding for the longest period of time first.

3.      RENTAL RATE ADJUSTMENT. Landlord shall adjust the Annual Rental Rate and the monthly Rental Installments to the then fair market rental rate for the Demised Premises, upon the termination of an existing term of the Lease. Landlord will give notice of such adjustment to Tenant 90 days prior to expiration date of current Lease. Without limitation, Landlord's adjustment of Rental Rate and the monthly installments will be based on the fair market rental rate, utility costs and real estate taxes as well as any local, state or federal income taxes, which may become payable by the Landlord. If a rent escalation percentage has been checked on the cover page of this Lease, the adjustment under this section shall not exceed the amount checked on the cover page of this Lease

4.      LANDLORD'S OBLIGATIONS.

    A.  Utilities:
       If utilities are included in the Monthly Rental Installments, then Landlord shall, at Landlord's expense, furnish utilities to the Demised Premises, including electrical, water and sewer, heat, ventilation, and air conditioning, however, Tenant shall be responsible for the payment of telephone and data services.

    B.  Maintenance
       Landlord shall maintain, repair and replace all exterior walls and other features of the exterior including but not limited to the roof and all mechanical systems, including but not limited to air conditioning, heating, plumbing, wiring and piping.

    C.  Insurance
       Landlord shall maintain fire and extended coverage insurance on the building in which the Demised Premises are located, in an amount not less than the full replacement cost of the building.

    D.  Taxes
       Landlord shall be responsible for payment of all real estate taxes assessed against the building or property, as well as all applicable local, state and federal income taxes which are or may be payable by Landlord.

    E.  Build Out By Landlord
       If checked on the cover sheet hereof, Landlord will be responsible for standard build out for office space per Attachment "B"    (attached hereto and incorporated herein by reference).

5.      TENANT'S OBLIGATIONS.  In addition to the said rent to be paid, Tenant also agrees to pay directly during the term of the Lease, commencing on the Commencement Date, the following items of expense as the same become due and payable:

    A.  Taxes.
       All ad valorem or other property taxes, personal and intangible taxes payable in connection with the use, occupancy or conduct of business on any part of the Demised Premises, including but not limited to personal property, business, privilege, license, excise, sales, use

Form No. 0103 Rev. by Legal Dept as of 6/26/06.



and occupation taxes (but excluding local, state and federal income taxes payable by Landlord). Tenant shall be responsible for all taxes which are assessed against their stock and inventory, tangible personal property or their business and/or business operations.

B. Maintenance and Modifications.
The following charges for maintaining and operating the Demised Premises in good repair and operating condition:

1) Tenant shall, at its own cost and expense, keep the interior clean, maintaining suitable receptacles for trash and refuse, and removing from the interior all accumulations of trash and refuse.

2) Tenant shall service, keep and maintain the interior, including fixtures, doors, interior walls and appurtenances in good condition, repair and working order.

3) Tenant agrees to deliver to Landlord, upon the expiration date or upon earlier termination in accordance with the provisions hereof, physical possession of the Demised Premises in good condition, reasonable wear and tear and damage by fire or other casualty excepted.

4) If the Building is separately metered for certain utilities, such as electricity, gas, water, and sewer, Tenant shall be responsible for the payment of all such separately metered utilities based on Tenant's proportionate share of the metered square-footage.

5) If utilities are not separately metered, Tenant shall be responsible for a pro-rata share of Building utility expense, based upon the ratio of the square footage of the Demised Premises to the square footage of the Building. The utility expense shall be calculated, and the Utility Base Rate shall be adjusted, annually.

6) Tenant shall be responsible for all service costs and installations of all telephone or data services and Landlord shall have no responsibility or liability with respect thereto or the failure of operation of any such services.

6.    IMPROVEMENTS.  Tenant shall not make any structural changes, alterations, additions or improvements to the Demised Premises without the written consent of Landlord, which shall not be unreasonably withheld.  Landlord shall not be responsible for, either in the performance or payment, any improvements to the Demised Premises unless a "Landlord's Work Letter" is attached to the Lease.

7.    USE OF DEMISED PREMISES. Tenant shall use the Demised Premises for the purpose of the licensed practice of medicine and the medical treatment of Tenant's patients and business purposes ancillary thereto and for no other purpose. Without limiting the foregoing, unless approved by Landlord in advance and in writing, Tenant shall not use the Demised Premises for the operation of a "commercial ancillary medical care facility" which shall include, without limitation, a clinical laboratory, pharmacy, ambulatory surgery center, birthing center, diagnostic, including radiology, facility, and respiratory, physical, speech, or occupational therapy services. The use of diagnostic equipment (such as x-ray) and the performance of minor surgical procedures under local anesthesia, that is within the scope of Tenant's medical practice and pertaining to the treatment and care of Tenant's own patients, shall not be considered to violate the terms of this paragraph.

8.    ASSIGNMENT;SUBLETTING.  Tenant shall not, without the prior consent of Landlord, which consent may be withheld in Landlord's sole discretion, sublease, license or assign its interest under the Lease to any other person or entity.  Assignment or subletting without the prior consent of Landlord, including assignment by operation of the law, shall constitute an event of default.  In no event, whether with or without consent of Landlord, shall an assignment or lease relieve Tenant of liability under the terms, conditions and provisions of this Lease.

9.    INSURANCE.

A.    The following insurance coverage on the Demised Premises will be maintained by Tenant at all times during the term of the Lease.  Comprehensive general liability insurance coverage on the Demised Premises in the sum of One Million Dollars ($1,000,000) for any single claim and Three Million Dollars ($3,000,000) for claims arising out of a single accident or occurrence against liability for bodily injury and death resulting therefrom, and insurance coverage in the sum of One Hundred Thousand Dollars ($100,000.00) per occurrence against liability for damage to property, arising out of the maintenance or use of the Demised Premises by Tenant.  Casualty insurance insuring Tenant against loss or damage to its

Form No. 0103 Rev. by Legal Dept as of 6/26/06.

3



equipment and other personal property in the Demised Premises by fire and all other casualties usually covered under an "all risk" policy of casualty insurance. The policies described in this section shall name both Tenant and Landlord as named insureds. Annually, Tenant shall furnish Landlord with a certificate of such coverage which shall provided that thirty (30) days' advance written notice be given to Landlord in the event of cancellation or material change in the insurance policy.

B.    Tenant shall not do or permit any act which will increase premiums for any casualty, fire, liability or other insurance maintained by Landlord on the Building or any other property therein or which shall render such insurance void or voidable.

10    DAMAGE TO PROPERTY/INJURY TO PERSON. Tenant shall and hereby does indemnify and hold Landlord harmless from and against any and all claims to the extent they arise from (i) Tenant's use of the Demised Premises or the conduct of its business, (ii) any activity, work or thing done, permitted or suffered by the Tenant in or about the Demised Premises, (iii) any breach or default in the performance of any obligation on Tenant's part to be performed under the terms of the Lease, or (iv) any act of negligence of Tenant or his agents or employees.

11.    ENVIRONMENTAL PROVISIONS.
A.    Following due inquiry, Landlord represents that to the best of its knowledge there are no hazardous substances or hazardous wastes as defined by the Comprehensive Environmental Response and Liability Act or any hazardous wastes as defined by the Resource Conservation and Recovery Act, or any PCB's, radon or asbestos containing materials, located on, in or about the Demised Premises to be occupied by Tenant. Landlord agrees that should any hazardous wastes, hazardous substances, PCB's, radon or asbestos containing materials be determined to be present as a result of the acts or missions or negligence of any person or legal entity, other than Tenant, Landlord shall indemnify, hold harmless and defend Tenant from all claims, damages, expenses or litigation resulting from the presence of such materials.

B    Tenant warrants that its use of the Premises and the materials used in the conduct of its business operations at and on the Premises, or the manner of use, and its waste, effluent and vapors will not violate any laws, ordinances, rules or regulations relating to or affecting the environment or dealing with environmental matters, as hereinafter defined, hazardous substances of any kind or nature, whether imposed or enforced by any state, local or federal agency, and that Tenant shall alter its use of the Premises to comply with such laws, ordinances, rules or regulations if required to do so by any such governmental agency. Tenant shall not use the Premises, maintain them nor allow use of the Premises in any manner constituting a violation of any ordinance, statute, rule, regulation or order of any governmental authority, including, but not limited to, the ADA, zoning ordinances, or environmental rules, regulations and laws, nor will the Tenant maintain or permit any nuisance to occur or to be maintained on the Premises.

12.    EARLY TERMINATION AS A RESULT OF THE DEATH OR DISABILITY OF A SOLE PRACTITIONER; OTHER VACATION OR ABANDONMENT. If Tenant is a sole practitioner and dies or becomes disabled (defined for purposes of the Lease as any physical or mental condition that prevents or is reasonably expected to prevent such physician from practicing medicine for more than ninety (90) days), then either party shall have the right to terminate the Lease prior to the expiration date by giving the other party not less than thirty (30) days prior written notice. Except as expressly provided in the preceding sentence, any other vacation of the Demised Premises for more than thirty (30) days or any abandonment of the Demised Premises by Tenant will be considered a material default under the Lease.

13.    DEFAULT. Tenant shall be in default of the terms of the Lease if Tenant shall fail to make a payment of any rent or additional rent, and such rent or additional rent is not paid within ten (10) days of written notice by Landlord to Tenant of non-payment of same, or in the event that Tenant shall otherwise commit an act of default under the terms hereof, and shall not cure such default within thirty (30) days of written notice by Landlord to Tenant of such default. In the event of default:

A.    Landlord may continue the Lease in full force and effect and shall have the right to collect rent when due. During the term Tenant is in default, Landlord may re-enter the Demised Premises with legal process and relet same, or any part thereof, to third parties for Tenant's account. Tenant shall be liable for all reasonable costs Landlord incurred for reletting the Demised Premises, including without limitation broker's commissions, expenses associated with repairing and / or remodeling the Demised Premises in order to return the Demised Premises to the same condition as when received by Tenant from Landlord and similar costs. Reletting can be done for a period shorter or longer than the remaining term of the Lease. Tenant shall pay to Landlord the rent due under the Lease on the date such rent is due, less the rent Landlord receives from any reletting. Landlord shall make its best efforts to relet the Demised Premises at a reasonable price. Under this paragraph, Tenant's obligations shall not exceed the total rent due for the remainder of the term.



