IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Bankruptcy Case No. 06-31225 |
| DELORIS V. VICTORIA, ) | |
| ) | |
| Debtor. ) | |
| ) | |
| DELORIS V. VICTORIA, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | Case No. 2:07-cv-0688-WKW [wo] |
| ) | |
| GREENVILLE HOSPITAL ) | |
| CORPORATION, ) | |
| ) | |
| Appellee. ) | |

## MEMORANDUM OPINION AND ORDER

Deloris V. Victoria ("Victoria") appeals the bankruptcy court's order granting Greenville Hospital Corporation's ("Hospital") motion to dismiss her Chapter Seven bankruptcy petition for abuse under 11 U.S.C. § 707. After carefully reviewing the submissions of the parties, the court finds that the bankruptcy court's order is due to be affirmed.

### I. PROCEDURAL HISTORY

Victoria filed Chapter 7 bankruptcy on September 25, 2006. (Doc. # 2-3.) On April 20, 2007, the Hospital filed a motion to dismiss Victoria's case for abuse pursuant to 11 U.S.C. §§ 707(a) and (b). (Bankr. Doc. # 53.) Just before the bankruptcy court conducted a hearing on May 8, 2007, to take up the motion to dismiss, Victoria filed her response brief,

(Bankr. Doc. # 65), and later that day the Internal Revenue Service ("IRS") filed a proof of claim (Doc. # 13-2). On the next day, Victoria filed a supplemental response (Bankr. Doc. # 66) to the motion to dismiss and the Hospital filed a reply brief (Doc. # 3-8; Bankr. Doc. # 68). On June 26, 2007, the bankruptcy court conducted a telephone conference, orally adopted the reasoning of the Hospital's reply brief (Bankr. Doc. # 68), and told the parties the motion to dismiss would be granted. (Doc. # 3-13.) The bankruptcy court issued an order the next day granting the Hospital's motion to dismiss. (Doc. # 3-11.) Although the bankruptcy court's order does not specify whether the motion was granted pursuant to § 707(a) or § 707(b), it is clear from the telephone conference transcript of June 26, 2007, and the points addressed in the Hospital's reply brief as adopted by the bankruptcy court, that the motion was granted on the basis of § 707(b).[1] Victoria filed her notice of appeal (Bankr. Doc. # 72) which the court will now consider.

## II. FACTS

At the time of her bankruptcy petition, Victoria and her husband were doctors practicing medicine in Butler County, Alabama. Based on her schedules, they each had gross monthly incomes of $15,000 and $20,000 per month, respectively. (Appellee's Br. 10.) After subtracting expenses, Victoria's undisputed monthly disposable income was $1,890.00. (*Id.*)

---

[1] The bankruptcy judge specifically found "the presumption of abuse then arises under 707(b)." (Mot. Hr'g Tr. 4:8, June 26, 2007.) The Hospital's reply brief only addresses § 707(b) issues. (Bankr. Doc. # 68.)

The parties dispute the amount of her consumer debt, although the difference is relatively minor. Victoria claims that her consumer debt, which consists only of a mortgage to which she is jointly liable with her husband, is only $285,170.31. (Appellant's Br. 9.) This is based on a reaffirmation agreement in this amount which was executed on October 19, 2006, a little less than a month after she filed for bankruptcy. (Doc. # 10-9.) The Hospital argues the correct amount is $290,000.00, which is based on the amount listed in her initial schedules. (Appellee's Br. 19.)

The following non-consumer debts are undisputed[2] by the parties:

| UNDISPUTED NON-CONSUMER DEBT | |
|---|---|
| Description | Amount |
| Line of credit to Camden National Bank | $2,545.00 |
| Disputed debt to Camden National Bank | $1.00 |
| Loan debt to Camden National Bank | $680.00 |
| Collection account with CenturyTel | $558.00 |
| Debt to Genezen HealthCare | $17,282.19 |
| Judgment to the Hospital | $165,140.00 |
| Line of credit to Whitney Bank | $5,483.00 |
| Victoria's portion of the IRS proof of claim | $70,457.84 |
| **TOTAL** | **$262,147.03** |

These undisputed amounts were adopted by the bankruptcy court as its finding of Victoria's