B.    Landlord may terminate the Lease pursuant to the terms of this Section 13. Upon termination, Landlord shall have the right to collect an amount equal to all expenses, if any, including reasonable attorneys' fees, incurred by Landlord in recovering possession of the Demised Premises and all reasonable costs and charges for the care of the Demised Premises while vacated by Tenant.

C.    Should any of these remedies or any portion thereof not be permitted by the laws of the state where the Building is located, then such remedy or portion thereof shall be considered deleted and unenforceable, and the remaining remedies or portions thereof shall be and remain in full force and effect, and Landlord may avail itself of these as well as any other remedies or damages allowed by law.

14.    RIGHT OF ACCESS. Landlord and its agents shall have reasonable access to the Demised Premises during all reasonable business hours for the purpose of examining same to ascertain if they are in good repair and to make reasonable repairs which Landlord may be required to make hereunder.

15.    END OF TERM. At the termination of the Lease, Tenant shall surrender its interest in the Demised Premises to Landlord in as good condition and repair as reasonable use thereof will permit, reasonable wear and tear excepted, and will leave the Demised Premises broom clean. Tenant shall have the right, prior to said termination, to remove any equipment, furniture, trade fixtures or other personal property in the Demised Premises owned by Tenant, provided that Tenant promptly repairs any damage to the Demised Premises caused by such removal. In the event of holding over by Tenant after the expiration or termination of the Lease, Tenant shall pay rent at the then-current rate on a monthly basis. Any holding over with consent of Landlord in writing shall thereafter constitute a Lease for month-to-month.

16.    ATTORNEYS' FEES. In the event that suit is brought by either party against the other for breach or default under the terms of the Lease, the prevailing party shall be entitled to reasonable attorneys' fees, expenses (including expert witness fees) and court costs equal to the sum established by the court.

17.    HEADINGS. The article captions contained in the Lease are for the convenience of the parties only and shall not be considered in the construction or interpretation of any provision hereof.

18.    ENTIRE AGREEMENT. The Lease contains the entire agreement between the parties and supersedes any and all other prior oral and written agreements between the parties regarding the subject matter contained herein and may not be changed or terminated orally but only by agreement in writing and signed by all parties.

19.    DAMAGE OR DESTRUCTION. If the Demised Premises are damaged by fire or other casualty, the damage shall be repaired by and at the expense of Landlord (excluding any equipment which is owned by Tenant), provided that such repairs can, in Landlord's opinion, be made within sixty (60) days after the occurrence of such damage. Landlord shall notify Tenant within fifteen (15) days of the event of casualty of its determination. Until such repairs are completed, the rent shall be abated in proportion to the part of the Demised Premises rendered unusable, but there shall be no abatement of rent for a period equal to one (1) day or less. If such repairs cannot, in Landlord's opinion, be made within sixty (60) days and Landlord nonetheless chooses to repair, then Tenant may, at its option, continue as Tenant under the Lease until such repairs are completed, during which time all rent shall abate, or Tenant may terminate the Lease. A total destruction of the building in which the Demised Premises are located shall automatically terminate the Lease. Total destruction of the building shall be defined as damage greater than fifty percent (50%) of the then replacement value thereof.

20.    EMINENT DOMAIN. If the whole of the Demised Premises or so much thereof as to render the balance unusable by Tenant shall be taken under power of eminent domain, the Lease shall automatically terminate as of the effective date of the taking. In the event of a partial taking which does not result in a termination of the Lease, the rent reserved hereunder shall remain unaffected. Landlord may, without any obligation or liability to Tenant, stipulate with any condemning authority for a judgment of condemnation without the necessity of a formal suit or judgment of condemnation, and the date of taking under this clause shall then be deemed the date agreed to under the terms of said agreement for stipulation and the Lease shall terminate as of the stipulated date.

21.    WAIVER. No waiver by either party shall be deemed to be a waiver of any other provision hereof or of any subsequent breach by either party of the same or any other provision. Landlord 's consent to or approval of any act by Tenant requiring Landlord's consent or approval shall not be deemed to render unnecessary the obtaining of Landlord's consent to or approval of any subsequent act of Tenant, whether or not similar to the act so consented to or approved.

Form No. 0103 Rev. by Legal Dept as of 6/26/06.

5



22.    NOTICES. Any notice required or permitted to be given hereunder may be given by mail and shall be sufficiently given if personally served or sent by registered or certified mail or by special courier, addressed to the relevant party at the addresses specified in the Lease (notice to Tenant shall be given at the Demised Premises). For any notice given to Landlord, a copy shall be provided to the Landlord's counsel as follows: General Counsel, Legal Department, P.O. Box 217, Brentwood, Tennessee 37024-0217. From and after December 15, 2006: Community Health Systems, Attn: Legal Department, 4000 Meridian Blvd., Franklin, TN 37067 or Community Health Systems, Attn: Legal Department, P.O. Box 689020, Franklin, TN 37068.

23.    BINDING EFFECT. The Lease shall be binding upon and inure to the benefit of the parties hereto, their heirs, successors, assigns, executors and administrators. Nothing in this article shall be deemed to amend the provisions herein concerning assignment and subletting.

24.    APPLICABLE LAW. The laws of the state where the Building is located shall be employed in and govern the interpretation of all of the covenants, terms and conditions of the Lease.

25.    NO PARTNERSHIP RELATIONSHIP. Notwithstanding any agreement herein contained, Landlord shall not be construed or held to be a partner or associate of Tenant in the conduct of its business, it being expressly understood and agreed that the relationship between the parties is and at all times shall remain that of Landlord and Tenant.

26.    NO REQUIREMENT TO REFER. The parties expressly agree that nothing contained in the Lease shall require Tenant or any physician or other referral source to refer or admit any patients to, or order any goods or services from Landlord or any affiliate. Notwithstanding any unanticipated effect of any provision of this Agreement, neither party will knowingly or intentionally conduct himself in such a manner as to violate the prohibition against fraud and abuse in connection with the Medicare and Medicaid programs (42 USC Section 1320a-7b). Both parties represent to the other that the Rentals provided for in the Lease are at fair market value rates and do not take into account the value or volume of any referrals or other business generated between the parties. Both as a material condition to this Lease and as a continuing representation and warranty for the duration of this Lease, Tenant represents and warrants that neither it nor any of its owners, officers, directors, employees, agents, subcontractors etc have been suspended, excluded, or debarred from any government payor program.

27.    QUIET ENJOYMENT. Landlord warrants and shall defend Tenant in the quiet enjoyment and possession of the Demised Premises during the term and any extension or renewal thereof.

28.    OPTION TO RENEW. Provided that Tenant is not then in default hereunder, upon the expiration of the term hereof, Tenant shall have the option to renew the Lease for the additional term(s), if any, set forth on the cover page of this Lease, upon the same terms and conditions as this Lease except that the rentals payable during the renewal term shall be adjusted to fair market rental as set forth herein.

29.    SUBORDINATION, ATTORNMENT AND NON-DISTURBANCE.

  A.    Tenant agrees that the Lease and all rights of Tenant hereunder are and shall be subject and subordinate to any ground or underlying lease which may now or hereafter be in effect regarding the Building or any component thereof, to any mortgage now or hereafter encumbering the Demised Premises or the Building or any component thereof, to all advances made or hereafter to be made upon the security of such mortgage, to all amendments, modifications, renewals, consolidations, extensions and restatements of such mortgage, and to any replacements and substitutions for such mortgage. The terms of this provision shall be self-operative and no further instrument of subordination shall be required. Tenant, however, upon request of any party in interest, shall execute promptly such instrument or certificates as may be reasonably required to carry out the intent of this provision.

  B.    In the event any proceedings are brought for the foreclosure of, or in the event of exercise of the power of sale under, or in the event of a deed in lieu of foreclosure with respect to any mortgage covering the Demised Premises or the Building, or in the event of termination of any Lease under which Landlord may hold title, Tenant shall, at the option of transferee, attorn to such transferee and shall recognize and be bound and obligated hereunder to such person as the Landlord under the Lease. Tenant agrees to execute any attornment agreement not in conflict with this provision.

Form No. 0103 Rev. by Legal Dept as of 6/26/06.



C.   Notwithst... ...ng anything contained herein to the contrary, so ... as Tenant is not in default in the payment of Rentals or other charges, or in the performance of any of the other terms, covenants or conditions of the Lease, mortgagee or such person shall not disturb Tenant in its occupancy of the Demised Premises during the original or any renewal term of the Lease notwithstanding any event or proceedings described in this section.

30.   MASTER CONTRACT LIST.  This contract is identified on a master list of contracts maintained on a Lotus Notes server.

31.   ESTOPPEL CERTIFICATE.   Within thirty (30) days after written request from Landlord, Tenant shall deliver an executed statement addressed to Landlord certifying (if such be the case) that this Lease is in full force and effect, that Tenant has commenced the payment of rent, and that there are no defenses or offsets to this Lease claimed by Tenant, as well as any other information reasonably requested.  If Tenant fails or refuses to give a certificate hereunder within the required time frame, then the information on such certificate as submitted by Landlord shall be deemed correct for all purposes and Landlord shall have the right to treat such failure or refusal as a default by Tenant.