---

[2] The Hospital includes all of these amounts in the chart found in its bankruptcy court reply brief. (*See* Doc. # 3-8, at 3.) It confirms these amounts are undisputed in its appellate brief to this court. (*See* Appellee's Br. 20-21.)

total amount of non-consumer debt. Because this amount was less than her consumer debt, Victoria was subject to the means test of 11 U.S.C. § 707(b)(2). Victoria argues this was in error because the court's finding of non-consumer debt omits four significant amounts:

| DISPUTED NON-CONSUMER DEBT | |
|---|---|
| **Description** | **Amount** |
| Reaffirmation agreement for office equipment | $19,029.83 |
| Remainder of hospital lease | $19,687.50 |
| MBNA credit card for taxes | $77,000.00 |
| Bariatric Associates portion of IRS claim | $38,967.36 |
| **TOTAL** | **$154,684.69** |

Victoria states the reaffirmation agreement is for debt to Butler County Bank in the amount of $19,029.83 for two loans used to purchase office equipment. (Appellant's Br. 13; *see also* Doc. # 10-10.) The reaffirmation agreement was executed October 24, 2006. (*See* Doc. # 10-10.) While the Hospital points to Victoria's Rule 2004 examination statement that she was not personally liable for the debt[3] as reason for not attributing the debt to her, it acknowledges the proof of claims show that she is personally liable for the debt. (Appellee's Br. 24.) The proof of claims (Docs. # 13-6 & 13-7) underlying the reaffirmation agreement

---

[3] When Victoria was asked whether the loans in the office equipment reaffirmation agreement were made to her personally or to a business, she stated "business." (Victoria Dep. 38:19-39:9.) However, her attorney quickly noted that "[s]he [only] thought she was doing business as a corporation." (*Id.* 39:18-19.)

4

were filed July 9, 2007, and indicate a lower total debt of $16,637.15.[4]

Victoria also argues she is personally liable for a non-consumer debt that consists of the value of twenty-one months of rent for the remainder of a lease with the Hospital for a total of $19,687.50. (Appellant's Br. 13.) The Hospital claims her initial bankruptcy schedules indicate she originally took the position she owed no debt on the remainder of this lease. (Appellee's Br. 22.) The Hospital also argues that, even if she did have any liability, the damages would be capped under Section 502(b)(6) of the Bankruptcy Code at twelve months of rent, or $11,250. (*Id.*) Another source of non-consumer debt, as argued by Victoria, consists of $77,000 in credit card debt to MBNA incurred by her husband to pay for her taxes. (Appellant's Br. 12-13.) Victoria admits she is not personally liable for this credit card debt, however. (*Id.* at 12.)

The final disputed amount consists of $38,967.36, which is only a portion of the total amount listed in the IRS proof of claim. (Appellee's Br. 20-21.) In its proof of claim (Doc. # 13-2), the IRS claims a total of $109,425.20 is owed by Victoria for back taxes. As discussed above, the Hospital does not dispute $70,457.84 of this amount, but does take issue with the remaining balance because they argue it is owed by Bariatric Medical and Physical Fitness Associates, Inc. ("Bariatric") instead of Victoria. (Doc. # 3-8, at 2.) Bariatric's tax identification number matches thirteen entries in the IRS proof of claim. (Doc. # 13-2, at 2-

---

[4] The reaffirmation agreement identifies two separate loans by date and loan number. (Doc. # 10-10, at 6.) The proof of claims reference the same loan numbers as the loans found in the reaffirmation agreement. (*See* Docs. # 13-6 & 13-7.)

3.) These thirteen entries total $38,967.36. (*See id.*) Furthermore, eleven of the thirteen entries are only estimates of liability because a tax return was never filed for that period.[5] (*Id.*) Victoria claims she is the "responsible person" for Bariatric and is personally liable for the company's IRS debt. (Appellant's Br. 11.)