32.   FORCE MAJEURE.   With the exception of the obligation of Tenant to pay Rent and all other amounts that may be due from time to time under this Lease, if either party shall be delayed or hindered in or prevented from doing or performing any act or thing required hereunder by reason of any matters beyond the reasonable control of such party, then such party shall not be liable or responsible for any such delays and the doing or performing of such act or thing shall be extended for a period equivalent to the period of such delay.  In such event, this Lease and the obligations of both parties to perform and comply with all of the other terms and provisions of this Lease shall in no way be affected, impaired, or excused.

33.   WAIVER OF JURY TRIAL

LANDLORD AND TENANT HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION, ACTION, PROCEEDING OR COUNTERCLAIM BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS LEASE OR THE OBLIGATIONS EVIDENCED HEREBY, THE RELATIONSHIP OF LANDLORD AND TENANT, TENANT'S USE OF OR OCCUPANCY OF THE PREMISES, ANY CLAIM OF INJURY OR DAMAGE, OR ANY EMERGENCY OR OTHER STATUTORY REMEDY OR ANY OTHER DOCUMENT OR INSTRUMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY.  THIS PROVISION IS A MATERIAL INDUCEMENT TO EACH OF LANDLORD AND TENANT IN ENTERING INTO THIS LEASE.

34.   SUBLEASE.  In the event the Lease is a sublease to an underlying lease agreement, as described in the Lease, then with respect to the Demised Premises, except for the Term of the Lease and the Rental Rate/Installment, Tenant shall perform all of the obligations of tenant/lessee under the underlying lease agreement.

35.   APPROVALS.  Neither this Lease nor any amendment or modification hereto shall be effective or legally binding upon Landlord, or any officer, director, employee or agent thereof, unless and until it has been reviewed and approved in writing by a President of Landlord's owner and by Landlord's Legal Counsel.

36.   RULES AND REGULATIONS.  Tenant shall faithfully observe and comply strictly with the following rules and regulations, adopted for the safety, care and cleanliness of the Building or the preservation of good order therein.  Landlord shall not be liable to Tenant for a violation of such rules and regulations, or for the breach of any covenant or condition in a lease by any other tenant in the Building.  Landlord may, from time to time and upon notice to Tenant, adopt additional or substitute rules and regulations of the Building.

A.   Conduct.  Tenant shall not conduct its practice or business, or advertise such business, profession or activities of Tenant conducted in the Premises in any manner which violates local, state or federal laws or regulations.

B.   Hallways and Stairways.  Tenant shall not obstruct or use for storage, or for any purpose other than ingress and egress, the sidewalks, entrance, passages, courts, corridors, vestibules, halls, elevators and stairways of the Building.

C.   Nuisances.  Tenant shall not make or permit any noise, odor or act that is objectionable to other occupants of the Building to emanate from the Premises, and shall not create or maintain a nuisance thereon.

Form No. 0103 Rev. by Legal Dept as of 6/26/06.



D.  Musical Instruments, Etc.  Tenant shall not install or oper any phonograph, musical instrument, radio receiver or similar device in the Building in such manner as to disturb or annoy other tenants of the Building or the neighborhood.  Tenant shall not install any antennae, aerial wires or other equipment outside the Building without the prior written approval of Landlord.

E.  Locks.  No additional locks or bolts of any kind shall be placed upon any of the doors or windows by Tenant, nor shall any changes be made in existing locks or the mechanism thereof. Tenant must upon the termination of its tenancy restore to Landlord all keys to the Premises and toilet rooms either furnished to or otherwise produced by Tenant, and in the event of loss of any keys so furnished, Tenant shall pay to Lessor the cost thereof.

F.  Obstructing Light, Damage.  The doors, window glass, lights and skylights that reflect or admit light into the halls or other places of the Building shall not be covered or obstructed. The toilets and urinals shall not be used for any purpose other than those for which they were intended and constructed, and no rubbish, newspapers or other substance of any kind shall be thrown into them.  Waste and excessive or unusual use of water shall not be allowed.  Tenant shall not mark, drive nails, screw or drill into, paint, nor in any way deface the walls, ceilings, partitions, floors, wood, stone or iron work.  The expense of any breakage, stoppage or damage resulting from a violation of this rule by Tenant shall be borne by Tenant.  Tenant shall be permitted to hang pictures on office walls, but it must be done in a workmanlike manner and in such a way as not to damage or deface such walls.

G.  Wiring  Electrical wiring of every kind shall be introduced and connected only as directed by Landlord, and no boring nor cutting of wires will be allowed except with the consent of Landlord.  The location of the telephone, call boxes, etc., shall be subject to the approval of Landlord.

H.  Equipment, Moving, Furniture, Etc.  Landlord shall approve the weight, size and position of all fixtures, equipment and other property brought into the Building, and the times of moving which must be done under the supervision of Landlord.  Landlord will not be responsible for any loss of or damage to any such equipment or property from any cause, and all damage done in the Building by moving or maintaining any such property shall be repaired at the expense of Tenant.  All equipment shall be installed as required by law.

I.  Requirements of Tenant.  The requirements of Tenant will be attended to only upon application at the office of Landlord.  Employees shall not perform any work nor do anything outside their regular duties unless under special instructions from Landlord.  No employees shall admit any person, Tenant or otherwise, to any other office without instruction from the office of Landlord.  All janitorial services personnel, guards or any outside contractors employed by Tenant shall be subject to the regulations and control of Landlord, but shall not act as an agent or servant of Landlord.

J.  Medical and Hazardous Wastes.  Tenant shall comply with all policies established from time to time by Landlord regarding the storage and disposal of hazardous substances, wastes and materials, and medical, special or infectious wastes.

K.  Access to Building.  Any person entering or leaving the Building may be questioned by Building security regarding his/her business in the Building and may be required to sign in and out.  Anyone who fails to provide a satisfactory reason for being in the Building may be excluded.

L.  Vehicles, Animals, Refuse.  Tenant shall not allow anything to be placed on the outside window ledges of the Premises or to be thrown out of the windows of the Building.  No bicycle or other vehicle, and no animal, except for service animal, shall be brought into the offices, halls, corridors, elevators or any other parts of the Building by Tenant or the agents, employees or invitees of Tenant, and Tenant shall not place or permit to be placed any obstruction or refuse in any public part of the Building.

M.  Equipment Defects.  Tenant shall give Landlord prompt notice of any accidents to or defects in the water pipes, gas pipes, electric lights and fixtures, heating apparatus, or any other service equipment.

N.  Parking.  Unless otherwise specified by Landlord, Tenant and its employees may park automobiles only in spaces designated by Landlord for such purpose and shall in no event

Form No. 0103 Rev. by Legal Dept as of 6/26/06.

FINAL

park in spaces reserved for public parking. Tenant agrees that Landlord assumes no responsibility of any kind whatsoever in reference to such automobile parking area or the use thereof by Tenant or its agents or employees.

O.  Conservation and Security. Tenant will see that all windows and doors are securely locked, and that all faucets and electric light switches are turned off before leaving the Building.

P.  Signage. Tenant shall not place any sign upon the Demised Premises or the Building without Landlord's prior written consent.

Form No. 0103 Rev. by Legal Dept as of 6/26/06.

9



B 240 - Reaffirmation Agreement
(10/05)

# United States Bankruptcy Court

_____Middle_____ District of _____Alabama_____

In re

Debtor(s)

Case No.
Chapter

## REAFFIRMATION AGREEMENT

_[Indicate all documents included in this filing by checking each applicable box.]_

☐ Part A: Disclosures, Instructions, and
　　Notice to Debtor (Pages 1 - 5)
☒ Part B: Reaffirmation Agreement
☐ Part C: Certification by Debtor's
　　Attorney

☐ Part D: Debtor's Statement in Support of
　　Reaffirmation Agreement
☐ Part E: Motion for Court Approval
☐ Proposed Order Approving Reaffirmation
　　Agreement

☐ _[Check this box if]_ Creditor is a Credit Union as defined in §19(b)(1)(a)(iv) of the
Federal Reserve Act

## PART A: DISCLOSURE STATEMENT, INSTRUCTIONS AND NOTICE TO DEBTOR

### 1.　　DISCLOSURE STATEMENT

_Before Agreeing to Reaffirm a Debt, Review These Important Disclosures:_

### SUMMARY OF REAFFIRMATION AGREEMENT

This Summary is made pursuant to the requirements of the Bankruptcy Code.

### AMOUNT REAFFIRMED

a.　　The amount of debt you have agreed to reaffirm:　　$ 19,029.83

b.　　All fees and costs accrued as of the date of this
　　disclosure statement, related to the amount of debt
　　shown in a., above:　　$

c.　　The total amount you have agreed to reaffirm
　　(Debt and fees and costs) (Add lines a. and b.):　　$ 19,029.83　0.00

_Your credit agreement may obligate you to pay additional amounts which may come
due after the date of this disclosure. Consult your credit agreement._

## ANNUAL PERCENTAGE RATE

*[The annual percentage rate can be disclosed in different ways, depending on the type of debt.]*

    a.  If the debt is an extension of "credit" under an "open end credit plan," as those terms are defined in § 103 of the Truth in Lending Act, such as a credit card, the creditor may disclose the annual percentage rate shown in (i) below or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

    (i)  The Annual Percentage Rate disclosed, or that would have been disclosed, to the debtor in the most recent periodic statement prior to entering into the reaffirmation agreement described in Part B below or, if no such periodic statement was given to the debtor during the prior six months, the annual percentage rate as it would have been so disclosed at the time of the disclosure statement: _____%.

— And/Or ---

    (ii)  The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: _____%.  If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:

$ _____ @ _____ %;
$ _____ @ _____ %;
$ _____ @ _____ %.

    b.  If the debt is an extension of credit other than under than an open end credit plan, the creditor may disclose the annual percentage rate shown in (i) below, or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

    (i)  The Annual Percentage Rate under §128(a)(4) of the Truth in Lending Act, as disclosed to the debtor in the most recent disclosure statement given to the debtor prior to entering into the reaffirmation agreement with respect to the debt or, if no such disclosure statement was given to the debtor, the annual percentage rate as it would have been so disclosed: _____%.