### III. JURISDICTION

Jurisdiction is exercised over this bankruptcy appeal pursuant to 28 U.S.C. § 158(a), which provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." Furthermore, an appeal taken pursuant to 28 U.S.C. § 158(a) "shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving." *Id.*

### IV. STANDARD OF REVIEW

"Factual findings by the bankruptcy court are reviewed under the limited and deferential clearly erroneous standard." *In re Club Assocs.*, 951 F.2d 1223, 1228 (11th Cir. 1992). "In contrast to the deference given to factual findings, [the district] court examines the bankruptcy court's legal conclusions de novo." *In re Terry Mfg. Co.*, 332 B.R. 630, 632 (M.D. Ala. 2005) (citing *Club Assocs.*, 951 F.2d at 1228-29). The district court must "independently examine the law and draw its own conclusions after applying the law to the

---

[5] A footnote at the bottom of the proof of claim states that "when the debtor(s) files the return or provides other information as required by law the claim will be amended." (Doc. # 13-2, at 2.)

facts" and then "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." *In re Norris*, 239 B.R. 247, 249 (M.D. Ala. 1999) (quoting *In re Prestwood*, 185 B.R. 358, 360 (M.D. Ala. 1995) and Fed. R. Bankr. P. 8013 (internal quotation marks omitted)).

## V.  DISCUSSION

*A.     Introduction*

A Chapter 7 debtor's case may be dismissed if their debts are primarily consumer debts and if the bankruptcy court "finds that the granting of relief would be an abuse of the provisions of this chapter." 11 U.S.C. § 707(b)(1). A presumption of abuse arises if the debtor's monthly net income is greater than certain statutory benchmarks known as the means test. *Id.* § 707(b)(2). Victoria's monthly net income far exceeds the benchmarks, and the main issue is whether her debts are primarily consumer debts. (Appellee's Br. 16.) The Bankruptcy Code does not define the term "primarily" and the Eleventh Circuit has yet to weigh in on the issue. However, many other courts have found it simply to mean more than half. *See, e.g.*, *In re Stewart*, 175 F.3d 796, 808 (10th Cir. 1999); *In re Kelly*, 841 F.2d 908, 913 (9th Cir. 1988). The court agrees with this interpretation, as do both parties. (Appellant's Br. 8; Appellee's Br. 19.)

Alternatively, § 707(b)(3) applies when the presumption of subparagraph (b)(2)(A)(i) does not arise or is rebutted. *See* 11 U.S.C. § 707(b)(3). In that event, the bankruptcy court is directed to consider "(A) whether the debtor filed the petition in bad faith; or (B) [whether]

the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." *Id.*; *see also In re Mitchell*, 357 B.R. 142, 154 n.11 (Bankr. C.D. Cal. 2006) (stating that "in light of the addition of § 707(b)(3) to the Bankruptcy Code, a debtor's bad faith now clearly constitutes grounds for dismissal of a Chapter 7 case").

B.     *Determination of Non-Consumer Debt / Presumption of Abuse*

The formula at hand is seemingly simple and rote: If Victoria's consumer debts are greater than her non-consumer debts, the presumption of abuse due to her high disposable monthly income supports dismissal on Section 707(b)(2) grounds. The difficulty comes in categorizing and attributing debts. Therefore, the court must perform a *de novo* review of the bankruptcy court's legal determination that omission of the disputed amounts from Victoria's non-consumer debt total was correct.

In its reply brief, filed only one day after the hearing, the Hospital argued that the debts which constitute the IRS proof of claim are actually owed, not by Victoria, but by her weight loss company, Bariatric. (*Id.* at 2.) While new arguments are normally not allowed in reply briefs, *United States v. Oakley*, 744 F.2d 1553,1556 (11th Cir. 1984), it could not have been raised any earlier because the IRS proof of claim had only just been filed. Indeed, countering new circumstances and arguments introduced by an opposing party since the time of an initial brief is a central purpose of reply briefs. *See* 16A Charles Alan Wright, *et al.*, Federal Practice & Procedure § 3974.3, at 530 (3d ed. 1999).[6]

---

[6] While this source is geared toward appellate briefing, the court finds no reason for the logic and purpose of the rule to differ with respect to briefing at the trial level.