— And/Or ---

    (ii)  The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: _____%.  If different simple interest rates apply to different balances included in the amount reaffirmed,

P. 3

the amount of each balance and the rate applicable to it are:

$15,384.75@    9.00   %;
$ 3,645.08@    5.75   %;
$         @          %.

c. If the underlying debt transaction was disclosed as a variable rate transaction on the most recent disclosure given under the Truth in Lending Act:

The interest rate on your loan may be a variable interest rate which changes from time to time, so that the annual percentage rate disclosed here may be higher or lower.

d. If the reaffirmed debt is secured by a security interest or lien, which has not been waived or determined to be void by a final order of the court, the following items or types of items of the debtor's goods or property remain subject to such security interest or lien in connection with the debt or debts being reaffirmed in the reaffirmation agreement described in Part B.

| Item or Type of Item | Original Purchase Price or Original Amount of Loan |
|---|---|
| CERTIFICATE OF DEPOSIT #19922 | $3,565.00 |
| UCC-1 WITH EXHIBIT 'A' AND 'B' | $19,697.16 |

*Optional*---At the election of the creditor, a repayment schedule using one or a combination of the following may be provided:

**Repayment Schedule:**

Your first payment in the amount of                is due on                (date), but the future payment amount may be different. Consult your reaffirmation agreement or credit agreement, as applicable.

---*Or*---

Your payment schedule will be:                (number) payments in the amount of $                each, payable        Monthly        on the                (day) of each Month unless altered later by mutual agreement in writing.

---*Or*---

Describe repayment obligation with specificity to extent known by creditor or creditor representative

BORROWER INTENDS TO PAY BOTH LOANS WITH BUTLER COUNTY BANK, GREENVILLE, ALABAMA AS THEY ARE PRESENTLY STRUCTURED.  SEE COPIES OF NOTES ATTACHED FOR DETAILS.

## 2. INSTRUCTIONS AND NOTICE TO DEBTOR

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps are not completed, the reaffirmation agreement is not effective, even though you have signed it.

1. Read the disclosures in this Part A carefully. Consider the decision to reaffirm carefully. Then, if you want to reaffirm, sign the reaffirmation agreement in Part B (or you may use a separate agreement you and your creditor agree on).

2. Complete and sign Part D and be sure you can afford to make the payments you are agreeing to make and have received a copy of the disclosure statement and a completed and signed reaffirmation agreement.

3. If you were represented by an attorney during the negotiation of your reaffirmation agreement, the attorney must have signed the certification in Part C.

4. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, you must have completed and signed Part E.

5. The original of this disclosure must be filed with the court by you or your creditor. If a separate reaffirmation agreement (other than the one in Part B) has been signed, it must be attached.

6. <u>If the creditor is not a Credit Union</u> and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship as explained in Part D. <u>If the creditor is a Credit Union</u> and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court.

7. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, it will not be effective unless the court approves it. The court will notify you and the creditor of the hearing on your reaffirmation agreement. You must attend this hearing in bankruptcy court where the judge will review your reaffirmation agreement. The bankruptcy court must approve your reaffirmation agreement as consistent with your best interests, except that no court approval is required if your reaffirmation agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home.

# YOUR RIGHT TO RESCIND (CANCEL) YOUR REAFFIRMATION AGREEMENT

You may rescind (cancel) your reaffirmation agreement at any time before the bankruptcy court enters a discharge order, or before the expiration of the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later. To rescind (cancel) your reaffirmation agreement, you must notify the creditor that your reaffirmation agreement is rescinded (or canceled).

## Frequently Asked Questions:

What are your obligations if you reaffirm the debt? A reaffirmed debt remains your personal legal obligation. It is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Otherwise, your obligations will be determined by the reaffirmation agreement which may have changed the terms of the original agreement. For example, if you are reaffirming an open end credit agreement, the creditor may be permitted by that agreement or applicable law to change the terms of that agreement in the future under certain conditions.

Are you required to enter into a reaffirmation agreement by any law? No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments you agree to make.

What if your creditor has a security interest or lien? Your bankruptcy discharge does not eliminate any lien on your property. A ''lien'' is often referred to as a security interest, deed of trust, mortgage or security deed. Even if you do not reaffirm and your personal liability on the debt is discharged, because of the lien your creditor may still have the right to take the security property if you do not pay the debt or default on it. If the lien is on an item of personal property that is exempt under your State's law or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the security property, as agreed by the parties or determined by the court.

NOTE: When this disclosure refers to what a creditor ''may'' do, it does not use the word "may" to give the creditor specific permission. The word ''may'' is used to tell you what might occur if the law permits the creditor to take the action. If you have questions about your reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement reaffirming a debt. If you don't have an attorney helping you, the judge will explain the effect of your reaffirming a debt when the hearing on the reaffirmation agreement is held.

P. 6

## PART B: REAFFIRMATION AGREEMENT.

I (we) agree to reaffirm the debts arising under the credit agreement described below.

1. Brief description of credit agreement:

LOAN #94581 DATED 03/28/2006 WITH PRESENT BALANCE OF $15,384.75
WITH BUTLER COUNTY BANK, GREENVILLE ALABAMA 36037
LOAN #92095 DATED 09/02/2005 WITH PRESENT BALANCE OF $3645.08
WITH BUTLER COUNTY BANK, GREENVILLE ALABAMA 36037

2. Description of any changes to the credit agreement made as part of this reaffirmation agreement:

SIGNATURE(S):

Borrower:

_DOLORES V. VICHRA_
(Print Name)
_Delores V. Vichra_
(Signature)
Date: 10-24-06

Co-borrower, if also reaffirming these debts:

_____
(Print Name)
_____
(Signature)
Date:

Accepted by creditor:

BUTLER COUNTY BANK   WILLIAM S JOHNSON, PRESIDENT

(Print Name)
_William S. Johnson_
(Signature)
Date of creditor acceptance:

P. 7

## PART C: CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY).

*[Check each applicable box.]*

☑ I hereby certify that (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ *[If applicable and the creditor is not a Credit Union.]* A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

Printed Name of Debtor's Attorney: CARL Brandon Sellers III

Signature of Debtor's Attorney: Cal Brandon Sellers.

Date: 10\24\06

P. 8

# PART D: DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

1. I believe this reaffirmation agreement will not impose an undue hardship on my dependents or me. I can afford to make the payments on the reaffirmed debt because my monthly income (take home pay plus any other income received) is $            and my actual current monthly expenses including monthly payments on post-bankruptcy debt and other reaffirmation agreements total $            , leaving $            to make the required payments on this reaffirmed debt. I understand that if my income less my monthly expenses does not leave enough to make the payments, this reaffirmation agreement is presumed to be an undue hardship on me and must be reviewed by the court. However, this presumption may be overcome if I explain to the satisfaction of the court how I can afford to make the payments here:

2. *Either:* I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

— *Or* ---

*[If the creditor is a Credit Union and the debtor is represented by an attorney]* I believe this reaffirmation agreement is in my financial interest. I can afford to make the payments on the reaffirmed debt. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: _____
(Debtor)


(Joint Debtor, if any)
Date: 10-24-06

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

**PROOF OF CLAIM**

| Name of Debtor<br>Delons V. Victoria | Case Number<br>06-31225 |
|---|---|

**NOTE:** This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. §503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br>CAMDEN NATIONAL | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
|---|---|

Name and Address where notices should be sent:

CAMDEN NATIONAL
3 WATER STREET
Camden, AL 36726-2110

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

Telephone Number: 334-371-1000

THIS SPACE IS FOR COURT USE ONLY

| Account or other number by which creditor identifies debtor:<br>94581 | Check here if ☐ replaces<br>this claim ☐ amends a previously filed claim, dated:_____ |
|---|---|

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☒ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☐ Other _____

- ☐ Retiree benefits as defined in 11 U.S.C. §1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Last four digits of SS #: _____
  Unpaid compensation for services performed
  from _____ to _____
  (date)      (date)

**2. Date debt was incurred:**
03/28/2006

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:** $_____ (unsecured) __12,997.66__ (secured) _____ (priority) __12,997.66__ (Total)

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☒ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
- ☐ Real Estate ☐ Motor Vehicle
- ☒ Other _EQUIPMENT_

Value of Collateral: $ 20,000

Amount of arrearage and other charges at time case filed included in secured claim, if any: $ 0.00

**6. Unsecured Nonpriority Claim $_____**
☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim

Amount entitled to priority $_____
Specify the priority of the claim:
- ☐ Wages, salaries, or commissions (up to $10,950),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
- ☐ Contributions to an employee benefit plan - 11 U.S.C. §507(a)(4).
- ☐ Up to $ 2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
- ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
- ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
- ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(__).
*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. $10,000 and 180-day limits apply to cases filed on or after 4/20/05. Pub. L. 109-8.

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**10. Date-Stamped Copy:** Available via PACER

THIS SPACE IS FOR COURT USE ONLY

RECEIVED
JUL __ 2007
U.S. BANKRUPTCY COURT
MONTGOMERY, ALABAMA

| Date<br>7/9/07 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>*William S. Johnson*<br>WILLIAM S. JOHNSON, VICE PRESIDENT |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

032819

*CHARGE OFF*

SCANNED

| DOLORES V VICTORIA | | |
| P O BOX 810 | | |
| GREENVILLE AL 36037 | | |

BUTLER COUNTY BANK
281 G'VILLE BYPASS- P O BOX 190
GREENVILLE AL 36037

Loan Number _____ 94581
Date _____ 3/28/06
Maturity Date _____ 9/15/07
Loan Amount $ _____ 19,697.16
Renewal Of _____

**BORROWER'S NAME AND ADDRESS**
"I" includes each borrower above, jointly and severally.

**LENDER'S NAME AND ADDRESS**
"You" means the lender, its successors and assigns.

For value received, I promise to pay to you, or your order, at your address listed above the **PRINCIPAL** sum of _____
NINETEEN THOUSAND SIX HUNDRED NINETY SEVEN AND 16/100 ___ Dollars $ _____ 19,697.16

☒ **Single Advance:** I will receive all of this principal sum on ___ 3/28/06 ___. No additional advances are contemplated under this note.