Though she argued that she owed the entire IRS debt personally, Victoria never responded to the Hospital's argument that a substantial portion of the IRS proof of claim was not attributable to her, despite having almost two months before the bankruptcy court's ruling and an opportunity during the telephone conference of June 26, 2007. Only now, on appeal to this court, does Victoria finally respond and argue that she is the responsible person liable for the taxes of Bariatric and, therefore, the entire IRS proof of claim should count toward her non-consumer debt total. (Appellant's Br. 10-11.) As a general rule, arguments not presented to the bankruptcy court will not be considered on appeal to the district court. *In re Daikin Miami Overseas Inc.*, 868 F.2d 1201, 1207 (11th Cir. 1989). However, even though the *argument* was not presented by Victoria to the bankruptcy court, the *issue* of whether the Bariatric debt should be included in her non-consumer debt total was squarely before the bankruptcy court. Because the issue was before the bankruptcy court and its legal determination to omit the Bariatric tax debt is reviewed *de novo*, this court will now consider Victoria's argument even though it is presented for the first time here.

A proof of claim is "presumed valid, and is *prima facie* evidence of the validity of both the claim and its amount." *In re St. Augustine Gun Works, Inc.*, 75 B.R. 495, 499 (Bankr. M.D. Fla. 1987); *see also* Fed. R. Bankr. P. 3001(f) ("A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."). Although filed frustratingly late in the course of deciding the motion to dismiss, the IRS proof of claim was before the bankruptcy court prior to the issuance of

9

the order dismissing the case.[7] The IRS proof of claim identifies Victoria as the debtor who owes the government taxes in the amount of $109,425.20. (Doc. # 13-2.) As such, it consists of *prima facie* evidence that Victoria is personally liable for the entire amount.

As explained above, the Hospital contends that Victoria is not liable for $38,967.36 of the total because that amount is linked to her company, Bariatric, rather than Victoria herself. (Appellee's Br. 20-21.) Victoria contends that she is liable for the taxes of her company pursuant to Section 6672 of the Internal Revenue Code, which states:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, *shall . . . be liable to a penalty equal to the total amount of the tax* evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a) (emphasis added). Therefore, personal liability attaches to an individual if (1) he or she is a "responsible person" under the statute (2) who willfully failed to pay taxes owed to the government. *See Ross v. United States*, 949 F. Supp. 536, 541-43 (N.D. Ohio 1996).

Although the statute uses the term penalty, "courts have universally characterized the debt as a tax, and not a penalty." *In re Coleman*, 19 B.R. 529, 530 (Bankr. D. Kan. 1982); *see also United States v. Huckabee Auto Co.*, 783 F.2d 1546, 1548 (11th Cir. 1986) (stating "the liability imposed by section 6672 is not penal in nature but is simply a means of ensuring

---

[7] Neither party argues the IRS proof of claim was untimely filed under the Federal Rules of Bankruptcy Procedure and there is no indication the bankruptcy court considered it as such.

that the tax is paid" (internal citation and quotation marks omitted)). Furthermore, "the liability imposed on responsible persons by Section 6672 is distinct from the corporation's duty to pay the taxes withheld from its employees." *Hornsby v. IRS*, 588 F.2d 952, 954 (5th Cir. 1979). This means "the IRS need not pursue collection from the employer prior to assessing a responsible person under section 6672." *Huckabee*, 783 F.2d at 1549.

The IRS proof of claim is *prima facie* evidence that Victoria is a responsible person for the Bariatric taxes and that it intends to collect the taxes from her personally. At this stage of the proceeding, the Hospital has provided no evidence rebutting the *prima facie* evidence of the IRS proof of claim that Victoria is personally liable for Bariatric's tax debt, even though the Hospital admits Bariatric is her company. (Appellee's Br. 20-21.) The Hospital correctly notes the Bariatric tax debts are only estimates that are subject to change. This estimation argument cuts both ways, however, as the government may have just as easily *under*estimated the tax debt liability. The salient point at this time is that the IRS claims the Bariatric tax debt to be in the amount of $38,967.36 and that Victoria is personally liable for it.

To the extent the bankruptcy court made a factual finding contrary to the IRS claim, there is no evidence to support that finding. The Hospital's mere argument[8] that Victoria is not personally liable is insufficient to overcome the *prima facie* force of a sworn claim.

---

[8] The Hospital comes close to admitting the weakness of its position in when it states,"Greenville Hospital does not dispute that Victoria's tax debt, *whatever it may be*, is classified as a business debt." (Appellee's Br. 20 n.13 (emphasis added).)