☐ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____
_____ I will receive the amount of $ _____ and future principal advances are contemplated.
**Conditions:** The conditions for future advances are _____

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on _____

☒ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from ___ 3/28/06 ___ at the rate of ___ 9.000 %
per year until ___ paid in full ___.

☐ **Variable Rate:** This rate may then change as stated below.
  ☐ **Index Rate:** The future rate will be _____ the following index rate: _____

  ☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.
  ☐ **Frequency and Timing:** The rate on this note may change as often as _____
    A change in the interest rate will take effect _____
  ☐ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than
    _____ %. The rate may not change more than _____ % each _____
  **Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
  ☐ The amount of each scheduled payment will change.        ☐ The amount of the final payment will change.
  ☐ _____

**ACCRUAL METHOD:** Interest will be calculated on a ___ actual/365 ___ basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
  ☒ on the same fixed or variable rate basis in effect before maturity (as indicated above).
  ☐ at a rate equal to _____

☒ **LATE CHARGE:** If a payment is made more than ___ 10 ___ days after it is due, I agree to pay a late charge of ___ 5% of late
pmt with a min. of $10 and a max. of $100

☒ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☒ are ☐ are not included in the principal amount
above: PROCESSING FEE OF $100.00

**PAYMENTS:** I agree to pay this note as follows:
☐ **Interest:** I agree to pay accrued interest _____

☐ **Principal:** I agree to pay the principal _____

☒ **Installments:** I agree to pay this note in ___ 18 ___ payments. The first payment will be in the amount of $ ___ 1,170.32
and will be due ___ April 15, 2006 ___. A payment of $ ___ 1,170.32 ___ will be due on the 15th
day of each Month ___ thereafter. The final payment of the entire
unpaid balance of principal and interest will be due ___ September 15, 2007 ___.

**ADDITIONAL TERMS:**

☒ **SECURITY:** This note is separately secured by (describe separate document by type and date):
UCC-1
4/15/04
(This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.)

**DISPOSITION OF FUNDS**

| Deposited to Account Number | Check Number |
| Signature for Lender | |

WILLIAM S JOHNSON

PRESIDENT

**PURPOSE:** The purpose of this loan is _____
REFINANCE TO LOWER PAYMENTS

**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2).** I have received a copy on today's date.

**CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

_(signature)_ 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
DOLORES V VICTORIA

UNIVERSAL NOTE
Experts © 1984, 1991 Bankers Systems, Inc., St. Cloud, MN  Form UN-AL 3/4/2002

DOLORES V VICTORIA
P O BOX 810
GREENVILLE AL 36037

**PAID BY RENEWAL**

GREENVILLE AL 36037

| | |
|---|---|
| Loan Number | 88988 |
| Date | 10/15/04 |
| Maturity Date | 10/15/07 |
| Loan Amount $ | 33,100.00 |
| Renewal Of | |

**BORROWER'S NAME AND ADDRESS**
"I" includes each borrower above, jointly and severally.

**LENDER'S NAME AND ADDRESS**
"You" means the lender, its successors and assigns.

For value received, I promise to pay to you, or your order, at your address listed above the **PRINCIPAL** sum of _____
THIRTY THREE THOUSAND ONE HUNDRED AND NO/100 _____ Dollars $ _____ 33,100.00 _____

[X] **Single Advance:** I will receive all of this principal sum on __10/15/04__ . No additional advances are contemplated under this note.

[ ] **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____
_____ I will receive the amount of $ _____ and future principal advances are contemplated.
**Conditions:** The conditions for future advances are _____

[ ] **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on _____ .
[ ] **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from __10/15/04__ at the rate of __8.000__ %
per year until __paid in full__ .

[ ] **Variable Rate:** This rate may then change as stated below.
[ ] **Index Rate:** The future rate will be _____ the following index rate: _____

[ ] **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.
[ ] **Frequency and Timing:** The rate on this note may change as often as _____ .
A change in the interest rate will take effect _____
[ ] **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than _____ %. The rate may not change more than _____ % each _____ .
**Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
[ ] The amount of each scheduled payment will change.     [ ] The amount of the final payment will change.
[ ] _____

**ACCRUAL METHOD:** Interest will be calculated on a __actual/365__ basis.
**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
[X] on the same fixed or variable rate basis in effect before maturity (as indicated above).
[ ] at a rate equal to _____ .

[X] **LATE CHARGE:** If a payment is made more than __10__ days after it is due, I agree to pay a late charge of __5% of late__
__pmt with a min. of $10 and a max. of $100__

[X] **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which [X] are [ ] are not included in the principal amount
above: __PROCESSING FEE $100.00__

**PAYMENTS:** I agree to pay this note as follows:
[ ] **Interest:** I agree to pay accrued interest _____

[ ] **Principal:** I agree to pay the principal _____

[X] **Installments:** I agree to pay this note in __36__ payments. The first payment will be in the amount of $ __1,037.12__
and will be due __November 15, 2004__ . A payment of $ __1,037.12__ will be due __on the 15th__
__day of each Month__ thereafter. The final payment of the entire
unpaid balance of principal and interest will be due __October 15, 2007__ .

**ADDITIONAL TERMS:**
EQUIPMENT AS STATED ON EXHIBIT 'A' DR VICTORIA MEDICAL OFFICE AND EXHIBIT
'B' BARIATRIC MEDICINE

[X] **SECURITY:** This note is separately secured by (describe separate document by type and date):
UCC-1
4/15/04
(This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.)

**DISPOSITION OF FUNDS**

Deposited to Account Number _____     Check Number _____

Signature for Lender

WSJ

**PURPOSE:** The purpose of this loan is _____
__REN/CONVERTS TO MONTHLY PMTS/ORIG OPERATING__
**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2).** I have received a copy on today's date.

CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU <u>SIGN</u> IT.

_(signature)_     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

DOLORES V VICTORIA

UNIVERSAL NOTE
Experts © 1984, 1991 Bankers Systems, Inc., St. Cloud, MN  Form UN-AL  3/4/2002     *(page 1 of 2)*

DOLORES V VICTORIA
P O BOX 810
GREENVILLE AL 36037

BUTLER COUNTY BANK
281 G'VILLE BYPASS-P O BOX 190
GREENVILLE AL 36037

| | |
|---|---|
| Loan Number | 87051 |
| Date | 7/15/04 |
| Maturity Date | 10/15/04 |
| Loan Amount $ | 33,100.47 |
| Renewal Of | 87051 |

**BORROWER'S NAME AND ADDRESS**
"I" includes each borrower above, jointly and severally.

**LENDER'S NAME AND ADDRESS**
"You" means the lender, its successors and assigns.

For value received, I promise to pay to you, or your order, at your address listed above the **PRINCIPAL** sum of

THIRTY THREE THOUSAND ONE HUNDRED AND 47/100 _____ Dollars $ ____ 33,100.47

☒ **Single Advance:** I will receive all of this principal sum on __7/15/04__. No additional advances are contemplated under this note.

☐ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____ I will receive the amount of $ _____ and future principal advances are contemplated.

**Conditions:** The conditions for future advances are _____

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on _____.

☐ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from __7/15/04__ at the rate of __8.250__ % per year until __paid in full__.

☐ **Variable Rate:** This rate may then change as stated below.

   ☐ **Index Rate:** The future rate will be _____ the following index rate: _____

   ☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.

   ☐ **Frequency and Timing:** The rate on this note may change as often as _____
   A change in the interest rate will take effect _____

   ☐ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than _____ %. The rate may not change more than _____ % each _____

**Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
   ☐ The amount of each scheduled payment will change.   ☐ The amount of the final payment will change.
   ☐ _____

**ACCRUAL METHOD:** Interest will be calculated on a __actual/365__ basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
   ☒ on the same fixed or variable rate basis in effect before maturity (as indicated above).
   ☐ at a rate equal to _____

☒ **LATE CHARGE:** If a payment is made more than __10__ days after it is due, I agree to pay a late charge of __5% of late pmt with a min. of $10 and a max. of $100__

☒ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☒ are ☐ are not included in the principal amount above: __PROCESSING FEE $100.00__

**PAYMENTS:** I agree to pay this note as follows:
☒ **Interest:** I agree to pay accrued interest __with the principal__

☒ **Principal:** I agree to pay the principal __on demand, but if no demand is made then on 10/15/04.__

☐ **Installments:** I agree to pay this note in _____ payments. The first payment will be in the amount of $ _____ and will be due _____. A payment of $ _____ will be due _____ thereafter. The final payment of the entire unpaid balance of principal and interest will be due _____

**ADDITIONAL TERMS:**

☒ **SECURITY:** This note is separately secured by (describe separate document by type and date):

UCC-1
4/15/04

(This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.)

**DISPOSITION OF FUNDS**

Deposited to Account Number _____   Check Number _____

Signature for Lender _____

WSJ

**PURPOSE:** The purpose of this loan is _____
RENEWAL ORIGINALLY FOR OPERATING CAPITAL

**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2).** I have received a copy on today's date.

CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU <u>SIGN</u> IT.