11

Without further factual development, the decision to omit Bariatric's tax debt from Victoria's non-consumer debt total was premature because if she is determined to be personally liable for it, her total non-consumer debt would outweigh her total consumer debt, even if all other remaining disputed amounts of non-consumer debt are not counted.[9] However, remanding the case back to the bankruptcy court in order to allow the parties a chance to present more evidence as to whether Victoria is personally liable for the Bariatric debt is not necessary in light of the bankruptcy court's alternative holding based on bad faith under § 707(b)(3).

C.  **Bad Faith / No Presumption**

Even though the bankruptcy court's finding that a presumption of abuse under § 707(b)(2) arose was premature, the end result of the § 707 analysis does not change, however, because the bankruptcy court made alternative findings that Victoria's petition was filed in bad faith under § 707(b)(3)(A):

> [W]e have got the debtor who is a doctor, who has income of nearly two hundred thousand a year, who is married, who shares a home and a household with her husband who is also a doctor who also makes approximately two hundred thousand dollars per year. So we have got a debtor household here with household annual income of between three hundred and fifty and four hundred thousand dollars per year. It would appear to be a poster-child case for substantial abuse.

---

[9] Even if the three other disputed non-consumer amounts are excluded (MBNA credit card, remainder of the hospital lease, and the reaffirmation of the office equipment loans), and only the Bariatric portion of the IRS proof of claim is included, Victoria's non-consumer debt totals $301,114.39. The Hospital claims her consumer debt consists of a mortgage in the amount of $290,000.00, which is $11,114.39 less than her non-consumer debt total when the Bariatric tax debt is included. Because this Bariatric tax amount by itself prevents the means test presumption of abuse from arising, the court need not determine the validity of the remaining disputed amounts of non-consumer debt.

> . . . .
> . . . I have gotten a real sense that the debtor is playing hide-the-ball and being uncooperative, and that's certainly a factor in my view.
> . . . .
> [S]o for those reasons, I am going to grant the motion to dismiss.

(Mot. Hr'g Tr. 3:3-4:17, June 26, 2007.)

As noted above, if the means test presumption of abuse does not arise, the bankruptcy court is directed to consider whether the debtor filed the petition in bad faith. 11 U.S.C. § 707(b)(3). Though the court did not specifically cite § 707(b)(3)(A), the application is obvious. In the absence of the presumption of abuse, the court nevertheless concluded that abuse in fact existed due to Victoria's bad faith in filing bankruptcy. Furthermore, the Hospital provides ample support for the bankruptcy court's finding in its brief to this court wherein it cites numerous examples of Victoria failing to show up for creditor meetings, failing to produce sufficient documentation, transferring jewelry to family members for inadequate consideration prior to filing bankruptcy, and failing to provide straightforward answers regarding her expenses, among other things. (Appellee's Br. 3-14.) Giving due deference to the findings of the bankruptcy court, there was no clear error in the bankruptcy court's judgment, and the order dismissing Victoria's case is due to be affirmed.

## VI. CONCLUSION

Having conducted a *de novo* review of the bankruptcy court's legal conclusions, and examined its factual findings for clear error, the court finds that the bankruptcy court's order (Bankr. Doc. # 70) granting the Hospital's motion to dismiss Victoria's Chapter Seven

bankruptcy petition was correct. Therefore, it is ORDERED that the decision of the bankruptcy court is AFFIRMED.

An appropriate judgment will be entered.

DONE this 31st day of March, 2008.

                                       /s/  W. Keith Watkins
                                       UNITED STATES DISTRICT JUDGE

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

## CIVIL APPEALS JURISDICTION CHECKLIST

**1.** **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

(a) **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

(b) **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

(c) **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

(d) **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

(e) **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

Rev.: 4/04

2.  **Time for Filing**: The timely filing of a notice of appeal is mandatory and jurisdictional. Rinaldo v. Corbett, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

    (a)  **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

    (b)  **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

    (c)  **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

    (d)  **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

    (e)  **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3.  **Format of the notice of appeal:** Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. See also Fed.R.App.P. 3(c). A pro se notice of appeal must be signed by the appellant.

4.  **Effect of a notice of appeal:** A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).