_____ 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
DOLORES V VICTORIA

UNIVERSAL NOTE
Express © 1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN-AL 3/4/2002

*(page 1 of 2)*

DOLORES V VICTORIA
P O BOX 810
GREENVILLE AL 36037

BUTLER COUNTY BANK
281 G'VILLE BYPASS-P O BOX 190
GREENVILLE AL 36037

| | |
|---|---|
| Loan Number | 87051 |
| Date | 4/15/04 |
| Maturity Date | 7/15/04 |
| Loan Amount $ | 35,120.00 |
| Renewal Of | |

**BORROWER'S NAME AND ADDRESS**
"I" includes each borrower above, jointly and severally.

**PAID BY RENEWAL**

For value received, I promise to pay to you, or your order, at your address listed above the **PRINCIPAL** sum of
THIRTY FIVE THOUSAND ONE HUNDRED TWENTY AND NO/100 _____ Dollars $ _____ 35,120.00

☒ **Single Advance:** I will receive all of this principal sum on ___4/15/04___ . No additional advances are contemplated under this note.
☐ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____
_____ I will receive the amount of $ _____ and future principal advances are contemplated.
  **Conditions:** The conditions for future advances are _____
  _____
  _____
☐ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to
  all other conditions and expires on _____
☐ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).
**INTEREST:** I agree to pay interest on the outstanding principal balance from ___4/15/04___ at the rate of ___8.000__ %
per year until ___paid in full___
☐ **Variable Rate:** This rate may then change as stated below.
  ☐ **Index Rate:** The future rate will be _____ the following index rate: _____
  _____
  _____
  ☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.
  ☐ **Frequency and Timing:** The rate on this note may change as often as _____
    A change in the interest rate will take effect _____
  ☐ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than
    _____ %. The rate may not change more than _____ % each _____
  **Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
  ☐ The amount of each scheduled payment will change.      ☐ The amount of the final payment will change.
  ☐ _____
**ACCRUAL METHOD:** Interest will be calculated on a ___actual/365___ basis.
**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
  ☒ on the same fixed or variable rate basis in effect before maturity (as indicated above).
  ☐ at a rate equal to _____
☒ **LATE CHARGE:** If a payment is made more than ___10___ days after it is due, I agree to pay a late charge of ___5% of late___
    pmt with a min. of $10 and a max. of $100
☒ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☒ are ☐ are not included in the principal amount
  above: __INTEREST SURCHARGE $100 AND UCC $20__
**PAYMENTS:** I agree to pay this note as follows:
☒ **Interest:** I agree to pay accrued interest ___with the principal___

☒ **Principal:** I agree to pay the principal ___on demand, but if no demand is made then___
    on 7/15/04.
☐ **Installments:** I agree to pay this note in _____ payments. The first payment will be in the amount of $ _____
  and will be due _____ . A payment of $ _____ will be due _____
  _____ thereafter. The final payment of the entire
  unpaid balance of principal and interest will be due _____
**ADDITIONAL TERMS:**
    TWO MONTHLY PAYMENTS OF $1100 EACH DUE MAY 15, 2004 AND JUNE 15, 2004.
    BALANCE OF LOAN TO BE DUE JULY 15, 2004.

☒ **SECURITY:** This note is separately secured by (describe separate document by type and date):
UCC
4/15/04
(This section is for our internal use. Failure to list a separate security document does not mean the agreement will not secure this note.)

**PURPOSE:** The purpose of this loan is _____
__OPERATING CAPITAL__
**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2).** I have received a copy on today's date.

CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU SIGN IT.

**DISPOSITION OF FUNDS**

Deposited to Account Number _____ Check Number _____
Signature for Lender

_____ 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
DOLORES V VICTORIA

WSJ

UNIVERSAL NOTE
Express © 1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN-AL 3/4/2002                    (page 1 of 2)

SCANNED

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

```
BUTLER COUNTY BANK
281 G'VILLE BYPASS-P O BOX 190
GREENVILLE AL 36037
```

Alabama
Sec. Of State
B 04-0323200 FS
Date 4/23/2004 17:00
Time 3 Pg
040427

File $20.00
ExPg $2.00
Ackn $.00
Form $.00
Total $22.00
04/029

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| VICTORIA | DOLORES | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P O BOX 810 | GREENVILLE | AL | 36037 0000 | |

| 1d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| 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 | | | | ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | 00000 0000 | |

| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| BUTLER COUNTY BANK | | | |

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 281 G'VILLE BYPASS-P O BOX 190 | Camden | AL | 36726 | USA |

**4.** This FINANCING STATEMENT covers the following collateral:

EQUIPMENT AS STATED ON EXHIBIT 'A' DR VICTORIA MEDICAL OFFICE AND EXHIBIT 'B' BARIATRIC MEDICINE

loan # 87051

**5. ALTERNATIVE DESIGNATION [if applicable]:** ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

**6.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum    [if applicable] **7. Check to REQUEST SEARCH REPORT(S) on Debtor(s)** [ADDITIONAL FEE]    [optional] ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

**8. OPTIONAL FILER REFERENCE DATA**

Bankers Systems, Inc., St. Cloud, MN Form UCC-1-LAZ 5/30/2001

ACKNOWLEDGMENT COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

*Submitted by Dolores Virtue* 4-18-4

‡ *may include the collateral 2*

(Bariatric Medicine Assets
1/ 8/99 Through 1/ 8/99)

**E X H I B I T   B**

ALABAMA-2002 Victoria
1/ 2/95

Page

| Date | Num | Description | Memo | Category | Clr | Amount |
|------|-----|-------------|------|----------|-----|--------|
| | | INCOME/EXPENSE | | | | |
| | | INCOME | | | | |
| | | Income - Other | | | | |
| 1/ 8 | | Furnitures | Reception Rm | | | 3,500.00 |
| 1/ 8 | | Furnitures | Business offic | | | 2,500.00 |
| 1/ 8 | | Copier,Fax etc | 2 computers | | | 2,500.00 |
| 1/ 8 | | 2 Exam room | Equipment/furn | | | 2,100.00 |
| 1/ 8 | | Microdermabrasion | and supplies | | | 17,000.00 |
| 1/ 8 | | Gym and exercise | Equipments | | | 3,500.00 |
| 1/ 8 | | BP machines,etc | Weighing scale | | | 1,500.00 |
| 1/ 8 | | Paintings-decors | | | | 2,100.00 |
| | | | | | | ---------- |
| | | Total Income - Other | | | | 34,700.00 |
| | | | | | | ---------- |
| | | TOTAL INCOME | | | | 34,700.00 |
| | | | | | | ---------- |
| | | TOTAL INCOME/EXPENSE | | | | 34,700.00 |
| | | | | | | ========== |

SIGNED BY:  **DOLORES VICTORIA**

4-18-4

DATE

```
//UG                                 Loan Inquiry      Page 1 of 7     14:51:57
· DOLORES V VICTORIA                   CIF number......        V000733 0
###BANKRUPTCY-DO NOT MAIL###          Home phone no...   (334) 383-9151
P O BOX 810                           Business phone..   (334) 382-8442
GREENVILLE AL  36037                  Tax ID number...     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
                                      Type.... SI  SIMPLE INSTALLMENTS
                                      Account number..          94581
PAST DUE!   Charge off  Messages  Multiple Addresses       1 of 1

Original loan amt       19,697.16
Current balance         12,997.66    Officer/collection off.   WSJ WSJ
Accrued interest              .00    Original loan date       3/28/06
Late charges due                     Loan term                   18 M
                                     Maturity date            9/15/07
Current payoff          12,997.66
Payoff is good thru      2/02/07     Last payment date       11/01/06
Payoff w/ sec acc       13,500.82    Next payment due date   10/15/06
                                     Amt partially paid         585.36
Interest base           365/365      Amount past due          9,947.52
Interest rate            9.0000      Payment amount           1,170.32
Per diem                 3.20490     Payment type     Interest included
                                     Payment frequency            1 M
         F3=Exit  F12=Previous  F4,F5=History  F6=Messages  F7=Addresses    More...
   F8=Maintenance  F9=Relationships  F10=Pmt sched  F11=Escrow  F24=More keys
```

FORM B10 (Official Form 10) (04/07)

| UNITED STATES BANKRUPTCY COURT<br>MIDDLE DISTRICT OF ALABAMA | PROOF OF CLAIM |
|---|---|

| | |
|---|---|
| Name of Debtor<br>Deloris V. Victoria | Case Number<br>06-31225 |

**NOTE:** This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. §503.

| | |
|---|---|
| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br>CAMDEN NATIONAL | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
| Name and Address where notices should be sent:<br><br>CAMDEN NATIONAL<br>3 WATER STREET<br>Camden, AL 36726-2110 | ☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>☐ Check box if the address differs from the address on the envelope sent to you by the court. |
| Telephone Number:  334-371-1000 | THIS SPACE IS FOR COURT USE ONLY |

| Account or other number by which creditor identifies debtor:<br>92095 | Check here if ☐ replaces<br>this claim ☐ amends    a previously filed claim, dated:_____ |
|---|---|

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☒ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☐ Other _____

- ☐ Retiree benefits as defined in 11 U.S.C. §1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Last four digits of SS #: _____
  Unpaid compensation for services performed
  from _____ to _____
       (date)         (date)

**2. Date debt was incurred:**
09/02/2005

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:**    $_____  3639.49  _____  3639.49
(unsecured)    (secured)    (priority)    (Total)

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☒ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☐ Real Estate  ☐ Motor Vehicle
☒ Other CERTIFICATE OF DEPOSIT

Value of Collateral:  $  2659.06

Amount of arrearage and other charges at time case filed included in secured claim, if any: $ 84.49

**6. Unsecured Nonpriority Claim** $_____
☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim

Amount entitled to priority $_____
Specify the priority of the claim:
☐ Wages, salaries, or commissions (up to $10,950),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
☐ Contributions to an employee benefit plan - 11 U.S.C. §507(a)(4).
☐ Up to $ 2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507(a)(6).
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(__).
*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. $10,000 and 180-day limits apply to cases filed on or after 4/20/05.  Pub. L. 109-8.

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.
**9. Supporting Documents:**    Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.
**10. Date-Stamped Copy:**  Available via PACER

THIS SPACE IS FOR COURT USE ONLY

| Date<br>7/9/07 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>William S. Johnson  VICE<br>WILLIAM S. JOHNSON  PRESIDENT |
|---|---|

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

032819

| | | |
|---|---|---|
| DOLORES V VICTORIA<br>P O BOX 810<br>GREENVILLE AL 36037 | BUTLER COUNTY BANK<br>281 G'VILLE BYPASS-P O BOX 190<br>GREENVILLE AL 36037 | Loan Number _____ 92095<br>Date _____ 9/02/05<br>Maturity Date _____ 9/02/06<br>Loan Amount $ _____ 3,565.00<br>Renewal Of _____ |
| **BORROWER'S NAME AND ADDRESS**<br>"I" includes each borrower above, jointly and severally. | **LENDER'S NAME AND ADDRESS**<br>"You" means the lender, its successors and assigns. | |

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of _____
THREE THOUSAND FIVE HUNDRED SIXTY FIVE AND NO/100 _____ Dollars $ _____ 3,565.00

☐ **Single Advance:** I will receive all of this principal sum on _____. No additional advances are contemplated under this note.

☒ **Multiple Advance:** The principal sum shown above is the maximum sum of principal I can borrow under this note. On _____ 9/02/05 _____
I will receive the amount of $ _____ and future principal advances are contemplated.
Conditions: The conditions for future advances are _____ UPON REQUEST FROM BORROWER _____

☒ **Open End Credit:** You and I agree that I may borrow up to the maximum principal sum more than one time. This feature is subject to all other
conditions and expires on _____ 9/02/06 _____.

☐ **Closed End Credit:** You and I agree that I may borrow (subject to all other conditions) up to the maximum principal sum only one time.

**INTEREST:** I agree to pay interest on the outstanding principal balance from _____ 9/02/05 _____ at the rate of _____ 5.750 %
per year until _____ paid in full _____.

☐ **Variable Rate:** This rate may then change as stated below.
  ☐ **Index Rate:** The future rate will be _____ the following index rate: _____

  ☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.
  ☐ **Frequency and Timing:** The rate on this note may change as often as _____
    A change in the interest rate will take effect _____
  ☐ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than
    _____ %. The rate may not change more than _____ % each _____.
  **Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
  ☐ The amount of each scheduled payment will change.    ☐ The amount of the final payment will change.
  ☐ _____

**ACCRUAL METHOD:** Interest will be calculated on a _____ actual/365 _____ basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
☒ on the same fixed or variable rate basis in effect before maturity (as indicated above).
☐ at a rate equal to _____

☒ **LATE CHARGE:** If a payment is made more than _____ 10 _____ days after it is due, I agree to pay a late charge of _____ 5% of late
pmt with a min. of $10 and a max. of $100

☒ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☒ are ☐ are not included in the principal amount
above: _____ PROCESSING FEE $65.00 _____

**PAYMENTS:** I agree to pay this note as follows:
☒ **Interest:** I agree to pay accrued interest _____ on the 2nd day of each quarter beginning
_____ 12/02/05 _____
☒ **Principal:** I agree to pay the principal _____ on demand, but if no demand is made then
on 9/02/06.

☐ **Installments:** I agree to pay this note in _____ payments. The first payment will be in the amount of $ _____
and will be due _____. A payment of $ _____ will be due _____
_____ thereafter. The final payment of the entire
unpaid balance of principal and interest will be due _____

**PURPOSE:** The purpose of this loan is _____ OPERATING EXP OF MEDICAL CLINIC _____
**ADDITIONAL TERMS:**

**SECURITY**

**SECURITY INTEREST:** I give you a security interest in all of the Property described below that I own or have sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products of the Property. "Property" includes all parts, accessories, repairs, replacements, improvements, and accessions to the Property; any original evidence of title or ownership; and all obligations that support the payment or performance of the Property. "Proceeds" includes anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property.

☐ **Accounts and Other Rights to Payment:** All rights to payment, whether or not earned by performance, including, but not limited to, payment for property or services sold, leased, rented, licensed, or assigned. This includes any rights and interests (including all liens) which I have by law or agreement against any account debtor or obligor.

☐ **Inventory:** All inventory held for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in my business.

☐ **Equipment:** All equipment including, but not limited to, machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and record keeping equipment, parts, and tools. The Property includes any equipment described in a list or schedule I give to you, but such a list is not necessary to create a valid security interest in all of my equipment.

☐ **Instruments and Chattel Paper:** All instruments, including negotiable instruments and promissory notes and any other writings or records that evidence the right to payment of a monetary obligation, and tangible and electronic chattel paper.

☐ **General Intangibles:** All general intangibles including, but not limited to, tax refunds, patents and applications for patents, copyrights, trademarks, trade secrets, goodwill, trade names, customer lists, permits and franchises, payment intangibles, computer programs and all supporting information provided in connection with a transaction relating to computer programs, and the right to use my name.

☐ **Documents:** All documents of title including, but not limited to, bills of lading, dock warrants and receipts, and warehouse receipts.

☐ **Farm Products and Supplies:** All farm products including, but not limited to, all poultry and livestock and their young, along with their produce, products, and replacements; all crops, annual or perennial, and all products of the crops; and all feed, seed, fertilizer, medicines, and other supplies used or produced in my farming operations.

☐ **Government Payments and Programs:** All payments, accounts, general intangibles, and benefits including, but not limited to, payments in kind, deficiency payments, letters of entitlement, warehouse receipts, storage payments, emergency assistance and diversion payments, production flexibility contracts, and conservation reserve payments under any preexisting, current, or future federal or state government program.

☐ **Investment Property:** All investment property including, but not limited to, certificated securities, uncertificated securities, securities entitlements, securities accounts, commodity contracts, commodity accounts, and financial assets.

☐ **Deposit Accounts:** All deposit accounts including, but not limited to, demand, time, savings, passbook, and similar accounts.

☒ **Specific Property Description:** The Property includes, but is not limited by, the following:
CERTIFICATE OF DEPOSIT #19922

If applicable, enter real estate description and record owner information: _____

_____

_____

The Property will be used for a  ☐ personal ☒ business ☐ agricultural ☐ _____ purpose.
Borrower/Owner State of organization/registration (if applicable) _____

**ADDITIONAL TERMS OF THE SECURITY AGREEMENT**

**GENERALLY** - This agreement secures this note and any other debt I have with you, now or later. It will not secure other debts if I fail to make any required disclosure about this security agreement or if I fail to give any required notice of the right of rescission. If property described in this agreement is located in another state, this agreement may also, in some circumstances, be governed by the law of the state in which the Property is located.

**NAME AND LOCATION** - My name indicated on page 1 is my exact legal name. If I am an individual, my address is my principal residence. If I am not an individual, my address is the location of my chief executive offices or sole place of business. If I am an entity organized and registered under state law, my address is located in the state in which I am registered, unless otherwise indicated on page 2. I will provide verification of registration and location upon your request. I will provide you with at least 30 days notice prior to any change in my name, address, or state of organization or registration.

**OWNERSHIP AND DUTIES TOWARD PROPERTY** - I represent that I own all of the Property, or to the extent this is a purchase money security interest I will acquire ownership of the Property with the proceeds of the loan. I will defend it against any other claim. Your claim to the Property is ahead of the claims of any other creditor. I agree to do whatever you require to protect your security interest and to keep my claim in the Property ahead of the claims of other creditors. I will not do anything to harm your position. I will not use the Property for a purpose that will violate any laws or subject the Property to forfeiture or seizure.

I will keep books, records and accounts about the Property and my business in general. I will let you examine these records at any reasonable time. I will prepare any report or accounting you request, which deals with the Property.

I will keep the Property in my possession and will keep it in good repair and use it only for the purpose(s) described on page 1 of this agreement. I will not change this specified use without your express written permission. I represent that I am the original owner of the Property and, if I am not, that I have provided you with a list of prior owners of the Property.

I will keep the Property at my address listed on page 1 of this agreement, unless we agree I may keep it at another location. If the Property is to be used in another state, I will give you a list of those states. I will not try to sell the Property unless it is inventory or I receive your written permission to do so. If I sell the Property I will have the payment made payable to the order of you and me.

You may demand immediate payment of the debt(s) if the debtor is not a natural person and without your prior written consent; (1) a beneficial interest in the debtor is sold or transferred, or; (2) there is a change in either the identity or number of members of a partnership, or; (3) there is a change in ownership of more than 25 percent of the voting stock of a corporation.

I will pay all taxes and charges on the Property as they become due. You have the right of reasonable access in order to inspect the Property. I will immediately inform you of any loss or damage to the Property.

If I fail to perform any of my duties under this security agreement, or any mortgage, deed of trust, lien or other security interest, you may without notice to me perform the duties or cause them to be performed. Your right to perform for me shall not create an obligation to perform and your failure to perform will not preclude you from exercising any of your other rights under the law or this security agreement.

**PURCHASE MONEY SECURITY INTEREST** - For the sole purpose of determining the extent of a purchase money security interest arising under this security agreement: (a) payments on any nonpurchase money loan also secured by this agreement will not be deemed to apply to the Purchase Money Loan, and (b) payments on the Purchase Money Loan will be deemed to apply first to the nonpurchase money portion of the loan, if any, and then to the purchase money obligations in the order of which the items of collateral were acquired or if acquired at the same time, in the order selected by you. No security interest will be terminated by application of this formula. "Purchase Money Loan" means any loan the proceeds of which, in whole or in part, are used to acquire any collateral securing the loan and all extensions, renewals, consolidations and refinancing of such loan.

**PAYMENTS BY LENDER** - You are authorized to pay, on my behalf, charges I am or may become obligated to pay to preserve or protect the secured property (such as property insurance premiums). You may treat those payments as advances and add them to the unpaid principal under the note secured by this agreement or you may demand immediate payment of the amount advanced.

**INSURANCE** - I agree to buy insurance on the Property against the risks and for the amounts you require and to furnish you continuing proof of coverage. I will have the insurance company name you as loss payee on any such policy. You may require added security if you agree that buy insurance from a firm licensed to do business in the state where you are located. The firm will be reasonably acceptable to you. The insurance will last until the Property is released from this agreement. If I fail to buy or maintain the insurance (or fail to name you as loss payee) you may purchase it yourself.

**WARRANTIES AND REPRESENTATIONS** - If this agreement includes accounts, I will not settle any account for less than its full value without your written permission. I will collect all accounts until you tell me otherwise. I will keep the proceeds from all the accounts and any goods which are returned to me or which I take back in trust for you. I will not mix them with any other property of mine. I will deliver them to you at your request. If you ask me to pay you the full price on any returned items or items retaken by myself, I will do so. You may exercise my rights with respect to obligations of any account debtors, or other persons obligated on the Property, to pay or perform, and you may enforce any security interest that secures such obligations.

If this agreement covers inventory, I will not dispose of it except in my ordinary course of business at the fair market value for the Property, or at a minimum price established between you and me.

Any person who signs within this box does so to give you a security interest in the Property described on this page. This person does not promise to pay the note. "I" as used in this security agreement will include the borrower and any person who signs within this box.

Date _____

Signed _____

Exp̲e̲r̲e̲s̲s̲ © 1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UNS-LAZ-AL 2/9/2001                                                    (page 2 of 3)

If this agreement covers farm products I will provide you, at your request, a written list of the buyers, commission merchants or selling agents to or through whom I may sell my farm products. In addition to those parties named on this written list, I authorize you to notify at your sole discretion any additional parties regarding your security interest in my farm products. I remain subject to all applicable penalties for selling my farm products in violation of my agreement with you and the Food Security Act. In this paragraph the terms farm products, buyers, commission merchants and selling agents have the meanings given to them in the Federal Food Security Act of 1985.

If this agreement covers chattel paper or instruments, either as original collateral or proceeds of the Property, I will note your interest on the face of the chattel paper or instruments.

**REMEDIES** - I will be in default on this security agreement if I am in default on any note this agreement secures or if I fail to keep any promise contained in the terms of this agreement. If I default, you have all of the rights and remedies provided in the note and under the Uniform Commercial Code. You may require me to make the secured property available to you at a place which is reasonably convenient. You may take possession of the secured property and sell it as provided by law. The proceeds will be applied first, to your expenses and then to the debt. I agree that 10 days written notice sent to my last known address by first class mail will be reasonable notice under the Uniform Commercial Code. My current address is on page 1.

**PERFECTION OF SECURITY INTEREST** - I authorize you to file a financing statement covering the Property. I will comply with, facilitate, and otherwise assist you in connection with obtaining possession of or control over the Property for purposes of perfecting your security interest under the Uniform Commercial Code.

## ADDITIONAL TERMS OF THE NOTE

**DEFINITIONS** - As used on pages 1 and 2, "□" means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person of legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW** - The law of the state of Alabama will govern this agreement. Any term of this agreement which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this note or any agreement securing this note is effective unless the modification is in writing and signed by you and me. Time is of the essence in this agreement.

**PAYMENTS** - Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

**INTEREST** - Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, and each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal sum outstanding at that time. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to in this note (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE** - The index will serve only as a device for setting the interest rate on this note. You do not guarantee by selecting this index, or the margin, that the interest rate on this note will be the same rate you charge on any other loans or class of loans you make to me or other borrowers.

**POST MATURITY RATE** - For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier.

**SINGLE ADVANCE LOANS** - If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other advances to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph on page 2.

**MULTIPLE ADVANCE LOANS** - If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.

**SET-OFF** - I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:
(1) any deposit account balance I have with you;
(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and
(3) any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right to set-off.

**DEFAULT** - I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the Property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**REMEDIES** - If I am in default on this note you have, but are not limited to, the following remedies.
(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued unpaid charges).
(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "SET-OFF" paragraph herein.
(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.
(4) You may refuse to make advances to me or allow purchases on credit by me.
(5) You may use any remedy you have under state or federal law.
(6) You may make use of any remedy given to you in any agreement securing this note.

By selecting any one or more of these remedies you do not give up your right to use later any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to consider later the event a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEY'S FEES** - I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**WAIVER** - I give up my rights to require you to do certain things. I will not require you to:
(1) demand payment of amounts due (presentment);
(2) obtain official certification of nonpayment (protest); or
(3) give notice that amounts due have not been paid (notice of dishonor).

I waive any defenses I have based on suretyship or impairment of collateral. To the extent permitted by law, I also waive all personal property exemptions in the property securing this loan.

**OBLIGATIONS INDEPENDENT** - I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this note or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this agreement without your prior written approval.

**FINANCIAL INFORMATION** - I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGES 1 AND 2). I have received a copy on today's date.**

Caution - IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU SIGN IT.

_Dolore Victoria_      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

DOLORES V. VICTORIA

DISPOSITION OF FUNDS

| Deposited to Account Number | Check Number |
| --- | --- |
| | |

SIGNATURE FOR LENDER

Exꝑeres © 1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UNS-LAZ-AL 2/9/2001

DOLORES V VICTORIA
P O BOX 810
GREENVILLE AL 36037

**Account holder's name and address:** "I" means the account holder named above. If there is more than one, "I" means all account holders jointly and each account holder separately.

BUTLER COUNTY BANK
281 G'VILLE BYPASS-P SCANNED
GREENVILLE AL 36037

**Secured party's name and address:** "You" means the secured party named above, your successors and assigns.

Date:   3/28/06

**Assignment of deposit or share account:** For value received, I assign and transfer to you, and I give you a security interest in the following account(s):

CERTIFICATE OF DEPOSIT #20303
DATED 03/28/2006

and any renewals or substitutions. These account(s) will be referred to as the **collateral** in the rest of this agreement. The collateral is held with:

BUTLER COUNTY BANK

which will be referred to as the **depository** in the rest of this agreement. The collateral includes all funds now in the accounts listed plus all additions of any kind and from any source, made at any time before the release of this agreement in writing.

**Secured debt(s):** This agreement is made to secure the payment of:

☐ **all present and future debts,** of every kind and description which:

may now or hereafter owe to you, no matter how or when these debts arise. (We intend this paragraph to be very broad. For example, "debts" include loans or credit purchases, made by or transferred to you, as well as debts arising from any other relationship such as check overdrafts, forgeries, or returned deposits. These also include debts arising from any capacity (maker, co-maker, endorser, surety, guarantor).) If more than one person or entity is listed, then all joint and separate debts of all those listed are secured.

☒ **the following described debt(s),** plus all extensions, renewals, modifications and substitutions:

PROMISSORY NOTE 9-2-05 IN THE PRINCIPAL
AMOUNT OF $3500.00
LOAN NUMBER 92095

**Additional terms:** The following terms are also part of this agreement:

(1) This agreement will last until you release it in writing, and you are not required to release it until the secured debts are paid in full.

(2) While this agreement is in effect, neither I nor anyone else (except you, the secured party) can withdraw all or any part of the collateral.

(3) No joint owner, beneficiary, surviving spouse or representative of my estate gets any rights in the collateral in the event of my death or incapacity until the secured debts are paid in full.

(4) You have the right to withdraw all or any part of the collateral and apply the withdrawal toward the payment of the secured debt(s), even if the withdrawal causes a penalty. If a secured debt is in default you can exercise this right without any notice to me or my consent (unless such notice or consent is required by law and cannot be waived). You have the right to sign my name (or sign your name as my attorney in fact) to exercise the rights given to you in this agreement.

(5) I represent and promise that no other person or entity has any rights in the collateral that have priority over those I am giving you here and that no part of the collateral is exempt or protected by law from this agreement.

(6) The rights and remedies I am giving you here are in addition to any stated in any other agreements. If there is more than one debt secured, more than one type of collateral (including collateral outside of this agreement) or more than one debtor liable, it is entirely in your discretion as to the order and timing of remedies you select.

(7) I neither assume nor am excused from personal liability for any of the secured debts merely by making this agreement; my personal liability will be determined by referring to other documents. I do assume personal liability for the warranties and representations made in this agreement.

(8) A debt secured by this agreement (whether specifically listed or not) includes all sums that could possibly be due under the debt.

(9) I specifically request and direct the depository to honor and accept this agreement and its terms.

**Signature(s) of account holder(s):** By signing here we accept the terms of this agreement and acknowledge receipt of a copy.

_Adims Victere_

---
---

**Notice to depository:**

Date:   3/28/06

To:
BUTLER COUNTY BANK

☐ This confirms our oral notice dated:

Please take notice of this agreement. Please confirm your receipt of this notice and your acceptance of its terms by completing the acknowledgement portion and returning a copy to the secured party.

By:

_signature_
For the secured party

**Acknowledgement by the depository:**

Date:

To:

We have received your notice of this agreement. We agree that no account holder or any other person (other than you, the secured party) has any right to make any withdrawals from the collateral until this agreement is released in writing by you.

By:

_Kirkland_
For the depository

**Release by secured party:**

Date:

To:

This is to advise you that the assignment and security interest in the collateral described above has been released and the original certificate, or passbook or other evidence of the collateral (if any) has been returned to the account holder(s).

By:

For the secured party

© 1989 BANKERS SYSTEMS, INC., ST. CLOUD, MN 56302   (1-800-397-2341)   FORM M-160   8/17/89

*(page 1 of 1)*